**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Yueting Jia, | ) | Case No. 19-12220-KBO |
| Debtor. | ) | |
| | ) | Hearing Date: December 18, 2019 @ 10:00 a.m. |
| | ) | Objection Deadline: December 11, 2019 @ 4:00 p.m. |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO DEBTORS' MOTION TO RETAIN (I) PQBDN LLC TO PROVIDE THE DEBTOR A CHIEF RESTRUCTURING OFFICER AND (II) DESIGNATE ROBERT MOON AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTOR *NUNC PRO TUNC* TO NOVEMBER 17, 2019 ("MOTION", D.E. 104), AND DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING ROBERT MOON TO ACT AS FOREIGN REPRESENTATIVE PURSUANT TO SECTION 1505 OF THE BANKRUPTCY CODE (D.E. 105, "FOREIGN REPRESENTATIVE MOTION")**

Andrew R. Vara, the Acting United States Trustee for Region Three ("U. S. Trustee"), by and through his counsel, hereby objects to Debtors' Motions to Retain (I) PQBDN LLC to Provide the Debtor a Chief Restructuring Officer and (II) Designate Robert Moon as Chief Restructuring Officer for the Debtor *Nunc Pro Tunc* to November 17, 2019 ("Motion", D.E. 104), and Debtor's Motion for Entry of an Order Authorizing Robert Moon to Act as Foreign Representative Pursuant to Section 1505 of the Bankruptcy Code (D.E. 105, "Foreign Representative Motion", collectively, the "Motions")[1] as follows:

---

[1] Terms shall have the same meaning as ascribed to them in the Motions.

1

## JURISDICTION

1.  Pursuant to i) 28 U.S.C. § 1334; ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this Objection.

2.  Pursuant to 28 U.S.C. § 586(a)(3)(I), the U.S. Trustee has the duty to monitor applications filed under section 327 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to approval of such applications.

3.  The U.S. Trustee has standing to be heard on the Motion pursuant to 11 U.S.C. § 307.

## STATEMENT OF FACTS

4.  The Debtor filed this case on October 14, 2019. The Motions were filed on November 27, 2019.

5.  The Motion proposes to retain a Chief Restructuring Officer ("CRO") for an individual debtor. Concurrently with the filing of the Motion, the Debtor also filed the Foreign Representative Motion seeking an order to approve the CRO as the Debtor's Foreign Representative pursuant to Section 1505 of the Bankruptcy Code.

6.  The proposed CRO's duties are set forth at paragraph 14 of the Motion. They include:

    a.  Assisting in negotiating any debtor-in-possession financing;

    b.  Assisting the Debtor with the Debtor's monthly operating reports;

    c.  Preparing a liquidation analysis in connection with any plan of reorganization;

    d.  Provide expert testimony including valuation testimony;

  e. Meeting with creditor groups;

  f. Providing such other financial advisory and restructuring services in connection with the Case as PQBDN and the Debtor may mutually agree; and,

  g. Serving as the Debtor's foreign representative in any judicial or other proceedings in the British Virgin Islands or the Cayman Islands.

7. Paragraph 19 of the Motion and paragraph 1.1 of the Consultancy Agreement attached as an exhibit to the Motion requests payment of $180,000 upon Court approval of the retention for services rendered or to be rendered for the period November 17, 2019 through January 2020. This is in addition to a retainer of $20,000 paid to Mr. Moon, the proposed CRO, immediately prior to the filing of the Petition. Section 5 of the Consultancy Agreement requires payment in advance for months after January 2020.

8. Paragraph 20 of the Motion seeks a waiver of time keeping requirements of Local Bankruptcy Rule 2016-2, proposing to record time in increments of one hour.

9. Section 8.1 of the Consultancy Agreement states in pertinent part: "The relationship of the Consultant to YT will be that of an independent contractor."

9. Section 7.6 of the Consultancy Agreement attached to the Motion provides:

> "The Consultant shall, if requested in writing by YT, irretrievably delete (other than information to which the restrictions in this Clause 7 do not apply) any information relating to the business of YT or the Group or its clients stored in any magnetic or optical disc or memory and all matters derived from them which are in his possession, custody, care or control outside the premises of YT or the Group and in each case shall produce such evidence of deletion as YT may reasonably require."

10. The Debtor has not filed his first monthly operating report. The Schedules report unencumbered cash of less than $20,000, all other cash assets are reported in the schedules as either frozen or claimed exempt in the Debtor's Schedule C contained in Docket Entry 28.

3

# ARGUMENT

## SUMMARY OF ARGUMENT

11. A CRO is not appropriate in an individual chapter 11 case for the simple reason that an individual is not a business entity and does not have officers or other corporate governance. An individual is a single solitary entity and does not elect officers or directors. This does not, however, preclude the Debtor from seeking to retain a financial advisor pursuant to Section 327(a) of the Bankruptcy Code. Among other things, this will require the entity to comply with the provisions of Sections 330 and 331 as well as he disclosure requirements of Federal Rule of Bankruptcy Procedure ("FRBP") 2014.

12. No payments for services should be made until the services have been rendered and fees approved by the Court. In any event, it does not appear from the record to date that the Debtor himself has the monies requested by the proposed CRO.[2] The estate should not be obligating itself to expenses it cannot afford to pay. In addition, Section 7.6 of the Consultancy Agreement essentially requires the proposed CRO to destroy evidence if requested by the Debtor to do so. This provision is patently unlawful. The Motion should be denied.

---

[2] No Monthly Operating reports are on file. The October report due on November 20 has not been filed. Pages 11-12 of the Schedules (DE 28) disclose cash assets on hand of $110,634.68. Of this total, $29,719.75 is reported frozen in China. $65,585.34 has been claimed exempt, leaving unencumbered cash as of the filing date of $15,329.59. Page 33 of DE 94, the Amended Disclosure Statement contains a paragraph entitled DIP Facility: "In the near term, the Debtor will be filing a motion for approval of postpetition financing. After the commencement of the chapter 11 case, the Debtor and his advisors contacted several potential lenders regarding the Debtor's postpetition financing needs. Ultimately, the Debtor determined that obtaining financing from Pacific Technology, an affiliate of the Debtor (the "DIP Facility"), provided the most favorable terms to the Debtor under the circumstances. With the liquidity available from the DIP Facility, the Debtor can stabilize his affairs and pay his postpetition expenses, including administrative expense claims. Please review the motion to approve the DIP Facility for further details regarding the DIP Facility." As of December 10, 2019, no DIP Motion has been filed.

13. The proposed CRO, as either a CRO or a financial advisor, is not suitable to act as the Debtor's foreign representative as he is not an estate fiduciary as contemplated by the language of Bankruptcy Code Section 1505. The Court should therefore also deny the Foreign Representative Motion.

## I.
## ARGUMENT

### A. THE MOTION SHOULD BE BROUGHT UNDER SECTION 327(a)

14. Corporations, Partnerships and other non-individual entities have corporate governance in the existence of officers, directors or other similar persons. These persons have fiduciary duties to the entity they serve. Individual debtors do not have officers or directors. When individuals hire professionals, they are advisors. They are not officers, directors or other such persons in a fiduciary capacity with the Debtor. The Motion should be denied as a motion to retain a CRO because it is simply not appropriate here.

15. On the other hand, the Debtor has every right to retain professional persons pursuant to Section 327(a) of the Code to assist him in his case. A review of the various duties proposed for the Consultant are primarily those of a financial advisor with the notable exception of the foreign representative provision (see below). The Motion should be amended and brought under Section 327(a) and not Section 363. Among other things, this will require the Consultant to be disinterested and will require compliance with the fee application provisions of Sections 330 and 331 before the Consultant may receive payment of fees or expenses.

**B.     COMPENSATION MAY NOT BE PAID PRIOR TO COURT APPROVAL**

16.     The Consultancy Agreement calls for payment of $180,000 in advance for the period November 17, 2019 through January, 2020 and thereafter, pursuant to Section 5 of the Agrement, payment in advance of $25,000 per month thereafter.  The same provision provides for reimbursement of expenses upon 14 day notice to the Debtor.  Additionally, the Motion requests a waiver of timekeeping requirements pursuant to Local Bankruptcy Rule 2016-2.

17.     No fees may be paid to a professional approved to provide services to a bankruptcy estate until the professional has complied with the provisions of Sections 330 and 331 of the Bankruptcy Code.   The provisions in the Consultancy Agreement calling for payment in advance or payment of expenses upon 14-day notice are inappropriate.  Professional fees may not be awarded unless and until the applicant shows that there is a benefit to the estate. 11 U.S.C. § 330(a)(4)(A)(ii). In addition, the fees must be reasonable and necessary. Benefit to the estate and necessity are critical threshold issues before the awarding of any fees or compensation. *Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enterprises),* 997 F.2d 1321, 1322-23 (10' Cir. 1993) (where the Court held that the disallowance of fees for services which were not necessary or beneficial to the estate should not be considered a penalty but rather a statutory imperative).

18.     To the extent the Motion requests payment in advance and a waiver of the local rules timekeeping requirements, the Motion should be denied.  Paragraphs 3d and 3e of the proposed Order should be deleted and replaced with language requiring compliance with the Code and all appropriate rules.[3]

---

3  While the J. Alix Protocol should not come into consideration as the Consultant is not a true CRO, the U.S.

**C.    The Consultancy Agreement Violates Public Policy**

19.    Section 7.6 of the Consultancy Agreement, set forth above, essentially provides that the Consultant shall destroy financial information of the Debtor upon the Debtor's direction and prove to the Debtor the information has been destroyed.  This provision patently violates public policy.

20.    The filing of a bankruptcy creates a bankruptcy estate.  Section 541 of the Bankruptcy Code provides that all property in which the debtor has a legal or equitable interest constitutes property of the estate (*See,* also, United States v. Whiting Pools, 462 U.S. 198 (1983)).  This includes the books and records of a debtor.  Property of the estate is subject to administration by the bankruptcy estate and may be abandoned and destroyed only after receiving an order from this court authorizing abandonment pursuant to Section 554 of the Bankruptcy Code.

23.    In a Chapter 11, the debtor is the officer of the estate in the debtor's capacity as a debtor-in-possession as provided for by Bankruptcy Code Section 1101(1).  Here, Section 7.6 of the Consultancy Agreement would permit the debtor to authorize the Consultant to destroy books and records at the debtor's direction without first seeking to obtain relief pursuant to Section 554 or otherwise.  In view of the Debtor's fiduciary obligations to the estate as a debtor-in-possession, this provision is patently unlawful.

---

Trustee notes that there are deficiencies under the protocol not included in the Proposed Order which accompany the Motion., including, but not limited to (e), relating to fee applications; (g) and (h), prohibiting indemnification beyond that to which other executive officers under the bylaws and applicable nonbankruptcy law may be entitled; (i) the prohibition that the CRO make any investments in the Debtor for a minimum of three years after conclusion of the engagement.

**D.     The Consultant May Not Be the Foreign Representative**

24.     The Foreign Representative Motion seeks to authorize, pursuant to Section 1505, the Consultant to act as the Debtor's foreign representative in the British Virgin Islands or the Cayman Islands.   Section 1505 provides that "A trustee or another entity (including an examiner)" may be authorized to act in a foreign country as the debtor's foreign representative. This language contemplates that the foreign representative should be an estate fiduciary such as a trustee or examiner.   Other entities who might qualify would be custodians like non-bankruptcy receivers or assignees for the benefit of creditors, who make decisions on behalf of the estateand are typically subject to bonding requirements.   Section 1505 is not blanket authority for anyone in the world to act as a debtor's foreign representative.   Indeed, the Consultancy Agreement expressly provides that the Consultant is an independent contractor without any fiduciary responsibility to the estate.   The Foreign Representative Motion should be denied.

## CONCLUSION

25.     The Motion seeking   CRO should be denied without prejudice to the Debtor seeking to retain the Consultant as a financial advisor pursuant to the standard set forth in Section 327(a) of the Bankruptcy Code.   Further,   no compensation should be made prior to Court approval after the applicant has complied with all fee application requirements, and no Consultancy Agreement of any kind should be approved that would allow the Debtor to authorize the Consultant to destroy property of the estate absent an appropriate court order. Lastly, the Foreign Representative Motion should be denied because the Consultant is not an estate fiduciary.

The U. S. Trustee leaves Debtor to its burden and reserves all discovery rights.

WHEREFORE the UST requests that this Court issue an order denying the Application and/or granting such other relief that this Court deems fair and just.

Dated: December 11, 2019
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**REGION THREE**

By: /s/
David L. Buchbinder, Esq.
Trial Attorney
Office of the United States Trustee
844 King Street, Suite 2207
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (fax)