1  Richard M. Pachulski (CA Bar No. 90073)
   Jeffrey W. Dulberg (CA Bar No. 181200)
2  Malhar S. Pagay (CA Bar No. 189289)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California 90067
4  Telephone: 310/277-6910
   Facsimile: 310/201-0760
5  E-mail: rpachulski@pszjlaw.com
            jdulberg@pszjlaw.com
6           mpagay@pszjlaw.com

7  [Proposed] Attorneys for Debtor and Debtor in Possession

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

11 In re:                                Case No.: 2:19-bk-24804-VZ
                                         *(formerly 19-12220 (KBO) (Bankr. D. Del.))*
12 YUETING JIA,¹
                                         Chapter 11
13                          Debtor.
                                         **SUPPLEMENTAL DECLARATION OF**
14                                       **ROBERT MOON IN SUPPORT OF**
                                         **DEBTOR'S AMENDED MOTION TO**
15                                       **RETAIN PQBDN LLC AS FINANCIAL**
                                         **ADVISOR *NUNC PRO TUNC* TO**
16                                       **NOVEMBER 17, 2019**

17                                       [Relates to Docket No. 104]

18
19                                       Date:    February 25, 2020
                                         Time:    11:00 a.m.
20                                       Place:   Courtroom 1368
                                                  Roybal Federal Building
21                                                255 E. Temple Street
                                                  Los Angeles, California 90012
22                                       Judge:   Hon. Vincent P. Zurzolo

23         I, Robert Moon, under penalty of perjury, declare as follows:

24         1.    I am the managing member of PQBDN, the proposed financial advisor for the above-

25 captioned debtor and debtor in possession (the "Debtor").  I submit this Supplemental Declaration

26 (the "Declaration") in support of the *Debtor's Amended Motion To Retain PQBDN LLC as Financial*

27

28 ¹ The last four digits of the Debtor's federal tax identification number are 8972.  The Debtor's mailing address is 91
   Marguerite Drive, Rancho Palos Verdes, CA 90275.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Advisor Nunc Pro Tunc to November 17, 2019* (the "<u>Amended Motion</u>").[2]  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor, or my opinion based on my experience with the Debtor's operations and financial condition.  In making my statements based on my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor, I have relied upon these employees accurately recording, preparing, or collecting such documentation and other information.  Attached hereto as **Exhibit A** is true and correct copy of the Consultancy Agreement between the Debtor and PQBDN.

2.     I have more than 25 years of financial consulting and management experience, including financial and operational restructuring, loan workouts, asset disposition, corporate, strategic, financing and M&A advisory, and business planning.  I served as CRO for Suntech Group which includes Suntech America, Inc., Case No. 15-10054 (KBO) pending in the Delaware Bankruptcy Court ("<u>Suntech</u>") and currently serve as the Plan Administrator in the Suntech case.  I continue to serve as the CRO of Suntech Power Holdings Co Ltd (the ultimate parent company of the Suntech Group of companies).  I have also been involved in a number of international insolvency proceedings.  Prior to serving as Suntech's CRO, I worked with various clients to provide financial and strategic advisory services.  I also served as CRO for Advantage Rent-a-Car in its chapter 11 proceeding and I served as the chief financial officer for Global Lighting Technologies.  A copy of my resume is attached hereto as **Exhibit B**.

3.     I have considerable experience working with senior management teams in the areas of financial and operational restructuring, loan workouts, insolvency recovery, asset disposition, business acquisition, and business planning.  In my work in bankruptcy cases, I have created, directed and implemented insolvency recoveries, overseen restructurings, and overseen the Bankruptcy Code section 363 sale process.

4.     I hold an M.B.A. in Finance/Accounting from Columbia University Business School and a B.A. in Economics from Brigham Young University.

---

[2] Unless otherwise noted, capitalized terms used in this Declaration have the same meanings ascribed in the Motion.

5.      In connection with the engagement proposed in the Amended Motion, PQBDN

undertook to determine whether it had any conflicts or other relationships that might cause it not to

be disinterested or to hold or represent an interest adverse to the Debtor.  Specifically, PQBDN

obtained from the Debtor and/or his representatives the names of individuals and entities that may be

parties-in-interest in this case (the "Potential Parties-in-Interest") and such parties are listed on

**Exhibit D** annexed hereto.  PQBDN has researched its electronic client files and records to

determine its connections with the Potential Parties-in-Interest.  As far as I have been able to

ascertain through these efforts, I am unaware of any other current engagements of PQBDN or me by

the Potential Parties-in-Interest or of any conflict or potential conflict with any of the Potential

Parties-in-Interest.  It is possible that PQBDN or I may now or in the future be retained by one or

more of the Potential Parties-in-Interest in unrelated matters.  PQBDN and I will continue to analyze

any additional Potential Parties-in-Interest that become involved in this proceeding and it will

promptly supplement this disclosure to the Court for any engagements by additional Potential

Parties-in-Interest.

6.      Also, PQBDN or I may be engaged, or may have been engaged, by affiliates of

Potential Parties-in-Interest and may have worked with, continue to work with, and/or have mutual

clients with, certain accounting and law firms who appear on the Potential Parties-in-Interest list.

PQBDN or I may also be engaged, or may have been engaged in the past, by committees or groups

of lenders or creditors in connection with certain restructuring or refinancing engagements, which

committees or groups include, or included, entities that appear on the Potential Parties-in-Interest

list. To the best of my knowledge, PQBDN and I have not represented and do not intend to represent

any related debtor in a bankruptcy case in this or any other court.

7.      Other than as disclosed herein, PQBDN and I have no relationship with the Debtor of

which I am aware after due inquiry.

8.      PQBDN and I have no connection with any insider of the Debtor or any insider of an

insider of the Debtor.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9.      PQBDN and I have not received and will not receive any lien or other interest in property of the Debtor or of a third party to secure payment of its fees.  Attached hereto as **Exhibit C** is a budget of estimated fees and expenses to be incurred by PQBDN.

10.     It is the intention of PQBDN to seek compensation as described in the Amended Motion and the Consultancy Agreement in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any and all applicable rules and orders of the Court.

11.     PQBDN charges its clients for reasonably incurred, out-of-pocket expenses associated with an assignment.  Except as necessary to comply with an applicable order of the Court, all such expense billings are in accordance with PQBDN's customary practices.

12.     In the ninety (90) days prior to the Petition Date, PQBDN received no payments for professional services performed for the Debtor.  As set forth in the Debtor's Schedules, an affiliate

of PQBDN owned by me received a $20,000 retainer in anticipation of the retention proposed in the Original Motion.  However, such amount has been returned. PQBDN has no prepetition claim against the estate.

13.    To the best of my knowledge, the compensation arrangement provided in the Consultancy Agreement is consistent with and typical of arrangements entered into by PQBDN and other firms rendering similar services to clients such as the Debtor.  To the best of my knowledge, there is no agreement or understanding between PQBDN and any non-affiliated person or entity for sharing compensation received, or to be received, for services rendered by PQBDN personnel in connection with this Chapter 11 Case.

14.    I declare that I am familiar with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules and shall comply with them.

15.    Based upon the foregoing, I believe PQBDN and I are "disinterested" as defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtor or his estate.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated:  February 4 , 2020

_____
Robert Moon

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

CONSULTANCY AGREEMENT

This "CONSULTANCY AGREEMENT" is made on the 17th day of November 2019

BETWEEN:

Yueting Jia, as debtor and debtor in possession ("YT");

and

PQBDN LLC ("Consultant").

1

**WHEREAS:**

(A)     YT holds interests in certain businesses, including YT's direct businesses and respective affiliated or associated entities. Including subordinated or controlling entities, subordinated or controlling companies, shareholders, persons, trusties, beneficiaries, staff, employees and management of YT's direct businesses and affiliated and associated entities, in total all of related parties and beneficiaries to YT (in combination defined as the "**Group**");

(B)     The Consultant is an independent advisory company and provides financial, bankruptcy and restructuring advice (which shall include the Consultant or its designates acting in the position of Chief Restructuring Officer of YT and will also include a liquidation analysis, as needed) (the "**Services**") as requested;

YT wishes to engage the Consultant to provide the Services and the Consultant, which is an independent contractor, has agreed to provide the Services upon the terms of this Consultancy Agreement.

**NOW IT IS HEREBY AGREED** as follows:

**1.      Definitions and Interpretation**

1.1     In this Consultancy Agreement, the following terms have the following meanings:

"**Commencement Date**" means November 17, 2019;

"**Service Fee**" shall be $90,000 (USD)   for the period from the Commencement Date to November 30, 2019, $50,000 (USD) for December 2019, $40,000 (USD) for January 2020, and $25,000 (USD) per month thereafter for the Services for the period from February 2020 until the Termination Date, provided, however, that with respect to the Service Fees payable for March 2020 and subsequent months, the parties may mutually agree to revise the amount.   The first three months Service Fees shall be paid on the later of (a) the Commencement Date and (b) the date Consultant's retention as set forth herein is approved by the Bankruptcy Court;

1.2     References to clauses and schedules are, unless otherwise stated, to clauses of and schedules to this Consultancy Agreement.

1.3     The headings to the clauses are for convenience only and shall not affect the construction or interpretation of this Consultancy Agreement.

**2.      Engagement**

2.1     YT hereby engages the Consultant to provide the Services and the Consultant hereby agrees to provide the Services to YT on the terms and conditions contained in this Consultancy Agreement.

2.2     The Services provided by the Consultant shall be provided by Mr. Robert Brent Moon and the Consultant shall not assign or sub-contract such Services to any other person, firm, company or organization without the prior written consent of YT.

2.3     The advice given by Consultant engaged by YT under this "Consultancy Agreement" is given on a best efforts basis and is taken on by YT and the Group on behalf of YT and the Group at YT's risk and there shall not be any financial recourse by YT or the Group against the Consultant or any of its independent consultants or contractors for any fault other than any willful gross misconduct intended to defraud YT or the Group.

2.4     The Consultant shall report to YT or any employee of YT designated by YT.

2.5     This Consultancy Agreement does not constitute a guarantee of work, but any work offered by the

Consultant shall be covered by this Consultancy Agreement.

**3.      Term**

3.1      This Consultancy Agreement shall commence on the Commencement Date and shall, subject to the provisions for termination hereinafter provided, be for a period of six months ("**Termination Date**") and shall be continuable thereafter if both YT and the Consultant mutually agree in writing to an extension of this Consultancy Agreement, as amended if necessary.

3.2      Prior to the Termination Date (as extended pursuant to Clause 3.1 above), YT may terminate this Consultancy Agreement by giving the Consultant one month's advance notice in writing.

3.3      Prior to the Termination Date (as extended pursuant to Clause 3.1 above, but no sooner than two months from the Commencement Date), the Consultant may terminate this Consultancy Agreement by giving YT one month's advance notice in writing.

**4.      Duties**

4.1      YT has requested that Consultant perform the following services in connection with YT's chapter 11 case pending in the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**"), bearing Case No. 19-12220 (KBO):

    (a)    assist YT in reviewing and negotiating any debtor in possession financing;

    (b)    review YT's statements of financial affairs and schedules of assets and liabilities and, if necessary, assist YT with the preparation of any amendments to such statements and schedules;

    (c)    serve as YT's foreign representative in any judicial or other proceedings in the British Virgin Islands or the Cayman Islands;

    (d)    assist YT with any reporting required by the U.S. Trustee's office, including monthly operating reports;

    (e)    investigate the acts, conduct, assets, liabilities, and financial condition of YT, any other matter relevant to the chapter 11 case or to the formulation and confirmation of a plan;

    (f)    prepare a liquidation analysis in connection with any plan of reorganization proposed in the chapter 11 case.  Such liquidation analysis may be used in a disclosure statement or referenced in any declarations and related matters;

    (g)    as necessary, provide expert advice, analysis, evidence, and testimony (including valuation testimony) regarding financial matters related to the chapter 11 case;

    (h)    meet with creditor groups, official constituencies, and other interested parties as YT and the Consultant mutually agree; and

    (i)    provide such other financial advisory and restructuring services in connection with the chapter 11 case as the Consultant and YT may mutually agree upon.

4.2      During the term of this Consultancy Agreement, the Consultant shall:

    (a)    use all reasonable endeavors to give priority to the work offered or requested by YT and so far as reasonably possible to accept assignments arranged by YT;

    (b)    immediately disclose to YT any conflict of interest which arises in relation to the provision of the Services as a result of any present or future appointment, employment or other interest of the Consultant;

(c)    travel to such places on such occasions as YT may from time to time reasonably require (as agreed with four weeks' notice) in connection with the provision of the Services;

5.    **Consultant's Fees and Expenses**

5.1    Subject to approval by the Bankruptcy Court, in consideration for the provision of the Services , YT will pay the Consultant the Service Fee monthly in advance at the beginning of every monthly period of the engagement (on or before the 24th of each calendar month), with the exception that the first three months Service Fees shall be paid on the later of (a) the Commencement Date and (b) the date Consultant's retention as set forth herein is approved by the Bankruptcy Court   and are not refundable due to early termination pursuant to Clause 3.2.

5.2    YT will reimburse to the Consultant such out of pocket expenses and travel expenses, necessarily incurred in the provision of the Services within 14 (fourteen) days of receipt of reasonably satisfactory evidence of expenditure.

6.    **Other Activities**

During the term of this Consultancy Agreement, nothing in this Consultancy Agreement shall prevent the Consultant from providing its services to, or undertaking, any other business or profession or being or becoming a consultant or agent for some person, company or firm other than YT, or assisting or having any financial interest in any other business or profession provided that such activity does not cause a breach of any of the Consultant's obligations under this Consultancy Agreement.

7.    **Confidentiality**

7.1    The Consultant acknowledges that in the ordinary course of performing the Services pursuant to this Consultancy Agreement he will be exposed to information about YT's or the Group's business and that of its clients or customers which amounts to a trade secret, is confidential or is commercially sensitive and which may not be readily available to others engaged in a similar business to that of YT or other members of the Group or to the general public.

7.2    The Consultant shall keep secret and shall not at any time either during this Consultancy Agreement, or after its termination, for whatever reason, use, communicate or reveal to any person for his own or another's benefit, any secret or confidential information concerning the business, finances or organization of YT or the Group, or their respective clients or customers which shall have come to his knowledge during the course of this Consultancy Agreement. The Consultant shall also use his best endeavors to prevent the publication or disclosure of any such information.

7.3    For the purposes of this Clause 7 and by way of illustration and not limitation, information will prima facie be secret and confidential if it is not in the public domain and relates to:

(a)    methodology;

(b)    business format;

(c)    reporting templates;

(d)    research and developments;

(e)    clients and details of their particular requirements;

(f)    pricing, profit margins, and other financial information; or

(g)    marketing activities and current and future plans of YT and of entities in which YT holds a direct or indirect interest.

4

7.4   The restrictions contained in this Clause 7 shall not apply to:

    (a)    disclosure authorized by YT or the Group or required in the ordinary and proper course of the implementation of this Consultancy Agreement or as required by the order of a court of competent jurisdiction or an appropriate regulatory authority; or

    (b)    any information which the Consultant can demonstrate was known to the Consultant prior to the commencement of this Consultancy Agreement or is lawfully obtained by the Consultant after that date, from a source which is, as far as the Consultant is aware, unconnected with YT or the Group or is in the public domain otherwise than as a result of a breach of this clause;

    (c)    any information that is identified in writing at the time of delivery as non-confidential by YT, the Group or its advisers.

7.5   Other than information to which the restrictions in this Clause 7 do not apply, all documents, materials, records, correspondence, papers, notes, memoranda, and information on whatever media and wherever located and whether or not confidential or a trade secret made by the Consultant relating to the business of YT or the Group or its clients, any magnetic discs on which information relating to the business of YT or the Group or its clients is stored and any keys or other property of YT or the Group or its clients shall be and remain the property of YT or the Group and the Consultant shall hand over to YT immediately on request in writing and in any event upon the termination of this Consultancy Agreement all such documents, information and other materials referred to in this Clause 7.5 if requested by YT in writing.

7.6   The Consultant shall, if requested in writing by YT, irretrievably delete (other than information to which the restrictions in this Clause 7 do not apply) any information relating to the business of YT or the Group or its clients stored in any magnetic or optical disc or memory and all matters derived from them which are in his possession, custody, care or control outside the premises of YT or the Group and in each case shall produce such evidence of deletion as YT may reasonably require.

**8.    Authority and Relationship of the Parties**

8.1   The relationship of the Consultant to YT will be that of independent contractor.   The Consultant shall not assume, create or incur any liability or obligation on behalf of YT (and acknowledges that the Consultant has no right to do so) save as specifically authorized in writing by YT.

8.2   The Consultant shall not, at any time after the termination of this Consultancy Agreement, either personally or by an agent directly or indirectly represent himself as being in any way connected with or interested in the business of YT save except that Consultant may describe himself as having worked on projects with YT.

8.3   This Consultancy Agreement constitutes a contract for the provision of services and not a contract of employment and accordingly the Consultant will be fully responsible for any tax and mandatory provident fund contributions and any other liability, deduction, contribution, assessment or claim arising from or made in connection with the performance by the Consultant of the Services.

8.4   None of the parties to this Consultancy Agreement is the partner of each other and nothing in this Consultancy Agreement shall render the Consultant an employee or a partner of YT.

**9.    Termination**

9.1   Either party to this Consultancy Agreement shall have the right to terminate this Consultancy Agreement immediately by notice in writing to the other party if there is a material breach by the other party of any of the covenants obligations or stipulations to be performed or observed under this Consultancy Agreement;

9.2   YT shall have the further right to terminate this Consultancy Agreement forthwith by notice in writing to the Consultant upon the happening of any of the following events namely (but in no way as a result of

actions by YT or the Group):

(a)     if the Consultant is convicted of any criminal offense other than a traffic offense or an offense which in the reasonable opinion of YT does not affect the Consultant's position under this Consultancy Agreement;

(b)     if the Consultant becomes permanently incapacitated by accident or ill health from performing the Consultant's duties under this Consultancy Agreement and for the purposes of this sub-clause incapacity for three consecutive months shall be deemed to be permanent incapacity.

## 10.    Indemnity

Subject to Bankruptcy Court approval, YT agrees to indemnify and keep indemnified without limit in point of time the Consultant in full form and against any and all liabilities, losses, damages, claims actions, proceedings, cost and expenses (including legal costs and expenses on a full indemnity basis) suffered or incurred by the Consultant in connection with or arising directly or indirectly from the performance by the Consultant of the Services or of his obligations under this Consultancy Agreement (but excluding any such liabilities, losses or damages arising directly from the gross negligence or willful default of the Consultant).

Each party shall indemnify and keep indemnified the other party from and against:

10.1    all costs, expenses, penalties, claims, demands and liabilities which the other party may incur or become liable by reason of any neglect or default of the indemnifying party; and

10.2    all actions, suits, proceedings, claims or demands of any nature whatsoever which may be taken or made against the other party arising from or in any way connected with the Services or performance of obligations under this Consultancy Agreement and which are caused by any neglect or default of the indemnifying party, however in no case shall the Consultant be liable for an amount in excess of the Service Fees received by the Consultant under the Consultancy Agreement

## 11.    Notices

Any notice to be given by one party to the other shall be validly given if:

11.1    posted by prepaid registered post and correctly addressed to the party to be served, and shall be deemed served on the third working day after posting if it is a local mail or seventh day after posting if it is an international airmail;

11.2    For these purposes, the parties' details for service are as follows:

YT's service address:          Faraday Future, 18455 S Figueroa St. Los Angeles, CA 90248

With copy to:                  Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA   90067 Attn:   Richard M. Pachulski, Jeffrey W. Dulberg, Malhar S. Pagay

Consultant's service address:  PQBDN LLC 2801 E Chevy Chase Dr. Glendale, CA 91206

## 12.    Miscellaneous

12.1    No term or provision of this Consultancy Agreement shall be varied or modified by any prior or subsequent statement, conduct or act of any party, except that hereafter the parties may amend this Consultancy Agreement only by letter or written instrument signed by all of the parties.

12.2    This Consultancy Agreement is the entire agreement and understanding between the parties in connection

with this Consultancy Agreement, subject to approval of the Bankruptcy Court.

12.3    This Consultancy Agreement may be entered into in any number of counterparts and by the parties to it on separate counterparts, each of which when so executed and delivered shall be an original, but all the counterparts shall together constitute one and the same instrument.

12.4    If at any time any term or provision in this Consultancy Agreement shall be held to be illegal, invalid or unenforceable, in whole or in part, under any rule of law or enactment, such term or provision or part shall to that extent be deemed not to form part of this Consultancy Agreement, but the enforceability of the remainder of this Consultancy Agreement shall not be affected.

12.5    This Consultancy Agreement is governed by the laws of The United States of America and the parties hereto hereby irrevocably submit for all purposes in connection with this Consultancy Agreement to the non-exclusive jurisdiction of the Bankruptcy Court.   .

IN WITNESS whereof this Consultancy Agreement has been duly executed by the parties hereto on the date of this document.

YT
_____
Yueting Jia, debtor and debtor in possession

Consultant

_____
Robert B Moon

DOCS_LA:325879.2 46353/002

# EXHIBIT B

Robert B. Moon

**949-500-2700**

rmoon@gbpartners.net

___

## Chief Restructuring Officer – Suntech Power Holdings (2012 - Current)

- Chief Restructuring Officer for what was once the world's largest solar panel company

- Serving on eleven of the group's Boards of Directors in five European countries and the BVI

- Created, directed and implemented insolvency recovery of Suntech Power International Ltd (Switzerland) (SPI), primary operating and holding company of Suntech Group outside of China

  - Designed and effectuated an immediately profitable business plan for SPI; secured required financing of expected expenses during both Provisional and Definitive Moratoriums

  - Directed substantial downsizing of operations – eliminating multiple positions and 75% of personnel

  - Successfully achieved Bankruptcy Court approval of plans for Definitive Moratorium within required 60 days

  - Developed restructuring plan (Dividend Agreement) for SPI and received court-appointed Administrator approval to present plan to major creditors

  - Dividend Agreement eliminated 100% of liabilities, while maintaining Suntech's 100% equity ownership of SPI and all of its subsidiaries

  - Led negotiations with major creditors; receiving creditor committee approval for SPI'S proposal

  - Successfully completed only Swiss insolvency restructuring of a major company utilizing a Dividend Agreement (no liquidation); first Dividend Agreement in Swiss history without additional financing

- Directed financial restructuring of Global Solar Fund, one of the top five photovoltaic producers company in Italy - €450 million of debt owed to Chinese banks

- Leadership of Suntech businesses in Europe and America, initiated downsizing of operations throughout both continents and assumed day-to-day management and oversight

- **Chief Restructuring Officer** for Suntech America/Suntech Arizona in Delaware Chapter 11 Bankruptcies

  - Completed 363 sale of Arizona manufacturing assets

  - Negotiated settlement agreement with creditors

  - Bankruptcy Plan approved by creditors and Delaware Bankruptcy Court

  - Preserved substantial value for intercompany stakeholders

## Financial & Strategic Company Advisory Services (2010- 2012)

**Corporate, strategic, financing and M&A advisory for executives and boards of companies in transition**
Projects in Telecom/Technology, Petroleum, Financial Services and Healthcare industries

**Operational and corporate restructuring of publicly traded multinational optical technology company**
Implemented strategic dispositions, closures or operational cost structure realignment of multiple subsidiaries

**Advised publicly traded China-based energy company on acquisition of larger China-based competitor**
Managed acquisition process, determined valuation and deal structure and finalized all contracts

**Niche social media aggregation company - $.5 million investment closed**

**Educational consumer goods company - $2 million investment closed**

**Sale of Healthcare services technology company**

Business plan formation, creation of investor marketing materials, negotiation of financing documents

# Robert B. Moon – page 2

---

## Chief Restructuring Officer – Advantage Rent-a-Car (2008 – 2009)

- CRO and acting CEO for distressed rental car company - served as final decision maker for all major operating and legal initiatives taken by Advantage

- Guided Advantage through Chapter 11 Bankruptcy, precipitated by recall of 60% of the rental fleet by Chrysler Financial, its primary fleet lender

- Within three weeks of engagement, initiated a substantial business restructuring - ultimately closed 40 of 48 locations and reduced headcount by 80% - stabilized remaining operations and ran Advantage cash flow positive for remainder of Chapter 11 process

- Negotiated with senior lenders, fleet lenders and key vendors to enable ongoing financing and operations

- Oversaw sale process due diligence and primary contact with all potential purchasers of Advantage assets

- Successfully completed process by selling Advantage to Hertz for approximately 2.5x their formal "stalking horse" bid

## Chief Financial Officer - Global Lighting Technologies (2006 – 2007)

Managed global finance and accounting department for developer, manufacturer and marketer of LED backlights; majority of operations and 99% of employees based in China and Taiwan

- Consolidated four international accounting regimes and processes into global set of accounting policies

- Directed financial reporting, managed financial consolidation and implemented monthly forecasting process

- Initiated company-wide program to maintain profitability in a declining price environment, targeting improvements in sale processes and pricing, specific sourcing and purchasing cost improvements; Enhanced financial measurement and improvements in manufacturing costs

- Led underwriter identification and selection process for a $100 - $150 million IPO, guided company through underwriter's due diligence process and directed drafting of SEC F-1 Registration Statement

- Marketed, structured and closed $25 million private placement

## Director of Operations NW Louisiana – American Red Cross ("Katrina" September 2005)

## Financial & Operations Consulting (2003 – 2005)

**Interim Chief Financial Officer** - Venture capital backed, start-up consumer products company
  Enacted product pricing programs to maintain profit margin integrity and reduced cost of goods sold by 40%

**Interim Chief Financial Officer** – Highly leveraged architectural steel design and manufacturing company
  Supervised, at creditor's behest, wind-down and liquidation of company, maximizing value to creditors

**Operational Consultant** - Facilities management company; State government division
  Crafted concrete initiatives to reduce expenses, improve customer service and generate new revenue streams

## Investment Banking (1990 - 2002)

- **Executed over $10 Billion of M&A and raised over $5 Billion of Capital Worldwide**
  **Mercanti Group** – Managing Director
  **Donaldson, Lufkin & Jenrette** – Associate, Vice President, Senior Vice President
  **Smith Barney, Harris Upham** & **Chemical Bank**– Associate

# EDUCATION

**Columbia University Business School – MBA: Finance/Accounting (1988- 1990)**

**Brigham Young University - BA** *Magna Cum Laude***: Economics (1983 – 1988)**

# EXHIBIT C

# PROFESSIONAL COMPENSATION & REIMBURSEMENT BUDGET

### *For Chapter 11 Case*
### *of Yueting Jia*


Case Number:          19-24804 VZ

Case Name:            Yueting Jia

Date Commenced:       October 14, 2019 (Budget Estimation 1/1/2020 to 4/30/2020)

Applicant Firm:       PQBDN LLC

Type of Services to be Rendered:      Financial Advisor to the Debtor

Case Number:      19-24804 VZ
Case Name:        Yueting Jia

**Category:**         **Asset Recovery/Analysis/Disposition**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| **Robert Moon** | **$950** | **$35,000** |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

---

**Category:**         **Asset Disposition**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| | | |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

---

**Category:**         **Assumption and Rejection of Leases and Contracts**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| | | |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

Case Number:      19-24804 VZ
Case Name:        Yueting Jia

**Category:**          **Avoidance Action Analysis**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

---

**Category:**          **Budgeting (Case)**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

---

**Category:**          **Business Operations**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

---

Case Number:      19-24804 VZ
Case Name:       Yueting Jia

**Category:**          **Case Administration**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| **Robert Moon** | **$950** | **$5,000** |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**          **Claims Administration and Objections**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| | | |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**          **Corporate Governance and Board Matters**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| | | |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

Case Number:      19-24804 VZ
Case Name:        Yueting Jia

**Category:**          **Employee Benefits and Pensions**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**          **Employment and Fee Applications**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**          **Employment and Fee Application Objections**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| **Robert Moon** | **$950** | **$5,000** |
|  |  |  |
|  |  |  |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

Case Number:        19-24804 VZ
Case Name:         Yueting Jia

**Category:**        **Financing and Cash Collateral**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| **Robert Moon** | **$950** | **$5,000** |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**        **Litigation:** Contested Matters and Adversary Proceedings (not otherwise within a specific project category) – identify each separately by caption and adversary number, or title of motion or application and docket number

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| | | |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**        **Meetings and Communications with Creditors**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| **Robert Moon** | **$950** | **$55,000** |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

Case Number:          19-24804 VZ
Case Name:            Yueting Jia

**Category:**          **Non-Working Travel**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| **Robert Moon** | | **$20,000** |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**          **Plan and Disclosure Statement**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| **Robert Moon** | **$950** | **$70,000** |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**          **Real Estate**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| | | |
| | | |
| | | |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

Case Number:       19-24804 VZ
Case Name:         Yueting Jia

**Category:**        **Relief from Stay and Adequate Protection**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**        **Reporting**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| **Robert Moon** | **$950** | **$5,000** |
|  |  |  |
|  |  |  |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

**Category:**        **Tax**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Expenses & Costs:**  (list type of expenses)

**Total for Category:**

Case Number:        19-24804 VZ
Case Name:          Yueting Jia

**Category:**          **Valuation**

**Professional**

| Name and/or Type | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Expenses & Costs:**   (list type of expenses)

**Total for Category:**

# EXHIBIT D

**Potential Parties in Interest**

Yueting Jia

| |
|---|
| Bank of Beijing Co., Ltd. (Xiangshuwan Branch) |
| Beijing Chuangjin Xingye Investment Center (Limited Partnership) |
| Beijing Haidian Technology Financial Capital Holding Group Co., Ltd. |
| BEIJING HUAXING MOBILE ASSET MANAGMENGT CENTER(LLP) |
| Beijing Jiaxin Tengda Information Consulting Co., Ltd. |
| Beijing Siwei Equity Investment Management Center (Limited Partnership) |
| Beijing Yingda Capital Management Co.,Ltd. |
| Changjiang Securities (Shanghai) Asset Management Ltd. |
| China CITIC Bank Co., Ltd. Head Office Sales Department |
| CHINA CONSUMER CAPITAL PARTNERS II LIMITED |
| China Merchants Bank Co., Ltd. Shanghai Chuanbei Branch |
| China Minsheng Trust Co., Ltd. |
| China SoftGrowing Investment (Wuxi) Partnership |
| CHINA ZHESHANG BANK CO., LTD.Beijing Branch |
| Chongqing Strategic Emerging Industry LeEco Cloud Special Equity Investment Fund Partnership (Limited Partnership) |
| E-TOWN INTERNATIONAL HOLDING(HONG KONG) CO.,LTD. |
| Everbright Xinglong Trust Co., Ltd. |
| Guotai Junan Securities Co., Ltd |
| Honghu Da |
| Huafu Securities Co., Ltd. |
| Huarong Securities Co., Ltd. |
| Huaxin International Trust Co., Ltd. |
| Huitian Network Technology Co., Ltd. |
| Huizhou Speed & Second Curve Capital Management Partnership (Limited Partnership) |
| Jiangsu Hongtu Venture Capital Management Co., Ltd. |
| Jiangyin Hailan Investment Holding Co., Ltd. |
| Jiaxing Haiwen Investment Partnership (Limited Partnership) |
| Jinan Rui Si Le Enterprise Management Consulting Limited Partnership |
| Jinhua Zumo Network Technology Co., Ltd. |
| LeTV Film (Beijing) Co., Ltd. |
| Macrolink Group Holdings Co., Ltd. |
| Macrolink Holdings Co., Ltd. |
| Marvel Best Technology Limited |
| Nanjing Dejin Investment Management CO., LTD |
| Nanjing Kaen Industry and Trade Co., Ltd. |
| Ningbo Hangzhou Bay New Area Leran Investment Management Partnership (Limited Partnership) |

| |
|---|
| Orient Securities Co., Ltd. |
| Oriental Light Consulting Limited |
| Ping An Bank Co., Ltd. Beijing Branch |
| Ping An Bank Co., Ltd. Shenzhen Branch |
| Ping An Securities Co., Ltd. |
| QC INVESTMENT LTD. |
| Qingdao Huanghai Pharmaceutical Football Club Co., |
| Quanzhou Ding's Investment Management Co., Ltd |
| SANPOWER (HONG KONG) COMPANY LIMITED |
| Shanghai Biaopu Investment Management Co., Ltd. |
| Shanghai Haiyue Investment Management Co., Ltd. |
| Shanghai Junying Asset Management Partnership (Limited Partnership) |
| Shanghai Lan Cai Asset Management Co., Ltd. |
| Shanghai Leyu Chuangye Investment Management Center (LP) |
| SHANGHAI LEYU INVESTMENT CENTER(LP) |
| Shenzhen Jincheng Commercial Factoring Co., Ltd. |
| SHENZHEN LESHI XINGEN VERTICAL INTEGRATION ECOLOGY FUND MANAGEMENT CO.,LTD |
| Shenzhen Winzhongtong Non-Financing Guarantee Co., Ltd. |
| Shenzhen Yingda Capital Management Co., Ltd. |
| Swift Talent Investments Limited |
| Tianjin Nord Investment Co., Ltd. |
| TWC Group Co., Ltd. |
| Weidong Zhu |
| Weihua Qiu |
| Western Securities Co., Ltd |
| Wuhan Credit Loan Co., Ltd. |
| Wuxi Leyike Electric Vehicle Investment Enterprise (Limited Partnership) |
| WUXI PULEYONGHUI INVESTMENT ENTERPRISE(LP) |
| Xiamen Zejin Fangfu Investment Partnership (Limited Partnership) |
| Xinyu Dingfeng Yingtong Investment Management Center (Limited Partnership)? |
| Xizang Jinmeihua Investment Co., Ltd. |
| Yuanxin Xu |
| Zhejiang Zhongtai Chuangzhan Enterprise Management Co., Ltd. |
| Zhijian Dong |
| Zhongtai Venture Capital (Shenzhen) Co., Ltd. |
| Zhongying (Tianjin) Supply Chain Management Service Partnership (Limited Partnership) |

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*): **SUPPLEMENTAL DECLARATION OF ROBERT MOON IN SUPPORT OF DEBTOR'S AMENDED MOTION TO RETAIN PQBDN LLC AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO NOVEMBER 17, 2019** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 4, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 4, 2020,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA HAND DELIVERY**
The Honorable Vincent P. Zurzolo
United States Bankruptcy Court
Central District of California
255 East Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA  90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 4, 2020 | Mary de Leon | /s/ Mary de Leon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                  **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:327417.1 46353/002

**SERVICE INFORMATION FOR CASE NO. 19-bk-24804-VZ**

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>

- Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- David W. Meadows    david@davidwmeadowslaw.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince    cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Emily Young    pacerteam@gardencitygroup.com,
  rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.