Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:   rpachulski@pszjlaw.com
            jdulberg@pszjlaw.com
            mpagay@pszjlaw.com

[Proposed] Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>YUETING JIA,[1]<br><br><div align="center">Debtor.</div> | Case No.: 2:19-bk-24804-VZ<br><br>Chapter 11<br><br>**SUPPLEMENTAL DECLARATION OF RICHARD M. PACHULSKI TO DEBTOR'S APPLICATION PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE, RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 2014-1 FOR AUTHORIZATION TO EMPLOY AND RETAIN PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**<br><br>[Relates to Docket No. 18]<br><br>Date:       February 25, 2020<br>Time:       11:00 a.m.<br>Place:      Courtroom 1368<br>               Roybal Federal Building<br>               255 E. Temple Street<br>               Los Angeles, California 90012<br>Judge:      Hon. Vincent P. Zurzolo |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

I, Richard M. Pachulski, declare as follows:

1.      I am a partner in the law firm of Pachulski Stang Ziehl & Jones LLP ("PSZJ" or the "Firm"), proposed general insolvency counsel to Yueting Jia ("YT" or the "Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case, and have been duly admitted to practice law in the State of California and the United States District Court for the Central District of California.  This Supplemental Declaration is submitted in further support of the *Debtor's Application Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 18] (the "Application").  Capitalized terms utilized but not defined herein shall have the same meanings as set forth in the Application.

2.      Prior to the commencement of this case (the "Petition Date"), the Debtor borrowed funds from Pacific Technology Holding LLC ("PTH").  Upon information and belief, (a) PTH is a company indirectly co-owned by the Debtor's nominee in which the Debtor holds economic interests and FF Global Partners LLC ("FF Global"),[2] (b) PTH is member-managed by FF Global.  Its President, Secretary and Treasurer is Matthias Aydt, who also is the Senior Vice President of Product Engineering at Faraday Future, and (c) PTH and the Debtor have no claims against one another, other than the borrowing described herein.

3.      On October 11, 2019, the Debtor issued a promissory note to PTH (as amended and restated, the "Secured Promissory Note"), formally documenting PTH's loan to the Debtor and providing terms for its repayment (the "PTH Loan").  Attached hereto as **Exhibit "A"** is a true and correct copy of the Proof of Claim filed by PTH on January 23, 2020, to which PTH attached the Secured Promissory Note as well as a related UCC-1 Financing Statement, recorded on October 11, 2019 ("UCC-1").

---

[2] As set forth in the Debtor's *Second Amended Disclosure Statement With Respect to Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 262], FF Global is an entity created to implement Faraday Future's management incentive program.  Through FF Global, certain management members and employees of Faraday Future hold interests in Smart King Ltd., the parent company of Faraday Future, the mobile ecosystem company founded by the Debtor, the stabilization and growth of which is the focus of the Debtor's plan of reorganization filed in this case.

2

4.      For administrative convenience, the Debtor caused certain proceeds of the PTH Loan to be paid directly to various professionals, including PSZJ, prior to the Petition Date.  As stated in its Application, PSZJ received amounts totaling $1 million from such loan proceeds.

5.      The Secured Promissory Note was made explicitly, clearly and conspicuously subject to the September 3, 2019, order entered by the United States District Court for the Central District of California in the pre-petition enforcement proceeding brought by Shanghai Lan Cai Asset Management Co., Ltd., against the Debtor, which states in relevant part:

> **This security grant is subject in all respects to the Minute Order entered September 3, 2019 in Case No. 2:18-CV-10255 SJO (MRWx) in the United States District Court for the District Court of the Central District of California.**

6.      Except as described in this declaration, to the best of my knowledge, other than PSZJ's representation of the Debtor in this bankruptcy case, PSZJ has no direct or indirect relationship with PTH, does not now represent and has never in the past represented PTH or its officers or members in any capacity and is not a creditor or debtor of PTH.

7.      In addition to the information set forth in the Application and the *Declaration of Richard M. Pachulski in Support of Debtor's Application Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 18-2], in order to address this Court's Amended Standards to be Employed in the Review of Applications for Authorization of Employment of Professionals, I state the following:

a.      The professionals at PSZJ principally responsible for the representation of the Debtor in the bankruptcy case and our respective current hourly rates are:  myself ($1445); Jeffrey W. Dulberg ($895); and Malhar S. Pagay ($875).  Copies of the resumes of each professional are attached hereto as **Exhibit "B"**.

b.      A true and correct copy of the retention agreement between PSZJ and the Debtor is attached hereto as **Exhibit "C"**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

c.  PSZJ (i) does not have a pre-petition claim against the Debtor; (ii) does not have and has not had any connection with any insider of the Debtor or any insider of an insider of the Debtor; and (iii) has not represented, is not representing, and does not intend to represent any related debtor in a bankruptcy case in this or any other court.

d.  I am familiar with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules and shall comply with them.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February __4__, 2020

_____
Richard M. Pachulski

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

**RECEIVED**

JAN **2 3** 2020

**LEGAL SERVICES**

Filed: USBC - Central District of California
Yueting Jia   (B10)
19-24804 (VPZ)

**YT1**

0000000049

---

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | YUETING, JIA |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:19-bk-24804-VZ |

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

**Part 1:   Identify the Claim**

| | |
|---|---|
| 1. Who is the current creditor? | Pacific Technology Holding LLC, a Delaware limited liability company |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| | |
|---|---|
| 2. Has this claim been acquired from someone else? | ☒ No |
| | ☐ Yes.  From whom? _____ |

| | | |
|---|---|---|
| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Mattias Aydt | |
| | Name | Name |
| | 1209 Orange Street | |
| | Number     Street | Number     Street |
| | Wilmington     DE     19801 | |
| | City     State     ZIP Code | City     State     ZIP Code |
| | Contact phone _____ | Contact phone _____ |
| | Contact email _____ | Contact email _____ |
| | | |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| | | |
|---|---|---|
| 4. Does this claim amend one already filed? | ☒ No | |
| | ☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____ MM / DD / YYYY |

| | |
|---|---|
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
| | ☐ Yes.  Who made the earlier filing? _____ |

---

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |

| | |
|---|---|
| 7. How much is the claim? | $ _____ 2,687,629.00 . Does this amount include interest or other charges?<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Secured loan.  See Exhibit 1 and Exhibit 2 |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>Nature of property:<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☑ Other. Describe:    Personal property as stated in the Secured Promissory Note<br><br>Basis for perfection:    UCC-1 filed 10/11/2019 (attached with Secured Prom. Note)<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:    $ _____    Unknown; excess of debt<br>Amount of the claim that is secured:    $    2,287,629.00<br>Amount of the claim that is unsecured:  $ _____ 0    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:    $ _____ 0.00<br><br>Annual Interest Rate (when case was filed) 8.00 %<br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:*                                 **Amount entitled to priority**<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).      $_____<br><br>☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).      $_____<br><br>☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).      $_____<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).      $_____<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).      $_____<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.      $_____<br><br>\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. |

## Part 3:  Sign Below

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date   01/23/2020<br>                 MM / DD / YYYY<br><br>*David W. Meadows*<br>Signature<br><br>**Print the name of the person who is completing and signing this claim:**<br><br>Name    David           W.           Meadows<br>          First name          Middle name       Last name<br><br>Title<br><br>Company   Law Offices of David W. Meadows<br>          Identify the corporate servicer as the company if the authorized agent is a servicer.<br><br>Address   1801 Century Park East, Suite 1235<br>          Number      Street<br>          Los Angeles            CA     90067<br>          City                  State    ZIP Code<br><br>Contact phone   (310) 557-8490          Email david@davidwmeadowslaw.com |

# EXHIBIT 1

THIS SECURED PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. IT MAY NOT  BE SOLD OR TRANSFERRED IN THE ABSENCE OF REGISTRATION OR AN EXEMPTION THEREFROM UNDER SAID ACT.

## SECURED PROMISSORY NOTE

$2,687,629.00                                                    October 11, 2019

FOR VALUE RECEIVED, the undersigned, Yueting Jia, an individual and resident of California ("**Issuer**"), HEREBY PROMISES TO PAY to the order of Pacific Technology Holding LLC, a Delaware limited liability company ("**Holder**"), the principal amount of $2,687,629.00 together with interest accrued on the unpaid principal amount of this secured promissory note (this "**Note**"), payable as provided herein. This Note is issued in substitution and replacement of that certain Secured Promissory Note, dated as of October 11, 2019, issued by the Issuer to the Holder, which was erroneously (due to scrivener's error) in the aggregate principal amount of $2,677,629.00 (the "**Original Note**"). The Issuer hereby assumes and affirms the Original Note and all obligations arising in connection therewith.   The indebtedness evidenced by this Note is continuing indebtedness, the liens granted herein are continuing liens, and nothing herein shall be deemed to constitute payment, settlement or a novation of the Original Note or release or otherwise adversely affect any lien or security interest securing such indebtedness.

## ARTICLE I
### TERMS OF PAYMENT

SECTION 1.01. Payments. Payment of the principal amount of this Note or, if less, the aggregate unpaid principal amount of this Note together with interest accrued on the unpaid principal amount shall be made on October 11, 2020 (the "**Maturity Date**").  The principal and interest on this Note is payable in lawful money of the United States in immediately available funds at such place as Holder hereof may from time to time designate in writing to Issuer. Whenever any payment hereunder shall be stated to be due on a day other than a business day, such payment shall be made on the next succeeding business day, and such extension of time shall in such case be included in the computation of payment of interest.

SECTION 1.02. Prepayments. Issuer may, on any business day, prepay the then outstanding principal amount of this Note in whole or in part, together with accrued interest to the date of such prepayment on the principal amount prepaid without premium or penalty.

SECTION 1.03. Interest. Interest shall accrue on the outstanding principal amount of this Note at a rate per annum equal to 8.00%. Interest shall be payable in arrears as set forth in Section 1.01 above. Accrued interest shall be compounded annually.

SECTION 1.04. Computations. All computations of interest shall be made on the basis of a year of 365 or 366 days, as the case may be, for the actual number of days (including the

1

first day but excluding the last day) occurring in the period for which such interest is payable.

## ARTICLE II
### EVENTS OF DEFAULT

SECTION 2.01. <u>Events of Default</u>. The following shall constitute "**Events of Default**" under this Note:

(a)    Issuer fails to pay timely any principal or interest under this Note on the date the same becomes due and payable, and such failure is not cured within ten (10) business days;

(b)    Issuer, pursuant to or within the meaning of Title 11 of the United States Code, or any similar federal, state or foreign law for the relief of debtors or any arrangement, reorganization, assignment for the benefit of creditors or any other marshalling of the assets and liabilities of Issuer ("**Bankruptcy Law**"):

(i)    commences a voluntary case or proceeding;

(ii)    consents to the entry of an order for relief against him in an involuntary case or proceeding;

(iii)    consents to the appointment of a receiver, trustee, assignee, liquidator, custodian or similar official under any Bankruptcy Law ("**Custodian**") of him or for all or any substantial portion of his property or assets;

(iv)    makes a general assignment for the benefit of his creditors; or

(c)    an involuntary case or proceeding is commenced against Issuer under any Bankruptcy Law and is not dismissed, bonded or discharged within sixty (60) days thereafter, or a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

(i)    is for relief against Issuer in an involuntary case or proceeding; or

(ii)    appoints a Custodian of Issuer or for all or substantially all of his properties;

and in each case under this Section 2.01(c) the order or decree remains unstayed and in effect for sixty (60) days.

SECTION 2.02. <u>Effect of Event of Default</u>.  If any Event of Default shall have occurred and be continuing, Holder may proceed to protect and enforce its rights either by suit in equity or by action at law, or both, whether for specific performance of any provision of this Note or in aid of the exercise of any power granted to Holder under this Note.  In the event it becomes necessary for Holder to employ legal counsel or to take any other action to collect any sums due under this Note, to enforce any provisions of this Note, or to protect any of Holder's rights under this Note, Issuer agrees to pay to Holder, to the extent permitted by law, all costs (including reasonable attorneys' fees) of any such legal proceedings or actions, all of which shall be and become a part of the amount due under this Note.

## ARTICLE III
## SECURITY GRANT

(a) Issuer hereby grants, pledges, assigns, transfers, hypothecates and sets over to Holder a valid, continuing first priority security interest in all of Issuer's right, title and interest in the Collateral (as described below), in each case whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located, in order to secure prompt, full, faithful and timely payment and performance of the obligations under this Note, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Issuer, would accrue on such obligations, whether or not a claim is allowed against Issuer for such amounts in the related bankruptcy proceeding) (collectively, the "**Obligations**"), whether at stated maturity, acceleration or otherwise, together with all extensions or renewals thereof, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, whether or not jointly owned with others, and whether or not such Obligations under the Note are from time to time decreased or extinguished and later increased, created or incurred, and all or any portion of such Obligations that are paid, to the extent all or any party of such payment is avoided or recovered directly or indirectly from Holder as a preference, fraudulent transfer or otherwise. "Collateral" shall include all of Issuer's interests in all of the following types of personal property, wherever located and whether now owned or hereafter acquired (collectively, the "**Collateral**"):

(i)     all Accounts;

(ii)    all Chattel Paper;

(iii)   all Money and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

(iv)    all Documents;

(v)     all General Intangibles (including patents, trademarks, service marks, copyrights, and other intellectual property), Payment Intangibles and Software;

(vi)    all Goods, including Inventory, Equipment and Fixtures;

(vii)   all Instruments;

(viii)  all Investment Property;

(ix)    all Letter-of-Credit Rights and other Supporting Obligations;

(x)     all Records;

(xi)    all Commercial Tort Claims; and

(xii)   all Proceeds and Accessions with respect to any of the foregoing Collateral.

3

provided, that Collateral (and each defined term used in the definition of Collateral) shall not include any Excluded Property (as defined below) for so long as such property constitutes Excluded Property: and *provided, further*, that if and when any of the exclusions in the definition of Excluded Property cease to apply to such property, such property will automatically cease to be Excluded Property and will be deemed at all times from and after such date to constitute Collateral. **"Excluded Property"** means (i) any General Intangibles or other assets of Issuer (whether owned or held as licensee or lessee, or otherwise), to the extent that (A) such General Intangibles or other assets are not assignable or capable of being encumbered as a matter of law or under the terms of the license, lease or other agreement applicable thereto (but solely to the extent that any such restriction shall be enforceable under applicable law), without the consent of the licensor or lessor thereof or other applicable party thereto and (B) such consent has not been obtained; *provided, however*, that the foregoing exclusion shall not be construed to include, (1) any General Intangible or other asset which is an Account Receivable or a proceed of, or otherwise related to the enforcement or collection of, any Account Receivable, or Goods that are the subject of any Account Receivable; (2) any and all proceeds of any General Intangibles or other assets that are otherwise excluded to the extent that the assignment or encumbrance of such proceeds is not so restricted; and (3) immediately upon the ineffectiveness, lapse or termination of any such restriction or upon obtaining the consent of any such licensor, lessor or other applicable party's consent with respect to any such otherwise excluded General Intangibles or assets, such General Intangibles and other assets as well as any and all proceeds thereof that might have theretofore have been deemed Excluded Property; and (ii) any intent-to-use trademark applications for which an amendment to allege use or statement of use has not been filed under 15 U.S.C. § 1051(c) or 15 U.S.C. § 1051(d), respectively, or if filed, has not been deemed in conformance with 15 U.S.C. § 1051(a) or examined and accepted, respectively, by the United States Patent and Trademark Office; provided, however, that upon the filing and acceptance of any intent-to-use trademark application, such intent-to-use application shall immediately become and be included as "Collateral". Each category of Collateral set forth above shall have the meaning set forth in Division 9 of the California Uniform Commercial Code in effect on the date hereof (the **"UCC"**). **This security grant is subject in all respects to the Minute Order entered September 3, 2019 in Case No: 2:18-CV-10255 SJO (MRWx) in the United States District Court for the Central District of California.**

(b) Issuer agrees that from time to time, at the expense of Issuer, Issuer will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Holder may request, in order to perfect any security interest granted or purported to be granted hereby or to enable Holder to exercise and enforce its rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, Issuer will: (i) execute (if necessary) and file such financing or continuation statements, or amendments thereto, (ii) execute and deliver, and cause to be executed and delivered, agreements establishing that Holder has control of Deposit Accounts and Investment Property of Issuer, and (iii) execute and deliver such further instruments and take such further action as Holder may reasonably request to effect the intent and purposes hereof, to perfect and continue perfected Holder's security interests in the Collateral. Issuer hereby authorizes Holder to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral (including any financing statement indicating that it covers "all assets" or "all personal property" of Issuer).

(c) Issuer shall:

4

(i)     permit Holder, upon reasonable prior notice to inspect Issuer's books and records, including computer files, and to make copies, and to test, inspect, and appraise the Collateral, in order to verify any matter relating to either Issuer or the Collateral.

(ii)     except as otherwise provided in this section, continue to collect, at his own expense, all amounts due or to become due to it under the Accounts. In connection with such collections, Issuer may take (and, upon the occurrence and during the continuance of an Event of Default at Holder's direction, shall take) such action as Issuer may deem necessary or advisable to enforce collection of amounts due or to become due under the Accounts; *provided*, however, that Holder shall have the right at any time, upon the occurrence and during the continuation of an Event of Default, upon written notice to Issuer of his intention to do so, to (a) notify the account debtors or obligors under any Accounts of the assignment of such Accounts to Holder and to direct such account debtors or obligors to make payment of all amounts due or to become due to Issuer thereunder directly to Holder, (b) notify each person maintaining a lockbox or similar arrangement to which account debtors or obligors under any Accounts have been directed to make payment to remit all amounts representing collections on checks and other payment items from time to time sent to or deposited in such lockbox or other arrangement directly to Holder, (c) enforce collection of any such Accounts at the expense of Issuer, and (d) adjust, settle or compromise the amount or payment thereof, in the same manner and to the same extent as Issuer might have done. After receipt by Issuer of the notice from Holder referred to in the proviso to the preceding sentence, (1) all amounts and proceeds (including checks and other Instruments) received by Issuer in respect of the Accounts shall be received in trust for the benefit of Holder hereunder, shall be segregated from other funds of Issuer and shall be forthwith paid over or delivered to Holder in the same form as so received (with any necessary endorsement), and (2) Issuer shall not, without the written consent of Holder, adjust, settle or compromise the amount or payment of any Account, or release wholly or partly any account debtor or obligor thereof, or allow any credit or discount thereon.

(d) Issuer hereby irrevocably appoints Holder as Issuer's attorney-in-fact, effective upon the occurrence and during the continuance of an Event of Default hereunder, with full authority in the place and stead of Issuer and in the name of Issuer, Holder or otherwise, from time to time in Holder's discretion, to take any action and to execute any instrument that Holder may deem necessary or advisable to accomplish the purposes of this Note, including, without limitation:

(i)     to obtain and adjust insurance required to be maintained by Issuer;

(ii)     to ask for, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(iii)     to receive, endorse and collect any drafts or other Instruments, Documents, Chattel Paper and other documents in connection with clauses (i) and (ii) above;

(iv)     to file any claims or take any action or institute any proceedings that Holder may deem necessary for the collection of any of the Collateral or otherwise to enforce or protect the rights of Holder with respect to any of the Collateral;

5

(v)    to pay or discharge liens levied or placed upon the Collateral, the legality or validity thereof and the amounts necessary to discharge the same to be determined by Holder in its reasonable discretion, any such payments made by Holder to become obligations of Issuer to Holder, due and payable immediately without demand;

(vi)    to sign and endorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications and notices in connection with Accounts and other documents relating to the Collateral; and

(vii)    sell the Collateral at one or more public or private sales.

(e)    The powers conferred on Holder hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Except for the exercise of reasonable care in the custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Holder shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral. Holder shall be deemed to have exercised reasonable care in the custody and preservation of Collateral in its possession if such Collateral is accorded treatment substantially equal to that which Holder accords its own property.

(f)    In addition to all other rights and remedies provided for herein or otherwise available to it, Holder may exercise in respect of the Collateral, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral), and also may (i) require Issuer to, and Issuer hereby agrees that he will at his expense and upon request of Holder forthwith, assemble all or part of the Collateral as directed by Holder and make it available to Holder at a place to be designated by Holder that is reasonably convenient to both parties, (ii) subject to the rights of third parties, enter onto the property where any Collateral is located and take possession thereof with or without judicial process, (iii) prior to the disposition of the Collateral, store, process, repair or recondition the Collateral or otherwise prepare the Collateral for disposition in any manner to the extent Holder deems appropriate, (iv) subject to the rights of third parties, take possession of Issuer's premises or place custodians in exclusive control thereof, remain on such premises and use the same and any of Issuer's equipment for the purpose of completing any work in process, taking any actions described in the preceding clause (iii) and collecting any Obligation, (v) sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Holder's offices or elsewhere, for cash, on credit or for future delivery, at such time or times and at such price or prices and upon such other terms as Holder may deem commercially reasonable, (vi) exercise dominion and control over and refuse to permit further withdrawals from any Deposit Account maintained with Holder and provide instructions directing the disposition of funds in Deposit Accounts not maintained with Holder, and (vii) provide entitlement orders with respect to security entitlements and other Investment Property constituting a part of the Collateral and, without notice to Issuer, transfer to or register in the name of Holder or any of its nominees any or all of the Collateral constituting Investment Property. Holder may be the purchaser of any or all of the Collateral at any such sale and Holder, shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such public sale, to use and apply any of the Obligations as a credit on account of the purchase price for any Collateral payable by Holder at such sale. Issuer hereby waives any claims against Holder arising by reason of the fact that the price at which any Collateral may have been sold at such a private sale was less than the price which might have been obtained at

6

a public sale, even if Holder accepts the first offer received and does not offer such Collateral to more than one offeree. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Obligations, Issuer shall be liable for the deficiency and the reasonable fees of any attorneys employed by Holder to collect such deficiency.

(d)    Upon the unconditional satisfaction of the Obligations in full, (i) the security interest in the Collateral in favor of Holder granted hereby shall automatically terminate without any further action on the part of Issuer or Holder, (ii) Issuer and its designees shall be authorized to file such terminations of such security interest as Issuer reasonably deems necessary, and Holder shall execute and deliver, at Issuer's expense, such further evidence of the termination or release of such security interest as Issuer may reasonably request.

<div align="center">

ARTICLE IV
MISCELLANEOUS

</div>

SECTION 4.01. <u>Amendments and Waiver</u>. Any provision of this Note may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by Issuer and Holder, or in the case of a waiver, by Holder. No failure or delay by Holder in exercising any right, power or privilege hereunder shall operate as a waiver nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege.

SECTION 4.02. <u>Remedies</u>. No remedy made available by any of the provisions of this Note is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Issuer hereby waives presentment for payment, demand, notice of dishonor, protest and notice of protest of this Note.

SECTION 4.03. <u>Assignment</u>. This Note shall be binding upon, inure to the benefit of and be enforceable by any successor in interest to Holder; *provided* that Holder shall not directly or indirectly assign any of its rights or obligations under this Note (including by way of security interest) without the prior written consent of Issuer. Any assignment or transfer in contradiction of this Section 4.03 shall be null and void.

SECTION 4.04. <u>Severability</u>. In case any particular provision of this Note shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, such provision, as to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of this Note or affecting the validity or enforceability of such provision in any other jurisdiction. Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 4.05. <u>Governing Law</u>. This Note shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to any conflicts of laws principles thereof that would otherwise require the application of the law of any other jurisdiction.

<div align="center">7</div>

SECTION 4.06. <u>Time of the Essence</u>. Time is of the essence with regard to this Note.

*[Signature Pages Follow]*

8

IN WITNESS WHEREOF, Issuer has caused this Note to be duly executed and delivered thereunto duly authorized as of the date first above written.

ISSUER:

YUETING JIA

Acknowledged and Agreed:

HOLDER:

PACIFIC TECHNOLOGY HOLDING LLC

By:_____
Name: Jin Jin
Title: President

*Signature Page to Secured Promissory Note*

# EXHIBIT 2

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

CT Fulfillment
555 Capitol Mall, Suite 1150
Sacramento, CA 95814

7207829-1
Account 60574850

19-7741340450
10/11/2019 16:27

FILED
CALIFORNIA
SECRETARY OF STATE

SOS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Jia | Yueting | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7 Marguerite Drive | Rancho Palos Verdes | CA | 90275 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Pacific Technology Holding LLC | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1209 Orange Street | Wilmington | DE | 19801 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

All assets of Debtor, whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired, wherever the same may be located.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
File with: California - Secretary of State

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1801 Century Park East, Suite 1235, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **PROOF OF CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 9/17/19, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On _____, I caused to be served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/23/2020 | David W. Meadows | /s/ David W. Meadows |
|-----------|------------------|----------------------|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**1. Continued (Via ECF):**

Office of the United States Trustee: Kelly Morrison @ United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

- Proposed counsel to the Debtor and Debtor in Possession: Via ECF @ Jeffrey W Dulberg,
  jdulberg@pszjlaw.com; Malhar S Pagay, mpagay@pszjlaw.com; bdassa@pszjlaw.com

**ECF Notice Parties:**

- **Tanya Behnam**   tbehnam@polsinelli.com, tanyabehnam@gmail.com
- **Alexandra N Krasovec**   krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- **David W. Meadows**   david@davidwmeadowslaw.com
- **Christopher E Prince**   cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- **Randye B Soref**   rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- **Emily Young**   pacerteam@gardencitygroup.com,
  rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

C
O
U
R
T

D
O
C
K
E
T

| 19-24804 | 3-1 | 1/23/2020 | TRS |
|----------|------|-----------|-----|
| CASE NO. | COURT CLAIM NO. | DATE RETRIEVED | RECEIVED BY |

# EXHIBIT B





10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4003

# Richard M. Pachulski

Tel: 310.277.6910      |      rpachulski@pszjlaw.com

**EDUCATION**

University of California at
Los Angeles (B.A., *summa
cum laude,* 1976)

Stanford University (J.D.
1979)

Phi Beta Kappa; Pi Gamma
Mu

**BAR AND COURT
ADMISSIONS**

1979, California

**CLERKSHIPS**

Judicial extern, Robert M.
Takasugi (C.D. Cal. 1978-79)

Mr. Pachulski is widely regarded as one of the preeminent corporate restructuring attorneys in America. He was recently named an "Attorney of the Year" by American Lawyer Media's *Recorder*, and has been lead counsel on several deals that have been recognized as "Deal of the Year" by *The M&A Advisor, Turnaround & Workouts* and *Global M&A Network*. Over the past few years, he was lead counsel in the corporate restructurings of American Suzuki Motor Corporation, Solyndra LLC, and Mesa Airlines. Additionally, Mr. Pachulski also recently was lead bankruptcy counsel to Lehman Brothers in a matter involving over $2 billion due to Lehman Brothers.

For the past four decades, Mr. Pachulski has represented debtors and creditors' committees in both out-of-court workouts and in-court proceedings. In addition, he has extensive experience in business reorganizations, as well as debtor/creditor litigation across numerous industries. During the 1980s, he was a well-known chapter 7 and chapter 11 trustee. His work over this time span led to inclusion in the American College of Bankruptcy, an honorary association of the nation's most esteemed bankruptcy and insolvency professionals.

Other career highlights include representation of the debtors in MagnaChip Semiconductor, Breed Technologies, Sizzler International, Covad Communications and Peregrine Systems; representation of the Circuit City Creditors' Committee and, thereafter, the Circuit City Liquidating Trustee; representation of the ad hoc bondholders' committee in Adelphia Corporation; and lead counsel in the restructuring of the debts of internationally acclaimed singer-songwriter Toni Braxton. In total, he has assisted in tens of billions of dollars in restructurings during his career.

Several national publications and organizations frequently recognize Mr. Pachulski for his work in the restructuring and turnaround field. For example, *Chambers USA* repeatedly ranks him as a top-tier national bankruptcy/restructuring attorney; *Best Lawyers in America* has listed him among the nation's top bankruptcy attorneys every year since 1995; *K&R*

Richard M. Pachulski (Cont.)

---

*Restructuring Register* and *Turnaround & Workouts* listed him as one of
America's top restructuring professionals; *California Law Business* listed
him as one of "California's 100 Most Influential Attorneys;" and *Los Angeles
Business Journal* listed him as one of fifteen top banking & finance
"turnaround artists." He also holds an "AV Preeminent Peer Rating,"
*Martindale-Hubbell's* highest recognition for ethical standards and legal
ability. In 2016, he was named to *Thomson Reuters*' "Top 10: 2016 Southern
California Super Lawyers" list and in 2018 was listed by Who's Who Legal
among "Thought Leaders - Restructuring & Insolvency."

Mr. Pachulski is a graduate of UCLA, and received his J.D. from Stanford
University. He is admitted to practice in California, and is a resident in our
Los Angeles office.

## Representations

Chapter 11 debtors in American Suzuki Motor Corporation; Highway
Technolgies; Peregrine Systems; Breed Technologies; Solyndra; Covad
Communications Group, Commonwealth Equity Trust; Sizzler International;
Toni Braxton; Mesa Air Group; MagnaChip Semiconductor

Creditors' committees in Circuit City; First Executive Corporation; Northpoint
Communications

Ad hoc bondholders' committee in Adelphia Communications

Lehman Brothers in Palmdale Hills Property

Trustees in Triad America Corporation and Ezri Namvar

## Professional Affiliations

Fellow, American College of Bankruptcy

Member, Financial Lawyers Conference Board of Governors (1989-92)

## Publications

Coauthor, "Chapter 11 - The Bank of Last Resort," 45 *Business Lawyer* 261
(1989)

Coauthor, "Plan Wars - The Use of Chapter 11 to Coax Continued Financing
From a Reluctant Lender," 738 PLI/Comm. 7 (1996)





10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4003

# Jeffrey W. Dulberg

Tel: 310.277.6910    |    jdulberg@pszjlaw.com

**EDUCATION**

Swarthmore College (B.A.
1991)

University of California, Los
Angeles (J.D. 1995)

Moot Court Honors Program

**BAR AND COURT
ADMISSIONS**

1995, California

Mr. Dulberg has substantial experience representing debtors, creditors, trustees, asset purchasers, and creditors' committees in insolvency matters throughout the country. He has served as lead counsel for clients in a wide range of industries such as retail, technology, food services, new media, and real estate, among others. Mr. Dulberg has played a key role in several Chapter 11 matters that have been awarded accolades such as "Chapter 11 Reorganization of the Year" by the M&A Advisor, and "Turnaround of the Year" and "Transaction of the Year, Mid-Size Company" by the *Turnaround Management Association*. In addition, Mr. Dulberg maintains an active practice representing specialty lenders in a variety of settings.

He has handled numerous out-of-court and commercial matters, including a wide variety of sales, and appeals before the Bankruptcy Appellate Panel of the Ninth Circuit. Mr. Dulberg lectures frequently on chapter 11 issues and he has spoken nationwide regarding these matters.

Mr. Dulberg is a graduate of Swarthmore College (with honors) and received his J.D. from UCLA, where he was a teaching assistant with the Department of Political Science. On several occasions, most recently for 2019, Mr. Dulberg was named a "Super Lawyer" in the field of Bankruptcy & Creditor/ Debtor Rights in a peer survey conducted by Law & Politics and the publishers of *Los Angeles* magazine, an honor bestowed on only 5% of Southern California attorneys. He was also listed in the 2018 and 2019 editions of *Best Lawyers in America* for *Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law and Litigation - Bankruptcy*. He is admitted to practice in California and is a resident in our Los Angeles office.

## Representations

Chapter 11 debtors: The Walking Company; Channel Technologies; Z Gallerie; Select Staffing; Ultura (LA) Inc.; Meridian Sports Clubs *dba* Bodies in Motion; Contessa Foods; The Parent Company; Barbeques Galore;

Jeffrey W. Dulberg (Cont.)

People's Choice Home Loan; Cache Inc.; Prime Measurement Products; Olympia Group; RFB Cellular; Trend Technologies; Track 'n Trail

Creditors' committees: KSL Media; Freedom Communications (II); Western Convenience Stores; Hot Dog on a Stick; No Fear; B&B Bachrach, Inc. dba Bachrach Men's Clothing, Select Snacks/Jay's Foods; Pike Nursery; Sega GameWorks; Mercury Plastics; Custom Food Products (trade committee);

Secured lenders in Nasty Gal; Meruelo Maddux Properties

Creditors/landlord representations: Genesis Capital; Second Generation; The Sylmark Group; Mid-Valley Properties

## Professional Affiliations

Board of Directors, Los Angeles Bankruptcy Forum

Member, Turnaround Management Association

## Programs and Lectures

NACM/West Coast Apparel & Footwear Credit Association, American Bankruptcy Institute, Turnaround Management Association, Valley Credit Professionals, Credit Managers Association, Los Angeles Bankruptcy Forum, Commercial Real Estate Women, International Women's Insolvency & Restructuring Confederation (IWIRC), Crew Network





10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4003

# Malhar S. Pagay

Tel: 310.277.6910    |    mpagay@pszjlaw.com

**EDUCATION**

Yale University (B.A. 1989)

University of Southern
California (J.D. 1994)

**BAR AND COURT
ADMISSIONS**

1997, California

**CLERKSHIPS**

Law clerk, Judge Erithe A.
Smith (Bankr. C.D. Cal.
1994-96)

Mr. Pagay is a business lawyer whose practice focuses on the development and implementation of strategic alternatives for and against distressed businesses. He has substantial experience representing chapter 11 debtors, trustees, unsecured creditors, creditors' committees, and other parties in the contexts of bankruptcy cases, adversary proceedings, commercial litigation, mediations, domestic and international business transactions, business reorganizations, and out-of-court corporate restructurings of debt. He has broad industry experience, including healthcare and life sciences, real estate, technology, retail, manufacturing, transportation, sports, and entertainment. Recent representations include advising a creditors' committee in connection with a successful hospital reorganization; assisting physician groups in resolving disputes with their care network and affiliated hospital, respectively; counseling a company in connection with the multiple sales of resort and industrial properties throughout the United States; and completing the sale through section 363 of the United States Bankruptcy Code of a $100 million Class A commercial office property over the objections of co-owners. He has served as principal counsel to China Export & Credit Insurance Corporation (SINOSURE) and its Chinese policyholders and clients in complex United States insolvency matters. Mr. Pagay is a member of the firm's Healthcare Restructuring Group. He has lectured both in the United States and internationally regarding a variety of legal issues, including cross-border transactions and insolvencies. He was named among "Southern California Super Lawyers: Rising Stars" in 2005, 2006, and 2007, and a "Super Lawyer" in the field of Bankruptcy & Creditor/Debtor Rights every year since 2009 in a peer survey conducted by Law & Politics and the publishers of *Los Angeles* magazine, an honor bestowed on only 5% of Southern California attorneys. Mr. Pagay holds an AV Preeminent Peer Rating (Martindale-Hubbell's highest recognition for ethical standards and legal ability). He has been listed among *The Best Lawyers in America* in the practice areas of Bankruptcy and Creditor Debtor Rights/Insolvency and Reorganization Law and Litigation – Bankruptcy in the publication's 2018 and 2019 editions. Mr. Pagay is a graduate of Yale University and received his J.D. from the University of Southern California.

Malhar S. Pagay (Cont.)

PACHULSKI

STANG

ZIEHL

JONES

## Representations

Asset acquirers: Fuji Photo Film USA; Genmar Holdings; Homestore.com

Creditors: China Export & Credit Insurance Corporation (SINOSURE); Wynn Las Vegas LLC; FUJIFILM Diosynth Biotechnologies; FUJIFILM Medical Systems USA

Financial institutions: Bank of Tokyo-Mitsubishi UFJ, Ltd. (Hong Kong)

Asset seller: DSL Transportation Services and subsidiaries.

Out-of-court restructurings/wind-downs: Bridge Pharmaceuticals; Handspring; the Mobile Solutions

Chapter 11 debtors:  AgriBioTech; Alert Cellular; Blue Earth; Gordian Medical, dba American Medical Technologies; AgriBioTech; Alert Cellular; Mike Tyson; Monaco Coach; Murray; Peregrine Systems; Sweet Factory Group

Creditors' committees: Adamson Apparel; Currie Technologies; Hawaii Medical Center; Pacifica Hospital of the Valley; Persik Productions

Physician groups: Consultant for Pathology & Laboratory Medicine and Wilshire Oncology Medical Group

Patient care ombudsman: Upland Surgical Institute

Chapter 11 trustee: Ezri Namvar and Namco Capital Group (special litigation counsel)

Postconfirmation matters: BCBG Max Azria Global Holdings

## Professional Affiliations

Lawyer Delegate, Ninth Circuit Judicial Council (2018-)

Chair, American Bar Association Business Law Section Health Care Committee Restructuring Subcommittee of the Health Law and Life Sciences Committee (2017-)

Co-chair, American Bar Association Section of International Law Insolvency Interest Group (2018-)

Member, American Law Institute-American Bar Association Commercial Law Advisory Panel (2009)

Member, American Health Lawyers Association

Chair (2006-07), Executive Committee (2003-), Beverly Hills Bar Association Bankruptcy Section

Member, Board of Governors, Beverly Hills Bar Association (2008-2010)

Malhar S. Pagay (Cont.)

PACHULSKI
STANG
ZIEHL
JONES

First Vice-Chair (2011-2012), Treasurer (2010-2011), Executive Committee
Member (2008-2013), Los Angeles County Bar Association International Law
Section

Member, Los Angeles County Bar Association Healthcare Law Section

Member, State Bar of California International Law Section Executive
Committee (2010-2013)

Member, State Bar of California Business Law Section Insolvency Law
Committee (2004-2007)

Member, American Bar Association Section of International Law & Practice,
China Law Section (2005-)

Member, American Bar Association Conference of Minority Partners in
Majority Corporate Law Firms (2003-)

Member, California Society for Healthcare Attorneys

Member, INSOL International

Member, The Inter-Pacific Bar Association

Member, Turnaround Management Association

Member, South Asian Bar Association of Southern California

Certified Commercial Arbitrator, Institute for Conflict Management LLC

Member, Health Care Restructuring Subcommittee of the American Bar
Association Business Law Section Health Law and Life Sciences Committee

Member, American Bar Association Health Law Section

## Programs and Lectures

"Current Trends and Issues in Chapter 11 Cases," Conference of Chief
Bankruptcy Judges of the Ninth Circuit (2019); "Restructuring Healthcare
Entities in Bankruptcy: Unique Challenges and Benefits of Chapter 11,"
Navigating Medicare, Medicaid, HIPAA, Overpayment Liability and More
(Strafford 2017); "Cross-Border Update," American Bankruptcy Institute
Cross-Border Insolvency Program (2017); "A General Overview of Legal and
Security Issues Arising From Employee Telecommuting," National Golf
Hardware Credit Exchange Conference (2017); "Restructuring the Healthcare
Provider: Successfully Navigating the Reorganization Process," ABA Health
Law Section Washington Summit (2016); "Cross-Border Insolvency
Proceedings," Canadian Bar Association National Insolvency Conference
(2016); "China's New Normal: How Far, How Deep, and What Type of
Impact?" AIRA Restructuring & Plan of Reorganization Conference (2015);
"Outbound Activity: Chinese Participation in Western Restructurings and
Insolvencies," ABI/NYU School of Law (2015); "U.S. Bankruptcies—Risks for
Chinese Exporters," China Export & Credit Insurance Corporation and Sun
Yat-sen University School of Business International Transactions Risk Forum
(2015); "Help! My Producer (or Software Licensee or Actor) Just Went

Malhar S. Pagay (Cont.)

PACHULSKI
STANG
ZIEHL
JONES

Bankrupt—Now What?" Beverly Hills Bar Association, Bankruptcy Law, Intellectual Property, Internet and New Media Sections (2012); "Setoff and Recoupment in Bankruptcy" and "Nuts and Bolts—Current Litigation Issues," Bankruptcy and Collections From a Government Perspective Seminar, National Association of Attorneys General (NAAG), National Attorney General's Training Institute (NAGTRI), States' Association of Bankruptcy Attorneys (SABA) (2011); "Impact of Corporate Restructurings and Financial Distress on International Trade," International Association of Young Lawyers (AIJA) International Trade & Transport Symposium (2011); "PRC Insolvency Law: The New PRC Bankruptcy Law, NPLS and Out-of-Court Workouts," American Bankruptcy Institute Third Annual Hawaii Bankruptcy Workshop (2010); "2010 - A Year of Economic Transition in China and the United States: Risks and Opportunities for Chinese Companies," Asian Legal Business In-House Summit (Beijing, China) (2009); "Recent Developments in Cross-Border Transactions," INSOL International Association of Restructuring, Insolvency & Bankruptcy Professionals North American Regional Seminar (2008); "Dealing With a Failed International Construction Project: A Case Study," Inter-Pacific Bar Association (IPBA) 18th Annual Conference (2008); "Economic Overview and Outlook - Downturn in the US to Burst the Bubble in China" (2008); "China as Top Creditor - The Evolving Opportunities for Chinese Companies to Invest Abroad" (2007), Association of Insolvency & Restructuring Advisors (AIRA) Restructuring and Investing Conference (Shanghai, China); "Bankruptcy/Insolvency - The Effects on Entertainment Industry Contracts," Black Entertainment and Sports Lawyers Association (BESLA) 27th Annual Conference (Cancun, Mexico) (2007); "Issues 2006: America's Best Lawyers" American Airlines/Forbes.com and SkyRadioNetwork.com (discussing impact of Bankruptcy Code amendments on business) (2006); Professor, Beijing Foreign Studies University School of Law (2012-2013)

## Publications

Sunbeam Products Inc. v. Chicago American Manufacturing LLC: New Hope for Licensees of Intellectual Property?
2012 INSOL International News Update (Oct. No. 10)

Author, "Section 105(a) of the Bankruptcy Code," 2007 *Annual Survey of Bankruptcy Law* 473 (West 2007); 2006 *Annual Survey of Bankruptcy Law* 415 (West 2006); 2005 *Annual Survey of Bankruptcy Law* 689 (West 2005)

Author, "Improving The Odds of Repayment In Bankruptcy," 51 *Practical Lawyer* 45 (August 2005)

Author, "Section 105(a) of the Bankruptcy Code in 2002-2003 -- Two Years of Continued Development," 2004 *Annual Survey of Bankruptcy Law* 645 (West 2004)

# EXHIBIT C

RETENTION AGREEMENT

This Agreement sets forth the terms of the retention of Pachulski Stang Ziehl & Jones LLP (the "Firm") to represent and advise the other undersigned party or parties (hereinafter referred to as the "Client").

A.  Conditions.

This Agreement will not take effect, and the Firm will have no obligation to provide legal services, until Client returns a signed copy of this Agreement and pays the initial deposit called for in Section H.

B.  Scope of Services.

The Firm is to represent and advise the Client with particular respect to the restructuring of his creditor relationships. Subject to payment of any retainers identified below, the Firm accepts its proposed employment and agrees to take such steps as are reasonably advisable to achieve Client's goals consistent with this agreement.

In the event the Client elects to become a debtor in a case under chapter 11 and the Court approves the Firm's employment, it is contemplated that, unless otherwise agreed, the Firm would serve as general bankruptcy counsel therein, would represent and appear for the Client concerning all matters concerning the administration of the case, would represent and appear for the Client with respect to motions to sell property, assume, assign or reject leases and other executory contracts, and would consult with the Client concerning the bankruptcy issues with respect to specific lawsuits, adversary proceedings or contested matters in the case, including contested objections to claims, disputes over the amounts owed in respect to executory contracts or leases and the obligations thereunder, and proceedings in which the Client is seeking the recovery of damages or avoidance of transfers. This Agreement does not cover representation, appearance or consultation by the Firm for the Client in respect to other legal proceedings, cases, or matters other than as expressly set forth above, although the Firm may elect to do so on the terms set forth herein if requested by the Client. By example only, this Agreement does not cover advice or representation regarding, matters of taxation, labor, regulatory, product liability, ERISA, probate/estate planning, criminal, non-bankruptcy court litigation or other non-bankruptcy or non-debtor/creditor specialties of the law.

Client agrees that the Firm should not be expected to provide services or incur expenses without recompense and intends by this agreement to bind itself and any bankruptcy estate which may be a successor to its assets to pay the Firm for its services and expenses. Client has been advised that there may exist case law indicating that Client's counsel cannot be recompensed from a chapter 7 estate of Client. In that regard, Client acknowledges that the Firm is not presently agreeing to represent the Client if he becomes a debtor under chapter 7 of the Bankruptcy Code. Client agrees that the Firm may withdraw in such instance. In any event, Client acknowledges that if the Firm, nonetheless, provides any services or incurs expenses while Client is a debtor in a chapter 7 case, then, for the time of the Firm's professionals and for the Firm's expenses, Client (as well as any other benefited party) should be jointly liable for such services or expenses at the Firm's then customary rates applicable in chapter 11 cases either based on this contract or under theories of *quantum meruit* (implied contracts for recompense at fair value).

1

C.  Digital or Electronic Communications.

Under applicable state law, communicating through digital or electronic means, including email ("Digitally") does not cause a communication to lose whatever state law privilege might apply.  Client communications, however, may lose their privileged nature if, by example, they can be accessed by someone outside the attorney-client relationship.  For emails sent to and from the regular email addresses of the Firm's attorneys, the Firm and Client have a reasonable expectation of privacy as to the Firm's email system because the Firm utilizes primarily internal staff to maintain such system.  On the other hand, the Firm cannot assure Client as to the expectations of privacy for the Client's email system or as to other Digital communications.  Nonetheless, Client hereby consents that the Firm may communicate with Client Digitally and may accept communications from Client transmitted Digitally.

D.  Client's Duties.

Client agrees to be truthful with the Firm, to cooperate, to keep the Firm informed of any information or developments which may come to Client's attention, to abide by this Agreement, to pay the Firm's bills on time, and to keep the Firm advised of Client's address, telephone number and whereabouts.  Client will assist the Firm in providing necessary information and documents and will appear when necessary at legal proceedings.

E.  Legal Fees and Billing Practices.

1.    Negotiability of Fees and Obligation of Client.

The rates set forth below are not set by law, but are negotiable between an attorney and client.  Thus, this written Agreement shall bind the parties, subject to the law.  If reimbursement of legal or other expenses are sought from an opposing party, Client acknowledges that the denial of such request or the amount awarded shall not limit the compensation to which the Firm is entitled hereunder.

2.    Rates, Covered Services and Billing Increments.

Client agrees to pay by the hour at 90% of the Firm's prevailing rates for all time spent on Client's matter by the Firm's legal personnel. Current hourly rates for legal personnel are reflected on the attached exhibit.  Such rates periodically are increased.  If Client declines to pay increased rates prior to incurrence of charges at such rates, the Firm will have the right to withdraw as attorney for Client. Attorney hourly rates vary depending upon the age, experience and specialized skills of the attorney involved.

Time is charged in minimum units of one-tenth (.1) of an hour. The time charged will include the time the Firm spends on telephone calls relating to Client's matter, including calls with Client, witnesses, opposing counsel or court personnel.  The legal personnel assigned to Client's matter may confer among themselves about the matter, as required and appropriate. When they do confer, each person will charge for the time expended, as long as the work done is reasonably necessary and not duplicative.  Likewise, if more than one of the legal personnel attends a meeting, court hearing or other proceeding, each will charge for the time spent.  The Firm will charge for waiting time in court and elsewhere and for travel time, as set forth in Section 3.b. herein, both local and out-of-town.

The time for which Client will be billed includes not only time spent directly on research or the preparation and review of documents or at court or other hearings, but also travel time and time spent in conference (in telephone or in person) with representatives of the Client or others in respect to the matter of representation.

2

If, as a result of the Firm's involvement with or representation of the Client, the Firm incurs expenses or its personnel spend time relating to any formal or informal production of documents, any written or oral discovery, an arbitration, a court or administrative proceeding, or any interview of or consultation with personnel of the Firm, Client also shall be liable to, and will be billed by, the Firm for expenses incurred and time spent at the regular hourly rates then in effect for involved Firm personnel. Such obligation shall accrue even if such expenses are incurred or time spent after the termination of the Firm's employment by Client unless incurred or spent as part of a successful suit or action by Client against the Firm.

   3.    Costs and Other Charges.

The Firm will incur various costs and expenses in performing legal services under this Agreement. Client agrees to pay for all reasonable and documented costs, disbursements and expenses in addition to the hourly fees.

      (a)    Generally. The attached exhibit reflects current charges for, *inter alia*, facsimile transmissions, in-house photocopying, reproduction and scan copying charges and mileage. The Firm's other costs, including outside photocopy charges and legal research, will be passed through to the Client at cost, provided that flat fee or other collective charges by third parties, such as for legal research, may be fairly allocated by the Firm among billable clients. Besides those detailed below, other common costs and expenses are service of process charges, filing and other court fees, court and deposition reporters' fees, jury fees, notary fees, deposition costs, secretarial overtime, telephone charges, messenger and other delivery fees, postage, local travel costs including parking and mileage, investigation expenses, consultants' fees, professional, mediator, arbitrator and/or special master fees and other similar items.

      (b)    Out-of-town travel. Client agrees to pay the reasonable and documented cost of transportation, meals, lodging and all other costs of any necessary out-of-town travel by the Firm's personnel. Client will be charged at half the Firm's standard hourly rates for the time legal personnel spend traveling.

      (c)    Experts, Consultants and Investigators. To aid in the preparation or presentation of Client's case, it may become necessary to hire expert witnesses, consultants or investigators. Client agrees to pay such fees and charges at cost. The Firm will select any expert witnesses, consultants or investigators to be hired, and Client will be informed of persons chosen and their charges.

Additionally, Client understands that if the matter proceeds to court action or arbitration, Client may be required to pay fees and/or costs to other parties in the action. Any such payment will be entirely the responsibility of Client.

   F.    Billing Statements and Non-Payment or Untimely Payment.

The Firm will send Client periodic statements for fees and costs incurred, typically monthly. Each statement will be payable upon receipt. Client may specifically request statements be issued at no less than monthly intervals. If a statement is not provided within 25 days after the end of a month, Client may request such statement and the Firm will provide it within 20 days. The statements shall include the amount, rate, basis of calculation or other method of determination of the fees and costs, which costs will be clearly identified by item and amount.

The Client is to pay such bills upon receipt and, if the Client does so, the Firm would not intend to seek legal entitlement to anything more. In the event of late or non-payment, the Firm has reserved the right to charge interest commencing 30 days after the initial billing at the lower of 10% per annum or the

3

maximum nonusurious rate which could be charged under applicable law, as well as to resign, subject to court approval where necessary. If at any time the Client asks the Firm to discontinue its work for the Client, the Firm will do so and provide the Client with a final billing as rapidly as possible.

The Firm contemplates, understands, and accepts that in the event the Client becomes a debtor in a proceeding under chapter 11 that is not dismissed, the obligation of the Client to pay the fees and expenses of the Firm accruing during the chapter 11 would be subject to court approval. In the event of the Client becoming a debtor in a bankruptcy or reorganization proceeding, if the Firm agrees to represent the Client in connection therewith, the Client agrees to timely execute such documents as the Firm may reasonably request for court approval of the Firm's employment on the terms set forth herein.

Additionally, if and when debtor in possession financing is obtained by the Client, the Firm may seek an appropriate carve-out in respect of the payment of fees and expenses incurred by the Firm.

G.    Client's Limited Waiver of Any Confidentiality of this Retention Agreement and of the Firm's Time and Expense Records.

To the extent that the Firm's ability to be employed or compensated requires it to permit a court or arbitrator to review this Agreement or its time and expenses records, the Client agrees that, in addition to any other disclosures of confidences or secrets permitted with the Client's consent, the Firm may file with the court or arbitrator and serve on appropriate parties copies of this Agreement and its time and expense records and may provide a narrative description of its services. In connection therewith, the Firm will endeavor, in good faith, to avoid unnecessary disclosures.

H.    Deposit / Retainer.

Client agrees to pay the Firm an initial deposit of $200,000 (the "Initial Deposit"). The hourly charges and expenses will be charged against the Initial Deposit.

The Initial Deposit is intended to be an evergreen retainer. The Initial Deposit, as well as any future deposit, will be held in the Firm's operating account. Thereafter, when the Firm bills the Client, the Client will be obligated to immediately remit the full amount of the bill and the Firm shall not be required to apply the deposit against the bill. Thus, throughout the representation the Firm would be expected to hold the evergreen retainer. This "evergreen" retainer is intended to provide the Firm a "cushion" against future defaults by the Client (including, without limitation, for any otherwise unpaid legal fees or expenses that may be incurred in the event the Client becomes a debtor in a case under chapter 7 of the Bankruptcy Code). After 90 days from the date the Firm's representation of the Client has terminated, the Firm will refund to the Client any remaining portion of the retainer minus the amount of unpaid costs and services. Client understands that if the Firm is asked to commence preparation for Client's filing of a chapter 11 case then the Firm intends to ask for an increase of the amount of the Initial Deposit to be provided hereunder to $400,000, or such other amount agreed-upon in writing between Client and the Firm.

Although Client hereby agrees that the Initial Deposit (and future deposits) need not be applied to interim billings, Client nonetheless authorizes the Firm (in its sole and unfettered discretion) to use all or any portion of the Initial Deposit (and future deposits) to pay the fees and other charges as they are incurred after remittance to client of a billing statement.

In all events as to any form of deposit or retainer, even when the Firm's representation of the Client has terminated, the Firm may withhold and not refund such portion of its remaining deposit or retainer as corresponds to the amount of estimated costs incurred and services rendered, but not yet billed. Also, when the Firm's representation of the Client has terminated, if the Firm believes in good faith that payments it received for costs and services may be subject to a claim for defeasance or avoidance,

4

the Firm may withhold such amounts until it believes, in good faith, that the risk has been eliminated. Further, the Firm may apply or credit against the withheld portion of the deposit or retainer the amount of payments actually avoided or recovered.

I.    Discharge and Withdrawal; Disposition of Files.

The Client may discharge the Firm at any time.  The Firm may withdraw as the Client's counsel with the Client's consent or for good cause.  Good cause includes the Client's breach of this Agreement, the Client's refusal to cooperate with the Firm or to follow the Firm's advice on a material matter or any fact or circumstance that would render the Firm's continuing representation unlawful or unethical.  In any event, the Firm may withdraw from representation of the Client upon the Firm's determination of the existence of a conflict of interest.  When the Firm's services conclude, all unpaid charges will immediately become due and payable.

During Client's representation by the Firm, the Firm will be maintaining a file that would contain original correspondence, evidence, pleadings and other documentation in tangible or electronic form, and may include original documents that have a legal effect, such as deeds or promissory notes.  The Firm shall endeavor in good faith initially to retain all such material items related to this representation, subject to reasonable destruction policies for electronic and other data ("Client Files").

At any time, upon Client's request, the Firm will deliver to the Client, its new counsel or as the Client directs, the Client Files, subject to the terms of any protective order or non-disclosure agreement, (along with any funds, other than the deposit or retainer, or different types of property of the Client in the Firm's possession), whether or not Client has paid for all services.  If there are multiple clients, the Firm may take direction as to Client Files or Client property from all clients, relevant clients or from such client or person as the clients have herein or otherwise agreed.  Client agrees to pay or reimburse the Firm for all costs of copying the Client Files for Client and retaining a copy of the Client File for the Firm's records, agrees to such retention and acknowledges that the Firm may also retain all of its work product.  Whether or not such payment or reimbursement obligation arises after the Firm's representation of Client has ended, it shall constitute part of the payment due to the Firm hereunder for services already rendered.

After the matter or the Firm's representation of Client has concluded, Client Files related to a matter may be destroyed by the Firm after a reasonable period of time, which reasonable period shall be deemed to be no longer than eighteen (18) months from the earlier of the time the matter ends or services conclude.  While the foregoing sets forth the Firm's obligations, please note that the Firm presently has a records retention policy pursuant to which (1) the Firm actually will endeavor to retain for a period of five years from the date services conclude Client Files that are not transferred to Client and are no longer needed for legal and/or business purposes, (2) the Firm may absorb certain of the related copy charges, and (3) Client Files would be destroyed after the 5-year period.  Although the Firm presently has such a policy, and, as a courtesy, may endeavor to reiterate this policy at the time services conclude, failure to adhere to the policy or give subsequent notice thereof to Client shall not alter, extend or expand the obligations to Client hereunder with respect to Client Files.

J.    Disclosure of Representations.

Based on the information the Firm has received to date, it is not aware of any current or past relationship with another party interested in the subject matter of this representation that would constitute a conflict of interest, nor does the Firm itself have an interest in the subject matter of the representation. However, in order to avoid representing parties with conflicts of interest, the Firm maintains a computerized conflict of interest index.

5

**Client agrees to provide the Firm with a comprehensive list of Client's creditors if Client is a debtor, Client's debtors, if Client is a creditor, or counter-parties or litigants if Client is engaged in a transaction or litigation.**

The Firm will utilize the list to comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules to be sure that the firm is "disinterested" and is in a position to make all required disclosures to a Bankruptcy Court.

### K. Permission to Represent Adverse Parties In Allowed Adverse Representations.

Client acknowledges that the Firm has represented, now represents, and will continue to represent numerous clients (which may include, without limitation, Client's or his affiliates' debtors, creditors, and direct competitors) over a wide range of industries and businesses and in a wide variety of matters. Given this, without a binding conflicts waiver, conflicts of interest might arise that could deprive Client or other clients of the right to select the Firm as their counsel. Thus, as an integral part of the engagement, Client agrees to, and is providing, the following blanket advance written waiver and acknowledgments:  (1) the Firm may, now or in the future, represent other entities or persons, including in litigation, adverse to Client or any affiliate on matters that are not substantially related to (a) the legal services that the Firm has rendered, is rendering, or in the future will render to Client under the engagement or (b) other legal services that the Firm has rendered, is rendering, or in the future will render to Client or any affiliate (an "Allowed Adverse Representation"); (2) Client will not, for itself or any other entity or person, assert that either (a) the Firm's representation of Client or any affiliate in any past, present, or future matter or (b) the Firm's actual, or possible, possession of confidential information belonging to Client or any affiliate is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation; (3) any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any affiliate, including the Firm's duty of loyalty to Client; and (4) an Allowed Adverse Representation will not undermine or impair the relationship between the Client and the Firm with respect to the Firm's representation of Client.  Client understands that the Firm has a duty of loyalty to him and that in certain jurisdictions Client's informed written consent may be required for the Firm to be adverse to Client even in an unrelated matter. Nonetheless, to secure the Firm's representation of Client and permit the Firm to represent others in Allowed Adverse Representations, Client agrees to the foregoing. In the event that Client hereafter comes to believe that there is any impairment of its relationship with the Firm due to an Allowed Adverse Representation, including as to the Firm's loyalty to Client's interests in its representation, Client will notify the Firm, retain new counsel and not seek to disqualify the Firm in any Allowed Adverse Representation.

### L. Arbitration.

CLIENT MAY BE ENTITLED TO ARBITRATE CERTAIN MATTERS PURSUANT TO CHAPTER 4, ARTICLE 13 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE.  OTHERWISE, IF ANY DISPUTE ARISES OUT OF, OR RELATES TO, A CLAIMED BREACH OF THIS AGREEMENT, THE PROFESSIONAL SERVICES RENDERED BY THE FIRM, OR CLIENT'S FAILURE TO PAY FEES FOR PROFESSIONAL SERVICES AND OTHER EXPENSES SPECIFIED, OR ANY OTHER DISAGREEMENT OF ANY NATURE, TYPE OR DESCRIPTION REGARDLESS OF THE FACTS OR THE LEGAL THEORIES WHICH MAY BE INVOLVED, SUCH DISPUTE SHALL BE RESOLVED BY ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION BY A SINGLE ARBITRATOR IN ACCORDANCE WITH THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION IN EFFECT AT THE TIME THE PROCEEDING IS INITIATED.  THE HEARINGS SHALL BE HELD IN THE LOS ANGELES OFFICES OF THE AMERICAN ARBITRATION ASSOCIATION AND EACH SIDE SHALL BEAR HIS/HER/ITS OWN COSTS AND ATTORNEY FEES.  UNDER THIS PROVISION, CLIENT WOULD NOT HAVE THE RIGHT TO, AND IS WAIVING ANY RIGHT TO, A JURY TRIAL IN RESPECT TO A MALPRACTICE CLAIM AGAINST THE FIRM.  IF THE CLIENT OR FIRM OPPOSE ARBITRATION BASED ON CAL. CIV. PROC. CODE §1281.2(c) OR ANY LAW OF SIMILAR

6

SUBSTANCE OR EFFECT (*i.e.*, BASED ON THE PENDENCY OF A PROCEEDING INVOLVING A THIRD PARTY THAT COULD RESULT IN CONFLICTING RULING), THE PARTY OPPOSING ARBITRATION HEREUNDER SHALL BE DEEMED TO CONSENT TO A JOINT ARBITRATION HEREUNDER OF SUCH OTHER DISPUTE.

THE FIRM OFTEN REPRESENTS CONSTITUENCIES IN BANKRUPTCY AND IN MANY OF THOSE CASES ITS FEES AND EXPENSES AND THEIR PAYMENT ARE SUBJECT TO COURT APPROVAL.  IN SUCH CASES, THE FIRM'S ENTITLEMENT TO FEES OR EXPENSES, DETERMINATION OF THEIR AMOUNT, AND COMPULSION OR PERMISSION FOR THEIR PAYMENT SHALL NOT BE SUBJECT TO ARBITRATION TO THE EXTENT THAT THE COURT WITH JURISDICTION OVER THE BANKRUPTCY CASE IS AN AVAILABLE FORUM IN WHICH TO RESOLVE SUCH ISSUES.

     M.  Disclaimer of Guarantee and Estimates.

Nothing in this Agreement and nothing in the Firm's statements to Client will be construed as a promise or guarantee about the outcome of the matter.  The Firm makes no such promises or guarantees. The Firm's comments about the outcome of the matter are expressions of opinion only.  Any estimate of fees given by the Firm shall not be a guarantee.  Actual fees may vary from estimates given.

     N.  Entire Agreement; No Third Party Beneficiaries.

This Agreement contains the entire agreement of the parties.  No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties and this Agreement is not intended to confer upon any person other than the Firm and Client any rights or remedies.

     O.  Binding Nature of Agreement.

This Agreement shall be binding upon and inure to the benefit of the Firm and Client.

     P.  Severability in Event of Partial Invalidity.

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

     Q.  Modification by Subsequent Agreement.

This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them, or an oral agreement only to the extent that the parties carry it out.

     R.  Miscellaneous Matters.

The Firm is being engaged by the Client, being the individual(s), entity or entities for which appear below signature blocks (other than the signature block for the Firm).  Unless reflected by a separate agreement, the Firm's employment of the Client does not include the representation of others, including individual officers, directors, partners, shareholders or employees of the Client.

The Firm employs a number of attorneys and paralegals (legal assistants).  Any of them or legal consultants employed by the Firm may perform services for the Client under this Agreement.

Several attorneys or members of the staff of the Firm have or may have spouses, parents, children, siblings, significant others or in-laws who are attorneys at other law firms and companies.  Upon

7

your request, the Firm will endeavor to obtain for you more specific information about the connections of the attorneys and staff members of the Firm.  The Firm's staff members and attorneys are aware of the Firm's strict policy against disclosing confidential information to anyone outside the Firm, which would include disclosures to spouses, parents, children, siblings, significant others or in-laws.  The Client acknowledges that relationships as described above do exist, but nonetheless does not consider the Firm's representation of the Client inappropriate.

The Firm maintains a policy that it does not provide opinion letters to its clients or to others who might wish to rely on such letters. If the Firm elects to vary from or alter this policy, it may require a further written agreement, as approved by the management of the Firm, which provides compensation to the Firm for the special risks attendant to the furnishing of such opinions.

The validity of this Agreement, its construction, interpretation, and enforcement, and the rights of the parties hereto shall be determined under, governed by, and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law.

This Agreement may be executed by the signatories through use of multiple copies of the signature pages.

Client acknowledges having received a signed duplicate copy hereof for Client to keep for its own records.

S.  Effective Date.

This Agreement will govern all legal services performed by the Firm on behalf of Client commencing with the date the Firm first performed services.  The date at the beginning of this Agreement is for reference only.  Even if this Agreement does not take effect, Client will be obligated to pay the Firm the reasonable value of any services the Firm may have performed for Client.

*[Remainder of page left blank]*

8

THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE THE FIRM FIRST PROVIDED SERVICES.  IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS UNDER THIS AGREEMENT.

CLIENT SHOULD SEEK INDEPENDENT COUNSEL TO ADVISE HIM CONCERNING THIS AGREEMENT.

Dated:  August 3 , 2019

PACHULSKI STANG ZIEHL & JONES, LLP      JIA YUETING

By: _____      _____
A Member and Principal

9

## HOURLY BILLING RATES FOR PROFESSIONALS AND PARAPROFESSIONALS OF
## PACHULSKI STANG ZIEHL & JONES LLP
### JANUARY 2019 RATES

| Partners | Billing Rate |
|---|---|
| Isaac M. Pachulski | $1,395.00 |
| Jeffrey H. Davidson | $1,395.00 |
| Richard M. Pachulski | $1,345.00 |
| Laura Davis Jones | $1,245.00 |
| Dean A. Ziehl | $1,145.00 |
| James I. Stang | $1,145.00 |
| Robert J. Feinstein | $1,145.00 |
| Scott L. Hazan | $1,145.00 |
| David J. Barton | $1,145.00 |
| Ira D. Kharasch | $1,095.00 |
| Jeremy V. Richards | $1,095.00 |
| Robert B. Orgel | $1,095.00 |
| Alan J. Kornfeld | $1,095.00 |
| Richard E. Mikels | $1,075.00 |
| Andrew W. Caine | $1,050.00 |
| Debra Grassgreen | $1,050.00 |
| Henry C. Kevane | $1,025.00 |
| Jeffrey N. Pomerantz | $1,025.00 |
| David M. Bertenthal | $1,025.00 |
| John A. Morris | $1,025.00 |
| Linda F. Cantor | $1,025.00 |
| Stanley E. Goldich | $1,025.00 |
| Iain A.W. Nasatir | $975.00 |
| Kenneth H. Brown | $975.00 |
| Bradford J. Sandler | $975.00 |
| John D. Fiero | $925.00 |
| Maxim B. Litvak | $925.00 |
| William N. Lobel | $895.00 |
| James E. O'Neill | $895.00 |
| Joshua M. Fried | $895.00 |
| Shirley S. Cho | $895.00 |
| Jeffrey W. Dulberg | $850.00 |
| Gabriel I. Glazer | $835.00 |
| Jason S. Pomerantz | $825.00 |
| Nina L. Hong | $775.00 |
| Ilan D. Scharf | $775.00 |
| John W. Lucas | $775.00 |
| Timothy P. Cairns | $750.00 |
| Teddy M. Kapur | $725.00 |

| Of Counsel | Billing Rate |
|---|---|
| Richard J. Gruber | $1,095.00 |
| Daryl G. Parker | $975.00 |
| James E. Mahoney | $975.00 |
| James K.T. Hunter | $975.00 |
| Steven J. Kahn | $975.00 |
| Harry D. Hochman | $925.00 |
| Victoria A. Newmark | $895.00 |
| Jeffrey Kandel | $850.00 |
| Jonathan J. Kim | $850.00 |
| Malhar S. Pagay | $825.00 |
| Gina F. Brandt | $795.00 |
| Michael R. Seidl | $795.00 |
| Beth E. Levine | $795.00 |
| Erin Gray | $795.00 |
| Gail S. Greenwood | $795.00 |
| Jeffrey P. Nolan | $795.00 |
| Robert M. Saunders | $795.00 |
| Colin R. Robinson | $795.00 |
| Gregory V. Demo | $795.00 |
| Elissa A. Wagner | $775.00 |
| Miriam Manning | $775.00 |
| William L. Ramseyer | $775.00 |
| Gillian N. Brown | $775.00 |
| Tavi C. Flanagan | $695.00 |
| Peter J. Keane | $695.00 |
| Cia H. Mackle | $650.00 |

| Associates | Billing Rate |
|---|---|
| Jason H. Rosell | $695.00 |
| Joseph M. Mulvihill | $575.00 |
| Steven W. Golden | $575.00 |

| Paralegals | Billing Rate |
|---|---|
| Elizabeth C. Thomas | $395.00 |
| Beth D. Dassa | $395.00 |
| Patricia J. Jeffries | $395.00 |
| Felice S. Harrison | $395.00 |
| Karina K. Yee | $395.00 |
| Patricia E. Cuniff | $395.00 |
| La Asia S. Canty | $395.00 |
| Nancy P F Lockwood | $395.00 |
| Cheryl A. Knotts | $375.00 |
| Michael A. Matteo | $375.00 |

| Law Library Dir. | Billing Rate |
|---|---|
| Leslie A. Forrester | $425.00 |

| Law Clerks/Clerks | Billing Rate |
|---|---|
| Sheryle L. Pitman | $325.00 |
| Beatrice M. Koveleski | $325.00 |
| Charles J. Bouzoukis | $325.00 |
| Andrea R. Paul | $325.00 |
| Karen S. Neil | $325.00 |

**SUMMARY OF RATES OF REIMBURSEMENT FOR EXPENSES OF
PACHULSKI STANG ZIEHL & JONES LLP
EFFECTIVE JANUARY 1, 2019[1]**

Facsimile Charges

| | |
|---|---|
| Outgoing | $1.00 per page |
| Incoming | $0.20 per page |
| Photocopy Charges | $0.20 per page |
| Reproduction/Scan Copy | $0.10 per page |
| Mileage[2] | $0.58 per mile |
| Secretarial Overtime | Actual Cost |
| Court Filing Fees | Actual Cost |
| Court Reporter | Actual Cost |
| Messenger and Attorney Services | Actual Cost |
| Legal Research | Actual Cost |
| Postage/Express Mail | Actual Cost |
| Telephone | Actual Cost |
| Travel Expenses | Actual Cost |

---

[1]    This summary lists expenses commonly billed by the Firm.  Other expenses would typically be billed to the Firm's clients at the Firm's actual cost.

[2]    The Firm only charges for associate and paralegal mileage, not partner mileage.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*): **SUPPLEMENTAL DECLARATION OF RICHARD M. PACHULSKI TO DEBTOR'S APPLICATION PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE, RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 2014-1 FOR AUTHORIZATION TO EMPLOY AND RETAIN PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION NUNC PRO TUNC TO THE PETITION DATE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 4, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 4, 2020,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA HAND DELIVERY**
The Honorable Vincent P. Zurzolo
United States Bankruptcy Court
Central District of California
255 East Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA  90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 4, 2020 | Mary de Leon | /s/ Mary de Leon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:327417.1 46353/002

**F 9013-3.1.PROOF.SERVICE**

**SERVICE INFORMATION FOR CASE NO. 19-bk-24804-VZ**

1.  <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>

- Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- David W. Meadows    david@davidwmeadowslaw.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince    cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Emily Young    pacerteam@gardencitygroup.com,
  rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:327417.1 46353/002

**F 9013-3.1.PROOF.SERVICE**