**FILED & ENTERED**

**FEB 06 2020**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY johnson   DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>YEUTING JIA,<br><br>Debtor(s). | Case No: 2:19-bk-24804-VZ<br>*(formerly 19-12220 KBO in the District of Delaware)*<br><br>Chapter: 11<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER: (1) DENYING MOTION FOR APPROVAL OF ADEQUACY OF AMENDED DISCLOSURE STATEMENT AND 2nd AMENDED DISCLOSURE STATEMENT; AND (2) TO SHOW CAUSE WHY CHAPTER 11 CASE SHOULD NOT BE DISMISSED OR CONVERTED TO A CASE UNDER CHAPTER 7**<br><br>Current Hearing Date:<br>Date: February 6, 2020<br>Time: 11:00 a.m.<br><br>Hearing on Order to Show Cause:<br>Date: April 30, 2020<br>Time: 11:00 a.m.<br>Ctrm: 1368, Roybal Federal Building<br>     255 E. Temple St., Los Angeles, CA 90012 |

- 1 -

**Introduction and Procedure**

On October 14, 2019, Yeuting Gia ("Debtor") filed a Plan of Reorganization ("Plan", docket entry **#4**) and Disclosure Statement ("Disclosure Statement", docket entry **#5**). On November 15, 2019, the Debtor filed an Amended Disclosure Statement ("Amended DS", docket entry **#94**) together with a blackline version of the Amended DS (docket entry **#95**) and a notice of hearing on Amended DS (docket entry **#96**) that set a hearing on December 18, 2019 in the District of Delaware.

On December 4, 2019, the Debtor filed motion to approve adequacy of the amended disclosure statement ("Initial Motion to Approve Amended DS", docket entry **#109**) and, on December 13, 2019, filed a notice of continuance of the hearing until January 8, 2020 ("Notice of Continuance", docket **#147**)

Responses to the Initial Motion to Approve Amended DS (collectively, the "Responses to Amended DS") were timely filed on or before December 13, 2019 by the following parties: (1) Shanghai Lan Cai Asset Management Co, Ltd (docket entry **#139**); (2) O-Film Global (HK) Trading Limited and Nanchang O-Film Photoelectric Technology Co., Ltd (docket entry **#140**); and (3) Chongqing Strategic Emerging Industry Leeco Cloud Special Equity Investment Fund Partnership (docket entry **#142**).

The hearing was not conducted in the District of Delaware because, prior to the hearing, an order was entered granting a motion to transfer venue of this bankruptcy case to the Central District of California ("Venue Transfer Order", docket **#178**).

On January 16, 2020, the Debtor filed a notice of motion and motion to approve the Amended DS ("2nd Motion to Approve Amended DS", docket entry **#222**) and set a hearing for February 6, 2020. The notice of motion complied with LBR 9013-1(c) by indicating that responses filed under LBR 9013-1(f) must be filed at least 14 days prior to the hearing; however, within the 2nd Motion to Approve Amended DS the Debtor requested a deviation from LBR 9013-1(f) to allow objections to be filed on or before January 30, 2020 at 4:00 p.m. PST ("**Proposed Objection Deadline**"). Neither the notice nor motion indicated a deadline for the Debtor to file a reply to objections. In the motion the Debtor also requested to be relieved from using this court's forms for chapter 11 debtors who are individuals.

On January 23, 2020, the United States trustee filed an objection to the Amended DS ("UST Objection", docket entry **#246**).

On January 27, 2020, the Debtor filed an amended plan of reorganization ("Amended Plan", docket entry **#260**). On January 27, 2020, the Debtor filed a notice of filing of blackline version of 2nd amended disclosure statement (docket entry **#261**) and on January 28, 2020, the Debtor filed a 2nd amended disclosure statement ("2nd Amended DS", docket entry **#262**).

Responses to the 2nd Motion to Approve Amended DS – *and the 2nd Amended DS* -- (collectively with the UST Objection, the "Responses to 2nd Amended DS") were timely filed on the Proposed Objection Deadline by the following parties: (1) Shanghai Lan Cai Asset Management Co, Ltd (docket entry **#273**) which is supported by the declaration of Daniel J. Saval (docket entry **#274**); (2) Chongqing Strategic Emerging Industry Leeco Cloud Special Equity Investment Fund Partnership (docket entry **#275**); and (3) Official Committee of Unsecured Creditors (docket entry **#276**).

### **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Having reviewed the Amended D/S, the 2nd Amended DS, the Amended Plan, the Initial Motion to Approve Amended DS, the 2nd Motion to Approve Amended DS, the Responses to the Amended DS, and the Responses to the 2nd Amended DS, I find and conclude that neither the Amended DS nor the 2nd Amended DS contain "adequate information" as required by 11 U.S.C. §1125. Concurrently filed with these findings and conclusions is an Order (1) Denying Motion to Approve Adequacy of Amended Disclosure Statement and 2nd Amended Disclosure Statement; and (2) To Show Cause Why Chapter 11 Case Should not be Dismissed or Converted to a Case Under Chapter 7.

More specifically, the disclosure is inadequate as to the following:

1. <u>Admissible Evidence</u>. The motion is not supported by a declaration of the Debtor under penalty of perjury that complies with LBR 9013-1(i) and 9013-1(c)(3)(A) as to the facts that are set forth – or should have been set forth -- in the Amended Plan and 2nd Amended DS including but not limited to:

a. Identification and qualifications of individuals who participated in preparation of the Amended Plan and 2nd Amended DS and accompanying exhibits;

b. Debtor's ownership or beneficial interest in any of the Marguerite properties, including Debtor's financial or other interest in Ocean View, Inc.;

c. Lack of disposable income;

d. The divorce action filed by the Debtor's spouse, including jurisdiction of the divorce filing, the Debtor's response to the filing, actual and potential domestic support obligations, the debtor's opinion as to the legitimacy of the alleged $571,000,000 claim, and other impacts of the potential divorce on the status of this bankruptcy case;

e. The Debtor's past 2 years of personal financial history, including financial statements;

f. The Debtor's financial and other interests in the FF Group entities, the holding entities, and the entities that control the holding entities;

g. Outstanding amounts of claims held by creditors in the PRC after the Debtor paid approximately $3 billion in debts;

h. The Debtor's potential role in obtaining Series B Equity Financing;

i. The Debtor's potential role in an IPO involving Smart King; and

j. Valuation of Smart King.

2. <u>Discharge Provisions</u>.  Debtor's statements about intent to request a discharge are contradictory.  Debtor must cite legal authority for being granted a discharge on any date on which the Debtor believes a discharge can be granted.

a. In the **Amended Plan, definition #33**, Debtor states that discharge is obtained on the earlier date of:

   1) Distribution of Trust Interest to holders of Allowed Debt Claims, or
   2) All Allowed Claims have been paid under the plan;

b. In the **Term Sheet of the 2nd Amended DS**, Debtor states that discharge is obtained on the Effective Date; and

    c. In the **2nd Amended DS, p. 54**, Debtor states that discharge is obtained on the Effective Date, subject to the explanation that the Debtor intends to request that the court grant a discharge of claims set forth in Article 11.3 of the Plan as of the Effective Date of Plan.

3. <u>Liquidation Events</u>.  Additional information is needed regarding what specific facts trigger a liquidation event, including clarification of whether a liquidation event has occurred if one of the proposed events has merely been commenced, or if a post-commencement stage of the proceeding must have occurred.

4. <u>Liquidation Analysis</u>.  A liquidation analysis must be provided.

5. <u>Payments on or Before the Effective Date</u>.  Disclose the source and approximate amount of payments to be made on or before the Effective Date, including domestic support obligations.

6. <u>Trust</u>.

    a. Disclose the identity of the proposed trustee, including qualifications and insider status;

    b. Disclose whether any assets of the Debtor are excluded from being assets of the Trust;

    c. Clarify the distinction – if any – between Smart King's redemption rights and the Debtor's Call Option rights; also explain any limitations on transfer of the Debtor's Call Option rights.

    d. Disclose the likelihood of success of lifting the freezing injunctions on assets held by FF Peak and FF Top in the British Virgin Islands ("BVI").  At a minimum, disclosures should include the information provided in the Debtor's motion to appoint Robert Moon as foreign representative, including legal hurdles set forth in the international law that was applied by BVI authorities to issue the freezing injunctions;

    e. Cite legal authority, and/or provisions in any agreements, that may restrict the Debtor's right to transfer to the trust any specified shares or interests in specified entities;

    f. Cite legal authority for the court to impose the standstill provisions; and

    g. Clarify whether there is an outside limit on the term of the trust or allowed extensions.

7. <u>U.S. Secured Claims</u>.  Disclose the identities of all holders of U.S. Secured Claims, including the amount of each claim, the collateral securing each claim, and the value of such collateral.

8. <u>Other Secured Claims</u>.  Disclose whether there are non-U.S. secured claims against the Debtor and, if so, the identity of the holders and amounts, nature and priority of the claims; also disclose the proposed treatment of these claims.

9. <u>Executory Contracts; Unexpired Leases</u>.  Disclose whether there are any executory contracts or unexpired leases of the Debtor and, if so, the potential resolution of those contracts or leases.

10. <u>Spouse's Claim</u>.  The 2nd Amended DS contains reflects that the Debtor's Spouse filed a proof of claim; however, such claim is not on the claims register.  Debtor must provide information about the amount, nature and priorities of this alleged claim, including the impact on treatment of claims similarly classified or classified as domestic support obligations.

11. <u>Restructuring Agreement</u>.  Disclose the Debtor's role – if any – in negotiating the restructuring agreement between Smart King and Season Smart, including how the Debtor became a party to the agreement and obtained a "Call Option", and what is the potential impact on FF Group entities or holding group entities of exercising the Call Option.

12. <u>Treatment of PRC Claims</u>.  Disclose proposed treatment of claims of claim holders in the PRC.

13. <u>IPO-Dependent Recovery</u>.  Identify who prepared the range of projections for recovery on Allowed Debt Claims based on a successful IPO, including factors that led to the projections.

14. <u>Tolling Period</u>.  Cite legal authority that would require jurisdictions to honor the proposed tolling indicated in the description of the standstill period.  Disclose risks involved if any jurisdiction does not honor the proposed tolling.

15. <u>Smart King Loans with Debtor</u>.  Disclose the outstanding balance owed and/or outstanding transfers of interest – if any -- in connection with the Debtor's $900 million loan to Smart King.

16. <u>Future Earnings; Plan Implementation</u>.  Clarify the assertion that future earnings of the Debtor are not needed to implement the Plan.

17. <u>Releases</u>.  Identify specific claims proposed to be released, including claims against the Debtor, against the Debtor's spouse, against other Releasing Parties, and against professionals employed by the estate.

18.  <u>Potential Removed Actions</u>.  Disclose a summary of the actions being litigated in other forums by or against the Debtor, including relief sought, potential impact on treatment of claims under the Plan, and potential impact of any or all of these actions being removed to this court.

###

Date: February 6, 2020

_____
Vincent P. Zurzolo
United States Bankruptcy Judge