1  CHRISTOPHER E. PRINCE (SBN 183553)
       cprince@lesnickprince.com
2  LESNICK PRINCE & PAPPAS LLP
   315 West Ninth Street, Suite 705
3  Los Angeles, California 90015
   Telephone:  (213) 291-8984
4  Facsimile:  (213) 493-6596

5  DANIEL J. SAVAL (*pro hac vice*)
       daniel.saval@kobrekim.com
6  DONG NI (DONNA) XU (*pro hac vice*)
       donna.xu@kobrekim.com
7  KOBRE & KIM LLP
   800 Third Ave
8  New York, NY 10022
   Telephone:  (212) 488-1200
9  Facsimile:  (212) 488-1220

10 Attorneys for Creditor
   Shanghai Lan Cai Asset Management Co, Ltd.

11

12            **UNITED STATES BANKRUPTCY COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14                 **LOS ANGELES DIVISION**

15

16 In re:                          Case No. 2:19-bk-24804-VZ

17 YUETING JIA,                     **MEMORANDUM OF POINTS AND**
                                    **AUTHORITIES IN SUPPORT OF**
18                                  **MOTION BY CREDITOR SHANGHAI**
                                    **LAN CAI ASSET MANAGEMENT CO,**
19              Debtor.             **LTD. TO DISMISS THE DEBTOR'S**
                                    **CHAPTER 11 CASE**
20
                                    Hearing:
21                                  Date:   March 17, 2020
                                    Time:   11:00 a.m.
22                                  Place:  Courtroom 1368
                                            Edward R. Roybal Federal Building
23                                          255 East Temple Street
                                            Los Angeles, California 90012
24                                  Judge:      Honorable Vincent P. Zurzolo

25

26

27

28

KOBRE & KIM LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................ 1

BACKGROUND ........................................................................................................ 3

I.    The Debtor's Meteoric Rise And Fall ..............................................................3

II.   The Debtor's Flight From China And Subsequent Injunctions And Freezing Orders......4

III.  The Debtor's Diversion of Funds Into Faraday Future And California Real Estate, While Evading China-Based Creditors ...............................................5

IV.   The California Judgment Enforcement Proceedings ........................................6

V.    The Chapter 11 Proceedings ............................................................................7

    A.    The Funding For The Debtor's Case ....................................................8

    B.    The Plan Proposal ................................................................................8

JURISDICTION ....................................................................................................... 10

ARGUMENT ........................................................................................................... 10

I.    The Court Should Dismiss The Chapter 11 Case............................................10

    A.    Dismissal Is Warranted For "Cause" Pursuant To Section 1112(b) ......................10

        1.    The Petition Was Not Filed In Good Faith .......................................... 12

            a.    The Debtor's Chapter 11 Case Was Filed To Hinder Shanghai Lan Cai's Enforcement Proceedings Against Him And To Avoid A Court-Ordered Debtor's Examination ............................................... 13

                i.    The Timing Of The Petition ............................. 14

                ii.   The Initial Forum In Which The Petition Was Filed...................... 14

                iii.  The Debtor's Selective Use Of The Automatic Stay Against Shanghai Lan Cai ....................... 15

            b.    The Only Reorganization Purpose For The Filing Cited By The Debtor Involves A Non-Debtor Entity And Therefore Cannot Justify The Filing 16

        2.    The Case Should Be Dismissed For "Cause" Under Principles Of International Comity ................................................ 17

            a.    The Doctrine Of Prescriptive Comity Applies In This Case And Compels Dismissal ............................... 17

            b.    China Has An Overwhelming And Demonstrated Interest In Adjudicating The Underlying Debts At Issue In This Case............ 18

            c.    Given Its Strong Chinese Nexus, The Case Cannot Proceed In A Manner That Comports With The Bankruptcy Code .............................. 20

    B.    Alternatively, The Court Should Dismiss The Chapter 11 Case Pursuant To Section 305(a) Of The Bankruptcy Code........................22

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Ackermann v Levine*

   788 F.2d 830 (2d Cir. 1986) ................................................................. 18

*Basic v. Fitzroy Engineering*

   No. 97-1052, 1997 WL 753336 (7th Cir. Dec. 4, 1997) ........................... 18

*Fotochrome, Inc. v. Copal Co.*

   517 F.2d 512 (2d Cir. 1975) ................................................................. 20

*Hilton v. Guyot*

   159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). ........................... 17

*In re Arcapita Bank B.S.C.(c)*

   575 B.R. 229 (Bankr. S.D.N.Y. 2017) ................................................... 18

*In re Bancredit Cayman Ltd., Bankr.*

   No. 06-11026 (SMB) Adv. No. 08-1147, 2008 WL 5396618 (Bankr. S.D.N.Y. Nov. 25, 2008)

   ................................................................................................................. 20

*In re Erkins*

   253 B.R. 470 (Bankr. D. Idaho 2000) ................................................... 13

*In re Fairfield Sentry Ltd.*

   714 F.3d 127 (2d Cir. 2013) ................................................................. 15

*In re Gilliam*

   No. BAP NC-04-1311-SBRP, 2005 WL 6960202 (B.A.P. 9th Cir. Aug. 10, 2005) .......... 12, 13

*In re Irish Bank Resolution Corporation Ltd*

   Case No. 13-12159 (CSS), 2014 WL 9953792 (Bankr. D. Del. April 30, 2014)...................... 18

*In re Mak Petroleum, Inc.*

   424 B.R. 904 (Bankr. M.D. Fla. 2010)................................................... 20

*In re Maxwell Commc'n Corp. plc*

   93 F.3d 1036 (2d Cir. 1996) ................................................... 17, 18, 19

1   *In re Mense*

2   509 B.R. 269 (Bankr. C.D. Cal. 2014) ........................................................................ 11, 12, 13

3   *In re Moore*

4   583 B.R. 507 (C.D. Cal. 2018) ............................................................................................. 12

5   *In re Northshore Mainland Svcs.*

6   Inc., 537 B.R. 192 (Bankr. D. Del. 2015) .......................................................................... 22, 23

7   *In re Prometheus Health Imaging, Inc.*

8   705 F. App'x 626 (9th Cir. 2017). ................................................................................ 11, 12, 13

9   *In re Rinard*

10   451 B.R. 12 (Bankr. C.D. Cal. 2011) ................................................................................. 21

11   *In re S&S/Moab Enterprises*

12   83 F.3d 428, (9th Cir. 1996) ............................................................................................... 12

13   *In re Silberkraus*

14   253 B.R. 890 (Bankr. C.D. Cal. 2000) ............................................................................... 15

15   *In re Sobelmar Antwerp N.V.*

16   No. 15-20423, 2015 WL 1440829 (Bankr. D. Conn. Mar. 17, 2015) ..................................... 15

17   *In re Spanish Cay Co., Ltd.*

18   161 B.R. 715 (Bankr. S.D. Fla. 1993) ................................................................................ 20

19   *In re SR Real Estate Holdings, LLC*

20   506 B.R. 121 (Bankr. S.D. Cal. 2014) ................................................................................ 13

21   *In re St. Paul Self Storage Limited Partnership*

22   185 B.R. 580 (B.A.P. 9th Cir. 1995) ............................................................................... 12, 14

23   *In re Start the Engines, Inc.*

24   219 B.R. 264, (Bankr. C.D. Cal.1998) ............................................................................... 16

25   *In re Swintek*

26   906 F.3d 1100 (9th Cir. 2015) .............................................................................................. 7

27   *In re WLB-RSK Venture*

28   296 B.R. 509 (Bankr. C.D. Cal. 2003) ............................................................................... 15

*In re Xacur*

  219 B.R. 956 (Bankr. S.D. Tex. 1998) .................................................................................. 22

In re Xerium Technologies, Inc.

  No. 10-11031, 2010 WL 5851796 (Bankr. D. Del. Mar. 30, 2010) ........................................ 15

*In re Yukos Oil Co.*

  321 B.R. 396 (S.D. Tex. 2005) ...................................................................................... 17, 19

*Linde v. Arab Bank, PLC*

  706 F.3d 92 (2d Cir. 2013) ...................................................................................................... 19

*Loucks v. Standard Oil Co.*

  224 N.Y. 99 (1918) .................................................................................................................. 18

*Moore v. U.S. Tr. for Region 16*

  749 F. App'x 621 (9th Cir. 2019) ............................................................................................ 12

*Mujica v. AirScan Inc.*

  771 F.3d 580 (9th Cir. 2014) ............................................................................................ 17, 19

*Newbery Corp. v. Fireman's Fund Ins. Co.*

  95 F.3d 1392 (9th Cir. 1996) .................................................................................................. 21

*Paraschos v. YBM Magnex Int'l, Inc.*

  130 F. Supp. 2d 642 (E.D. Pa. 2000) ...................................................................................... 17

**Statutes**                                                                                                          **Page**

11 U.S.C. § 109 ........................................................................................................................ 16

11 U.S.C. § 1104 ...................................................................................................................... 11

11 U.S.C. § 1112 ............................................................................................................... passim

11 U.S.C. § 1334 ...................................................................................................................... 21

11 U.S.C. § 1528 ...................................................................................................................... 21

11 U.S.C. § 305 ......................................................................................................... 1, 22, 23

11 U.S.C. § 341 ........................................................................................................................ 19

11 U.S.C. § 541 .................................................................................................................. 2, 21

KOBRE & KIM LLP
ATTORNEYS AT LAW

28 U.S.C. § 1334 ................................................................................................................ 10

28 U.S.C. § 1408 ................................................................................................................ 10

28 U.S.C. § 157 .................................................................................................................. 10

California Code of Civil Procedure § 708.110 .................................................................... 7

**Constitutional Provisions**

Fifth Amendment to the U.S. Constitution ......................................................................... 20

KOBRE & KIM LLP
ATTORNEYS AT LAW

1  Creditor Shanghai Lan Cai Asset Management Co, Ltd. ("Shanghai Lan Cai") submits this

2  motion (the "Motion"), pursuant to 11 U.S.C. §§ 1112 and 305, to dismiss this Chapter 11 case

3  filed by Yueting Jia ("Jia" or the "Debtor").  In support of the Motion, Shanghai Lan Cai

4  respectfully states as follows:

5  **<u>PRELIMINARY STATEMENT</u>**

6  The extraordinary facts and circumstances of this individual Chapter 11 debtor's case

7  compel its dismissal.  And, now that this case has been transferred from the Bankruptcy Court of

8  the District of Delaware to its proper venue, the time is ripe to address this threshold matter.  The

9  fundamental and intractable problems presented by the case are not merely plan confirmation

10  issues over which parties could quibble down the line.  Rather, they raise two critical gating

11  items.  First, is this U.S. bankruptcy proceeding the appropriate forum to resolve and discharge

12  billions of dollars of claims incurred in China, owed to creditors located in China, and that are

13  governed by Chinese law?  Second, did Jia file this case in good faith?  As explained below, the

14  answer to both questions is a resounding "no."

15  The Debtor is a Chinese national who fled China about two years ago when its highest

16  court placed him on an official list of credit defaulters.  His creditors are overwhelmingly located

17  in China—including *all* of the creditors on the Debtor's list of the largest 20 unsecured claims.[1]

18  Nevertheless, he seeks to use this U.S. Chapter 11 proceeding—relying on a process, language,

19  and forum unfamiliar to his creditors—to discharge of all of his debts.  The fundamental

20  unfairness—and, indeed, the absurdity—of this case is readily illustrated by flipping the role of

21  the United States here:  if a U.S. citizen incurred billions in debt while living in the U.S., fled to a

22  faraway foreign country to escape his U.S. creditors and U.S. authorities, and then sought

23  bankruptcy protection in that foreign country to discharge his U.S. debts, the U.S. creditors would

24  undoubtedly cry foul.  This case is no different.  China—and not the United States—has the

25  paramount interest in resolving the billions of dollars of debt Jia incurred in that country, and

26  therefore the case should be dismissed under well-settled principles of international comity.

27

28  [1]  *See* Official Form 101 Voluntary Petition for Individuals Filing for Bankruptcy [Dkt. No. 1], at 9–13.

KOBRE & KIM LLP
ATTORNEYS AT LAW

1    Further, the Debtor's attempt to discharge the claims of his Chinese creditors in a U.S.

2    bankruptcy proceeding goes beyond just running roughshod over basic notions of due process.

3    His gambit also raises substantial doubts as to whether this U.S. bankruptcy case could even work

4    the way it is supposed to.  Those creditors who are not subject to U.S. jurisdiction will

5    undoubtedly decide that they are better off disregarding the bankruptcy proceedings altogether

6    and pursue their claims in China, whose courts are unlikely to recognize the automatic stay and

7    discharge.  Indeed, creditors have already frozen over hundreds of millions of dollars' worth of

8    the assets of the Debtor and his companies located in China.  For his part, Jia has not suggested to

9    the Court that he will even try to enforce the automatic stay against creditors pursuing him in

10   China who may be subject to this Court's jurisdiction—in other words, he will do nothing to try

11   to ensure equal treatment of creditors.  Right out of the gate, therefore, this Court is hamstrung

12   from fairly and effectively administering what, under Bankruptcy Code Section 541, is supposed

13   to be a worldwide estate.

14        The case should be dismissed for the additional reason that it was not filed in good faith.

15   The Debtor has not—and cannot—establish that the petition serves a valid reorganization

16   purpose.  The only proffered "reorganization" objective has nothing to do with Jia himself, but

17   rather focuses instead on Faraday & Future ("Faraday")—a California electric car start-up in

18   which Jia holds an indirect minority interest, which interest he is offering his creditors in his

19   proposed plan.  Faraday, however, is not a debtor in this proceeding, and Jia has presented no

20   evidence—let alone a rational explanation—tying Faraday's future prospects to a plan that

21   distributes his minority equity interest in the company to his creditors.  When Jia's purported

22   justifications for the filing fall away, as they must, it becomes abundantly clear that Jia filed this

23   case to frustrate and stymie the actions that only a few creditors—most notably Shanghai Lan

24   Cai—were pursuing against him in this District.

25        For these reasons, as more fully explained below, this Chapter 11 case should be

26   dismissed.

27

28

KOBRE & KIM LLP
ATTORNEYS AT LAW

## BACKGROUND

The following background concerning the Debtor contains certain information from various news articles.  Given the fact that most of the debts at issue in this case were incurred in China before the Debtor fled to the United States, many of the articles discussing the relevant events in China are in Chinese and have been translated for the Court's benefit.  For the avoidance of doubt, the articles are being provided for context and as background only, and principally reflect facts that were not disputed before the Delaware Bankruptcy Court by the Debtor, who chose not to present any evidence or testify in that forum about these matters.

### I.    The Debtor's Meteoric Rise And Fall

Jia is a Chinese national and infamous debtor in his home jurisdiction, owing creditors billions in defaulted obligations, in connection with his founding, and the subsequent collapse, of his Shenzhen Stock Exchange-traded company, Leshi Internet Information & Technology Corp Beijing ("Leshi" or "Le.com").  Leshi is affiliated with LeEco, a major technology conglomerate in China controlled by Jia.  Initially hailed as "China's Netflix," LeEco took on billions in debt as part of Jia's aggressive attempts to launch a variety of ventures, from electric cars to consumer electronics.[2]

Despite Jia's apparent initial success with LeEco, however, international media reports later outlined a series of fraud and bribery allegations was made against Jia concerning his LeEco empire.  In particular, he is alleged to have caused his publicly traded company, Leshi, to engage in multi-billion dollar insider transactions with companies owned by himself and his family members; to have sold shares of Leshi near its apex price and received approximately $814 million USD; to have promised to loan the proceeds back to the ailing company interest-free, but instead to have kept most of the funds; and to have possibly procured the initial public offering

---

[2]    *See* Li Yuan, *Reality Bytes: A Highflying Chinese Tech Entrepreneur Falls Back to Earth*, THE WALL STREET JOURNAL (July 6, 2017), https://www.wsj.com/articles/reality-bytes-a-highflying-chinese-tech-entrepreneur-falls-back-to-earth-1499337030, a true and correct copy of which is attached to the Declaration of Dong Ni (Donna) Xu filed in support of this Motion (the "Xu Declaration") as **Exhibit 1**.

KOBRE & KIM LLP
ATTORNEYS AT LAW

("IPO") of the company through bribery and fraud.[3]  Indeed, a bribery probe was later launched against several government officials who approved the IPO.[4]

## II.    The Debtor's Flight From China And Subsequent Injunctions And Freezing Orders

Eventually, Chinese authorities placed Jia on an official blacklist of creditors in China. This blacklist restricted Jia's ability to travel and spend within China.[5]  He and his affiliate entities also faced dozens of lawsuits in various courts across China.  *See* Schedules of Assets and Liabilities and Statement of Financial Affairs [Dkt. No. 28], at 117–25.  In addition, Jia's assets were also increasingly the targets of freezing orders in China.  In the summer of 2017, the Shanghai High People's Court froze US $181 million worth of Jia's assets and US $2.3 billion in Leshi shares, after a missed interest payment.[6]  In addition, over the past few years, at least 20 other courts in China have likewise issued injunctions and freezing orders against Jia's affiliate companies.[7]

Instead of dealing with his financial obligations and these pending litigations in his home country, Jia fled China in or around July 2017 and came to California, where he is believed to have amassed significant real estate holdings in the order of tens of millions of dollars and infused almost $1 billion in funding to his most recent venture, the electric car start-up known as "Faraday Future."[8]

In late 2017, the Beijing branch of China's Securities Regulatory Commission (CSRC) ordered Jia to return to China to "fulfill his obligation" regarding his mounting debt, and publicly

---

[3]     *See* Daniel Ren, Xue Yu, and Summer Chen, *Former Leshi IPO committee members detained over troubled video content firm's 2010 fundraising,* SOUTH CHINA MORNING POST (Nov. 2, 2017), https://www.scmp.com/business/companies/article/2118018/former-leshi-ipo-committee- members-detained-over-troubled-video.  A true and correct copy of this article is attached to the Xu Declaration as **Exhibit 2**.

[4]     *See id.*

[5]     *See* Amended Civil Minutes Order, California Docket [Dkt. No. 79], at 3 (noting that Jia was on the "Chinese government list of debt defaulters").

[6]     *See Exclusive: Cash-Strapped LeEco Sees Assets Frozen*, TMT POST (July 6, 2017), https://www.tmtpost.com/2669500.html (outlining the several courts in China that have issued freezing orders against Jia's affiliated entities).  A true and correct copy of this article is attached to the Xu Declaration as **Exhibit 3**.

[7]     *See id.*

[8]     Danwei Wang, 《棱镜》150 分钟独家对话贾跃亭：赴美这四个月，我想了些什么, TENCENT (Nov. 7, 2017), https://stock.qq.com/a/20171107/017341.htm.  A true and correct copy of this article, together with its partial English translation and translation certificate, is attached to the Xu Declaration as **Exhibit 4**.

KOBRE & KIM LLP
ATTORNEYS AT LAW

noted his violation of the legal rights of his investors.[9]  Jia never did so.  To date, he remains in the United States in violation of that order, and he admits that he is currently a target of investigation by that government agency.  *See* Second Amended Disclosure Statement [Dkt. No 262], at 90.  Jia is still a citizen of China and has stayed in the U.S. reportedly on an L-1 visa.[10]

**III.**    **The Debtor's Diversion of Funds Into Faraday Future And California Real Estate, While Evading China-Based Creditors**

Since he has left China and his LeEco empire behind, Jia has turned his business attention towards his electric car venture, Faraday Future.  Faraday Future was incorporated in California in May 2014 and has its headquarters in Los Angeles.  *See* Second Amended Disclosure Statement [Dkt. No. 262], at 21.  While Jia was amassing significant debt in China, and claiming publicly that he was unable to repay his already existing debts, he nevertheless transferred approximately $1 billion into Faraday Future.  *See supra* n. 10.  He does not appear to have disclosed the precise source of those funds.

While he was attempting to build up his electric car start-up, he was also accumulating a small empire of mansions in Rancho Palos Verdes.  His filings note that he has held interests in an entire swath of real estate along the same street as his principal multi-million dollar residence, 91 Marguerite Drive: 7, 11, 15 and 19 Marguerite Drive.  *See* Second Amended Disclosure Statement [Dkt. No. 262], at 42.  These properties are owned by an entity known as Ocean View Drive, Inc. ("Ocean View").  Ocean View is, in turn, owned by an entity called Success Pyramid Ltd, which Jia purportedly sold for $6.4 million to another business associate, Shaojie Chu.  *See* Schedules [Dkt. No. 28], at 108.  Shanghai Lan Cai believes that Jia has retained his beneficial ownership interest in the Ocean View properties, but that interest is not disclosed in the Schedules.

---

[9]      *See* Beijing Securities Regulatory Bureau Announcement Regarding Orders for Jia Yueting to Return to China to Fulfill Obligations (Dec. 25, 2017), a true and correct copy of which, along with its certified translation, is attached to the Xu Declaration as **Exhibit 5**.
[10]     *See* Sean O'Kane, *Faraday Cage: Can an electric car startup save itself from its founder?*, THE VERGE (Oct. 30, 2019), https://www.theverge.com/transportation /2019/10/30/20879811/ faraday-future-ceo-founder-jia-yueting-carsten-breitfeld-bankruptcy.  A true and correct copy of which is attached to the Xu Declaration as **Exhibit 6**.

1    Indeed, this transaction is merely the tip of the iceberg.  Upon information and belief, in

2    addition to Shaojie Chu, Jia has also used Lian Bossert (a recent college graduate who served as

3    nominee for Jia's interests of West Coast LLC), Chaoying Deng (or Chaoying Bossert, Lian's

4    mother), Jiawei Wang (Jia's nephew), and Ruokan Jia (another of Jia's relatives) as nominees for

5    holding assets—including interests in companies—or as managers through which Jia has been

6    able to exercise control over various corporate interests.  *See* Dec. 18, 2019 Hr'g Tr. 80:3–20

7    (Debtor's counsel explaining that Lian Bossert is the nominee for Jia's interests in West Coast

8    LLC).[11]

9    **IV.    The California Judgment Enforcement Proceedings**

10    Jia's escape from China did not immunize him from the efforts of his creditors to seek

11    repayment of the loans that they extended to his affiliate companies.  In January 2018, Shanghai

12    Lan Cai obtained an arbitration award of approximately $11 million against Jia and two corporate

13    entities in which he had a significant financial interest at the time of the underlying transaction:

14    LeTV Sports Culture Develop (Beijing) Co., Limited and TV Plus Holdings (Beijing) Limited.[12]

15    See Memorandum of Points and Authorities in Support of Petitioner's *Ex Parte* Application for

16    Right-to-Attach Order and Writ of Attachment, *Shanghai Lan Cai Asset Management Co, Ltd. v.*

17    *Jia Yueting*, 18-cv-10255-SJO-MRW (C.D. Cal) (hereinafter, "California Docket") [Dkt. No. 5-

18    1], at 4.  Similarly, another of Jia's creditors, Shanghai Qichengyueming Investment Partnership

19    Enterprise, likewise obtained an arbitral award against him in China and sought to enforce that

20    award in this District.  See Second Amended Disclosure Statement [Dkt. No. 262], at 18.

21    Shanghai Lan Cai's arbitral award was later recognized by Judge James Otero in an action

22    commenced in this District, and Shanghai Lan Cai's counsel was granted authorization to conduct

23    post-judgment enforcement proceedings.  See Order Granting Petitioner's Petition to Confirm

24    Arbitration Award, California Docket [Dkt. No. 31]; Final Judgment, California Docket [Dkt. No.

25

26    [11]    Portions of the transcript of the December 18, 2019 hearing before the Delaware
Bankruptcy Court referenced herein are attached to the Xu Declaration as **Exhibit 7**.

27    [12]    While the arbitral award itself was approximately $11 million USD, post-judgment
interest was awarded by the federal district court in the Central District of California. *See* Final

28    Judgment, California Docket [Dkt. No. 35], at 2.  Shanghai Lan Cai reserves all rights regarding
the amount and priority of its claim.

KOBRE & KIM LLP
ATTORNEYS AT LAW

35].  Judge Otero also entered an order on September 3, 2019 that expressly enjoined Jia from "transfer[ring]", "encumber[ing]" or "otherwise mak[ing] unavailable—either personally or through instructions to another—any non-exempt assets up to the value of the Court's judgment." Amended Civil Minutes Order, California Docket (the "Sept. 3, 2019 Order") [Dkt. No. 79] (emphasis added).

In connection with those proceedings, Jia agreed to be deposed and scheduled the deposition for August 2019.  Because Jia failed to show up at this deposition, Shanghai Lan Cai obtained a court order to conduct a debtor's examination, pursuant to applicable California state procedural rules,[13] this time before Magistrate Judge Wilner.  See Order to Appear for Examination of Judgment Debtor RE: Enforcement of Judgment, California Docket [Dkt. No. 63].

That examination was initially scheduled for September 11, 2019, id., but was later adjourned at Jia's request and rescheduled for Thursday, October 17, 2019 and Friday, October 18, 2019.  See Order Granting Joint Stipulation to Continue Judgment Debtor's Examination of Respondent Jia Yueting, California Docket [Dkt. No. 82].    By all accounts, the examination was anticipated to move forward as of the morning of October 14, 2019.

## V.    The Chapter 11 Proceedings

On October 14, 2019, Jia filed his Chapter 11 petition and an unconventional set of papers that purported to propose an out-of-court restructuring and a "prepackaged" bankruptcy plan in the U.S. Bankruptcy Court for the District of Delaware.   The Debtor claimed that venue in that District was proper because of his interests in a Delaware entity affiliated with Faraday (West Coast LLC), which was incorporated less than three months before the filing, and his purported interest in another Delaware entity affiliated with Faraday (Pacific Technology Holding LLC

---

[13]    Under the applicable California procedural rules, the service of the order requiring a judgment debtor to appear for examination "creates a lien on the personal property of the judgment debtor for a period of one year from the date of the order unless extended or sooner terminated by the court."  Cal. C. Civ. P. § 708.110(d).  On this basis, Jia has scheduled—on a "disputed" basis—Shanghai Lan Cai's claim against him as secured.  *See* Schedules of Assets and Liabilities and Statement of Financial Affairs [Dkt. No. 28], at 30 (line 2.20 of Schedule D: Creditors Who Have Claims Secured By Property).  On this basis, Shanghai Lan Cai has a secured claim in these proceedings if the case is not dismissed.  *See In re Swintek*, 906 F.3d 1100, 1103–04 (9th Cir. 2015) (upholding validity of such a lien in bankruptcy).

("Pacific Technology")), about which the Debtor refused to provide any relevant documentation until the middle of the hearing to decide the venue transfer issue.[14]

### A.     The Funding For The Debtor's Case

Shortly before the Debtor filed his Chapter 11 case, he obtained a secured loan from Pacific Technology.  See Second Amended Disclosure Statement [Dkt. No. 262], at 19.  Despite Judge Otero's Sept. 3, 2019 Order prohibiting the Debtor from encumbering or transferring his assets up to the value of Shanghai Lan Cai's judgment, see supra, the Debtor nevertheless both (i) encumbered his assets by granting to Pacific Technology a security interest in his assets, which interest was documented in a UCC Financing Statement identifying the security interest to include "*[a]ll assets of the Debtor*" without limitation;[15] and (ii) transferred the loan proceeds he received from Pacific Technology to the two sets of lawyers that he currently seeks to retain as estate professionals.  See Shanghai Lan Cai Asset Management Co, Ltd.'s Objection to the Debtor's Application to Retain Pachulski Stang Ziehl & Jones LLP [Dkt. No. 128], at 2; Shanghai Lan Cai Asset Management Co, Ltd.'s Objection to the Debtor's Application to Retain O'Melveny & Myers LLP, as Special Corporate, Litigation and International Counsel to the Debtor [Dkt. No. 106], at 3–4.  At no time did the Debtor seek to amend the order or otherwise obtain authorization from the District Court to engage in this transaction that plainly violated the order.

### B.     The Plan Proposal

Jia's plan (the "Plan") proposes to distribute to creditors interests in a creditor trust that would hold interests in Faraday Future, through various layers of companies: Pacific Technology, FF Peak Holding Ltd., FF Top Holding Ltd., Smart King Ltd. and West Coast LLC.

---

[14]     At the December 18, 2019 hearing before the Delaware Bankruptcy Court, Debtor's proposed special counsel, O'Melveny & Myers LLP, provided the LLC agreement that purported to show that Jia had an interest in Pacific Technology in the form of a right to direct the transfer of certain interests into the creditor trust.  *See* Dec. 18, 2019 Hr'g Tr. 76:5–9.  Jia is not party to the agreement, however, and the Court made no findings concerning whether that agreement, in fact, established that Jia had an interest in Pacific Technology.  *Id.* at 84:18–22 (holding question of admissibility of agreement in abeyance).

[15]     A true and correct copy of the UCC Financing Statement is attached to the Xu Declaration as **Exhibit 8**.

1   Significantly, the Plan would result in a distribution to claimants only in the event that Faraday

2   successfully undergoes an IPO or is sold, and creditors would be forced to provide certain broad

3   non-consensual releases and standstill agreements—not only in favor of Jia, but also his wife.

4   *See* First Amended Plan of Reorganization [Dkt. No. 260], at 47–50, 52–53.

5        The Debtor has stated the reason he is pursuing this plan is that *Faraday*—rather than Jia

6   himself—needs additional funding.  See Second Amended Disclosure Statement [Dkt. No. 262],

7   at 3 (noting that the purpose of the restructuring is "to enable FF to obtain the necessary financing

8   and reestablish normal relations with its suppliers"); *see also* Dec. 18, 2019 Hr'g Tr. 12:24–13:8

9   (Debtor's counsel emphasizing Faraday's need for bridge financing as an impetus for the filing).

10  However, the Debtor has disclosed no details whatsoever about any potential funding or financing

11  for Faraday that hinges on the Plan.  In the almost three months in which this case has been

12  pending, no one from Faraday has appeared in order to substantiate Jia's naked assertions.

13       Nor has the Debtor properly acknowledged that before his indirect interests in Faraday can

14  even be transferred to his proposed creditor trust, certain freezing injunctions awarded to

15  Shanghai Lan Cai in the British Virgin Islands against the non-debtor parent companies of Smart

16  King Ltd. (FF Peak Holding Ltd. and  FF Top Holding Ltd.) must first be discharged.  See

17  Debtor's Motion for Entry of an Order Authorizing Robert Moon to Act as Foreign

18  Representative Pursuant to Section 1505 of the Bankruptcy Code [Dkt. No. 105] ¶ 7 (noting that

19  freezes over certain assets in the BVI require additional motion practice before "those assets may

20  be included in the Debtor's Chapter 11 case"); *see* Shanghai Lan Cai's Objection to Debtor's

21  Motion to Approve Disclosure Statement [Dkt. No. 273], at 2:16–3:16.   In short, the Debtor's

22  Plan is currently illusory.

23       On November 13, 2019, Shanghai Lan Cai moved before the Delaware Bankruptcy Court

24  for dismissal of Jia's Chapter 11 case, contending that the Debtor's lack of good faith and

25  principles of international comity compelled dismissal.[16]  In the alternative, Shanghai Lan Cai

26

27

---

[16]    *See* Shanghai Lan Cai Asset Management Co, Ltd.'s Motion (I) To Dismiss the Debtor's
Chapter 11 Case or, Alternatively, (II) to Transfer Venue to the Central District of California
[Dkt. No. 89].

28

KOBRE & KIM LLP
ATTORNEYS AT LAW

1   requested that the case be transferred to this District to allow this Court to decide that question.[17]

2   Several creditors joined in Shanghai Lan Cai's motion.[18]

3         At a hearing on December 18, 2019, the Delaware Bankruptcy Court granted Shanghai

4   Lan Cai's request to transfer venue, given that the Central District of California is where the

5   Debtor resides, where his company Faraday Future is located, and where the actions against Jia in

6   the U.S. were pending at the time of the filing.  See Dec. 18, 2019 Hr'g Tr. at 144:18–147:16.  In

7   doing so, the Delaware Bankruptcy Court left it for this Court to determine whether the case

8   should be dismissed.  *See* Shanghai Lan Cai Asset Management Co, Ltd.'s Response to the

9   Debtor's Chapter 11 Status Report [Dkt. No. 214], at 3.

10   **JURISDICTION**

11         This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a

12   core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by the Bankruptcy Court.

13   Venue is proper pursuant to 28 U.S.C. § 1408.

14   **ARGUMENT**

15   **I.       The Court Should Dismiss The Chapter 11 Case**

16         Jia's improperly-filed case should be dismissed because it was filed in bad faith and in

17   contravention of the principles of international comity.  More fundamentally, a Chapter 11 case

18   before this Court is patently unfair to the Chinese creditor body whose claims would be subject to

19   adjudication and discharge in these U.S. proceedings.

20   **A.       Dismissal Is Warranted For "Cause" Pursuant To Section 1112(b)**

21         Section 1112(b) provides that, except for circumstances inapposite here, "on request of a

22   party in interest, and after notice and a hearing, the court shall convert a case under this chapter to

23   a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of

24   creditors and the estate, for cause unless the court determines that the appointment under section

25

---

[17]     *Id*. at 33.

[18]     *See* Joinders in the Motion [Dkt. Nos. 110, 121, 136, 138] (O-Film Global (HK) Trading
Limited, Nanchang O-Film Photoelectric Technology Co., Ltd., Shanghai Qichengyueming
Investment Partnership Enterprise (Limited Partnership), Beijing Haidian Technology Financial
Capital Holding Group Co., Ltd., and Jinan Rui Si Le Enterprise Management Consulting
Partnership).

KOBRE & KIM LLP
ATTORNEYS AT LAW

1    1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."  11 U.S.C.

2    § 1112(b)(1) (emphasis added); *see In re Prometheus Health Imaging, Inc.*, 705 F. App'x 626,

3    627 (9th Cir. 2017).

4    Once "cause" to dismiss a Chapter 11 case is established, Section 1112(b)(2) establishes a

5    high burden for a debtor to avoid dismissal on the basis that it is not in the best interests of

6    creditors.  Specifically, Section 1112(b)(2) authorizes the Court not to convert or dismiss a case

7    pursuant to Section 1112(b)(1) only if it (i) "finds and specifically identifies *unusual*

8    *circumstances* establishing that converting or dismissing the case is *not* in the best interests of

9    creditors and the estate"; (ii) "there is a reasonable likelihood that a plan will be confirmed"

10   within the applicable statutory timetables; *and* (iii) the grounds for conversion or dismissal

11   include "an act or omission of the debtor" that is both excusable and curable.  *See* 11 U.S.C. §

12   1112(b)(2).

13   Section 1112(b)(4), in turn, provides a non-exhaustive list of grounds for dismissal for

14   cause.  Those grounds include, for example, an inability to effectuate substantial consummation

15   of a confirmed plan.  However, grounds not specifically listed in the statute—including bad faith,

16   lack of fundamental fairness, and a lack of reasonable possibility of a successful reorganization

17   within a reasonable amount of time—may also warrant dismissal.  *See In re Mense*, 509 B.R. 269,

18   277 (Bankr. C.D. Cal. 2014) ("In finding a lack of good faith, courts have emphasized an intent to

19   abuse the judicial process and the purposes of the reorganization provisions . . . [p]articularly

20   when there is no realistic possibility of an effective reorganization and it is evident that the debtor

21   seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their

22   rights.").

23   Here, there is "cause" to dismiss this Chapter 11 case because (1) it was not filed in good

24   faith and (2) a U.S. bankruptcy proceeding is not the appropriate means to resolve the claims of

25   the Debtor's almost entirely Chinese creditor body.  While Section 1112(b) requires the court to

26   consider whether conversion to Chapter 7 or appointment of a trustee are better alternatives to

27   dismissal, those remedies cannot resolve the hurdles here to fair and effective administration of

28   this case.  Additionally, the Debtor cannot identify any "unusual circumstances" counseling

1   against dismissal.  Indeed, his proposed plan of reorganization—rather than being likely

2   confirmable—is, instead, as the Delaware Bankruptcy Court put it, "like a hope and a prayer."

3   See Dec. 18, 2019 Hr'g Tr. 146:21–23.

4       **1.**    **The Petition Was Not Filed In Good Faith**

5       It is well-settled in this Circuit that a lack of good faith is sufficient to warrant dismissal of

6   a Chapter 11 case.  *See In re S&S/Moab Enterprises*, 83 F.3d 428, 1 (9th Cir. 1996) (observing

7   that the rule in the Ninth Circuit is "that a lack of good faith in filing a Chapter 11 petition

8   establishes cause for dismissal"); *see also In re Mense*, 509 B.R. at 276 ("Good faith is required

9   in the commencement and prosecution of a chapter 11 case, and the lack thereof constitutes

10   'cause' for dismissal under § 1112(b)(1)."). Where, as here, there are allegations of bad faith, the

11   burden is on the debtor to establish his good faith.  *See In re Prometheus Health Imaging, Inc.*,

12   705 F. App'x 626, 627 (9th Cir. 2017).

13       The Ninth Circuit has adopted a "totality of facts and circumstances" test to determine a

14   case was filed in good faith.  *Id.*  Under this test, the Court looks at "any factors which evidence

15   an intent to abuse the judicial process and the purposes of the reorganization provisions" *id.*,

16   "whether a debtor is attempting to deter and harass creditors," *In re S&S/Moab Enterprises*, 1996

17   WL 209012, at *2 (9th Cir. Apr. 25, 1996), and whether the case was filed for "tactical reasons

18   unrelated to reorganization," *In re Moore*, 583 B.R. 507, 512 (C.D. Cal. 2018), *aff'd sub

19   nom. Moore v. U.S. Tr. for Region 16*, 749 F. App'x 621 (9th Cir. 2019).  Moreover, "[i]t

20   constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical

21   advantage regarding litigation ongoing in a nonbankruptcy forum."  *See In re Gilliam*, No. BAP

22   NC-04-1311-SBRP, 2005 WL 6960202, at *6 (B.A.P. 9th Cir. Aug. 10, 2005).  A debtor fails to

23   meet his burden to establish good faith when he simply asserts that he "filed a proposed

24   disclosure statement and plan, filed all monthly operating reports, and paid all quarterly fees to

25   the United States Trustee."  *In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 583 (B.A.P. 9th

26   Cir. 1995).  Thus, what matters in this Circuit is not the "form" of the case, but rather its

27   "substance."  *Id.*

28

1    Here, the Debtor's case was filed in bad faith for two reasons: first, it was done for tactical

2    reasons "to unreasonably deter and harass creditors," *In re Mense*, 509 B.R. at 277, and, second,

3    the petition represents "an attempt . . . to achieve objectives outside the legitimate scope of the

4    bankruptcy laws." *In re Prometheus Health Imaging, Inc.*, 705 Fed. App'x. at 627.

5
6        **a.   The Debtor's Chapter 11 Case Was Filed To Hinder Shanghai Lan Cai's Enforcement Proceedings Against Him And To Avoid A Court-Ordered Debtor's Examination**

7
8    Courts in this Circuit have long been skeptical of bankruptcy filings where the record

9    demonstrates that the debtor's "sole objective to simply stay [a creditor's] collection efforts" and

10   the debtor engaged in "last minute efforts to transfer away [estate assets]." *See, e.g., In re Erkins*,

11   253 B.R. 470, 476 (Bankr. D. Idaho 2000) (dismissing Chapter 11 case for lack of good faith).

12   And a "creditor's sharp tactics outside of bankruptcy does not undo a debtor's bad faith filing." *In*

13   *re SR Real Estate Holdings*, LLC, 506 B.R. 121, 128 (Bankr. S.D. Cal. 2014) (dismissing case

14   despite the fact that the debtor filed his case in response to aggressive creditor pursuit).  That is

15   precisely what happened here.

16   The Debtor's course of conduct clearly reveals that he sought to gain a "tactical litigation

17   advantage" over Shanghai Lan Cai's increasingly successful steps to uncover his hidden assets in

18   order to collect on its debt.  *See In re Gilliam*, 2005 WL 6960202, at *6.  In the months leading up

19   to his Chapter 11 filing, Jia suffered a string of defeats in Shanghai Lan Cai's enforcement

20   proceeding against him before Judge Otero of the District Court for this District.  Judge Otero

21   was well aware of Jia's attempts to avoid his legal obligations, evade compliance with his

22   discovery obligations, and otherwise conceal his assets from creditors.  *See* Sept. 3, 2019 Order,

23   California Docket [Dkt. No. 79] at 3 (observing that preliminary injunction relief was necessary

24   due to "his failure to pay creditors" and the fact that he "is on the Chinese government list of debt

25   defaulters").  In fact, the Court had also signaled it was prepared to find in favor of Shanghai Lan

26   Cai.  Id. at 3 (finding that "[Shanghai Lan Cai] is very likely to prevail on its action to enforce the

27   judgment against Jia").  Based on these findings, the Court issued its September 3, 2019

28   preliminary injunction order, prohibiting Jia from, among other things, "transfer[ing]" or

"encumber[ing]" his assets up to the value of Shanghai Lan Cai's judgment against him, with modest exemptions under California law. *Id*. at 3–4.

### i.    The Timing Of The Petition

After the Debtor failed to show up at a scheduled deposition, the Court also ordered him to appear at a debtor's examination under California law before Magistrate Judge Wilner of this District, which was set to take place on October 17 and 18, 2019. *See* Order to Appear for Examination of Judgment Debtor RE: Enforcement of Judgment, California Docket [Dkt. No. 63]; Order Granting Joint Stipulation to Continue Judgment Debtor's Examination of Respondent Jia Yueting, California Docket [Dkt. No. 82].

On the eve of that examination, however—where Jia would be forced to answer questions regarding his assets, business dealings, and evasion of creditors—he filed his Chapter 11 petition in Delaware. See Chapter 11 Voluntary Petition [Dkt. No. 1]. At that time, the Debtor did not face loan defaults or mounting pressure from his Chinese creditor body that required "breathing room" to reorganize his affairs. Instead, the only creditors pursuing Jia in the U.S. were those involved in only three or so enforcement proceedings in California—a fact which he has expressly acknowledged. See Debtor's Statement Regarding Shanghai Lan Cai Asset Management Co, Ltd.'s Response to the Debtor's Chapter 11 Filing [Dkt. No. 66] ¶ 3 (stating that this Chapter 11 was filed as a result of these enforcement proceedings commenced in the United States). And the only explanation Debtor's counsel has given for the timing of the filing was to prevent the examination from going forward. See Dec. 18, 2019 Hr'g Tr. 98:10–12 (Debtor's counsel acknowledging that "we filed before the examination of the debtor"). That alone is strong indicia of bad faith. *See In re St. Paul Self Storage*, 185 B.R. 580, 582, 584 (9th Cir. B.A.P. 1995) (bad faith for debtor to file bankruptcy one day prior to a hearing on a creditor's discovery motion in state court litigation).

### ii.    The Initial Forum In Which The Petition Was Filed

Moreover, as described above, the petition was filed in Delaware, across the country from the District in which Shanghai Lan Cai was pursuing him, based on a transparent attempt to

1  manufacture venue there.  Such forum shopping to avoid proceedings in other courts is likewise

2  sufficient to find bad faith.  *See In re WLB-RSK Venture*, 296 B.R. 509, 515 (Bankr. C.D. Cal.

3  2003), *aff'd*, 320 B.R. 221 (B.A.P. 9th Cir. 2004), *aff'd*, 223 F. App'x 555 (9th Cir. 2007)

4  (dismissal under Section 1112(b) where the petition was "a forum shopping effort to avoid the

5  latest, still pending litigation in the state court"); *cf. In re Fairfield Sentry Ltd.*, 714 F.3d 127, 135

6  (2d Cir. 2013) (manipulation of a foreign debtor's center of main interest in bad faith result in

7  denial of Chapter 15 recognition).

8
       **iii.**    **The Debtor's Selective Use Of The Automatic Stay Against Shanghai Lan
Cai**

9

10        And, as this case has progressed, Jia has shown that he seeks to use the powers the

11  Bankruptcy Code affords him—such as the automatic stay—as a sword and not a shield, with

12  Shanghai Lan Cai as the target.  For example, after the petition date, Jia's counsel threatened to

13  take action against Shanghai Lan Cai and its counsel for "willful stay violation"—including

14  seeking sanctions—if they did not instruct *non-debtor third parties* to not produce documents in

15  response to subpoenas issued to those third parties *before the bankruptcy filing*, as part of

16  Shanghai Lan Cai's enforcement proceedings  *See* **Exhibit 9** to Xu Declaration (email

17  correspondence between Jia's counsel, Pachulski Stang Ziehl & Jones LLP and O'Melveny &

18  Meyers LLP, and Shanghai Lan Cai's counsel, Kobre & Kim LLP).  In stark contrast, Jia has

19  made no attempt to enforce the worldwide automatic stay against creditors pursuing enforcement

20  actions in China that are possibly subject to U.S. jurisdiction, such as seeking a "comfort order"

21  confirming the global nature of the stay.  *See, e.g., In re Sobelmar Antwerp N.V.*, No. 15-20423,

22  2015 WL 1440829 (Bankr. D. Conn. Mar. 17, 2015) (order confirming worldwide effect of

23  automatic stay); *In re Xerium Technologies, Inc.*, No. 10-11031, 2010 WL 5851796 (Bankr. D.

24  Del. Mar. 30, 2010) (same).

25        Jia's tactical use of the automatic stay to seek to prevent non-debtors from producing

26  third-party documents and to stave off enforcement proceedings is yet another quintessential

27  example of bad faith.  *See In re Silberkraus*, 253 B.R. 890, 902–03 (Bankr. C.D. Cal. 2000) (bad

28  faith exists when a party uses a bankruptcy filing to stay an ongoing state court litigation); *In re*

KOBRE & KIM LLP
ATTORNEYS AT LAW

1    *Start the Engines, Inc.*, 219 B.R. 264, 270 (Bankr. C.D. Cal.1998) (bankruptcy filed in bad faith

2    because petition filed for the improper purpose of delaying a state court action).

3        **b.  The Only Reorganization Purpose For The Filing Cited By The Debtor**
4        **Involves A Non-Debtor Entity And Therefore Cannot Justify The Filing**

5        Jia's only claimed "reorganization objective" for this case does not even relate to *him*, but

6    rather to *Faraday*—which is not a debtor in this case.  See Second Amended Disclosure

7    Statement [Dkt. No. 262], at 3 (noting that Jia "believes that it is imperative to consummate the

8    Restructuring as swiftly as possible in order to enable [Faraday] to obtain the necessary financing

9    and reestablish normal relationships with suppliers and other parties that do business with . . .

10   [Faraday]").  There is no authority for this Court to turn these proceedings into a *de facto* Chapter

11   11 case for Faraday, and this Court should decline Jia's invitation that it do so.[19]

12       The claimed reorganization objection for the case is not only not legally cognizable, but it

13   is also not factually supported.  Jia has disclosed nothing to substantiate his assertion that his Plan

14   is helpful, let alone necessary, in order for Faraday to obtain new financing.  In fact, during the

15   December 18, 2019 hearing before the Delaware Bankruptcy Court, Jia's counsel conceded that it

16   was the *filing of this bankruptcy case* that caused a potential investor in Faraday to withdraw from

17   funding the company.  *See* Dec. 18, 2019 Hr'g Tr. 121:10–14 (Debtor's counsel explaining "[w]e

18   were invited by a government entity to go to the Middle East to a sovereign fund, and the minute

19   that we filed the Chapter 11 case and it became clear the financial issues, Faraday was

20   uninvited.").  Therefore, the only proffered reorganization rationale for the filing can be rejected

21   on its face and plainly does not establish the Debtor's good faith.

22       Tellingly, while Jia had the opportunity to present evidence and testify at the December

23   18, 2019 hearing in order to satisfy his burden on the issue of good faith, he chose not to do so

24   and, indeed, decided not to attend the hearing at all.  The case should therefore be dismissed for

25   "cause" because Jia has not, and cannot, establish that he filed the case in good faith.

26

27

28   _____
[19]    Of course, as a California corporation, Faraday would have the right to file a Chapter 11 case in the United States.  *See generally* 11 U.S.C. § 109 (a).

2.    **The Case Should Be Dismissed For "Cause" Under Principles Of International Comity**

This Court cannot effectively administer the worldwide estate in this case, and therefore Jia's reorganization cannot be appropriately effectuated in the U.S., given that the center of gravity of the claims against Jia lies in China.   Under the extraordinary circumstances of this case, principles of international comity strongly militate in favor of dismissal.

Comity is the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protections of its laws."  *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Accordingly, courts have dismissed Chapter 11 cases for cause pursuant to Section 1112(b) where, as here, the debtor sought to substitute United States law in place of the law of more relevant countries.  In Yukos, for example, the court dismissed a Chapter 11 proceeding for cause after finding that where "the vast majority of the business and financial activities" of the debtor occurred in Russia, the debtor "[sought] to substitute United States law in place of Russian law . . . and to use judicial structures within the United States in an attempt to alter the creditor priorities that would be applicable in the law of other jurisdictions."  *In re Yukos Oil Co.*, 321 B.R. 396, 410 (S.D. Tex. 2005).  The circumstances here mandate the same result.

a.    **The Doctrine Of Prescriptive Comity Applies In This Case And Compels Dismissal**

The applicable branch of comity known as the "comity of nations" or "prescriptive comity" looks to whether—out of deference to another sovereign nation's laws—the exercise of jurisdiction by a U.S. court is "unreasonable."  *See In re Maxwell Commc'n Corp. plc*, 93 F.3d 1036, 1047–48 (2d Cir. 1996); *see also Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (explaining that "'prescriptive comity[]' . . .  guides domestic courts as they decide the extraterritorial reach of federal statutes"); *Paraschos v. YBM Magnex Int'l, Inc.*, 130 F. Supp. 2d 642, 645 (E.D. Pa. 2000) ("Under the principle of comity between sovereign nations, a district court should decline to exercise jurisdiction under certain circumstances in deference to the laws

KOBRE & KIM LLP
ATTORNEYS AT LAW

1  and interests of another foreign country." (citing *Basic v. Fitzroy Engineering*, No. 97-1052, 1997

2  WL 753336 at *8 (7th Cir. Dec. 4, 1997)).

3      In fact, comity principles apply even if there is no competing foreign proceeding.  *See In*

4  *re Arcapita Bank B.S.C.(c)*, 575 B.R. 229, 237–38 (Bankr. S.D.N.Y. 2017) (noting that

5  "prescriptive comity" shortens the foreign reach of a U.S. statute even absent a competing foreign

6  proceeding); *see also In re Irish Bank Resolution Corporation Ltd*, Case No. 13-12159 (CSS),

7  2014 WL 9953792, at *21 (Bankr. D. Del. April 30, 2014) (explaining that "[t]he foreign laws

8  need not be identical to their counterparts under the laws of the United States").[20]  Thus, the fact

9  that there is no established individual bankruptcy proceeding under Chinese law is not a basis to

10  conclude that a U.S. bankruptcy proceeding is the appropriate means to resolve the claims of an

11  almost entirely China-based creditor body.

12      To determine whether it is reasonable to exercise U.S. jurisdiction, courts are instructed to

13  look to "familiar choice-of-law factors," such as "the link between the regulating state and the

14  relevant activity, the connection between that state and the person responsible for the activity (or

15  protected by the regulation), the nature of the regulated activity and its importance to the

16  regulating state, the effect of the regulation on justified expectations, the significance of the

17  regulation to the international system, the extent of other states' interests, and the likelihood of

18  conflict with other states' regulations."  *In re Maxwell Commc'n Corp. plc*, 93 F.3d at 1048

19  (relying on the Restatement (Third) of Foreign Relations § 403) (other citations omitted).  Here,

20  those factors all strongly militate in favor of dismissal.

21           **b.  China Has An Overwhelming And Demonstrated Interest In**
22               **Adjudicating The Underlying Debts At Issue In This Case**

23      The Chinese creditor body who issued their Chinese-law-governed loans to Chinese

24  companies controlled by Jia, a Chinese national, had no reason to expect that they would be haled

25  into a U.S. bankruptcy proceeding that is foreign in every sense of the word.  *See In re Maxwell*,

26

---

27  [20]    Indeed, "[a]s Judge Cardozo so lucidly observed: 'We are not so provincial as to say that
every solution of a problem is wrong because we deal with it otherwise at home.'"  *Ackermann v*
28  *Levine*, 788 F.2d 830, 842 (2d Cir. 1986) (quoting *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 110–
11 (1918) (Cardozo, J.)).

93 F.3d at 1051 (finding that "England has a much closer connection to these disputes than does the United States" where the transfer occurred in England and "English law applied to the resolution of disputes arising under" the credit agreements under which the relevant transfers were made).  Moreover, any resolution of individual creditor claims would plainly turn on the interpretation of Chinese contract law.  *See In re Yukos Oil Co.*, 321 B.R. at 411 (finding that the debtor's attempt to "substitute United States law" in the place of Russian and international law to have "underlying disputes [that] appear[red] to turn on construction of statutes enacted in a foreign language" that risked "disagreement as to the translation of the language" all weighed in favor of dismissal under Section 1112(b).

And perhaps most significantly, the Chinese securities regulator has ordered Jia's return to China so that he could resolve his debt *in that jurisdiction*.  *See supra* n. 9.  This could not be a clearer indication of China's strong interest in having a Chinese forum applying Chinese law to deal with Jia's debts.  Indeed, Jia has publicly admitted—including at his Section 341(a) meeting on December 6, 2019 before the Office of the U.S. Trustee for the District of Delaware[21]—that he intends to parlay any discharge he receives here in the U.S. to improve his standing vis-à-vis the Chinese governmental agencies that have censured his misconduct there.[22]  Further, courts across China have frozen over a billion dollars' worth of Jia's assets and those of his companies.  See supra n. 6.  Given China's overwhelming interest in the resolution of Jia's debt issues, using a U.S. bankruptcy process to resolve those debts would therefore cause precisely the type of international conflict that comity is designed to avoid.  *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 109 (2d Cir. 2013) (purpose of international comity is to "avoid conflict with international law" (citing *In re Maxwell Commc'n Corp.*, 93 F.3d at 1048)); *cf. Mujica* 771 F.3d 580 at 597

---

[21]    Given that the Debtor is not fluent in English, his responses at Section 341 meeting to questions from the Office of the U.S. Trustee and from creditors were in Mandarin Chinese and were translated to English with a live interpreter.  Given the quality of the audio recording and the fact that the recording captured largely only the Chinese responses rather than the English translations, Shanghai Lan Cai has not received a fully translated transcript of this meeting to date.  It would be pleased to provide such transcript to the Court following that receipt.

[22]    *See* 贾跃亭债务处理小组：重组方案通过后，贾跃亭或将回国经营 FF, SOHU (Nov. 26, 2019), http://www.sohu.com/a/356023513_100001551, a true and correct copy of which, together with its English translation and translation certificate, is attached to the Xu Declaration as **Exhibit 10.**

KOBRE & KIM LLP
ATTORNEYS AT LAW

1   (applying "the federal foreign affairs doctrine" to dismiss claims under international comity that

2   could interfere with foreign relations).

3          Under the doctrine of prescriptive comity, therefore, a U.S. court should defer to a

4   Chinese legal system far better equipped to handle these claims of individuals and entities who

5   are familiar with that system.  Indeed, permitting Jia's case to continue in a U.S. bankruptcy court

6   would undermine the United States' "strong interest in not assuming the singular burden of

7   collection court to the world." *In re Bancredit Cayman Ltd.*, Bankr. No. 06-11026 (SMB), Adv.

8   No. 08-1147, 2008 WL 5396618, at *9 (Bankr. S.D.N.Y. Nov. 25, 2008).

9
10          **c.    Given Its Strong Chinese Nexus, The Case Cannot Proceed In A
            Manner That Comports With The Bankruptcy Code**

11          Even setting aside the strong Chinese interest in these matters, it is questionable at best

12  that this case could proceed in this Court in the way it should.  For example, it is likely that any

13  discharge granted by a U.S. court will not be enforced by Chinese courts and will be

14  unenforceable against Chinese creditors who are not subject to this Court's jurisdiction.  Jia has

15  made no showing that the Chinese courts would respect any discharge.  Nor has he demonstrated

16  that this Court could enjoin a Chinese creditor from acting against assets he holds in China.  *See*

17  *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516–17 (2d Cir. 1975) (holding that a "stay cannot

18  be effective . . . without in personam jurisdiction over the creditor who has begun an action in a

19  foreign tribunal that is not within the jurisdiction of the United States.").[23]

20          Jia's only rejoinder to these points in prior briefing simply sidesteps them, and in fact

21  raises its own set of fatal problems.  In particular, his opposition to Shanghai Lan Cai's motion

22  filed with the Delaware Bankruptcy Court stated that, through his Chapter 11 case, Jia will not

23  seek to resolve "PRC claims" or "claims against PRC assets" but instead seek only to "restructure

24

25  _____

[23]     *See also In re Mak Petroleum, Inc.*, 424 B.R. 904, 905 (Bankr. M.D. Fla. 2010) ("[T]o
enjoin a party from commencing or prosecuting a foreign proceeding . . . the Court must be
26  authorized to exercise personal jurisdiction over that entity pursuant to the Due Process Clause of
the Fifth Amendment to the U.S. Constitution."); *In re Spanish Cay Co., Ltd.*, 161 B.R. 715, 726
27  (Bankr. S.D. Fla. 1993) (abstaining from exercising jurisdiction over debtor's Chapter 11 case
where the Court "could not prevent Bahamian citizens and the Bahamian governmental agencies
28  from proceeding with their claims against the [Bahamian] debtor" even *if* the Court retained
jurisdiction of the case).

1   his U.S. holdings." *See* Debtor's Opposition to Motion to Dismiss [Dkt. No. 112] at ¶ 38, 42–43.

2   In other words, the Debtor's proposal is that the Chinese creditors pursuing assets in China

3   proceed along one track and get to retain whatever assets and rights they receive under Chinese

4   law, while the Chinese creditors who have pursued (or could pursue) assets in the U.S. are subject

5   to his bankruptcy discharge.

6       The Debtor has cited no authority allowing him to pursue a Chapter 11 case by cherry

7   picking the assets and claims that will be administered in the case. And for good reason. In a

8   Chapter 11 case, the debtor's estate is comprised of "*all* legal and equitable interests of the debtor

9   in property" (with certain limited exceptions) . . . "*wherever* located and by whomever held." 11

10  U.S.C. § 541(a) (emphasis supplied); see also 11 U.S.C. § 1334 (e) (providing exclusive

11  jurisdiction over worldwide estate of the debtor). And the exclusive circumstance in which the

12  Bankruptcy Code sanctions a limited territorial proceeding—where the Chapter 11 case is filed

13  following the recognition of a foreign bankruptcy proceeding—does not apply here. *See* 11

14  U.S.C. § 1528. More fundamentally, the manner in which Jia wants to conduct this case would

15  turn on its head one of the most sacred and universal principles of bankruptcy law: equal

16  treatment of creditors. *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th

17  Cir. 1996) (noting that one of the "fundamental bankruptcy policies" is "the equal treatment of

18  creditors"); *In re Rinard*, 451 B.R. 12, 19 (Bankr. C.D. Cal. 2011) (noting that one of the two

19  "overarching . . . premises of federal bankruptcy law [is] . . . equal treatment among classes of

20  creditors").

21      As demonstrated above, there is ample "cause" to dismiss this case under Section 1112(b).

22  And Jia plainly cannot meet the high bar of showing that there are "unique circumstances," as

23  required by Section 1112(b)(2), demonstrating that the "best interests of the creditors" will not be

24  served by dismissal, as he must do to avoid that result. *See* 11 U.S.C. § 1112(b)(2). Nor can Jia

25  demonstrate that the appointment of a bankruptcy trustee or conversion of his case to a Chapter 7

26  better serves the "best interests of the creditors" under Section 1112(b)(2). To the contrary,

27  neither appointment of a bankruptcy trustee nor conversion to a case under Chapter 7 can remedy

28  the intractable problems presented by this filing. The very nature of the debts involved in this

1    case, the law that governs those debts, and the location of virtually the entire creditor body

2    fundamentally hamstring this Court from administering Jia's estate—let alone doing so in a

3    manner that is fair to the Chinese creditor body.  Accordingly, the case should be dismissed on

4    comity grounds for "cause."

5    **B.    Alternatively, The Court Should Dismiss The Chapter 11 Case Pursuant To
     Section 305(a) Of The Bankruptcy Code**

6

7         Section 305(a)(1) of the Bankruptcy Code permits a bankruptcy court to dismiss any

8    bankruptcy case or suspend all proceedings therein where "the interests of creditors and the

9    debtor would be better served by such dismissal . . . ." 11 U.S.C. § 305(a)(1).  While courts agree

10   that abstention pursuant to Section 305(a) is a form of "extraordinary relief," the extraordinary

11   circumstances here are precisely the type that warrant such relief.  *See, e.g., In re Xacur*, 219 B.R.

12   956, 969 (Bankr. S.D. Tex. 1998) (dismissing case of a Mexican national residing in Texas as of

13   the petition date under Section 305(a) because "[a] Mexican court may not recognize the

14   automatic stay of a United States bankruptcy proceeding" and "[t]here are pending Mexican

15   lawsuits to collect on some of the avals at issue").  And, as is the case with dismissals for "cause"

16   pursuant to Section 1112(b), "considerations of comity" can also "support abstention pursuant to

17   § 305(a)."  *In re Northshore Mainland Svcs., Inc.*, 537 B.R. 192, 208 (Bankr. D. Del. 2015).

18        For the reasons set forth above, the facts and circumstances of this case cast serious doubt

19   as to whether his Chapter 11 filing was and is intended in any way to serve the Chinese creditors'

20   interests, and whether this case even could serve those interests.

21        *In re Northshore Mainland Svcs., Inc.* is instructive here.  In *Northshore*, several

22   Bahamian entities filed for Chapter 11 protection despite the fact that the underlying debts arose

23   from a Bahamian hotel development that were owed to foreign creditors, who the Court found

24   might expect to be haled into insolvency proceedings in the *Bahamas* but certainly not in

25   Delaware.  *See In re Northshore Mainland Svcs, Inc.*, 537 B.R. at 197.  In granting dismissal of

26   all of the cases other than that of the Delaware-based entity pursuant to Section 305, the Court

27   agreed with the movants' contention that the case "lack[ed] any meaningful connection to the

28

KOBRE & KIM LLP
ATTORNEYS AT LAW

United States." *Id*. at 200. In particular, the Court emphasized the importance of creditors'

expectations, observing the following:

> I perceive no reason—and have not been presented with any evidence—
> that the parties expected that any "main" insolvency proceeding would take
> place in the United States. In business transactions, particularly now in
> today's global economy, the parties, as one goal, seek certainty.
> Expectations of various factors—including the expectations surrounding
> the question of where ultimately disputes will be resolved—are important,
> should be respected, and not disrupted unless a greater good is to be
> accomplished.

> *Id.* at 206.

As the Court found in Northshore, where, among other things, a majority of the parties-in-

interest are either incorporated or located in a foreign country, expectations of those parties,

"including the expectations surrounding the question of where ultimately dispute will be

resolved" are "important, should be respected, and not disrupted unless a greater good is to be

accomplished." *Id*. at 206. Indeed, those factors even outweighed the fact that Bahamian

insolvency rules did not afford the debtors with the same rights as they would have obtained

under Chapter 11. *Id*. at 205. Similarly, here, there is no question that the Chinese creditors

expected to resolve their disputes with Jia and his entities in China, as evidenced by, among other

things, the extensive litigation that creditors are pursuing against him in that country.

For the reasons set forth above and in Section A.2, the case should be dismissed on comity

grounds pursuant to Section 305.

1

## **CONCLUSION**

2    For the reasons stated above, Shanghai Lan Cai respectfully requests that this Court enter

3 an Order dismissing this case and granting Shanghai Lan Cai such other and further relief as this

4 Court may deem just and proper.

5 Dated: February 21, 2020                    LESNICK PRINCE PAPPAS LLP

6                                                          – AND –

7                                                          KOBRE & KIM LLP

8

9                                                          By: /s/Christopher E. Prince
                                                                  Christopher E. Prince
10                                                              *Attorneys for Creditor Shanghai Lan Cai*
                                                                  *Asset Management Co, Ltd.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KOBRE & KIM LLP
ATTORNEYS AT LAW

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Lesnick Prince & Pappas LLP, 315 W. Ninth St., Suite 705, Los Angeles, CA 90015.

A true and correct copy of the foregoing document entitled (*specify*): **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY CREDITOR SHANGHAI LAN CAI ASSET MANAGEMENT CO, LTD. TO DISMISS THE DEBTOR'S CHAPTER 11 CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 02/21/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Tanya Behnam**    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- **Jerrold L Bregman**    ecf@bg.law, jbregman@bg.law
- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Stephen D Finestone**    sfinestone@fhlawllp.com
- **Alexandra N Krasovec**    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- **Ben H Logan**    blogan@omm.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Malhar S Pagay**    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- **Christopher E Prince**    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- **Randye B Soref**    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- **Benjamin Taylor**    btaylor@taylorlawfirmpc.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Emily Young**    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 02/21/2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Vincent P. Zurzolo
United States Bankruptcy Court
255 E. Temple St., Suite 1360
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/21/2020 | Christopher E. Prince | /s/Christopher E. Prince |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.