1  Richard M. Pachulski (CA Bar No. 90073)
   Jeffrey W. Dulberg (CA Bar No. 181200)
2  Malhar S. Pagay (CA Bar No. 189289)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA  90067
4  Telephone: 310/277-6910
   Facsimile: 310/201-0760
5  Email:    rpachulski@pszjlaw.com
             jdulberg@pszjlaw.com
6             mpagay@pszjlaw.com
7
   Attorneys for Yueting Jia, Debtor and Debtor in Possession
8
                    **UNITED STATES BANKRUPTCY COURT**
9
                    **CENTRAL DISTRICT OF CALIFORNIA**
10
                        **LOS ANGELES DIVISION**
11
   In re:                                 |  Case No.:  2:19-bk-24804-VZ
12
   YUETING JIA,[1]                        |  Chapter 11
13
                            Debtor.        |  **RENEWED MOTION FOR AN ORDER
14                                         |  (I) APPROVING THIRD AMENDED
                                           |  DISCLOSURE STATEMENT,
15                                         |  (II) APPROVING VOTING AND
                                           |  TABULATION PROCEDURES,
16                                         |  (III) SETTING CONFIRMATION
                                           |  HEARING AND RELATED DEADLINES,
17                                         |  (IV) WAIVING CERTAIN LOCAL
                                           |  RULES AND PROCEDURES, AND
18                                         |  (V) GRANTING RELATED RELIEF;
                                           |  MEMORANDUM OF POINTS AND
19                                         |  AUTHORITIES; DECLARATION OF
                                           |  ROBERT MOON**
20
                                           |  Disclosure Statement Approval Hearing
21                                         |  Date:        TBD
                                           |  Time:        TBD
22                                         |  Place:       Courtroom 1368
                                           |              Roybal Federal Building
23                                         |              255 E. Temple Street
                                           |              Los Angeles, California 90012
24                                         |  Judge:       Hon. Vincent P. Zurzolo
25
26
27
   _____
28 [1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91
   Marguerite Drive, Rancho Palos Verdes, CA 90275.

                                        1

**TABLE OF CONTENTS**

**Page**

I. MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

II. JURISDICTION AND VENUE ......................................................................................... 1

III. BACKGROUND .......................................................................................................... 2

    A.    General Background ........................................................................................ 2

    B.    Filing of the Original Plan and Offering Memorandum and Transfer of the
        Chapter 11 Case ............................................................................................ 2

    C.    Negotiation of the Second Amended Plan .............................................................. 3

    D.    The Second Amended Plan and Third Amended Disclosure Statement ................ 5

IV. RELIEF REQUESTED .................................................................................................. 6

V. ARGUMENT .............................................................................................................. 7

    A.    The Third Amended Disclosure Statement Should Be Approved as
        Containing Adequate Information. ......................................................................... 7

    B.    The Third Amended Disclosure Statement Provides Sufficient Notice of
        Injunction, Exculpation, and Release Provisions in the Second Amended
        Plan ..................................................................................................................... 10

    C.    Notice of the Disclosure Statement Hearing and Request to Shorten Notice. ....... 11

    D.    The Bankruptcy Court Should Set the Confirmation Hearing Date and
        Related Deadlines and Approve the Form of Notice. ........................................... 12

    E.    The Bankruptcy Court Should Approve the Voting Procedures ........................... 13

        (a)    Voting Record Date ................................................................................ 13

        (b)    Voting Deadline. ..................................................................................... 14

        (c)    Temporary Allowance of Claims for Voting Purposes. ........................... 15

        (d)    Solicitation of Class 4. ........................................................................... 15

        (e)    Ballots. ................................................................................................... 16

    F.    The Bankruptcy Court Should Approve the Proposed Tabulation
        Procedures. ......................................................................................................... 16

    G.    The Bankruptcy Court Should Waive the Local Rules and Use of the VZ
        Forms ....................................................................**Error! Bookmark not defined.**

VI. NOTICE ................................................................................................................... 19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Cardinal Congregate I,*
   121 B.R. 760 (Bankr. S.D. Ohio 1990)........................................................... 9

*In re Ferretti,*
   128 B.R. 16 (Bankr. D.N.H. 1991) ................................................................. 9

*In re Monnier Bros.,*
   755 F.2d 1336 (8th Cir. 1985)........................................................................ 7

*In re Neutgens,*
   87 B.R. 128 (Bankr. D. Mont. 1987) .............................................................. 9

*In re Scioto Valley Mortgage Co.,*
   88 B.R. 168 (Bankr. S.D. Ohio 1988)............................................................. 9

*In re Source Enters. Inc.,*
   2007 Bankr. LEXIS 4770 (Bankr. S.D.N.Y. July 31, 2007) ......................... 9

*Official Committee of Unsecured Creditors v. Michelson,*
   141 B.R. 715 (Bankr. E.D. Cal. 1992) ........................................................... 7

*Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.),*
   844 F.2d 1142 (5th Cir. 1988)........................................................................ 8

**Statutes**

11 U.S.C. § 1125 ..................................................................................................... 7

11 U.S.C. § 1125(a)(1) ........................................................................................... 7

**Other Authorities**

S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ........... 8

**Rules**

Fed. R. Bankr. 3017(c)........................................................................................... 15

Fed. R. Bankr. 3018(a)........................................................................................... 15

Fed. R. Bankr. P. 2002(b) ...................................................................................... 13

Fed. R. Bankr. P. 3016(c)................................................................................. 10, 11

Fed. R. Bankr. P. 3017(d) ...................................................................................... 14

Local Rule 3017-1 .................................................................................................. 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOCS_LA:328050.1 46353/002

# I.

## MEMORANDUM OF POINTS AND AUTHORITIES

Yueting Jia ("YT" or the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), respectfully requests entry of an order, substantially in the form attached as **Exhibit A** (the "Disclosure Statement Order"), (i) approving the *Third Amended Disclosure Statement with Respect to Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ]] (as may be amended, modified, or supplemented, the "Third Amended Disclosure Statement");[1] (ii) approving the Voting Procedures and Tabulation Procedures (each as defined herein); (iii) setting the date and time for the hearing on confirmation (the "Confirmation Hearing") of the *Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ]] (as may be amended, modified, or supplemented, the "Second Amended Plan"), and related deadlines; (iv) waiving certain local rules and procedures related to the timing and approval of the Third Amended Disclosure Statement and confirmation of the Second Amended Plan; and (v) granting related relief. In support of this motion, the Debtor respectfully states as follows.

# II.

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the Central District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order No. 13-05 from the United States District Court for the Central District of California, dated July 1, 2013. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtor confirms his consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Central District of California (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

---

[1] Capitalized terms not otherwise defined in this motion shall have the meanings used in the Third Amended Disclosure Statement or the Second Amended Plan, as applicable.

1    orders or judgments in connection herewith consistent with Article III of the United States

2    Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3        The statutory bases for the relief requested are sections 105(a), 502, 1123(a), 1124, 1125,

4    1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 3003,

5    3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

6    Rules"), and Local Rules 2002-1 and 3017-1.

7                                    **III.**

8                              **BACKGROUND**

9    **A.    General Background**

10        On October 14, 2019 (the "Petition Date"), the Debtor commenced this case by filing a

11    voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States

12    Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), the location

13    of the Debtor's principal assets in the United States. The Debtor continues in the possession of his

14    property and continues to manage his affairs as a debtor in possession pursuant to section 1107(a)

15    of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

16        On October 25, 2019, the Office of the United States Trustee appointed an official

17    committee of unsecured creditors (the "Committee") [Docket No. 45]. The members of the

18    Committee are: Ping An Bank, Ltd. Beijing Branch, China Minsheng Trust Co., Ltd., Shanghai

19    Leyu Chuangye Investment Management Center LP, Jiangyin Hailan Investment Holding Co.,

20    Ltd., and Shanghai Qichengyueming Investment Partnership Enterprise.

21    **B.    Filing of the Original Plan and Offering Memorandum and Transfer of the Chapter
22         11 Case**

23        Faced with approximately $3.7 billion in claims asserted against him and competing

24    lawsuits from creditors in the People's Republic of China (the "PRC") and the United States,

25    prior to the Petition Date, YT commenced an out-of-court exchange offer backed by a

26    prepackaged plan of reorganization. The majority of YT's debt today stems from his personal

27    guarantees or money he borrowed directly on behalf of companies that he founded or led. YT

28    took these loans for his previous companies in good faith to fund his vision.

PACHULSKI STANG ZIEHL & JONES LLP

2

1   Due to increased pressure by a small minority of creditors and to avoid a race to the

2   courthouse, YT determined it was in the best interests of all his creditors to terminate the

3   exchange offer and file the Chapter 11 Case to implement a "prepackaged" restructuring and

4   continue solicitation of votes during the Chapter 11 Case. Accordingly, on the Petition Date, the

5   Debtor filed the *Debtor's Prepackaged Plan of Reorganization Under Chapter 11 of the*

6   *Bankruptcy Code* [Docket No. 4] *and the Confidential Offering Memorandum, Disclosure*

7   *Statement and Consent Solicitation Statement* [Docket No. 5].

8   As set forth in *the Chapter 11 Status Report and Notice of Termination of Plan Voting*

9   *Deadline* [Docket No. 73], after discussions with the Committee and certain individual creditors,

10   YT determined that it was in the best interests of his creditors to pursue a more traditional process

11   for confirmation of a plan of reorganization. Accordingly, YT terminated the voting deadline in

12   connection with the prepackaged restructuring and filed the *Amended Disclosure Statement with*

13   *Respect to Debtor's Plan of Reorganization under Chapter 11 of the Bankruptcy Code* [Docket

14   No. 94] and on December 4, 2019, the Debtor filed the *Motion for An Order (i) Approving*

15   *Disclosure Statement, (ii) Approving Voting And Tabulation Procedures, (iii) Setting*

16   *Confirmation Hearing And Related Deadlines and (iv) Granting Related Relief* [Docket No. 109].

17   On December 18, 2019, Judge Karen B. Owens of the Delaware Bankruptcy Court

18   transferred the Chapter 11 Case to this Court based on the interests of justice due to, among other

19   things, that the Debtor resides in California and Faraday & Future Inc., on which the success of

20   this Chapter 11 Case depends, is located in California.

21   On December 20, 2019, this Court entered an order that, among other things, established

22   certain procedures concerning the confirmation of a plan of reorganization and approval of a

23   disclosure statement [Docket No. 180] (the "Status Conference Order").

24   **C.    Negotiation of the Second Amended Plan**

25   On January 16, 2020, the Debtor filed the *Notice of Motion and Motion for an Order (I)*

26   *Approving Disclosure Statement, (II) Approving Voting and Tabulation Procedures, (III) Setting*

27   *Confirmation Hearing and Related Deadlines, (IV) Waiving Certain Local Rules and Procedures,*

28

DOCS_LA:328050.1 46353/002

PACHULSKI STANG ZIEHL & JONES LLP

*and (V) Granting Related Relief; Memorandum of Points and Authorities; Declaration Of Robert Moon* [Docket No. 222].

On January 23, 2020, the Court held a status conference and ordered mediation among the Debtor, the Committee, and other creditors including Shanghai Lan Cai Asset Management Co., Ltd. and Shanghai Qichengyueming Investment Partnership.

On January 27, 2020, the Debtor filed the *First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 260], and on January 28, 2020, the Debtor filed the *Second Amended Disclosure Statement with Respect to Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 262] (the "Second Amended Disclosure Statement").

On February 6, 2020, the Court issued an *Order (1) Denying Motion for Approval of Adequacy of Amended Disclosure Statement and 2nd Amended Disclosure Statement; and (2) to Show Cause Why Chapter 11 Case Should not be Dismissed or Converted to a Case Under Chapter 7* [Docket No. 304]. In connection therewith, the Court issued the *Findings of Fact and Conclusions of Law In Support of Order: (1) Denying Motion for Approval of Adequacy of Amended Disclosure Statement and 2nd Amended Disclosure Statement; and (2) to Show Cause Why Chapter 11 Case Should not be Dismissed or Converted to a Case Under Chapter 7* [Docket No. 305] (the "Disclosure Statement Findings"). The Debtor prepared the chart attached hereto as **Exhibit F** to identify the various provisions of the Second Amended Plan and Third Amended Disclosure Statement that address the Court's concerns raised in the Disclosure Statement Findings and in other parties' objections to the Second Amended Disclosure Statement.

In accordance with the Court's *Order (I) Requiring Parties to Participate in Mediation; and (ii) Setting Further Status Conference* [Docket No. 308], the parties mediated under the auspices of Judge Mitchel Goldberg (ret.) during the week of February 3, 2020. At the end of the mediation sessions, the Debtor and the Committee reached an agreement on the material terms of a plan of reorganization.

On February 27, 2020, the Debtor filed the *Motion for Order (A) Authorizing Debtor in Possession to (I) Obtain Post-petition Financing Pursuant to 11 U.S.C. §§ 105, 362, and 364,*

4

*and (II) Granting Liens and Superpriority Claims to Post-petition Lender Pursuant to 11 U.S.C.§*
*364; and (B) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, and 364* [Docket No.
384] (the "DIP Motion"), seeking entry of an order authorizing the Debtor to obtain debtor-in-
possession financing from Pacific Technology Holding LLC in the maximum principal amount of
$6.4 million. Attached to the DIP Motion is the executed Plan Term Sheet that sets forth the
agreed to terms of the Second Amended Plan between the Debtor and the Committee.

**D.**     **The Second Amended Plan and Third Amended Disclosure Statement**

        The Second Amended Plan reflects the agreed to terms with the Committee as set forth in
the Plan Term Sheet attached to the DIP Motion. The Debtor believes that the Second Amended
Plan offers his best available restructuring opportunity, maximizes recoveries to his creditors, and
will restructure the Debt Claims in order to eliminate uncertainty about the ownership of FF
Intelligent Mobility Global Holdings Ltd. f/k/a Smart King Ltd. ("FF Global"), the parent
company of Faraday & Future Inc. ("FF" and collectively with the other operational entities
owned and/or controlled by FF Global and together with FF Global, the "FF Group") with the
goal of placing the FF Group in a stronger position to obtain financing for future competitive and
strategic initiatives.

        The Third Amended Disclosure Statement describes in detail the transactions
contemplated by the Second Amended Plan and the recoveries provided for holders of claims
against YT. The Plan contemplates classifying holders of claims against YT into four classes for
all purposes, including the procedures for voting on the Second Amended Plan, under section
1126 of the Bankruptcy Code. The following chart lists the Second Amended Plan's classes of
claims:

| CLASS | DESCRIPTION | VOTING STATUS |
|-------|-------------|---------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired – not entitled to vote |
| Class 2 | U.S. Secured Claims | Unimpaired – not entitled to vote |
| Class 3 | China Secured Claims | Unimpaired – not entitled to vote |
| Class 4 | Debt Claims | Impaired – entitled to vote |

        As the above table demonstrates, only holders of claims in Class 4 (Debt Claims) are
entitled to vote on the Second Amended Plan. Holders of claims in Class 1 (Priority Non-Tax

DOCS_LA:328050.1 46353/002

Claims), Class 2 (U.S. Secured Claims), and Class 3 (China Secured Claims) lack voting rights because those claims shall be paid in full and in cash or otherwise rendered unimpaired unless the holders of applicable claims agree to a less favorable treatment or make an election to participate in the liquidating trust established for holders of Debt Claims, and are thus unimpaired under the Second Amended Plan. As set forth in the Third Amended Disclosure Statement, there are minimal Class 1 and 2 claims.

## IV.

## **RELIEF REQUESTED**

In seeking entry of the Disclosure Statement Order, the Debtor requests that this Court (i) approve the Third Amended Disclosure Statement as containing "adequate information" under section 1125 of the Bankruptcy Code; (ii) set a date and time during the week of May 18, 2020 for the Confirmation Hearing, which date shall be determined by the Debtor and the Court and included in the Confirmation Hearing Notice; (iii) set the deadline for parties in interest to object to confirmation of the Second Amended Plan; (iv) approve the Confirmation Hearing Notice; (v) approve the Voting Procedures; (vi) approve the Tabulation Procedure; and (vii) waive certain local rules and procedures related to the timing and approval of the Third Amended Disclosure Statement and confirmation of the Second Amended Plan.

In the table below, the Debtor proposes dates relating to confirmation of the Second Amended Plan:

| Proposed Timeline | |
|---|---|
| **Deadline to Object to the Third Amended Disclosure Statement** | March 12, 2020 at 4:00 p.m. (PT) |
| **Disclosure Statement Hearing** | March 19, 2020 at 9:30 a.m. (PT) |
| **Voting Record Date** | March 19, 2020 |
| **Solicitation Mailing Date** | March 30, 2020 |
| **3018 Motion Deadline** | April 16, 2020 at 4:00 p.m. (PT) |
| **Deadline to File Plan Confirmation Motion** | April 23, 2020 at 4:00 p.m. (PT) |
| **Voting Deadline** | April 30, 2020 at 4:00 p.m. (Beijing time) |
| **3018 Objection Deadline** | April 30, 2020 at 4:00 p.m. (PT) |

PACHULSKI STANG ZIEHL & JONES LLP

6

| Deadline to Object to Confirmation of the Plan | May 7, 2020 at 4:00 p.m. (PT) |
|---|---|
| **Deadline to Respond to Objections to Confirmation of the Plan** | May 15, 2020 at 4:00 p.m. (PT) |
| **Confirmation Hearing** | Week of May 18, 2020 |

**V.**

**ARGUMENT**

**A.    The Third Amended Disclosure Statement Should Be Approved as Containing Adequate Information.**

Under section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan. 11 U.S.C. § 1125. Specifically, section 1125 of the Bankruptcy Code states:

> (a)(1) "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); *see also Official Committee of Unsecured Creditors v. Michelson*, 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992) ("Whether the disclosure statement contains 'adequate information' is a question of bankruptcy law that is independent of non-bankruptcy law relating to disclosure.").

A disclosure statement is designed to provide information material to creditors and interest holders as they evaluate whether to accept or reject a plan. *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."). "Adequate information" is a flexible standard, based on the facts and circumstances of each case. *See* 11 U.S.C. § 1125(a)(1); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787,

PACHULSKI STANG ZIEHL & JONES LLP

5907 (indicating that "the information required will necessarily be governed by the circumstances of the case"). The bankruptcy court, in its broad discretion, determines whether the information provided by the plan proponent is adequate under section 1125 of the Bankruptcy Code. *See, e.g.,* *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988).

In the absence of specific statutory guidance as to what types of information constitutes "adequate information," courts have developed lists of items to serve as guideposts in evaluating the adequacy of a disclosure statement for the purposes of solicitation under section 1125 of the Bankruptcy Code. Such information may include:

(a) Circumstances that give rise to the filing of the bankruptcy petition;

(b) Description of the available assets and their value;

(c) Anticipated future of the debtor;

(d) Disclaimer indicating that no statements or information concerning the debtor are authorized other than those set forth in the disclosure statement;

(e) Performance of the debtor while in chapter 11;

(f) Information regarding claims against the estate;

(g) Liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

(h) Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

(i) Summary of the plan of reorganization;

(j) Estimate of all administrative expenses;

(k) Financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

(l) Information relevant to the risks posed to creditors under the plan;

(m) Litigation likely to arise in a non-bankruptcy context; and

(n) The relationship of the debtor with affiliates.

*See In re Neutgens,* 87 B.R. 128, 129 (Bankr. D. Mont. 1987); *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); *In re Ferretti*, 128 B.R. 16, 18-19 (Bankr. D.N.H. 1991). These items, however, are only "yardstick[s] against which the adequacy of disclosure may be measured; the

PACHULSKI STANG ZIEHL & JONES LLP

8

PACHULSKI STANG ZIEHL & JONES LLP

precise information required will be governed by the facts and circumstances presented in each case." *Cardinal Congregate I*, 121 B.R. at 765.

The Debtor submits, and will demonstrate at the Disclosure Statement Hearing (as defined below), that the proposed Amended Disclosure Statement addresses each of the salient types of information necessary to provide holders of Debt Claims in Class 4, the only class of claims entitled to vote on the Second Amended Plan, with "adequate information" for making an informed judgment about the Second Amended Plan. *See In re Source Enters. Inc.*, 2007 Bankr. LEXIS 4770, at *7–8 (Bankr. S.D.N.Y. July 31, 2007); *In re Scioto Valley Mort. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988). Specifically, the Third Amended Disclosure Statement includes:

(a) *Introduction*. An overview of the material terms of the Second Amended Plan, voting requirements, and the deadline to object to the Second Amended Plan (Article I);

(b) *General Information*. An overview of the Debtor's background, liabilities, the Debtor's interest in the FF Group, other assets, and certain relationships (Article II);

(c) *The Chapter 11 Case*. An overview of the significant events that have occurred during the Chapter 11 Case (Article III);

(d) *The Plan*. A description of the classification and treatment of claims under the Second Amended Plan, the acceptance or rejection of the Second Amended Plan, Plan distributions, and the discharge and releases under the Second Amended Plan (Article IV);

(e) *The Trust*. A description of various aspects of the Trust, including creation of the Trust, trust assets, appointment of the Trustee, and distributions under the Trust (Article V);

(f) *Certain Risk Factors to be Considered*. Identification of risks associated with the Second Amended Plan, the confirmation process, the Trust, FF Group, the automotive industry, and other matters (Article VI);

(g) *Confirmation of the Plan*. A description of the voting procedures, the solicitation of votes, the confirmation hearing, and requirements for plan confirmation (Article VII);

(h) *Alternatives to Confirmation and Consummation of the Plan*. A discussion of the alternatives to confirmation, including conversion to a case under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Case, and confirmation of another chapter 11 plan (Article VIII);

9

(i) *Certain United States Federal Income Tax Consequences of the Plan*. A description of certain U.S. federal income tax law consequences of the Second Amended Plan (Article IX); and

(j) *Exhibits*. Exhibits include the Second Amended Plan (Exhibit A), Plan Term Sheet (Exhibit B), Management's Discussion and Analysis of Financial Condition and Results of Operations of FF Global (Exhibit C), Summary of Selected Financial Information of the FF Group (Exhibit D), Simplified Organizational Chart of the FF Group (Exhibit E), Recovery Scenarios and Liquidation Analysis (Exhibit F), Five Year Cash Flow Projections (Exhibit G), Cash Flow Statement for 2018-2019 (Exhibit H), and Pre and Post-Effective Date Structure of FF Global (Exhibit I).

Based on the foregoing, the Debtor submits that the Third Amended Disclosure Statement satisfies all requirements of section 1125 of the Bankruptcy Code and provides adequate information to holders of Debt Claims to vote to accept or reject the Second Amended Plan.

**B.     The Third Amended Disclosure Statement Provides Sufficient Notice of Injunction, Exculpation, and Release Provisions in the Second Amended Plan.**

Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined, and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c).

Article XI of the Second Amended Plan and Article IV.L.2 of the Third Amended Disclosure Statement describe in detail the discharge, release, injunctive, and exculpatory provisions of the Second Amended Plan, including identifying the entities subject to an injunction under the Second Amended Plan and the acts they are enjoined from pursuing. Further, the language in Article XI of the Second Amended Plan and Article IV.L.2 of the Third Amended Disclosure Statement appears in boldface text, making it conspicuous to anyone who reads it. *See* Fed. R. Bankr. P. 3016(c) ("If a plan provides for an injunction . . . the plan and disclosure statement shall describe in specific and conspicuous language (bold, italics, or underline text) all acts to be enjoined and identify the entities that would be subject to the injunction.").

Additionally, because the Debtor is seeking an early discharge, he has added the following conspicuous language in the Second Amended Plan, the Third Amended Disclosure Statement, and the Confirmation Hearing Notice:

**PLEASE TAKE NOTICE THAT, PURSUANT TO ARTICLE 11.3 OF THE PLAN, THE DEBTOR SEEKS A DISCHARGE PURSUANT TO SECTION 1141(D)(5) OF THE BANKRUPTCY CODE AS OF THE EFFECTIVE DATE OF THE PLAN. THE DEBTOR BELIEVES THAT CAUSE EXISTS TO GRANT A DISCHARGE ON THE EFFECTIVE DATE OF THE PLAN BECAUSE THE PLAN PROVIDES FOR THE CONTRIBUTION OF HIS ASSETS TO THE TRUST ON THE EFFECTIVE DATE OF THE PLAN.**

**PLEASE TAKE FURTHER NOTICE THAT, PURSUANT TO THE PLAN, A DISCHARGE WILL BE ENTERED ON THE EFFECTIVE DATE OF THE PLAN, WHICH WILL RESULT IN ALL CREDITORS WITH DISCHARGEABLE CLAIMS BEING ENJOINED FROM TAKING ANY ACTION TO COLLECT, RECOVER OR OFFSET ANY DISCHARGEABLE DEBT AS A PERSONAL LIABILITY OF THE DEBTOR.**

Accordingly, the Debtor submits that the Third Amended Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties the Second Amended Plan enjoins.

**C.**     **Notice of the Disclosure Statement Hearing and Request to Shorten Notice.**

Local Rule 3017-1 requires that "[a] hearing on a motion for approval of a disclosure statement must not be set on less than 42 days notice, unless the court, for good cause shown, prescribes a shorter period." Local Rule 3017-1 also requires that "[o]bjections to the adequacy of a disclosure statement must be filed and served on the proponent not less than 14 days before the hearing, unless otherwise ordered by the court."

The Debtor proposes that the hearing to consider the relief requested in this motion, including the approval of the Third Amended Disclosure Statement as containing adequate information (the "Disclosure Statement Hearing"), will be held on March 19, 2020 at 9:30 a.m. (Pacific time), and objections, if any, to the relief requested in this motion must be filed and served so as to be received by March 12, 2020 at 4:00 p.m. (Pacific time). Under this proposed timeline, the Debtor would provide 20 days' notice of the Disclosure Statement Hearing. Contemporaneously with the filing of this Motion, the Debtor will be filling an application, along

PACHULSKI STANG ZIEHL & JONES LLP

with a declaration in support, for an order setting the Disclosure Statement Hearing on shortened notice.

In accordance with Bankruptcy Rule 3017(a), the Debtor will distribute (via first-class U.S. mail and email) notice of the Disclosure Statement Hearing to (a) all persons or entities listed on the Debtor's Schedules of Assets and Liabilities [Docket No. 28] (the "Schedules") and Creditor Matrix [Docket No. 1]; and (b) all parties required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1 (the "2002 List"). The notice sets forth: (a) the deadline and procedures for filing objections to approval of the Third Amended Disclosure Statement; (b) the date and location of the Disclosure Statement Hearing; and (c) instructions for obtaining copies of the Third Amended Disclosure Statement and the Second Amended Plan. The Debtor submits that such service comports with the requirements of Bankruptcy Rule 3017(a) and Local Rule 3017-1.

**D.    The Bankruptcy Court Should Set the Confirmation Hearing Date and Related Deadlines and Approve the Form of Notice.**

Bankruptcy Rule 2002(b) and (d) require that all creditors, indenture trustees, and equity security holders be given not less than 28 days' notice of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to a plan's confirmation must be filed and served "within a time fixed by the Court."

In accordance with the Bankruptcy Rules, the Debtor proposes to provide all persons or entities listed on the Schedules, the Creditor Matrix, and the 2002 List with notice of the Confirmation Hearing and related objection deadline, in the form attached as **Exhibit B** (the "Confirmation Hearing Notice"). The Debtor will also post the Confirmation Hearing Notice electronically on the Debtor's case website at *https://dm.epiq11.com/yt1*.

The Debtor intends to work with the Court to obtain a date and time for the Confirmation Hearing during the week of May 18, 2020, subject to the granting of this motion. In connection with the Confirmation Hearing, the Debtor requests that the Bankruptcy Court set May 7, 2020 at 4:00 p.m. (Pacific time) as the deadline for parties in interest to object to confirmation of the Second Amended Plan (the "Plan Objection Deadline"). *See* Fed. R. Bankr. P. 2002(b). Setting

the Plan Objection Deadline at least 35 days following the service of the Confirmation Hearing

Notice will provide parties in interest with sufficient time to consider whether to interpose any

objections to the Second Amended Plan, while providing the Court, the Debtor, and all parties in

interest with sufficient time to consider any objection before the Confirmation Hearing.

To streamline the confirmation process and in light of the fact that only Class 4 is voting

on the Second Amended Plan, the Debtor requests that he be permitted to file the motion to

confirm the Second Amended Plan and other briefing in support of the Second Amended Plan

prior to the Voting Deadline (as defined below) and the Plan Objection Deadline and then

subsequently file a reply to any objections to the Second Amended Plan eight (8) days after the

Plan Objection Deadline and at least three (3) days before the Confirmation Hearing. By

staggering the confirmation timeline in this manner, creditors and parties in interest will have

sufficient time to vote and object to the Second Amended Plan, without delaying the overall

confirmation timeline. Accordingly, the Debtor requests that the Court set April 23, 2020 at

4:00 p.m. (Pacific time) as the deadline for the Debtor to file the motion to confirm the Second

Amended Plan and other briefing in support of the Second Amended Plan, and if applicable, May

15, 2020 at 4:00 p.m. (Pacific time) to file and serve responses to any objections to the Second

Amended Plan. These deadlines are otherwise in accordance with the Status Conference Order.

**E.      The Bankruptcy Court Should Approve the Voting Procedures.**

The Debtor also requests that the Bankruptcy Court approve (i) the Voting Record Date

(as defined below); (ii) the Voting Deadline (as defined below); (iii) the briefing deadlines for any

motion brought pursuant to Bankruptcy Rule 3018(a); (iv) the Debtor's transmittal of the

Solicitation Packages (as defined below) to holders of Debt Claims in Class 4; and (v) the form of

Ballot (as defined below) (collectively, the "Voting Procedures").

(a)      *Voting Record Date.*

Bankruptcy Rule 3017(d) provides that on approval of a disclosure statement, unless the

court orders otherwise with respect to one or more unimpaired classes of creditors or equity

security holders, a debtor shall mail to all creditors in Class 4, as well as the United States

Trustee, a copy of the plan, the disclosure statement, notice of the voting deadline, and such other

13

1  information as the court may direct. For purposes of soliciting votes in connection with the

2  confirmation of a plan, "creditors and equity security holders shall include holders of stocks,

3  bonds, debentures, notes and other securities of record on the date the order approving the

4  disclosure statement is entered or another date fixed by the Court, for cause, after notice and a

5  hearing." Fed. R. Bankr. P. 3017(d). Additionally, Bankruptcy Rule 3018(a) provides, in relevant

6  part, that:

7  
8  
9  
10  
> An equity security holder or creditor whose claim is based on a
> security of record shall not be entitled to accept or reject a plan
> unless the equity security holder or creditor is the holder of record
> of the security on the date the order approving the disclosure
> statement is entered or on another date fixed by the court, for cause,
> after notice and a hearing.

11  Accordingly, the Debtor requests that the Bankruptcy Court establish March 19, 2020, the

12  same date as the Disclosure Statement Hearing, as the voting record date (the "Voting Record

13  Date") for purposes of determining which holders of Debt Claims are entitled to receive the

14  Solicitation Package and to vote on the Second Amended Plan.

15  (b)  *Voting Deadline.*

16  Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure

17  statement, the court shall fix a time within which the holders of claims and interests may accept

18  or reject the plan." Fed. R. Bankr. 3017(c).

19  The Debtor requests that the Bankruptcy Court exercise its authority under Bankruptcy

20  Rule 3017(c) and set April 30, 2020 at 4:00 p.m. (Beijing time) as the deadline to submit a Ballot

21  (as defined below) to vote to accept or reject the Second Amended Plan (the "Voting Deadline").

22  Any Ballot received after the Voting Deadline would not be counted (except in the sole discretion

23  of the Debtor). The Voting Deadline provides holders of Debt Claims in Class 4 with at least 42

24  days from approval of the Third Amended Disclosure Statement to analyze the Second Amended

25  Plan and Amended Disclosure Statement, consult with their legal and financial advisors, and

26  return their Ballots. Accordingly, the Debtor requests that the Bankruptcy Court approve the

27  Voting Deadline.

28  

14

(c)    *Temporary Allowance of Claims for Voting Purposes.*

Bankruptcy Rule 3018(a) provides that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purposes of accepting or rejecting a plan." Fed. R. Bankr. 3018(a). Under the Tabulation Procedures (as defined below), the Debtor will not count for voting purposes any Ballot cast for a claim, on account of which a proof of claim was filed before the Voting Record Date that is the subject of a pending objection (except to the extent provided in such pending objection). The Debtor respectfully requests that the Bankruptcy Court set the deadline for filing and serving any motion seeking to have a claim temporarily allowed for voting purposes (any such motion, a "3018 Motion") as April 16, 2020 at 4:00 p.m. (Pacific time) (the "3018 Motion Deadline"). The Debtor further requests that the Court set April 30, 2020 at 4:00 p.m. (Pacific time) as the deadline by which the Debtor or other parties in interest must object to any 3018 Motion.

(d)    *Solicitation of Class 4.*

Bankruptcy Rule 3017(d) specifies the materials to be distributed to creditors and equity security holders upon approval of a disclosure statement. In accordance with this rule, the Debtor proposes to transmit to holders of Debt Claims in Class 4, by no later than March 30, 2020 (the "Solicitation Mailing Date"), a solicitation package containing (i) the Confirmation Hearing Notice; (ii) the Ballot; (iii) the Third Amended Disclosure Statement, Plan, and Disclosure Statement Order, each of which may (but is not required to) be in electronic format (either CD-ROM or flash drive); and (iv) such other information as the Court may direct or approve (collectively, the "Solicitation Package"). The Debtor submits that the proposed Solicitation Package and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

With respect to any transferred claim in Class 4, the Debtor proposes that the transferee be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred claim only if all actions necessary to effect the transfer of the claim pursuant to Bankruptcy Rule 3001(e) have been completed on or before the Voting Record Date and a notice of transfer has been filed and appears in the docket by that date. If a claim is transferred after the transferor

PACHULSKI STANG ZIEHL & JONES LLP

15

has completed a Ballot, the transferee of that claim will be bound by any vote the transferor made on the Ballot.

The Debtor will also serve the Confirmation Hearing Notice and a notice of non-voting status, a form of which is attached as **Exhibit C** (the "Notice of Non-Voting Status"), on the holders of unclassified claims and the holders of claims in Class 1 (Priority Non-Tax Claims), Class 2 (U.S. Secured Claims), and Class 3 (China Secured Claims). The Notice of Non-Voting Status will set forth (i) the non-voting classes; (ii) a summary of the treatment of claims under the Second Amended Plan; (iii) the date and time of the Confirmation Hearing; (iv) the deadline and procedures for filing objections to the Second Amended Plan; and (v) extensive disclosure regarding the release and injunctive provisions of the Second Amended Plan. The Notice of Non-Voting Status will also indicate how parties can obtain a copy of the Second Amended Plan and the Third Amended Disclosure Statement.

(e)    *Ballots.*

Bankruptcy Rule 3017(d) provides that ballots for accepting or rejecting the Second Amended Plan should conform substantially to Official Form No. 14. The Debtor proposes to distribute the ballots to holders of Debt Claims in Class 4 (each a "Ballot" and collectively, the "Ballots") substantially in the form attached as **Exhibit D**. The form of Ballot will be served on holders of Debt Claims in Class 4 entitled to vote on the Second Amended Plan. The proposed Ballot is based on Official Form No. 14 but modified to meet the particular requirements of the Chapter 11 Case and the Second Amended Plan. The Ballot (i) provides holders of Debt Claims with clear instructions on how to complete and return a Ballot; (ii) prominently features the Voting Deadline; (iii) clearly and unequivocally states that Ballots received after the Voting Deadline will not be counted; and (iv) contains extensive disclosure regarding the release and injunctive provisions of the Second Amended Plan.

**F.    The Bankruptcy Court Should Approve the Proposed Tabulation Procedures.**

The Debtor proposes to employ the following rules in tabulating votes to accept or reject the Second Amended Plan (collectively, the "Tabulation Procedures"), and respectfully requests that the Tabulation Procedures be approved:

PACHULSKI STANG ZIEHL & JONES LLP

(a) Unless otherwise provided in these Tabulation Procedures, a claim will be deemed temporarily allowed for voting purposes only in an amount equal to: (i) the liquidated, non-contingent, undisputed amount of such claim as set forth in the Schedules if no proof of claim was filed by the Voting Record Date; (ii) the liquidated, non-contingent, undisputed amount of such claim as set forth on a proof of claim filed by the Voting Record Date; (iii) the amount of such claim as set forth in any stipulation allowing such claim or settlement agreement resolving disputes related to such claim filed with the Court before the Voting Deadline, whether or not the Court has approved the stipulation or agreement as of the Voting Deadline.

(b) If a claim for which no proof of claim has been filed by the Voting Record Date is listed in the Schedules but listed as contingent, unliquidated, or disputed, such claim shall be disallowed for voting purposes. However, if the applicable bar date has not occurred, such claim will be entitled to vote only in the amount of $1.00 for voting purposes unless a stipulation allowing such claim or settlement agreement resolving disputes related to such claim has been filed, as set forth above.

(c) If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim will be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, subject to the other Tabulation Procedures.

(d) If a claim for which a proof of claim has been filed by the Voting Record Date and has not been disallowed and is not subject to a pending objection or adversary proceeding as of the Voting Record Date, and is marked or otherwise referenced on its face as wholly contingent, unliquidated, or disputed, or if no claim amount is specified on such proof of claim, such claim will be temporarily allowed solely for voting purposes in the amount of $1.00, irrespective of how such claim may or may not be set forth in the Schedules; *provided*, *however*, that any undisputed, non-contingent, or liquidated portion of such claim will be deemed temporarily allowed for voting purposes, subject to the other Tabulation Procedures.

(e) If the Debtor has served an objection or request for estimation as to a claim at least ten (10) business days before the Voting Deadline, such claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline.

(f) If any creditor seeks to challenge the allowance of its claim for voting purposes in accordance with the above procedures, the Debtor requests the Court direct such claimant to serve on counsel for the Debtor and file with the Court a 3018 Motion temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Second Amended Plan on or before April 16, 2020 at 4:00 p.m. (Pacific time).

(g) When serving the Solicitation Packages, the Voting Agent will include individualized Ballots for the holders of Debt Claims in Class 4 and identify the allowed amount of the claim held by such holder for voting purposes only pursuant to subsection (a) above.

(h) If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending claim shall be entitled to vote in a manner consistent with these Tabulation Procedures, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtor has objected to such amended claim.

DOCS_LA:328050.1 46353/002

PACHULSKI STANG ZIEHL & JONES LLP

Except as otherwise ordered by the Court, any amendments to proofs of claim filed after the Voting Record Date shall not be considered for purposes of these tabulation rules.

(i) Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate claims within Class 4 shall be provided with only one Solicitation Package and one ballot for voting a single claim, regardless of whether the Debtor has objected to such duplicate claims.

(j) The voter must complete each section of the Ballot, including, without limitation, certifying the amount of its claim, voting to accept or reject the Second Amended Plan, completing the requested identification information, and signing and dating the Ballot. If the party executing the Ballot is signing as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation, or is acting in a fiduciary or representative capacity, he or she must indicate that capacity when signing and, if required or requested by the Voting Agent, the Debtor, or the Bankruptcy Court, must submit evidence satisfactory to the requesting party to so act on behalf of the holder of the claim.

(k) Ballots received after the Voting Deadline will not be counted (except as permitted by the Debtor in his sole discretion). The voter may choose the method of delivery of its Ballot to the Voting Agent at its own risk. A Ballot will be deemed delivered only when the properly executed Ballot is actually received by the Voting Agent. Ballots delivered by fax will *not* be counted.

(l) The voter must vote all its Debt Claims to either to accept or reject the Second Amended Plan. Accordingly, a Ballot that partially rejects and partially accepts the Second Amended Plan will not be counted.

(m) If a claimant holds more than one Debt Claim in Class 4, that claimant must submit a separate Ballot for each such claim arising under a separate debt instrument and will be entitled to a separate vote for numerosity purposes in respect of each such claim.

(n) If multiple Ballots are received from the same voter with respect to the same claim before the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect the voter's intent and will supersede and revoke any prior Ballot received.

(o) The Debtor further proposes that, subject to any contrary order of the Court and except as otherwise set forth herein, he may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the voting report filed with this Court by the Voting Agent, the deadline for which is no later than seven days before the Confirmation Hearing. A defective or irregular Ballot will not be deemed delivered until such defect or irregularity has been cured or the Debtor has waived it. Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

(p) In addition, the following Ballots will not be counted in determining the acceptance or rejection of the Second Amended Plan:

(i) any Ballot that is illegible or contains insufficient information to permit the identification of the holder;

PACHULSKI STANG ZIEHL & JONES LLP

18

(ii)    any Ballot that (x) does not indicate an acceptance or rejection of the Second Amended Plan, (y) indicates both an acceptance and rejection of the Second Amended Plan, or (z) partially accepts and partially rejects the Second Amended Plan;

(iii)    any Ballot cast by a person who does not hold, or does not represent a person who holds, a Debt Claim;

(iv)    any Ballot cast on account of a claim that has not been allowed for voting purposes as set forth in subparagraphs (a) through (d) above;

(v)    any Ballot sent to a person other than the Voting Agent; and

(vi)    any Ballot not bearing an original signature; *provided, however*, that any Ballot submitted via the Voting Agent's online balloting platform (as further described below), or via email, will be deemed to be an original signature.

In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtor requests authorization to accept Ballots via electronic, online transmissions through either (i) the customized online balloting portal on the Debtor's case website or (ii) email. Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the online balloting portal (which allows a holder to submit an electronic signature) or emailing the Ballot to the Voting Agent by sending a copy of the Ballot to tabulation@epiqglobal.com with a reference to "YT Vote" in the subject line. Instructions for electronic, online transmission of Ballots are set forth on the form of Ballot. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective. For the avoidance of doubt, Ballots submitted via the customized online balloting portal or email shall be deemed to contain an original signature.

.

## VI.

## <u>NOTICE</u>

The Debtor will provide notice of this Motion to the following parties, or their counsel, if known: (a) the U.S. Trustee for the Central District of California; (b) Counsel to the Committee; and (c) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002, and/or such other parties as ordered by the Court. A copy of

PACHULSKI STANG ZIEHL & JONES LLP

1  the Motion is also available on the Debtor's case website at https://dm.epiq11.com/YT1. In light

2  of the nature of the relief requested, the Debtor respectfully submits that no further notice of this

3  Motion is required.

4        The Debtor respectfully requests that this Court enter the Disclosure Statement Order

5  granting the relief requested in its entirety and any other relief as is just and proper.

6  Dated:    March 2, 2020           PACHULSKI STANG ZIEHL & JONES LLP
              Los Angeles, California

7                                         */s/ Malhar S. Pagay*

8                                           Richard M. Pachulski (CA Bar No. 90073)
                    Jeffrey W. Dulberg (CA Bar No. 181200)

9                      Malhar S. Pagay (CA Bar No. 189289)
                    10100 Santa Monica Blvd., 13th Floor

10                      Los Angeles, CA  90067
                    Telephone: 310/277-6910

11                      Facsimile: 310/201-0760
                    Email:     rpachulski@pszjlaw.com

12                                              jdulberg@pszjlaw.com
                                        mpagay@pszjlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP

DOCS_LA:328050.1 46353/002

1                                           **<u>Exhibit A</u>**

2                                          **Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

In re:

YUETING JIA,[1]

Debtor.

Case No.: 2:19-bk-24804-VZ
(*formerly 19-12220 KBO in the District of Delaware*)

Chapter 11

**ORDER (I) APPROVING THIRD AMENDED DISCLOSURE STATEMENT, (II) APPROVING VOTING AND TABULATION PROCEDURES, (III) SETTING CONFIRMATION HEARING AND RELATED DEADLINES, (IV) WAIVING CERTAIN LOCAL RULES AND PROCEDURES, AND (V) GRANTING RELATED RELIEF**

Upon consideration of the Debtor's motion (the "<u>Motion</u>)[2] for entry of an order (i) approving the Third Amended Disclosure Statement; (ii) approving the Voting Procedures and Tabulation Procedures; (iii) setting the date and time for the Confirmation Hearing and related deadlines; (iv) waiving certain local rules and procedures related to the timing and approval of the Third Amended Disclosure Statement and confirmation of the Second Amended Plan; and (v) granting related relief, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and this Court's entry of a final order being consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been scheduled and, to the extent necessary, held to consider the relief requested in the Motion (the "<u>Hearing</u>"); and upon the record of the Hearing and all the

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2] Capitalized terms not otherwise defined in this order shall have the meanings used in the Motion, or if not defined therein, in the Third Amended Disclosure Statement.

1

PACHULSKI STANG ZIEHL & JONES LLP

proceedings had before the Court; and the Court having found and concluded that the Third

Amended Disclosure Statement sufficiently describes, among other things, the Debtor, the

Chapter 11 Case, and the Second Amended Plan, and that the Third Amended Disclosure

Statement therefore (i) allows holders of Debt Claims in Class 4 to make an informed judgment

about the Second Amended Plan and (ii) contains "adequate information" as that term is defined

in section 1125(a) of the Bankruptcy Code; and the Court having found and determined the relief

requested in the Motion to be in the best interests of the Debtor, his estate and creditors, and any

parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing

having established just cause for the relief granted herein; and after due deliberation thereon and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED, to the extent set forth herein.

2.      The Third Amended Disclosure Statement is approved as containing adequate

information pursuant to section 1125 of the Bankruptcy Code, and the Debtor is authorized to use

the Third Amended Disclosure Statement in connection with the solicitation of votes in respect of

the Second Amended Plan.

3.      The requirement that the Debtor use certain form pleadings in connection with the

approval of a disclosure statement and confirmation of a plan of reorganization, including a form

combined disclosure statement and plan of reorganization and a form motion to approve the

adequacy of the disclosure statement is hereby waived.

4.      The Confirmation Hearing shall be held on **May [●], 2020 at [●] (PT)**. The

Confirmation Hearing may be continued from time to time without further notice other than the

announcement by the Debtor of the adjourned date(s) at the Confirmation Hearing or any

continued hearing or as indicated on any notice of agenda of matters scheduled for hearing filed

with the Bankruptcy Court.

5.      The deadline to file objections to the confirmation of the Second Amended Plan

shall be **May 7, 2020 at 4:00 p.m. (PT)** (the "Plan Objection Deadline"). Any objection to

confirmation of the Second Amended Plan must state with specificity the grounds for such

objection and be filed with the Bankruptcy Court and served upon (a) counsel for the Debtor,

2

Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Richard M. Pachulski, Esq., Jeffrey W. Dulberg, Esq. and Malhar S. Pagay, Esq.); (b) special counsel for the Debtor, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: Suzzanne Uhland, Esq. and Diana M. Perez, Esq.); (c) counsel to the Creditors' Committee, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068 (Attn: Jeffrey D. Prol, Esq., Andrew D. Behlmann, Esq., and Jeremy D. Merkin, Esq.) and Polsinelli, 2049 Century Park East, 29th floor, Los Angeles, CA 90067 (Attn: Randye B. Soref, Esq.); and (d) the Office of the United States Trustee for the Central District of California, 915 Wilshire Blvd., Suite. 1850, Los Angeles, California 90017 (Attn: Kelly L. Morrison, Esq.).

6.    The deadline to file motion for confirmation of the Second Amended Plan is **April 23, 2020 at 4:00 p.m. (PT)**.

7.    The deadline to file, if necessary, a reply to any valid objection to Confirmation of the Second Amended Plan filed on or before the Plan Objection Deadline is **May 15, 2020 at 4:00 p.m. (PT)**.

8.    The form and manner of service of the Disclosure Statement Notice is hereby approved.

9.    The form and manner of service of the Confirmation Hearing Notice, substantially in the form attached to the Motion as Exhibit B, is hereby approved.

10.    The Voting Procedures are hereby approved.

11.    The Voting Record Date shall be **March 19, 2020.** In addition, with respect to any transferred claim in Class 4, the transferee will be entitled to receive a Solicitation Package (to the extent set forth herein) and cast a Ballot on account of the transferred claim only if all actions necessary to effect the transfer of the claim pursuant to Bankruptcy Rule 3001(e) have been completed on or before the Voting Record Date. In the event a claim is transferred after the transferor has completed a Ballot, the transferee of such claim shall be bound by any vote made on the Ballot by the transferor.

DOCS_LA:328050.1 46353/002

12.     The deadline for filing and serving any motion seeking to have a claim temporarily allowed for voting purposes shall be **April 16, 2020 at 4:00 p.m. (PT)**. The deadline for the Debtor or any other parties in interest to object to such a motion shall be **April 30, 2020 at 4:00 p.m. (PT)**.

13.     Except as provided in paragraph 12 below, the Debtor shall mail or cause to be mailed to holders of Debt Claims in Class 4, so that such mailing commences no later than March 30, 2020 (the "Solicitation Mailing Date"), a solicitation package containing: (i) the Confirmation Hearing Notice; (ii) the form of Ballot; (iii) the Third Amended Disclosure Statement, the Second Amended Plan, and Disclosure Statement Order, which may (but shall not be required to) be in electronic format (either CD-ROM or flash drive); and (iv) such other information as the Court may direct or approve (collectively, the "Solicitation Package"). The Solicitation Package and the manner of service of the Solicitation Package satisfy the requirements of Bankruptcy Rule 3017(d).

14.     The Notice of Non-Voting Status, substantially in the form attached to the Motion as Exhibit C, is hereby approved. Pursuant to Bankruptcy Rule 3017(d), the Debtor is not required to transmit a Solicitation Package to holders of unclassified claims or holders of claims in Class 1 (Priority Non-Tax Claims), Class 2 (U.S. Secured Claims), and Class 3 (China Secured Claims) (collectively, the "Non-Voting Parties"). The Debtor shall mail or cause to be mailed to each Non-Voting Party, so that such mailing commences no later than the Solicitation Mailing Date, the Notice of Non-Voting Status.

15.     The Ballot, substantially in the form attached to the Motion as Exhibit D is hereby approved.

16.     All Ballots must be properly executed, completed, and delivered to the Voting Agent in accordance with the following instructions on or before **April 30, 2020 at 4:00 p.m. (Beijing time)** (the "Voting Deadline"), unless extended or otherwise agreed by the Debtor. **If submitting your vote through the E-Balloting Portal**, the Voting Agent will accept Ballots if properly completed through the E-Balloting Portal. To submit your Ballot via the E-Balloting Portal, visit https://dm.epiq11.com/YT1, click on the "E-ballot portal" in the Case Action Section

PACHULSKI STANG ZIEHL & JONES LLP

4

of the website, and follow the instructions to submit your Ballot. **If submitting your vote by First Class Mail, Overnight Courier, or Hand Delivery**, please use the following address: YUETING JIA - Ballot Processing, c/o Epiq Corporate Restructuring LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005, United States of America. **If submitting a Ballot with your vote by Email**, please send it to tabultion@epiqglobal.com with a reference to "YT Vote" in the subject line. Ballots cast by fax will not be counted unless approved in advance by the Debtor in writing.

17.     The following Tabulation Procedures are hereby approved:

(a)     Unless otherwise provided in these Tabulation Procedures, a claim will be deemed temporarily allowed for voting purposes only in an amount equal to: (i) the liquidated, non-contingent, undisputed amount of such claim as set forth in the Schedules if no proof of claim was filed by the Voting Record Date; (ii) the liquidated, non-contingent, undisputed amount of such claim as set forth on a proof of claim filed by the Voting Record Date; (iii) the amount of such claim as set forth in any stipulation allowing such claim or settlement agreement resolving disputes related to such claim filed with the Court before the Voting Deadline, whether or not the Court has approved the stipulation or agreement as of the Voting Deadline.

(b)     If a claim for which no proof of claim has been filed by the Voting Record Date is listed in the Schedules but listed as contingent, unliquidated, or disputed, and the applicable bar date has not occurred, such claim will be entitled to vote only in the amount of $1.00 for voting purposes unless a stipulation allowing such claim or settlement agreement resolving disputes related to such claim has been filed, as set forth above.

(c)     If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim will be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, subject to the other Tabulation Procedures.

(d)     If a claim for which a proof of claim has been filed by the Voting Record Date and has not been disallowed and is not subject to a pending objection or adversary proceeding as of the Voting Record Date, and is marked or otherwise referenced on its face as wholly contingent, unliquidated, or disputed, or if no claim amount is specified on such proof of claim, such claim will be temporarily allowed solely for voting purposes in the amount of $1.00, irrespective of how such claim may or may not be set forth in the Schedules; *provided*, *however*, that any undisputed, non-contingent, or liquidated portion of such claim will be deemed temporarily allowed for voting purposes, subject to the other Tabulation Procedures.

(e)     If the Debtor has served an objection or request for estimation as to a claim at least ten (10) business days before the Voting Deadline, such claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline.

PACHULSKI STANG ZIEHL & JONES LLP

5

PACHULSKI STANG ZIEHL & JONES LLP

(f)     If any creditor seeks to challenge the allowance of its claim for voting purposes in accordance with the above procedures, the Debtor requests the Court direct such claimant to serve on counsel for the Debtor and file with the Court a 3018 Motion temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Second Amended Plan on or before **April 16, 2020 at 4:00 p.m. (PT)**.

(g)     When serving the Solicitation Packages, the Voting Agent will include individualized Ballots for the holders of Debt Claims in Class 4 and identify the allowed amount of the claim held by such holder for voting purposes only pursuant to subsection (a) above.

(h)     If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending claim shall be entitled to vote in a manner consistent with these Tabulation Procedures, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtor has objected to such amended claim. Except as otherwise ordered by the Court, any amendments to proofs of claim filed after the Voting Record Date shall not be considered for purposes of these tabulation rules.

(i)     Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate claims within Class 4 shall be provided with only one Solicitation Package and one ballot for voting a single claim, regardless of whether the Debtor has objected to such duplicate claims.

(j)     The voter must complete each section of the Ballot, including, without limitation, certifying the amount of its claim, voting to accept or reject the Second Amended Plan, completing the requested identification information, and signing and dating the Ballot. If the party executing the Ballot is signing as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation, or is acting in a fiduciary or representative capacity, he or she must indicate that capacity when signing and, if required or requested by the Voting Agent, the Debtor, or the Bankruptcy Court, must submit evidence satisfactory to the requesting party to so act on behalf of the holder of the claim.

(k)     Ballots received after the Voting Deadline will not be counted (except as permitted by the Debtor in his sole discretion). The voter may choose the method of delivery of its Ballot to the Voting Agent at its own risk. A Ballot will be deemed delivered only when the properly executed Ballot is actually received by the Voting Agent. Ballots delivered by fax will *not* be counted.

(l)     The voter must vote all its Debt Claims to either to accept or reject the Second Amended Plan. Accordingly, a Ballot that partially rejects and partially accepts the Second Amended Plan will not be counted.

(m)    If a claimant holds more than one Debt Claim in Class 4, that claimant must submit a separate Ballot for each such claim arising under a separate debt instrument and will be entitled to a separate vote for numerosity purposes in respect of each such claim.

(n)     If multiple Ballots are received from the same voter with respect to the same claim before the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect the voter's intent and will supersede and revoke any prior Ballot received.

6

(o)   The Debtor further proposes that, subject to any contrary order of the Court and except as otherwise set forth herein, he may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the voting report filed with this Court by the Voting Agent, the deadline for which is no later than seven days before the Confirmation Hearing. A defective or irregular Ballot will not be deemed delivered until such defect or irregularity has been cured or the Debtor has waived it. Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

(p)   In addition, the following Ballots will not be counted in determining the acceptance or rejection of the Second Amended Plan:

(i)    any Ballot that is illegible or contains insufficient information to permit the identification of the holder;

(ii)   any Ballot that (x) does not indicate an acceptance or rejection of the Second Amended Plan, (y) indicates both an acceptance and rejection of the Second Amended Plan, or (z) partially accepts and partially rejects the Second Amended Plan;

(iii)  any Ballot cast by a person who does not hold, or does not represent a person who holds, a Debt Claim;

(iv)   any Ballot cast on account of a claim that has not been allowed for voting purposes as set forth in subparagraphs (a) through (d) above;

(v)    any Ballot sent to a person other than the Voting Agent; and

(vi)   any Ballot not bearing an original signature; *provided, however*, that any Ballot submitted via the Voting Agent's online balloting platform (as further described below), or via email, will be deemed to be an original signature.

18.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.    The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

20.    The Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

# # #

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Exhibit B</u>**

**Confirmation Hearing Notice**

PACHULSKI STANG ZIEHL & JONES LLP

PACHULSKI STANG ZIEHL & JONES LLP

1
2

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION**

3

In re:

4

YUETING JIA,[1]

5

Debtor.

6
7
8

9
10
11
12

Case No.: 2:19-bk-24804-VZ
(*formerly 19-12220 KBO in the District of Delaware*)

Chapter 11

**NOTICE OF HEARING TO CONSIDER CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Date:       May [●], 2020
Time:       [●]
Place:      Courtroom 1368
            Royal Federal Building
            255 E. Temple Street
            Los Angeles, California 90012
Judge:      Hon. Vincent P. Zurzolo

13
14
15
16
17
18

  **PLEASE TAKE NOTICE** that, Yueting Jia (the "Debtor") filed with the United States Bankruptcy Court for the Central District of California Los Angeles Division (the "Bankruptcy Court") (i) the *Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, modified, or supplemented, the "Plan") on March 2, 2020 and (ii) the *Third Amended Disclosure Statement with Respect to Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 94] (as may be amended, modified, or supplemented, the "Disclosure Statement")[2] on March 2, 2020. On [●], 2020, the Bankruptcy Court entered an order [Docket No. [●]] (the "Disclosure Statement Order") that, among other things, approved the Disclosure Statement as containing "adequate information," and authorized the Debtor to begin soliciting votes in respect of the Plan in accordance with the terms of the Disclosure Statement Order.

19
20
21
22
23
24

  **PLEASE TAKE FURTHER NOTICE** that (i) the Bankruptcy Court will hold a hearing to consider confirmation of the Plan (the "Confirmation Hearing") on **May [●], 2020 at [●] (Pacific time)** before the Honorable Vincent P. Zurzolo, United States Bankruptcy Judge, in Courtroom 1368 of the United States Bankruptcy Court for the Central District of California Los Angeles Division, Royal Federal Building, 255 E. Temple Street, Los Angeles, California 90012 and (ii) the deadline for filing objections to the confirmation of the Plan is **May 7, 2020 at 4:00 p.m.(Pacific time)** (the "Objection Deadline"). The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtor of the adjourned date(s) at the Confirmation Hearing or any continued hearing or as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court.

25
26

  **PLEASE TAKE FURTHER NOTICE** that any objection to confirmation of the Plan must state with specificity the grounds for such objection and be filed with the Bankruptcy Court

27
28

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2] Capitalized terms used but not otherwise defined in this notice shall have the meanings used in the Disclosure Statement.

1

and served upon (a) counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Richard M. Pachulski, Esq., Jeffrey W. Dulberg, Esq. and Malhar S. Pagay, Esq.); (b) special counsel for the Debtor, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: Suzzanne Uhland, Esq. and Diana M. Perez, Esq.); (c) counsel to the Creditors' Committee, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068 (Attn: Jeffrey D. Prol, Esq., Andrew D. Behlmann, Esq., and Jeremy D. Merkin, Esq.) and Polsinelli, 2049 Century Park East, 29th floor, Los Angeles, CA 90067 (Attn: Randye B. Soref, Esq.); and (d) the Office of the United States Trustee for the Central District of California, 915 Wilshire Blvd., Suite. 1850, Los Angeles, California 90017 (Attn: Kelly L. Morrison, Esq.).

**PLEASE TAKE FURTHER NOTICE** THAT IF YOU ARE NOT ENTITLED TO VOTE ON THE PLAN, YOU WILL NOT BE SERVED WITH A COPY OF THE DISCLOSURE STATEMENT ORDER, THE PLAN, OR THE DISCLOSURE STATEMENT. You can review copies of the Plan and Disclosure Statement by (a) accessing the website of the Debtor's claims and voting agent, Epiq Corporate Restructuring LLC (the "<u>Voting Agent</u>"), at *https://dm.epiq11.com/yt1*, where such documents will be posted and can be reviewed free of charge, (b) calling (855) 963-0391 (for U.S. callers), (400) 120-3077 (for Chinese callers), or (503-520-4401 (for international callers) and requesting copies of such documents, which will then be mailed to you free of charge, (c) accessing the Bankruptcy Court's website: **www.cacb.uscourts.gov**, or (d) contacting the Voting Agent by email at *tabulation@epiqglobal.com* (please reference "YT" in the subject line) and requesting copies of such documents, which will then be mailed to you free of charge.

**PLEASE TAKE FURTHER NOTICE THAT, PURSUANT TO ARTICLE 11.3 OF THE PLAN, THE DEBTOR SEEKS A DISCHARGE PURSUANT TO SECTION 1141(D)(5) OF THE BANKRUPTCY CODE AS OF THE EFFECTIVE DATE OF THE PLAN. THE DEBTOR BELIEVES THAT CAUSE EXISTS TO GRANT A DISCHARGE ON THE EFFECTIVE DATE OF THE PLAN BECAUSE THE PLAN PROVIDES FOR THE CONTRIBUTION OF HIS ASSETS TO THE TRUST ON THE EFFECTIVE DATE OF THE PLAN.**

**PLEASE TAKE FURTHER NOTICE THAT, PURSUANT TO THE PLAN, A DISCHARGE WILL BE ENTERED ON THE EFFECTIVE DATE OF THE PLAN, WHICH WILL RESULT IN ALL CREDITORS WITH DISCHARGEABLE CLAIMS BEING ENJOINED FROM TAKING ANY ACTION TO COLLECT, RECOVER OR OFFSET ANY DISCHARGEABLE DEBT AS A PERSONAL LIABILITY OF THE DEBTOR.**

*Remainder of Page Intentionally Left Blank*

DOCS_LA:328050.1 46353/002

Dated: _____, 2020        PACHULSKI STANG ZIEHL & JONES LLP
        Los Angeles, California

_____

Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Malhar S. Pagay (CA Bar No. 189289)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email:      rpachulski@pszjlaw.com
            jdulberg@pszjlaw.com
            mpagay@pszjlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP

## Exhibit C

**Notice of Non-Voting Status**

1

1
2

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

3

In re:

Case No.:  2:19-bk-24804-VZ

4

YUETING JIA,[1]

(*formerly 19-12220 KBO in the District of Delaware*)

5

Debtor.

Chapter 11

6

**NOTICE OF NON-VOTING STATUS**

7

8
9
10
11
12

    **PLEASE TAKE NOTICE** that by order dated [●], 2020 [Docket No. [●]] (the "Disclosure Statement Order"), the United States Bankruptcy Court for the Central District of California Los Angeles Division (the "Bankruptcy Court") approved the *Third Amended Disclosure Statement with Respect to Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, modified, or supplemented, the "Disclosure Statement")[2] filed by Yueting Jia (the "Debtor"), for use by the Debtor in soliciting acceptances or rejections of the *Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, modified, or supplemented, the "Plan") from holders of Debt Claims in Class 4.

13
14
15
16
17
18

    **PLEASE TAKE FURTHER NOTICE** THAT UNDER THE TERMS OF THE PLAN, YOUR CLAIM(S) AGAINST THE DEBTOR IS NOT ENTITLED TO VOTE ON THE PLAN. CLAIMS IN CLASS 1 (PRIORITY NON-TAX CLAIMS), CLAIMS IN CLASS 2 (U.S. SECURED CLAIMS), AND CLAIMS IN CLASS 3 (CHINA SECURED CLAIMS) ARE UNIMPAIRED AND DEEMED TO ACCEPT THE PLAN. IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM, YOU SHOULD CONTACT EPIQ CORPORATE RESTRUCTURING LLC (THE "VOTING AGENT") AT (855) 963-0391 (FOR U.S. CALLERS), (400) 120-3077 (FOR CHINESE CALLERS), OR (503-520-4401 (FOR INTERNATIONAL CALLERS) OR BY SENDING EMAIL CORRESPONDENCE TO *TABULATION@EPIQGLOBAL.COM* (PLEASE REFERENCE "YT" IN THE SUBJECT LINE).

19
20
21

    **PLEASE TAKE FURTHER NOTICE** THAT ARTICLE 6.6 AND XI OF THE PLAN CONTAIN CERTAIN RELEASES BY HOLDERS OF CLAIMS, WHICH ARE SET FORTH ON EXHIBIT 1 HERETO. **YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER EXHIBIT 1**, AND TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.

22
23
24
25

    **PLEASE TAKE FURTHER NOTICE** THAT YOU WILL NOT BE SERVED WITH A COPY OF THE DISCLOSURE STATEMENT ORDER, THE PLAN, OR THE DISCLOSURE STATEMENT. If you wish to review copies of the Disclosure Statement Order, the Disclosure Statement, or the Plan, you may do so by (i) calling the Voting Agent, at (855) 963-0391 (for U.S. callers), (400) 120-3077 (for Chinese callers), or (503-520-4401 (for international callers) and requesting copies of such documents, which will then be mailed to you free of charge, (ii) visiting (a) the Voting Agent's website: *https://dm.epiq11.com/yt1*, where such documents will be posted

26
27
28

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2] Capitalized terms used but not otherwise defined in this notice shall have the meanings used in the Disclosure Statement or the Plan, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP

1 and can be reviewed free of charge or (b) the Bankruptcy Court's website:
2 **www.cacb.uscourts.gov**, or (iii) contacting the Voting Agent by email at
*tabulation@epiqglobal.com* (please reference "YT" in the subject line) and requesting copies of
such documents, which will then be mailed to you free of charge. Note that a PACER password
3 and login are needed to access documents on the Bankruptcy Court's website.

4 **PLEASE TAKE FURTHER NOTICE** that if you wish to challenge the Debtor's
classification of your claim, you must file a motion, pursuant to Bankruptcy Rule 3018(a) (a
5 "Rule 3018 Motion"), for an order temporarily allowing your claim in a different classification or
amount for purposes of voting to accept or reject the Plan and serve such motion on the Debtor so
6 that it is received by **April 16, 2020 at 4:00 p.m. (Pacific time)**. In accordance with Bankruptcy
Rule 3018, as to any creditor filing a Rule 3018 Motion, such creditor's Ballot will not be counted
7 unless temporarily allowed by the Bankruptcy Court for voting purposes, after notice and a
hearing. Rule 3018 Motions that are not timely filed and served in the manner as set forth above
8 will not be considered.

9 **PLEASE TAKE FURTHER NOTICE** that (i) the Bankruptcy Court will hold a hearing
to consider confirmation of the Plan (the "Confirmation Hearing") on **May [●], 2020 at [●]**
10 **(Pacific time)** before the Honorable Vincent P. Zurzolo, United States Bankruptcy Judge, in
Courtroom 1368 of the United States Bankruptcy Court for the Central District of California Los
11 Angeles Division, Roybal Federal Building, 255 E. Temple Street, Los Angeles, California 90012
and (ii) the deadline for filing objections to the confirmation of the Plan is **May 7, 2020 at 4:00**
12 **p.m.(Pacific time)** (the "Objection Deadline"). The Confirmation Hearing may be continued
from time to time without further notice other than the announcement by the Debtor of the
13 adjourned date(s) at the Confirmation Hearing or any continued hearing or as indicated in any
notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court.
14

15 **PLEASE TAKE FURTHER NOTICE** that any objection to confirmation of the Plan
must state with specificity the grounds for such objection and be filed with the Bankruptcy Court
16 and served upon (a) counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 10100 Santa
Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Richard M. Pachulski, Esq., Jeffrey W.
17 Dulberg, Esq. and Malhar S. Pagay, Esq.); (b) special counsel for the Debtor, O'Melveny &
Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: Suzzanne
18 Uhland, Esq. and Diana M. Perez, Esq.); (c) counsel to the Creditors' Committee, Lowenstein
Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068 (Attn: Jeffrey D. Prol, Esq., Andrew D.
19 Behlmann, Esq., and Jeremy D. Merkin, Esq.) and Polsinelli, 2049 Century Park East, 29th floor,
Los Angeles, CA 90067 (Attn: Randye B. Soref, Esq.); and (d) the Office of the United States
20 Trustee for the Central District of California, 915 Wilshire Blvd., Suite. 1850, Los Angeles,
California 90017 (Attn: Kelly L. Morrison, Esq.).

21 Dated:                                                    PACHULSKI STANG ZIEHL & JONES LLP
         Los Angeles, California
22                                                           _____
23                                                           Richard M. Pachulski (CA Bar No. 90073)
                                                             Jeffrey W. Dulberg (CA Bar No. 181200)
24                                                           Malhar S. Pagay (CA Bar No. 189289)
                                                             10100 Santa Monica Blvd., 13th Floor
25                                                           Los Angeles, CA  90067
                                                             Telephone: 310/277-6910
26                                                           Facsimile: 310/201-0760
                                                             Email:    rpachulski@pszjlaw.com
27                                                                     jdulberg@pszjlaw.com
                                                                      mpagay@pszjlaw.com
28

Pachulski Stang Ziehl & Jones LLP

## Exhibit 1

Article XI of the Plan sets forth the effects and consequences of confirmation of the Plan, including the vesting of the assets of the Debtor in the Reorganized Debtor (Article 11.1), the binding effect of the Plan on holders of Claims (Article 11.2), the discharge of Claims under the Plan (Article 11.3), the preservation of injunctions or stays provided for in the chapter 11 case through the Effective Date (Article 11.7), the termination of subordination rights of holders of Claims (Article 11.8), the waiver of Claims or Causes of Actions that arise under chapter 5 of the Bankruptcy Code (Article 11.9), and the Debtor's reservation of rights in the event that the Effective Date does not occur (Article 11.10). **In addition, Articles 6.6, 11.4, 11.5, and 11.6 of the Plan contain important releases, injunctions, and exculpatory provisions. These provisions are highlighted below.**

**1.    Discharge of Claims**

**PLEASE TAKE NOTICE THAT, PURSUANT TO ARTICLE 11.3 OF THE PLAN, THE DEBTOR SEEKS A DISCHARGE PURSUANT TO SECTION 1141(D)(5) OF THE BANKRUPTCY CODE AS OF THE EFFECTIVE DATE OF THE PLAN. THE DEBTOR BELIEVES THAT CAUSE EXISTS TO GRANT A DISCHARGE ON THE EFFECTIVE DATE OF THE PLAN BECAUSE THE PLAN PROVIDES FOR THE CONTRIBUTION OF HIS ASSETS TO THE TRUST ON THE EFFECTIVE DATE OF THE PLAN.**

**PLEASE TAKE FURTHER NOTICE THAT, PURSUANT TO THE PLAN, A DISCHARGE WILL BE ENTERED ON THE EFFECTIVE DATE OF THE PLAN, WHICH WILL RESULT IN ALL CREDITORS WITH DISCHARGEABLE CLAIMS BEING ENJOINED FROM TAKING ANY ACTION TO COLLECT, RECOVER OR OFFSET ANY DISCHARGEABLE DEBT AS A PERSONAL LIABILITY OF THE DEBTOR.**

**Article 11.3 of the Plan provides that, pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date. Except as expressly provided in the Plan, on the Discharge Date (and subject to its occurrence), and pursuant to section 1141(d)(5)(A) of the Bankruptcy Code, entry of the Confirmation Order shall be deemed to act as a discharge and release under section 1141(d)(1)(A) of the Bankruptcy Code of all claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of claim was filed, whether the claim is Allowed, or whether the holder of the claim votes to accept the Plan or is entitled to receive a distribution under the Plan; provided, however, that in no event shall occurrence of the Discharge Date discharge the Debtor from any obligations remaining under the Plan as of the Discharge Date. Any default by the Debtor with respect to any claim that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Discharge Date.**

**Article 11.3 of the Plan further provides that, except as expressly provided in the Plan, any holder of a discharged claim will be precluded from asserting against the Debtor or any of his assets any other or further claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Except as expressly provided in the Plan, pursuant to section 1141(d)(5)(A), the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under section 1141 of the Bankruptcy Code, and the Debtor will not be liable for any claims and will only have the obligations that are specifically provided for in the Plan. Notwithstanding the foregoing, nothing**

contained in the Plan or the Confirmation Order shall discharge the Debtor from any debt excepted from discharge under section 523 of the Bankruptcy Code by a Final Order.

By voting to accept the Plan, you are voting to accept the discharge of YT provided for in the Plan.

### 2.  Releases

> **ARTICLE 11.4(b) OF THE PLAN (RELEASES BY HOLDERS OF NON-DEBT CLAIMS) CONTAINS A THIRD-PARTY RELEASE. YOU ARE DEEMED TO GRANT A THIRD-PARTY RELEASE IF YOU ARE A HOLDER OF A NON-DEBT CLAIM THAT EITHER: (I) VOTES TO ACCEPT THE PLAN OR (II) IS CONCLUSIVELY DEEMED TO HAVE ACCEPTED THE PLAN. IN ADDITION, IN ACCORDANCE WITH SECTION 524(a)(3) OF THE BANKRUPTCY CODE AND PURSUANT TO THE WEI GAN SETTLEMENT AGREEMENT UNDER BANKRUPTCY RULE 9019 REGARDING THE DEBTOR'S CLAIMS AGAINST WEI GAN AND WEI GAN'S CLAIMS AGAINST THE DEBTOR, ARTICLE 6.6 OF THE PLAN RELEASES CERTAIN CLAIMS AGAINST YT'S WIFE, WEI GAN. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

The following definitions are essential to understanding the scope of the releases being given under the Plan.

The Plan defines "**Allowed Debt Claim Allocation Amount**" to mean the Allowed amount of a Debt Claim together with any unpaid interest at the rate of four percent (4%) per annum from the time the underlying debt arose through the Petition Date, and with respect to any holder of an Allowed Debt Claim who is a KCBI Claimant, subject to the approval of the applicable KCBI Settlement, up to an additional twenty percent (20%) of the Allowed amount of their Debt Claim plus interest thereon.

The Plan defines "**Allowed Debt Claim Distribution Amount**" to mean the Allowed Debt Claim Allocation Amount *minus* any Other Distributions received by the holder of such Allowed Debt Claim. For the avoidance of doubt, any Other Distributions received by a holder of an Allowed Debt Claim shall be first applied to reduce the principal amount of such Debt Claim, and any remaining consideration to satisfy any accrued, but unpaid, interest.

The Plan defines "**Causes of Action**" to mean any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to claims; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any equitable remedy, including, without limitation, any claim for equitable subordination, equitable disallowance, or unjust enrichment; (e) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any cause of action or claim arising under any state or foreign fraudulent transfer law.

The Plan defines "**Deficiency Claim**" to mean that portion of a China Secured Claim that is determined pursuant to section 506(a) of the Bankruptcy Code or through agreement, to exceed the value of the claimant's interest in the collateral securing such China Secured Claim. For the avoidance of doubt, all Deficiency Claims shall be treated as Debt Claims.

2

PACHULSKI STANG ZIEHL & JONES LLP

PACHULSKI STANG ZIEHL & JONES LLP

The Plan defines "**KCBI Claimant**" to mean a holder of an Allowed Debt Claim who also holds a guarantee from a Key China Business Individual on the same obligation underlying their Allowed Debt Claim and has voluntarily agreed to settle their claims against such Key China Business Individual. The list of potential KCBI Claimants is included on Schedule C of the Plan.

The Plan defines "**KCBI Settlement**" to mean a voluntary settlement agreement under Bankruptcy Rule 9019 between a Key China Business Individual and a KCBI Claimant, if such agreements are reached. Any KCBI Settlements will be included in the Plan Supplement.

The Plan defines "**Key China Business Individuals**" to mean those certain Chinese individuals who voluntarily enter into a KCBI Settlement with a KCBI Claimant prior to the Confirmation Date. The list of potential Key China Business Individuals is included on Schedule C of the Plan.

The Plan defines "**Non-Debt Claim**" to mean any claim against the Debtor that is (a) not a Debt Claim or (b) otherwise determined by the Bankruptcy Court to be a Non-Debt Claim.

The Plan defines "**Other Distributions**" to mean (a) any amounts the holder of an Allowed Debt Claim actually receives from the primary obligor or any guarantor besides the Debtor, of such Debt Claim based on such holder's contractual agreement with such primary obligor or guarantor, *minus* (b) if the primary debt obligation underlying such Debt Claim is satisfied in whole or in part by conversion to equity in any jurisdiction, the corresponding reduction in the amount of the Debt Claim on account of such conversion.

The Plan defines "**Released Parties**" to mean, collectively: (a) the Debtor and the Estate; (b) the Debtor's wife, Wei Gan; (c) all Persons engaged or retained by the Debtor in connection with the chapter 11 case (including in connection with the preparation of and analyses relating to the Disclosure Statement and the Plan); and (d) any and all advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, consultants, and representatives of each of the foregoing Persons and Entities (whether current or former, in each case in his, her, or its capacity as such).

The Plan defines "**Releasing Parties**" to mean, collectively, and each solely in its capacity as such: (a) each Released Party; (b) each holder of a Claim that either (i) votes to accept the Plan or (ii) is conclusively deemed to have accepted the Plan; and (c) all other holders of Claims to the extent permitted by law.

> *a.*      Releases by the Debtor

**Article 11.4(a) of the Plan provides that, upon the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, in his individual capacity and as debtor in possession, shall be deemed forever to release, waive, and discharge (x) the Estate; (y) all Persons engaged or retained by the Debtor in connection with the Chapter 11 Case (including in connection with the preparation of and analyses relating to the Disclosure Statement and the Plan); and (z) any and all advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, consultants, and representatives of each of the foregoing Persons and Entities (whether current or former, in each case in his, her, or its capacity as such), from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws (other than the rights of the Debtor or Reorganized Debtor to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence, or circumstances taking place on**

3

or before the Effective Date, in any way relating to (i) the Debtor or the Chapter 11 Case; (ii) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor; (iii) any Released Party in any such Released Party's capacity as an employee, or agent of, or advisor to, or consultant to, the Debtor; (iv) the subject matter of, or the transactions or events giving rise to, any claim that is treated in the Plan; (v) the business or contractual arrangements between the Debtor and any Released Party; (vi) the restructuring of claims before or during the Chapter 11 Case; and (vii) the negotiation, formulation, preparation, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, or related agreements, instruments, or other documents, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence. The Reorganized Debtor shall be bound, to the same extent the Debtor is bound, by the releases and discharges set forth above.

Article 11.4(a) of the Plan further provides that, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article 11.4(a) by the Debtor, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in this Article 11.4(a) is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such claims; (ii) in the best interests of the Debtor and all holders of claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

b.      Releases by Holders of Non-Debt Claims

Article 11.4(b) of the Plan provides that, on the Effective Date, to the maximum extent permitted by applicable law, each Releasing Party, in consideration for the obligations of the Debtor and the Reorganized Debtor under the Plan, and the Trust Interests and cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed forever to release, waive, and discharge the Released Parties from personal liability in every jurisdiction from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws or laws of any other jurisdiction or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event, or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (i) the Debtor or the Chapter 11 Case; (ii) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor; (iii) any Released Party in any such Released Party's capacity as an employee, agent of, or advisor to, or consultant to, the Debtor; (iv) the subject matter of, or the transactions or events giving rise to, any claim that is treated in the Plan; (v) the business or contractual arrangements between the Debtor and any Released Party; (vi) the restructuring of claims before or during the Chapter 11 Case and the solicitation of votes with respect to the Plan; and (vii) the negotiation, formulation, preparation, entry into, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement and all documents contained or referred to therein), the Disclosure Statement, or related agreements, instruments, or other documents. Notwithstanding anything contained herein to the contrary, the foregoing release (x) does not release any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (y) shall only apply to holders of Non-Debt Claims in their capacity as a holder of a Non-Debt Claim and shall not apply to any other claims such holder may have, including, without limitation, any Deficiency Claim.

4

Pachulski Stang Ziehl & Jones LLP

Article 11.4(b) of the Plan further provides that, in connection with the releases described in Article 11.4(b) of the Plan, each Releasing Party shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**"

Article 11.4(b) of the Plan further provides that, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article 11.4(b) of the Plan, which includes by reference each of the related provisions and the Plan, and further, shall constitute its finding that each release described in Article 11.4(b) is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such claims; (ii) in the best interests of the Debtor and all holders of claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

      *c.*     *Standstill and Releases by Holders of Allowed Debt Claims and Allowed Late Filed Debt Claims*

Article 11.4(c) of the Plan provides that, to the maximum extent permitted by applicable law, each holder of an Allowed Debt Claim shall agree for a period of four years after the Effective Date (the "**Standstill Period**") to not assert any new Causes of Action against the Debtor for personal liability directly or derivatively in its capacity as a creditor of a claim owed solely or jointly by the Debtor (including unwinding or alter ego type claims) in any non-U.S. jurisdiction (the "**YT Claims**"); provided, however, that such holder may continue to prosecute any actions commenced prepetition against the Debtor up to judgment and pursue Other Distributions through judicial authorities in the PRC to satisfy such holder's Debt Claim through a mechanism that will be mutually agreed to by the parties, including claims against primary obligors solely based on such holder's contractual agreements with such primary obligors (for the avoidance of doubt, such holder may not bring unwinding or alter ego type claims against such primary obligors); provided, however, that the Standstill Period shall terminate in the event a Liquidation Event occurs during the Standstill Period. All limitations periods applicable to all YT Claims in any non-U.S. jurisdictions, to the extent not previously expired, shall be tolled for the duration of the Standstill Period.

Article 11.4(c) of the Plan provides that, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall, within ninety (90) days after the later to occur of (i) the Effective Date and (ii) the date such Debt Claim or Late Filed Debt Claim becomes Allowed, (x) take the steps and provide the documents described in the Trust Agreement to notify the applicable court or courts in the PRC (the "Chinese Courts") that (A) the Debtor and such holder and (B) if applicable, the KCBI Claimant and the applicable Key China Business Individual have reached a settlement agreement that is embodied in and has been implemented through the Plan and request that the Chinese Courts remove the Debtor from the List of Dishonest Judgment Debtors (the "**China Debtor List**") and lift any consumption or travel restrictions (the "**China Restrictions**"), as applicable, and (y) refrain from taking any action during the Standstill Period to cause (A) the Debtor or (B) if applicable, the Key China Business Individual to be reinstated on the China Debtor List or be subject to the China Restrictions (the "**China Debtor List Covenant**").

Article 11.4(c) of the Plan further provides that, before any Trust Distributions are made to the holder of an Allowed Debt Claim or an Allowed Late Filed Debt Claim, such holder shall provide an affidavit that (i) certifies such holder's compliance with the China Debtor List Covenant,

**(ii)** certifies that they have not initiated any YT Claims during the Standstill Period or after the Liability Release Date, as applicable, (iii) identifies any amounts received from Other Distributions as of the date of the affidavit, and (iv) certifies such holder's compliance with Article 6.6 of the Plan and the release of Wei Gan's personal liability pursuant to the Wei Gan Settlement.

Article 11.4(c) of the Plan further provides that, subject to approval of the applicable KCBI Settlement, before any Trust Distributions are made to an applicable KCBI Claimant, such claimant shall provide an affidavit that certifies such claimant's compliance with the China Debtor List Covenant with respect to the applicable Key China Business Individual.

Article 11.4(c) of the Plan further provides that each holder of an (i) Allowed Late Filed Debt Claim, on the date of allowance of such Late Filed Debt Claim or (ii) Allowed Debt Claim, once it has received Trust Distributions and Other Distributions (from enforcement or other actions) that, in the aggregate, are equal to 20% of its Allowed Debt Claim Allocation Amount (the date upon which the foregoing condition occurs is the "**Liability Release Date**") (x) shall be deemed to have released the YT Claims on account of such Debt Claim or Late Filed Debt Claim in every jurisdiction and (y) agrees that it shall not assert any new, or continue to prosecute any existing, YT Claims related to such Debt Claim or Late Filed Debt Claim in every jurisdiction; provided, however, that the foregoing release shall not release, waive, or otherwise impact the rights of such holder to receive further Trust Distributions or to pursue and receive Other Distributions through a mechanism that will be mutually agreed to by the parties.

Article 11.4(c) of the Plan further provides that within ninety (90) days after the applicable Liability Release Date with respect to Allowed Debt Claims or the date of allowance of a Late Filed Debt Claim, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall (as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust) (i) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against the Debtor from the courts and judicial authorities in all jurisdictions, including, but not limited to, the Chinese Courts, or confirm with the judicial authorities that the Debtor has settled all of his debt obligations or legal responsibilities to such holder and (ii) file and execute any documents requested by the Debtor to evidence the above release. The Debtor reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein.

Article 11.4(c) of the Plan further provides, that subject to approval of the applicable KCBI Settlement, upon the Liability Release Date, each applicable KCBI Claimant shall release the applicable Key China Business Individual of his or her guaranty obligations on behalf of the Debtor.

Article 11.4(c) of the Plan further provides that, in connection with the releases described in Article 11.4(c) of the Plan, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Article 11.4(c) of the Plan further provides that, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article 11.4(c) of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 11.4(c) is: (i) in exchange for the good and valuable consideration provided by the Debtor and Reorganized Debtor, a good faith settlement and compromise of such claims; (ii) in the best interests of the Debtor and all holders of claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) except as otherwise provided

6

PACHULSKI STANG ZIEHL & JONES LLP

in the Plan, a bar to any holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against the Debtor or Reorganized Debtor.

        *d.*      *Wei Gan Settlement*

Article 6.6 of the Plan provides for the approval, pursuant to Bankruptcy Rule 9019, of the Wei Gan Settlement. In exchange for, and subject to (a) a cash contribution from Wei Gan in the amount of $1,000,000 to the Trust on the Effective Date, which shall constitute Trust Assets (the "Effective Date Wei Gan Payment"), (b) a cash payment of $250,000 to the Trust no later than ninety (90) days after the Effective Date (the "Second Wei Gan Payment"), (c) Wei Gan's agreement not to assert any other prepetition or postpetition claims against the Debtor or the Trust, and (d) execution of the Wei Gan Declaration (collectively, (a), (b), (c), and (d) are the "Wei Gan Release Consideration"), the following shall occur:

        (a)      Upon the Effective Date Wei Gan Payment, (i) the China Debtor Covenant shall apply to Wei Gan; and (ii) Wei Gan's alleged Debt Claim against the Debtor [Claim No. 20004] shall be treated as an Allowed Debt Claim in the amount of $250,000,000.

        (b)      Upon the Second Wei Gan Payment, (the date upon which the foregoing condition occurs is the "Wei Gan Liability Release Date"), (i) Wei Gan's alleged Debt Claim against the Debtor [Claim No. 20004] shall be treated as an Allowed Debt Claim in the amount of $500,000,000; and (ii) each holder of an (x) Allowed Late Filed Debt Claim, on the date of allowance of such Late Filed Debt Claim or (y) Allowed Debt Claim (A) shall, in addition to the discharge of community claims under section 524(a) of the Bankruptcy Code, be deemed to have released any Causes of Action against Wei Gan for personal liability or derivatively in its capacity as a creditor of a claim owed solely or jointly by Wei Gan (including unwinding or alter ego type claims) in any jurisdiction (the "Wei Gan Claims") on account of such Debt Claim or Late Filed Debt Claim to the maximum extent permitted by applicable law and (B) agrees that it shall not assert any new, or continue to prosecute any existing, Wei Gan Claims related to such Debt Claim or Late Filed Debt Claim in every jurisdiction.

Article 6.6 of the Plan provides further that within ninety (90) days after the Wei Gan Liability Release Date with respect to an Allowed Debt Claim or the date of allowance of an Allowed Late Filed Debt Claim, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall (as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust) (a) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against Wei Gan from the courts and judicial authorities in all jurisdictions, including, but not limited to, the Chinese Courts, or confirm with the judicial authorities that Wei Gan has settled all of her debt obligations or legal responsibilities to such holder and (b) file and execute any documents requested by Wei Gan to evidence the above release. Wei Gan reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein.

Article 6.6 of the Plan provides further that, in connection with the releases described in Article 6.6 of the Plan, each holder of an Allowed Debt Claim and/or Allowed Late Filed Debt Claim shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

PACHULSKI STANG ZIEHL & JONES LLP

Article 6.6 of the Plan provides further that, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article 6.6 of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 6.6 is: (a) in exchange for the good and valuable consideration provided by Wei Gan, a good faith settlement and compromise of such claims; (b) in the best interests of the Debtor and all holders of claims; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) except as otherwise provided in the Plan, a bar to any holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against Wei Gan.

### 3.    Exculpation and Limitation of Liability

Article 11.5 of the Plan provides that none of YT or the Reorganized Debtor, or the direct or indirect affiliates, employees, advisors, attorneys, financial advisors, accountants, investment bankers, agents, consultants, or other professionals (whether current or former, in each case, in his, her, or its capacity as such) of YT or the Reorganized Debtor, or the Released Parties shall have or incur any liability to, or be subject to any right of action by, any holder of a claim, or any other party in interest in the chapter 11 case, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or direct or indirect affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the chapter 11 case, formulation, negotiation, preparation, dissemination, confirmation, solicitation, implementation, or administration of the Plan, the Plan Supplement and all documents contained or referred to therein, the Disclosure Statement, any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other pre- or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of YT or confirming or consummating the Plan (including the distribution of any property under the Plan); provided, however, that the foregoing provisions of Article 11.5 of the Plan shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence and shall not impact the right of any holder of a claim, or any other party to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan. Without limiting the generality of the foregoing, YT and YT's direct or indirect affiliates, employees, advisors, attorneys, financial advisors, accountants, investment bankers, agents, consultants, and other professionals (whether current or former, in each case, in his, her, or its capacity as such) shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The exculpated parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such exculpating parties from liability.

### 4.    Injunctions

*a.    General*

Article 11.6(a) of the Plan provides that all Persons or Entities who have held, hold, or may hold claims (other than claims that are reinstated under the Plan), and all other parties in interest in the Chapter 11 Case, along with their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates, are permanently enjoined, from and after the Effective Date, from, in respect of any claim or Cause of Action released or settled hereunder, (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or

PACHULSKI STANG ZIEHL & JONES LLP

other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor, or in respect of any claim or Cause of Action released or settled hereunder; (ii) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree, or order against the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor; (iii) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor, or against the property or interests in property of the Debtor or Reorganized Debtor, on account of such claims; or (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such claims released or settled pursuant to the Plan; provided, however, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, and other agreements and documents delivered under or in connection with the Plan.

b.      *Injunction Against Interference With the Plan*

Article 11.6(b) of the Plan provides that upon entry of the Confirmation Order, all holders of claims and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or reinstatement of such claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article 11.6 of the Plan.

*Remainder of Page Intentionally Left Blank*

PACHULSKI STANG ZIEHL & JONES LLP

9

1

## **<u>Exhibit D</u>**

**Form of Ballot**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pᴀᴄʜᴜʟsᴋɪ Sᴛᴀɴɢ Zɪᴇʜʟ & Jᴏɴᴇs LLP

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>YUETING JIA,[1]<br><br>      Debtor. | Case No.: 2:19-bk-24804-VZ<br>(*formerly 19-12220 KBO in the District of Delaware*)<br><br>Chapter 11<br><br>**BALLOT FOR VOTING TO ACCEPT OR REJECT DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE** |

**BALLOT FOR CLASS 4 (DEBT CLAIMS)**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M., BEIJING TIME, ON APRIL 30, 2020.**

Yueting Jia (the "Debtor") filed with the United States Bankruptcy Court for the Central District of California Los Angeles Division (the "Bankruptcy Court") (i) the *Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, modified, or supplemented, the "Plan") on March 2, 2020 and (ii) the Third Amended *Disclosure Statement with Respect to Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, modified, or supplemented, the "Disclosure Statement")[2] on March 2, 2020. On [●], 2020, the Bankruptcy Court entered an order [Docket No. [●]] (the "Disclosure Statement Order") that, among other things, approved the Disclosure Statement as containing "adequate information," and authorized the Debtor to begin soliciting votes in respect of the Plan in accordance with the terms of the Disclosure Statement Order. The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

***Class 4 (Debt Claims) includes any claim against the Debtor that is (a) not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, U.S. Secured Claim, or China Secured Claim or (b) otherwise determined by the Bankruptcy Court to be a Debt Claim.*** You are receiving this Ballot because records indicate that you are a holder of a Debt Claim in Class 4, as of March 19, 2020 (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement, which is included in the solicitation package (the "Solicitation Package") you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received solicitation package materials in electronic format (either CD-ROM or flash drive) and desire paper copies, or if you need to obtain additional solicitation packages, you may (a) contact the Debtor's Voting Agent, Epiq Corporate Restructuring LLC by telephone at (855) 963-0391 (for U.S. callers), (400) 120-3077 (for Chinese callers), or (503) 520-4401 (for international callers), or by email at

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2] Capitalized terms used but not otherwise defined in this notice shall have the meanings used in the Disclosure Statement or the Plan, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP

*tabulation@epiqglobal.com* (please reference "YT" in the subject line) or (b) download such documents (excluding the Ballots) from the Debtor's restructuring website at *https://dm.epiq11.com/yt1*. Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at www.cacb.uscourts.gov. Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than for casting a vote to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, please contact the Voting Agent *immediately* at the address or telephone number set forth above.

*You should carefully review the Disclosure Statement and the Plan before you vote to accept or reject the Plan. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your claim. Your claim has been placed in Class 4 (Debt Claims) under the Plan.*

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.** The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if the Plan (i) is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Debt Claims in Class 4 who vote on the Plan and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. To have your vote counted, you must complete, sign, and return the originally signed Ballot to the Voting Agent in accordance with the accompanying instructions so that it is received by the deadline indicated above. Ballots should not be sent to the Debtor.

*PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS <u>BEFORE</u> COMPLETING THIS BALLOT.*

PLEASE COMPLETE ITEMS 1 THROUGH 5. IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 2, OR IF BOTH BOXES ARE CHECKED IN ITEM 2, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST. IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Amount of Debt Claim**

The undersigned hereby certifies that as of the March 19, 2020, Voting Record Date, the undersigned was the holder of a Debt Claim in the following aggregate amount.

Claim Amount: $_____

**Item 2. Vote on Plan**

The holder of the Debt Claim set forth in Item 1 votes to:

☐ **ACCEPT** (vote FOR) the Plan.          ☐ **REJECT** (vote AGAINST) the Plan.

*ANY BALLOT EXECUTED BY THE HOLDER OF A CLAIM THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN FOR ALL CLAIMS WILL NOT BE COUNTED.*

**Item 3. Releases**

PACHULSKI STANG ZIEHL & JONES LLP

**THE PLAN CONTAINS A SERIES OF RELEASES THAT ARE PART OF THE OVERALL SETTLEMENT OF VARIOUS POTENTIAL CLAIMS. IN THAT RESPECT, PARTIES SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED AND IF THE EFFECTIVE DATE OCCURS, CERTAIN PARTIES WILL BE GETTING RELEASES AND CERTAIN PARTIES WILL BE GIVING RELEASES AS SET FORTH IN ARTICLES 6.6 AND XI OF THE PLAN AND AS FURTHER DESCRIBED IN ARTICLE IV OF THE DISCLOSURE STATEMENT.**

**THE PLAN CONTAINS THE FOLLOWING PROVISIONS WITH RESPECT THERETO:**

(a)    **Defined Terms**.  The Plan defines "Released Parties" and "Releasing Parties" as follows:

The Plan defines "**Allowed Debt Claim Allocation Amount**" to mean the Allowed amount of a Debt Claim together with any unpaid interest at the rate of four percent (4%) per annum from the time the underlying debt arose through the Petition Date, and with respect to any holder of an Allowed Debt Claim who is a KCBI Claimant, subject to the approval of the applicable KCBI Settlement, up to an additional twenty percent (20%) of the Allowed amount of their Debt Claim plus interest thereon.

The Plan defines "**Allowed Debt Claim Distribution Amount**" to mean the Allowed Debt Claim Allocation Amount minus any Other Distributions received by the holder of such Allowed Debt Claim. For the avoidance of doubt, any Other Distributions received by a holder of an Allowed Debt Claim shall be first applied to reduce the principal amount of such Debt Claim, and any remaining consideration to satisfy any accrued, but unpaid, interest.

The Plan defines "**Causes of Action**" to mean any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to claims; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any equitable remedy, including, without limitation, any claim for equitable subordination, equitable disallowance, or unjust enrichment; (e) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any cause of action or claim arising under any state or foreign fraudulent transfer law.

The Plan defines "**Deficiency Claim**" to mean that portion of a China Secured Claim that is determined pursuant to section 506(a) of the Bankruptcy Code or through agreement, to exceed the value of the claimant's interest in the collateral securing such China Secured Claim. For the avoidance of doubt, all Deficiency Claims shall be treated as Debt Claims.

The Plan defines "**KCBI Claimant**" to mean a holder of an Allowed Debt Claim who also holds a guarantee from a Key China Business Individual on the same obligation underlying their Allowed Debt Claim and has voluntarily agreed to settle their claims against such Key China

3

Business Individual. The list of potential KCBI Claimants is included on Schedule C of the Plan.

The Plan defines "**KCBI Settlement**" to mean a voluntary settlement agreement under Bankruptcy Rule 9019 between a Key China Business Individual and a KCBI Claimant, if such agreements are reached. Any KCBI Settlements will be included in the Plan Supplement.

The Plan defines "**Key China Business Individuals**" to mean those certain Chinese individuals who voluntarily enter into a KCBI Settlement with a KCBI Claimant prior to the Confirmation Date. The list of potential Key China Business Individuals is included on Schedule C of the Plan.

The Plan defines "**Non-Debt Claim**" to mean any claim against the Debtor that is (a) not a Debt Claim or (b) otherwise determined by the Bankruptcy Court to be a Non-Debt Claim.

The Plan defines "**Other Distributions**" to mean (a) any amounts the holder of an Allowed Debt Claim actually receives from the primary obligor or any guarantor besides the Debtor, of such Debt Claim based on such holder's contractual agreement with such primary obligor or guarantor, minus (b) if the primary debt obligation underlying such Debt Claim is satisfied in whole or in part by conversion to equity in any jurisdiction, the corresponding reduction in the amount of the Debt Claim on account of such conversion.

The Plan defines "**Released Parties**" to mean, collectively: (a) the Debtor and the Estate; (b) all Persons engaged or retained by the Debtor in connection with the chapter 11 case (including in connection with the preparation of and analyses relating to the Disclosure Statement and the Plan); and (c) any and all advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, consultants and representatives of each of the foregoing Persons and Entities (whether current or former, in each case in his, her, or its capacity as such).

The Plan defines "**Releasing Parties**" to mean, collectively, and each solely in its capacity as such: (a) each Released Party; (b) each holder of a Non-Debt Claim that either (i) votes to accept the Plan or (ii) is conclusively deemed to have accepted the Plan; and (c) all other holders of Non-Debt Claims to the extent permitted by law.

The Plan defines "**Trust Distributions**" to mean distributions paid from the Trust.

(b)     **Releases by the Debtor. Article 11.4(a) of the Plan provides that, upon the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, in his individual capacity and as debtor in possession, shall be deemed forever to release, waive, and discharge (x) the Estate; (y) all Persons engaged or retained by the Debtor in connection with the Chapter 11 Case (including in connection with the preparation of and analyses relating to the Disclosure Statement and the Plan); and (z) any and all advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, consultants, and representatives of each of the foregoing Persons and Entities (whether current or former, in each case in his, her, or its capacity as such), from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws (other than the rights of the Debtor or Reorganized Debtor to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents**

PACHULSKI STANG ZIEHL & JONES LLP

delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (i) the Debtor or the Chapter 11 Case; (ii) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor; (iii) any Released Party in any such Released Party's capacity as an employee, or agent of, or advisor to, or consultant to, the Debtor; (iv) the subject matter of, or the transactions or events giving rise to, any claim that is treated in the Plan; (v) the business or contractual arrangements between the Debtor and any Released Party; (vi) the restructuring of claims before or during the Chapter 11 Case; and (vii) the negotiation, formulation, preparation, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, or related agreements, instruments, or other documents, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence. The Reorganized Debtor shall be bound, to the same extent the Debtor is bound, by the releases and discharges set forth above.

Article 11.4(a) of the Plan further provides that, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article 11.4(a) by the Debtor, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in this Article 11.4(a) is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such claims; (ii) in the best interests of the Debtor and all holders of claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

(c)    <u>Releases by Holders of Non-Debt Claims</u>.  Article 11.4(b) of the Plan provides that, on the Effective Date, to the maximum extent permitted by applicable law, each Releasing Party, in consideration for the obligations of the Debtor and the Reorganized Debtor under the Plan, and the Trust Interests and cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed forever to release, waive, and discharge the Released Parties from personal liability in every jurisdiction from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws or laws of any other jurisdiction or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event, or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (i) the Debtor or the Chapter 11 Case; (ii) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor; (iii) any Released Party in any such Released Party's capacity as an employee, agent of, or advisor to, or consultant to, the Debtor; (iv) the subject matter of, or the transactions or events giving rise to, any claim that is treated in the Plan; (v) the business or contractual arrangements between the Debtor and any Released

5

Party; (vi) the restructuring of claims before or during the Chapter 11 Case and the solicitation of votes with respect to the Plan; and (vii) the negotiation, formulation, preparation, entry into, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement and all documents contained or referred to therein), the Disclosure Statement, or related agreements, instruments, or other documents. Notwithstanding anything contained herein to the contrary, the foregoing release (x) does not release any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (y) shall only apply to holders of Non-Debt Claims in their capacity as a holder of a Non-Debt Claim and shall not apply to any other claims such holder may have, including, without limitation, any Deficiency Claim.

Article 11.4(b) of the Plan further provides that, in connection with the releases described in Article 11.4(b) of the Plan, each Releasing Party shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Article 11.4(b) of the Plan further provides that, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article 11.4(b) of the Plan, which includes by reference each of the related provisions and the Plan, and further, shall constitute its finding that each release described in Article 11.4(b) is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such claims; (ii) in the best interests of the Debtor and all holders of claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

(d)    **Standstill and Releases by Holders of Allowed Debt Claims and Allowed Late Filed Debt Claims.** Article 11.4(c) of the Plan provides that, to the maximum extent permitted by applicable law, each holder of an Allowed Debt Claim shall agree for a period of four years after the Effective Date (the "Standstill Period") to not assert any new Causes of Action against the Debtor for personal liability directly or derivatively in its capacity as a creditor of a claim owed solely or jointly by the Debtor (including unwinding or alter ego type claims) in any non-U.S. jurisdiction (the "YT Claims"); provided, however, that such holder may continue to prosecute any actions commenced prepetition against the Debtor up to judgment and pursue Other Distributions through judicial authorities in the PRC to satisfy such holder's Debt Claim through a mechanism that will be mutually agreed to by the parties, including claims against primary obligors solely based on such holder's contractual agreements with such primary obligors (for the avoidance of doubt, such holder may not bring unwinding or alter ego type claims against such primary obligors); provided, however, that the Standstill Period shall terminate in the event a Liquidation Event occurs during the Standstill Period. All limitations periods applicable to all YT Claims in any non-U.S. jurisdictions, to the extent not previously expired, shall be tolled for the duration of the Standstill Period.

Article 11.4(c) of the Plan provides that, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall, within ninety (90) days after the later to occur

Pachulski Stang Ziehl & Jones LLP

of (i) the Effective Date and (ii) the date such Debt Claim or Late Filed Debt Claim becomes Allowed, (x) take the steps and provide the documents described in the Trust Agreement to notify the applicable court or courts in the PRC (the "**Chinese Courts**") that (A) the Debtor and such holder and (B) if applicable, the KCBI Claimant and the applicable Key China Business Individual have reached a settlement agreement that is embodied in and has been implemented through the Plan and request that the Chinese Courts remove the Debtor from the List of Dishonest Judgment Debtors (the "<u>China Debtor List</u>") and lift any consumption or travel restrictions (the "<u>China Restrictions</u>"), as applicable, and (y) refrain from taking any action during the Standstill Period to cause (A) the Debtor or (B) if applicable, the Key China Business Individual to be reinstated on the China Debtor List or be subject to the China Restrictions (the "<u>China Debtor List Covenant</u>").

Article 11.4(c) of the Plan further provides that, before any Trust Distributions are made to the holder of an Allowed Debt Claim or an Allowed Late Filed Debt Claim, such holder shall provide an affidavit that (i) certifies such holder's compliance with the China Debtor List Covenant, (ii) certifies that they have not initiated any YT Claims during the Standstill Period or after the Liability Release Date, as applicable, (iii) identifies any amounts received from Other Distributions as of the date of the affidavit, and (iv) certifies such holder's compliance with Article 6.6 of the Plan and the release of Wei Gan's personal liability pursuant to the Wei Gan Settlement.

Article 11.4(c) of the Plan further provides that, subject to approval of the applicable KCBI Settlement, before any Trust Distributions are made to an applicable KCBI Claimant, such claimant shall provide an affidavit that certifies such claimant's compliance with the China Debtor List Covenant with respect to the applicable Key China Business Individual.

Article 11.4(c) of the Plan further provides that each holder of an (i) Allowed Late Filed Debt Claim, on the date of allowance of such Late Filed Debt Claim or (ii) Allowed Debt Claim, once it has received Trust Distributions and Other Distributions (from enforcement or other actions) that, in the aggregate, are equal to 20% of its Allowed Debt Claim Allocation Amount (the date upon which the foregoing condition occurs is the "<u>Liability Release Date</u>") (x) shall be deemed to have released the YT Claims on account of such Debt Claim or Late Filed Debt Claim in every jurisdiction and (y) agrees that it shall not assert any new, or continue to prosecute any existing, YT Claims related to such Debt Claim or Late Filed Debt Claim in every jurisdiction; provided, however, that the foregoing release shall not release, waive, or otherwise impact the rights of such holder to receive further Trust Distributions or to pursue and receive Other Distributions through a mechanism that will be mutually agreed to by the parties.

Article 11.4(c) of the Plan further provides that within ninety (90) days after the applicable Liability Release Date with respect to Allowed Debt Claims or the date of allowance of a Late Filed Debt Claim, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall (as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust) (i) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against the Debtor from the courts and judicial authorities in all jurisdictions, including, but not limited to, the Chinese Courts, or confirm with the judicial authorities that the Debtor has settled all of his debt obligations or legal responsibilities to such holder and (ii) file and execute any documents requested by the Debtor to evidence the above release. The Debtor reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein.

7

PACHULSKI STANG ZIEHL & JONES LLP

Article 11.4(c) of the Plan further provides, that subject to approval of the applicable KCBI Settlement, upon the Liability Release Date, each applicable KCBI Claimant shall release the applicable Key China Business Individual of his or her guaranty obligations on behalf of the Debtor.

Article 11.4(c) of the Plan further provides that, in connection with the releases described in Article 11.4(c) of the Plan, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Article 11.4(c) of the Plan further provides that, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article 11.4(c) of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 11.4(c) is: (i) in exchange for the good and valuable consideration provided by the Debtor and Reorganized Debtor, a good faith settlement and compromise of such claims; (ii) in the best interests of the Debtor and all holders of claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) except as otherwise provided in the Plan, a bar to any holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against the Debtor or Reorganized Debtor.

(e)    **Wei Gan Settlement.** Article 6.6 of the Plan provides for the approval, pursuant to Bankruptcy Rule 9019, of the Wei Gan Settlement. In exchange for, and subject to (a) a cash contribution from Wei Gan in the amount of $1,000,000 to the Trust on the Effective Date, which shall constitute Trust Assets (the "**Effective Date Wei Gan Payment**"), (b) a cash payment of $250,000 to the Trust no later than ninety (90) days after the Effective Date (the "**Second Wei Gan Payment**"), (c) Wei Gan's agreement not to assert any other prepetition or postpetition claims against the Debtor or the Trust, and (d) execution of the Wei Gan Declaration (collectively, (a), (b), (c), and (d) are the "**Wei Gan Release Consideration**"), the following shall occur:

(a)    Upon the Effective Date Wei Gan Payment, (i) the China Debtor Covenant shall apply to Wei Gan; and (ii) Wei Gan's alleged Debt Claim against the Debtor [Claim No. 20004] shall be treated as an Allowed Debt Claim in the amount of $250,000,000.

(b)    Upon the Second Wei Gan Payment, (the date upon which the foregoing condition occurs is the "**Wei Gan Liability Release Date**"), (i) Wei Gan's alleged Debt Claim against the Debtor [Claim No. 20004] shall be treated as an Allowed Debt Claim in the amount of $500,000,000; and (ii) each holder of an (x) Allowed Late Filed Debt Claim, on the date of allowance of such Late Filed Debt Claim or (y) Allowed Debt Claim (A) shall, in addition to the discharge of community claims under section 524(a) of the Bankruptcy Code, be deemed to have released any Causes of Action against Wei Gan for personal liability or derivatively in its capacity as a creditor of a claim owed solely or jointly by Wei Gan (including unwinding or

8

alter ego type claims) in any jurisdiction (the "<u>Wei Gan Claims</u>") on account of such Debt Claim or Late Filed Debt Claim to the maximum extent permitted by applicable law and (B) agrees that it shall not assert any new, or continue to prosecute any existing, Wei Gan Claims related to such Debt Claim or Late Filed Debt Claim in every jurisdiction.

Article 6.6 of the Plan provides further that within ninety (90) days after the Wei Gan Liability Release Date with respect to an Allowed Debt Claim or the date of allowance of an Allowed Late Filed Debt Claim, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall (as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust) (a) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against Wei Gan from the courts and judicial authorities in all jurisdictions, including, but not limited to, the Chinese Courts, or confirm with the judicial authorities that Wei Gan has settled all of her debt obligations or legal responsibilities to such holder and (b) file and execute any documents requested by Wei Gan to evidence the above release. Wei Gan reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein.

Article 6.6 of the Plan provides further that, in connection with the releases described in Article 6.6 of the Plan, each holder of an Allowed Debt Claim and/or Allowed Late Filed Debt Claim shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Article 6.6 of the Plan provides further that, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article 6.6 of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 6.6 is: (a) in exchange for the good and valuable consideration provided by Wei Gan, a good faith settlement and compromise of such claims; (b) in the best interests of the Debtor and all holders of claims; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) except as otherwise provided in the Plan, a bar to any holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against Wei Gan.

(f)    <u>Exculpation and Limitation of Liability</u>. Article 11.5 of the Plan provides that none of YT or the Reorganized Debtor, or the direct or indirect affiliates, employees, advisors, attorneys, financial advisors, accountants, investment bankers, agents, consultants, or other professionals (whether current or former, in each case, in his, her, or its capacity as such) of YT or the Reorganized Debtor, or the Released Parties shall have or incur any liability to, or be subject to any right of action by, any holder of a claim, or any other party in interest in the chapter 11 case, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or direct or indirect affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the chapter 11 case, formulation, negotiation, preparation, dissemination, confirmation,

PACHULSKI STANG ZIEHL & JONES LLP

9

solicitation, implementation, or administration of the Plan, the Plan Supplement and all documents contained or referred to therein, the Disclosure Statement, any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other pre- or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of YT or confirming or consummating the Plan (including the distribution of any property under the Plan); provided, however, that the foregoing provisions of Article 11.5 of the Plan shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence and shall not impact the right of any holder of a claim, or any other party to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan. Without limiting the generality of the foregoing, YT and YT's direct or indirect affiliates, employees, advisors, attorneys, financial advisors, accountants, investment bankers, agents, consultants, and other professionals (whether current or former, in each case, in his, her, or its capacity as such) shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The exculpated parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such exculpating parties from liability.

(g)    **Injunction.**

**General.**    Article 11.6(a) of the Plan provides that all Persons or Entities who have held, hold, or may hold claims (other than claims that are reinstated under the Plan), and all other parties in interest in the Chapter 11 Case, along with their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates, are permanently enjoined, from and after the Effective Date, from, in respect of any claim or Cause of Action released or settled hereunder, (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor, or in respect of any claim or Cause of Action released or settled hereunder; (ii) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree, or order against the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor; (iii) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor, or against the property or interests in property of the Debtor or Reorganized Debtor, on account of such claims; or (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such claims released or settled pursuant to the Plan; provided, however, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts,

Pachulski Stang Ziehl & Jones LLP

10

**instruments, releases, and other agreements and documents delivered under or in connection with the Plan.**

**Injunction Against Interference With the Plan.** **Article 11.6(b) of the Plan provides that upon entry of the Confirmation Order, all holders of claims and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or reinstatement of such claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article 11.6 of the Plan.**

**Item 4. Certifications**.

Upon execution of this Ballot, the undersigned certifies that:

    a.    as of the Voting Record Date, the undersigned was the holder of a Debt Claim in the amount set forth in Item 1 above and/or has the full authority to vote to accept or reject the plan;

    b.    the undersigned has received a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

    c.    the undersigned has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

    d.    the undersigned has cast the same vote with respect to all of the holder's Debt Claims;

    e.    the undersigned understands and acknowledges that no other Ballots with respect to the amount of the Debt Claim identified in Item 1 above have been cast or, if any other Ballots have been cast with respect to such Debt Claim, then any such earlier received Ballots are hereby revoked;

    f.    The undersigned understands and acknowledges that, if this Ballot is otherwise validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as having been cast; and

    g.    The undersigned understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned, shall be binding upon the transferees, successors, assignees, heirs, executors, administrators, and legal representatives of the undersigned and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

*Remainder of Page Intentionally Left Blank*

11

PACHULSKI STANG ZIEHL & JONES LLP

**Item 5. Claim Holder Information and Signature.**

_____
Name of Claim Holder

_____
Signature

_____
If signed by Authorized Agent (Print Name and Title)

_____
Street Address

_____
City, State, Zip Code / Country

_____
Telephone Number

_____
Email Address

_____
Date Completed

---

NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL MAKE YOU OR ANY OTHER PERSON AN AGENT OF THE DEBTOR OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH. THIS BALLOT SHALL NOT CONSTITUTE OR BE DEEMED TO CONSTITUTE (A) A PROOF OF CLAIM OR (B) AN ADMISSION BY THE DEBTOR OF THE NATURE, VALIDITY, PRIORITY, OR AMOUNT OF ANY CLAIM.

PACHULSKI STANG ZIEHL & JONES LLP

DOCS_LA:328050.1 46353/002

**VOTING DEADLINE**

**The voting deadline for holders of Debt Claims is 4:00 p.m., Beijing time, on April 30, 2020 the ("Voting Deadline") unless the solicitation of acceptances of the Plan is extended by the Debtor. Ballots must be returned to the Voting Agent prior to the Voting Deadline.**

**The Voting Agent is:**

Epiq Corporate Restructuring LLC ("Epiq")

**Submit your vote in only one of the following methods:**

**If Submitting Your Vote through the E-Balloting Portal**

Epiq will accept Ballots if properly completed through the E-Balloting Portal. To submit your Ballot via the E-Balloting Portal, visit https://dm.epiq11.com/YT1, click on the "E-ballot portal" in the Case Action Section of the website and follow the instructions to submit your Ballot.

**IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot ID#:_____

Each E-Ballot ID# is to be used solely for voting only those Debt Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Balloting Portal should NOT also submit a paper Ballot or a Ballot via email.

**If Submitting Your Vote by Email**

Please send a copy of your completed Ballot to: tabulation@epiqglobal.com with a reference to "YT Vote" in the subject line

**Ballots submitted by facsimile will not be counted.**

**If Submitting Your Vote by First Class Mail, Overnight Courier, or Hand Delivery**

Use the enclosed postage prepaid envelope or send your Ballot to:

YUETING JIA - Ballot Processing
c/o Epiq Corporate Restructuring LLC
10300 SW Allen Boulevard
Beaverton, OR 97005
United States of America

**IF YOUR BALLOT IS NOT RECEIVED BY EPIQ ON OR BEFORE THE VOTING DEADLINE, AND SUCH VOTING DEADLINE IS NOT EXTENDED BY THE DEBTOR AS NOTED ABOVE, YOUR VOTE WILL NOT BE COUNTED.**

If you have any questions regarding the voting process, please contact Epiq at tabulation@epiqglobal.com (please reference "YT" in the subject line).

DOCS_LA:328050.1 46353/002

PACHULSKI STANG ZIEHL & JONES LLP

PACHULSKI STANG ZIEHL & JONES LLP

## VOTING INFORMATION AND INSTRUCTIONS
## FOR COMPLETING THE BALLOT

1.  The Debtor is soliciting votes with respect to the *Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. ●], dated March 2, 2020 (as it may be amended, modified, or supplemented from time to time).

    It is important that you vote. **ONLY THOSE CREDITORS THAT ACTUALLY VOTE ARE COUNTED FOR THE PURPOSE OF DETERMINING WHETHER THE PLAN HAS BEEN ACCEPTED.** The Plan can be confirmed by the Bankruptcy Court and thereby made binding if it is accepted by the holders of at least 2/3 in amount and more than 1/2 in number of Debt Claims that actually vote on the Plan. **Please review the Disclosure Statement and Plan for more information.**

2.  In the boxes provided in Item 2 of the Ballot, please indicate acceptance or rejection of the Plan. *If you vote to accept the Plan, you are specifically consenting to the releases contained in the Plan. Such releases include, but are not limited to, the releases contained in Articles 6.6 and XI of the Plan, which include the release of claims and causes of action against certain non-debtor entities*. Complete the Ballot by providing all the information requested and sign, date, and return the originally signed Ballot to Epiq Corporate Restructuring LLC (the "Voting Agent") as set forth above.

    **Ballots must be received by the Voting Agent by April 30, 2020 at 4:00 p.m., Beijing time (the "Voting Deadline")**. If a Ballot is received after the Voting Deadline, it will not be counted. An envelope addressed to the Voting Agent is enclosed for your convenience. Ballots submitted by facsimile will not be accepted. *Ballots should not be sent to the Debtor*.

3.  If you hold any portion of a single Debt Claim, you and all other holders of any portion of such Debt Claim will be (a) treated as a single creditor for voting purposes, and (b) required to vote every portion of such claim collectively to either accept or reject the Plan. In the event a group of Ballots received from the various holders of multiple portions of a single Debt Claim partially accepts and partially rejects the Plan, such Ballots shall not be counted.

4.  **The following Ballots will NOT be counted**:

    i.   any Ballot received after the Voting Deadline unless (a) the Debtor (in his sole discretion) shall have granted an extension of the Voting Deadline with respect to such Ballot and (b) the Bankruptcy Court shall have authorized the counting and/or consideration of such Ballot;

    ii.  any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Debt Claim;

    iii. any Ballot cast by an entity that (a) does not hold a Debt Claim in a Class 4 that is entitled to vote to accept or reject the Plan or (b) is not otherwise entitled to vote pursuant to the procedures described in the Disclosure Statement Order;

    iv.  any Ballot sent to the Debtor, the Bankruptcy Court, or any other party other than the Voting Agent;

    v.   any inconsistent or duplicate Ballots that are simultaneously cast with respect to the same Debt Claim;

PACHULSKI STANG ZIEHL & JONES LLP

vi.    any Ballot transmitted to the Voting Agent by facsimile or other means not specifically approved in the Disclosure Statement Order;

vii.    any unsigned Ballot;

viii.    any Ballot that does not contain an original signature, for the avoidance of doubt, Ballots submitted by the E-Balloting Portal or by email will be considered to have an original signature; or

ix.    any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan.

5.    Your Debt Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Procedures"). The Tabulation Procedures are set forth in the Disclosure Statement Order, which is enclosed with the solicitation materials you received along with this Ballot. The temporary allowance of your Debt Claim for voting purposes does not constitute an allowance of your Debt Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtor in any other context (*e.g.*, the right of the Debtor to contest the amount or validity of any Debt Claim for purposes of allowance under the Plan). Distributions under the Trust are based on the Allowed Debt Claim Allocation Amounts and the Allowed Debt Claim Distribution Amounts, as defined in the Plan. If you wish to challenge the temporary allowance of your claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Debtor so that it is received by **April 16, 2020 at 4:00 p.m. (Pacific time)**. Unless the Bankruptcy Court orders otherwise, your claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Procedures, regardless of the amount identified in Item 1 of the Ballot.

6.    The attached Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, holders of Debt Claims should not surrender certificates or instruments representing or evidencing the claims, if any, and neither the Debtor nor the Voting Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot.

7.    The Ballot does <u>not</u> constitute and shall not be deemed a proof of claim or an assertion of a claim.

8.    If you cast more than one Ballot voting the same Debt Claim prior to the Voting Deadline, the last properly-executed Ballot received by the Voting Agent before the Voting Deadline (as determined by the Voting Agent) will be deemed to reflect your intent to either accept or reject the Plan.

9.    <u>Please be sure to sign and date your Ballot</u>. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Debtor, or the Bankruptcy Court, must submit proper evidence to the requesting party so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

## **<u>PLEASE RETURN YOUR BALLOT PROMPTLY</u>**

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY TELEPHONE AT (855) 963-0391 (FOR U.S. CALLERS), (400) 120-3077 (FOR CHINESE CALLERS), OR (503) 520-4401 (FOR INTERNATIONAL CALLERS) OR BY EMAIL AT *TABULATION@EPIQGLOBAL.COM* (PLEASE REFERENCE "YT" IN THE SUBJECT LINE).**

THE VOTING AGENT CANNOT PROVIDE YOU WITH LEGAL OR TAX ADVICE.

THE VOTING AGENT WILL <u>NOT</u> ACCEPT BALLOTS BY FACSIMILE TRANSMISSION. BALLOTS SHOULD <u>NOT</u> BE SENT TO THE DEBTOR OR ANY OF HIS AGENTS OTHER THAN THE VOTING AGENT.

**YOUR BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING DEADLINE, APRIL 30, 2020 AT 4:00 P.M., BEIJING TIME, TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN.**

PACHULSKI STANG ZIEHL & JONES LLP

3

1

2

3                                **Exhibit E**

4                        **Declaration of Robert Moon**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP

DOCS_LA:328050.1 46353/002

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP

**Declaration of Robert Moon**

I, Robert Moon, declare as follows:

1.    I am the Manager of PQBDN LLC, an advisory firm that has been retained by Yueting Jia (the "Debtor"), the above-captioned debtor and debtor in possession, to provide certain financial advisory services. *See Order Granting Debtor's Amended Motion to Retain PQBDN LLC as Financial Advisor Nunc Pro Tunc to November 17, 2019* [Docket No. 377]. Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge (albeit my own or that gathered from others at my direction), my review of relevant documents, discussions with the Debtor and his other advisors, or my opinion based upon my experience.  If called upon to testify, I would testify to the facts set forth in this Declaration.

2.    I submit this declaration in support of the *Renewed Motion for An Order (I) Approving Third Amended Disclosure Statement, (II) Approving Voting and Tabulation Procedures, (III) Setting Confirmation Hearing and Related Deadlines, (IV) Waiving Certain Local Rules and Procedures, and (V) Granting Related Relief* (the "Motion"). All capitalized terms not defined herein have the meaning ascribed to them in the Motion.

3.    I have read and reviewed the Third Amended Disclosure Statement with Respect to Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and the Motion. The facts set forth in the Motion are true, accurate, and complete to the best of my knowledge.

DOCS_LA:328050.1 46353/002

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true

and correct to the best of my information, knowledge and belief.

Dated:  February 28, 2020

_____

Robert Moon

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify):*  **RENEWED MOTION FOR AN ORDER
(I) APPROVING THIRD AMENDED DISCLOSURE STATEMENT, (II) APPROVING VOTING AND TABULATION
PROCEDURES, (III) SETTING CONFIRMATION HEARING AND RELATED DEADLINES, (IV) WAIVING CERTAIN
LOCAL RULES AND PROCEDURES, AND (V) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF ROBERT MOON** will be served or was served **(a)** on the judge in chambers in the
form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**March 2, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **March 2, 2020,** I served the following persons and/or entities at the last known addresses in this bankruptcy case
or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first
class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge
<u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for
each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 2, 2020,** I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such
service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that
personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
United States Bankruptcy Court
Central District of California
Attn:  Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 2, 2020 | Nancy H. Brown | /s/ *Nancy H. Brown* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:327335.1 46353/002

## SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ

### 1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>

- Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jerrold L Bregman    ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan    blogan@omm.com
- David W. Meadows    david@davidwmeadowslaw.com
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:327335.1 46353/002