Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  rpachulski@pszjlaw.com
         jdulberg@pszjlaw.com
         mpagay@pszjlaw.com

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No.: 2:19-bk-24804-VZ |
| YUETING JIA,[1] | Chapter 11 |
| Debtor. | **DECLARATION OF YUETING JIA IN SUPPORT OF THIRD AMENDED DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE** |
| | [Relates to Docket No. 397] |
| | <u>Confirmation Hearing</u><br>Date:    TBD<br>Time:    TBD<br>Place:   Courtroom 1368<br>         Roybal Federal Building<br>         255 E. Temple Street<br>         Los Angeles, CA 90012<br>Judge:   Hon. Vincent P. Zurzolo |

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

DOCS_LA:328027.3 46353/002

I, Yueting Jia, debtor herein, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I submit this declaration (the "Declaration") in support of the *Third Amended Disclosure Statement With Respect to Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Third Amended Disclosure Statement").[2] [Docket No. 397]. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein.

2. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of books and records, relevant documents and other information prepared or collected by my employees, advisors and representatives, or my opinion based on my experience. In making my statements based on my review of books and records, relevant documents and other information prepared or collected by my professionals, advisors and employees, I have relied upon these professionals, advisors and employees accurately recoding, preparing or collecting such documentation and other information.

3. With respect to statements relating to Faraday Future ("FF") and its affiliated entities, except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the books and records of, relevant documents and other information prepared or collected by FF, or my opinion based on my experience with FF's operations and financial condition. In making my statements based on my review of FF's books and records, relevant documents and other information prepared or collected by FF, I have relied upon these employees of FF or related entities accurately recording, preparing, or collecting such documentation and other information.

4. I am not fluent in English. Accordingly, in the ordinary course of my business and personal affairs that require me to communicate in English either orally or in writing, I employ interpreters/translators who are fluent in both English and Chinese. I am utilizing such interpreters/translators in connection with matters that arise in connection with my Chapter 11 Case

---

[2] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Third Amended Disclosure Statement.

2

DOCS_LA:328027.3 46353/002

and intend to continue to do so. I have reviewed the Third Amended Disclosure Statement and reviewed this Declaration, as necessary, with the assistance of such interpreters/translators.

5. The statements contained in this Declaration are subject to the disclaimers, exclusions, caveats and other limitations set forth on page 4 and elsewhere in the Third Amended Disclosure Statement and herein.

6. **Discharge Under 11 U.S.C. § 1141(d)(5)(A).** Pursuant to 11 U.S.C. 1141(d)(5)(A), I am seeking a discharge on the Effective Date. Because the value of the property to be distributed to creditors under the Plan exceeds the value of my projected disposable income, my future income is not necessary to make payments under the Plan. Payments to holders of Debt Claims will be made from distributions from the Trust and all other claims will be satisfied in full on the Effective Date. Further, the circumstances set forth in section 1141(d)(5)(C) of the Bankruptcy Code do not apply to me or my obligations.

7. **Identification of Individuals who Participated in Preparation of the Second Amended Plan, Third Amended Disclosure Statement, and Accompanying Exhibits.** In addition to the individuals identified in section II.C.5. of the Disclosure Statement and the professionals whose employment has been approved by order of the Bankruptcy Court, I was assisted in the preparation of the Second Amended Plan, Third Amended Disclosure Statement and related documents by my other personal advisors:

   a. Mr. Luetian Sun has served as FF's investor relations coordinator since January 2019. Prior to joining FF in 2018, Mr. Sun received his Bachelor degree of Civil engineering in Beijing University of Civil Engineering and Architecture and MBA degree in University of California Riverside.

   b. Mr. Ruokun Jia has served as FF's assistant of treasury since Feb 2018. Prior to joining FF, Prior to joining FF, in 2015, Mr. Jia worked as an intern of auditing at Ernst & Young. Mr. Ruokun Jia received his bachelor's degree in Accounting from Purdue University.

   c. Ms. Miao Zhang has served as FF's foreign legal consultant since June 2018, and YT's legal advisory since September 2019. Prior to joining FF, Ms. Zhang was a

DOCS_LA:328027.3 46353/002

senior legal counsel for LeSEE Automotive (Beijing) Co., Ltd., from April 2016 to May 2018, and worked as an associate in Anjie Law Firm from 2013 to 2015. Ms. Zhang received her LLB degree in South West University of Political Science and Law, and LLM degree in University of Bristol.

d. Ms. Xinyu Zhang has served as FF's Interpreter Team Manager since March 2018. Prior to joining FF in 2014 as an interpreter, Ms. Zhang worked briefly as a freelance conference interpreter after obtaining her master's degree in Conference Interpreting from Monterey Institute of International Studies. She received her bachelor's degree in English Studies for the Professions from Hong Kong Polytechnic University.

e. Ms. Shan He has served as an Interpreter at FF since March 2017. Prior to joining FF, Ms. He served as Interpreter for LeEco North America from 2016 to 2017. Ms. He received her Bachelor of Science degree in English from Beijing Language and Culture University and a Master of Arts in Translation and Interpretation (Chinese – English) degree from the Monterey Institute of International Studies.

f. Ms. Xiaoou Ma has served as FF's Director, Strategy Department since 2017. Prior to joining FF US, Xiaoou Ma served Le Vision Pic as the same position from 2016-2017. And served FF China as Strategic Cooperation and Project Director from 2015-2016. Xiaoou Ma graduated from Beijing International Studies University in 2006.

g. Ms. Xiangxiang Zuo has served as FF (China)'s deputy Director since January 2018. From January 2016 to December 2017, she served as Deputy Director of Strategy Decoding Center, PMO, Le Holding (Beijing) Ltd.  Prior positions include Deputy Director, The Belt and Road Office, Sany Group, Beijing, China; and Credit Risk Manager, Credit Risk Management Department, Bank of Communications (Frankfurt, Germany).  Ms. Zuo received her Bachelor of Science (Honors) in Computing and Information Systems and Master of Philosophy in Computing and Mathematics degree from the University of Bradford, United Kingdom (Networks and Performance Engineering Research Group).

4

DOCS_LA:328027.3 46353/002

8. **Ownership or Beneficial Interest in any of the Marguerite Properties, Including Financial or Other Interest in Ocean View, Inc.** I established Ocean View in August 2014 as a vehicle to purchase and hold various real properties located on Marguerite Drive in Rancho Palos Verdes, California, a residential area near FF's headquarters in Gardena, California. I envisioned that these properties would be used as a venue for offsite meetings and temporary corporate housing accommodations for executives of the FF Group. I owned Ocean View through Success Pyramid Ltd. ("Success"). I established Success on November 9, 2007 and paid $50,000 for 50,000 shares of Success.

9. During 2014 and 2015, Ocean View purchased real property located at 7, 11, 15, 19, and 91 Marguerite Drive, Rancho Palos Verdes, California (collectively, the "Marguerite Properties"). To purchase the real properties located at 7, 11, and 15 Marguerite Drive, Ocean View borrowed and later repaid $12 million from the FF Group. In connection with Ocean View's purchase of real property located at 19 Marguerite Drive, I borrowed $7.4 million from Shanghai Yuetian Ltd. and contributed the same amount to Ocean View as paid-in capital. Additionally, in connection with the purchase of real property located at 91 Marguerite Drive, Ocean View borrowed $7.5 million from LeSoar Holdings Limited ("LeSoar"), an entity previously controlled but not owned by me.

10. In December 2017, FF began struggling with liquidity issues. I decided to monetize my equity in Success by selling my indirect interests in Ocean View to Shaojie Chu, who married my nephew, Ruokon Jia, on July 19, 2019. The Ocean View transaction enabled me to raise cash to support my family in the PRC and provided me with a source of income from the subleases to pay my increasing personal legal expenses due to certain creditors bringing enforcement actions against me in the United States. I am not an officer, director or direct or indirect interest holder in Success or Ocean View.

11. **Lack of Disposable Income.** As demonstrated by my "Five Year Cash Flow Projections" attached to the Third Amended Disclosure Statement as Exhibit G, even though I have both salary and continued income from the sublease of the Marguerite Properties to Warm Time

5

until 2023, in light of the Wei Gan Domestic Support Obligations and my ongoing legal expenses, I do not have significant disposable income.

12. **The Divorce Action.**  On November, 15, 2019, my wife, Wei Gan filed a divorce complaint against me in the People's Court of Chaoyang District, Beijing, China under Article 12(1) of the Civil Procedure Law of the People's Republic of China (the "Divorce Complaint").[3] On December 3, 2019, the People's Court of Chaoyang District issued a notice accepting the Divorce Complaint and assigned the case to the Olympic Village Court under Case Number 2019 Chaoyuminzi 89234 before Judge Wang Yang.

13. During our marriage, Wei Gan and I had three children, two twin daughters who are five years old and one son who is three years old. Wei Gan and the children reside in Chaoyang District, Beijing and do not live with me in California. There is currently no spousal or child support agreement or order in place between Wei Gan and myself, however, prior to the Petition Date I periodically wired money to Wei Gan or her mother, on behalf of Wei Gan, to support Wei Gan and the children. No such payments have been made after the Petition Date and I do not currently owe any Domestic Support Obligations to Wei Gan or the children.

14. Pursuant to the Divorce Complaint, Wei Gan is requesting, among other things, (a) monthly child support of RMB 125,000 (approximately $17,757) per child/month for the three minor children until each child reaches eighteen (18) years of age, (b) to divide the community property between Wei Gan and myself, (c) that I bear all debts incurred as a result of my personal investment, production, and business operations during the existence of our marriage, and (d) that she retain the property currently registered under her name located in the Chaoyang District, Beijing as her personal property.

15. On January 13, 2020, Wei Gan filed proof of claim numbered 20004 in my Chapter 11 Case in the amount of $569,147,060.26 of which $8,747,060.26 Wei Gan alleges is for Domestic Support Obligations under section 507(a)(1)(A) of the Bankruptcy Code. Wei Gan attached the

---

[3] Wei Gan had previously filed a divorce complaint against me on October 11, 2019, in the People's Court of Jinjiang District, Chengdu, Sichuan Province, China, however, the court did not accept the case.

6

Divorce Complaint as support for her claim and re-asserts the allegations and requests set forth in that complaint.

16. Wei Gan, the Committee, and I have settled all of Wei Gan's claims against me and all of my claims against Wei Gan. However, Wei Gan and I are still negotiating the custody of, and child support for, the children, which could result in my agreeing to make monthly child support payments (the "Wei Gan Domestic Support Obligations"). If Wei Gan and I are unable to settle the custody and child support issues through mediation, then the Divorce Complaint will be litigated to judgment before the People's Court of Chaoyang District.

17. On the Plan Effective Date, I will make any payments to comply with any postpetition unfunded obligations on account of any Wei Gan Domestic Support Obligations, if any such obligations exist, as may be required for me to be current with respect to such Domestic Support Obligations as of the Effective Date pursuant to section 1129(a)(14) of the Bankruptcy Code. After the Effective Date, I will timely make all payments on account of Wei Gan Domestic Support Obligations to the parties entitled to receive such payments, if any such obligations exist, including, without limitation, any Wei Gan Domestic Support Obligations, in each case at the times and in the amounts required by the agreements and orders evidencing such Wei Gan Domestic Support Obligations, as such agreements may from time to time be modified in accordance with applicable law. The sole source of payment for any Wei Gan Domestic Support Obligations will be my post-Effective Date cash and no holder of a Wei Gan Domestic Support Obligation shall have any recourse against the Trust. For the avoidance of doubt, the Wei Gan Domestic Support Obligations shall not constitute claims against the Trust or otherwise have any claims against or interest in the Trust Assets.

18. **Past Two Years of Personal Financial History.** Attached as Exhibit H to the Third Amended Disclosure Statement is a Cash Flow Statement for 2018-2019.

19. **Financial and Other Interests in the FF Group Entities and Related Entities.** In connection with FF's Partnership Program, I retain the economic interest with respect to all of the membership interests of West Coast. As set forth in my Schedules, the value of my interests in West Coast is $862,241,246.67. Through West Coast, I have a preferred distribution right in connection

DOCS_LA:328027.3 46353/002

with 30.8% of FF Global's equity interest, which is collectively owned by me and the management through the Partnership Program. Such right will entitle me, after the return of capital to the management (plus 8% interest per annum) to a priority distribution of up to $815.7 million (subject to certain adjustments) plus 8% interest per annum, a special distribution of 10% of the remaining amounts and thereafter, a normal distribution of 20% of the balance owned by Pacific Technology. The remaining equity of FF Global is owned by Season Smart and the option holders and Class A ordinary shareholders under FF Global's equity incentive plans.

20. Additionally, I have the right to direct Pacific Technology to direct FF Top to transfer 147,058,823 Class B shares of FF Global currently owned by FF Top, representing 10% of FF Global's equity interests, to a creditor trust at my direction.

21. Additional information regarding the corporate structure of the FF Group is in Exhibit E of the Third Amended Disclosure Statement (the Simplified Organizational Chart of the FF Group).

22. **<u>Outstanding Amounts of Claims Held by My Creditors in the PRC.</u>**  The majority of my debts stem from personal guarantees for businesses that I operated in the PRC. Most of my creditors also assert contractual, judgment, or penalty interest under Chinese law. The claims against me fall into four general categories: (a) unsecured direct claims, (b) direct claims secured by my assets in the PRC, (c) claims based on guarantees of unsecured loans to other entities, and (d) claims based on guarantees of loans to other entities secured by such entities' assets in the PRC.

23. I scheduled approximately $1.21 billion in U.S. Secured Claims and China Secured Claims and approximately $2.56 billion in Debt Claims. *See* Schedules, Schedule D and Schedule E/F. Based on the Schedules and the proofs of claim filed against me, over $387 million in China Secured Claims and $8.4 billion in Debt Claims have been asserted against me. However, I cannot estimate the amount that may be recovered from the primary obligors on account of guarantees. Additionally, the proofs of claim filed against me have not been reconciled against my records and may be subject to reduction and/or expungement. I reserve all rights to object to, or seek estimation of, any claim.

8

24. **My Potential Role in Obtaining Series B Equity Financing and IPO.** I play a critical role to the success of FF and its financing efforts, including the near-term Series B financing and a potential initial public offering. I not only keep FF's vision alive but am also key to the realization of this vision and the articulation of this vision to potential financing sources. As a Partner and the Chief Product and User Officer (CPUO) of FF, I bring my proven track record and expertise in product, technology and user ecosystems. Over the years of my entrepreneurial career, I have explored and made many innovations in the areas of software, internet, artificial intelligence, sharing and consumer electronics. My expertise and experience correspond ideally with the core values of the next-generation automatic industry.

25. FF's other unique competitiveness is in its intelligent, shared mobility ecosystem. I play a significant role in executing this innovative strategy because I have accumulated experience and capabilities in building user ecosystems from my other ventures.

26. Therefore, my leadership, expertise and experience are indispensable to FF, a company that is committed to leading the transformation of the automotive industry.

27. **The Valuation of Smart King (n/k/a FF Global).** Pursuant to the Merger Agreement by and between Smart King (n/k/a FF Global), Season Smart, and certain other parties, Season Smart made a commitment to invest $2.0 billion in exchange for a 45% stake in Smart King (n/k/a FF Global). Based on the amount invested, Season Smart implicitly valued Smart King's equity at approximately $4.44 billion at that time. On December 31, 2018, under the 2018 Restructuring Agreement, Season Smart's stake in Smart King (n/k/a FF Global) was reduced to 32% of the outstanding equity interests of Smart King (n/k/a FF Global) and Season Smart's further funding commitment was eliminated. Based on the arrangements made in the 2018 Restructuring Agreement, the parties implicitly valued Smart King (n/k/a FF Global) at approximately $2.5 billion. In these arms-length transactions with an unrelated, bona fide third party Smart King (n/k/a FF Global) had an incentive to negotiate the best possible price for its equity interests, and Season Smart had an incentive not to overpay for them. Thus, these transactions are relevant in estimating the fair value of the securities of FF Global and the potential recoveries for holders of Allowed Debt Claims.

DOCS_LA:328027.3 46353/002

28.     In connection with the issuance of Class A ordinary shares to its employees, directors, and consultants, Smart King (n/k/a FF Global) obtained a valuation of its equity from Business Equity Appraisal Reports, Inc. ("BEAR"). Based on BEAR's opinion of value dated May 29, 2019, BEAR valued the fair market value of Smart King's equity at $1,897,000,000. Important observations in Bear's opinion include that (a) Smart King (n/k/a FF Global) was projected to have profitable operations in 2024 and positive cash flow in 2024, (b) financing and management difficulties might threaten this projection, and (c) at that time, additional funding of approximately $2.2 billion would be needed to achieve positive cash flow, and management intended to have an IPO within the near future. The key assumptions BEAR made included that (a) the necessary funding could be obtained, particularly the anticipated IPO at $10 per share and (b) production and sales would be achieved in accordance with the projections.

DOCS_LA:328027.3 46353/002

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of March, 2020, at ___Gardena___, California.

_____
YUETING JIA

DOCS_LA:328027.2 46353/002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **DECLARATION OF YUETING JIA IN SUPPORT OF THIRD AMENDED DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 2, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____**,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 2, 2020,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
United States Bankruptcy Court
Central District of California
Attn:  Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 2, 2020 | Myra Kulick | /s/ *Myra Kulick* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                                          **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:327335.1 46353/002

**SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ**

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>

- *Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com*
- *Jerrold L Bregman    ecf@bg.law, jbregman@bg.law*
- *Jeffrey W Dulberg    jdulberg@pszjlaw.com*
- *Stephen D Finestone    sfinestone@fhlawllp.com*
- *Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com*
- *Ben H Logan    blogan@omm.com*
- *David W. Meadows    david@davidwmeadowslaw.com*
- *John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com*
- *Kelly L Morrison    kelly.l.morrison@usdoj.gov*
- *Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com*
- *Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com*
- *Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com*
- *Benjamin Taylor    btaylor@taylorlawfirmpc.com*
- *United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov*
- *Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:327335.1 46353/002