1   Richard M. Pachulski (CA Bar No. 90073)
    Jeffrey W. Dulberg (CA Bar No. 181200)
2   Malhar S. Pagay (CA Bar No. 189289)
    PACHULSKI STANG ZIEHL & JONES LLP
3   10100 Santa Monica Blvd., 13th Floor
    Los Angeles, California  90067
4   Telephone: 310/277-6910
    Facsimile:  310/201-0760
5   E-mail: rpachulski@pszjlaw.com
            jdulberg@pszjlaw.com
6           mpagay@pszjlaw.com

7   Attorneys for Debtor and Debtor in Possession

8

9                  UNITED STATES BANKRUPTCY COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                      LOS ANGELES DIVISION

12

13  In re:                              Case No.: 2:19-bk-24804-VZ

14  YUETING JIA,[1]                      Chapter 11

15                   Debtor.            **DEBTOR'S OPPOSITION TO MOTION TO
                                        DISMISS THE DEBTOR'S CHAPTER 11
16                                      CASE BY CREDITOR SHANGHAI LAN CAI
                                        ASSET MANAGEMENT CO, LTD.;
17                                      MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT THEREOF**

18
                                        Date:      March 19, 2020
19                                      Time:      9:30 a.m.
                                        Place:     United States Bankruptcy Court
20                                                 255 E. Temple Street,
                                                   Los Angeles, CA  90012
21                                      Courtroom: 1368
                                        Judge:     Hon. Vincent P. Zurzolo
22

23

24

25                                      [Relates to Docket Nos. 358 and 359]

26

27

28  [1]The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91
    Marguerite Drive, Rancho Palos Verdes, CA 90275.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................................ 4
    A.    Background ................................................................................................................ 4
    B.    The Debtor's Interests in the Delaware LLCs ................................................ 4
    C.    The Commencement of the Debtor's Chapter 11 Case ................................ 6
    D.    Meetings of Creditors ............................................................................................ 6
    E.    Retention of Advisors for the Debtor ............................................................... 6
    F.    The Creditors' Committee ................................................................................... 6
    G.    Claims Process and Bar Date ............................................................................. 7
    H.    Venue Transfer ....................................................................................................... 7
    I.    Filing and Withdrawal of U.S. Trustee's Motion for Appointment of a
        Chapter 11 Trustee ............................................................................................... 8
    J.    DIP Financing ........................................................................................................ 8
    K.    The Committee's Parallel Due Diligence and Plan Negotiation Processes ........... 8
    L.    Plan-Related Filings ............................................................................................ 10
    M.    Stipulation Regarding SLC Claim ................................................................... 11

III. DISCUSSION ................................................................................................................... 11
    A.    SLC Fails to Establish That Cause Exists to Dismiss the Chapter 11 Case
        Pursuant to Section 1112(b) of the Bankruptcy Code ............................... 11
    B.    The Interests of All Other Creditors (Other Than SLC) Would Not Be Served
        By Dismissing the Chapter 11 Case Pursuant to Section 305(a)(1) of the
        Bankruptcy Code ................................................................................................ 24

IV. CONCLUSION ................................................................................................................. 27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TABLE OF AUTHORITIES**

**Page(s)**

Ackerman v. Levine,
    788 F.2d 830 (2d Cir. 1986) ...................................................................................... 24

Arcapita Bank v. Bahrain Islamic Bank
    (In re Arcapita Bank), 575 B.R. 229 (Bankr. S.D.N.Y. 2017) ................................... 22

Broady v. Harvey
    (In re Broady), 247 B.R. 470 (BAP 8th Cir. 2000) .................................................... 17

Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.
    (In re Commonwealth Oil Refining Co.), 596 F.2d 1239 (5th Cir. 1979) ................... 18

Eastman v. Eastman
    (In re Eastman), 188 B.R. 621 (BAP 9th Cir. 1995) .................................................. 25

Fotochrome, Inc. v. Copal Co.,
    517 F.2d 512 (2d Cir. 1975) ...................................................................................... 24

Frank v. Neufeld
    (In re Neufeld), 2012 Bankr. LEXIS 5430 (Bankr. M.D. Pa. Nov. 16, 2012) ........... 18

GMAM Inv. Funds Trust I v. Globo Comunicacoes e Participacoes S.A.
    (In re Globo Comunicacoes e Participacoes S.A.), 317 B.R. 235 (S.D.N.Y. 2004) ........................... 20, 23

Hilton v. Guyot,
    159 U.S. 113 (1895) ................................................................................................... 24

In re 15375 Memorial Corp.
    589 F.3d 605 (3d Cir. 2009) ...................................................................................... 14

In re 234-6 West 22nd St. Corp.,
    214 B.R. 751 (Bankr. S.D.N.Y. 1997) ....................................................................... 12

In re Acor,
    510 B.R. 588 (Bankr. W.D. Tenn. 2014) ................................................................... 18

In re Bd. of Dirs. of Multicanal S.A.,
    314 B.R. 486 (Bankr. S.D.N.Y. 2004) .................................................................... 25-26

In re Clinton Centrifuge, Inc.,
    72 B.R. 900 (Bankr. E.D. Pa. 1987) .......................................................................... 12

In re Corino,
    191 B.R. 283 (Bankr. N.D.N.Y. 1995) ...................................................................... 25

In re Dunmore Homes, Inc.,
    380 B.R. 663 (Bankr. S.D.N.Y. 2008) ....................................................................... 18

In re G.S. Distrib.,
    331 B.R. 552 (Bankr. S.D.N.Y. 2005) ....................................................................... 12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

In re General. Growth Props.,
  409 B.R. 43 (Bankr. S.D.N.Y. 2009) ................................................................ 12

In re Global Ocean Carriers Ltd.,
  251 B.R. 31 (Bankr. D. Del. 2000) ................................................................. 19

In re Irish Bank Resolution Corp. Ltd.,
  2014 Bankr. LEXIS 1990 (Bankr. D. Del. April 30, 2014) ..................................... 21

In re Luftek, Inc.,
  6 B.R. 539 (Bankr. E.D.N.Y. 1980) ................................................................ 25

In re Mak Petroleum, Inc.,
  424 B.R. 904 (Bankr. M.D. Fla. 2010) ........................................................ 23-24

In re Marion St. Partnership,
  108 B.R. 218 (Bankr. D. Minn. 1989) ............................................................. 12

In re Maxwell Commun. Corp. PLC,
  93 F.3d 1036 (2d Cir. 1996) ......................................................................... 21

In re Miller,
  433 B.R. 205 (Bankr. W.D. Mich. 2010) ..................................................... 17, 18

In re Monitor Single Lift I, Ltd.,
  381 B.R. 455 (Bankr. S.D.N.Y. 2008) ....................................................... 25, 26

In re Murrin,
  461 B.R. 763 (Bankr. D. Minn.) ................................................................... 20

In re Northshore Mainland Servs.,
  537 B.R. 192 (Bankr. D. Del. 2015) ..................................................... 20, 21, 22

In re Peachtree Lane Assocs.,
  206 B.R. 913 (N.D. Ill. 1997) ....................................................................... 18

In re Schur Mgmt. Co.,
  323 B.R. 123 (Bankr. S.D.N.Y. 2005) ............................................................. 25

In re Silicon Valley Innovation Co.,
  2012 Bankr. LEXIS 4034 (Bankr. N.D. Cal. Aug. 30, 2012) ................................. 19

In re Suntech Power Holdings Co.,
  520 B.R. 399 (Bankr. S.D.N.Y. 2014) ............................................................. 21

In re Wine & Spirits Specialties of Kansas City, Inc.,
  142 B.R. 345 (Bankr. W.D. Mo. 1992) ............................................................ 26

In re Yukos Oil Co.,
  321 B.R. 396 (Bankr. S.D. Tex. 2005) ............................................................ 23

In Spanish Cay Co.
  Spanish Cay Co., 161 B.R. 715 (Bankr. S.D. Fla. 1993) ...................................... 23

Marsch v. Marsch
  (In re Marsch), 36 F.3d 825 (9th Cir. 1994) ..................................................... 12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Meadowbrook Inv'rs Grp. v. Thirtieth Place, Inc.
   (In re Thirtieth Place, Inc.), 30 B.R. 503 (BAP 9th Cir. 1983) ................................... 13

Montana Dep't of Revenue v. Blixseth
   (In re Blixseth), 484 B.R. 360 (BAP 9th Cir. 2012) .......................................... 19

Official Comm. v. Nucor Corp.
   (In re SGL Carbon Corp.), 200 F.3d 154 (3d Cir. 1999) .................................... 12

RHTC Liq. Co. v. Union Pac. R.R.
   (In re RHTC Liq. Co.), 424 B.R. 714 (Bankr. W.D. Pa. 2010) ................................ 25

St. Paul Self Storage Ltd. Partnership v. Port Authority of St. Paul
   (In re St. Paul Self Storage Ltd. Partnership), 185 B.R. 580 (BAP 9th Cir. 1995) ................................... 13

**STATUTES**

11 U.S.C. § 101 ................................................................................................... 6, 8

11 U.S.C. § 109 ................................................................................................. 19, 20

11 U.S.C. § 305 ............................................................................................. 24, 25, 26

11 U.S.C § 341 ........................................................................................................ 6

11 U.S.C. § 364 ........................................................................................................ 8

11 U.S.C. § 365 ........................................................................................................ 7

11 U.S.C. § 1102 ..................................................................................................... 6

11 U.S.C. § 1112 ........................................................................................... 12, 13, 25

28 U.S.C. § 1408 ........................................................................................... 17, 19, 20

**CODES**

Cal. Civ Proc. Code § 708.110 ................................................................................... 3

**OTHER AUTHORITIES**

1 *Collier on Bankruptcy* 4.02[2][a] (16th ed. 2020)................................................ 17

Committee on Structured Finance and the Committee on Bankruptcy and & Corporate Reorganization of the Association of the Bar of the City of New York, Special Report on the Preparation of Substantive Consolidation Opinions,
   64 Bus. Law. 411–19 (2009) ................................................................................ 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

Yueting Jia, the debtor and debtor in possession (the "Debtor" or "YT") in the above-caption chapter 11 case (the "Chapter 11 Case"), hereby files his opposition ("Opposition") to *Motion to Dismiss the Debtor's Chapter 11 Case by Creditor Shanghai Lan Cai Asset Management Co, Ltd.* [Docket Nos. 358 and 359] (the "Motion"), filed by putative secured creditor Shanghai Lan Cai Asset Management Co, Ltd. ("SLC").   The Opposition is based on the annexed Memorandum of Points and Authorities, and the supporting Declaration of Yueting Jia (the "Jia Declaration") and the *Request for Judicial Notice* ("RFJN") and *Evidentiary Objections and Motion to Strike Re: Declaration of Dong Ni (Donna) Xu in Support of Motion by Creditor Shanghai Lan Cai Asset Management Co., Ltd. to Dismiss the Debtor's Chapter 11 Case*, filed concurrently herewith.

In support of his Opposition, the Debtor states as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

On February 27, 2020, the Debtor and the official committee of unsecured creditors appointed in this Chapter 11 Case (the "Committee"), executed a plan term sheet (the "Negotiated Plan Term Sheet") containing the terms of a consensual reorganization of the Debtor's financial affairs that addresses the restructuring of billions of dollars of debt, the overwhelming majority of which arose from obligations he guaranteed to support his businesses.  Based on the Negotiated Plan Term Sheet, on March 2, 2020, the Debtor filed the *Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 398] (the "Negotiated Plan").

The filing of the Negotiated Plan represents a culmination of four months of rigorous investigation and due diligence by the Committee and robust negotiations among the Debtor, the Committee, and other parties in interest.  Among numerous other actions, since the commencement of his Chapter 11 Case, the Debtor has:

a.    Established multiple data rooms for Committee members and professionals populated with thousands of pages of documents relating to his personal business and financial affairs and those of Faraday Future ("FF," "Faraday" or the "Company") and its parent company, Smart King Ltd. (n/k/a FF Intelligent Mobility Global Holdings Ltd.);

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

b.      Prepared and filed multiple versions of a plan and disclosure statement based, in part, on on-going negotiations with the Committee;

c.      Conducted an all-day meeting at Faraday with Faraday's management, as well as thirteen Committee mems, creditor representatives and Committee professionals, in order to provide an overview of Faraday's business operations and financial condition, and to discuss the Plan;

d.      Conducted meetings with representatives of creditors (nearly all of whom traveled from the People's Republic of China ("PRC")) at Faraday's headquarters for a separate, full day of meetings that included comprehensive presentations regarding Faraday's business operations and financial condition and sessions allowing creditors to ask questions and voice concerns regarding the Debtor's proposed restructuring. Thirty-five creditor representatives and two representatives of the Committee participated in this meeting;

e.      Facilitated the Committee's investigative interviews of seven witnesses relating to the Debtor's financial affairs and Faraday's business operations;

f.      Provided two days of deposition testimony in response to formal questions posed by the Committee and an individual Committee member; and

g.      Participated in two days of court-ordered mediation with the Hon. Mitchel R. Goldberg (ret.), which ultimately facilitated the resolution of various disputes between the Debtor and Committee and the settlement of the $571 million claim asserted by the Debtor's wife with the Debtor and Committee, all of which are memorialized in the Negotiated Plan.

The Debtor and Committee are now focused on securing the necessary creditor support and meeting the other requirements for achieving confirmation of the Negotiated Plan and facilitating the Debtor's emergence from chapter 11 as expeditiously as possible.

Notwithstanding the procedural posture of the Chapter 11 Case and the advanced progress of the Debtor's restructuring, SLC—a putative secured creditor alleging a claim of only around $12 million among a creditor pool of billions of dollars—for the second time seeks dismissal of the case.[1]  Prior to the commencement of the Chapter 11 Case, SLC sought to use its relatively small debt to seize control of the Debtor's assets, including his indirect interests in Faraday, solely for its own benefit:  Prior to the Petition Date, SLC obtained an order requiring the Debtor to appear for a judgment debtor examination that, if properly served under California law, results in a lien on the

---

[1] On January 24, 2020, SLC filed a proof of claim in the amount of $12,711.983.98 (the "SLC Claim"), which it asserts is secured pursuant to California statute.  A true and correct copy of the SLC Claim is attached as **Exhibit "4"** to the RFJN.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Debtor's personal property.  *See* Cal. Civ Proc. Code § 708.110(d).  In order to preserve his assets for the benefit of *all* of his creditors—not just SLC—the Debtor commenced this Chapter 11 Case.

SLC's Motion, which is largely based on inadmissible hearsay in news articles and replete with inaccurate and inflammatory statements, largely rehashes the arguments raised unsuccessfully in its first motion:[2]  (i) that the Chapter 11 Case allegedly was filed in bad faith, essentially because (a) the Debtor commenced the case to assert the automatic stay and forestall SLC's enforcement actions, and (b) the Debtor's case is driven by an improper desire to help FF or (ii) that the Chapter 11 Case should be dismissed on the grounds of comity.

To the contrary, the Debtor commenced his Chapter 11 Case to preserve his assets for the benefit of all creditors, rather than allow SLC to enforce its lien to the detriment of all other creditors under California law, a legitimate and good-faith basis for commencing a bankruptcy case. Moreover, the Debtor's indirect interests in FF are his most valuable assets and the principal potential sources of recoveries for creditors; consequently, those interests are necessarily the primary focus of his restructuring.  Finally, SLC offers no alternative to administering U.S.-based assets (such as the Debtor's principal assets):  they must be administered through a U.S. court.  SLC readily concedes that "there is no established individual bankruptcy proceeding under Chinese law" and, as such, only this Court may administer a restructuring of the Debtor's assets as proposed in the Negotiated Plan.[3]  SLC's request that this Court decline to administer the Debtor's U.S. assets through this Chapter 11 Case is particularly ironic:  if this Court – a U.S.-based court – were to dismiss the Chapter 11 Case on comity grounds as SLC requests, SLC would then simply go to a different U.S. court to enforce its lien on the Debtor's U.S.-based assets.

The Debtor, in engaging with the Committee and his creditors during his Chapter 11 Case, has worked in good faith to complete a restructuring of his financial affairs.  So far, those efforts have been successful and have led to the negotiation and submission of the Negotiated Plan.  SLC's "second bite at the apple" by again seeking dismissal of the Chapter 11 Case in order to enforce its

---

[2] The Delaware bankruptcy judge did not dismiss the Chapter 11 Case as requested in *Shanghai Lan Cai Asset Management Co, Ltd.'s Motion (I) to Dismiss the Debtor's Chapter 11 Case or, Alternatively, (II) to Transfer Venue to the Central District of California* [Docket No. 89] (the "First Motion to Dismiss").

[3] Motion at 18, l.9.

1    putative lien flies in the face of these efforts and is antithetical to the purpose of chapter 11 to

2    provide a platform for the debtor and parties in interest to reorganize a chapter 11 debtor's affairs for

3    the benefit of all creditors—not just one.  SLC's Motion must again be denied.

**II.**

**STATEMENT OF FACTS**

**A.    Background**

7            The Debtor is the founder of several technology companies.  He is the founder, former chief

8    executive officer and current chief product and user officer of Faraday, a technology company

9    located in California focused on the development of a smart mobility ecosystem and electric

10    vehicles.[4]

**B.    The Debtor's Interests in the Delaware LLCs**

12            The Debtor holds interests in two Delaware limited liability companies:  Pacific Technology

13    Holding LLC ("PTH") and West Coast LLC ("WC" and, collectively with PTH, the "LLCs").

14            PTH was formed on July 26, 2018.   A true and correct copy of PTH's Certificate of

15    Formation, certified by the Secretary of State of the State of Delaware (the "PTH Certificate"), is

16    attached as **Exhibit "1"** to the RFJN.  PTH is member-managed by FF Global Partners LLC ("FF

17    GP").  Its president, secretary and treasurer is Matthias Aydt, who also is the senior vice president of

18    product engineering at FF.  Prior to the formation of the FF Global Partnership Program[5] through FF

19    GP, an entity created to implement Faraday Future's management incentive program, the Debtor

20    owned 100% of the economic interests in PTH through a nominee agreement.  After the formation of

21    the FF Global Partnership Program, FF GP owns 100% of the issued and outstanding common units

22    of PTH and 80% of the total equity interest in PTH.  The remaining 20% interest is owned by WC,

23    which holds 90,588,235 preferred units of PTH (the "Preferred PTH Units").  WC was formed on

---

[4] https://www.ff.com.

[5] Key executives of the Company formed FF GP in connection with the adoption of the "Partnership Program"—an innovative corporate governance and management retention structure based on the Alibaba model. The implementation of the Partnership Program enabled the company to attract new senior management, including Dr. Carsten Breitfeld—a BMW AG veteran—as CEO and Robert A. Kruse, Jr.—who has over 30 years' of experience at General Motors—as senior vice president of product execution (engineering and manufacturing).  The members of FF GP (the "FF GP Members") consist of FF's senior executives who have subscribed to the units of FF GP and thus indirectly own equity interests in FF.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

July 23, 2019. A true and correct copy of WC's Certificate of Formation, certified by the Secretary of State of the State of Delaware (the "WC Certificate"), is attached as **Exhibit "2"** to the RFJN.

On July 31, 2019, the Debtor entered into a nominee agreement with WC and Lian Bossert (the "WC Nominee Agreement"), pursuant to which Lian Bossert was named as the nominee (the "WC Nominee") in respect of the Debtor's interests in WC. A true and correct copy of the WC Nominee Agreement is attached to the Jia Declaration as **Exhibit "A."** In accordance with the terms of the WC Nominee Agreement, the WC Nominee is the record owner of the ownership units of WC, WC is the record owner of the Preferred PTH Units, and the Debtor retains all economic interests associated with the equity of WC and PTH as set forth in the Limited Liability Company Agreement of West Coast LLC (the "WC LLC Agreement") and the Third Amended and Restated Limited Liability Company Agreement of Pacific Technology Holding LLC, as amended by the First Amendment to the Third Amended and Restated Limited Liability Company Agreement (the "PTH LLC Agreement"). True and correct copies of the WC LLC Agreement and the PTH LLC Agreement are attached to the Jia Declaration as **Exhibits "B"** and **"C,"** respectively. Prior to the formation of WC, the WC Nominee was the record holder of the Preferred PTH Units.

Pursuant to section 16 of the PTH LLC Agreement, the Preferred PTH Units entitle the Debtor, through WC, to receive certain distributions of capital from PTH from time to time which consist of: (1) a priority distribution of up to $815.7 million, plus interest at 8% per annum, after the return of capital to the management (plus 8% interest per annum), plus (2) a special distribution of 10% of all remaining distributions of capital from PTH, plus (3) a pro rata share (i.e., 20%) of all remaining distributions of capital from PTH (collectively, the "PTH Distributions Rights"). Also, pursuant to section 14(c) of the PTH LLC Agreement, the Debtor retains the right to direct the transfer of 147,058,823 Class B ordinary shares of Smart King Ltd. (n/k/a FF Intelligent Mobility Global Holdings Ltd.), the parent company of FF, to a creditor trust (the "PTH Transfer Rights").

Based on the Debtor's *Schedules of Assets and Liabilities and Statement of Financial Affairs*, filed on October 17, 2019 [Docket No. 28] (the "Schedules"), the Debtor's economic interests in PTH, through the PTH Distributions Rights, and the PTH Transfer Rights, have a combined value of over $1.1 billion, which represents approximately 84% of the value of the Debtor's assets as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

reported in the Schedules.  A true and correct copy of the relevant page of the Schedules is attached as **Exhibit "3"** to the RFJN.

**C.      The Commencement of the Debtor's Chapter 11 Case**

On October 14, 2019 (the "Petition Date"), the Debtor commenced his Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  The Debtor continues to manage his affairs and maintain control over his property as a debtor in possession.

**D.      Meetings of Creditors**

The Debtor has provided testimony in response to questions by the Office of the United States Trustee and individual creditors (including SLC and SQ) at meetings of creditors pursuant to section 341(a) of the Bankruptcy Code conducted on December 6, 2019, and February 28, 2020.

**E.      Retention of Advisors for the Debtor**

The Debtor has retained the following professional firms: (i) Pachulski Stang Ziehl & Jones LLP, as bankruptcy counsel [Docket No. 373]; (ii) O'Melveny & Myers LLP, as special corporate, litigation, and international counsel [Docket No. 374]; (iii) PQBDN LLC, as financial advisor [Docket No. 377]; (iv) Robert Moon as foreign representative [Docket No. 376]; and (v) Epiq Corporate Restructuring, LLC, as the voting agent and noticing and claims agent [Docket No. 85].

**F.      The Creditors' Committee**

On October 25, 2019, the U.S. Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 45]. The Committee consists of the following members: (i) Ping An Bank., Ltd. Beijing Branch; (ii) China Minsheng Trust Co., Ltd; (iii) Shanghai Leyu Chuangye Investment Management Center LP; (iv) Jiangyin Hailan Investment Holding Co., Ltd; and (v) Shanghai Qichengyueming Investment Partnership Enterprise ("SQ").

The Committee has retained the following professional firms: (i) Lowenstein Sandler LLP, as bankruptcy counsel; (ii) Polsinelli LLP, as California co-counsel; and (iii) Alvarez & Marsal North America, LLC, as financial advisor.[6]

---

[6] The Committee also employed Potter Anderson & Corroon LLP as Delaware co-counsel during the period the case was pending before the Delaware bankruptcy court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**G.    Claims Process and Bar Date**

On November 13, 2019, the Court entered an order [Docket No. 87] (the "Bar Date Order") establishing certain deadlines for the filing of proofs of claim in the Chapter 11 Case. These dates are:

- The deadline for creditors (other than governmental units and certain other parties excused from filing proofs of claim under the Bar Date Order) to file proofs of claim against the Debtor was January 24, 2020, at 5:00 p.m. (Eastern Time) (the "General Bar Date");

- The deadline for governmental units to file proofs of claim against the Debtor is April 13, 2020, at 5:00 p.m. (Eastern Time);

- A bar date for claims amended or supplemented by an amendment to the Schedules by the later of (a) the General Bar Date; and (b) the date that is twenty-one days after the date that notice of the applicable amendment to the Schedules is served on the claimant; and

- A bar date for any claims arising from or relating to the rejection of executory contracts or unexpired leases, in accordance with section 365 of the Bankruptcy Code by the later of (a) the General Bar Date; (b) the date that is thirty days after the entry of the order authorizing the rejection of the executory contract or unexpired lease; and (c) any date that the bankruptcy court may fix in the applicable order approving such rejection.

The Debtor provided notice of the bar dates above as required by the Bar Date Order. Approximately 199 proofs of claim were filed by the General Bar Date, asserting approximately $8.9 billion in claims against the Debtor.

**H.    Venue Transfer**

On November 13, 2019, SLC filed *Shanghai Lan Cai Asset Management Co, Ltd.*'s *Motion (I) to Dismiss the Debtor's Chapter 11 Case or, Alternatively, (II) to Transfer Venue to the Central District of California* [Docket No. 89], seeking to dismiss the Debtor's chapter 11 case as a bad faith filing or, in the alternative, transfer venue of the chapter 11 case to the Central District of California.

On December 18, 2019, Judge Karen B. Owens of the United States Bankruptcy Court for the District of Delaware transferred the Chapter 11 Case to this District on the grounds that the Debtor and FF are located in California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**I.      Filing and Withdrawal of U.S. Trustee's Motion for Appointment of a Chapter 11 Trustee**

On December 17, 2019, the United States Trustee for the District of Delaware filed the *United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee* [Docket No. 171] (the "Trustee Motion"). On January 16, 2020, the United States Trustee for the Central District of California withdrew the Trustee Motion without prejudice [Docket No. 216].

**J.      DIP Financing**

The Debtor, the Committee and PTH participated in extensive negotiations for DIP financing. On February 23, 2020, such negotiations culminated in an agreement on the terms of a secured debtor-in-possession promissory note (the "DIP Note") to be funded by PTH, largely through contributions by the members of FF GP, who agreed to provide additional advances for a total of $6.4 million.

On February 27, 2020, the Debtor filed the *Motion for Order (A) Authorizing Debtor in Possession to (I) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, and 364, and (II) Granting Liens and Superpriority Claims to Postpetition Lender Pursuant to 11 U.S.C.§ 364; and (B) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, and 364* [Docket No. 384] (the "DIP Motion"), seeking entry of an order authorizing the Debtor to obtain DIP financing from PTH pursuant to the DIP Note in the maximum principal amount of $6.4 million (the "DIP Facility"). With the liquidity available from the DIP Facility, the Debtor can proceed with confirmation of the Negotiated Plan and pay his postpetition expenses, including administrative expense claims.

**K.      The Committee's Parallel Due Diligence and Plan Negotiation Processes**

Shortly after the Committee's appointment, the Debtor and the Committee, and their respective professionals, began discussing the path to a Negotiated Plan of reorganization and the scope of due diligence required by the Committee in order for it to have the necessary frame of reference to consider proposals by the Debtor to effectuate a restructuring of his obligations and to support FF as the centerpiece of the Debtor's reorganization and the value to be provided to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

creditors.  The Debtor's facilitation of the Committee's due diligence throughout the Chapter 11

Case included the following:

1.    The Debtor and Committee negotiated the terms of nondisclosure agreements regarding confidential information to be provided by the Debtor and FF to permit the smooth flow of information to the Committee.

2.    In response to the Committee's due diligence requests, the Debtor provided the Committee with access to multiple data rooms populated with thousands of pages of documents containing his, FF's, and Smart King's financial and business information.

3.    On November 22, 2019, the Debtor conducted an all-day meeting at Faraday with Faraday's management, as well as thirteen Committee representatives, creditor representatives and Committee professionals, in order to provide an overview of Faraday's business operations and financial condition, and to discuss the Plan.

4.    On November 25, 2019,  representatives of creditors (nearly all of whom traveled from the PRC) visited Faraday's headquarters for a separate, full day of meetings that included comprehensive presentations regarding Faraday's business operations and financial condition and sessions allowing creditors to ask questions and voice concerns regarding the Debtor's proposed restructuring.  Thirty-five creditor representatives and two representatives of the Committee participated in this meeting.

5.    On January 6 and 7, 2020, the Debtor facilitated the Committee's investigative interviews of seven witnesses relating to the Debtor's financial affairs and FF's business operations.

6.    On January 17 and 18, 2020, the Debtor participated in a two-day deposition by the Committee and an individual member of the Committee, where the Debtor provided additional information regarding issues arising during the course of the Committee's due diligence over the previous three months.  A representative of the Office of the United States Trustee was present at the January 17, 2020 session.

7.    Throughout the due diligence process, the Debtor's and Committee's advisors met on several occasions to discuss the parallel due diligence and Negotiated Plan formulation processes.

On February 6, 2020, the Court entered its *Order (I) Requiring Parties to Participate in Mediation and (II) Setting Further Status* Conference [Docket No.  308] (the "Mediation Order").

That same week, in accordance with the Mediation Order, the Debtor, the Committee, and other

creditors seeking to participate in the mediation (SLC and SQ) attended mediation sessions with the

Hon. Mitchel R. Goldberg (ret.).  At the conclusion of the mediation sessions, the Debtor and the

Committee reached an agreement regarding the material terms of the Plan.

On February 27, 2020, the material terms of the Negotiated Plan were memorialized in the executed Plan Term Sheet filed with the DIP Motion.

**L.      Plan-Related Filings**

Prior to the Petition Date, YT circulated a *Confidential Offering Memorandum, Disclosure Statement and Consent Solicitation Statement* [Docket No. 5] (the "Disclosure Statement"), pursuant to which he proposed an exchange offer through which creditors' claims would be satisfied in exchange for interests in a trust containing all of his assets (other than assets frozen or seized in the PRC.  On the Petition Date, the Debtor filed the Disclosure Statement and his initial Plan of Reorganization (the "Plan") [Docket No. 4].

On November 15, 2019, the Debtor filed his Amended Disclosure Statement (the "Amended DS") [Docket No. 94], together with a blackline version of the Amended DS [Docket No. 95], and notice of hearing on the Amended DS [Docket No. 96] that set a hearing on December 18, 2019, in the District of Delaware.

On December 4, 2019, the Debtor filed a motion to approve adequacy of the amended disclosure statement (the "Initial Motion to Approve Amended DS") [Docket No. 109] and, on December 13, 2019, the Debtor filed a notice of continuance of the hearing until January 8, 2020 (the "Notice of Continuance") [Docket No. 147].  Due to the case being transferred to the Central District of California, a hearing was not held in the District of Delaware.

On January 16, 2020, the Debtor filed a notice of motion and motion to approve the Amended DS (the "Second Motion to Approve Amended DS") [Docket No. 222], setting it for hearing on February 6, 2020.  On January 23, 2020, the United States Trustee filed an objection to the Amended DS [Docket No. 246].

On January 27, 2020, the Debtor filed an amended plan of reorganization [Docket No. 260], as well as a notice of filing of blackline version of a second amended disclosure statement [Docket No. 261].  On January 28, 2020, the Debtor filed a second amended disclosure statement (the "Second Amended DS") [Docket No. 262].

On February 6, 2020, the Court held a hearing and denied the Second Motion to Approve Amended DS and the Second Amended DS [Docket No. 304], as set forth in its *Findings of Fact and*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Conclusions of Law* entered the same day [Docket No. 305].  The court set April 30, 2020, to consider a motion to approve a third amended disclosure statement.

On March 2, 2020, the Debtor filed his third amended disclosure statement (the "<u>Third Amended Disclosure Statement</u>") [Docket No. 397], a renewed motion to approve the Third Amended Disclosure Statement (the "<u>Renewed Motion to Approve Third Amended DS</u>") [Docket No. 401], and the Negotiated Plan [Docket No. 398].  The Court approved the Debtor's request that the Renewed Motion to Approve Third Amended DS be heard on an expedited basis and scheduled a hearing regarding that motion for March 19, 2020, at 9:30 a.m.

**M.    Stipulation Regarding SLC Claim**

On February 24, 2020, the Debtor and SLC entered into a *Stipulation Resolving Status of Claim Held by Shanghai Lan Cai Asset Management Co., Ltd., as General Unsecured Claim* [Docket No. 368] (the "<u>SLC Lien Stipulation</u>"), pursuant to which the parties agreed that the SLC Claim would be treated as unsecured during the pendency of the Chapter 11 Case, but if the case were dismissed, SLC's lien would be effective and its enforceability tolled, subject to the parties' reservation of rights.[7]  The Court approved the SLC Lien Stipulation the following day [Docket No. 378].

**III.**

<u>**DISCUSSION**</u>

**A.    <u>SLC Fails to Establish That Cause Exists to Dismiss the Chapter 11 Case Pursuant to Section 1112(b) of the Bankruptcy Code</u>**

SLC asserts that the Court should dismiss the case under section 1112(b) of the Bankruptcy Code because the Debtor's petition was filed in "bad faith."  Section 1112(b) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause . . . ."  11 U.S.C. § 1112(b)(1).  Significantly, "[t]he statute provides for dismissal for cause, if it is in the best interest of the creditors and the estate."  *Official Comm. v. Nucor Corp. (In re SGL Carbon*

---

[7] The Debtor entered into a similar stipulation with SQ [Docket Nos. 325, 341].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Corp.)*, 200 F.3d 154, 159 (3d Cir. 1999).  Courts have found that dismissal of a bankruptcy

petition for lack of good faith should be done "only sparingly and with great caution."  *See e.g.,*

*In re General. Growth Props.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (citing *Carolin Corp. v.*

*Miller*, 886 F.2d 693, 700 (4th Cir. 1989)); *In re G.S. Distrib.,* 331 B.R. 552, 566 (Bankr. S.D.N.Y.

2005).  Dismissal of a voluntary chapter 11 petition "is an extraordinary remedy that requires careful

examination of the facts on a case-by-case basis."  *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751,

757 (Bankr. S.D.N.Y. 1997); *see also In re Marion St. Partnership,* 108 B.R. 218, 223 (Bankr. D.

Minn. 1989) ("Dismissal of a bankruptcy case is the ultimate sanction; it should be used with

caution.").  "In enacting chapter 11, Congress determined that an otherwise eligible debtor is entitled

to an opportunity to reorganize; the Code's policy is one of open access to the bankruptcy process."

*In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr. E.D. Pa. 1987).

The United States Court of Appeals for the Ninth Circuit has stated that "'[t]he existence of

good faith depends on an amalgam of factors and not upon a specific fact.'" *Marsch v. Marsch (In re*

*Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (quoting *Idaho Dep't of Lands v. Arnold (In re Arnold)*,

806 F.2d 937, 939 (9th Cir. 1986)).  The good-faith inquiry requires a bankruptcy court to ascertain

"whether [the] debtor is attempting to unreasonably deter and harass creditors or attempting to effect

a speedy, efficient reorganization on a feasible basis." *Id.* (citing *Arnold*, 806 F.2d at 939).  In order

to do so, the court should consider the totality of the circumstances when determining whether the

debtor acted in bad faith.  *Meadowbrook Inv'rs Grp. v. Thirtieth Place, Inc. (In re Thirtieth Place,*

*Inc.)*, 30 B.R. 503, 505 (BAP 9th Cir. 1983) (finding of bad faith "require[s] an examination of all

the particular facts and circumstances in each case").

In *St. Paul Self Storage Ltd. Partnership v. Port Authority of St. Paul (In re St. Paul Self*

*Storage Ltd. Partnership)*, 185 B.R. 580, 582-83 (BAP 9th Cir. 1995), the Ninth Circuit's

Bankruptcy Appellate Panel set forth a list of factors that might indicate whether a chapter 11 case

has been filed in bad faith for purposes of dismissal under section 1112(b):

1.    The debtor has only one asset;
2.    The debtor has an ongoing business to reorganize;
3.    There are any unsecured creditors;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4.    The debtor has any cash flow or sources of income to sustain a
plan of reorganization or to make adequate protection payments;
and

5.    The case is essentially a two-party dispute capable of prompt
adjudication in state court."[8]

*Id.*

Although section 1112(b)(4) of the Bankruptcy Code sets forth a list of examples that may constitute cause for dismissal, none is applicable here. Indeed, SLC does not allege otherwise. Instead, SLC contends that the Debtor's Chapter 11 Case should be dismissed for lack of "good faith" because it was commenced to "unreasonably deter and harass creditors" and is instead "an attempt . . . to achieve objectives outside the legitimate scope of the bankruptcy laws." Motion at 13, ll.2-4. Neither of these assertions is correct.

**1.    SLC Fails to Prove That the Debtor Filed the Chapter 11 Case to Obtain a Litigation Advantage**

SLC contends that the Chapter 11 Case should be dismissed because the Debtor filed the case for the primary purpose of obtaining a tactical litigation advantage. SLC, however, offers no evidence or colorable argument to support this allegation.

A chapter 11 case may be subject to dismissal if it was commenced primarily or solely to obtain a tactical litigation advantage. Further, "[w]here 'the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.'" *In re 15375 Memorial Corp.,* 589 F.3d 605 (3d Cir. 2009) at 625 (quoting *In re SGL Carbon Corp.,* 200 F.3d at 165).

In support of its allegations, SLC merely points to the timing of the bankruptcy filing in response to SLC's aggressive enforcement actions and its frustration in having to comply with the

---

[8] Although these five factors are not dispositive of whether a bankruptcy case has been filed in good faith, it is important to note that, when applied to the Debtor's Chapter 11 Case: (i) the Debtor has numerous assets, as set forth in his Schedules; (ii) the principal focus of the Debtor's Chapter 11 Case is to restructure his financial affairs and to assist in the reorganization and growth of FF, the business he founded and in which he holds indirect interests and remains heavily involved; (iii) there are billions of dollars of unsecured claims; (iv) the Debtor's restructuring is not dependent upon his personal income, but his interests in FF are being contributed to a creditor trust as contemplated in the Negotiated Plan; and (v) the case involves dozens of parties—it is far from a two-party dispute.

"automatic stay" provisions of the Bankruptcy Code to which all creditors are subject as a matter of law.[9]

SLC's assertions that the Debtor was not in need of "breathing room" are absurd in light of his enormous debt burden and SLC's actions prior to the Petition Date to impose a lien over the Debtor's personal property assets. The Debtor faces billions of dollars in personal obligations and enforcement actions; he needs to restructure his financial affairs to provide for the repayment of creditor claims. Filing this Chapter 11 Case to fulfill these legitimate purposes under the supervision of this Court was undertaken in good faith to benefit all parties.

Moreover, SLC's allegations that the Debtor commenced this Chapter 11 Case to avoid disclosing information regarding his assets and liabilities are nonsense: The chapter 11 bankruptcy process is predicated upon disclosure and transparency. The Debtor has filed his Schedules under penalty of perjury, as well as multiple drafts of a Disclosure Statement setting forth his financial information in detail. The Debtor has provided testimony at two meetings of creditors and two days of formal deposition by the Committee and one of its members, he has facilitated seven investigative interviews and provided access to multiple data rooms populated with thousands of pages of documents containing his and FF's financial and business information. He hosted two separate all-day meetings and presentations at FF, one for the Committee and its members, the other for all creditors, which were attended by dozens of creditors' representatives, most of whom traveled to Los Angeles from the PRC in order to participate. The Debtor has not in any way sought to use his Chapter 11 Case as a means of hiding information from this Court or creditors; any statement to the contrary is baseless.

---

[9] Contrary to the allegations in the Motion (15 at ll.10-12), the Debtor is not using the automatic stay as a "sword." Rather, the Debtor and his counsel have advised SLC as to the scope of the automatic stay and the consequences of a willful violation of the stay provisions in connection with ongoing enforcement proceedings by SLC, notwithstanding the commencement of the Chapter 11 Case. To the extent that SLC does not believe that the stay applies or that relief from the automatic stay is appropriate, it is entitled to seek such a determination from this Court. Invoking the breathing-spell provisions of the automatic stay, however, is not a prohibited "litigation tactic." This circumstance is wholly distinguishable from the "litigation tactic" cases cited by SLC in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2.      **The Debtor Had a Legitimate Bankruptcy Purposes for Commencing
His Chapter 11 Case**

The Debtor had valid bankruptcy purposes for seeking to restructure pursuant to chapter 11 of the Bankruptcy Code—the need to restructure his financial affairs to provide for the repayment of creditor claims, which total in the billions, and to preserve the value of his principal assets—his interests in Faraday's business.  Indeed, a cursory examination of the circumstances surrounding the filing of the Chapter 11 Case and the events that led up to the filing dispel any notion that the filing was made in bad faith.  Rather, faced with over $3.7 billion in debt and competing lawsuits from creditors in the U.S. and the PRC, the Debtor was left with no viable alternative other than to seek a restructuring of his financial affairs under chapter 11 of the Bankruptcy Code.  Had the Chapter 11 Case not been filed, SLC or another party asserting a lien on all of YT's personal property assets could have seized control of some of his assets solely for its benefit.[10]

SLC is severely misguided in its characterization of the Debtor's motives behind filing the Chapter 11 Case, and its effort to paint this case as a "two-party" dispute.  This case involves billions of dollars of creditor claims—with SLC's $12 million claim representing only a fraction of the total claim pool.   The Debtor's need to reorganize his financial affairs to provide for the payment of creditor claims under the circumstances is beyond question, and the Debtor's negotiations with the Committee and creditors regarding the terms of his Plan and the treatment of creditor claims thereunder is further evidence of the Debtor's good faith dealings with his creditors.

Indeed, the Debtor's active participation in pursuing a restructuring through the chapter 11 process is further indicative of his good faith in prosecuting this Chapter 11 Case.  Since the commencement of the Chapter 11 Case and the appointment of the Committee, the Debtor and his professionals have actively discussed and commenced negotiations with the Committee, its professionals, and other creditors concerning myriad issues affecting the restructuring of the Debtor's obligations, including the Plan and the treatment of creditors' claims thereunder.  For example, and as already noted above, in response to the Committee's request for documents, the Debtor established and continues to populate multiple data rooms containing documents requested

---

[10] SQ also purported to serve a judgment debtor examination order on the Debtor prior to the Petition Date.

by the Committee regarding the Debtor and FF.  The Debtor conducted an all-day meeting at Faraday with Committee members, certain individual creditors, Committee and Debtor professionals, and members of Faraday's management in order to provide an overview of Faraday's business operations and financial condition and to discuss the Plan.  Representatives of creditors (nearly all of whom traveled from the PRC) visited Faraday's headquarters for a separate, full day of meetings that included comprehensive presentations regarding Faraday's business operations and financial condition and sessions allowing creditors to ask questions and voice concerns regarding the Debtor's proposed restructuring.  Thirty-five creditor representatives and two representatives of the Committee participated in these meetings.  The Debtor facilitated the Committee's investigative interviews of seven witnesses to respond to the Committee's questions about the Debtor's financial affairs and FF's business operations and financial condition.  The Committee invited all of its members to participate in a two-day deposition of the Debtor:  A representative of the U.S. Trustee was in attendance at one day of that deposition.  The Debtor, the Committee, and certain creditors (including SLC) participated in a court-ordered mediation in an attempt to resolve the Debtor's disputes with each party in interest to his Chapter 11 Case who chose to participate.  The discussions among the Debtor, the Committee, and the mediator ultimately led to the resolution that would become the Negotiated Plan.

For the reasons set forth above, SLC's allegation that the Chapter 11 Case was filed primarily as a litigation tactic is, frankly, frivolous.   The Debtor had valid bankruptcy purposes for commencing his case and the "totality of the circumstances" surrounding this case categorically demonstrate that the Debtor should be permitted to avail himself of the benefits of the Bankruptcy Code to restructure his financial affairs for the benefit of all his creditors.

### 3.    The Debtor's Commencement of the Chapter 11 Case in the District of Delaware Does Not Constitute "Bad Faith"

SLC asserts that the commencement of the Chapter 11 Case in the District of Delaware constitutes an additional indication of "bad faith."  *See* Motion at 14:l.25 – 15:l.7.  To the contrary, the Debtor's Chapter 11 Case was properly filed because the Debtor's principal assets are his interests in two Delaware LLCs.

16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Venue of a chapter 11 case is governed by 28 U.S.C. § 1408, which provides, in relevant

2    part, as follows:

3    Except as provided in section 1410 of this title, a case under title 11 may be
     commenced in the district court for the district—

4

5    (1) in which the domicile, residence, principal place of business in the
     United States, *or principal assets in the United States*, of the person or
6    entity that is the subject of such case have been located for the one hundred
     and eighty days immediately preceding such commencement, or for a
7    longer portion of such one-hundred-and-eighty-day period than the
     domicile, residence, or principal place of business, in the United States, or
8    principal assets in the United States, of such person were located in any
     other district;
9

10   28 U.S.C. § 1408 (1) (emphasis added).

11   Section 1408 is phrased in the disjunctive.  A debtor need only meet one of the four venue

12   tests (domicile, residence, principal place of business in the United States, or principal assets in the

13   United States).  *See Broady v. Harvey (In re Broady)*, 247 B.R. 470, 472 (BAP 8th Cir. 2000)

14   (citing *In re Gurley*, 215 B.R. 703, 707–08 (Bankr. W.D. Tenn. 1997)); *In re Miller*, 433 B.R. 205,

15   211 (Bankr. W.D. Mich. 2010).  "'[T]he statute allows many possible locations where an entity or

16   individual may file for bankruptcy protection.'"  *See* 1 *Collier on Bankruptcy* ¶ 4.02[2][a] (16[th] ed.

17   2020) (quoting *Miller*, 433 B.R. at 211).  Thus, for example, if a debtor has its principal place of

18   business in one district and its principal assets in another, either district would be a proper venue.

19   *See id.  See also Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re*

20   *Commonwealth Oil Refining Co.),* 596 F.2d 1239, 1245 (5th Cir. 1979) ("*CORCO*") (interpreting

21   former Bankruptcy Rule 116 to have made it clear that "a debtor's principal place of business is not

22   necessarily at the same location as its principal assets," and that chapter 11 venue would properly lie

23   in either place); *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (Section

24   1408 "is written in the disjunctive, making venue proper in any of the listed locations."); *In re*

25   *Peachtree Lane Assocs.*, 206 B.R. 913, 917 (N.D. Ill. 1997) (stating with respect to venue under 28

26   U.S.C. § 1408, "[s]ince the test is in the alternative, venue may properly lie in more than one

27   district.").  "As a result, a debtor may select from any one of the five options in selecting a venue for

28   his bankruptcy filing."  *In re Acor*, 510 B.R. 588, 591 (Bankr. W.D. Tenn. 2014)(including a fifth

17

venue option arising from section 1408(2): "'the pendency of a bankruptcy case concerning the debtor's affiliate, general partner or partnership.'" (quoting *In re FRG, Inc.*, 107 B.R. 461, 468 (Bankr. S.D.N.Y. 1989)).[11]

For purposes of establishing venue based on the location of a debtor's principal assets, the inquiry boils down to a "simple determination" of where the greater dollar value of the debtor's U.S. assets are located.  *See e.g., Frank v. Neufeld (In re Neufeld)*, 2012 Bankr. LEXIS 5430, *4 (Bankr. M.D. Pa. Nov. 16, 2012) ("Although the term 'principal asset' is not defined by the Bankruptcy Code for venue purposes under 28 U.S.C. § 1408, the term 'principal' refers to an item of the 'first, highest or foremost in importance, rank, worth, or degree.'  Therefore, the analysis required is a simple determination of where the greater dollar value of all property of the estate is located." (quoting *Am. Heritage Dictionary* (4th ed. 2000)).

The Debtor here is an individual whose principal assets in the U.S. are (i) his interests in PTH, which are held through WC and (ii) the contractual right to contribute 10% of the shares of Smart King Ltd. (n/k/a FF Intelligent Mobility Global Holdings Ltd.) to a creditor trust pursuant to the PTH LLC Agreement.  PTH was formed on July 26, 2018, and WC has existed since July 31, 2019.  Based on the Schedules, the Debtor's economic interests in PTH, through the PTH Distributions Rights (held through WC), and the PTH Transfer Rights under the PTH LLC Agreement, have a combined value of over $1.1 billion (which represents approximately 84% of the value of the Debtor's assets as reported in the Schedules) and constitute the Debtor's material U.S. assets.[12]  The Debtor's interests in the LLCs and the contractual rights provided to the Debtor in the PTH LLC Agreement,[13] therefore, constitute his principal assets for purposes of venue under section 1408.

---

[11] Additionally, a debtor's choice of venue should be given deference by courts, as discussed in detail in section D below.

[12] As reflected in the Schedules, with the exception of $2.1 million in prepaid rent and *de minimis* cash in deposit accounts at Wells Fargo Bank and Bank of America (totaling approximately $67,000), the Debtor's other assets are non-U.S. assets located in the PRC.  The Debtor's assets located in the PRC have been frozen.  The Chapter 11 Case was commenced to implement a restructuring of the Debtor's U.S. assets and, as discussed below, is the appropriate forum in which to accomplish this legitimate purpose.

[13] The PTH Transfer Rights are provided to the Debtor through the PTH LLC Agreement, which is governed by Delaware law.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

For purposes of determining the location of principal assets as part of a venue determination, the location of a debtor's membership interests in a limited liability company is the state in which such limited liability company is registered; in this case, with respect to the LLCs, that state is Delaware. *See e.g., Montana Dep't of Revenue v. Blixseth (In re Blixseth)*, 484 B.R. 360, 370-71 (BAP 9th Cir. 2012) (holding that, for venue purposes, a debtor's principal assets consisting of intangible equity interests in a limited liability company and limited liability limited partnership were located in the state where they were formed, not in the state of the debtor's residence). *See also In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 37 (Bankr. D. Del. 2000) (the owner of stock in a corporation incorporated in Delaware has property in Delaware for purposes of satisfying section 109(a) of the Bankruptcy Code).[14] *Accord, In re Silicon Valley Innovation Co.,* 2012 Bankr. LEXIS 4034 (Bankr. N.D. Cal. Aug. 30, 2012) (stock of corporation located in state of incorporation, not state where it had its headquarters).

The Debtor's interests in the LLCs and the rights provided in the PTH LLC Agreement are his principal U.S. assets and these assets are located in the state in which the LLCs are registered— the state of Delaware. Consequently, venue of the Chapter 11 Case is proper in Delaware under 28 U.S.C. § 1408. Moreover, even if venue in Delaware somehow were improper (which it wasn't), "the more preferable alternative is a transfer of venue rather than dismissal by the improper forum," a transfer which already has occurred in this Chapter 11 Case. *In re Murrin*, 461 B.R. 763, 782 n.36 (Bankr. D. Minn.), *rev'd and remanded on other grounds*, 477 B.R. 99 ( D. Minn. 2012).

### 4. The Chapter 11 Case Before This Court Is Appropriate to Resolve Creditors' Claims Against the Debtor's U.S. Assets

SLC next asserts that the Chapter 11 Case should be dismissed based on principles of "comity," asserting that this Court should be prohibited from exercising jurisdiction over foreign

---

[14] *Global Ocean* concerned the issue of whether Global Ocean, the debtor, was eligible to file a case under section 109(a) of the Bankruptcy Code. Section 109(a) provides that "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109. The "property" referred to in section 109(a) constitutes "principal assets" under 28 U.S.C. § 1408. *See* Committee on Structured Finance and the Committee on Bankruptcy & Corporate Reorganization of the Association of the Bar of the City of New York, *Special Report on the Preparation of Substantive Consolidation Opinions*, 64 Bus. Law. 411, 418–19 (2009) (citing to both sections 109(a) and 1408 for the rule that "[a]n entity may be a debtor under U.S. bankruptcy law if it has its domicile, a place of business, or assets in the United States."). Therefore, notwithstanding the court's determination in the context of section 109(a), the *Global Ocean* holding is applicable to determining whether venue is proper under section 1408.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

1    creditors' claims against a debtor's U.S. assets and must, therefore, simply dismiss the U.S.

2    bankruptcy proceeding.  Notably, SLC is unable to point to any authorities standing for such a

3    sweeping proposition, and the cases cited by SLC are fundamentally distinguishable from the

4    situation presented here.  Moreover, SLC's contentions drip with irony:  Iasks a U.S. bankruptcy

5    court to decline jurisdiction over the Debtor's U.S. assets so that, upon dismissal, it can utilize a

6    different U.S. court to enforce its lien on the Debtor's U.S. assets.

7            The Chapter 11 Case is not intended to resolve creditors' claims against the Debtor's non-

8    U.S. (PRC) assets.  The purpose of the Chapter 11 Case is to restructure the Debtor's U.S. holdings

9    and to provide for the payment of creditors' claims (wherever they are based) from the trust

10    established pursuant to the Plan.  The fact that the holders of claims against U.S. assets are

11    predominantly Chinese is of no import.  There can be no dispute that this Debtor has valuable U.S.

12    assets, and that the existence of these assets establish his eligibility as a chapter 11 debtor under

13    Bankruptcy Code section 109.[15]

14            Indeed, even assuming that the PRC had a bankruptcy scheme that would provide the Debtor

15    with an adequate means to address his financial difficulties—*which, as acknowledged by SLC, it*

16    *does not*[16]—the Debtor would have needed to commence a separate proceeding under chapter 15 of

17    the Bankruptcy Code in order to address his U.S. assets.  Because there is not, and cannot be, a main

18    proceeding in the PRC to which a chapter 15 case relates, a chapter 11 filing to address the

19    disposition of the Debtor's U.S. assets is necessary and proper.  The principals of "comity" urged by

20    SLC simply do not come into play under these circumstances.

21            Indeed, the principals of comity urged by SLC are not applicable where there is no

22    comprehensive procedure for the orderly marshalling and equitable distribution of a foreign debtor's

23    ───────────────

24    [15] Section 109(a) of the Bankruptcy Code sets for the requirements for commencing a case under title 11 as follows:  (a)
Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or
property in the United states, or a municipality, may be a debtor under this title.  11 U.S.C. § 109(a).  *See In re Northshore*

25    *Mainland Servs.*, 537 B.R. 192, 200 (Bankr. D. Del. 2015) ("Courts construing the 'property' requirement of § 109 to
foreign corporations [and] individuals have determined that the eligibility requirement is satisfied by even a minimal

26    amount of property to be located in the United States.").  *Accord, GMAM Inv. Funds Trust I v. Globo Comunicacoes e
Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.*), 317 B.R. 235, 250 (S.D.N.Y. 2004) (to qualify as a

27    debtor under section 109," courts have required only nominal amounts of property to be located in the United States, and
have noted that there is 'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy

28    proceedings.").
[16] Motion at 18, l.9.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

assets.  *See e.g., In re Suntech Power Holdings Co.,* 520 B.R. 399, 405-06, 419 (Bankr. S.D.N.Y. 2014) (citing to testimony that "China has different concepts of the rules of law and creditors' rights compared to those in the Cayman Islands and the United States; it is the last place that one would go.").  The decisions cited in the Motion that address the principles of "comity" uniformly do so in the context of competing insolvency regimes, including in the context of recognition of a pending main foreign proceeding under chapter 15 of the Bankruptcy Code—a situation not present here. *See e.g., Northshore Mainland Servs,* 537 B.R. at 207 (Bankr. D. Del. 2015) (dismissing the chapter 11 cases of several Bahamian entities subject to winding up proceedings in the Bahamas, but denying dismissal as to the Delaware incorporated debtor that was not the subject of the foreign bankruptcy proceeding); *In re Irish Bank Resolution Corp. Ltd.,* 2014 Bankr. LEXIS 1990, **40-41(Bankr. D. Del. April 30, 2014) (granting recognition under chapter 15 of a pending Irish liquidation proceeding and finding no conflict with the Irish proceeding and the laws of the United States), *aff'd,* 538 B.R. 692 (D. Del. 2015); *In re Maxwell Commun. Corp. PLC*, 93 F.3d 1036 (2d Cir. 1996) (case involved cooperative parallel bankruptcy proceedings in England and the United States; court found that the doctrine of international comity precluded application of the American avoidance law to transfers in which England's interest had primacy).

Further, the decisions cited by SLC cut against its argument for dismissal because, in contrast to this case, all of them involve a parallel insolvency proceeding.  *See e.g., Northshore Mainland*, 537 B.R. at 207-08 ("[t]he pendency of a foreign insolvency proceeding alters the balance by introducing considerations of comity into the mix."); *Arcapita Bank v. Bahrain Islamic Bank (In re Arcapita Bank),* 575 B.R. 229, 241 (Bankr. S.D.N.Y. 2017) (international comity decisions primarily emphasize the doctrine's bankruptcy significance in the context of parallel insolvency proceedings; questioning dismissal of an adversary action based on principals of comity where there is no parallel foreign proceeding, and hence no counterpart for obtaining relief under foreign law).

SLC's argument boils down to the following:  Because the PRC does not provide insolvency protections for individuals, an individual debtor with U.S. assets is left without options vis-à-vis the restructuring of his U.S. assets simply by virtue of the existence of foreign creditors.  This is not, and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  cannot be, the case.[17]  The Debtor is entitled to restructure his U.S. holdings under the Bankruptcy

2  Code and provide for the payment of the claims of his creditors from such assets.

3      There is no evidence that the Debtor is in any way using the chapter 11 restructuring

4  process to avoid his obligations to or to alter the priorities of the claims against him.  Rather, the

5  Debtor filed under chapter 11 of the Bankruptcy Code and proposed the Plan as a means of

6  satisfying the claims of his creditors.  The Debtor fully intends to comply with all applicable laws

7  in seeking approval of the Plan.[18]

8      SLC's attempt to "cherry pick" language from the cases cited in the Motion to support

9  dismissal of the Debtor's chapter 11 case is unavailing.  These cases involve, at their essence,

10  attempts by foreign debtors to escape liabilities or alter creditor priorities—i.e., to use the U.S.

11  bankruptcy laws to avoid or alter obligations to creditors in their home country.  This is, however,

12  not the case here.  The Debtor needs (and is entitled to) a forum in which to restructure and address

13  the repayment of creditor claims *from his U.S assets*.

14      For example, in *Yukos Oil*, the debtor had no assets in, connections to, or business in the

15  United States prior to commencing its chapter 11 case.  *See In re Yukos Oil Co.,* 321 B.R. 396,

16  411 (Bankr. S.D. Tex. 2005).   In addition, an officer of the company in *Yukos* fled to the United

17  States to file for chapter 11 protection to prevent the Russian government from nationalizing and

18  selling off certain of the debtor's substantial assets following litigation that the company had lost and

19  was appealing.  *Id.* at 402.  In essence, the bankruptcy filing was a litigation tactic to avoid a

20  government edict.  As the *Yukos Oil* court found, Yukos was not seeking a financial restructuring.

21  *Id.* at 411.  Moreover, the court determined that the debtor commenced its chapter 11 case with the

22

23  [17] *See, e.g., Frictionless World, LLC*, No. 19-18459 (Bankr. D. Colo.); *Tatung Company of America*, No. 19-21521
(Bankr. C.D. Cal.); *Forever 21, Inc.*, No. 19-12122 (Bankr. D. Del.); *GCX Limited*, No. 19-12031 (Bankr. D. Del.); *Mad
24  Dogg Athletics*, No. 19-18730 (Bankr. C.D. Cal.); *Hollander Sleep Products,* No. 19-11608 (Bankr. S.D.N.Y.); *Payless
Holdings*, No. 19-40883 (Bankr. E.D. Mo.); *Gymboree Group*, No. 19-30258 (Bankr. E.D. Va.); *Nine West Holdings*,
25  18-10947 (Bankr. S.D.N.Y.); *Gymboree Corp.*, No. 17-32986 (Bankr. E.D. Va.): *Pacific Andes International Holdings
(BVI) Limited, No. 17-11021* (Bankr. S.D.N.Y.); *EMAS Chiyoda Subsea Limited*, No. 17-31146 (Bankr. S.D. Tex.);
26  *ValuePart, Inc.*, No. 16-34169 (Bankr. N.D. Tex.); *Pacific Andes International Holdings Limited (Bermuda)*, No. 16-
11890 (Bankr. S.D.N.Y.); *China Fishery Group Limited Cayman*, No. 16-11895 (Bankr S.D.N.Y.)(U.S. debtors with all
27  or mostly foreign creditors on list of creditors holding largest general unsecured claims).
[18] Moreover, contrary to SLC's allegations, the Debtor will provide translations of the final Negotiated Plan and
28  Disclosure Statement in Chinese.  The Debtor will continue to take all reasonable steps to provide information to his
creditors in a manner designed to reduce confusion and will work with the Committee to implement appropriate
processes and procedures in this regard.

1    intent of avoiding obligations and altering creditor priorities (i.e., its obligations to the government),

2    which is not the case here.  Here, the Debtor owns assets and has property interests in the United

3    States, thereby affording this Court in rem jurisdiction over such assets and interests.  There is a

4    significant difference between the situation described in *Yukos Oil* and this case.  Here, the Debtor

5    commenced his Chapter 11 Case to restructure his financial affairs and intends to satisfy his

6    obligations to his creditors from his U.S. assets (and has already filed a Plan providing for the

7    treatment of such claims).

8        Similarly, *In Spanish Cay Co.*, 161 B.R. 715, 726 (Bankr. S.D. Fla. 1993), the court

9    determined that it could not prevent Bahamian citizens and governmental agencies from proceeding

10    with their claims against the debtor's assets in the Bahamas.  In making its determination, the court

11    in *Spanish Cay* drew a distinction between its ability to exercise jurisdiction over U.S. assets, and the

12    situation it faced—where the foreign debtor sought to restructure real property located in a foreign

13    jurisdiction.  *Id.  Accord, Globo Comunicacoes*, 317 B.R. at 250, n.9 (bankruptcy courts have in rem

14    jurisdiction over property of the estate wherever located and by whomever held, but recognizing that

15    that a bankruptcy court may face issues with respect to jurisdiction and compliance with orders

16    relative to non-U.S. assets).  *See also In re Mak Petroleum, Inc.*, 424 B.R. 904, 905 (Bankr. M.D.

17    Fla. 2010) (a bankruptcy proceeding will not provide jurisdiction over a foreign party that has no

18    contacts with the United States; court dismissed action by chapter 7 trustee to recover a deposit made

19    by the debtor to a Canadian church that had no contacts with the United States).   These decisions do

20    not address a circumstance where the debtor seeks bankruptcy protection to restructure his U.S.

21    assets, as is the case here.  Moreover, the Debtor is not asking this Court to exercise in rem

22    jurisdiction over his assets located in the PRC which are subject to freeze orders from Chinese

23    courts.

24        Other decisions cited by SLC in the Motion simply stand for the relatively noncontroversial

25    proposition that a U.S. bankruptcy court will not relitigate the merits of a claim that has been

26    resolved in a foreign proceeding.  *See e.g., Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512 (2d Cir.

27    1975) (holding that a foreign arbitral award was a valid determination on its merits and the merits of

28    the claim would not be reviewed by the bankruptcy court overseeing the U.S. bankruptcy

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

proceeding; Japanese claimant, following confirmation of foreign arbitral award by judgment, was

entitled to file a proof of claim against the debtor in the U.S. bankruptcy case).  *See also Ackerman*

*v. Levine*, 788 F.2d 830 (2d Cir. 1986) (partially recognizing German default judgment); *Hilton v.*

*Guyot*, 159 U.S. 113, 164 (1895) (addressing degree to which a foreign judgment is conclusive in a

court of the United States).  These decisions provide no basis whatsoever for this Court to decline to

exercise jurisdiction over the Debtor's Chapter 11 Case based on notions of "deference" or

"comity," especially where the PRC provides no bankruptcy alternative for an individual debtor.

Chapter 11 is a well-trodden path that has been used by countless debtors that have assets in

the United States to reorganize their financial affairs.  Indeed, chapter 11 presents the best available

forum for the Debtor to restructure his financial affairs.  SLC has failed to establish that

considerations of comity provide any grounds for dismissal of the Chapter 11 Case.

**B.      The Interests of All Other Creditors (Other Than SLC) Would Not Be Served By Dismissing the Chapter 11 Case Pursuant to Section 305(a)(1) of the Bankruptcy Code**

SLC also asserts that the case should be dismissed under section 305(a)(1) of the Bankruptcy

Code because the interests of creditors and the Debtor would be better served by dismissal.  Both are

extraordinary forms of relief, and SLC has failed to meet its considerable burden to demonstrate that

dismissal under either section of the Bankruptcy Code is warranted.

As described above, section 1112(b) of the Bankruptcy Code requires that, regardless of

whether cause exists to dismiss a case (which cause is absent here here), a court may only dismiss

the case if doing so is in the best interests of creditors and the estate.  *See* 11 U.S.C. § 1112(b).

Similarly, section 305(a)(1) of the Bankruptcy Code grants courts the authority to forgo the

exercise of appropriate jurisdiction and dismiss or suspend proceedings in a case if "the interests of

creditors and the debtor would be better served by such dismissal or suspension."  11 U.S.C.

§ 305(a)(1).  The moving party bears the burden to demonstrate that dismissal or suspension

benefits the debtor and its creditors.  *See RHTC Liq. Co. v. Union Pac. R.R. (In re RHTC*

*Liq. Co.),* 424 B.R. 714, 720-721 (Bankr. W.D. Pa. 2010); *In re Monitor Single Lift I, Ltd.,* 381

B.R. 455, 462-63 (Bankr. S.D.N.Y. 2008).  However, given that dismissal or suspension under

section 305(a)(1) of the Bankruptcy Code is an extraordinary remedy with limited appellate

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

review, courts sparingly exercise such power. S*ee* 11 U.S.C. § 305(c); *In re Schur Mgmt. Co.,* 323 B.R. 123, 129 (Bankr. S.D.N.Y. 2005); *In re Corino,* 191 B.R. 283, 287 (Bankr. N.D.N.Y. 1995); *In re Luftek, Inc.,* 6 B.R. 539, 548 (Bankr. E.D.N.Y. 1980) ("There is an inherent risk to our system of jurisprudence in any Act of Congress which gives the court such broad powers to refuse jurisdiction over a case.").

The statutory language and the legislative history make clear that "the test under § 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors dismissal. Rather, the test is whether both the debtor *and* the creditors would be 'better served' by a dismissal." *Eastman v. Eastman (In re Eastman),* 188 B.R. 621, 625 (BAP 9th Cir. 1995) (reversing order dismissing case under section 305(a)(1) of Bankruptcy Code because lower court employed balancing test and failed to determine that dismissal was in best interest of debtor as well as creditors). Given the standard that must be met by a moving party under section 305(a) (1) of the Bankruptcy Code, it is not surprising that few fact patterns fall within the section. Indeed, the "legislative history indicates that the provision was designed to be utilized where, for example, a few recalcitrant creditors attempted to interfere with an out-of-court restructuring that had the support of a significant percentage of the debtor's creditors." *In re Bd. of Dirs. of Multicanal S.A.,* 314 B.R. 486, 522 (Bankr. S.D.N.Y. 2004) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 325 (1977); S. Rep. No. 95–989, 95th Cong., 2d Sess. 35 (1979)); *In re Wine & Spirits Specialties of Kansas City, Inc.,* 142 B.R. 345, 346-47 (Bankr. W.D. Mo. 1992)). In fact, some courts have limited the application of section 305(a)(1) of the Bankruptcy Code to involuntary cases. *See Monitor Single Lift*, 381 B.R. at 464 (noting that section 305(a) case law is "dominated by cases concerning involuntary petitions filed by creditors"). Even if, however, section 305(a)(1) of the Bankruptcy Code were to apply here, SLC still has failed to satisfy its substantial burden of proving that the Debtor and his creditors' interests would be better served by the dismissal of the case.

As discussed herein, the Debtor had a valid bankruptcy purpose for filing his Chapter 11 Case—reorganizing his financial affairs to provide for the restructuring of over $3.7 billion in scheduled creditor claims. The case was not, contrary to SLC's assertions, commenced as a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    litigation tactic or to prejudice creditors' rights.   To the contrary, had the Debtor not filed the

2    Chapter 11 Case, SLC would have sought to enforce its lien and seize the Debtor's assets in order to

3    repay its relatively small debt and in the process destroy any value available for other creditors.

4        Instead, the Debtor commenced his bankruptcy case after considering the best interests of

5    *all* parties.  SLC is not the only party in interest in this Chapter 11 Case and the case does not

6    represent a two-party dispute.  There are numerous creditors holding billions of dollars of claims that

7    will benefit from the Debtor's restructuring of his affairs for the purpose of satisfying his

8    obligations.  Indeed, chapter 11 of the Bankruptcy Code provides the most appropriate forum to

9    achieve a successful restructuring of the Debtor's financial affairs.

10        By contrast, SLC has failed to substantiate its contention that a dismissal of the Debtor's

11    bankruptcy case is in the best interests of all creditors.  Instead, if the Chapter 11 Case were

12    dismissed, there would be no alternative available to the Debtor to restructure his U.S. assets and

13    provide for the treatment of creditors' claims as contemplated by the Plan.  Although this "free-for-

14    all" alternative may well provide a benefit to SLC, because SLC would seek to enforce its lien, it

15    would significantly impact the value of the Debtor's assets and would thus provide no guarantee that

16    general unsecured creditors would be paid anything at all.  *See* Transcript of Hearing at 15, *In re*

17    *Scrub Island Dev. Grp. Ltd.,* No. 12-15285 (Bankr. M.D. Fla. Dec. 6, 2013) (refusing to dismiss

18    chapter 11 cases in favor of foreign liquidation proceeding and finding that such proceeding "would

19    be directly contrary to the interests of the [d]ebtor[s] and every creditor in th[e] case, other than [the

20    debtors' major secured creditor]").  In light of the foregoing, it is obvious that SLC is only

21    considering its own self-interests in complete disregard of the best interests of the other creditors

22    of the Debtor's estate.

23        Further, dismissal would result in the disbandment of the Committee, thereby removing the

24    one entity specifically tasked with safeguarding the interests of the Debtor's general unsecured

25    creditors.  As a result, individual general unsecured creditors would no longer have the benefit of the

26    Committee's ability to investigate claims against and interests in the Debtor's property and assets

27    and to negotiate with the Debtor with respect to the terms of the Plan on their behalf.

28

1    The Debtor and all his other creditors are clearly better off with this Court overseeing the

2    restructuring of his U.S. assets.

3                                                    **IV.**

4                                            **<u>CONCLUSION</u>**

5    WHEREFORE, the Debtor respectfully requests that the Court enter its order (a) denying the

6    Motion and (b) granting the Debtor such other and further relief as is just and proper.

7

8    Dated:  March 3, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

9

10                                        By: _____*/s/Malhar S. Pagay*_____
                                                Richard M. Pachulski
11                                              Jeffrey W. Dulberg
                                                Malhar S. Pagay
12
                                             Attorneys for Debtor and Debtor in Possession
13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **DEBTOR'S OPPOSITION TO MOTION TO DISMISS THE DEBTOR'S CHAPTER 11 CASE BY CREDITOR SHANGHAI LAN CAI ASSET MANAGEMENT CO, LTD.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 3, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)_____**,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 3, 2020,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
United States Bankruptcy Court
Central District of California
Attn:  Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 3, 2020 | Sophia L. Lee | /s/ Sophia L. Lee |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

DOCS_LA:327335.1 46353/002

**F 9013-3.1.PROOF.SERVICE**

**SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ**

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jerrold L Bregman    ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan    blogan@omm.com
- David W. Meadows    david@davidwmeadowslaw.com
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                             **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:327335.1 46353/002