Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:   rpachulski@pszjlaw.com
            jdulberg@pszjlaw.com
            mpagay@pszjlaw.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>YUETING JIA,[1]<br><br>                        Debtor. | Case No.: 2:19-bk-24804-VZ<br><br>Chapter 11<br><br>**REQUEST FOR JUDICIAL NOTICE OF YUETING JIA IN SUPPORT OF DEBTOR'S OPPOSITION TO DISMISS DEBTOR'S CHAPTER 11 CASE BY CREDITOR SHANGHAI LAN CAI ASSET MANAGEMENT CO., LTD.**<br><br>[Relates to Docket Nos. 358 and 359]<br><br>Date:        March 19, 2020<br>Time:        9:30 a.m.<br>Place:        United States Bankruptcy Court<br>                255 E. Temple Street<br>                Los Angeles, California 90012<br>Courtroom: 1368<br>Judge:        Hon. Vincent P. Zurzolo |

Yueting Jia (the "<u>Debtor</u>"), by and through his attorneys, requests the Court to take judicial

notice, pursuant to Federal Rules of Evidence, Rule 201, of the following exhibits in support of the

*Debtor's Opposition to Motion by Creditor Shanghai Lan Cai Asset Management Co., Ltd. To*

*Dismiss Debtor's Chapter 11 Case*, filed March 3, 2020.  **Exhibits "1"** and **"2"** are Domestic Public

---

[1] The last four digits of the Debtor's federal tax identification number are 8972.  The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA  90275.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Documents that are Sealed and Signed and, accordingly are self-authenticating pursuant to Federal Rule of Evidence 902(1) and thus proper for judicial notice per Federal Rules of Evidence, Rule 201. Exhibits 3 and 4 are official public judicial record of the U.S. Bankruptcy Court for the Central District of California and thus proper for judicial notice per Federal Rules of Evidence, Rule 201. Further, this public record, a filing of the federal bankruptcy court, is self-authenticating. FRE 901(b)(7), 1005.

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | Certified Copy of Certificate of Formation of Pacific Technology Holding LLC |
| 2 | Certified Copy of Certificate of Formation of West Coast LLC |
| 3 | Relevant page of Schedules and Statement of Financial Affairs of Yueting Jia filed in the United States Bankruptcy Court for the Central District of California Case No. 19-bk-24804-VZ at Docket No. 28 |
| 4 | Proof of Claim No. 51 filed by Shanghai Lan Cai Asset Management Co., Ltd. |

Dated: March 3, 2020                    PACHULSKI STANG ZIEHL & JONES LLP


By    */s/ Malhar S. Pagay*
      Richard M. Pachulski
      Jeffrey W. Dulberg
      Malhar S. Pagay

      Attorneys for Debtor and Debtor in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# Exhibit 1

# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF FORMATION OF "PACIFIC TECHNOLOGY
HOLDING LLC", FILED IN THIS OFFICE ON THE TWENTY-SIXTH DAY OF
JULY, A.D. 2018, AT 3:07 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

6979576  8100
SR# 20201721364

Authentication: 202484173
Date: 02-28-20

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered  03:07 PM 07/26/2018
FILED  03:07 PM 07/26/2018
SR 20185862545  - File Number  6979576

## CERTIFICATE OF FORMATION

### OF

## PACIFIC TECHNOLOGY HOLDING LLC

This Certificate of Formation of Pacific Technology Holding LLC (the "Company"), dated July 26, 2018, is being duly executed and filed by Miao Zhang, as an authorized natural person, for the purpose of forming a limited liability company under the provisions and subject to the requirements of the Delaware Limited Liability Company Act (6 Del. C. §18-101, *et. seq.*).

FIRST, the name of the limited liability company formed hereby is Pacific Technology Holding LLC.

SECOND, the name and address of the registered agent for service of process on the Company in the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, New Castle County, Wilmington, Delaware 19801.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

ACTIVE 232832091

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation as of the date first above written and submits it for filing in accordance with Section 18-201 of the Delaware Limited Liability Company Act.

/s/ Miao Zhang
Miao Zhang
Authorized Person

# Exhibit 2

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF FORMATION OF "WEST COAST LLC", FILED
IN THIS OFFICE ON THE TWENTY-THIRD DAY OF JULY, A.D. 2019, AT
4:56 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

7527832  8100
SR# 20201721437

Authentication: 202484185
Date: 02-28-20

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:56 PM 07/23/2019
FILED 04:56 PM 07/23/2019
SR 20196115988 - File Number 7527832

# CERTIFICATE OF FORMATION
## OF
## WEST COAST LLC

1.  The name of the limited liability company is West Coast LLC.

2.  The address of its registered office in the State of Delaware is 1209 Orange Street, Wilmington, Delaware 19801.  The name of its registered agent at such address is The Corporation Trust Company.

**IN WITNESS WHEREOF**, the undersigned has executed this Certificate of Formation on this 23rd day of July, 2019.

*/s/ Lian Bossert*
Lian Bossert
Authorized Person

# Exhibit 3

| Debtor 1 | Yueting Jia | | | Case number (if known) | 19-12220 (KBO) |

*Based on share price prior to cessation of trading on April 26, 2019

| | | | |
|---|---|---|---|
| West Coast LLC (6.16% of Smart King Ltd) | 100 | % | $862,241,246.67[3] |
| Pacific Technology Holding (10% holdings of Smart King Ltd) | Per agreement | % | $320,000,000.00[4] |
| LeLe Holdings Ltd. | 100 | % | Unknown |
| Ford Field International Limited | 100 | % | Unknown |
| Champ Alliance Holdings Limited | 100 | % | Unknown |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
   ☑ No
   ☐ Yes. Give specific information about them
                    Issuer name:

21. **Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
   ☑ No
   ☐ Yes. List each account separately.
           Type of account:          Institution name:

22. **Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ☐ No
   ☑ Yes. ....................
                                    Institution name or individual:

| | | |
|---|---|---|
| Pre-paid rent:<br>7 Marguerite Drive,<br>Rancho Palos Verdes, CA<br>90275;<br>11 Marguerite Drive,<br>Rancho Palos Verdes, CA<br>90275;<br>15 Marguerite Drive,<br>Rancho Palos Verdes, CA<br>90275;<br>19 Marguerite Drive,<br>Rancho Palos Verdes, CA<br>90275;<br>and 91 Marguerite Drive,<br>Rancho Palos Verdes, CA | Ocean View Drive Inc. | $2,102,905.40 |

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
   ☑ No
   ☐ Yes.............    Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
   ☑ No
   ☐ Yes.............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

[3]Based on valuation of Smart King Ltd. after December 21, 2018 Restructuring Agreement with Evergrande Health Industry
   Group.
[4]Based on valuation of Smart King Ltd. after December 21, 2018 Restructuring Agreement with Evergrande Health Industry
   Group.

# Exhibit 4

Fill in this information to identify the case:

Debtor 1    Yueting Jia

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Central District of California

Case number  2:19-bk-24804-VZ

Filed: USBC - Central District of California
Yueting Jia  (B10)
19-24804 (VPZ)

YT1                    0000000051

RECEIVED
JAN 2 4 2020
LEGAL SERVICES

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Shanghai Lan Cai Asset Management Co, Ltd.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Kobre & Kim LLP
Name

800 Third Avenue
Number     Street

New York          NY          10022
City              State         ZIP Code

Contact phone  +1 212 488 1200

Contact email  daniel.saval@kobrekim.com

Where should payments to the creditor be sent? (if different)

Name

Number     Street

City              State

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
        MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**    $ _____ 12,711,983.98 . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Judgment in Shanghai Lan Cai Asset Management Co, Ltd. v. Jia Yueting [18-10255] (C.D. Cal.) recognizing arbitral award in respect of Jia's personal guarantee on loan extended by creditor to LeTV. Relevant documents attached as exhibits.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: The service of the order of the debtor's examination pursuant to Cal. Civ. P. C, s 708.110(d) _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ ___ Unknown

Amount of the claim that is secured:    $ ___ 12,711,983.98

Amount of the claim that is unsecured:   $ _____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ ___ 12,711,983.98

Annual Interest Rate (when case was filed) 2.41 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:                                                                    Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under
 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                                               $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for
 personal, family, or household use. 11 U.S.C. § 507(a)(7).                           $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the
 bankruptcy petition is filed or the debtor's business ends, whichever is earlier.
 11 U.S.C. § 507(a)(4).                                                               $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).              $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).                  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.                 $ _____

 * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it.
FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/21/2020
                    MM / DD / YYYY

/s/ Dong Ni (Donna) Xu
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Dong (Donna) | Ni | Xu |
|------|------|------|------|
|  | First name | Middle name | Last name |

Title    Associate Attorney

Company    Kobre & Kim LLP
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    800 Third Avenue
           Number    Street
           New York                          NY        10022
           City                              State     ZIP Code

Contact phone    +1 646 453 1147          Email    donna.xu@kobrekim.com

# Exhibit 1 – Itemized List of Claim Amount

The items included in Shanghai Lan Cai Asset Management Co., Ltd.'s claim of $ 12,711,983.98
are as follow:

$ 12,414,379.10  Principal,

$ 297,604.88    Interest.

# Exhibit 2 – Repurchase Guarantee Agreement

合同编号：XYJK-2016003-05-HGDB

# 回 购 担 保 协 议

合同签订地：北京

甲方：上海懒财资产管理有限公司

乙方：乙方一：乐视控股（北京）有限公司

乙方二：贾跃亭

丙方：乐视体育文化产业发展（北京）有限公司





鉴于：

1、丙方已自 LETV SPORTS CULTURE DEVELOP（HONG KONG）Co. Limited 受让标的收益权（定义见《收益权凭证》），且丙方与甲方于 2016 年__12_月_1_日签订编号为 XYJK-2016003-01-JKHT 的《借款合同》（包括其附件《委托管理暨融资服务合作协议》），丙方将标的收益权再转让予甲方并设立托管安排，由甲方为丙方提供短期流动性借款；

2、乙方一同意并承诺，为以上丙方与甲方之间的借款承担不可撤销的连带保证责任和回购义务；乙方二同意并承诺以个人身份为乙方一上述义务承担无限连带责任；

3、在乙方（包括乙方一和乙方二，下同）同意并承诺为丙方提

合同编号：XYJK-2016003-05-HGDB

供回购和担保的前提下，甲方同意为丙方提供流动性借款；

4、为确保丙方按甲方与丙方签订的《借款合同》的约定偿还甲方的借款，乙方同意对丙方于《借款合同》项下义务（包括但不限于丙方不履行或履行不符合《借款合同》约定）向甲方提供不可撤销连带责任担保。

根据《中华人民共和国合同法》和有关法律法规之规定，经协议各方公平、自愿、平等协商，各方一致同意按以下条款签订本协议。

一、有关用词定义

1、回购：指当满足本协议约定的条件时，甲方向乙方发出书面《回购通知书》，乙方应在收到甲方发出的回购标的收益权通知之日起十日内依约向甲方支付回购价款，履行回购义务。

2、权益及分销权：丙方与 NBA Hong Kong Operations Limited 签订，授权赛事包括：2016/17 赛季 – 2020/21 赛季 NBA 常规赛（平均每天 2 场）、全部季后赛和总决赛赛事、全部全明星周末内容、季前赛（每赛季最多 14 场）以及 VR 和 AR 节目（每赛季至少一场赛事由乐视体育现场制作，在 NBA 官方协助下）。授权平台为 OTT 服务、PC 端和移动端；授权地域为香港和澳门（香港可开发商业场所、住宅和个人用户；澳门仅限开发住宅和个人用户）。此合约前三年，NBA 保留授权给一家免费第三方平台每周直播一场 NBA 比赛（不包含全明星赛、分区决赛和总决赛）的权利，此比赛可点播，但这场比赛需是当周的第二级别选择赛事。

此版权原值 112,000,000.00 美元，摊销期限自 2016 年 10 月至 2021 年 6 月共计 57 个月，截至 2016 年 10 月 31 日摊销明细如下：

| 原值（美元） | 摊销年限（月） | 月摊销额（美元） | 累计摊销额（美元） | 净值（美元） |
|---|---|---|---|---|
| 112,000,000.00 | 57.00 | 1,964,912.28 | 1,964,912.28 | 110,035,087.72 |

3、回购价款：丙方尚未清偿的所有借款、《借款合同》项下尚未清偿的本金、利息、罚息、逾期利息、复利和丙方应付违约金、甲方实现债权的其它费用等（包括但不限于律师费、诉讼费、差旅费）；货物的所有权或价值遭到的侵害或损失。

**二、担保方式、期间和范围**

1、担保方式

（1）乙方提供的担保方式为连带责任担保，当丙方没有履行或者没有全部履行其在《借款合同》下债务时，甲方有权直接要求乙方承担担保责任。

（2）如果有其他保证人对《借款合同》债权提供担保的，担保人之间关系为连带共同担保。

（3）如果存在其它担保方式对《借款合同》债权提供担保的，甲方要求乙方承担担保责任时，乙方必须履行担保义务，不得以存在其他担保方式为由对债权进行抗辩。

（4）如果全部或部分借款由丙方清偿以后，发生丙方破产被清算或者其它诉讼、仲裁事项，而根据法律规定或者依据有效判决、裁

定书该全部或部分清偿无效，乙方仍应对该全部或部分应付款项承担担保义务。

2、担保期间

（1）丙方履行《借款合同》项下债务期限为12个月，具体起始日期和终止日期由《借款合同》确定。

（2）担保期间为两年，自被担保债务清偿期限届满之日起开始起算。

3、乙方担保的范围是丙方没有按照《借款合同》的约定履行义务，给甲方造成的损失，包括：

（1）丙方未按照《借款合同》的约定按时、足额缴纳本金、利息、罚息、保险费、保证金、赔偿金以及丙方应支付的其它费用；

（2）权益及分销权的所有权或价值遭到损害。

（3）甲方为实现以上权益而支出的全部费用，包括但不限于律师费、诉讼费、差旅费等。

三、回购方式

1、当回购条件成立时，甲方向乙方发出书面《回购通知书》。自《回购通知书》发出之日起的十日内由乙方向甲方一次性支付全部回购价款。

2、回购条件：

出现《借款合同》规定的借款到期事由（包括正常到期和提前到期）之时，具体按借款合同约定，包括但不限于：丙方延迟支付利息

或本金，而使得甲方债权到期未能及时收回，丙方根据约定向甲方支付罚息后、逾期 15 日仍未履行或者未全部履行的；丙方可能被依法宣告破产、解散、清算的。满足前述任一情形，回购条件即成立。回购条件的成立与协议所指权益及分销权的状况如何无关（包括但不限于丢失、毁损等）。

3、当乙方履行完回购义务后，甲方应将权益及分销权相应权益转让(包括所有权)给乙方一。双方明确同意：鉴于权益及分销权在丙方的实际占有控制下，而甲方又无法对权益及分销权实施有效监控，甲方不向乙方作实物交付，甲方仅以向乙方交付权益及分销权债权转让通知和配合乙方办理转移手续的形式向乙方交付权益及分销权。甲方应配合乙方办理本协议项下权益及分销权回购的全部手续并承担标的收益权变更产生的全部税费、手续费。甲方持有的《收益权凭证》相应失效。

4、乙方履行完回购义务后，甲方不得对权益及分销权进行任何限制或妨害乙丙方行使权益及分销权，否则应赔偿乙丙方所受经济损失。

四、各方的权利和义务

1、当满足本协议约定的条件时，甲方应及时向乙方发出《回购通知书》；

2、甲方收齐乙方的回购款项后 5 个工作日内向乙方交付权益及分销权债权转让通知，并配合乙方办理手续；

3、担保期间内，甲方有权对乙方的资金和财产状况进行监督，乙方有义务进行必要的配合。

4、对于丙方延迟付款，而使得甲方与丙方之间的债权到期未能及时收回的，甲方对丙方处以罚息，且丙方继续承担付款责任或根据本协议由乙方履行回购责任；

5、在回购条件成就时，乙方须承担起担保责任，负责向甲方支付价款，回购权益及分销权；

6、乙方对丙方资料的真实性、完整性，权益及分销权的真实性负责，若因上述原因导致甲方损失的，由乙方承担全部赔偿责任；

7、乙方应督促丙方向甲方按《借款合同》的约定向甲方支付利息及本金并协助催收。对于丙方若出现违约行为，乙方承担第一回购担保责任并无条件回购；

8、本合同有效期内，发生下列情况之一，乙方应及时书面通知甲方：

（1）乙方出售、赠与、出租、出借、转移或以其他方式处分其主要资产；

（2）乙方的财务状况严重恶化、或借贷高利贷尚未清偿、或卷入重大的诉讼、仲裁、刑事及其他法律纠纷；

（3）乙方的重大资产有可能被查封、扣押、冻结或强制执行或被采取查封、扣押等财产保全或执行措施的，或因其他原因可能损毁、灭失；

（4）乙方可能被依法宣告破产、解散、清算；

（5）乙方在中国人民银行、中国银行业监督管理委员会或中国银行业协会设立或批准设立的信用数据库中出现不良信用记录；

（6）发生其他足以影响其清偿债务能力或可能丧失担保能力的情况。

9、乙方承诺在通讯及联系地址发生变更时 3 天内及时书面通知甲方，乙方提供送达地址不准确或未及时提供变更后的地址，导致相关文书无法送达或及时送达的，乙方自行承担由此产生的法律后果。

六、保密

各方对本协议履行过程中所接触或获知的对方的任何商业信息均有保密义务，除非有明显的证据证明该等信息属于公知信息或者事先得到对方的书面授权。该等保密义务在本合同终止后仍然继续有效。任一方因违反该等义务而给对方造成损失的，均应当赔偿对方的相应损失。

七、违约责任

乙方不按照本协议约定承担回购责任、支付回购款或者违反本协议约定的其它义务的，每天应向甲方支付应付逾期金额__0.05__%的违约金，因此给甲方造成经济损失且违约金数额不足以弥补所受损失的，应赔偿甲方的实际经济损失包括债权、利息、违约金、赔偿金以及实现债权的合理费用（包括公证、评估、鉴定、拍卖、诉讼或仲裁、送达、财产保全、执行、律师代理、差旅费等合理费用）。

合同编号：XYJK-2016003-05-HGDB

**八、特别声明**

1、乙方清楚的知悉甲方与丙方合作背景，并确认对丙方资产、债务、信用等情况、是否具备签订主协议主体资格和权限已充分了解。

2、乙方完全了解《借款合同》及附件的内容，乙方签署本协议时，已经取得乙方董事会、股东会的书面同意。

**九、　合同变更**

1、　在本合同有效期间，甲、乙、丙任何一方均不得擅自变更或解除本合同。需变更时，须经各方协商同意，达成书面协议。

2、在本合同有效期间，如果甲方与丙方协商变更《借款合同》条款（包括权益及分销权金额、还款方式、还款计划、债务履行期限的起始日或截止日等），未加重丙方债务的，乙方同意仍由其以回购方式对变更后的《借款合同》项下的借款、本金、利息、逾期利息和丙方应付违约金承担连带担保责任。若甲方与丙方协议变更主合同加重丙方的债务的，除另有约定外，乙方仅就变更前的《借款合同》项下的债务承担连带担保责任。

3、　尽管有上述约定，本合同有效期内，因国家法律、法规及银监会、人民银行等机构有关规定调整或变化且适用于《借款合同》，包括利率调整等，导致《借款合同》变更的，乙方仍应当按本合同约定继续承担担保责任。

合同编号：XYJK-2016003-05-HGDB

**十、合同终止**

1、在借款期限内，在甲方审批同意的情况下，丙方提前还款终止《借款合同》。

2、乙方履行回购承诺；

3、借款期届满，丙方偿清所有应付借款款项未出现违约情形的。

**十一、其它**

1、本协议自甲、乙、丙三方签字及盖章之日起生效。

2、本协议一式八份，各方各执二份，具有同等法律效力。

3、凡当事人之间因本协议发生的或与其有关的任何争议，应协商解决。协商不成的，应提交北京仲裁委员会仲裁，按照申请时该会有效的仲裁规则进行仲裁。仲裁是终局的，对各方均有约束力。

4、三方在协议履行过程中向对方发出或者提供的所有通知、往来文件、文书（包括司法或仲裁文书）、资料等，均以本协议所列明的地址、传真、电子邮件送达。一方如果迁址、变更电话或变更指定联络人，应当在变更之日起5日内以书面方式通知另一方；未履行书面通知义务的，一方按原地址、原指定联络人邮寄相关材料或通知相关信息即视为已履行送达义务。当面交付上述材料的，在交付之时视为送达；以邮寄、短信、电邮方式交付的，寄出、发出或者投邮之日即视为送达。

合同编号：XYJK-2016003-05-HGDB

附件：

1、《借款合同》（编号：XYJK-2016003-01-JKHT）；

2、《回购通知书》；

（以下无正文，为签字盖章部分）

甲方：上海懒财资产管理有限公司（公章）

      法定代表人/授权代表人（签字或签章）

乙方一：乐视控股（北京）有限公司（公章）

      法定代表人/授权代表人（签字或签章）

乙方二：＿＿＿＿＿＿＿＿（亲笔签名）

      （贾跃亭）

丙方：乐视体育文化产业发展（北京）有限公司（公章）

      法定代表人/授权代表人（签字或签章）

日期：2016 年 12 月 1 日

# Repurchase Guarantee Agreement

**Contract signed in: Beijing**

Party A:    Shanghai Lancai Asset Management Co., Ltd.

Party B:    Party B-1: LeTV Holdings (Beijing) Co., Ltd.

            Party B-2: Jia Yueting

Party C:    LeTV Sports Culture Develop (Beijing) Co., Limited

WHEREAS:

1. Party C has taken over the Usufruct (as defined in the Usufruct Certificate) from LETV SPORTS CULTURE DEVELOP (HONG KONG) Co. Limited and entered into the Loan Contract dated December 1, 2016 (No. XYJK-2016003-01-JKHT) (including its annex "Cooperation Agreement on Entrusted Management and Financing Cervices"), and Party C has reassigned the Usufruct to Party A and set up a custody arrangement for Party A to provide a short-term liquidity loan to Party C;

2. Party B-1 agrees and undertakes to assume irrevocable joint and several guarantee liability and repurchase obligations for the aforesaid loan provided to Party C by Party A; Party B-2 agrees and undertakes to assume in his personal capacity the unlimited joint and several liability for Party B-1's foregoing obligations;

3. Party A agrees to provide the liquidity loan to Party C conditional upon that Party B (including Party B-1 and Party B-2, similarly hereinafter) shall agree and undertake to fulfill the repurchase and provide guarantee for Party C;

4. In order to ensure repayment by Party C for the loan granted by Party A as agreed in the Loan Contract between Party A and Party C, Party B agrees to provide an irrevocable joint and several guarantee in favor of Party A for Party C's obligations under the Loan Contract (including but not limited those arising from Party C's non-performance or non-compliance with the Loan Contract),

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

NOW IT IS HEREBY AGREED as follows through negotiation on the fair, willing and arm's-length basis in accordance with the Contract Law of the People's Republic of China and relevant laws and regulations:

## I. Definitions

1. "Repurchase": When Party A upon satisfaction of all conditions agreed herein issues a written Repurchase Notice to Party B, Party B shall, within ten days from the date of receiving such notice from Party A demanding the repurchase of the Usufruct, pay the Repurchase Money to Party A as agreed to fulfill its repurchase obligation.

2. "Usufruct and Distribution Right": Under an agreement, Party C has been licensed by NBA Hong Kong Operations Limited for broadcasting NBA regular seasons (average 2 games per day), all playoffs and finals, all All-Star weekend events, pre-seasons (up to 14 games per season) and related VR and AR programs (at least one event per season shall be produced by LeTV Sports with the official assistance of the NBA) in 2016/17 - 2020/21 through its OTT service, PC and mobile platforms within Hong Kong and Macao (commercial, residential and individual users allowed in Hong Kong; only residential and individual users allowed in Macao). During the first three years in the term of the agreement, the NBA reserves the right to authorize a free third-party platform to broadcast one NBA game each week (excluding All-Star games, division finals and finals) which may be made available on demand, provided that the game shall be the second-level selected event in the week.

The original value of the aforesaid royalties US$112,000,000.00 shall be amortized over 57 months commencing from October 2016 to June 2021. Details of the amortization as at October 31, 2016 are as follows:

| Original value (US$) | Amortization period (month) | Monthly amortization (US$) | Accumulated amortization (US$) | Net value (US$) |
|---|---|---|---|---|
| 112,000,000.00 | 57.00 | 1,964,912.28 | 1,964,912.28 | 110,035,087.72 |

3. "Repurchase Money": All outstanding loan owed by Party C, outstanding principal, interest, penalty interest, overdue interest, compound interest and default fine payable by Party C under the Loan Contract, and other costs incurred by Party A for liquidation of its creditor's rights (including but not limited to attorney fees, court costs and travel expenses); and infringement or loss of ownership or value of goods.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

## II.  Nature, Term and Scope of Guarantee

1.  Nature of Guarantee

(1)  Party B shall provide a joint and several guarantee, pursuant to which Party A has the right to directly demand Party B fulfilling the guarantee liability as and when Party C fails to settle the whole or any part of its debts under the Loan Contract.

(2)  In the case of other guarantors providing guarantee for the loan under the Loan Contract, all guarantors shall become liable for the joint and several guarantee.

(3)  In the case of other guarantees provided for the loan under the Loan Contract, Party B shall fulfill its guarantee obligations as Party A may demand, and shall not lodge a plea against the creditor's rights on the grounds that there are other guarantees available.

(4)  Where, after all or any part of the loan is repaid by Party C, the repayment is invalidated in whole or in part according to law or by a judgment or arbitration in force in connection with the liquidation of Party C due to bankruptcy or any other litigation or arbitration, Party B shall still fulfill the guarantee obligations for the whole or such part of the amount payable.

2.  Term of Guarantee

(1)  The loan to be granted to Party C under the Loan Contract shall have a term of 12 months, subject to the provisions in the Loan Contract with respect to the start and end dates.

(2)  The term of guarantee shall be two years, commencing from the maturity date of the guaranteed loan.

3.  Party B shall be liable for the guarantee to indemnify against any losses incurred by Party A arising from Party C's failure to perform its obligations as stipulated in the Loan Contract, including:

(1)  any principal or interest that Party C fails to settle on time or in full as agreed in the Loan Contract, and any penalty interest, insurance premium, security deposit, indemnity and other expenses payable by Party C;

(2)  any damage in ownership or value the Usufruct and Distribution Right; and

(3)  all expenses incurred by Party A to exercise the aforesaid right, including but not limited to attorney fees, court costs and travel expenses.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

### III.  Repurchase Method

1.   When the repurchase conditions are established, Party A will issue a written Repurchase Notice to Party B. Party B shall pay the full Repurchase Money in a lump sum to Party A within ten days from the date of issuance of the Repurchase Notice.

2.   Redemption Conditions:

Subject to the provisions of the Loan Agreement, any maturity matter for the loan (including normal maturity and acceleration of maturity) as specified therein is established, including but not limited to: a delay of Party C in repayment of any interest or principal that results in a failure of Party A in recovering the loan in time upon its maturity, which becomes overdue for 15 days and remains default in whole or in part after a penalty interest is paid by Party C to Party A as agreed; and any event that Party C may be declared bankrupt, dissolved or liquidated according to law. Any of the aforesaid events shall give effect to the repurchase conditions, the establishment of which is irrespective of the status of the Usufruct and Distribution Right (including but not limited to any loss or damage thereof).

3.   Upon fulfillment of the repurchase obligations of Party B, Party A shall transfer the rights and interests under the Usufruct and Distribution Right (including the ownership) to Party B-1. The parties expressly agree that in view of the fact that Party A is unable to effectively monitor the Usufruct and Distribution Right which are under actual possession and control by Party C, Party A shall only deliver the Usufruct and Distribution Right in the form of the Notice of Claim Transfer in connection therewith together with assistance to Party B in effecting the transfer procedures, instead of a physical delivery, to Party B. Party A shall assist Party B in effecting all procedures for the repurchase of the Usufruct and Distribution Right as agreed hereunder, and all taxes and fees arising from the transfer of the Usufruct shall be borne by Party A. Upon completion of the procedures, the Usufruct Certificate held by Party A shall become void accordingly.

4.   Upon fulfillment of the repurchase obligations of Party B, Party A shall not restrict or impede Party B and Party C howsoever from exercising the Usufruct and Distribution Right, or otherwise shall indemnify Party B and C against any resultant financial loss.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

## IV.    Rights and Obligations of the Parties

1.    When the conditions provided herein are satisfied, Party A shall issue a written Repurchase Notice to Party B in time;

2.    Party A shall, within 5 business days after receiving Repurchase Money in full from Party B, deliver to Party B the Notice of Claim Transfer in connection with the Usufruct and Distribution Right, and assist Party B in effecting the transfer procedures;

3.    During the term of guarantee, Party A has the right to supervise Party B's funding and property status, for which Party B has the obligation to provide assistance as necessary;

4.    In case of a delay of Party C in repayment that results in a failure of Party A in recovering from Party C the loan in time upon its maturity, Party A has the right to impose a penalty interest on Party C, and Party C shall remain liable for repayment or otherwise Party B shall fulfill the repurchase obligations hereunder;

5.    Upon establishment of the repurchase conditions, Party B shall fulfill its guarantee obligations for paying Party A the Repurchase Money in order to repurchase the Usufruct and Distribution Right;

6.    Party B is responsible for the truthfulness and completeness of the information provided by Party C and the authenticity of the Usufruct and Distribution Right, and shall be liable for all damages incurred by Party A in connection therewith;

7.    Party B shall procure Party C to pay interest and principal to Party A as agreed in the Loan Contract and assist in the collection thereof. In case of a breach of contract by Party C, Party B shall fulfill the repurchase guarantee liability in the first instance to effect the repurchase unconditionally;

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

8.    During the validity period hereof, Party B shall issue a written notice to Party A promptly in any of following circumstances:

(1)  Party B sells, donates, leases, lends, transfers or otherwise disposes of its major assets;

(2)  Party B's financial position has seriously deteriorated or has an outstanding amount of any usury or becomes involved in any material litigation, arbitration, criminal or other legal dispute;

(3)  Party B's major assets are threatened to be seized, attached, frozen or enforced, or become a subject to property preservation or enforcement measures such as seizure or attachment, or may be damaged or lost due to other reasons;

(4)  Party B may be declared bankrupt, dissolved or liquidated according to law;

(5)  Party B has a bad credit record in the credit database maintained or approved by the People's Bank of China ("PBOC"), China Banking Regulatory Commission ("CBRC") or China Banking Association; or

(6)  Other circumstances that may lead to an impairment of its solvency or a potential loss of its guarantee capacity.

9.    Party B undertakes to notify Party A in writing within 3 days of any change in its correspondence and contact address. If Party B fails to provide an accurate address for service or the changed address in time, causing a failure of service in time or at all, Party B shall bear the legal consequences arising therefrom.


## VI.    Confidentiality

Each party hereto shall have the obligations to keep confidential any business information of the other party that is accessible or known during the performance of this Agreement, unless there is obvious evidence that such information has already been in the public domain or a prior authorization in writing has been obtained from the other party. Such confidentiality obligations shall survive the termination of this Agreement. A party causing losses to the other party due to its breach of such obligations shall indemnify the other party against such losses.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

### VII.  Liability for Breach of Contract

In the event that Party B fails to fulfill the repurchase obligations hereunder, pay the Repurchase Money or violate other obligations hereunder, Party B shall pay a default fine to Party A as calculated as 0.05% of the overdue amount on a daily basis and, in case of a resultant financial loss of Party A which cannot be covered by the default fine, shall indemnify Party A against its actual financial losses including creditor's rights, interest, default fine, indemnity and reasonable expenses for liquidation of creditor's rights (including notarization, appraisal, assessment, auction, litigation or arbitration, service, property preservation, enforcement, attorney fees, travel expenses, and other reasonable costs).

### VIII.  Special Statement

1.    Party B is aware of the background of the cooperation between Party A and Party C, and confirms that it has full knowledge of Party C's information including assets, debts and credit standing, and whether it has the capacity and authority to enter into the Loan Contract.

2.    Party B has full knowledge of the Loan Contract and its annex, and has obtained the written approvals of the board of directors and shareholders' meeting of Party B when entering into this Agreement.

### IX.   Change of Agreement

1.    None of Party A, Party B and Party C may alter or terminate this Agreement unilaterally during the validity term hereof. A change hereof is conditional upon a written agreement through negotiation among the parties hereto.

2.    If Party A and Party C agree to change the terms of the Loan Contract (including the amount of the Usufruct and Distribution Right, repayment method, repayment plan, start or end dates of loan repayment) during the validity term hereof without increasing Party C's debt, Party B agrees to continue to assume the joint and several guarantee liability for the loan, principal, interest, overdue interest and default fine payable by Party C under the changed Loan Contract by means of the repurchase. If Party A and Party C agree to change the Loan Contract which increases Party C's debt, Party B shall only assume the joint and several guarantee liability for the debt under the Loan Contract before the change unless otherwise agreed.

3.    Notwithstanding the foregoing, Party B shall continue to assume the guarantee liability hereunder if the Loan Contract is changed during the validity term hereof due to the adjustments or changes of national laws and regulations and relevant rules of CBRC, PBOC and other authorities, including interest rate adjustment.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

### X.    Termination

This Agreement may be terminated as and when:

1.    Within the maturity of the loan and upon consent of Party A, Party C makes an early repayment and terminates the Loan Contract;

2.    Party B has fulfilled its repurchase undertaking; or

3.    Upon maturity of the loan, Party C has paid off all of the due amount without a breach of contract.

### XI.    Miscellaneous

1.    This Agreement shall come into force upon signatures and seals by Party A, Party B and Party C.

2.    This Agreement is made in octuplicate, each party holding two counterparts which shall have the same legal force.

3.    Any dispute arising from or in connection with this Agreement shall be settled through negotiation by the parties hereto, failing which, shall be submitted to Beijing Arbitration Commission for arbitration in accordance with the prevailing rules of arbitration of such commission. The arbitration award shall be final, binding upon each party.

4.    All notices, correspondences, instruments (including judicial or arbitration documents) and materials dispatched to or provided by a party to the other party during the performance of this Agreement shall be served to the correspondence, facsimile and e-mail addresses specified herein. A party intending to change its address, telephone number or designated contact person shall notify the other parties in writing within 5 days from the date of change, failing which, the party mailing relevant materials or dispatching relevant information according to the original addresses and designated contact person shall be deemed to have fulfilled the obligation of service. Time of service for any of the aforesaid materials shall be the time of delivery if by hand, or the date of mailing, sending or posting if by mail, text message or e-mail.

[seal:] [illegible]

[seal:] [illegible]

[seal:] [illegible]

Annexes:

1.    Loan Contract (No. XYJK-2016003-01-JKHT);

2.    Repurchase Notice.


(The page below is for seal and signature and contains no text of main body)


Party A:      Shanghai Lancai Asset Management Co., Ltd. (corporate seal)

              [seal:] Corporate seal of Shanghai Lancai Asset Management Co., Ltd.

              Legal representative/authorized representative (signature or seal)

              [seal:] Personal seal of Huang Zhe


Party B-1:    LeTV Holdings (Beijing) Co., Ltd. (corporate seal)

              [seal:] Corporate seal of LeTV Holdings (Beijing) Co., Ltd.

              Legal representative/authorized representative (signature or seal)

              [seal:] Personal seal of Jia Yueting


Party B-2:    [signature] (signature by hand)

              (Jia Yueting)


Party C:      LeTV Sports Culture Develop (Beijing) Co., Limited (corporate seal)

              [seal:] Corporate seal of LeTV Sports Culture Develop (Beijing) Co., Limited

              Legal representative/authorized representative (signature or seal)

              [seal:] Personal seal of Gao Fei


Date: December 1, 2016


                                                          [seal:] [illegible]

                                                          [seal:] [illegible]

                                                          [seal:] [illegible]

# Exhibit 3 – Loan Contract



# 借 款 合 同

合同编号：XYJK-2016003-01-JKHT

2016 年 12 月 1 日

# 目　录

借款合同 ........................................................................ 2

第一条　　借款金额 ........................................................ 2

第二条　　借款期限 ........................................................ 3

第三条　　借款用途和本息支付方式 ............................ 3

第四条　　借款的发放 .................................................... 4

第五条　　还款 ................................................................ 5

第六条　　偿债保障机制 ................................................ 6

第七条　　后续债权转让 ................................................ 6

第八条　　甲方的权利和义务 ........................................ 6

第九条　　乙方的权利、义务 ........................................ 7

第十条　　甲方声明与承诺 ............................................ 7

第十一条　违约责任 ........................................................ 7

第十二条　合同的变更、转让、解除或终止 ................ 8

第十三条　法律适用及争议的解决 ................................ 8

第十四条　其他条款 ........................................................ 8

# 借款合同

合同编号：XYJK-2016003-01-JKHT

**借款人（甲方）：乐视体育文化产业发展（北京）有限公司**

**资产托管方/代理出借人（乙方）：上海懒财资产管理有限公司**

鉴于：

1、 甲方拟通过北京懒财信息科技有限公司（"懒财科技"）运营的互联网金融信息服务平台懒财网（域名 www.lancai.cn，以下简称"懒财网"）实现借款融资。

2、 乙方同意与甲方及懒财科技签署编号为：XYJK-2016003-02-WTGL 的《委托管理暨融资合作协议》（见本协议附件一），并同意在该协议项下与甲方达成特定收益权（以下简称"标的权益"）全权托管安排，和基于托管安排由懒财科技用户向甲方提供借款。乙方作为资产受托管理方，根据《委托管理暨融资合作协议》约定履行代理还款、债权管理等职能及提供偿债保障服务。

3、 为便于懒财网用户进行债权投资，乙方作为代理借款发放人/借款合同签署方。懒财网通过提供信息服务，协助作为懒财网用户的网络投资人（以下简称"网络投资人"）与甲方之间形成债权债务关系。

4、 现就乙方基于代理受托管理标的权益安排代理向甲方发放借款事宜，各方经协商一致，订立本合同，以资共同遵守。

**第一条　借款金额**

乙方代理懒财网特定用户向甲方发放借款的金额不超过人民币（下同）伍仟

2

万元整（￥50,000,000.00）。实际借款金额、初始借款人明细及起始日期以懒财网合作机构的资金存管系统电子交易记录为准。

第二条    借款期限

（一）本合同约定借款期限为 12 个月。

（二）如甲方预期可能无法偿还当期本金或利息，应于到期日前至少提前十日或知悉出现可能造成无法按期还款的事由后一个工作日内知会乙方，双方协商通过合法合规方式解决潜在债务违约风险。

（三）借款提前到期

发生如下情形之一的，甲方应提前偿还全部借款：（1）甲方对其向乙方提供的关于设立权益托管安排的相关资料（包括不限于转据权合同、甲方依法享有标的权益的证明资料）被篡改或伪造，或拒绝配合乙方按约定享有的知情权，拒绝提供必要信息和协助的；（2）甲方、担保方（如有，下同）、回购义务方（如有，下同）媒重大违法经营活动被监管机构调查或涉嫌违法犯罪被监管机构调查或被立案侦查；（3）甲方或担保方、回购义务方发生重大债务违约、财务恶化、失踪等实质性影响甲方履行还款义务及/或担保方、回购义务方履行担保义务的情形，严重危及懒财网平台用户投资安全的，或回购义务方违反回购约定的；或（4）甲方违反相关《委托管理暨融资合作协议》的约定提出提前终止委托的，或相关《委托管理暨融资合作协议》因任何原因终止、失效、被撤销、暂停履行。

借款提前到期触发后，乙方有权通知甲方借款立即到期，甲方应按乙方通知立即偿还借款。如甲方未按通知及时、足额偿还借款本金、利息，乙方有权依据《委托管理暨融资合作协议》以托管资产实施偿债保障措施，及按法律规定主张其他救济措施。

第三条    借款用途和本息支付方式

（一）借款用途：借款用于补充甲方日常运营流动性资金。

（二）本金偿还：借款发放满 12 个月之日一次性偿还全部本金。

在提前十个工作日书面通知乙方的前提下，甲方可以提前偿还借款，否则甲方应向乙方额外支付提前还款本金金额千分之五的补偿费。

3

（三） 借款利率

本合同项下的借款年利率为 7.5%。

甲乙双方一致同意，乙方指定【新疆骑士联盟股权投资有限公司】作为本项目的财务顾问与甲方另行签署《财务顾问协议》并向甲方收取服务费。

（四） 利息结算日（以下简称"结算日"）：

结算日为每年的 3 月 15 日、6 月 15 日、9 月 15 日、12 月 15 日和甲方归还借款本金之日。

（五） 利息支付日（以下简称"支付日"）

若结算日为工作日，则支付日和结算日为同一日；若结算日为非工作日，则支付日为结算日后第一个工作日。

（六） 计息

1、 本合同项下的借款按日计息，日利率 = 年利率/365。

2、 借款利息的计算公式为：

借款利息 = 借款的本金余额×借款起始日起至借款人占用该笔借款金额的最后占用日之间的实际天数×日利率。

在借款期限内，借款的本金余额发生变化的，应分段计算并累计相加。

（七） 罚息

若甲方逾期偿还借款，债权人有权加计每日万分之五的罚息，直至该违约行为或情况不存在为止。

第四条　借款的发放

（一） 发放借款的前提条件

除乙方全部或部分放弃外，只有甲方持续满足下列前提条件，乙方才有义务代理发放借款：

1、 本合同已依法生效且持续有效；

2、 甲方、乙方、懒财科技已签署附件一《委托管理暨融资合作协议》

4

并签署关于标的权益的交割证明函；

3、 甲方没有发生本合同及《委托管理暨融资合作协议》所约定的任一违约事项；

4、 标的权益未发生可能导致托管安排无法实施的重大不利变化；

5、 如经乙方同意，甲方拟委托其他方代为收取借款资金和支付委托认购款项，相关代收代付协议已签署并生效；

6、 甲方（或甲方指定的代收代付资金方，如适用）已在懒财网合作机构开立资金存管账户；

7、 相关担保方/增信方就本协议下借款的《保证合同》、《回购担保合同》已签署生效。

（二）乙方需在上述借款发放前提条件满足之日（不含该日）起三个工作日内，将本合同项下借款金额（扣除约定的平台服务费用后，如适用）代理相关债权人发放至甲方在懒财网合作银行开立的资金存管账户。前述划转完成后，乙方履行完毕代理发放借款义务。

**第五条    还款**

（一）在托管安排正常存续、借款合同正常履行的情况下，甲方将借款本息偿还至如下账户（以下简称"还款账户"）：

　　　　　　账户名：北京懒财信息科技有限公司

　　　　　　账　号：8000 0023 2765

　　　　　　开户行：上海华瑞银行股份有限公司

（二）在乙方按本合同第二条第（二）款约定宣布借款立即到期情况下，甲方应按乙方通知将借款本金、应付利息及任何按约定应付的其他款项支付至还款账户中，用于实现借款的全部清偿。甲方应于接到乙方通知之日起十五日内支付前述款项。

（三）自愿提前还款：

1、 甲方有权提前偿还全部或部分借款。

2、如标的权益的借款方提前还款，则各方同意借款提前到期，乙方将所得对价用于向债权人支付本金。如有剩余，扣除应由甲方负担的费用后向甲方返还；如不足以履盖甲方应付金额，甲方按乙方通知要求补足。

第六条　偿债保障机制

1、为保障甲方按时、足额还款，甲方将标的权益全权委托乙方管理。乙方为出借人债权实现提供偿债保障服务，乙方具体权限和可采取的措施按照附件一《委托管理暨融资合作协议》执行。

2、如甲方于借款到期日（包括自然到期和提前到期）或利息支付日未能偿还本金和/或利息，乙方有权于次日宣布终止权益托管安排，要求担保方履行担保义务、要求赎回义务人立即赎回标的权益，或自行处分标的权益将处分所得用于向债权人偿付，及采取法律法规允许的其他救济措施。

第七条　后续债权转让

甲方知悉并认可，本协议下债权将会在懒财网的网络投资人间进行转让，并在懒财网系统对债权转让进行登记。甲方有权向乙方提出查询请求，有权知悉截至某一时点最终实益债权人的名单和债权份额。

各方确认在保障甲方知情权的前提下，鉴于交易特殊性和便利各方的考虑，后续债权转让在懒财网系统中保存供甲方随时查阅的记录即视为向甲方发出书面债权转让通知。

第八条　甲方的权利和义务

（一）有权要求乙方按照合同约定发放借款。

（二）按照本合同的约定提款并足额清偿借款本息，承担本合同约定的各项费用，包括但不限于公证、鉴定、评估、登记等事项的费用（如有）。

（三）促使甲方保证维持本合同项下标的权益托管安排的真实、合法、有效和可执行。

（四）甲方为法人的，变更住所、通讯地址、营业范围、法定代表人等工商登记

6

事项的，应在有关事项变更后三日内书面通知乙方。

（五）遵守本合同的其他规定。

第九条    乙方的权利、义务

（一）按照本合同的约定代理发放借款，按照出借人授权、为出借人利益代理出
借人集中管理债权并与甲方沟通联络，但乙方并非债权债务关系的一方或
担保方。

（二）乙方托管服务及费用及收取方式：乙方受托管理标的权益和履行偿债保障
职责，并有权收取托管服务费用，具体按照《委托管理暨融资服务协议》
执行。

（三）遵守本合同规定的其他义务。

第十条    甲方声明与承诺

甲方向乙方做出如下的声明与承诺，乙方可依赖该等声明与承诺发放本合同
项下的借款：

（一）甲方签署与履行本合同项下的义务符合法律、行政法规、规章和甲方章程
或内部组织文件的规定，且已获得公司内部有权机构及/或国家有权机关
的批准及合法授权。

（二）甲方提供了真实、准确、完整的用户信息及融资信息；

（三）甲方如实提供了在所有网络借贷信息中介机构未偿还借款信息；

（四）甲方保证融资项目真实、合法，并按照约定用途使用借贷资金，不用于出
借及高风险投资等其他目的；

（五）按照约定向乙方如实报告影响或可能影响出借人权益的重大信息；

（六）确认自身具有与借款金额和匹配的还款能力并按照合同约定还款。

第十一条    违约责任

（一）任何一方违反本合同的约定，均应向守约方承担违约责任，并赔偿因其违
约给对方造成的直接损失。

（二）如甲方到期未偿还借款，则执行担保措施（如有），及按附件一《委托管

7

理暨融资合作协议》约定执行偿债保障措施。

**第十二条　合同的变更、转让、解除或终止**

（一）本合同签署后，任何一方不得擅自变更和解除本合同。

（二）本合同的变更需经各方协商一致并达成书面协议。

（三）乙方有权将其在本合同项下的权利、义务转让给第三方，但必须通知甲方；未经其他方同意，甲方不得将其在本合同项下的权利、义务转让给第三方。

（四）本合同在以下情况下可被解除或终止：

　　1、　经本协议各方协商一致达成书面协议；

　　2、　一方严重违反本合同，或违反本合同并经他方要求后在三日内仍然未予以纠正，他方有权解除或终止合同；

　　3、　根据有关法律规定或本合同的其他规定解除或终止。

**第十三条　法律适用及争议的解决**

（一）本合同适用中华人民共和国法律。

（二）本合同在履行过程中发生争议，可以通过协商解决，协商不成，任何一方均可向北京仲裁委员会提请仲裁。

**第十四条　其他条款**

（一）费用的承担

　　下列费用由甲方承担：

　　1、　本合同有关的登记、保管、鉴定、公证等费用（如有）；

　　2、　乙方为实现债权而实际发生的一切费用（包括但不限于诉讼费、仲裁费、财产保全费、差旅费、执行费、评估费、拍卖费、公证费、送达费、公告费、律师费等，如有）均由甲方承担。

（二）通知事项

　　1、除非本合同另有约定，本合同项下各方之间的一切通知均可通过传真、邮递、快递，或各方同意的其他方式送达以下地址：

甲方：乐视体育文化产业发展（北京）有限公司

地址：北京市朝阳区酒仙桥北路 7 号 电通创意广场 13 号楼

电话：010-50963767

传真：

乙方：上海懒财资产管理有限公司

地址：北京市朝阳区大屯东路 317 号金泉时代大厦 3 单元 2210 室

邮编：100106

电话：（010）84874006

传真：（010）84874586

2、一方的通讯地址或联系方式如发生变动，应立即书面通知他方，因未及
时通知而造成的损失由通讯地址或联系方式变动方自行承担。

（三）权利保留

一方在本合同项下的权利并不影响和排除其根据法律、法规和其它合同所享
有的任何权利。任何对违约或延误行为施以任何宽容、宽限、优惠或延缓行使本
合同项下的任何权利，均不能视为对本合同项下权利、权益的放弃或对任何违反
本合同行为的许可或认可，也不限制、阻止和妨碍对该权利的继续行使或对其任
何其它权利的行使，也不因此导致一方对另一方承担义务和责任。

（四）本合同自各方法定代表人或授权代表人签字或加盖人名章并加盖公章之
日起生效。

（五）本合同未尽事宜，适用《委托管理暨融资合作协议》相关约定；此外，各
方可另行达成书面协议，作为本合同附件。本合同的任何附件、修改或补
充均构成本合同不可分割的组成部分，与本合同具有同等法律效力。

（六）本合同一式贰份，各方各执壹份。各份文本具有同等法律效力。

<u>甲方已阅读本合同所有条款。甲方确认乙方已经就本合同做了相应的条款
说明。甲方对本合同条款的含义及相应的法律后果已全部通晓并充分理解。</u>

（以下无正文）

9

本页无正文，为编号为 XYJK-2016003-01-JKHT 的《借款合同》签章页



甲方：乐视体育文化产业发展（北京）有限公司（公章）

法定代表人或授权代表人（签字或签章）

2016 年 12 月 1 日

乙方：上海懒财资产管理有限公司（公章）

法定代表人或授权代表人（签字或签章）

2016 年 12 月 1 日



[logo:] lancai.cn

# Loan Contract

Contract No.: XYJK-2016003-01-JKHT

December 1, 2016

[seal:] [illegible]
[seal:] [illegible]

# Table of Contents

Loan Contract ................................................................................................... 2
Article I.       Amount of the Loan .................................................................. 2
Article II.      Term of the Loan ...................................................................... 3
Article III.     Use of the Loan and Payment Method of the Principal and Interest ................... 4
Article IV.      Issuance of the Loan ................................................................ 5
Article V.       Repayment ................................................................................ 6
Article VI.      Debt Repayment Guarantee Mechanism ............................. 7
Article VII.     Subsequent Transfer of Creditor's Rights ........................... 7
Article VIII.    Rights and Obligations of Party A ....................................... 7
Article IX.      Rights and Obligations of Party B ....................................... 8
Article X.       Representations and Warranties of Party A ........................ 8
Article XI.      Liabilities for Breach of Contract ........................................ 9
Article XII.     Modification, Assignment, Rescission, or Termination of the Contract ............. 9
Article XIII.    Governing Laws and Dispute Resolution ......................... 10
Article XIV.     Miscellaneous ........................................................................ 10

[seal:] [illegible]
[seal:] [illegible]

# Loan Contract

Contract No.: XYJK-2016003-01-JKHT

Borrower (Party A): LeTV Sports Culture Develop (Beijing) Co., Ltd.

Custodian of Assets/Lending Agent (Party B): Shanghai Lancai Assets Management Co., Ltd.

**Whereas:**

1. Party A intends to raise funds by borrowing through Lancai.cn (domain name: www.Lancai.cn, hereinafter as "**Lancai.cn**"), the Internet finance information service platform operated by Beijing Lancai Information Technology Co., Ltd. ("**Lancai Technology**").

2. Party B agrees to execute the No. **XYJK-2016003-02-WTGL** Custody and Financing Cooperation Agreement (as attached hereto in Annex I) with Party A and Lancai Technology, and agrees to enter into the discretionary custody arrangement with Party A thereunder in connection with certain benefit rights (hereinafter as the "**Underlying Interests**") and for Lancai Technology to provide the loan to Party A based on such custody arrangement. Party B, as the custodian of assets, will perform such functions as repayment as an agent and management of creditor's rights and provide the debt repayment guarantee service as provided in the Custody and Financing Cooperation Agreement.

3. To facilitate the debt investment by the users of Lancai.cn, Party B will serve as the lending agent / signatory of the loan contract(s). By providing information services, Lancai.cn will assist the online investors (hereinafter as the "**Online Investors**"), in their capacity as the users of Lancai.cn, to enter into the credit-debt relationship with Party A.

4. Now, therefore, the Parties has entered into this Contract on the matters in connection with Party B's issuing loans to Party A as an agent under the custody arrangement for the Underlying Interests for mutual compliance.

## Article I.    Amount of the Loan

The amount of the loan to be issued by Party B on behalf of the certain users of Lancai.cn shall not exceed RMB (hereinafter inclusive) fifty million (RMB 50,000,000.00). The actual loan amount, the details of the initial borrower(s), and the commencement date shall be determined

[seal:] [illegible]
[seal:] [illegible]

2

according to the electronic transaction records in the fund depository system of the cooperative institution of Lancai.cn.

**Article II.    Term of the Loan**

(I)    The term of the loan as agreed herein shall be 12 months.

(II)    Where Party A anticipates to be unable to repay the principal or interest of the current period, it shall notify Party B of the same at least ten days prior to the repayment due date or one business day after knowing the incident that may result in its inability to make repayment as scheduled so that the Parties may resolve the potential risk of debt default in a legal and compliant manner through consultation.

(III)    Acceleration of the Loan

Party A shall prepay the entire loan upon the occurrence of any of the following circumstances: (1) where Party A has tampered with or forged the relevant materials provided to Party B for the establishment of the custody arrangement (including, without limitation, the Broadcasting Right Contract, the materials evidencing Party A's lawful entitlement to the Underlying Interests), or refuses to cooperate with the information right to which Party B is entitled as agreed, or refuses to provide the necessary information or assistance; (2) where Party A, the guarantor (if any, hereinafter inclusive), or the repurchase obligor (if any, hereinafter inclusive) is subject to the investigation by regulators due to any suspected major illegal operating activities or subject to the inspection and case investigation by regulators due to any suspected irregularity or crime; (3) where Party A, the guarantor, or the repurchase obligor defaults on any major debts, experiences financial deterioration, disappearance, and other situations materially impacting the performance of the repayment obligations by Party A and/or the performance of the guarantee obligations by the guarantor or the repurchase obligor that seriously jeopardize the investment security of the users of Lancai.cn, or where the repurchase obligor breaches the repurchase agreement; or (4) where Party A requests to terminate the custody in breach of the provisions of the Custody and Financing Cooperation Agreement, or where the relevant Custody and Financing Cooperation Agreement is terminated, voided, rescinded, or suspended for any reason.

After the acceleration of the maturity of the loan is triggered, Party B shall have the right to notify Party A that the loan becomes due and payable with immediate effect, and Party A shall repay the loan pursuant to the notice of Party B immediately. Where Party A fails to make timely and full repayment of the loan principal and interest pursuant to such notice, Party B shall have the right to implement the debt repayment guarantee measures with the assets in custody

[seal:] [illegible]
[seal:] [illegible]

3

pursuant to the Custody and Financing Cooperation Agreement, and to assert other remedies as provided by laws.

**Article III.    Use of the Loan and Payment Method of the Principal and Interest**

(I)    Use of the Loan: The loan shall be used to supplement Party A's working capital in its day-to-day operations.

(II)    Repayment of the Principal: The principal shall be repaid in one lump sum on the expiry date of 12 months after the issuance of the loan. Party A may prepay the loan provided that a written notice shall be given to Party B ten business days in advance; otherwise, Party A shall pay to Party B an indemnification amounting to 0.5 percent of the prepaid principal in addition.

(III)    Interest Rate of the Loan

The annual interest rate of the loan hereunder shall be 7.5% per annum.

Both Party A and Party B agree that Party B shall appoint [Xinjiang Knight Union Equity Investment Co., Ltd.] as the financial advisor for this project to execute a separate Financial Advisory Agreement with Party A and charge service fees to Party A.

(IV)    Interest Settlement Date (hereinafter as "**Settlement Date**")

The Settlement Dates shall be March 15, June 15, September 15, December 15 of each year, and the date on which Party A repays the principal.

(V)    Interest Payment Date (hereinafter as "**Payment Date**")

Where the Settlement Date falls on a business day, the Payment Date shall be the same as such Settlement Date; where the Settlement Date falls on any day other than a business day, the Payment Date shall be the business day immediately following such Settlement Date.

(VI)    Interest Calculation

1.    The interest of the loan hereunder shall be calculated on a daily basis, where the daily interest rate = the annual interest rate/365.

2.    The formula for the calculation of the loan interest shall be:

[seal:] [illegible]<br>[seal:] [illegible]

Loan interest = Outstanding balance of the loan principal * Actual No. of days from the commencement date of the loan to the last day on which the borrower occupies the loan * Daily interest rate.

During the term of the loan, the interest shall be calculated on a separate basis and added up where the outstanding balance of the principal of the loan changes.

(VII)  Penalty Interest

Where Party A is overdue in repayment, the creditors shall have the right to charge a penalty interest of 0.05 percent per day until such default or circumstance no longer exists.

## Article IV.    Issuance of the Loan

(I)    Preconditions for the Issuance of the loan

Party B shall only be obligated to issue the loan as an agent upon the continuous satisfaction by Party A of the following preconditions, except as may be waived by Party B in whole or in part:

1.  The Contract shall have become effective and continue to remain in force according to laws;

2.  Party A, Party B, and Lancai Technology shall have executed the Custody and Financing Cooperation Agreement as attached hereto in Annex 1 and executed the certificate for the closing of the Underlying Interests;

3.  Party A shall not have committed any of the default events as provided in the Custody and Financing Cooperation Agreement;

4.  There shall have been no material adverse changes in the Underlying Interests that may render the implementation of the custody arrangement impracticable;

5.  Where Party A intends to entrust any other party to collect the borrowed funds and pay the subscription amounts on its behalf with the consent of Party B, the relevant collection and payment agreement shall have been executed and become effective;

6.  Party A (or the party designated by Party A for the collection and payment of funds on its behalf, if applicable) shall have opened a fund depository account at the cooperative institution of Lancai.cn;

[seal:] [illegible]
[seal:] [illegible]

5

7. The Guarantee Contract, the Repurchase Guarantee Contract in connection with the loan hereunder shall have been executed by the relevant guarantor / credit enhancement provider and have become effective.

(II) Party B shall, within three business days from the date on which the aforesaid preconditions for the issuance of the loan are satisfied (exclusive), disburse the amount of the loan hereunder (after deducting any platform service fee as agreed, if applicable) on behalf of the relevant creditors to the fund depository account opened by Party A at the cooperative bank of Lancai.cn. The performance of Party B's obligation to issue the loan as an agent shall be fulfilled upon the completion of the aforesaid disbursement.

## Article V.    Repayment

(I) Where the custody arrangement exists normally, and the Loan Agreement is performed normally, Party A will repay the loan principal and interest to the following account (hereinafter as the "**Repayment Account**"):

| | |
|---|---|
| Account Name: | Beijing Lancai Information Technology Co., Ltd. |
| Account No.: | 800000232765 |
| Bank Name: | Shanghai Huarui Bank Co., Ltd. |

(II) Where Party B has declared that the loan becomes due and payable with immediate effect pursuant to the provisions of Article II (II) hereof, Party A shall, in accordance with Party B's notice, pay the loan principal, interest payable, and any other amount payable as agreed to the Repayment Account for the full settlement of the loan. Party A shall pay the aforesaid amount within fifteen days from the date of receipt of the notice from Party B.

(III) Voluntary Prepayment

1. Party A shall have the right to repay all or part of the loan in advance.

2. In the event of prepayment by the borrower of the Underlying Interests, the Parties agree that the loan shall become due in advance and Party B will use the considerations received to repay the principal to the creditors. The surplus amount after deducting the expenses to be borne by Party A, if any, shall be returned to Party A; if it is insufficient to cover the amount payable by Party A, Party A shall make up the shortfall in accordance with Party B's notice.

[seal:] [illegible]
[seal:] [illegible]

6

**Article VI.     Debt Repayment Guarantee Mechanism**

1.   To ensure the timely and full repayment by Party A, Party A shall entrust the Underlying Interests to Party B for discretionary custody. Party B shall provide the debt repayment guarantee service for the realization of the creditor's rights of the lenders, and Party B's specific authority and measures available shall be as provided in the Custody and Financing Cooperation Agreement in Annex I.

2.   If Party A fails to repay the principal and/or interest on the due date of the loan (including natural maturity and early maturity) or the interest payment date, Party B shall have the right to declare the termination of the custody arrangement of the Underlying Interests on the following day, request the guarantor to perform the guarantee obligation, request the redemption obligor to immediately redeem the Underlying Interests, or dispose the Underlying Interests by itself and use the proceeds to repay the creditors, and take other remedies permitted by laws and regulations.

**Article VII.     Subsequent Transfer of Creditor's Rights**

Party A knows and acknowledges that the creditor's rights hereunder will be transferred among the Online Investors of Lancai.cn, with the transfer of creditor's rights to be registered in the system of Lancai.cn. Party A shall have the right to put forth inquiry requests to Party B and to know the name list of the ultimate beneficial creditors and their shares of creditor's rights as of a certain point in time.

The Parties confirm that, with the information right of Party A guaranteed, in consideration of the particularities of the transaction and for the convenience of the Parties, a written notice of the transfer of creditor's rights shall be deemed to have been served to Party A where the records of any subsequent transfer of creditor's rights are maintained in the system of Lancai.cn and can be accessed by Party A at any time.

**Article VIII.   Rights and Obligations of Party A**

(I)    Party A shall have the right to request Party B to issue the loan as agreed in the Contract.

(II)   Make withdrawals and full repayment of the loan principal and interest as agreed herein, bear all the expenses as provided herein, including, without limitation, the costs of notarization, appraisal, assessment, registration, etc. (if any).

[seal:] [illegible]
[seal:] [illegible]

7

(III)    Procure Party A to ensure the authenticity, legality, validity, and enforceability of the custody arrangement of the Underlying Interests hereunder.

(IV)    Where Party A is a legal person, in the event of any change in its industrial and commercial registration entries such as the domicile, mailing address, business scope, legal representative, etc., it shall notify Party B in writing within three days after the relevant change.

(V)    Comply with the other provisions hereof.

## Article IX.    Rights and Obligations of Party B

(I)    Issue the loan as an agent pursuant to the Contract, conduct centralized management of the creditor's rights and communicate with Party A pursuant to the authorization of the lenders and for the benefits and on the behalf of the lenders; provided, however, Party B shall not be a party in the credit-debt relationship or the guarantor thereof.

(II)    Party B's Custody Service, Fees, and Collection Method: Party B is entrusted to manage the Underlying Interests and perform the debt repayment guarantee obligations, and shall have the right to charge custody service fees, which shall be as provided in the Custody and Financing Cooperation Agreement specifically.

(III)    Comply with the other provisions hereof.

## Article X.    Representations and Warranties of Party A

Party A hereby makes the following representations and warranties to Party B, and Party B may rely upon such representations and warranties to issue the loan hereunder:

(I)    The execution of the Contract and the performance of the obligations hereunder by Party A are in compliance with the laws, administrative regulations, rules, and provisions of the articles of association or internal organizational documents of Party A, and have been approved and lawfully authorized by the competent corporate governing body and/or the competent authorities of the State.

(II)    Party A has provided the true, accurate, and complete user information and financing information;

[seal:] [illegible]
[seal:] [illegible]

8

(III)  Party A has truthfully provided the information of the outstanding loans with all the Internet lending information intermediaries;

(IV)  Party A undertakes that the financing projects are true and legitimate and that it will use the borrowed funds for the agreed purposes and will not use it for such other purposes as lending and high-risk investment;

(V)  Truthfully report to Party B any material information that affects or may affect the rights of the lenders as agreed;

(VI)  Confirm that it has the repayment ability that matches the loan amount and makes repayment as agreed in the Contract

**Article XI.    Liabilities for Breach of Contract**

(I)  Where either Party defaults hereunder, such Party shall bear the liabilities for breach of contract to the non-breaching Party and shall indemnify the non-breaching Party from and against the direct losses caused by its default.

(II)  In the event that Party A fails to repay the loan when due, the guarantee measures (if any) shall be implemented, and the debt repayment guarantee measures as provided in the Custody and Financing Cooperation Agreement in Annex I shall be implemented.

**Article XII.    Modification, Assignment, Rescission, or Termination of the Contract**

(I)  Neither Party may modify or terminate the Contract after the execution hereof.

(II)  Any modification to the Contract shall be made with the written agreement by the Parties reached through consultation.

(III)  Party B shall have the right to assign its rights and obligations hereunder to a third party, provided that Party A must be notified; Party A may not assign its rights or obligations hereunder to any third party without the consent of the other Party.

(IV)  The Contract may be rescinded or terminated under the following circumstances:

1.  With the written agreement by the Parties reached through consultation;

[seal:] [illegible]
[seal:] [illegible]

9

2. Where either Party commits any material default hereunder or breaches the Contract which hasn't been cured within three days after being so requested by the other Party, the non-breaching Party shall have the right to rescind or terminate the Contract;

3. The Contract may be rescinded or terminated pursuant to laws or other provisions hereof.

## Article XIII.  Governing Laws and Dispute Resolution

(I)    The Contract shall be governed by the laws of the People's Republic of China.

(II)   Any dispute arising from the performance of the Contract may be resolved through consultation, failing which either Party may bring such dispute for arbitration by the Beijing Arbitration Commission.

## Article XIV.  Miscellaneous

(I)    Assumption of Expenses

The following expenses shall be borne by Party A:

1.    The registration, custody, appraisal, notary expenses (if any) relating to the Contract;

2/    All the expenses actually incurred by Party B for the realization of the creditor's rights (including, without limitation, litigation costs, arbitration costs, property preservation costs, travelling expenses, execution costs, appraisal fees, auction costs, notary fees, service fees, announcement charges, attorney fees, etc., if any) shall be borne by Party A.

[seal:] [illegible]
[seal:] [illegible]

10

(II)    Notice

1.   Unless otherwise provided herein, all the notices hereunder between the Parties may be sent to the following addresses by fax, mail, courier, or such other means as may be agreed upon by the Parties:

Party A:     LeTV Sports Culture Develop (Beijing) Co., Ltd.
Address:     Building No. 13, Diantong Creativity Square, No. 7 Jiuxianqiao N Rd., Chaoyang District, Beijing
Telephone:  010-50963767
Fax:

Party B:     Shanghai Lancai Assets Management Co., Ltd.
Address:     Unit 2210, Block 3, Jinquan Time Building, No. 317 Datun Rd E., Chaoyang District, Beijing
Post Code:  100106
Telephone:  (010) 84874006
Fax:        (010) 84874586

2.   Either Party shall promptly notify the other Party in writing of any changes in its mailing address or contact information; any losses caused by the failure of such prompt notification shall be borne by the Party whose mailing address or contact information has changed.

(III)   Reservation of Rights

The rights of a Party hereunder shall not prejudice or preclude any other rights it may have under laws, regulations, and other contracts. Neither any tolerance, indulgence, or forbearance granted in connection with any breach or delay, nor any delay in exercising any rights hereunder shall be deemed as the waiver of the rights and interests hereunder or as the permission or acknowledgment of any breach hereof, nor shall it operate to limit, prevent, or preclude any continuous exercising of such right or the exercising of any other rights, or impose any obligation or liability on one Party to another.

(IV)   The Contract shall become effective upon being executed by or affixed with the personal seal of the legal representative or authorized representative and affixed with the company seal of both Parties.

(V)    Any matters not covered herein shall be governed by the relevant provisions of the Custody and Financing Cooperation Agreement; furthermore, both Parties may enter into

[seal:] [illegible]
[seal:] [illegible]

11

separate written agreements as the attachments hereto. Any attachment, modification, or supplement to the Contract shall be an integral part hereof, with the same legal force and effect.

(VI)    The Contract shall be made in two original copies, with one copy to be held by each Party, each of which shall have the same legal force and effect.

Party A has read all the provisions hereof. Party A acknowledges that Party B has made the relevant explanations of the provisions hereof. Party A has full knowledge and understanding of the meanings and the corresponding legal consequences of the provisions hereof.

(The remaining of the page is left blank intentionally)

[seal:] [illegible]
[seal:] [illegible]

This page is reserved for the signature page of the No. XYJK-2016003-01-JKHT Loan Contract with no main content

Party A: LeTV Sports Culture Develop (Beijing) Co., Limited (corporate seal)

[seal:] Seal of LeTV Sports Culture Develop (Beijing) Co., Ltd.

Legal representative/authorized representative (signature or seal)

[seal:] Personal seal of Gao Fei

[hw:] *December 1, 2016*

Party B: Shanghai Lancai Asset Management Co., Ltd. (corporate seal)

[seal:] Corporate seal of Shanghai Lancai Asset Management Co., Ltd.

Legal representative/authorized representative (signature or seal)

[seal:] Personal seal of Huang Zhe

[hw:] *December 1, 2016*

[seal:] [illegible]
[seal:] [illegible]

13

# Exhibit 4 – Award of the Beijing Arbitration Commission

# 北 京 仲 裁 委 员 会
## 裁 决 书

（2018）京仲裁字第 0146 号

申　请　人：上海懒财资产管理有限公司
住　　　所：上海市宝山区高逸路 112-118 号 6 幢 1049 室
法定代表人：廖志达　　总经理
委托代理人：孙　菲　　上海懒财资产管理有限公司员工
　　　　　　李　斌　　上海懒财资产管理有限公司员工

被 申 请 人：乐视体育文化产业发展（北京）有限公司
住　　　所：北京市朝阳区姚家园路 105 号 3 号楼 10 层 1103
法定代表人：雷振剑　　总经理
委托代理人：李　原　　该公司员工

被 申 请 人：乐视控股（北京）有限公司
住　　　所：北京市朝阳区姚家园路 105 号 3 号楼 10 层 1102
法定代表人：吴　孟　　经理
委托代理人：邹　义　　北京中书律师事务所律师

被 申 请 人：贾跃亭
身份证号码：1426231973 1215081X
住　　　址：山西省临汾市尧都区解放西路 31 号
委托代理人：邹　义　　北京中书律师事务所律师

北京仲裁委员会

　　北京仲裁委员会（以下简称本会）根据申请人上海懒财资产管理有限公司（以下简称申请人）向本会提交的仲裁申请书以及申请人与被申请人乐视体育文化产业发展（北京）有限公司（以下简称第一被申请人）、被申请人乐视控股（北京）有限公司（以下简称第二被申请人）、被申请人贾跃亭（以下简称第三被申请人，第一被申请人、第二被申请人、第三被申请人以下合称被申请人）之间签订的《借款合同》、《回购担保协议》中的仲裁条款以及有关法律的规定，于2017年6月28日受理了申请人与被申请人之间因上述合同所引起的争议仲裁案（以下简称本案）。本案编号为（2017）京仲案字第1504号。

　　本案适用本会自2015年4月1日起施行的《北京仲裁委员会仲裁规则》（以下简称仲裁规则）。

　　本会受理本案后，按照仲裁规则的规定向申请人送达了受理通知、仲裁规则、仲裁员名册等文件，并按照仲裁规则的规定向被申请人送达了答辩通知、仲裁申请书、申请人的证据材料、仲裁规则、仲裁员名册等文件。

　　因双方未按期选定仲裁员，双方亦未按期共同选定首席仲裁员，依据本会仲裁规则，本会主任指定吴胜春先生担任本案首席仲裁员、指定康乐女士、韩旭先生担任本案仲裁员，于2017年9月21日组成仲裁庭，适用普通程序审理本案。本会依据仲裁规则向双方当事人送达了组庭通知和开庭通知。同日，仲裁庭决定于2017年10月27日对本案进行开庭审理。本会按照仲裁规则的规定向双方当事人送达了本案组庭通知和开庭通知，双方均未对仲裁庭组成人员提出异议，亦未提出回避请求。

　　仲裁庭审阅了当事人提交的全部仲裁材料，于2017年10月27日在北京第一次开庭审理本案，申请人的代理人出席了庭审，被申请人经本会书面通知，无正当理由未到庭，仲裁庭对第一次开庭进行了缺席审理。2017年12月1日，仲裁庭在北京第二次开庭审理本案，申请人和被申请人均委派代理人出席了庭审，申请人陈述了仲裁请求及所依据的事实和理由，被申请人进行了答辩，当事人进行了举证质证，仲裁庭对本案有关的事实进行了调查，并组织当事人进行了辩论，庭审结束前，申请人与被申请人均发表了最后陈述意见。

　　本案现已审结。仲裁庭根据庭审情况和有关证据材料，经合议，依照相关法律及仲裁规则的规定作出本裁决。

　　现将本案案情、仲裁庭意见及裁决分述如下：

一　案　　　情

1

（一）申请人的仲裁请求

申请人称，2016年12月1日，申请人与第一被申请人签署《借款合同》，约定申请人向第一被申请人出借款项5000万元（人民币，下同），年利率为7.5%，借款本金于借款到期日一次性偿还，利息按季支付；同日，第一被申请人、第二被申请人、第三被申请人共同与申请人签订了《回购担保协议》，第二被申请人、第三被申请人自愿为第一被申请人履行《借款合同》项下的还款义务承担连带保证责任，保证期间为自担保债务清偿期限届满之日起2年。

《借款协议》及《回购担保协议》签订后，申请人即以银行转账方式向第一被申请人指定账户转账支付了5000万元借款。

申请人依照各方协议之约定，要求第一被申请人提前清偿本金5000万元，清偿所有应付未付利息945205.48元，并给付迟延履行利息，并通过多种方式与被申请人谋求解决方案，但被申请人以各种理由予以推诿，上述款项至今未获偿付。

申请人提出如下仲裁请求：

1. 第一被申请人向申请人支付：

（1）借款本金5000万元，给付利息945205.48元（从2017年3月15日起暂计算至2017年6月15日止，实际应计算至付清全部本息之日）；

（2）实现债权的费用暂定为1083000元；

2. 第二被申请人、第三被申请人对上述款项承担连带清偿责任；

3. 由各被申请人共同承担本案仲裁所发生的全部费用。

在第一次庭审过程中，申请人口头提出变更仲裁请求，2017年10月31日申请人以书面形式申请变更仲裁请求，仲裁庭接受了申请人的申请。

申请人最终的仲裁请求为：

1. 第一被申请人向申请人支付：

（1）偿还本金5000万元，给付利息1890410.96元（计算方式：5000×7.5%×184/365。利息计算请求自2017年3月15日至2017年9月15日共计184天，实际应计算至被申请人全部付清之日），支付罚息565万元（计算方式：50000000×0.05%×226，计算期间暂定为2017年03月15日至2017年10月27日共计226天，实际应计算至被申请人全部付清之日）；

（2）给付申请人为实现债权支出的费用，暂定为507028元，其中保全保险公司保费52028元，法院保全费5000元，律师费45万元；

2. 第二被申请人、第三被申请人对上述款项承担连带清偿责任；

3. 由被申请人承担本案仲裁所有费用。

（二）第一被申请人答辩意见及事实和理由

2

第一被申请人的代理人在第二次庭审中提交了书面答辩意见，并进行了口头答辩，其主要答辩意见如下：

1. 《借款合同》和《回购担保协议》存在《中华人民共和国合同法》第 52 条第 2 项规定的合同无效情形，即申请人与第二被申请人、第三被申请人恶意串通，损害了第一被申请人的利益，《借款合同》和《回购担保协议》无效，申请人无权要求第一被申请人向其支付借款本金、利息及实现债权的费用。具体理由如下：

（1）第一被申请人的公章由第二被申请人保管和使用，《借款合同》中第一被申请人印章的加盖未经第一被申请人审批同意，且第一被申请人对《借款合同》的签署不知情。

（2）《借款合同》项下的资金并未进入第一被申请人的账户。申请人所提供的 5000 万元借款均汇至北京多乐智慧科技有限公司在平安银行开立的账户上，第一被申请人从未指示申请人将款项汇至北京多乐智慧科技有限公司账户，第一被申请人也未从北京多乐智慧科技有限公司收到过任何款项。

（3）申请人对上述情况是知情的。

2. 在《借款合同》第四条约定了发放借款的前提条件，只有第一被申请人持续满足发放借款的前提条件，申请人才有义务代理发放借款，其中第六项前提条件是，第一申请人或其指定的代收付资金方已在懒财网合作机构开立资金存款账户。申请人需在借款发放前提条件满足之后一个时间段内，将借款金额发放至第一被申请人在懒财网合作银行开立的资金存款账户。申请人与第二被申请人恶意串通，损害第一被申请人利益，将借款发放至北京多乐智慧科技有限公司的账户上，不符合《借款合同》的约定，《借款合同》应当被认定为无效。

3. 第一被申请人公章自第一被申请人成立之日起至 2017 年 10 月 16 日均由徐展春专门管理，徐展春是第二被申请人专门负责印章保管的人员。

（三）第二被申请人答辩意见及事实和理由

第二被申请人的代理人在第二次庭审中进行了口头答辩，并在庭后提交了书面代理意见，其主要答辩意见如下：

1. 申请人并非本案的适格当事人，无权作为债权人向被申请人主张债权。

（1）根据《借款合同》的约定，网络投资人与第一被申请人才是《借款合同》项下债权债务关系的双方当事人，申请人没有提供证据证明网络投资人授权其作为代理人向借款人及担保人主张权利，申请人无权以《借款合同》为依据向被申请人主张债权。

（2）即使假设申请人是《借款合同》项下的债权人，因其已将该笔债权转让给韬蕴资本集团有限公司，其不再是本案的适格当事

3

人，无权向被申请人主张《借款合同》项下的债权。

申请人与韬蕴资本集团有限公司于 2017 年 7 月 14 日签订的《债权转让协议》，其已将《借款合同》项下的债权及其附属的一切权利和利益全部转让与韬蕴资本集团有限公司。申请人自《债权转让协议》生效时起即不再是本案的适格当事人，无权向被申请人主张《借款合同》项下的债权。

2.《借款合同》项下债权的还款期限尚未届满，且不存在借款提前到期的情形，申请人要求被申请人提前偿还款项缺乏事实与法律依据，应予驳回。

3. 申请人主张的罚息利率过高，违反中国人民银行的强制性规定，请求仲裁庭予以调整。

申请人与第一被申请人在《借款合同》中约定的罚息率为每日 0.05%，换算为年利率则为 18.25%。

《中国人民银行关于人民币贷款利率有关问题的通知》（银发 [2003]251 号）第三条明确规定："逾期贷款（借款人未按合同约定日期还款的借款）罚息利率由现行按日万分之二点一计收利息，改为在借款合同载明的贷款利率水平上加收 30%-50%"，申请人与第一被申请人签订的《借款合同》即属于上述情形。根据上述规定，罚息利率只能是在贷款利率水平上加收 30%-50%，申请人与第一被申请人约定的贷款利率为每年 7.5%，加收 30%-50%，应为 9.75%-11.25%。

本案中，申请人与第一被申请人约定的罚息利率高达 18.25%，比法律规定的最高罚息还要高出 60%，属于无效约定，对被申请人不公平，申请仲裁庭对于违反法律强制性规范的罚息利率予以调低。

4. 利息与罚息是两个不同的法律概念，在《借款合同》项下的借款期限内支付的是利息，借款逾期后收取的是罚息，申请人主张被申请人应当自 2017 年 3 月 15 日起既支付利息，又支付罚息，缺乏事实与法律依据，应予驳回。

利息与罚息是两个截然不同的法律概念，法律对其各自的计算期间有着明确的规定。根据《合同法》的规定，债务人在借款期限内应当按照借款合同约定的借款利率向债权人支付利息，若债务人未按照约定的期限返还借款的，债权人才可以自还款期限届满之日起按照约定或者国家有关规定向债务人主张逾期利息，即罚息。

本案中，《借款合同》项下债权的还款期限尚未届满，且不存在借款提前到期的情形。在还款期限内，债权人应当根据《借款合同》第三条第三款的约定，按照年利率 7.5%的标准向债务人计收利息。至 2017 年 12 月 2 日还款期限届满后，若债务人未还清本金，债权人才有资格依法计收罚息。申请人在第一项仲裁请求中主张被申请人既支付自 2017 年 3 月 15 日至 2017 年 9 月 15 日的利息，又支付自 2017

4

年 3 月 15 日至 2017 年 10 月 27 日的罚息，无事实与法律依据，无故加重被申请人的负担，依法应予驳回。

5. 申请人在仲裁请求中主张的实现债权的费用属于不当加重被申请人的负担，该部分费用不应由被申请人承担。

6. 被申请人承担担保责任的条件尚未成就，申请人无权要求第二被申请人承担担保责任。

（1）主合同《借款合同》项下债权的还款期限尚未届满，且不存在借款提前到期的情形，此种状态下，申请人无权要求被申请人承担从合同项下的担保责任。

（2）申请人未按照《回购担保协议》的约定向申请人发出书面《回购通知书》，被申请人承担担保责任的条件尚未成就。

（四）第三被申请人答辩意见及事实和理由

第三被申请人的代理人在第二次庭审中进行了口头答辩，并在庭后提交了书面代理意见，其提出的答辩意见与第二被申请人的上述答辩意见相同，并补充提出如下答辩意见：

《回购担保协议》中关于第三被申请人以个人身份为第二被申请人的回购义务承担无限连带责任的约定系通过格式条款将公司的有限责任无限化至法定代表人个人身上，应属无效，第三被申请人不应向申请人承担担保责任。

我国《公司法》明确规定，公司以其自有的全部财产对公司的债务承担责任。本案中，第二被申请人与申请人签署了《回购担保协议》，约定其为第一被申请人与申请人直接的借款承担连带保证责任和回购义务，这是公司的有限责任。而申请人将原第二被申请人的法定代表人即第三被申请人列入《回购担保协议》，要求其为第二被申请人的回购义务承担连带责任，此乃通过格式条款将公司的有限责任无限化至法定代表人个人身上。仲裁庭应当对交易主体间事实上的不平等给予适当的平衡，对不合理条款进行规制，以求实质正义。

（五）当事人举证及质证情况

申请人为支持其仲裁请求，向仲裁庭提交了如下证据材料：

证据 1，《借款合同》，拟证明申请人和第一被申请人之间的借贷关系，借款金额 5000 万元，利率 7.5%，对于还款时间和提前还款都做了明确约定；

证据 2，《回购担保协议》，拟证明第二被申请人和第三被申请人，为申请人与第一被申请人之间的债权债务关系提供连带责任担保；

证据 3，转款凭证，拟证明申请人已经向被申请人给付了出借款项，履行了出借义务；

证据 4，收款确认书，拟证明的内容同证据 3；

证据 5，保全费收据，拟证明申请人为实现债权支出了 5000 元保全费用；

证据 6，保险费发票，拟证明申请人为实现债权支付保险公司保费，用以保全被申请人的财产；

证据 7，律师费发票，拟证明为了保全财产，申请人支付律师费，发票金额总计 45 万元；

证据 8，律师代理合同拟证明申请人为本案花费律师费 45 万元；

证据 9，《代收代付协议》，拟证明被申请人已收款 5000 万元，申请人已履行借款发放义务；

证据 10，签约现场照片，第一被申请人明知涉案借款事宜，其 CEO 雷振剑在签约现场；

证据 11，授权委托书，拟证明申请人主张债权参加仲裁获得原债权人同意；

证据 12，债权催收函，拟证明申请人 2017 年 5 月 17 日通知借款提前到期，保证认人应承担保证责任。

第一被申请人对申请人提交的证据提出如下质证意见：

对于证据 1 至证据 4，真实性均予以认可，但是对第一被申请人无效；

对于证据 5 至证据 8，真实性均予以认可，不认可保险费、保全费、律师费与本案的关联性。

对于证据 9，真实性认可，不认可证明目的；

对于证据 10，真实性认可，关联性不认可。照片仅仅是照了一下第一被申请人的办公环境，特别是大门，那个地方是没有闸机的，是任何人都可以拍照的；这些照片并不足以和《借款合同》签订形成关联关系，本案没有其他的证据可以证明照片就是在合同签订时拍摄的；在《借款合同》签署页，有第一被申请人公章以及一个名叫"高飞"的人名章，这两个章都不在第一被申请人管理范围内，"高飞"是第一被申请人当时挂名的董事长，他的职位是乐视视频总裁，属于乐视总部的一个人；

对于证据 11 和证据 12，第一被申请人未提出质证意见。

第二被申请人对申请人提交的证据提出如下质证意见：

对于证据 1 至证据 4，真实性均予以认可，不认可证明目的，未能证明谁有资格主张债权及什么时候可以主张债权，申请人不具备主张权利的主体资格，申请人主张提前还款的证据不足，不应当将企业承担的法律责任转嫁由法定代表人承担。

对于证据 5 至证据 8，真实性均予以认可，但实现债权的费用应当由申请人自行承担，《借款合同》的利息本来就比银行的 4.7% 的贷款利率高出将近一倍，申请人可以依据合同取得较高的利益，而实

6

现债权的费用是其主张债权应当支出的必要费用，所谓实现债权的费用约定由借款人和担保人承担，加重了借款人和担保人的经济负担，变相地提高了利率的获利标准；

对于证据 9，真实性认可；

对于证据 10，真实性认可，证明目的认可；

对于证据 11 和证据 12，第二被申请人未提出质证意见。

第三被申请人对申请人提交的证据亦提出了质证意见，对于证据 1 至证据 10，第三被申请人的质证意见与第二被申请人的质证意见相同，对于证据 11 和证据 12，第三被申请人未提出质证意见。

第一被申请人提出如下证据：

证据 1，印章交接单，拟证明第一被申请人公章以及合同章，在交接日 2017 年 10 月 16 日之前，由第二被申请人管理。印章移交人也就是交接单上的签署人徐展春，是第二被申请人印章及档案管理部员工；

证据 2，国家企业信用信息公示系统查询结果，拟证明北京多乐智慧科技有限公司的注册资本金仅有 50 万元，北京多乐智慧科技有限公司和第一被申请人之间不存在任何关系，且该公司目前仍然处于持续经营状态；

证据 3，关于懒财网股权变化和投资情况的媒体报道，拟证明第二被申请人在 2016 年 8 月投资懒财网，当时懒财网宣布完成 1.8 亿元的 B 轮融资，该融资由乐视控股（北京）有限公司领投，君联资本跟投。懒财网与第二被申请人和乐视体系之间关系密切，并且懒财对于第二被申请人以及乐视相关公司的关联情况和经营管理情况，应当是知情的；

证据 4，乐视员工信息查询结果，拟证明徐展春（印章交接单签署人）是第二被申请人行政部印章及档案管理部员工；

证据 5，《债权转让协议》，拟证明申请人与韬蕴资本集团有限公司于 2017 年 7 月 14 日在北京市朝阳区签署了《债权转让协议》，约定第一被申请人与申请人签署的《借款合同》债权本金 5000 万元，以 5000 万元整的对价，转让给韬蕴资本集团有限公司，申请人并没有申请仲裁的权利基础。

申请人对第一被申请人提交的证据提出如下质证意见：

对于证据 1，真实性无法确认，证明目的不认可。第一被申请人想要证明其在 2017 年 10 月 16 日之前对印章没有管理权，从而否定这份合同是其真实意思表示，印章的使用和内部审批属于第一被申请人内部的决策行为，不应当对外部第三人发生效力，不应当以自己内部决策瑕疵来否认《借款合同》非其真实意思表示。《借款合同》是到第一被申请人的办公场所签署的，第一被申请人知晓《借款合同》

7

签署的事实；

对于证据 2，真实性认可，证明目的不认可。北京多乐智慧科技有限公司虽然只有 50 万元注册资本，但并不妨碍其代理第一被申请人接受申请人发放的借款 5000 万元，不同意追加北京多乐智慧科技有限公司作为本案的第三人；

对于证据 3，真实性认可，证明目的不认可，懒财网与第二被申请人和乐视体系在 2016 年 8 月有投资和被投资的关系，第一被申请人和第二被申请人是关联公司，如果第一被申请人认为第二被申请人串通损害其利益，那也是他们内部的不当决策所造成的，内部不当决策行为造成的不利后果，不应该由善意的申请人承担；

对于证据 4，真实性无法确认，假定这份证据是真实的，对于证明目的也不认可。第一被申请人和第二被申请人之间应该是有关联关系，第二被申请人对第一被申请人印章的使用，应当是获得了第一被申请人的授权；

对于证据 5，真实性无法确认，证明目的不认可。

第二被申请人对第一被申请人提交的证据提出如下质证意见：

对于证据 1，真实性无法确认，证明目的不认可；

对于证据 2，真实性认可，证明目的不认可；

对于证据 3，不符合电子证据的形式性要件，真实性无法确认；

对于证据 4，对该证据的合法性存疑；

对于证据 5，真实性认可，证明目的认可。

第三被申请人对第一被申请人提交的证据亦提出了质证意见，其质证意见与第二被申请人的质证意见相同。

第二被申请人提出如下证据：

证据 1，申请人与韬蕴资本集团有限公司于 2017 年 7 月 14 日签署的《债权转让协议》，拟证明即使假设申请人是《借款合同》项下的债权人，其已将《借款合同》项下的债权及其附属的一切权利和利益全部转让与韬蕴资本集团有限公司。申请人自《债权转让协议》生效时起即不再是本案的适格当事人，无权向被申请人主张《借款合同》项下的债权；

证据 2，申请人与第一被申请人及北京懒财信息科技有限公司于 2016 年 12 月 1 日签订的《委托管理及融资合作协议》，拟证明本案的借款行为是真实有效发生的，《借款合同》系列共有 6 份文件，是个完整的证据链条，相关协议均为各方真实意思表示，履行了相应签约及履行手续，不存在第一被申请人所说的申请人与第二被申请人在其不知情的情况下恶意串通的情形；

证据 3，第一被申请人与 LETV SPORTS CULTURE DEVELOP（HONG KONG）Co. Limited 于 2016 年 12 月 1 日签订的《收益权转让协议》，

拟证明的内容同证据2；

证据4，第一被申请人与 LETV SPORTS CULTURE DEVELOP（HONG KONG） Co. Limited 于 2016 年 12 月 1 日签订的《收益权凭证》，拟证明的内容同证据2。

申请人对第二被申请人提交的证据提出如下质证意见：

对于证据1，真实性无法确认，证明目的不认可；

对于证据2至证据4，真实性均予以认可。

第一被申请人对第二被申请人提交的证据提出如下质证意见：

对于证据1，真实性认可，证明目的认可；

对于证据2至证据4，真实性均予以认可，证明目的不认可。

第三被申请人对第二被申请人提交的证据提出如下质证意见：

对于证据1，真实性认可，证明目的认可；

对于证据2至证据4，真实性均予以认可。

第三被申请人未向仲裁庭提交证据材料。

## 二 仲裁庭意见

根据本案当事人提交的有效证据并结合庭审情况，仲裁庭现就仲裁庭意见分述如下：

（一）关于《借款合同》和《回购担保协议》的效力

第一被申请人主张，《借款合同》和《回购担保协议》存在《中华人民共和国合同法》第 52 条第 2 项规定的合同无效情形，第一被申请人的公章由第二被申请人保管和使用，《借款合同》中第一被申请人印章的加盖未经第一被申请人审批同意，且第一被申请人对《借款合同》的签署不知情，即申请人与第二被申请人、第三被申请人恶意串通，损害了第一被申请人的利益，《借款合同》和《回购担保协议》无效。

仲裁庭查明，《借款合同》和《回购担保协议》均加盖了第一被申请人的公章，对该公章的真实性，各方当事人均未提异议。《合同法》第 49 条规定，行为人没有代理权，超越代理权或者代理权终止后以被代理人的名义订立合同，相对人有理由相信行为人有代理权的，该代理行为有效。仲裁庭认为，第一被申请人将其公章交由第二被申请人保管和使用，则申请人可合理认为第一被申请人已经授予第二被申请人代理权；即使第一被申请人不认可授予第二被申请人代理权，第二被申请人在《借款合同》和《回购担保协议》加盖第一被申请人公章的行为，亦构成《合同法》第 49 条规定的表见代理，该代理行为有效。仲裁庭认为，本案并无证据证明申请人和第二被申请人恶意串通损害第一被申请人的利益，《借款合同》和《回购担保协议》

9

并不存在《合同法》第 52 条规定的合同无效的情形，《借款合同》
和《回购担保协议》是各方当事人真实意思表示，合法有效。

（二）关于申请人是否有权主张《借款合同》项下债权

第一被申请人主张，根据《借款合同》的约定，网络投资人与第
一被申请人才是《借款合同》项下债权债务关系的双方当事人，申请
人没有提供证据证明网络投资人授权其作为代理人向借款人及担保
人主张权利，申请人无权以《借款合同》为依据向被申请人主张债权。

仲裁庭查明，申请人与第一被申请人签订的《借款合同》约定，
申请人代理懒财网特定用户向第一被申请人发放借款的金额不超过
5000 万元整，实际借款金额、初始借款金额、初始借款人明细及起
始日期以懒财网合作机构的资金存管系统电子交易记录为准（《借款
合同》第一条）；申请人应当按照《借款合同》的约定代理发放借款，
按照出借人授权、为出借人利益代理出借人集中管理债权并与第一被
申请人沟通联络，但乙方并非债权债务关系的一方或担保方（《借款
合同》第九条第一款）。仲裁庭认为，《借款合同》上述条款表明，
申请人已经向第一被申请人充分披露，申请人是代理懒财网特定用户
"发放借款"和"集中管理债权"，如果对合同条款进行文义解释，
"集中管理债权"理应包括依法采取法律措施向借款人主张债权收回
借款。仲裁庭认为，申请人以自身名义代理懒财网特定用户发放借款
并回收借款，符合互联网金融中常见的业务模式，本案中亦无任何证
据证明申请人无权代理懒财网特定用户发放借款并回收借款。仲裁庭
认为，第一被申请人主张申请人无权以《借款合同》为依据行使债权，
既无法律依据，亦无合同依据，仲裁庭对该主张不予支持。

三位被申请人均主张，申请人与韬蕴资本集团有限公司于 2017
年 7 月 14 日签订的《债权转让协议》，其已将《借款合同》项下的
债权及其附属的一切权利和利益全部转让与韬蕴资本集团有限公司。
申请人自《债权转让协议》生效时起即不再是本案的适格当事人，无
权向被申请人主张《借款合同》项下的债权。

仲裁庭查明，第一被申请人、第二被申请人提交的申请人与韬蕴
资本集团有限公司于 2017 年 7 月 14 日签订的《债权转让协议》约定，
申请人将其在《借款合同》项下的债权转让给韬蕴资本集团有限公司，
韬蕴资本集团有限公司同意受让（《债权转让协议》鉴于条款、第一
条、第二条第 1 款）；自韬蕴资本集团有限公司支付完转让对价款后，
申请人不再享有标的债权及其附属的一切权利和利益，包括但不限于
基于标的债权收取利息的权利（《债权转让协议》第二条第 4 款）。
仲裁庭特别注意到，《债权转让协议》第二条第 6 款明确约定，申请
人同意标的债权转让后，申请人以债权人的身份代韬蕴资本集团有限
公司向第一被申请人主张债权。《合同法》第 80 条第 1 款规定，"债

权人转让权利的，应当通知债务人。未经通知，该转让对债务人不发生效力"。仲裁庭认为，第一被申请人、第二被申请人提交的申请人与韬蕴资本集团有限公司签订的《债权转让协议》为复印件，仲裁庭无法核实《债权转让协议》的真实性；假设《债权转让协议》是真实的，则申请人亦有权依据《债权转让协议》第二条第 6 款的约定向第一被申请人主张债权；本案中，并无证据证明申请人向第一被申请人发出债权转让通知，通知第一被申请人仅向受让人韬蕴资本集团有限公司履行债务，因此该转让对第一被申请人不发生效力。仲裁庭认为，三位被申请人主张自《债权转让协议》生效时起申请人无权主张《借款合同》项下的债权，既无法律依据，亦无合同依据，仲裁庭对该主张不予支持。

根据上述分析，仲裁庭认为，申请人有权主张《借款合同》项下债权。

（三）关于借款本金的偿还

申请人请求，第一被申请人向申请人偿还借款本金 5000 万元。

第一被申请人主张，申请人并未将《借款合同》项下 5000 万元借款资金汇入第一被申请人的账户，而是汇入北京多乐智慧科技有限公司在平安银行开立的账户上，第一被申请人从未指示申请人将款项汇至北京多乐智慧科技有限公司账户。申请人将借款发放至北京多乐智慧科技有限公司的账户上，不符合《借款合同》关于发放借款的前提条件的约定。

仲裁庭查明，《借款合同》第四条借款发放的前提条件进行了如下约定："除乙方（申请人，仲裁庭注）全部或部分放弃外，只有甲方（第一被申请人，仲裁庭注）持续满足下列前提条件，乙方才有义务代理发放借款"。仲裁庭认为，依据上述约定，要求第一被申请人满足借款发放的前提条件才发放借款，是申请人的权利，并不构成申请人的义务。

仲裁庭查明，2016 年 12 月 2 日，申请人通过北京懒财信息科技有限公司的账户将 5000 万元款项分 6 笔汇入北京多乐智慧科技有限公司的账户。仲裁庭查明，2016 年 12 月 2 日，第一被申请人与北京多乐智慧科技有限公司共同向申请人出具《收款确认通知书》，确认收到申请人委托北京懒财信息科技有限公司的账户支付的 5000 万元借款。

依据仲裁庭查明的上述事实，仲裁庭认为，申请人已经依据《借款合同》的约定向第一被申请人发放了 5000 万元借款。

仲裁庭查明，《借款合同》第二条约定，借款期限为 12 个月，按照该约定，截至 2017 年 12 月 2 日借款期限届满。仲裁庭认为，依据《借款合同》的约定，借款期限届满后，第一被申请人有义务向申

11

诉人归还借款本金和利息。

　　本案并无任何证据证明，2017 年 12 月 2 日借款期限届满后，被申请人向申请人归还过任何借款本金。

　　仲裁庭认为，申请人请求第一被申请人向其偿还借款本金 5000 万元，符合《借款合同》的约定，仲裁庭对该仲裁请求予以支持。

　　（四）关于借款利息的仲裁请求

　　申请人请求，第一被申请人向申请人给付利息 1890410.96 元（计算方式：5000 万×7.5%×184/365）。利息计算请求自 2017 年 3 月 15 日至 2017 年 9 月 15 日共计 184 天，实际应计算至被申请人全部付清之日）。

　　仲裁庭查明，《借款合同》第三条约定，借款年利率为 7.5%，日利率=年利率/365，利息结算日为每年的 3 月 15 日、9 月 15 日、12 月 15 日和第一被申请人归还本金之日，若第一被申请人逾期偿还借款，债权人有权加计每日万分之五的罚息，直至该违约行为或情况不存在为止。

　　在庭审过程中，申请人确认，2017 年 3 月 15 日之前，第一被申请人应当支付的利息已经给付，2017 年 3 月 15 日之后第一被申请人未向申请人支付过利息。本案中没有任何证据证明，2017 年 3 月 15 日之后被申请人向申请人支付过利息。

　　仲裁庭认为，申请人关于利息的仲裁请求符合《借款合同》的约定，仲裁庭予以支持，即第一被申请人应向申请人支付借款利息，借款利息应以 5000 万元为基数，按年利率 7.5%自 2017 年 3 月 15 日计至本息全部结清之日，暂计至 2017 年 9 月 15 日为 1890410.96 元（5000万×7.5%×184/365）。

　　（五）关于罚息的仲裁请求

　　申请人请求第一被申请人支付罚息 565 万元（计算方式：50000000×0.05%×226，计算期间暂定为 2017 年 03 月 15 日至 2017 年 10 月 27 日共计 226 天，实际应计算至被申请人全部付清之日）。

　　仲裁庭查明，申请人与第一被申请人签署的《借款合同》约定，借款期限为 12 个月（《借款合同》第二条）；若第一被申请人逾期偿还借款，债权人有权加计每日万分之五的罚息，直至该违约行为或情况不存在为止（《借款合同》第三条）。

　　仲裁庭查明，2016 年 12 月 2 日，申请人按照《借款合同》的约定发放了 5000 万元借款，《借款合同》第二条约定，借款期限为 12 个月，按照该约定，截至 2017 年 12 月 2 日借款期限届满。

　　本案无充分证据证明申请人向第一被申请人送达过提前回收贷款的通知，本案亦无充分证据证明申请人有权提前回收贷款，仲裁庭认为，依据《借款合同》的上述约定，2017 年 12 月 2 日借款期限届

12

满后，第一被申请人未按时归还借款本息才构成第一申请人逾期偿还借款，申请人才有权加计罚息。

关于罚息标准，第二被申请人和第三被申请人主张，申请人与第一被申请人在《借款合同》中约定的罚息利率为每日万分之五，换算为年利率则为 18.25%，违反中国人民银行的强制性规定，属于无效约定。《中国人民银行关于人民币贷款利率有关问题的通知》（银发[2003]251 号）第三条明确规定："逾期贷款（借款人未按合同约定日期还款的借款）罚息利率由现行按日万分之二点一计收利息，改为在借款合同载明的贷款利率水平上加收 30%-50%"。根据上述规定，罚息利率只能是在贷款利率水平上加收 30%-50%，申请人与第一被申请人约定的贷款利率为每年 7.5%，加收 30%-50%，应为 9.75%-11.25%。申请人与第一被申请人约定的罚息利率，对被申请人不公平，申请仲裁庭予以调低。第二被申请人和第三被申请人还主张，利息与罚息是两个不同的法律概念，申请人主张被申请人应当自 2017 年 3 月 15 日起既支付利息，又支付罚息，缺乏事实与法律依据。

《合同法》第 207 条规定，"借款人未按照约定的期限返还借款的，应当按照约定或者国家有关规定支付逾期利息"。仲裁庭认为，依据《合同法》的规定，借贷双方有权对逾期罚息进行约定，《中国人民银行关于人民币贷款利率有关问题的通知》（银发[2003]251 号）亦未禁止借贷双方对罚息利率另行约定。

《最高人民法院关于审理民间借贷案件适用法律若干问题的规定》第 29 条规定，"借贷双方对逾期利率有约定的，从其约定，但以不超过年利率 24%为限"；第 30 条规定，"出借人与借款人既约定了逾期利率，又约定了违约金或者其他费用的，出借人可以选择主张逾期利息、违约金或者其他费用，也可以一并主张，但总计超过年利率 24%的部分，人民法院不予支持"。参考最高人民法院上述司法解释的规定，仲裁庭认为，借款逾期后，出借人对利息、加计的罚息有权一并主张，但应以不超过年利率 24%为限。本案借款的年利率为 7.5%，逾期加计的罚息按每日万分之五计算折合年利率为 18.25%，两者相加已经超过年利率 24%，仲裁庭认为，罚息利率应调低至年利率 16.5%。

根据以上仲裁庭意见，对于申请人请求第一被申请人向其支付罚息，仲裁庭予以部分支持，仲裁庭认为，第一被申请人应向申请人支付罚息，罚息应以 5000 万元为基数，按年利率 16.5%自 2017 年 12 月 2 日（不含当日）计至本息全部结清之日。

（六）关于实现债权费用

申请人请求第一被申请人向其给付为实现债权支出的费用 507028 元，其中保全保险公司保费 52028 元，法院保全费 5000 元，

律师费 45 万元。

　　仲裁庭查明，《借款合同》第十四条第（一）款约定，申请人为实现债权而实际发生的一切费用（包括但不限于诉讼费、仲裁费、财产保全费、差旅费、执行费、评估费、拍卖费、公证费、送达费、公告费、律师费等，如有）均由第一被申请人承担。仲裁庭认为，上述约定是申请人与被申请人真实意思表示，不违反法律行政法规的强制性规定，依法有效。仲裁庭查明，申请人为实现债权，支出财产保全费 5000 元、财产保全责任保险费 52028 元、律师费 45 万元，以上费用合计 507028 元。

　　被申请人主张，申请人在仲裁请求中主张的实现债权的费用属于不当加重被申请人的负担，该部分费用不应由被申请人承担。仲裁庭认为，申请人支出的实现债权的费用是因为被申请人而导致的，被申请人不承担上述费用的主张无合同依据，也无法律依据，仲裁庭不予认可。

　　仲裁庭认为，申请人关于实现债权费用的仲裁请求，符合《借款合同》上述约定，仲裁庭予以支持，第一被申请人应向申请人支付申请人为实现债权支出的费用 507028 元。

　　（七）关于第二被申请人、第三被申请人对第一被申请人债务连带清偿责任的仲裁请求

　　仲裁庭查明，申请人与三位被申请人签订的《回购担保协议》约定：第二被申请人同意并承诺，为第一被申请人与申请人之间的借款承担不可撤销的连带保证责任和回购义务；第三被申请人同意并承诺以个人身份为第二被申请人上述义务承担无限连带责任（《回购担保协议》鉴于条款第 2 项）；在第二被申请人和第三被申请人同意并承诺为第一被申请人提供回购和担保的前提下，申请人同意为第一被申请人提供流动性借款（《回购担保协议》鉴于条款第 3 项）；为确保第一被申请人按申请人与第一被申请人签订的《借款合同》的约定偿还申请人的借款，第二被申请人和第三被申请人同意对第一被申请人于《借款合同》项下义务（包括但不限于第一被申请人不履行或履行不符合《借款合同》约定）向申请人提供不可撤销连带责任担保（《回购担保协议》鉴于条款第 4 项）。

　　仲裁庭查明，《回购担保协议》明确约定了担保方式，第二被申请人和第三被申请人提供的担保方式为连带责任担保，当第一被申请人没有履行或者没有全部履行其在《借款合同》下债务时，申请人有权直接要求第二被申请人和第三被申请人承担担保责任（《回购担保协议》第二条第 1 款）。

　　仲裁庭查明，《回购担保协议》明确约定了担保范围，第二被申请人和第三被申请人担保的范围是第一被申请人没有按照《借款合

14

同》的约定履行义务，给申请人造成的损失，包括：第一被申请人未按照《借款合同》的约定按时、足额缴纳本金、利息、罚息、保险费、保证金、赔偿金以及第一被申请人应支付的其它费用；申请人为实现以上权益而支出的全部费用，包括但不限于律师费、诉讼费、差旅费等（《回购担保协议》第二条第3款）。

第二被申请人和第三被申请人主张，被申请人承担担保责任的条件尚未成就，申请人无权要求被申请人承担担保责任。仲裁庭认为，依据《回购担保协议》的上述约定，一旦《借款合同》履行期限届满，第一被申请人未按约定履行《借款合同》项下债务，则第二被申请人和第三被申请人承担担保责任的条件已经成就，因此，第二被申请人和第三被申请人上述答辩主张无合同依据，亦无法律依据，仲裁庭不予支持。

第三被申请人还主张，《回购担保协议》中关于第三被申请人以个人身份为第二被申请人的回购义务承担无限连带责任的约定系通过格式条款将公司的有限责任无限化至法定代表人个人身上，应属无效，被申请人三不应向申请人承担担保责任。仲裁庭认为，第三被申请人和第二被申请人是相互独立的民事主体，第三被申请人为第二被申请人的回购义务承担连带责任是其真实意思表示，不违反法律行政法规的强制性规定，依法有效；另外，从《回购担保协议》的上述约定看，第三被申请人为第一被申请人在《借款合同》项下的债务承担连带责任，是其真实意思表示，不违反法律行政法规的强制性规定，依法有效；第三被申请人主张《回购担保协议》约定的相关条款是无效的格式条款，并无事实依据和法律依据。仲裁庭认为，第三被申请人上述答辩主张无合同依据，亦无法律依据，仲裁庭不予支持。

申请人请求，第二被申请人、第三被申请人对第一被申请人上述债务承担连带清偿责任，仲裁庭认为，该项请求符合《回购担保协议》的约定，符合《担保法》关于连带责任保证的相关规定，仲裁庭予以支持。

（八）关于仲裁费用的承担

申请人请求，由被申请人承担本案仲裁费用。根据仲裁规则第五十一条第（二）款的规定，结合本案实际情况，仲裁庭认为，本案仲裁费应全部由被申请人承担。

## 三　裁　决

根据上述事实和理由，本案仲裁庭裁决如下：

（一）第一被申请人向申请人偿还借款本金5000万元；

（二）第一被申请人向申请人支付借款利息，借款利息应以5000

万元为基数，按年利率 7.5%自 2017 年 3 月 15 日（不含当日）计至本息全部结清之日，暂计至 2017 年 9 月 15 日为 1890410.96 元；

（三）第一被申请人应向申请人支付罚息，罚息应以 5000 万元为基数，按年利率 16.5%自 2017 年 12 月 2 日（不含当日）计至前述本息全部结清之日；

（四）第一被申请人应向申请人支付申请人为实现债权支出的费用 507028 元；

（五）第二被申请人、第三被申请人对上述第（一）项、第（二）项、第（三）项、第（四）项裁决项下第一被申请人对申请人的债务承担连带清偿责任；

（六）本案仲裁费 319740 元（已由申请人全额预交），全部由被申请人承担，被申请人应直接向申请人支付申请人代其垫付的仲裁费 319740 元。

上述被申请人应向申请人支付的款项，被申请人应于本裁决书送达之日起 10 日内支付完毕。逾期履行的，按照《中华人民共和国民事诉讼法》第二百五十三条的规定，加倍支付延迟履行期间的债务利息。

本裁决为终局裁决，自作出之日起生效。



首席仲裁员(签字)：

仲　裁　员(签字)：

仲　裁　员(签字)：

2018 年 1 月 22 日于北京



TRANSPERFECT

# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

File Name(s):        裁决书（乐视体育债转）

Source Language(s):    Simplified Chinese (CN)

Target Language(s):    English (US)

*Authorized Signature:*



Name:    Sylvia Lau

Title:    *Project Assistant*

Date:    *27 Nov 2018*

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

# Award of the Beijing Arbitration Commission

(2018) Jing Zhong Cai Zi No. 0146

| | | |
|---|---|---|
| Claimant: | Shanghai Lan Cai Asset Management Co., Ltd. | |
| Residential address: | Rm 1049, Building 6, No. 112-118 Gao Yi Road, | |
| | Baoshan District Shanghai City | |
| Legal representative: | Liao Zhida | General Manager |
| Entrusted agent: | Sun Fei | Staff member of Shanghahi Lan Cai Asset Management Co., Ltd. |
| | Li Bin | Staff member of Shanghahi Lan Cai Asset Management Co., Ltd. |

| | | |
|---|---|---|
| Respondent: | LeTV Sports Culture Develop (Beijing) Co., Ltd. | |
| Residential address: | 1103, Level 10, Building 3, No. 105 Yao Jia Yuan Road, | |
| | Chaoyang District Beijing City | |
| Legal representative: | Lei Zhenjian | General Manager |
| Entrusted agent: | Li Yuan | Staff member of this company |

| | | |
|---|---|---|
| Respondent: | TV Plus Holdings (Beijing) Limited | |
| Residential address: | 1102, Level 10, Building 3, No. 105 Yao Jia Yuan Road, | |
| | Chaoyang District Beijing City | |
| Legal representative: | Wu Meng | Manager |
| Entrusted agent: | Zou Yi | Beijing Zhong Shu Law Offices |

| | | |
|---|---|---|
| Respondent: | Jia Yueting | |
| ID card No.: | 14262319731215081X | |
| Residential address: | No. 31, Jie Fang West Road, Yaodu District, Lifen City, Shanxi Province | |
| Entrusted agent: | Zou Yi | Beijing Zhong Shu Law Offices |

[seal:] Beijing Arbitration Commission Cross-page Seal

0

The Beijing Arbitration Commission (hereinafter referred to as the "Commission") has, in accordance with the Arbitration Application submitted by Claimant Shanghai Lan Cai Asset Management Co., Ltd. (hereinafter referred to as "Claimant") to the Commission as well as the arbitration terms in the Loan Contract and the Repurchase Guarantee Agreement executed by and between the Claimant and Respondent LeTV Sports Culture Develop (Beijing) Co., Ltd. (hereinafter referred to as "1st Respondent"), Respondent TV Plus Holdings (Beijing) Limited (hereinafter referred to as "2nd Respondent") and Respondent Jia Yueting (hereinafter referred to as "3rd Respondent". The 1st, 2nd and 3rd Respondents are hereinafter collectively referred to as "Respondents") and the provisions of the relevant laws, accepted on June 28, 2017 the dispute arbitration case arising between the Claimant and the Respondents from the abovementioned contracts (hereinafter referred to as the "Case"). Case code: (2017) Jing Zhong An Zi No. 1504.

This Case shall be governed by the *Arbitration Rules of the Beijing Arbitration Commission* implemented from April 1, 2015 (hereinafter referred to as "arbitration Rules").

After having accepted this Case, documents such as the Notification of Acceptance, Arbitration Rules and Roster of Arbitrators have been served upon the Claimant in accordance with the provisions of the Arbitration Rules; and documents such as the Request for Submission of Answer, Arbitration Application, evidentiary materials of the Claimant, Arbitration Rules and Roster of Arbitrators have been served upon the Respondents in accordance with the Arbitration Rules.

Due to the failure of both parties to nominate an arbitrator within the required timeframe, and the failure of both parties to jointly nominate a chief arbitrator within the required timeframe, in accordance with the Arbitration Rules of the Commission, the Director of the Commission has nominated Mr. Wu Shengchun to act as chief arbitrator for this Case, and Ms. Kang Le and Mr. Han Xu to act as arbitrators for this Case, to form an arbitration tribunal on September 21, 2017, and apply the normal procedures to the hearing of this Case. The Commission has, in accordance with the Arbitration Rules, served upon both parties Notification of Formation of the Tribunal and Notification of Tribunal Hearing. On the same day, the Arbitration Tribunal decided to conduct tribunal hearing of this Case on October 27, 2017. The Commission has served upon both parties the Notification of Formation of the Tribunal and Notification of Tribunal Hearing in accordance with the provisions of the Arbitration Rules, and neither party has raised any oppositions to the members of the arbitration tribunal, nor has any request for recusal been raised.

The arbitration tribunal has reviewed all the materials for arbitration submitted by the parties, and conducted the first tribunal hearing of this Case in Beijing on October 27, 2017. The agent of the Claimant attended the hearing, and the Respondents failed to appear before the tribunal without a justifiable cause despite having been advised in writing to do so by the Commission, the arbitration tribunal conducted a default hearing in the said first tribunal hearing. On December 1, 2017, the arbitration tribunal conducted a second tribunal hearing of this Case, where both the Claimant and the Respondents attended by way of their agents. The Claimant stated their arbitration claims and the facts and reasons which such claims were based upon. The Respondents answered the claims. The parties produced their evidence and performed cross-examination of their evidence. The arbitration tribunal conducted investigation of the facts related to this Case, and organized the parties for a debate.

1    [seal:] Beijing Arbitration Commission Cross-page Seal

Prior to the conclusion of the hearing, both the Claimant and the Respondents delivered their final statements of opinions.

This Case has now been concluded. The arbitration tribunal has rendered this Award in accordance with the details and related evidentiary materials in the tribunal hearing as well as the relevant laws and the Arbitration Rules after panel discussions.

The details of this Case, opinions of the arbitration tribunal and the Award are separately set forth as follows:

## I. Details of the Case

(1) Arbitration claims of the Claimant

The Claimant said that on December 1, 2016, the Claimant executed a Loan Contract with the 1st Respondent, providing that the Claimant will lend to the 1st Respondent a loan of 50 million yuan (RMB, same as below), at the annual interest rate of 7.5%, and the principal of this loan shall be repaid in a lump sum payment by the expiry date of the loan, with interest payment to be made on a quarterly basis; and on the same day, the 1st Respondent, 2nd Respondent and 3rd Respondent jointly executed a Repurchase Guarantee Agreement with the Claimant, whereby the 2nd Respondent and 3rd Respondent will be, on a voluntary basis, severally and jointly liable for providing guarantee for the 1st Respondent's performance of their obligation of repayment under the Loan Contract, and the term of such guarantee shall be 2 years commencing from the expiry date by which the debt being guaranteed has been repaid in full.

Upon execution of the Loan Contract and the Repurchase Guarantee Agreement, the Claimant paid the loan of 50 million yuan by way of bank transfer to the bank account designated by the 1st Respondent.

In accordance with the provisions of the agreements between the parties, the Claimant requested early full repayment of the principal, and full payment of all overdue interest amounting to 945,205.48 yuan, from the 1st Respondent, along with any interest accrued on the delay in performance, and sought resolutions with the Respondents through many ways. However, the Respondents shirked with a variety of excuses, and the abovementioned payments have yet to be made to date.

The Claimant raised the following arbitration claims:

1. the 1st Respondent shall pay to the Claimant:

(1) principal of the loan of 50 million yuan, with payment of interest of 945,205.48 yuan (commencing from March 15, 2017 to, tentatively, June 15, 2017, and in fact such interest shall be accrued till the date of full payment of all the principal and interest); and

(2) the cost of realization of the debt claims shall tentatively be determined as 1,083,000 yuan;

2. the 2nd Respondent and 3rd Respondent shall be held severally and jointly liable for full payment of the abovementioned amounts; and

3. the Respondents shall be jointly responsible for all the costs incurred in the arbitration of this Case.

During the first tribunal hearing, the Claimant orally requested changes to their arbitration claims and, on October 31, 2017, the Claimant applied for changes to their arbitration claims in writing, and such application was accepted by the arbitration tribunal.

The final arbitration claims of the Claimant are:

1. the 1st Respondent shall pay to the Claimant:

(1) the principal of 50 million yuan, with payment of interest of 1,890,410.96 yuan (method of calculation: 5,000 x 7.5% x 184/365, for a total of 184 days commencing from March 15, 2017 to September 15, 2017, and in fact such interest shall be accrued till the date of full payment by the Respondents), and payment of penalty interest of 5.65 million yuan (method of calculation: 500,000,000 x 0.05% x 226, for a period of tentatively 226 days in total commencing from March 15, 2017 to October 27, 2017, and in fact such interest shall be accrued till the date of full payment by the Respondents); and

(2) the Claimant shall be paid the expenses for realizing such debt claims, which are tentatively determined as 507,028 yuan, including the premium of 52,028 yuan payable to the preservation and insurance provider, cost of preservation of 5,000 yuan payable to the court, and legal fees of 450,000 yuan;

2. the 2nd Respondent and 3rd Respondent shall be held severally and jointly liable for full payment of the abovementioned amounts; and

3. the Respondents shall be responsible for all the costs of the arbitration of this Case.

(II) Opinions, facts and reasons provided by the 1st Respondent in their answer

The agent of the 1st Respondent submitted their written opinions in answering the claims in the second tribunal hearing, and provided oral defense, the primary opinions of which are set forth below:

1. the Loan Contract and the Repurchase Guarantee Agreement fall under the circumstances of invalid of contracts specified in Article 52 Item 2 of the *Contract Law of the People's Republic of China*, i.e., the Claimant and the 2nd Respondent and 3rd Respondent maliciously colluded in breach of the interests of the 1st Respondent, which shall render the Loan Contract and the Repurchase

Guarantee Agreement invalid, and the Claimant having no right to demand payment from the 1st Respondent of the loan principal and interest as well as the expenses for realization of the debt claims. The detailed reasons are listed as below:

(1) the official seal of the 1st Respondent was kept and used by the 2nd Respondent, and the affixing of the seal of 1st Respondent to the Loan Contract was not approved or consented to by the 1st Respondent, who had no knowledge of the execution of the Loan Contract;

(2) the funds under the Loan Contract have not yet arrived at the account of the 1st Respondent. The loan of 50 million yuan provided by the Claimant was transferred to the bank account maintained by Beijing Duo Le Zhi Hui Technology Co., Ltd. at Ping An Bank, but the 1st Respondent has never instructed the Claimant to transfer the loan to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd., and the 1st Respondent has also never received any amount from Beijing Duo Le Zhi Hui Technology Co., Ltd.; and

(3) the Claimant knows about the above details;

2. Article 4 of the Loan Contract provided for the prerequisites to the release of the loan. Only by continually meeting the prerequisites to the release of loan will the 1st Respondent oblige the Claimant to act as the agent in releasing the loan. The prerequisites in Article 6 require that the 1st Respondent or their designated money receiving and paying agent shall have opened a fund deposit account with a collaborating agency of Lan Cai Net. The Claimant is required to, with a period of time from the satisfaction of the prerequisites to the release of the loan, released the loan to the fund deposit account opened by the 1st Respondent at the collaborating bank of Lan Cai Net. The Claimant and the 2nd Respondent maliciously colluded in breach of the interests of the 1st Respondent, by releasing the loan to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd., which is incompliant with the provisions of the Loan Contract, which shall be found invalid; and

3. the official seal of the 1st Respondent was managed specially by Xu Zhanchun from the date of incorporation of the 1st Respondent to October 16, 2017, and Xu Zhanchun was a staff member of the 2nd Respondent specially in charge of the keeping of their official seal.

(III) Opinions, facts and reasons provided by the 2nd Respondent in their answer

The agent of the 2nd Respondent provided oral defense in the second tribunal hearing, and submitted their written proxy statement of opinions after the hearing, where the primary opinions of their defense are set forth below:

1. the Claimant is a not a qualified party to this Case, having no right to raise debt claims to the Respondents as a creditor,

(1) in accordance with the provisions of the Loan Contract, nobody but the network investor and the 1st Respondent are the parties to the debt-claim relationship under the Loan Contract, and the Claimant has not provided evidence that the network investor has authorized them to act as their agent

to make claims of rights to the borrower and the guarantor. The Claimant has no right to make debt claims to the Respondents based on the Loan Contract;

(2) even if we assume that the Claimant were the creditor under the Loan Contract, due to the fact that they have transferred their creditor's rights to Tao Yun Capital Group Co., Ltd., they are no longer a qualified party to this Case, with no right to make debt claims to the Respondents under the Loan Contract;

The Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. on July 14, 2017 has already assigned the debts under the Loan Contract and all of their subordinated rights and interests to Tao Yun Capital Group Co., Ltd. The Claimant shall, from the commencement of the Debt Assignment Agreement, no longer be a qualified party to this Case, having no right to make debt claims to the Respondents under the Loan Contract;

2. the debts under Loan Contract have not become due for repayment, and there are no such circumstances rendering the loan becoming due earlier. The Claimant's request that the Respondents shall make early repayment is based on neither facts nor the law, and shall be rejected;

3. the Claimant has demanded an excessive amount of penalty interest, which is in violation of the mandatory requirements of the People's Bank of China. We request the arbitration tribunal to re-adjust that;

The Claimant and the 1st Respondent agreed to the penalty interest rate as 0.05% in the Loan Contract, which can be converted to an annual rate of 18.25%

Article 3 of the *Notification of the People's Bank of China regarding the Issues related to RMB Loan Interest* (Yin Fa [2003] No. 251) clearly provides that: "Penalty interest on any overdue loans (loans where the borrower fails to make repayment by the date specified in the contract) will be changed from the current daily rate of 2.1 ten-thousandths to 30%-50% in addition to the loan interest rate indicated in the loan contracts", which describes the case of the Loan Contract executed by and between the Claimant and the 1st Respondent. In accordance with the above provisions, penalty interest may only be an additional 30%-50% to the loan interest rate, which, as agreed to by and between the Claimant and the 1st Respondent, is 7.5% p.a., which, along with the additional 30%-50%, shall be 9.75% - 11.25%;

In this Case, the Claimant and the 1st Respondent agreed to a high penalty interest rate of 18.25%, 60% over the ceiling rate required by the law, which shall be an invalid agreement, unfair to the Respondents. We request the arbitration tribunal to lower this penalty interest which is in violation of the mandatory requirements of the law;

4. interest and penalty interest are two different legal concepts. The one payable within the term of the loan under the Loan Contract is interest, and the one payable on any overdue loan is penalty interest. The Claimant's request that the Respondents shall pay both interest and penalty interest from March 15, 2017 is based on neither facts nor the law, and shall be rejected;

Interest and penalty interest are two completely different legal concepts. The law contains clear requirements for their respective period of accrual. In accordance with the provisions of the *Contract Law*, the debtor shall pay interest to the creditor in accordance with the loan interest rate set forth in the loan contract within the term of the loan. Only if the debtor fails to repay the loan by the deadline specified may the creditor demand interest on overdue repayment, i.e., penalty interest, from the debtor in accordance with the contract or related regulations of the state from the due date of repayment.

In this Case, repayment of the debts under the Loan Contract has not become due, and there are no circumstances rendering the loan becoming due earlier. During the term of repayment, the creditor shall, in accordance with the provisions of Article 3 Paragraph 3 of the Loan Contract, demand interest from the debtor at the annual rate of 7.5%. Only if the debtor fails to repay in full the principal by the due date of repayment falling on December 2, 2017 will the creditor become entitled to demand penalty interest in accordance with the law. The Claimant's request in their first arbitration claim that the Respondents shall pay both the interest for the period from March 15, 2017 to September 15, 2017 and the penalty interest for the period from March 15, 2017 to October 27, 2017, is based on neither facts nor the law, giving unjustifiable additional burden to the Respondents, and shall be rejected;

5. The expenses requested in the Claimant's arbitration claim for realization of debt claims are unjustifiable burdens to the Respondents, and they shall be not assumed by Respondents; and

6. The conditions for the Respondents to be held liable for the guarantee have not yet been met, and the Claimant has no right to request the 2nd Respondent be held liable for the guarantee;

(1) The debts under the Loan Contract, which is the master contract, have not yet become due, and there are no circumstances rendering the loan becoming due earlier. In this case, the Claimant has no right to request the Respondents be held responsible for the guarantee under the contract; and

(2) The Claimant has failed to issue a Notification of Repurchase in writing in accordance with the provisions of the Repurchase Guarantee Agreement, and the conditions for the Respondents to be held responsible for the guarantee have not yet been met.

(IV) Opinions, facts and reasons provided by the 3rd Respondent in his answer

The agent of the 3rd Respondent provided oral defense in the second tribunal hearing, and submitted their written proxy statement of opinions after the hearing, where the opinions of their defense are the same to those provided by the 2nd Respondent as above, and the following supplementary opinions of defense are also provided:

The provisions in the Repurchase Guarantee Agreement that hold the 3rd Respondent personally responsible for the unlimited, several and joint liability for the 2nd Respondent's repurchase obligation were made by lifting the limitation on corporate liabilities in standard terms to

the effect that the legal representative will personally assume unlimited liabilities. These provisions shall be invalid. The 3rd Respondent shall not be responsible for providing guarantee to the Claimant.

The *Company Law* of China clearly provides that a company shall be liable for its debts with all of its own property. In this Case, the 2nd Respondent executed a Repurchase Guarantee Agreement with the Claimant, providing that the 2nd Respondent will be severally and jointly liable for providing guarantee for, and assume the obligation of repurchase of, the direct loan between the 1st Respondent and the Claimant. These are the limited liabilities of the company. The Claimant, however, included the 3rd Respondent, namely the legal representative of the original 2nd Respondent, into the Repurchase Guarantee Agreement, requesting him to be severally and jointly liable for the repurchase obligation of the 2nd Respondent. This is lifting the limitation on corporate liabilities in standard terms to the effect that the legal representative will personally assume unlimited liabilities. The arbitration tribunal shall appropriately balance the factual inequality between the transacting parties, and rule out unreasonable terms, in order to seek substantive justice.

(V) Production and cross-examination of evidence by the parties

To support their arbitration claims, the Claimant submitted to the arbitration tribunal the following evidentiary materials:

Evidence 1, the Loan Contract, which is intended to show the loan relationship between the Claimant and the 1st Respondent, the loan of 50 million yuan lent at the interest rate of 7.5%, as well as the clear provisions regarding the time of repayment and early repayment;

Evidence 2, the Repurchase Guarantee Agreement, which is intended to show that the 2nd Respondent and the 3rd Respondent shall be severally and jointly liable for providing guarantee for the debt-claim relationship between the Claimant and the 1st Respondent;

Evidence 3, voucher of money transfer, which is intended to show that the Claimant has already performed their loan obligation by pay the loan to the Respondents;

Evidence 4, confirmation letter of payment, which is intended to show the same contents as Evidence 3;

Evidence 5, receipt of preservation fees, which is intended to show that the Claimant has paid preservation fees of 5,000 yuan for realization of the debt claims;

Evidence 6, invoice of insurance premium, which is intended to show that the Claimant paid premium to an insurance company for realization of the debt claims, in order to preserve the property of the Respondents;

Evidence 7, invoice of legal fees, which is intended to show that for the preservation of property, the Claimant paid legal fees, with the total invoice amount of 450,000 yuan;

Evidence 8, the Legal Agency Agreement, which is intended to show that the Claimant paid legal fees of 450,000 yuan for this Case;

Evidence 9, the Payment and Receipt Agency Agreement, which is intended to show that the Respondents have already received the payment of 50 million yuan, and the Claimant has already performed their obligation of loan release;

Evidence 10, photos of the scene of contract execution. The 1st Respondent is clearly aware of the loan matter involved in this Case. Lei Zhenjian, their CEO, is at the scene of contract execution;

Evidence 11, the Power of Attorney, which is intended to show that the Claimant made their debt claims and participated in the arbitration with the consent of the original creditor;

Evidence 12, the Letter of Debt Collection, which is intended to show that the Claimant advised on May 17, 2017 that the loan had become early due, and the guarantor shall be liable for providing guarantee.

The 1st Respondent provided the following opinions of cross-examination regarding the evidence submitted by the Claimant:

Evidence 1 to 4 shall be recognized for its authenticity, but invalid to the 1st Respondent;

Evidence 5 to 8 shall be recognized for its authenticity, but insurance premium, preservation fees and legal fees will not be recognized for relevance to this Case;

Evidence 9 shall be recognized for its authenticity, but its purpose of proof will not be recognized;

Evidence 10 shall be recognized for its authenticity, but not recognized for relevance. The photos were merely taken of the office environment of the 1st Respondent, especially the main door, where there was not a gate machine allowing everybody to take photos of it. These photos are not sufficient to any relevance to the execution of the Loan Contract. There is no other evidence in this Case capable of showing that the photos were taken when the contract was signed. The signature page of the Loan Contract bears the official seal of the 1st Respondent and the name seal of someone call "Gao Fei". Neither of these seals were managed by the 1st Respondent, and "Gao Fei" was then the nominal Chairman of Board of Directors of the 1st Respondent, whose position was President of LeTV, being a member of the LeTV headquarters;

The 1st Respondent did not expressed opinions of cross-examination of Evidence 11 and 12.

The 2nd Respondent expressed the following opinions of cross-examination as to the evidence submitted by the Claimant.

8    [seal:] Beijing Arbitration Commission Cross-page Seal

Evidence 1 to 4 shall all be recognized for its authenticity, and not for its purpose of proof. It has not been evidenced who shall be qualified to make the debt claims and when to do so. The Claimant is not so qualified to make the claims, and the Claimant's early repayment claim is not backed by sufficient evidence. Legal responsibilities of a company shall not be transferred to its legal representative.

Evidence 5 to 8 shall be recognized for its authenticity, but the expenses for realization of the debt claims shall be assumed by the Claimant themselves. The interest under the Loan Contract is already double the amount based on the bank's loan interest rate of 4.7%. The Claimant is able to receive higher interests in accordance with the contract, but the expenses for realization of the debt claims are the necessary costs the Claimant is supposed to pay in making their debt claims. The provision that the so-called expenses for realization of debt claims shall be assumed by the borrower and the guarantor imposed additional economic burden on the borrower and the guarantor, which is a disguised way of increasing the benefits receivable from the interest rate;

Evidence 9 shall be recognized for its authenticity;

Evidence 10 shall be recognized for its authenticity, and its purpose of proof; and

The 2nd Respondent did not express opinions of cross-examination of Evidence 11 and 12.

The 3rd Respondent expressed his opinions of cross-examination of the evidence submitted by the Claimant, and expressed same opinions of cross-examination to the 2nd Respondent's as to Evidence 1-10, but did not express opinions of cross-examination of Evidence 11 and 12.

This 1st Respondent produced the following evidence:

Evidence 1, receipt of seals, which is intended to show that the official seal and the contract seal of the 1st Respondent were managed by the 2nd Respondent prior to the date of handover, October 16, 2017. The person taking over the seals, namely Xu Zhanchun who signed the handover receipt, is a staff member of the Seals and Archives Department of the 2nd Respondent;

Evidence 2, Results of inquiry at the National Enterprise Information Disclosure System, which are intended to show that the registered capital of Beijing Duo Le Zhi Hui Technology Co., Ltd. is only 500,000 yuan, and Beijing Duo Le Zhi Hui Technology Co., Ltd. is not related in any manner to the 1st Respondent, and this company is currently still a going concern;

Evidence 3, media reporting of the shareholding changes to Lan Cai Net and the status of their investments, which is intended to show that the 2nd Respondent invested in Lan Cai Net in August 2016, when Lan Cai Net announced completion of Round B financing in amount of 180 million yuan, and TV Plus Holdings (Beijing) Limited led the investment in this financing, followed by Jun Lian Capital. There is a close relationship between Lan Cai Net and the 2nd Respondent and the LeTV system, and Lan Cai should be aware of the association between as well as the management of the 2nd Respondent and companies related to LeTV;

Evidence 4, results of inquiries about LeTV employee information, which are intended to show that Xu Zhanchun (signatory of the seals handover receipt) is a staff member of Administrative Division Seals and Archives Department of the 2nd Respondent;

Evidence 5, the Debt Assignment Agreement, which is intended to show that the Claimant executed a Debt Assignment Agreement in Chaoyang District, Beijing on July 14, 2017 with Yun Tao Capital Group Co., Ltd., providing that under the Loan Contract executed by and between the Claimant and the 1st Respondent, the principal of the debt is 50 million yuan, which is assigned to Yun Tao Capital Group Co., Ltd. as consideration, and the Claimant's arbitration application is not based on any rights.

The Claimant expressed the following opinions of cross-examination as to the evidence submitted by the 1st Respondent:

Evidence 1 cannot be recognized for authenticity, and shall not be recognized for purpose of proof. The 1st Respondent intends to show that they had no power to manage the seals prior to October 16, 2017, and hence denies that the contract was an expression of their true intent. The use of the seals and approval of contents are internal decisions of the 1st Respondent, which shall not have effect on an outside third party. They should not deny that the Loan Contract was an expression of their true intent due to their defective internal decisions. The Loan Contract was executed in the office premises of the 1st Respondent, who is aware of the fact of the execution of the Loan Contract;

Evidence 2 shall be recognized for its authenticity, but not recognized for its purpose of proof. Though the registered capital of Beijing Duo Le Zhi Hui Technology Co., Ltd. is only 500,000 yuan, they will not be stopped from acting as on behalf of the 1st Respondent to receive the loan of 5 million yuan released by the Claimant. We do not agree to add Beijing Duo Le Zhi Hui Technology Co., Ltd. as third person to this Case;

Evidence 3 shall be recognized for its authenticity, and not recognized for its purpose of proof. Lan Cai Net was in an investor-investee relationship with the 2nd Respondent and the LeTV system in August 2016. The 1st Respondent and the 2nd Respondent are associated companies. If the 1st Respondent believes the 2nd Respondent colluded to damage their interests, that was a result of their bad internal decision making, and no adverse consequences of bad internal decisions shall be assumed by the good-faith Claimant.

Evidence 4 cannot be recognized for its authenticity. Even if this evidence were assumed to be authentic, it will not be recognized for its purpose of proof. The 1st Respondent should be associated to the 2nd Respondent, and the use by the 2nd Respondent of the seals of the 1st Respondent is likely to have been authorized by the 1st Respondent; and

Evidence 5 cannot be recognized for its authenticity, and shall not be recognized for its purpose of proof.

The 2nd Respondent expressed the following opinions of cross-examination of the evidence submitted by the 1st Respondent:

Evidence 1 cannot be recognized for its authenticity, and shall not be recognized for its purpose of proof;

Evidence 2 shall be recognized for its authenticity, but not recognized for its purpose of proof.

Evidence 3 does not conform to the formal requirements for electronic evidence, and cannot be recognized for its authenticity;

Evidence 4 shall be doubted as to its legality;

Evidence 5 shall be recognized for its authenticity and purpose of proof.

The 3rd Respondent also expressed opinions of cross-examination of the evidence submitted by the 1st Respondent, which were the same to those of the 2nd Respondent.

The 2nd Respondent produced the following evidence:

Evidence 1, the Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. on July 14, 2017, which is intended to show that even if the Claimant were a credited under the Loan Contract, they have already assigned the debts under the Loan Contract and all of their subordinated rights and interests to Tao Yun Capital Group Co., Ltd. The Claimant shall, from the commencement of the Debt Assignment Agreement, no longer be a qualified party to this Case, having no right to make debt claims to the Respondents under the Loan Contract;

Evidence 2, the Entrusted Management and Finance Collaboration Agreement executed by and between the Claimant and the 1st Respondent as well as Beijing Lan Cai Information Technology Co., Ltd. on December 1, 2016, which is intended to show that the loan lending in this Case has truly and effectively taken place. The Loan Contract pack consists of 6 documents, which form a complete chain of evidence, with all the related agreements being expressions of true intent by the parties. The relevant contracts were signed and performed, ruling out any circumstances alleged by the 1st Respondent that the Claimant maliciously colluded with the 2nd Respondent without their knowledge;

Evidence 3, the Usufruct Assignment Agreement executed by and between the Claimant and LETV SPORTS CULTURE DEVELOP (HONG KONG) Co. Limited on December 1, 2016, which is intended to show the same contents as Evidence 2;

Evidence 4, the Voucher of Usufruct executed by and between the 1st Respondent and LETV SPORTS CULTURE DEVELOP (HONG KONG) Co. Limited on December 1, 2016, which is intended to show the same contents as Evidence 2.

The Claimant expressed the following opinions of cross-examination of the evidence submitted by the 2nd Respondent:

Evidence 1 cannot be recognized for its authenticity, and shall not be recognized for its purpose of proof; and

Evidence 2 to 4 shall be recognized for its authenticity, and shall not be recognized for its purpose of proof.

The 1st Respondent expressed the following opinions of cross-examination of the evidence submitted by the 2nd Respondent:

Evidence 1 shall be recognized for its authenticity and purpose of proof; and

Evidence 2 to 4 shall be recognized for its authenticity, and shall not be recognized for its purpose of proof.

The 3rd Respondent expressed the following opinions of cross-examination of the evidence submitted by the 2nd Respondent:

Evidence 1 shall be recognized for its authenticity and purpose of proof; and

Evidence 2 to 4 shall be recognized for its authenticity.

The 3rd Respondent has not submitted his evidentiary materials to the arbitration tribunal.

## II. Opinions of the Arbitration Tribunal

In accordance with the valid evidence submitted by the parties to this Case and by taking into consideration details of the tribunal hearing, the arbitration tribunal now provides its opinions as follows:

(I) Regarding the validity of the Loan Contract and the Repurchase Guarantee Agreement

The 1st Respondent claims that the Loan Contract and the Repurchase Guarantee Agreement fall under the circumstances of invalid of contracts specified in Article 52 Item 2 of the *Contract Law of the People's Republic of China*, the official seal of the 1st Respondent was kept and used by the 2nd Respondent, and the affixing of the seal of 1st Respondent to the Loan Contract was not approved or consented to by the 1st Respondent, who had no knowledge of the execution of the Loan Contract, i.e., the Claimant and the 2nd Respondent and 3rd Respondent maliciously colluded in breach of the interests of the 1st Respondent, which shall render the Loan Contract and the Repurchase Guarantee Agreement invalid.

12    [seal:] Beijing Arbitration Commission Cross-page Seal

The arbitration tribunal has found through investigation that the official seal of the 1st Respondent has been affixed to both the Loan Contract and the Repurchase Guarantee Agreement. None of the parties have raised any objections to the authenticity of this official seal. Article 49 of the *Contract Law* provides that where the feasor enters into a contract in the name of the principal with no power of attorney, by going beyond its power of attorney or after termination of its power attorney, and the counterparty has reasons to believe that the feasor did so with power of attorney, such act of agency shall be valid. The arbitration tribunal believes that given the 1st Respondent placed its official seal into the management of the 2nd Respondent and for their use, the Claimant may reasonably believe that the 1 Respondent has granted the 2nd Respondent power of attorney; and even if the 1st Respondent does not recognize such granting of power of attorney to the 2nd Respondent, the 2nd Respondent, by affixing the official seal of the 1st Respondent to the Loan Contract and the Repurchase Guarantee Agreement, has acted as apparent agent as defined under Article 49 of the *Contract Law*, and such act shall be valid. The arbitration tribunal deems that no evidence in this Case shows malicious collusion between the Claimant and the 2nd Respondent in breach of the interests of the 1st Respondent, and [therefore] no circumstances of invalid contracts under Article 52 of the *Contract Law* have taken place. Both the Loan Contract and the Repurchase Guarantee Agreement are expressions of the true intents of the parties, which shall be valid.

(II) Regarding whether or not the Claimant has claims to the debts under the Loan Contract

The 1st Respondent claims that in accordance with the provisions of the Loan Contract, nobody but the network investor and the 1st Respondent are the parties to the debt-claim relationship under the Loan Contract, and the Claimant has not provided evidence that the network investor has authorized them to act as their agent to make claims of rights to the borrower and the guarantor. The Claimant has no right to make debt claims to the Respondents based on the Loan Contract

The arbitration tribunal has found through investigation that the Loan Contract executed by and between the Claimant and the 1st Respondent provides that the Claimant will act on behalf of the specific users of Lan Cai Net to release a loan of no more than 50 million yuan to the 1st Respondent, and the electronic transaction records in the fund deposit system of the collaborating agency of Lan Cai Net shall prevail as to the actual amount of the loan, initial amount of the loan, details of initial borrower and the start and end dates (Article 1 of the Loan Contract); the Claimant shall act as the agent to release the loan in accordance with the provisions of the Loan Contract, manage debts in a centralized manner and communicate and liaise with the 1st Respondent in accordance with borrower's authorization, in the interest of the borrower and on behalf of the borrower, but Party B is a party or the guarantor to the debt-claim relationship (Article 9 Paragraph 1 of the Loan Contract). The arbitration tribunal deems that the above terms of the Loan Contract indicate that the Claimant has already fully disclosed to the 1st Respondent that the Claimant "releases the loan" and "manages debts in a centralized manner" on behalf of the specific users of Lan Cai Net. If we apply semantic interpretation to the contractual terms, "mana[ging] debts in a centralized manner" is supposed to include taking legal measures to make debt claims to the borrower for recovery of the loan in accordance with the law. The arbitration tribunal deems that the Claimant acting in their own name to release the loan and recover the loan on behalf of the specific users of Lan Cai Net conforms to the common mode of business in Internet finance. No evidence in this Case shows that the Claimant has

no right to release and recover the loan on behalf of the specific users of Lan Cai Net. The arbitration tribunal deems that the 1st Respondent's allegation that the Claimant has no right to excise rights as creditor based on the Loan Contract is grounded on neither the law nor the contract, which will not be supported by the arbitration tribunal.

All three Respondents claim that the Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. on July 14, 2017 has already assigned the debts under the Loan Contract and all of their subordinated rights and interests to Tao Yun Capital Group Co., Ltd. The Claimant shall, from the commencement of the Debt Assignment Agreement, no longer be a qualified party to this Case, having no right to make debt claims to the Respondents under the Loan Contract.

The arbitration tribunal has found through investigation that the Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. on July 14, 2017, submitted by the 1st Respondent and the 2nd Respondent, provides that the Claimant will assign their creditor's rights under the Loan Contract to Tao Yun Capital Group Co., Ltd., who has agreed to accept the same (Whereas clauses, Article 1 and Article 2 Paragraph 1 of the Debt Assignment Agreement); upon full payment of the consideration for the assignment by Tao Yun Capital Group Co., Ltd., the Claimant will no longer be entitled to the subject debts and all of their subordinated rights and interests, including but not limited to the right to receive interest based on the subject debts (Article 2 Paragraph 4 of the Debt Assignment Agreement). The arbitration tribunal specially notes the clear provisions in Article 2 Paragraph 6 of the Debt Assignment Agreement that when the Claimant has agreed to assign the subject debts, the Claimant shall make debt claims to the 1st Respondent as the creditor on behalf of Tao Yun Capital Group Co., Ltd. Article 80 Paragraph 1 of *Contract Law* provides that, "Where a creditor transfers his/her rights, he/she shall notify the debtor. In case of failure to give such notification, the transfer will not be effective to the debtor". The arbitration tribunal believes that the Debt Assignment Agreement executed by and between the Claimant and Tao Yun Capital Group Co., Ltd. submitted by the 1st Respondent and 2nd Respondent is a photocopy, whose authenticity cannot be verified by the arbitration tribunal; assuming that the Debt Assignment Agreement was real, Claimant shall also have the right to make claims to the 1st Respondent in accordance with the provisions of Article 2 Paragraph 6 of the Debt Assignment Agreement; in this Case, no evidence shows that the Claimant provided a notification of debt assignment to the 1st Respondent that the 1st Respondent shall only service the debts to assignee Tao Yun Capital Group Co., Ltd., so this transfer is not effective to the 1st Respondent. The arbitration tribunal believes that the three Respondents' claim that the Claimant will have no claims to the debts under the Loan Contract from the commencement of the Debt Assignment Agreement is based on neither the law nor the contract, which will not be supported by the arbitration tribunal.

From the foregoing analysis, the arbitration tribunal believes the Claimant shall have claims to the debts under the Loan Contract.

(III) Regarding the repayment of the loan principal

The Claimant requests that the 1st Respondent repay to the Claimant the loan principal of 50 million yuan.

The 1st Respondent claims that the loan funds of 50 million yuan under the Loan Contract have not yet been transferred by the Claimant to the account of the 1st Respondent, but instead to the bank account maintained by Beijing Duo Le Zhi Hui Technology Co., Ltd. at Ping An Bank, and that the 1st Respondent has never instructed the Claimant to transfer the loan to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd. This release of the loan to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd. by the Claimant does not conform to the provisions of the Loan Contract on the prerequisites to release of the loan.

The arbitration tribunal has found through investigation that Article 4 of the Loan Contract provides prerequisites to the release of the loan as follows: "Except for any waiver by Party B (Claimant, noted by the arbitration tribunal) in whole or in part, only if Party A (1st Respondent, noted by the arbitration tribunal) continues to meet the following prerequisites will Party B be obliged to act as the agent to release the loan." The arbitration tribunal deems that in accordance with the above provisions, the loan will not be released until the 1st Respondent has met the prerequisites for release of the loan. This is a right of the Claimant, and does not constitute an obligation of the Claimant.

The arbitration tribunal has found through investigation that on December 2, 2016, the Claimant transferred the funds of 50 million yuan in 6 tranches to the account of Beijing Duo Le Zhi Hui Technology Co., Ltd. via the account of Beijing Lan Cai Information Technology Co., Ltd. The arbitration tribunal found that on December 2, 2016, the 1st Respondent and Beijing Duo Le Zhi Hui Technology Co., Ltd. jointly issued to the Claimant an Acknowledgement of Receipt of Payment, confirming receipt of the loan of 50 million yuan which the Claimant entrusted to be paid from the account of Beijing Lan Cai Information Technology Co., Ltd.

From the above facts found by the arbitration tribunal, the arbitration tribunal believes that the Claimant has already released the loan of 50 million yuan based on the provisions of the Loan Contract.

The arbitration tribunal has found through investigation that Article 2 of the Loan Contract requires the term of the loan to be 12 months. Based on this requirement, the loan will expire by December 2, 2017. The arbitration tribunal deems that in accordance with the provisions of the Loan Contract, upon expiration of the loan, the 1st Respondent will be obliged to return the loan principal to the Claimant with interest payment.

No evidence in this Case shows that upon expiration of the loan on December 2, 2017, the Respondents have returned any principal of the loan to the Claimant.

The arbitration tribunal believes that the Claimant's request that the 1st Respondent repay to them loan principal of 50 million yuan is in compliance with the provisions of the Loan Contract, which arbitration claim will be supported by the arbitration tribunal.

(IV) The arbitration claim regarding loan interest

The Claimant requests payment from the 1st Respondent to the Claimant of interest of 1,890,410.96 yuan (method of calculation: 50 million x 7.5% x 184/365, for a total of 184 days commencing from March 15, 2017 to September 15, 2017, and in fact such interest shall be accrued till the date of full payment by the Respondents).

- The arbitration tribunal has found through investigation that Article 3 of the Loan Contract provides for the annual interest rate of loan shall be 7.5%, daily interest rate = annual interest rate/365, and the interest payment dates shall be March 15, September 15, December 15 and the date of repayment of the principal by the 1st Respondent. If the 1st Respondent fails to repay the loan when due, the creditor shall have the right to charge penalty interest at the daily rate of 5 ten-thousandths, until such default or circumstance has ceased to take place.

During the tribunal hearing, the Claimant confirmed that prior to March 15, 2017, the 1st Respondent had already paid the due interest, and since March 15, 2017, the 1st Respondent has never paid interest to the Claimant. No evidence in this Case shows that the Respondents have paid interest to the Claimant since March 15, 2017.

The arbitration tribunal believes that the Claimant's arbitration claim regarding interest conforms to the provisions of the Loan Contract, which will be supported by the arbitration tribunal, that means the 1st Respondent shall pay loan interest to the Claimant, based on the 50 million yuan at the annual interest rate of 7.5% commencing from March 15, 2017 to the date of full payment of both principal interest, which is tentatively set as September 15, 2017, as of which the interest payment will be 1,890,410.96 yuan (50 million x 7.5% x 184/365).

(V) The arbitration claim regarding penalty interest

The Claimant requests payment by the 1st Respondent of penalty interest of 5.65 million yuan (method of calculation: 500,000,000 x 0.05% x 226, for a period of tentatively 226 days in total commencing from March 15, 2017 to October 27, 2017, and in fact such interest shall be accrued till the date of full payment by the Respondents).

The arbitration tribunal has found through investigation that the Loan Contract executed by and between the Claimant and the 1st Respondent requires the term of the loan to be 12 months (Article of the Loan Contract); and if the 1st Respondent fails to repay the loan when due, the creditor shall have the right to charge penalty interest at the daily rate of 5 ten-thousandths, until such default or circumstance has ceased to take place (Article 3 of the Loan Contract).

The arbitration tribunal has found through investigation that on December 2, 2016, the Claimant released the loan of 50 million yuan in accordance with the provisions of the Loan Contract. Article 2 of the Loan Contract provides that the term of the loan shall be 12 months. Based on this provision, the loan will expire on December 2, 2017.

No sufficient evidence in this Case shows that the Claimant served on the 1st Respondent notification of early recovery of the loan, and no sufficient evidence in this Case shows that the Claimant has the right to early recover the loan. The arbitration tribunal deems that in accordance with the above provisions of the Loan Contract, after expiration of the loan on December 2, 2017, overdue repayment of the loan by the 1st Respondent will be constituted only if they fail to repay the loan principal and interest on time, and only in that case will the Claimant have the right to charge penalty interest.

Regarding the standard of penalty interest, the 2nd Respondent and the 3rd Respondent claim that the Claimant and the 1st Respondent agreed to the daily rate of penalty interest as 5 ten-thousandths in the Loan Contract, which can be converted to an annual rate of 18.25%, which is in violation of the mandatory requirements of the People's Bank of China and shall be invalid. Article 3 of the *Notification of the People's Bank of China regarding the Issues related to RMB Loan Interest* (Yin Fa [2003] No. 251) clearly provides that: "Penalty interest on any overdue loans (loans where the borrower fails to make repayment by the date specified in the contract) will be changed from the current daily rate of 2.1 ten-thousandths to 30%-50% in addition to the loan interest rate indicated in the loan contracts". In accordance with the above provisions, penalty interest may only be an additional 30%-50% to the loan interest rate, which, as agreed to by and between the Claimant and the 1st Respondent, is 7.5% p.a., which, along with the additional 30%-50%, shall be 9.75% - 11.25%. The penalty interest rate agreed to by and between the Claimant and the 1st Respondent is unfair to the Respondents, and arbitration tribunal was requested to lower it. The 2nd Respondent and the 3rd Respondent further claim that interest and penalty interest are two different legal concepts. The Claimant's request that the Respondents shall pay both interest and penalty interest from March 15, 2017 is based on neither facts nor the law.

Article 207 of the *Contract Law* provides that, "In case of any failure of the borrower to repay the loan by the deadline agreed to, overdue payment interest shall apply in accordance with the contract or the relevant regulations of the state." The arbitration tribunal deems that in accordance with the provisions of the *Contract Law*, the borrower and the lender shall have the right to agree to penalty interest on overdue payment; the *Notification of the People's Bank of China regarding the Issues related to RMB Loan Interest* (Yin Fa [2003] No. 251) does not prohibit the borrower and the lender from agreeing separately to a penalty interest rate either.

Article 29 of the Regulations of the Supreme People's Court regarding the Several Issues in the Application of the Law to the Hearing of Private Lending Cases provides that, "where the borrower and the lender have agreed to an overdue interest rate, such agreement shall prevail; however, such rate shall not exceed 24% over the annual rate"; Article 30 provides that, "where the borrower and the lender have agreed to an overdue interest rate as well as default fine or other payments, the borrower may choose to claim any one or all of such overdue interest, default fine and other payments, but any excess over 24% of the annual rate will not be supported by the people's court." By referring to the provisions in the above judicial interpretation of the Supreme People's Court, the arbitration tribunal deems that once the loan has become overdue, the borrower shall have the right to claim altogether the interest and the additional interest, but in an amount not exceeding 24% of the annual interest rate. The annual interest rate on the loan in this Case is 7.5%, and the

penalty interest charged in addition on overdue payment aggregates up to an annual rate of 18.25%, based on the daily of 5 ten-thousandths. The two combined have already gone beyond the annual interest rate of 24%. The arbitration tribunal believes that this penalty interest rate shall be lowered to the annual rate of 16.5%.

From the foregoing opinions of the arbitration tribunal, the Claimant's request that the 1st Respondent should pay to them penalty interest is supported by the arbitration tribunal, and such penalty interest shall accrue on the base of 50 million yuan at the annual interest rate of 16.5% commencing from December 2, 2017 (exclusive) till the date of full payment of both the principal and interest.

(VI) Regarding the expenses for realization of the debt claims

The Claimant requests that they shall be paid by the 1st Respondent the expenses for realizing the debt claims, in amount of 507,028 yuan, including the premium of 52,028 yuan payable to the preservation and insurance provider, cost of preservation of 5,000 yuan payable to the court, and legal fees of 450,000 yuan

The arbitration tribunal has found through investigation that Article 14 Paragraph (I) of the Loan Contract provides that all expenses actually incurred by the Claimant for realization of the debt claims (including but not limited to litigation fees, arbitration fees, property preservation fees, travel expenses, enforcement fees, assessment fees, auction fees, notary fees, service fees, publication fees, legal fees, if any) shall be assumed by the 1st Respondent. The arbitration tribunal deems that the above provisions are expressions of true intents of the Claimant and the Respondents, without violation of the mandatory requirements of legal and administrative regulations, and shall be valid by the law. The arbitration tribunal has found through investigation that for realization of the debt claims, the Claimant paid property preservation fees of 5,000 yuan, property preservation liability insurance premiums of 52,028 yuan and legal fees of 450,000 yuan, amounting to 507,028 yuan.

The Respondents claim that the expenses requested in the Claimant's arbitration claim for realization of debt claims are unjustifiable burdens to the Respondents, and they shall be not assumed by Respondents. The arbitration tribunal deems that the Claimant paid the fees for realization of the debt claims as a result of the Respondents, who have no contractual or legal basis to deny liability for these fees, and the arbitration tribunal will not support this claim.

The arbitration tribunal deems that the Claimant's arbitration claim regarding the expenses for realization of the debt claims conforms to the above provisions of the Loan Contract, which will be supported by the arbitration tribunal. The 1st Respondent shall pay to the Claimant expenses of 507,028 yuan for realization of the debt claims.

(VII) Regarding the arbitration claim that the 2nd Respondent and the 3rd Respondent shall be severally and jointly liable for repayment of the debts of the 1st Respondent.

[seal:] Beijing Arbitration Commission Cross-page Seal

The arbitration tribunal has found through investigation that the Claimant and the three Respondents agreed to in the executed Repurchase Guarantee Agreement that: the 2nd Respondent agrees and undertakes to assume irrevocable several and joint liability of guarantee and obligation of repurchase of the loan between the 1st Respondent and the Claimant; the 3rd Respondent agrees and undertakes to assume personal, unlimited, several and joint liability for the above obligation of the 2nd Respondent (Whereas Clause 2 of the Repurchase Guarantee Agreement); provided that the 2nd Respondent and the 3rd Respondent agree and undertake to provide repurchase and guarantee for the 1st Respondent, the Claimant agrees to provide liquid loans to the 1st Respondent (Whereas Clause 3 of the Repurchase Guarantee Agreement); to ensure that the 1st Respondent repays the loan to the Claimant in accordance with the provisions of the Loan Contract executed by and between the Claimant and the 1st Respondent, the 2nd Respondent and the 3rd Respondent agree to provide irrevocable guarantee for the Claimant with several and joint liability in respect of the obligations of the 1st Respondent under the Loan Contract (including but not limited to non-performance by the 1st Respondent or failure of their performance to conform to the provisions of the Loan Contract) (Whereas Clause 4 of the Repurchase Guarantee Agreement).

The arbitration tribunal has found through investigation that the Repurchase Guarantee Agreement has clearly specified the manner of guarantee, and the 2nd Respondent and the 3rd Respondent shall provide guarantee with several and joint liability. When the 1st Respondent has not performed or has not fully performed their debts under the Loan Contract, the Claimant has the right to directly request the 2nd Respondent and the 3rd Respondent to assume the liability of providing guarantee (Article 2 Paragraph 1 of the Repurchase Guarantee Agreement).

The arbitration tribunal has found through investigation that the Repurchase Guarantee Agreement has clearly specified the scope of guarantee, where the 2nd Respondent and the 3rd Respondent shall provide guarantee to the 1st Respondent to the extent that the latter does not perform their obligations in accordance with the provisions of the Loan Contract causing loss to the Claimant, including: failure of the 1st Respondent to pay the principal, interest, penalty interest, insurance premium, bond, compensation as well as other amounts payable by the 1st Respondent on time and in full in accordance with the Loan Contract; and all the expenses paid by the Claimant for realization of the above rights and interests, including but not limited to legal fees, litigation fees, travel expenses, etc. (Article 2 Paragraph 3 of the Repurchase Guarantee Agreement).

The 2nd Respondent and the 3rd Respondent claim that the conditions for the Respondents to be held liable for the guarantee have not yet been met, and the Claimant has no right to request the Respondents be held liable for the guarantee. The arbitration tribunal deems that in accordance with the above provisions of the Repurchase Guarantee Agreement, once the Loan Contract expires and the 1st Respondents has failed to perform their debts under the Loan Contract, the conditions for the 2nd Respondent and the 3rd Respondent to be held liable for providing guarantee have been met; therefore, the above claim by the 2nd Respondent and the 3rd Respondent in defense has no contractual or legal basis, which will not be supported by the arbitration tribunal.

The 3rd Respondent also claims that the provisions in the Repurchase Guarantee Agreement that hold the 3rd Respondent personally responsible for the unlimited, several and joint liability for

the 2nd Respondent's repurchase obligation were made by lifting the limitation on corporate liabilities in standard terms to the effect that the legal representative will personally assume unlimited liabilities. These provisions shall be invalid. The 3rd Respondent shall not be responsible for providing guarantee to the Claimant. The arbitration tribunal deems that 2nd Respondent and the 3rd Respondent are independent civil subjects, and it is the 3rd Respondent's expression of true intent to assume several and joint liability for the repurchase obligation of the 2nd Respondent, which is not in violation of the mandatory requirements of legal and administrative regulations, and is legal and valid; in addition, from the above provisions of the Repurchase Guarantee Agreement, it is the 3rd Respondent's express of true intent to be held severally and jointly liable for the debts of the 1st Respondent under the Loan Contract, which is not in violation of the mandatory requirements of legal and administrative regulations, and is legal and valid; and the 3 Respondent's claim that the relevant terms provided in the Repurchase Guarantee Agreement are invalid standard terms, without factual and legal basis. The arbitration tribunal deems that the above claim by the 3rd Respondent in defense has no contractual or legal basis, which will not be supported by the arbitration tribunal.

The Claimant request that that 2nd Respondent and the 3rd Respondent be severally and jointly liable for repayment of the above debts of the 1st Respondent. The arbitration tribunal deems that this request is in compliance with the provisions of the Repurchase Guarantee Agreement, the relevant provisions of the Surety Law regarding guarantee with several and joint liability, and will be supported by the arbitration tribunal.

(VIII) Regarding assumption of arbitration costs

The Claimant requests that the Respondents assume the arbitration costs for this Case. In accordance with the provisions of Article 51 Paragraph (II) of the Arbitration Rules and by taking into account the actual details of this Case, the arbitration tribunal believes that the arbitration costs for this Case shall all be assumed by the Respondents.

## III. Award

In accordance with the above facts and reasons, the arbitration tribunal has rendered the below award on this Case:

(I) the 1st Respondent shall repay principal of the loan of 50 million yuan to the Claimant;

(II) the 1st Respondent shall pay interest on the loan to the Claimant, which interest shall accrue on the base of 50 million yuan at the annual interest rate of 7.5% commencing from March 15, 2017 (exclusive) till the date of full payment of the loan and interest, which is tentatively September 15, 2017, amounting to 1,890,410.96 yuan;

(III) the 1st Respondent shall pay penalty interest to the Claimant, which shall accrue on the base of 50 million yuan at the annual interest rate of 16.5% commencing from December 2, 2017 (exclusive) till the aforementioned date of full payment of principal and interest;

(IV) the 1st Respondent shall pay to the Claimant expenses of 507,028 yuan paid for the realization of the debt claims;

(V) the 2nd Respondent and the 3rd Respondent shall be severally and jointly liable for repayment of the debts of the 1st Respondent under the above Items (I), (II), (III) and (IV) in this Award;

(VI) the arbitration costs of 319,740 yuan for this Case (which have been prepaid in full by the Claimant) shall entirely be assumed by the Respondents, who shall directly pay to the Claimant the arbitration costs of 319,740 yuan disbursed by the Claimant.

The above amounts payable by the Respondents to the Claimant shall be paid in full within 10 days from the date of service of this Award. Overdue performance will, in accordance with the provisions of Article 253 of the Civil Procedure Law of the People's Republic of China, render in double payment of the interest on the debts for the period of delayed performance.

This Award shall be final and effective as of the date of issue.

[seal:] Arbitration Commission of Beijing 1100000039785

Chief Arbitrator (signature):    [signature]

Arbitrator (signature):    [signature]

Arbitrator (signature):    [signature]

January 22, 2018 in Beijing

# Exhibit 5 – Final California Judgment

1  Bethany Stevens (SBN 245672)
2  bstevens@wscllp.com
   Amanda Walker (SBN 252380)
3  awalker@wscllp.com
   WALKER STEVENS CANNOM LLP
4  500 Molino Street, Suite 118
   Los Angeles, California 90013
5  Telephone: (213) 712-9145
   Fax: (213) 403-4906
6
   Michael Ng (SBN 237915)
7  michael.ng@kobrekim.com
   Daniel Zaheer (SBN 237118)
8  daniel.zaheer@kobrekim.com
   KOBRE & KIM LLP
9  150 California Street, 19th Floor
   San Francisco, California 94111
10 Telephone: (415) 582-4800
11 (Additional Counsel on next page)
12 *Attorneys for Petitioner*
   *Shanghai Lan Cai Asset*
13 *Management Co, Ltd.*

14

15            UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17                  WESTERN DIVISION

18  **SHANGHAI LAN CAI ASSET**          Case No. 2:18-cv-10255-SJO-MRW
    **MANAGEMENT CO, LTD.,**
19                                       **FINAL JUDGMENT**
20              Petitioner,
                                         Hon. S. James Otero
21  v.

22  **JIA YUETING,**

23              Respondent.
24

25

26

27

28

─────────────────────────────────────
                [PROPOSED] FINAL JUDGMENT

Christopher Cogburn (admitted *pro hac vice*)
christopher.cogburn@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 488 1200

John Han (admitted *pro hac vice*)
john.han@kobrekim.com
KOBRE & KIM
3 Garden Road
ICBC Tower, Unit 601
Central, Hong Kong SAR
Telephone: +852 2127 3291

*Attorneys for Petitioner
Shanghai Lan Cai Asset
Management Co, Ltd.*

1

[PROPOSED] FINAL JUDGMENT

Upon the Court's consideration of Petitioner Shanghai Lan Cai Asset Management Co, Ltd.'s Petition to Confirm Arbitration Award (Dkt. No. 1), Petitioner's Memorandum in Support (Dkt. No. 1-1), Respondent Jia Yueting's Memorandum in Opposition (Dkt. No. 25), Petitioner's Reply Memorandum (Dkt. No. 29), and all supporting documents submitted together with these documents,

**IT IS HEREBY ORDERED, ADJUDICATED, AND DECREED,** for the reasons set forth in this Court's Order Granting Petition to Confirm Arbitration Award (Dkt. No. 31) dated March 26, 2019, that judgment is entered against Respondent Jia Yueting and in favor of Petitioner Shanghai Lan Cai Asset Management Co, Ltd., in the amount of RMB 83,337,726.91, inclusive of pre- and post-award interest as of April 1, 2019, in the amount of RMB 32,510,958.91, plus post-judgment interest to run on the above amounts as provided by 28 U.S.C. § 1961.

DATED: April 7, 2019.

S. James Otero

United States District Judge

# Exhibit 6 – Civil Minutes

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 18-10255 SJO (MRWx) | Date | April 10, 2019 |
| Title | Shanghai Lan Cai Asset Management Co, Ltd. v. Jia Yueting | | |

| | |
|---|---|
| Present: The Honorable | S. James Otero, Judge presiding |

| Victor Cruz | Not Present | |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **IN CHAMBERS**

The judgment entered by this Court, ECF No. 35, provided the final judgment in Chinese currency, RMB. For purposes of entering this judgment, the Court holds that the currency exchange rate applicable to the RMB amounts will be the exchange rate published by the United States Department of Treasury on March 31, 2019, the most recent date available. On this date, the US Treasury Department exchange rate was 1 USD to 6.7130 RMB. The judgment amount of 83,337,726.91 RMB is equivalent to 12,414,379.10 USD. The judgment amount of 32,510,958.91 RMB is equivalent to 4,842,985.09 USD.

| | : |
|---|---|
| Initials of Preparer | vpc |

# Exhibit 7 – Writ of Execution

Bethany M. Stevens (SBN 245672)
bstevens@wscllp.com
Walker Stevens Cannom LLP
500 Molino Street #118
Los Angeles, CA 90013
Tel: 213.712.9145;
Fax: 213.403.4906

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shanghai Lan Cai Asset Management Co, Ltd. | **CASE NUMBER:**<br>CV- **2:18-10255-SJO-MRW** |
| Plaintiff(s) | |
| v. | |
| Jia Yueting | **WRIT OF EXECUTION** |
| Defendant(s) | |

**TO:**   **THE UNITED STATES MARSHAL FOR THE CENTRAL DISTRICT OF CALIFORNIA**

You are directed to enforce the Judgment described below with interest and costs as provided by law.

On <u>April 7, 2019</u> a judgment was entered in the above-entitled action in favor of:

Shanghai Lan Cai Asset Management Co, Ltd.

as Judgment Creditor and against:

Jia Yueting

as Judgment Debtor, for:

| | | |
|---|---:|---|
| $ | 7,571,394.01 | Principal, |
| $ | 0.00 | Attorney Fees, |
| $ | 4,842,985.09 | Interest **, and |
| $ | 0.00 | Costs, making a total amount of |
| $ | 12,414,379.10 | **JUDGMENT AS ENTERED** |

**\*\*NOTE:**   **JUDGMENTS REGISTERED UNDER 28 U.S.C. §1963 BEAR THE RATE OF INTEREST OF THE DISTRICT OF ORIGIN AND CALCULATED AS OF THE DATE OF ENTRY IN THAT DISTRICT.**

WHEREAS, according to an affidavit and/or memorandum of costs after judgment it appears that further sums have accrued since the entry of judgment **in the Central** District of **California** , to wit:

$ ___147,715.14___ accrued interest, and

$ ___0.00___ accrued costs, making a total of

$ ___147,715.14___ **ACCRUED COSTS AND ACCRUED INTEREST**

Credit must be given for payments and partial satisfaction in the amount of $ 0.00 which is to be credited against the total accrued costs and accrued interest, with any excess credited against the judgment as entered, leaving a net balance of:

$ ___12,562,094.24___ **ACTUALLY DUE** on the date of the issuance of this writ of which

$ ___12,414,379.10___ Is due on the judgment as entered and bears interest at 2.41 percent per annum, in the amount of $ 823.57 per day, from the date of issuance of this writ, to which must be added the commissions and costs of the officer executing this writ.


CLERK, UNITED STATES DISTRICT COURT

Dated: ___JULY 24, 2019___

By: _____

Deputy Clerk

The following are name(s) and address(es) of the judgment debtor(s) to whom a copy of the Writ of Execution must be mailed unless it was served at the time of the levy. This information must be filled in by counsel requesting this writ.

```
Daniel Scott Schecter                  Michael Alan Hale
Latham and Watkins LLP                 R Peter Durning, Jr
10250 Constellation Blvd Ste 1100      Latham and Watkins LLP
Los Angeles, CA 90067                  355 S Grand Ave Suite 100
                                       Los Angeles, CA 90071-1560
Attorneys for Jia Yueting
                                       Attorneys for Jia Yueting
```

## NOTICE TO THE JUDGMENT DEBTOR

You may be entitled to file a claim exempting your property from execution. You may seek the advice of an attorney or may, within ten (10) days after the date the notice of levy was served, deliver a claim of exemption to the levying officer as provided in Sections 703.510 - 703.610 of the California Code of Civil Procedure.

**WRIT OF EXECUTION**

# Exhibit 8 – Order to Appear for Examination of Judgment Debtor

Name, Address, and Phone Number of Attorney(s):
Bethany Stevens (SBN 245672)
Walker Stevens Cannom LLP, Tel: 213.712.9145
500 Molino Street #118, Los Angeles, CA 90013

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shanghai Lan Cai Asset Management Co, Ltd. | CASE NUMBER |
| | 2:18-cv-10255-SJO-MRWx |
| Plaintiff(s) | ORDER TO APPEAR FOR EXAMINATION |
| v. | OF X JUDGMENT DEBTOR or ☐ THIRD PERSON RE: |
| Jia Yueting | X ENFORCEMENT OF JUDGMENT |
| Defendant(s) | ☐ ATTACHMENT(Third Person) |

The Court, having considered the Application for Appearance and Examination Re: Enforcement of
Judgment/Attachment, hereby **ORDERS** the Application be ☒ **GRANTED** ☐ **DENIED.**

TO:    ___Jia Yueting_____
         *(Name of Person Ordered to Appear)*

**YOU ARE ORDERED TO APPEAR** personally before the Honorable ___Michael R. Wilner_____ , to:

    X    furnish information to aid in enforcement of a money judgment against you **AND TO
PRODUCE AT THE TIME OF EXAMINATION THE DOCUMENTS LISTED ON ATTACHED EXHIBIT A.**

    ☐    answer concerning property of the judgment debtor in your possession or control or concerning a
debt you owe the judgment debtor.

    ☐    answer concerning property of the defendant in your possession or control concerning a debt you
owe the defendant that is subject to attachment.

    ☐    furnish information to aid in enforcement of a money judgment against the judgment debtor.

    ☐    furnish information to aid in enforcement of a right to attach order against the defendant.

---

Date of appearance: _September 11, 2019_  Courtroom: __550__  Time: _____9:00 a.m./~~p.m.~~

Location of Appearance:    ☐ First Street Courthouse, 350 West 1ˢᵗ Street, Los Angeles, CA
X Roybal Courthouse, 255 E. Temple Street, Los Angeles, CA
☐ Santa Ana Courthouse, 411 W. Fourth Street, Santa Ana, CA
☐ Riverside Courthouse, 3470 Twelfth Street, Riverside, CA

---

This Order may be served by a Marshal, sheriff, registered process server, **or** the following, specially appointed
person: _____
        *(Name of Appointed Process Server)*

Date: _August 21, 2019_____                    _____
                                                    Michael R. Wilner, U.S. Magistrate Judge

---

## APPEARANCE OF JUDGMENT DEBTOR (ENFORCEMENT OF JUDGMENT)

NOTICE TO JUDGMENT DEBTOR:   If you fail to appear at the time and place specified in this order, you may
be subject to arrest and punishment for contempt of court and the court may make an order requiring you to pay
the reasonable attorney fees incurred by the judgment creditor in this proceeding.

---

## APPEARANCE OF A THIRD PERSON
### (ENFORCEMENT OF JUDGMENT - CALIFORNIA C.C.P. SECTION 708.120)

(1)  NOTICE TO PERSON SERVED:  If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court and the court may make an order requiring you to pay the reasonable attorney fees incurred by the judgment creditor in this proceeding.

(2)  NOTICE TO JUDGMENT DEBTOR:  The person in whose favor the judgment was entered in this action claims that the person to be examined pursuant to this order has possession or control of property which is yours or owes you a debt. This property or debt is as follows (*Clearly describe the property or debt. Print or type the description. Use an additional sheet of paper, if necessary.*):

If you claim that all or any portion of this property or debt is exempt from enforcement of the money judgment, you MUST file your exemption claim *in writing* with the court and have a copy personally served on the judgment creditor not later than three (3) days before the date set for the examination.

You MUST appear at the time and place set for the examination to establish your claim of exemption or your exemption may be waived.

## APPEARANCE OF A THIRD PERSON (ATTACHMENT - CALIFORNIA C.C.P. SECTION 491.110)

NOTICE TO PERSON SERVED:  If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court and the court may make an order requiring you to pay the reasonable attorney fees incurred by the plaintiff in this proceeding.

## APPEARANCE OF A CORPORATION, PARTNERSHIP, ASSOCIATION, TRUST, OR OTHER ORGANIZATION

It is your duty to designate one or more of the following to appear and be examined: officers, directors, managing agents, or other persons who are familiar with your property and debts.

# Exhibit 9 – Joint Stipulation to Continue Judgment Debtor Examination

1  CARLOS M. LAZATIN (Bar No. 229650)
   clazatin@omm.com
2  WILLIAM K. PAO (Bar No. 252637)
   wpao@omm.com
3  O'MELVENY & MYERS LLP
4  400 South Hope Street
   Los Angeles, California  90071–2899
5  Telephone:    (213) 430-6000
   Facsimile:    (213) 430-6407
6

7  Attorneys for Respondent Jia Yueting

8

9

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14  SHANGHAI LAN CAI ASSET               Case No. 2:18-cv-10255-SJO (MRWx)
    MANAGEMENT CO., LTD.,
15                                       **JOINT STIPULATION TO**
                  Petitioner,            **CONTINUE JUDGMENT DEBTOR**
16                                       **EXAMINATION OF RESPONDENT**
          v.                             **JIA YUETING**
17
    JIA YUETING,                         Judge:  Hon. Michael R. Wilner
18                                       Courtroom:  550
                  Respondent.
19                                       Current Examination Date: September
                                         11, 2019, at 9:00 a.m.
20                                       Proposed Examination Dates:  October
                                         17-18, 2019, at 9:00 a.m.
21

22

23

24

25

26

27

28

1      WHEREAS, on August 21, 2019, the Court entered an order directing
2  Respondent Jia Yueting to appear for a judgment debtor examination on September
3  11, 2019, at 9:00 a.m., *see* Dkt. No. 63;

4      WHEREAS, on August 26, 2019, Respondent's former counsel of record
5  filed a request to withdraw from representation, *see* Dkt. No. 69;

6      WHEREAS, on August 28, 2019, Judge Otero granted Respondent's former
7  counsel's request to withdraw, *see* Dkt. No. 70;

8      WHEREAS, Respondent has retained undersigned counsel from O'Melveny
9  & Myers LLP for representation in this matter;

10      WHEREAS, on September 3, 2019, undersigned counsel for Respondent
11  entered their appearances in this matter, *see* Dkt. Nos. 77 & 78;

12      WHEREAS, counsel for Petitioner Shanghai Lan Cai Asset Management
13  Co., Ltd. and Respondent have conferred regarding Respondent's judgment debtor
14  examination;

15      WHEREAS, the parties agreed, subject to the Court's approval, that a short
16  continuance of the judgment debtor examination is appropriate to permit
17  Respondent's counsel to familiarize themselves with the record and legal issues and
18  adequately prepare Respondent for said examination;

19      WHEREAS, the parties agreed, subject to the Court's approval, that
20  Respondent's judgment debtor examination may be conducted over a period of not
21  more than twelve (12) hours on the record;

22      NOW, THEREFORE, pursuant to Local Rule 7-1, IT IS HEREBY
23  STIPULATED by and among the parties and through their counsel of record that:

24      1.    The judgment debtor examination of Respondent, currently scheduled
25  for September 11, 2019, at 9:00 a.m., is continued to October 17 and 18, 2019, at
26  9:00 a.m., to take place at the Roybal Courthouse, 255 E. Temple Street, Los
27  Angeles, CA, the First Street Courthouse, 350 West 1st Street, Los Angeles, CA, or
28  another location agreed by the parties in writing, whichever is able to host the

JOINT STIP. CONTINUING
JUDGMENT DEBTOR EXAM.
2:18-CV-10255-SJO (MRWx)

1    examination at that time.

2        2.    The judgment debtor examination of Respondent shall not exceed

3    twelve (12) hours on the record.

4        3.    The judgment debtor agrees to accept service of the debtor's

5    examination order (Dkt. No. 63) and any subsequent order entered on this

6    Stipulation by ECF in lieu of service pursuant to CCP Section 708.110 and Section

7    415.10.

8        IT IS SO STIPULATED.

9

10

11    Dated:  September 4, 2019              CARLOS M. LAZATIN

12                                          WILLIAM K. PAO
                                            O'MELVENY & MYERS LLP

13                                          By:____/s/ William K. Pao_____

14                                               William K. Pao

15                                          Attorneys for Respondent Jia Yueting

16

17    Dated:  September 4, 2019             CHRISTOPHER COGBURN

18                                          JOHN HAN
                                            KOBRE & KIM LLP

19

20                                          BETHANY STEVENS
                                            AMANDA WALKER

21                                          WALKER STEVENS CANNOM LLP

22                                          By:____/s/ John Han_____
                                                 John Han

23                                          Attorneys for Petitioner Shanghai Lan

24                                          Cai Asset Management Co., Ltd.

25

26

27

28

                                            JOINT STIP. CONTINUING
                                            JUDGMENT DEBTOR EXAM.
                                            2:18-CV-10255-SJO (MRWx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTESTATION

I hereby attest that the other signatory listed, on whose behalf this filing is submitted, concurs in the filing's content and has authorized the filing.

Dated: September 4, 2019          O'MELVENY & MYERS LLP

By:   /s/ William K. Pao
        William K. Pao

3

# Exhibit 10 – Order Granting Joint Stipulation to Continue Judgment Debtor Examination

1　CARLOS M. LAZATIN (Bar No. 229650)
　　clazatin@omm.com
2　WILLIAM K. PAO (Bar No. 252637)
　　wpao@omm.com   NOTE: CHANGES MADE BY THE COURT
3　O'MELVENY & MYERS LLP
　　400 South Hope Street
4　Los Angeles, California  90071–2899
5　Telephone:　(213) 430-6000
　　Facsimile:　(213) 430-6407
6

7　Attorneys for Respondent Jia Yueting

8

9

10

11　　　　　　**UNITED STATES DISTRICT COURT**

12　　　　　　**CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| SHANGHAI LAN CAI ASSET MANAGEMENT CO., LTD., | Case No. 2:18-cv-10255-SJO (MRWx) |
| Petitioner, | [~~PROPOSED~~] **ORDER GRANTING JOINT STIPULATION TO CONTINUE JUDGMENT DEBTOR'S EXAMINATION OF RESPONDENT JIA YUETING** |
| v. | |
| JIA YUETING, | Judge:  Hon. Michael R. Wilner |
| Respondent. | Courtroom:  550 |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    This Matter came before the Court on Petitioner Shanghai Lan Cai Asset

2    Management Co., Ltd. and Respondent Jia Yueting's Joint Stipulation To Continue

3    Judgment Debtor Examination of Respondent Jia Yueting.  Having reviewed the

4    stipulation, and for good cause shown, the Court hereby GRANTS the stipulation.

5    The judgment debtor examination currently scheduled for September 11, 2019, at

6    9:00 a.m., *see* Dkt. No. 63, is VACATED.  Respondent is ORDERED to appear

7    before this Court, at **Courtroom 550 of** the Roybal Courthouse, 255 E. Temple

8    Street, Los Angeles, CA, ~~the First Street Courthouse, 350 West 1st Street, Los~~

9    ~~Angeles, CA, or another location agreed by the parties in writing, whichever is able~~

10    ~~to host the examination at the appointed time,~~ for a judgment debtor examination on

11    October 17 and 18, 2019, at 9:00 a.m.  The judgment debtor examination shall not

12    exceed twelve (12) hours on the record.  Service of the debtor's examination order

13    (Dkt. No. 63) and this Order may be made by ECF in lieu of service pursuant to

14    CCP Section 708.110 and Section 415.10.

15

16    **IT IS SO ORDERED.**

17        DATED this 4th day of September, 2019.

18

19

20    _____

21        The Honorable Michael R. Wilner
        United States Magistrate Judge

22    1. Unless they agree otherwise, the parties will meet with Judge Wilner in the

23        courtroom before the JD exam to discuss procedures.

24    2. The witness may be questioned in the courthouse attorney lounge or any

25        other mutually acceptable location (counsel's office?).

26    3. The Court thanks the attorneys for professionally working out the

27        problematic scheduling and duration issues of the exam.   MRW

28

1

[PROPOSED] ORDER GRANTING JOINT
STIP. RE: DEBTOR EXAM.
2:18-CV-10255-SJO (MRWx)



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (specify):  **REQUEST FOR JUDICIAL NOTICE OF YUETING JIA IN SUPPORT OF DEBTOR'S OPPOSITION TO DISMISS DEBTOR'S CHAPTER 11 CASE BY CREDITOR SHANGHAI LAN CAI ASSET MANAGEMENT CO., LTD.** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **March 3, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) **March 3, 2020,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
United States Bankruptcy Court
Central District of California
Attn:  Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 3, 2020 | Sophia L. Lee | /s/ Sophia L. Lee |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                  **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:327335.1 46353/002

**SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- *Tanya Behnam      tbehnam@polsinelli.com, tanyabehnam@gmail.com*
- *Jerrold L Bregman      ecf@bg.law, jbregman@bg.law*
- *Jeffrey W Dulberg      jdulberg@pszjlaw.com*
- *Stephen D Finestone      sfinestone@fhlawllp.com*
- *Alexandra N Krasovec      krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com*
- *Ben H Logan      blogan@omm.com*
- *David W. Meadows      david@davidwmeadowslaw.com*
- *John A Moe      john.moe@dentons.com, glenda.spratt@dentons.com*
- *Kelly L Morrison      kelly.l.morrison@usdoj.gov*
- *Malhar S Pagay      mpagay@pszjlaw.com, bdassa@pszjlaw.com*
- *Christopher E Prince      cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com*
- *Randye B Soref      rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com*
- *Benjamin Taylor      btaylor@taylorlawfirmpc.com*
- *United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov*
- *Emily Young      pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:327335.1 46353/002