1  Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
2  Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067
4  Telephone: 310/277-6910
Facsimile:  310/201-0760
5  E-mail: rpachulski@pszjlaw.com
          jdulberg@pszjlaw.com
6          mpagay@pszjlaw.com

7  Attorneys for Debtor and Debtor in Possession

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             LOS ANGELES DIVISION

11

In re:                              | Case No.: 2:19-bk-24804-VZ
12
YUETING JIA,[1]                     |
13                                   | Chapter 11
                        Debtor.      |
14                                   | **NOTICE OF FILING OF BLACKLINE
                                     | VERSION OF DEBTOR'S THIRD
15                                   | AMENDED PLAN OF
                                     | REORGANIZATION
16                                   | UNDER CHAPTER 11 OF THE
                                     | BANKRUPTCY CODE**
17
18
                                     | <u>Hearing</u>
19                                   | Date:      March 19, 2020
                                     | Time:      9:30 a.m.
20                                   | Place:     Courtroom 1368
                                     |            Roybal Federal Building
21                                   |            255 E. Temple Street
                                     |            Los Angeles, California 90012
22                                   | Judge:     Hon. Vincent P. Zurzolo
23                                   | [Relates to Docket No. 464]

24        **PLEASE TAKE NOTICE** that Yueting Jia, debtor and debtor in possession herein (the

25  "<u>Debtor</u>"), attaches hereto as **Exhibit "A"** a blackline version of the *Debtor's Third Amended Plan*

26  *of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 464] compared to the

27  _____

28  [1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91
    Marguerite Drive, Rancho Palos Verdes, CA 90275.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 398] (the "Second Amended Plan").

**PLEASE TAKE FURTHER NOTICE** that the Debtor attaches hereto as **Exhibit "B"** a chart summarizing the substantive changes to the Second Amended Plan, including changes made as a result of further negotiations with creditors and in response to the Bankruptcy Court's tentative ruling issued on March 16, 2020, with respect to approval of the Debtor's proposed disclosure statement.

Dated:    March 17, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

By      */s/ Malhar S. Pagay*
        Richard M. Pachulski
        Jeffrey W. Dulberg
        Malhar S. Pagay

        Attorneys for Debtor and Debtor in
        Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1                                          **Exhibit A**

2                                       **Plan Blackline**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Mahar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310-277-6910
Facsimile: 310-201-0760
Email: rpachulski@pszjlaw.com
        jdulberg@pszjlaw.com
        mpagay@pszjlaw.com

Counsel for Debtor and Debtor in Possession

Suzzanne Uhland (CA Bar No. 136852)
Diana M. Perez (NY Bar No. 4636403)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: 212-326-2000
Facsimile: 212-326-2061
Email: suhland@omm.com
        dperez@omm.com

Special Corporate, Litigation, and International
Counsel for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>YUETING JIA[1],<br><br>              Debtor. | Case No. 2:19-bk-24804-VZ<br><br>Chapter 11<br><br>DEBTOR'S ~~SECOND~~THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE<br><br><u>Confirmation Hearing</u><br>Date:  TBD<br>Time:  TBD<br>Place:  Courtroom 1368<br>           Roybal Federal Building<br>           255 E. Temple Street<br>           Los Angeles, California 90012<br>Judge:  Hon. Vincent P. Zurzolo |

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS AND INTERPRETATION.................................................................1

    1.1     Definitions...............................................................................................1

    1.2     Interpretation, Application of Definitions, and Rules of Construction.................14

ARTICLE II UNCLASSIFIED CLAIMS ................................................................................15

    2.1     Administrative Expense Claims.........................................................15

    2.2     Professional Fees. ...............................................................................16

    2.3     Priority Tax Claims. ............................................................................17

    2.4     Domestic Support Obligations. ..........................................................18

    2.5     DIP Facility Claims.............................................................................18

ARTICLE III CLASSIFICATION OF CLAIMS ..................................................................19

    3.1     Class Identification. ............................................................................19

ARTICLE IV TREATMENT OF CLAIMS ..........................................................................19

    4.1     Priority Non-Tax Claims (Class 1). ...................................................19

    4.2     U.S. Secured Claims (Class 2)...........................................................20

    4.3     China Secured Claims (Class 3) .........................................................20

    4.4     Debt Claims (Class 4). ........................................................................21

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN ...........................................21

    5.1     Class Acceptance Requirement...........................................................21

    5.2     Deemed Acceptance by Non-Voting Classes. ...................................21

    5.3     Elimination of Vacant Classes. ..........................................................~~21~~22

    ~~5.4~~     ~~Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.~~ ...................~~22~~

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN........................................22

    6.1     Compromise of Controversies. ..........................................................22

    6.2     The Trust.............................................................................................22

    6.3     Exit Financing.....................................................................................32

    6.4     Sources of Cash for Plan Distributions...............................................32

    6.5     Cancellation of Liens. .........................................................................32

    6.6     Wei Gan Settlement. ...........................................................................33

    6.7     Declarations. .......................................................................................35

ARTICLE VII PLAN DISTRIBUTIONS ............................................................................36

    7.1     Plan Distributions. ..............................................................................36

    7.2     Allocation of Plan Distributions Between Principal and Interest. .......................36

    7.3     No Postpetition Interest on Claims. ....................................................~~36~~37

    7.4     Date of Plan Distributions...................................................................~~36~~37

**TABLE OF CONTENTS**
(continued)

Page

7.5   Distribution Record Date. ...................................................................37

7.6   Delivery of Plan Distribution. ............................................................37

7.7   Unclaimed Property. ...................................................................~~37~~38

7.8   Satisfaction of Claims. .......................................................................38

7.9   Manner of Payment Under Plan. .........................................................38

7.10  No Distribution in Excess of Amount of Allowed Claim. ...................38

7.11  Setoffs and Recoupments. ..................................................................39

7.12  Withholding and Reporting Requirements. .....................................~~39~~40

7.13  Claims Paid by Third Parties. .............................................................40

ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED CLAIMS ...........................41

8.1   Objections to Claims; Estimation of Claims. ......................................41

8.2   Payments and Distributions on Disputed Claims. ..............................42

8.3   Preservation of Claims and Rights to Settle Claims. ......................~~42~~43

8.4   Expenses Incurred On or After the Effective Date. ........................~~43~~44

ARTICLE IX EXECUTORY CONTRACTS AND UNEXPIRED LEASES .....................~~43~~44

9.1   Assumption of Contracts and Leases. .............................................~~43~~44

9.2   Claims Based on Rejection of Executory Contracts or Unexpired Leases. .......~~44~~45

9.3   Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ........45

9.4   Insurance Policies. .............................................................................46

9.5   Reservation of Rights. .....................................................................~~46~~47

9.6   Pre-existing Obligations to Debtor Under Executory Contracts and
      Unexpired Leases. ..............................................................................47

9.7   Contracts and Leases Entered into After the Petition Date. ................47

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION AND THE
      EFFECTIVE DATE .......................................................................~~47~~48

10.1  Conditions Precedent to Confirmation. ..........................................~~47~~48

10.2  Conditions Precedent to the Effective Date. ...................................~~47~~48

10.3  Waiver of Conditions Precedent. ....................................................~~48~~49

10.4  Effect of Non-Occurrence of the Effective Date. ...........................~~48~~49

ARTICLE XI EFFECT OF CONFIRMATION ..............................................................49

11.1  Vesting of Assets. ..............................................................................49

11.2  Binding Effect. .................................................................................~~49~~50

11.3  Discharge of Claims. ..........................................................................50

11.4  Releases. ..........................................................................................~~51~~52

11.5  Exculpation and Limitation of Liability. ........................................~~57~~59

**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| 11.6 | Injunction. | ~~59~~60 |
| 11.7 | Term of Bankruptcy Injunction or Stays. | ~~60~~61 |
| 11.8 | Termination of Subordination Rights and Settlement of Related Claims | ~~60~~61 |
| 11.9 | Waiver of Actions Arising Under Chapter 5 of the Bankruptcy Code. | ~~60~~62 |
| 11.10 | Reservation of Rights. | ~~62~~63 |
| ARTICLE XII RETENTION OF JURISDICTION | | ~~62~~63 |
| ARTICLE XIII MISCELLANEOUS PROVISIONS | | ~~65~~66 |
| 13.1 | Claims Allowed by the Plan. | ~~65~~66 |
| 13.2 | Payment of Statutory Fees. | ~~65~~66 |
| 13.3 | Exemption from Securities Laws. | ~~65~~66 |
| 13.4 | Exemption from Certain Transfer Taxes. | ~~65~~67 |
| 13.5 | Dissolution of Statutory Committees and Cessation of Fee and Expense Payment. | ~~66~~67 |
| 13.6 | Substantial Consummation. | ~~66~~68 |
| 13.7 | Expedited Determination of Postpetition Taxes. | ~~66~~68 |
| 13.8 | Modification and Amendments. | ~~67~~68 |
| 13.9 | Additional Documents. | ~~67~~68 |
| 13.10 | Effectuating Documents and Further Transactions. | ~~67~~69 |
| 13.11 | Plan Supplement. | ~~67~~69 |
| 13.12 | Entire Agreement. | ~~68~~69 |
| 13.13 | Revocation or Withdrawal of the Plan. | ~~68~~69 |
| 13.14 | Severability. | ~~68~~70 |
| 13.15 | Solicitation. | ~~69~~70 |
| 13.16 | Governing Law. | ~~69~~71 |
| 13.17 | Compliance with Tax Requirements. | ~~70~~71 |
| 13.18 | Successors and Assigns. | ~~70~~71 |
| 13.19 | Closing of Chapter 11 Case. | ~~70~~71 |
| 13.20 | Document Retention. | ~~70~~72 |
| 13.21 | Conflicts. | ~~70~~72 |
| 13.22 | Service of Documents. | ~~71~~72 |
| 13.23 | Deemed Acts. | ~~71~~73 |
| 13.24 | Waiver or Estoppel. | ~~72~~73 |

## **EXHIBITS**

<u>**Schedule A**</u>    **Schedule of Retained Actions**

<u>**Schedule B**</u>    **Schedule of Contracts and Leases to be Assumed Under the Plan**

<u>**Schedule C**</u>    **Schedule of Key China Business Individuals and KCBI Claimants**

<u>**Schedule D**</u>    **Schedule of Entities**

**INTRODUCTION**

Yueting Jia as a debtor and debtor in possession (the "<u>Debtor</u>" or "<u>YT</u>") proposes, and is the proponent of, this chapter 11 plan of reorganization. The Plan[2] provides for the reorganization of the Debtor under chapter 11 of the Bankruptcy Code. As set forth below and described in the Disclosure Statement, under the Plan:

- holders of Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and U.S. Secured Claims are paid in full;

- holders of Allowed China Secured Claims retain their rights to pursue Collateral located in the PRC;

- holders of Allowed Debt Claims and Allowed Late Filed Debt Claims receive their ~~Pro Rata~~<u>pro rata</u> distribution of the Trust Interests;

- except as set forth in the Plan, the Debtor and the Reorganized Debtor will irrevocably and unconditionally release, waive, and discharge any Claims or Causes of Action that they have, had, or may have that are based on sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code and analogous non-bankruptcy law for all purposes; and

- the Debtor and holders of Allowed Claims release certain Persons and Entities.

**Holders of Claims should refer to the Disclosure Statement for a discussion of the Debtor's history, business interests, assets, financial information, as well as a summary and description of the Plan. Before voting to accept or reject the Plan, holders of Claims entitled to vote on the Plan are encouraged to read carefully the Plan, the Disclosure Statement, and their respective exhibits and schedules in their entirety. These are the only materials approved for use in soliciting acceptances or rejections of the Plan.**

**ARTICLE I
DEFINITIONS AND INTERPRETATION**

**1.1    *Definitions.***

As used in the Plan, capitalized terms have the meanings set forth in this Article I (such meanings applicable to the singular and plural):

**1.    *Administrative Expense Claim*** means a Claim for a cost or expense of administration of the Estate under sections 503(b) (including Claims arising under section 503(b)(9)), 507(a)(2), or 507(b) of the Bankruptcy Code, including (a) any actual and necessary

---

[2] Capitalized terms are as defined in Article 1 below.

1    cost and expense of preserving the Estate incurred after the Petition Date and through the Effective

2    Date; (b) any indebtedness or obligations incurred or assumed by the Debtor after the Petition Date

3    and through the Effective Date; (c) any Allowed compensation for professional services rendered,

4    and Allowed reimbursement of expenses incurred, by a Professional retained by order of the

5    Bankruptcy Court or otherwise Allowed pursuant to section 503(b) of the Bankruptcy Code; and

6    (d) all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code.

7        **2.**      ***Administrative Expense Claim Bar Date*** means the first Business Day that is thirty

8    (30) days after the Effective Date.

9        **3.**      ***Allowed*** means, with respect to any Claim, such Claim or portion thereof against or

10   in the Debtor: (a) that has been listed by the Debtor in the Schedules as liquidated in amount and

11   not disputed or contingent and for which no contrary proof of claim has been filed; (b) as to which

12   the deadline for objecting or seeking estimation has passed, and no objection or request for

13   estimation has been filed; (c) as to which any objection or request for estimation that has been filed

14   has been settled, waived, withdrawn, or denied by a Final Order; or (d) that is allowed pursuant to

15   the terms of (i) a Final Order, (ii) an agreement by and among the holder of such Claim and the

16   Debtor or the Reorganized Debtor, as applicable, or (iii) the Plan.

17       4. ***Allowed Debt Claim Allocation Amount*** means the Allowed amount of a Debt Claim

18   together with any unpaid interest at the rate of four percent (4%) per annum from the time the

19   underlying debt arose through the Petition Date, and with respect to any holder of an Allowed Debt

20   Claim who is a KCBI Claimant, subject to the approval of the applicable KCBI Settlement, up to

21   an additional twenty percent (20%) of the Allowed amount of their Debt Claim plus interest

22   thereon.

23       5. ***Allowed Debt Claim Distribution Amount*** means the Allowed Debt Claim Allocation

24   Amount *minus* any Other Distributions received by the holder of such Allowed Debt Claim. For

25   the avoidance of doubt, any Other Distributions received by a holder of an Allowed Debt Claim

26   shall be first applied to reduce the principal amount of such Debt Claim, and any remaining

27   consideration to satisfy any accrued, but unpaid, interest.

28       **4.**      6. ***Ballot*** means the form distributed to each holder of an Impaired Claim that is

1  entitled to vote to accept or reject the Plan, on which such holder shall indicate acceptance or

2  rejection of the Plan.

3  **5.**  ~~7.~~ ***Bankruptcy Actions*** has the meaning set forth in Article 11.9 of the Plan.

4  **6.**  ~~8.~~ ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101–

5  1532 *et seq.*

6  **7.**  ~~9.~~ ***Bankruptcy Court*** means the United States Bankruptcy Court for the Central

7  District of California (Los Angles Division), or such other court having jurisdiction over the

8  Chapter 11 Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case.

9  **8.**  ~~10.~~ ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, the

10  Official Bankruptcy Forms, or the local rules of the Bankruptcy Court.

11  **9.**  ~~11.~~ ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday"

12  (as defined in Bankruptcy Rule 9006(a)).

13  **10.**  ~~12.~~ ***Call Option*** means that certain call option exercisable by the Debtor under that

14  certain Restructuring Agreement dated as of December 31, 2018, by and among Smart King (n/k/a

15  FF ~~Global~~Intelligent), the Debtor, Season Smart, and the other parties thereto.

16  **11.**  ~~13.~~ ***Cash*** means legal tender of the United States of America and equivalents

17  thereof.

18  **12.**  ~~14.~~ ***Causes of Action*** means any action, claim, cause of action, controversy, demand,

19  right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account,

20  defense, offset, power, privilege, license, and franchise of any kind or character whatsoever,

21  whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or

22  unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable

23  directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort,

24  in law, or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "Cause of

25  Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of

26  contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any

27  claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any equitable remedy,

28  including, without limitation, any claim for equitable subordination, equitable disallowance, or

unjust enrichment; (e) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any cause of action or claim arising under any state or foreign fraudulent transfer law.

**13.** ~~15.~~ ***Chapter 11 Case*** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

**14.** ~~16.~~ ***Chapter 11 Disclosures*** has the meaning set forth in Article 11.9 of the Plan.

**15.** ~~17.~~ ***China Debtor List*** has the meaning set forth in Article 11.4(c) of the Plan.

**16.** ~~18.~~ ***China Debtor List Covenant*** has the meaning set forth in Article 11.4(c) of the Plan.

**17.** ~~19.~~ ***China Restrictions*** has the meaning set forth in Article 11.4(c) of the Plan.

**18.** ~~20.~~ ***China Secured Claim*** means a Claim against the Debtor that is secured by a valid, unavoidable, perfected, and enforceable Lien on, or security interest in, Collateral located in the PRC. For the avoidance of doubt, the Allowed amount of a China Secured Claim shall equal the value of such Collateral in accordance with section 506(a) of the Bankruptcy Code.

**19.** ~~21.~~ ***Chinese Courts*** has the meaning set forth in Article 11.4(c) of the Plan.

**20.** ~~22.~~ ***Claim*** means a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

**21.** ~~23.~~ ***Class*** means a category of Claims established under Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**22.** ~~24.~~ ***Collateral*** means any property of the Debtor subject to a valid, unavoidable, perfected, and enforceable Lien on, or security interest in, such property.

**23.** ~~25.~~ ***Committee*** means the official committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

**24.** ~~26.~~ ***Confirmation Date*** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**25.** ~~27.~~ ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

**26.** ~~28.~~ *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, and granting other related relief.

**27.** ~~29.~~ *Creditor Trust* means the 2020 Creditor Liquidating Trust for the benefit of holders of Allowed Debt Claims.

**28.** ~~30.~~ *Creditor Trust Committee* has the meaning set forth in Article 6.2(f) of the Plan.

**29.** ~~31.~~ *Cure Amount* has the meaning set forth in Article 9.3(a) of the Plan.

**30.** ~~32.~~ *Cure Dispute* has the meaning set forth in Article 9.3(c) of the Plan.

**31.** ~~33.~~ *Cure Schedule* has the meaning set forth in Article 9.3(b) of the Plan.

**32.** ~~34.~~ *Debt Claim* means any Claim against the Debtor that is (a) not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, U.S. Secured Claim, or China Secured Claim, (b) otherwise determined by the Bankruptcy Court to be a Debt Claim, or (c) a Deficiency Claim.

**33.** *Debt Claim Allocation Amount* means, for the purpose of determining the pro rata share of Trusts Interests, (a) that portion of an Allowed Debt Claim that constitutes outstanding principal together with any unpaid interest on outstanding principal at the rate of four percent (4%) per annum from the time the underlying debt arose through the Petition Date, and (b) with respect to any holder of an Allowed Debt Claim who is a KCBI Claimant, subject to the approval of the applicable KCBI Settlement, up to an additional five percent (5%) of the Allowed amount of their Debt Claim Allocation Amount determined in accordance with clause (a).

**34.** *Debt Claim Distribution Amount* means on any Trust Distribution Date, the Debt Claim Allocation Amount *minus* any Other Distributions and Trust Distributions received by the holder of an Allowed Debt Claim before such Trust Distribution Date.

**35.** *Debtor* has the meaning set forth in the Introduction.

**36.** *Declarations* has the meaning set forth in Article 6.7 of the Plan.

**37.** *Deficiency Claim* means that portion of a China Secured Claim that is determined pursuant to section 506(a) of the Bankruptcy Code or through agreement, to exceed the value of the claimant's interest in the Collateral securing such China Secured Claim. For the avoidance of doubt, all Deficiency Claims shall be treated as Debt Claims.

38.    ***DIP Facility*** means that certain debtor in possession facility from Pacific Technology consisting of the DIP Note.

39.    ***DIP Note*** means that certain Secured Debtor in Possession Promissory Note dated as of February 27, 2020, by and among Pacific Technology, as Lender, and the Debtor, as Borrower, in the maximum principal amount of $6,400,000.

40.    ***Disallowed*** means, with respect to any Claim, a Claim or any portion thereof that is not Allowed and (a) has been disallowed by a Final Order, (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no proof of claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not listed in the Schedules and as to which no proof of claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (d) has been withdrawn by agreement of the Debtor and the holder thereof, or (e) has been withdrawn by the holder thereof.

41.    ***Discharge Date*** means the date upon which the Court grants the Debtor a discharge upon the earlier of: (a) distribution of the Trust Interests to the holders of Allowed Debt Claims and (b) all Allowed Claims shall have been paid under the Plan.

42.    ***Disclosure Statement*** means that written disclosure statement, dated March 2__, 2020, relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, modified, or supplemented from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.

43.    ***Disputed Claim*** means a Claim that is not yet Allowed.

44.    ***Distributable Proceeds*** has the meaning set forth in Article 6.2(i) of the Plan.

45.    ***Distribution Event*** has the meaning set forth in Article 6.2(i) of the Plan.

46.    ***Distribution Record Date*** means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the date of the commencement of the Confirmation Hearing.

47.    ***Distribution Waterfall*** means the distribution waterfall set forth in Article 6.2(j) of the Plan.

48.    ***Domestic Support Obligations*** means a domestic support obligation, as defined in section 101(14A) of the Bankruptcy Code, as such obligations may be modified from time to time by a court of competent jurisdiction.

49.    ***Effective Date*** means, with respect to the Plan, the Business Day selected by the Debtor on which (a) no stay of the Confirmation Order is in effect, (b) the conditions to the effectiveness of the Plan specified in Article 10.2 have been satisfied or waived (in accordance with Article 10.3), and (c) the Debtor declares the Plan effective.

50.    ***Effective Date Wei Gan Payment*** has the meaning set forth in Article 6.6 of the Plan.

51.    ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

52.    ***Estate*** means the estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

53.    ***Exit Financing*** means financing, on terms and conditions acceptable to the Committee and the Debtor, providing net proceeds in an amount not less than $1,500,000 to fund the operations of the Trust for the Initial Term, plus such amounts as necessary to make payments required to be made in connection with the Plan pursuant to Article 6.4 of the Plan. The material terms of the Exit Financing will be included in the Plan Supplement.

54.    ***FF*** means Faraday & Future Inc., a Delaware corporation.

**55.**    ***FF GP*** means FF Global Partners LLC, a Delaware limited liability company.

**56.**    55. ***FF*** ~~***Global***~~***Intelligent*** means FF Intelligent Mobility Global Holdings Ltd. (formerly Smart King Ltd.), a company formed under the laws of the Cayman Islands.

**57.**    56. ***FF*** ~~***Global***~~***Intelligent M&A*** means that certain Sixth Amended and Restated Memorandum and Articles of Association of FF Intelligent Mobility Global Holdings Ltd. (f/k/a Smart King Ltd.) adopted February 10, 2020.

**58.**    57. ***FF*** ~~***Global***~~***Intelligent Shares*** has the meaning set forth in Article 6.7 of the Plan.

**59.**    58. ***FF*** ~~***Global***~~***Intelligent Transfer Right*** means the Debtor's contractual right to direct Pacific Technology to direct FF Peak to direct FF Top to transfer the Trust FF ~~Global~~Intelligent Shares to the Trust.

1    ~~59.  *FF GP* means FF Global Partners LLC, a Delaware limited liability company.~~

2    **60.**    ***FF Peak*** means FF Peak Holding Limited, a company organized in the British

3    Virgin Islands.

4    **61.**    ***FF Top*** means FF Top Holding Ltd., a company organized in the British Virgin

5    Islands.

6    **62.**    ***Final Order*** means an order or judgment entered by the Bankruptcy Court or other

7    court of competent jurisdiction: (a) that has not been reversed, stayed, modified, amended, or

8    revoked, and as to which (i) any right to appeal or seek leave to appeal, certiorari, review,

9    reargument, stay, or rehearing has been waived or (ii) the time to appeal or seek leave to appeal,

10    certiorari, review, reargument, stay, or rehearing has expired and no appeal, motion for leave to

11    appeal, or petition for certiorari, review, reargument, stay, or rehearing is pending or (b) as to which

12    an appeal has been taken, a motion for leave to appeal, or petition for certiorari, review, reargument,

13    stay, or rehearing has been filed and (i) such appeal, motion for leave to appeal or petition for

14    certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which

15    the order or judgment was appealed or from which leave to appeal, certiorari, review, reargument,

16    stay, or rehearing was sought and (ii) the time to appeal (in the event leave is granted), appeal

17    further or seek leave to appeal, certiorari, further review, reargument, stay, or rehearing has expired

18    and no such appeal, motion for leave to appeal, or petition for certiorari, further review, reargument,

19    stay, or rehearing is pending; *provided*, *however*, that no order or judgment shall fail to be a "Final

20    Order" solely because of the possibility that a motion pursuant to sections 502(j) or 1144 of the

21    Bankruptcy Code, rules 59 or 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023

22    or 9024 may be filed with respect to such order or judgment.

23    **63.**    ***Ford Field*** means Ford Field International Limited, a company organized in the

24    British Virgin Islands.

25    **64.**    ***Future Equity Incentive Plan*** has the meaning set forth in Article 6.2(k) of the Plan.

26    **65.**    ***Impaired*** means, with respect to a Class of Claims, a Class that is impaired within

27    the meaning of section 1124 of the Bankruptcy Code.

28    **66.**    ***Initial Term*** has the meaning set forth in Article 6.2(g) of the Plan.

67. ***Injunctions*** means those certain limitations and prohibitions imposed by preliminary injunctions, freezing orders, and/or similar orders from courts in the British Virgin Islands and the United States federal courts situated in the state of California.

68. ***IPO*** means an initial public offering on the New York Stock Exchange, Nasdaq, the Hong Kong Stock Exchange, the London Stock Exchange, or any other internationally recognized stock exchange (including in the PRC) with respect to the shares of outstanding capital stock of FF ~~Global~~Intelligent or such other relevant listing vehicle, as applicable.

69. ***KCBI Claimant*** means a holder of an Allowed Debt Claim who also holds a guarantee from a Key China Business Individual on the same obligation underlying their Allowed Debt Claim and has voluntarily agreed to settle their claims against such Key China Business Individual. The list of potential KCBI Claimants is included on **Schedule C** attached hereto.

70. ***KCBI Settlement*** means a voluntary settlement agreement under Bankruptcy Rule 9019 between a Key China Business Individual and a KCBI Claimant, if such agreements are reached. Any KCBI Settlements will be included in the Plan Supplement.

71. ***Key China Business Individuals*** are those certain Chinese individuals who voluntarily enter into a KCBI Settlement with a KCBI Claimant prior to the Confirmation Date. The list of potential Key China Business Individuals is included on **Schedule C** attached hereto.

72. ***Late Filed Debt Claim*** means a Debt Claim filed after the applicable deadline set by the Bankruptcy Court to file proofs of claim in the Chapter 11 Case but before the occurrence of a Distribution Event.

73. ***Late Filed Debt Claims Reserve*** means the trust established for the benefit of holders of Allowed Late Filed Debt Claims.

74. ***Lien*** means a lien as defined in section 101(37) of the Bankruptcy Code.

75. ***Liquidation Event*** means, with respect to Pacific Technology, FF ~~Global~~Intelligent, any of their respective material, direct or indirect, subsidiaries, or any future public listing vehicle for the subsidiaries of FF ~~Global~~Intelligent or Pacific Technology, each of the following events to the extent that the event materially reduces the direct or indirect percentage ownership in FF ~~Global~~Intelligent or such other future public listing vehicle by the Trust other than by virtue of an

equity investment by a bona fide third party: (a) the commencement of an assignment for the benefit of creditors, a receivership, a case under chapter 7 of the Bankruptcy Code, or a similar insolvency proceeding; (b) the effective date of a liquidating plan under chapter 11 of the Bankruptcy Code; or (c) the effective date of a reorganization plan under chapter 11 of the Bankruptcy Code, *provided* that internal reorganizations (including mergers or dissolutions for tax or other purposes) that do not adversely impact the value of the Trust's direct or indirect interests in FF ~~Global~~Intelligent or such other future public listing vehicle are not intended to be Liquidation Events.

76. ***Marketable Securities*** has the meaning set forth in Article 6.2(i) of the Plan.

77. ***New PT Units*** has the meaning set forth in Article 6.2(a) of the Plan.

78. ***Non-Debt Claim*** means any Claim against the Debtor that is (a) not a Debt Claim or China Secured Claim or (b) otherwise determined by the Bankruptcy Court to be a Non-Debt Claim.

79. ***Other Distributions*** means (a) any amounts the holder of an Allowed Debt Claim actually receives from the primary obligor or any guarantor besides the Debtor, of such Debt Claim based on such holder's contractual agreement with such primary obligor or guarantor, ~~*minus*~~ (b) if the primary debt obligation underlying such Debt Claim is satisfied in whole or in part by conversion to equity in any jurisdiction, the corresponding reduction in the amount of the Debt Claim on account of such conversion, or (c) any amounts the holder of an Allowed China Secured Claim or Allowed Debt Claim actually receives upon the disposition of any Seized China Assets.

80. ***Pacific Technology*** means Pacific Technology Holding LLC, a Delaware limited liability company.

81. ***Partner Executive Committee*** means the Partner Executive Committee of FF GP.

82. ***Person*** means person as defined in section 101(41) of the Bankruptcy Code.

83. ***Petition Date*** means the date on which the Debtor filed his petition for relief commencing the Chapter 11 Case.

84. ***Plan*** means this ~~second~~third amended plan of reorganization under chapter 11 of the Bankruptcy Code, including the exhibits and schedules hereto and the Plan Supplement, as may be amended, supplemented, or modified from time to time in accordance with the Bankruptcy Code,

the Bankruptcy Rules, and the terms hereof.

85.    *Plan Arbitration Procedures* means the confidential arbitration procedures for the resolution of all Plan-related disputes, including, without limitation, disputes related to the allowance or amount of any Late Filed Debt Claims arising between the Debtor, on the one hand, and the Trust, the Trustee, and/or the Creditor Trust Committee, on the other hand.

86.    *Plan Distribution* means a payment or distribution under the Plan to holders of Allowed Claims or other eligible Entities.

87.    *Plan Supplement* means the compilation of documents (or forms or summary of material terms thereof), schedules, and exhibits to the Plan (in each case as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules) to be filed no later than five (5) days before the Voting Deadline or such later date as the Bankruptcy Court may approve, including, without limitation: (a) form and/or definitive agreements and related documents with respect to the Trust Agreement; (b) the Schedule of Rejected Contracts and Leases; (c) the identity of the initial Creditor Trust Committee; (d) the material terms of the Exit Financing; (e) the list of Claims to be deemed Allowed by the Plan on the Effective Date; and (f) any KCBI Settlements.

88.    *Plan Term Sheet* means that certain Amended Plan Term Sheet attached as Exhibit B to the Disclosure Statement.

89.    *PRC* means the People's Republic of China.

90.    *Preferred Unit Distribution Rights* has the meaning set forth in Article 6.7 of the Plan.

91.    *Preferred PT Units* has the meaning set forth in Article 6.2(a) of the Plan.

92.    *Priority Non-Tax Claim* means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

93.    *Priority Tax Claim* means any Claim entitled to priority in payment as specified in section 507(a)(8) of the Bankruptcy Code.

94. *Pro Rata* means the proportion that an Allowed Claim in a particular Class bears to the

1    ~~aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a~~

2    ~~particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other~~

3    ~~Classes entitled to share in the same recovery as such Allowed Claim under the Plan.~~

4    **94.** ~~95.~~ *Professional* means an Entity (a) employed in the Chapter 11 Case pursuant to

5    sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise, or (b) seeking or awarded

6    compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to

7    section 503(b)(4) of the Bankruptcy Code.

8    **95.** ~~96.~~ *PT LLCA* means that certain Third Amended and Restated Limited Liability

9    Company Agreement of Pacific Technology dated July 5, 2019.

10    **96.** ~~97.~~ *Qualifying Financing* has the meaning set forth in Article 6.2(l) of the Plan.

11    **97.** ~~98.~~ *Released Parties* means, collectively, (a) the Debtor and the Estate; (b) all

12    Persons engaged or retained by the Debtor in connection with the Chapter 11 Case (including in

13    connection with the preparation of and analyses relating to the Disclosure Statement and the Plan);

14    and (c) any and all advisors, attorneys, actuaries, financial advisors, accountants, investment

15    bankers, agents, professionals, consultants and representatives of each of the foregoing Persons and

16    Entities (whether current or former, in each case in his, her, or its capacity as such).

17    **98.** ~~99.~~ *Releasing Parties* means, collectively, and each solely in its capacity as such:

18    (a) each Released Party; (b) each holder of a Non-Debt Claim that either (i) votes to accept the Plan

19    or (ii) is conclusively deemed to have accepted the Plan; and (c) all other holders of Non-Debt

20    Claims to the extent permitted by law.

21    **99.** ~~100.~~ *Reorganized Debtor* means the Debtor as reorganized under the Plan, and any

22    successor thereto on or after the Effective Date.

23    **100.** ~~101.~~ *Retained Actions* has the meaning set forth in Article 8.3 of the Plan.

24    **101.** ~~102.~~ *Schedule of Rejected Contracts and Leases* means a schedule of the executory

25    contracts and unexpired leases to be rejected pursuant to section 365 of the Bankruptcy Code and

26    Article 9.1 hereof.

27    **102.** ~~103.~~ *Schedules* means the schedules of assets and liabilities filed by the Debtor on

28    October 17, 2019 [Docket No. 28], as required by section 521 of the Bankruptcy Code and

Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

**103.** ~~104.~~ *Season Smart* means Season Smart Limited, an affiliate of Evergrande Health Industry Group.

**104.** ~~105.~~ *Second Wei Gan Payment* has the meaning set forth in Article 6.6 of the Plan.

**105.** ~~106.~~ *Securities Act* means the Securities Act of 1933, and all rules and regulations promulgated thereunder.

**106.** ~~107.~~ *Seized China Assets* means any assets that (a) (i) have already been collateralized by the Debtor or an obligor, guarantor, or pledgor, (ii) have already been pledged by the Debtor or an obligor, guarantor, or pledgor, or (iii) the Debtor, or an obligor, guarantor, or pledgor owns *and* (b) have been seized, attached, or frozen by Chinese judiciary authorities in connection with Chinese enforcement actions on account of any China Secured Claims or Debt Claims.

**107.** ~~108.~~ *Smart King* means Smart King Ltd., a company formed under the laws of the Cayman Islands now known as FF Intelligent Mobility Global Holdings Ltd.

**108.** ~~109.~~ *Standstill Period* has the meaning set forth in Article 11.4(c) of the Plan.

**109.** ~~110.~~ *Term* has the meaning set forth in Article 6.2(g) of the Plan.

**110.** ~~111.~~ *Trust* means, collectively, the Creditor Trust and the Late Filed Debt Claims Reserve.

**111.** ~~112.~~ *Trust Agreement* means that certain Trust Agreement, by and among, the Debtor and the Trustee, on substantially similar terms as described in the Plan Term Sheet. A form of the Trust Agreement will be included in the Plan Supplement.

**112.** ~~113.~~ *Trust Assets* has the meaning set forth in Article 6.2(b) of the Plan.

**113.** *Trust Distribution Affidavit* has the meaning set forth in Article 6.2(i) of the Plan.

**114.** *Trust Distribution Date* has the meaning set forth in Article 6.2(i) of the Plan.

**115.** ~~114.~~ *Trust Distributions* means distributions paid from the Trust.

**116.** ~~115.~~ *Trust Election* means the election by a holder of an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or U.S. Secured Claim to receive their pro rata

share of the Trust Assets pursuant to the Distribution Waterfall on the dates of distributions to holders of the Trust Interests in lieu of their assigned recoveries under the Plan.

**117.** ~~116.~~ *Trust FF ~~Global~~Intelligent Shares* has the meaning set forth in Article 6.2(a) of the Plan.

**118.** ~~117.~~ *Trust Interest* has the meaning set forth in Article 6.2 of the Plan.

**119.** ~~118.~~ *Trustee* has the meaning set forth in Article 6.2(e) of the Plan.

**120.** ~~119.~~ *Unimpaired* means, with respect to any Claim, or a Class of Claims, that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**121.** ~~120.~~ *U.S. Secured Claim* means a Claim against the Debtor that is secured by a valid, unavoidable, perfected, and enforceable Lien on, or security interest in, property of the Debtor located in the United States, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the holder's interest in the Debtor's interest in such property, or to the extent of the amount subject to setoff, the value of which shall be determined as provided in section 506 of the Bankruptcy Code.

**122.** ~~121.~~ *U.S. Trustee* means the United States Trustee for the Central District of California.

**123.** ~~122.~~ *Voting Agent* means Epiq Corporate Restructuring, LLC.

**124.** ~~123.~~ *Voting Deadline* means 4:00 p.m. (Beijing Time) on [_____], 2020.

**125.** ~~124.~~ *Warrant* has the meaning set forth in Article 6.2(a) of the Plan.

**126.** ~~125.~~ *Wei Gan Claims* has the meaning set forth in Article 6.6(b) of the Plan.

**127.** ~~126.~~ *Wei Gan Declaration* has the meaning set forth in Article 6.7 of the Plan.

**128.** ~~127.~~ *Wei Gan Domestic Support Obligations* has the meaning set forth in Article 6.6 of the Plan.

**129.** ~~128.~~ *Wei Gan Liability Release Date* has the meaning set forth in Article 6.6(b) of the Plan.

***130.*** ~~129.~~ *Wei Gan Release Consideration* has the meaning set forth in Article 6.6 of the Plan.

**131.** ~~130.~~ *Wei Gan Settlement* has the meaning set forth in Article 6.6 of the Plan.

**132.** ~~131.~~ *West Coast* has the meaning set forth in Article 6.7(a) of the Plan.

**133.** ~~132.~~ *Yidao Claims* has the meaning set forth in Article 6.2(b) of the Plan.

**134.** ~~133.~~ *YT Claims* has the meaning set forth in Article 11.4(c) of the Plan.

**135.** ~~134.~~ *YT Declaration* has the meaning set forth in Article 6.7 of the Plan.

**1.2**    *Interpretation, Application of Definitions, and Rules of Construction.*

(a)    For purposes of the Plan and unless otherwise specified herein (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (ii) any term that it not defined herein, but that is used in the Bankruptcy Code or Bankruptcy Rules, shall have the meaning given to the term in the Bankruptcy Code or Bankruptcy Rules, as applicable; (iii) any reference in the Plan to an existing document, schedule, or exhibit, whether or not filed with the Bankruptcy Court, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (iv) any reference to an Entity as a holder of a Claim includes that Entity's permitted successors and assigns; (v) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Case, unless otherwise stated; and (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

(b)    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(c)    All references in the Plan to monetary figures refer to currency of the United States of America.

**ARTICLE II**
**UNCLASSIFIED CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Domestic Support Obligations have not been classified for purposes of voting or receiving distributions. Rather, all such Claims are treated separately as unclassified Claims as set forth in this Article II, and the holders thereof are not entitled to vote on the Plan.

1

### 2.1    *Administrative Expense Claims.*

2        (a)    <u>Filing Administrative Expense Claims</u>. The holder of an Administrative

3  Expense Claim, other than (i) a Claim covered by Article 2.2, (ii) a liability incurred and payable

4  in the ordinary course of business by the Debtor after the Petition Date, (iii) timely filed and

5  Allowed Claims arising under section 503(b)(9) of the Bankruptcy Code, or (iv) an Administrative

6  Expense Claim that has been Allowed on or before the Administrative Expense Claim Bar Date,

7  must file and serve on the Reorganized Debtor a request for payment of such Administrative

8  Expense Claim so that it is received no later than the Administrative Expense Claim Bar Date

9  pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date.

10  **Holders required to file and serve, who fail to file and serve, a request for payment of**

11  **Administrative Expense Claims by the Administrative Expense Claim Bar Date shall be**

12  **forever barred, estopped, and enjoined from asserting such Administrative Expense Claims**

13  **against the Debtor or Reorganized Debtor and their property, and such Administrative**

14  **Expense Claims shall be deemed discharged as of the Effective Date. All such Claims shall, as**

15  **of the Effective Date, be subject to the permanent injunction set forth in Article 11.6 hereof.**

16  Notwithstanding the foregoing, pursuant to section 503(b)(1)(D) of the Bankruptcy Code, no

17  governmental unit shall be required to file a request for payment of any Administrative Expense

18  Claim of a type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code as a

19  condition to such Claim being Allowed.

20        (b)    <u>Allowance of Administrative Expense Claims</u>. An Administrative Expense

21  Claim, with respect to which a request for payment has been properly and timely filed pursuant to

22  Article 2.1(a) shall become an Allowed Administrative Expense Claim if no objection to such

23  request is filed with the Bankruptcy Court and served on the Debtor and the requesting party on or

24  before the one-hundred twentieth (120th) day after the Effective Date, as the same may be modified

25  or extended by order of the Bankruptcy Court. If an objection is timely filed, the Administrative

26  Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed

27  by Final Order or as such Claim is settled, compromised, or otherwise resolved pursuant to Article

28  8.3.

(c)    Payment of Allowed Administrative Expense Claims. Except to the extent that an Administrative Expense Claim has already been paid during the Chapter 11 Case, the holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, or the Holder of an Allowed Administrative Expense Claim makes a Trust Election, and except as provided in Article 2.2, each holder of an Allowed Administrative Expense Claim against the Debtor shall receive, in full and complete settlement, release, and discharge of such Administrative Expense Claim, Cash equal to the unpaid amount of such Administrative Expense Claim on the latest of (i) the Effective Date or as soon thereafter as reasonably practicable; (ii) thirty (30) days after the date on which such Administrative Expense Claim becomes Allowed; (iii) the date on which such Administrative Expense Claim becomes due and payable in the ordinary course of the Debtor's business in accordance with the terms and subject to the conditions of any agreements or understandings governing, or other documents relating to, such Administrative Expense Claim; and (iv) such other date as may be agreed to by such holder and the Debtor or Reorganized Debtor.

**2.2    *Professional Fees.***

(a)    Final Fee Applications. Each Professional requesting compensation pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case before the Effective Date shall (i) file with the Bankruptcy Court, and serve on the Reorganized Debtor, an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case on or before the thirtieth (30th) day following the Effective Date, and (ii) after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules and any prior orders of the Bankruptcy Court in the Chapter 11 Case, be paid in full, in Cash, in such amounts as are Allowed.

(b)    Ordinary Course Professional Fees and Expenses. The immediately preceding paragraph shall not affect any professional-service Entity that is permitted to receive, and the Debtor is permitted to pay, without seeking further authority from the Bankruptcy Court, compensation for services and reimbursement of professional fees and expenses in the ordinary course of business (and in accordance with any relevant prior order of the Bankruptcy Court), the payments for which may continue notwithstanding the occurrence of confirmation of the Plan.

(c)    Post-Effective Date Fees and Expenses. From and after the Effective Date, the Reorganized Debtor may, upon submission of appropriate documentation and in the ordinary course of business, pay the post-Effective Date charges incurred by the Reorganized Debtor for any Professional's fees, disbursements, expenses, or related support services without application to or approval from the Bankruptcy Court. On the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional for fees and charges incurred from and after the Effective Date in the ordinary course of business without any notice to or approval of the Bankruptcy Court.

**2.3    _Priority Tax Claims._**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim against the Debtor shall receive, in full and complete settlement, release, and discharge of such Priority Tax Claim, Cash equal to the unpaid amount of such Allowed Priority Tax Claim on the latest of (a) the Effective Date or as soon thereafter as reasonably practicable; (b) thirty (30) days after the date on which such Priority Tax Claim becomes Allowed; (c) the date on which such Priority Tax Claim becomes due and payable; and (d) such other date as may be mutually agreed to by and among such holder and the Debtor or Reorganized Debtor; _provided_, _however_, that the Reorganized Debtor shall be authorized, at his option, and in lieu of payment in full, in Cash, of an Allowed Priority Tax Claim as provided above, to make deferred Cash payments on account thereof in the manner and to the extent permitted under section 1129(a)(9)(C) of the Bankruptcy Code.

**2.4    _Domestic Support Obligations._**

On the Effective Date, the Debtor shall make any payments to comply with any postpetition unfunded obligations on account of any Domestic Support Obligations, if any such obligations exist, as may be required for the Debtor to be current with respect to such Domestic Support Obligations as of the Effective Date pursuant to section 1129(a)(14) of the Bankruptcy Code. After the Effective Date, the Debtor shall timely make all payments on account of Domestic Support Obligations to the parties entitled to receive such payments, if any such obligations exist, including,

without limitation, any Wei Gan Domestic Support Obligations, in each case at the times and in the amounts required by the agreements and orders evidencing such Domestic Support Obligations, as such agreements may from time to time be modified in accordance with applicable law. The sole source of payment for any Domestic Support Obligations will be the Debtor's post-Effective Date Cash and no holder of a Domestic Support Obligation shall have any recourse against the Trust. For the avoidance of doubt, the Wei Gan Domestic Support Obligations shall not constitute claims against the Trust or otherwise have any claims against or interest in the Trust Assets.

### 2.5    *DIP Facility Claims.*

In the event that there are proceeds remaining from the Exit Financing after (a) funding the operations of the Trust for the Initial Term and (b) making all Cash payments required to be made in connection with the Plan pursuant to Article 6.4 of the Plan, the remaining proceeds of the Exit Financing shall be used to pay all amounts outstanding under the DIP Facility in Cash on the Effective Date or as soon thereafter as practicable. Once such payment in full has been made, any agreements and instruments related thereto shall be deemed terminated and all Liens and security interests granted to secure the Debtor's obligations under the DIP Facility shall be satisfied, discharged, and terminated in full and of no further force and effect.

In the event that there are not sufficient proceeds remaining from the Exit Financing to pay all amounts outstanding under the DIP Facility, in satisfaction of the Debtor's obligations under the DIP Facility, on the Effective Date or as soon thereafter as practicable and in accordance with the terms and conditions of the DIP Note (a) the maturity date of the DIP Facility shall be automatically extended for one year from the Effective Date, (b) all obligations of the Debtor under the DIP Facility shall be assumed by the Trust, (c) all Liens and security interests on any Collateral transferred to the Trust in accordance with the Trust Agreement shall remain in place as perfected first priority ~~liens~~Liens and survive against the Trust, subject only to the Liens securing the Exit Financing, (d) the interest rate per annum shall be increased to twelve percent (12% per annum), and (e) all other Liens and security interests shall be satisfied, discharged, and terminated in full and of no further force and effect.

# ARTICLE III
# CLASSIFICATION OF CLAIMS

The following table designates the Classes of Claims against the Debtor, and specifies which Classes are (a) Impaired or Unimpaired; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) deemed to accept the Plan. A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

**3.1**    *Class Identification.*

Claims against the Debtor are classified as follows:

| Class | Description | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Priority Non- Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | U.S. Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | China Secured Claims | Unimpaired | No (deemed to accept) |
| 4 | Debt Claims | Impaired | Yes |

# ARTICLE IV
# TREATMENT OF CLAIMS

**4.1**    *Priority Non-Tax Claims (Class 1).*

(a)    <u>Classification</u>. Class 1 consists of all Priority Non-Tax Claims.

(b)    <u>Treatment</u>. Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment or makes a Trust Election, on the Effective Date or as soon thereafter as practicable, each holder of an Allowed Priority Non-Tax Claim shall receive, at the option of the Debtor and in full and complete settlement, release, and discharge of, and in exchange for, such Priority Non-Tax Claim (i) payment in full in Cash or (ii) other treatment rendering such Priority Non-Tax Claim Unimpaired. Any Allowed Class 1 Claim not due and owing on the Effective Date shall be paid in full, in Cash, when it becomes due and owing.

(c)     Impairment and Voting. Class 1 is Unimpaired. Holders of Priority Non-Tax Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and accordingly, are not entitled to vote to accept or reject the Plan.

**4.2     *U.S. Secured Claims (Class 2).***

(a)     Classification. Class 2 consists of all U.S. Secured Claims.

(b)     Treatment. Except to the extent that a holder of an Allowed U.S. Secured Claim agrees to less favorable treatment or makes a Trust Election, on the Effective Date or as soon thereafter as practicable, each holder of an Allowed U.S. Secured Claim shall receive, at the option of the Debtor and in full and complete settlement, release, and discharge of, and in exchange for, such U.S. Secured Claim (i) payment in full in Cash, (ii) delivery of the Collateral securing any such U.S. Secured Claim, (iii) reinstatement pursuant to section 1124 of the Bankruptcy Code, or (iv) other treatment rendering such U.S. Secured Claim Unimpaired.

(c)     Impairment and Voting. Class 2 is Unimpaired. Holders of U.S. Secured Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and accordingly, are not entitled to vote to accept or reject the Plan.

**4.3     *China Secured Claims (Class 3)***

(a)     Classification. Class 3 consists of all China Secured Claims.

(b)     Treatment. Except to the extent that a holder of an Allowed China Secured Claim agrees to less favorable treatment, on the Effective Date or as soon thereafter as practicable, each holder of an Allowed China Secured Claim shall receive, at the option of the Debtor and in full and complete settlement, release, and discharge of, and in exchange for, such Allowed China Secured Claim (i) the proceeds of the sale or disposition of the Collateral securing such Allowed China Secured Claim in accordance with applicable law, to the extent of the value of such holder's secured interest in such Collateral, (ii) other treatment rendering such Allowed China Secured Claim Unimpaired, or (iii) such other treatment as may be mutually agreed to by and among such holder and the Debtor or the Reorganized Debtor, as applicable.; *provided, however* that if the holder of an Allowed China Secured Claim has not received the value of the Collateral securing its

Allowed China Secured Claim on or before the initial Trust Distribution Date, such Allowed China

Secured Claim shall be treated as a Debt Claim for all purposes under this Plan.

(c)    Impairment and Voting. Class 3 is Unimpaired. Holders of China Secured

Claims in Class 3 are conclusively presumed to have accepted the Plan pursuant to section 1126(f)

of the Bankruptcy Code, and accordingly, are not entitled to vote to accept or reject the Plan.

**4.4    *Debt Claims (Class 4).***

(a)    Classification. Class 4 consists of all Debt Claims.

(b)    Treatment. Except to the extent that a holder of an Allowed Debt Claim

agrees to less favorable treatment, each holder of an Allowed Debt Claim shall receive, in full and

complete settlement, release, and discharge of, and in exchange for, such Allowed Debt Claim, its

~~Pro Rata~~pro rata share of the Trust Interests based on its Debt Claim Allocation Amount in

relation to the aggregate Debt Claim Allocation Amounts of all Allowed Debt Claims, which

distribution shall be made in accordance with Article 6.2 of the Plan.

(c)    Impairment and Voting. Class 4 is Impaired. Holders of Debt Claims in

Class 4 are entitled to vote to accept or reject the Plan.

**ARTICLE V
ACCEPTANCE OR REJECTION OF THE PLAN**

**5.1    *Class Acceptance Requirement.***

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in

section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan

if it is accepted by at least two thirds (2/3) in dollar amount and more than one-half (1/2) in number

of holders of the Allowed Claims in such Class that have voted on the Plan.

**5.2    *Deemed Acceptance by Non-Voting Classes.***

If a Class contains Claims eligible to vote and no holder of a Claim eligible to vote in such

Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

**5.3    *Elimination of Vacant Classes.***

Any Class of Claims that does not have at least one holder of an Allowed Claim or a Claim

temporarily Allowed as of the date of the Confirmation Hearing shall be deemed eliminated from

the Plan for purposes of voting to accept or reject the Plan and for purposes of determining

acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

V.4 *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.*

Section 1129(b) of the Bankruptcy Code provides for confirmation (or "cram-down") of a plan of reorganization even if the plan is not accepted or deemed accepted by all impaired classes of claims, as long as at least one impaired class of claims has voted to accept the plan and certain other requirements are met. Subject to Article 13.8 of the Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan or any related document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code. The Debtor also reserves the right to request confirmation of the Plan, as it may be modified, supplemented, or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

6.1     *Compromise of Controversies.*

In consideration for the Plan Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies relating to any Allowed Claim or any Plan Distribution to be made on account thereof or otherwise resolved under the Plan.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtor and his Estate. All Plan Distributions made in accordance with the Plan are intended to be, and shall be, final.

6.2     *The Trust.*

Each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall receive a beneficial interest (a "<u>Trust Interest</u>") in the Creditor Trust or the Late Filed Debt Claims Reserve,

1  as applicable, based on the ~~formulas set forth below~~Debt Claim Allocation Amount of such Claim.

2  The Trust will preserve, hold, manage, and maximize the Trust Assets for use in paying and

3  satisfying the holders' Claims upon the earlier to occur of (x) the consummation of a Liquidation

4  Event or a Distribution Event and (y) the termination of the Trust in accordance with the Trust

5  Agreement.

6            (a)    Corporate Structure and Governance.

7      On the Effective Date, the managing member of Pacific Technology shall amend the PT

8  LLCA to:

9            (i)    provide that the Trust is a member of Pacific Technology and the

10      holder of 100% of the preferred membership units of Pacific

11      Technology (the "Preferred PT Units");

12            (ii)    issue new units of Pacific Technology to the Trust (the "New PT

13      Units"), entitling the Trust to 100% of the economic value of

14      147,058,823 Class B shares of FF ~~Global~~Intelligent (the "Trust FF

15      ~~Global~~Intelligent Shares"); and

16            (iii)    grant the Trust a fully paid-up warrant to receive the Trust FF

17      ~~Global~~Intelligent Shares consistent with the FF ~~Global~~Intelligent

18      Transfer Right with no further action necessary by the Debtor or

19      Reorganized Debtor, exercisable upon the dissolution of the

20      Injunctions (the "Warrant").

21      The Preferred PT Units and the New PT Units shall vest in the Trust free and clear of any

22  and all Liens, claims, encumbrances, contractual restrictions, and other interests pursuant to section

23  363 of the Bankruptcy Code; *provided* that the Preferred PT Units and the New PT Units shall be

24  subject to the PT LLCA as amended on the Effective Date pursuant to, and consistent in all material

25  respects with, the Plan Term Sheet and the Plan. For so long as the Preferred PT Units are

26  outstanding, Pacific Technology and its managing member shall be prohibited from amending the

27  PT LLCA in any manner that adversely affects the rights and claims provided to the Trust as set

28  forth in the Plan and the Plan Term Sheet.

Upon the dissolution of the Injunctions, the Trustee may exercise the Warrant and direct FF Top to transfer the Trust FF ~~Global~~Intelligent Shares directly to the Trust pursuant to the FF ~~Global~~Intelligent M&A, *provided* that the Trustee shall exercise the Warrant no later than in connection with the IPO. Upon the indefeasible transfer of the Trust FF ~~Global~~Intelligent Shares to the Trust pursuant to the Warrant, the New PT Units shall be deemed retired.

(b)    Trust Assets.

The assets of the Trust shall consist of the following property of the Debtor on the Effective Date (collectively, the "Trust Assets"):

(i)    100% of the Preferred PT Units;

(ii)    100% of the New PT Units;

(iii)    the Warrant;

(iv)    following the exercise of the Warrant and the indefeasible transfer of the Trust FF ~~Global~~Intelligent Shares to the Trust, the Trust FF ~~Global~~Intelligent Shares;

(v)    all financial assets of the Debtor (*i.e.*, accounts, security, or real property) wherever located, whether owned directly or through any nominee, including, but not limited, to any Seized China Assets of the Debtor in existence as of the Effective Date and remaining after the satisfaction of any claims recoverable from such assets under applicable law but excluding (x) any exempt assets of the Debtor under section 522 of the Bankruptcy Code, (y) income of the Debtor after the Petition Date listed on Schedule J of the Schedules, or (z) the Debtor's rental agreements with Warm Time Inc. and any income derived from such rental agreements, or the proceeds thereof, *provided* that the inclusion of such assets in the Trust does not include the right to assert (A) any YT Claims except as set forth in Article 11.4 (c) of the Plan and (B) Causes of Action of the Debtor's estate except for those expressly permitted in Article 11.9 of the Plan;

1          (vi)      all interests, claims, and Causes of Action owned by the Debtor

2                 (including through any nominee) in connection with Beijing

3                 Dongfang Cheyun Information Technology Co., Ltd. in existence as

4                 of the Effective Date (the "Yidao Claims");

5          (vii)   the rights to recover property in accordance with Article 11.9 of the

6                 Plan and all proceeds thereof;

7         (viii)   the Call Option, subject to certain rights of FF GP as set forth

8                 below in Article 6.2(l) of the Plan, which Call Option may not be

9                 exercised or transferred by the Trust without the consent of FF GP;

10        (ix)     the proceeds of the Exit Financing; and

11        (x)      the Debtor's interests in Ford Field.

12       (c)    Voting Rights With Respect to the Trust Assets.

The Trustee shall exercise all voting rights, if any, with respect to the Trust FF ~~Global~~Intelligent Shares owned by the Trust after the exercise of the Warrant. Prior to the occurrence of an IPO, (i) the Trustee will have observer rights regarding the committee meetings held by the committee of managers of FF GP and (ii) the Reorganized Debtor will use commercially reasonable efforts to provide the Trustee with observer rights with respect to the boards of FF ~~Global~~Intelligent, FF, FF Inc., a California corporation, and all other material, direct or indirect, operating subsidiaries of FF ~~Global~~Intelligent that hold separate board meetings.

      (d)    Late Filed Debt Claims Reserve.

On the Effective Date, the Trustee shall (i) establish the Late Filed Debt Claims Reserve for the benefit of any Allowed Late Filed Debt Claims and (ii) transfer 10% of the Trust Assets to the Late Filed Debt Claims Reserve. The Late Filed Debt Claims Reserve will have no operations other than to make distributions to holders of Allowed Late Filed Debt Claims in accordance with the Trust Agreement and will be managed by the Trustee pursuant to a separate trust agreement with substantially similar governance terms as the Trust Agreement. At the conclusion of the Standstill Period, any unallocated assets in the Late Filed Debt Claims Reserve shall revert to the Creditor Trust for the ratable benefit of holders of Allowed Debt Claims and the Reorganized Debtor

1    pursuant to the Distribution Waterfall.

2          In order for a Late Filed Debt Claim to be Allowed and participate in the Late Filed Debt

3    Claims Reserve, the Reorganized Debtor and the Trustee shall make commercially reasonable

4    efforts to agree that allowance of such Late Filed Debt Claim in a particular amount is in the best

5    interests of the Reorganized Debtor and the Trust. If the Reorganized Debtor and the Trustee do

6    not agree to the allowance or amount of any Late Filed Debt Claim, the dispute shall be resolved

7    pursuant to the Plan Arbitration Procedures. In seeking the allowance of any Late Filed Debt Claim,

8    the Reorganized Debtor shall bear the burden of demonstrating that allowance of such Late Filed

9    Debt Claim is in the best interests of the Reorganized Debtor and the Trust.

10          (e)    Appointment of the Trustee.

11          There shall be one trustee (the "Trustee") of the Trust. The initial Trustee shall be disclosed

12    in the Disclosure Statement. Any successor Trustee shall be selected by majority vote of the

13    Creditor Trust Committee, subject to approval by the Reorganized Debtor (which approval shall

14    not be unreasonably withheld), in accordance with the Trust Agreement, which shall set forth

15    certain criteria with respect to the relevant experience and qualifications for the Trustee.

16          The Trustee shall act as a fiduciary and shall not be personally liable in connection with the

17    affairs of the Trust or to any person except for such of the Trustee's acts or omissions that constitute

18    fraud, willful misconduct, or gross negligence, as determined by a final order of a court of

19    competent jurisdiction. In addition, the Trustee shall be indemnified by the Trust against and held

20    harmless by the Trust from any losses, claims, damages, liabilities, or expenses (including, without

21    limitation, attorneys' fees, disbursements, and related expenses) to which the Trustee may become

22    subject in connection with any action, suit, proceeding, or investigation brought or threatened

23    against the Trustee in connection with any matter arising out of or related to the Trust Agreement

24    or the affairs of the Trust (other than in respect of acts or omissions that constitute fraud, willful

25    misconduct, or gross negligence, as determined by a court of competent jurisdiction). The Trustee

26    shall be entitled to obtain customary fiduciary and/or errors and omissions liability insurance and

27    engage independent legal counsel and financial advisors to assist with its evaluation of any matters

28    with respect to the Trust, including any Liquidation Event.

The Trustee shall be compensated by the Trust from Trust Assets pursuant to the Trust Agreement. The Trustee shall be entitled to reimburse itself out of any available cash in the Trust, for its actual out-of-pocket expenses and shall be indemnified by the Trust from Trust Assets against and from any and all loss, liability, expense, or damage, which the Trustee may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Trustee under the Trust Agreement.

The Trustee may resign upon not less than sixty (60) days' advance written notice to the Creditor Trust Committee, with such resignation to take effect once a replacement Trustee has been appointed. The Creditor Trust Committee may remove the Trustee in the event the Trustee commits any act or omission that constitutes fraud, breach of fiduciary duty, willful misconduct, or gross negligence. Upon the removal of the Trustee as set forth in the immediately preceding sentence, the Creditor Trust Committee shall have the right to appoint a replacement Trustee, subject to approval by the Reorganized Debtor (which approval shall not be unreasonably withheld).

(f)    Creditor Trust Committee.

Holders of Trust Interests will be represented by a committee that shall consist of no more than five creditors holding Allowed Debt Claims, or their designees (the "Creditor Trust Committee"), the responsibilities and governance of which are set forth in the Plan Term Sheet. The initial members of the Creditor Trust Committee must be acceptable to the Committee and will be disclosed in the Plan Supplement.

(g)    Term of the Trust.

The term of the Trust (the "Term") will initially extend until the fifth (5th) anniversary of the Effective Date (the "Initial Term"). The Term shall not extend beyond the tenth (10th) anniversary of the Effective Date unless the Chapter 11 Case is reopened to obtain a Bankruptcy Court order extending the Term.

If the completion of an IPO occurs during the Initial Term, the Term and the Standstill Period shall be automatically extended through the conclusion of the selloff period for the Marketable Securities as set forth on Exhibit B to the Plan Term Sheet. If the completion of the IPO has not occurred during the Initial Term, the Trustee may elect to extend the Term for

successive one-year periods (or such other periods as the Trustee determines to be appropriate) to the extent necessary to allow for orderly liquidation of any remaining Trust Assets.

The Trustee shall dissolve and wind up the Trust and distribute the Trust Assets upon the expiration of (i) the Initial Term if no extension (automatic or otherwise) is exercised or (ii) the expiration of any extended Term of the Trust. The Trustee may dissolve the Trust before the end of the Initial Term or any extended Term if: (x) all of the Trust Assets have been distributed in accordance with the Distribution Waterfall, including any distributions to the Reorganized Debtor or (y) a Liquidation Event has occurred. Upon termination of the Trust, the Trustee will obtain a valuation of the Trust Assets as of the termination date (performed by an independent valuation firm selected by the Trustee and approved by the Creditor Trust Committee and the Reorganized Debtor) and shall, as promptly as practicable following the completion of the independent valuation, distribute the Trust Assets in kind to the holders of Allowed Debt Claims and the Reorganized Debtor in accordance with the Distribution Waterfall.

Certain aspects of the Trust will be subject to automatic amendment based on aggregate distributions as set forth in the Distribution Waterfall.

(h)    Expenses of the Trust.

The professional fees, costs, and other expenses incurred by the Trustee in connection with the administration of the Trust shall be paid from the proceeds of the Exit Financing and the relevant Trust Assets.

(i)    Distribution of Trust Assets.

Upon receipt of the distributable proceeds by the Trust for any disposition, or dividends or distributions in respect, of any Trust Assets (such proceeds, the "Distributable Proceeds," and such an event, a "Distribution Event," and the date of such distribution, a "Trust Distribution Date"), the Distributable Proceeds will be distributed in accordance with the Distribution Waterfall upon the earlier of (i) sixty (60) days following the occurrence of such Distribution Event and (ii) the termination of the Trust. The Trustee may delay or defer the distribution of any Distributable Proceeds (whether cash, securities, or other property) received by the Trustee in respect of the Trust Assets if the Trustee determines that such deferral or delay is in the best interests of the holders of

Trust Interests (including if such distribution would violate any court order or applicable law).

Prior to each Trust Distribution Date, each holder of a Trust Interest shall provide an affidavit to the Trustee that identifies any amounts (or value with respect to Collateral) received from Other Distributions as of the date of the affidavit (the "Trust Distribution Affidavit"). On each Trust Distribution Date, the Trustee will (i) allocate pro rata distributions to holders of Trust Interests on account of each holder's Debt Claim Distribution Amount calculated in accordance with the information provided in the Trust Distribution Affidavit and (ii) reserve distributions for holders of Trust Interests who have not submitted their Trust Distribution Affidavits prior to the applicable Trust Distribution Date. If the holder of a Trust Interest fails to submit the Trust Distribution Affidavit prior to the termination or dissolution of the Trust, such holder shall forfeit its Trust Interests and any reserved distributions shall revert to the Trust for the ratable benefit of holders of Allowed Debt Claims and the Reorganized Debtor pursuant to the Distribution Trust Waterfall.

The schedule for disposition of shares of FF ~~Global~~Intelligent directly owned by the Trust and that are registered under securities law or listed (the "Marketable Securities") shall be governed in accordance with Exhibit B to the Plan Term Sheet. The PT LLCA will include provisions that the managing member of Pacific Technology will use commercially reasonable efforts to dispose of Marketable Securities owned or controlled by Pacific Technology in which the Trust owns a beneficial interest on a similar schedule until the priority distribution of $815.7 million (plus accrued amounts) under the PT LLCA in connection with the Preferred PT Units is paid to the Trust. The Distributable Proceeds shall be distributed in accordance with the Distribution Waterfall.

At any time upon the request of the managing member of Pacific Technology, and subject to applicable securities law, the Trustee shall distribute the Marketable Securities in kind to the holders of Trust Interests in lieu of any cash distribution. The value of the Marketable Securities shall be the average closing trading price for the five consecutive trading days immediately prior to the distribution.

(j)    Distribution Waterfall.

The Trust Assets shall be distributed as follows:

(i)      First, to repay the Exit Financing, if any, pursuant to the terms thereof and the Trust Agreement;

(ii)     Second, to repay the DIP Facility if extended past the Effective Date pursuant to the terms of the DIP Note and the Trust Agreement;

(iii)    Third, to each holder of an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or U.S. Secured Claim that has made a Trust Election, equal to the Allowed amount of such Claim plus the applicable interest rate provided in the Trust Agreement;

(iv)     Fourth, to pay Trust Distributions allocated (x) 95% to holders of Allowed Debt Claims (including holders of Allowed China Secured Claims treated as Allowed Debt Claims pursuant to Article 4.3 of the Plan) and (y) 5% to the Reorganized Debtor (or the economic equivalent of such Trust Distributions as set forth in the Trust Agreement), until each holder of an Allowed Debt Claim has received aggregate Trust Distributions (in cash or in kind) pursuant to this clause (iv) equal to the full amount of such holder's ~~Allowed~~ Debt Claim Distribution Amount; and

(v)      Fifth, after all holders of Allowed Debt Claims (including holders of Allowed China Secured Claims treated as Allowed Debt Claims pursuant to Article 4.3 of the Plan) have received Trust Distributions equal to their respective ~~Allowed~~ Debt Claim Distribution Amounts, any remaining Trust Distributions shall be allocated between the holders of Allowed Debt Claims, including holders of Allowed China Secured Claims treated as Allowed Debt Claims pursuant to Article 4.3 of the Plan, (to be further allocated pro rata based on their respective ~~Allowed~~ Debt Claim Allocation Amounts) and the Reorganized Debtor, as follows:

| The Reorganized | Holders of Allowed Debt |
| --- | --- |

|  | Debtor | Claims |
|---|---|---|
| Amounts less than $1B | 50% | 50% |
| Amounts greater than $1B < $2B[3] | 70% | 30% |
| Amounts greater than $2B < $3B | 80% | 20% |
| Amounts greater than $3B < $4B | 90% | 10% |
| Amounts greater than $4B[4] | 95% | 5% |

(k)     Future Equity Incentive Plan.

In order to align incentives and reward the Reorganized Debtor for achieving FF's strategic goals, it is anticipated that a management incentive equity plan will be adopted to grant certain stock-based awards to or at the direction of the Reorganized Debtor upon the achievement of financial targets upon a Distribution Event, *provided* that the stock-based awards granted to the Reorganized Debtor shall not exceed the awards set forth below without the consent of the Trustee (which consent shall not be unreasonably withheld) (the "Future Equity Incentive Plan"). The total available equity awards under the Future Equity Incentive Plan will be as follows:

| FF ~~Global~~Intelligent Total Equity Value (millions of USD): | $5,000 | $10,000 | $21,000 |
|---|---|---|---|
| Percentage of equity to be issued | 2% | Additional 3% | Additional 3% |

Nothing in the Plan shall be construed as to prohibit or restrict in any manner any subsequent equity investment or equity incentive in FF ~~Global~~Intelligent or any of its subsidiaries by any person; *provided* that in no event shall any equity incentive program adopted by FF ~~Global~~Intelligent or any other direct or indirect subsidiary of Pacific Technology grant the Reorganized Debtor any equity interest greater than, or on terms more favorable than, the above equity awards without the consent of the Trustee (which consent shall not be unreasonably withheld).

(l)     Call Option.

Upon the occurrence of the Effective Date, the Call Option shall vest in the Trust free and

---

[3] Upon reaching such distribution level, the Trust Agreement will be automatically amended to replace the Creditor Trust Committee with the Reorganized Debtor.

[4] Upon reaching such distribution level, the Trust Agreement will be automatically amended to provide for a separation of the Reorganized Debtor's interests in the Trust from the residual 5% interest of holders of Allowed Debt Claims. After such separation, holders of Allowed Debt Claims shall not receive any distribution from the Reorganized Debtor's interests constituting 95% of amounts greater than $4 billion. The Reorganized Debtor shall not receive any distribution from the residual 5% interest of holders of Allowed Debt Claims.

clear of any and all liens, claims, encumbrances, contractual restrictions, and other interests pursuant to section 363 of the Bankruptcy Code, *provided* that the Plan shall require (i) the Trustee to obtain the consent of the Partner Executive Committee prior to any exercise or transfer of the Call Option by the Trust; and (ii) the Trustee, upon request by FF GP, to directly transfer or transfer the underlying economic rights of the Call Option (including by exercising the Call Option and thereafter conveying the related shares in FF ~~Global~~Intelligent to the applicable counterparty) as requested by FF GP in connection with a bona fide unrelated third-party financing, as follows: (x) 50% of the Call Option to the counterparty to a bona fide unrelated third-party financing providing FF ~~Global~~Intelligent and its subsidiaries with not less than $100 million of net proceeds, (y) 100% of the Call Option to the counterparty to a bona fide unrelated third-party financing providing FF ~~Global~~Intelligent and its subsidiaries with not less than $250 million of net proceeds, or (z) a ratable percentage of the Call Option to the counterparty to a bona fide unrelated third-party financing providing FF ~~Global~~Intelligent and its subsidiaries with net proceeds greater than $100 million and less than $250 million (*i.e.*, an additional 1% of the Call Option for each additional $3 million of net proceeds beyond $100 million) ((x), (y), or (z), a "Qualifying Financing"), provided that FF GP may request the Trustee to transfer the Call Option for a financing of FF ~~Global~~Intelligent and its subsidiaries other than a Qualifying Financing subject to the consent of Trustee and approval by a majority of the Creditor Trust Committee in their respective business judgment. Any consideration paid, if any, in exchange for the transfer of the Call Option either as part of a separate transaction providing for such transfer or attributable to the transfer of the Call Option in a financing transaction, whether in conjunction with a Qualifying Financing or otherwise, shall be paid directly to the Trust and shall constitute Trust Assets.

(m)    FF Information.

The Trustee shall be provided certain information set forth in the Plan Term Sheet on a confidential, professional eyes only basis, which information the Trustee may share on a confidential and aggregated basis with the Creditor Trust Committee.

**6.3    *Exit Financing.***

On the Effective Date, without the need for further action, the Trust shall enter into the Exit

1    Financing on terms and conditions acceptable to the Committee and the Debtor.

2        **6.4    *Sources of Cash for Plan Distributions.***

3        Except as otherwise provided in the Plan or Confirmation Order, all Cash required for

4    payments to be made hereunder shall be obtained pursuant to the Debtor's and Reorganized

5    Debtor's Cash balances (including any remaining proceeds from the DIP Facility), and the proceeds

6    of the Exit Financing.

7        **6.5    *Cancellation of Liens.***

8        Except as provided otherwise in the Plan, on the Effective Date and concurrently with the

9    applicable distributions made pursuant to the Plan, all Liens on assets located in the United States

10   that secure any U.S. Secured Claim shall be fully released, settled, discharged, and compromised

11   and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges,

12   or other security interests against any property of the Estate shall revert to the Reorganized Debtor

13   and his successors and assigns, and the holder of such U.S. Secured Claim shall be authorized and

14   directed, at the sole cost and expense of the Reorganized Debtor, to release any Collateral or other

15   property of the Debtor (including any cash collateral and possessory collateral) held by such holder,

16   and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence

17   the release of such Lien, including the execution, delivery, and filing or recording of such releases.

18   The filing of the Confirmation Order with any federal, state, provincial, or local agency or

19   department shall constitute good and sufficient evidence of, but shall not be required to effect, the

20   termination of such Liens.

21       **6.6    *Wei Gan Settlement.***

22       Pursuant to Bankruptcy Rule 9019, the Debtor, Wei Gan, and the Committee have settled

23   all Claims of the Debtor's wife, Wei Gan, against the Debtor and all of the Debtor's claims against

24   Wei Gan (the "Wei Gan Settlement"); *provided*, *however,* that pursuant to the divorce proceeding

25   pending in the People's Court of Chaoyang District, Beijing, China Wei Gan and the Debtor's three

26   minor children may be awarded child support (the "Wei Gan Domestic Support Obligations"),

27   which obligations shall be satisfied in accordance with Article 2.4 of the Plan. In exchange for, and

28   subject to (a) a Cash contribution from Wei Gan in the amount of $1,000,000 to the Trust on the

Effective Date, which shall constitute Trust Assets (the "Effective Date Wei Gan Payment"), (b) a Cash payment of $250,000 to the Trust no later than ninety (90) days after the Effective Date (the "Second Wei Gan Payment"), (c) Wei Gan's agreement not to assert any other prepetition or postpetition Claims against the Debtor (excluding the Wei Gan Domestic Support Obligations) or the Trust, and (d) execution of the Wei Gan Declaration (collectively, (a), (b), (c), and (d) are the "Wei Gan Release Consideration"), the following shall occur:

(a)    Upon the Effective Date Wei Gan Payment, (i) the China Debtor Covenant shall apply to Wei Gan; and (ii) Wei Gan's alleged Debt Claim against the Debtor [Claim No. 20004] shall be treated as an Allowed Debt Claim in the amount of $250,000,000.

(b)    Upon the Second Wei Gan Payment, (the date upon which the foregoing condition occurs is the "Wei Gan Liability Release Date"), (i) Wei Gan's alleged Debt Claim against the Debtor [Claim No. 20004] shall be treated as an Allowed Debt Claim in the amount of $500,000,000; and (ii) each holder of an (xi) Allowed Late Filed Debt Claim, on the date of allowance of such Late Filed Debt Claim or (yii) Allowed Debt Claim (Ax) shall, in addition to the discharge of community claims under section 524(a) of the Bankruptcy Code, be deemed to have released any Causes of Action against Wei Gan for personal liability or derivatively in its capacity as a creditor of a claim owed solely or jointly by Wei Gan (including unwinding or alter ego type claims) in any jurisdiction (the "Wei Gan Claims") on account of such Debt Claim or Late Filed Debt Claim to the maximum extent permitted by applicable law and (By) agrees that it shall not assert any new, or continue to prosecute any existing, Wei Gan Claims related to such Debt Claim or Late Filed Debt Claim in every jurisdiction.

Within ninety (90) days after the Wei Gan Liability Release Date with respect to an Allowed Debt Claim or the date of allowance of an Allowed Late Filed Debt Claim, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall (as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust) (a) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against Wei Gan from the courts and judicial authorities in all jurisdictions, including, but not limited to, the Chinese Courts, or confirm with the judicial authorities that Wei Gan has

settled all of her debt obligations or legal responsibilities to such holder and (b) file and execute any documents requested by Wei Gan to evidence the above release. Wei Gan reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein.

**In connection with the releases described in this Article 6.6, each holder of an Allowed Debt Claim and/or Allowed Late Filed Debt Claim shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article 6.6, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 6.6 is: (a) in exchange for the good and valuable consideration provided by Wei Gan, a good faith settlement and compromise of such claims; (b) in the best interests of the Debtor and all holders of Claims; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) except as otherwise provided in the Plan, a bar to any holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim asserting any Claim, Cause of Action, or liability related thereto, of any kind whatsoever, against Wei Gan.**

**6.7**    *Declarations.*

On or before the Effective Date, the Debtor and Wei Gan, as applicable, shall execute declarations, in form and substance reasonably acceptable to the Committee, regarding the below representations (respectively, the "<u>YT Declaration</u>" and the "<u>Wei Gan Declaration</u>" and collectively, the "<u>Declarations</u>"):

(a) The Debtor owns 100% of the issued and outstanding economic interests in West Coast LLC ("<u>West Coast</u>") through a nominee, Lian Bossert.

(b) The sole asset of West Coast is 100% of the Preferred PT Units of Pacific Technology, which comprise 20% of the currently issued and outstanding membership interests of Pacific Technology.

(c) Pacific Technology is the sole owner of FF Peak.

(d) FF Peak is the sole owner of FF Top.

(e) FF Top owns 40.8% of the issued and outstanding Class B shares of FF ~~Global~~Intelligent (the "FF ~~Global~~Intelligent Shares").

(f) The Debtor has a contractual right to direct Pacific Technology to direct FF Peak to direct FF Top to transfer the Trust FF ~~Global~~Intelligent Shares to the Trust.

(g) Pursuant to Section 16 of the PT LLCA, the Preferred PT Units entitle West Coast to receive certain distributions of capital from Pacific Technology from time to time (the "Preferred Unit Distribution Rights"),[5] consisting of (1) a priority distribution of up to $815.7 million, *plus* interest at 8% per annum, after the return of capital to the management (plus 8% interest per annum) but before any other capital is distributed from Pacific Technology, *plus* (2) a special distribution of 10% of all remaining distributions of capital from Pacific Technology, *plus* (3) its pro rata share (*i.e.*, 20%) of all remaining distributions of capital from Pacific Technology.

(h) The Debtor owns the Call Option pursuant to the Restructuring Agreement, entitling the Debtor to purchase Season Smart's shares in FF ~~Global~~Intelligent under certain circumstances.

(i) The Debtor is the sole owner of Ford Field.

(j) The Debtor and Wei Gan own no direct or indirect ownership interests in (including through any nominee, trust, or similar arrangement), do not directly or indirectly control, and do not hold a beneficial interest in any of the entities listed on **Schedule D** attached hereto, or any of their respective parent companies or subsidiaries.

---

[5] The description of the Preferred Unit Distribution Rights in the Plan is not intended to limit the actual terms of Section 16 of the PT LLCA.

# ARTICLE VII
# PLAN DISTRIBUTIONS

**7.1**     *Plan Distributions.*

The Debtor shall make all Plan Distributions to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

**7.2**     *Allocation of Plan Distributions Between Principal and Interest.*

The aggregate consideration to be distributed to the holders of Allowed Claims under the Plan shall be treated as first satisfying an amount equal to the stated principal amount of the Allowed Claims of such holders, as determined for federal income tax purposes, and any remaining consideration as satisfying accrued, but unpaid, interest, if any.

**7.3**     *No Postpetition Interest on Claims.*

Other than as specifically provided in the Plan, Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claim, and no holder of a prepetition Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

**7.4**     *Date of Plan Distributions.*

Except as otherwise provided herein, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as soon as practicable thereafter. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**7.5**     *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each of the Classes, as maintained by the Debtor, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims after the Distribution Record Date. The Debtor shall have no obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. The Debtor and the Reorganized Debtor, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with those holders stated on

the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 7.6    *Delivery of Plan Distribution.*

Subject to the provisions contained in this Article VII and subject to Bankruptcy Rule 9010, the Debtor shall make all Plan Distributions or payments to any holder of an Allowed Claim as and when required by the Plan at: (a) the address of such holder on the books and records of the Debtor or his agents; or (b) the address in any written notice of address change delivered to the Debtor, including any addresses included on any filed proofs of Claim or transfers of Claim filed with the Bankruptcy Court. In the event that any Plan Distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Debtor has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such Plan Distribution shall be made to such holder without interest; *provided*, *however*, such Plan Distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.

### 7.7    *Unclaimed Property.*

Except with respect to the Trust Interests held in the Trust, one year from the later of: (a) the Effective Date, and (b) the date that a Claim is first Allowed, all unclaimed property or interests in property distributable hereunder on account of such Claim shall revert to the Reorganized Debtor or the successors or assigns of the Reorganized Debtor, and any claim or right of the holder of such Claim to such property or interest in property shall be discharged and forever barred. The Reorganized Debtor shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtor's books and records, the proofs of Claim filed against the Debtor, as reflected on the claims register maintained by the Voting Agent, and any change of address reflected on the docket of the Chapter 11 Case.

### 7.8    *Satisfaction of Claims.*

Unless otherwise provided herein, any Plan Distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction, and discharge of such Allowed Claims.

**7.9    *Manner of Payment Under Plan.***

Except as specifically provided herein, at the option of the Reorganized Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor or the Reorganized Debtor.

**7.10    *No Distribution in Excess of Amount of Allowed Claim.***

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution of a value in excess of the Allowed amount of such Claim plus any postpetition interest on such Claim, to the extent such interest is permitted by Article 7.3 of the Plan.

If on and after the date on which the claim of any holder of an Allowed Claim is paid in full in accordance with the terms of the Plan, any such Allowed Claim shall thereafter be deemed to be and in fact, paid in full in its entirety. Furthermore, to the extent any holder of an Allowed Claim has security or possession of any property or assets of the Debtor or any other Person or Entity, after such Claim is paid in full, such holder shall release and/or return any such property or assets to the Debtor or such other Person or Entity.

If on and after the date on which a holder of an Allowed Debt Claim is paid in part in accordance with the terms of the Plan, then the aggregate amount distributed to such holder on account of Other Distributions will be equal to the proceeds received from the Other Distributions less the partial payments that have been made to such holder through the Trust.

In accordance with applicable law, if a holder of an Allowed Debt Claim (including an Allowed China Secured Claim treated as an Allowed Debt Claim pursuant to Article 4.3 of the Plan) is paid in part in accordance with the terms of the Plan and such holder subsequently receives Other Distributions, the maximum amount to be distributed to such holder on account of Other Distributions will be equal to the amount of the Allowed Debt Claim less the partial payments that have been made to such holder through the Trust.

**7.11**    *Setoffs and Recoupments.*

(a)    Except as expressly provided in the Plan, the Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount among the Reorganized Debtor and the holder of such Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that the Reorganized Debtor or its successor may possess against the applicable holder. For the avoidance of doubt, nothing in the Plan shall affect the right of any holder of a Claim against the Debtor that is evidenced by a timely filed proof of Claim to seek an order of the Bankruptcy Court authorizing such holder to set off such Claim against any claim, right, or Cause of Action of the Debtor that arose prior to the Petition Date.

(b)    In no event shall any holder of Claims against the Debtor be entitled to recoup any such Claim against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtor in accordance with Article 13.22 of the Plan on or before the Effective Date, notwithstanding any indication in any proof of claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

**7.12**    *Withholding and Reporting Requirements.*

In connection with the Plan and all Plan Distributions hereunder, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of any Plan Distribution to

generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtor or Reorganized Debtor believe are reasonable and appropriate, including requiring a holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provisions of the Plan: (a) each holder of an Allowed Claim that is to receive a Plan Distribution shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations on account of such distribution; and (b) no distribution shall be required to be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Reorganized Debtor for the payment and satisfaction of such tax obligations or has, to the Reorganized Debtor's satisfaction, established an exemption therefrom.

**7.13    *Claims Paid by Third Parties.***

(a)    Claims Paid by Third Parties. Except as otherwise provided in the Plan, the Debtor or Reorganized Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without an objection having to be filed and without any further notice to, or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment (before or after the Effective Date) on account of such Claim from a party that is not the Debtor or Reorganized Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Reorganized Debtor on account of such Claim, such holder shall, within ten (10) days of receipt thereof, repay or return the distribution to the Debtor or Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such distribution under the Plan. In the event such holder fails to timely repay or return such distribution, the Debtor, the Reorganized Debtor, or the Trustee, as applicable, may pursue any rights and remedies against such holder under applicable law.

(b)    Applicability of Insurance Policies. Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Pursuant to section 524(e) of the Bankruptcy Code, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor, the

- 42 -

Reorganized Debtor, or any Entity may hold against any other Entity under any insurance policies, including against insurers, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VIII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

**8.1**    ***Objections to Claims; Estimation of Claims.***

Except insofar as a Claim is Allowed under the Plan, the Debtor or the Reorganized Debtor, as applicable, shall be entitled to object to Claims. No other Entity shall be entitled to object to Claims after the Effective Date. Any objections to Claims shall be served and filed on or before (a) the one-hundred eightieth (180th) day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as may be fixed by the Bankruptcy Court.

The Reorganized Debtor may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, except that the Reorganized Debtor may not request estimation of any non-contingent or liquidated Claim if the Debtor's objection to such Claim was previously overruled by a Final Order, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which

such Claim is estimated. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 8.2    *Payments and Distributions on Disputed Claims.*

If an objection to a Claim is filed as set forth in Article 8.1, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

At such time as a Disputed Claim becomes an Allowed Claim or as soon as practicable thereafter, the Debtor shall distribute to the holder of such Allowed Claim the property distributable to such holder pursuant to Article IV of the Plan; *provided*, *however*, that the timing of distributions to holders of Allowed Debt Claims in Class 4 shall be governed in all respects by Article 6.2 of the Plan. To the extent that all or a portion of a Disputed Claim is Disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is Disallowed. Notwithstanding any other provision of the Plan, no interest shall accrue or be Allowed on any Claim during the period after the Petition Date, except to the extent that section 506(b) of the Bankruptcy Code permits interest to accrue and be Allowed on such Claim.

### 8.3    *Preservation of Claims and Rights to Settle Claims.*

Except as otherwise provided in the Plan (including with respect to the Yidao Claims and as set forth in Article 11.4 of the Plan), or in any contract, instrument, or other agreement or document entered into in connection with the Plan, including the Plan Supplement, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss any and all claims, counterclaims, defenses, and rights (including setoff rights) that may be asserted in the Causes of Action, suits, and proceedings listed on **Schedule A** attached hereto (including any supplement to Schedule A included in the Plan Supplement) (collectively, the "Retained Actions"), whether at law or in equity, whether known or unknown, that the Debtor or his Estate may hold against any Entity (other than Claims, rights, Causes of Action, suits, and proceedings released pursuant to

Articles 6.6, 11.4, or 11.9 of the Plan), without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.

The Reorganized Debtor expressly reserves all rights to prosecute any and all Retained Actions against any Entity. Unless any Retained Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Retained Actions for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Action upon, after, or as consequence of, confirmation or consummation of the Plan. For the avoidance of doubt, all claims, Causes of Action, suits, and proceedings of the Debtor that are not Retained Actions are waived as of the Effective Date. Any proceeds received on account of any Retained Action shall be transferred to the Trust and be considered Trust Assets.

**8.4**     ***Expenses Incurred On or After the Effective Date.***

Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Reorganized Debtor, the amount of reasonable expenses incurred by any Professional or the Voting Agent on or after the Effective Date in connection with implementation of the Plan, including, without limitation, reconciliation of, objection to, and settlement of Claims, shall be paid in Cash by the Reorganized Debtor.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1**     ***Assumption of Contracts and Leases.***

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases of the Debtor listed on **Schedule B** attached hereto (including any supplement to Schedule B included in the Plan Supplement) shall be deemed assumed except that: (a) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; (b) any executory contracts and unexpired leases listed on the

- 45 -

Schedule of Rejected Contracts and Leases, shall be deemed rejected as of the Effective Date; and (c) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions and rejections described in this Article 9.1 pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to this Article 9.1 shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law. The pendency of any motion to assume or reject executory contracts or unexpired leases shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

Unless otherwise provided in the Plan, each executory contract and unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously terminated or is otherwise not in effect. Modifications, amendments, supplements, and restatements to prepetition executory contracts or unexpired leases that have been executed by the Reorganized Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease.

**9.2**     ***Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

Proofs of Claim with respect to all Claims arising from the rejection of Executory Contracts must be filed within sixty (60) days after the later of (a) the date of entry of an order of the Bankruptcy Court approving such rejection or (b) the Confirmation Date. Any Claims not filed within such times shall be forever barred from assertion against the Debtor, the Reorganized Debtor, the Estate, and the property thereof. Unless otherwise ordered by the Bankruptcy Court, all

such Claims shall be allowed in accordance with provisions of the Bankruptcy Code, including section 502(b)(6), and shall, following their allowance and payment pursuant to the terms of the Plan, be Unimpaired and be treated as Allowed Debt Claims in Class 4.

### 9.3    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

(a)    Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease to be assumed pursuant to the Plan, any monetary defaults arising under such executory contract or unexpired lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "Cure Amount") in full in Cash on the later of thirty (30) days after: (i) the Effective Date or (ii) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision).

(b)    No later than ten (10) calendar days prior to the commencement of the Confirmation Hearing, the Debtor shall file a schedule (the "Cure Schedule") setting forth the Cure Amount, if any, for each executory contract and unexpired lease to be assumed pursuant to Article 9.1 of the Plan, and serve such Cure Schedule on each applicable counterparty. Any party that fails to object to the applicable Cure Amount listed on the Cure Schedule within ten (10) calendar days of the filing thereof, shall be forever barred, estopped, and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any Claim against the Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.

(c)    In the event of a dispute (each, a "Cure Dispute") regarding: (i) the Cure Amount; (ii) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption in accordance with Article 9.3(a). To the extent a Cure Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure

Dispute provided that the Debtor reserves Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined against the Debtor or Reorganized Debtor, as applicable, the Debtor or Reorganized Debtor, as applicable, may reject the applicable executory contract or unexpired lease within ten (10) Business Days after such determination by filing and serving upon the counterparty a notice of rejection, and the counterparty may thereafter file a proof of claim in the manner set forth in Article 9.2 hereof.

**9.4**    ***Insurance Policies.***

All insurance policies pursuant to which the Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Debtor (and assigned to the Reorganized Debtor if necessary to continue such insurance policies in full force) pursuant to section 365 of the Bankruptcy Code and shall continue in full force and effect.

**9.5**    ***Reservation of Rights.***

Neither the exclusion nor inclusion of any contract or lease on any exhibit to the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any agreement, contract, or lease is an executory contract or unexpired lease subject to Article IX of the Plan, as applicable, or that the Debtor or Reorganized Debtor has any liability thereunder.

The Debtor and Reorganized Debtor, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Rejected Contracts and Leases until and including the Effective Date or as otherwise provided by Bankruptcy Court order; *provided*, *however*, that if there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, assumption and assignment, or with respect to the asserted Cure Amount, then the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to amend the decision to assume, or assume and assign, such executory contract or unexpired lease.

**9.6**     *Pre-existing Obligations to Debtor Under Executory Contracts and Unexpired Leases*

Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor contracting from non-Debtor counterparties to rejected executory contracts or unexpired leases.

**9.7**     *Contracts and Leases Entered into After the Petition Date.*

Contracts and leases entered into after the Petition Date by the Debtor in the ordinary course of business or following approval pursuant to a Bankruptcy Court order, including any executory contracts and unexpired leases assumed by the Debtor, shall be performed by the Debtor or Reorganized Debtor, as the case may be, in the ordinary course of business. Accordingly, such contracts and leases (including any assumed executory contracts and unexpired leases) shall survive and remain unaffected by entry of the Confirmation Order.

**ARTICLE X**
**CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

**10.1**     *Conditions Precedent to Confirmation.*

It shall be a condition to confirmation of the Plan that the following conditions shall have been satisfied in full or waived in accordance with Article 10.3 of the Plan:

(a)     The Disclosure Statement shall have been approved by the Bankruptcy Court as having adequate information in accordance with section 1125 of the Bankruptcy Code; and

(b)     The Confirmation Order shall have been entered on the docket for the Chapter 11 Case and be in full force and effect.

**10.2**     *Conditions Precedent to the Effective Date.*

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions have been satisfied in full or waived in accordance Article 10.3 of the

Plan:

    (a)    The Confirmation Order shall have become a Final Order in full force and effect;

    (b)    The Discharge Date shall have occurred;

    (c)    The documents comprising the Plan Supplement, including the Trust Agreement, shall, to the extent applicable, have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification that the Effective Date has occurred) contained therein shall have been satisfied or waived in accordance therewith;

    (d)    All necessary actions, consents, documents, certificates, and agreements necessary to implement the Plan on the Effective Date, including any consents of Pacific Technology and its managing member, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

    (e)    All applicable governmental authorities shall have granted any necessary consents and approvals required for the Debtor to emerge from chapter 11 pursuant to the Plan and any statutory waiting periods shall have expired;

    (f)    the Trust shall have access to funding under the Exit Financing and all amounts necessary to make any payments required to be made in connection with the Plan (including, without limitation, Administrative Expense Claims and approved professional fees) shall be deposited into escrow; and

    (g)    the Declarations shall have been delivered to the Committee.

**10.3**    ***Waiver of Conditions Precedent.***

Each of the conditions precedent in Articles 10.1 and 10.2 of the Plan may be waived, in whole or in part, by the Debtor in writing, without notice to any other third parties or order of the Bankruptcy Court or any other formal action; *provided*, *however*, that the condition precedent in Article 10.2(g) of the Plan may be waived, in whole or in part, by the Debtor, only with the reasonable consent of the Committee.

**10.4**    ***Effect of Non-Occurrence of the Effective Date.***

If the conditions listed in Articles 10.1 and 10.2 are not satisfied or waived in accordance

with Article 10.3, then (a) the Confirmation Order shall be of no further force or effect; (b) the Plan shall be null and void in all respects; (c) no distributions under the Plan shall be made; (d) no executory contracts or unexpired leases that were not previously assumed, assumed and assigned, or rejected shall be deemed assumed, assumed and assigned, or rejected by operation of the Plan; (e) the Debtor and all holders of Claims shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date; and (f) nothing contained in the Plan or the Disclosure Statement shall (i) be deemed to constitute a waiver or release of (x) any Claims against the Debtor or (y) any claims belonging to the Debtor, (ii) prejudice in any manner the rights of the Debtor or any other Entity, or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtor in any respect.

**ARTICLE XI**
**EFFECT OF CONFIRMATION**

**11.1    *Vesting of Assets.***

Except as otherwise provided in the Plan (including with respect to the Trust Assets as set forth in Article 6.2 of the Plan), as of the Effective Date, all property of the Estate, and any property acquired by the Debtor or Reorganized Debtor under the Plan, shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, charges, other encumbrances and interests. On and after the Effective Date, the Debtor may use, acquire, and dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**11.2    *Binding Effect.***

Subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, on and after the Confirmation Date, the provisions of the Plan shall be immediately effective and enforceable and deemed binding upon any holder of a Claim against the Debtor, and such holder's respective successors and assigns, (whether or not the Claim of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan), all Entities that are party, or subject,

to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor counterparties to executory contracts, unexpired leases, and any other prepetition agreements. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

**11.3    *Discharge of Claims.***

**PLEASE TAKE NOTICE THAT THE DEBTOR SEEKS A DISCHARGE PURSUANT TO SECTION 1141(D)(5) OF THE BANKRUPTCY CODE AS OF THE EFFECTIVE DATE OF THE PLAN. THE DEBTOR BELIEVES THAT CAUSE EXISTS TO GRANT A DISCHARGE ON THE EFFECTIVE DATE OF THE PLAN BECAUSE THE PLAN PROVIDES FOR THE CONTRIBUTION OF HIS ASSETS TO THE TRUST ON THE EFFECTIVE DATE OF THE PLAN.**

**PLEASE TAKE FURTHER NOTICE THAT, PURSUANT TO THE PLAN, A DISCHARGE WILL BE ENTERED ON THE EFFECTIVE DATE OF THE PLAN, WHICH WILL RESULT IN ALL CREDITORS WITH DISCHARGEABLE CLAIMS BEING ENJOINED FROM TAKING ANY ACTION TO COLLECT, RECOVER OR OFFSET ANY DISCHARGEABLE DEBT AS A PERSONAL LIABILITY OF THE DEBTOR.**

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date. Except as expressly provided in the Plan, on the Discharge Date (and subject to its occurrence), and pursuant to section 1141(d)(5)(A) of the Bankruptcy Code, entry of the Confirmation Order shall be deemed to act as a discharge and release under section 1141(d)(1)(A) of the Bankruptcy Code of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the holder of the Claim votes to accept the Plan or**

is entitled to receive a distribution under the Plan; *provided*, *however*, that in no event shall occurrence of the Discharge Date discharge the Debtor from any obligations remaining under the Plan as of the Discharge Date. Any default by the Debtor with respect to any Claim that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Discharge Date.

Except as expressly provided in the Plan, any holder of a discharged Claim will be precluded from asserting against the Debtor or any of his assets any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Except as expressly provided in the Plan, pursuant to section 1141(d)(5)(A), the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under section 1141 of the Bankruptcy Code, and the Debtor will not be liable for any Claims and will only have the obligations that are specifically provided for in the Plan. Notwithstanding the foregoing, nothing contained in the Plan or the Confirmation Order shall discharge the Debtor from any debt excepted from discharge under section 523 of the Bankruptcy Code by a Final Order.

**11.4** *Releases.*

(a) <u>Releases by the Debtor</u>. Upon the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, in his individual capacity and as debtor in possession, shall be deemed forever to release, waive, and discharge (x) the Estate; (y) all Persons engaged or retained by the Debtor in connection with the Chapter 11 Case (including in connection with the preparation of and analyses relating to the Disclosure Statement and the Plan); and (z) any and all advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, consultants and representatives of each of the foregoing Persons and Entities (whether current or former, in each case in his, her, or its capacity as such), from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities, whether for tort, fraud, contract, recharacterization, subordination, violations of

1   federal or state securities laws (other than the rights of the Debtor or Reorganized Debtor to

2   enforce the terms of the Plan and the contracts, instruments, releases, and other agreements

3   or documents delivered in connection with the Plan), whether liquidated or unliquidated,

4   fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen,

5   then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part

6   on any act, omission, transaction, event or other occurrence, or circumstances taking place

7   on or before the Effective Date, in any way relating to (i) the Debtor or the Chapter 11 Case;

8   (ii) any action or omission of any Released Party with respect to any indebtedness under

9   which the Debtor is or was a borrower or guarantor; (iii) any Released Party in any such

10  Released Party's capacity as an employee, or agent of, or advisor to, or consultant to, the

11  Debtor; (iv) the subject matter of, or the transactions or events giving rise to, any Claim that

12  is treated in the Plan; (v) the business or contractual arrangements between the Debtor and

13  any Released Party; (vi) the restructuring of Claims before or during the Chapter 11 Case;

14  and (vii) the negotiation, formulation, preparation, or dissemination of the Plan (including,

15  for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, or related

16  agreements, instruments, or other documents, other than claims or liabilities arising out of or

17  relating to any act or omission of a Released Party that is determined by a Final Order to

18  have constituted willful misconduct, fraud, or gross negligence. The Reorganized Debtor shall

19  be bound, to the same extent the Debtor is bound, by the releases and discharges set forth

20  above.

21        Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval,

22  pursuant to Bankruptcy Rule 9019, of the releases described in this Article 11.4(a) by the

23  Debtor, which includes by reference each of the related provisions and definitions contained

24  in the Plan, and further, shall constitute its finding that each release described in this Article

25  11.4(a) is: (i) in exchange for the good and valuable consideration provided by the Released

26  Parties, a good faith settlement and compromise of such claims; (ii) in the best interests of the

27  Debtor and all holders of Claims; (iii) fair, equitable, and reasonable; (iv) given and made

28  after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties

asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

(b)        **Releases by Holders of Non-Debt Claims**. On the Effective Date, to the maximum extent permitted by applicable law, each Releasing Party, in consideration for the obligations of the Debtor and the Reorganized Debtor under the Plan, and the Trust Interests and Cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed forever to release, waive, and discharge the Released Parties from personal liability in every jurisdiction from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtor, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws or laws of any other jurisdiction or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event, or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (i) the Debtor or the Chapter 11 Case; (ii) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor; (iii) any Released Party in any such Released Party's capacity as an employee, agent of, or advisor to, or consultant to, the Debtor; (iv) the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan; (v) the business or contractual arrangements between the Debtor and any Released Party; (vi) the restructuring of Claims before or during the Chapter 11 Case and the solicitation of votes with respect to the Plan; and (vii) the negotiation, formulation, preparation, entry into, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement and all documents contained or referred to therein), the Disclosure Statement, or related agreements, instruments, or other documents. Notwithstanding anything contained herein to the contrary, the foregoing release (x) does not release any obligations of any party under the Plan or any document, instrument,

or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (y) shall only apply to holders of Non-Debt Claims in their capacity as a holder of a Non-Debt Claim and shall not apply to any other Claims such holder may have, including, without limitation, any Deficiency Claim.

In connection with the releases described in this Article 11.4(b), each Releasing Party shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article 11.4(b), which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 11.4(b) is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such claims; (ii) in the best interests of the Debtor and all holders of Claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

(c)    **Standstill and Releases by Holders of Allowed Debt Claims, Allowed China Secured Claims, and Allowed Late Filed Debt Claims**. To the maximum extent permitted by applicable law, each holder of an Allowed Debt Claim or Allowed China Secured Claim shall agree for a period of four years after the Effective Date (the "Standstill Period") to not assert any new Causes of Action (x) against the Debtor for personal liability directly or (y) derivatively in its capacity as a creditor of a claim owed solely or jointly by the

1   Debtor (including unwinding or alter ego type claims), in any non-U.S. jurisdiction

2   (collectively, the "YT Claims"); *provided*, *however*, that such holder may continue to

3   prosecute any actions commenced prepetition against the Debtor up to judgment and pursue

4   Other Distributions through judicial authorities in the PRC to satisfy such holder's Debt

5   Claim or China Secured Claim through a mechanism that will be mutually agreed to by the

6   parties, including claims against primary obligors solely based on such holder's contractual

7   agreements with such primary obligors (for the avoidance of doubt, such holder may not

8   bring unwinding or alter ego type claims against such primary obligors); *provided further*,

9   *however*, that the Standstill Period shall terminate in the event a Liquidation Event occurs

10  during the Standstill Period. All limitations periods applicable to all YT Claims in any non-

11  U.S. jurisdictions, to the extent not previously expired, shall be tolled for the duration of the

12  Standstill Period.

13          Each holder of an Allowed Debt Claim, Allowed China Secured Claim, or Allowed

14  Late Filed Debt Claim shall, within ninety (90) days after the later to occur of (i) the Effective

15  Date and (ii) the date such Debt Claim, China Secured Claim, or Late Filed Debt Claim

16  becomes Allowed, (x) take the steps and provide the documents described in the Trust

17  Agreement to notify the applicable court or courts in the PRC (the "Chinese Courts") that

18  (A) the Debtor and such holder and (B) if applicable, the KCBI Claimant and the applicable

19  Key China Business Individual have reached a settlement agreement that is embodied in and

20  has been implemented through the Plan and request that the Chinese Courts remove the

21  Debtor from the List of Dishonest Judgment Debtors (the "China Debtor List") and lift any

22  consumption or travel restrictions (the "China Restrictions"), as applicable, and (y) refrain

23  from taking any action during the Standstill Period to cause (A) the Debtor or (B) if

24  applicable, the Key China Business Individual to be reinstated on the China Debtor List or

25  be subject to the China Restrictions (the "China Debtor List Covenant").

26  ~~Before any~~As a condition to receiving Plan Distributions (including Trust

27  Distributions ~~are made to the~~), each holder of an Allowed Debt Claim ~~or an~~ (including the

28  holder of an Allowed China Secured Claim treated as an Allowed Debt Claim pursuant to

Article 4.3 of the Plan), Allowed China Secured Claim, or Allowed Late Filed Debt Claim, such holder shall provide an affidavit that (i) certifies to the Trustee within ninety (90) days after the date such Debt Claim, China Secured Claim, or Late Filed Debt Claim becomes Allowed that certifies (i) such holder's compliance with the China Debtor List Covenant, (ii) certifies that they have such holder has not initiated, and will not initiate, any YT Claims during the Standstill Period or after the Liability Release Date, as applicable, (iii) identifies any amounts received from Other Distributions as of the date of the affidavit, and (iv) certifies, and (iii) if applicable, such holder's compliance with Article 6.6 of the Plan and the release of Wei Gan's personal liability pursuant to the Wei Gan Settlement. If the holder of an Allowed Debt Claim, Allowed China Secured Claim, or Allowed Late Filed Debt Claim fails to submit the above affidavit, submits an affidavit containing falsified information, or breaches the affidavit, such holder shall forfeit its Plan Distributions (including any Trust Interests) and such Plan Distributions shall revert to the Trust for the ratable benefit of holders of Allowed Debt Claims and the Reorganized Debtor pursuant to the Distribution Trust Waterfall.

Subject to approval of the applicable KCBI Settlement, before any Trust Distributions are made to an applicable KCBI Claimant, such claimant shall provide an affidavit that certifies such claimant's compliance with the China Debtor List Covenant with respect to the applicable Key China Business Individual.

Each Upon the earlier of a holder of an (i) Allowed Late Filed Debt Claim, on the date of allowance of such Late Filed Debt Claim or (ii) Allowed Debt Claim, once it has received (including the holder of an Allowed China Secured Claim treated as an Allowed Debt Claim pursuant to Article 4.3 of the Plan) receiving (i) Trust Distributions that, in the aggregate, are equal to 40% of its Debt Claim Allocation Amount and (ii) Trust Distributions and Other Distributions (from enforcement or other actions) that, in the aggregate, are equal to 20100% of its Allowed Debt Claim Allocation Amount (the date upon which the foregoing condition occurs is the "Liability Release Date"), such holder (x) shall be deemed to have released the YT Claims on account of such Debt Claim or Late Filed Debt Claim in every jurisdiction and

1    **(y) agrees that it shall not assert any new, or continue to prosecute any existing, YT Claims**

2    **related to such Debt Claim** ~~or Late Filed Debt Claim~~ **in every jurisdiction;** *provided*, *however*,

3    **that the foregoing release shall not release, waive, or otherwise impact the rights of such**

4    **holder to receive further Trust Distributions or to pursue and receive Other Distributions**

5    **through a mechanism that will be mutually agreed to by the parties** ~~.~~ **;** *provided further,*

6    *however,* **that if an Allowed China Secured Claim is satisfied in full prior to the initial Trust**

7    **Distribution Date, on the date thereof, the holder of such China Secured Claim (A) shall be**

8    **deemed to have released the YT Claims on account of such China Secured Claim in every**

9    **jurisdiction and (B) agrees that it shall not assert any new, or continue to prosecute any**

10    **existing, YT Claims related to such China Secured Claim in every jurisdiction.**

11    **Each holder of an Allowed Late Filed Debt Claim, on the date of allowance of such**

12    **Late Filed Debt Claim (i) shall be deemed to have released the YT Claims on account of such**

13    **Late Filed Debt Claim in every jurisdiction and (ii) agrees that it shall not assert any new, or**

14    **continue to prosecute any existing, YT Claims related to such Late Filed Debt Claim in every**

15    **jurisdiction.**

16    **Within ninety (90) days after the (i) applicable Liability Release Date with respect to**

17    **Allowed Debt Claims** ~~or~~ **(including Allowed China Secured Claims treated as Allowed Debt**

18    **Claims pursuant to Article 4.3 of the Plan), (ii) the date of satisfaction in full of an Allowed**

19    **China Secured Claim and, if applicable, the occurrence of the Liability Release Date with**

20    **respect to any Deficiency Claim on account of such Allowed China Secured Claim, or (iii)** **the**

21    **date of allowance of a Late Filed Debt Claim, each holder of an Allowed Debt Claim, Allowed**

22    **China Secured Claim,** **or Allowed Late Filed Debt Claim shall (as a condition to receiving**

23    **further Trust Distributions, including any Trust Distributions upon the termination or**

24    **dissolution of the Trust) (i~~x~~) withdraw or retract any litigations, enforcement actions,**

25    **arbitrations, and any other proceedings against the Debtor from the courts and judicial**

26    **authorities in all jurisdictions, including, but not limited to, the Chinese Courts, or confirm**

27    **with the judicial authorities that the Debtor has settled all of his debt obligations or legal**

28    **responsibilities to such holder and (ii~~y~~) file and execute any documents requested by the**

1   Debtor to evidence the above release. The Debtor reserves all rights to seek enforcement by

2   the Chinese judicial authorities of the rights provided herein.

3       Subject to approval of the applicable KCBI Settlement, upon the Liability Release

4   Date, each applicable KCBI Claimant shall release the applicable Key China Business

5   Individual of his or her guaranty obligations on behalf of the Debtor.

6       In connection with the releases described in this Article 11.4(c), each holder of an

7   Allowed Debt Claim**, Allowed China Secured Claim,** or Allowed Late Filed Debt Claim shall

8   waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or

9   any similar state or federal law. Section 1542 of the California Civil Code provides as follows:

10   "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR

11   DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME

12   OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE

13   MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

14       Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval,

15   pursuant to Bankruptcy Rule 9019, of the releases described in this Article 11.4(c), which

16   includes by reference each of the related provisions and definitions contained in the Plan, and

17   further, shall constitute its finding that each release described in Article 11.4(c) is: (i) in

18   exchange for the good and valuable consideration provided by the Debtor and Reorganized

19   Debtor, a good faith settlement and compromise of such claims; (ii) in the best interests of the

20   Debtor and all holders of Claims; (iii) fair, equitable, and reasonable; (iv) given and made

21   after due notice and opportunity for hearing; and (v) except as otherwise provided in the

22   Plan, a bar to any holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim

23   asserting any Claim, Cause of Action, or liability related thereto, of any kind whatsoever,

24   against the Debtor or Reorganized Debtor.

25       **11.5**   *Exculpation and Limitation of Liability.*

26       None of the Debtor or Reorganized Debtor, or the direct or indirect affiliates,

27   employees, advisors, attorneys, financial advisors, accountants, investment bankers, agents,

28   consultants, or other professionals (whether current or former, in each case, in his, her, or its

capacity as such) of the Debtor or the Reorganized Debtor, or the Released Parties shall have or incur any liability to, or be subject to any right of action by, any holder of a Claim, or any other party in interest in the Chapter 11 Case, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or direct or indirect affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, formulation, negotiation, preparation, dissemination, confirmation, solicitation, implementation, or administration of the Plan, the Plan Supplement and all documents contained or referred to therein, the Disclosure Statement, any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other pre- or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor or confirming or consummating the Plan (including the distribution of any property under the Plan); *provided*, *however*, that the foregoing provisions of this Article 11.5 shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence and shall not impact the right of any holder of a Claim, or any other party to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan. Without limiting the generality of the foregoing, the Debtor and the Debtor's direct or indirect affiliates, employees, advisors, attorneys, financial advisors, accountants, investment bankers, agents, consultants, and other professionals (whether current or former, in each case, in his, her, or its capacity as such) shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The exculpated parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation

shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such exculpating parties from liability.

**11.6** *Injunction.*

(a)    <u>General</u>. All Persons or Entities who have held, hold, or may hold Claims (other than Claims that are reinstated under the Plan), and all other parties in interest in the Chapter 11 Case, along with their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates, are permanently enjoined, from and after the Effective Date, from, in respect of any Claim or Cause of Action released or settled hereunder, (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor, or in respect of any Claim or Cause of Action released or settled hereunder; (ii) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree, or order against the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor; (iii) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from the Released Parties, the Key China Business Individuals, Wei Gan, the Debtor, or the Reorganized Debtor, or against the property or interests in property of the Debtor or Reorganized Debtor, on account of such Claims; or (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims released or settled pursuant to the Plan; *provided*, *however*, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, and other agreements and documents delivered under or in connection with the Plan.

(b)  **Injunction Against Interference With the Plan**. **Upon entry of the Confirmation Order, all holders of Claims and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article 11.6 of the Plan.**

**11.7**  *Term of Bankruptcy Injunction or Stays.*

All injunctions or stays (excluding any injunctions or stays contained in the Plan or the Confirmation Order) in effect in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or any order of the Bankruptcy Court or otherwise, and in existence as of the Confirmation Date, shall remain in full force and effect until the Effective Date.

**11.8**  *Termination of Subordination Rights and Settlement of Related Claims.*

The classification and manner of satisfying all Claims under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. All subordination rights that a holder of a Claim may have with respect to any distribution to be made under the Plan, shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, distributions under the Plan to holders of Allowed Claims shall not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

**11.9**  *Waiver of Actions Arising Under Chapter 5 of the Bankruptcy Code.*

Without limiting any other applicable provisions of, or releases contained in, the Plan, each of the Debtor, the Reorganized Debtor, their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, hereby irrevocably and

unconditionally release, waive, and discharge any and all claims or Causes of Action that they have, had, or may have that are based on section 544, 547, 548, 549, and 550 of the Bankruptcy Code and analogous non-bankruptcy law for all purposes; *provided*, *however*, that notwithstanding this or any other provision of the Plan, in the event the Trustee (with the approval of the Creditor Trust Committee as set forth in the Trust Agreement) determines that it has reasonable and good-faith evidence that (a) an asset, other than any of the Seized China Assets or assets subject to seizure in China, was property of the Debtor as of the Petition Date but was not disclosed by a document or testimony in his capacity as a chapter 11 debtor during the chapter 11 case, including, without limitation, in any disclosure statement, schedules, statements of financial affairs, section 341 meeting of creditors, confidential depositions, and materials posted in the creditor data room (the "Chapter 11 Disclosures"), *provided* that the Declarations shall supersede the Chapter 11 Disclosures, the Trustee may pursue an action for turnover of such asset under section 542 of the Bankruptcy Code through the Plan Arbitration Procedures; or (b) the Debtor was the transferor of a transfer avoidable pursuant to section 548(a)(1)(A) of the Bankruptcy Code, the Trustee may pursue an action to avoid and recover such transfer pursuant to sections 548(a)(1)(A) and 550 of the Bankruptcy Code, as applicable, through the Plan Arbitration Procedures, *provided* that such transfer did not arise out of any transaction or occurrence disclosed in the Chapter 11 Disclosures, *provided further* that the Declarations shall supersede the Chapter 11 Disclosures (collectively, (a) and (b) are the "Bankruptcy Actions").

Any Bankruptcy Actions must be commenced within one hundred eighty (180) days after the Effective Date (the "Bankruptcy Actions Limitations Period"), *provided* that the Trustee shall meet and confer with the Debtor prior to commencing any Bankruptcy Action, and the Bankruptcy Actions Limitations Period with respect to such Bankruptcy Action shall be automatically tolled for a period of thirty (30) days while the parties meet and confer, subject to extension by mutual agreement.

Upon the expiration of the Bankruptcy Actions Limitations Period, any Bankruptcy Actions that have not been timely asserted pursuant to the foregoing procedures shall be deemed satisfied and released, effective as of the Effective Date. For the avoidance of doubt, none of the claims or

Causes of Action referenced in this Article 11.9, except as excluded herein, shall constitute Retained Actions.

**11.10  *Reservation of Rights.***

The Plan shall have no force or effect unless and until the Effective Date. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor or any other party, including the Released Parties, with respect to any Claims or any other matter.

**ARTICLE XII**
**RETENTION OF JURISDICTION**

Except as provided herein with respect to matters subject to the Plan Arbitration Procedures, pursuant to sections 105(c) and 1142 of the Bankruptcy Code, to the fullest extent permitted by law, and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or out of, or related to, the Chapter 11 Case, the Plan, or the Confirmation Order (except as provided in the Trust Agreement), including jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims;

(b)     Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is party to or with respect to which the Debtor or Reorganized Debtor may be liable, and hear, determine, and, if necessary, liquidate, any Claims arising therefrom;

(c)     Determine any and all motions, adversary proceedings, applications, contested matters, or other litigated matters pending on the Effective Date;

(d)     Ensure that Plan Distributions to holders of Allowed Claims are accomplished pursuant to the terms of the Plan;

(e)     Adjudicate any and all disputes arising from or relating to Plan Distributions;

(f)     Enter, implement, or enforce such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all contracts, instruments, releases, settlements (including the Wei Gan Settlement and any KCBI Settlements) and other agreements or documents created in connection with the Plan or the Confirmation Order;

(g)     Enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(h)     Issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i)     Modify the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(j)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code incurred prior to the Confirmation Date;

(k)     Hear and determine any rights, claims, or Causes of Action held or reserved by, or accruing to, the Debtor or the Reorganized Debtor pursuant to the Bankruptcy Code, the Confirmation Order, or, in the case of the Debtor, any other applicable law;

(l)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(m)    Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions contemplated thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing, or the effect of the Plan under any agreement to which the Debtor, the Reorganized Debtor, or any affiliate thereof are party;

(n)    Hear and determine any issue for which the Plan or a related document requires a Final Order of the Bankruptcy Court;

(o)    Issue such orders as may be necessary or appropriate to aid in execution of the Plan or to maintain the integrity of the Plan following consummation, to the extent authorized by section 1142 of the Bankruptcy Code;

(p)    Determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(q)    Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(r)    Enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(s)    Hear and determine all disputes involving the existence, scope, and nature of the discharges, releases, or injunctions granted under the Plan and the Bankruptcy Code;

(t)    Hear and determine all disputes involving or in any manner implicating the exculpation or indemnification provisions contained in the Plan;

(u)    Hear and determine any matters arising under or related to sections 1141 and 1145 of the Bankruptcy Code;

(v)    Recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

(w)    Enter an order of discharge, upon request of the Debtor or Reorganized Debtor, as applicable;

(x)    Enter a final decree closing the Chapter 11 Case; and

(y)     Hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.1     *Claims Allowed by the Plan.***

The Plan Supplement shall include a listing of all Claims to be deemed Allowed by the Plan on the Effective Date.

**13.2     *Payment of Statutory Fees.***

On the Effective Date, all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code shall be paid by the Debtor. Following the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtor and Reorganized Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**13.3     *Exemption from Securities Laws.***

To the maximum extent provided by section 1145(a) of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, or distribution of the Trust Interests, shall be exempt from, among other things, section 5 of the Securities Act, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including, without limitation, section 1145 of the Bankruptcy Code.

**13.4     *Exemption from Certain Transfer Taxes.***

Pursuant to section 1146(a) of the Bankruptcy Code, the transfer of title to or ownership of any of the Debtor's interests in any property; or the making or delivery of any instrument of transfer in connection with the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording

tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Without limiting the foregoing, any issuance, transfer, or exchange of a security or any making or delivery of an instrument of transfer pursuant to the Plan shall be exempt from the imposition and payment of any and all transfer taxes (including, without limitation, any and all stamp taxes or similar taxes and any interest, penalties, and addition to the tax that may be required to be paid in connection with the consummation of the Plan) pursuant to sections 106, 505(a), 1141, and 1146(a) of the Bankruptcy Code. Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

### 13.5    *Dissolution of Statutory Committees and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee(s) appointed in the Chapter 11 Case, including the Committee, shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case. The Reorganized Debtor shall not be responsible for paying any fees and expenses incurred after the Effective Date, if any, by the professionals retained by any such committee, other than for the reasonable fees and expenses for the services authorized to be provided pursuant to this Article 13.5.

### 13.6    *Substantial Consummation.*

On the Discharge Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.7    *Expedited Determination of Postpetition Taxes.*

The Reorganized Debtor shall be authorized to request an expedited determination under

section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtor for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

### 13.8 *Modification and Amendments.*

Subject to the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtor may alter, amend, or modify the Plan at any time prior to the Effective Date. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification complies with the requirements of this Article 13.8 and does not materially and adversely change the treatment of the Claim of such holder; *provided*, *however*, that any holders of Claims that were deemed to accept the Plan because such Claims were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims continue to be Unimpaired.

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### 13.9 *Additional Documents.*

On or before the Effective Date, the Debtor may enter into any agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or Reorganized Debtor, as applicable, and all holders of Claims receiving Plan Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 13.10 *Effectuating Documents and Further Transactions.*

On and after the Effective Date, the Reorganized Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan.

### 13.11  *Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into, and are a part of, the Plan as if set forth in full in the Plan, and any reference to the Plan shall mean the Plan and the Plan Supplement. Upon its filing, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the Bankruptcy Court's website at www.cacb.uscourts.gov, and at the website of the Voting Agent at https://dm.epiq11.com/YT1. The documents contained in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

### 13.12  *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 13.13  *Revocation or Withdrawal of the Plan.*

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Debtor takes such action, the Plan shall be deemed null and void in its entirety and of no force or effect, and any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption of executory contracts or unexpired leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void. In such event, nothing contained in the Plan shall (a) constitute or be deemed to be a waiver or release of any Claim against the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any Entity in further proceedings involving the Debtor; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

### 13.14  *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, at the request of the Debtor, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid

or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to the Plan; and (c) non-severable and mutually dependent.

### 13.15  *Solicitation.*

Upon entry of the Confirmation Order, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, section 1125(e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation. The Debtor, the Reorganized Debtor, and each of their respective employees, agents, representatives, advisors, attorneys, accountants, consultants, and professionals shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of any securities offered or sold under the Plan, and therefore, are not, and on account of such offer, issuance, sale, solicitation, or purchase shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of any securities offered or sold under the Plan.

### 13.16  *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the state of California, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those

agreements, in which case the governing law of such agreement shall control).

### 13.17  *Compliance with Tax Requirements.*

In connection with the Plan and all instruments issued in connection herewith and distributed hereunder, any Entity issuing any instruments or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Any Entity issuing any instruments or making any distribution under the Plan to a holder of an Allowed Claim has the right, but not the obligation, not to make a distribution until such holder has provided to such Entity the information necessary to comply with any withholding requirements of any such taxing authority, and any required withholdings (determined after taking into account all information provided by such holder pursuant to this Article 13.17) shall reduce the distribution to such holder.

### 13.18  *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

### 13.19  *Closing of Chapter 11 Case.*

The Reorganized Debtor shall, as promptly as practicable after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, Local Bankruptcy Rule 3022-1, and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

### 13.20  *Document Retention.*

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with his current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor without order of the Bankruptcy Court.

### 13.21  *Conflicts.*

In the event of any conflict between the terms and provisions in the Plan (without reference

to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control; *provided*, *however*, that in the event of a conflict between the Confirmation Order, on the one hand, and the Plan or the Plan Supplement, on the other hand, the Confirmation Order shall govern and control in all respects.

**13.22**  *Service of Documents.*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to:

the Debtor or the Reorganized Debtor, shall be served on:

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067
Attn: Richard M. Pachulski; Jeffrey W. Dulberg; Malhar S. Pagay
Email:  rpachulski@pszjlaw.com; jdulberg@pszjlaw.com; mpagay@pszjlaw.com

- and -

O'Melveny & Myers LLP
Times Square Tower
Seven Times Square
New York, New York 10036
Attn:   Suzanne Uhland; Diana Perez
Email: suhland@omm.com; dperez@omm.com

After the Effective Date, the Reorganized Debtor shall be authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed a renewed request to receive documents pursuant to Bankruptcy Rule 2002.

**13.23**  *Deemed Acts.*

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

**13.24**  *Waiver or Estoppel.*

Each holder of a Claim shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor or its counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

## SCHEDULE A

### Schedule of Retained Actions

1. **Case Title**: Han's San Jose Hospitality LLC v. Jia Yueting, et al.

   **Case Number**: Case No. 19 CV342187 (Consolidated with Han's San Jose Hospitality LLC v. Le Holdings (Beijing) Co., LTD, et al. Case No. 17CV317221)

   **Nature of the case**: Unlawful detainer/ alter ego

   **Court or agency**: Santa Clara Superior Court, 191 North 1st Street, San Jose, California, 95113

   **Status of the case**: Pending

4. **Case Title**: Shanghai Lan Cai Asset Management Co, Ltd v. Jia Yueting, FF Peak Holding Limited and FF Top Holding Ltd.

   **Case Number**: Case No. BVIHC (COM) 198/2018

   **Nature of Case**: Enforcement of arbitration award issued by the Beijing Arbitration Commission with freezing orders against the entire issued share capital of FF Peak Holding Limited and FF Top Holding Ltd.

   **Court or Agency**: Eastern Caribbean Supreme Court, Registry of the High Court, 2nd Floor, SAKAL Building, Wickham's Cay, Road Town Tortola VG1110

   **Status of Case**: Pending

5. **Case Title**: 0-Film Global (HK) Trading Ltd. and Nanchang 0-Film Photoelectric Technology Co., Ltd. v. Yue-Ting Jia

   **Case Number**: Case No. YC072617

   **Court or Agency**: Superior Court of the State of California, County of Los Angeles, Torrance Courthouse 825 Maple Ave., Torrance, CA 90503

   **Nature of the case**: Breach of contract

   **Status of Case**: Pending

6. **Case Title**: China CITIC Bank Co., Ltd. Head Office Sales Department v. Yueting Jia & Leshi Holdings (Beijing) Co., Ltd. & Beijing Fortune Times Real Estate Co., Ltd. & Beijing Baiding New Century Business Management Co., Ltd. & LeTV Information Technology (Beijing) Co., Ltd.

   **Case Number**: Case No. 2017 Jin Min Chu #86

   **Court Name**: Beijing High People's Court

   **Court Address**: No. 10, Jianguomen South Street, Chaoyang District, Beijing 100022

   **Nature**: Financial loan contract dispute

   **Status**: On appeal

7. **Case Title**: Ping An Bank Co., Ltd. Shenzhen Branch v. Yueting Jia & Leshi Holdings (Beijing) Co., Ltd. & Leshi Sports Culture Industry Development (Beijing) Co., Ltd.

   **Case Number**: 2018 Yue Min Chu #125

**Court Name**: Guangdong High People's Court

**Court Address**: No. 9, Yiheng Road, Yuancun, Tianhe District, Guangzhou, China 510655

**Nature**: Financial loan contract dispute

**Status**: Pending

8.    **Case Title**: BOE Technology (Hong Kong) Co., Ltd. v. Yueting Jia & LeTV Mobile Intelligent Information Technology (Beijing) Co., Ltd. & LeSai Mobile Technology (Beijing) Co., Ltd. & Leshi Holdings (Beijing) Co., Ltd.

**Case Number**: 2017 Jing Min Chu #54

**Court Name**: Beijing High People's Court, No. 10, Jianguomen South Street, Chaoyang District, Beijing, China 100022

**Nature**: Sale contract dispute

**Status**: Pending

9.    **Case Title**: Yizhuang International Holdings (Hong Kong) Co., Ltd. v. Yueting jia & Leshi Holdings (Beijing) Co., Ltd.

**Case Number**: Case No. 2018 Jing Min Chu #72

**Court Name**: Beijing High People's Court, No. 10, Jianguomen South Street, Chaoyang District, Beijing, China 100022

**Nature**: Guarantee contract dispute

**Status**: Pending

10.    **Case Title**: Beijing Century Ruike System Technology Co., Ltd. v. Yueting Jia & Leshi Sports Culture Industry Development (Beijing) Co., Ltd. & Leshi Holdings (Beijing) Co., Ltd.

**Case Number**: Case No. 2018 Jing 0108 Min Chu #51312

**Court Name**: Beijing Haidian District People's Court, 12 Danling Street, Haidian District, Beijing, China 100080

**Nature**: Sale contract dispute

**Status**: Pending

11.    **Case Title**: Jiangsu Red Earth Venture Capital Management Co., Ltd. v. Yueting Jia

**Case Number**: Unknown

**Court Name**: Ningbo Intermediate People's Court, Zhejiang Province, No. 746 Zhongxing Road, Jiangdong District, Ningbo, Zhejiang, China 315040

**Nature**: Contract dispute

**Status**: Pending

12.    **Case Title**: Gan Wei v. Yueting Jia

**Case Number**: Unknown

**Court Name**: Chengdu Jinjiang District People's Court, No. 90, Longzhou Road, Gongnongyuan Street, Jinjian District, Chengdu, Sichuan, China

**Nature**: Divorce proceeding

**Status**: Pending

## SCHEDULE B

### Schedule of Contracts and Leases to be Assumed Under the Plan

| | |
|---|---|
| 1. | **Contract/Lease**: Residential Lease for real property located at (1) 7 Marguerite Drive, Rancho Palos Verdes, CA 90275; (2) 11 Marguerite Drive, Rancho Palos Verdes, CA 90275; (3) 15 Marguerite Drive, Rancho Palos Verdes, CA 90275; (4) 19 Marguerite Drive, Rancho Palos Verdes, CA 90275; and (5) 91 Marguerite Drive, Rancho Palos Verdes, CA 90275<br><br>**Counterparty**: Ocean View Drive Inc., 7 Marguerite Drive, Rancho Palos Verdes, CA 90275 |
| 2. | **Contract/Lease**: Residential Sublease for (1) 7 Marguerite Drive, Rancho Palos Verdes, CA 90275; (2) 11 Marguerite Drive, Rancho Palos Verdes, CA 90275; (3) 15 Marguerite Drive, Rancho Palos Verdes, CA 90275; and (4) 19 Marguerite Drive, Rancho Palos Verdes, CA 90275<br><br>**Counterparty**: Warm Time Inc., 30037 Avenida Esplendida, Rancho Palos Verdes, CA 90275 |
| 3. | **Contract/Lease**: Agreement Regarding Services dated September 20, 2019<br><br>**Counterparty**: Xiangxiang Zuo |
| 4. | **Contract/Lease**: Agreement Regarding Services dated September 20, 2019<br><br>**Counterparty**: Jerry Wang |
| 5. | **Contract/Lease**: Agreement Regarding Services dated September 20, 2019<br><br>**Counterparty**: Mia Zhang |
| 6. | **Contract/Lease**: Agreement Regarding Services dated September 20, 2019<br><br>**Counterparty**: Luetian Sun |
| 7. | **Contract/Lease**: Agreement Regarding Services dated September 20, 2019<br><br>**Counterparty**: Shan He |
| 8. | **Contract/Lease**: Agreement Regarding Services dated September 20, 2019<br><br>**Counterparty**: Ruokun Jia |
| 9. | **Contract/Lease**: Agreement Regarding Services dated September 20, 2019<br><br>**Counterparty**: Chaoying Deng |
| 10. | **Contract/Lease**: Agreement Regarding Services dated September 20, 2019<br><br>**Counterparty**: Xinyu Zhang |
| 11. | **Contract/Lease**: Agreement Regarding Services dated September 20, 2019<br><br>**Counterparty**: Xiaoou Ma |
| 12. | **Contract/Lease**: Restructuring Agreement and Call Option dated December 31, 2018<br><br>**Counterparty**: Season Smart Limited, Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands |

## SCHEDULE C

**Schedule of Key China Business Individuals and KCBI Claimants**

| Key China Business Individuals | KCBI Claimants and Released Guarantees |
|---|---|
| Hong Liu<br>Peng Shi | Beijing Haidian Technology Financial Capital Holding Group Co., Ltd. ($41,958,041.96) |
| Yongqinag Yang | Huaxia Life Insurance Co., Ltd. ($55,944,055.94) |
| Yuemin Jia | 1. Wuhan Credit Loan Co., Ltd.($41,958,041.96)<br>2. Shenzhen Yingda Capital Management Co., Ltd. ($279,720,279.72)<br>3. Linfen investment group Co., Ltd. ($139,860,139.86)<br>4. Ping An Bank Co., Ltd. Beijing Branch ($173,846,153.85) |

1

## <u>SCHEDULE D</u>

2

### Schedule of Entities

3

4

5

6

7

8

9

10

11

12

13

14

15

16

1.  Atieva, Inc. D/B/A Lucid Motors, Inc.;
2.  BAIC Motor Vehicle Co. Ltd.;
3.  Blitz Technology Hong Kong Co. Limited;
4.  Blue Sea Legend LLC;
5.  Evergrande Health Industry Group;
6.  Hankey Capital LLC;
7.  Hengtian Zhongyan Investment Management Co., Ltd.;
8.  Innovation Era Holding Ltd.;
9.  Ki Lun Trading Ltd.;
10. Kin Kin (Hong Kong) Limited;
11. Lanfeng (HK) Holding Limited;
12. LeSoar Holdings Limited;
13. Liberal Faith Limited (BVI);
14. Lucid Motors, Inc.;
15. Ningbo Hangzhou Bay New District Lenuo Investment Management Co., Ltd.;
16. Ocean View Drive, Inc.;
17. Royod LLC;
18. Segomind, Inc.;
19. Shing Wai Trading Limited;
20. Shou Yi Lian Jie (Beijing) Technology Ltd. Co.;
21. Success Pyramid Ltd.;
22. Warm Time Inc.; and
23. Yi Jia Living Trust.

17

18

19

20

21

22

23

24

25

26

27

28

| Summary report: Litera® Change-Pro for Word 10.9.0.460 Document comparison done on 3/17/2020 8:16:13 PM | |
|---|---|
| **Style name:** OMM Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** YT_-_Second_Amended_Plan (filing version).DOCX | |
| **Modified DMS:** dm://OMM_US/77495069/5 | |
| **Changes:** | |
| Add | 231 |
| Delete | 218 |
| Move From | 14 |
| Move To | 14 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 478 |

**Exhibit B**

| Article(s) of the Plan | Summary of Changes to the Second Amended Plan[2] |
|---|---|
| Article 1.1 | • The definition of "Debt Claim Allocation Amount" was amended to clarify that the allocation amount mechanism is used solely for purposes of determining a holder's pro rata shares of Trust Interests. The Debtor also clarified that the Debt Claim Allocation Amount is the portion of an Allowed Debt Claim that constitutes outstanding principal together with any unpaid interest on the outstanding principal at the rate of 4%. Additionally, in response to discussions with creditors, the Debtor lowered the additional recovery that a KCBI Claimant may receive with respect to its Debt Claim Allocation Amount from 20% to 5%.<br><br>• The definition of "Debt Claim Distribution Amount" was amended to clarify that such amount is in relation to each Trust Distribution Date and that any Trust Distributions received by a holder prior to a Trust Distribution Date will be deducted from the Debt Claim Distribution Amount for purposes of allocating subsequent Trust Distributions.<br><br>• The definition of "Other Distributions" was clarified to include distributions that a holder of an Allowed Debt Claim or an Allowed China Secured Claim receives upon the disposition of any Seized China Assets. This change was made to clarify how Trust Distributions will be allocated to holders of Trust Interests. *See* below change in Article 6.2(i) of the Plan.<br><br>• In response to the Tentative Ruling, the defined term for the entity known as FF Intelligent Mobility Global Holdings Ltd. was changed from "FF Global" to "FF Intelligent" to avoid any confusion between FF Intelligent and FF Global Partners LLC. |
| Articles 4.3, 6.2(j), & 11.4(c) | In response to concerns raised by creditors, the Plan treatment for China Secured Claims was amended to provide that if a holder of an Allowed China Secured Claim is unable to liquidate the Collateral securing its claim by the initial Trust Distribution Date, the holder's China Secured Claim will be treated as a Debt Claim and the holder will be entitled to receive its pro rata distribution of Trust Interests in satisfaction of its claim. |
| Articles 4.4 & 6.2 | In response to concerns raised by creditors regarding how Trust Interests will be allocated, the Plan treatment for Debt Claims was amended to clarify that holders will receive their pro rata share of Trust Interests based on their Debt Claim Allocation Amount (outstanding principal + 4% interest). |

---

[2] Capitalized terms used in this chart shall have the meanings used in the Third Amended Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Article 5.4 | Article 5.4 of the Plan was deleted to make it clear that the Plan is not a "cramdown" plan under section 1129(b) of the Bankruptcy Code. |
|---|---|
| Article 6.2(i) | In response to concerns raised by creditors regarding how Trust Distributions will be allocated, the original affidavit that was provided in Article 11.4(c) of the Plan was split into two affidavits. The affidavit related to calculating distribution amounts is now called the "Trust Distribution Affidavit" and will require holders of Trust Interests to identify any Other Distributions that they receive prior to the applicable Trust Distribution Date (this requirement was previously in Article 11.4(c) of the Plan). By including amounts received from Other Distributions in the Trust Distribution Affidavit, the Trustee will be able to allocate pro rata distributions to holders of Trust Interests based on each holder's Debt Claim Distribution Amount (which takes into account any Other Distributions or Trust Distributions received by such holder prior to the Trust Distribution Date). The Debtor also clarified that if a holder of a Trust Interest fails to submit the Trust Distribution Affidavit, its pro rata distribution will be reserved until its submits the affidavit and will be forfeited (and will revert to the Trust for the ratable benefit of holders of Allowed Debt Claims and the Reorganized Debtor pursuant to the Distribution Trust Waterfall) upon termination or dissolution of the Trust if the holder never submits the affidavit. |
| Article 6.6(b) | In response to further negotiations with the Debtor, Wei Gan has agreed to reduce her claim recovery by $250 million. |
| Article 7.10 | The Debtor clarified that Other Distributions received by a holder of an Allowed Debt Claim in excess of the amount of its Allowed Debt Claim should be reduced by any Plan Distributions received by such holder. |
| Article 11.4(c) | In response to further negotiations with creditors, the Debtor has agreed to increase the threshold for his full release by holders of Allowed Debt Claims to provide that such release will take effect upon the earlier of a holder receiving a (a) 40% recovery of their Debt Claim Allocation Amount from Trust Distributions or (b) 100% recovery of their Debt Claim Allocation Amount from Other Distributions and Trust Distributions.<br><br>As discussed above, the Other Distribution certification contained in Article 11.4(c) was moved to Article 6.2(i) of the Plan as a separate requirement tied to the Trust Distribution Date. In addition, the Debtor has changed the deadline to submit the Article 11.4(c) affidavit to ninety days after the allowance of the respective claim so that the Debtor does not need to wait until the first Trust Distribution Date to receive confirmation that creditors are complying with the Standstill Period and the Debtor List Covenant. The Debtor also clarified that if a creditor fails to submit the Article 11.4(c) affidavit, falsifies the affidavit, or |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | breaches the affidavit, such creditor's Trust Interests will be forfeited and will revert to the Trust for the ratable benefit of holders of Allowed Debt Claims and the Reorganized Debtor pursuant to the Distribution Trust Waterfall. |
| | In response to creditor concerns, the Debtor has clarified the release of Allowed China Secured Claims by providing that Allowed China Secured Claims will only be deemed to grant a full release of the Debtor if such China Secured Claim is satisfied in full prior to the initial Trust Distribution Date. Until such time, the holder of a China Secured Claim will be subject to the Standstill Period and the China Debtor List Covenant. |
| Schedule B | Amended to include the Restructuring Agreement and Call Option dated December 31, 2018, among other parties, Smart King (n/k/a FF Global), the Debtor, and Season Smart. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF FILING OF BLACKLINE VERSION OF DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 17, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:

On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 17, 2020,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA HAND DELIVERY**
The Honorable Vincent P. Zurzolo
United States Bankruptcy Court
Central District of California
255 East Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA  90012

DANIEL J. SAVAL
Email:  daniel.saval@kobrekim.com

DONG NI (DONNA) XU
Email: donna.xu@kobrekim.com

Luke A. Barefoot
Email:  lbarefoot@cgsh.com

Thomas S. Kessler
Email:  tkessler@cgsh.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 17, 2020 | Mary de Leon | /s/ *Mary de Leon* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:328403.1 46353/002

**F 9013-3.1.PROOF.SERVICE**

**SERVICE INFORMATION FOR CASE NO. 19-bk-24804-VZ**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jerrold L Bregman    ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Richard H Golubow    rgolubow@wghlawyers.com,
  pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan    blogan@omm.com
- Robert S Marticello    Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- David W. Meadows    david@davidwmeadowslaw.com
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince    cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Victor A Sahn    vsahn@sulmeyerlaw.com,
  pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Claire K Wu    ckwu@sulmeyerlaw.com,
  mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- Emily Young    pacerteam@gardencitygroup.com,
  rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- David B Zolkin    dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.