| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Richard M. Pachulski (CA Bar No. 90073)<br>Jeffrey W. Dulberg (CA Bar No. 181200)<br>Malhar S. Pagay (CA Bar No. 189289)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Boulevard, 13th Floor<br>Los Angeles, CA  90067<br>Telephone:  310/277-6910<br>Facsimile:  310/201-0760<br>Email: rpachulski@pszjlaw.com<br>        jdulberg@pszjlaw.com<br>        mpagay@pszjlaw.com<br><br>☒ *Attorney for:* Debtor | FOR COURT USE ONLY |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>YUETING JIA,<br><br><div align="center">Debtor(s).</div> | CASE NO.: 2:19-bk-24804-VZ<br><br>CHAPTER: 11<br><br>### NOTICE OF OBJECTION TO CLAIM<br><br>DATE:  May 7, 2020<br>TIME:   1:30 p.m.<br>COURTROOM: 1368<br>PLACE: 255 East Temple Street<br>         Los Angeles, CA  90012 |

1. TO *(specify claimant and claimant's counsel, if any)*:  Tao Yun Capital Co., Ltd. (a.k.a. TW Group Co., Ltd.) and Jie Yeng

2. NOTICE IS HEREBY GIVEN that the undersigned has filed an objection to your Proof of Claim (Claim No. 53) filed in the above referenced case. The Objection to Claim seeks to alter your rights by disallowing, reducing or modifying the claim based upon the grounds set forth in the objection, a copy of which is attached hereto and served herewith.

3. **Deadline for Opposition Papers**: You must file and serve a response to the Objection to Claim not later than 14 days prior to the hearing date set forth above.

   **IF YOU FAIL TO TIMELY RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**


Date:   April 3, 2020

Date Notice Mailed: April 3, 2020

PACHULSKI STANG ZIEHL & JONES LLP
Printed name of law firm

*/s/ Malhar S. Pagay*
Signature

Malhar S. Pagay
Printed name of attorney for objector

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 1                         **F 3007-1.1.NOTICE.OBJ.CLAIM**
DOCS_LA:328812.1 46353/002

1   Richard M. Pachulski (CA Bar No. 90073)
    Jeffrey W. Dulberg (CA Bar No. 181200)
2   Malhar S. Pagay (CA Bar No. 189289)
    PACHULSKI STANG ZIEHL & JONES LLP
3   10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA  90067
4   Telephone: 310/277-6910
    Facsimile: 310/201-0760
5   Email:    rpachulski@pszjlaw.com
              jdulberg@pszjlaw.com
6             mpagay@pszjlaw.com

7
    Attorneys for Debtor and Debtor in Possession
8

9               UNITED STATES BANKRUPTCY COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                     LOS ANGELES DIVISION

12  In re:                              Case No.: 2:19-bk-24804-VZ

13  YUETING JIA,[1]                     Chapter 11

14                      Debtor.         **DEBTOR'S NOTICE OF OBJECTION
                                        AND OBJECTION TO CLAIM 53 FILED
15                                      BY TAO YUN CAPITAL CO, LTD. aka
                                        TWC GROUP CO, LTD.;
16                                      MEMORANDUM OF POINTS AND
                                        AUTHORITIES AND DECLARATIONS
17                                      OF YUETING JIA AND SHAN HE IN
                                        SUPPORT THEREOF**
18

19                                      Date:      May 7, 2020
                                        Time:      1:30 p.m.
20                                      Place:     Courtroom 1368
                                                   Roybal Federal Building
21                                                 255 E. Temple Street
                                                   Los Angeles, California 90012
22

23                                      Judge:     Hon. Vincent P. Zurzolo

24      **PLEASE TAKE NOTICE** that, on May 7, 2020, beginning at 1:30 p.m. (Pacific Time), or

25  as soon thereafter as counsel  may be heard before the Hon. Vincent P. Zurzolo, in Courtroom 1368

26  of the Edward R. Roybal Federal Building and Courthouse, located at 255 E. Temple Street, Los

27

28  [1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is
    91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

DOCS_LA:328750.2 46353/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Angeles, California 90012, pursuant to the *Order (I) Approving the Fourth Amended Disclosure*

2  *Statement; (II) Approving the Voting Procedures and Tabulation Procedures; (III) Setting the Date*

3  *and Time for the Confirmation Hearing and Related Deadlines; (IV) Waiving Certain Local Rules*

4  *and Procedures Related to the Timing and Approval of the Fourth Amended Disclosure Statement*

5  *and Confirmation of the Third Amended Plan; and (V) Granting Related Relief* [Docket No. 485]

6  (the "Disclosure Statement Order"), which provides, in pertinent part, that if the Debtor has served

7  an objection or request for estimation as to a claim by April 2, 2020, such claim shall be temporarily

8  disallowed for voting purposes (and not for purposes of allowance or distribution), except to the

9  extent and in the manner as may be set forth in such objection or request, or as ordered by the Court

10  before the voting deadline, i.e., April 30, 2020 at 4:00 p.m. (Beijing Time),[2] Yueting Jia, the debtor

11  and debtor in possession herein (the "Debtor" or "YT"), will object (the "Objection"), to claim

12  number 53 (the "Claim"), filed by Tao Yun Capital Co., Ltd. aka TWC Group Co, Ltd. (the

13  "Claimant"), in accordance with a share transfer agreement dated June 30, 2017 (the "Share Transfer

14  Agreement") entered into by and among the Debtor, Meng Wu, LESHI Holding (Beijing) Ltd. Co.

15  ("LESHI"), and the Claimant, pursuant to which Meng Wu agreed to transfer equity interests of a

16  third party to the Claimant in exchange for the cancellation of debt in the amount of $97.91 million[3]

17  that LESHI owed under a certain loan agreement.  Pursuant to the Share Transfer Agreement, the

18  Debtor's liability to the Claimant has been canceled.

19      A true and correct copy of the Claim is attached to the *Notice of Objection to Claim*, which

20  has been served on Claimant.  The Objection seeks to disallow the Claim in connection with voting

21  on the *Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*

22  [Docket No. 464] and does not impact the ultimate allowance of the Claim or distributions the

23  Claimant may be entitled to receive on account of the Claim.

24      **PLEASE TAKE FURTHER NOTICE** that the Objection has been served upon Claimant

25  and all parties entitled thereto and is based upon the supporting Memorandum of Points and

26

27  ――――――――――――――
[2] Disclosure Statement Order, 6 at ¶ 17(e).
[3] This amount has been converted from the $692 million Chinese Yuan to US Dollars using 7.0676, the closing rate
28  published by the Wall Street Journal as of October 14, 2019, the Petition Date. *See* https://www.wsj.com/market-
data/quotes/fx/USDCNY/historical prices<https://www.wsj.com/market data/quotes/fx/USDCNY/historical-prices

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Authorities and Declarations of Yueting Jia and Shan He, the statements, arguments and

2    representations of counsel who appear at the hearing regarding the Objection, the files and records in

3    the above-captioned case, any evidence properly before the court prior to or at the hearing regarding

4    the Objection and all matters of which the court may properly take judicial notice.

5         **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f),

6    responses to the Objection must be filed with the Court and served upon the Debtor's counsel at the

7    address in the upper left-hand corner of this Objection no later than fourteen (14) days prior to the

8    hearing date.  Responses must contain a written statement of all reasons the Objection is opposed

9    and must include declarations and copies of all documentary evidence on which the responding party

10    intends to rely.  Responses must be filed either electronically or at the following location:

> United States Bankruptcy Court
> Attention:  Clerk's Office
> 255 E. Temple Street
> Los Angeles, CA 90012

14         **IF YOU DO NOT OPPOSE THE OBJECTION YOU DO NOT NEED TO FILE ANY**

15    **PAPERS, SIGN ANY FURTHER AGREEMENTS OR TAKE ANY FURTHER ACTION.**

16         **PLEASE TAKE FURTHER NOTICE** that if a response is not timely filed and served, the

17    Debtor will request that the court grant the relief requested in the Objection without further notice or

18    hearing.

19         **PLEASE TAKE FURTHER NOTICE** that if a response is timely filed and served upon the

20    Debtor's counsel, the Court, in its discretion, may treat the initial hearing as a status conference if it

21    determines that the Objection involves disputed factual issues or will require presentation of

22    substantial evidence or argument.

23         **WHEREFORE,** the Debtor respectfully requests that the Court enter an order (i) sustaining

24    the Objection; (ii) disallowing the Claim in its entirety for voting purposes; and (iii) granting such

25    other and further relief as may appropriate under the circumstances.

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Dated:    April 2, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

                                By    */s/ Malhar S. Pagay*
                                      Richard M. Pachulski
                                      Jeffrey W. Dulberg
                                      Malhar S. Pagay

                                      Counsel for Debtor and Debtor in
                                      Possession

4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## <u>JURISDICTION</u>

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 102, 105 and 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), and Rules 3007 and 3018(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## II.

## <u>BACKGROUND</u>

### A.    <u>Commencement of the Chapter 11 Case</u>

On October 14, 2019 (the "<u>Petition Date</u>"), the Debtor commenced this case (the "<u>Chapter 11 Case</u>") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Delaware Bankruptcy Court</u>"). The Debtor continues in possession of his property and manages his affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On October 25, 2019, the U.S. Trustee appointed the Official Committee of Unsecured Creditors  pursuant to section 1102(a)(1) of the Bankruptcy Code (the "<u>Committee</u>") [Docket No. 45]. The Committee consists of the following members: (i) Ping An Bank., Ltd. Beijing Branch; (ii) China Minsheng Trust Co., Ltd; (iii) Shanghai Leyu Chuangye Investment Management Center LP; (iv) Jiangyin Hailan Investment Holding Co., Ltd; and (v) Shanghai Qichengyueming Investment Partnership Enterprise.

On November 13, 2019, the Court entered an order setting January 24, 2020, as the general deadline (the "<u>Bar Date</u>") for the filing of proofs of claim or proofs of interest against the Debtor's estate. In accordance with the Court's Order establishing the Bar Date, notice of the Bar Date was given by mail to the Debtors' creditors and interest holders.

On December 18, 2019, Judge Karen B. Owens of the Delaware Bankruptcy Court transferred the Chapter 11 Case to this Court.

**B.    Approval of the Debtor's Disclosure Statement**

On March 20, 2020, the Court entered the Disclosure Statement Order, pursuant to which the Court approved the Debtor's *Fourth Amended Disclosure Statement with Respect to Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 465] in respect of the *Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 464] (the "<u>Plan</u>"), and granted other relief.

The Disclosure Statement Order provides, in pertinent part, that if the Debtor has served an objection or request for estimation as to a claim by April 2, 2020, such claim shall be temporarily disallowed for voting purposes and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the voting deadline, i.e., April 30, 2020 at 4:00 p.m. (Beijing Time).  Disclosure Statement Order, 6 at ¶ 17(e).

**C.    The Claim**

Tao Yun Capital Co. Ltd. ("<u>Tao Yun</u>") (*a.k.a.* TWC Group Co., Ltd), Beijing Lan Capital Investment Fund Management, and Shenzhen Jincheng Commercial Factoring Co Ltd. (each a "<u>TWC Claimant</u>" and collectively, the "<u>TWC Claimants</u>") are related entities under common control of an individual. Such common control is evidenced by the fact that the same individual by the name of Jie Feng filed proofs of claim on behalf of all of the TWC Claimants (## 53, 54, 56). The proofs of claim at issue indicate that Feng is a project manager at TWC Group Co., Ltd.

To substantiate their claims, each of the TWC Claimants, including the Claimant, attached to their proofs of claim documents evincing obligations owed by LESHI Holding (Beijing) Ltd. Co. ("<u>LESHI</u>") which the Debtor personally guaranteed.

Pursuant to section 2.02 of the Share Transfer Agreement, attached hereto as **Exhibit "A,"** entered into by and among the Debtor, Meng Wu, LESHI, and Tao Yun, Meng Wu agreed to transfer equity interests of a third party to Tao Yun in exchange of a cancellation of debt in the amount of $97.91 million[4] that LESHI or its related companies owed under the Loan Agreement. The provision states, in part, in English:

---

[4] This amount has been converted from the $692 million Chinese Yuan to US Dollars using 7.0676, the closing exchange rate  published by the Wall Street Journal as of October 14, 2019, the Petition Date. *See* https://www.wsj.com/market-data/quotes/fx/USDCNY/historical prices<https://www.wsj.com/market data/quotes/fx/USDCNY/historical-prices

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(b) The second part of the Transaction Consideration is in the form of credit deduction, **Taoyun Capital and its related parties** and the Actual Controller of LeEco and the LeEco Related Entities **agree to deduct the consideration for the Transaction in the amount of RMB 692 million** using the claims contained in the package loans totaled RMB 692 million yuan. After this Agreement is signed and becomes effective, the above claims are deemed to have been deducted.

(c) The Transferor and the Actual Controller of LeEco hereby clarify and confirm that after the completion of the above two parts, the Transferee shall be deemed to have paid the full consideration for the Transaction.

(Emphasis added). Attached hereto as **Exhibit "B"** is an English translation of the Share Transfer Agreement.

## III.

## ARGUMENT

### A.    Procedural Requirements for Objections to Claims

Bankruptcy Rule 3007 governs the procedure for objections to claims. It provides as follows: "An objection to an allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant . . . at least thirty days prior to the hearing." Fed. R. Bankr. P. 3007.

Pursuant to Bankruptcy Rule 3007, a copy of the Objection will be mailed to Claimants at the addresses provided by Claimants in the Claims, and, where available and if different from the address provided on the proof of claim, on each Claimant's address registered with the National Enterprise Credit Information Publicity System (http://www.gsxt.gov.cn/index.html), a government-run, national, enterprise credit inquiry system in the People's Republic of China, at least thirty days prior to the hearing date for consideration of the Objection. Accordingly, by the time of the hearing hereon, the Trustee will have complied with Bankruptcy Rule 3007.

### B.    The Court Must Determine the Allowance of a Claim Subject to Objection

With certain exceptions, section 502(b) of the Bankruptcy Code requires, in relevant part, that if a party in interest objects to a claim, "the Court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    petition, and shall allow such claim in such amount, except to the extent that -- (1) such claim is

2    unenforceable against the debtor and property of the debtor, under any agreement or applicable law

3    for a reason other than because such claim is contingent or unmatured …."

4    **C.    Burden of Proof**

5         All allegations set forth in a properly filed proof of claim are taken as true and, if the

6    allegations set forth all facts necessary to establish a claim and are not self-contradictory, the proof

7    of claim constitutes *prima facie* evidence of the validity and amount of the claim.  11 U.S.C.

8    § 502(a); Fed. R. Bankr. P. 3001(f).  However, a claimant must attach copies of writings upon which

9    claims are based in order to carry its burden of establishing a *prima facie* case against the debtor.

10    *Hardin v. Gianni (In re King Investments Inc.)*, 219 B.R. 848, 858 (B.A.P. 9th Cir. 1998).  Further, a

11    claim should not be allowed if that claim is unenforceable against the debtor and property of the

12    debtor, under any agreement or applicable law.  11 U.S.C. § 502(b)(1).

13         Once the objector raises "facts tending to defeat the claim by probative force equal to that of

14    the allegations of the proofs of claim themselves," *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623

15    (9th Cir. 1991), then "the burden reverts to the claimant to prove the validity of the claim by a

16    preponderance of the evidence." *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated*

17    *Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996).

18    "[T]he ultimate burden of persuasion is always on the claimant."  *Holm*, 931 F.2d at 623.  In

19    considering an objection to a claim, a bankruptcy court may take judicial notice of the underlying

20    records in a bankruptcy case.  *O'Rourke v. Seaboard Surety Co., (In re ER Fergert, Inc.)*, 887 F.2d

21    955, 957-958 (9th Cir. 1998).

22    **D.    The  Claim Should Be Disallowed for Plan Voting Purposes**

23         Courts recognize that Bankruptcy Rule 3018(a) permits a party in interest to seek to disallow

24    a claim for voting purposes. Ultimately, the determination of whether to temporarily allow a claim

25    for voting purposes lies within the discretion of the bankruptcy court.  See *Armstrong v. Rushton (In*

26    *re Armstrong)*, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003) ("There is no guidance in the Bankruptcy

27    Code to courts as to determine whether to permit the temporary allowance of a claim; it is left to the

28    court's discretion.").  Indeed, courts have broad authority to determine whether to allow or disallow

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   a claim for purposes of voting under Bankruptcy Rule 3018(a). *See, e.g., In re Mangia Pizza Invs.,*

2   *L.P.,* 480 B.R. 669, 679 (Banker. W.D. Tex. 2012); *In re Zolner*, 174 B.R. 629, 633 (Bankr. N.D. Ill.

3   1994) (noting that a court must exercise its discretion to allow or disallow a claim under Bankruptcy

4   Rule 3018(a) based on reasoned analysis); *In re Goldstein,* 114 B.R. 430, 433 (Bankr. E.D. Pa.

5   1990); Collier on Bankr. ¶ 9-3018[5] (16th ed. rev. 2012) ("The court, however, regardless of the

6   circumstances, has the discretion to allow or disallow all or part of the claim for voting purposes.").

7         The $97.91 million in cancellation of LESHI's debt for which the Debtor personally

8   guaranteed exceeds the $90.43 million aggregate principal amount asserted against the Debtor by the

9   TWC Claimants as indicated on claim numbers 53, 54 and 56. As the debt for which the Debtor

10   guaranteed was canceled pursuant to the Share Transfer Agreement, no interest should have accrued

11   from the time the underlying debt arose. The TWC Claimants' debt, guaranteed by the Debtor, has

12   been extinguished, thereby eliminating the Debtor's guarantee liability.   Therefore, the Claim

13   should be disallowed.

<div align="center">

**IV.**

**GENERAL RESERVATION OF RIGHTS**

</div>

16         The Debtor expressly reserves the right to amend, modify or supplement this Objection, and

17   to file additional, other, or further objections to any proofs of claim filed in this Chapter 11 Case,

18   including, without limitation, objections as to the amounts asserted therein, or any other claims (filed

19   or not) against the Debtor, regardless of whether such claims are subject to this Objection.  Should

20   one or more of the grounds of objection stated in this Objection be denied, the Debtor reserves his

21   rights to object on other stated grounds or on any other grounds he discovers during the pendency of

22   this Chapter 11 Case.  In addition, the Debtor reserves the right to file counterclaims against the

23   holders of any such claims.

<div align="center">

**V.**

**NOTICE**

</div>

26         The Debtor will serve copies of this Objection on:  (a) the Claimant, (b) the Office of the

27   United States Trustee, (c) counsel to the Committee, and (d) all parties who have requested notices

28   in this Chapter 11 Case pursuant to Bankruptcy Rule 2002.

<div align="center">

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

</div>

## VI.

### <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the

relief requested herein and granting the Debtor such other and further relief as is just and proper.

Dated:    April 2, 2020                    PACHULSKI STANG ZIEHL & JONES LLP


                                           <u>*/s/ Malhar S. Pagay*</u>
                                           Richard M. Pachulski
                                           Jeffrey W. Dulberg
                                           Malhar S. Pagay

                                           *Attorneys for Debtor and Debtor in Possession*

### DECLARATION OF YUETING JIA

I, Yueting Jia, debtor herein, hereby declare that the following is true to the best of my knowledge, information and belief:

1.    I submit this declaration (the "Declaration") in support of the *Objection to Claim 53 Filed by Tao Yun Capital Co, Ltd. aka TWC Group Co, Ltd.* (the "Objection")[5]. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein.

2.    Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of books and records, relevant documents and other information prepared or collected by my employees, advisors and representatives, or my opinion based on my experience. In making my statements based on my review of books and records, relevant documents and other information prepared or collected by my professionals, advisors and employees, I have relied upon these professionals, advisors and employees accurately recoding, preparing or collecting such documentation and other information.

3.    I am not fluent in English. Accordingly, in the ordinary course of my business and personal affairs that require me to communicate in English either orally or in writing, I employ interpreters/translators who are fluent in both English and Chinese. I am utilizing such interpreters/translators in connection with matters that arise in connection with my Chapter 11 Case and intend to continue to do so. I have reviewed the Objection and Declaration, as necessary, with the assistance of such interpreters/translators.

4.    Upon information and belief, Tao Yun Capital Co. Ltd. ("Tao Yun") (*a.k.a.* TWC Group Co., Ltd), Beijing Lan Capital Investment Fund Management, and Shenzhen Jincheng Commercial Factoring Co Ltd. (each a "TWC Claimant" and collectively, the "TWC Claimants") are related entities under common control of an individual. Such common control is evidenced by the fact that the same individual by the name of Jie Feng filed proofs of claim on behalf of all of the

---

[5] Capitalized terms not defined in this declaration shall have the same meaning ascribed to them as set forth in the Objection.

TWC Claimants (## 53, 54, 56). The proofs of claim at issue indicate that Feng is a project manager at TWC Group Co., Ltd.

5.  To substantiate their claims, each of the TWC Claimants, including the Claimant, attached to their proofs of claim documents evincing obligations owed by LESHI Holding (Beijing) Ltd. Co. ("LESHI"), which I guaranteed.

6.  Pursuant to section 2.02 of the Share Transfer Agreement, attached hereto as **Exhibit "A,"** entered into by and among me, Meng Wu, LESHI, and Tao Yun, Meng Wu agreed to transfer equity interests of a third party to Tao Yun in exchange of a cancellation of debt in the amount of $97.91 million[6] that LESHI or its related companies owed under the Loan Agreement.

7.  Attached hereto as **Exhibit "B"** is an English translation of the Share Transfer Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of April, 2020, at Gardena, California.

_____
YUETING JIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[6] This amount has been converted from the $692 million Chinese Yuan to US Dollars using 7.0676, the closing exchange rate published by the Wall Street Journal as of October 14, 2019, the Petition Date. *See* https://www.wsj.com/market-data/quotes/fx/USDCNY/historical prices<https://www.wsj.com/market data/quotes/fx/USDCNY/historical-prices

## DECLARATION OF SHAN HE

I, Shan He, declare as follows:

1.      I am a Chinese translator, simultaneous interpreter and localization project manager employed since April 2017 by (a) Yueting Jia, the debtor and debtor in possession (the "Debtor"), that has filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above-captioned bankruptcy case (the "Chapter 11 Case"), and (b) Faraday Future ("FF"), an entity in which the Debtor holds an indirect interest.

2.      I am a native speaker of Chinese (Mandarin) and maintain full professional fluency in English.  I hold a Bachelor of Science degree in English from Beijing Language and Culture University and a Master of Arts in Translation and Interpretation (Chinese – English) degree from the Monterey Institute of International Studies ("MIIS").  I am certified in Simultaneous and Consecutive Interpretation between English and Chinese by MIIS.  I currently provide translation services for the Debtor and his General Counsel.  Prior to my work with the Debtor and FF, I have provided interpretation and translation services for a variety of organizations, including the United Nations Institute for Training & Research (UNITAR), Syntes Language Group, and the Austrian Embassy.

3.      The Debtor is not fluent in English.  Accordingly, in the ordinary course of his business and personal affairs that require him to communicate in English either orally or in writing, he employs interpreters/translators like me who are fluent in both English and Chinese.

4.      I am in regular communication with the Debtor's professionals, including legal counsel.

5.      At the direction of the Debtor, I have reviewed that certain share transfer agreement dated June 30, 2017 (the "Share Transfer Agreement"), entered into by and among the debtor, Meng Wu, LESHI, and Tao Yun, attached hereto as **Exhibit "A"** and **Exhibit "B,"** an English translation of the Share Transfer Agreement.

6.      To the best of my knowledge, the English translation accurately reflects the contents and meaning of the original Share Transfer Agreement.

13

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3    Executed on this __2nd__ day of April, 2020, at __Long Beach__, California.

4

5    _Shan He_

6    _____
     Shan He

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

吴孟

与

上海哲蕴商务咨询合伙企业（有限合伙）

关于

北京东方车云信息技术有限公司



# 股权转让协议

2017 年 6 月 30 日

# 北京东方车云信息技术有限公司

# 股权转让协议

本《股权转让协议》（以下称为 **"本协议"**）由以下各方（单称为 **"一方"**，合称为 **"各方"**）于 2017 年 6 月 30 日在中国北京市东城区签署：

**受让方：上海哲蕴商务咨询合伙企业（有限合伙）（"哲蕴"）**

住所地：上海市浦东新区周市路 416 号 4 层

**转让方：吴孟**

身份证号：14273319730105007x

**标的公司/公司：北京东方车云信息技术有限公司**

住所地：北京市丰台区南四环西路 188 号十六区 1 号楼七层-1(园区)

**一揽子借款之债务方：乐视控股（北京）有限公司（"乐视控股"）**

住所地：北京市朝阳区姚家园路 105 号 3 号楼 10 层 1102

**一揽子借款之债权方：韬蕴资本集团有限公司（"韬蕴资本"）**

住所地：

**乐视实控人：贾跃亭**

身份证号：

鉴于：

　　（1）北京东方车云信息技术有限公司（"**标的公司**"）是一家依据中国法律成立的且有效存续的有限责任公司，法定代表人为彭钢，成立日期为2010年5月21日，截止本协议签署日其注册资本金为1,100万元人民币，所有股东均已全部实缴出资完毕，标的公司及Easy Go Inc.（Cayman）（"**Easy Go**"）共同作为提供预约用车服务的电子商务平台易到用车（"**易到集团**"）的唯一知识产权持有方和运营实体。

　　（2）吴孟（"**转让方**"），中国公民，系标的公司的控股股东及乐视控股关联方，合法持有标的公司66.67%的股权。

　　（3）上海哲蕴商务咨询合伙企业（有限合伙）（"**受让方**"或"**哲蕴**"）系一家依据中国法律合法成立且有效存续的有限合伙企业。

　　（4）乐视控股（北京）有限公司（"**乐视控股**"）是一家依据中国法律成立的且有效存续的有限责任公司，乐视控股作为本协议第2.02条（b）款所述一揽子借款之债务方。

　　（5）贾跃亭，作为乐视控股及其他相关主体实际控制人（"**乐视实控人**"），直接或间接控制包括但不限于，乐视控股（北京）有限公司、乐视移动智能信息技术（北京）有限公司、乐视体育产业发展（北京）有限公司、乐乐互动音乐文化发展（北京）有限公司、乐视音乐文化产业发展（北京）有限公司，北京百瑞文化传媒有限公司，以及Lucky Clover（以上乐视实控人直接或间接控制的上述公司统称"**乐视相关主体**"）。

　　（6）韬蕴资本集团有限公司（"**韬蕴资本**"），是一家依据中国法律成立的且有效存续的有限责任公司，法定代表人为温晓东。

　　（7）转让方拟按照本协议的条款和条件将其持有的标的公司66.67%的股权（"**标的股权**"）转让给受让方，同时乐视实控人应促使Easy Go的控股股东Lucky Clover Limited（"**Lucky Clover**"）将其持有的Easy Go 66.67%的股权（"**Easy Go股权**"）转让给韬蕴资本指定境外关联方，并另行签署相应境外股权转让协议。

　　（8）韬蕴资本及其关联方与乐视实控人、乐视相关主体之间就一揽子借款（"**一揽子借款**"）的部分或全部债权中用于抵扣标的股权及Easy Go股权交易对价（合称"**本次交易**"）已达成共识。

　有鉴于此，各方经友好协商，本着平等互利的原则，根据《中华人民共和国合同法》、《中华人民共和国公司法》等相关法律法规，就上述股权转让及一揽子借款中相关债权作为本协议项下本次交易交易对价的支付等事宜，订立本协议并拟定如下条款，以资共同遵守。


## 第1条 股权转让及受让


**第1.01款 易到集团估值**

在本次交易前，易到集团估值截止本协议签署日转让方、受让方、韬蕴资本、乐视实控人、乐视相关主体同意按照 6.6 亿元美元计（1 美元兑 6.80 元人民币汇率换算合计为 44.88 亿元人民币），但以本协议签署后受让方完成本协议第 1.02 款（b）条所述尽职调查且不存在足以影响本次交易的重大不利事件为前提。

### 第1.02款 交易对价、尽职调查及交易对价调整

(a)    交易对价：

本次交易转让股权为转让方合法持有的标的公司 66.67%的股权（**"标的股权"**）及 Easy Go 的控股股东 Lucky Clover 合法持有的 Easy Go 66.67%的股权（**"Easy Go 股权"**），受让方同意以 4.4 亿美元（1 美元兑 6.80 元人民币汇率换算合计为 29.92 亿元人民币）的总对价（**"交易对价"**）进行收购，其中本次交易完成后标的股权由受让方持有，Easy Go 股权由韬蕴资本指定境外关联方持有。但本协议签署后将由受让方完成独立的尽职调查，且本协议的生效以不存在足以对本次交易产生重大不利影响为前提。

(b)    尽职调查：

在本协议签署后，受让方将对易到集团进行全面的法律及财务尽职调查（**"尽职调查"**），转让方、标的公司、乐视实控人保证对尽职调查提供其所需的相应材料和必要协助，其中应包括易到集团未来 3 年的财务预测数据。

(c)    对易到集团估值和交易对价的调整：

截止本协议签署日，转让方、标的公司、乐视实控人保证已充分披露的易到集团总负债金额应不超过 23 亿元人民币，如易到集团存有超过 23 亿元人民币的其他未清偿债务的，包括但不限于尚未清偿的银行借款、民间借款、其他欠款或任何或有债务的（合称 **"超额未清偿负债"**）的，将全部由转让方、乐视控股和乐视实控人承担连带清偿责任。届时将根据专业中介机构的建议，受让方可就易到集团估值、标的股权及 Easy Go 股权交易对价进行相应调整，并可从受让方支付的交易对价中扣减相应价款，或向相关连带责任人追偿。

### 第2条 交割

### 第2.01款 交割时间及地点

(a)    各方应于本协议文首所述日期在中国北京市东城区签署本协议。

(b)    本协议签署生效后四十五个工作日内，完成全部转让标的股权的工商变更登记。

(c)    本协议签署生效后，在满足本协议约定的各项条件的前提下，受让方应按本协议第 2.02 款-2.03 款约定日期及方式进行债权债务的抵消及向标的公司进行付款（**"付款"**）。

### 第2.02款  交易对价的抵扣安排

本次交易应为承债式收购，交易对价分为两部分：

(a)    第一部分交易对价为债务承担部分，受让方同意承担的易到集团总负债金额不超过 23 亿元人民币。在办理完毕标的股权及 Easy Go 股权转让的工商变更登记后，则视为受让方已承担该部分债务。

(b)    第二部分交易对价为债权抵扣部分，韬蕴资本及其关联方与乐视实控人、乐视相关主体之间就一揽子借款债权中的部分，即共计 6.92 亿元人民币抵扣本次交易交易对价的 6.92 亿元人民币。在本协议签订生效后，上述债权即视为抵扣完毕。

(c)    转让方、乐视实控人在此明确并确认，上述两部分事宜履行完毕后，即视为受让方已完成全部交易对价的支付。

### 第2.03款  对标的公司的支付安排

就本协议第 2.02 款（b）项债务承担，为解决易到集团中标的公司的经营性现金流不足，受让方将向标的公司提供数笔款项支付，具体各笔款项支付时间由受让方与标的公司另行协商确定，但第一笔款项 4.3 亿元人民币应在本协议签订后 2 个工作日内支付。

标的公司名下的指定收款账户如下：

> 账户名称：北京东方车云信息技术有限公司
> 开户行：平安银行上海安亭支行
> 账号：11015642476000

标的公司应保证本条所述款项支付应全部用于清偿易到集团不超过 23 亿元人民币的总债务。同时上述总债务中所欠除转让方、乐视实控人及乐视相关主体外的第三方债务应最优先进行清偿（"**第三方债务**"），在第三方债务完全清偿完毕前，不得向转让方、乐视实控人及乐视相关主体进行清偿。

### 第2.04款  费用及税金

(a)    本次交易的相关费用，由各方承担各自相应的费用。

(b)    各方应当依所适用法律承担应由各方自行承担的因交易而发生的税金，依法必须由一方履行代扣代缴义务的除外（但是一方主张且实际履行该等代扣代缴义务时应提前举证相关法律依据并获得其他方同意）。

### 第3条 标的股权、Easy Go 股权变更

### 第3.01款  增资

在本协议签订生效后至履行本协议第 3.02、3.03 款完成前，转让方或乐视控股应完成对标的公司 2.3 亿美元增资的工商变更登记事宜。

### 第3.02款  标的股权工商变更

在本协议签订生效后四十五个工作日内，标的公司应当在工商管理登记机关办理完毕股权转让涉及的工商变更登记事宜，在获得工商变更登记后换发标的公司新《企业法人营业执照》的复印件（应加盖公司公章）应递交给标的公司。

对于工商变更事宜，各方应给予相应的协助（如需）。

### 第3.03款  Easy Go 股权变更

在本协议签订生效后三个工作日内，各方应促使韬蕴资本指定境外关联方、Lucky Clover、乐视实控人完成境外股权转让协议签订及生效，并于境外股权转让协议约定期限内完成 Easy Go 股权变更登记。

对于变更事宜，各方应给予相应的协助（如需）。

## 第4条  股权回购

### 第4.01款  股权回购

经受让方、韬蕴资本指定境外关联方、转让方、乐视实控人等利益相关方协商一致，经各方认可的时间，转让方可以届时协商一致的合理的价格（暂定 15%年化利率）主张回购部分或全部股权（"回购"）。

## 第5条  转让方的陈述与保证

### 第5.01款  转让方是完全民事行为能力人。

### 第5.02款  转让方拥有所有必要的权力、授权与能力签署并交付所有交易文件，履行其在本协议及其他交易文件项下的义务，以及对其法律后果承担法律责任。每一份交易文件经签署并交付后即构成对公司及现有股东合法有效且具有法律约束力的义务，并可按照其各自条款执行。

### 第5.03款  转让方在此向受让方陈述及保证，除非事先另有声明，截至本协议签署日，转让方的陈述在重大方面均为真实、准确及完整的陈述。

### 第5.04款  转让方应及时获取公司对本协议的约定的股权转让的决议文件，以及其他股东放弃优先购买权的法律文件。

**第5.05款** 转让方是标的股权的合法所有人，标的股权之上未设置质押等担保物权或任何其他第三方权利。

**第5.06款** 截至本协议签署日，转让方除已向受让方披露内容外，标的公司不存在任何导致或可能导致税收争议、税收处罚或相关司法程序的情形；标的公司未涉及任何争议、处罚或司法程序，包括但不限于任何诉讼、仲裁、行政程序、强制措施或执行程序等；标的公司并不存在未披露的超额未清偿债务或可能产生上述债务的事由；因本协议签署之日前原因产生的上述税收处罚、诉讼、仲裁、行政程序、强制措施、执行措施、超额未清偿债务等，由标的公司负责解决，但因此引发的标的股权上的责任及损害赔偿应由转让方承担。

**第5.07款** 本签署、交付和履行本协议以及及其作为一方就本协议不会：违反或抵触适用于其任何资产、财产或业务的任何法律法规或政府指令。

### 第6条 受让方的陈述与保证

**第6.01款** 受让方为依法设立并有效存续的企业法人，具有与订立及履行本协议相适应的民事主体资格及权利能力。本协议经各方正式授权、签署及交付，即构成对受让方的合法、有效并具有约束力的义务，且该义务可根据本协议的条款强制执行。受让方不受制于任何普遍影响其债权人权利的破产、重组、资不抵债、诉讼程序或其他诉求。

**第6.02款** 除需依法取得签署、执行本协议的授权外，受让方签署、履行本协议不会违反其营业执照、股东协议、有限合伙协议、章程（视适用情况而定）或类似组织文件的任何规定，不会违反任何相关法律或任何政府授权，不会违反其作为当事人一方（或受之约束）的其他任何协议，也不存在将影响其履行本协议项下任何义务的能力的、已经发生且尚未了结的诉讼、仲裁或其他司法或行政程序。

**第6.03款** 受让方用于支付交易对价第一部分债权抵扣的资金来源合法，不存在违反任何适用法律法规规定的情形，不会因此造成对公司的任何索赔或致使公司承担任何赔偿责任。

**第6.04款** 本签署、交付和履行本协议以及其作为一方就本协议不会：违反或抵触其组织文件的规定以及违反或抵触适用于其任何资产、财产或业务的任何法律法规或政府指令。

### 第7条 违约责任

第7.01款 任何一方违反本协议的约定，给对方造成任何损失，均应承担相应的赔偿责任，并支付对方因此支付的包括律师费在内的所有诉讼费用。若任何一方逾期支付任何应付款项，则每逾期一日，应向对方支付应付未付款项万分之五的罚息。

## 第8条 他项条款

### 第8.01款 解释及解释原则

(a)    本协议中，"应"、"应当"均为强制性的，与"必须"具有同等含义；"可以"为授权性的，行为人有权决定作为，也有权决定不作为。凡属一方之权利，该方既可以行使，也可以不行使，选择及决定的自由在于该方。

(b)    "书面"系指能通过正常可视化手段予以辨认的可记录信息的任何形式，包括但不限于传真、电子传输、电子邮件、手机传信、信函等。

(c)    凡提及或用到"本协议项下"包括本协议全部条款及其项、目、句、词及字。"条"包括且仅包括指定该条全部条、款、项、目、句，及其短语、词语和单字，"款"包括且仅包括指定款及其全部项目句及字词短语，"项"包括且仅包括指定条款指定项及其全部目、句及字词短语。

(d)    凡提及"各方"，应包括本协议序言部分所列全部各方，各方就其自身在本协议项下的权利与义务仅仅承担个别的、独立的且非连带的法律责任（除非另有明确约定）。

(e)    "包括"或"包括但不限于"仅充当列举之用，不应被解释为限制、限定或排除其后列举例证之外其他任何可包括项或应包括项。

(f)    "交付"系指动产或权利凭证等可移动物在主体之间转移占有之法律事实。

(g)    "法律"系指普遍或特别适用于本协议项下特定事项的法律。在满足本协议第8.12款有关管辖法律之约定条件下，凡提及"所适用法律"，均不仅仅指由特定国家或地区立法机关依所适用程序制定并颁布实施的法律，亦包括由地方立法机关、国家或地方司法机关或行政机关依所适用程序制定、颁布且被该国家或地区普遍接受为具有普遍性法律约束力的规范性文件，无论其命名为法律、条例、规定、规则、决定、命令、意见、通知或是其他。该等法律在本协议签署时应正被实施、执行且具有普遍性法律约束之效力，并包括有权机关不时颁布实施的法律修正案或不时修订后颁布实施的新法律。

(h)    "裁决"系指有管辖权之法庭依所适用法律规定程序法及实体法做出地判决或裁定；或有管辖权之仲裁庭依本协议约定选择适用的仲裁程序及实体法做出地仲裁裁决。

(i)    凡提及"诉讼程序"，应包括诉讼程序及仲裁程序。其中，诉讼程序应包括刑事诉讼、民事诉讼及行政诉讼；仲裁程序应包括劳动仲裁、商事仲裁、国际仲裁等各类仲裁。

(j)    "内"、"之内"均包括本数/日；"超过"均不包括本数/日。

(k)    凡使用任何金额及数字，若大小写不一致，或阿拉伯数字与中文数字不一致，均应以大写或中文数字为准。

(l)    凡提及"日"，系指一个日历日，从北京时间凌晨零点开始计算，经过 24 小时为一日。凡提及"工作日"或"营业日"，系指除了周六、周日及中华人民共和国或其他国家或地区根据所适用法律确定为节日、假日及休息日以外之任何一日或多日。除上下文另有要求外，如本协议项下任何权利或义务可供行使或履行之日为非工作日，则该项权利或义务应顺延至该日之后第一个工作日行使或履行。"之日"包括当日，"次日"为指称当日之第二日。

(m)    凡提及"元"或"圆"，系指中华人民共和国通用货币人民币元。凡提及"美元"，系指美利坚合众国法定通用货币。除非明确约定使用美元或其他货币，本协议项下任何付款义务均应以人民币计价、结算及支付。

(n)    凡提及"中文"，应指中华人民共和国大陆地区通用的符合中华人民共和国国家语言文字工作委员会颁布实施的汉语言文字使用规范的简体汉字。

第8.02款 保密

(a)    本协议项下保密信息，(i) 就任何个人而言，包括《中华人民共和国居民身份证》或其他国家或地区《护照》等身份证件上全部记载信息，该人士电话号码、手机号码或其他联系方式、家庭住址、办公地址、婚姻、财产信息等; (ii) 就任何单位而言，保密信息包括其专利技术、软件源代码、专有技术（know-how）、商业秘密、产品开发计划、定价策略、经营方式、投资、受让、重组、银行贷款、发债、上市计划、员工招收计划、财务会计信息等; (iii) 就本协议项下任何事项或交易而言，包括前期接触、洽谈、见面、会议、通讯、邮件、信函、传真、交易协议（包括本协议）起草、修改、磋商、签署、付款、交割等; (iv) 上述信息或其他信息，若已被采取适当保密措施，或已被标识"保密"字样，信息持有方不愿意公开或被他人知悉，且若被公开或被他人知悉，将对信息持有方造成经济损失，或造成其他重大不利影响，则构成本协议项下保密信息。

(b)    除非被强制披露，任何获得、接受、保存、使用、复制及传递保密信息者，均有义务采取适当保密措施，以使其不被披露、泄露或被他人知晓。所谓强制披露，系指根据法律、司法或行政机关要求不得不予以披露，包括根据所适用法律或证券交易所规则向任何有关政府部门或证券交易所披露。若发生强制披露，披露一方应在其力所能及且所适用法律允许范围内，于做出此种披露前合理时间内，与保密信息提供方磋商，并尽最大努力对所披露信息进行保密化处理。然而，为完成本协议项下或交易之目的，一方可以将保密信息向其关联方或法律顾问、财务顾问等中介机构进行披露，但应确保信息接受方充分知晓、理解并同意承担保密义务，该等义务其法律责任大小应与披露方一致。此外，各方均不得为任何其他目的、以任何方式使用保密信息。

(c)    若存在任何信息，已被本协议或本协议任何一方同意或允许披露，或在披露之时已经可公开获得或已被公开获得且该等公开非可归责于任何一方或其关联方，或其获得信息渠道来源于任何善意第三方，则信息获得方在获得信息范围内不承担保密责任。但是，任何情形下，任何信息不应仅因任何规定可以不承担保密责任而被认定为非保密信息。

第8.03款  生效、变更与终止

(a)    本协议经各方法定代表人或其授权代表人或本人签字及/或盖章("**签署**")后正式成立并正式生效。

(b)    各方一经于本协议签署页签署,即视为其完全理解、承认本协议各方在本协议项下约定条款及条件的权利,同意在本协议生效后履行本协议项下全部及各项义务,愿意受该全部各项条款及条件的约束,并承担由此产生的任何法律责任。各方同意,在本协议签署页或标明签章处仅加盖公章而无法定代表人或其授权代表人签字,或者公章为公司财务专用章等非合同专用章,或者法定代表人未亲笔签字而授权他人签字,或者任何签字人于签字时或签字后未获得书面授权等情形均不影响本协议的生效。任何以本协议仅有盖章而无签字、非法定代表人签字、非公司合同章或授权代表人未获授权等为理由对本协议效力提出的异议均为无效。

(c)    本协议非经各方协商一致不得修改变更。协商一致后,另行签署书面补充协议,对本协议的修改方为有效。若因本协议任何一方提起或发起诉讼或仲裁程序,最终致使本协议任何条款或措辞被有合法管辖权的法院、法庭或仲裁庭依法裁决无效或不予执行("**无效条款**"),需要对本协议任何条款或措辞进行修改,各方应通过善意协商,以最大程度符合本协议之根本目的为基本原则,共同完成修改程序,从而使得本协议中所拟事项以及各方权利义务能最大限度按照本协议签署之初所拟定计划完成与实现。若在裁决生效之后十五(15)日以内,各方仍无法就协议修改达成一致意见,则:

(i)    本协议可不做任何修改,且该等无效条款应被视为及解释为本协议自始未拟定或包含该等无效条款;或,

(ii)   若无效条款事实上构成本协议根本条款,或无效条款无效或自始不存在将致使本协议根本目的无法实现,或致使本协议无法继续履行,则本协议终止。

(d)    本协议各方应尽自己合理的最大努力遵守并履行本协议各项约定,除以下情形之外,本协议非经各方协商一致不得终止:

(i)    若任何有管辖权的法院、法庭或仲裁庭依所适用法律裁决本协议全部或部分条款无效、被撤销或不予执行,或者任何政府部门决定终止本协议全部或部分条款,则本协议或相应条款应当终止;

(ii)   若任何一方严重违反本协议约定,导致本协议根本目的无法实现或本协议无法继续履行,本协议应当终止;

(iii)  依本协议第 7 条而终止。

(e)    在上述情形下,决定终止协议的一方应当向对方发出终止通知,通知生效之日起本协议即行终止。

第8.04款  权利与义务转移

非经各方一致同意,本协议项下任何权利义务均不得转移给其他任何第三方。任

何权利义务的转移，转让一方均需事先书面通知其他方，征得同意后方可进行。

### 第8.05款 不放弃

除非法律法规另有规定或本协议另有约定，如任何一方不行使、或未能行使、或延迟行使其在本协议下或根据本协议而获赋予的任何权利、权力或补救行动，不构成该方放弃该等或任何其他权利、权力或补救行动。任何一方放弃其部分权利，不构成其对其他未明确放弃之权利的放弃或豁免。

### 第8.06款 通知

(a)    除非另有约定，所有本协议项下通知、诉求、权利主张、要求及其他信息交互（"通知"），均应以书面形式做出，并以专人递交、快递服务、传真、或挂号邮件（邮资预付并要求回执）交付。尽管如此，若各方按照商业惯例或过往交易习惯通过电子通讯方式进行通知，且收收方对此并无异议，则该等通知应视为与书面通知具有同等法律效力。为本协议之目的，所谓电子通讯方式，系指使用电子邮件、手机等移动通讯设备短信息、微信、QQ或SKYPE等即时通讯方式传递信息或发出通知。若约定以电子通讯方式进行通知，则接收方应当提供准确号码或账户，保证通知能够及时送达。通知应当发送到到各方于本协议签署页所提供地址，或协议签署后变更地址，只要任何一方根据实际情形变更地址，且将变更后地址即时通知了其他方。任何通知均应当明确所涉协议事项内容、完成要求及条件、截止时限，以中文书写。通知若为报告事件，除应当明确事件所涉时间、地点、经过、起因、经过及结果外，还应当尽合理努力提供相应证据。若为更正通知，还应指出具体错误或瑕疵。

(b)    依本协议所发送的通知在满足下列任意情形时即为有效送达（"送达"）：

(i)    若以电子通讯方式发送通知，则通知以电子邮件等成功发送或显示发送成功之时日视为有效送达；

(ii)   若由专人递交，则在专人递交之日视为有效送达；

(iii)  若以挂号信件发出，则在寄出日（以邮戳为凭）后第七日视为有效送达；

(iv)   若以快递方式发送，则于交与快递服务发送后第三日视为有效送达。

(c)    就上述任何一种送达而言，若接收人于视为送达日之次日通知发送人并明确表示未收到发送通知，则通知应认定为未送达，双方应立即协商并确定重新发送通知（"重发送通知"）。 重发送通知仍适用上述视为送达规则。 就任一通知而言，若因接收方提供地址不真实或不准确，致使通知不能送达，或尽管通知已经送达，但接收方未及时接收、处理或知悉通知内容，导致通知之目的未能实现（"通知失败"），使接收方遭受损失，则应由接收方自行承担全部损失；若因通知失败导致发送方损失，发送方有权就此从接收方获得赔偿或补偿。

### 第8.07款 完整性

本协议构成各方之间就协议事项所达成之完整协议，本协议具有取代各方之前就

协议事项所达成任何及全部其他书面或口头协议之法律效力。

### 第8.08款 可分割性

若本协议任何条款或规定在任何司法辖区被视为无效或不可执行，则该等条款或规定应仅在该等无效或不可执行的范围内无效，其余部分不因此受到影响，应当仍旧完全有效。本协议任何条款在某一个司法辖区无效或不可执行，不影响其在其他司法辖区内的法律效力，其在其他司法辖区仍应完全有效。此外，若本协议任何条款被视为无效或不可执行，但若将其部分删除则变为有效或可执行，则该等条款应在最小范围内做出必要修改以使其有效并可执行。

### 第8.09款 独立条款

本协议违约责任条款、保密条款、通知条款、管辖法律和争议解决条款，在法律效力上具有充分独立性，本协议全部（或部分）无效、被撤销或终止，不影响该等条款的法律效力，该等条款仍继续有效。

### 第8.10款 标题

本协议中，任何标题仅为阅读方便，不对本协议任何条款构成总结或解释，也不对解释任何条款产生任何影响。

### 第8.11款 语言

本协议用中华人民共和国通用简体中文书写、解释、留存及履行。任何一方均可就各自需要翻译成其他任何语言文字。但是，若任何其他语言文本之文义与本协议语言文本之文义在书写格式、解释及履行过程中发生任何冲突、不一致、相违背等情形，均应以中文文本为准。

### 第8.12款 管辖法律和争议解决

本协议、本协议项下任何交易、行动、行为或安排，以及各方在本协议项下全部权利及义务，均应受中华人民共和国法律管辖，根据该等法律进行解释。

本协议项下发生任何争议，任何一方均有权向本协议签署地有管辖权人民法院提起诉讼。

### 第8.13款 文本

本协议正本捌份，各方各执壹（1）份，剩余贰（2）份用于登记机关备案（如需），每份均具有同等法律效力。

（以下有意留白）

（本页为《股权转让协议》的签字页）

签署方：上海哲蕴商务咨询合伙企业（有限合伙）（公章）

签字：

职务：

签署方：吴孟

签字：

签署方：北京东方车云信息技术有限公司（公章）

签字：

职务：

签署方：乐视控股（北京）有限公司（公章）

签字：

职务：

签署方：韬蕴资本集团有限公司（公章）

签字：

职务：

签署方：贾跃亭

签字：







# EXHIBIT B

Wu Meng

And

Shanghai Zheyun Business Consulting Partnership (Limited Partnership)

Regarding

Beijing Dongfang Cheyun Information Technology Co., Ltd.

---

**Equity transfer agreement**

---

June 30, 2017

Beijing Dongfang Cheyun Information Technology Co., Ltd.

**Equity transfer agreement**

This Equity Transfer Agreement (hereinafter referred to as this "Agreement") is entered into by and among the following parties (individually referred to as "Party" and collectively referred to as "Parties") on June 30, 2017 in Dongcheng District, Beijing, China:

**Transferee: Shanghai Zheyun Business Consulting Partnership (Limited and Partner) ("Zheyun")**

Address: 4th Floor, No. 416, Zhoushi Road, Pudong New Area, Shanghai

**Transferor: Wu Meng**

ID No.: 14237319730105507x

**Target Company/Company: Beijing Dongfang Cheyun Information Technology Co., Ltd.**

Address: 7th Floor, Building 1, No.1, No. 188, West South Fourth Ring Road, Fengtai District, Beijing (Park)

**The debtor of the loan package: LETV Holdings (Beijing) Co., Ltd. ("LETV Holdings")**

Address: 1102, 10th Floor, Building 3, No. 105, Yaojiayuan Road, Chaoyang District, Beijing

**The creditor of the loan package: Taoyun Capital Group Co., Ltd. ("Taoyun Capital")**

Domicile:

**Actual Controller of LeEco: Jia Yueting**

ID No.:

**Whereas:**

(1) Beijing Dongfang Cheyun Information Technology Co., Ltd. ("Target Company") is a limited liability Company established and validly existing under the laws of the PRC. The legal representative is Peng Gang. It was established on May 21, 2010. As of the date hereof, its registered capital is RMB 11 million. All shareholders have paid their contributions. The Target Company and Easy Go Ino. (Cayman) ("Easy Go") jointly serve as the intellectual property holder and operating entity of Easy Go Car Use ("Easy Go Group"), which is the e-commerce platform for providing scheduled car services.

(2) Wu Meng (the "Transferor"), a Chinese citizen, the controlling shareholder of the Target Company and the related party of **LETV Holdings**, legally holding 66.67% of the equity of the Target Company.

(3) Shanghai Zheyun Business Consulting Partnership (Limited Partnership) ("Transferee" or "Zhe Yun") is a limited partnership legally established and validly existing under the laws of the PRC.

(4) **LETV Holdings** (Beijing) Co., Ltd. ("**LETV Holdings**") is a limited liability Company established and validly existing under the laws of the PRC. **LETV Holdings** is the debtor of the package loan as described in Article 2.02(b) of this Agreement. .

(5) Jia Yueting, as the actual controller of **LETV Holdings** and other related entities ("Actual Controller of LeEco"), directly or indirectly controls including but not limited to, **LETV Holdings** (Beijing) Co., Ltd., LeEco Mobile Intelligent Information Technology (Beijing) Limited Company, LeEco Sports Industry Development (Beijing) Co., Ltd., Lele Interactive Music Culture Development (Beijing) Co., Ltd., LeEco Music Culture Industry Development (Beijing) Co., Ltd., Beijing Bairui Culture Media Co., Ltd., and Lucky Clover (the above-mentioned companies directly or indirectly controlled by the Actual Controller of LeEco are collectively referred to as "LeEco Related Entities".

(6) Taoyun Capital Group Co., Ltd. ("Taoyun Capital") is a limited liability Company legally established and validly existing under the laws of the PRC. The legal representative is Wen Xiaodong.

(7) The Transferor intends to transfer 66.67% of the equity of the Target Company (the "Target Equity") held by the Transferor to the Transferee in accordance with the terms and conditions of this Agreement, and the Actual Controller of LeEco shall procure Lucky CloverLimited   ("Lucky Clover"), the controlling shareholder of Easy Go, to transfer its 66.67% equity interest in Easy Go ("Easy Go Equity") to the designated overseas affiliates of Yunyun Capital and separately sign the corresponding overseas equity transfer agreement.

(8) Taoyun Capital and its related parties have reached consensus with the Actual Controller of LeEco and the LeEco Related Entities on payment of the consideration for the Target Equity and Easy Go Equity by deduction of the part or all of the claims in the package loans (collectively referred to as the "Transaction").

In view of this, through friendly consultations, based on the principle of equality and mutual benefit and in accordance with the Contract Law of the People's Republic of China, the Company Law of the People's Republic of China and other relevant laws and regulations, all Parties have reached this Agreement on the above-mentioned equity transfer and payment of the consideration for the Transaction contemplated hereunder using the related claims in the package loans as follows.

**Article 1 Equity Transfer**

**Article 1.01 Valuation of Easy GoGroup**

Prior to this Transaction, the Transferor, the Transferee, Taoyun Capital, the Actual Controller of LeEco, and the LeEco Related Entities agreed that Easy Go Group was valued at US$660 million as of the signing date hereof (converted to RMB 4.488 billion yuan according to the exchange rate of 1 USD to RMB 6.80 yuan) on the premises that the Transferee shall complete the due diligence as described in Article 1.02(b) hereof and there is no significant adverse event that would affect the Transaction after the signing of this Agreement.

**Article 1.02 Transaction Consideration, Due Diligence and Transaction Consideration Adjustment**

(a) Transaction Consideration:

The equities to be transferred in this Transaction includes 66.67% of the equity of the Target Company legally held by the Transferor (the "Target Equity") and 66.77% of the equity of Easy Go legally held by Lucky Clover, the controlling shareholder of Easy Go ("Easy Go Equity"). The Transferee agreed to acquire for the total consideration (the "Transaction Consideration") of US$ 440 million (converted to RMB 2.992 billion yuan at the exchange rate of 1 USD to 6.80 yuan).After the completion of the Transaction the Target Equity will be held by the Transferee and the equity of Easy Go will be held by the designated affiliates of Taoyun Capital. However, after the signing of this Agreement, the Transferee will complete the independent due diligence, and the effectiveness of this Agreement shall be preconditional upon non-existence of material adverse impact on the Transaction.

(b) Due Diligence:

After the signing of this Agreement, the Transferee will conduct a comprehensive legal and financial due diligence ("Due Diligence") on the Ease Group, and the Transferor, the Target Company, and the Actual Controller of LeEco undertake to provide all necessary due materials and assistance in the due diligence, including the financial forecast data of Easy Go Group for the following 3 years.

(c) Adjustments to Valuation of Easy Go Group and Transaction Consideration:

As of the signing date of this Agreement, the Transferor, the Target Company, and the Actual Controller of LeEco guarantee that the total debt of the Easy Go Group that has been fully disclosed shall not exceed RMB 2.3 billion. The Transferor, **LETV Holdings** and the Actual Controller of LeEco shall be jointly and severally liable for the outstanding debts of Easy Go Group exceeding RMB 2.3 billion, including but not limited to outstanding bank loans, private loans, other arrears or any contingent liabilities (collectively referred to as "Excess Unliquidated Liabilities").In such case, according to the professional advices of intermediary agency, the Transferee may adjust the valuation of the Easy Go Group and the considerations for the Target Equity and the Easy Go Equity, and deduct the corresponding amount from the Transaction Consideration paid by the Transferee, or recover the amount from the relevant jointly liable person.

**Article 2 Closing**

**Article 2.01    Time and Location of Closing**

(a) The Parties shall sign this Agreement on the date fist written above in Dongcheng District, Beijing, China.

(b) Within 45 working days after this Agreement is signed and comes into effect, the changes in the industrial and commercial registration for the equity transfer shall be completed.

(c) After this Agreement is signed and comes into effect, the Transferee shall cancel the creditor's rights and debts and make payment to the Target Company on the date and in the method specified in paragraphs 2.02-2.03 hereof on the premise of satisfying the conditions stipulated herein. ("Payment")

**2.02    Deduction of Transaction Consideration**

The Transaction shall be a debt-based acquisition, and the consideration for the Transaction is divided into two parts:

(a) The first part of the Transaction Consideration is in the form of debt commitment, and the Transferee agrees to bear the total debt of the Easy Go Group not

exceeding RMB 2.3 billion. After the completion of the change in the registration for equity and the industrial and commercial registration change for the Target Equity transfer and the Easy Go Equity transfer, the Transferee shall be deemed to have assumed the debt.

(b) The second part of the Transaction Consideration is in the form of credit deduction, Taoyun Capital and its related parties and the Actual Controller of LeEco and the LeEco Related Entities agree to deduct the consideration for the Transaction in the amount of RMB 692 million using the claims contained in the package loans totaled RMB 692 million yuan. After this Agreement is signed and becomes effective, the above claims are deemed to have been deducted.

(c) The Transferor and the Actual Controller of LeEco hereby clarify and confirm that after the completion of the above two parts, the Transferee shall be deemed to have paid the full consideration for the Transaction.

**Article 2.03 Payment Arrangements for Target Company**

With respect to the debt commitment under Article 2.02(b) of this Agreement, in order to solve the problem of insufficient operating cash flow of the Target Company within the Easy Go Group, the Transferee will provide money to the Target Company in several installments, the specific payment time of which shall be negotiated separately by the Transferee and the Target Company. However, the first installment of 430 million yuan shall be paid within 2 working days after the signing of this Agreement.

The designated collection account under the Target Company name is as follows:

| |
|---|
| Account Name: Beijing Dongfang Cheyun Information Technology Co., Ltd. |
| Bank: Ping An Bank Shanghai Anting Branch |
| Account No.: 11015642476000 |

The Target Company shall guarantee that the money paid according to this Article shall be used for paying off the total debts of the Easy Go Group not exceeding RMB 2.3 billion. At the same time, the debt owed to the third party other than the Transferor, the Actual Controller of LeEco and LeEco Related Entities as included in the above-mentioned total debts shall be given the highest priority for settlement ("Third Party Debt"). No payment shall be made to the Transferor, the Actual Controller of LeEco and LeEco Related Entities until the third party debt is fully settled.

**Article 2.04 Fees and Taxes**

(a) The relevant expenses of this Transaction shall be borne by each Party respectively.

(b) Each Party shall, in accordance with applicable law, bear the taxes in connection with the Transaction, except that the Party shall perform the withholding obligation in accordance with the law (however, when asserting and actually performing the withholding obligation, one Party shall provide legal evidence in advance and obtain the consent of other Parties).

**Article 3 Change in Target Equity and Easy Go equity**

**Paragraph 3.01 Capital Increase**

The Transferor or **LETV Holdings** shall complete the industrial and commercial registration for the Target Company's capital increase of US$230 million from this Agreement is signed and becomes effective until the fulfillment of paragraphs 3.02 and 3.03 of this Agreement.

**Article 3.02    Industrial and Commercial Registration Change Related to Target Equity**

Within forty-five working days after this Agreement is signed and becomes effective, the Target Company shall complete the industrial and commercial registration change related to the equity transfer at the industrial and commercial registration authority, and obtain the new Business License for Enterprise Legal Person of the Target Company after the completion of the industrial and commercial registration change, a copy of which (bearing the official seal of the Target Company) shall be submitted to the Target Company.

The Parties shall provide appropriate assistance in the course of the industrial and commercial registration change (if needed).

**Article 3.03** Industrial and Commercial Registration Change Related to **Easy Go Equity**

 Within three working days after this Agreement is signed and becomes effective, the Parties shall prompt the designated overseas affiliates of Taoyun Capital, Lucky Clover and the Actual Controller of LeEco to complete the signing and entry into force of the overseas equity transfer agreement, and complete the industrial and commercial registration change related to the Easy Go Equity within the time limit specified in the overseas equity transfer agreement.

The Parties shall provide appropriate assistance in the course of the industrial and commercial registration change (if needed).

**Article 4 Equity Repurchase**

**Article 4.01 Equity Repurchase**

Upon reaching consensus among the interested parties such as the designated overseas affiliates of Taoyun Capital, the Transferor, and the Actual Controller of LeEco, the Transferor may require to repurchase part or all of the equity at the agreed reasonable price and at the time approved by the Parties (provisional 15% annual interest rate)    ("Repurchase").

**Article 5 Representations and Warranties of the Transferor**

Article 5.01 The Transferor is a person with full capacity for civil conduct.

Article 5.02 The Transferor has all the necessary powers, authorizations and capabilities to sign and deliver all transaction documents, fulfill its obligations under this Agreement and other transaction documents, and assume legal liability for the legal consequences. Each transaction document, once being signed and delivered, shall constitute a valid and legally binding obligation to the Company and its existing shareholders and may be enforced in accordance with its respective terms.

Article 5.03 The Transferor hereby represents and warrants to the Transferee that, unless otherwise stated in advance, the Transferor's representations are true, accurate and complete in material terms as of the date of this Agreement.

Article 5.04 The Transferor shall promptly obtain the resolution documents of the Company related to the equity transfer specified in this Agreement, and the legal documents on waiver of the right of first refusal that by other shareholders.

Article 5.05 The Transferor is the legal owner of the Target Equity, and no pledge or other security interest or any other third party rights have been created on the Target Equity.

Article 5.06 As of the signing date of this Agreement, except as disclosed to the Transferee by the Transferor, there is no situation that causes or may cause tax disputes, tax penalties or relevant judicial proceedings against the Transferee; the Target Company has not been involved in any disputes, punishments or judicial proceedings, including but not limited to any litigation, arbitration, administrative proceedings, enforcement measures or enforcement proceedings; there are no undisclosed Excess Unliquidated Obligations to be assumed by the Target Company and no cause of the above-mentioned obligations; the tax penalties, litigation, arbitration, administrative proceedings, enforcement measures, coercive measures, and Excess Unliquidated Obligations arisen prior to the date hereof shall be settled by the Target Company, however, the liability and damages for the Target Equity arising therefrom shall be borne by the Transferor.

**Article** 5.07 The execution, delivery and performance of this Agreement and being a Party to this Agreement shall not violate or contravene any laws, regulations or government directives applicable to any of its assets, property or business.

### Article 6 Representations and Warranties of the Transferee

**A**rticle 6.01 The Transferee is an enterprise legal person established and validly existing according to law, and has the qualifications and rights of civil subjects that are compatible with the conclusion and performance of this Agreement. Once being duly authorized, signed and delivered by the Parties, this Agreement shall constitute a legal, valid and binding obligation to the Transferee and may be enforced in accordance with the terms hereof. The Transferee is not subject to any bankruptcy, restructuring, insolvency, litigation or other claims that generally affect the rights of its creditors.

**Article** 6.02 Except for the lawful authorization to sign and execute this Agreement, the Transferee's execution and performance of this Agreement will not violate its business license, shareholder agreement, limited partnership agreement, articles of association (as applicable) or similar organization documents and will not violate any relevant laws or any government authorization, or any other agreement to which it is a Party (or binding it). In addition, there is no occurred and unsettled litigation, arbitration or other judicial or administrative proceedings which will affect its ability to perform any of its obligations under this Agreement.

**T**he source of the funds used by the Transferee to pay the first part of the Transaction Consideration is legal. There is no violation of any applicable laws and regulations, and no claim against or liability of the Company will be incurred.

**Article** 6.04 The execution, delivery and performance of this Agreement and being a Party to this Agreement shall not violate or contravene any laws, regulations or government directives applicable to any of its assets, property or business.

### Article 7 liability for breach of contract

Article 7.01 **I**f any Party violates the provisions hereof and causes any loss to the other Parties, it shall bear the corresponding liability for compensation and pay all the litigation costs including the lawyer's fee incurred by the other Parties. In case of late payment, the default Party shall pay liquidated damages to other Parties at five over ten thousand of the unpaid amount for each day of delay.

### Article 8 Miscellaneous

### Article 8.01 Interpretation and Interpretation Principles

(a) In this Agreement, "shall" and "should" are mandatory and have the same meaning as "must"; "may" is authoritative, the actor has the right to decide to act or not

to act. The Party enjoying a right may exercise or waiver on the right, and the freedom to choose and decide lies with that Party.

(b) "Writing" means any form of recordable information that can be identified by normal means of visualization, including but not limited to fax, electronic transmission, e-mail, SMS, letters, etc.

(c) References to or use of "hereunder" include all terms of this Agreement and its items, objectives, sentences, phases and words. "Article" includes and only includes the specified article and the paragraphs, items, sentences, phrases and words thereof. The "Clause" includes and only includes the specified Clause and all the items, sentences and words thereof, "Items" "Includes and includes only the specified items and all the items, sentences, phrase and words thereof.

(d) References to "Parties" shall include all Parties listed in the preamble to this Agreement, and the Parties shall only assume individual, independent and non-joint legal obligations with respect to their own rights and obligations under this Agreement (unless otherwise expressly agreed).

(e) "Including" or "including but not limited to", is merely used as an enumeration and shall not to be construed as limiting, restricting, or excluding any other includible items than those enumerated.

(f) "Delivery" means the legal fact that movable objects such as movable property or right certificates are transferred between entities.

(g) "Law" means the law that applies generally or specifically to a particular matter under this Agreement. Subject to the provisions on governing law under Article 8.12 hereof, references to "applicable law" refer not only to the laws enacted and enforced by the specific national or regional legislature in accordance with the applicable procedures, but also the normative documents enacted by local legislature, the state or local judicial organs or administrative organs in accordance with the applicable procedures and generally accepted by the country or region as legally binding, regardless of whether they are named as laws, norms, regulations, rules, decisions, orders, opinions, notices or other. These laws shall be implemented, enforced and universally legally binding at the time of signing this Agreement, as amended and revised by the competent authorities from time to time.

(h) "Judgment" means the judgment or ruling made by a court of competent jurisdiction in accordance with the applicable procedural law and substantive law; or the arbitration award made by the arbitral tribunal of competent jurisdiction in accordance with the applicable arbitral proceedings and substantive law agreed upon herein.

(i) Any reference to "proceedings" shall include litigation proceedings and arbitration proceedings. Litigation proceedings shall include criminal, civil and administrative litigation proceedings; the arbitration proceedings shall include labor arbitration proceedings, commercial arbitration proceedings, international arbitration proceedings and other types of arbitration proceedings.

(j) Both "within" and "in" shall include this number/day; "over" shall not include this number/day.

(k) Where any amount and number are used, in case of inconsistency between the capitals and lower-case letters, or inconsistency between the Arabic numerals and the Chinese numerals, the capitals or Chinese number shall prevail.

(l) Any reference to "day" means a calendar day, starting from 0:00 am Beijing time until 24 hours later. References to "working days" or "business days" means any day or days other than Saturdays, Sundays and holidays, rest days in accordance with the applicable laws of the People's Republic of China or other countries or regions. Except as otherwise required by the context, if any of the rights or obligations under this Agreement are to be exercised or performed on a non-working day, the exercise or performance shall be extended to the first working day after that date. "Day" includes the day, and "next day" is the day following the alleged day.

(m) Any reference to "yuan" or "YUAN" means the common currency of the People's Republic of China. References to "dollars" refer to the statutory common currency of the United States of America. Unless otherwise expressly agreed to use US dollars or other currencies, any payment obligations under this Agreement shall be denominated, settled and paid in RMB.

(n) Any reference to "Chinese" shall mean the simplified Chinese characters commonly used in the mainland of the People's Republic of China in conformity with the standards for the use of Chinese languages and characters issued by the State Language Commission of the People's Republic of China.

**Article 8.02 Confidentiality**

(a) Confidential information under this Agreement, (i) for any individual, confidential information shall include the information contained in the Resident Identity Card of the People's Republic of China, other national or regional passport and other identification documents, such as the person's telephone number, mobile phone number or other contact information, home address, office address, marriage status, property information, etc. (ii) for any entity, confidential information shall include its patented technology, software source code, know-how, trade secrets, product development plan, pricing strategy, business method, investment, acquisition, reorganization, bank loan, bond issuance, listing plan, employee recruitment plan,

financial accounting information, etc.; (iii) for any matter or Transaction under this Agreement, confidential information shall include pre-contact, negotiation, meeting, conference, communication, mail, letter, fax and the drafting, modification, negotiation, signing, payment, delivery of or under the transaction agreement (including this Agreement),etc.; (iv) for the above information or other information, against which appropriate confidentiality measures have been taken, or have been identified as "confidential", which the information holder is unwilling to disclose or make it known by others, and the disclosure or known to others of which will cause economic loss to or other significant adverse effects on information holder shall constitute the confidential information under this Agreement.

(b) Unless compulsorily disclosed, anyone who acquires, receives, saves, uses, copies and transmits confidential information is obliged to take appropriate confidentiality measures so that they are not disclosed, revealed or known to others. "Compulsory disclosure" means the disclosure made according to legal, judicial or administrative requirements, including disclosure to any relevant government department or stock exchange in accordance with applicable laws or stock exchange rules. In the event of a mandatory disclosure, the disclosing Party shall, at the reasonable time prior to the disclosure and to the extent permitted by applicable law, consult with the confidential information provider and do its utmost to keep the disclosed information confidential. However, for the purposes of completion of this Agreement or the Transaction hereunder, one Party may disclose the confidential information to its affiliates or intermediary agencies such as legal counsel, financial advisors, etc., and shall ensure that the recipient of the information fully understands, knows and agrees to assume the same obligation of confidentiality as the disclosing Party. In addition, no Party may use confidential information in any way for any other purpose.

(c)For any information disclosed or permitted to be disclosed by either this Agreement or any Party hereto, becomes or has been publicly available at the time of disclosure for reasons not attributable to any Party or its affiliates, or is derived from any bona fide third party, the recipient of the information shall not assume confidentiality liability within the scope of the information obtained. However, in no event shall any information be deemed to be non-confidential solely due to any provision that no confidentiality liability shall be assumed.

### Article 8.03 Effectiveness, Amendment and Termination

(a) This Agreement shall become effective upon being signed and and/or stamped by the legal representatives or the authorized representatives of the Parties or by themselves ("Signature").

(b) Upon signing on the signing page of this Agreement, each of the Parties shall be deemed to have fully understood and acknowledged the rights of the Parties and the

terms and conditions hereof, agreed to perform all of the obligations hereunder after the
entry into force of this Agreement, be willing to be bound by all of the terms and
conditions hereof and assume any legal liability arising herefrom. The Parties agree that
only affixing the official seal to the signature page or signatory place hereof without the
signature of the legal representative or authorized representative, or the official seal
being a non-contract special seal such as financial special seal, or signing this
Agreement by the person authorized by the legal representative or failure of the
signatory to obtain written authorization at the time of signature or after signature shall
not affect the entry into force of this Agreement. Any objection to the validity of this
Agreement on the grounds that there is only the seal without the signature, this
Agreement is signed by other person than the legal representative, the seal is non-
contract special seal or the representative is authorized shall be invalid.

(c) This Agreement shall not be amended without the agreement of the Parties.
Any valid amendment shall be made in separate written supplementary agreement to
this Agreement after reaching consensus .If any Party hereto initiates or files a lawsuit
or arbitral proceedings, and the court, tribunal or arbitral tribunal of competent
jurisdiction ultimately rules that any clause or wording of this Agreement is invalid   or
unenforceable ("Invalid Clause") and have to be modified, the Parties shall jointly
complete the amendment through good faith negotiation and based on the basic
principle of maximizing compliance with this Agreement, so that the matters proposed
and the rights and obligations of the Parties hereunder can be completed and achieved
to the maximum extent. If, within fifteen (15) days after the ruling takes effect, the
Parties are still unable to reach an agreement on the amendment of this Agreement, then:

(i)   this Agreement may be un-amended and such invalid clause shall be
deemed and construed to have not been formulated or contained herein
from the effectiveness of this Agreement; or,

(ii) if the invalid clause actually constitutes the fundamental clause hereof, or
the invalidity or non-existence of such clause will lead to the fundamental
purpose of this Agreement being unfulfilled or uncontinued performance
of this Agreement, this Agreement shall be terminated.

(d) Each Party hereto shall use its reasonable and best efforts to abide by and
perform this Agreement. This Agreement shall not be terminated without the agreement
of the Parties except

(i) if any court, tribunal or arbitral tribunal of competent jurisdiction rules, in
accordance with applicable law, that all or part of the terms hereof is
invalid, revoked or unenforced, or if any government department
decides to terminate all or part of this Agreement, this Agreement or
the corresponding terms shall be terminated;

(ii) If any Party seriously violates this Agreement, which leads to the fundamental purpose of this Agreement being unfulfilled or uncontinued performance of this Agreement, this Agreement shall be terminated;

(iii) Termination in accordance with Article 7 of this Agreement.

(e) Under the above circumstances, the Party who decides to terminate the agreement shall issue a notice of termination to the other Parties and this Agreement shall terminate as of the effective date of the notice.

### Article 8.04 Transfer of Rights and Obligations

No rights and obligations under this Agreement may be transferred to any other third party without the unanimous consent of the other Parties. In case of the transfer of any rights and obligations, the Transferor shall notify the other Parties in writing and obtain their consents before proceeding with the transfer.

### Article 8.05 No Waiver

Except as otherwise provided by laws and regulations or as otherwise agreed in this Agreement, failure to exercise, being unable to exercise or delay in exercise of any of its rights, powers or remedies under this Agreement or obtained according to this Agreement shall not constitute the waiver on such or any other rights, powers or remedies. The waiver on part of the rights by any Party shall not constitute waiver or exemption from other rights that are not expressly waived.

### Article 8.06 Notice

(a) Unless otherwise agreed, all notices, complaints, claims, demands and other information communicates ("Notices") under this Agreement shall be made in writing and delivered by hand, courier, fax, or registered mail (postage prepaid and return receipt required).Notwithstanding the foregoing, if the Parties send notice by electronic communication in accordance with commercial practices or past transaction habits and the recipient raises no objection, such notice shall be deemed to have the same legal effect as the written notice. For the purposes of this Agreement, the so-called electronic communication means the use of instant messaging methods such as e-mail, messages of mobile phones and other mobile communication devices, WeChat, QQ or SKYPE to transmit information or to issue notifications. In case of agreement on electronic communication, the recipient shall provide an accurate number or account to ensure that the notice can be delivered in time. The notice shall be sent to the address provided by the Parties on the signing page of this Agreement, or other address changed after this Agreement is signed, as long as the Party changes the address according to the actual situation and immediately informs the other Party of the changed address. The notice

shall specify the matters involved, the completion requirements and conditions, and the deadline, and shall be written in Chinese. If the notice is used to report an incident, it shall state the time, place, process, cause and result of the incident and provide evidence. In the case of a correction notice, specific errors or defects shall also be indicated.

(b) A notice sent under this Agreement shall be deemed to be served validly ("Service") if any of the following conditions are satisfied:

(i) if sent by electronic communication, the notice shall be deemed to be validly served on the day when the email is successfully sent actually or as indicated;

(ii) if delivered by a person, the notice shall be deemed to be validly served on the date of delivery by the person;

(i) if sent by registered mail, the notice shall be deemed to be validly served on the seventh day after the date of mailing (by postmark);

(iv) if sent by courier, the notice shall be deemed to be validly served on the third day after the delivery of it to the courier service.

(c) In the case of any of the above-mentioned services, if the recipient informs the sender on the day following the date of service and expressly indicates that no notice has been received, the notice shall be deemed not to have been served and the Parties shall immediately negotiate and determine to resend the notice ("Resent Notice").The above mentioned service rules shall still be applicable to the Resent Notice. In the event that any notice cannot be severed due to untrue or inaccurate address provided by the recipient, or although the notice has been served, the recipient fails to accept process or understand the notice in a timely manner, resulting in the failure of the purpose of the notice and losses to the recipient ("Failure of Notice"), the recipient shall bear all losses; if the sender suffers any loss due to the Failure of Notice, the sender shall have the right to obtain compensation from the recipient.

**Article 8.07 Integrity**

This Agreement shall constitute the entire agreement among the Parties with respect to the subject matter hereof and this Agreement shall have the legal effect of replacing any prior written or oral agreement among the Parties on the subject matter hereof.

**Article 8.08 Severability**

If any terms or provisions of this Agreement are deemed to be invalid or unenforceable in any jurisdiction, such terms or provisions shall be void only in such

invalid or unenforceable scope, and the remainder shall not be affected and remain in full force and effect. The invalidity and unenforceability of any provision in a jurisdiction shall not affect its legal effect in other jurisdictions. It shall remain in full force and effect in other jurisdictions. In addition, if any provision of this Agreement is deemed to be invalid or unenforceable and will become effective or enforceable in case of deletion part thereof, then such provision shall be modified to the extent necessary to make it effective and enforceable.

### Article 8.09 Independent Clause

The provisions on the liability for breach of contract, confidentiality, notice, governing law and dispute resolution hereof shall have fully independent legal effect. The invalidity, cancellation or termination of the entire (or part) of this Agreement shall not affect the legal effect of such provisions, which shall continue to be valid.

### Article 8.10 Headings

Any headings in this Agreement are for convenience of reading only and do not constitute a summary or explanation of any of the terms of this Agreement, nor do they have any effect on the interpretation of any terms.

### Article 8.11 Languages

This Agreement is written, interpreted, retained and performed in the Simplified Chinese version of the People's Republic of China. Any Party may translate it into any other language according to the respective needs. However, in the event of any conflict, inconsistency or discrepancy in the writing, interpretation, and performance of the terms in any other language and in the language of this Agreement, the Chinese version shall prevail.

### Article 8.12 Governing Law and Dispute Resolution

This Agreement, any transaction, action, conduct or arrangement under this Agreement, and all rights and obligations of the Parties under this Agreement shall be governed by the laws of the People's Republic of China and shall be construed in accordance with such laws.

In the event of any dispute arising from this Agreement, any Party shall have the right to file litigation with the People's Court of competent jurisdiction at the place where this Agreement is signed.

### 8.13

This Agreement is made in eight originals with each Party holding one (1) original, and the remaining (2) originals shall be used for registration with the registration authority (if required), each of which shall have the same legal effect.

(The remainder is left blank intentionally)

**(Signature Page of the Equity Transfer Agreement)**

Signed by**: Shanghai Zheyun Business Consulting Partnership (Limited Partnership) (Official Seal)**

signature:

Position:

Signatory: Wu Meng

signature:

Signed by**: Beijing Dongfang Cheyun Information Technology Co., Ltd. (official seal)**

signature:

Position:

Signed by**: LETV Holdings (Beijing) Co., Ltd. (official seal)**

signature:

Position:

Signed by**: Taoyun Capital Group Co., Ltd. (official seal)**

signature:

Position:

Signed by: Jia Yueting

signature:



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S NOTICE OF OBJECTION AND OBJECTION TO CLAIM 53 FILED BY TAO YUN CAPITAL CO, LTD. aka TWC GROUP CO, LTD.; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF YUETING JIA AND SHAN HE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 2, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **April 2, 2020,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

United States Bankruptcy Court
Central District of California
Attn:  Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA  90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 2, 2020 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                   **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:328782.1 46353/002

## SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ

### 1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jerrold L Bregman    ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Richard H Golubow    rgolubow@wghlawyers.com, pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan    blogan@omm.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- David W. Meadows    david@davidwmeadowslaw.com
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Felix T Woo    fwoo@ftwlawgroup.com, admin@ftwlawgroup.com
- Claire K Wu    ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- David B Zolkin    dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:328782.1 46353/002

**F 9013-3.1.PROOF.SERVICE**

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Yueting Jia |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:19-bk-24804-VZ |

Filed: USBC - Central District of California
Yueting Jia   (B10)
19-24804 (VPZ)

**YT1**

0000000053

RECEIVED

JAN 2 4 2020

LEGAL SERVICES

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Tao Yun Capital Co., Ltd. (a.k.a. TWC Group Co., Ltd)
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jie Feng
Name
12 Floors, Block AB, Wantong Center, No.6 Chaowai St., Chaoyang District
Number          Street

Beijing                                1000005
City                    State              ZIP Code

Contact phone  +86 15801607199

Contact email  fengjie0201@126.com

Where should payments to the creditor be sent? (if different)

Name

Number          Street

City            State            ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — —

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
         MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$_____68,342,013.20_. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Personal Guarantee

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

Executed on date  <u>01/21/2020</u>
              MM / DD / YYYY

<u>JIE FENG</u>
  Signature

Print the name of the person who is completing and signing this claim:

| Name | Jie | | Feng |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Project Manager | | |
| Company | TWC Group Co., Ltd | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 12 Floors, Block AB, Wantong Center, No.6 Chaowai St., Chaoyang District | | |
| | Number        Street | | |
| | Beijing | | |
| | City | State | ZIP Code |
| Contact phone | +86 15801607199 | Email | fengjie0201@126.com |

# Exhibit 1 – Itemized List of Claim Amount

The items included in Tao Yun Capital Co., Ltd.'s claim of $ 68,342,013.20    are as follow:

$ 48,402,737.50  Principal,

$ 19,939,275.70  Interest.

# Exhibit 2 – Framework Agreement for Loan and Preemptive Right

借款及优先认购权之框架协议

# 借款及优先认购权之框架协议

**甲方（出借方）：韬蕴资本集团有限公司（"投资方"）**

公司注册号：█████████

公司注册地：北京市东城区东长安街 1 号东方广场东方经贸城东一办公楼十六层 1 室

**乙方一（借款人一）：乐视控股（北京）有限公司（"乐视控股"）**

证照号码：█████████

经营地址：北京市朝阳区姚家园路 105 号 3 号楼 10 层 1102

法人代表：贾跃亭

**乙方二（借款人二）：北京百瑞文化传媒有限公司**

证照号码：█████████

经营地址：北京市朝阳区姚家园路 105 号 3 号楼 10 层 1102

法人代表：贾跃亭

**（乙方一至乙方二，可统称为"乙方"或"借款人"）**

**丙方（保证人）：贾跃亭**

身份证号码：█████████

联系地址：北京市朝阳区姚家园路 105 号乐视大厦 16 层

（以上甲、乙、丙合称为"各方"，单称为"任一方"。）



　　鉴于：

　　1、因乙方存在资金需求，甲方接受丙方作为乙方的实际控制人就乙方融资行为提供担保，向乙方提供一揽子的人民币借款，并享有将任一部分或全部借款转为参与乙方或丙方作为实际控制人的项目公司的可转债或股权投资的权利。

　　2、甲方及其关联方与借款人已于 2015 年 11 月 5 日签署生效一份借款协议，甲方的关联方已向乙方支付借款金额<u>贰亿元</u>人民币整，约定借款年利率为 13%，期限至 2016 年 11 月 4 日（以下简称"原借款"）。

　　3、丙方为乙方的直接或间接合法股东并作为实际控制人，拟为乙方与甲方之间的一揽子债务融资，即总借款金额，提供连带责任保证。

　　为此，各方依据《中华人民共和国公司法》、《中华人民共和国合同法》相关规定，本着诚实信用，互惠互利原则，协商一致，特签订本协议，以求共同恪守：

借款及优先认购权之框架协议

## 第一条　定义

"**集团公司**" 合指乐视控股（北京）有限公司、百瑞文化传媒有限公司、乐视云计算有限公司、乐视创景科技（北京）有限公司、乐视虚拟现实科技（北京）有限公司、以及贾跃亭作为实际控制人直接或间接控制的乐视集团及其旗下的各类公司的总称；

"**目标公司**" 是指集团公司中经出借方不时选择有投资意向的可投资项目的实际落实并运行该项目的公司；

"**目标公司股份**" 是指目标公司股票或股权；

"**控制**"　就一个企业而言，是指一个直接或通过其子公司间接地拥有该企业超过半数的投票权，　除非有例外的情况，可以明确证明上述所有权没有构成控制。当出现下列情况时，一个人即使拥有该企业一半或少于一半的投票权，也存在控制关系：

　　（a）通过与其他出借方之间的协议安排控制超过一半的投票权；
　　（b）根据法律或协议控制该企业的财务或运营制度；
　　（c）有权指定或罢免董事会或类似权力机构多数成员并且通过上述董事会或类似机构控制该企业；
　　（d）有权在董事会或类似权力机构会议上行使多数股权并通过上述董事会或机构控制该企业。

"**违约事件**"指本协议第 8.1 条列明的任何事件或情形；

"**转换证券**"指投资方根据本协议第三条获得的目标公司所发行的股票、股权、或公司债券（包括可转债）。

## 第二条　借款

2.1、**总借款** 根据本协议的条款并限于其条件，投资方同意向借款人提供借款的本金最高额不超过 5.2 亿人民币（大写：**伍亿贰仟万元人民币**）（以实际出款的金额为准）（"**总借款**"），总借款包括已借出的原借款及其转为投资款之日止已发生的利息，以及依据本协议甲方不时向乙方或丙方的关联方陆续借出的新借款（下称"**新借款**"）。

2.2、**目的和用途** 除非投资方另行同意，总借款额应用于补充各借款人主营业务的流动资金，不得挪作他用。

2.3、**借款人的权利和义务连带** 本协议项下各借款人的权利和义务为连带的，任何借款人应为其他借款人未能履行其在本协议项下的义务承担连带责任。

2.4、**利率**　本次新借款的年利率为百分之十三(13%)。（为免歧义，在按本协议约定参与投资项目时，该投资项目项下有关利息率或是否支付利息应按届时签署的投资文件的约定为准）。

借款及优先认购权之框架协议

2.5、**借款支付** 除 2 亿元人民币的原借款及其已发生的利息之外，在 2016 年 6 月 17 日至 2016 年 7 月 15 日，甲方已实际向乙方分六笔支付总计为 3（叁）亿元人民币的**新借款**。甲方完成向本协议中任何借款人支付上述任何部分或全部总借款金额的，则该部分借款金额的付款义务已履行完毕。

2.6、**利息起算日** 甲方每次支付该部分借款金额并取得付款凭证的日期为利息开始起算之日。

2.7、**借款放款方式** 甲方将按照全体借款人指定的账户，将借款金额以银行转账的方式汇付至该指定账号。

　　　账户名称: 乐视控股（北京）有限公司
　　　开户银行: 中国农业银行股份有限公司北京市分行
　　　开户账号: ▆▆▆▆▆▆▆▆

## 第三条　优先认购权

**3.1、优先认购权**

　　3.1.1　借款人和保证人同意，投资方有权不时从借款人或保证人的任何关联方运作或发起的各类投资项目中，选定投资方有兴趣参与投资的项目（简称为"**目标公司**"或"**目标项目**"），且投资方有权在其认为适合情况下，将其或其关联方向借款方、保证人或其关联方提供的所有有偿务款资中应获得的债权权益（包括本金和已发生的利息）（"**投资方债权权益**"），以投资方满意的交易文件的安排，转为投资方选定参与目标项目的各类股权或可转换债权投资。

　　3.1.2、借款人和保证人同意，甲方目前拟参与投资的项目至少包括，乐视云视频项目、乐视 VR 项目、乐视汽车 Faraday Future 的可转债项或股权融资项目（即具体落实上述项目的公司主体包括但不限于北京百瑞文化传媒有限公司、乐视云计算有限公司、乐视创景科技（北京）有限公司、乐视虚拟现实科技（北京）有限公司等公司）。投资方式包括，甲方将部分或全部投资方债权权益转为对目标公司的股权、股票或可转债投资。

　　3.1.3、乙方和丙方保证其开展的包括但不限于乐视云视频项目、乐视 VR 项目、乐视汽车 Faraday Future 等项目（本协议签署时已启动融资的项目），投资方有优先认购权参与该项目下一轮的融资）在进行融资前至少 30 日，将项目融资文件（包括但不限于运营数据、财务数据、工商资料等）发送至甲方，为甲方行使优先认购权提供决策依据。甲方成为目标项目投资人后，乙方和丙方应保证就该项目建立成熟的投资人反馈机制，应每三个月定期或在投资方询问时（询问的时间间隔不应超过 3 个月），向甲方披露业务运营状况、基础财务报表、审计报表、持股任何变化等信息，确保甲方对目标项目运行情况有完整、充分、准确的知情权。

　　3.1.4、借款人和保证人应促使集团公司或目标公司拟发行的全部新的股权

3 / 12

借款及优先认购权之框架协议

证券（总称"新证券"）在正式发售前须首先向投资方（"受要约人"）发出书面要约（"优先权要约"）。受限于本协议第 3.1.1 条约定，优先权要约应较优于新证券的一般要约的条件和条款。优先权要约不可撤销，且有效期应在受要约人收到书面通知之日起为期 30 日（"要约期"）；

3.1.5、如受要约人意欲购买优先权要约项下的全部或部分新证券，其应将购买新证券的意向或承诺在要约期限届满之前书面通知集团或目标公司；

3.1.6、借款人和保证人应促使相关集团公司或目标公司，应在接到根据第 3.1.3 条行使优先权要约的受要约人其通知的股权证券购买意向或承诺后，应采取或促使相关集团公司或目标公司采取所有必要行动尽快向其分配和发行相关数额的新证券。

3.1.7、借款人和保证人应促使受要约人与相关集团公司或目标公司，就行使优先认购权项下的股权或可转换债权投资具体事项，订立相应交易文件，除应遵守本协议第三条、第六条既有约定事项外，交易文件可具体协商确定相应的行使方式、时间、数量及其他相关事项，包括但不限于利润分配、反稀释条款、业绩承诺、估值调整、现金补偿等。

**3.2.、投资方债权权益转换**

3.2.1、转换  投资方可以在总借款的还款日前任何时间，根据本协议之条款，将投资方债权权益转换为按第 3.1 条之规定认购的目标公司或目标项目的新证券  （"转换证券"）；（"转换"）。

3.2.2、 针对不同的可投资项目，甲方或关联方与可投资项目确定的目标公司，签署关于可投资项目的交易文件的生效日，则视为对应部分的总借款金额提前到期（称为"提前到期日"），对应的借款金额的本金和截止提前到期日的利息，累计计算转为对可投资项目的股权或可转债投资。

3.2.3、借款人和丙方承诺，在甲方正式通知其参与投资可投资项目之前，借款人和丙方有义务，并促使可投资项目的公司有义务，在甲方要求时，不时向甲方及时、准确、充分地披露可投资项目的运作、经营和融资等各类业务发展情况，包括但不限于技术研发方案、市场推广战略及其融资安排等，以有利于甲方行使优先购买权提供充分的决策依据为原则。

3.3、各方确认，在甲方与乙方和/或丙方的其他关联方签署拟投资目标公司最终投资协议后，投资协议中确定的投资额度将从本协议的总借款中扣除。未签署目标公司的最终投资协议之前，甲方仍然享有总借款的完整债权权益。

**第四条    债权的实现**

4.1、各方确认，本协议项下的新借款的借款到期日为 2017 年 12 月 30 日（"借款到期日"），但该借款到期日受限于上述第 3.2.2 条的提前到期日；

借款及优先认购权之框架协议

4.2、若截止借款到期日，借款人与甲方仍未完成签署令甲方满意的投资协议的，总借款的任何单独一笔借款到期日后的<u>十个工作日内</u>，乙方须将借款本金金额的本金和截止乙方通知甲方还款之日的利息全额偿还给甲方。否则，则视为借款人的借款逾期，适用本协议约定的违约条款。

### 第五条    承诺及保证

5.1、乙方是具有完全的、独立法律地位的法人主体，具备签署及履行本协议的民事行为和民事权利能力，并无任何正在发生或预期可能发生的，足以影响本协议履行的任何诉争及其他法律事项。

5.2、乙方和丙方承诺已经获得了接受甲方可能以债权转换或股权投资的必要授权，有资格、权利和授权签署并履行本协议；亦履行了接受甲方以债权转股权所需要的公司章程所规定的必要批准程序；并进一步承诺签署本协议及履行本协议项下的义务不会违反任何法律、法规，其公司章程或其他组织性文件，亦不违反其签订或对其有约束力的任何合同和协议的规定。

5.3、乙方和丙方将敦促甲方拟参与投资的目标公司的董事会及协调各方股东，完成在甲方选择投资可投资项目时（不论股权或债权）所需要签订的全套交易文件；并就本协议项下的债权转股权事项获得政府主管部门的批准；最终完成本协议项下转换股权的工商登记。

### 第六条  优先认购权的条件

6.1、甲方有权利针对甲方选定的投资项目的目标公司，行使将部分或全部的债权转为可转债或股权的优先认购权。

6.2、甲方在决定债转股的情况下，不论是否有其他冲突，均有权将本协议项下第三条与转股有关的约定适用于届时签署的相关交易文件。

### 第七条  甲乙丙方的权利

7.1、甲方债权转为股权后，甲方即成为投资目标公司的股东，不再享有债权人权益，转而享有股东权益。

7.2、乙方和丙方承诺，在甲方享有债权期间，下列行为应与甲方商议并且应于行为发生前得到甲方书面同意：

　　7.2.1、改变借款人和/或目标公司的主营业务，或修改借款人和/或目标公司的公司章程，对出借方的债权可能实质性造成重大不利影响的；
　　7.2.2、借款人和/或目标公司派发任何股息；
　　7.2.3、处置超过借款人和/或目标公司最近一期经审计净资产20%的其全部或重大部分的业务或资产；
　　7.2.4、借款人和/或目标公司向第三方提供任何担保或借款金额超过其最近一期经审计净资产20%。

借款及优先认购权之框架协议

## 第八条 违约条款

### 8.1 违约事件

下列条款中列明的任一事件均构成本协议的违约事件（"**违约事件**"），任何违约事件发生方（"**违约方**"）均应按照 8.2 条向其他方承担违约责任。

若借款人或保证人出现下列一项或多项情形出现或发生：

8.1.1、未及时支付本协议所载明的金额；

8.1.2、不能或有合理理由被视为不能支付到期债务或被视为资不抵债，或承认不能支付到期债务；

8.1.3、出现清算、终止、解散或破产情形（若该情形因借款人集团公司内部重组造成的，须先取得出借人书面同意，且本协议项下的所有义务将由其重组后的存续主体承继；出借人应自接到通知之日起五个工作日内书面答复，若无充分正当合理理由，不得否决，超过五个工作日不作答复的，视为同意；本约定同样适用于以下 8.1.4 条约定情形；

8.1.4、与他人合并或向他人出售全部或重要资产（与关联方进行合并或出售资产的除外，但须事先取得出借人书面同意；

8.1.5、做出的陈述和保证为不准确或具有误导性，对投资方的权益造成重大不利影响；

8.1.6、违反其在协议中所约定的义务或承诺；

8.1.7、重要资产被查封、没收、扣押或任何强制措施的，可能对投资方的债权权益造成重大不利影响的；

8.1.8、从事或进行任何与其主营营业务不同的业务，可能对投资方的债权权益造成重大不利影响的；

8.1.9、未经出借方同意，违反本协议之约定用途而使用借款资金；

8.1.10、因违反本协议或其未能促使目标公司履行本协议约定，甲方未实现本协议项下的优先认购权，甲方未能完成认购目标公司拟发行新证券、或未能及时取得转换所需的一切授权、或未能及时向借款方发行转换证券；

8.1.11、财务状况和偿债能力出现重大不利变化。

### 8.2    违约责任

### （一）违约金

8.2.1    若发生上述第 8.1 条项下任一违约事件的，出借方可停止发放借款，且无需任何行动，总借款的本金、利息和费用等未偿债务立即到期，且需立即支付。借款人或保证人应立即向出借方支付该等金额。

8.2.2    若发生上述第 8.1 条项下任一违约事件的，违约方应当向其他方支付相当于本协议总借款已实际支付的借款金额的 10%（百分之十）作为违约金。违约金自其他方通知之日起 3 个工作日内支付。

8.2.3    若借款人或保证人违约，除支付已借出的总借款及利息、违约金外，借

款人、保证人及目标公司同意向出借方支付所有代垫费用及为收取未偿债务而产生的费用，包括但不限于合理的律师费、诉讼费、仲裁费等。若出借方违约，出借方同意向借款人或保证人支付所有代垫费用，包括但不限于合理的律师费、诉讼费、仲裁费等。

8.2.4    上述第 8.2.1-8.2.3 条不影响出借方根据本协议第 8.2（二）条项下获得赔偿或根据适用的法律可能享有的权利。

**（二）逾期赔偿责任**

8.2.5    借款人和保证人共同和连带地对出借方和经准许的受让人因其违反本协议第 6.1 条的陈述与保证，或违反第五条的承诺或本协议的任何约定或协议而对出借方和经准许的受让人造成的费用和损失进行赔偿。

8.2.6    借款人和/或保证人、出借方在本协议项下的任何到期应付的款项未能及时支付，则从该到期日开始到其支付该款项的义务解除之日止计收逾期赔偿费用，每逾期一日，则按照到期未付款项的千分之五向其他方承担逾期赔偿责任。

8.2.7    未能转换的损失。若出借方拟参与的投资项目，具备可投资条件的，进行的情况下，如因借款人、保证人或目标公司任一方的原因导致出借方未能按照本协议第三条之规定完成行使优先认购权的，则除按第 8.2 条处理外，借款人和保证人还应补偿出借方因此导致的预期可得投资收益损失，但该投资收益应当按如下公式计算：

预期投资收益 =（拟投资的借款金额 + 拟投资日止期间的利息）× 10%

**第九条  丙方连带保证责任**

9.1、丙方作为连带责任保证人，同意对本协议项下借款方的全部义务和责任的如约履行，提供不可撤销的连带保证责任，保证范围包括借款本金、利息、违约金、罚息、实现债权的合理费用，并作为甲方选定参与的投资等项目的实际控制人，促使其有关的关联方完成股权交割或可转债登记等。

9.2、尽管作为本协议项下的保证人，同时也作为乙方借款方的实际控制人，还需要进一步促使和保证甲方选定参与的可投资项目，按照本协议约定的原则和要求，尽快完成交易文件签署和交割。

9.3、丙方作为连带责任保证人，保证期间为本协议生效之日起直至甲方完成实现本协议项下的所有债权或其债权完成转换成股权后终止。

**第十条  其他约定**

10.1、通知: 协议方之间的全部通知或通讯，包括但不限于本协议项下所有要约、文件、通知，均应以中文的手机短信、电子邮件或航空挂号信、快递服务发送。若通过手机短信或电子邮件发送的通知或通讯，均以向本协议所列手机号码，电

子邮件地址发出后即为送达；若以航空挂号信或快递服务发送的所有通知或通讯，则在向本协议所列住址交寄发出后六个日历日后即视为送达。

(a) 如发给出借方，送往：

致联系人：刘欣蕊
地址：北京市东城区东长安街1号东方广场东方经贸城东一办公楼十六层
传真：
手机电话：

(b) 如发给借款人或保证人，送往：

致联系人：封静
地址：北京市朝阳区姚家园路105号乐视大厦12层
传真：
手机电话：

**10.2、争议的解决方式：**协议各方在履行本协议中若发生争议，由三方协商解决。协商不成，各方同意将相关争议提交北京仲裁委员会由三名仲裁员组成的仲裁庭在北京进行仲裁。其仲裁应为终局，对各方均有约束力。

**10.3、**本协议自各方签字并盖章之日起生效，本协议正本一式捌份，甲方执二份、乙方各执一份、丙方执一份，每份具有同等法律效力。

（以下无正文，为签字内容）

借款及优先认购权之框架协议

出借方：韬蕴资本集团有限公司（公章）


授权代表签署：

签署人姓名：

2016 年 07 月 16 日

借款及优先认购权之框架协议

借款人之一：乐视控股（北京）有限公司（公章）

授权代表签署：

签署人姓名：

年　　　月　　　日

借款及优先认购权之框架协议

借款人之一：北京百瑞文化传媒有限公司（公章）

授权代表签署：

签署人姓名：

年　　月　　日

借款及优先认购权之框架协议

保证人：贾跃亭

亲笔签署：　　　　　　　　　　　　　年　　月　　日

# Framework Agreement for Loan and Preemptive Right

**Party A (Lender): Taoyun Capital Group Co., Ltd. (the "Investor")**

Registration number: 110101018216739
Registered address: Room 1, F/16, East No. 1 Office Building, East Economic and
Trade City, East Plaza, No. 1 East Chang'an Street, Dongcheng District, Beijing

**Party B1 (Borrower 1): LETV Holdings (Beijing) Co., Ltd. ("LETV Holdings")**

ID number: 110105014249493
Business address: Room 1102, 10th Floor, Building 3, No. 105 Yaojiayuan Road,
Chaoyang District, Beijing
Legal representative: Jia Yueting

**Party B2 (Borrower 2): Beijing Bairui Culture Media Co., Ltd.**

ID number: 110105014249493
Business address: Room 1102, 10th Floor, Building 3, No. 105 Yaojiayuan Road,
Chaoyang District, Beijing
Legal representative: Jia Yueting

**(Party B1 and Party B2 are collectively referred to as "Party B" or the
"Borrowers")**

**Party C (Guarantor): Jia Yueting**

ID card number: 1426xxxxxxxxx5081X
Contact address: 16/F, LETV Building, No. 105 Yaojiayuan Road, Chaoyang District,
Beijing

(Party A, Party B and Party C are collectively referred to as the **"Parties"** and
individually as a **"Party"**.)

**WHEREAS:**

1. Due to the capital needs of Party B, Party A accepts Party C as the actual
controller of Party B to provide guarantee for Party B's financing activities and
provide Party B with a package of loans in RMB, and has the right to convert any part
or all of the loans into convertible bonds or equity investments of the project company
in which Party B or Party C is the actual controller.

2. A loan agreement was signed and effective on November 5, 2015 between
Party A, its affiliates and the Borrowers, and Party A's affiliates have paid the loan
RMB **Two Hundred Million** to Party B, with an annual interest rate of 13% until
November 4, 2016 (the **"Original Loan"**).

3. As the direct or indirect legal shareholder of Party B and as the actual
controller, Party C intends to provide joint and several liability guarantee for the
package of debt financing between Party B and Party A, i.e. the total loan amount.

Therefore, in accordance with relevant provisions of the *Company Law of the*
1/13

*People's Republic of China* and the *Contract Law of the People's Republic of China*, and on the principle of good faith and mutual benefit, the Parties hereby enter into this Agreement through negotiation for mutual compliance.

## Article 1   Definitions

**"Group Companies"** mean collectively LETV Holdings (Beijing) Co., Ltd., Bairui Culture Media Co., Ltd., LETV Cloud Computing Co., Ltd., LETV Chuangjing Technology (Beijing) Co., Ltd., LETV VR Technology (Beijing) Co., Ltd., LETV Group directly or indirectly controlled by Jia Yueting as actual controller and its subsidiary companies;

**"Target Company"** means the company among the Group Companies selected from time to time and intended to be invested in by the Lender that actually implements and runs the investable project;

**"Shares of the Target Company"** means stock or equity of the Target Company;

**"Control"**, in the case of an enterprise, means that an individual owns more than half of the voting rights of the enterprise directly or indirectly through its subsidiaries, and unless there are exceptions, it can be clearly demonstrated that such ownership does not constitute Control. In the following cases, even if an individual owns half or less of the voting rights of the enterprise, there is a Control relationship;

(a) Control more than half of the voting rights through agreements arrangement with other lenders;

(b) Control the financial or operational system of the enterprise by law or agreement;

(c) have the power to appoint or remove a majority of the members of the board or similar authority and Control the enterprise through the board or similar authority;

(d) have the right to exercise the majority interest at meetings of the board or similar authority and Control the enterprise through the board or similar authority.

**"Event of Default"** means any event or circumstance set forth in Article 8.1 of this Agreement.

**"Convertible Securities"** mean the stock, equity or corporate bond (including convertible bond) issued by the Target Company that is obtained by the Investor according to Article 3 of this Agreement.

## Article 2   Loan

**2.1 Total Loan.** Subject to the terms and conditions of this Agreement, the maximum amount of the principal of the loan agreed by the Investor to be provided for the Borrowers is not more than RMB 520 million (in words: **RMB Five Hundred and Twenty Million**) (subject to the actual amount paid) (the **"Total Loan"**). The Total Loan shall include the **Original Loan** lent and **the interest incurred** until it is converted into investment fund, as well as the new loan successively lent by Party A

from time to time to the affiliates of Party B or Party C according to this Agreement (the "**New Loan**").

**2.2 Purpose and Use.** Unless otherwise agreed by the Investor, the Total Loan shall be used to supplement the working capital of the main business of the Borrowers and shall not be diverted for other purposes.

**2.3 Joint and Several Rights and Obligations of the Borrowers.** The rights and obligations of the Borrowers under this Agreement are joint and several. Each Borrower shall be jointly and severally liable for the failure of the other Borrower to perform its obligations under this Agreement.

**2.4 Interest Rate.** The annual interest rate for the New Loan is thirteen percent (13%). (For the avoidance of ambiguity, when participating in an investment project according to this Agreement, relevant interest rate or whether interest is paid under the investment project shall be subject to the investment document signed at that time.)

**2.5 Payment of Loan.** In addition to the Original Loan RMB 200 million and the interest incurred, from June 17, 2016 to July 15, 2016, Party A has actually paid a **New Loan** of RMB 300 million (in words: RMB Three Hundred Million) in total to Party B in six installments. If Party A completes the payment of any part or all of the Total Loan to any Borrower in this Agreement, the obligation to pay such loan shall have been fulfilled.

**2.6 Interest Date.** The date on which Party A pays the loan and obtains the payment voucher shall be the date on which the interest begins.

**2.7 Method of Loan.** Party A shall remit the loan to the account designated by the Borrowers by bank transfer.

> Account name: LETV Holdings (Beijing) Co., Ltd.
> Bank of deposit: Beijing Branch of Agricultural Bank of China Co., Ltd.
> Account number: 11042701040008628

### Article 3    Preemptive Right

**3.1 Preemptive Right**

3.1.1    The Borrowers and the Guarantor agree that the Investor shall, from time to time, have the right to select a project in which the Investor is interested from various investment projects operated or initiated by any affiliate of the Borrowers or the Guarantor (the "**Target Company**" or the "**Target Project**"), and have the right to, as it sees fit, convert the debt to be acquired from all debt financing provided by it or its affiliates for the Borrowers, the Guarantor or their affiliates (including the principal and the interest incurred) (the "**Investor's Debt Interest**") into the equity or convertible debt investment in the Target Project selected by the Investor as arranged according to the transaction document satisfactory to the Investor.

3.1.2    The Borrowers and the Guarantor agree that the projects that Party A intends to invest in at least include LETV Cloud Video Project, LETV VR Project and Convertible Bond or Equity Financing Project of LETV Auto

3 / 13

Faraday Future (main companies to implement the projects include but are not limited to Beijing Bairui Culture Media Co., Ltd., LETV Cloud Computing Co., Ltd., LETV Chuangjing Technology (Beijing) Co., Ltd., LETV VR Technology (Beijing) Co., Ltd., etc.). The way of investment shall include that Party A converts part or all of the Investor's Debt Interest into equity, stock or convertible bond investment in the Target Company.

3.1.3   Party B and Party C warrant that, for their projects including but not limited to LETV Cloud Video Project, LETV VR Project and LETV Auto Faraday Future (for a project financed when this Agreement is signed, the Investor shall have the preemptive right to participate in the next round of financing for the project), the project financing documents (including but not limited to operating data, financial data and business data) will be sent to Party A at least 30 days before financing to provide decision-making basis for Party A to exercise the preemptive right. After Party A becomes the investor of the Target Project, Party B and Party C shall warrant to establish a mature investor feedback mechanism for the project, and disclose to Party A information such as business operation status, basic financial statements, audit statements and any changes in shareholding every three months on a regular basis or when the Investor inquiries (the time interval for inquiries shall not exceed three months), so as to ensure that Party A has complete, full and accurate information about the operation of the Target Project.

3.1.4   The Borrowers and the Guarantor shall cause a written offer (the **"Priority Offer"**) to be issued to the Investor (the **"Offeree"**) before the formal offering of all new equity securities to be issued by the Group Companies or the Target Company (collectively the **"New Securities"**). Subject to Article 3.1.1 of this Agreement, the Priority Offer shall be superior to the terms and conditions of general offers of the New Securities. The Priority Offer shall be irrevocable and remain in force for a period of 30 days from the date of receipt of the written notice to the Offeree (the **"Offer Period"**);

3.1.5   If the Offeree intends to purchase all or part of the New Securities under the Priority Offer, it shall notify the Group or the Target Company in writing of its intention or acceptance to purchase the New Securities prior to the expiration of the Offer Period;

3.1.6   The Borrowers and the Guarantor shall cause relevant Group Companies or the Target Company to take all necessary actions to allocate and issue relevant amount of New Securities to them as soon as possible after receiving the notice of the Offeree exercising the Priority Offer according to Article 3.1.3 on the intention or acceptance to purchase the equity securities.

3.1.7   The Borrowers and the Guarantor shall cause the Offeree and relevant Group Companies or the Target Company to make relevant transaction documents regarding specific matters relating to the equity or convertible debt investment under the exercise of the preemptive right. Except as agreed in Articles 3 and 6 of this Agreement, the transaction documents may be specifically negotiated to determine corresponding exercise method, time, quantity and other relevant matters, including but not limited to profit distribution, anti-dilution clause, performance commitment, valuation adjustment, cash compensation, etc.

Framework Agreement for Loan and Preemptive Right

**3.2 Conversion of the Investor's Debt Interest**

3.2.1   The Investor's Debt Interest may be converted, at any time before the repayment date of the Total Loan, into New Securities of the Target Company or the Target Project subscribed for pursuant to Article 3.1 according to this Agreement (the **"Convertible Securities"**); (the **"Conversion"**)

3.2.2   For different investable projects, the entry into force of the transaction document for the an investable project signed by Party A or its affiliates and the Target Company determined for the investable project shall be deemed to be early maturity of corresponding part of the Total Loan (the **"Early Maturity"**). The principal and the interest until the Early Maturity of corresponding loan shall be subject to accumulative calculation and converted into equity or convertible bond investment in the investable project.

3.2.3   The Borrowers and Party C undertake that, before Party A formally notifies them of investing in an investable project, the Borrowers and Party C shall be obliged to and shall cause the company of the investable project to be obliged to, at the request of Party A, disclose to Party A timely, accurately and fully the operation, management and financing of the investable project and various business development, including but not limited to technical R&D plan, marketing strategy and financing arrangement, etc. so as to provide sufficient decision-making basis for Party A to exercise the preemptive right.

3.3 The Parties confirm that, after Party A and other affiliates of Party B and/or Party C sign the definitive investment agreement on the Target Company to be invested, the amount of investment determined in the investment agreement shall be deducted from the Total Loan under this Agreement. Before signing the definitive investment agreement on the Target Company, Party A shall still enjoy the complete debt in the Total Loan.

### Article 4    Realization of Debt

4.1 The Parties confirm that the maturity date of the New Loan hereunder is December 30, 2017 (the **"Maturity Date of the Loan"**). However, the Maturity Date of the Loan is subject to the Early Maturity in Article 3.2.2;

4.2 If, as of the Maturity Date of the Loan, no investment agreement satisfactory to Party A is signed by the Borrowers and Party A, Party B shall fully repay the loan principal and the interest as of the date on which Party B notifies Party A of repayment to Party A **within ten working days** after the maturity date of any single loan in the Total Loan. Otherwise, the loan of the Borrowers shall be deemed overdue and the provisions on breach of contract agreed herein shall apply.

### Article 5    Undertakings and Warranties

5.1 Party B is a legal entity with full and independent legal status, has the capacity for civil conduct and civil rights to execute and perform this Agreement, and is not involved in any litigation or other legal matters occurring or expected that may affect the performance of this Agreement.

5.2 Party B and Party C undertake that they have got necessary authorization to accept that Party A may convert with debt or invest with equity, have the qualification, right and authority to execute and perform this Agreement and have performed necessary approval procedures specified by the articles of association required to accept Party A to convert debt into equity, and further undertake that the execution of this Agreement and the performance of obligations hereunder will not violate any laws and regulations, the articles of association or other organizational documents, or the provisions of any contracts and agreements entered into by or binding upon them.

5.3 Party B and Party C shall urge the board of the Target Company to be invested in by Party A and coordinate with shareholders of the Parties to complete the full set of transaction documents to be signed when Party A selects to invest in an investable project (whether equity or debt), obtain the approval from the government authority with respect to debt-for-equity swap hereunder, and finally complete business registration of equity conversion hereunder.

### Article 6    Conditions for Preemptive Right

6.1 Party A shall have the right to exercise the preemptive right to convert part or all of its debt into convertible bond or equity against the Target Company of the investment project selected by Party A.

6.2 If Party A decides to convert debt into equity, it shall have the right to apply the provisions in Article 3 of this Agreement in connection with the equity transfer to relevant transaction document signed at that time, regardless of other conflicts.

### Article 7    Rights of Party A, Party B and Party C

7.1 After debt-for-equity swap, Party A shall become a shareholder of the Target Company that doesn't enjoy the creditor's equity but the shareholders' equity.

7.2 Party B and Party C undertake that, when Party A enjoys the debt, a negotiation with Party A is required for the following acts and the written consent of Party A shall be obtained before such acts:

> 7.2.1 the main business of the Borrowers and/or the Target Company is changed or the articles of association of the Borrowers and/or the Target Company are modified, which may materially have a material adverse effect on the debt of the Lender;
> 7.2.2 the Borrowers and/or the Target Company pay any dividend;
> 7.2.3 all or a substantial portion of the business or assets of the Borrowers and/or the Target Company in excess of 20% of the recent audited net assets is disposed of;
> 7.2.4 the Borrowers and/or the Target Company provide any security or loan for a third party in excess of 20% of the recent audited net assets.

### Article 8    Default Clauses

**8.1    Event of Default**

Any event set forth below shall constitute a breach of this Agreement (the **"Event of Default"**), and any party causing the Event of Default (the **"Defaulting Party"**) shall be liable for breach to other parties in accordance with Article 8.2.

One or more of the following circumstances occurs to the Borrowers or the Guarantor:

8.1.1 failing to pay the amount stated in this Agreement in a timely manner;

8.1.2 unable to or deemed unable to pay due debt on reasonable grounds or deemed insolvent, or admitting inability to pay due debt;

8.1.3 subject to liquidation, termination, dissolution or bankruptcy (if due to internal reorganization of the Borrowers, the written consent of the Lender shall be obtained in advance, and all obligations hereunder shall be assumed by the subject survived after the reorganization; the Lender shall reply in writing within five working days after receiving the notice, and shall not reject without fully just cause; if no reply is given after five working days, it shall be deemed to be agreed; this provision also applies to Article 8.1.4 below);

8.1.4 merging with or selling all or major assets to others (other than merging with or selling assets to the affiliates, provided that the written consent of the Lender is obtained in advance);

8.1.5 making inaccurate or misleading representations and warranties, which has a material adverse effect on the interests of the Investor;

8.1.6 in breach of the obligations or undertakings under this Agreement;

8.1.7 subject to sealing up, confiscation, seizure or any enforcement action of any material asset, which may have a material adverse effect on the Investor's Debt Interest;

8.1.8 engaging in or conducting any business other than the main business, which may have a material adverse effect on the Investor's Debt Interest;

8.1.9 using the loan without the consent of the Lender in violation of the purpose agreed herein;

8.1.10 due to breach of this Agreement or failure to cause the Target Company to perform this Agreement, Party A failing to realize the preemptive right hereunder, subscribe for the New Securities to be issued by the Target Company, get all authorization necessary for conversion or issue Convertible Securities to the Borrowers;

8.1.11 subject to material adverse change in financial position and solvency.

## 8.2  Liability of Default

### (I) Liquidated damages

8.2.1    In case of any Event of Default under Article 8.1, the Lender may stop making the loan without any action, and the outstanding debt such as principal, interest and fees on the Total Loan shall be immediately due and payable. The Borrowers or the Guarantor shall immediately pay such amount to the Lender.

8.2.2    In case of any Event of Default under Article 8.1, the Defaulting Party shall pay 10% (ten percent) of the actually paid amount of the Total Loan hereunder to other parties as liquidated damages. The liquidated damages shall be paid within 3

working days from the date on which a notice is received from other parties.

8.2.3    In case of default of the Borrowers or the Guarantor, in addition to payment of the Total Loan lent, the interest and the liquidated damages, the Borrowers, the Guarantor and the Target Company agree to pay all reimbursed expenses and charges incurred to collect outstanding debt to the Lender, including but not limited to reasonable attorney's fees, litigation costs and arbitration fees. In case of default of the Lender, the Lender agrees to pay all reimbursed expenses to the Borrowers or the Guarantor, including but not limited to reasonable attorney's fees, litigation costs and arbitration fees.

8.2.4    Articles 8.2.1-8.2.3 shall not affect the rights of the Lenders to compensation according to Article 8.2(II) of this Agreement or to be enjoyed under applicable laws.

**(II) Liability for delay**

8.2.5    The Borrowers and the Guarantor shall jointly and severally compensate the Lender and the permitted assignee for the costs and losses incurred to the Lender and the permitted assignee due to their breach of the representations and warranties under Article 6.1, the undertakings under Article 5 or any provision of this Agreement.

8.2.6    If any amounts due and payable by the Borrowers and/or the Guarantor, the Lender hereunder are not paid in time, the late compensation cost shall be collected from the due date to the date on which the obligation to pay such amounts is relieved. For each day delayed, five thousandths of the overdue payment shall be paid to other parties as liability for delay.

8.2.7    Inconvertible losses. If the investment project to be participated in by the Lender is investable and carried out, and the Lender fails to exercise the preemptive right according to Article 3 hereof due to the Borrowers, the Guarantor or the Target Company, in additional to handling according to Article 8.2, the Borrowers and the Guarantor shall also compensate the Lender for the loss of expected investment income thus incurred, but the investment income shall be calculated by the following formula:

Expected investment income = (Loan amount to be invested + Interest as of the proposed investment date) x 10%

### Article 9    Joint and Several Guarantee Liability of Party C

9.1 Party C, as joint and several liability guarantor, agrees to provide irrevocable joint and several liability guarantee for performance of all obligations and responsibilities of the Borrowers hereunder as agreed, covering the loan principal, interest, liquidated damages, default interest and reasonable expenses to realize the debt, and as actual controller of projects including investment selected by Party A, agrees to cause its relevant affiliates to complete equity delivery or convertible bond registration, etc.

9.2 As the guarantor hereunder and the actual controller of Party B, Party C shall also further cause and guarantee signing and delivery of the transaction document as soon as possible according to the principles and requirements of this Agreement for the

investable project selected by Party A.

9.3 Party C, as joint and several liability guarantor, shall have the guaranty period from the effective date of this Agreement to the date on which Party A realizes all debts hereunder or its debt is converted into equity.

## Article 10   Miscellaneous

**10.1 Notice:** All notices or communications among the Parties, including but not limited to all offers, documents and notices hereunder, shall be sent in Chinese by SMS, E-mail, registered airmail or express service. Any notice or communication sent by SMS or E-mail shall be deemed to be served after sent to the mobile phone number or E-mail address listed in this Agreement; all notices or communications sent by registered airmail or express service shall be deemed to be served six calendar days after sent to the address listed in this Agreement.

(a) to the Lender, to:

    Contact: Liu Xinrui
    Address: F/16, East No. 1 Office Building, East Economic and Trade City, East
    Plaza, No. 1 East Chang'an Street, Dongcheng District, Beijing
    Fax:
    Mobile phone number:

(b) to the Borrowers or the Guarantor, to:

    Contact: Feng Jing
    Address: 12th Floor, LETV Building, No. 105 Yaojiayuan Road, Chaoyang
    District, Beijing
    Fax:
    Mobile phone number:

**10.2    Dispute Resolution:** Any dispute arising from the performance of this Agreement shall be resolved by the three parties through negotiation. If negotiation fails, the Parties agree to submit relevant dispute to the arbitration tribunal composed of three arbitrators of Beijing Arbitration Commission for arbitration in Beijing. The arbitration shall be final and binding upon the Parties.

10.3    This Agreement shall come into force upon being signed and sealed by the Parties. The Agreement is made in eight originals, with two held by Party A, one held by Party B and one held by Party C. each copy shall have the same legal effect.

(Followed by signature pages)

Lender: Taoyun Capital Group Co., Ltd. (official seal)



Authorized Representative (signature):

Name of signatory:

July 16, 2016

Borrower: LETV Holdings (Beijing) Co., Ltd. (official seal)

Authorized Representative (signature):

Name of signatory:

Date:

Framework Agreement for Loan and Preemptive Right

Borrower: Beijing Bairui Culture Media Co., Ltd. (official seal)



Authorized Representative (signature)

Name of signatory:

Date

Framework Agreement for Loan and Preemptive Right

Guarantor: Jia Yueting

Genuine signature:

Date

专业的法律翻译综合服务商    *Tel:010-5654 2019*
*Website:www.lankaifanyi.com*

## 翻译证明

## CERTIFICATE

敬启者：

To Whom It May Concern,

兹证明我公司北京蓝海译通翻译服务有限公司，以下简称"我公司"，为下列文件的翻译
提供者，并以此函证明中文原文与英文翻译件内容表达一致。

This is to certify that we, Beijing Lan Hai Translation Service Co., Ltd., is the provider of the
documents listed below, and certify with this CERTIFICATE that the Chinese original is truly and
accurately expressed by its corresponding English translation.

文件列表：

List of documents:

1.    《借款及优先认购权之框架协议-5.2 亿-2016.7.16.》

《framework Agreement for Loan and Preemptive Right-520 million-2016.7.16》

2.    《还款通知书》

《Notice of Repayment》

3.    《乐视移动借款合同-2 亿-2015.6》

《Loan Contract of LETV Mobile-200 million-2015.6》

4.    《三中院判决（2017）京 03 民初 248 号》

《Civil Judgment of the Third Intermediate People's Court of Beijing(2017) Jing 03 Min Chu No. 248》

5.    《回购担保协议 》

《Repurchase Guarantee Agreement》

6.    《商业保理业务合同》

《Commercial Factoring Business Contract》



专业的法律翻译综合服务商
Website:www.lanhaifanyi.com

*Tel:010-5654 2019*

7.    《商业保理业务合同服务费协议》

      《Agreement on Service Fee under the Commercial Factoring Business Contract》

8.    《补充协议》

      《Supplementary Agreement》

北京蓝海译通翻译服务有限公司
Beijing Lan Hai Translation Service Co., Ltd.
2020 年 1 月 23 日
January 23, 2020





LEGAL SERVICES

RECEIVED
JAN 2 4 2020

TRK# 7775 9378 6278

W1 BNOA

FRI - 24 JAN 8:30A
FIRST OVERNIGHT

97005
OR-US  PDX

ORIGIN ID:APCA     (415) 582-4800
CHRISTOPHER PAK
150 CALIFORNIA STREET
19TH FLOOR
SAN FRANCISCO, CA 94111
UNITED STATES US

TO  YUETING JIA
C/O EPIQ CORPORATE RESTRUCTURINGLLC
10300 SW ALLEN BLVD.

BEAVERTON OR 97005

(503) 350-5800
REF: 0078/001

BILL SENDER

SHP DATE: 23JAN20
ACT WGT: 1.00 LB
CAD: 40321609/NET14220

FedEx
Express

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled: **NOTICE OF OBJECTION TO CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 3, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **April 3, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA U.S. MAIL**
United States Bankruptcy Court
Central District of California
Attn:  Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA  90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 3, 2020 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 2                    **F 3007-1.1.NOTICE.OBJ.CLAIM**
DOCS_LA:328812.1 46353/002

**SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ**
**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Jerrold L Bregman     ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg     jdulberg@pszjlaw.com
- Lei Lei Wang Ekvall     lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Stephen D Finestone     sfinestone@fhlawllp.com
- Richard H Golubow     rgolubow@wghlawyers.com,
  pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Alexandra N Krasovec     krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan     blogan@omm.com
- Robert S Marticello     Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- David W. Meadows     david@davidwmeadowslaw.com
- John A Moe     john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison     kelly.l.morrison@usdoj.gov
- Malhar S Pagay     mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince     cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Victor A Sahn     vsahn@sulmeyerlaw.com,
  pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.in
  foruptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- Randye B Soref     rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor     btaylor@taylorlawfirmpc.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Felix T Woo     fwoo@ftwlawgroup.com, admin@ftwlawgroup.com
- Claire K Wu     ckwu@sulmeyerlaw.com,
  mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- Emily Young     pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- David B Zolkin     dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 2                    **F 3007-1.1.NOTICE.OBJ.CLAIM**
DOCS_LA:328812.1 46353/002