| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Richard M. Pachulski (CA Bar No. 90073)<br>Jeffrey W. Dulberg (CA Bar No. 181200)<br>Malhar S. Pagay (CA Bar No. 189289)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Boulevard, 13th Floor<br>Los Angeles, CA 90067<br>Telephone: 310/277-6910<br>Facsimile: 310/201-0760<br>Email: rpachulski@pszjlaw.com<br>   jdulberg@pszjlaw.com<br>   mpagay@pszjlaw.com<br><br>☒ *Attorney for:* Debtor | FOR COURT USE ONLY |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>YUETING JIA,<br><br>                              Debtor(s). | CASE NO.: 2:19-bk-24804-VZ<br><br>CHAPTER: 11<br><br>### NOTICE OF OBJECTION TO CLAIM<br><br>DATE:  May 7, 2020<br>TIME:   1:30 p.m.<br>COURTROOM: 1368<br>PLACE: 255 East Temple Street<br>              Los Angeles, CA 90012 |

1. TO *(specify claimant and claimant's counsel, if any)*:   Shenzhen Jincheng Commercial Factoring Co., Ltd. and Jie Feng

2. NOTICE IS HEREBY GIVEN that the undersigned has filed an objection to your Proof of Claim (Claim No. 56) filed in the above referenced case. The Objection to Claim seeks to alter your rights by disallowing, reducing or modifying the claim based upon the grounds set forth in the objection, a copy of which is attached hereto and served herewith.

3. **Deadline for Opposition Papers**: You must file and serve a response to the Objection to Claim not later than 14 days prior to the hearing date set forth above.

   **IF YOU FAIL TO TIMELY RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**

Date:   April 3, 2020

PACHULSKI STANG ZIEHL & JONES LLP
Printed name of law firm

*/s/ Malhar S. Pagay*
Signature

Date Notice Mailed: April 3, 2020

Malhar S. Pagay
Printed name of attorney for objector

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1                    **F 3007-1.1.NOTICE.OBJ.CLAIM**
DOCS_LA:328813.1 46353/002

Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email:    rpachulski@pszjlaw.com
          jdulberg@pszjlaw.com
          mpagay@pszjlaw.com

Attorneys for Debtor and Debtor in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:19-bk-24804-VZ |
| YUETING JIA,[1] | Chapter 11 |
| Debtor. | **DEBTOR'S NOTICE OF OBJECTION AND OBJECTION TO CLAIM 56 FILED BY SHEHZHEN JINCHENG COMMERCIAL FACTORING CO., LTD.; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF YUETING JIA AND SHAN HE IN SUPPORT THEREOF** |
| | Date:      May 7, 2020<br>Time:      1:30 p.m.<br>Place:     Courtroom 1368<br>            Roybal Federal Building<br>            255 E. Temple Street<br>            Los Angeles, California 90012 |
| | Judge:     Hon. Vincent P. Zurzolo |

**PLEASE TAKE NOTICE** that, on May 7, 2020, beginning at 1:30 p.m. (Pacific Time), or as soon thereafter as counsel may be heard before the Hon. Vincent P. Zurzolo, in Courtroom 1368 of the Edward R. Roybal Federal Building and Courthouse, located at 255 E. Temple Street, Los

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Angeles, California 90012, pursuant to the *Order (I) Approving the Fourth Amended Disclosure Statement; (II) Approving the Voting Procedures and Tabulation Procedures; (III) Setting the Date and Time for the Confirmation Hearing and Related Deadlines; (IV) Waiving Certain Local Rules and Procedures Related to the Timing and Approval of the Fourth Amended Disclosure Statement and Confirmation of the Third Amended Plan; and (V) Granting Related Relief* [Docket No. 485] (the "Disclosure Statement Order"), which provides, in pertinent part, that if the Debtor has served an objection or request for estimation as to a claim by April 2, 2020, such claim shall be temporarily disallowed for voting purposes only (and not for purposes of allowance or distribution), except to the extent and in the manner as may be set forth in such objection or request, or as ordered by the Court before the voting deadline, i.e., April 30, 2020 at 4:00 p.m. (Beijing Time),[2] Yueting Jia, the debtor and debtor in possession herein (the "Debtor" or "YT"), will object (the "Objection") to claim number 56, filed by Shenzhen Jincheng Commercial Factoring Co., Ltd.  (the "Claim"), in accordance with a share transfer agreement dated June 30, 2017 (the "Share Transfer Agreement") entered into by and among the Debtor, Meng Wu, LESHI Holding (Beijing) Ltd. Co. ("LESHI"), and the Claimant, pursuant to which Meng Wu agreed to transfer equity interests of a third party to the Claimant in exchange for the cancellation of debt in the amount of $97.91 million[3] that LESHI owed under a certain loan agreement.  Pursuant to the Share Transfer Agreement, the Debtor's liability to the Claimant has been canceled.

A true and correct copy of the Claim is attached to the *Notice of Objection to Claim*, which has been served on Claimant.  The Objection seeks to disallow the Claim only in connection with voting on the *Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 464] and does not impact the ultimate allowance of the Claim or distributions the Claimant may be entitled to receive on account of the Claim.

**PLEASE TAKE FURTHER NOTICE** that the Objection has been served upon Claimant and all parties entitled thereto and is based upon the supporting Memorandum of Points and

---

[2] Disclosure Statement Order, 6 at ¶ 17(e).

[3] This amount has been converted from the $692 million Chinese Yuan to US Dollars using 7.0676, the closing rate published by the Wall Street Journal as of October 14, 2019, the Petition Date. *See* https://www.wsj.com/market-data/quotes/fx/USDCNY/historical prices<https://www.wsj.com/market data/quotes/fx/USDCNY/historical-prices

Authorities and Declarations of Yueting Jia and Shan He, the statements, arguments and representations of counsel who appear at the hearing regarding the Objection, the files and records in the above-captioned case, any evidence properly before the court prior to or at the hearing regarding the Objection and all matters of which the court may properly take judicial notice.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), responses to the Objection must be filed with the Court and served upon the Debtor's counsel at the address in the upper left-hand corner of this Objection no later than fourteen (14) days prior to the hearing date.  Responses must contain a written statement of all reasons the Objection is opposed and must include declarations and copies of all documentary evidence on which the responding party intends to rely.  Responses must be filed either electronically or at the following location:

United States Bankruptcy Court
Attention:  Clerk's Office
255 E. Temple Street
Los Angeles, CA 90012

**IF YOU DO NOT OPPOSE THE OBJECTION YOU DO NOT NEED TO FILE ANY PAPERS, SIGN ANY FURTHER AGREEMENTS OR TAKE ANY FURTHER ACTION.**

**PLEASE TAKE FURTHER NOTICE** that if a response is not timely filed and served, the Debtor will request that the court grant the relief requested in the Objection without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that if a response is timely filed and served upon the Debtor's counsel, the Court, in its discretion, may treat the initial hearing as a status conference if it determines that the Objection involves disputed factual issues or will require presentation of substantial evidence or argument.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order (i) sustaining the Objection; (ii) disallowing the Claim in its entirety for voting purposes; and (iii) granting such other and further relief as may appropriate under the circumstances.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Dated:    April 2, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

By    */s/ Malhar S. Pagay*
Richard M. Pachulski
Jeffrey W. Dulberg
Malhar S. Pagay

Counsel for Debtor and Debtor in
Possession

4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 102, 105 and 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 3007 and 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### II.

### BACKGROUND

#### A.    Commencement of the Chapter 11 Case

On October 14, 2019 (the "Petition Date"), the Debtor commenced this case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). The Debtor continues in possession of his property and manages his affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On October 25, 2019, the U.S. Trustee appointed the Official Committee of Unsecured Creditors  pursuant to section 1102(a)(1) of the Bankruptcy Code (the "Committee") [Docket No. 45]. The Committee consists of the following members: (i) Ping An Bank., Ltd. Beijing Branch; (ii) China Minsheng Trust Co., Ltd; (iii) Shanghai Leyu Chuangye Investment Management Center LP; (iv) Jiangyin Hailan Investment Holding Co., Ltd; and (v) Shanghai Qichengyueming Investment Partnership Enterprise.

On November 13, 2019, the Court entered an order setting January 24, 2020, as the general deadline (the "Bar Date") for the filing of proofs of claim or proofs of interest against the Debtor's estate.  In accordance with the Court's Order establishing the Bar Date, notice of the Bar Date was given by mail to the Debtors' creditors and interest holders.

On December 18, 2019, Judge Karen B. Owens of the Delaware Bankruptcy Court transferred the Chapter 11 Case to this Court.

**B.      Approval of the Debtor's Disclosure Statement**

On March 20, 2020, the Court entered the Disclosure Statement Order, pursuant to which the

Court approved the Debtor's *Fourth Amended Disclosure Statement with Respect to Debtor's Third*

*Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 465] in

respect of the *Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy*

*Code* [Docket No. 464] (the "Plan"), and granted other relief.

The Disclosure Statement Order provides, in pertinent part, that if the Debtor has served an

objection or request for estimation as to a claim by April 2, 2020, such claim shall be temporarily

disallowed for voting purposes only and not for purposes of allowance or distribution, except to the

extent and in the manner as may be set forth in such objection, or as ordered by the Court before the

voting deadline, i.e., April 30, 2020 at 4:00 p.m. (Beijing Time).  Disclosure Statement Order, 6 at

¶ 17(e).

**C.      The Claim**

Tao Yun Capital Co. Ltd. ("Tao Yun") (*a.k.a.* TWC Group Co., Ltd), Beijing Lan Capital

Investment Fund Management, and Shenzhen Jincheng Commercial Factoring Co Ltd. (each a

"TWC Claimant" and collectively, the "TWC Claimants") are related entities under common control

of an individual. Such common control is evidenced by the fact that the same individual by the name

of Jie Feng filed proofs of claim on behalf of all of the TWC Claimants (## 53, 54, 56). The proofs

of claim at issue indicate that Feng is a project manager at TWC Group Co., Ltd.

To substantiate their claims, each of the TWC Claimants, including the Claimant, attached to

their proofs of claim documents evincing obligations owed by LESHI Holding (Beijing) Ltd. Co.

("LESHI") which the Debtor personally guaranteed.

Pursuant to section 2.02 of the Share Transfer Agreement, attached hereto as **Exhibit "A,"**

entered into by and among the Debtor, Meng Wu, LESHI, and Tao Yun, Meng Wu agreed to

transfer equity interests of a third party to Tao Yun in exchange of a cancellation of debt in the

amount of $97.91 million[4] that LESHI or its related companies owed under the Loan Agreement.

The provision states, in part, in English:

---

[4] This amount has been converted from the $692 million Chinese Yuan to US Dollars using 7.0676, the closing exchange

DOCS_LA:328761.1 46353/002

(b) The second part of the Transaction Consideration is in the form of credit deduction, **Taoyun Capital and its related parties** and the Actual Controller of LeEco and the LeEco Related Entities **agree to deduct the consideration for the Transaction in the amount of RMB 692 million** using the claims contained in the package loans totaled RMB 692 million yuan. After this Agreement is signed and becomes effective, the above claims are deemed to have been deducted.

(c) The Transferor and the Actual Controller of LeEco hereby clarify and confirm that after the completion of the above two parts, the Transferee shall be deemed to have paid the full consideration for the Transaction.

(Emphasis added).  Attached hereto as **Exhibit "B"** is an English translation of the Share Transfer Agreement.

## III.

## ARGUMENT

### A.    Procedural Requirements for Objections to Claims

Bankruptcy Rule 3007 governs the procedure for objections to claims.  It provides as follows: "An objection to an allowance of a claim shall be in writing and filed.  A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant . . . at least thirty days prior to the hearing." Fed. R. Bankr. P. 3007.

Pursuant to Bankruptcy Rule 3007, a copy of the Objection will be mailed to Claimants at the addresses provided by Claimants in the Claims, and, where available and if different from the address provided on the proof of claim, on each Claimant's address registered with the National Enterprise Credit Information Publicity System (http://www.gsxt.gov.cn/index.html), a government-run, national, enterprise credit inquiry system in the People's Republic of China, at least thirty days prior to the hearing date for consideration of the Objection.  Accordingly, by the time of the hearing hereon, the Trustee will have complied with Bankruptcy Rule 3007.

### B.    The Court Must Determine the Allowance of a Claim Subject to Objection

With certain exceptions, section 502(b) of the Bankruptcy Code requires, in relevant part,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

rate  published by the Wall Street Journal as of October 14, 2019, the Petition Date. *See* https://www.wsj.com/market-data/quotes/fx/USDCNY/historical prices<https://www.wsj.com/market data/quotes/fx/USDCNY/historical-prices

that if a party in interest objects to a claim, "the Court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that -- (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured …."

## C.    Burden of Proof

All allegations set forth in a properly filed proof of claim are taken as true and, if the allegations set forth all facts necessary to establish a claim and are not self-contradictory, the proof of claim constitutes *prima facie* evidence of the validity and amount of the claim.  11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f).  However, a claimant must attach copies of writings upon which claims are based in order to carry its burden of establishing a *prima facie* case against the debtor. *Hardin v. Gianni (In re King Investments Inc.)*, 219 B.R. 848, 858 (B.A.P. 9th Cir. 1998).  Further, a claim should not be allowed if that claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law.  11 U.S.C. § 502(b)(1).

Once the objector raises "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), then "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996). "[T]he ultimate burden of persuasion is always on the claimant." *Holm*, 931 F.2d at 623.  In considering an objection to a claim, a bankruptcy court may take judicial notice of the underlying records in a bankruptcy case. *O'Rourke v. Seaboard Surety Co., (In re ER Fergert, Inc.)*, 887 F.2d 955, 957-958 (9th Cir. 1998).

## D.    The  Claim Should Be Disallowed for Plan Voting Purposes

Courts recognize that Bankruptcy Rule 3018(a) permits a party in interest to seek to disallow a claim for voting purposes. Ultimately, the determination of whether to temporarily allow a claim for voting purposes lies within the discretion of the bankruptcy court.  See *Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003) ("There is no guidance in the Bankruptcy

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Code to courts as to determine whether to permit the temporary allowance of a claim; it is left to the court's discretion."). Indeed, courts have broad authority to determine whether to allow or disallow a claim for purposes of voting under Bankruptcy Rule 3018(a). *See, e.g., In re Mangia Pizza Invs., L.P.,* 480 B.R. 669, 679 (Banker. W.D. Tex. 2012); *In re Zolner*, 174 B.R. 629, 633 (Bankr. N.D. Ill. 1994) (noting that a court must exercise its discretion to allow or disallow a claim under Bankruptcy Rule 3018(a) based on reasoned analysis); *In re Goldstein,* 114 B.R. 430, 433 (Bankr. E.D. Pa. 1990); Collier on Bankr. ¶ 9-3018[5] (16th ed. rev. 2012) ("The court, however, regardless of the circumstances, has the discretion to allow or disallow all or part of the claim for voting purposes.").

The $97.91 million in cancellation of LESHI's debt for which the Debtor personally guaranteed exceeds the $90.43 million aggregate principal amount asserted against the Debtor by the TWC Claimants as indicated on claim numbers 53, 54 and 56. As the debt for which the Debtor guaranteed was canceled pursuant to the Share Transfer Agreement, no interest should have accrued from the time the underlying debt arose. The TWC Claimants' debt, guaranteed by the Debtor, has been extinguished, thereby eliminating the Debtor's guarantee liability.   Therefore, the Claim should be disallowed.

## IV.

## GENERAL RESERVATION OF RIGHTS

The Debtor expressly reserves the right to amend, modify or supplement this Objection, and to file additional, other, or further objections to any proofs of claim filed in this Chapter 11 Case, including, without limitation, objections as to the amounts asserted therein, or any other claims (filed or not) against the Debtor, regardless of whether such claims are subject to this Objection.  Should one or more of the grounds of objection stated in this Objection be denied, the Debtor reserves his rights to object on other stated grounds or on any other grounds he discovers during the pendency of this Chapter 11 Case.  In addition, the Debtor reserves the right to file counterclaims against the holders of any such claims.

## V.

## NOTICE

The Debtor will serve copies of this Objection on:  (a) the Claimant, (b) the Office of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

United States Trustee, (c) counsel to the Committee, and (d) all parties who have requested notices

in this Chapter 11 Case pursuant to Bankruptcy Rule 2002.

## VI.

## <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the

relief requested herein and granting the Debtor such other and further relief as is just and proper.

Dated:      April 2, 2020                PACHULSKI STANG ZIEHL & JONES LLP


                                        <u>/s/ Malhar S. Pagay</u>
                                        Richard M. Pachulski
                                        Jeffrey W. Dulberg
                                        Malhar S. Pagay

                                        *Attorneys for Debtor and Debtor in Possession*

DOCS_LA:328761.1 46353/002

## DECLARATION OF YUETING JIA

I, Yueting Jia, debtor herein, hereby declare that the following is true to the best of my knowledge, information and belief:

1.    I submit this declaration (the "Declaration") in support of the *Objection to Claim 56 Filed by Shenzhen Jincheng Commercial Factoring Co., Ltd.* (the "Objection")[5]. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein.

2.    Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of books and records, relevant documents and other information prepared or collected by my employees, advisors and representatives, or my opinion based on my experience. In making my statements based on my review of books and records, relevant documents and other information prepared or collected by my professionals, advisors and employees, I have relied upon these professionals, advisors and employees accurately recoding, preparing or collecting such documentation and other information.

3.    I am not fluent in English. Accordingly, in the ordinary course of my business and personal affairs that require me to communicate in English either orally or in writing, I employ interpreters/translators who are fluent in both English and Chinese. I am utilizing such interpreters/translators in connection with matters that arise in connection with my Chapter 11 Case and intend to continue to do so. I have reviewed the Objection and Declaration, as necessary, with the assistance of such interpreters/translators.

4.    Upon information and belief, Tao Yun Capital Co. Ltd. ("Tao Yun") (*a.k.a.* TWC Group Co., Ltd), Beijing Lan Capital Investment Fund Management, and Shenzhen Jincheng Commercial Factoring Co Ltd. (each a "TWC Claimant" and collectively, the "TWC Claimants") are related entities under common control of an individual. Such common control is evidenced by the fact that the same individual by the name of Jie Feng filed proofs of claim on behalf of all of the

---

[5] Capitalized terms not defined in this declaration shall have the same meaning ascribed to them as set forth in the Objection.

DOCS_LA:328761.1 46353/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

TWC Claimants (## 53, 54, 56). The proofs of claim at issue indicate that Feng is a project manager at TWC Group Co., Ltd.

5.      To substantiate their claims, each of the TWC Claimants, including the Claimant, attached to their proofs of claim documents evincing obligations owed by LESHI Holding (Beijing) Ltd. Co. ("LESHI"), which I guaranteed.

6.      Pursuant to section 2.02 of the Share Transfer Agreement, attached hereto as **Exhibit "A,"** entered into by and among me, Meng Wu, LESHI, and Tao Yun, Meng Wu agreed to transfer equity interests of a third party to Tao Yun in exchange of a cancellation of debt in the amount of $97.91 million[6] that LESHI or its related companies owed under the Loan Agreement.

7.      Attached hereto as **Exhibit "B"** is an English translation of the Share Transfer Agreement..

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of April, 2020, at Gardena, California.

_____
YUETING JIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[6] This amount has been converted from the $692 million Chinese Yuan to US Dollars using 7.0676, the closing exchange rate  published by the Wall Street Journal as of October 14, 2019, the Petition Date. *See* https://www.wsj.com/market-data/quotes/fx/USDCNY/historical prices<https://www.wsj.com/market data/quotes/fx/USDCNY/historical-prices

12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## **DECLARATION OF SHAN HE**

I, Shan He, declare as follows:

1.      I am a Chinese translator, simultaneous interpreter and localization project manager employed since April 2017 by (a) Yueting Jia, the debtor and debtor in possession (the "Debtor"), that has filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above-captioned bankruptcy case (the "Chapter 11 Case"), and (b) Faraday Future ("FF"), an entity in which the Debtor holds an indirect interest.

2.      I am a native speaker of Chinese (Mandarin) and maintain full professional fluency in English.  I hold a Bachelor of Science degree in English from Beijing Language and Culture University and a Master of Arts in Translation and Interpretation (Chinese – English) degree from the Monterey Institute of International Studies ("MIIS").  I am certified in Simultaneous and Consecutive Interpretation between English and Chinese by MIIS.  I currently provide translation services for the Debtor and his General Counsel.  Prior to my work with the Debtor and FF, I have provided interpretation and translation services for a variety of organizations, including the United Nations Institute for Training & Research (UNITAR), Syntes Language Group, and the Austrian Embassy.

3.      The Debtor is not fluent in English.  Accordingly, in the ordinary course of his business and personal affairs that require him to communicate in English either orally or in writing, he employs interpreters/translators like me who are fluent in both English and Chinese.

4.      I am in regular communication with the Debtor's professionals, including legal counsel.

5.      At the direction of the Debtor, I have reviewed that certain share transfer agreement dated June 30, 2017 (the "Share Transfer Agreement"), entered into by and among the debtor, Meng Wu, LESHI, and Tao Yun, attached hereto as **Exhibit "A"** and **Exhibit "B,"** an English translation of the Share Transfer Agreement.

6.      To the best of my knowledge, the English translation accurately reflects the contents and meaning of the original Share Transfer Agreement.

13

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this __2nd__ day of April, 2020, at __Long Beach__, California.

*Shan He*
_____
Shan He

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:328761.1 46353/002

# EXHIBIT A

吴孟

与

上海哲蕴商务咨询合伙企业（有限合伙）

关于

北京东方车云信息技术有限公司



---

# 股权转让协议

---

2017 年 6 月 30 日

# 北京东方车云信息技术有限公司

# 股权转让协议

本《股权转让协议》（以下称为"**本协议**"）由以下各方（单称为"**一方**"，合称为"**各方**"）于 2017 年 6 月 30 日在中国北京市东城区签署：

**受让方**：上海哲蕴商务咨询合伙企业（有限合伙）（"**哲蕴**"）

住所地：上海市浦东新区周市路 416 号 4 层

**转让方**：吴孟

身份证号：14273319730105007x

**标的公司/公司**：北京东方车云信息技术有限公司

住所地：北京市丰台区南四环西路 188 号十六区 1 号楼七层-1(园区)

**一揽子借款之债务方**：乐视控股（北京）有限公司（"**乐视控股**"）

住所地：北京市朝阳区姚家园路 105 号 3 号楼 10 层 1102

**一揽子借款之债权方**：韬蕴资本集团有限公司（"**韬蕴资本**"）

住所地：

**乐视实控人**：贾跃亭

身份证号：

鉴于：

(1) 北京东方车云信息技术有限公司（**"标的公司"**）是一家依据中国法律成立的且有效存续的有限责任公司，法定代表人为彭钢，成立日期为 2010 年 5 月 21 日，截止本协议签署日其注册资本金为 1,100 万元人民币，所有股东均已全部实缴出资完毕，标的公司及 Easy Go Inc.（Cayman）（**"Easy Go"**）共同作为提供预约用车服务的电子商务平台易到用车（**"易到集团"**）的唯一知识产权持有方和运营实体。

(2) 吴孟（**"转让方"**），中国公民，系标的公司的控股股东及乐视控股关联方，合法持有标的公司 66.67%的股权。

(3) 上海哲蕴商务咨询合伙企业（有限合伙）（**"受让方"**或**"哲蕴"**）系一家依据中国法律合法成立且有效存续的有限合伙企业。

(4) 乐视控股（北京）有限公司（**"乐视控股"**）是一家依据中国法律成立的且有效存续的有限责任公司，乐视控股作为本协议第 2.02 条（b）款所述一揽子借款之债务方。

(5) 贾跃亭，作为乐视控股及其他相关主体实际控制人（**"乐视实控人"**），直接或间接控制包括但不限于，乐视控股（北京）有限公司、乐视移动智能信息技术（北京）有限公司、乐视体育产业发展（北京）有限公司、乐乐互动音乐文化发展（北京）有限公司、乐视音乐文化产业发展（北京）有限公司，北京百瑞文化传媒有限公司，以及 Lucky Clover（以上乐视实控人直接或间接控制的上述公司统称**"乐视相关主体"**）。

(6) 韬蕴资本集团有限公司（**"韬蕴资本"**），是一家依据中国法律成立的且有效存续的有限责任公司，法定代表人为温晓东。

(7) 转让方拟按照本协议的条款和条件将其持有的标的公司 66.67%的股权（**"标的股权"**）转让给受让方，同时乐视实控人应促使 Easy Go 的控股股东 Lucky Clover Limited（**"Lucky Clover"**）将其持有的 Easy Go 66.67%的股权（**"Easy Go 股权"**）转让给韬蕴资本指定境外关联方，并另行签署相应境外股权转让协议。

(8) 韬蕴资本及其关联方与乐视实控人、乐视相关主体之间就一揽子借款（**"一揽子借款"**）的部分或全部债权中用于抵扣标的股权及 Easy Go 股权交易对价（合称**"本次交易"**）已达成共识。

有鉴于此，各方经友好协商，本着平等互利的原则，根据《中华人民共和国合同法》、《中华人民共和国公司法》等相关法律法规，就上述股权转让及一揽子借款中相关债权作为本协议项下本次交易交易对价的支付等事宜，订立本协议并拟定如下条款，以资共同遵守。

## 第1条 股权转让及受让

### 第1.01款 易到集团估值

在本次交易前，易到集团估值截止本协议签署日转让方、受让方、韬蕴资本、乐视实控人、乐视相关主体同意按照 6.6 亿美元计（1 美元兑 6.80 元人民币汇率换算合计为 44.88 亿元人民币），但以本协议签署后受让方完成本协议第 1.02 款（b）条所述尽职调查且不存在足以影响本次交易的重大不利事件为前提。

### 第1.02款 交易对价、尽职调查及交易对价调整

(a)    交易对价：

本次交易转让股权为转让方合法持有的标的公司 66.67%的股权（"标的股权"）及 Easy Go 的控股股东 Lucky Clover 合法持有的 Easy Go 66.67%的股权（"Easy Go 股权"），受让方同意以 4.4 亿美元（1 美元兑 6.80 元人民币汇率换算合计为 29.92 亿元人民币）的总对价（"交易对价"）进行收购，其中本次交易完成后标的股权由受让方持有，Easy Go 股权由韬蕴资本指定境外关联方持有。但本协议签署后将由受让方完成独立的尽职调查，且本协议的生效以不存在足以对本次交易产生重大不利影响为前提。

(b)    尽职调查：

在本协议签署后，受让方将对易到集团进行全面的法律及财务尽职调查（"尽职调查"），转让方、标的公司、乐视实控人保证对尽职调查提供其所需的相应材料和必要协助，其中应包括易到集团未来 3 年的财务预测数据。

(c)    对易到集团估值和交易对价的调整：

截止本协议签署日，转让方、标的公司、乐视实控人保证已充分披露的易到集团总负债金额应不超过 23 亿元人民币，如易到集团存有超过 23 亿元人民币的其他未清偿债务的，包括但不限于尚未清偿的银行借款、民间借款、其他欠款或任何或有债务的（合称"超额未清偿负债"），将全部由转让方、乐视控股和乐视实控人承担连带清偿责任。届时将根据专业中介机构的建议，受让方可就易到集团估值、标的股权及Easy Go 股权交易对价进行相应调整，并可从受让方支付的交易对价中扣减相应价款，或向相关连带责任人追偿。

### 第2条 交割

### 第2.01款 交割时间及地点

(a)    各方应于本协议文首所述日期在中国北京市东城区签署本协议。

(b)    本协议签署生效后四十五个工作日内，完成全部转让标的股权的工商变更登记。

(c)    本协议签署生效后，在满足本协议约定的各项条件的前提下，受让方应按本协议第 2.02 款-2.03 款约定日期及方式进行债权债务的抵消及向标的公司进行付款（"付款"）。

### 第2.02款  交易对价的抵扣安排

本次交易应为承债式收购，交易对价分为两部分：

(a)    第一部分交易对价为债务承担部分，受让方同意承担的易到集团总负债金额不超过 23 亿元人民币。在办理完毕标的股权及 Easy Go 股权转让的工商变更登记后，则视为受让方已承担该部分债务。

(b)    第二部分交易对价为债权抵扣部分，韬蕴资本及其关联方与乐视实控人、乐视相关主体之间就一揽子借款债权中的部分，即共计 6.92 亿元人民币抵扣本次交易交易对价的 6.92 亿元人民币。在本协议签订生效后，上述债权即视为抵扣完毕。

(c)    转让方、乐视实控人在此明确并确认，上述两部分事宜履行完毕后，即视为受让方已完成全部交易对价的支付。

### 第2.03款  对标的公司的支付安排

就本协议第 2.02 款（b）项债务承担，为解决易到集团中标的公司的经营性现金流不足，受让方将向标的公司提供数笔款项支付，具体各笔款项支付时间由受让方与标的公司另行协商确定，但第一笔款项 4.3 亿元人民币应在本协议签订后 2 个工作日内支付。

标的公司名下的指定收款账户如下：

> 账户名称：北京东方车云信息技术有限公司
> 开户行：平安银行上海安亭支行
> 账号：11015642476000

标的公司应保证本条所述款项支付应全部用于清偿易到集团不超过 23 亿元人民币的总债务。同时上述总债务中所欠转让方、乐视实控人及乐视相关主体外的第三方债务应最优先进行清偿（"**第三方债务**"），在第三方债务完全清偿完毕前，不得向转让方、乐视实控人及乐视相关主体进行清偿。

### 第2.04款  费用及税金

(a)    本次交易的相关费用，由各方承担各自相应的费用。

(b)    各方应当依所适用法律承担应由各方自行承担的因交易而发生的税金，依法必须由一方履行代扣代缴义务的除外（但是一方主张且实际履行该等代扣代缴义务时应提前举证相关法律依据并获得其他方同意）。

### 第3条  标的股权、Easy Go 股权变更

### 第3.01款  增资

在本协议签订生效后至履行本协议第 3.02、3.03 款完成前，转让方或乐视控股应完成对标的公司 2.3 亿美元增资的工商变更登记事宜。

### 第3.02款 标的股权工商变更

在本协议签订生效后四十五个工作日内，标的公司应当在工商管理登记机关办理完毕股权转让涉及的工商变更登记事宜，在获得工商变更登记后换发标的公司新《企业法人营业执照》的复印件（应加盖公司公章）应递交给标的公司。

对于工商变更事宜，各方应给予相应的协助（如需）。

### 第3.03款 Easy Go 股权变更

在本协议签订生效后三个工作日内，各方应促使韬蕴资本指定境外关联方、Lucky Clover、乐视实控人完成境外股权转让协议签订及生效，并于境外股权转让协议约定期限内完成 Easy Go 股权变更登记。

对于变更事宜，各方给予相应的协助（如需）。

## 第4条 股权回购

### 第4.01款 股权回购

经受让方、韬蕴资本指定境外关联方、转让方、乐视实控人等利益相关方协商一致，经各方认可的时间，转让方可以届时协商一致的合理的价格（暂定 15%年化利率）主张回购部分或全部股权（"回购"）。

## 第5条 转让方的陈述与保证

### 第5.01款 转让方是完全民事行为能力人。

### 第5.02款 转让方拥有所有必要的权力、授权与能力签署并交付所有交易文件，履行其在本协议及其他交易文件项下的义务，以及对其法律后果承担法律责任。每一份交易文件经签署并交付后即构成对公司及现有股东合法有效且具有法律约束力的义务，并可按照其各自条款执行。

### 第5.03款 转让方在此向受让方陈述及保证，除非事先另有声明，截至本协议签署日，转让方的陈述在重大方面均为真实、准确及完整的陈述。

### 第5.04款 转让方应及时获取公司对本协议的约定的股权转让的决议文件，以及其他股东放弃优先购买权的法律文件。

第5.05款 转让方是标的股权的合法所有人，标的股权之上未设置质押等担保物权或任何其他第三方权利。

第5.06款 截至本协议签署日，转让方除已向受让方披露内容外，标的公司不存在任何导致或可能导致税收争议、税收处罚或相关司法程序的情形；标的公司未涉及任何争议、处罚或司法程序，包括但不限于任何诉讼、仲裁、行政程序、强制措施或执行程序等；标的公司并不存在未披露的超额未清偿债务或可能产生上述债务的事由；因本协议签署之日前原因产生的上述税收处罚、诉讼、仲裁、行政程序、强制措施、执行措施、超额未清偿债务等，由标的公司负责解决，但因此引发的标的股权上的责任及损害赔偿应由转让方承担。

第5.07款 本签署、交付和履行本协议以及其作为一方就本协议不会：违反或抵触适用于其任何资产、财产或业务的任何法律法规或政府指令。

## 第6条 受让方的陈述与保证

第6.01款 受让方为依法设立并有效存续的企业法人，具有与订立及履行本协议相适应的民事主体资格及权利能力。本协议经各方正式授权、签署及交付，即构成对受让方的合法、有效并具有约束力的义务，且该义务可根据本协议的条款强制执行。受让方不受制于任何普遍影响其债权人权利的破产、重组、资不抵债、诉讼程序或其他诉求。

第6.02款 除需依法取得签署、执行本协议的授权外，受让方签署、履行本协议不会违反其营业执照、股东协议、有限合伙协议、章程（视适用情况而定）或类似组织文件的任何规定，不会违反任何相关法律或任何政府授权，不会违反其作为当事人一方（或受之约束）的其他任何协议，也不存在将影响其履行本协议项下任何义务的能力的、已经发生且尚未了结的诉讼、仲裁或其他司法或行政程序。

第6.03款 受让方用于支付交易对价第一部分债权抵扣的资金来源合法，不存在违反任何适用法律法规规定的情形，不会因此造成对公司的任何索赔或致使公司承担任何赔偿责任。

第6.04款 本签署、交付和履行本协议以及其作为一方就本协议不会：违反或抵触其组织文件的规定以及违反或抵触适用于其任何资产、财产或业务的任何法律法规或政府指令。

## 第7条 违约责任

第7.01款 任何一方违反本协议的约定，给对方造成任何损失，均应承担相应的赔偿责任，并支付对方因此支付的包括律师费在内的所有诉讼费用。若任何一方逾期支付任何应付款项，则每逾期一日，应向对方支付应付未付款项万分之五的罚息。

## 第8条 他项条款

### 第8.01款 解释及解释原则

(a)   本协议中，"应"、"应当"均为强制性的，与"必须"具有同等含义；"可以"为授权性的，行为人有权决定作为，也有权决定不作为。凡属一方之权利，该方既可以行使，也可以不行使，选择及决定的自由在于该方。

(b)   "书面"系指能通过正常可视化手段予以辨认的可记录信息的任何形式，包括但不限于传真、电子传输、电子邮件、手机短信、信函等。

(c)   凡提及或用到"本协议项下"包括本协议全部条款及其项、目、句、词及字。"条"包括且仅包括指定该条全部条、款、项、目、句，及其短语、词语和单字，"款"包括且仅包括指定款及其全部项目句及字词短语，"项"包括且仅包括指定条款指定项及其全部目、句及字词短语。

(d)   凡提及"各方"，应包括本协议序言部分所列全部各方，各方就其自身在本协议项下的权利与义务仅仅承担个别的、独立的且非连带的法律责任（除非另有明确约定）。

(e)   "包括"或"包括但不限于"仅充当列举之用，不应被解释为限制、限定或排除其后列举例证之外其他任何可包括项或应包括项。

(f)   "交付"系指动产或权利凭证等可移动物在主体之间转移占有之法律事实。

(g)   "法律"系指普遍或特别适用于本协议项下特定事项的法律。在满足本协议第8.12款有关管辖法律之约定条件下，凡提及"所适用法律"，均不仅仅指由特定国家或地区立法机关依所适用程序制定并颁布实施的法律，亦包括由地方立法机关、国家或地方司法机关或行政机关依所适用程序制定、颁布且被该国家或地区普遍接受为具有普遍性法律约束力的规范性文件，无论其被命名为法律、条例、规定、规则、决定、命令、意见、通知或是其他。该等法律在本协议签署时应正被实施、执行且具有普遍性法律约束之效力，并包括有权机关不时颁布实施的法律修正案或不时修订后颁布实施的新法律。

(h)   "裁决"系指有管辖权之法庭依所适用法律规定程序法及实体法做出地判决或裁定；或有管辖权之仲裁庭依本协议约定选择适用的仲裁程序及实体法做出地仲裁裁决。

(i)   凡提及"诉讼程序"，应包括诉讼程序及仲裁程序。其中，诉讼程序应包括刑事诉讼、民事诉讼及行政诉讼；仲裁程序应包括劳动仲裁、商事仲裁、国际仲裁等各类仲裁。

(j)    "内"、"之内"均包括本数/日；"超过"均不包括本数/日。

(k)    凡使用任何金额及数字，若大小写不一致，或阿拉伯数字与中文数字不一致，均应以大写或中文数字为准。

(l)    凡提及"日"，系指一个日历日，从北京时间凌晨零点开始计算，经过 24 小时为一日。凡提及"工作日"或"营业日"，系指除了周六、周日或中华人民共和国或其他国家或地区根据所适用法律确定为节日、假日及休息日以外之任何一日或多日。除上下文另有要求外，如本协议项下任何权利或义务可供行使或履行之日为非工作日，则该项权利或义务应顺延至该日之后第一个工作日行使或履行。"之日"包括当日，"次日"为指称当日之第二日。

(m)    凡提及"元"或"圆"，系指中华人民共和国通用货币人民币元。凡提及"美元"，系指美利坚合众国法定通用货币。除非明确约定使用美元或其他货币，本协议项下任何付款义务均应以人民币计价、结算及支付。

(n)    凡提及"中文"，应指中华人民共和国大陆地区通用的符合中华人民共和国国家语言文字工作委员会颁布实施的汉语言文字使用规范的简体汉字。

第8.02款 保密

(a)    本协议项下保密信息，(i) 就任何个人而言，包括《中华人民共和国居民身份证》或其他国家或地区《护照》等身份证件上全部记载信息，该人士电话号码、手机号码或其他联系方式、家庭住址、办公地址、婚姻、财产信息等；(ii) 就任何单位而言，保密信息包括其专利技术、软件源代码、专有技术（know-how）、商业秘密、产品开发计划、定价策略、经营方式、投资、受让、重组、银行贷款、发债、上市计划、员工招收计划、财务会计信息等；(iii) 就本协议项下任何事项或交易而言，包括前期接触、洽谈、见面、会议、通讯、邮件、信函、传真、交易协议（包括本协议）起草、修改、磋商、签署、付款、交割等；(iv) 上述信息或其他信息，若已被采取适当保密措施，或已被标识"保密"字样，信息持有方不愿意公开或被他人知悉，且若被公开或被他人知悉，将对信息持有方造成经济损失，或造成其他重大不利影响，则构成本协议项下保密信息。

(b)    除非被强制披露，任何获得、接受、保存、使用、复制及传递保密信息者，均有义务采取适当保密措施，以使其不被披露、泄露或被他人知晓。所谓强制披露，系指根据法律、司法或行政机关要求不得不予以披露，包括根据所适用法律或证券交易所规则向任何有关政府部门或证券交易所披露。若发生强制披露，披露一方应在其力所能及且所适用法律允许范围内，于做出此种披露前合理时间内，与保密信息提供方磋商，并尽最大努力对所披露信息进行保密化处理。然而，为完成本协议项下交易之目的，一方可以将保密信息向其关联方或法律顾问、财务顾问等中介机构进行披露，但应确保信息接受方充分知晓、理解并同意承担保密义务，该等义务其法律责任大小应与披露方一致。此外，各方均不得为任何其他目的、以任何方式使用保密信息。

(c)    若存在任何信息，已被本协议或本协议任何一方同意或允许披露，或在披露之时已经可公开获得或已被公开获得且该等公开非可归责于任何一方或其关联方，或其获得信息渠道来源于任何善意第三方，则信息获得方在获得信息范围内不承担保密责任。但是，任何情形下，任何信息不应仅因任何规定可以不承担保密责任而被认定为非保密信息。

## 第8.03款　生效、变更与终止

(a)　本协议经各方法定代表人或其授权代表人或本人签字及/或盖章（"**签署**"）后正式成立并正式生效。

(b)　各方一经于本协议签署页签署，即视为其完全理解、承认本协议各方在本协议项下约定条款及条件的权利，同意在本协议生效后履行本协议项下全部及各项义务，愿意受该全部各项条款及条件的约束，并承担由此产生的任何法律责任。各方同意，在本协议签署页或标明签章处仅加盖公章而无法定代表人或其授权代表人签字，或者公章为公司财务专用章等非合同专用章，或者法定代表人未亲笔签字而授权他人签字，或者任何签字人于签字时或签字后未获得书面授权等情形均不影响本协议的生效。任何以本协议仅有盖章而无签字、非法定代表人签字、非公司合同章或授权代表人未获授权等为理由对本协议效力提出的异议均为无效。

(c)　本协议非经各方协商一致不得修改变更。协商一致后，另行签署书面补充协议，对本协议的修改方为有效。若因本协议任何一方提起或发起诉讼或仲裁程序，最终致使本协议任何条款或措辞被有合法管辖权的法院、法庭或仲裁庭依法裁决无效或不予执行（"**无效条款**"），需要对本协议任何条款或措辞进行修改，各方应通过善意协商，以最大程度符合本协议之根本目的为基本原则，共同完成修改程序，从而使得本协议中所拟定事项以及各方权利义务能最大限度按照本协议签署之初所拟定计划完成与实现。若在裁决生效之后十五（15）日以内，各方仍无法就协议修改达成一致意见，则：

　　　(i)　本协议可不做任何修改，且该等无效条款应被视为及解释为本协议自始未拟定或包含该等无效条款；或，

　　　(ii)　若无效条款事实上构成本协议根本条款，或无效条款无效或自始不存在将致使本协议根本目的无法实现，或致使本协议无法继续履行，则本协议终止。

(d)　本协议各方应尽自己合理的最大努力遵守并履行本协议各项约定，除以下情形之外，本协议非经各方协商一致不得终止：

　　　(i)　若任何有管辖权的法院、法庭或仲裁庭依所适用法律裁决本协议全部或部分条款无效、被撤销或不予执行，或者任何政府部门决定终止本协议全部或部分条款，则本协议或相应条款应当终止；

　　　(ii)　若任何一方严重违反本协议约定，导致本协议根本目的无法实现或本协议无法继续履行，本协议应当终止；

　　　(iii)　依本协议第7条而终止。

(e)　在上述情形下，决定终止协议的一方应当向对方发出终止通知，通知生效之日起本协议即行终止。

## 第8.04款　权利与义务转移

非经各方一致同意，本协议项下任何权利义务均不得转移给其他任何第三方。任

何权利义务的转移，转让一方均需事先书面通知其他方，征得同意后方可进行。

### 第8.05款 不放弃

除非法律法规另有规定或本协议另有约定，如任何一方不行使、或未能行使、或延迟行使其在本协议项下或根据本协议而获赋予的任何权利、权力或补救行动，不构成该方放弃该等或任何其他权利、权力或补救行动。任何一方放弃其部分权利，不构成其对其他未明确放弃之权利的放弃或豁免。

### 第8.06款 通知

(a)　除非另有约定，所有本协议项下通知、诉求、权利主张、要求及其他信息交互（"通知"），均应以书面形式做出，并以专人递交、快递服务、传真、或挂号邮件（邮资预付并要求回执）交付。尽管如此，若各方按照商业惯例或过往交易习惯通过电子通讯方式进行通知，且接收方对此并无异议，则该等通知应视为与书面通知具有同等法律效力。为本协议之目的，所谓电子通讯方式，系指使用电子邮件、手机等移动通讯设备短信息、微信、QQ 或 SKYPE 等即时通讯方式传递信息或发出通知。若约定以电子通讯方式进行通知，则接收方应当提供准确号码或账户，保证通知能够及时送达。通知应当发送到到各方于本协议签署页所提供地址，或协议签署后变更地址，只要任何一方根据实际情形变更地址，且将变更后地址即时通知了其他方。任何通知均应当明确所涉协议事项内容、完成要求及条件、截止时限，以中文书写。通知若为报告事件，除应当明确事件所涉时间、地点、经过、起因、经过及结果外，还应当尽合理努力提供相应证据。若为更正通知，还应指出具体错误或瑕疵。

(b)　依本协议所发送的通知在满足下列任意情形时即为有效送达（"送达"）：

(i)　若以电子通讯方式发送通知，则通知以电子邮件等成功发送或显示发送成功之时日视为有效送达；

(ii)　若由专人递交，则在专人递交之日视为有效送达；

(iii)　若以挂号信件发出，则在寄出日（以邮戳为凭）后第七日视为有效送达；

(iv)　若以快递方式发送，则于交与快递服务发送后第三日视为有效送达。

(c)　就上述任何一种送达而言，若接收人于视为送达日之次日通知发送人并明确表示未收到发送通知，则通知应认定为未送达，双方应立即协商并确定重新发送通知（"重发通知"）。重发通知仍适用上述视为送达规则。 就任一通知而言，若因接收方提供地址不真实或不准确，致使通知不能送达，或尽管通知已经送达，但接收方未及时接收、处理或知悉通知内容，导致通知之目的未能实现（"通知失败"），使接收方遭受损失，则应由接收方自行承担全部损失；若因通知失败导致发送方损失，发送方有权就此从接收方获得赔偿或补偿。

### 第8.07款 完整性

本协议构成各方之间就协议事项所达成之完整协议，本协议具有取代各方之前就

协议事项所达成任何及全部其他书面或口头协议之法律效力。

### 第8.08款 可分割性

若本协议任何条款或规定在任何司法辖区被视为无效或不可执行，则该等条款或规定应仅在该等无效或不可执行的范围内无效，其余部分不因此受到影响，应当仍旧完全有效。本协议任何条款在某一个司法辖区无效或不可执行，不影响其在其他司法辖区内的法律效力，其在其他司法辖区仍应完全有效。此外，若本协议任何条款被视为无效或不可执行，但若将其部分删除则变为有效或可执行，则该等条款应在最小范围内做出必要修改以使其有效并可执行。

### 第8.09款 独立条款

本协议违约责任条款、保密条款、通知条款、管辖法律和争议解决条款，在法律效力上具有充分独立性，本协议全部（或部分）无效、被撤销或终止，不影响该等条款的法律效力，该等条款仍继续有效。

### 第8.10款 标题

本协议中，任何标题仅为阅读方便，不对本协议任何条款构成总结或解释，也不对解释任何条款产生任何影响。

### 第8.11款 语言

本协议用中华人民共和国通用简体中文书写、解释、留存及履行。任何一方均可就各自需要翻译成其他任何语言文字。但是，若任何其他语言文本之文义与本协议语言文本之文义在书写格式、解释及履行过程中发生任何冲突、不一致、相违背等情形，均应以中文文本为准。

### 第8.12款 管辖法律和争议解决

本协议、本协议项下任何交易、行动、行为或安排，以及各方在本协议项下全部权利及义务，均应受中华人民共和国法律管辖，根据该等法律进行解释。

本协议项下发生任何争议，任何一方均有权向本协议签署地有管辖权人民法院提起诉讼。

### 第8.13款 文本

本协议正本捌份，各方各执壹（1）份，剩余贰（2）份用于登记机关备案（如需），每份均具有同等法律效力。

（以下有意留白）

（本页为《股权转让协议》的签字页）

签署方：上海哲蕴商务咨询合伙企业（有限合伙）（公章）

签字：

职务：

签署方：吴孟

签字：

签署方：北京东方车云信息技术有限公司（公章）

签字：

职务：

签署方：乐视控股（北京）有限公司（公章）

签字：

职务：

签署方：韬蕴资本集团有限公司（公章）

签字：

职务：

签署方：贾跃亭

签字：







# EXHIBIT B

Wu Meng

And

Shanghai Zheyun Business Consulting Partnership (Limited Partnership)

Regarding

Beijing Dongfang Cheyun Information Technology Co., Ltd.

---

**Equity transfer agreement**

---

June 30, 2017

Beijing Dongfang Cheyun Information Technology Co., Ltd.
**Equity transfer agreement**

This Equity Transfer Agreement (hereinafter referred to as this "Agreement") is entered into by and among the following parties (individually referred to as "Party" and collectively referred to as "Parties") on June 30, 2017 in Dongcheng District, Beijing, China:

**Transferee: Shanghai Zheyun Business Consulting Partnership (Limited and Partner) ("Zheyun")**

Address: 4th Floor, No. 416, Zhoushi Road, Pudong New Area, Shanghai

**Transferor: Wu Meng**

ID No.: 14237319730105507x

**Target Company/Company: Beijing Dongfang Cheyun Information Technology Co., Ltd.**

Address: 7th Floor, Building 1, No.1, No. 188, West South Fourth Ring Road, Fengtai District, Beijing (Park)

**The debtor of the loan package: LETV Holdings (Beijing) Co., Ltd. ("LETV Holdings")**

Address: 1102, 10th Floor, Building 3, No. 105, Yaojiayuan Road, Chaoyang District, Beijing

**The creditor of the loan package: Taoyun Capital Group Co., Ltd. ("Taoyun Capital")**

Domicile:

**Actual Controller of LeEco: Jia Yueting**

ID No.:

**Whereas:**

(1) Beijing Dongfang Cheyun Information Technology Co., Ltd. ("Target Company") is a limited liability Company established and validly existing under the laws of the PRC. The legal representative is Peng Gang. It was established on May 21, 2010. As of the date hereof, its registered capital is RMB 11 million. All shareholders have paid their contributions. The Target Company and Easy Go Ino. (Cayman) ("Easy Go") jointly serve as the intellectual property holder and operating entity of Easy Go Car Use ("Easy Go Group"), which is the e-commerce platform for providing scheduled car services.

(2) Wu Meng (the "Transferor"), a Chinese citizen, the controlling shareholder of the Target Company and the related party of **LETV Holdings**, legally holding 66.67% of the equity of the Target Company.

(3) Shanghai Zheyun Business Consulting Partnership (Limited Partnership) ("Transferee" or "Zhe Yun") is a limited partnership legally established and validly existing under the laws of the PRC.

(4) **LETV Holdings** (Beijing) Co., Ltd. ("**LETV Holdings**") is a limited liability Company established and validly existing under the laws of the PRC. **LETV Holdings** is the debtor of the package loan as described in Article 2.02(b) of this Agreement. .

(5) Jia Yueting, as the actual controller of **LETV Holdings** and other related entities ("Actual Controller of LeEco"), directly or indirectly controls including but not limited to, **LETV Holdings** (Beijing) Co., Ltd., LeEco Mobile Intelligent Information Technology (Beijing) Limited Company, LeEco Sports Industry Development (Beijing) Co., Ltd., Lele Interactive Music Culture Development (Beijing) Co., Ltd., LeEco Music Culture Industry Development (Beijing) Co., Ltd., Beijing Bairui Culture Media Co., Ltd., and Lucky Clover (the above-mentioned companies directly or indirectly controlled by the Actual Controller of LeEco are collectively referred to as "LeEco Related Entities".

(6) Taoyun Capital Group Co., Ltd. ("Taoyun Capital") is a limited liability Company legally established and validly existing under the laws of the PRC. The legal representative is Wen Xiaodong.

(7) The Transferor intends to transfer 66.67% of the equity of the Target Company (the "Target Equity") held by the Transferor to the Transferee in accordance with the terms and conditions of this Agreement, and the Actual Controller of LeEco shall procure Lucky CloverLimited   ("Lucky Clover"), the controlling shareholder of Easy Go, to transfer its 66.67% equity interest in Easy Go ("Easy Go Equity") to the designated overseas affiliates of Yunyun Capital and separately sign the corresponding overseas equity transfer agreement.

(8) Taoyun Capital and its related parties have reached consensus with the Actual Controller of LeEco and the LeEco Related Entities on payment of the consideration for the Target Equity and Easy Go Equity by deduction of the part or all of the claims in the package loans (collectively referred to as the "Transaction").

**I**n view of this, through friendly consultations, based on the principle of equality and mutual benefit and in accordance with the Contract Law of the People's Republic of China, the Company Law of the People's Republic of China and other relevant laws and regulations, all Parties have reached this Agreement on the above-mentioned equity transfer and payment of the consideration for the Transaction contemplated hereunder using the related claims in the package loans as follows.

**Article 1 Equity Transfer**

**Article 1.01 Valuation of Easy GoGroup**

Prior to this Transaction, the Transferor, the Transferee, Taoyun Capital, the Actual Controller of LeEco, and the LeEco Related Entities agreed that Easy Go Group was valued at US$660 million as of the signing date hereof (converted to RMB 4.488 billion yuan according to the exchange rate of 1 USD to RMB 6.80 yuan) on the premises that the Transferee shall complete the due diligence as described in Article 1.02(b) hereof and there is no significant adverse event that would affect the Transaction after the signing of this Agreement.

**Article 1.02 Transaction Consideration, Due Diligence and Transaction Consideration Adjustment**

(a) Transaction Consideration:

The equities to be transferred in this Transaction includes 66.67% of the equity of the Target Company legally held by the Transferor (the "Target Equity") and 66.77% of the equity of Easy Go legally held by Lucky Clover, the controlling shareholder of Easy Go ("Easy Go Equity"). The Transferee agreed to acquire for the total consideration (the "Transaction Consideration") of US$ 440 million (converted to RMB 2.992 billion yuan at the exchange rate of 1 USD to 6.80 yuan).After the completion of the Transaction the Target Equity will be held by the Transferee and the equity of Easy Go will be held by the designated affiliates of Taoyun Capital. However, after the signing of this Agreement, the Transferee will complete the independent due diligence, and the effectiveness of this Agreement shall be preconditional upon non-existence of material adverse impact on the Transaction.

(b) Due Diligence:

After the signing of this Agreement, the Transferee will conduct a comprehensive legal and financial due diligence ("Due Diligence") on the Ease Group, and the Transferor, the Target Company, and the Actual Controller of LeEco undertake to provide all necessary due materials and assistance in the due diligence, including the financial forecast data of Easy Go Group for the following 3 years.

(c) Adjustments to Valuation of Easy Go Group and Transaction Consideration:

As of the signing date of this Agreement, the Transferor, the Target Company, and the Actual Controller of LeEco guarantee that the total debt of the Easy Go Group that has been fully disclosed shall not exceed RMB 2.3 billion. The Transferor, **LETV Holdings** and the Actual Controller of LeEco shall be jointly and severally liable for the outstanding debts of Easy Go Group exceeding RMB 2.3 billion, including but not limited to outstanding bank loans, private loans, other arrears or any contingent liabilities (collectively referred to as "Excess Unliquidated Liabilities").In such case, according to the professional advices of intermediary agency, the Transferee may adjust the valuation of the Easy Go Group and the considerations for the Target Equity and the Easy Go Equity, and deduct the corresponding amount from the Transaction Consideration paid by the Transferee, or recover the amount from the relevant jointly liable person.

**Article 2 Closing**

**Article 2.01    Time and Location of Closing**

(a) The Parties shall sign this Agreement on the date fist written above in Dongcheng District, Beijing, China.

(b) Within 45 working days after this Agreement is signed and comes into effect, the changes in the industrial and commercial registration for the equity transfer shall be completed.

(c) After this Agreement is signed and comes into effect, the Transferee shall cancel the creditor's rights and debts and make payment to the Target Company on the date and in the method specified in paragraphs 2.02-2.03 hereof on the premise of satisfying the conditions stipulated herein. ("Payment")

**2.02    Deduction of Transaction Consideration**

The Transaction shall be a debt-based acquisition, and the consideration for the Transaction is divided into two parts:

(a) The first part of the Transaction Consideration is in the form of debt commitment, and the Transferee agrees to bear the total debt of the Easy Go Group not

exceeding RMB 2.3 billion. After the completion of the change in the registration for equity and the industrial and commercial registration change for the Target Equity transfer and the Easy Go Equity transfer, the Transferee shall be deemed to have assumed the debt.

(b) The second part of the Transaction Consideration is in the form of credit deduction, Taoyun Capital and its related parties and the Actual Controller of LeEco and the LeEco Related Entities agree to deduct the consideration for the Transaction in the amount of RMB 692 million using the claims contained in the package loans totaled RMB 692 million yuan. After this Agreement is signed and becomes effective, the above claims are deemed to have been deducted.

(c) The Transferor and the Actual Controller of LeEco hereby clarify and confirm that after the completion of the above two parts, the Transferee shall be deemed to have paid the full consideration for the Transaction.

**Article 2.03 Payment Arrangements for Target Company**

With respect to the debt commitment under Article 2.02(b) of this Agreement, in order to solve the problem of insufficient operating cash flow of the Target Company within the Easy Go Group, the Transferee will provide money to the Target Company in several installments, the specific payment time of which shall be negotiated separately by the Transferee and the Target Company. However, the first installment of 430 million yuan shall be paid within 2 working days after the signing of this Agreement.

The designated collection account under the Target Company name is as follows:

| |
|---|
| Account Name: Beijing Dongfang Cheyun Information Technology Co., Ltd. |
| Bank: Ping An Bank Shanghai Anting Branch |
| Account No.: 11015642476000 |

The Target Company shall guarantee that the money paid according to this Article shall be used for paying off the total debts of the Easy Go Group not exceeding RMB 2.3 billion. At the same time, the debt owed to the third party other than the Transferor, the Actual Controller of LeEco and LeEco Related Entities as included in the above-mentioned total debts shall be given the highest priority for settlement ("Third Party Debt"). No payment shall be made to the Transferor, the Actual Controller of LeEco and LeEco Related Entities until the third party debt is fully settled.

**Article 2.04 Fees and Taxes**

(a) The relevant expenses of this Transaction shall be borne by each Party respectively.

(b) Each Party shall, in accordance with applicable law, bear the taxes in connection with the Transaction, except that the Party shall perform the withholding obligation in accordance with the law (however, when asserting and actually performing the withholding obligation, one Party shall provide legal evidence in advance and obtain the consent of other Parties).

### Article 3 Change in Target Equity and Easy Go equity

### Paragraph 3.01 Capital Increase

The Transferor or **LETV Holdings** shall complete the industrial and commercial registration for the Target Company's capital increase of US$230 million from this Agreement is signed and becomes effective until the fulfillment of paragraphs 3.02 and 3.03 of this Agreement.

### Article 3.02    Industrial and Commercial Registration Change Related to Target Equity

Within forty-five working days after this Agreement is signed and becomes effective, the Target Company shall complete the industrial and commercial registration change related to the equity transfer at the industrial and commercial registration authority, and obtain the new Business License for Enterprise Legal Person of the Target Company after the completion of the industrial and commercial registration change, a copy of which (bearing the official seal of the Target Company) shall be submitted to the Target Company.

The Parties shall provide appropriate assistance in the course of the industrial and commercial registration change (if needed).

### Article 3.03 Industrial and Commercial Registration Change Related to **Easy Go Equity**

Within three working days after this Agreement is signed and becomes effective, the Parties shall prompt the designated overseas affiliates of Taoyun Capital, Lucky Clover and the Actual Controller of LeEco to complete the signing and entry into force of the overseas equity transfer agreement, and complete the industrial and commercial registration change related to the Easy Go Equity within the time limit specified in the overseas equity transfer agreement.

The Parties shall provide appropriate assistance in the course of the industrial and commercial registration change (if needed).

### Article 4 Equity Repurchase

**Article 4.01 Equity Repurchase**

Upon reaching consensus among the interested parties such as the designated overseas affiliates of Taoyun Capital, the Transferor, and the Actual Controller of LeEco, the Transferor may require to repurchase part or all of the equity at the agreed reasonable price and at the time approved by the Parties (provisional 15% annual interest rate)  ("Repurchase").

**Article 5 Representations and Warranties of the Transferor**

**A**rticle 5.01 The Transferor is a person with full capacity for civil conduct.

**Article** 5.02 The Transferor has all the necessary powers, authorizations and capabilities to sign and deliver all transaction documents, fulfill its obligations under this Agreement and other transaction documents, and assume legal liability for the legal consequences. Each transaction document, once being signed and delivered, shall constitute a valid and legally binding obligation to the Company and its existing shareholders and may be enforced in accordance with its respective terms.

**Article** 5.03 The Transferor hereby represents and warrants to the Transferee that, unless otherwise stated in advance, the Transferor's representations are true, accurate and complete in material terms as of the date of this Agreement.

**A**rticle 5.04 The Transferor shall promptly obtain the resolution documents of the Company related to the equity transfer specified in this Agreement, and the legal documents on waiver of the right of first refusal that by other shareholders.

**A**rticle 5.05 The Transferor is the legal owner of the Target Equity, and no pledge or other security interest or any other third party rights have been created on the Target Equity.

**A**rticle 5.06 As of the signing date of this Agreement, except as disclosed to the Transferee by the Transferor, there is no situation that causes or may cause tax disputes, tax penalties or relevant judicial proceedings against the Transferee; the Target Company has not been involved in any disputes, punishments or judicial proceedings, including but not limited to any litigation, arbitration, administrative proceedings, enforcement measures or enforcement proceedings; there are no undisclosed Excess Unliquidated Obligations to be assumed by the Target Company and no cause of the above-mentioned obligations; the tax penalties, litigation, arbitration, administrative proceedings, enforcement measures, coercive measures, and Excess Unliquidated Obligations arisen prior to the date hereof shall be settled by the Target Company, however, the liability and damages for the Target Equity arising therefrom shall be borne by the Transferor.

**Article** 5.07 The execution, delivery and performance of this Agreement and being a Party to this Agreement shall not violate or contravene any laws, regulations or government directives applicable to any of its assets, property or business.

### Article 6 Representations and Warranties of the Transferee

**A**rticle 6.01 The Transferee is an enterprise legal person established and validly existing according to law, and has the qualifications and rights of civil subjects that are compatible with the conclusion and performance of this Agreement. Once being duly authorized, signed and delivered by the Parties, this Agreement shall constitute a legal, valid and binding obligation to the Transferee and may be enforced in accordance with the terms hereof. The Transferee is not subject to any bankruptcy, restructuring, insolvency, litigation or other claims that generally affect the rights of its creditors.

**Article** 6.02 Except for the lawful authorization to sign and execute this Agreement, the Transferee's execution and performance of this Agreement will not violate its business license, shareholder agreement, limited partnership agreement, articles of association (as applicable) or similar organization documents and will not violate any relevant laws or any government authorization, or any other agreement to which it is a Party (or binding it). In addition, there is no occurred and unsettled litigation, arbitration or other judicial or administrative proceedings which will affect its ability to perform any of its obligations under this Agreement.

**T**he source of the funds used by the Transferee to pay the first part of the Transaction Consideration is legal. There is no violation of any applicable laws and regulations, and no claim against or liability of the Company will be incurred.

**Article** 6.04 The execution, delivery and performance of this Agreement and being a Party to this Agreement shall not violate or contravene any laws, regulations or government directives applicable to any of its assets, property or business.

### Article 7 liability for breach of contract

Article 7.01 **I**f any Party violates the provisions hereof and causes any loss to the other Parties, it shall bear the corresponding liability for compensation and pay all the litigation costs including the lawyer's fee incurred by the other Parties. In case of late payment, the default Party shall pay liquidated damages to other Parties at five over ten thousand of the unpaid amount for each day of delay.

### Article 8 Miscellaneous

### Article 8.01 Interpretation and Interpretation Principles
(a) In this Agreement, "shall" and "should" are mandatory and have the same meaning as "must"; "may" is authoritative, the actor has the right to decide to act or not

to act. The Party enjoying a right may exercise or waiver on the right, and the freedom to choose and decide lies with that Party.

(b) "Writing" means any form of recordable information that can be identified by normal means of visualization, including but not limited to fax, electronic transmission, e-mail, SMS, letters, etc.

(c) References to or use of "hereunder" include all terms of this Agreement and its items, objectives, sentences, phases and words. "Article" includes and only includes the specified article and the paragraphs, items, sentences, phrases and words thereof. The "Clause" includes and only includes the specified Clause and all the items, sentences and words thereof, "Items" "Includes and includes only the specified items and all the items, sentences, phrase and words thereof.

(d) References to "Parties" shall include all Parties listed in the preamble to this Agreement, and the Parties shall only assume individual, independent and non-joint legal obligations with respect to their own rights and obligations under this Agreement (unless otherwise expressly agreed).

(e) "Including" or "including but not limited to", is merely used as an enumeration and shall not to be construed as limiting, restricting, or excluding any other includible items than those enumerated.

(f) "Delivery" means the legal fact that movable objects such as movable property or right certificates are transferred between entities.

(g) "Law" means the law that applies generally or specifically to a particular matter under this Agreement. Subject to the provisions on governing law under Article 8.12 hereof, references to "applicable law" refer not only to the laws enacted and enforced by the specific national or regional legislature in accordance with the applicable procedures, but also the normative documents enacted by local legislature, the state or local judicial organs or administrative organs in accordance with the applicable procedures and generally accepted by the country or region as legally binding, regardless of whether they are named as laws, norms, regulations, rules, decisions, orders, opinions, notices or other. These laws shall be implemented, enforced and universally legally binding at the time of signing this Agreement, as amended and revised by the competent authorities from time to time.

(h) "Judgment" means the judgment or ruling made by a court of competent jurisdiction in accordance with the applicable procedural law and substantive law; or the arbitration award made by the arbitral tribunal of competent jurisdiction in accordance with the applicable arbitral proceedings and substantive law agreed upon herein.

(i) Any reference to "proceedings" shall include litigation proceedings and arbitration proceedings. Litigation proceedings shall include criminal, civil and administrative litigation proceedings; the arbitration proceedings shall include labor arbitration proceedings, commercial arbitration proceedings, international arbitration proceedings and other types of arbitration proceedings.

(j) Both "within" and "in" shall include this number/day; "over" shall not include this number/day.

(k) Where any amount and number are used, in case of inconsistency between the capitals and lower-case letters, or inconsistency between the Arabic numerals and the Chinese numerals, the capitals or Chinese number shall prevail.

(l) Any reference to "day" means a calendar day, starting from 0:00 am Beijing time until 24 hours later. References to "working days" or "business days" means any day or days other than Saturdays, Sundays and holidays, rest days in accordance with the applicable laws of the People's Republic of China or other countries or regions. Except as otherwise required by the context, if any of the rights or obligations under this Agreement are to be exercised or performed on a non-working day, the exercise or performance shall be extended to the first working day after that date. "Day" includes the day, and "next day" is the day following the alleged day.

(m) Any reference to "yuan" or "YUAN" means the common currency of the People's Republic of China. References to "dollars" refer to the statutory common currency of the United States of America. Unless otherwise expressly agreed to use US dollars or other currencies, any payment obligations under this Agreement shall be denominated, settled and paid in RMB.

(n) Any reference to "Chinese" shall mean the simplified Chinese characters commonly used in the mainland of the People's Republic of China in conformity with the standards for the use of Chinese languages and characters issued by the State Language Commission of the People's Republic of China.

**Article 8.02 Confidentiality**

(a) Confidential information under this Agreement, (i) for any individual, confidential information shall include the information contained in the Resident Identity Card of the People's Republic of China, other national or regional passport and other identification documents, such as the person's telephone number, mobile phone number or other contact information, home address, office address, marriage status, property information, etc. (ii) for any entity, confidential information shall include its patented technology, software source code, know-how, trade secrets, product development plan, pricing strategy, business method, investment, acquisition, reorganization, bank loan, bond issuance, listing plan, employee recruitment plan,

financial accounting information, etc.; (iii) for any matter or Transaction under this Agreement, confidential information shall include pre-contact, negotiation, meeting, conference, communication, mail, letter, fax and the drafting, modification, negotiation, signing, payment, delivery of or under the transaction agreement (including this Agreement),etc.; (iv) for the above information or other information, against which appropriate confidentiality measures have been taken, or have been identified as "confidential", which the information holder is unwilling to disclose or make it known by others, and the disclosure or known to others of which will cause economic loss to or other significant adverse effects on information holder shall constitute the confidential information under this Agreement.

(b) Unless compulsorily disclosed, anyone who acquires, receives, saves, uses, copies and transmits confidential information is obliged to take appropriate confidentiality measures so that they are not disclosed, revealed or known to others. "Compulsory disclosure" means the disclosure made according to legal, judicial or administrative requirements, including disclosure to any relevant government department or stock exchange in accordance with applicable laws or stock exchange rules. In the event of a mandatory disclosure, the disclosing Party shall, at the reasonable time prior to the disclosure and to the extent permitted by applicable law, consult with the confidential information provider and do its utmost to keep the disclosed information confidential. However, for the purposes of completion of this Agreement or the Transaction hereunder, one Party may disclose the confidential information to its affiliates or intermediary agencies such as legal counsel, financial advisors, etc., and shall ensure that the recipient of the information fully understands, knows and agrees to assume the same obligation of confidentiality as the disclosing Party. In addition, no Party may use confidential information in any way for any other purpose.

(c)For any information disclosed or permitted to be disclosed by either this Agreement or any Party hereto, becomes or has been publicly available at the time of disclosure for reasons not attributable to any Party or its affiliates, or is derived from any bona fide third party, the recipient of the information shall not assume confidentiality liability within the scope of the information obtained. However, in no event shall any information be deemed to be non-confidential solely due to any provision that no confidentiality liability shall be assumed.

**Article 8.03 Effectiveness, Amendment and Termination**

(a) This Agreement shall become effective upon being signed and and/or stamped by the legal representatives or the authorized representatives of the Parties or by themselves ("Signature").

(b) Upon signing on the signing page of this Agreement, each of the Parties shall be deemed to have fully understood and acknowledged the rights of the Parties and the

terms and conditions hereof, agreed to perform all of the obligations hereunder after the entry into force of this Agreement, be willing to be bound by all of the terms and conditions hereof and assume any legal liability arising herefrom. The Parties agree that only affixing the official seal to the signature page or signatory place hereof without the signature of the legal representative or authorized representative, or the official seal being a non-contract special seal such as financial special seal, or signing this Agreement by the person authorized by the legal representative or failure of the signatory to obtain written authorization at the time of signature or after signature shall not affect the entry into force of this Agreement. Any objection to the validity of this Agreement on the grounds that there is only the seal without the signature, this Agreement is signed by other person than the legal representative, the seal is non-contract special seal or the representative is authorized shall be invalid.

(c) This Agreement shall not be amended without the agreement of the Parties. Any valid amendment shall be made in separate written supplementary agreement to this Agreement after reaching consensus .If any Party hereto initiates or files a lawsuit or arbitral proceedings, and the court, tribunal or arbitral tribunal of competent jurisdiction ultimately rules that any clause or wording of this Agreement is invalid   or unenforceable ("Invalid Clause") and have to be modified, the Parties shall jointly complete the amendment through good faith negotiation and based on the basic principle of maximizing compliance with this Agreement, so that the matters proposed and the rights and obligations of the Parties hereunder can be completed and achieved to the maximum extent. If, within fifteen (15) days after the ruling takes effect, the Parties are still unable to reach an agreement on the amendment of this Agreement, then:

(i)   this Agreement may be un-amended and such invalid clause shall be deemed and construed to have not been formulated or contained herein from the effectiveness of this Agreement; or,

(ii) if the invalid clause actually constitutes the fundamental clause hereof, or the invalidity or non-existence of such clause will lead to the fundamental purpose of this Agreement being unfulfilled or uncontinued performance of this Agreement, this Agreement shall be terminated.

(d) Each Party hereto shall use its reasonable and best efforts to abide by and perform this Agreement. This Agreement shall not be terminated without the agreement of the Parties except

(i) if any court, tribunal or arbitral tribunal of competent jurisdiction rules, in accordance with applicable law, that all or part of the terms hereof is invalid, revoked or unenforced, or if any government department decides to terminate all or part of this Agreement, this Agreement or the corresponding terms shall be terminated;

  (ii) If any Party seriously violates this Agreement, which leads to the fundamental purpose of this Agreement being unfulfilled or uncontinued performance of this Agreement, this Agreement shall be terminated;

  (iii) Termination in accordance with Article 7 of this Agreement.

 (e) Under the above circumstances, the Party who decides to terminate the agreement shall issue a notice of termination to the other Parties and this Agreement shall terminate as of the effective date of the notice.

### Article 8.04 Transfer of Rights and Obligations

 No rights and obligations under this Agreement may be transferred to any other third party without the unanimous consent of the other Parties. In case of the transfer of any rights and obligations, the Transferor shall notify the other Parties in writing and obtain their consents before proceeding with the transfer.

### Article 8.05 No Waiver

 Except as otherwise provided by laws and regulations or as otherwise agreed in this Agreement, failure to exercise, being unable to exercise or delay in exercise of any of its rights, powers or remedies under this Agreement or obtained according to this Agreement shall not constitute the waiver on such or any other rights, powers or remedies. The waiver on part of the rights by any Party shall not constitute waiver or exemption from other rights that are not expressly waived.

### Article 8.06 Notice

 (a) Unless otherwise agreed, all notices, complaints, claims, demands and other information communicates ("Notices") under this Agreement shall be made in writing and delivered by hand, courier, fax, or registered mail (postage prepaid and return receipt required).Notwithstanding the foregoing, if the Parties send notice by electronic communication in accordance with commercial practices or past transaction habits and the recipient raises no objection, such notice shall be deemed to have the same legal effect as the written notice. For the purposes of this Agreement, the so-called electronic communication means the use of instant messaging methods such as e-mail, messages of mobile phones and other mobile communication devices, WeChat, QQ or SKYPE to transmit information or to issue notifications. In case of agreement on electronic communication, the recipient shall provide an accurate number or account to ensure that the notice can be delivered in time. The notice shall be sent to the address provided by the Parties on the signing page of this Agreement, or other address changed after this Agreement is signed, as long as the Party changes the address according to the actual situation and immediately informs the other Party of the changed address. The notice

shall specify the matters involved, the completion requirements and conditions, and the deadline, and shall be written in Chinese. If the notice is used to report an incident, it shall state the time, place, process, cause and result of the incident and provide evidence. In the case of a correction notice, specific errors or defects shall also be indicated.

(b) A notice sent under this Agreement shall be deemed to be served validly ("Service") if any of the following conditions are satisfied:

(i) if sent by electronic communication, the notice shall be deemed to be validly served on the day when the email is successfully sent actually or as indicated;

(ii) if delivered by a person, the notice shall be deemed to be validly served on the date of delivery by the person;

(i) if sent by registered mail, the notice shall be deemed to be validly served on the seventh day after the date of mailing (by postmark);

(iv) if sent by courier, the notice shall be deemed to be validly served on the third day after the delivery of it to the courier service.

(c) In the case of any of the above-mentioned services, if the recipient informs the sender on the day following the date of service and expressly indicates that no notice has been received, the notice shall be deemed not to have been served and the Parties shall immediately negotiate and determine to resend the notice ("Resent Notice").The above mentioned service rules shall still be applicable to the Resent Notice. In the event that any notice cannot be severed due to untrue or inaccurate address provided by the recipient, or although the notice has been served, the recipient fails to accept process or understand the notice in a timely manner, resulting in the failure of the purpose of the notice and losses to the recipient ("Failure of Notice"), the recipient shall bear all losses; if the sender suffers any loss due to the Failure of Notice, the sender shall have the right to obtain compensation from the recipient.

## Article 8.07 Integrity

This Agreement shall constitute the entire agreement among the Parties with respect to the subject matter hereof and this Agreement shall have the legal effect of replacing any prior written or oral agreement among the Parties on the subject matter hereof.

## Article 8.08 Severability

If any terms or provisions of this Agreement are deemed to be invalid or unenforceable in any jurisdiction, such terms or provisions shall be void only in such

invalid or unenforceable scope, and the remainder shall not be affected and remain in full force and effect. The invalidity and unenforceability of any provision in a jurisdiction shall not affect its legal effect in other jurisdictions. It shall remain in full force and effect in other jurisdictions. In addition, if any provision of this Agreement is deemed to be invalid or unenforceable and will become effective or enforceable in case of deletion part thereof, then such provision shall be modified to the extent necessary to make it effective and enforceable.

### Article 8.09 Independent Clause

The provisions on the liability for breach of contract, confidentiality, notice, governing law and dispute resolution hereof shall have fully independent legal effect. The invalidity, cancellation or termination of the entire (or part) of this Agreement shall not affect the legal effect of such provisions, which shall continue to be valid.

### Article 8.10 Headings

Any headings in this Agreement are for convenience of reading only and do not constitute a summary or explanation of any of the terms of this Agreement, nor do they have any effect on the interpretation of any terms.

### Article 8.11 Languages

This Agreement is written, interpreted, retained and performed in the Simplified Chinese version of the People's Republic of China. Any Party may translate it into any other language according to the respective needs. However, in the event of any conflict, inconsistency or discrepancy in the writing, interpretation, and performance of the terms in any other language and in the language of this Agreement, the Chinese version shall prevail.

### Article 8.12 Governing Law and Dispute Resolution

This Agreement, any transaction, action, conduct or arrangement under this Agreement, and all rights and obligations of the Parties under this Agreement shall be governed by the laws of the People's Republic of China and shall be construed in accordance with such laws.

In the event of any dispute arising from this Agreement, any Party shall have the right to file litigation with the People's Court of competent jurisdiction at the place where this Agreement is signed.

### 8.13

This Agreement is made in eight originals with each Party holding one (1) original, and the remaining (2) originals shall be used for registration with the registration authority (if required), each of which shall have the same legal effect.

(The remainder is left blank intentionally)

**(Signature Page of the Equity Transfer Agreement)**

Signed by**: Shanghai Zheyun Business Consulting Partnership (Limited Partnership) (Official Seal)**

signature:

Position:

Signatory: Wu Meng

signature:

Signed by**: Beijing Dongfang Cheyun Information Technology Co., Ltd. (official seal)**

signature:

Position:

Signed by**: LETV Holdings (Beijing) Co., Ltd. (official seal)**

signature:

Position:

Signed by**: Taoyun Capital Group Co., Ltd. (official seal)**

signature:

Position:

Signed by: Jia Yueting

signature:





# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S NOTICE OF OBJECTION AND OBJECTION TO CLAIM 56 FILED BY SHEHZHEN JINCHENG COMMERCIAL FACTORING CO., LTD.; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF YUETING JIA AND SHAN HE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 2, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **April 2, 2020,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

United States Bankruptcy Court
Central District of California
Attn:  Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA  90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 2, 2020 | Nancy H. Brown | | /s/ Nancy H. Brown |
|---|---|---|---|
| *Date* | *Printed Name* | | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:328782.1 46353/002

## SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ

### 1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)

- Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jerrold L Bregman    ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Richard H Golubow    rgolubow@wghlawyers.com, pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan    blogan@omm.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- David W. Meadows    david@davidwmeadowslaw.com
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Felix T Woo    fwoo@ftwlawgroup.com, admin@ftwlawgroup.com
- Claire K Wu    ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- David B Zolkin    dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:328782.1 46353/002

Filed: USBC - Central District of California
Yueting Jia   (B10)
19-24804 (VPZ)

YT1

0000000056

**Fill in this information to identify the case:**

Debtor 1    Yueting Jia

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   2:19-bk-24804-VZ

**RECEIVED**

JAN 2 4 2020

**LEGAL SERVICES**

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case.** Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| 1. Who is the current creditor? | Shenzhen Jincheng Commercial Factoring Co., Ltd. |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. Has this claim been acquired from someone else? | ☑ No |
|---|---|
| | ☐ Yes.  From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jie Feng
Name
12 Floors, Block AB, Wantong Center, No.6 Chaowai St.,
Chaoyang District
Number      Street
Beijing                          1000005
City                State        ZIP Code

Contact phone   +86 15801607199

Contact email   fengjie0201@126.com

Where should payments to the creditor be sent? (if different)

Name

Number      Street

City          State        ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — — —

| 4. Does this claim amend one already filed? | ☑ No |
|---|---|
| | ☐ Yes.  Claim number on court claims registry (if known) _____ |

Filed on _____
MM  /  DD  /  YYYY

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
|---|---|
| | ☐ Yes.  Who made the earlier filing? _____ |

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |

| | |
|---|---|
| 7. **How much is the claim?** | $_____36,211,540.60_. **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Personal Guarantee _____ |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $_____<br>**Amount of the claim that is secured:** $_____<br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:   Sign Below**

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b). | Check the appropriate box: |
| | ☐ I am the creditor. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☑ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. |
| | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date   01/21/2020
　　　　　　　　　　 MM / DD / YYYY


**JIE FENG**
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Jie | | Feng |
| | First name | Middle name | Last name |
| Title | Project Manager | | |
| Company | TWC Group Co., Ltd | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 12 Floors, Block AB, Wantong Center, No.6 Chaowai St., Chaoyang District | | |
| | Number　　　　Street | | |
| | Beijing | | |
| | City | State | ZIP Code |
| Contact phone | +86 15801607199 | Email | fengjie0201@126.com |

# Exhibit 1 – Itemized List of Claim Amount

The items included in Shenzhen Jincheng Commercial Factoring Co., Ltd. 's claim of
$ 36,211,540.60 are as follow:

$ 13,161,138.50  Principal,

$ 23,050,402.10  Interest.

# Exhibit 2 –商业保理业务合同（无追索型）

# 商业保理业务合同

## （无追索型）









合同编号：　__SZJC-201611-BOELSYD-BLHT__

签 署 地：　__北京__

签署日期：　__2016 年 12 月  2 日__

甲　　　方：京东方现代（北京）显示技术有限公司

住　所　地：北京市朝阳区酒仙桥路 10 号

法定代表人：刘晓东

联　系　方式：+86-10-58411555

授权代理人：刘晓东


乙　　　方：深圳谨诚商业保理有限公司

住　所　地：深圳市前海深港合作区前湾一路 1 号 A 栋 201

法定代表人：郭震

联　系　方式：010-84084778 / 13426157320

授权代理人：胡魁涛


鉴于：

　　甲方采用赊销方式向买方销售货物或提供服务，并以由此形成的交易合同项下对买方的应收账款向乙方申请办理无追索权的国内保理业务，乙方为甲方提供融资服务。

　　为明确双方权利义务，恪守信用，根据《中华人民共和国合同法》及有关法律、法规，甲乙双方本着互惠互利的原则，在平等自愿的基础上，签署本合同，以便双方共同遵守执行。

　　第一条　定义条款

　　在本合同项下条款及所涉文件中，除非双方另有约定，下列用语将具有如下含义：

2

1. 无追索权保理：是指乙方作为保理商，在甲方将交易合同项下应收账款转让给乙方的基础上，向甲方提供的综合性金融服务；无追索权是指，在乙方为买方核定的信用风险额度内，对于经乙方核准的应收账款，在该等核准应收账款因买方信用风险不能回收时，乙方承担责任，如乙方就已受核准的单笔应收账款已向甲方支付保理预付款，乙方对该等保理预付款不向甲方追索，但保留根据担保协议向保证方追索的权利。

2. 买方：指交易合同中购买甲方货物、接受甲方提供服务或与甲方进行其他交易并负有支付价款义务的一方当事人。

3. 交易合同：是指产生应收账款的、由甲方与买方签订的货物销售协议、服务协议或其他乙方认可的交易协议。

4. 应收账款：指因甲方采用赊销方式销售货物、提供服务或进行其他乙方认可的交易而产生的甲方对买方和（或）第三方的合法、有效债权以及其他权利和利益，包括但不限于应收账款本金、利息、违约金、损害赔偿金，以及担保权利、保险权益等所有主债权的从债权以及与主债权相关的其他权益。但不包括甲方与买方在本合同签订时已经主张抵消或折让的部分。

5. 保理融资款：指乙方根据甲方申请，对甲方转让的应收账款的价值进行审查评估后，依据本合同约定按照一定比例向甲方支付的款项。

6. 应收账款到期日：是指应收账款所对应的交易合同的所确定的买方付款日期或甲方与买方单独约定的付款日期。

3

## 第二条 保理期限

本合同保理期限自 2016 年 12 月 2 日起至 2017 年 7 月 28 日止，共计 8 个月。

## 第三条 应收账款回款账户

☐支付到甲乙双方约定的账户：

户　名：京东方现代（北京）显示技术有限公司

账　号：████████████

开户行： 平安银行股份有限公司北京亚奥支行

不论回款账户为甲方开立的账户或甲乙双方共同约定账户，甲乙双方明确如下：

1. 甲方同意在应收账款转让给乙方后，接受乙方委托收取该应收账款，并以上述回款账户作为转让应收账款项下回款的唯一账户，并将应收账款到账当日支付给乙方。

2. 上述回款账户仅作为本合同项下应收账款的回款账户，该账户资金的转出须经乙方同意，甲乙双方需共同监管此账户。

3. 甲方承诺未经乙方同意不得撤销上述账户。未经乙方同意，甲方不得以任何方式处置该账户内资金，包括但不限于不得使用网银、不得办理对外结算等。

4. 甲方同意在甲方违约并经乙方书面指出违约行为后 10 个工作日内仍未纠正的情况下，乙方有权在上述回款账户中扣划按本合同约定应当由乙方收取的款项以及甲方应当承担的费用、损失、违约金等。

## 第四条 应收账款的回购

本合同为无追索权保理合同，应收账款到期日遇买方未按期支付账款，乙方同意由乙方承担担保付款的责任，乙方对该等保理预付款不向甲方追索，但同时保留根据担保协议向保证方追索的权利。

出现本合同第五条规定或者第九条（1）项提前回购情形的除外。在发生上述情形时，乙方有权选择决定向甲方或者依照协议要求保证方履行以上义务。

### 第五条  应收账款提前回购的情形

发生以下情形的，甲方应当对转让给乙方的应收账款进行提前回购，乙方应按比例退还保理服务费：

1. 应收账款到期日前，买方以任何书面形式就交易合同项下的商业纠纷通知乙方或者乙方通过甲方及其他任何途径得知交易合同发生纠纷的。

2. 甲方或买方在交易合同项下存在商业欺诈行为的。

3. 甲方与买方之间交易合同项下存在关联交易的或应收账款存在债权债务抵销、折让、退回等使应收账款减损的情形的。

### 第六条  保理融资款及保理服务费

1. 双方约定，本合同项下转让的应收账款总额为人民币（大写）壹亿伍仟陆佰陆拾肆万柒仟零叁拾玖圆肆角整（小写：¥156,647,039.40 元）（应收账款明细详见附件《应收账款转让清单》）。据此按一定比例进行保理融资，保理融资款总计人民币（大写）壹亿伍仟陆佰陆拾肆万柒仟零叁拾玖圆肆角整（小写：

¥156,647,039.40 元），乙方于 2016 年 12 月 7 日前支付给甲方。

甲方承诺将保理融资款用于 日常生产经营所需流动资金。

2.双方约定,本合同的保理服务费的计算标准为:年化利率13% 。

由乐视移动智能信息技术（北京）有限公司与乙方另行签署《商业保

理业务合同服务费协议》并支付上述保理服务费。

### 第七条 甲、乙双方的账户信息

甲方账户：京东方现代(北京)显示技术有限公司

账　　号：█████████████

开 户 行：招商银行北京分行

乙方账户：深圳谨诚商业保理有限公司

账　　号：█████████████

开 户 行：平安银行北京德胜门支行

### 第八条 担保方式

□乐视控股（北京）有限公司为本合同的履行提供担保,具体担

保内容双方另行约定,并作为本合同的从合同,对双方均具有法律约

束力。

### 第九条 合同终止条款

1. 甲方有下列情形之一的, 乙方有权单方解除保理合同, 并要

求甲方提前回购应收账款, 已经收取的保理服务费用不予退还。

（1）本合同第五条约定的提前回购条件出现的;

（2）甲方违反保理融资款的约定使用用途，将保理融资挪作他用的；

（3）甲方出现或可能出现重大财产诉讼，可能影响应收账款回购的；

（4）甲方在经营过程中，财务状况发生重大变化，可能影响应收账款回购的；

（5）甲方在经营过程中，发生企业变更、合并、分立、重组、财产被查封等情形可能影响应收账款回购的；

2. 甲乙双方协商一致，可以书面终止本合同，乙方应将按比例退还保理服务费。

3. 法定解除合同条件出现时，甲乙双方可以终止本合同，乙方应将按比例退还保理服务费。

## 第十条 违约条款

1. 双方约定，因甲方违反本合同任一约定导致的费用损失（包括但不限于催收费用、诉讼费或仲裁费、保全费、公告费、执行费、乙方聘请律师的费用、差旅费及其它费用），应由甲方承担。

2. 双方约定，如有一方违反本合同约定或违反法律法规构成违约，除由违约方赔偿对方全部损失外，自违约日起，还应由违约方按照保理融资总额每日千分之五的违约金支付标准承担违约责任。

## 第十一条 争议解决方式

执行本合同发生争议，由双方协商解决；协商不成的，向乙方所在地有管辖权的人民法院提起诉讼。

## 第十二条 其它

本合同自甲、乙双方盖公章（或合同章）之日起生效，一式肆份，甲、乙双方各执贰份，具有同等法律效力。


（以下无正文）


甲方（盖章）： 

法定代表人/授权

代理人（签字）：

　　年　月　日

乙方（盖章）： 

法定代表人/授权

代理人（签字）： 

　　年　月　日

# Commercial Factoring Business Contract

(Non-recourse Type)

Contract No.: SZJC-2Q1611-ROELSYD-BLHT

Signed in: Beijing

Signed on: December 2, 2016

Party A: BOE Modern (Beijing) Display Technology Co., Ltd

Address: No.10 Jiuxianqiao Road, Chaoyang District, Beijing

Legal representative: Liu Xiaodong

Contact No.: 86-10-58411555

Authorized agent: Liu Xiaodong


Party B: Shenzhen Jincheng Commercial Factoring Co., Ltd

Address: Room 201, Building A, No. 1 Qianwan 1st Road, Qianhai Shenzhen-Hong Kong Cooperation Zone, Shenzhen

Legal representative: Guo Zhen

Contact: 010-84084778 / 13426157320

Authorized agent: Hu Kuitao


Whereas:

Party A sells goods or provides services to the Buyer on credit, and applies to Party B for domestic factoring business without recourse with respect to the account Accounts Receivable it is entitled against the Buyer under the Transaction Contract contemplated thereby; Party B is entrusted to provide financing service for Party A.

In order to clarify the rights and obligations of both Parties and abide by the credit, Party A and Party B, in accordance with the Contract Law of the People's Republic of China and relevant laws and regulations, and on the basis of equality and voluntariness in the principle of mutual benefit, enters into this Contract for mutual compliance with.

### Article 1 Definitions

Unless otherwise agreed by the Parties, the following terms used in the provisions hereof or documents contemplated hereunder shall have the meanings as follows.

1. Non-recourse Factoring: refers to the comprehensive financial service to be provided by Party B to Party A on the premises that Party A transfers the Accounts Receivable under the Transaction Contract to Party B as a factoring agent; "non-recourse" means that, within the credit risk limit approved by Party B for the Buyer, Party B shall bear the liability when the Accounts Receivable approved by Party B cannot be recovered due to the Buyer's credit risk, and, if Party B has paid the factoring advance to Party A for a single approved Accounts Receivable, Party B shall not recourse to Party A for such factoring advance, but shall reserve the right of recourse to the guarantor according to the guarantee agreement.

2. Buyer: refers to the Party who purchases Party A's goods, accepts Party A's services or conducts other transactions with Party A under the Transaction Contract and has the obligation to

pay the price thereof.

3. Transaction Contract: refers to the goods sales agreement, service agreement or other transaction agreement recognized by Party B signed by and between Party A and the Buyer that generates the Accounts Receivable.

4. Accounts Receivable: refers to the legal and effective creditor's rights and interests that Party A enjoys against the Buyer and/or the third party arising from Party A's sale of goods, provision of services or conduction of other transactions recognized by Party B on credit, including but not limited to the principal and interest of Accounts Receivable, liquidated damages and compensation for damages, as well as the subordinate creditor' rights such as security rights and insurance interests, and other rights and interests related to the principal creditor' rights, but excluding the part that Party A and the Buyer have claimed to offset or discount at the time of signing this Contract.

5. Factoring Financing Fund: refers to the amount paid by Party B to Party A in a certain proportion in accordance with this contract after Party B reviews and evaluates the value of the Accounts Receivable transferred by Party A based on the application of Party A.

6. Due Date of Accounts Receivable: refers to the Buyer's payment date determined in the Transaction Contract that the Accounts Receivable is related to, or the payment date separately agreed by Party A and the Buyer.

**Article 2 Term of factoring**

The term of factoring hereunder shall be from December 2, 2016 to July 28, 2017, totaling 8 months

**Article 3 Collection account of Accounts Receivable**

□ To be paid to the account agreed by both Parties:

Account Name: BOE Modern (Beijing) Display Technology Co., Ltd

Account No.: █████████████

Opening Bank: Beijing Yaao Branch of Ping An Bank Co., Ltd

No matter the collection account is the account opened by Party A or the account agreed by both Parties, both Parties make it clear as follows:

1. Party A agrees to accept the entrustment of Party B to collect the Accounts Receivable after it is transferred to Party B, and shall use the said collection account as the only account to collect the Accounts Receivable transferred, and pay the Accounts Receivable to Party B on the day when they are received.

2. The said collection account shall only be used as the account to collect the Accounts Receivable hereunder, and the transfer-out of capital from that account shall be subject to the consent of Party B, and this account shall be jointly supervised by both Parties.

3. Party A undertakes not to cancel the said account, or dispose the funds in the account in any way (including but not limited to using online banking and handling external settlement) without the consent of Party B.

4. Party A agrees that if it breaches the contract and fails to rectify within 10 working days after Party B's written notice, Party B shall have the right to deduct from the said collection account the amount to be collected by Party B in accordance with this Contract and the expenses, losses, liquidated damages, etc. to be borne by Party A.

### Article 4 Repurchase of accounts receivable

This Contract is a factoring contract without recourse. Therefore, in case the Buyer (note: LETV Mobile) fails to make payment before or on the due date of the accounts receivable, Party B will not recourse to Party A for the factoring advance payment, but it reserves the right to recourse from the guarantor under the guarantee agreement.

Except for under the circumstances specified in Article 5 or Article 9 (1) hereof, in case of any of the said circumstances, Party B shall have the right to decide, at its own discretion, to require Party A or the guarantor to perform the said obligations in accordance with the agreement.

### Article 5 Early repurchase of accounts receivable

In case of any of the following circumstances, Party A shall early repurchase the Accounts Receivable transferred to Party B, and Party B shall return the factoring service fee in proportion:

1. Before the Due Date of Accounts Receivable, the Buyer notifies Party B in any written form of the commercial disputes under the Transaction Contract, or Party B learns, either from Party A or through any other means, that there is dispute under the Transaction Contract.

2. Party A or the Buyer has commercial fraud under the Transaction Contract.

3. There is any related transaction under the Transaction Contract between Party A and the Buyer, or there is any circumstance that the Accounts Receivable should be subject to credit-debt offset, allowance, refund or otherwise that cause the impairment of the Accounts Receivable.

### Article 6 Factoring financing fund and factoring service fee

1. Both Parties agree that the total amount of the Accounts Receivable transferred hereunder shall be RMB One Hundred and Fifty-six Million, Six Hundred and Forty-seven Thousand and Thirty-nine Yuan and Forty Fen (in figures: 156,647,039.40) (For details of Accounts Receivable, please refer to the appendix "List of Accounts Receivable Transferred"). Thereafter, factoring financing will be carried out in a certain proportion. The total amount of factoring financing shall be One Hundred and Fifty-six Million, Six Hundred and Forty-seven Thousand and Thirty-nine Yuan and Forty Fen (in figures: RMB 156,647,039.40 RMB), which shall be paid by Party B to Party A before December 7, 2016. Party A undertakes to use the factoring financing fund for the working capital required for daily production and operation.

2. Both Parties agree that the factoring service fee hereunder shall be calculated at an annual rate of 13%. LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd shall separately enter into an Agreement on Service Fee under the Commercial Factoring Business Contract with Party B and pay the said factoring service fee.

### Article 7 Account information of both Parties

Account of Party A: BOE Modern (Beijing) Display Technology Co., Ltd

Account No.: ██████████

Opening Bank: Beijing Branch of China Merchants Bank

Account of Party B: Shenzhen Jincheng Commercial Factoring Co., Ltd

Account No.: ██████████

Opening Bank: Beijing Deshengmen Sub-branch of Ping An Bank

**Article 8 Way of guarantee**

LETV Holdings (Beijing) Co., Ltd provides guarantee for the performance of this Contract. The specific content of guarantee is to agreed by both Parties separately and shall constitute a subordinate contract hereof and have legal binding force on both Parties.

**Article 9 Termination of contract**

1. In case of any of the following circumstances of Party A, Party B shall have the right to unilaterally terminate the Factoring Contract and require Party A to early repurchase the Accounts Receivable, and the factoring service fees already collected by it will not be returned:

(1) any of the circumstances for early repurchase stipulated in Article 5 hereof occurs;

(2) Party A misappropriates the Factoring Financing Fund for other usage rather than the agreed usage;

(3) Party A is involved or may be involved in major property litigation, which may affect the repurchase of the Accounts Receivable;

(4) Party A encounters major change in its financial situation in the course of its operation, which may affect the repurchase of the Accounts Receivable;

(5) Party A encounters corporate change, merger, division, seizure of property or other circumstances in the course of Party A's business operation, which may affect the repurchase of the Accounts Receivable.

2. Party A and Party B may terminate this Contract in written form through consultation, in which case Party B shall refund the factoring service fee in proportion.

3. In case of any cause for legal termination of this Contract occurs, Party A and Party B may terminate the contract, in which case Party B shall refund the factoring service fee in proportion.

**Article 10 Breach of contract**

1. Both Parties agree that any and all cost or loss caused by Party A's breach of any provision hereof (including but not limited to the fee incurred for collection, litigation or arbitration, preservation, announcement, enforcement, the fees for Party B to hire a lawyer, travel expenses and other expenses) shall be borne by Party A.

2. Both Parties agree that if either Party breaches this Contract or relevant laws and regulations, such Party shall not only compensate the other Party for all losses incurred therefrom, but also pay liquidated damages at the rate of 5% of the total amount of factoring financing fund per day from

the date of breach.

### Article 11 Dispute settlement

Any dispute arising from the performance of this Contract shall be settled by both Parties through negotiation. If such negotiation fails, either Party may file a lawsuit with the people's court with jurisdiction in the place where Party B is located.

### Article 12 Miscellaneous

This Contract shall come into force as of the date when Party A and Party B affix their official seals (or contract seals). It is made in quadruplicate, with each Party holding two of them which shall have the same legal effect.

(Followed by Signatures)


Party A (Seal):                                    Party B (Seal):

Legal/Authorized Representative (Signature)        Legal/Authorized Representative (Signature)


Date:                                              Date:

# Exhibit 3 –商业保理服务费-乐视-谨城

# 商业保理业务合同服务费协议

甲　　　方：乐视移动智能信息技术（北京）有限公司
统一社会信用代码：▮▮▮▮▮▮▮▮▮▮▮▮
法定代表人：贾跃民 ▮▮▮▮▮▮▮▮▮▮▮

乙　　　方：深圳谨诚商业保理有限公司
统一社会信用代码：▮▮▮▮▮▮▮▮▮▮▮▮
法定代表人：郭震 ▮▮▮▮▮▮▮▮

　　甲方上游服务公司京东方现代（北京）显示技术有限公司因经营管理的需要，向乙方申请了商业保理业务，应收账款总额为人民币（大写）壹亿伍仟陆佰陆拾肆万柒仟零叁拾玖圆肆角整（小写：¥156,647,039.40 元）（应收账款明细详见附件《应收账款转让清单》）。乙方接受甲方上游服务公司的申请，并与甲方上游服务公司于【2016】年【　】月【　】日签署了编号为【SZJC-201611-BOELSYD-BLHT】的《商业保理业务合同》（以下简称"主合同"）。甲乙双方在平等互利和真诚合作的基础上，经友好协商，就有关事项达成如下协议：



　　第一条 甲方在本协议履行期间，将提供以下条件以配合乙方工作：

　　1.1 成立专门的小组或指定负责人，以配合乙方实施本项目；

　　1.2 及时、真实、准确、完整地向乙方提供工作所需的文件、资料及融资相关情况的陈述说明；

　　1.3 按本协议约定支付保理服务费用。

　　第二条 就主合同履行期间发生的保理服务费，甲乙双方同意如下支付方式：

　　2.1　　保理服务费计算标准

　　2.1.1 主合同中的保理服务费的年化利率为13%,保理服务费按日计息，日利率 = 年化利率/365。

　　2.1.2 保理服务费的计算公式为：

　　保理服务费 =应收账款总额×乙方向京东方现代（北京）显示技术有限公司发放保理融资款起始日起至乐视移动智能信息技术（北京）有限公司占用该笔保理融资款金额的最后占用日之间的实际天数×日利率。

在保理融资款占用期限内，借款的本金余额发生变化的，应分段计算并累计相加。

2.1.3、保理服务费分为期间保理利息、期间保理服务费和期间咨询服务费三部分支付。

2.1.3.1：期间保理利息：年化利率为 7.5%，按日计息。

甲方应于每个自然月的 15 日支付至乙方指定账户；乙方在收到期间保理利息款项后向甲方出具利息收款证明；

乙方指定以下账户收取上述期间保理利息：

开户名称：　北京懒财信息科技有限公司

开户账号：　███████████

开户行：　　上海华瑞银行股份有限公司

2.1.3.2：期间保理服务费：年化利率为 0.5%，按日计息。

甲方应于每个自然月的 15 日支付至乙方指定账户；乙方在收到期间保理服务费款项后向甲方开具发票；

乙方指定以下账户收取上述期间保理服务费：

开户名称：　深圳谨诚商业保理有限公司

开户账号：　███████████

开户行：　　平安银行北京德胜门支行

2.1.3.3：期间咨询服务费总额=保理服务费-期间保理利息-期间保理服务费

甲方应于每个自然月的 15 日支付期间咨询服务费总额，由【新疆骑士联盟股权投资有限公司】作为本项目的财务顾问与甲方另行签署《财务顾问协议》并收取上述期间咨询服务费。2.2 甲方指定以下账户向乙方支付上述保理服务费：

名　　称：

开 户 行：

账　　号：


**第四条 保密条款**

4.1 双方同意，双方对本次合作、本协议的具体内容及在合作过程中知晓的对方其他任何商业机密均负有保密责任。未经对方书面同意，另一方不得披露给任何第三方，或者在任何媒

体上就上述问题发表任何言论。否则，守约方有权依法追究有关方的法律责任，并要求违约方赔偿守约方的所有损失。

4.2 根据我国相关法律、法规等规定，或因就本协议向会计师、律师等寻求咨询意见，及应国家有权机关要求予以披露的，不视为违反本保密条款。

4.3 本保密条款不因本协议的未生效、被解除、履行完毕、无效而失效，保密期限为永久。

### 第五条 违约责任

5.1 协议一方因不履行或不及时全面履行本协议，应视为违约；

5.2 甲方违反协议规定，逾期支付或者不支付保理服务费的，按拖欠金额的日万分之七标准支付违约金；



### 第六条：通知与签字

双方按本协议做出的任何通知、认可、同意、要求或其他事项应采用书面形式，并且按照本协议规定的地址或传真号码、电子邮件发出，则：
（1）如经专人交付的，应视作在交至相关一方的地址时已经送达；
（2）如经邮政送交的，应视作在付邮后第三个工作日已经送达；
（3）经传真或者电子邮件发送的，应视作在发出时已经送达。

甲方地址：【                    】

电子邮件地址：【                    】



乙方地址：【北京市朝阳区东直门国华投资大厦315室 】

电子邮件地址：【 lijie@bitian.cc 】

甲乙双方均必须保证其上述联系方式真实。如有变更，须于变更之日起三日内以书面形式通知对方，否则对方按上述方式作出的通知即视为已送达。

### 第七条 不可抗力

由于不可抗力导致协议无法继续履行，双方同意暂停或延期执行。不可抗力释义见中华人民共和国相关的法律解释。

### 第八条 争议解决

凡因履行本协议所发生的争议，甲、乙双方应友好协商解决，协商不能解决的，均应提交

北京仲裁委员会，按照申请仲裁时该会现行有效的仲裁规则进行仲裁。仲裁裁决是终局的，对双方均有约束力。

**第十条 其他条款**

本协议未尽事宜，由双方协商解决，或者遵照国家相关法律法规规定以及行业习惯履行。经双方协商一致，本协议内容可以书面形式进行变更、中止、提前解除。

本协议于 <u>2016</u> 年 <u>12</u> 月 <u>1</u> 日由甲乙双方代表签署。自双方签字之日起 2 年内有效，协议期满，经双方同意后可续约。

本协议一式贰份，双方各执壹份，具有同等法律效力。未尽事宜，由双方协商解决，并签订补充协议，补充协议具有同等法律效力。

（以下无正文）

【此页无正文，为甲乙双方《保理服务协议》之签署页】



甲方：乐视移动智能信息技术（北京）有限公司（盖章）

法定代表人或授权代表（签字或盖章）：_____



乙方： 深圳谨诚商业保理有限公司（盖章）

法定代表人或授权代表（签字或盖章）：_____

_____年_____月_____日

# Agreement on Service Fee under the Commercial Factoring

# Business Contract

**Party A: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd**

**Unified Social Credit Code:** █████████

**Legal Representative: Jia Yuemin**

**Party B: Shenzhen Jincheng Commercial Factoring Co., Ltd**

**Unified Social Credit Code:** █████████

**Legal Representative: Guo Zhen**

BOE Modern (Beijing) Display Technology Co., Ltd ("BOE"), an upstream service company of Party A, has applied to Party B for commercial factoring business due to the needs of operation and management, with a total amount of accounts receivable of RMB One Hundred and Fifty-six Million, Six Hundred and Forty-seven Thousand and Thirty-nine Yuan, Forty Fen (in figures RMB 156, 647, 039.40) (see the appendix "List of Accounts Receivable Transferred" for details). Party B accepted the application of BOE, and entered into a *Factoring Contract* (the "**Master Contract**") with BOE numbered [SZ.TC-201611-B0ELSYD-BLI1T] on [ ], 2016. Now therefore, on the basis of equality, mutual benefit and sincere cooperation and through friendly consultation, Party A and Party B have reached Agreement on relevant matters as follows:

**Article 1** During the performance of this Agreement, Party A shall create the following conditions to cooperate with Party B's work:

1.1 To set up a special group or designated person in charge to cooperate with Party B in the implementation of the project;

1.2 To timely, truthfully, accurately and completely provide Party B with the documents, materials and statements of financing-related information required for its work;

1.3 To pay the factoring service fee as agreed herein.

**Article 2** With respect to the factoring service fee incurred during the performance of the Master Contract, both Parties agree as follows:

2.1 Calculation of the factoring service fee

2.1.1 The annual rate of the factoring service fee under the Master Contract shall be 13%, and the factoring service fee shall accrue on a daily basis (the daily interest rate = annual interest rate / 365).

2.1.2 The factoring service fee shall be calculated based on the following formula:

The total amount of accounts receivable * the actual number of days from the date when Party B issues factoring financing fund to BOE to the last date when LETV Mobile occupies the factoring financing fund * daily rate.

If the balance of the loan principal changes during the period of occupation of the factoring financing fund, it shall be calculated by different periods and on an accumulative basis.

2.1.3 The factoring service fee is divided into three parts: period factoring interest, period factoring service fee and period consulting service fee.

2.1.3.1 Period factoring interest: to be calculated on a daily basis at the annual rate of 7.5%.

Party A shall pay it to the account designated by Party B on the 15th day of each calendar month, and Party B shall issue an interest collection certificate to Party A after receiving the period factoring interest.

Party B designates the following account to collect the period factoring interest:

Account Name:    Beijing Lancai Information Technology Co., Ltd

Account Number: ███████████

Opening Bank:    Shanghai Huarui Bank Co., Ltd

2.1.3.2 Period factoring service fee: to be calculated on a daily basis at the annual rate of 0.5%.

Party A shall pay it to the account designated by Party B on the 15th day of each calendar month, and Party B shall issue an invoice to Party A after receiving the period factoring service fee.

Party B designates the following account to collect the period factoring service fee:

Account Name:    Shenzhen Jincheng Commercial Factoring Co., Ltd

Account Number: ███████████

Opening Bank:    Beijing Deshengmen Branch of Ping An Bank

2.1.3.3 Total amount of period consulting service fee = factoring service fee - period factoring interest - period factoring service fee. Party A shall pay it on the 15th day of each calendar month. Xinjiang Knight Alliance Equity Investment Co., Ltd will, as the financial consultant of the project, separately enter into a Financial Consulting Agreement with Party A and collect the said consulting service fee.

2.2 Party A designates the following account to pay the said factoring service fee to Party B:

Account Name:

Opening Bank:

Account Number:

**Article 4 Confidentiality**

4.1 Each Party agrees that it shall keep confidential this cooperation, the contents of this Agreement and any other business secrets of the other Party it gets known in the process of cooperation, and will not disclose them to any third party or make any comments thereon in any media without prior written consent of the other Party. Otherwise, the non-breaching Party shall have the right to investigate the legal liability of the breaching Party in accordance with law and require the breaching Party to compensate all losses of the non-breaching Party.

4.2 Any disclosure of confidential information in accordance with relevant laws and regulations of China, or for the purpose of seeking advice from accountants, lawyers, etc. for this Agreement, and as required by the governmental authorities shall not be deemed as a violation of this confidentiality clause.

4.3 This confidentiality clause shall survive the invalidity, rescission and completion of this Agreement, and the confidentiality period shall be permanent.

**Article 5 liability for breach**

5.1 If either Party fails to perform this Agreement or fails to fully perform this Agreement in time, it shall be deemed as a breach of contract.

5.2 If Party A delays the payment of or fails to pay the factoring service fee in violation of this Agreement, it shall pay liquidated damages at a rate of 0.07% of the amount in arrears per day.

**Article 6: Notice and Signature**

Any notice, approval, consent, request or other matter to be given by the Parties hereunder shall be made in writing and delivered to the address or fax number or email specified herein, and:

(1) if delivered by person, it shall be deemed to have been served when it is delivered to the address of the relevant Party;

(2) if sent by post, it shall be deemed to have been served on the third working day after it is posted;

(3) if sent by fax or e-mail, it shall be deemed to have been delivered at the time of sending.

Address of Party A: []

Email address: []

Address of Party B: [Room 315, Guohua Investment Building, Dongzhimen, Chaoyang District, Beijing]

Email address: [1iie@bitian.cr]

Both Parties shall ensure that the above contact information is true. In case of any change, the other Party shall be notified in writing within three days from the date of change; otherwise, a notice send by the other Party to the said address shall be deemed to have been served.

**Article 7 Force majeure**

Both Parties agree to suspend or postpone the performance of the Agreement if this Agreement cannot be performed due to force majeure. Please refer to the relevant legal interpretation of China for the definition of force majeure.

**Article 8 Dispute settlement**

Any dispute arising from the performance of this Agreement shall be settled by both Parties through friendly negotiation. If such negotiation fails, either Party shall submit it to Beijing Arbitration Commission for arbitration in accordance with its current arbitration rules. The arbitration award shall be final and binding upon both Parties.

**Article 10 Miscellaneous**

Any matter unspecified herein shall be settled by both Parties through negotiation, or shall be subject to relevant laws and regulations of China and the industry habits. This Agreement may be changed, suspended or early terminated in writing through mutual agreement.

This Agreement is signed by the representatives of both Parties on December 1, 2016, and shall be valid for 2 years from the date of signing by both Parties, provided that it can be renewed upon the agreement of both parties

This Agreement is made in duplicate, with each Party holding one of them, which shall have the same legal effect. Any matter unspecified herein shall be settled by both Parties through consultation with a supplementary agreement signed, which shall have the same legal effect as this Agreement.

(Followed by Signature Pages)

[This is the signature page only]


Party A: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd. (Seal)


Legal or Authorized Representative (Signature or Seal):


Party B: Shenzhen Jincheng Commercial Factoring Co., Ltd


Legal or Authorized Representative (Signature or Seal):


Date

# Exhibit 4 –回购及担保-谨城-乐视-贾跃亭

# 回 购 担 保 协 议

合同签订地：北京

甲 方：深圳谨诚商业保理有限公司

乙方一：乐视控股（北京）有限公司

乙方二：贾跃亭

丙方：乐视移动智能信息技术（北京）有限公司



鉴于：

1、丙方与京东方现代（北京）显示技术有限公司（以下简称"供应商"）签订编号为 OA：739043 的《采购框架协议》（参见附件），支付相应价款给供应商；

2、为确保丙方按甲方与丙方供应商签订的编号为 SZJC-201611-BOELSYD-BLHT《商业保理业务合同》（以下简称"保理合同"）的约定偿还甲方垫付的货款，乙方（包括乙方一和乙方二，下同）同意并承诺以回购的形式向甲方承担不可撤销的连带责任担保；



3、在乙方为丙方提供连带担保的前提下，甲方提供保理义务，为丙方垫付其应向供应商依据《保理合同》支付的价款（保理融资款）；

根据《中华人民共和国合同法》和有关法律法规之规定，经协议

各方公平、自愿、平等协商，各方一致同意按以下条款签订本协议。

### 一、有关用词定义

1、回购：指当满足本协议约定的条件时，甲方向乙方发出《回购通知书》，乙方在收到甲方发出的回购通知之日起十日内无条件向甲方支付回购价款。

2、货物：《采购合同》项下的标的物，具体的名称、商标、规格、型号、质量、数量、技术标准、技术保证及检验标准和方法等信息全部由丙方提供并认可，甲方不对上述信息的真实性、完整性负责。

3、回购价款：为甲方按照《保理合同》约定实际支付的保理融资款扣除回购当时丙方已经偿还部分的剩余金额（本金部分）以及该本金部分对应的逾期利息。

4、货款保证金：为保证丙方按期足额偿还货款，保理业务放款前由丙方向甲方缴纳的货款保证金。货款保证金=保理融资款金额×【10】%。

5、供应商：指京东方现代(北京)显示技术有限公司。

### 二、担保方式、期间和范围

1、担保方式

（1）乙方提供的担保方式为连带责任担保，当丙方没有履行或者没有全部履行其应付货款及保理服务费等时，甲方有权直接要求乙方承担担保责任。

（2）如果有其他保证人对《保理合同》下的应付货款及保理服务费等提供担保的，担保人之间关系为连带共同担保。

（3）如果存在其它担保方式对《保理合同》下的应付货款及保理服务费等提供担保的，甲方要求乙方承担担保责任时，乙方必须履行担保义务，不得以存在其他担保方式为由对债权进行抗辩。

（4）如果全部或部分应付款项由丙方清偿以后，发生丙方破产被清算或者其它诉讼、仲裁事项，而根据法律规定或者依据有效判决、裁定书该全部或部分清偿无效，乙方仍应对该全部或部分应付款项承担担保义务。

2、担保期间

（1）丙方履行支付货款的债务期限为 12 个月，具体起始日期由《保理合同》确定。

（2）担保期间为两年，自主债权清偿届满之日起开始起算。

3、乙方担保的范围是丙方没有按照《保理合同》的约定履行义务，给甲方造成的损失，包括：

（1）丙方未按照《保理合同》的约定按时、足额支付应付款项、利息、罚息、保险费、保证金、赔偿金以及丙方应支付的其它费用；

（2）货物的所有权或价值遭到损害。

（3）担保额度根据各方约定为本协议所规定的保理项目的在保余额合计人民币（大写）壹亿伍仟陆佰陆拾肆万柒仟零叁拾玖圆肆角（小写：¥156,647,039.40）。

（4）甲方为实现以上权益而支出的全部合理费用，包括但不限

于合理的律师费、诉讼费、差旅费等。

### 三、回购方式

1、当回购条件成立时，甲方向乙方发出《回购通知书》。自《回购通知书》发出之日起的十日内由乙方向甲方一次性支付全部回购价款。

2、回购条件：

出现《保理合同》规定的合同解除事由之时，包括：丙方延迟向供应商支付价款，而使得甲方保理债权到期未能及时收回，丙方根据约定向甲方支付罚息后、逾期 15 日仍未履行或者未全部履行的；丙方不及时补足保证金的；丙方可能被依法宣告破产、解散、清算的。满足前述任一情形，回购条件即成立。回购条件的成立与协议所指货物状况如何无关（包括但不限于丢失、毁损等）。

3、当乙方履行完回购责任后，甲方应将货物相应权益转让(包括所有权)给乙方。双方明确同意：鉴于货物在丙方的实际占有控制下，而甲方又无法对货物实施有效监控，甲方不向乙方作实物交付，甲方仅以向乙方交付货物债权转让通知的形式向乙方交付货物。乙方负责办理本协议项下货物回购的全部手续并承担所有权变更产生的全部税费、手续费。

4、乙方自行将货物取回，因取回货物引起的运输费用由乙方承担。

### 四、保证金

当丙方发生逾期支付货款时，甲方有权动用丙方保证金垫付丙方逾期货款，并通知丙方补足保证金。自丙方逾期支付应付货款之日起的下一日历月的 10 日前，丙方仍未能补足不足额的保证金时，乙方应补足丙方保证金。乙方未能在接到甲方书面通知后 3 个工作日内及时补足保证金时，甲方有权要求乙方立即履行回购承诺及担保义务。

在丙方履行完成本协议项下应付款项支付义务之日起三个工作日内，或在乙方履行完成回购款项支付义务之日起三个工作日内，甲方应当退还相应的保证金。

## 五、各方的权利和义务

1、甲方承诺在与供应商的保理合同中约定放款日的前后 5 个工作日内放款；若甲方未及时放款，甲方应向丙方支付罚息，该罚息按【中国人民银行发布的同期贷款利率】计算。由于丙方未能按时缴纳保证金而影响甲方与供应商之间约定的保理合同放款时间的，甲方放款时间顺延且不承担罚息。

2、当满足本协议约定的条件时，甲方应及时向乙方发出《回购通知书》；

3、甲方收齐乙方的回购款项后 5 个工作日内向乙方交付货物债权转让通知，并配合乙方办理回购过户手续；

4、担保期间内，甲方有权对丙方的资金和财产状况进行监督，有权要求丙方提供其财务报表等相关资料，丙方有义务如实提供。

5、对于丙方延迟付款给供应商，而使得甲方与供应商之间的保

理债权到期未能及时收回的，甲方有权就迟延付款部分要求丙方处以罚息（日息千分之一），且丙方继续承担付款责任或根据本协议由乙方履行回购责任；

6、在回购条件成就时，乙方须承担起担保责任，负责向甲方支付价款，回购货物；

7、乙方对丙方资料的真实性、完整性，采购货物的真实性负责，若因上述原因导致甲方损失的，由乙方承担全部赔偿责任；

8、乙方对丙方通过保理采购方式取得的货物设备使用情况负有监管义务；

9、乙方应督促丙方向甲方支付应付货款并协助催收货款。对于丙方若出现违约行为，乙方承担第一回购担保责任并无条件回购；

10、本合同有效期内，发生下列情况之一，乙方应及时书面通知甲方：

（1）乙方出售、赠与、出租、出借、转移或以其他方式处分其主要资产或者为第三人债务提供担保，或以其主要资产进行为自身或第三人债务设定抵押、质押担保等承担重大负债的活动，足以影响其回购能力的；

（2）乙方的财务状况恶化、或借贷高利贷尚未清偿、或即将卷入重大的诉讼、仲裁、刑事及其他法律纠纷；

（3）乙方的重大资产有可能被查封、扣押、冻结或强制执行或抵押物在抵押期间被采取查封、扣押等财产保全或执行措施的，或因其他原因可能损毁、灭失；

（4）乙方可能被依法宣告破产、解散、清算；

（5）乙方在中国人民银行、中国银行业监督管理委员会或中国银行业协会设立或批准设立的信用数据库中出现不良信用记录；

（6）发生其他足以影响其清偿债务能力或可能丧失担保能力的情况。

11、乙方承诺在通讯及联系地址发生变更时3天内及时书面通知甲方，乙方提供送达地址不准确或未及时提供变更后的地址，导致相关文书无法送达或及时送达的，乙方自行承担由此产生的法律后果。

### 六、保密

各方对本协议履行过程中所接触或获知的对方的全部沟通以及本协议的签署及其条款条件均有保密义务，除非有明显的证据证明该等信息属于公知信息或者事先得到对方的书面授权。该等保密义务在本合同终止后仍然继续有效。各方应保证与其必须知情的人士签署不低于本协议保护程度的书面保密协议或承诺，并对其违约行为承担连带责任。

### 七、违约责任

乙方不按照本协议约定承担回购责任、担保义务或者违反本协议约定的其它义务的，每天应向甲方支付回购价款 0.1%的违约金，因此给甲方造成经济损失且违约金数额不足以弥补所受损失的，应赔偿甲方的实际经济损失包括债权、利息、违约金、赔偿金以及实现债权

的合理费用（包括公证、评估、鉴定、拍卖、诉讼或仲裁、送达、财产保全、执行、律师代理、差旅费等全部费用）。

### 七、特别声明

1、乙方清楚的知悉甲方与丙方合作背景，并确认对丙方资产、债务、信用等情况、是否具备签订主协议主体资格和权限已充分了解。

2、乙方完全了解《保理合同》及附件的内容，乙方一签署本协议时，已经取得乙方一董事会、股东会的书面同意。

### 八、合同变更

1、 在本合同有效期间，甲、乙、丙任何一方均不得擅自变更或解除本合同。需变更时，须经各方协商同意，达成书面协议。

2 、在本合同有效期间，如果甲方与供应商协议变更《保理合同》条款（包括但不限于保理额度、固定收益回报率、还款方式、还款计划、债务履行期限的起始日或截止日等），未加重丙方债务的，乙方同意仍由其以回购方式对变更后的《保理合同》项下的货款、本金、利息、罚息、逾期利息和丙方应付违约金、甲方实现债权的其它合理费用（包括公证、评估、鉴定、拍卖、诉讼或仲裁、送达、财产保全、执行、律师代理、差旅费等全部费用）承担连带担保责任。若甲方与供应商协议变更《保理合同》加重丙方的债务的，乙方仅就变更前的《保理合同》项下的债务承担连带担保责任。

3、 尽管有上述约定，本合同有效期内，因国家法律、法规及银

监会、人民银行等机构有关规定调整或变化且适用于《保理合同》，包括利率调整等，导致《保理合同》变更的，乙方仍应当按本合同约定继续承担担保责任。

**十、合同终止**

1、在保理期限内，在甲方审批同意的情况下，丙方提前还款的。

2、乙方履行回购承诺；

3、保理期届满，丙方偿清所有应付货款未出现违约情形的。

**十一、其它**

1、本协议自甲方、乙方一、丙方法定代表人或授权代表签字或签章并加盖公章并且乙方二签字之日起生效。

2、本协议一式陆份，甲方、乙方二各执壹份，乙方一、丙方各执贰份，具有同等法律效力。

3、凡当事人之间因本协议发生的或与其有关的任何争议，应协商解决。协商不成的，应向北京市朝阳区有管辖权的人民法院诉讼。

4、四方在协议履行过程中向对方发出或者提供的所有通知、往来文件、文书（包括司法或仲裁文书）、资料等，均以本协议所列明的地址、传真、电子邮件送达。一方如果迁址、变更电话或变更指定联络人，应当在变更之日起5日内以书面方式通知另一方；未履行书面通知义务的，一方按原地址、原指定联络人邮寄相关材料或通知相

关信息即视为已履行送达义务。当面交付上述材料的，在交付之时视为送达；以邮寄、短信、电邮方式交付的，寄出、发出或者投邮之日即视为送达。

附件：

1、《采购合同》（编号：）；

（以下无正文，为签字部分）



甲方：深圳谨诚商业保理有限公司（公章）

　　　法定代表人/授权代表（签字或签章）

乙方一：乐视控股（北京）有限公司（公章）

　　　法定代表人/授权代表（签字或签章）

乙方二：＿＿＿＿＿＿＿（亲笔签名）



　　　（贾跃亭）

丙方：乐视移动智能信息技术（北京）有限公司（公章）

　　　法定代表人/授权代表（签字或签章）

日期：2016 年＿＿月＿＿日

# Repurchase Guarantee Agreement

**Signed in: Beijing**

Party A: Shenzhen Jincheng Commercial Factoring Co., Ltd

Party B 1: LETV Holdings (Beijing) Co., Ltd

Party B 2: Jia Yueting

Party C: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd

In view of:

1. Party C and BOE Modern (Beijing) Display Technology Co., Ltd ("**Supplier**") entered into the Purchase Framework Agreement (see the appendix) numbered "OA:739043", and pay the corresponding price to the Supplier;

2. To ensure that Party C repays the amount advanced by Party A in accordance with the Commercial Factoring Business Contract (numbered SZJC-201611-B0ELSYD-BLHT) signed by Party A and Party C's Supplier (the "**Factoring Contract**"), Party B (including Party B 1 and Party B 2, similarly below) agrees and undertakes to bear the irrevocable joint and several liability guarantee to Party A in the form of Repurchase;

3. Subject to Party B's provision of the joint and several guarantee to Party C, Party A shall fulfil its factoring obligation to advance the price (factoring financing fund) that Party C shall pay to the Supplier in accordance with the Factoring Contract

In accordance with the Contract Law of the People's Republic of China and relevant laws and regulations, and through fair, voluntary and equal consultation between the Parties, the Parties agree to enter into this Agreement based on the following terms.

## I. Definition of terms

1. Repurchase: when the conditions agreed herein are satisfied, Party A shall issue a Repurchase Notice to Party B, who shall unconditionally pay the Repurchase Price to Party A within 10 days after receiving the Repurchase Notice from Party A.

2. Goods: refers to the subject matter under the Purchase Contract, the specific name, trademark, specification, model, quality, quantity, technical standard, technical guarantee, inspection standard and method of which shall be provided and approved by Party C, and Party A

shall not be liable for the authenticity and integrity of the said information.

3. Repurchase price: refers to the balance of the factoring financing fund actually paid by Party A in accordance with the Factoring Contract less the amount already repaid by Party C at the time of Repurchase (i.e. the principal part) and the overdue interest corresponding to the principal part.

4. Goods Price Deposit: refers to deposit of Goods price paid by Party C to Party A before the loan extension under the factoring service to ensure that Party C repay the Goods price in full and in time. Goods Price Deposit = amount of factoring financing fund * 10%

5. Supplier: refers to BOE Modern (Beijing) Display Technology Co., Ltd.

**II. Guarantee method, period and scope**

1. Guarantee method

(1) The guarantee provided by Party B is a joint and several liability guarantee. If Party C fails to perform or fails to fully perform its obligations to pay the Goods price and factoring service fee, Party A shall have the right to directly require Party B to undertake the guarantee liability

(2) If there are other guarantors who provide guarantees for the Goods price and factoring service fee payable under the Factoring Contract, the guarantees provided by the guarantors is a joint and several joint guarantee.

(3) If there is other way of guarantee to provide guarantee for the Goods price and factoring service fee under the Factoring Contract, and Party A requires Party B to assume the guarantee liability, Party B shall fulfil the guarantee obligation, and shall not defend on the ground that there is other way of guarantee.

(4) If Party C falls into bankruptcy, liquidation or other litigation or arbitration after it repaid all or part of the payables, and if all or part of the amount repaid is invalid in accordance with the law or in accordance with the effective judgment or ruling, Party B shall still assume the guarantee obligation for all or part of the payables.

2. Guarantee period.

(1) The period for Party C to perform its obligation to pay Goods price is 12 months, and the specific starting date is subject to that agreed in the Factoring Contract.

(2) The guarantee period shall be two years, starting from the date when the principal creditor's rights are paid off.

3. The guarantee scope of Party B is the loss caused to Party A by Party C's failure to perform its obligations under the Factoring Contract, including:

(1) Party C fails to pay the account payable, interest, default interest, insurance premium, deposit, compensation and other expenses payable by Party C on time and in full in accordance with the Factoring Contract;

(2) the ownership or value of the Goods is damaged;

(3) as agreed by the parties, the guarantee amount is the insured balance of the factoring projects specified herein totaling RMB 156,647,039.40;

(4) all reasonable expenses paid by Party A to realize the said rights and interests, including but not limited to reasonable attorney's fees, litigation fees, travel expenses, etc.

III. Repurchase method

1. When the Repurchase conditions are satisfied, Party A shall issue a Repurchase Notice to Party B, who shall pay the Repurchase Price to Party A in a lump sum within ten days from the date of the notice.

2. Repurchase conditions:

The Repurchase conditions shall be deemed as being satisfied if any cause for termination of the contract as stipulated in the Factoring Contract occurs, including: Party C delays in paying the Goods price to the supplier, which causes Party A's creditor's rights to not be recovered in time when due, and Party C still fails to perform or fully perform its payment obligations for 15 days after paying penalty interest to Party A in accordance with the agreement; Party C fails to make up the deposit in time; Party C may be declared bankrupt, dissolved or liquidated in accordance with law. Whether Repurchase condition is satisfied has nothing to do with the condition of the Goods hereunder (including but not limited to loss, damage, etc.);

3. Party A shall transfer the corresponding rights and interests of the Goods (including the ownership) to Party B after Party B has fulfilled the Repurchase obligations. Both Parties expressly agree that, in view of the fact that the Goods are under the actual control of Party C, and Party A is unable to effectively control the Goods, Party A will not deliver the physical Goods to Party B, but only deliver the notice of transfer of Goods' creditor's right to Party B. Party B shall be responsible for handling all the procedures for the Repurchase of Goods hereunder and bear all the taxes and fees arising from the change of ownership.

4. Party B shall take back the Goods by itself, and shall bear the transportation expenses caused by taking back the Goods.

IV. Deposit

In case of overdue payment of Goods price by Party C, Party A shall have the right to use Party C's deposit to advance the Goods price and notify Party C to make up the deposit. If Party C fails to make up the deposit before the 10th day of the next calendar month from the date of Party C's overdue payment, Party B shall make up for Party C's deposit instead. If Party B fails to make up the deposit in time within 3 working days after receiving the written notice from Party A, Party A shall have the right to require Party B to fulfill its Repurchase commitment and guarantee obligation immediately.

Party A shall return the corresponding deposit within three working days from the date when

Party C fulfils its obligation to pay the accounts payable hereunder, or within three working days from the date when Party B fulfils its obligation to pay the Repurchase Price.

### V. Rights and obligations of the Parties

1. Party A undertakes to extent the loan within 5 working days before and after the date of loan extension as agreed in the Factoring Contract with the Supplier. If Party A fails to extent the loan in time, Party A shall pay Party C penalty interest calculated based on the loan interest rate of the same period issued by the People's Bank of China. If the time of loan extension as agreed between Party A and the Supplier under the Factoring Contract is affected due to Party C's failure to pay the guarantee money on time and affects, the time of loan extension shall be postponed accordingly without incurring any penalty interest.

2. When the conditions agreed herein are satisfied, Party A shall issue the Repurchase Notice to Party B in a timely manner.

3. Party A shall, within 5 working days after receiving the Repurchase Price from Party B, deliver to Party B the notice of transfer of Goods' creditor's rights, and cooperate with Party B to handle the transfer formalities with respect to the Repurchase.

4. During the guarantee period, Party A shall have the right to supervise the capital and property status of Party C, and require Party C to provide its financial statements and other relevant materials, and Party C shall be obligated to provide them truthfully.

5. Where Party C delays in payment to the supplier, which causes the factoring creditor's rights between Party A and the supplier to not be recovered in time when due, Party A shall have the right to require Party C to pay penalty interest (at a daily rate of 0.1%) on the part of delayed payment, and Party C shall continue to fulfil the payment obligation or Party B shall fulfil the Repurchase obligation in accordance with this Agreement.

6. When the Repurchase conditions are satisfied, Party B shall assume the guarantee liability, pay the price to Party A and repurchase the Goods.

7. Party B shall be responsible for the authenticity and integrity of Party C's materials and the authenticity of the purchased Goods, and shall be fully liable for compensation in case of any loss caused to Party A due to the said reasons.

8. Party B shall be obliged to supervise the use of Goods and equipment obtained by Party C through factoring purchase;

9. Party B shall urge Party C to pay Party A the goods price payable and assist in collecting the goods price. In case of any breach of contract by Party C, Party B shall bear the repurchase guarantee liability first in order and repurchase the Goods unconditionally.

10. During the term of this Agreement, Party B shall promptly notify Party A in writing of any of the following circumstances:

(1) Party B sells, donates, leases, lends, transfers or otherwise disposes of its major assets or provides guarantee for the debts of third party, or uses its major assets to create mortgage, pledge

guarantee for the debts of its own or third party and engage in other activities to bear major liabilities, which is sufficient to affect its Repurchase ability;

(2) Party B's financial situation deteriorates, or it has not been paid off its usurious loan, or will be involved in major litigation, arbitration, criminal and other legal disputes;

(3) Party B's major assets may be sealed up, seized, frozen or enforced, or its mortgaged property may be subject to seal-up, seizing and other property preservation or enforcement measures during the mortgage period, or may be damaged or lost for other reasons;

(4) Party B may be declared bankrupt, dissolved or liquidated in accordance with the law;

(5) Party B has a bad credit record in the credit database established or approved by the People's Bank of China, China Banking Regulatory Commission or China Banking Association;

(6) Other circumstances that may affect its ability to pay off debts or may lose its ability to guarantee.

11. Party B undertakes to notify Party A in writing within 3 days after the change of its communication and contact address. In case of any failure to serve or timely serve relevant documents to Party B due to the inaccuracy of service address provided by Party B or Party B's failure to provide the address after the change, any legal consequence arising therefrom shall be borne by Party B.


**VI. Confidentiality**

Each Party shall keep confidential all information of the other Party that it gets known or obtains during the performance of this Agreement, as well as the execution of this Agreement and its terms and conditions, unless there is obvious evidence that such information is in public domain or is authorized to be disclosed by the other Party in writing. Such obligations of confidentiality shall survive the termination of this Agreement. Each Party shall ensure its personnel who is in the need to know the confidential information to enter into a written confidentiality agreement or commitment which provide the degree of protection at least not less than that provided hereunder, and shall be jointly and severally liable for such personnel's breach of contract.


**VII. Liability for breach**

Party B shall pay Party A 0.1% of the Repurchase Price as liquidated damages per day if it fails to fulfil the Repurchase obligation, the guarantee obligation or breaches other obligations as agreed herein. In case any economic loss caused to Party A and the amount of liquidated damages is insufficient to make up for the loss, Party B shall compensate Party A for the actual economic loss, including creditor's rights, interest, liquidated damages, compensation and the reasonable expenses for realizing the creditor's rights (including but not limited to the expenses for notarization, evaluation, appraisal, auction, litigation or arbitration, service, property preservation, enforcement, attorney's fee and travel expense).

**VII. Special statement**

1. Party B has a clear understanding of the background of cooperation between Party A and Party C, and confirms that it has a full understanding of Party C's assets, debts, credit and other conditions, and whether it has the qualification and authority to sign the master agreement.

2. Party B is fully aware of the contents of the Factoring Contract and its appendix. When Party B 1 signs this Agreement, it has obtained the written approval of its board of directors and board of shareholders.

**VIII. Change**

1. During the term of this Agreement, none of Party A, Party B or Party C shall change or terminate this Agreement by its own, and no change of this Agreement shall take effect unless it is made in writing after consultation and agreement of all Parties.

2. During the term of this Agreement, if Party A and the Supplier agree to change the terms of the Factoring Contract (including but not limited to the factoring amount, fixed return rate, repayment method, repayment plan, the start or end date of the debt repayment period, etc.) which does not increase Party C's debt, Party B agrees to Repurchase the payment under the changed Factoring Contract Party C shall bear joint and several liability for the goods price, principal, interest, penalty interest, overdue interest, liquidated damages payable by Party C, and other reasonable expenses of Party A for realizing the creditor's rights under the changed Factoring Contract (including but not limited to the expenses for notarization, evaluation, appraisal, auction, litigation or arbitration, service, property preservation, enforcement, attorney's fee and travel expense). If Party A and the Supplier agree to change the Factoring Contract which increases Party C's debt, Party B shall only bear joint and several guarantee liability for the debt under the Factoring Contract before the change.

3. Notwithstanding the foregoing, during the term of this Agreement, if the Factoring Contract is changed due to the adjustment or change of national laws, regulations and relevant regulations of CBRC, the People's Bank of China and other institutions which are applicable to the Factoring Contract, including the adjustment of interest rate, Party B shall continue to bear the guarantee liability in accordance with this Agreement.

**X. Termination**

1. Party C makes early repayment during the factoring period with the approval of Party A.

2. Party B fulfills its Repurchase commitment;

3. Party C pays off all the Goods price payables without any breach of contract when the factoring period expires.

## XI. Miscellaneous

1. This Agreement shall come into force on the date when it is signed and affixed with official seals by the legal or authorized representatives of Party A, Party B 1 and Party C, and signed by Party B 2.

2. This Agreement is made in sextuplicate, with Party A and Party B 2 each holding one and Party B 1 and Party C each holding two, all of which shall have the same legal effect.

3. Any dispute between the Parties arising from or in connection with this Agreement shall be settled by friendly negotiation. If such negotiation fails, either Party may file a lawsuit with the people's court with jurisdiction in Chaoyang District, Beijing.

4. All notices, correspondence documents, documents (including judicial or arbitration documents), materials, etc. sent or provided by either Party to the other during the performance of the Agreement shall be delivered to the address, fax and email listed in this Agreement. Either Party who changes its address, telephone number or designated contact person shall notify the other Party in writing within 5 days from the date of change; otherwise, the other Party shall be deemed that it has fulfilled the obligation of service by delivering relevant materials or information to the original address or designated contact person of the changing Party. If the said materials are delivered in person, they shall be deemed to have been served at the time of delivery; if they are delivered by mail, SMS or email, they shall be deemed to have been delivered on the date of mailing or sending.

Appendix:

1. Purchase Contract (No.);

(Followed by Signature Part)

Party A: Shenzhen Jincheng Commercial Factoring Co., Ltd

Legal / Authorized Representative (Signature or Seal)

Party B 1: LETV Holdings (Beijing) Co., Ltd

Legal / Authorized Representative (Signature or Seal)

Party B 2: Jia Yueting (Signature)

(Jia Yueting)

Party C: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd. (Official Seal)

Legal / Authorized Representative (Signature or Seal)

Date: _____, 2016

# Exhibit 5 –补充协议（京东方现代-乐视智能移动）

# 补充协议

甲方：京东方现代（北京）显示技术有限公司

乙方：乐视移动智能信息技术（北京）有限公司

鉴于：

甲乙双方签署《采购框架协议》（协议编号为：LEZN-MIQT-2015-631，以下称"原协议"），现双方愿意就原协议项下产生的应付款项达成如下一致：

1．甲方同意与深圳谨诚商业保理有限公司（"保理公司"）签署保理合同（见附件），由保理公司按照保理合同约定向甲方提供保理服务。

2．乙方同意按照保理合同第 6 条第 2 款的约定承担相应的保理服务费。

3．乙方承诺：

（1）    就保理合同下应收账款相关交易合同已经确认没有商业纠纷且承诺将来不会提出任何纠纷，不得触发保理合同下第五条约定的回购情形，但就产品质量以及售后相关问题依据双方已签署的协议执行。

（2）    保理合同第 6 条项保理融资款总额在保理公司为乙方核定的信用风险额度内。

4．如在保理合同的履行过程中，发生如下事项的，乙方应当就相应部分应付款项继续承担支付义务：

        1）    按照保理合同第五条以及第九条的约定，保理公司要求甲方回购保理合同项下全部或部分应收账款的；

        2）    因保理公司对乙方核定的信用风险担保额度不足以覆盖保理合同下的应收账款总金额而产生的差额部分款项；

        3）    如保理公司最终未能按照保理合同约定向甲方支付保理融资款的。

5、本补充协议一式三份，与附件同时生效，并具有同等法律效力。【以下无正文】

附件：商业保理业务合同（无追索型）



【本页为签署页】

京东方现代（北京）显示技术有限公司　　　乐视移动智能信息技术（北京）有限公司

代表人：　　　　　　　　　　　　　　　代表人：

日期：　　　　　　　　　　　　　　　　日期： 2016- 12





# Supplementary Agreement

Party A: BOE Modern (Beijing) Display Technology Co., Ltd

Party B: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd

Whereas:

Party A and Party B have signed the Purchase Framework Agreement (No.: LEZN-MIQT-2015-631, the **"Original Agreement"**); now therefore, both Parties are willing to reach the following agreement on the accounts payable under the Original Agreement:

1. Party A agrees to sign a Factoring Contract (see appendix) with Shenzhen Jincheng Commercial Factoring Co., Ltd ("**Jincheng Factoring**"), who shall provide factoring service to BOE in accordance with the Factoring Contract.

2. Party B agrees to bear the corresponding factoring service fee in accordance with Article 6.2 of the Factoring Contract.

3. Party B undertakes:

(1)  that there has been and will be no commercial dispute in the transaction contract related to the accounts receivable under the Factoring Contract, that it will not trigger the repurchase conditions stipulated in Article 5 of the Factoring Contract, and the issues related to product quality and after-sales shall be handled in accordance with the agreement signed by both Parties.

(2)  The total amount of factoring financing fund as mentioned in Article 6 of the Factoring Contract shall be within the credit risk limit approved by Jincheng Factoring for Party B.

4. In case of any of the following events during the performance of the Factoring Contract, Party B shall continue to bear the payment obligation for the corresponding part of the accounts payable:

1)  where Jincheng Factoring requires Party A to repurchase all or part of the accounts receivable under the Factoring Contract in accordance with Article 5 and Article 9 of the Factoring Contract.

2)  the balance where the credit risk guarantee amount approved by Jincheng Factoring for Party B is insufficient to cover the total amount of accounts receivable under the Factoring Contract;

3)  where Jincheng Factoring fails to pay the factoring financing fund to Party A in accordance with the Factoring Contract.

5. This supplementary agreement is made in triplicate, which shall come into force together with the appendix and have the same legal effect as the appendix.

[No Body Text Below]

Appendix: Commercial Factoring Business Contract (Non-recourse Type)

[This is the Signature Page Only]

BOE Modern (Beijing) Display                    LETV Mobile Intelligent Information

Technology Co., Ltd.                            Technology (Beijing) Co., Ltd


Representative:                                 Representative:


Date:                                           Date: December 1, 2016

# Exhibit 6 – Civil Judgment of the Third Intermediate People's Court of Beijing

# 北京市第三中级人民法院
# 民事判决书

(2017) 京 03 民初 248 号

原告：深圳谨诚商业保理有限公司，住所地深圳市前海深港合作区前湾一路 1 号 A 栋 201 室（入驻深圳市前海商务秘书有限公司）。

法定代表人：韩润元，总经理。

委托诉讼代理人：黄晋，北京市齐进律师事务所律师。

委托诉讼代理人：付佳慧，北京市齐进律师事务所律师。

被告：乐视移动智能信息技术（北京）有限公司，住所地北京市顺义区高丽营镇文化营村北（临空二路 1 号）。

法定代表人：贾跃民，经理。

被告：乐视控股（北京）有限公司，住所地北京市朝阳区姚家园路 105 号 3 号楼 10 层 1102。

法定代表人：吴孟，经理。

被告：贾跃亭，男，1973 年 12 月 15 日出生，汉族，住山西省临汾市尧都区解放西路 31 号。

三被告之共同委托诉讼代理人：邹义，北京中书律师事务所律师。

三告之共同委托诉讼代理人：王小倩，北京中书律师事务所

- 1 -

律师。

原告深圳谨诚商业保理有限公司（以下简称谨诚保理公司）与被告乐视移动智能信息技术（北京）有限公司（以下简称乐视移动智能公司）、被告乐视控股（北京）有限公司（以下简称乐视控股公司）、被告贾跃亭合同、无因管理、不当得利纠纷一案，本院于 2017 年 6 月 27 日立案后，依法适用普通程序，公开开庭进行了审理。原告谨诚保理公司之委托诉讼代理人黄晋，被告乐视移动智能公司、乐视控股公司、贾跃亭之共同委托诉讼代理人邹义、王小倩到庭参加了诉讼。本案现已审理终结。

原告谨诚保理公司向本院提出诉讼请求：1. 乐视移动智能公司支付货款 107 685 472.02 元（其中：应付货款本金 106 509 490.52 元，应付未付保理服务费 1 175 981.49 元），并给付迟延履行利息（从 2017 年 6 月 16 日起计算至实际付清全部款项之日），及谨诚保理公司实现债权所发生的费用；2. 乐视控股公司、贾跃亭对上述款项承担连带清偿责任，并另行计算自判决文书下达之日至实际给付日期间的迟延履行金；3. 乐视移动智能公司、乐视控股公司、贾跃亭承担本案诉讼费用及保全费用。在本案审理过程中，原告谨诚保理公司变更诉讼请求为：1. 乐视移动智能公司给付货款 106 509 490.52 元，并给付自 2017 年 6 月 16 日起至货款本金付清之日止的迟延履行利息（以迟延付款金额为基数，按日息千分之一计算），以及谨诚保理公司为实现债权所发生的费用。

- 2 -

2. 乐视移动智能公司给付至 2017 年 6 月 15 日应付的保理服务费 1 175 981.49 元，以及自 2017 年 6 月 16 日起至上述第一项货款本金付清之日止的保理服务费（计算方式：未支付的货款本金 *13%/365 天*实际占用天数）；并支付自 2017 年 6 月 16 日起至上述保理服务费付清之日止逾期支付保理服务费的违约金（计算方式：各期未付保理服务费*日万分之七*迟延付款天数）。3. 乐视控股公司、贾跃亭就上述款项承担连带清偿责任，并支付自 2017 年 6 月 16 日起至上列第一项、第二项清偿完毕之日止的违约金（以 106 509 490.52 元为基数，按日利率 0.1%计算）。4. 乐视移动智能公司、乐视控股公司、贾跃亭承担本案全部诉讼费用及保全费用。

　　事实与理由：2016 年 12 月 2 日，原告谨诚保理公司与案外人京东方现代（北京）显示技术有限公司（以下简称京东方公司）签署了《商业保理业务合同(无追索型)》(以下简称《保理合同》)，谨诚保理公司于 2016 年 12 月 16 日向京东方公司支付了全额保理款，以此受让了京东方公司与乐视移动智能公司于 2015 年 6 月 31 日签署的《采购框架协议》项下的应收账款债权 156 647 039.40 元。乐视移动智能公司知晓债权转让之事实，并于 2016 年 12 月 1 日与谨诚保理公司就保理服务费事宜签署了《商业保理业务合同服务费协议》（以下简称《保理服务费协议》），约定由乐视移动智能公司就保理融资事宜向谨诚保理公司支付保理服务费。同时，

- 3 -

为确保乐视移动智能公司按照上述约定履行自身义务，谨诚保理公司与乐视移动智能公司、乐视控股公司、贾跃亭共同签署了《回购担保协议》，约定由乐视控股公司、贾跃亭提供连带责任担保，若乐视移动智能公司没有履行或者没有全部履行其应付货款及保理服务费时，谨诚保理公司有权直接要求乐视控股公司、贾跃亭承担担保责任。上述协议签订后，乐视移动智能公司支付了部分应付货款（本金）50 137 548.88 元，剩余应付货款（本金）106 509 490.52 元以及应于 2017 年 6 月 15 日支付的保理服务费 1 175 981.49 元至今未付。故谨诚保理公司提起本案诉讼，请求法院判如所请。

被告乐视移动智能公司辩称，不同意谨诚保理公司的诉讼请求。事实与理由：一、谨诚保理公司与本案无直接利害关系，不具备主体资格，应驳回其全部诉讼请求。谨诚保理公司曾于 2016 年向乐视移动智能公司、乐视控股公司、贾跃亭发出《债权托管安排通知函》，告知其已将涉案的应收账款债权转让于上海懒财资产管理有限公司（以下简称上海懒财公司），并要求乐视移动智能公司、乐视控股公司、贾跃亭自收到通知函之日起即向上海懒财公司履行债务及担保义务。据此，谨诚保理公司在本案起诉时已无权作为债权人主张权利。二、假设谨诚保理公司有权针对本案主张权利，其诉讼请求也与事实不符，且缺乏法律依据，不应得到支持。1、谨诚保理公司主张的应付款项计算错误，以下两项款

项应从未付的货款本金 106 509490.52 元中扣减：即乐视移动智能公司按照协议约定向谨诚保理公司支付的货款保证金 15664709.94 元和谨诚保理公司逾期 2 日支付保理融资款应向乐视移动智能公司支付的罚息 42058.66 元。2、谨诚保理公司主张的迟延履行利息的计算基数及起算时间错误，且迟延履行利息标准过高，请求法院依法调整。涉案的货款应分三笔支付，支付时间不同。在谨诚保理公司起诉时，乐视移动智能公司已按期支付了第一笔应付货款，第二笔、第三笔货款的付款日期尚未届满，即使现如今后两笔货款付款日期已届满，针对该两笔应付货款计算迟延履行利息时，应当从其应付款日的第二日起分段计算（计算第二笔货款的迟延履行利息时，基数应当扣减前述保证金及罚息）。《回购担保协议》中约定的应付货款迟延履行利息标准为每日千分之一，换算为年利率为 36.5%。该迟延履行利息之性质与违约金的惩罚性质是一致的，依据相关法律规定，迟延履行利息属于补偿性质的惩罚措施，适用时应当以守约方的实际损失为限。本案中，谨诚保理公司未能提供证据证明其实际损失，且即使产生了实际损失，也应当以应付货款被占用期间的资金占用费为限来计算。谨诚保理公司主张的利息标准远远超出了其实际损失，属于无效约定，故请求法院予以调低。三、谨诚保理公司主张的应付未付的保理服务费 1 175 981.49 元中的期间咨询服务费，根据《保理服务费协议》的约定和合同相对性原则，应当由新疆骑

士联盟股权投资有限公司（以下简称新疆骑士公司）向乐视移动智能公司主张，谨诚保理公司无权要求乐视移动智能公司向其履行《财务顾问协议》项下的义务。四、《保理服务费协议》的有效期为2年，即自2016年12月1日至2018年11月30日，乐视移动智能公司仅需在协议有效期内向谨诚保理公司支付保理服务费，有效期届满后该协议将失效，谨诚保理公司要求乐视移动智能公司支付至货款本金付清之日止的保理服务费，无合同依据和法律依据。五、谨诚保理公司主张的保理服务费违约金利息为每日万分之七，即年利率25.55%，明显过高。谨诚保理公司未举证证明其因乐视移动智能公司未按期支付保理服务费的行为而实际产生损失；且即使实际产生了损失，也应当以保理服务费被占用期间的资金占用费为限来计算，谨诚保理公司主张的标准远远超出了其实际损失，属于无效约定，应予调低。六、谨诚保理公司要求乐视移动智能公司承担其为实现债权所发生的费用、本案诉讼费、保全费等无事实依据和法律依据。谨诚保理公司未在举证期限内提交证据证明其为实现本案债权而实际发生了相关费用，且承担这些费用无形中加重了乐视移动智能公司的负担，违背公正公平的基本法律准则，应予驳回。

被告乐视控股公司辩称，不同意谨诚保理公司的诉讼请求，同意被告乐视移动智能公司的答辩意见。另外，乐视控股公司承担担保责任的条件尚未成就，谨诚保理公司无权要求乐视控股公

司承担担保责任。乐视控股公司承担担保责任的期间为自主债权清偿届满之日起 2 年，谨诚保理公司提起诉讼时，乐视移动智能公司的应付货款及保理服务费均在按照协议的约定正常履行，并没有主债权到期或逾期的情形出现。即使假设已出现应当承担担保责任的情形，谨诚保理公司并未按照约定向乐视控股公司发出书面的《回购通知书》，故承担担保责任的条件尚未成就。即使假设乐视控股公司应当向谨诚保理公司承担担保责任，谨诚保理公司主张按日利率千分之一支付违约金，标准过高，远远超出其实际损失，属于无效约定，应予调低。

被告贾跃亭辩称，不同意谨诚保理公司的诉讼请求，同意乐视移动智能公司的答辩意见和乐视控股公司关于担保人承担担保责任的条件尚未成就的答辩意见，贾跃亭承担担保责任的条件亦未成就。此外，要求贾跃亭为乐视移动智能公司的债务承担连带保证责任，属于过度担保、重复担保，此举措使有限责任无限化，背离了有限责任公司制度设立的初衷，贾跃亭的担保责任即便成立也应归于无效。该种个人为企业承担连带保证责任的情况，不符合最高人民法院民事审判庭第二庭庭长贺小荣在《让司法为金融回归本源提供价值引领》中的论述意见。为维护公司法基石、维护公正平等的民事法律行为准则、维护社会安定团结，对于个人为公司债务承担无限连带保证责任的情形应当审慎对待，使个人不当的、重复的担保责任归于无效。

- 7 -

谨诚保理公司围绕诉讼请求依法提交了如下证据：1.《保理合同》；2.《采购框架协议》（编号：L【EZN-MIQT-2015-631】）及其补充协议、补充协议（合同编号：1155196）；3.《保理业服务费协议》及附件《应收账款债权转让清单》；4.《回购担保协议》；5.保理融资款转款凭证；6.保证金收款凭证；7.谨诚保理公司已收到的货款本金的收款凭证；8.保理服务费的收取凭证。乐视移动智能公司、乐视控股公司、贾跃亭对上述证据的真实性、合法性、关联性均无异议。

乐视移动智能公司、乐视控股公司、贾跃亭围绕答辩意见依法提交了如下证据：1.债权托管安排通知函（复印件）（编号：XYJK-2016004-03-TZH02）；2.保证金付款凭证；3.2017年1月至2017年6月支付保理服务费的凭证。谨诚保理公司的质证意见为：对证据1的真实性不认可，该通知函系复印件，无原件；谨诚保理公司曾将债权托管给上海懒财公司，但不是债权转让。对证据2的真实性认可。对证据3的真实性不认可，认为均系电子凭证，无原件，保理服务费的支付情况应以谨诚保理公司提交的证据为准。

对当事人无异议的证据，本院予以确认并在卷佐证。对于各方有争议的证据和事实，本院将结合其他证据与当事人陈述综合认定。

本院经审理查明：

- 8 -

2016 年 12 月 1 日，乐视移动智能公司与京东方公司签订《采购框架协议》，约定由乐视移动智能公司向京东方公司采购相应的产品，协议对价格条款、需求预估、订单、原物料及零组件采购及物料责任、交货、收货及检验等相关内容进行了详细规定。同日，双方签订了《补充协议》，约定双方就原协议项下产生的应付款项达成如下一致：1. 京东方公司同意与谨诚保理公司签署保理合同。由谨诚保理公司按照保理合同约定向京东方公司提供保理服务。2. 乐视移动智能公司同意按照保理合同第 6 条第 2 款的约定承担相应的保理服务费。……4. 如在保理合同的履行过程中，发生如下事项的，乐视移动智能公司应当就相应部分应付款项继续承担支付义务：（1）按照保理合同第五条以及第九条的约定，保理公司要求京东方公司公司回购保理合同项下全部或部分应收账款的。协议还约定了其他相关内容。另外，双方还签订了《补充协议(合同编号：1155196)》，对涉案应收账款的业务订单货款支付日进行了统一调整并列明，显示涉案应收账款到期日共有 3 个，分别为 2017 年 5 月 30 日，到期款项 50 137 548.88 元；2017 年 6 月 29 日，到期款项 50 533 973.15 元；2017 年 7 月 28 日，到期款项为 55 975 517.38 元；共计 156 647 039.41 元。《补充协议(合同编号：1155196)》还约定应收账款付款账户等其他事宜。

2016 年 12 月 2 日，京东方公司作为甲方，谨诚保理公司作为乙方，签订了《保理合同》，合同编号为 SZJC-201611-BOELSYD-BLHT。

约定：鉴于甲方采用赊销方式向买方销售货物或提供服务，并以由此形成的交易合同项下对买方的应收账款向乙方申请办理无追索权的国内保理业务，乙方为甲方提供融资服务。双方签署本合同。第二条保理期限 本合同保理期限自 2016 年 12 月 2 日起至 2017 年 7 月 28 日止，共计 8 个月。第四条应收账款的回购 本合同为无追索权保理合同，应收账款到期日遇买方（乐视移动智能公司）未按期支付账款，乙方同意由乙方承担担保付款的责任，乙方对该等保理预付款不向甲方追索，但同时保留根据担保协议向保证方追索的权利。出现本合同第五条规定或者第九条（1）提前回购情形的除外。在发生上述情形时，乙方有权选择决定向甲方或者依照协议要求保证方履行以上义务。第五条应收账款提前回购的情形 发生以下情形的，甲方应当对转让给乙方的应收账款进行提前回购，乙方应按比例退还保理服务费：1. 应收账款到期日前，买方以任何书面形式就交易合同项下的商业纠纷通知乙方或者乙方通过甲方及其他任何途径得知交易合同发生纠纷的。2. 甲方或买方在交易合同项下存在商业欺诈行为的。3. 甲方与买方之间交易合同项下存在关联交易的或应收账款存在债权债务抵销、折让、退回等使应收账款减损的情形的。第六条保理融资款及保理服务费 1. 双方约定，本合同项下转让的应收账款总额为人民币 156 647 039.40 元，乙方于 2016 年 12 月 7 日前支付给甲方。2. 双方约定，本合同保理服务费的计算标准为：年化利率 13%。由乐

- 10 -

视移动智能公司与乙方另行签署《商业保理业务合同服务费协议》并支付上述保理服务费。第九条合同终止条款 1.甲方有下列情形之一的，乙方有权单方面解除保理合同，并要求甲方提前回购应收账款，已经收取的保理服务费用不予退还。（1）本合同第五条约定的提前回购条件出现的；（2）甲方违反保理融资款的约定使用用途，将保理融资挪作他用的；（3）甲方出现或可能出现重大财产诉讼，可能影响应收账款回购的；（4）甲方在经营过程中，财务状况发生重大变化，可能影响应收账款回购的；（5）甲方在经营过程中，发生企业变更、合并、分立、充足、财产被查封等情形可能影响应收账款回购的。合同还约定了其他相关事宜。

2016 年 12 月 1 日，乐视移动智能公司作为甲方，谨诚保理公司作为乙方，签订了《保理服务费协议》，约定京东方公司作为甲方上游服务公司，因经营管理的需要，向乙方申请商业保理业务，应收账款总额为人民币 156 647 039.40 元。乙方接受申请，并与甲方上游公司签署了《保理合同》（以下简称"主合同"）。第二条就主合同履行期间发生的保理服务费，双方同意如下支付方式：2.1.1 主合同中的保理服务费的年化利率为 13%，保理服务费按日计息，日利率=年利率/365。 2.1.2 保理服务费的计算公式为：应收账款总额*乙方向京东方公司发放吧哦理融资款起始日起至乐视移动智能公司占用该笔保理融资款金额的最后占用日之间的实际天数*日利率。在保理融资款占用期限内，借款的本金余额发生

-- 11 --

变化的，应分段计算并累计相加。2.1.3 保理服务费分为期间保理利息、期间保理服务费和期间咨询服务费三部分。（1）期间保理利息：年化利率为 7.5%，按日计息。甲方应于每个自然月的 15 日支付至乙方指定账户。该指定账户为北京懒财信息科技有限公司（以下简称北京懒财公司）在上海华瑞银行股份有限公司开具的账户，账号为 ████████ 2）期间保理服务费：年化利率为 0.5%，按日计息。甲方应于每个自然月的 15 日支付至乙方指定账户。该指定账户为谨诚保理公司在平安银行北京德胜门支行开具的账户，账号为 ████████ （3）期间咨询服务费总额＝保理服务费－期间保理利息－期间保理服务费。甲方应于每个自然月的 15 日支付期间咨询服务费总额，由新疆骑士公司作为本项目的财务顾问与甲方另行签署《财务顾问协议》并收取上述期间咨询服务费。协议中未列明双方指定收取（支付）账户。第五条 违约责任 5.1 协议一方因不履行或不及时全面履行本协议，应视为违约；5.2 甲方违反协议约定，逾期支付或者不支付保理服务费的，按拖欠金额的日万分之七标准支付违约金。第十条 其他条款 本协议于 2016 年 12 月 1 日由甲乙双方代表签署。自双方签字之日起 2 年内有效，协议期满，经双方同意后可续约。该协议后附《应收账款转让清单》，约定应收账款编号、金额及到期日均与《采购框架协议》的补充协议（合同编号 ████████ ）内容相同。

为确保乐视移动智能公司按照《保理合同》的约定偿还谨诚

- 12 -

保理公司垫付的货款，谨诚保理公司作为甲方，乐视控股公司作为乙方一，贾跃亭作为乙方二，乐视移动智能公司作为丙方，共同签署了《回购担保协议》，约定乙方（包括乙方一、乙方二）同意并承诺以回购的形式向甲方承担不可撤销的连带责任担保；在乙方为丙方提供连带担保的前提下，甲方提供保理义务，为丙方垫付其应向供应商（京东方公司）依据《保理合同》支付的价款（保理融资款）。各方一致同意以下条款：一、有关用词定义 3.回购价款指甲方按照《保理合同》约定实际支付的保理融资款扣除回购当时丙方已经偿还部分的剩余金额（本金部分）以及该本金部分对应的逾期利息。4.货款保证金：为保证丙方按期足额偿还货款，保理业务放款前由丙方向甲方缴纳的货款保证金。货款保证金=保理融资款金额*10%。二、担保方式、期间和范围 1.担保方式 乙方提供的担保方式为连带责任担保，当丙方没有履行或者没有全部履行其应付货款及保理服务费等时，甲方有权直接要求乙方承担担保责任。……2.担保期间 （1）丙方履行支付货款的债务期间为 12 个月，具体起始日起由《保理合同》确定。（2）担保期间为两年，自主债权清偿届满之日起开始起算。3.乙方担保的范围是丙方没有按照《保理合同》的约定履行义务，给甲方造成的损失，包括：（1）丙方未按照《保理合同》的约定按时、足额支付应付款项、利息、罚息、保险费、保证金、赔偿金以及丙方应支付的其他费用；（2）货物的所有权或价值遭到损害；（3）

- 13 -

担保额度根据各方约定为本协议所规定的暴力项目的在保余额合计人民币 156 647 039.40 元；（4）甲方为实现以上权益而支出的全部合理费用，包括但不限于合理的律师费、诉讼费、差旅费等。

三、回购方式 1.当回购条件成立时，甲方向乙方发出《回购通知书》。自《回购通知书》发出之日起的十日内由乙方向甲方一次性支付全部回购价款。2.回购条件：出现《保理合同》规定的合同解除事由之时，包括：丙方迟延向供应商支付价款，而使得甲方保理债权到期未能及时收回，丙方根据约定向甲方支付罚息后、逾期 15 日仍未履行或者全部履行的；丙方不及时补足保证金的；丙方可能被依法宣告破产、解散、清算的。满足前述任一情形，回购条件即成立。回购条件的成立与协议所指货物状况如何无关（包括但不限于丢失、毁损等）。四、保证金 当丙方发生逾期支付货款时，甲方有权动用丙方保证金垫付丙方逾期货款，并通知丙方补足保证金。自丙方逾期支付应付货款之日起的下一日历月的 10 日前，丙方仍未能补足（不）足额的保证金时，乙方应补足丙方保证金。乙方未能在接到甲方书面通知后 3 个工作日内及时补足保证金时，甲方有权要求乙方立即履行回购承诺及担保义务。在丙方履行完成本协议项下应付款项支付义务之日起三个工作日内，或在乙方履行完成回购款项支付义务之日起三个工作日内，甲方应当退还相应的保证金。五、各方的权利和义务 1.甲方承诺在与供应商的保理合同中约定放款日的前后 5 个工作日内放款；

- 14 -

若甲方未及时放款，甲方应向丙方支付罚息，该罚息按中国人民银行发布的同期贷款利率计算。由于丙方未能按时缴纳保证金而影响甲方与供应商之间约定的保理合同放款时间的，甲方放款时间顺延且不承担罚息。2.当满足本协议约定的条件时，甲方应及时向乙方发出《回购通知书》。5.对于丙方迟延付款给供应商，而使得甲方与供应商之间的保理债权到期未能及时收回的，甲方有权就迟延付款部分要求丙方处以罚息（日息千分之一），且丙方继续承担付款责任或根据本协议由乙方履行回购责任。……七、违约责任　乙方不按照本协议约定承担回购责任、担保义务或者违反本协议约定的其他义务的，每天应向甲方支付回购价款 0.1%的违约金，因此给甲方造成经济损失且违约金数额不足以弥补所受损失的，应赔偿甲方的实际经济损失包括债权、利息、违约金、赔偿金以及实现债权的合理费用（包括公证、评估、鉴定、拍卖、诉讼或仲裁、送达、财产保全、执行、律师代理、差旅费等全部费用）。

上述协议签订后，2016 年 12 月 14 日，乐视移动智能公司向谨诚保理公司支付保证金 15 664 703.94 元。

2016 年 12 月 16 日，谨诚保理公司向京东方公司支付保理融资款 156 647 039.40 元。

2017 年 1 月 16 日，2017 年 2 月 15 日，2017 年 3 月 14 日，2017 年 4 月 14 日，2017 年 5 月 17 日，乐视移动智能公司均如约

－ 15 －

向谨诚保理公司指定的北京懒财公司账户支付了相应的期间保理利息；向谨诚保理公司指定账户支付了相应的期间保理服务费；向新疆骑士公司支付了相应的期间咨询服务费。

2017 年 6 月 1 日，京东方公司分 5 笔向谨诚保理公司支付了货款本金 50 137 548.88 元，至此，谨诚保理公司涉案应收账款中于 2017 年 5 月 30 日到期的款项均已收回。同日，乐视移动智能公司分别向前述北京懒财公司账户支付期间保理利息 164835.78 元；向谨诚保理公司指定账户支付期间保理服务费 10989.06 元；向新疆骑士公司支付期间咨询服务费 109890.52 元。该笔费用系 2017 年 5 月 30 日到期的货款自 2017 年 5 月 15 日至 2017 年 5 月 31 日期间的保理服务费。此后，乐视移动智能公司未再向相关账户支付保理服务费。

2017 年 6 月 27 日，谨诚保理公司向本院提起本案诉讼，本院于 2017 年 7 月 7 日将起诉状送达到乐视控股公司和贾跃亭。

京东方公司在 2017 年 6 月 1 日之后，至今未再向谨诚保理公司支付过剩余货款。乐视移动智能公司、乐视控股公司、贾跃亭亦未再支付过任何款项。

上述事实，有《采购框架协议》及补充协议、补充协议（合同编号：1155196）;《保理合同》、《保理服务费协议》、《回购担保协议》、支付凭证、收据等及当事人陈述在案佐证。

本院认为，各方签订的《保理合同》、《采购框架协议》及其

补充协议、《保理服务费协议》、《回购担保协议》，系各方的真实意思表示，且内容不违反法律、行政法规的强制性规定，属合法有效，各方当事人应当按照上述协议的约定履行各自义务。谨诚保理公司因与京东方公司签订《保理合同》，受让了京东方公司在《采购框架协议》及其补充协议项下对乐视移动智能公司的涉案应收货款债权，在乐视移动智能公司未如约支付货款时，有权直接向乐视移动智能公司主张权利。

现综合各方当事人的诉辩意见，本案的争议焦点如下：一、谨诚保理公司是否已将涉案债权转让给上海懒财公司，即谨诚保理公司是否有权提起本案诉讼；二、乐视移动智能公司是否违反《采购框架协议》的约定及违约时间的确定；三、应付货款的数额及其迟延履行利息的计算问题；四、谨诚保理公司是否有权主张的保理服务费中的期间咨询费、超过合同有效期的保理服务费以及保理服务费违约金的计算标准问题；五、贾跃亭的连带保证责任是否有效以及乐视控股公司、贾跃亭承担连带担保责任的条件是否成就；六、乐视控股公司、贾跃亭逾期承担担保责任违约金的计算问题。

一、关于谨诚保理公司是否已将涉案债权转让给上海懒财公司，即谨诚保理公司是否有权提起本案诉讼的问题。

乐视移动智能公司、乐视控股公司、贾跃亭在答辩中称，谨诚保理公司已将涉案的应收货款债权转让给上海懒财公司，故其

已无权作为债权人主张权利。对此，乐视移动智能公司、乐视控股公司、贾跃亭向本院提交了《债权托管安排通知函》（复印件）予以证明。谨诚保理公司对此不予认可，其认为《债权托管安排通知函》并非原件，无法确认其真实性，谨诚保理公司曾将涉案债权托管，但并非转让。本院认为，首先，当事人对自己提出的主张负有举证责任，否则应承担举证不能的后果。现乐视移动智能公司、乐视控股公司、贾跃亭主张谨诚保理公司已将涉案债权转让，但其未提供《债权托管安排通知函》原件，谨诚保理公司对该主张也不予认可，在此情形下，无法确认涉案债权转让的真实性。其次，《债权托管安排通知函》（复印件）显示的时间为2016年，但从2017年各方实际履行协议的情况来看，乐视移动智能公司在2017年6月仍将第一笔到期货款按照约定汇入了谨诚保理公司与京东方公司指定的京东方公司账户，并由京东方公司通过该账户直接汇入谨诚保理公司账户，而乐视移动智能公司在答辩中亦认可上述款项系由其向谨诚保理公司支付。可见，乐视移动智能公司在实际履行中，亦未将上海懒财公司作为涉案债权的权利人。综上，本院对《债权托管安排通知函》的真实性不予认定；对乐视移动智能公司、乐视控股公司、贾跃亭的该项答辩意见不予采信。谨诚保理公司依据相关合同，有权提起本案诉讼。

二、关于乐视移动智能公司是否违反《采购框架协议》的约定以及违约时间的确定问题。

- 18 -

谨诚保理公司系因签订《保理合同》，受让京东方公司基于《采购框架协议》项下对乐视移动智能公司的涉案应收货款债权。故乐视移动智能公司违反《采购框架协议》的约定，是谨诚保理公司向乐视移动智能公司主张货款的前提，也是谨诚保理公司主张货款迟延履行利息的计算基础。但各方对于乐视移动智能公司何时违约，存在争议。

谨诚保理公司主张，乐视移动智能公司应自 2017 年 6 月 16 日起支付剩余货款的迟延履行利息，即其认为乐视移动智能公司在 2017 年 6 月 15 日违约。理由是：1. 乐视移动智能公司于 2017 年 6 月 15 日违反了《保理服务费协议》，未按期支付保理服务费。2. 乐视移动智能公司、乐视控股公司、贾跃亭出现了众所周知的重大财产诉讼和重大财务状况变化，影响了谨诚保理公司的债权，符合《保理合同》第四条关于提前回购的约定，谨诚保理公司因此有权要求乐视控股公司、贾跃亭作为保证方履行义务；乐视移动智能公司作为主债务人，亦应受《保理合同》的约束。3. 乐视移动智能公司、乐视控股公司、贾跃亭出现了众所周知的重大财产诉讼和重大财务状况变化，是以自己的行为表明不履行合同义务，符合《合同法》第一百零八条的规定，谨诚保理公司可以在履行期限届满之前要求该三者承担违约责任。4. 谨诚保理公司提起本案诉讼后，乐视移动智能公司、乐视控股公司、贾跃亭均未履行还款义务。乐视移动智能公司、乐视控股公司、贾跃亭对谨

诚保理公司的主张均不予认可，辩称：在谨诚保理公司提起本案诉讼时，乐视移动智能公司已按期支付了涉案的第一笔货款，剩余货款付款日期尚未届满，主合同在正常履行。即使现在剩余货款付款日期已届满，针对剩余货款计算迟延履行利息时，应当按照付款日期从应付款日的第二日起分段计算，即乐视移动智能公司自相应货款付款日期届满时才违反《采购框架协议》的约定。

本院认为，谨诚保理公司关于乐视移动智能公司于 2017 年 6 月 15 日违反《采购框架协议》约定的主张没有合同和法律依据，但由于在本案诉讼期间，涉案货款的付款日期均已届满，乐视移动智能公司并未按照约定如期付款。故现谨诚保理公司向乐视移动智能公司主张给付货款的诉讼请求，符合合同约定和法律规定的部分，仍应予以支持。理由如下：

第一，2017 年 6 月 15 日《采购框架协议》仍在正常履行，没有违约情形的出现。根据各方签订的协议，涉案货款分三笔到期，到期日分别是 2017 年 5 月 30 日、2017 年 6 月 29 日和 2017 年 7 月 28 日。2017 年 6 月 1 日，乐视移动智能公司已履行了 2017 年 5 月 30 日到期货款的支付义务，剩余货款在 2017 年 6 月 15 日时均未到期，《采购框架协议》主协议仍在正常履行。而《采购框架协议》与《保理服务费协议》是两个独立的合同，即使乐视移动智能公司在 2017 年 6 月 15 日未支付相应的保理服务费，违反了《保理服务费协议》的约定，根据合同的相对性原则，谨诚保理

公司此时仅有权要求乐视移动智能公司支付相应的保理服务费，无权要求其提前支付《采购框架协议》项下未到期的货款。

第二，谨诚保理公司的主张不符合《保理合同》第四条关于应收账款提前回购的约定。首先，谨诚保理公司对于乐视移动智能公司、乐视控股公司、贾跃亭出现重大财产诉讼和重大财务状况变化，并未提交证据予以证明。其次，即使上述情况是众所周知的，不需要证明，谨诚保理公司主张因上述情形的出现符合《保理合同》中关于提前回购的约定，也不能成立。因《保理合同》的签订主体是京东方公司与谨诚保理公司，权利义务的设定也是针对该二者。《保理合同》第四条第二款是关于应收账款提前回购的约定，根据合同全文理解，第四条第二款的含义应为：在发生合同第五条规定或者第九条（1）款提前回购的情形时，乙方（谨诚保理公司）有权决定向甲方（京东方公司）或者按照协议要求保证方（乐视控股公司、贾跃亭）履行付款义务。《保理合同》第五条是关于应收账款提前回购情形的约定，载明："发生以下情形的，甲方应当对转让给乙方的应收账款进行提前回购，乙方应按比例退还保理服务费：1.应收账款到期日前，买方（乐视移动智能公司）以任何书面形式就交易合同项下的商业纠纷通知乙方或者乙方通过甲方及其他任何途径得知交易合同发生纠纷的……"。第九条是关于合同终止的约定，第（1）款载明"甲方有下列情形之一的，乙方有权单方面解除保理合同，并要求甲方提前回购应

- 21 -

收账款，已经收取的保理服务费用不予退还。（1）本合同第五条约定的提前回购条件出现的；（2）甲方违反保理融资款的约定使用用途，将保理融资款挪作他用的；（3）甲方出现或可能出现重大财产诉讼，可能影响应收账款回购的；（4）甲方在经营过程中，财务状况发生重大变化，可能影响应收账款回购的；（5）甲方在经营过程中，发生企业变更、合并、分立、重组、财产被查封等情形可能影响应收账款回购的。"可见，上述合同条款中所称的"甲方"，均是指京东方公司，并非乐视移动智能公司，亦非乐视控股公司或贾跃亭，而合同第五条和第九条中所描述的情形，也是指京东方公司出现上述情形。因此，乐视移动智能公司、乐视控股公司、贾跃亭即使其出现了重大财产诉讼和重大财务状况变化，在谨诚保理公司未举证证明京东方公司已出现或者可能出现重大财产诉讼，亦或涉案交易合同发生纠纷的情况下，并不符合《保理合同》关于提前回购的条件，不能要求回购主体承担回购责任。也就是说，依据谨诚保理公司的该项主张，其无权根据《保理合同》第四条要求乐视控股公司和贾跃亭作为保证方，提前履行付款义务，更不能进一步要求乐视移动智能公司受此约束。另外，谨诚保理公司称乐视移动智能公司、乐视控股公司、贾跃亭出现了重大财产诉讼和重大财务状况变化，是以自己的行为表明不履行合同义务的主张，也没有相应的事实和法律依据。

综上，乐视移动智能公司在 2017 年 6 月 15 日时并未违反《采

- 22 -

购框架协议》的约定，谨诚保理公司无权在此时要求其支付剩余货款。

但考虑到自谨诚保理公司于 2017 年 6 月 27 日提起本案诉讼后，截止目前，涉案货款均已到期，但乐视移动智能公司、乐视控股公司、贾跃亭在剩余货款到期日均未按合同约定履行付款义务，已然实际构成了违约，因此，现谨诚保理公司要求乐视移动智能公司支付剩余货款的诉讼请求，有事实和合同依据，本院予以支持。但需要明确的是，乐视移动智能公司违反《采购框架协议》约定的时间，即谨诚保理公司有权向乐视移动智能公司主张剩余货款的时间，应为相应货款的付款日期届满之时。因剩余货款分二笔到期，分别是 2017 年 6 月 29 日和 2017 年 7 月 28 日，乐视移动智能公司相应的违约时间应区分计算。

三、关于应付货款的数额及其迟延履行利息的计算问题。

（一）关于应付货款的数额。

谨诚保理公司主张应付货款的数额为 106 509 490.52 元，系应付货款总额减去已付货款的数额。乐视移动智能公司、乐视控股公司、贾跃亭认可尚未支付的货款为 106 509 490.52 元，但主张现应付款项中应扣减乐视移动智能公司已向谨诚保理公司支付的货款保证金 15 664 709.94 元以及谨诚保理公司晚付 2 日保理融资款的罚息。

关于保证金是否应予扣减的问题。首先，乐视移动智能公司

主张已付保证金数额为 15 664 709.94 元，但根据乐视移动智能公司提供的保证金支付凭证和谨诚保理公司提供的收款凭证，乐视移动智能公司实际支付的保证金数额为 15 664 703.94 元，故本院确认乐视移动智能公司已付保证金的数额为 15 664 703.94 元。其次，谨诚保理公司认可收到上述保证金，但不同意抵扣，认为根据合同约定，保证金应当在乐视移动智能公司、乐视控股公司、贾跃亭履行完相应的合同义务之后再予退还。本院认为，根据双方在《回购担保协议》中的约定，"当乐视移动智能公司发生逾期支付货款时，谨诚保理公司有权动用乐视移动智能公司保证金垫付其逾期货款，并通知乐视移动智能公司补足保证金。在乐视移动智能公司完成协议项下的应付款项支付义务之日起三个工作日内，或在乐视控股公司、贾跃亭履行完成回购款项支付义务之日起三个工作日内，谨诚保理公司应当退还相应的保证金"。可见，双方对保证金的处置约定了两种情形：一是在乐视移动智能公司违约，逾期支付货款时，保证金用于垫付逾期货款；二是在乐视移动智能公司如期履约的情况下，保证金在其完成付款义务之后退还。现谨诚保理公司因乐视移动智能公司出现逾期支付货款的情况，提起本案诉讼，依据合同约定，保证金应先用于垫付逾期货款。且谨诚保理公司提起本案诉讼，要求判令乐视移动智能公司支付剩余货款，即是要求对双方之间进行结算，而双方也没有其他的债权债务关系，故乐视移动智能公司、乐视控股公

司、贾跃亭要求从应付货款中扣减已支付的保证金的答辩意见，符合合同约定，本院予以支持。对于谨诚保理公司不同意抵扣的主张，本院不予采信。按照合同约定，上述保证金应用于扣减逾期支付的货款本金。又因剩余货款本金分二笔到期，保证金应先用于扣减到期时间在前的货款。即扣减之后，于 2017 年 6 月 29 日到期的应付货款数额应为 34 869 269.2 元，于 2017 年 7 月 28 日到期的应付货款数额仍为 55 975 517.38 元，剩余未付货款总额为 90 844 786.58 元。故对于谨诚保理公司超出上述未付货款数额的诉讼请求，本院不予支持。

关于谨诚保理公司晚付 2 日保理融资款的罚息是否应予扣减的问题，因乐视移动智能公司、乐视控股公司、贾跃亭在本案中均未提出反诉，要求谨诚保理公司支付相应的罚息，故本院对其要求在应付款项中扣减相应罚息的意见，不予采信。乐视移动智能公司、乐视控股公司、贾跃亭如认为有权主张，可另行提起诉讼。

（二）关于货款迟延履行利息的计算问题。

各方关于货款迟延履行利息的计算，主要有两方面争议：一是起算时间；二是计算标准。

关于迟延履行利息起算时间的争议，实际上就是关于乐视移动智能公司违反《采购框架协议》的时间的争议。如前所述，谨诚保理公司主张应自 2017 年 6 月 16 日起计算应付货款的迟延履

行利息，缺乏事实及法律依据，本院不予采信。乐视移动智能公司、乐视控股公司、贾跃亭认为应按照货款付款日期，从应付款日的第二日起分段计算迟延履行利息，符合合同约定，本院予以采信。即，于2017年6月29日到期的货款，迟延履行利息应自2017年6月30日起算；于2017年7月28日到期的货款，迟延履行利息应自2017年7月29日起算。故对于谨诚保理公司超出该部分的诉讼请求，本院不予支持。

关于迟延履行利息的计算标准问题，谨诚保理公司主张按照《回购担保协议》第五条第5款的约定，应当以每日千分之一的利率计算迟延付款的利息。乐视移动智能公司、乐视控股公司、贾跃亭均认为利息过高，应当以谨诚保理公司的实际损失为限，请求法院予以调整。本院认为，根据合同法的规定，当事人可以约定一方违约时应当根据违约情况向对方支付一定数额的违约金，也可以约定因违约产生的损失赔偿额的计算方法。约定的违约金低于造成的损失的，当事人可以请求人民法院或者仲裁机构予以增加；约定的违约金过分高于造成的损失的，当事人可以请求人民法院或者仲裁机构予以适当减少。本案中，鉴于迟延履行利息是对违约损害的填补，而乐视移动智能公司迟延支付货款给谨诚保理公司造成的是资金占用损失，且谨诚保理公司主张的迟延履行利息计算标准折合后年利率达到36.5%，显属过高，故乐视移动智能公司请求本院调整依据充足，本院根据公平原则和诚实信用

原则予以衡量，将迟延履行利息的计算标准酌减为年利率24%。对于谨诚保理公司超出该部分的诉讼请求，本院不予支持。

四、关于谨诚保理公司是否有权主张保理服务费中的期间咨询费、超过合同有效期的保理服务费以及保理服务费违约金的计算标准问题。

（一）关于谨诚保理公司是否有权主张保理服务费中的期间咨询费的问题。

乐视移动智能公司、乐视控股公司、贾跃亭在答辩中称，根据《保理服务费协议》的约定，保理服务费中的期间咨询费由新疆骑士公司与乐视移动智能公司另行签署《财务顾问协议》并收取，故根据合同相对性原则，该部分保理服务费应由新疆骑士公司主张，谨诚保理公司无权要求乐视移动智能公司向其履行《财务顾问协议》项下的义务。谨诚保理公司认可之前正常履行的期间咨询费均由新疆骑士公司收取，但认为乐视移动智能公司未提交《财务顾问协议》，依据《保理服务费协议》的约定，仍应由谨诚保理公司向其主张这部分费用。本院认为，首先，谨诚保理公司是提供涉案保理服务的主体，也是收取保理服务费的权利主体。根据各方协议，涉案的保理服务由谨诚保理公司以支付保理融资款的形式提供，并无其他提供服务的主体。而《保理服务费协议》的签订主体也是乐视移动智能公司与谨诚保理公司，乐视移动智能公司支付包含期间咨询服务费在内的保理服务费的义务，对应

的权利主体只有谨诚保理公司。其次，根据《保理服务费协议》的约定，向新疆骑士公司支付期间咨询服务费，是支付保理服务费的方式之一，属于乐视移动智能公司履行《保理服务费协议》的方式。新疆骑士公司收取该费用的权利来源仍是谨诚保理公司，其无权直接向乐视移动智能公司主张该笔费用。第三，乐视移动智能公司作为协议的一方当事人，并未提交其与新疆骑士公司的《财务顾问协议》，无法查清各方是否有其他约定。在此情形下，谨诚保理公司向乐视移动智能公司主张期间咨询费的诉讼请求，符合合同约定，本院予以支持。对于乐视移动智能公司、乐视控股公司、贾跃亭关于谨诚保理公司无权要求期间咨询费的答辩意见，本院不予采信。

（二）关于谨诚保理公司是否有权主张超过合同有效期的保理服务费的问题。

乐视移动智能公司、乐视控股公司、贾跃亭在答辩中称，《保理服务费协议》的有效期为 2 年，有效期届满之后协议将失效，故谨诚保理公司要求乐视移动智能公司支付至货款本金付清之日止的保理服务费的诉讼请求中，超出合同有效期的部分，应予驳回。谨诚保理公司认为，根据《保理服务费协议》中关于保理服务费计算方式的约定，保理服务费以乐视移动智能公司实际占用保理融资款的天数进行计算，故在乐视移动智能公司未付清货款之前，都属于其实际占用保理融资款，均应支付保理服务费。对

- 28 -

此，本院认为，谨诚保理公司向乐视移动智能公司主张保理服务费的依据是《保理服务费协议》，其前提应是该协议有效。现《保理服务费协议》第十条第二款明确约定了协议的有效期间，即"本协议于2016年12月1日由甲乙双方代表签署。自双方签字之日起2年内有效，协议期满，经双方同意后可续约"。在超出协议有效期后，如双方未能续约，则《保理服务费协议》将归于无效，谨诚保理公司无权再依据该协议向乐视移动智能公司主张相应的保理服务费。故，本院对于谨诚保理公司要求乐视移动智能公司支付至货款本金付清之日止的保理服务费的诉讼请求，若货款本金付清之日在2018年11月30日以前，则予以支持；若货款本金付清之日在2018年11月30日之后，则对于此后的保理服务费，本院不予支持。

（三）关于保理服务费违约金的计算标准问题。

谨诚保理公司主张依据《保理服务费协议》第五条第5.2款，应按拖欠保理服务费金额的日万分之七标准支付逾期支付保理服务费的违约金。乐视移动智能公司、乐视控股公司、贾跃亭均认为该利息过高，违反了《中华人民共和国合同法》及相关法律法规的规定，应当以谨诚保理公司的实际损失为限来计算，请求法院予以调整。本院认为，鉴于保理服务费违约金也是对违约损害的填补，而乐视移动智能公司迟延支付保理服务费给谨诚保理公司造成的是资金占用损失，且谨诚保理公司主张的违约金计算标

准折合后年利率达到 25.55%，显属过高，乐视移动智能公司请求本院调整依据充足。故，本院仍根据公平原则和诚实信用原则予以衡量，将保理服务费违约金的计算标准酌减为年利率 24%。对于谨诚保理公司超出该部分的诉讼请求，本院不予支持。

五、关于贾跃亭的连带保证责任是否有效以及乐视控股公司、贾跃亭承担连带担保责任的条件是否成就的问题。

关于贾跃亭的连带担保责任是否有效的问题，贾跃亭在答辩中称，谨诚保理公司要求贾跃亭为乐视移动智能公司的涉案债务承担连带保证责任，属于过度担保、重复担保，此举措使有限责任无限化，背离了有限责任公司制度设立的初衷，贾跃亭的担保责任即便成立也应归于无效。本院认为，签订《回购担保协议》是贾跃亭的真实意思表示，《回购担保协议》的内容不违反法律、法规的强制性规定，属合法有效，故谨诚保理公司依据《回购担保协议》要求贾跃亭对乐视移动智能公司的涉案债务承担连带保证责任的主张，符合合同和法律规定，应予支持。对于贾跃亭该项答辩意见，因缺乏事实和法律依据，本院不予采信。

关于乐视控股公司、贾跃亭承担连带担保责任的条件是否成就的问题，乐视控股公司、贾跃亭主张，在谨诚保理公司提起诉讼时，《采购框架协议》仍在正常履行，并没有主债权到期或逾期的情形出现；且谨诚保理公司并未按照《回购担保协议》的约定向乐视控股公司、贾跃亭发出书面《回购通知书》，故乐视控股公

- 30 -

司、贾跃亭承担担保责任的条件尚未成就，谨诚保理公司的诉讼请求不应得到支持。谨诚保理公司认为，《回购担保协议》约定了回购和担保两个法律关系，在乐视移动智能公司未如期支付货款和保理服务费时，谨诚保理公司有权要求乐视控股公司、贾跃亭承担担保责任，提起诉讼即可达到通知的法律效力，故乐视控股公司、贾跃亭承担连带担保责任的条件已成就。本院认为，从《回购担保协议》的内容来看，其包含了担保和回购两个法律关系。该协议第二条是关于担保方式、期间和范围的约定，其中第一款载明："乙方（乐视控股公司、贾跃亭）提供的担保方式为连带责任担保，当丙方（乐视移动智能公司）没有履行或者没有全部履行其应付货款及保理服务费等时，甲方（谨诚保理公司）有权直接要求乙方承担担保责任"。第三条是关于回购方式的约定，其中第一款载明："当回购条件成立时，甲方向乙方发出《回购通知书》。自《回购通知书》发出之日起的十日内由乙方向甲方一次性支付全部回购价款。"可见，发出《回购通知书》，是要求乐视控股公司、贾跃亭承担回购责任的前提，而要求其承担担保责任，并不以发出《回购通知书》为要件。因协议中未约定应提供其他形式要件，则在符合承担担保责任的约定情形出现后，只要谨诚保理公司向乐视控股公司和贾跃亭主张权利，乐视控股公司、贾跃亭即应承担担保责任。根据已查明的事实，乐视移动智能公司在2017年6月15日未按期支付当期的保理服务费，又于2017年6月29

- 31 -

日未按期支付到期的货款，至此已符合《回购担保协议》第二条第一款关于承担担保责任的约定情形。因此，谨诚保理公司在2017年6月29日之后有权直接要求乐视控股公司、贾跃亭承担担保责任。本案中，谨诚保理公司并未提供其在起诉前向乐视控股公司、贾跃亭主张承担担保责任的证据，但其径行提起本案诉讼，在本案起诉状送达乐视控股公司、贾跃亭之日，即2017年7月7日，应视为谨诚保理公司向乐视控股公司、贾跃亭明确主张权利。故，乐视控股公司、贾跃亭承担担保责任的条件在2017年7月7日成就。因此，本院对于乐视控股公司、贾跃亭关于承担担保责任的条件尚未成就的答辩意见，不予采信。根据《回购担保协议》中关于担保范围的约定，谨诚保理公司要求乐视控股公司、贾跃亭对乐视移动智能公司的涉案债务承担连带清偿责任的诉讼请求，有事实和法律依据，本院予以支持。

六、关于乐视控股公司、贾跃亭逾期承担担保责任违约金的计算问题。

关于乐视控股公司、贾跃亭逾期承担担保责任违约金的计算，各方在起算时间、计算基数和计算标准方面均存在争议。

第一，关于起算时间。谨诚保理公司因认为乐视移动智能公司在2017年6月15日违约，乐视控股公司、贾跃亭即应承担担保责任，主张乐视控股公司、贾跃亭应于2017年6月16日起支付逾期承担担保责任的违约金。但如前所述，根据本院的认定，

乐视控股公司、贾跃亭承担担保责任的条件实际于 2017 年 7 月 7 日才成就，故该二者逾期承担担保责任的违约金应自 2017 年 7 月 8 日开始计算。

其次，关于计算基数。谨诚保理公司主张以 106 509 490.52 元为基数计算乐视控股公司、贾跃亭逾期承担担保责任的违约金，实际上是主张以剩余应付货款作为该违约金的计算基数。乐视控股公司、贾跃亭对此未提出异议，但如前所述，其认为应付货款数额应扣减已支付的保证金和罚息。本院认为，《回购担保协议》第七条约定 "乙方（乐视控股公司、贾跃亭）不按照本协议约定承担回购责任、担保义务或者违反本协议约定的其他义务的，每天应向甲方支付回购价款 0.1% 的违约金"。第一条第三款载明："回购价款指甲方（谨诚保理公司）按照《保理合同》约定实际支付的保理融资款扣除回购当时丙方（乐视移动智能公司）已经偿还部分的剩余金额（本金部分）以及该本金部分对应的逾期利息"。现谨诚保理公司仅主张以剩余应付货款为基数计算逾期承担担保责任的违约金，本院不持异议。但因根据本院认定，应付货款数额应扣减乐视移动智能公司已支付的保证金部分，故逾期承担担保责任违约金的计算基数亦应作相应扣减。且因应付货款分二笔到期，乐视控股公司、贾跃亭应承担的担保责任也应根据货款到期日的不同区分计算。相应的，乐视控股公司、贾跃亭逾期承担担保责任违约金的计算基数，也应按照货款到期时间的不同而区

分计算。即，自 2017 年 7 月 8 日起至 2017 年 7 月 29 日，应以 2017 年 6 月 29 日到期的货款扣减保证金后的数额作为基数进行计算；自 2017 年 7 月 30 日起至乐视移动智能公司涉案债务全部付清之日止，应以 2017 年 6 月 29 日到期的货款和 2017 年 7 月 28 日到期的货款总额扣减保证金后的数额作为基数进行计算。

第三，关于计算标准，谨诚保理公司主张依据《回购担保协议》第七条的约定，按每日千分之一的标准支付逾期承担担保责任违约金。乐视移动智能公司、乐视控股公司、贾跃亭均认为该利息过高，违反了《中华人民共和国合同法》及相关法律法规的规定，应当以谨诚保理公司的实际损失为限来计算，请求法院予以调整。本院认为，鉴于逾期承担担保责任违约金是对违约损害的填补，而乐视控股公司、贾跃亭逾期承担担保责任给谨诚保理公司造成的是资金占用损失，且谨诚保理公司主张的违约金计算标准折合后年利率达到 36.5%，显属过高，乐视控股公司、贾跃亭请求本院调低依据充足，故本院根据公平原则和诚实信用原则予以衡量，将乐视控股公司、贾跃亭逾期承担担保责任违约金的计算标准酌减为年利率 24%。对于谨诚保理公司超出该部分的诉讼请求，本院不予支持。

综上，本院对于谨诚保理公司要求乐视控股公司、贾跃亭支付自 2017 年 6 月 16 日至乐视移动智能公司涉案债务付清之日止逾期承担担保责任违约金的诉讼请求，符合上述条件的部分，予

以支持；超出部分，不予支持。

此外，关于谨诚保理公司要求乐视移动智能公司承担其为实现债权所发生的费用，以及要求乐视控股公司、贾跃亭对此承担连带清偿责任的诉讼请求，因谨诚保理公司未提供证据证明其为实现债权所支付的费用情况，故该主张缺乏事实依据，本院不予支持。

综上所述，本院认为，原告谨诚保理公司的诉讼请求部分成立，本院予以支持。依照《中华人民共和国合同法》第八条、第六十条、第一百零七条、第一百一十四条之规定，判决如下：

一、被告乐视移动智能信息技术（北京）有限公司于本判决生效后七日内给付原告深圳谨诚商业保理有限公司货款 90 844 786.58 元及相应的迟延履行利息（于 2017 年 6 月 29 日到期货款的迟延履行利息，应自 2017 年 6 月 30 日起至付清之日止，以 34 869 269.2 元为基数，按照年利率 24% 计算；于 2017 年 7 月 28 日到期货款的迟延履行利息，应自 2017 年 7 月 29 日起至付清之日止，以 55 975 517.38 元为基数，按照年利率 24% 计算）；

二、被告乐视移动智能信息技术（北京）有限公司于本判决生效后七日内给付原告深圳谨诚商业保理有限公司保理服务费（自 2017 年 5 月 16 日至 2017 年 6 月 28 日，以 106 509 490.52 元为基数，根据实际占用天数，按照日利率 13%/365 计算；自 2017 年 6 月 29 日至本判决第一项的货款本金全部付清之日止，以 90

- 35 -

844 786.58 元为基数，根据实际占用天数，按照日利率 13%/365 计算，截止于 2018 年 11 月 30 日）。

三、被告乐视移动智能信息技术（北京）有限公司于本判决生效后七日内给付原告深圳谨诚商业保理有限公司逾期支付保理服务费的违约金【自 2017 年 6 月起，每月以当期保理服务费（即自上个月 16 日起至该月 15 日止应付的保理服务费）为基数，自该月 16 日起至当期保理服务费付清之日止，按年利率 24% 计算。】

四、被告乐视控股（北京）有限公司、贾跃亭对上述第一项、第二项、第三项确定的被告乐视移动智能信息技术（北京）有限公司的债务承担连带清偿责任；被告乐视控股（北京）有限公司、贾跃亭承担连带清偿责任后，有权向被告乐视移动智能信息技术（北京）有限公司追偿。

五、被告乐视控股（北京）有限公司、贾跃亭于本判决生效后七日内给付原告深圳谨诚商业保理有限公司逾期承担担保责任的违约金（以 34 869 269.2 元为基数，自 2017 年 7 月 8 日起至 2017 年 7 月 29 日，按年利率 24% 计算；以 90 844 786.58 元为基数，自 2017 年 7 月 30 日起至上述第一项、第二项、第三项确定的被告乐视移动智能信息技术（北京）有限公司的债务付清之日止，按年利率 24% 计算）。

六、驳回原告深圳谨诚商业保理有限公司的其他诉讼请求。

如果未按本判决指定的期间履行给付金钱义务，应当依照《中

华人民共和国民事诉讼法》第二百五十三条之规定，加倍支付迟延履行期间的债务利息。

案件受理费 589 473 元，财产保全费 5000 元，由被告乐视移动智能信息技术（北京）有限公司、被告乐视控股（北京）有限公司、被告贾跃亭共同负担（于本判决生效后七日内交纳）。

如不服本判决，可以在判决书送达之日起十五日内，向本院递交上诉状，并按照对方当事人或者代表人的人数提出副本，上诉于北京市高级人民法院。



审　判　长　　宋　毅

审　判　员　　鲁　南

审　判　员　　张玉娜

二〇〇〇年〇〇月〇〇日

**此件与原本核对无异**
文件编码:170704-105056-78-75-083231

法官助理　　董　沛

书　记　员　　习雨欣

- 37 -

# Civil Judgment

# of

# the Third Intermediate People's Court of Beijing

(2017) Jing 03 Min Chu No. 248

Plaintiff: Shenzhen Jincheng Commercial Factoring Co., Ltd., with its address at Room 201, Building A, No. 1 Qianwan 1st Road, Qianhai Shenzhen-Hong Kong Cooperation Zone, Shenzhen (settled in Shenzhen Qianhai Commercial Secretary Co., Ltd.).

Legal representative: Han RunRMB, general manager.

Authorized representative: Huang Jin, lawyer of Beijing Qijin Law Firm.

Authorized representative: Fu Jiahui, lawyer of Beijing Qijin Law Firm.

Defendant 1: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd, with its address at (No.1, Linkong Second Road) North Wenhuaying Village, Gaoliying Town, Shunyi District, Beijing.

Legal representative: Jia Yuemin, manager.

Defendant 2: LETV Holdings (Beijing) Co., Ltd, with its address at Room 1102, 10/F, Building 3, No. 105 YaojiaRMB Road, Chaoyang District, Beijing.

Legal representative: Wu Meng, manager.

Defendant 3: Mr. Jia Yueting, male, born on December 15, 1973, Han nationality, living in No. 31 Jiefang West Road, Yaodu District, Linfen City, Shanxi Province.

Authorized representative jointly appointed by the three Defendants: Zou Yi, lawyer of Zhong Shu Law Firm.

Authorized representative jointly appointed by the three Defendants:
Wang Xiaoqian, lawyer of Zhong Shu Law Firm.

After the court filed the case of contract, negotiorum gestio,
unjustified enrichment disputes between the Plaintiff, Shenzhen Jincheng
Commercial Factoring Co., Ltd, ("**Jincheng Factoring**") and the
Defendants, LETV Mobile Intelligent Information Technology (Beijing)
Co., Ltd ("**LETV Mobile**"), LETV Holdings (Beijing) Co., Ltd ("LETV
Holdings") and Mr. Jia Yueting on June 27, 2017, a hearing was held in
open session by ordinary procedure in accordance with the law. Huang Jin,
the authorized representative of the Plaintiff Jincheng Factoring, and Zou
Yi and Wang Xiaoqian, the authorized representatives jointly appointed by
the Defendants, namely, LETV Mobile, LETV Holdings and Mr. Jia
Yueting, attended the hearing. The case has now been concluded and the
details are as follows.

The Plaintiff Jincheng Factoring made the claims to the court that: 1.
LETV Mobile shall pay the goods price of RMB 107,685,472.02 (the
principal of the goods price of RMB 106,509,490.52 + the unpaid factoring
service fee of RMB 1,175,981.49), the delayed performance interest
(calculated from June 16, 2017 to the date of the actual payment), as well as
the expense incurred by Jincheng Factoring in realizing its creditor's rights;
2. LETV Holdings and Jia Yueting shall be jointly and severally liable for
the payment of the said amounts, and pay the liquidated damages for
delayed performance calculated from the date of the judgment document to
the date of actual payment; 3. LETV Mobile, LETV Holdings and Jia
Yueting shall bear the litigation cost and preservation cost with respect to
this case. During the hearing of this case, the Plaintiff changed its claims as
follows: 1. LETV Mobile shall pay the goods price of RMB
106,509,490.52, the delayed performance interest calculated from June 16,
2017 to the date of the actual payment (calculated by a daily interest of 0.1%
based on the amount of delayed payment), as well as the expense incurred
by Jincheng Factoring in realizing its creditor's rights; 2. LETV Mobile
shall pay the factoring service fee of RMB 1,175,981.49 payable as of June

15, 2017; the factoring service fee for the period from June 16, 2017 to the date when the principal of the goods price mentioned in item 1 is fully paid off (calculation formula: unpaid principal of goods price * 13% / 365 days * actual occupation days); and the liquidated damages for the dalayed payment of factoring service fee for the period from June 16, 2017 to the date of full payment of the said factoring service fee (calculation formula: unpaid factoring service fee for each period * 0.7% * days of delayed payment); 3. LETV Holdings and Jia Yueting shall be jointly and severally liable for the said payments, and shall pay liquidated damages for the period from June 16, 2017 to the date when the amounts mentioned in items 1 and 2 are fully paid off (calculated by a daily interest of 0.1% based on RMB 106,509,490.52); 4. LETV Mobile, LETV Holdings and Jia Yueting shall bear the litigation cost and preservation cost with respect to this case.

For the said claims, the facts and ground are as follows. On December 2, 2016, the Plaintiff Jincheng Factoring signed with BOE Modern (Beijing) Display Technology Co., Ltd ("**BOE**"), an outsider, a *Commercial Factoring Business Contract (Non-recourse Type)* (the "***Factoring Contract***"), under which Jincheng Factoring paid the factoring payment in full to BOE on December 16, 2016 and thus acquired the creditor's rights of accounts receivable of RMB 156,647,039.40 under the *Purchase Framework Agreement* between BOE and LETV Mobile on June 31, 2015. LETV Mobile was aware of the transfer of the creditor's rights, and signed the *Agreement on Service Fee under the Commercial Factoring Business Contract* (the "*Factoring Service Fee Agreement*") with Jincheng Factoring on December 10, 2016, which stipulates that LETV Mobile shall pay the factoring service fee to Jincheng Factoring on factoring financing. Meanwhile, to ensure LETV Mobile to perform its obligations in accordance with the said agreement, Jincheng Factoring and LETV Mobile, LETV Holdings and Jia Jianting jointly signed the *Repurchase Guarantee Agreement*, which stipulates that LETV Holdings and Jia Yueting shall provide joint and several liability guarantee, and if LETV Mobile fails to perform or fails to fully perform its obligations to pay the goods price and factoring service fee, Jincheng Factoring has the right to directly request

LETV Holdings and Jia Yueting to bear the guarantee liability. After the said agreements were signed, LETV Mobile paid part of the goods price (principal) of RMB 50,137,548.88, but the balance of 106,509,490.52 and the factoring service fee of RMB 1,175,981.49 due on June 15, 2017 have not been paid up to now. Therefore, Jincheng Factoring filed the lawsuit applying to the court to support its claims.

The Defendant LETV Mobile argued that it did not agree with the claims of Jincheng Factoring. The facts and grounds are as follows: I. Jincheng Factoring has no direct interest in the case and does not have the qualification of subject, thus all its claims should be rejected. Jincheng Factoring once issued a *Notice on Arrangement of Creditor's Rights Custody* to LETV Mobile, LETV Holdings and Jia Yueting in 2016, informing them that it have transferred the creditor's rights of account receivables concerned to Shanghai Lancai Asset Management Co., Ltd ("**Shanghai Lancai**"), and requiring LETV Mobile, LETV Holdings and Jia Yueting to perform their obligations of debt payment and guarantee to Shanghai Lancai from the date of receipt of the notice. Therefore, Jincheng Factoring has no right to make claims as a creditor in this case; II. Even if it is assumed that Jincheng Factoring has the right to make claims in this case, its claims are inconsistent with the facts, and lack of legal basis and thus should not be supported. 1. The amount payable claimed by Jincheng Factoring is calculated wrong. The following two should be deducted from the principal of goods price of RMB 106,509,490.52: the goods price deposit of RMB 1,566,479.94 paid by LETV Mobile to Jincheng Factoring in accordance with the agreement and the penalty interest of RMB 42,058.66 to be paid by Jincheng Factoring to LETV Mobile due to the former's delayed payment of the factoring financing fund for 2 days. 2. The base and starting date for calculating the delayed performance interest as claimed by the Jincheng Factoring are wrong, and the amount of delayed performance interest is too high, so LETV Mobile applied to the court to adjust it in accordance with law. The goods price concerned should be paid in three installments. When Jincheng Factoring filed the case, LETV Mobile has paid the first installment on schedule, and the payment dates of

the second and third installments have not met. Notwithstanding the payment dates of the rest two installments have met now, the delayed performance interest on the two installments should be calculated by two periods, each from the date following the payment date (i.e., In calculting the delayed performance interest on the second installment, the aforesaid deposit and penalty interest shall be deducted from the base amount). The rate for delayed performance interest on the goods price stipulated in the *Repurchase Guarantee Agreement* is 0.1%/day, i.e. 36.5% if converted into an annual interest rate. The nature of the delayed performance interest is the same as the nature of liquidated damages. In accordance with relevant laws, the delayed performance interest is a kind of punitive measure of compensation nature, which should be claimed to the extent of actual loss of the non-breaching party. In this case, Jincheng Factoring failed to present evidence to prove its actual loss, and, even if there is actual loss, it shall be calculated to the extent of the fund occupation fee during the period when the goods price was occupied. The amount claimed by Jincheng Factoring is far beyond its actual loss reported, which shall be invalid, so LETV Mobile applied to the court to lower it. III. In accordance with the provisions of *Factoring Service Fee Agreement* and the principle of contract relativity, the period consulting service fee, which constitutes a part of the factoring service fee of RMB 1,175,981.49 as claimed by Jincheng Factoring, should be claimed by Xinjiang Knight Alliance Equity Investment Co., Ltd ("**Xinjiang Knight**") against LETV Mobile, and Jincheng Factoring has no right to request LETV Mobile to perform its obligations under the *Financial Consulting Agreement*. 4. The term of the *Factoring Service Fee Agreement* is 2 years, from December 1, 2016 to November 30, 2018. LETV Mobile only needs to pay the factoring service fee to Jincheng Factoring within the term of the agreement, and after the term expires, the agreement will become invalid. Therefore, there is no contractual basis and legal basis for Jincheng Factoring to request LETV Mobile to pay the factoring service fee for the period until the date of full payment of the principal of the goods price. V. 0.7%/day (i.e. 25.55% if converted into an annual interest rate), the rate for delayed performance interest on factoring service fee claimed by Jincheng Factoring, is

obviously too high. Jincheng Factoring failed to present evidences to prove that it actually incurred losses due to LETV Mobile's failure to pay the factoring service fee on schedule, and, even if there is actual loss, it shall be calculated to the extent of the fund occupation fee during the period when the factoring service fee was occupied. The amount claimed by Jincheng Factoring is far beyond its actual loss reported, which shall be invalid, so LETV Mobile applied to the court to lower it. VI. There is no factual and legal basis for Jincheng Factoring to request LETV Mobile to bear the expense incurred by it in realizing the creditor's rights, the litigation cost and preservation cost in this case. Jincheng Factoring failed to submit evidence within the period of proof to prove that it actually incurred expense in realizing the creditor's rights. In addition, bearing these expenses will increase the burden of LETV Mobile, which violates the basic legal principles of justice and fairness. Thus, the claim should be rejected.

The Defendant LETV Holdings argued that it did not agree with the claims of Jincheng Factoring, but it agreed with the defense opinion of the Defendant LETV Mobile. In addition, the conditions for LETV Holdings to undertake the guarantee liability have not been fulfilled, so Jincheng Factoring has no right to request LETV Holdings to undertake the guarantee liability. To be specific, the period for LETV Holdings to undertake guarantee liability shall be 2 years from the due date of the principal creditor's rights. When Jincheng Factoring filed the lawsuit, LETV Mobile had normally performed its obligations for paying the goods price and the factoring service fee payable in accordance with relevant agreement, and the principal creditor's rights was not due or overdue. Even if it is assumed that there was a circumstance under which LETV Holdings shall assume the guarantee liability, Jincheng Factoring failed to issue a written *Repurchase Notice* to LETV Holdings as agreed. Thus, the conditions for LETV Holdings to undertake the guarantee liability have not been fulfilled. Even if it is assumed that LETV Holdings shall undertake the guarantee liability to Jincheng Factoring, the amount that Jincheng Factoring claimed based on the daily interest rate of 0.1% is too high, and

far beyond its actual loss, which shall be invalid and be lowered.

The Defendant Jia Yueting argued that he did not agree with the claims of Jincheng Factoring, but he agreed with the defense opinion of LETV Mobile as well as the defense opinion of LETV Holdings that the conditions for the guarantor to undertake the guarantee liability have not been fulfilled. In the opinion of Jia Yueting, the conditions for him to undertake the guarantee liability have not been fulfilled as well. In addition, Jia Yueting's joint and several guarantee liability for the debts of LETV Mobile as alleged by Jincheng Factoring is actually excessive guarantee and repeated guarantee, which makes the limited liability of a company unlimited and goes againt the original intention of the establishment of the limited liability company system. To this end, Jia Yueting's guarantee liability should be null and void even if it is established. Such kind of situation that an individual bear joint and several guarantee liability for an enterprise is not in line with the opinion of He Xiaorong, presiding judge of the second courtroom of civil tribunal of the Supreme People's Court, in *Let Justice Provide Value Guidance for Finance to Back to Basis*. In order to maintain the cornerstone of the Company Law, the rule of justice and equality of civil juristic acts, as well as the social stability, due care shall be taken to the situation that an individual undertakes unlimited joint and several guarantee liability for a company's debts o invalidate the improper and repeated guarantee liability of an individual.

To spport its claims, Jincheng Factoring submitted the following evidences in accordance with law: 1. *Factoring Contract*; 2. *Purchase Framework Agreement* (Contract No.: L[EZN-MIQT-2015-631]) and its *Supplementary Agreement*, and the *Supplementary Agreement (Contract No.: 1155196)*; 3. *Factoring Service Fee Agreement* and its appendix "*List of Account Receivable Creditor's Rights Transferred*"; 4. *Repurchase Guarantee Agreement*; 5. voucher for transfer of factoring financing fund; 6. voucher for receipt of deposit; 7. voucher for Jincheng Factoring's receipt of principal of goods price; 8. voucher of receipt of factoring service fee. All of LETV Mobile, LETV Holdings and Jia Yueting have no objection to the authenticity, legality and relevance of the said evidences.

To support its defense opnions, LETV Mobile, LETV Holdings and Jia Yueting submitted the following evidences in accordance with law: 1. *Notice on Arrangement of Creditor's Rights Custody* (copy) (No.: XYJK-2G16004-03-TZ_2); 2. voucher for payment of deposit; 3. vouchers for payment of factoring service fee during the period from January 2017 to June 2017. The cross examination opinions of Jincheng Factoring are as follows: it did not recognize the authenticity of evidence 1, on the ground that the notice is a copy rather than an original; Jincheng Factoring once entrusted the creditor's rights to Shanghai Lancai for custody, but it is not a transfer of creditor's rights; it recognized the authenticity of evidence 2; it did not recognize the authenticity of evidence 3, on the gound that they are all electronic vouchers rather than original, and the payment of factoring service fee shall be subject to the evidence submitted by Jincheng Factoring.

For the evidences that the parties have no dispute, the court affirmed them and put them on file; for the evidences and facts in dispute between the parties, the court determined based on the comprehensive consideration of other evidences and the statements of the parties.

After hearing, the court ascertained that:

On December 1, 2016, LETV Mobile and BOE signed a *Purchase Framework Agreement*, which stipulates that LETV Mobile will purchase the products specified therein from BOE, and includes detailed provisions on price terms, estimated demand, order, raw material and component purchase and material responsibility, delivery, receipt and inspection. On the same day, both parties signed a *Supplementary Agreement*, which stipulates that both parties reached agreement on the accounts payable under the original agreement as follows: 1. BOE agrees to sign a *Factoring Contract* with Jincheng Factoring, who shall provide factoring service to BOE in accordance with the *Factoring Contract*. 2. LETV Mobile agrees to bear the corresponding factoring service fee in accordance with Article 6.2 of the *Factoring Contract*....... 4. In case of any of the following events during the performance of the *Factoring Contract*, LETV Mobile shall continue to bear the payment obligation for the corresponding part of the

accounts payable: (1) where Jincheng Factoring requires BOE to repurchase all or part of the accounts receivable under the *Factoring Contract* in accordance with Article 5 and Article 9 of the *Factoring Contract*. Besides, there are also other contents stipulated therein. In addition, the two parties signed a *Supplementary Agreement (Contract No.: 1155196)*, under which the payment dates of the business orders with respect to the accounts receivable concerned are adjusted and specified as follows: RMB 50,137,548.88 due on May 30, 2017, RMB 50,533,973.15 due on June 29, 2017, RMB 55,975,517.38 due on July 28, 2017, totalling RMB 156,647,039.41 RMB in total. It is also stipulated in the *Supplementary Agreement (Contract No.: 1155196)* other matters such as the payment account of accounts receivable.

On December 2, 2016, BOE (as Party A) and Jincheng Factoring (as Party B) signed the *Factoring Contract* (Contract No: SZJC-201611-BOELSYD-BLHT), which stipulates that: Whereas, Party A sells goods or provides services to the buyer on credit, and applies to Party B for domestic factoring business without recourse with respect to the account receivables it is entitled against the buyer under the transaction contract contemplated thereby; Party B is entrusted to provide financing service for Party A, and both parties enter into this Contract accordingly; Article 2 Term of factoring. The term of factoring hereunder shall be from December 2, 2016 to July 28, 2017, totaling 8 months; Article 4 Repurchase of accounts receivable. This Contract is a factoring contract without recourse. Therefore, in case the buyer (note: LETV Mobile) fails to make payment before or on the due date of the accounts receivable, Party B will not recourse to Party A for the factoring advance payment, but it reserves the right to recourse from the guarantor under the guarantee agreement. Except for under the circumstances specified in Article 5 or Article 9 (1) hereof, in case of any of the said circumstances, Party B shall have the right to decide, at its own discretion, to require Party A or the guarantor to perform the said obligations in accordance with the agreement; Article 5 Early repurchase of accounts receivable. In case of any of the following circumstances, Party A shall early repurchase the accounts

receivable transferred to Party B, and Party B shall return the factoring service fee in proportion: 1. Before the due date of the accounts receivable, the buyer notifies Party B in any written form of the commercial disputes under the transaction contract, or Party B learns, either from Party A or through any other means, that there is dispute under the transaction contract. 2. Party A or the buyer has commercial fraud under the transaction contract. 3. There is any related transaction under the transaction contract between Party A and the buyer, or there is any circumstance that the accounts receivable should be subject to credit-debt offset, allowance, refund or otherwise that cause the impairment of the accounts receivable; Article 6 Factoring financing fund and factoring service fees. 1. Both parties agree that the total amount of the accounts receivable transferred hereunder is RMB 156,647,039.40, which shall be paid by Party B to Party A before December 7, 2016. 2. Both parties agree that the annual rate for calculating the factoring service fee hereunder shall be 13%. LETV Mobile shall separately enter into an *Agreement on Service Fee under the Commercial Factoring Business Contract* with Party B and pay the said factoring service fee; Article 9 Termination of contract.1. In case of any of the following circumstances of Party A, Party B shall have the right to unilaterally terminate the *Factoring Contract* and require Party A to early repurchase the accounts receivable, and the factoring service fees already collected by it will not be returned: (1) any of the circumstances for early repurchase stipulated in Article 5 hereof occurs; (2) Party A misappropriates the factoring financing fund for other usage rather than the agreed usage; (3) Party A is involved or may be involved in major property litigation, which may affect the repurchase of the accounts receivable; (4) Party A encounters major change in its financial situation in the course of its operation, which may affect the repurchase of the accounts receivable; (5) Party A encounters corporate change, merger, division, seizure of property or other circumstances in the course of Party A's business operation, which may affect the repurchase of the accounts receivable. In addition to that, there are also other contents stipulated therein.

On December 1, 2016, LETV Mobile (as Party A) and Jincheng

Factoring (as Party B) signed the *Factoring Service Fee Agreement*, which stipulates that: BOE, as the upstream service company of Party A, applied to Party B for commercial factoring business due to the needs of operation and management, with a total amount of accounts receivable of RMB 156, 647, 039.40. Party B accepted the application of BOE, and entered into a *Factoring Contract* (the "**Master Contract**") with, BOE; Article 2 With respect to the factoring service fee incurred during the performance of the Master Contract, both parties agree as follows: 2.1.1 The annual rate of the factoring service fee under the Master Contract shall be 13%, and the factoring service fee shall accrue on a daily basis (the daily interest rate = annual interest rate / 365). 2.1.2 The factoring service fee shall be calculated based on the following formula: The total amount of accounts receivable * the actual number of days from the date when Party B issues factoring financing fund to BOE to the last date when LETV Mobile occupies the factoring financing fund * daily rate. If the balance of the loan principal changes during the period of occupation of the factoring financing fund, it shall be calculated by different periods and on an accumulative basis. 2.1.3 The factoring service fee is divided into three parts: period factoring interest, period factoring service fee and period consulting service fee. (1) Period factoring interest: to be calculated on a daily basis at the annual rate of 7.5%. Party A shall pay it to the account designated by Party B on the 15th day of each calendar month. Such designated account is the account opened by Beijing Lancai Information Technology Co., Ltd ("**Beijing Lancai**") in Shanghai Huarui Bank Co., Ltd, with the account number of 8000 0023 2765. (2) Period factoring service fee: to be calculated on a daily basis at the annual rate of 0.5%. Party A shall pay it to the account designated by Party B on the 15th day of each calendar month. Such designated account is the account opened by Jincheng Factoring in Beijing Deshengmen Branch of Ping An Bank, with the account number of 11016598341008. (3) Total amount of period consulting service fee = factoring service fee - period factoring interest - period factoring service fee. Party A shall pay it on the 15th day of each calendar month. Xinjiang Knight will, as the financial consultant of the project, separately enter into a *Financial Consulting Agreement* with Party A and collect the said

consulting service fee (note: the account designated by both parties for collection/payment is not specified in the agreement); Article 5 Liability for breach. 5.1 If either party fails to perform this Agreement or fails to fully perform this Agreement in time, it shall be deemed as a breach of contract. 5.2 If Party A delays the payment of or fails to pay the factoring service fee in violation of this Agreement, it shall pay liquidated damages at a rate of 0.07% of the amount in arrears per day; Article 10 Other provisions. This Agreement is signed by the representatives of both parties on December 1, 2016, and shall be valid for 2 years from the date of signing by both parties, provided that it can be renewed upon the agreement of both parties. The number, amount and maturity of accounts receivable stipulated in the appendix *"List of Account Receivable Creditor's Rights Transferred"* to the aforesaid agreement is consistent with that stipulated in the *Supplementary Agreement (Contract No.: 1155196) to the Purchase Framework Agreement.*

To ensure LETV Mobile repays the advance payment of Jincheng Factoring in accordance with the *Factoring Contract*, Jincheng Factoring (as Party A), LETV Holdings (as Party B 1), Jia Yueting (as Party B 2) and LETV Mobile (as Party C) jointly signed the *Repurchase Guarantee Agreement*, which stipulates that: Party B (including Party B 1 and Party B 2) agrees and undertakes to bear the irrevocable joint and several liability guarantee to Party A in the form of repurchase; Subject to Party B's provision of the joint and several guarantee to Party C, Party A shall fulfil its factoring obligation to advance the price (factoring financing fund) that Party C shall pay to the supplier (BOE) in accordance with the *Factoring Contract*; All parties agree on the following: I. Definitions of terms. 3. Repurchase Price: refers to the balance of the factoring financing fund actually paid by Party A in accordance with the *Factoring Contract* less the amount already repaid by Party C at the time of repurchase (i.e. the principal part) and the overdue interest corresponding to the principal part. 4. Goods Price Deposit: refers to deposit of goods price paid by Party C to Party A before the loan extension under the factoring service to ensure that Party C repay the goods price in full and in time. Goods Price Deposit =

amount of factoring financing fund * 10%. II. Guarantee method, period and scope. 1. Guarantee method. The guarantee provided by Party B is a joint and several liability guarantee. If Party C fails to perform or fails to fully perform its obligations to pay the goods price and factoring service fee, Party A shall have the right to directly require Party B to undertake the guarantee liability. 2. Guarantee period. (1) The period for Party C to perform its obligation to pay goods price is 12 months, and the specific starting date is subject to that agreed in the *Factoring Contract*. (2) The guarantee period shall be two years, starting from the date when the principal creditor's rights are paid off. 3. The guarantee scope of Party B is the loss caused to Party A by Party C's failure to perform its obligations under the *Factoring Contract*, including: (1) Party C fails to pay the account payable, interest, default interest, insurance premium, deposit, compensation and other expenses payable by Party C on time and in full in accordance with the *Factoring Contract*; (2) the ownership or value of the goods is damaged; (3) as agreed by the parties, the guarantee amount is the insured balance of the factoring projects specified herein totaling RMB 156,647,039.40; (4) all reasonable expenses paid by Party A to realize the said rights and interests, including but not limited to reasonable attorney's fees, litigation fees, travel expenses, etc. III. Repurchase method. 1. When the repurchase conditions are satisfied, Party A shall issue a *Repurchase Notice* to Party B, who shall pay the Repurchase Price to Party A in a lump sum within ten days from the date of the notice. 2. Repurchase conditions: The repurchase conditions shall be deemed as being satisfied if any cause for termination of the contract as stipulated in the *Factoring Contract* occurs, including: Party C delays in paying the goods price to the supplier, which causes Party A's creditor's rights to not be recovered in time when due, and Party C still fails to perform or fully perform its payment obligations for 15 days after paying penalty interest to Party A in accordance with the agreement; Party C fails to make up the deposit in time; Party C may be declared bankrupt, dissolved or liquidated in accordance with law. Whether repurchase condition is satisfied has nothing to do with the condition of the goods hereunder (including but not limited to loss, damage, etc.); IV. Deposit. In case of overdue payment of goods price by

Party C, Party A shall have the right to use Party C's deposit to advance the goods price and notify Party C to make up the deposit. If Party C fails to make up the deposit before the 10th day of the next calendar month from the date of Party C's overdue payment, Party B shall make up for Party C's deposit instead. If Party B fails to make up the deposit in time within 3 working days after receiving the written notice from Party A, Party A shall have the right to require Party B to fulfill its repurchase commitment and guarantee obligation immediately. Party A shall return the corresponding deposit within three working days from the date when Party C fulfils its obligation to pay the accounts payable hereunder, or within three working days from the date when Party B fulfils its obligation to pay the Repurchase Price. V. Rights and obligations of the parties. 1. Party A undertakes to extent the loan within 5 working days before and after the date of loan extension as agreed in the *Factoring Contract* with the supplier. If Party A fails to extent the loan in time, Party A shall pay Party C penalty interest calculated based on the loan interest rate of the same period issued by the People's Bank of China. If the time of loan extension as agreed between Party A and the supplier under the *Factoring Contract* is affected due to Party C's failure to pay the guarantee money on time and affects, the time of loan extension shall be postponed accordingly without incurring any penalty interest. 2. When the conditions agreed herein are satisfied, Party A shall issue the *Repurchase Notice* to Party B in a timely manner........5. Where Party C delays in payment to the supplier, which causes the factoring creditor's rights between Party A and the supplier to not be recovered in time when due, Party A shall have the right to require Party C to pay penalty interest (at a daily rate of 0.1%) on the part of delayed payment, and Party C shall continue to fulfil the payment obligation or Party B shall fulfil the repurchase obligation in accordance with this Agreement.......VII. Liability for breach. Party B shall pay Party A 0.1% of the Repurchase Price as liquidated damages per day if it fails to fulfil the repurchase obligation, the guarantee obligation or breaches other obligations as agreed herein. In case any economic loss caused to Party A and the amount of liquidated damages is insufficient to make up for the loss, Party B shall compensate Party A for the actual economic loss, including

creditor's rights, interest, liquidated damages, compensation and the reasonable expenses for realizing the creditor's rights (including but not limited to the expenses for notarization, evaluation, appraisal, auction, litigation or arbitration, service, property preservation, enforcement, attorney's fee and travel expense)

After the said agreement was signied, LETV Mobile paid a deposit of RMB 15,664,703.94 to Jincheng Factoring on December 14, 2016.

On December 16, 2016, Jincheng Factoring paid the factoring financing fund of RMB 156,647,039.40 to BOE.

On January 16, 2017, February 15, 2017, March 14, 2017, April 14, 2017, and May 17, 2017, LETV Mobile respectively paid the corresponding period factoring interests to the account of Beijing Lancai designated by Jincheng Factoring, and paid the corresponding period factoring service fees to the account designated by Jincheng Factoring, and paid the corresponding period consulting service fees to Xinjiang Knight.

On June 1, 2017, BOE paid the principal of goods price of RMB 50,137,548.88 to Jincheng Factoring in five installments. By then, all accounts receivable of Jincheng Factoring due on May 30, 2017 have been recovered. On the same day, LETV Mobile respectively paid the period factoring interest of RMB 164,835.78 to the said account of Beijing Lancai, paid the period factoring service fee of RMB 10,989.06 to the account designated by Jincheng Factoring, and paid the period consulting service fee of RMB 109,890.52 to Xinjiang Knight. Such amount is the factoring service fee for the goods price due on May 30, 2017 for the period from May 15, 2017 to May 31, 2017. Since then, LETV Mobile has not paid the factoring service fee to the relevant accounts.

On June 27, 2017, Jincheng Factoring filed a lawsuit to the court, which sent the statement of claim to LETV Holdings and Jia Yueting on July 7, 2017.

After June 1, 2017, BOE has not paid the remaining goods price to Jincheng Factoring, neither have LETV Mobile, LETV Holdings and Jia Yueting made any further payment.

The said facts are supported by the *Purchase Framework Agreement* and its *Supplementary Agreement*, the *Supplementary Agreement (Contract No.: 1155196)*, the *Factoring Contract*, the *Factoring Service Fee Agreement*, the *Repurchase Guarantee Agreement*, the payment voucher, receipts and the statements of the parties, etc.

The court believes that the *Factoring Contract*, the *Purchase Framework Agreement* and its *Supplementary Agreement*, the *Factoring Service Fee Agreement* and the *Repurchase Guarantee Agreement* signed by the parties are the expression of true intention of all parties, and the contents thereof do not conflict with the mandatory provisions of laws and administrative regulations, thus they shall be legal and effective, and the parties thereto shall perform their respective obligations thereunder. Since Jincheng Factoring signed the *Factoring Contract* with BOE, and thus acquired the account receivables creditor's right of BOE againt LETV Mobile under the *Purchase Framework Agreement* and its *Supplementary Agreement*, it has the right to directly claim the creditor's rights from LETV Mobile when LETV Mobile fails to make the payment as agreed.

Now, based on the opinions of all parties, the focuses of the dispute in this case are as follows. I. On whether Jincheng Factoring has transferred the creditor's rights concerned to Shanghai Lancai, i.e. whether Jincheng Factoring has the right to file the case; II. On whether LETV Mobile breaches the *Purchase Framework Agreement* and the determination of the time of breach; III. On the calculation of goods price payable and its delayed performance interest; IV. On whether Jincheng Factoring has the right to claim the period consulting fee in the factoring service fee, the factoring service fee beyond the term of contract, and the calculation of liquidated damages for factoring service fee; V. On whether the joint and several guarantee liability of Jia Yueting is effective, and the conditions for LETV Holdings and Jia Yueting to bear the joint and several guarantee liability are satisfied; VI. On the calculation of liquidated damages of LETV Holdings and Jia Yueting for delayed performance of guarantee liability.

1. On whether Jincheng Factoring has transferred the creditor's rights

concerned to Shanghai Lancai, i.e. whether Jincheng Factoring has the right to file the case.

LETV Mobile, LETV Holdings and Jia Yueting said in their defense opinions that Jincheng Factoring has transferred the creditor's right of accounts receivable concerned to Shanghai Lancai, so it has no right to make any claim as a creditor. To support their opinions, LETV Mobile, LETV Holdings and Jia Yueting submitted the *Notice on Arrangement of Creditor's Rights Custody* (Copy) to the court as evidences. However, Jincheng Factoring did not recognize it, and held that the *Notice on Arrangement of Creditor's Rights Custody* is not the original and thus its authenticity cannot be confirmed. Jincheng Factoring have entrusted the creditor's rights concerned but not transferred them. The court holds the opinions as follows. Firstly, the parties shall bear the burden of proof for their claims; otherwise, they shall bear the consequences of failure to prove. Now that LETV Mobile, LETV Holdings and Jia Yueting claimed that Jincheng Factoring has transferred the creditor's rights concerned, but they failed to provide the original of the *Notice on Arrangement of Creditor's Rights Custody*, and the Jincheng Factoring did not recognize the claims, the court cannot confirm the authenticity of the transfer of the creditor's rights concerned. Secondly, the time shown on the *Notice on Arrangement of Creditor's Rights Custody* is 2016. However, as for the actual performance of the agreement by the parties in 2017, LETV Mobile still remitted the first installment of goods price due in June 2017 into the BOE's account designated by Jincheng Factoring and BOE as agreed, and BOE then directly remitted the amount into the account of Jincheng Factoring through that account. LETV Mobile also recognized in the defense opinions that the said payment was made by it to Jincheng Factoring. It can be seen that LETV Mobile did not regard Shanghai Lancai as the obligee of the creditor's right concerned in the actual performance. To sum up, the court does not recognize the authenticity of the *Notice on Arrangement of Creditor's Rights Custody* and does not accept the defense opinions of LETV Mobile, LETV Holdings and Jia Yueting, and helds that Jincheng Factoring has the right to file this case in accordance with relevant

contract.

II. On whether LETV Mobile breaches the *Purchase Framework Agreement* and the determination of the time of breach.

Since Jincheng Factoring signed the *Factoring Contract*, it acquired the account receivables creditor's right of BOE against LETV Mobile under the *Purchase Framework Agreement*. Therefore, violation of the agreement of the *Purchase Framework Agreement* by LETV Mobile is the precondition for Jincheng Factoring to claim for payment from LETV Mobile and the basis for Jincheng Factoring to claim for calculation of delayed performance interest. However, there is a dispute over when LETV Mobile violates the agreement.

Jincheng Factoring claimed that LETV Mobile shall pay the delayed performance interest of the remaining goods price from June 16, 2017, i.e., it believed that LETV Mobile violated the agreement on June 15, 2017. Grounds: LETV Mobile violated the *Factoring Service Fee Agreement* on June 15, 2017 by not paying the factoring service fee on schedule. 2, LETV Mobile, LETV Holdings and Jia Yueting were subject to well-known major property lawsuits and major financial changes, which affected the creditor's right of Jincheng Factoring. This is in accordance with the provisions of Article 4 of the *Factoring Contract* on early repurchase. Jincheng Factoring thereby has the right to require LETV Holdings and Jia Yueting to perform their obligations as guarantors. As the principal debtor, LETV Mobile shall also be restricted by the *Factoring Contract*. 3. LETV Mobile, LETV

Holdings and Jia Yueting were subject to well-known major property lawsuits and major financial changes. They showed by their behaviors that they were not performing their contractual obligations. This is in accordance with the provisions of Article 108 of the *Contract Law*. Jincheng Factoring may require the three parties to bear the liability for breach of contract before expiration of the performance period. 4. After Jincheng Factoring brought this case, LETV Mobile, LETV Holdings and Jia Yueting all did not perform the obligation of repayment. LETV Mobile, LETV Holdings and Jia Yueting did not endorse the claims of Jincheng Factoring, and argued that when Jincheng Factoring brought this case, LETV Mobile has made the first payment on schedule, the date of payment of remaining goods price has not yet expired, and the Master Contract is being performed normally. Even if that the date of payment of remaining goods price has expired now, the delayed performance interest on the remaining goods price shall be calculated in periods based on the payment date from the day after the due date, i.e., LETV Mobile breached the *Purchase Framework Agreement* upon expiration of payment date of corresponding goods price.

The court believes that the claim of Jincheng Factoring that LETV Mobile breached of the *Purchase Framework Agreement* on June 15, 2017 has no contractual or legal basis, but during the proceedings, the payment date of the goods price has expired, and LETV Mobile failed to pay on schedule as agreed. Therefore, the part of the claim of Jincheng Factoring

for payment of goods price from LETV Mobile that complies with contractual and legal provisions shall be supported on the following grounds:

Firstly, the *Purchase Framework Agreement* was being performed normally on June 15, 2017 without any breach. In accordance with the agreement signed by the parties, the goods price shall be due in three installments on May 30, 2017, June 29, 2017 and July 28, 2017 respectively. On June 1, 2017, LETV Mobile has performed the obligation to pay the goods price due on May 30, 2017, the remaining goods price was not due on June 15, 2017, and the master agreement *Purchase Framework Agreement* was being performed normally. The *Purchase Framework Agreement* and the *Factoring Service Fee Agreement* are two independent contracts. Even if LETV Mobile failed to pay corresponding factoring service fee on June 15, 2017, which breached the *Factoring Service Fee Agreement*, according to the relativity principle of contract, Jincheng Factoring only has the right to require LETV Mobile to pay corresponding factoring service fee in such case, and does not have the right to require it to pay the goods price not due under the *Purchase Framework Agreement* in advance.

Secondly, the claim of Jincheng Factoring is not in accordance with the provisions of Article 4 of the *Factoring Contract* on early repurchase of accounts receivable. First, Jincheng Factoring did not submit any evidence to prove that LETV Mobile, LETV Holdings and Jia Yueting

were subject to major financial lawsuits and major financial changes. Second, even if it is well-known and is not required to be proved, the claim of Jincheng Factoring that the above circumstances are in accordance with the provisions of the *Factoring Contract* on early repurchase is also not tenable. The *Factoring Contract* was signed by BOE and Jincheng Factoring, rights and obligations were also set for the two parties, and Paragraph 2, Article 4 of the *Factoring Contract* is about provisions on early repurchase of accounts receivable. In accordance with the full text of the contract, the meaning of Paragraph 2 of Article 4 shall be that: in any circumstance specified in Article 5 or of early repurchase in Paragraph (1) of Article 9, Party B (Jincheng Factoring) shall have the right to decide to perform the obligation of payment to Party A (BOE) or require the guarantors (LETV Holdings and Jia Yueting) to perform the obligation of payment as agreed. Article 5 of the *Factoring Contract* is about provisions on circumstances of early repurchase of accounts receivable, and states that "In the following circumstances, Party A shall early repurchase the accounts receivable transferred to Party B, and Party B shall return the factoring service fee in proportion: 1. before the due date of the accounts receivable, the Buyer (LETV Mobile) notifies Party B of any commercial dispute under the transaction contract in any written form or Party B is informed of any dispute arising from the transaction contract through Party A or any other means." Article 9 is about provisions on termination of contract. Paragraph (1) states that "If Party A is in any one

of the following circumstances, Party B shall have the right to terminate the *Factoring Contract* unilaterally, and require Party A to early repurchase the accounts receivable, with factoring service fee already collected not to be returned. (1) Conditions for early repurchase as agreed in Article 5 hereof appear; (2) Party A use the factoring financing fund for other purposes in violation of the agreed use of the factoring financing fund; (3) Party A is or may be subject to major financial lawsuit, which may affect the repurchase of accounts receivable; (4) in the course of business operation, Party A is subject to major financial changes, which may affect the repurchase of accounts receivable; (5) in the course of business operation, Party A is subject to enterprise change, merger, division, reorganization and property seizure, which may affect the repurchase of accounts receivable. It can be seen that "Party A" as mentioned above refers to BOE rather than LETV Mobile, LETV Holdings or Jia Yueting, and the circumstances as described in Article 5 and Article 9 are circumstances occur in BOE. Therefore, even if LETV Mobile, LETV Holdings and Jia Yueting were subject to major financial lawsuits and major financial changes, if Jincheng Factoring did not submit any evidence to prove that BOE has been or may be subject to major financial lawsuits, or there is any dispute arising from the transaction contract, it does not conform to the conditions of the *Factoring Contract* on early repurchase, and the repurchase subject shall not be required to bear the liability of repurchase. That is, according to the claim of Jincheng

-22-

Factoring, it does not have the right to require LETV Holdings and Jia Yueting to serve as the guarantors according to Article 4 of the *Factoring Contract* to make the payment in advance, and shall not further require LETV Mobile to be restricted thereby. In addition, the claim of Jincheng Factoring that LETV Mobile, LETV Holdings and Jia Yueting were subject to major property lawsuits and major financial changes and they showed by their behaviors that they were not performing their contractual obligations also has no corresponding factual and legal basis.

In conclusion, LETV Mobile did not breach the *Purchase Framework Agreement* on June 15, 2017, so Jincheng Factoring does not have the right to require it to pay the remaining goods price at that time.

However, in view of that after Jincheng Factoring brought this case on June 27, 2017, up to now, the goods price has been due, but LETV Mobile, LETV Holdings and Jia Yueting failed to perform the obligation of payment as agreed on the due date of remaining goods price, which has actually constituted a breach of contract, the claim of Jincheng Factoring to require LETV Mobile to pay the remaining goods price has factual and contractual basis, and is supported by the court. However, it shall be made clear that the time of breach of the *Purchase Framework Agreement* by LETV Mobile, i.e., the time when Jincheng Factoring has the right to claim for the remaining goods price from LETV Mobile, shall be the time of expiration of the payment date of corresponding goods price. Since the remaining goods price shall be due in two installments on June 29, 2019

and July 28, 2017 respectively, the corresponding time of breach of LETV Mobile shall be calculated separately.

III. On the calculation of goods price payable and its delayed performance interest

(I) On the amount of payment due.

Jincheng Factoring claimed that the amount of payment due shall be RMB 106,509,490.52, i.e., the total amount of payment due minus the amount of payment made. LETV Mobile, LETV Holdings and Jia Yueting endorsed that the payment not made is RMB 106,509,490.52, but claimed that the payment deposit RMB 15,664,709.94 already paid by LETV Mobile to Jincheng Factoring and the default interest for late payment of the factoring financing fund by Jincheng Factoring for 2 days shall be deducted from the payment due.

For whether the deposit shall be deducted, first, LETV Mobile claimed that the amount of deposit already paid is RMB 15,664,709.94, but according to the deposit payment voucher provided by LETV Mobile and the receipt voucher provided by Jincheng Factoring, the amount of deposit actually paid by LETV Mobile is RMB 15,664,703.94, so the court confirms that the amount of deposit already paid by LETV Mobile is RMB 15,664,703.94. Second, Jincheng Factoring acknowledged receipt of the deposit but disagreed on deduction, and believed that according to the contract, the deposit shall be returned after LETV Mobile, LETV Holdings and Jia Yueting fully perform corresponding contractual obligations. The

court believes that, according to the agreement of both parties in the *Repurchase Guarantee Agreement*, "If LETV Mobile delays in payment of the goods price, Jincheng Factoring shall have the right to use the deposit of LETV Mobile to pay the overdue goods price in advance, and notify LETV Mobile of making up the deposit. Within three working days from the date on which LETV Mobile completes the obligation of making the payment due under the agreement, or within three working days from the date on which LETV Holdings and Jia Yueting complete the obligation of paying the repurchase amount, Jincheng Factoring shall return corresponding deposit". It can be seen that two circumstances were agreed by both parties on disposal of the deposit. The first is to use the deposit to pay the overdue goods price in advance when LETV Mobile breaches the contract by delaying in payment of the goods price. The second is to return the deposit after completing the obligation of payment when LETV Mobile performs the agreement as scheduled. Jincheng Factoring brought this case because LETV Mobile delays in payment of the goods price. In accordance with the contract, the deposit shall first be used to pay the overdue goods price in advance. Jincheng Factoring brought this case and asked to order LETV Mobile to pay the remaining goods price, i.e., making a settlement between the two parties, but there are no other debtor-creditor relationships between the two parties, so the opinion of LETV Mobile, LETV Holdings and Jia Yueting that the deposit already paid shall be deduced from the payment due is in accordance with the

contract and supported by the court. The claim of Jincheng Factoring that it disagrees on deduction is not approved by the court. In accordance with the contract, the deposit shall be used to deduct the principal of the goods price delayed in payment. Since the principal of the remaining goods price shall be due in two installments, the deposit shall first be used to deduct the goods price first due. That is, after deduction, the amount of payment due on June 29, 2017 and July 28, 2017 shall be RMB 34,869,269.2 and RMB 55,975,517.38 respectively, i.e., the total amount of remaining goods price not paid shall be RMB 90,844,786.58. Therefore, the claim of Jincheng Factoring in excess of the above amount of payment not made is not supported by the court.

For whether the default interest for late payment of the factoring financing fund by Jincheng Factoring for 2 days shall be deducted, since LETV Mobile, LETV Holdings and Jia Yueting all filed no counterclaim in this case to require Jincheng Factoring to pay corresponding default interest, the court does not accept the opinion that corresponding default interest shall be deducted from the payment due. LETV Mobile, LETV Holdings and Jia Yueting may file a separate lawsuit if they think they have the right to claim.

(II) On the calculation of delayed performance interest.

There are mainly two disputes between the parties over the calculation of the delayed performance interest: the first is the time to calculate and the second is the calculation standard.

The dispute over the time to calculate the delayed performance interest is actually the dispute over the time of breach of the *Purchase Framework Agreement* by LETV Mobile. As previously mentioned, the claim of Jincheng Factoring that the delayed performance interest of the payment due shall be calculated from June 16, 2017 has no factual and legal basis, and is not approved by the court. LETV Mobile, LETV Holdings and Jia Yueting thought that the delayed performance interest shall be calculated in periods from the day after the due date based on the payment date, which is in accordance with the contract and approved by the court. That is, the delayed performance interest of the goods price due on June 29, 2017 shall be calculated from June 30, 2017, and the delayed performance interest of the goods price due on July 28, 2017 shall be calculated from July 29, 2017. Therefore, the claim of Jincheng Factoring in excess of the part is not supported by the court.

As for the calculation standard of the delayed performance interest, Jincheng Factoring claimed that the delayed performance interest shall be calculated at the rate of one thousandths per day according to Paragraph 5, Article 5 of the *Repurchase Guarantee Agreement*. LTEV Mobile, LETV Holdings and Jia Yueting all thought that the interest is two high and shall be limited to the actual loss of Jincheng Factoring, and requested the court to adjust. The court believes that, according to the *Contract Law*, the parties may agree that, when one party breaches the contract, it shall pay a certain amount of liquidated damages to the other party according to the

circumstances of the breach, and may also agree on the method for calculating the amount of compensation for losses incurred as a result of the breach. Where the liquidated damages agreed upon are less than the losses caused, the parties may request the people's court or an arbitration institution for an increase; where the liquidated damages agreed upon are excessively higher than the losses caused, the parties may request the people's court or an arbitration institution for an appropriate reduction. In this case, in view of that the delayed performance interest is the remedy for default damage, the delay in payment of the goods price by LETV Mobile caused capital occupation loss to Jincheng Factoring, and the annual interest rate after conversion according to the calculation standard of the delayed performance interest claimed by Jincheng Factoring is 36.5%, which is excessively high, the basis for LETV Mobile to request the court to adjust is sufficient, and after weighing on the basis of the principles of fairness and good faith, the court reduced the annual interest rate according to the calculation standard of the delayed performance interest appropriately to 24%. The claim of Jincheng Factoring in excess of the part is not supported by the court.

IV. On whether Jincheng Factoring has the right to claim the period consulting fee in the factoring service fee, the factoring service fee beyond the term of contract, and the calculation of liquidated damages for factoring service fee

(I) On whether Jincheng Factoring has the right to claim the period

consulting fee in the factoring service fee.

LETV Mobile, LETV Holdings and Jia Yueting said in the defense opinion that, according to the *Factoring Service Fee Agreement*, the period consulting fee in the factoring service fee is subject to the *Financial Consulting Agreement* separately signed by and collected by Xinjiang Knight and LETV Mobile. Therefore, according to the relativity principle of contract, the factoring service fee shall be claimed by Xinjiang Knight, and Jincheng Factoring shall not have the right to require LETV Mobile to perform the obligations under the *Financial Consulting Agreement*. Jincheng Factoring acknowledged that the period consulting fee during previous normal performance shall be collected by Xinjiang Knight, but believed that LETV Mobile did not submit the *Financial Consulting Agreement*, so according to the *Financial Consulting Agreement*, Jincheng Factoring shall claim the fee from it. The court believes that, first, Jincheng Factoring is the subject providing the factoring service and the right subject collecting the factoring service fee. In accordance with the agreement, the factoring service shall be provided by Jincheng Factoring by paying the factoring financing fund, and there are no other subjects providing the service. The *Factoring Service Fee Agreement* is also signed by LETV Mobile and Jincheng Factoring, so for the obligation of LETV Mobile to pay the factoring service fee including the period consulting fee, the corresponding right subject is only Jincheng Factoring. Second, according to the *Factoring Service Fee Agreement*, the payment of the period

consulting fee to Xinjiang Knight is one of the ways to pay the factoring service fee, which is the way for LETV Mobile to perform the *Factoring Service Fee Agreement*. The right of Xinjiang Knight to collect the fee is from Jincheng Factoring, and it does not have the right to directly claim the fee from LETV Mobile. Third, as a party to the agreement, LETV Mobile did not submit the *Financial Consulting Agreement* signed with Xinjiang Knight, so it is not possible to ascertain whether there are other agreements between the parties. In such case, the claim of Jincheng Factoring to claim the period consulting fee from LETV Mobile is in accordance with the contract and supported by the court. The opinion of LETV Mobile, LETV Holdings and Jia Yueting that Jincheng Factoring shall not have the right to require the period consulting fee is not approved by the court.

(II) On whether Jincheng Factoring has the right to claim the factoring service fee beyond the term of contract.

LETV Mobile, LETV Holdings and Jia Yueting said in the defense opinion that, the *Factoring Service Fee Agreement* shall be valid for 2 years and become invalid upon expiration of the term, so the part in excess of the term of the contract in the claim of Jincheng Factoring that LETV Mobile shall pay the factoring service fee until the principal of the goods price is paid off shall be rejected. Jincheng Factoring thought that, according to the provisions of the *Factoring Service Fee Agreement* on calculation method of factoring service fee, the factoring service fee shall be calculated based on the days of actual occupation of the factoring financing fund by LETV

Mobile, so LETV Mobile actually occupies the factoring financing fund before it pays off the goods price and shall pay the factoring service fee. For this, the court believes that the basis for Jincheng Factoring to claim the factoring service fee from LETV Mobile is the *Factoring Service Fee Agreement*, the precondition of which shall be that the agreement is valid. Paragraph 2, Article 10 of the *Factoring Service Fee Agreement* clearly specifies the term of the agreement, i.e., "This Agreement is signed by the representatives of both parties on December 10, 2016, valid within 2 years from the date of signing, and may be renewed with the consent of both parties upon expiration of the term". If both parties do not renew the agreement after the term, the *Factoring Service Fee Agreement* shall become invalid, and Jincheng Factoring shall not have the right to claim corresponding factoring service fee from LETV Mobile according to the agreement. Therefore, the claim of Jincheng Factoring that LETV Mobile shall pay the factoring service fee until the principal of the goods price is paid off is supported by the court if the date on which the principal of the goods price is paid off is before December 30, 2018; if the date on which the principal of the goods price is paid off is after December 30, 2018, for subsequent factoring service fee, the claim is not supported by the court.

(III) On the calculation standard of liquidated damages for the factoring service fee.

Jincheng Factoring claimed that, according to Paragraph 5.2, Article 5 of the *Factoring Service Fee Agreement*, the liquidated damages for

overdue payment of the factoring service fee shall be paid as per seven ten-thousandths per day of the amount of factoring service fee in arrears. LETV Mobile, LETV Holdings and Jia Yueting all thought that the interest is excessively high, violates the provisions of the *Contract Law of the People's Republic of China* and relevant laws and regulations and shall be calculated by limiting to the actual loss of Jincheng Factoring, and requested the court to adjust. The court believes that, in view of that the liquidated damages for the factoring service fee are the remedy for default damage, the delay in payment of the factoring service fee by LETV Mobile caused capital occupation loss to Jincheng Factoring, and the annual interest rate after conversion according to the calculation standard of the liquidated damages claimed by Jincheng Factoring is 25.55%, which is excessively high, the basis for LETV Mobile to request the court to adjust is sufficient, and after weighing on the basis of the principles of fairness and good faith, the court reduced the annual interest rate according to the calculation standard of liquidated damages for the factoring service fee appropriately to 24%. The claim of Jincheng Factoring in excess of the part is not supported by the court.

V. On whether the joint and several guarantee liability of Jia Yueting is effective, and the conditions for LETV Holdings and Jia Yueting to bear the joint and several guarantee liability are satisfied

For whether the joint and several liability guarantee of Jia Yueting is valid, Jia Yueting said in the defense opinion that Jincheng Factoring

required Jia Yueting to provide joint and several liability guarantee for the debt of LETV Mobile, which belongs to excessive and repeated guarantee. This move makes limited liability unlimited and deviates from the original intention of the establishment of the limited liability company system. The liability guarantee of Jia Yueting, even if established, shall be null and void. The court believes that the signing of the *Repurchase Guarantee Agreement* is the true expression of Jia Yueting, and the contents of the *Repurchase Guarantee Agreement* do not violate the mandatory provisions of laws and regulations and are lawful and valid. Therefore, the claim of Jincheng Factoring of Jia Yueting shall provide joint and several liability guarantee for the debt of LETV Mobile according to the *Repurchase Guarantee Agreement* is in accordance with the contract and the law and shall be supported. The opinion of Jia Yueting does not have factual and legal basis and is not approved by the court.

For whether the conditions for LETV Holdings and Jia Yueting to bear the joint and several guarantee liability are satisfied, LETV Holdings and Jia Yueting claimed that, when Jincheng Factoring filed the lawsuit, the Purchase Framework Agreement was being performed normally, and the principal creditor's right was not due or overdue; Jincheng Factoring did not send the written *Repurchase Notice* to LETV Holdings and Jia Yueting according to the *Repurchase Guarantee Agreement*, so the conditions for liability guarantee of LETV Holdings and Jia Yueting are not satisfied, and the claim of Jincheng Factoring shall not be supported. Jincheng Factoring

thought that the *Repurchase Guarantee Agreement* stipulates two legal relationships of repurchase and guarantee. If LETV Mobile fails to pay the goods price and the factoring service fee on schedule, Jincheng Factoring shall have the right to require LETV Holdings and Jia Yueting to provide joint and several liability guarantee. The legal effect of notice can be achieved by filing a lawsuit. Therefore, the conditions for joint and several liability guarantee of LETV Holdings and Jia Yueting are satisfied. The court believes that, from the perspective of the *Repurchase Guarantee Agreement*, it contains two legal relationships of guarantee and repurchase. Article 2 of the agreement is about provisions on guarantee method, period and scope. Paragraph 1 states that "The guarantee provided by Party B (LETV Holdings and Jia Yueting) is joint and several liability guarantee. If Party C (LETV Mobile) fails to pay or fully pay the goods price and factoring service fee payable, Party A (Jincheng Factoring) shall have the right to directly require Party B to be liable for guarantee".   Article 3 is about provisions on repurchase method. Paragraph 1 states that "When the repurchase conditions are satisfied, Party A shall send the *Repurchase Notice* to Party B. Party B shall fully pay the repurchase price to Party A within ten days from the date on which the *Repurchase Notice* is sent". It can be seen that the sending of the *Repurchase Notice* is the precondition to require LETV Holdings and Jia Yueting to be liable for repurchase, but it is not necessary to issue the *Repurchase Notice* to require them to be liable for repurchase. Since it is not agreed in the agreement that other forms of

requirements shall be provided, LETV Holdings and Jia Yueting shall be liable for guarantee as long as Jincheng Factoring claims rights to LETV Holdings and Jia Yueting if the agreed conditions for liability guarantee arise. Based on the facts found out, LETV Mobile failed to pay the factoring service fee of the period on June 15, 2017 and failed to pay the goods price due on June 29, 2017, which is in accordance with Paragraph 1, Article 2 of the *Repurchase Guarantee Agreement* on liability guarantee. Therefore, Jincheng Factoring shall have the right to directly require LETV Holdings and Jia Yueting to be liable for guarantee after June 29, 2017. In this case, Jincheng Factoring did not provide any evidence that it claimed to LETV Holdings and Jia Yueting to be liable for guarantee before filing the lawsuit, but it filed the lawsuit in its sole discretion, so it shall be deemed that Jincheng Factoring clearly claimed rights to LETV Holdings and Jia Yueting on July 7, 2017, the date on which LETV Holdings and Jia Yueting received the pleadings of this case. Therefore, the conditions for liability guarantee of LETV Holdings and Jia Yueting were satisfied on July 7, 2017. The court does not approve the opinion of LETV Holdings and Jia Yueting that the conditions for liability guarantee are not satisfied. In accordance with the *Repurchase Guarantee Agreement* on guarantee scope, the claim of Jincheng Factoring that LETV Holdings and Jia Yueting shall be jointly and severally liable for settlement of the debt of LETV Mobile has the factual and legal basis and is supported by the court.

VI. On the calculation of liquidated damages of LETV Holdings and

Jia Yueting for delayed performance of guarantee liability

For the calculation of liquidated damages for failure of LETV Holdings and Jia Yueting to provide liability guarantee within the time limit, there are disputes over the time to calculate, calculation base and calculation standard.

First, for the time to calculate, Jincheng Factoring thought that LETV Mobile breached the contract on June 15, 2017 and LETV Holdings and Jia Yueting shall be liable for guarantee, and claimed that LETV Holdings and Jia Yueting shall pay the liquidated damages for failure to provide liability guarantee within the time limit from June 16, 2017. However, as previously mentioned, according to the determination of the court, the conditions for liability guarantee of LETV Holdings and Jia Yueting actually were satisfied on July 7, 2017, so the liquidated damages for failure of the two to provide liability guarantee within the time limit shall be calculated from July 8, 2017.

Second, for the calculation base, Jincheng Factoring claimed to calculate the liquidated damages for failure of LETV Holdings and Jia Yueting to provide liability guarantee within the time limit with RMB 106,509,490.52 as the base, which was actually the remaining goods price payable. LETV Holdings and Jia Yueting did not raise any objection. However, as previously mentioned, they thought that the deposit already paid and the default interest shall be deducted from the amount of payment due. The court believes that, according to Article 7 of the *Repurchase*

*Guarantee Agreement*, "If Party B (LETV Holdings and Jia Yueting) fails to be liable for repurchase and guarantee as agreed or violates other obligations as agreed herein, it shall pay liquidated damages equivalent to 0.1% of the repurchase price to Party A per day". Paragraph 3 of Article 1 states that "The repurchase price means the amount after deducting the balance (principal) already repaid by Party C (LETV Mobile) at the time of repurchase and corresponding overdue interest on the principal from the factoring financing fund actually paid by Party A (Jincheng Factoring) according to the *Factoring Contract*". The court has no objection against the claim of Jincheng Factoring that the liquidated damages for failure to provide liability guarantee within the time limit shall be calculated with the remaining goods price payable as the base. However, according to the determination of the court, the deposit already paid by LETV Mobile shall be deducted from the amount of payment due, so corresponding deduction shall be made to the calculation base of liquidated damages for failure to provide liability guarantee within the time limit. The goods price payable shall be due in two installments, so the liability guarantee to be provided by LETV Holdings and Jia Yueting shall also be calculated separately based on the due date of the goods price. Accordingly, the calculation base of the liquidated damages for failure of LETV Holdings and Jia Yueting to provide liability guarantee within the time limit shall also be calculated separately based on the due date of the goods price. That is, from July 8, 2017 to July 29, 2017, the amount after deducting the deposit from the

-37-

goods price due on June 29, 2017 shall be the calculation base; from July 30, 2017 to the date on which the debt of LETV Mobile is fully paid off, the amount after deducting the deposit from the goods price due on June 29, 2017 and the goods price due on July 28, 2017 shall be the calculation base.

Third, for the calculation standard, Jincheng Factoring claimed that, according to Article 7 of the *Repurchase Guarantee Agreement*, the liquidated damages for failure to provide liability guarantee within the time limit shall be paid as per one thousandths per day. LETV Mobile, LETV Holdings and Jia Yueting all thought that the interest is excessively high, violates the provisions of the *Contract Law of the People's Republic of China* and relevant laws and regulations and shall be calculated by limiting to the actual loss of Jincheng Factoring, and requested the court to adjust. The court believes that, in view of that the liquidated damages for failure to provide liability guarantee within the time limit are the remedy for default damage, the failure of LETV Holdings and Jia Yueting to provide liability guarantee within the time limit caused capital occupation loss to Jincheng Factoring, and the annual interest rate after conversion according to the calculation standard of the liquidated damages claimed by Jincheng Factoring is 36.5%, which is excessively high, the basis for LETV Holdings and Jia Yueting to request the court to reduce is sufficient, and after weighing on the basis of the principles of fairness and good faith, the court reduced the annual interest rate according to the calculation standard of liquidated damages for failure of LETV Holdings and Jia Yueting to

provide liability guarantee within the time limit appropriately to 24%. The claim of Jincheng Factoring in excess of the part is not supported by the court.

In conclusion, the part of the claim of Jincheng Factoring that LETV Holdings and Jia Yueting shall pay the liquidated damages for failure to provide liability guarantee from June 16, 2017 to the date on which the debt of LETV Mobile is paid off that meets the above conditions is supported by the court; the part in excess is not supported by the court.

In addition, the claim of Jincheng Factoring that LETV Mobile shall bear the cost incurred to realize the creditor's right and LETV Holdings and Jia Yueting shall be jointly and severally liable for settlement does not have the factual basis since Jincheng Factoring did not provide any evidence to prove the cost paid by it to realize the creditor's right, and thus is not supported by the court.

To sum up, the court believes that the claims of the Plaintiff Jincheng Factoring are partially established and supported by the court. In accordance with Article 8, Article 60, Article 107 and Article 114 of the *Contract Law of the People's Republic of China*, the judgment is as follows:

I. The Defendant LETV Mobile shall pay the goods price of RMB 90,844,786.58 and corresponding delayed performance interest (the delayed performance interest on goods price due on June 29, 2017 shall be calculated at the annual interest rate of 24% with RMB 34,869,269.2 as the

base from June 30, 2017 to the date of full payment; the delayed performance interest on goods price due on July 28, 2017 shall be calculated at the annual interest rate of 24% with RMB 55,975,517.38 as the base from July 29, 2017 to the date of full payment) to the Plaintiff Jincheng Commercial within seven days after this judgment takes effect;

II. The Defendant LETV Mobile shall pay the factoring service fee (to be calculated at the daily interest rate of 13%/365 based on the actual days of occupation with RMB 106,509,490.52 as the base from May 16, 2017 to June 28, 2017; to be calculated at the daily interest rate of 13%/365 based on the actual days of occupation with RMB 90,844,786.58 as the base from June 29, 2017 to the date on which the principal of the goods price in item 1 of this judgment is fully paid off, as of November 30, 2018) to the Plaintiff Jincheng Commercial within seven days after this judgment takes effect.

III. The Defendant LETV Mobile shall pay the liquidated damages for overdue payment of the factoring service fee [to be calculated at the annual interest rate of 24% from June 2017 with the factoring service fee of the period (the factoring service fee payable from the 16th day of the previous month to the 15th day of the current month) as the base every month from the 16th day of the current month to the date on which the factoring service fee of the period is paid off] to the Plaintiff Jincheng Commercial within seven days after this judgment takes effect.

IV. The Defendant LETV Holdings and the Defendant Jia Yueting

shall be jointly and severally liable for settlement of the debt of LETV Mobile determined in items 1, 2 and 3 above; after assuming the joint and severally liability of settlement, the Defendant LETV Holdings and the Defendant Jia Yueting shall have the right to recover from the Defendant LETV Mobile

V. The Defendant LETV Holdings and the Defendant Jia Yueting shall pay the liquidated damages for failure to provide liability guarantee within the time limit (to be calculated at the annual interest rate of 24% with RMB 34,869,269.2 as the base from July 8, 2017 to July 29, 2017; to be calculated at the annual interest rate of 24% with RMB 90,844,786.58 as the base from July 30, 2017 to the date on which the debt of the Defendant LETV Mobile determined in items 1, 2 and 3 above is paid off) to the Plaintiff Jincheng Commercial within seven days after this judgment takes effect.

VI. Other claims of the Plaintiff Jincheng Commercial are hereby rejected.

If the obligation of payment is not performed within the period specified in this judgment, the debt interest for the delayed period shall be doubled in accordance with Article 253 of the *Civil Procedure Law of the People's Republic of China.*

The court acceptance fee RMB 589,473 and the property preservation fee RMB 5,000 shall be jointly borne by the Defendant LETV Mobile, the Defendant LETV Holdings. and the Defendant Jia Yueting (the payment

shall be made within seven days after this judgment takes effect).

Any party dissatisfied with this judgment may, within fifteen days from the date of service of this judgment, file an appeal petition to the court and submit copies and file an appeal to Beijing Higher People's Court based on the number of the counterparties or its representatives.


Presiding Judge    Song Yi

Judge        Lu Nan

Judge        Zhang Yu'na


August 15, 2018

Identified consistent with the original

Document No.: 170704-105056-78-75-083231

Judge Assistant    Dong Pei

Clerk        Diao Yuxin


-42-



专业的法律翻译综合服务商                                                            *Tel:010-5654 2019*
*Website:www.lanhaifanyi.com*

## 翻译证明

## CERTIFICATE

敬启者：

To Whom It May Concern,

　　兹证明我公司北京蓝海译通翻译服务有限公司，以下简称"我公司"，为下列文件的翻译提供者，并以此函证明中文原文与英文翻译件内容表达一致。

　　This is to certify that we, Beijing Lan Hai Translation Service Co., Ltd., is the provider of the documents listed below, and certify with this CERTIFICATE that the Chinese original is truly and accurately expressed by its corresponding English translation.

文件列表：

List of documents:

1. 《借款及优先认购权之框架协议-5.2 亿-2016.7.16.》

   《framework Agreement for Loan and Preemptive Right-520 million-2016.7.16》

2. 《还款通知书》

   《Notice of Repayment》

3. 《乐视移动借款合同-2 亿-2015.6》

   《Loan Contract of LETV Mobile-200 million-2015.6》

4. 《三中院判决（2017）京 03 民初 248 号》

   《Civil Judgment of the Third Intermediate People's Court of Beijing(2017) Jing 03 Min Chu No. 248》

5. 《回购担保协议 》

   《Repurchase Guarantee Agreement》

6. 《商业保理业务合同》

   《Commercial Factoring Business Contract》



专业的法律翻译综合服务商
Website: www.lanhaifanyi.com
*Tel: 010-5654 2019*

7.    《商业保理业务合同服务费协议》

《Agreement on Service Fee under the Commercial Factoring Business Contract》

8.    《补充协议》

《Supplementary Agreement》

北京蓝海菜通翻译服务有限公司
Beijing Lan Hai Translation Service Co., Ltd.
2020 年 1 月 23 日
January 23, 2020





**RECEIVED**

JAN 24 2020

**LEGAL SERVICES**

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

Filed: USBC - Central District of California
Yueting Jia  (B10)
19-24804 (VPZ)

**YT1**

0000000056

**RECEIVED**

JAN 2 4 2020

**LEGAL SERVICES**

| Fill in this information to identify the case: |
|---|
| Debtor 1 <u>Yueting Jia</u> |
| Debtor 2 (Spouse, if filing) |
| United States Bankruptcy Court for the: Central District of California |
| Case number <u>2:19-bk-24804-VZ</u> |

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Shenzhen Jincheng Commercial Factoring Co., Ltd.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jie Feng
Name
12 Floors, Block AB, Wantong Center, No.6 Chaowai St.,
Chaoyang District
Number          Street
Beijing                                  1000005
City                      State              ZIP Code

Contact phone  +86 15801607199

Contact email  fengjie0201@126.com

Where should payments to the creditor be sent? (if different)

Name

Number          Street

City              State        ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**    $_____36,211,540.60__. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Personal Guarantee

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured:    $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   <u>01/21/2020</u>
                   MM / DD / YYYY

**JIE FENG**
_____
Signature

Print the name of the person who is completing and signing this claim:

| | | |
|---|---|---|
| Name | Jie | Feng |
| | First name | Middle name | Last name |
| Title | Project Manager | |
| Company | TWC Group Co., Ltd | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | 12 Floors, Block AB, Wantong Center, No.6 Chaowai St., Chaoyang District | |
| | Number          Street | |
| | Beijing | |
| | City | State    ZIP Code |
| Contact phone | +86 15801607199 | Email   fengjie0201@126.com |

# Exhibit 1 – Itemized List of Claim Amount

The items included in Shenzhen Jincheng Commercial Factoring Co., Ltd. 's claim of $ 36,211,540.60 are as follow:

$ 13,161,138.50 Principal,

$ 23,050,402.10 Interest.

# Exhibit 2 –商业保理业务合同（无追索型）

# 商业保理业务合同

## （无追索型）





合同编号：　SZJC-201611-BOELSYD-BLHT

签 署 地：　北京

签署日期：　2016 年 12 月 2 日

1

甲　　　　方：京东方现代（北京）显示技术有限公司

住　所　地：北京市朝阳区酒仙桥路 10 号

法定代表人：刘晓东

联　系　方　式：+86-10-58411555

授权代理人：刘晓东


乙　　　　方：深圳谨诚商业保理有限公司

住　所　地：深圳市前海深港合作区前湾一路 1 号 A 栋 201

法定代表人：郭震

联　系　方　式：　010-84084778 / 13426157320

授权代理人：　胡魁涛


鉴于：

　　甲方采用赊销方式向买方销售货物或提供服务，并以由此形成的交易合同项下对买方的应收账款向乙方申请办理无追索权的国内保理业务，乙方为甲方提供融资服务。

　　为明确双方权利义务，恪守信用，根据《中华人民共和国合同法》及有关法律、法规，甲乙双方本着互惠互利的原则，在平等自愿的基础上，签署本合同，以便双方共同遵守执行。

**第一条　定义条款**

　　在本合同项下条款及所涉文件中，除非双方另有约定，下列用语将具有如下含义：

2

1. 无追索权保理：是指乙方作为保理商，在甲方将交易合同项下应收账款转让给乙方的基础上，向甲方提供的综合性金融服务；无追索权是指，在乙方为买方核定的信用风险额度内，对于经乙方核准的应收账款，在该等核准应收账款因买方信用风险不能回收时，乙方承担责任，如乙方就已受核准的单笔应收账款已向甲方支付保理预付款，乙方对该等保理预付款不向甲方追索，但保留根据担保协议向保证方追索的权利。

2. 买方：指交易合同中购买甲方货物、接受甲方提供服务或与甲方进行其他交易并负有支付价款义务的一方当事人。

3. 交易合同：是指产生应收账款的、由甲方与买方签订的货物销售协议、服务协议或其他乙方认可的交易协议。

4. 应收账款：指因甲方采用赊销方式销售货物、提供服务或进行其他乙方认可的交易而产生的甲方对买方和（或）第三方的合法、有效债权以及其他权利和利益，包括但不限于应收账款本金、利息、违约金、损害赔偿金，以及担保权利、保险权益等所有主债权的从债权以及与主债权相关的其他权益。但不包括甲方与买方在本合同签订时已经主张抵消或折让的部分。

5. 保理融资款：指乙方根据甲方申请，对甲方转让的应收账款的价值进行审查评估后，依据本合同约定按照一定比例向甲方支付的款项。

6. 应收账款到期日：是指应收账款所对应的交易合同的所确定的买方付款日期或甲方与买方单独约定的付款日期。

## 第二条　保理期限

本合同保理期限自 <u>2016</u> 年 <u>12</u> 月 <u>2</u> 日起至 <u>2017</u> 年 <u>7</u> 月 <u>28</u> 日止，共计 <u>8</u> 个月。

## 第三条　应收账款回款账户

☐ 支付到甲乙双方约定的账户：

户　　名：<u>京东方现代（北京）显示技术有限公司</u>

账　　号：██████████████

开户行：<u>平安银行股份有限公司北京亚奥支行</u>

不论回款账户为甲方开立的账户或甲乙双方共同约定账户，甲乙双方明确如下：

1. 甲方同意在应收账款转让给乙方后，接受乙方委托收取该应收账款，并以上述回款账户作为转让应收账款项下回款的唯一账户，并将应收账款到账当日支付给乙方。

2. 上述回款账户仅作为本合同项下应收账款的回款账户，该账户资金的转出须经乙方同意，甲乙双方需共同监管此账户。

3. 甲方承诺未经乙方同意不得撤销上述账户。未经乙方同意，甲方不得以任何方式处置该账户内资金，包括但不限于不得使用网银、不得办理对外结算等。

4. 甲方同意在甲方违约并经乙方书面指出违约行为后 10 个工作日内仍未纠正的情况下，乙方有权在上述回款账户中扣划按本合同约定应当由乙方收取的款项以及甲方应当承担的费用、损失、违约金等。

## 第四条　应收账款的回购

本合同为无追索权保理合同，应收账款到期日遇买方未按期支付账款，乙方同意由乙方承担担保付款的责任，乙方对该等保理预付款不向甲方追索，但同时保留根据担保协议向保证方追索的权利。

出现本合同第五条规定或者第九条（1）项提前回购情形的除外。在发生上述情形时，乙方有权选择决定向甲方或者依照协议要求保证方履行以上义务。

**第五条 应收账款提前回购的情形**

发生以下情形的，甲方应当对转让给乙方的应收账款进行提前回购，乙方应按比例退还保理服务费：

1. 应收账款到期日前，买方以任何书面形式就交易合同项下的商业纠纷通知乙方或者乙方通过甲方及其他任何途径得知交易合同发生纠纷的。

2. 甲方或买方在交易合同项下存在商业欺诈行为的。

3. 甲方与买方之间交易合同项下存在关联交易的或应收账款存在债权债务抵销、折让、退回等使应收账款减损的情形的。

**第六条 保理融资款及保理服务费**

1. 双方约定，本合同项下转让的应收账款总额为人民币（大写）壹亿伍仟陆佰陆拾肆万柒仟零叁拾玖圆肆角整（小写：¥156,647,039.40元）（应收账款明细详见附件《应收账款转让清单》）。据此按一定比例进行保理融资，保理融资款总计人民币（大写）壹亿伍仟陆佰陆拾肆万柒仟零叁拾玖圆肆角整（小写：

¥156,647,039.40 元），乙方于 2016 年 12 月 7 日前支付给甲方。

甲方承诺将保理融资款用于 日常生产经营所需流动资金。

2.双方约定,本合同的保理服务费的计算标准为:年化利率13% 。

由乐视移动智能信息技术（北京）有限公司与乙方另行签署《商业保

理业务合同服务费协议》并支付上述保理服务费。

### 第七条　甲、乙双方的账户信息

甲方账户：京东方现代(北京)显示技术有限公司

账　　号：█████████

开 户 行：招商银行北京分行

乙方账户：深圳谨诚商业保理有限公司

账　　号：█████████

开 户 行：平安银行北京德胜门支行

### 第八条　担保方式

□乐视控股（北京）有限公司为本合同的履行提供担保,具体担

保内容双方另行约定,并作为本合同的从合同,对双方均具有法律约

束力。

### 第九条　合同终止条款

1. 甲方有下列情形之一的，乙方有权单方解除保理合同，并要

求甲方提前回购应收账款，已经收取的保理服务费用不予退还。

（1）本合同第五条约定的提前回购条件出现的；

6

（2）甲方违反保理融资款的约定使用用途，将保理融资挪作他用的；

（3）甲方出现或可能出现重大财产诉讼，可能影响应收账款回购的；

（4）甲方在经营过程中，财务状况发生重大变化，可能影响应收账款回购的；

（5）甲方在经营过程中，发生企业变更、合并、分立、重组、财产被查封等情形可能影响应收账款回购的；

2. 甲乙双方协商一致，可以书面终止本合同，乙方应将按比例退还保理服务费。

3. 法定解除合同条件出现时，甲乙双方可以终止本合同，乙方应将按比例退还保理服务费。

## 第十条 违约条款

1. 双方约定，因甲方违反本合同任一约定导致的费用损失（包括但不限于催收费用、诉讼费或仲裁费、保全费、公告费、执行费、乙方聘请律师的费用、差旅费及其它费用），应由甲方承担。

2. 双方约定，如有一方违反本合同约定或违反法律法规构成违约，除由违约方赔偿对方全部损失外，自违约日起，还应由违约方按照保理融资总额每日千分之五的违约金支付标准承担违约责任。

## 第十一条 争议解决方式

执行本合同发生争议，由双方协商解决；协商不成的，向乙方所在地有管辖权的人民法院提起诉讼。

### 第十二条 其它

本合同自甲、乙双方盖公章（或合同章）之日起生效，一式肆份，甲、乙双方各执贰份，具有同等法律效力。

（以下无正文）

甲方（盖章）： 

乙方（盖章）： 

法定代表人/授权

法定代表人/授权

代理人（签字）：

代理人（签字）： 

年 月 日

年 月 日

# Commercial Factoring Business Contract

(Non-recourse Type)

Contract No.: SZJC-2Q1611-ROELSYD-BLHT

Signed in: Beijing

Signed on: December 2, 2016

Party A: BOE Modern (Beijing) Display Technology Co., Ltd

Address: No.10 Jiuxianqiao Road, Chaoyang District, Beijing

Legal representative: Liu Xiaodong

Contact No.: 86-10-58411555

Authorized agent: Liu Xiaodong


Party B: Shenzhen Jincheng Commercial Factoring Co., Ltd

Address: Room 201, Building A, No. 1 Qianwan 1st Road, Qianhai Shenzhen-Hong Kong Cooperation Zone, Shenzhen

Legal representative: Guo Zhen

Contact: 010-84084778 / 13426157320

Authorized agent: Hu Kuitao


Whereas:

Party A sells goods or provides services to the Buyer on credit, and applies to Party B for domestic factoring business without recourse with respect to the account Accounts Receivable it is entitled against the Buyer under the Transaction Contract contemplated thereby; Party B is entrusted to provide financing service for Party A.

In order to clarify the rights and obligations of both Parties and abide by the credit, Party A and Party B, in accordance with the Contract Law of the People's Republic of China and relevant laws and regulations, and on the basis of equality and voluntariness in the principle of mutual benefit, enters into this Contract for mutual compliance with.

### Article 1 Definitions

Unless otherwise agreed by the Parties, the following terms used in the provisions hereof or documents contemplated hereunder shall have the meanings as follows.

1. Non-recourse Factoring: refers to the comprehensive financial service to be provided by Party B to Party A on the premises that Party A transfers the Accounts Receivable under the Transaction Contract to Party B as a factoring agent; "non-recourse" means that, within the credit risk limit approved by Party B for the Buyer, Party B shall bear the liability when the Accounts Receivable approved by Party B cannot be recovered due to the Buyer's credit risk, and, if Party B has paid the factoring advance to Party A for a single approved Accounts Receivable, Party B shall not recourse to Party A for such factoring advance, but shall reserve the right of recourse to the guarantor according to the guarantee agreement.

2. Buyer: refers to the Party who purchases Party A's goods, accepts Party A's services or conducts other transactions with Party A under the Transaction Contract and has the obligation to

pay the price thereof.

3. Transaction Contract: refers to the goods sales agreement, service agreement or other transaction agreement recognized by Party B signed by and between Party A and the Buyer that generates the Accounts Receivable.

4. Accounts Receivable: refers to the legal and effective creditor's rights and interests that Party A enjoys against the Buyer and/or the third party arising from Party A's sale of goods, provision of services or conduction of other transactions recognized by Party B on credit, including but not limited to the principal and interest of Accounts Receivable, liquidated damages and compensation for damages, as well as the subordinate creditor' rights such as security rights and insurance interests, and other rights and interests related to the principal creditor' rights, but excluding the part that Party A and the Buyer have claimed to offset or discount at the time of signing this Contract.

5. Factoring Financing Fund: refers to the amount paid by Party B to Party A in a certain proportion in accordance with this contract after Party B reviews and evaluates the value of the Accounts Receivable transferred by Party A based on the application of Party A.

6. Due Date of Accounts Receivable: refers to the Buyer's payment date determined in the Transaction Contract that the Accounts Receivable is related to, or the payment date separately agreed by Party A and the Buyer.

**Article 2 Term of factoring**

The term of factoring hereunder shall be from December 2, 2016 to July 28, 2017, totaling 8 months

**Article 3 Collection account of Accounts Receivable**

□ To be paid to the account agreed by both Parties:

Account Name: BOE Modern (Beijing) Display Technology Co., Ltd

Account No.: ▮▮▮▮▮▮▮▮▮▮

Opening Bank: Beijing Yaao Branch of Ping An Bank Co., Ltd

No matter the collection account is the account opened by Party A or the account agreed by both Parties, both Parties make it clear as follows:

1. Party A agrees to accept the entrustment of Party B to collect the Accounts Receivable after it is transferred to Party B, and shall use the said collection account as the only account to collect the Accounts Receivable transferred, and pay the Accounts Receivable to Party B on the day when they are received.

2. The said collection account shall only be used as the account to collect the Accounts Receivable hereunder, and the transfer-out of capital from that account shall be subject to the consent of Party B, and this account shall be jointly supervised by both Parties.

3. Party A undertakes not to cancel the said account, or dispose the funds in the account in any way (including but not limited to using online banking and handling external settlement) without the consent of Party B.

4. Party A agrees that if it breaches the contract and fails to rectify within 10 working days after Party B's written notice, Party B shall have the right to deduct from the said collection account the amount to be collected by Party B in accordance with this Contract and the expenses, losses, liquidated damages, etc. to be borne by Party A.

### Article 4 Repurchase of accounts receivable

This Contract is a factoring contract without recourse. Therefore, in case the Buyer (note: LETV Mobile) fails to make payment before or on the due date of the accounts receivable, Party B will not recourse to Party A for the factoring advance payment, but it reserves the right to recourse from the guarantor under the guarantee agreement.

Except for under the circumstances specified in Article 5 or Article 9 (1) hereof, in case of any of the said circumstances, Party B shall have the right to decide, at its own discretion, to require Party A or the guarantor to perform the said obligations in accordance with the agreement.

### Article 5 Early repurchase of accounts receivable

In case of any of the following circumstances, Party A shall early repurchase the Accounts Receivable transferred to Party B, and Party B shall return the factoring service fee in proportion:

1. Before the Due Date of Accounts Receivable, the Buyer notifies Party B in any written form of the commercial disputes under the Transaction Contract, or Party B learns, either from Party A or through any other means, that there is dispute under the Transaction Contract.

2. Party A or the Buyer has commercial fraud under the Transaction Contract.

3. There is any related transaction under the Transaction Contract between Party A and the Buyer, or there is any circumstance that the Accounts Receivable should be subject to credit-debt offset, allowance, refund or otherwise that cause the impairment of the Accounts Receivable.

### Article 6 Factoring financing fund and factoring service fee

1. Both Parties agree that the total amount of the Accounts Receivable transferred hereunder shall be RMB One Hundred and Fifty-six Million, Six Hundred and Forty-seven Thousand and Thirty-nine Yuan and Forty Fen (in figures: 156,647,039.40) (For details of Accounts Receivable, please refer to the appendix "List of Accounts Receivable Transferred"). Thereafter, factoring financing will be carried out in a certain proportion. The total amount of factoring financing shall be One Hundred and Fifty-six Million, Six Hundred and Forty-seven Thousand and Thirty-nine Yuan and Forty Fen (in figures: RMB 156,647,039.40 RMB), which shall be paid by Party B to Party A before December 7, 2016. Party A undertakes to use the factoring financing fund for the working capital required for daily production and operation.

2. Both Parties agree that the factoring service fee hereunder shall be calculated at an annual rate of 13%. LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd shall separately enter into an Agreement on Service Fee under the Commercial Factoring Business Contract with Party B and pay the said factoring service fee.

### Article 7 Account information of both Parties

Account of Party A: BOE Modern (Beijing) Display Technology Co., Ltd

Account No.: ███████████

Opening Bank: Beijing Branch of China Merchants Bank

Account of Party B: Shenzhen Jincheng Commercial Factoring Co., Ltd

Account No.: ███████████

Opening Bank: Beijing Deshengmen Sub-branch of Ping An Bank

**Article 8 Way of guarantee**

LETV Holdings (Beijing) Co., Ltd provides guarantee for the performance of this Contract. The specific content of guarantee is to agreed by both Parties separately and shall constitute a subordinate contract hereof and have legal binding force on both Parties.

**Article 9 Termination of contract**

1. In case of any of the following circumstances of Party A, Party B shall have the right to unilaterally terminate the Factoring Contract and require Party A to early repurchase the Accounts Receivable, and the factoring service fees already collected by it will not be returned:

(1) any of the circumstances for early repurchase stipulated in Article 5 hereof occurs;

(2) Party A misappropriates the Factoring Financing Fund for other usage rather than the agreed usage;

(3) Party A is involved or may be involved in major property litigation, which may affect the repurchase of the Accounts Receivable;

(4) Party A encounters major change in its financial situation in the course of its operation, which may affect the repurchase of the Accounts Receivable;

(5) Party A encounters corporate change, merger, division, seizure of property or other circumstances in the course of Party A's business operation, which may affect the repurchase of the Accounts Receivable.

2. Party A and Party B may terminate this Contract in written form through consultation, in which case Party B shall refund the factoring service fee in proportion.

3. In case of any cause for legal termination of this Contract occurs, Party A and Party B may terminate the contract, in which case Party B shall refund the factoring service fee in proportion.

**Article 10 Breach of contract**

1. Both Parties agree that any and all cost or loss caused by Party A's breach of any provision hereof (including but not limited to the fee incurred for collection, litigation or arbitration, preservation, announcement, enforcement, the fees for Party B to hire a lawyer, travel expenses and other expenses) shall be borne by Party A.

2. Both Parties agree that if either Party breaches this Contract or relevant laws and regulations, such Party shall not only compensate the other Party for all losses incurred therefrom, but also pay liquidated damages at the rate of 5% of the total amount of factoring financing fund per day from

the date of breach.

### Article 11 Dispute settlement

Any dispute arising from the performance of this Contract shall be settled by both Parties through negotiation. If such negotiation fails, either Party may file a lawsuit with the people's court with jurisdiction in the place where Party B is located.

### Article 12 Miscellaneous

This Contract shall come into force as of the date when Party A and Party B affix their official seals (or contract seals). It is made in quadruplicate, with each Party holding two of them which shall have the same legal effect.

(Followed by Signatures)

Party A (Seal):                                           Party B (Seal):

Legal/Authorized Representative (Signature)        Legal/Authorized Representative (Signature)

Date:                                                     Date:

# Exhibit 3 –商业保理服务费-乐视-谨城

# 商业保理业务合同服务费协议

**甲　　方：乐视移动智能信息技术（北京）有限公司**
**统一社会信用代码：**
**法定代表人：贾跃民**

**乙　　方：深圳谨诚商业保理有限公司**
**统一社会信用代码：**
**法定代表人：郭震**



甲方上游服务公司<u>京东方现代（北京）显示技术有限公司</u>因经营管理的需要，向乙方申请了商业保理业务，应收账款总额为人民币（大写）<u>壹亿伍仟陆佰陆拾肆仟零叁拾玖圆肆角整（小写：¥156,647,039.40 元）</u>（应收账款明细详见附件《应收账款转让清单》）。乙方接受甲方上游服务公司的申请，并与甲方上游服务公司于【2016】年【　】月【　】日签署了编号为<u>【SZJC-201611-BOELSYD-BLHT】</u>的《商业保理业务合同》（以下简称"主合同"）。甲乙双方在平等互利和真诚合作的基础上，经友好协商，就有关事项达成如下协议：

**第一条** 甲方在本协议履行期间，将提供以下条件以配合乙方工作：

1.1 成立专门的小组或指定负责人，以配合乙方实施本项目；

1.2 及时、真实、准确、完整地向乙方提供工作所需的文件、资料及融资相关情况的陈述说明；

1.3 按本协议约定支付保理服务费用。

**第二条** 就主合同履行期间发生的保理服务费，甲乙双方同意如下支付方式：

2.1 保理服务费计算标准

2.1.1 主合同中的保理服务费的年化利率为13%,保理服务费按日计息，日利率 = 年化利率/365。

2.1.2 保理服务费的计算公式为：

保理服务费 =应收账款总额×乙方向<u>京东方现代（北京）显示技术有限公司</u>发放保理融资款起始日起至<u>乐视移动智能信息技术（北京）有限公司</u>占用该笔保理融资款金额的最后占用日之间的实际天数×日利率。

在保理融资款占用期限内，借款的本金余额发生变化的，应分段计算并累计相加。

2.1.3、保理服务费分为期间保理利息、期间保理服务费和期间咨询服务费三部分支付。

2.1.3.1：期间保理利息：年化利率为 7.5%，按日计息。

甲方应于每个自然月的 15 日支付至乙方指定账户；乙方在收到期间保理利息款项后向甲方出具利息收款证明；

乙方指定以下账户收取上述期间保理利息：

开户名称：    北京懒财信息科技有限公司

开户账号：    ███████████

开户行：    上海华瑞银行股份有限公司

2.1.3.2：期间保理服务费：年化利率为 0.5%，按日计息。

甲方应于每个自然月的 15 日支付至乙方指定账户；乙方在收到期间保理服务费款项后向甲方开具发票；

乙方指定以下账户收取上述期间保理服务费：

开户名称：    深圳谨诚商业保理有限公司

开户账号：    ███████████

开户行：    平安银行北京德胜门支行

2.1.3.3：期间咨询服务费总额=保理服务费-期间保理利息-期间保理服务费

甲方应于每个自然月的 15 日支付期间咨询服务费总额，由【新疆骑士联盟股权投资有限公司】作为本项目的财务顾问与甲方另行签署《财务顾问协议》并收取上述期间咨询服务费。2.2 甲方指定以下账户向乙方支付上述保理服务费：

名    称：

开 户 行：

账    号：


第四条 保密条款

4.1 双方同意，双方对本次合作、本协议的具体内容及在合作过程中知晓的对方其他任何商业机密均负有保密责任。未经对方书面同意，另一方不得披露给任何第三方，或者在任何媒

体上就上述问题发表任何言论。否则，守约方有权依法追究有关方的法律责任，并要求违约方赔偿守约方的所有损失。

4.2 根据我国相关法律、法规等规定，或因就本协议向会计师、律师等寻求咨询意见，及应国家有权机关要求予以披露的，不视为违反本保密条款。

4.3 本保密条款不因本协议的未生效、被解除、履行完毕、无效而失效，保密期限为永久。

### 第五条 违约责任

5.1 协议一方因不履行或不及时全面履行本协议，应视为违约；

5.2 甲方违反协议规定，逾期支付或者不支付保理服务费的，按拖欠金额的日万分之七标准支付违约金；



### 第六条：通知与签字

双方按本协议做出的任何通知、认可、同意、要求或其他事项应采用书面形式，并且按照本协议规定的地址或传真号码、电子邮件发出，则：

（1）如经专人交付的，应视作在交至相关一方的地址时已经送达；

（2）如经邮政送交的，应视作在付邮后第三个工作日已经送达；

（3）经传真或者电子邮件发送的，应视作在发出时已经送达。

甲方地址：【                    】

电子邮件地址：【                    】

乙方地址：【北京市朝阳区东直门国华投资大厦315室 】

电子邮件地址：【 lijie@bitian.cc 】



甲乙双方均必须保证其上述联系方式真实。如有变更，须于变更之日起三日内以书面形式通知对方，否则对方按上述方式作出的通知即视为已送达。

### 第七条 不可抗力

由于不可抗力导致协议无法继续履行，双方同意暂停或延期执行。不可抗力释义见中华人民共和国相关的法律解释。

### 第八条 争议解决

凡因履行本协议所发生的争议，甲、乙双方应友好协商解决，协商不能解决的，均应提交

北京仲裁委员会，按照申请仲裁时该会现行有效的仲裁规则进行仲裁。仲裁裁决是终局的，对双方均有约束力。

**第十条 其他条款**

本协议未尽事宜，由双方协商解决，或者遵照国家相关法律法规规定以及行业习惯履行。经双方协商一致，本协议内容可以书面形式进行变更、中止、提前解除。

本协议于 <u>2016</u> 年 <u>12</u> 月 <u>1</u> 日由甲乙双方代表签署。自双方签字之日起 2 年内有效，协议期满，经双方同意后可续约。

本协议一式贰份，双方各执壹份，具有同等法律效力。未尽事宜，由双方协商解决，并签订补充协议，补充协议具有同等法律效力。

（以下无正文）

【此页无正文，为甲乙双方《保理服务协议》之签署页】



甲方：乐视移动智能信息技术（北京）有限公司（盖章）

法定代表人或授权代表（签字或盖章）：＿＿＿＿＿＿



乙方： 深圳谨诚商业保理有限公司（盖章）

法定代表人或授权代表（签字或盖章）：＿＿＿＿＿＿

＿＿＿＿＿年＿＿＿＿月＿＿＿＿日



# Agreement on Service Fee under the Commercial Factoring

# Business Contract

**Party A: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd**

**Unified Social Credit Code:** <span style="background:black">          </span>

**Legal Representative: Jia Yuemin**


**Party B: Shenzhen Jincheng Commercial Factoring Co., Ltd**

**Unified Social Credit Code:** <span style="background:black">          </span>

**Legal Representative: Guo Zhen**


BOE Modern (Beijing) Display Technology Co., Ltd ("BOE"), an upstream service company of Party A, has applied to Party B for commercial factoring business due to the needs of operation and management, with a total amount of accounts receivable of RMB One Hundred and Fifty-six Million, Six Hundred and Forty-seven Thousand and Thirty-nine Yuan, Forty Fen (in figures RMB 156, 647, 039.40) (see the appendix "List of Accounts Receivable Transferred" for details). Party B accepted the application of BOE, and entered into a *Factoring Contract* (the "**Master Contract**") with BOE numbered [SZ.TC-201611-B0ELSYD-BLI1T] on [ ], 2016. Now therefore, on the basis of equality, mutual benefit and sincere cooperation and through friendly consultation, Party A and Party B have reached Agreement on relevant matters as follows:


**Article 1** During the performance of this Agreement, Party A shall create the following conditions to cooperate with Party B's work:

1.1 To set up a special group or designated person in charge to cooperate with Party B in the implementation of the project;

1.2 To timely, truthfully, accurately and completely provide Party B with the documents, materials and statements of financing-related information required for its work;

1.3 To pay the factoring service fee as agreed herein.


**Article 2** With respect to the factoring service fee incurred during the performance of the Master Contract, both Parties agree as follows:

2.1 Calculation of the factoring service fee

2.1.1 The annual rate of the factoring service fee under the Master Contract shall be 13%, and the factoring service fee shall accrue on a daily basis (the daily interest rate = annual interest rate / 365).

2.1.2 The factoring service fee shall be calculated based on the following formula:

The total amount of accounts receivable * the actual number of days from the date when Party B issues factoring financing fund to BOE to the last date when LETV Mobile occupies the factoring financing fund * daily rate.

If the balance of the loan principal changes during the period of occupation of the factoring financing fund, it shall be calculated by different periods and on an accumulative basis.

2.1.3 The factoring service fee is divided into three parts: period factoring interest, period factoring service fee and period consulting service fee.

2.1.3.1 Period factoring interest: to be calculated on a daily basis at the annual rate of 7.5%.

Party A shall pay it to the account designated by Party B on the 15th day of each calendar month, and Party B shall issue an interest collection certificate to Party A after receiving the period factoring interest.

Party B designates the following account to collect the period factoring interest:

Account Name:     Beijing Lancai Information Technology Co., Ltd

Account Number: ▮▮▮▮▮▮▮▮▮▮

Opening Bank:     Shanghai Huarui Bank Co., Ltd

2.1.3.2 Period factoring service fee: to be calculated on a daily basis at the annual rate of 0.5%.

Party A shall pay it to the account designated by Party B on the 15th day of each calendar month, and Party B shall issue an invoice to Party A after receiving the period factoring service fee.

Party B designates the following account to collect the period factoring service fee:

Account Name:     Shenzhen Jincheng Commercial Factoring Co., Ltd

Account Number: ▮▮▮▮▮▮▮▮▮▮

Opening Bank:     Beijing Deshengmen Branch of Ping An Bank

2.1.3.3 Total amount of period consulting service fee = factoring service fee - period factoring interest - period factoring service fee. Party A shall pay it on the 15th day of each calendar month. Xinjiang Knight Alliance Equity Investment Co., Ltd will, as the financial consultant of the project, separately enter into a Financial Consulting Agreement with Party A and collect the said consulting service fee.

2.2 Party A designates the following account to pay the said factoring service fee to Party B:

Account Name:

Opening Bank:

Account Number:

**Article 4 Confidentiality**

4.1 Each Party agrees that it shall keep confidential this cooperation, the contents of this Agreement and any other business secrets of the other Party it gets known in the process of cooperation, and will not disclose them to any third party or make any comments thereon in any media without prior written consent of the other Party. Otherwise, the non-breaching Party shall have the right to investigate the legal liability of the breaching Party in accordance with law and require the breaching Party to compensate all losses of the non-breaching Party.

4.2 Any disclosure of confidential information in accordance with relevant laws and regulations of China, or for the purpose of seeking advice from accountants, lawyers, etc. for this Agreement, and as required by the governmental authorities shall not be deemed as a violation of this confidentiality clause.

4.3 This confidentiality clause shall survive the invalidity, rescission and completion of this Agreement, and the confidentiality period shall be permanent.

**Article 5 liability for breach**

5.1 If either Party fails to perform this Agreement or fails to fully perform this Agreement in time, it shall be deemed as a breach of contract.

5.2 If Party A delays the payment of or fails to pay the factoring service fee in violation of this Agreement, it shall pay liquidated damages at a rate of 0.07% of the amount in arrears per day.

**Article 6: Notice and Signature**

Any notice, approval, consent, request or other matter to be given by the Parties hereunder shall be made in writing and delivered to the address or fax number or email specified herein, and:

(1) if delivered by person, it shall be deemed to have been served when it is delivered to the address of the relevant Party;

(2) if sent by post, it shall be deemed to have been served on the third working day after it is posted;

(3) if sent by fax or e-mail, it shall be deemed to have been delivered at the time of sending.

Address of Party A: []

Email address: []

Address of Party B: [Room 315, Guohua Investment Building, Dongzhimen, Chaoyang District, Beijing]

Email address: [1iie@bitian.cr]

Both Parties shall ensure that the above contact information is true. In case of any change, the other Party shall be notified in writing within three days from the date of change; otherwise, a notice send by the other Party to the said address shall be deemed to have been served.

**Article 7 Force majeure**

Both Parties agree to suspend or postpone the performance of the Agreement if this Agreement cannot be performed due to force majeure. Please refer to the relevant legal interpretation of China for the definition of force majeure.

**Article 8 Dispute settlement**

Any dispute arising from the performance of this Agreement shall be settled by both Parties through friendly negotiation. If such negotiation fails, either Party shall submit it to Beijing Arbitration Commission for arbitration in accordance with its current arbitration rules. The arbitration award shall be final and binding upon both Parties.

**Article 10 Miscellaneous**

Any matter unspecified herein shall be settled by both Parties through negotiation, or shall be subject to relevant laws and regulations of China and the industry habits. This Agreement may be changed, suspended or early terminated in writing through mutual agreement.

This Agreement is signed by the representatives of both Parties on December 1, 2016, and shall be valid for 2 years from the date of signing by both Parties, provided that it can be renewed upon the agreement of both parties

This Agreement is made in duplicate, with each Party holding one of them, which shall have the same legal effect. Any matter unspecified herein shall be settled by both Parties through consultation with a supplementary agreement signed, which shall have the same legal effect as this Agreement.

(Followed by Signature Pages)

[This is the signature page only]

Party A: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd. (Seal)

Legal or Authorized Representative (Signature or Seal):

Party B: Shenzhen Jincheng Commercial Factoring Co., Ltd

Legal or Authorized Representative (Signature or Seal):

Date

# Exhibit 4 –回购及担保-谨城-乐视-贾跃亭

# 回 购 担 保 协 议

合同签订地：北京

甲　方：深圳谨诚商业保理有限公司

乙方一：乐视控股（北京）有限公司

乙方二：贾跃亭

丙方：乐视移动智能信息技术（北京）有限公司

鉴于：

1、丙方与京东方现代（北京）显示技术有限公司（以下简称"供应商"）签订编号为 OA:739043 的《采购框架协议》（参见附件），支付相应价款给供应商；

2、为确保丙方按甲方与丙方供应商签订的编号为 SZJC-201611-BOELSYD-BLHT《商业保理业务合同》（以下简称"保理合同"）的约定偿还甲方垫付的货款，乙方（包括乙方一和乙方二，下同）同意并承诺以回购的形式向甲方承担不可撤销的连带责任担保；

3、在乙方为丙方提供连带担保的前提下，甲方提供保理义务，为丙方垫付其应向供应商依据《保理合同》支付的价款（保理融资款）；

根据《中华人民共和国合同法》和有关法律法规之规定，经协议





各方公平、自愿、平等协商，各方一致同意按以下条款签订本协议。

## 一、有关用词定义

1、回购：指当满足本协议约定的条件时，甲方向乙方发出《回购通知书》，乙方在收到甲方发出的回购通知之日起十日内无条件向甲方支付回购价款。

2、货物：《采购合同》项下的标的物，具体的名称、商标、规格、型号、质量、数量、技术标准、技术保证及检验标准和方法等信息全部由丙方提供并认可，甲方不对上述信息的真实性、完整性负责。

3、回购价款：为甲方按照《保理合同》约定实际支付的保理融资款扣除回购当时丙方已经偿还部分的剩余金额（本金部分）以及该本金部分对应的逾期利息。

4、货款保证金：为保证丙方按期足额偿还货款，保理业务放款前由丙方向甲方缴纳的货款保证金。货款保证金=保理融资款金额×【10】%。

5、供应商：指京东方现代(北京)显示技术有限公司。

## 二、担保方式、期间和范围

1、担保方式

（1）乙方提供的担保方式为连带责任担保，当丙方没有履行或者没有全部履行其应付货款及保理服务费等时，甲方有权直接要求乙方承担担保责任。

（2）如果有其他保证人对《保理合同》下的应付货款及保理服务费等提供担保的，担保人之间关系为连带共同担保。

（3）如果存在其它担保方式对《保理合同》下的应付货款及保理服务费等提供担保的，甲方要求乙方承担担保责任时，乙方必须履行担保义务，不得以存在其他担保方式为由对债权进行抗辩。

（4）如果全部或部分应付款项由丙方清偿以后，发生丙方破产被清算或者其它诉讼、仲裁事项，而根据法律规定或者依据有效判决、裁定书该全部或部分清偿无效，乙方仍应对该全部或部分应付款项承担担保义务。

2、担保期间

（1）丙方履行支付货款的债务期限为 12 个月，具体起始日期由《保理合同》确定。

（2）担保期间为两年，自主债权清偿届满之日起开始起算。

3、乙方担保的范围是丙方没有按照《保理合同》的约定履行义务，给甲方造成的损失，包括：

（1）丙方未按照《保理合同》的约定按时、足额支付应付款项、利息、罚息、保险费、保证金、赔偿金以及丙方应支付的其它费用；

（2）货物的所有权或价值遭到损害。

（3）担保额度根据各方约定为本协议所规定的保理项目的在保余额合计人民币（大写）壹亿伍仟陆佰陆拾肆万柒仟零叁拾玖圆肆角（小写：¥156,647,039.40）。

（4）甲方为实现以上权益而支出的全部合理费用，包括但不限

于合理的律师费、诉讼费、差旅费等。

### 三、回购方式

1、当回购条件成立时，甲方向乙方发出《回购通知书》。自《回购通知书》发出之日起的十日内由乙方向甲方一次性支付全部回购价款。

2、回购条件：

出现《保理合同》规定的合同解除事由之时，包括：丙方延迟向供应商支付价款，而使得甲方保理债权到期未能及时收回，丙方根据约定向甲方支付罚息后、逾期 15 日仍未履行或者未全部履行的；丙方不及时补足保证金的；丙方可能被依法宣告破产、解散、清算的。满足前述任一情形，回购条件即成立。回购条件的成立与协议所指货物状况如何无关（包括但不限于丢失、毁损等）。

3、当乙方履行完回购责任后，甲方应将货物相应权益转让(包括所有权)给乙方。双方明确同意：鉴于货物在丙方的实际占有控制下，而甲方又无法对货物实施有效监控，甲方不向乙方作实物交付，甲方仅以向乙方交付货物债权转让通知的形式向乙方交付货物。乙方负责办理本协议项下货物回购的全部手续并承担所有权变更产生的全部税费、手续费。

4、乙方自行将货物取回，因取回货物引起的运输费用由乙方承担。

### 四、保证金

当丙方发生逾期支付货款时，甲方有权动用丙方保证金垫付丙方逾期货款，并通知丙方补足保证金。自丙方逾期支付应付货款之日起的下一日历月的 10 日前，丙方仍未能补足不足额的保证金时，乙方应补足丙方保证金。乙方未能在接到甲方书面通知后 3 个工作日内及时补足保证金时，甲方有权要求乙方立即履行回购承诺及担保义务。

在丙方履行完成本协议项下应付款项支付义务之日起三个工作日内，或在乙方履行完成回购款项支付义务之日起三个工作日内，甲方应当退还相应的保证金。

## 五、各方的权利和义务

1、甲方承诺在与供应商的保理合同中约定放款日的前后 5 个工作日内放款；若甲方未及时放款，甲方应向丙方支付罚息，该罚息按【中国人民银行发布的同期贷款利率】计算。由于丙方未能按时缴纳保证金而影响甲方与供应商之间约定的保理合同放款时间的，甲方放款时间顺延且不承担罚息。

2、当满足本协议约定的条件时，甲方应及时向乙方发出《回购通知书》；

3、甲方收齐乙方的回购款项后 5 个工作日内向乙方交付货物债权转让通知，并配合乙方办理回购过户手续；

4、担保期间内，甲方有权对丙方的资金和财产状况进行监督，有权要求丙方提供其财务报表等相关资料，丙方有义务如实提供。

5、对于丙方延迟付款给供应商，而使得甲方与供应商之间的保

理债权到期未能及时收回的，甲方有权就迟延付款部分要求丙方处以罚息（日息千分之一），且丙方继续承担付款责任或根据本协议由乙方履行回购责任；

6、在回购条件成就时，乙方须承担起担保责任，负责向甲方支付价款，回购货物；

7、乙方对丙方资料的真实性、完整性，采购货物的真实性负责，若因上述原因导致甲方损失的，由乙方承担全部赔偿责任；

8、乙方对丙方通过保理采购方式取得的货物设备使用情况负有监管义务；

9、乙方应督促丙方向甲方支付应付货款并协助催收货款。对于丙方若出现违约行为，乙方承担第一回购担保责任并无条件回购；

10、本合同有效期内，发生下列情况之一，乙方应及时书面通知甲方：

（1）乙方出售、赠与、出租、出借、转移或以其他方式处分其主要资产或者为第三人债务提供担保，或以其主要资产进行为自身或第三人债务设定抵押、质押担保等承担重大负债的活动，足以影响其回购能力的；

（2）乙方的财务状况恶化、或借贷高利贷尚未清偿、或即将卷入重大的诉讼、仲裁、刑事及其他法律纠纷；

（3）乙方的重大资产有可能被查封、扣押、冻结或强制执行或抵押物在抵押期间被采取查封、扣押等财产保全或执行措施的，或因其他原因可能损毁、灭失；

（4）乙方可能被依法宣告破产、解散、清算；

（5）乙方在中国人民银行、中国银行业监督管理委员会或中国银行业协会设立或批准设立的信用数据库中出现不良信用记录；

（6）发生其他足以影响其清偿债务能力或可能丧失担保能力的情况。

11、乙方承诺在通讯及联系地址发生变更时3天内及时书面通知甲方，乙方提供送达地址不准确或未及时提供变更后的地址，导致相关文书无法送达或及时送达的，乙方自行承担由此产生的法律后果。

## 六、保密

各方对本协议履行过程中所接触或获知的对方的全部沟通以及本协议的签署及其条款条件均有保密义务，除非有明显的证据证明该等信息属于公知信息或者事先得到对方的书面授权。该等保密义务在本合同终止后仍然继续有效。各方应保证与其必须知情的人士签署不低于本协议保护程度的书面保密协议或承诺，并对其违约行为承担连带责任。

## 七、违约责任

乙方不按照本协议约定承担回购责任、担保义务或者违反本协议约定的其它义务的，每天应向甲方支付回购价款 0.1%的违约金，因此给甲方造成经济损失且违约金数额不足以弥补所受损失的，应赔偿甲方的实际经济损失包括债权、利息、违约金、赔偿金以及实现债权

的合理费用（包括公证、评估、鉴定、拍卖、诉讼或仲裁、送达、财产保全、执行、律师代理、差旅费等全部费用）。

## 七、特别声明

1、乙方清楚的知悉甲方与丙方合作背景，并确认对丙方资产、债务、信用等情况、是否具备签订主协议主体资格和权限已充分了解。

2、乙方完全了解《保理合同》及附件的内容，乙方一签署本协议时，已经取得乙方一董事会、股东会的书面同意。

## 八、合同变更

1、 在本合同有效期间，甲、乙、丙任何一方均不得擅自变更或解除本合同。需变更时，须经各方协商同意，达成书面协议。

2、在本合同有效期间，如果甲方与供应商协议变更《保理合同》条款（包括但不限于保理额度、固定收益回报率、还款方式、还款计划、债务履行期限的起始日或截止日等），未加重丙方债务的，乙方同意仍由其以回购方式对变更后的《保理合同》项下的货款、本金、利息、罚息、逾期利息和丙方应付违约金、甲方实现债权的其它合理费用（包括公证、评估、鉴定、拍卖、诉讼或仲裁、送达、财产保全、执行、律师代理、差旅费等全部费用）承担连带担保责任。若甲方与供应商协议变更《保理合同》加重丙方的债务的，乙方仅就变更前的《保理合同》项下的债务承担连带担保责任。

3、 尽管有上述约定，本合同有效期内，因国家法律、法规及银

监会、人民银行等机构有关规定调整或变化且适用于《保理合同》，包括利率调整等，导致《保理合同》变更的，乙方仍应当按本合同约定继续承担担保责任。

**十、合同终止**

1、在保理期限内，在甲方审批同意的情况下，丙方提前还款的。

2、乙方履行回购承诺；

3、保理期届满，丙方偿清所有应付货款未出现违约情形的。

**十一、其它**

1、本协议自甲方、乙方一、丙方法定代表人或授权代表签字或签章并加盖公章并且乙方二签字之日起生效。

2、本协议一式陆份，甲方、乙方二各执壹份，乙方一、丙方各执贰份，具有同等法律效力。

3、凡当事人之间因本协议发生的或与其有关的任何争议，应协商解决。协商不成的，应向北京市朝阳区有管辖权的人民法院诉讼。

4、四方在协议履行过程中向对方发出或者提供的所有通知、往来文件、文书（包括司法或仲裁文书）、资料等，均以本协议所列明的地址、传真、电子邮件送达。一方如果迁址、变更电话或变更指定联络人，应当在变更之日起5日内以书面方式通知另一方；未履行书面通知义务的，一方按原地址、原指定联络人邮寄相关材料或通知相

关信息即视为已履行送达义务。当面交付上述材料的，在交付之时视

为送达；以邮寄、短信、电邮方式交付的，寄出、发出或者投邮之日

即视为送达。

附件：

1、《采购合同》（编号：    ）；

（以下无正文，为签字部分）



甲方：深圳谨诚商业保理有限公司（公章）

　　　法定代表人/授权代表（签字或签章）

乙方一：乐视控股（北京）有限公司（公章）

　　　法定代表人/授权代表（签字或签章）



乙方二：_____（亲笔签名）

　　　（贾跃亭）

丙方：乐视移动智能信息技术（北京）有限公司（公章）

　　　法定代表人/授权代表（签字或签章）

日期：2016 年___月___日

# Repurchase Guarantee Agreement

**Signed in: Beijing**

Party A: Shenzhen Jincheng Commercial Factoring Co., Ltd

Party B 1: LETV Holdings (Beijing) Co., Ltd

Party B 2: Jia Yueting

Party C: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd

In view of:

1. Party C and BOE Modern (Beijing) Display Technology Co., Ltd ("**Supplier**") entered into the Purchase Framework Agreement (see the appendix) numbered "OA:739043", and pay the corresponding price to the Supplier;

2. To ensure that Party C repays the amount advanced by Party A in accordance with the Commercial Factoring Business Contract (numbered SZJC-201611-B0ELSYD-BLHT) signed by Party A and Party C's Supplier (the "**Factoring Contract**"), Party B (including Party B 1 and Party B 2, similarly below) agrees and undertakes to bear the irrevocable joint and several liability guarantee to Party A in the form of Repurchase;

3. Subject to Party B's provision of the joint and several guarantee to Party C, Party A shall fulfil its factoring obligation to advance the price (factoring financing fund) that Party C shall pay to the Supplier in accordance with the Factoring Contract

In accordance with the Contract Law of the People's Republic of China and relevant laws and regulations, and through fair, voluntary and equal consultation between the Parties, the Parties agree to enter into this Agreement based on the following terms.

## I. Definition of terms

1. Repurchase: when the conditions agreed herein are satisfied, Party A shall issue a Repurchase Notice to Party B, who shall unconditionally pay the Repurchase Price to Party A within 10 days after receiving the Repurchase Notice from Party A.

2. Goods: refers to the subject matter under the Purchase Contract, the specific name, trademark, specification, model, quality, quantity, technical standard, technical guarantee, inspection standard and method of which shall be provided and approved by Party C, and Party A

shall not be liable for the authenticity and integrity of the said information.

3. Repurchase price: refers to the balance of the factoring financing fund actually paid by Party A in accordance with the Factoring Contract less the amount already repaid by Party C at the time of Repurchase (i.e. the principal part) and the overdue interest corresponding to the principal part.

4. Goods Price Deposit: refers to deposit of Goods price paid by Party C to Party A before the loan extension under the factoring service to ensure that Party C repay the Goods price in full and in time. Goods Price Deposit = amount of factoring financing fund * 10%

5. Supplier: refers to BOE Modern (Beijing) Display Technology Co., Ltd.

### II. Guarantee method, period and scope

1. Guarantee method

(1) The guarantee provided by Party B is a joint and several liability guarantee. If Party C fails to perform or fails to fully perform its obligations to pay the Goods price and factoring service fee, Party A shall have the right to directly require Party B to undertake the guarantee liability

(2) If there are other guarantors who provide guarantees for the Goods price and factoring service fee payable under the Factoring Contract, the guarantees provided by the guarantors is a joint and several joint guarantee.

(3) If there is other way of guarantee to provide guarantee for the Goods price and factoring service fee under the Factoring Contract, and Party A requires Party B to assume the guarantee liability, Party B shall fulfil the guarantee obligation, and shall not defend on the ground that there is other way of guarantee.

(4) If Party C falls into bankruptcy, liquidation or other litigation or arbitration after it repaid all or part of the payables, and if all or part of the amount repaid is invalid in accordance with the law or in accordance with the effective judgment or ruling, Party B shall still assume the guarantee obligation for all or part of the payables.

2. Guarantee period.

(1) The period for Party C to perform its obligation to pay Goods price is 12 months, and the specific starting date is subject to that agreed in the Factoring Contract.

(2) The guarantee period shall be two years, starting from the date when the principal creditor's rights are paid off.

3. The guarantee scope of Party B is the loss caused to Party A by Party C's failure to perform its obligations under the Factoring Contract, including:

(1) Party C fails to pay the account payable, interest, default interest, insurance premium, deposit, compensation and other expenses payable by Party C on time and in full in accordance with the Factoring Contract;

(2) the ownership or value of the Goods is damaged;

(3) as agreed by the parties, the guarantee amount is the insured balance of the factoring projects specified herein totaling RMB 156,647,039.40;

(4) all reasonable expenses paid by Party A to realize the said rights and interests, including but not limited to reasonable attorney's fees, litigation fees, travel expenses, etc.

III. Repurchase method

1. When the Repurchase conditions are satisfied, Party A shall issue a Repurchase Notice to Party B, who shall pay the Repurchase Price to Party A in a lump sum within ten days from the date of the notice.

2. Repurchase conditions:

The Repurchase conditions shall be deemed as being satisfied if any cause for termination of the contract as stipulated in the Factoring Contract occurs, including: Party C delays in paying the Goods price to the supplier, which causes Party A's creditor's rights to not be recovered in time when due, and Party C still fails to perform or fully perform its payment obligations for 15 days after paying penalty interest to Party A in accordance with the agreement; Party C fails to make up the deposit in time; Party C may be declared bankrupt, dissolved or liquidated in accordance with law. Whether Repurchase condition is satisfied has nothing to do with the condition of the Goods hereunder (including but not limited to loss, damage, etc.);

3. Party A shall transfer the corresponding rights and interests of the Goods (including the ownership) to Party B after Party B has fulfilled the Repurchase obligations. Both Parties expressly agree that, in view of the fact that the Goods are under the actual control of Party C, and Party A is unable to effectively control the Goods, Party A will not deliver the physical Goods to Party B, but only deliver the notice of transfer of Goods' creditor's right to Party B. Party B shall be responsible for handling all the procedures for the Repurchase of Goods hereunder and bear all the taxes and fees arising from the change of ownership.

4. Party B shall take back the Goods by itself, and shall bear the transportation expenses caused by taking back the Goods.

IV. Deposit

In case of overdue payment of Goods price by Party C, Party A shall have the right to use Party C's deposit to advance the Goods price and notify Party C to make up the deposit. If Party C fails to make up the deposit before the 10th day of the next calendar month from the date of Party C's overdue payment, Party B shall make up for Party C's deposit instead. If Party B fails to make up the deposit in time within 3 working days after receiving the written notice from Party A, Party A shall have the right to require Party B to fulfill its Repurchase commitment and guarantee obligation immediately.

Party A shall return the corresponding deposit within three working days from the date when

Party C fulfils its obligation to pay the accounts payable hereunder, or within three working days from the date when Party B fulfils its obligation to pay the Repurchase Price.

### V. Rights and obligations of the Parties

1. Party A undertakes to extent the loan within 5 working days before and after the date of loan extension as agreed in the Factoring Contract with the Supplier. If Party A fails to extent the loan in time, Party A shall pay Party C penalty interest calculated based on the loan interest rate of the same period issued by the People's Bank of China. If the time of loan extension as agreed between Party A and the Supplier under the Factoring Contract is affected due to Party C's failure to pay the guarantee money on time and affects, the time of loan extension shall be postponed accordingly without incurring any penalty interest.

2. When the conditions agreed herein are satisfied, Party A shall issue the Repurchase Notice to Party B in a timely manner.

3. Party A shall, within 5 working days after receiving the Repurchase Price from Party B, deliver to Party B the notice of transfer of Goods' creditor's rights, and cooperate with Party B to handle the transfer formalities with respect to the Repurchase.

4. During the guarantee period, Party A shall have the right to supervise the capital and property status of Party C, and require Party C to provide its financial statements and other relevant materials, and Party C shall be obligated to provide them truthfully.

5. Where Party C delays in payment to the supplier, which causes the factoring creditor's rights between Party A and the supplier to not be recovered in time when due, Party A shall have the right to require Party C to pay penalty interest (at a daily rate of 0.1%) on the part of delayed payment, and Party C shall continue to fulfil the payment obligation or Party B shall fulfil the Repurchase obligation in accordance with this Agreement.

6. When the Repurchase conditions are satisfied, Party B shall assume the guarantee liability, pay the price to Party A and repurchase the Goods.

7. Party B shall be responsible for the authenticity and integrity of Party C's materials and the authenticity of the purchased Goods, and shall be fully liable for compensation in case of any loss caused to Party A due to the said reasons.

8. Party B shall be obliged to supervise the use of Goods and equipment obtained by Party C through factoring purchase;

9. Party B shall urge Party C to pay Party A the goods price payable and assist in collecting the goods price. In case of any breach of contract by Party C, Party B shall bear the repurchase guarantee liability first in order and repurchase the Goods unconditionally.

10. During the term of this Agreement, Party B shall promptly notify Party A in writing of any of the following circumstances:

(1) Party B sells, donates, leases, lends, transfers or otherwise disposes of its major assets or provides guarantee for the debts of third party, or uses its major assets to create mortgage, pledge

guarantee for the debts of its own or third party and engage in other activities to bear major liabilities, which is sufficient to affect its Repurchase ability;

(2) Party B's financial situation deteriorates, or it has not been paid off its usurious loan, or will be involved in major litigation, arbitration, criminal and other legal disputes;

(3) Party B's major assets may be sealed up, seized, frozen or enforced, or its mortgaged property may be subject to seal-up, seizing and other property preservation or enforcement measures during the mortgage period, or may be damaged or lost for other reasons;

(4) Party B may be declared bankrupt, dissolved or liquidated in accordance with the law;

(5) Party B has a bad credit record in the credit database established or approved by the People's Bank of China, China Banking Regulatory Commission or China Banking Association;

(6) Other circumstances that may affect its ability to pay off debts or may lose its ability to guarantee.

11. Party B undertakes to notify Party A in writing within 3 days after the change of its communication and contact address. In case of any failure to serve or timely serve relevant documents to Party B due to the inaccuracy of service address provided by Party B or Party B's failure to provide the address after the change, any legal consequence arising therefrom shall be borne by Party B.

### VI. Confidentiality

Each Party shall keep confidential all information of the other Party that it gets known or obtains during the performance of this Agreement, as well as the execution of this Agreement and its terms and conditions, unless there is obvious evidence that such information is in public domain or is authorized to be disclosed by the other Party in writing. Such obligations of confidentiality shall survive the termination of this Agreement. Each Party shall ensure its personnel who is in the need to know the confidential information to enter into a written confidentiality agreement or commitment which provide the degree of protection at least not less than that provided hereunder, and shall be jointly and severally liable for such personnel's breach of contract.

### VII. Liability for breach

Party B shall pay Party A 0.1% of the Repurchase Price as liquidated damages per day if it fails to fulfil the Repurchase obligation, the guarantee obligation or breaches other obligations as agreed herein. In case any economic loss caused to Party A and the amount of liquidated damages is insufficient to make up for the loss, Party B shall compensate Party A for the actual economic loss, including creditor's rights, interest, liquidated damages, compensation and the reasonable expenses for realizing the creditor's rights (including but not limited to the expenses for notarization, evaluation, appraisal, auction, litigation or arbitration, service, property preservation, enforcement, attorney's fee and travel expense).

**VII. Special statement**

1. Party B has a clear understanding of the background of cooperation between Party A and Party C, and confirms that it has a full understanding of Party C's assets, debts, credit and other conditions, and whether it has the qualification and authority to sign the master agreement.

2. Party B is fully aware of the contents of the Factoring Contract and its appendix. When Party B 1 signs this Agreement, it has obtained the written approval of its board of directors and board of shareholders.

**VIII. Change**

1. During the term of this Agreement, none of Party A, Party B or Party C shall change or terminate this Agreement by its own, and no change of this Agreement shall take effect unless it is made in writing after consultation and agreement of all Parties.

2. During the term of this Agreement, if Party A and the Supplier agree to change the terms of the Factoring Contract (including but not limited to the factoring amount, fixed return rate, repayment method, repayment plan, the start or end date of the debt repayment period, etc.) which does not increase Party C's debt, Party B agrees to Repurchase the payment under the changed Factoring Contract Party C shall bear joint and several liability for the goods price, principal, interest, penalty interest, overdue interest, liquidated damages payable by Party C, and other reasonable expenses of Party A for realizing the creditor's rights under the changed Factoring Contract (including but not limited to the expenses for notarization, evaluation, appraisal, auction, litigation or arbitration, service, property preservation, enforcement, attorney's fee and travel expense). If Party A and the Supplier agree to change the Factoring Contract which increases Party C's debt, Party B shall only bear joint and several guarantee liability for the debt under the Factoring Contract before the change.

3. Notwithstanding the foregoing, during the term of this Agreement, if the Factoring Contract is changed due to the adjustment or change of national laws, regulations and relevant regulations of CBRC, the People's Bank of China and other institutions which are applicable to the Factoring Contract, including the adjustment of interest rate, Party B shall continue to bear the guarantee liability in accordance with this Agreement.

**X. Termination**

1. Party C makes early repayment during the factoring period with the approval of Party A.

2. Party B fulfills its Repurchase commitment;

3. Party C pays off all the Goods price payables without any breach of contract when the factoring period expires.

## XI. Miscellaneous

1. This Agreement shall come into force on the date when it is signed and affixed with official seals by the legal or authorized representatives of Party A, Party B 1 and Party C, and signed by Party B 2.

2. This Agreement is made in sextuplicate, with Party A and Party B 2 each holding one and Party B 1 and Party C each holding two, all of which shall have the same legal effect.

3. Any dispute between the Parties arising from or in connection with this Agreement shall be settled by friendly negotiation. If such negotiation fails, either Party may file a lawsuit with the people's court with jurisdiction in Chaoyang District, Beijing.

4. All notices, correspondence documents, documents (including judicial or arbitration documents), materials, etc. sent or provided by either Party to the other during the performance of the Agreement shall be delivered to the address, fax and email listed in this Agreement. Either Party who changes its address, telephone number or designated contact person shall notify the other Party in writing within 5 days from the date of change; otherwise, the other Party shall be deemed that it has fulfilled the obligation of service by delivering relevant materials or information to the original address or designated contact person of the changing Party. If the said materials are delivered in person, they shall be deemed to have been served at the time of delivery; if they are delivered by mail, SMS or email, they shall be deemed to have been delivered on the date of mailing or sending.

Appendix:

1. Purchase Contract (No.);

(Followed by Signature Part)

Party A: Shenzhen Jincheng Commercial Factoring Co., Ltd

Legal / Authorized Representative (Signature or Seal)

Party B 1: LETV Holdings (Beijing) Co., Ltd

Legal / Authorized Representative (Signature or Seal)

Party B 2: Jia Yueting (Signature)

(Jia Yueting)

Party C: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd. (Official Seal)

Legal / Authorized Representative (Signature or Seal)

Date: _____, 2016

# Exhibit 5 –补充协议（京东方现代-乐视智能移动）

# 补充协议

甲方：京东方现代（北京）显示技术有限公司

乙方：乐视移动智能信息技术（北京）有限公司

   鉴于：

   甲乙双方签署《采购框架协议》（协议编号为：LEZN-MIQT-2015-631，以下称"原协议"），现双方愿意就原协议项下产生的应付款项达成如下一致：

1．甲方同意与深圳谨诚商业保理有限公司（"保理公司"）签署保理合同（见附件），由保理公司按照保理合同约定向甲方提供保理服务。

2．乙方同意按照保理合同第 6 条第 2 款的约定承担相应的保理服务费。

3．乙方承诺：

（1）  就保理合同下应收账款相关交易合同已经确认没有商业纠纷且承诺将来不会提出任何纠纷，不得触发保理合同下第五条约定的回购情形，但就产品质量以及售后相关问题依据双方已签署的协议执行。

（2）  保理合同第 6 条项保理融资款总额在保理公司为乙方核定的信用风险额度内。

4．如在保理合同的履行过程中，发生如下事项的，乙方应当就相应部分应付款项继续承担支付义务：

    1）  按照保理合同第五条以及第九条的约定，保理公司要求甲方回购保理合同项下全部或部分应收账款的；

    2）  因保理公司对乙方核定的信用风险担保额度不足以覆盖保理合同下的应收账款总金额而产生的差额部分款项；

    3）  如保理公司最终未能按照保理合同约定向甲方支付保理融资款的。

5、本补充协议一式三份，与附件同时生效，并具有同等法律效力。【以下无正文】

附件：商业保理业务合同（无追索型）



【本页为签署页】

京东方现代（北京）显示技术有限公司

代表人：

日期：

乐视移动智能信息技术（北京）有限公司

代表人：

日期：2016- 12





# Supplementary Agreement

Party A: BOE Modern (Beijing) Display Technology Co., Ltd

Party B: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd

Whereas:

Party A and Party B have signed the Purchase Framework Agreement (No.: LEZN-MIQT-2015-631, the **"Original Agreement"**); now therefore, both Parties are willing to reach the following agreement on the accounts payable under the Original Agreement:

1. Party A agrees to sign a Factoring Contract (see appendix) with Shenzhen Jincheng Commercial Factoring Co., Ltd ("**Jincheng Factoring**"), who shall provide factoring service to BOE in accordance with the Factoring Contract.

2. Party B agrees to bear the corresponding factoring service fee in accordance with Article 6.2 of the Factoring Contract.

3. Party B undertakes:

(1) that there has been and will be no commercial dispute in the transaction contract related to the accounts receivable under the Factoring Contract, that it will not trigger the repurchase conditions stipulated in Article 5 of the Factoring Contract, and the issues related to product quality and after-sales shall be handled in accordance with the agreement signed by both Parties.

(2) The total amount of factoring financing fund as mentioned in Article 6 of the Factoring Contract shall be within the credit risk limit approved by Jincheng Factoring for Party B.

4. In case of any of the following events during the performance of the Factoring Contract, Party B shall continue to bear the payment obligation for the corresponding part of the accounts payable:

1) where Jincheng Factoring requires Party A to repurchase all or part of the accounts receivable under the Factoring Contract in accordance with Article 5 and Article 9 of the Factoring Contract.

2) the balance where the credit risk guarantee amount approved by Jincheng Factoring for Party B is insufficient to cover the total amount of accounts receivable under the Factoring Contract;

3) where Jincheng Factoring fails to pay the factoring financing fund to Party A in accordance with the Factoring Contract.

5. This supplementary agreement is made in triplicate, which shall come into force together with the appendix and have the same legal effect as the appendix.

[No Body Text Below]

Appendix: Commercial Factoring Business Contract (Non-recourse Type)

[This is the Signature Page Only]

BOE Modern (Beijing) Display              LETV Mobile Intelligent Information

Technology Co., Ltd.                      Technology (Beijing) Co., Ltd


Representative:                           Representative:


Date:                                     Date: December 1, 2016

# Exhibit 6 – Civil Judgment
# of the Third Intermediate
# People's Court of Beijing

# 北京市第三中级人民法院
# 民事判决书

(2017) 京 03 民初 248 号

原告：深圳谨诚商业保理有限公司，住所地深圳市前海深港合作区前湾一路 1 号 A 栋 201 室（入驻深圳市前海商务秘书有限公司）。

法定代表人：韩润元，总经理。

委托诉讼代理人：黄晋，北京市齐进律师事务所律师。

委托诉讼代理人：付佳慧，北京市齐进律师事务所律师。

被告：乐视移动智能信息技术（北京）有限公司，住所地北京市顺义区高丽营镇文化营村北（临空二路 1 号）。

法定代表人：贾跃民，经理。

被告：乐视控股（北京）有限公司，住所地北京市朝阳区姚家园路 105 号 3 号楼 10 层 1102。

法定代表人：吴孟，经理。

被告：贾跃亭，男，1973 年 12 月 15 日出生，汉族，住山西省临汾市尧都区解放西路 31 号。

三被告之共同委托诉讼代理人：邹义，北京中书律师事务所律师。

三告之共同委托诉讼代理人：王小倩，北京中书律师事务所

- 1 -

律师。

原告深圳谨诚商业保理有限公司（以下简称谨诚保理公司）与被告乐视移动智能信息技术（北京）有限公司（以下简称乐视移动智能公司）、被告乐视控股（北京）有限公司（以下简称乐视控股公司）、被告贾跃亭合同、无因管理、不当得利纠纷一案，本院于 2017 年 6 月 27 日立案后，依法适用普通程序，公开开庭进行了审理。原告谨诚保理公司之委托诉讼代理人黄晋，被告乐视移动智能公司、乐视控股公司、贾跃亭之共同委托诉讼代理人邹义、王小倩到庭参加了诉讼。本案现已审理终结。

原告谨诚保理公司向本院提出诉讼请求：1. 乐视移动智能公司支付货款 107 685 472.02 元（其中：应付货款本金 106 509 490.52 元，应付未付保理服务费 1 175 981.49 元），并给付迟延履行利息（从 2017 年 6 月 16 日起计算至实际付清全部款项之日），及谨诚保理公司实现债权所发生的费用；2. 乐视控股公司、贾跃亭对上述款项承担连带清偿责任，并另行计算自判决文书下达之日至实际给付日期间的迟延履行金；3. 乐视移动智能公司、乐视控股公司、贾跃亭承担本案诉讼费用及保全费用。在本案审理过程中，原告谨诚保理公司变更诉讼请求为：1. 乐视移动智能公司给付货款 106 509 490.52 元，并给付自 2017 年 6 月 16 日起至货款本金付清之日止的迟延履行利息（以迟延付款金额为基数，按日息千分之一计算），以及谨诚保理公司为实现债权所发生的费用。

- 2 -

2. 乐视移动智能公司给付至2017年6月15日应付的保理服务费1 175 981.49元，以及自2017年6月16日起至上述第一项货款本金付清之日止的保理服务费（计算方式：未支付的货款本金*13%/365天*实际占用天数）；并支付自2017年6月16日起至上述保理服务费付清之日止逾期支付保理服务费的违约金（计算方式：各期未付保理服务费*日万分之七*迟延付款天数）。3. 乐视控股公司、贾跃亭就上述款项承担连带清偿责任，并支付自2017年6月16日起至上列第一项、第二项清偿完毕之日止的违约金（以106 509 490.52元为基数，按日利率0.1%计算）。4. 乐视移动智能公司、乐视控股公司、贾跃亭承担本案全部诉讼费用及保全费用。

　　事实与理由：2016年12月2日，原告谨诚保理公司与案外人京东方现代（北京）显示技术有限公司（以下简称京东方公司）签署了《商业保理业务合同(无追索型)》(以下简称《保理合同》)，谨诚保理公司于2016年12月16日向京东方公司支付了全额保理款，以此受让了京东方公司与乐视移动智能公司于2015年6月31日签署的《采购框架协议》项下的应收账款债权156 647 039.40元。乐视移动智能公司知晓债权转让之事实，并于2016年12月1日与谨诚保理公司就保理服务费事宜签署了《商业保理业务合同服务费协议》（以下简称《保理服务费协议》），约定由乐视移动智能公司就保理融资事宜向谨诚保理公司支付保理服务费。同时，

- 3 -

为确保乐视移动智能公司按照上述约定履行自身义务，谨诚保理公司与乐视移动智能公司、乐视控股公司、贾跃亭共同签署了《回购担保协议》，约定由乐视控股公司、贾跃亭提供连带责任担保，若乐视移动智能公司没有履行或者没有全部履行其应付货款及保理服务费时，谨诚保理公司有权直接要求乐视控股公司、贾跃亭承担担保责任。上述协议签订后，乐视移动智能公司支付了部分应付货款（本金）50 137 548.88 元，剩余应付货款（本金）106 509 490.52 元以及应于 2017 年 6 月 15 日支付的保理服务费 1 175 981.49 元至今未付。故谨诚保理公司提起本案诉讼，请求法院判如所请。

被告乐视移动智能公司辩称，不同意谨诚保理公司的诉讼请求。事实与理由：一、谨诚保理公司与本案无直接利害关系，不具备主体资格，应驳回其全部诉讼请求。谨诚保理公司曾于 2016 年向乐视移动智能公司、乐视控股公司、贾跃亭发出《债权托管安排通知函》，告知其已将涉案的应收账款债权转让于上海懒财资产管理有限公司（以下简称上海懒财公司），并要求乐视移动智能公司、乐视控股公司、贾跃亭自收到通知函之日起即向上海懒财公司履行债务及担保义务。据此，谨诚保理公司在本案起诉时已无权作为债权人主张权利。二、假设谨诚保理公司有权针对本案主张权利，其诉讼请求也与事实不符，且缺乏法律依据，不应得到支持。1、谨诚保理公司主张的应付款项计算错误，以下两项款

— 4 —

项应从未付的货款本金 106 509490.52 元中扣减：即乐视移动智能公司按照协议约定向谨诚保理公司支付的货款保证金15664709.94 元和谨诚保理公司逾期 2 日支付保理融资款应向乐视移动智能公司支付的罚息 42058.66 元。2、谨诚保理公司主张的迟延履行利息的计算基数及起算时间错误，且迟延履行利息标准过高，请求法院依法调整。涉案的货款应分三笔支付，支付时间不同。在谨诚保理公司起诉时，乐视移动智能公司已按期支付了第一笔应付货款，第二笔、第三笔货款的付款日期尚未届满，即使现如今后两笔货款付款日期已届满，针对该两笔应付货款计算迟延履行利息时，应当从其应付款日的第二日起分段计算（计算第二笔货款的迟延履行利息时，基数应当扣减前述保证金及罚息）。《回购担保协议》中约定的应付货款迟延履行利息标准为每日千分之一，换算为年利率为 36.5%。该迟延履行利息之性质与违约金的惩罚性质是一致的，依据相关法律规定，迟延履行利息属于补偿性质的惩罚措施，适用时应当以守约方的实际损失为限。本案中，谨诚保理公司未能提供证据证明其实际损失，且即使产生了实际损失，也应当以应付货款被占用期间的资金占用费为限来计算。谨诚保理公司主张的利息标准远远超出了其实际损失，属于无效约定，故请求法院予以调低。三、谨诚保理公司主张的应付未付的保理服务费 1 175 981.49 元中的期间咨询服务费，根据《保理服务费协议》的约定和合同相对性原则，应当由新疆骑

士联盟股权投资有限公司（以下简称新疆骑士公司）向乐视移动智能公司主张，谨诚保理公司无权要求乐视移动智能公司向其履行《财务顾问协议》项下的义务。四、《保理服务费协议》的有效期为2年，即自2016年12月1日至2018年11月30日，乐视移动智能公司仅需在协议有效期内向谨诚保理公司支付保理服务费，有效期届满后该协议将失效，谨诚保理公司要求乐视移动智能公司支付至货款本金付清之日止的保理服务费，无合同依据和法律依据。五、谨诚保理公司主张的保理服务费违约金利息为每日万分之七，即年利率25.55%，明显过高。谨诚保理公司未举证证明其因乐视移动智能公司未按期支付保理服务费的行为而实际产生损失；且即使实际产生了损失，也应当以保理服务费被占用期间的资金占用费为限来计算，谨诚保理公司主张的标准远远超出了其实际损失，属于无效约定，应予调低。六、谨诚保理公司要求乐视移动智能公司承担其为实现债权所发生的费用、本案诉讼费、保全费等无事实依据和法律依据。谨诚保理公司未在举证期限内提交证据证明其为实现本案债权而实际发生了相关费用，且承担这些费用无形中加重了乐视移动智能公司的负担，违背公正公平的基本法律准则，应予驳回。

被告乐视控股公司辩称，不同意谨诚保理公司的诉讼请求，同意被告乐视移动智能公司的答辩意见。另外，乐视控股公司承担担保责任的条件尚未成就，谨诚保理公司无权要求乐视控股公

司承担担保责任。乐视控股公司承担担保责任的期间为自主债权清偿届满之日起 2 年，谨诚保理公司提起诉讼时，乐视移动智能公司的应付货款及保理服务费均在按照协议的约定正常履行，并没有主债权到期或逾期的情形出现。即使假设已出现应当承担担保责任的情形，谨诚保理公司并未按照约定向乐视控股公司发出书面的《回购通知书》，故承担担保责任的条件尚未成就。即使假设乐视控股公司应当向谨诚保理公司承担担保责任，谨诚保理公司主张按日利率千分之一支付违约金，标准过高，远远超出其实际损失，属于无效约定，应予调低。

被告贾跃亭辩称，不同意谨诚保理公司的诉讼请求，同意乐视移动智能公司的答辩意见和乐视控股公司关于担保人承担担保责任的条件尚未成就的答辩意见，贾跃亭承担担保责任的条件亦未成就。此外，要求贾跃亭为乐视移动智能公司的债务承担连带保证责任，属于过度担保、重复担保，此举措使有限责任无限化，背离了有限责任公司制度设立的初衷，贾跃亭的担保责任即便成立也应归于无效。该种个人为企业承担连带保证责任的情况，不符合最高人民法院民事审判庭第二庭庭长贺小荣在《让司法为金融回归本源提供价值引领》中的论述意见。为维护公司法基石、维护公正平等的民事法律行为准则、维护社会安定团结，对于个人为公司债务承担无限连带保证责任的情形应当审慎对待，使个人不当的、重复的担保责任归于无效。

- 7 -

谨诚保理公司围绕诉讼请求依法提交了如下证据：1.《保理合同》；2.《采购框架协议》（编号：L【EZN-MIQT-2015-631】）及其补充协议、补充协议（合同编号：1155196）；3.《保理业服务费协议》及附件《应收账款债权转让清单》；4.《回购担保协议》；5.保理融资款转款凭证；6.保证金收款凭证；7.谨诚保理公司已收到的货款本金的收款凭证；8.保理服务费的收取凭证。乐视移动智能公司、乐视控股公司、贾跃亭对上述证据的真实性、合法性、关联性均无异议。

乐视移动智能公司、乐视控股公司、贾跃亭围绕答辩意见依法提交了如下证据：1.债权托管安排通知函（复印件）（编号：XYJK-2016004-03-TZH02）；2.保证金付款凭证；3.2017年1月至2017年6月支付保理服务费的凭证。谨诚保理公司的质证意见为：对证据1的真实性不认可，该通知函系复印件，无原件；谨诚保理公司曾将债权托管给上海懒财公司，但不是债权转让。对证据2的真实性认可。对证据3的真实性不认可，认为均系电子凭证，无原件，保理服务费的支付情况应以谨诚保理公司提交的证据为准。

对当事人无异议的证据，本院予以确认并在卷佐证。对于各方有争议的证据和事实，本院将结合其他证据与当事人陈述综合认定。

本院经审理查明：

- 8 -

2016 年 12 月 1 日，乐视移动智能公司与京东方公司签订《采购框架协议》，约定由乐视移动智能公司向京东方公司采购相应的产品，协议对价格条款、需求预估、订单、原物料及零组件采购及物料责任、交货、收货及检验等相关内容进行了详细规定。同日，双方签订了《补充协议》，约定双方就原协议项下产生的应付款项达成如下一致：1.京东方公司同意与谨诚保理公司签署保理合同。由谨诚保理公司按照保理合同约定向京东方公司提供保理服务。2.乐视移动智能公司同意按照保理合同第 6 条第 2 款的约定承担相应的保理服务费。……4.如在保理合同的履行过程中，发生如下事项的，乐视移动智能公司应当就相应部分应付款项继续承担支付义务：（1）按照保理合同第五条以及第九条的约定，保理公司要求京东方公司公司回购保理合同项下全部或部分应收账款的。协议还约定了其他相关内容。另外，双方还签订了《补充协议(合同编号：1155196)》，对涉案应收账款的业务订单货款支付日进行了统一调整并列明，显示涉案应收账款到期日共有 3 个，分别为 2017 年 5 月 30 日，到期款项 50 137 548.88 元；2017 年 6 月 29 日，到期款项 50 533 973.15 元；2017 年 7 月 28 日，到期款项为 55 975 517.38 元；共计 156 647 039.41 元。《补充协议(合同编号：1155196)》还约定应收账款付款账户等其他事宜。

2016 年 12 月 2 日，京东方公司作为甲方，谨诚保理公司作为乙方，签订了《保理合同》，合同编号为 SZJC-201611-BOELSYD-BLHT。

约定：鉴于甲方采用赊销方式向买方销售货物或提供服务，并以由此形成的交易合同项下对买方的应收账款向乙方申请办理无追索权的国内保理业务，乙方为甲方提供融资服务。双方签署本合同。第二条保理期限 本合同保理期限自 2016 年 12 月 2 日起至 2017 年 7 月 28 日止，共计 8 个月。第四条应收账款的回购 本合同为无追索权保理合同，应收账款到期日遇买方（乐视移动智能公司）未按期支付账款，乙方同意由乙方承担担保付款的责任，乙方对该等保理预付款不向甲方追索，但同时保留根据担保协议向保证方追索的权利。出现本合同第五条规定或者第九条（1）提前回购情形的除外。在发生上述情形时，乙方有权选择决定向甲方或者依照协议要求保证方履行以上义务。第五条应收账款提前回购的情形 发生以下情形的，甲方应当对转让给乙方的应收账款进行提前回购，乙方应按比例退还保理服务费：1. 应收账款到期日前，买方以任何书面形式就交易合同项下的商业纠纷通知乙方或者乙方通过甲方及其他任何途径得知交易合同发生纠纷的。2. 甲方或买方在交易合同项下存在商业欺诈行为的。3. 甲方与买方之间交易合同项下存在关联交易的或应收账款存在债权债务抵销、折让、退回等使应收账款减损的情形的。第六条保理融资款及保理服务费 1. 双方约定，本合同项下转让的应收账款总额为人民币 156 647 039.40 元，乙方于 2016 年 12 月 7 日前支付给甲方。2. 双方约定，本合同保理服务费的计算标准为：年化利率 13%。由乐

- 10 -

视移动智能公司与乙方另行签署《商业保理业务合同服务费协议》并支付上述保理服务费。第九条合同终止条款 1.甲方有下列情形之一的，乙方有权单方面解除保理合同，并要求甲方提前回购应收账款，已经收取的保理服务费用不予退还。（1）本合同第五条约定的提前回购条件出现的；（2）甲方违反保理融资款的约定使用用途，将保理融资挪作他用的；（3）甲方出现或可能出现重大财产诉讼，可能影响应收账款回购的；（4）甲方在经营过程中，财务状况发生重大变化，可能影响应收账款回购的；（5）甲方在经营过程中，发生企业变更、合并、分立、充足、财产被查封等情形可能影响应收账款回购的。合同还约定了其他相关事宜。

2016年12月1日，乐视移动智能公司作为甲方，谨诚保理公司作为乙方，签订了《保理服务费协议》，约定京东方公司作为甲方上游服务公司，因经营管理的需要，向乙方申请商业保理业务，应收账款总额为人民币156 647 039.40元。乙方接受申请，并与甲方上游公司签署了《保理合同》（以下简称"主合同"）。第二条就主合同履行期间发生的保理服务费，双方同意如下支付方式：2.1.1主合同中的保理服务费的年化利率为13%，保理服务费按日计息，日利率=年利率/365。 2.1.2保理服务费的计算公式为：应收账款总额*乙方向京东方公司发放吧哦理融资款起始日起至乐视移动智能公司占用该笔保理融资款金额的最后占用日之间的实际天数*日利率。在保理融资款占用期限内，借款的本金余额发生

变化的，应分段计算并累计相加。2.1.3 保理服务费分为期间保理利息、期间保理服务费和期间咨询服务费三部分。（1）期间保理利息：年化利率为 7.5%，按日计息。甲方应于每个自然月的 15 日支付至乙方指定账户。该指定账户为北京懒财信息科技有限公司（以下简称北京懒财公司）在上海华瑞银行股份有限公司开具的账户，账号为 ████████████ 2）期间保理服务费：年化利率为 0.5%，按日计息。甲方应于每个自然月的 15 日支付至乙方指定账户。该指定账户为谨诚保理公司在平安银行北京德胜门支行开具的账户，账号为 ████████████ （3）期间咨询服务费总额＝保理服务费−期间保理利息−期间保理服务费。甲方应于每个自然月的 15 日支付期间咨询服务费总额，由新疆骑士公司作为本项目的财务顾问与甲方另行签署《财务顾问协议》并收取上述期间咨询服务费。协议中未列明双方指定收取（支付）账户。第五条 违约责任 5.1 协议一方因不履行或不及时全面履行本协议，应视为违约；5.2 甲方违反协议约定，逾期支付或者不支付保理服务费的，按拖欠金额的日万分之七标准支付违约金。第十条 其他条款 本协议于 2016 年 12 月 1 日由甲乙双方代表签署。自双方签字之日起 2 年内有效，协议期满，经双方同意后可续约。该协议后附《应收账款转让清单》，约定应收账款编号、金额及到期日均与《采购框架协议》的补充协议（合同编号 ████████ 的内容相同。

为确保乐视移动智能公司按照《保理合同》的约定偿还谨诚

保理公司垫付的货款，谨诚保理公司作为甲方，乐视控股公司作为乙方一，贾跃亭作为乙方二，乐视移动智能公司作为丙方，共同签署了《回购担保协议》，约定乙方（包括乙方一、乙方二）同意并承诺以回购的形式向甲方承担不可撤销的连带责任担保；在乙方为丙方提供连带担保的前提下，甲方提供保理义务，为丙方垫付其应向供应商（京东方公司）依据《保理合同》支付的价款（保理融资款）。各方一致同意以下条款：一、有关用词定义 3.回购价款指甲方按照《保理合同》约定实际支付的保理融资款扣除回购当时丙方已经偿还部分的剩余金额（本金部分）以及该本金部分对应的逾期利息。4.货款保证金：为保证丙方按期足额偿还货款，保理业务放款前由丙方向甲方缴纳的货款保证金。货款保证金=保理融资款金额*10%。二、担保方式、期间和范围 1.担保方式 乙方提供的担保方式为连带责任担保，当丙方没有履行或者没有全部履行其应付货款及保理服务费等时，甲方有权直接要求乙方承担担保责任。……2.担保期间 （1）丙方履行支付货款的债务期间为 12 个月，具体起始日起由《保理合同》确定。（2）担保期间为两年，自主债权清偿届满之日起开始起算。3.乙方担保的范围是丙方没有按照《保理合同》的约定履行义务，给甲方造成的损失，包括：（1）丙方未按照《保理合同》的约定按时、足额支付应付款项、利息、罚息、保险费、保证金、赔偿金以及丙方应支付的其他费用；（2）货物的所有权或价值遭到损害；（3）

- 13 -

担保额度根据各方约定为本协议所规定的暴力项目的在保余额合计人民币 156 647 039.40 元；（4）甲方为实现以上权益而支出的全部合理费用，包括但不限于合理的律师费、诉讼费、差旅费等。三、回购方式 1.当回购条件成立时，甲方向乙方发出《回购通知书》。自《回购通知书》发出之日起的十日内由乙方向甲方一次性支付全部回购价款。2.回购条件：出现《保理合同》规定的合同解除事由之时，包括：丙方迟延向供应商支付价款，而使得甲方保理债权到期未能及时收回，丙方根据约定向甲方支付罚息后、逾期 15 日仍未履行或者全部履行的；丙方不及时补足保证金的；丙方可能被依法宣告破产、解散、清算的。满足前述任一情形，回购条件即成立。回购条件的成立与协议所指货物状况如何无关（包括但不限于丢失、毁损等）。四、保证金 当丙方发生逾期支付货款时，甲方有权动用丙方保证金垫付丙方逾期货款，并通知丙方补足保证金。自丙方逾期支付应付货款之日起的下一日历月的 10 日前，丙方仍未能补足（不）足额的保证金时，乙方应补足丙方保证金。乙方未能在接到甲方书面通知后 3 个工作日内及时补足保证金时，甲方有权要求乙方立即履行回购承诺及担保义务。在丙方履行完成本协议项下应付款项支付义务之日起三个工作日内，或在乙方履行完成回购款项支付义务之日起三个工作日内，甲方应当退还相应的保证金。五、各方的权利和义务 1.甲方承诺在与供应商的保理合同中约定放款日的前后 5 个工作日内放款；

若甲方未及时放款，甲方应向丙方支付罚息，该罚息按中国人民银行发布的同期贷款利率计算。由于丙方未能按时缴纳保证金而影响甲方与供应商之间约定的保理合同放款时间的，甲方放款时间顺延且不承担罚息。2.当满足本协议约定的条件时，甲方应及时向乙方发出《回购通知书》。5.对于丙方迟延付款给供应商，而使得甲方与供应商之间的保理债权到期未能及时收回的，甲方有权就迟延付款部分要求丙方处以罚息（日息千分之一），且丙方继续承担付款责任或根据本协议由乙方履行回购责任。……七、违约责任 乙方不按照本协议约定承担回购责任、担保义务或者违反本协议约定的其他义务的，每天应向甲方支付回购价款 0.1%的违约金，因此给甲方造成经济损失且违约金数额不足以弥补所受损失的，应赔偿甲方的实际经济损失包括债权、利息、违约金、赔偿金以及实现债权的合理费用（包括公证、评估、鉴定、拍卖、诉讼或仲裁、送达、财产保全、执行、律师代理、差旅费等全部费用）。

上述协议签订后，2016 年 12 月 14 日，乐视移动智能公司向谨诚保理公司支付保证金 15 664 703.94 元。

2016 年 12 月 16 日，谨诚保理公司向京东方公司支付保理融资款 156 647 039.40 元。

2017 年 1 月 16 日，2017 年 2 月 15 日，2017 年 3 月 14 日，2017 年 4 月 14 日，2017 年 5 月 17 日，乐视移动智能公司均如约

向谨诚保理公司指定的北京懒财公司账户支付了相应的期间保理利息；向谨诚保理公司指定账户支付了相应的期间保理服务费；向新疆骑士公司支付了相应的期间咨询服务费。

2017 年 6 月 1 日，京东方公司分 5 笔向谨诚保理公司支付了货款本金 50 137 548.88 元，至此，谨诚保理公司涉案应收账款中于 2017 年 5 月 30 日到期的款项均已收回。同日，乐视移动智能公司分别向前述北京懒财公司账户支付期间保理利息 164835.78 元；向谨诚保理公司指定账户支付期间保理服务费 10989.06 元；向新疆骑士公司支付期间咨询服务费 109890.52 元。该笔费用系 2017 年 5 月 30 日到期的货款自 2017 年 5 月 15 日至 2017 年 5 月 31 日期间的保理服务费。此后，乐视移动智能公司未再向相关账户支付保理服务费。

2017 年 6 月 27 日，谨诚保理公司向本院提起本案诉讼，本院于 2017 年 7 月 7 日将起诉状送达到乐视控股公司和贾跃亭。

京东方公司在 2017 年 6 月 1 日之后，至今未再向谨诚保理公司支付过剩余货款。乐视移动智能公司、乐视控股公司、贾跃亭亦未再支付过任何款项。

上述事实，有《采购框架协议》及补充协议、补充协议（合同编号：1155196）；《保理合同》、《保理服务费协议》、《回购担保协议》、支付凭证、收据等及当事人陈述在案佐证。

本院认为，各方签订的《保理合同》、《采购框架协议》及其

- 16 -

补充协议、《保理服务费协议》、《回购担保协议》，系各方的真实意思表示，且内容不违反法律、行政法规的强制性规定，属合法有效，各方当事人应当按照上述协议的约定履行各自义务。谨诚保理公司因与京东方公司签订《保理合同》，受让了京东方公司在《采购框架协议》及其补充协议项下对乐视移动智能公司的涉案应收货款债权，在乐视移动智能公司未如约支付货款时，有权直接向乐视移动智能公司主张权利。

现综合各方当事人的诉辩意见，本案的争议焦点如下：一、谨诚保理公司是否已将涉案债权转让给上海懒财公司，即谨诚保理公司是否有权提起本案诉讼；二、乐视移动智能公司是否违反《采购框架协议》的约定及违约时间的确定；三、应付货款的数额及其迟延履行利息的计算问题；四、谨诚保理公司是否有权主张的保理服务费中的期间咨询费、超过合同有效期的保理服务费以及保理服务费违约金的计算标准问题；五、贾跃亭的连带保证责任是否有效以及乐视控股公司、贾跃亭承担连带担保责任的条件是否成就；六、乐视控股公司、贾跃亭逾期承担担保责任违约金的计算问题。

一、关于谨诚保理公司是否已将涉案债权转让给上海懒财公司，即谨诚保理公司是否有权提起本案诉讼的问题。

乐视移动智能公司、乐视控股公司、贾跃亭在答辩中称，谨诚保理公司已将涉案的应收货款债权转让给上海懒财公司，故其

已无权作为债权人主张权利。对此，乐视移动智能公司、乐视控股公司、贾跃亭向本院提交了《债权托管安排通知函》（复印件）予以证明。谨诚保理公司对此不予认可，其认为《债权托管安排通知函》并非原件，无法确认其真实性，谨诚保理公司曾将涉案债权托管，但并非转让。本院认为，首先，当事人对自己提出的主张负有举证责任，否则应承担举证不能的后果。现乐视移动智能公司、乐视控股公司、贾跃亭主张谨诚保理公司已将涉案债权转让，但其未提供《债权托管安排通知函》原件，谨诚保理公司对该主张也不予认可，在此情形下，无法确认涉案债权转让的真实性。其次，《债权托管安排通知函》（复印件）显示的时间为2016年，但从2017年各方实际履行协议的情况来看，乐视移动智能公司在2017年6月仍将第一笔到期货款按照约定汇入了谨诚保理公司与京东方公司指定的京东方公司账户，并由京东方公司通过该账户直接汇入谨诚保理公司账户，而乐视移动智能公司在答辩中亦认可上述款项系由其向谨诚保理公司支付。可见，乐视移动智能公司在实际履行中，亦未将上海懒财公司作为涉案债权的权利人。综上，本院对《债权托管安排通知函》的真实性不予认定；对乐视移动智能公司、乐视控股公司、贾跃亭的该项答辩意见不予采信。谨诚保理公司依据相关合同，有权提起本案诉讼。

二、关于乐视移动智能公司是否违反《采购框架协议》的约定以及违约时间的确定问题。

- 18 -

谨诚保理公司系因签订《保理合同》，受让京东方公司基于《采购框架协议》项下对乐视移动智能公司的涉案应收货款债权。故乐视移动智能公司违反《采购框架协议》的约定，是谨诚保理公司向乐视移动智能公司主张货款的前提，也是谨诚保理公司主张货款迟延履行利息的计算基础。但各方对于乐视移动智能公司何时违约，存在争议。

谨诚保理公司主张，乐视移动智能公司应自 2017 年 6 月 16 日起支付剩余货款的迟延履行利息，即其认为乐视移动智能公司在 2017 年 6 月 15 日违约。理由是：1. 乐视移动智能公司于 2017 年 6 月 15 日违反了《保理服务费协议》，未按期支付保理服务费。2. 乐视移动智能公司、乐视控股公司、贾跃亭出现了众所周知的重大财产诉讼和重大财务状况变化，影响了谨诚保理公司的债权，符合《保理合同》第四条关于提前回购的约定，谨诚保理公司因此有权要求乐视控股公司、贾跃亭作为保证方履行义务；乐视移动智能公司作为主债务人，亦应受《保理合同》的约束。3. 乐视移动智能公司、乐视控股公司、贾跃亭出现了众所周知的重大财产诉讼和重大财务状况变化，是以自己的行为表明不履行合同义务，符合《合同法》第一百零八条的规定，谨诚保理公司可以在履行期限届满之前要求该三者承担违约责任。4. 谨诚保理公司提起本案诉讼后，乐视移动智能公司、乐视控股公司、贾跃亭均未履行还款义务。乐视移动智能公司、乐视控股公司、贾跃亭对谨

诚保理公司的主张均不予认可，辩称：在谨诚保理公司提起本案诉讼时，乐视移动智能公司已按期支付了涉案的第一笔货款，剩余货款付款日期尚未届满，主合同在正常履行。即使现在剩余货款付款日期已届满，针对剩余货款计算迟延履行利息时，应当按照付款日期从应付款日的第二日起分段计算，即乐视移动智能公司自相应货款付款日期届满时才违反《采购框架协议》的约定。

本院认为，谨诚保理公司关于乐视移动智能公司于 2017 年 6 月 15 日违反《采购框架协议》约定的主张没有合同和法律依据，但由于在本案诉讼期间，涉案货款的付款日期均已届满，乐视移动智能公司并未按照约定如期付款。故现谨诚保理公司向乐视移动智能公司主张给付货款的诉讼请求，符合合同约定和法律规定的部分，仍应予以支持。理由如下：

第一，2017 年 6 月 15 日《采购框架协议》仍在正常履行，没有违约情形的出现。根据各方签订的协议，涉案货款分三笔到期，到期日分别是 2017 年 5 月 30 日、2017 年 6 月 29 日和 2017 年 7 月 28 日。2017 年 6 月 1 日，乐视移动智能公司已履行了 2017 年 5 月 30 日到期货款的支付义务，剩余货款在 2017 年 6 月 15 日时均未到期，《采购框架协议》主协议仍在正常履行。而《采购框架协议》与《保理服务费协议》是两个独立的合同，即使乐视移动智能公司在 2017 年 6 月 15 日未支付相应的保理服务费，违反了《保理服务费协议》的约定，根据合同的相对性原则，谨诚保理

- 20 -

公司此时仅有权要求乐视移动智能公司支付相应的保理服务费，无权要求其提前支付《采购框架协议》项下未到期的货款。

第二，谨诚保理公司的主张不符合《保理合同》第四条关于应收账款提前回购的约定。首先，谨诚保理公司对于乐视移动智能公司、乐视控股公司、贾跃亭出现重大财产诉讼和重大财务状况变化，并未提交证据予以证明。其次，即使上述情况是众所周知的，不需要证明，谨诚保理公司主张因上述情形的出现符合《保理合同》中关于提前回购的约定，也不能成立。因《保理合同》的签订主体是京东方公司与谨诚保理公司，权利义务的设定也是针对该二者。《保理合同》第四条第二款是关于应收账款提前回购的约定，根据合同全文理解，第四条第二款的含义应为：在发生合同第五条规定或者第九条（1）款提前回购的情形时，乙方（谨诚保理公司）有权决定向甲方（京东方公司）或者按照协议要求保证方（乐视控股公司、贾跃亭）履行付款义务。《保理合同》第五条是关于应收账款提前回购情形的约定，载明："发生以下情形的，甲方应当对转让给乙方的应收账款进行提前回购，乙方应按比例退还保理服务费：1.应收账款到期日前，买方（乐视移动智能公司）以任何书面形式就交易合同项下的商业纠纷通知乙方或者乙方通过甲方及其他任何途径得知交易合同发生纠纷的……"。第九条是关于合同终止的约定，第（1）款载明"甲方有下列情形之一的，乙方有权单方面解除保理合同，并要求甲方提前回购应

收账款，已经收取的保理服务费用不予退还。（1）本合同第五条约定的提前回购条件出现的；（2）甲方违反保理融资款的约定使用用途，将保理融资款挪作他用的；（3）甲方出现或可能出现重大财产诉讼，可能影响应收账款回购的；（4）甲方在经营过程中，财务状况发生重大变化，可能影响应收账款回购的；（5）甲方在经营过程中，发生企业变更、合并、分立、重组、财产被查封等情形可能影响应收账款回购的。"可见，上述合同条款中所称的"甲方"，均是指京东方公司，并非乐视移动智能公司，亦非乐视控股公司或贾跃亭，而合同第五条和第九条中所描述的情形，也是指京东方公司出现上述情形。因此，乐视移动智能公司、乐视控股公司、贾跃亭即使其出现了重大财产诉讼和重大财务状况变化，在谨诚保理公司未举证证明京东方公司已出现或者可能出现重大财产诉讼，亦或涉案交易合同发生纠纷的情况下，并不符合《保理合同》关于提前回购的条件，不能要求回购主体承担回购责任。也就是说，依据谨诚保理公司的该项主张，其无权根据《保理合同》第四条要求乐视控股公司和贾跃亭作为保证方，提前履行付款义务，更不能进一步要求乐视移动智能公司受此约束。另外，谨诚保理公司称乐视移动智能公司、乐视控股公司、贾跃亭出现了重大财产诉讼和重大财务状况变化，是以自己的行为表明不履行合同义务的主张，也没有相应的事实和法律依据。

综上，乐视移动智能公司在 2017 年 6 月 15 日时并未违反《采

- 22 -

购框架协议》的约定，谨诚保理公司无权在此时要求其支付剩余货款。

但考虑到自谨诚保理公司于 2017 年 6 月 27 日提起本案诉讼后，截止目前，涉案货款均已到期，但乐视移动智能公司、乐视控股公司、贾跃亭在剩余货款到期日均未按合同约定履行付款义务，已然实际构成了违约，因此，现谨诚保理公司要求乐视移动智能公司支付剩余货款的诉讼请求，有事实和合同依据，本院予以支持。但需要明确的是，乐视移动智能公司违反《采购框架协议》约定的时间，即谨诚保理公司有权向乐视移动智能公司主张剩余货款的时间，应为相应货款的付款日期届满之时。因剩余货款分二笔到期，分别是 2017 年 6 月 29 日和 2017 年 7 月 28 日，乐视移动智能公司相应的违约时间应区分计算。

三、关于应付货款的数额及其迟延履行利息的计算问题。

（一）关于应付货款的数额。

谨诚保理公司主张应付货款的数额为 106 509 490.52 元，系应付货款总额减去已付货款的数额。乐视移动智能公司、乐视控股公司、贾跃亭认可尚未支付的货款为 106 509 490.52 元，但主张现应付款项中应扣减乐视移动智能公司已向谨诚保理公司支付的货款保证金 15 664 709.94 元以及谨诚保理公司晚付 2 日保理融资款的罚息。

关于保证金是否应予扣减的问题。首先，乐视移动智能公司

主张已付保证金数额为 15 664 709.94 元，但根据乐视移动智能公司提供的保证金支付凭证和谨诚保理公司提供的收款凭证，乐视移动智能公司实际支付的保证金数额为 15 664 703.94 元，故本院确认乐视移动智能公司已付保证金的数额为 15 664 703.94 元。其次，谨诚保理公司认可收到上述保证金，但不同意抵扣，认为根据合同约定，保证金应当在乐视移动智能公司、乐视控股公司、贾跃亭履行完相应的合同义务之后再予退还。本院认为，根据双方在《回购担保协议》中的约定，"当乐视移动智能公司发生逾期支付货款时，谨诚保理公司有权动用乐视移动智能公司保证金垫付其逾期货款，并通知乐视移动智能公司补足保证金。在乐视移动智能公司完成协议项下的应付款项支付义务之日起三个工作日内，或在乐视控股公司、贾跃亭履行完成回购款项支付义务之日起三个工作日内，谨诚保理公司应当退还相应的保证金"。可见，双方对保证金的处置约定了两种情形：一是在乐视移动智能公司违约，逾期支付货款时，保证金用于垫付逾期货款；二是在乐视移动智能公司如期履约的情况下，保证金在其完成付款义务之后退还。现谨诚保理公司因乐视移动智能公司出现逾期支付货款的情况，提起本案诉讼，依据合同约定，保证金应先用于垫付逾期货款。且谨诚保理公司提起本案诉讼，要求判令乐视移动智能公司支付剩余货款，即是要求对双方之间进行结算，而双方也没有其他的债权债务关系，故乐视移动智能公司、乐视控股公

- 24 -

司、贾跃亭要求从应付货款中扣减已支付的保证金的答辩意见，符合合同约定，本院予以支持。对于谨诚保理公司不同意抵扣的主张，本院不予采信。按照合同约定，上述保证金应用于扣减逾期支付的货款本金。又因剩余货款本金分二笔到期，保证金应先用于扣减到期时间在前的货款。即扣减之后，于 2017 年 6 月 29 日到期的应付货款数额应为 34 869 269.2 元，于 2017 年 7 月 28 日到期的应付货款数额仍为 55 975 517.38 元，剩余未付货款总额为 90 844 786.58 元。故对于谨诚保理公司超出上述未付货款数额的诉讼请求，本院不予支持。

关于谨诚保理公司晚付 2 日保理融资款的罚息是否应予扣减的问题，因乐视移动智能公司、乐视控股公司、贾跃亭在本案中均未提出反诉，要求谨诚保理公司支付相应的罚息，故本院对其要求在应付款项中扣减相应罚息的意见，不予采信。乐视移动智能公司、乐视控股公司、贾跃亭如认为有权主张，可另行提起诉讼。

（二）关于货款迟延履行利息的计算问题。

各方关于货款迟延履行利息的计算，主要有两方面争议：一是起算时间；二是计算标准。

关于迟延履行利息起算时间的争议，实际上就是关于乐视移动智能公司违反《采购框架协议》的时间的争议。如前所述，谨诚保理公司主张应自 2017 年 6 月 16 日起计算应付货款的迟延履

行利息，缺乏事实及法律依据，本院不予采信。乐视移动智能公司、乐视控股公司、贾跃亭认为应按照货款付款日期，从应付款日的第二日起分段计算迟延履行利息，符合合同约定，本院予以采信。即，于2017年6月29日到期的货款，迟延履行利息应自2017年6月30日起算；于2017年7月28日到期的货款，迟延履行利息应自2017年7月29日起算。故对于谨诚保理公司超出该部分的诉讼请求，本院不予支持。

关于迟延履行利息的计算标准问题，谨诚保理公司主张按照《回购担保协议》第五条第5款的约定，应当以每日千分之一的利率计算迟延付款的利息。乐视移动智能公司、乐视控股公司、贾跃亭均认为利息过高，应当以谨诚保理公司的实际损失为限，请求法院予以调整。本院认为，根据合同法的规定，当事人可以约定一方违约时应当根据违约情况向对方支付一定数额的违约金，也可以约定因违约产生的损失赔偿额的计算方法。约定的违约金低于造成的损失的，当事人可以请求人民法院或者仲裁机构予以增加；约定的违约金过分高于造成的损失的，当事人可以请求人民法院或者仲裁机构予以适当减少。本案中，鉴于迟延履行利息是对违约损害的填补，而乐视移动智能公司迟延支付货款给谨诚保理公司造成的是资金占用损失，且谨诚保理公司主张的迟延履行利息计算标准折合后年利率达到36.5%，显属过高，故乐视移动智能公司请求本院调整依据充足，本院根据公平原则和诚实信用

- 26 -

原则予以衡量，将迟延履行利息的计算标准酌减为年利率 24%。对于谨诚保理公司超出该部分的诉讼请求，本院不予支持。

四、关于谨诚保理公司是否有权主张保理服务费中的期间咨询费、超过合同有效期的保理服务费以及保理服务费违约金的计算标准问题。

（一）关于谨诚保理公司是否有权主张保理服务费中的期间咨询费的问题。

乐视移动智能公司、乐视控股公司、贾跃亭在答辩中称，根据《保理服务费协议》的约定，保理服务费中的期间咨询费由新疆骑士公司与乐视移动智能公司另行签署《财务顾问协议》并收取，故根据合同相对性原则，该部分保理服务费应由新疆骑士公司主张，谨诚保理公司无权要求乐视移动智能公司向其履行《财务顾问协议》项下的义务。谨诚保理公司认可之前正常履行的期间咨询费均由新疆骑士公司收取，但认为乐视移动智能公司未提交《财务顾问协议》，依据《保理服务费协议》的约定，仍应由谨诚保理公司向其主张这部分费用。本院认为，首先，谨诚保理公司是提供涉案保理服务的主体，也是收取保理服务费的权利主体。根据各方协议，涉案的保理服务由谨诚保理公司以支付保理融资款的形式提供，并无其他提供服务的主体。而《保理服务费协议》的签订主体也是乐视移动智能公司与谨诚保理公司，乐视移动智能公司支付包含期间咨询服务费在内的保理服务费的义务，对应

的权利主体只有谨诚保理公司。其次，根据《保理服务费协议》的约定，向新疆骑士公司支付期间咨询服务费，是支付保理服务费的方式之一，属于乐视移动智能公司履行《保理服务费协议》的方式。新疆骑士公司收取该费用的权利来源仍是谨诚保理公司，其无权直接向乐视移动智能公司主张该笔费用。第三，乐视移动智能公司作为协议的一方当事人，并未提交其与新疆骑士公司的《财务顾问协议》，无法查清各方是否有其他约定。在此情形下，谨诚保理公司向乐视移动智能公司主张期间咨询费的诉讼请求，符合合同约定，本院予以支持。对于乐视移动智能公司、乐视控股公司、贾跃亭关于谨诚保理公司无权要求期间咨询费的答辩意见，本院不予采信。

（二）关于谨诚保理公司是否有权主张超过合同有效期的保理服务费的问题。

乐视移动智能公司、乐视控股公司、贾跃亭在答辩中称，《保理服务费协议》的有效期为 2 年，有效期届满之后协议将失效，故谨诚保理公司要求乐视移动智能公司支付至货款本金付清之日止的保理服务费的诉讼请求中，超出合同有效期的部分，应予驳回。谨诚保理公司认为，根据《保理服务费协议》中关于保理服务费计算方式的约定，保理服务费以乐视移动智能公司实际占用保理融资款的天数进行计算，故在乐视移动智能公司未付清货款之前，都属于其实际占用保理融资款，均应支付保理服务费。对

此，本院认为，谨诚保理公司向乐视移动智能公司主张保理服务费的依据是《保理服务费协议》，其前提应是该协议有效。现《保理服务费协议》第十条第二款明确约定了协议的有效期间，即"本协议于 2016 年 12 月 1 日由甲乙双方代表签署。自双方签字之日起 2 年内有效，协议期满，经双方同意后可续约"。在超出协议有效期后，如双方未能续约，则《保理服务费协议》将归于无效，谨诚保理公司无权再依据该协议向乐视移动智能公司主张相应的保理服务费。故，本院对于谨诚保理公司要求乐视移动智能公司支付至货款本金付清之日止的保理服务费的诉讼请求，若货款本金付清之日在 2018 年 11 月 30 日以前，则予以支持；若货款本金付清之日在 2018 年 11 月 30 日之后，则对于此后的保理服务费，本院不予支持。

（三）关于保理服务费违约金的计算标准问题。

谨诚保理公司主张依据《保理服务费协议》第五条第 5.2 款，应按拖欠保理服务费金额的日万分之七标准支付逾期支付保理服务费的违约金。乐视移动智能公司、乐视控股公司、贾跃亭均认为该利息过高，违反了《中华人民共和国合同法》及相关法律法规的规定，应当以谨诚保理公司的实际损失为限来计算，请求法院予以调整。本院认为，鉴于保理服务费违约金也是对违约损害的填补，而乐视移动智能公司迟延支付保理服务费给谨诚保理公司造成的是资金占用损失，且谨诚保理公司主张的违约金计算标

- 29 -

准折合后年利率达到 25.55%，显属过高，乐视移动智能公司请求本院调整依据充足。故，本院仍根据公平原则和诚实信用原则予以衡量，将保理服务费违约金的计算标准酌减为年利率 24%。对于谨诚保理公司超出该部分的诉讼请求，本院不予支持。

五、关于贾跃亭的连带保证责任是否有效以及乐视控股公司、贾跃亭承担连带担保责任的条件是否成就的问题。

关于贾跃亭的连带担保责任是否有效的问题，贾跃亭在答辩中称，谨诚保理公司要求贾跃亭为乐视移动智能公司的涉案债务承担连带保证责任，属于过度担保、重复担保，此举措使有限责任无限化，背离了有限责任公司制度设立的初衷，贾跃亭的担保责任即便成立也应归于无效。本院认为，签订《回购担保协议》是贾跃亭的真实意思表示，《回购担保协议》的内容不违反法律、法规的强制性规定，属合法有效，故谨诚保理公司依据《回购担保协议》要求贾跃亭对乐视移动智能公司的涉案债务承担连带保证责任的主张，符合合同和法律规定，应予支持。对于贾跃亭该项答辩意见，因缺乏事实和法律依据，本院不予采信。

关于乐视控股公司、贾跃亭承担连带担保责任的条件是否成就的问题，乐视控股公司、贾跃亭主张，在谨诚保理公司提起诉讼时，《采购框架协议》仍在正常履行，并没有主债权到期或逾期的情形出现；且谨诚保理公司并未按照《回购担保协议》的约定向乐视控股公司、贾跃亭发出书面《回购通知书》，故乐视控股公

司、贾跃亭承担担保责任的条件尚未成就，谨诚保理公司的诉讼请求不应得到支持。谨诚保理公司认为，《回购担保协议》约定了回购和担保两个法律关系，在乐视移动智能公司未如期支付货款和保理服务费时，谨诚保理公司有权要求乐视控股公司、贾跃亭承担担保责任，提起诉讼即可达到通知的法律效力，故乐视控股公司、贾跃亭承担连带担保责任的条件已成就。本院认为，从《回购担保协议》的内容来看，其包含了担保和回购两个法律关系。该协议第二条是关于担保方式、期间和范围的约定，其中第一款载明："乙方（乐视控股公司、贾跃亭）提供的担保方式为连带责任担保，当丙方（乐视移动智能公司）没有履行或者没有全部履行其应付货款及保理服务费等时，甲方（谨诚保理公司）有权直接要求乙方承担担保责任"。第三条是关于回购方式的约定，其中第一款载明："当回购条件成立时，甲方向乙方发出《回购通知书》。自《回购通知书》发出之日起的十日内由乙方向甲方一次性支付全部回购价款。"可见，发出《回购通知书》，是要求乐视控股公司、贾跃亭承担回购责任的前提，而要求其承担担保责任，并不以发出《回购通知书》为要件。因协议中未约定应提供其他形式要件，则在符合承担担保责任的约定情形出现后，只要谨诚保理公司向乐视控股公司和贾跃亭主张权利，乐视控股公司、贾跃亭即应承担担保责任。根据已查明的事实，乐视移动智能公司在2017年6月15日未按期支付当期的保理服务费，又于2017年6月29

- 31 -

日未按期支付到期的货款，至此已符合《回购担保协议》第二条第一款关于承担担保责任的约定情形。因此，谨诚保理公司在2017年6月29日之后有权直接要求乐视控股公司、贾跃亭承担担保责任。本案中，谨诚保理公司并未提供其在起诉前向乐视控股公司、贾跃亭主张承担担保责任的证据，但其径行提起本案诉讼，在本案起诉状送达乐视控股公司、贾跃亭之日，即2017年7月7日，应视为谨诚保理公司向乐视控股公司、贾跃亭明确主张权利。故，乐视控股公司、贾跃亭承担担保责任的条件在2017年7月7日成就。因此，本院对于乐视控股公司、贾跃亭关于承担担保责任的条件尚未成就的答辩意见，不予采信。根据《回购担保协议》中关于担保范围的约定，谨诚保理公司要求乐视控股公司、贾跃亭对乐视移动智能公司的涉案债务承担连带清偿责任的诉讼请求，有事实和法律依据，本院予以支持。

六、关于乐视控股公司、贾跃亭逾期承担担保责任违约金的计算问题。

关于乐视控股公司、贾跃亭逾期承担担保责任违约金的计算，各方在起算时间、计算基数和计算标准方面均存在争议。

第一，关于起算时间。谨诚保理公司因认为乐视移动智能公司在2017年6月15日违约，乐视控股公司、贾跃亭即应承担担保责任，主张乐视控股公司、贾跃亭应于2017年6月16日起支付逾期承担担保责任的违约金。但如前所述，根据本院的认定，

乐视控股公司、贾跃亭承担担保责任的条件实际于 2017 年 7 月 7 日才成就，故该二者逾期承担担保责任的违约金应自 2017 年 7 月 8 日开始计算。

其次，关于计算基数。谨诚保理公司主张以 106 509 490.52 元为基数计算乐视控股公司、贾跃亭逾期承担担保责任的违约金，实际上是主张以剩余应付货款作为该违约金的计算基数。乐视控股公司、贾跃亭对此未提出异议，但如前所述，其认为应付货款数额应扣减已支付的保证金和罚息。本院认为，《回购担保协议》第七条约定 "乙方（乐视控股公司、贾跃亭）不按照本协议约定承担回购责任、担保义务或者违反本协议约定的其他义务的，每天应向甲方支付回购价款 0.1% 的违约金"。第一条第三款载明："回购价款指甲方（谨诚保理公司）按照《保理合同》约定实际支付的保理融资款扣除回购当时丙方（乐视移动智能公司）已经偿还部分的剩余金额（本金部分）以及该本金部分对应的逾期利息"。现谨诚保理公司仅主张以剩余应付货款为基数计算逾期承担担保责任的违约金，本院不持异议。但因根据本院认定，应付货款数额应扣减乐视移动智能公司已支付的保证金部分，故逾期承担担保责任违约金的计算基数亦应作相应扣减。且因应付货款分二笔到期，乐视控股公司、贾跃亭应承担的担保责任也应根据货款到期日的不同区分计算。相应的，乐视控股公司、贾跃亭逾期承担担保责任违约金的计算基数，也应按照货款到期时间的不同而区

分计算。即，自 2017 年 7 月 8 日起至 2017 年 7 月 29 日，应以 2017 年 6 月 29 日到期的货款扣减保证金后的数额作为基数进行计算；自 2017 年 7 月 30 日起至乐视移动智能公司涉案债务全部付清之日止，应以 2017 年 6 月 29 日到期的货款和 2017 年 7 月 28 日到期的货款总额扣减保证金后的数额作为基数进行计算。

第三，关于计算标准，谨诚保理公司主张依据《回购担保协议》第七条的约定，按每日千分之一的标准支付逾期承担担保责任违约金。乐视移动智能公司、乐视控股公司、贾跃亭均认为该利息过高，违反了《中华人民共和国合同法》及相关法律法规的规定，应当以谨诚保理公司的实际损失为限来计算，请求法院予以调整。本院认为，鉴于逾期承担担保责任违约金是对违约损害的填补，而乐视控股公司、贾跃亭逾期承担担保责任给谨诚保理公司造成的是资金占用损失，且谨诚保理公司主张的违约金计算标准折合后年利率达到 36.5%，显属过高，乐视控股公司、贾跃亭请求本院调低依据充足，故本院根据公平原则和诚实信用原则予以衡量，将乐视控股公司、贾跃亭逾期承担担保责任违约金的计算标准酌减为年利率 24%。对于谨诚保理公司超出该部分的诉讼请求，本院不予支持。

综上，本院对于谨诚保理公司要求乐视控股公司、贾跃亭支付自 2017 年 6 月 16 日至乐视移动智能公司涉案债务付清之日止逾期承担担保责任违约金的诉讼请求，符合上述条件的部分，予

以支持；超出部分，不予支持。

此外，关于谨诚保理公司要求乐视移动智能公司承担其为实现债权所发生的费用，以及要求乐视控股公司、贾跃亭对此承担连带清偿责任的诉讼请求，因谨诚保理公司未提供证据证明其为实现债权所支付的费用情况，故该主张缺乏事实依据，本院不予支持。

综上所述，本院认为，原告谨诚保理公司的诉讼请求部分成立，本院予以支持。依照《中华人民共和国合同法》第八条、第六十条、第一百零七条、第一百一十四条之规定，判决如下：

一、被告乐视移动智能信息技术（北京）有限公司于本判决生效后七日内给付原告深圳谨诚商业保理有限公司货款 90 844 786.58 元及相应的迟延履行利息（于 2017 年 6 月 29 日到期货款的迟延履行利息，应自 2017 年 6 月 30 日起至付清之日止，以 34 869 269.2 元为基数，按照年利率 24% 计算；于 2017 年 7 月 28 日到期货款的迟延履行利息，应自 2017 年 7 月 29 日起至付清之日止，以 55 975 517.38 元为基数，按照年利率 24% 计算）；

二、被告乐视移动智能信息技术（北京）有限公司于本判决生效后七日内给付原告深圳谨诚商业保理有限公司保理服务费（自 2017 年 5 月 16 日至 2017 年 6 月 28 日，以 106 509 490.52 元为基数，根据实际占用天数，按照日利率 13%/365 计算；自 2017 年 6 月 29 日至本判决第一项的货款本金全部付清之日止，以 90

844 786.58 元为基数，根据实际占用天数，按照日利率 13%/365
计算，截止于 2018 年 11 月 30 日）。

三、被告乐视移动智能信息技术（北京）有限公司于本判决
生效后七日内给付原告深圳谨诚商业保理有限公司逾期支付保理
服务费的违约金【自 2017 年 6 月起，每月以当期保理服务费（即
自上个月 16 日起至该月 15 日止应付的保理服务费）为基数，自
该月 16 日起至当期保理服务费付清之日止，按年利率 24%计算。】

四、被告乐视控股（北京）有限公司、贾跃亭对上述第一项、
第二项、第三项确定的被告乐视移动智能信息技术（北京）有限
公司的债务承担连带清偿责任；被告乐视控股（北京）有限公司、
贾跃亭承担连带清偿责任后，有权向被告乐视移动智能信息技术
（北京）有限公司追偿。

五、被告乐视控股（北京）有限公司、贾跃亭于本判决生效
后七日内给付原告深圳谨诚商业保理有限公司逾期承担担保责任
的违约金（以 34 869 269.2 元为基数，自 2017 年 7 月 8 日起至
2017 年 7 月 29 日，按年利率 24%计算；以 90 844 786.58 元为基
数，自 2017 年 7 月 30 日起至上述第一项、第二项、第三项确定
的被告乐视移动智能信息技术（北京）有限公司的债务付清之日
止，按年利率 24%计算）。

六、驳回原告深圳谨诚商业保理有限公司的其他诉讼请求。

如果未按本判决指定的期间履行给付金钱义务，应当依照《中

华人民共和国民事诉讼法》第二百五十三条之规定，加倍支付迟延履行期间的债务利息。

案件受理费589 473元，财产保全费5000元，由被告乐视移动智能信息技术（北京）有限公司、被告乐视控股（北京）有限公司、被告贾跃亭共同负担（于本判决生效后七日内交纳）。

如不服本判决，可以在判决书送达之日起十五日内，向本院递交上诉状，并按照对方当事人或者代表人的人数提出副本，上诉于北京市高级人民法院。



审　判　长　　宋　毅

审　判　员　　鲁　南

审　判　员　　张玉娜

二〇一七年　　月　　日

此件与原本核对无异

文件编码:170704-105056-78-75-083231

法官助理　　董　沛

书　记　员　　刁雨欣

- 37 -

# Civil Judgment

## of

# the Third Intermediate People's Court of Beijing

(2017) Jing 03 Min Chu No. 248

Plaintiff: Shenzhen Jincheng Commercial Factoring Co., Ltd., with its address at Room 201, Building A, No. 1 Qianwan 1st Road, Qianhai Shenzhen-Hong Kong Cooperation Zone, Shenzhen (settled in Shenzhen Qianhai Commercial Secretary Co., Ltd.).

Legal representative: Han RunRMB, general manager.

Authorized representative: Huang Jin, lawyer of Beijing Qijin Law Firm.

Authorized representative: Fu Jiahui, lawyer of Beijing Qijin Law Firm.


Defendant 1: LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd, with its address at (No.1, Linkong Second Road) North Wenhuaying Village, Gaoliying Town, Shunyi District, Beijing.

Legal representative: Jia Yuemin, manager.

Defendant 2: LETV Holdings (Beijing) Co., Ltd, with its address at Room 1102, 10/F, Building 3, No. 105 YaojiaRMB Road, Chaoyang District, Beijing.

Legal representative: Wu Meng, manager.

Defendant 3: Mr. Jia Yueting, male, born on December 15, 1973, Han nationality, living in No. 31 Jiefang West Road, Yaodu District, Linfen City, Shanxi Province.

Authorized representative jointly appointed by the three Defendants: Zou Yi, lawyer of Zhong Shu Law Firm.

Authorized representative jointly appointed by the three Defendants: Wang Xiaoqian, lawyer of Zhong Shu Law Firm.

After the court filed the case of contract, negotiorum gestio, unjustified enrichment disputes between the Plaintiff, Shenzhen Jincheng Commercial Factoring Co., Ltd, ("**Jincheng Factoring**") and the Defendants, LETV Mobile Intelligent Information Technology (Beijing) Co., Ltd ("**LETV Mobile**"), LETV Holdings (Beijing) Co., Ltd ("LETV Holdings") and Mr. Jia Yueting on June 27, 2017, a hearing was held in open session by ordinary procedure in accordance with the law. Huang Jin, the authorized representative of the Plaintiff Jincheng Factoring, and Zou Yi and Wang Xiaoqian, the authorized representatives jointly appointed by the Defendants, namely, LETV Mobile, LETV Holdings and Mr. Jia Yueting, attended the hearing. The case has now been concluded and the details are as follows.

The Plaintiff Jincheng Factoring made the claims to the court that: 1. LETV Mobile shall pay the goods price of RMB 107,685,472.02 (the principal of the goods price of RMB 106,509,490.52 + the unpaid factoring service fee of RMB 1,175,981.49), the delayed performance interest (calculated from June 16, 2017 to the date of the actual payment), as well as the expense incurred by Jincheng Factoring in realizing its creditor's rights; 2. LETV Holdings and Jia Yueting shall be jointly and severally liable for the payment of the said amounts, and pay the liquidated damages for delayed performance calculated from the date of the judgment document to the date of actual payment; 3. LETV Mobile, LETV Holdings and Jia Yueting shall bear the litigation cost and preservation cost with respect to this case. During the hearing of this case, the Plaintiff changed its claims as follows: 1. LETV Mobile shall pay the goods price of RMB 106,509,490.52, the delayed performance interest calculated from June 16, 2017 to the date of the actual payment (calculated by a daily interest of 0.1% based on the amount of delayed payment), as well as the expense incurred by Jincheng Factoring in realizing its creditor's rights; 2. LETV Mobile shall pay the factoring service fee of RMB 1,175,981.49 payable as of June

15, 2017; the factoring service fee for the period from June 16, 2017 to the date when the principal of the goods price mentioned in item 1 is fully paid off (calculation formula: unpaid principal of goods price * 13% / 365 days * actual occupation days); and the liquidated damages for the dalayed payment of factoring service fee for the period from June 16, 2017 to the date of full payment of the said factoring service fee (calculation formula: unpaid factoring service fee for each period * 0.7% * days of delayed payment); 3. LETV Holdings and Jia Yueting shall be jointly and severally liable for the said payments, and shall pay liquidated damages for the period from June 16, 2017 to the date when the amounts mentioned in items 1 and 2 are fully paid off (calculated by a daily interest of 0.1% based on RMB 106,509,490.52); 4. LETV Mobile, LETV Holdings and Jia Yueting shall bear the litigation cost and preservation cost with respect to this case.

For the said claims, the facts and ground are as follows. On December 2, 2016, the Plaintiff Jincheng Factoring signed with BOE Modern (Beijing) Display Technology Co., Ltd ("**BOE**"), an outsider, a *Commercial Factoring Business Contract (Non-recourse Type)* (the "***Factoring Contract***"), under which Jincheng Factoring paid the factoring payment in full to BOE on December 16, 2016 and thus acquired the creditor's rights of accounts receivable of RMB 156,647,039.40 under the *Purchase Framework Agreement* between BOE and LETV Mobile on June 31, 2015. LETV Mobile was aware of the transfer of the creditor's rights, and signed the *Agreement on Service Fee under the Commercial Factoring Business Contract* (the "*Factoring Service Fee Agreement*") with Jincheng Factoring on December 10, 2016, which stipulates that LETV Mobile shall pay the factoring service fee to Jincheng Factoring on factoring financing. Meanwhile, to ensure LETV Mobile to perform its obligations in accordance with the said agreement, Jincheng Factoring and LETV Mobile, LETV Holdings and Jia Jianting jointly signed the *Repurchase Guarantee Agreement*, which stipulates that LETV Holdings and Jia Yueting shall provide joint and several liability guarantee, and if LETV Mobile fails to perform or fails to fully perform its obligations to pay the goods price and factoring service fee, Jincheng Factoring has the right to directly request

LETV Holdings and Jia Yueting to bear the guarantee liability. After the said agreements were signed, LETV Mobile paid part of the goods price (principal) of RMB 50,137,548.88, but the balance of 106,509,490.52 and the factoring service fee of RMB 1,175,981.49 due on June 15, 2017 have not been paid up to now.Therefore, Jincheng Factoring filed the lawsuit applying to the court to support its claims.

The Defendant LETV Mobile argued that it did not agree with the claims of Jincheng Factoring. The facts and grounds are as follows: I. Jincheng Factoring has no direct interest in the case and does not have the qualification of subject, thus all its claims should be rejected. Jincheng Factoring once issued a *Notice on Arrangement of Creditor's Rights Custody* to LETV Mobile, LETV Holdings and Jia Yueting in 2016, informing them that it have transferred the creditor's rights of account receivables concerned to Shanghai Lancai Asset Management Co., Ltd ("**Shanghai Lancai**"), and requiring LETV Mobile, LETV Holdings and Jia Yueting to perform their obligations of debt payment and guarantee to Shanghai Lancai from the date of receipt of the notice. Therefore, Jincheng Factoring has no right to make claims as a creditor in this case; II. Even if it is assumed that Jincheng Factoring has the right to make claims in this case, its claims are inconsistent with the facts, and lack of legal basis and thus should not be supported. 1. The amount payable claimed by Jincheng Factoring is calculated wrong. The following two should be deducted from the principal of goods price of RMB 106,509,490.52: the goods price deposit of RMB 1,566,479.94 paid by LETV Mobile to Jincheng Factoring in accordance with the agreement and the penalty interest of RMB 42,058.66 to be paid by Jincheng Factoring to LETV Mobile due to the former's delayed payment of the factoring financing fund for 2 days. 2. The base and starting date for calculating the delayed performance interest as claimed by the Jincheng Factoring are wrong, and the amount of delayed performance interest is too high, so LETV Mobile applied to the court to adjust it in accordance with law. The goods price concerned should be paid in three installments. When Jincheng Factoring filed the case, LETV Mobile has paid the first installment on schedule, and the payment dates of

the second and third installments have not met. Notwithstanding the payment dates of the rest two installments have met now, the delayed performance interest on the two installments should be calculated by two periods, each from the date following the payment date (i.e., In calculting the delayed performance interest on the second installment, the aforesaid deposit and penalty interest shall be deducted from the base amount). The rate for delayed performance interest on the goods price stipulated in the *Repurchase Guarantee Agreement* is 0.1%/day, i.e. 36.5% if converted into an annual interest rate. The nature of the delayed performance interest is the same as the nature of liquidated damages. In accordance with relevant laws, the delayed performance interest is a kind of punitive measure of compensation nature, which should be claimed to the extent of actual loss of the non-breaching party. In this case, Jincheng Factoring failed to present evidence to prove its actual loss, and, even if there is actual loss, it shall be calculated to the extent of the fund occupation fee during the period when the goods price was occupied. The amount claimed by Jincheng Factoring is far beyond its actual loss reported, which shall be invalid, so LETV Mobile applied to the court to lower it. III. In accordance with the provisions of *Factoring Service Fee Agreement* and the principle of contract relativity, the period consulting service fee, which constitutes a part of the factoring service fee of RMB 1,175,981.49 as claimed by Jincheng Factoring, should be claimed by Xinjiang Knight Alliance Equity Investment Co., Ltd ("**Xinjiang Knight**") against LETV Mobile, and Jincheng Factoring has no right to request LETV Mobile to perform its obligations under the *Financial Consulting Agreement*. 4. The term of the *Factoring Service Fee Agreement* is 2 years, from December 1, 2016 to November 30, 2018. LETV Mobile only needs to pay the factoring service fee to Jincheng Factoring within the term of the agreement, and after the term expires, the agreement will become invalid. Therefore, there is no contractual basis and legal basis for Jincheng Factoring to request LETV Mobile to pay the factoring service fee for the period until the date of full payment of the principal of the goods price. V. 0.7%/day (i.e. 25.55% if converted into an annual interest rate), the rate for delayed performance interest on factoring service fee claimed by Jincheng Factoring, is

obviously too high. Jincheng Factoring failed to present evidences to prove that it actually incurred losses due to LETV Mobile's failure to pay the factoring service fee on schedule, and, even if there is actual loss, it shall be calculated to the extent of the fund occupation fee during the period when the factoring service fee was occupied. The amount claimed by Jincheng Factoring is far beyond its actual loss reported, which shall be invalid, so LETV Mobile applied to the court to lower it. VI. There is no factual and legal basis for Jincheng Factoring to request LETV Mobile to bear the expense incurred by it in realizing the creditor's rights, the litigation cost and preservation cost in this case. Jincheng Factoring failed to submit evidence within the period of proof to prove that it actually incurred expense in realizing the creditor's rights. In addition, bearing these expenses will increase the burden of LETV Mobile, which violates the basic legal principles of justice and fairness. Thus, the claim should be rejected.

The Defendant LETV Holdings argued that it did not agree with the claims of Jincheng Factoring, but it agreed with the defense opinion of the Defendant LETV Mobile. In addition, the conditions for LETV Holdings to undertake the guarantee liability have not been fulfilled, so Jincheng Factoring has no right to request LETV Holdings to undertake the guarantee liability. To be specific, the period for LETV Holdings to undertake guarantee liability shall be 2 years from the due date of the principal creditor's rights. When Jincheng Factoring filed the lawsuit, LETV Mobile had normally performed its obligations for paying the goods price and the factoring service fee payable in accordance with relevant agreement, and the principal creditor's rights was not due or overdue. Even if it is assumed that there was a circumstance under which LETV Holdings shall assume the guarantee liability, Jincheng Factoring failed to issue a written *Repurchase Notice* to LETV Holdings as agreed. Thus, the conditions for LETV Holdings to undertake the guarantee liability have not been fulfilled. Even if it is assumed that LETV Holdings shall undertake the guarantee liability to Jincheng Factoring, the amount that Jincheng Factoring claimed based on the daily interest rate of 0.1% is too high, and

far beyond its actual loss, which shall be invalid and be lowered.

The Defendant Jia Yueting argued that he did not agree with the claims of Jincheng Factoring, but he agreed with the defense opinion of LETV Mobile as well as the defense opinion of LETV Holdings that the conditions for the guarantor to undertake the guarantee liability have not been fulfilled. In the opinion of Jia Yueting, the conditions for him to undertake the guarantee liability have not been fulfilled as well. In addition, Jia Yueting's joint and several guarantee liability for the debts of LETV Mobile as alleged by Jincheng Factoring is actually excessive guarantee and repeated guarantee, which makes the limited liability of a company unlimited and goes againt the original intention of the establishment of the limited liability company system. To this end, Jia Yueting's guarantee liability should be null and void even if it is established. Such kind of situation that an individual bear joint and several guarantee liability for an enterprise is not in line with the opinion of He Xiaorong, presiding judge of the second courtroom of civil tribunal of the Supreme People's Court, in *Let Justice Provide Value Guidance for Finance to Back to Basis*. In order to maintain the cornerstone of the Company Law, the rule of justice and equality of civil juristic acts, as well as the social stability, due care shall be taken to the situation that an individual undertakes unlimited joint and several guarantee liability for a company's debts o invalidate the improper and repeated guarantee liability of an individual.

To spport its claims, Jincheng Factoring submitted the following evidences in accordance with law: 1. *Factoring Contract*; 2. *Purchase Framework Agreement* (Contract No.: L[EZN-MIQT-2015-631]) and its *Supplementary Agreement*, and the *Supplementary Agreement (Contract No.: 1155196)*; 3. *Factoring Service Fee Agreement* and its appendix "*List of Account Receivable Creditor's Rights Transferred*"; 4. *Repurchase Guarantee Agreement*; 5. voucher for transfer of factoring financing fund; 6. voucher for receipt of deposit; 7. voucher for Jincheng Factoring's receipt of principal of goods price; 8. voucher of receipt of factoring service fee. All of LETV Mobile, LETV Holdings and Jia Yueting have no objection to the authenticity, legality and relevance of the said evidences.

To support its defense opnions, LETV Mobile, LETV Holdings and Jia Yueting submitted the following evidences in accordance with law: 1. *Notice on Arrangement of Creditor's Rights Custody* (copy) (No.: XYJK-2G16004-03-TZ_2); 2. voucher for payment of deposit; 3. vouchers for payment of factoring service fee during the period from January 2017 to June 2017. The cross examination opinions of Jincheng Factoring are as follows: it did not recognize the authenticity of evidence 1, on the ground that the notice is a copy rather than an original; Jincheng Factoring once entrusted the creditor's rights to Shanghai Lancai for custody, but it is not a transfer of creditor's rights; it recognized the authenticity of evidence 2; it did not recognize the authenticity of evidence 3, on the gound that they are all electronic vouchers rather than original, and the payment of factoring service fee shall be subject to the evidence submitted by Jincheng Factoring.

For the evidences that the parties have no dispute, the court affirmed them and put them on file; for the evidences and facts in dispute between the parties, the court determined based on the comprehensive consideration of other evidences and the statements of the parties.

After hearing, the court ascertained that:

On December 1, 2016, LETV Mobile and BOE signed a *Purchase Framework Agreement*, which stipulates that LETV Mobile will purchase the products specified therein from BOE, and includes detailed provisions on price terms, estimated demand, order, raw material and component purchase and material responsibility, delivery, receipt and inspection. On the same day, both parties signed a *Supplementary Agreement*, which stipulates that both parties reached agreement on the accounts payable under the original agreement as follows: 1. BOE agrees to sign a *Factoring Contract* with Jincheng Factoring, who shall provide factoring service to BOE in accordance with the *Factoring Contract*. 2. LETV Mobile agrees to bear the corresponding factoring service fee in accordance with Article 6.2 of the *Factoring Contract*....... 4. In case of any of the following events during the performance of the *Factoring Contract*, LETV Mobile shall continue to bear the payment obligation for the corresponding part of the

accounts payable: (1) where Jincheng Factoring requires BOE to repurchase all or part of the accounts receivable under the *Factoring Contract* in accordance with Article 5 and Article 9 of the *Factoring Contract*. Besides, there are also other contents stipulated therein. In addition, the two parties signed a *Supplementary Agreement (Contract No.: 1155196)*, under which the payment dates of the business orders with respect to the accounts receivable concerned are adjusted and specified as follows: RMB 50,137,548.88 due on May 30, 2017, RMB 50,533,973.15 due on June 29, 2017, RMB 55,975,517.38 due on July 28, 2017, totalling RMB 156,647,039.41 RMB in total. It is also stipulated in the *Supplementary Agreement (Contract No.: 1155196)* other matters such as the payment account of accounts receivable.

On December 2, 2016, BOE (as Party A) and Jincheng Factoring (as Party B) signed the *Factoring Contract* (Contract No: SZJC-201611-BOELSYD-BLHT), which stipulates that: Whereas, Party A sells goods or provides services to the buyer on credit, and applies to Party B for domestic factoring business without recourse with respect to the account receivables it is entitled against the buyer under the transaction contract contemplated thereby; Party B is entrusted to provide financing service for Party A, and both parties enter into this Contract accordingly; Article 2 Term of factoring. The term of factoring hereunder shall be from December 2, 2016 to July 28, 2017, totaling 8 months; Article 4 Repurchase of accounts receivable. This Contract is a factoring contract without recourse. Therefore, in case the buyer (note: LETV Mobile) fails to make payment before or on the due date of the accounts receivable, Party B will not recourse to Party A for the factoring advance payment, but it reserves the right to recourse from the guarantor under the guarantee agreement. Except for under the circumstances specified in Article 5 or Article 9 (1) hereof, in case of any of the said circumstances, Party B shall have the right to decide, at its own discretion, to require Party A or the guarantor to perform the said obligations in accordance with the agreement; Article 5 Early repurchase of accounts receivable. In case of any of the following circumstances, Party A shall early repurchase the accounts

receivable transferred to Party B, and Party B shall return the factoring service fee in proportion: 1. Before the due date of the accounts receivable, the buyer notifies Party B in any written form of the commercial disputes under the transaction contract, or Party B learns, either from Party A or through any other means, that there is dispute under the transaction contract. 2. Party A or the buyer has commercial fraud under the transaction contract. 3. There is any related transaction under the transaction contract between Party A and the buyer, or there is any circumstance that the accounts receivable should be subject to credit-debt offset, allowance, refund or otherwise that cause the impairment of the accounts receivable; Article 6 Factoring financing fund and factoring service fees. 1. Both parties agree that the total amount of the accounts receivable transferred hereunder is RMB 156,647,039.40, which shall be paid by Party B to Party A before December 7, 2016. 2. Both parties agree that the annual rate for calculating the factoring service fee hereunder shall be 13%. LETV Mobile shall separately enter into an *Agreement on Service Fee under the Commercial Factoring Business Contract* with Party B and pay the said factoring service fee; Article 9 Termination of contract.1. In case of any of the following circumstances of Party A, Party B shall have the right to unilaterally terminate the *Factoring Contract* and require Party A to early repurchase the accounts receivable, and the factoring service fees already collected by it will not be returned: (1) any of the circumstances for early repurchase stipulated in Article 5 hereof occurs; (2) Party A misappropriates the factoring financing fund for other usage rather than the agreed usage; (3) Party A is involved or may be involved in major property litigation, which may affect the repurchase of the accounts receivable; (4) Party A encounters major change in its financial situation in the course of its operation, which may affect the repurchase of the accounts receivable; (5) Party A encounters corporate change, merger, division, seizure of property or other circumstances in the course of Party A's business operation, which may affect the repurchase of the accounts receivable. In addition to that, there are also other contents stipulated therein.

On December 1, 2016, LETV Mobile (as Party A) and Jincheng

Factoring (as Party B) signed the *Factoring Service Fee Agreement*, which stipulates that: BOE, as the upstream service company of Party A, applied to Party B for commercial factoring business due to the needs of operation and management, with a total amount of accounts receivable of RMB 156, 647, 039.40. Party B accepted the application of BOE, and entered into a *Factoring Contract* (the "**Master Contract**") with, BOE; Article 2 With respect to the factoring service fee incurred during the performance of the Master Contract, both parties agree as follows: 2.1.1 The annual rate of the factoring service fee under the Master Contract shall be 13%, and the factoring service fee shall accrue on a daily basis (the daily interest rate = annual interest rate / 365). 2.1.2 The factoring service fee shall be calculated based on the following formula: The total amount of accounts receivable * the actual number of days from the date when Party B issues factoring financing fund to BOE to the last date when LETV Mobile occupies the factoring financing fund * daily rate. If the balance of the loan principal changes during the period of occupation of the factoring financing fund, it shall be calculated by different periods and on an accumulative basis. 2.1.3 The factoring service fee is divided into three parts: period factoring interest, period factoring service fee and period consulting service fee. (1) Period factoring interest: to be calculated on a daily basis at the annual rate of 7.5%. Party A shall pay it to the account designated by Party B on the 15th day of each calendar month. Such designated account is the account opened by Beijing Lancai Information Technology Co., Ltd ("**Beijing Lancai**") in Shanghai Huarui Bank Co., Ltd, with the account number of 8000 0023 2765. (2) Period factoring service fee: to be calculated on a daily basis at the annual rate of 0.5%. Party A shall pay it to the account designated by Party B on the 15th day of each calendar month. Such designated account is the account opened by Jincheng Factoring in Beijing Deshengmen Branch of Ping An Bank, with the account number of 11016598341008. (3) Total amount of period consulting service fee = factoring service fee - period factoring interest - period factoring service fee. Party A shall pay it on the 15th day of each calendar month. Xinjiang Knight will, as the financial consultant of the project, separately enter into a *Financial Consulting Agreement* with Party A and collect the said

consulting service fee (note: the account designated by both parties for collection/payment is not specified in the agreement); Article 5 Liability for breach. 5.1 If either party fails to perform this Agreement or fails to fully perform this Agreement in time, it shall be deemed as a breach of contract. 5.2 If Party A delays the payment of or fails to pay the factoring service fee in violation of this Agreement, it shall pay liquidated damages at a rate of 0.07% of the amount in arrears per day; Article 10 Other provisions. This Agreement is signed by the representatives of both parties on December 1, 2016, and shall be valid for 2 years from the date of signing by both parties, provided that it can be renewed upon the agreement of both parties. The number, amount and maturity of accounts receivable stipulated in the appendix *"List of Account Receivable Creditor's Rights Transferred"*to the aforesaid agreement is consistent with that stipulated in the *Supplementary Agreement (Contract No.: 1155196)* to the *Purchase Framework Agreement.*

To ensure LETV Mobile repays the advance payment of Jincheng Factoring in accordance with the *Factoring Contract*, Jincheng Factoring (as Party A), LETV Holdings (as Party B 1), Jia Yueting (as Party B 2) and LETV Mobile (as Party C) jointly signed the *Repurchase Guarantee Agreement*, which stipulates that: Party B (including Party B 1 and Party B 2) agrees and undertakes to bear the irrevocable joint and several liability guarantee to Party A in the form of repurchase; Subject to Party B's provision of the joint and several guarantee to Party C, Party A shall fulfil its factoring obligation to advance the price (factoring financing fund) that Party C shall pay to the supplier (BOE) in accordance with the *Factoring Contract*; All parties agree on the following: I. Definitions of terms. 3. Repurchase Price: refers to the balance of the factoring financing fund actually paid by Party A in accordance with the *Factoring Contract* less the amount already repaid by Party C at the time of repurchase (i.e. the principal part) and the overdue interest corresponding to the principal part. 4. Goods Price Deposit: refers to deposit of goods price paid by Party C to Party A before the loan extension under the factoring service to ensure that Party C repay the goods price in full and in time. Goods Price Deposit =

amount of factoring financing fund * 10%. II. Guarantee method, period and scope. 1. Guarantee method. The guarantee provided by Party B is a joint and several liability guarantee. If Party C fails to perform or fails to fully perform its obligations to pay the goods price and factoring service fee, Party A shall have the right to directly require Party B to undertake the guarantee liability. 2. Guarantee period. (1) The period for Party C to perform its obligation to pay goods price is 12 months, and the specific starting date is subject to that agreed in the *Factoring Contract*. (2) The guarantee period shall be two years, starting from the date when the principal creditor's rights are paid off. 3. The guarantee scope of Party B is the loss caused to Party A by Party C's failure to perform its obligations under the *Factoring Contract*, including: (1) Party C fails to pay the account payable, interest, default interest, insurance premium, deposit, compensation and other expenses payable by Party C on time and in full in accordance with the *Factoring Contract*; (2) the ownership or value of the goods is damaged; (3) as agreed by the parties, the guarantee amount is the insured balance of the factoring projects specified herein totaling RMB 156,647,039.40; (4) all reasonable expenses paid by Party A to realize the said rights and interests, including but not limited to reasonable attorney's fees, litigation fees, travel expenses, etc. III. Repurchase method. 1. When the repurchase conditions are satisfied, Party A shall issue a *Repurchase Notice* to Party B, who shall pay the Repurchase Price to Party A in a lump sum within ten days from the date of the notice. 2. Repurchase conditions: The repurchase conditions shall be deemed as being satisfied if any cause for termination of the contract as stipulated in the *Factoring Contract* occurs, including: Party C delays in paying the goods price to the supplier, which causes Party A's creditor's rights to not be recovered in time when due, and Party C still fails to perform or fully perform its payment obligations for 15 days after paying penalty interest to Party A in accordance with the agreement; Party C fails to make up the deposit in time; Party C may be declared bankrupt, dissolved or liquidated in accordance with law. Whether repurchase condition is satisfied has nothing to do with the condition of the goods hereunder (including but not limited to loss, damage, etc.); IV. Deposit. In case of overdue payment of goods price by

Party C, Party A shall have the right to use Party C's deposit to advance the goods price and notify Party C to make up the deposit. If Party C fails to make up the deposit before the 10th day of the next calendar month from the date of Party C's overdue payment, Party B shall make up for Party C's deposit instead. If Party B fails to make up the deposit in time within 3 working days after receiving the written notice from Party A, Party A shall have the right to require Party B to fulfill its repurchase commitment and guarantee obligation immediately. Party A shall return the corresponding deposit within three working days from the date when Party C fulfils its obligation to pay the accounts payable hereunder, or within three working days from the date when Party B fulfils its obligation to pay the Repurchase Price. V. Rights and obligations of the parties. 1. Party A undertakes to extent the loan within 5 working days before and after the date of loan extension as agreed in the *Factoring Contract* with the supplier. If Party A fails to extent the loan in time, Party A shall pay Party C penalty interest calculated based on the loan interest rate of the same period issued by the People's Bank of China. If the time of loan extension as agreed between Party A and the supplier under the *Factoring Contract* is affected due to Party C's failure to pay the guarantee money on time and affects, the time of loan extension shall be postponed accordingly without incurring any penalty interest. 2. When the conditions agreed herein are satisfied, Party A shall issue the *Repurchase Notice* to Party B in a timely manner........5. Where Party C delays in payment to the supplier, which causes the factoring creditor's rights between Party A and the supplier to not be recovered in time when due, Party A shall have the right to require Party C to pay penalty interest (at a daily rate of 0.1%) on the part of delayed payment, and Party C shall continue to fulfil the payment obligation or Party B shall fulfil the repurchase obligation in accordance with this Agreement.......VII. Liability for breach. Party B shall pay Party A 0.1% of the Repurchase Price as liquidated damages per day if it fails to fulfil the repurchase obligation, the guarantee obligation or breaches other obligations as agreed herein. In case any economic loss caused to Party A and the amount of liquidated damages is insufficient to make up for the loss, Party B shall compensate Party A for the actual economic loss, including

creditor's rights, interest, liquidated damages, compensation and the reasonable expenses for realizing the creditor's rights (including but not limited to the expenses for notarization, evaluation, appraisal, auction, litigation or arbitration, service, property preservation, enforcement, attorney's fee and travel expense)

After the said agreement was signied, LETV Mobile paid a deposit of RMB 15,664,703.94 to Jincheng Factoring on December 14, 2016.

On December 16, 2016, Jincheng Factoring paid the factoring financing fund of RMB 156,647,039.40 to BOE.

On January 16, 2017, February 15, 2017, March 14, 2017, April 14, 2017, and May 17, 2017, LETV Mobile respectively paid the corresponding period factoring interests to the account of Beijing Lancai designated by Jincheng Factoring, and paid the corresponding period factoring service fees to the account designated by Jincheng Factoring, and paid the corresponding period consulting service fees to Xinjiang Knight.

On June 1, 2017, BOE paid the principal of goods price of RMB 50,137,548.88 to Jincheng Factoring in five installments. By then, all accounts receivable of Jincheng Factoring due on May 30, 2017 have been recovered. On the same day, LETV Mobile respectively paid the period factoring interest of RMB 164,835.78 to the said account of Beijing Lancai, paid the period factoring service fee of RMB 10,989.06 to the account designated by Jincheng Factoring, and paid the period consulting service fee of RMB 109,890.52 to Xinjiang Knight. Such amount is the factoring service fee for the goods price due on May 30, 2017 for the period from May 15, 2017 to May 31, 2017. Since then, LETV Mobile has not paid the factoring service fee to the relevant accounts.

On June 27, 2017, Jincheng Factoring filed a lawsuit to the court, which sent the statement of claim to LETV Holdings and Jia Yueting on July 7, 2017.

After June 1, 2017, BOE has not paid the remaining goods price to Jincheng Factoring, neither have LETV Mobile, LETV Holdings and Jia Yueting made any further payment.

The said facts are supported by the *Purchase Framework Agreement* and its *Supplementary Agreement*, the *Supplementary Agreement (Contract No.: 1155196)*, the *Factoring Contract*, the *Factoring Service Fee Agreement*, the *Repurchase Guarantee Agreement*, the payment voucher, receipts and the statements of the parties, etc.

The court believes that the *Factoring Contract*, the *Purchase Framework Agreement* and its *Supplementary Agreement*, the *Factoring Service Fee Agreement* and the *Repurchase Guarantee Agreement* signed by the parties are the expression of true intention of all parties, and the contents thereof do not conflict with the mandatory provisions of laws and administrative regulations, thus they shall be legal and effective, and the parties thereto shall perform their respective obligations thereunder. Since Jincheng Factoring signed the *Factoring Contract* with BOE, and thus acquired the account receivables creditor's right of BOE againt LETV Mobile under the *Purchase Framework Agreement* and its *Supplementary Agreement*, it has the right to directly claim the creditor's rights from LETV Mobile when LETV Mobile fails to make the payment as agreed.

Now, based on the opinions of all parties, the focuses of the dispute in this case are as follows. I. On whether Jincheng Factoring has transferred the creditor's rights concerned to Shanghai Lancai, i.e. whether Jincheng Factoring has the right to file the case; II. On whether LETV Mobile breaches the *Purchase Framework Agreement* and the determination of the time of breach; III. On the calculation of goods price payable and its delayed performance interest; IV. On whether Jincheng Factoring has the right to claim the period consulting fee in the factoring service fee, the factoring service fee beyond the term of contract, and the calculation of liquidated damages for factoring service fee; V. On whether the joint and several guarantee liability of Jia Yueting is effective, and the conditions for LETV Holdings and Jia Yueting to bear the joint and several guarantee liability are satisfied; VI. On the calculation of liquidated damages of LETV Holdings and Jia Yueting for delayed performance of guarantee liability.

1. On whether Jincheng Factoring has transferred the creditor's rights

concerned to Shanghai Lancai, i.e. whether Jincheng Factoring has the right to file the case.

LETV Mobile, LETV Holdings and Jia Yueting said in their defense opinions that Jincheng Factoring has transferred the creditor's right of accounts receivable concerned to Shanghai Lancai, so it has no right to make any claim as a creditor. To support their opinions, LETV Mobile, LETV Holdings and Jia Yueting submitted the *Notice on Arrangement of Creditor's Rights Custody* (Copy) to the court as evidences. However, Jincheng Factoring did not recognize it, and held that the *Notice on Arrangement of Creditor's Rights Custody* is not the original and thus its authenticity cannot be confirmed. Jincheng Factoring have entrusted the creditor's rights concerned but not transferred them. The court holds the opinions as follows. Firstly, the parties shall bear the burden of proof for their claims; otherwise, they shall bear the consequences of failure to prove. Now that LETV Mobile, LETV Holdings and Jia Yueting claimed that Jincheng Factoring has transferred the creditor's rights concerned, but they failed to provide the original of the *Notice on Arrangement of Creditor's Rights Custody*, and the Jincheng Factoring did not recognize the claims, the court cannot confirm the authenticity of the transfer of the creditor's rights concerned. Secondly, the time shown on the *Notice on Arrangement of Creditor's Rights Custody* is 2016. However, as for the actual performance of the agreement by the parties in 2017, LETV Mobile still remitted the first installment of goods price due in June 2017 into the BOE's account designated by Jincheng Factoring and BOE as agreed, and BOE then directly remitted the amount into the account of Jincheng Factoring through that account. LETV Mobile also recognized in the defense opinions that the said payment was made by it to Jincheng Factoring. It can be seen that LETV Mobile did not regard Shanghai Lancai as the obligee of the creditor's right concerned in the actual performance. To sum up, the court does not recognize the authenticity of the *Notice on Arrangement of Creditor's Rights Custody* and does not accept the defense opinions of LETV Mobile, LETV Holdings and Jia Yueting, and helds that Jincheng Factoring has the right to file this case in accordance with relevant

contract.

II. On whether LETV Mobile breaches the *Purchase Framework Agreement* and the determination of the time of breach.

Since Jincheng Factoring signed the *Factoring Contract*, it acquired the account receivables creditor's right of BOE against LETV Mobile under the *Purchase Framework Agreement*. Therefore, violation of the agreement of the *Purchase Framework Agreement* by LETV Mobile is the precondition for Jincheng Factoring to claim for payment from LETV Mobile and the basis for Jincheng Factoring to claim for calculation of delayed performance interest. However, there is a dispute over when LETV Mobile violates the agreement.

Jincheng Factoring claimed that LETV Mobile shall pay the delayed performance interest of the remaining goods price from June 16, 2017, i.e., it believed that LETV Mobile violated the agreement on June 15, 2017. Grounds: LETV Mobile violated the *Factoring Service Fee Agreement* on June 15, 2017 by not paying the factoring service fee on schedule. 2, LETV Mobile, LETV Holdings and Jia Yueting were subject to well-known major property lawsuits and major financial changes, which affected the creditor's right of Jincheng Factoring. This is in accordance with the provisions of Article 4 of the *Factoring Contract* on early repurchase. Jincheng Factoring thereby has the right to require LETV Holdings and Jia Yueting to perform their obligations as guarantors. As the principal debtor, LETV Mobile shall also be restricted by the *Factoring Contract*. 3. LETV Mobile, LETV

Holdings and Jia Yueting were subject to well-known major property lawsuits and major financial changes. They showed by their behaviors that they were not performing their contractual obligations. This is in accordance with the provisions of Article 108 of the *Contract Law*. Jincheng Factoring may require the three parties to bear the liability for breach of contract before expiration of the performance period. 4. After Jincheng Factoring brought this case, LETV Mobile, LETV Holdings and Jia Yueting all did not perform the obligation of repayment. LETV Mobile, LETV Holdings and Jia Yueting did not endorse the claims of Jincheng Factoring, and argued that when Jincheng Factoring brought this case, LETV Mobile has made the first payment on schedule, the date of payment of remaining goods price has not yet expired, and the Master Contract is being performed normally. Even if that the date of payment of remaining goods price has expired now, the delayed performance interest on the remaining goods price shall be calculated in periods based on the payment date from the day after the due date, i.e., LETV Mobile breached the *Purchase Framework Agreement* upon expiration of payment date of corresponding goods price.

The court believes that the claim of Jincheng Factoring that LETV Mobile breached of the *Purchase Framework Agreement* on June 15, 2017 has no contractual or legal basis, but during the proceedings, the payment date of the goods price has expired, and LETV Mobile failed to pay on schedule as agreed. Therefore, the part of the claim of Jincheng Factoring

for payment of goods price from LETV Mobile that complies with contractual and legal provisions shall be supported on the following grounds:

Firstly, the *Purchase Framework Agreement* was being performed normally on June 15, 2017 without any breach. In accordance with the agreement signed by the parties, the goods price shall be due in three installments on May 30, 2017, June 29, 2017 and July 28, 2017 respectively. On June 1, 2017, LETV Mobile has performed the obligation to pay the goods price due on May 30, 2017, the remaining goods price was not due on June 15, 2017, and the master agreement *Purchase Framework Agreement* was being performed normally. The *Purchase Framework Agreement* and the *Factoring Service Fee Agreement* are two independent contracts. Even if LETV Mobile failed to pay corresponding factoring service fee on June 15, 2017, which breached the *Factoring Service Fee Agreement*, according to the relativity principle of contract, Jincheng Factoring only has the right to require LETV Mobile to pay corresponding factoring service fee in such case, and does not have the right to require it to pay the goods price not due under the *Purchase Framework Agreement* in advance.

Secondly, the claim of Jincheng Factoring is not in accordance with the provisions of Article 4 of the *Factoring Contract* on early repurchase of accounts receivable. First, Jincheng Factoring did not submit any evidence to prove that LETV Mobile, LETV Holdings and Jia Yueting

-20-

were subject to major financial lawsuits and major financial changes. Second, even if it is well-known and is not required to be proved, the claim of Jincheng Factoring that the above circumstances are in accordance with the provisions of the *Factoring Contract* on early repurchase is also not tenable. The *Factoring Contract* was signed by BOE and Jincheng Factoring, rights and obligations were also set for the two parties, and Paragraph 2, Article 4 of the *Factoring Contract* is about provisions on early repurchase of accounts receivable. In accordance with the full text of the contract, the meaning of Paragraph 2 of Article 4 shall be that: in any circumstance specified in Article 5 or of early repurchase in Paragraph (1) of Article 9, Party B (Jincheng Factoring) shall have the right to decide to perform the obligation of payment to Party A (BOE) or require the guarantors (LETV Holdings and Jia Yueting) to perform the obligation of payment as agreed. Article 5 of the *Factoring Contract* is about provisions on circumstances of early repurchase of accounts receivable, and states that "In the following circumstances, Party A shall early repurchase the accounts receivable transferred to Party B, and Party B shall return the factoring service fee in proportion: 1. before the due date of the accounts receivable, the Buyer (LETV Mobile) notifies Party B of any commercial dispute under the transaction contract in any written form or Party B is informed of any dispute arising from the transaction contract through Party A or any other means." Article 9 is about provisions on termination of contract. Paragraph (1) states that "If Party A is in any one

of the following circumstances, Party B shall have the right to terminate the *Factoring Contract* unilaterally, and require Party A to early repurchase the accounts receivable, with factoring service fee already collected not to be returned. (1) Conditions for early repurchase as agreed in Article 5 hereof appear; (2) Party A use the factoring financing fund for other purposes in violation of the agreed use of the factoring financing fund; (3) Party A is or may be subject to major financial lawsuit, which may affect the repurchase of accounts receivable; (4) in the course of business operation, Party A is subject to major financial changes, which may affect the repurchase of accounts receivable; (5) in the course of business operation, Party A is subject to enterprise change, merger, division, reorganization and property seizure, which may affect the repurchase of accounts receivable. It can be seen that "Party A" as mentioned above refers to BOE rather than LETV Mobile, LETV Holdings or Jia Yueting, and the circumstances as described in Article 5 and Article 9 are circumstances occur in BOE. Therefore, even if LETV Mobile, LETV Holdings and Jia Yueting were subject to major financial lawsuits and major financial changes, if Jincheng Factoring did not submit any evidence to prove that BOE has been or may be subject to major financial lawsuits, or there is any dispute arising from the transaction contract, it does not conform to the conditions of the *Factoring Contract* on early repurchase, and the repurchase subject shall not be required to bear the liability of repurchase. That is, according to the claim of Jincheng

- 2 2 -

Factoring, it does not have the right to require LETV Holdings and Jia Yueting to serve as the guarantors according to Article 4 of the *Factoring Contract* to make the payment in advance, and shall not further require LETV Mobile to be restricted thereby. In addition, the claim of Jincheng Factoring that LETV Mobile, LETV Holdings and Jia Yueting were subject to major property lawsuits and major financial changes and they showed by their behaviors that they were not performing their contractual obligations also has no corresponding factual and legal basis.

In conclusion, LETV Mobile did not breach the *Purchase Framework Agreement* on June 15, 2017, so Jincheng Factoring does not have the right to require it to pay the remaining goods price at that time.

However, in view of that after Jincheng Factoring brought this case on June 27, 2017, up to now, the goods price has been due, but LETV Mobile, LETV Holdings and Jia Yueting failed to perform the obligation of payment as agreed on the due date of remaining goods price, which has actually constituted a breach of contract, the claim of Jincheng Factoring to require LETV Mobile to pay the remaining goods price has factual and contractual basis, and is supported by the court. However, it shall be made clear that the time of breach of the *Purchase Framework Agreement* by LETV Mobile, i.e., the time when Jincheng Factoring has the right to claim for the remaining goods price from LETV Mobile, shall be the time of expiration of the payment date of corresponding goods price. Since the remaining goods price shall be due in two installments on June 29, 2019

and July 28, 2017 respectively, the corresponding time of breach of LETV Mobile shall be calculated separately.

III. On the calculation of goods price payable and its delayed performance interest

(I) On the amount of payment due.

Jincheng Factoring claimed that the amount of payment due shall be RMB 106,509,490.52, i.e., the total amount of payment due minus the amount of payment made. LETV Mobile, LETV Holdings and Jia Yueting endorsed that the payment not made is RMB 106,509,490.52, but claimed that the payment deposit RMB 15,664,709.94 already paid by LETV Mobile to Jincheng Factoring and the default interest for late payment of the factoring financing fund by Jincheng Factoring for 2 days shall be deducted from the payment due.

For whether the deposit shall be deducted, first, LETV Mobile claimed that the amount of deposit already paid is RMB 15,664,709.94, but according to the deposit payment voucher provided by LETV Mobile and the receipt voucher provided by Jincheng Factoring, the amount of deposit actually paid by LETV Mobile is RMB 15,664,703.94, so the court confirms that the amount of deposit already paid by LETV Mobile is RMB 15,664,703.94. Second, Jincheng Factoring acknowledged receipt of the deposit but disagreed on deduction, and believed that according to the contract, the deposit shall be returned after LETV Mobile, LETV Holdings and Jia Yueting fully perform corresponding contractual obligations. The

court believes that, according to the agreement of both parties in the *Repurchase Guarantee Agreement*, "If LETV Mobile delays in payment of the goods price, Jincheng Factoring shall have the right to use the deposit of LETV Mobile to pay the overdue goods price in advance, and notify LETV Mobile of making up the deposit. Within three working days from the date on which LETV Mobile completes the obligation of making the payment due under the agreement, or within three working days from the date on which LETV Holdings and Jia Yueting complete the obligation of paying the repurchase amount, Jincheng Factoring shall return corresponding deposit". It can be seen that two circumstances were agreed by both parties on disposal of the deposit. The first is to use the deposit to pay the overdue goods price in advance when LETV Mobile breaches the contract by delaying in payment of the goods price. The second is to return the deposit after completing the obligation of payment when LETV Mobile performs the agreement as scheduled. Jincheng Factoring brought this case because LETV Mobile delays in payment of the goods price. In accordance with the contract, the deposit shall first be used to pay the overdue goods price in advance. Jincheng Factoring brought this case and asked to order LETV Mobile to pay the remaining goods price, i.e., making a settlement between the two parties, but there are no other debtor-creditor relationships between the two parties, so the opinion of LETV Mobile, LETV Holdings and Jia Yueting that the deposit already paid shall be deduced from the payment due is in accordance with the

contract and supported by the court. The claim of Jincheng Factoring that it disagrees on deduction is not approved by the court. In accordance with the contract, the deposit shall be used to deduct the principal of the goods price delayed in payment. Since the principal of the remaining goods price shall be due in two installments, the deposit shall first be used to deduct the goods price first due. That is, after deduction, the amount of payment due on June 29, 2017 and July 28, 2017 shall be RMB 34,869,269.2 and RMB 55,975,517.38 respectively, i.e., the total amount of remaining goods price not paid shall be RMB 90,844,786.58. Therefore, the claim of Jincheng Factoring in excess of the above amount of payment not made is not supported by the court.

For whether the default interest for late payment of the factoring financing fund by Jincheng Factoring for 2 days shall be deducted, since LETV Mobile, LETV Holdings and Jia Yueting all filed no counterclaim in this case to require Jincheng Factoring to pay corresponding default interest, the court does not accept the opinion that corresponding default interest shall be deducted from the payment due. LETV Mobile, LETV Holdings and Jia Yueting may file a separate lawsuit if they think they have the right to claim.

(II) On the calculation of delayed performance interest.

There are mainly two disputes between the parties over the calculation of the delayed performance interest: the first is the time to calculate and the second is the calculation standard.

The dispute over the time to calculate the delayed performance interest is actually the dispute over the time of breach of the *Purchase Framework Agreement* by LETV Mobile. As previously mentioned, the claim of Jincheng Factoring that the delayed performance interest of the payment due shall be calculated from June 16, 2017 has no factual and legal basis, and is not approved by the court. LETV Mobile, LETV Holdings and Jia Yueting thought that the delayed performance interest shall be calculated in periods from the day after the due date based on the payment date, which is in accordance with the contract and approved by the court. That is, the delayed performance interest of the goods price due on June 29, 2017 shall be calculated from June 30, 2017, and the delayed performance interest of the goods price due on July 28, 2017 shall be calculated from July 29, 2017. Therefore, the claim of Jincheng Factoring in excess of the part is not supported by the court.

As for the calculation standard of the delayed performance interest, Jincheng Factoring claimed that the delayed performance interest shall be calculated at the rate of one thousandths per day according to Paragraph 5, Article 5 of the *Repurchase Guarantee Agreement*. LTEV Mobile, LETV Holdings and Jia Yueting all thought that the interest is two high and shall be limited to the actual loss of Jincheng Factoring, and requested the court to adjust. The court believes that, according to the *Contract Law*, the parties may agree that, when one party breaches the contract, it shall pay a certain amount of liquidated damages to the other party according to the

circumstances of the breach, and may also agree on the method for calculating the amount of compensation for losses incurred as a result of the breach. Where the liquidated damages agreed upon are less than the losses caused, the parties may request the people's court or an arbitration institution for an increase; where the liquidated damages agreed upon are excessively higher than the losses caused, the parties may request the people's court or an arbitration institution for an appropriate reduction. In this case, in view of that the delayed performance interest is the remedy for default damage, the delay in payment of the goods price by LETV Mobile caused capital occupation loss to Jincheng Factoring, and the annual interest rate after conversion according to the calculation standard of the delayed performance interest claimed by Jincheng Factoring is 36.5%, which is excessively high, the basis for LETV Mobile to request the court to adjust is sufficient, and after weighing on the basis of the principles of fairness and good faith, the court reduced the annual interest rate according to the calculation standard of the delayed performance interest appropriately to 24%. The claim of Jincheng Factoring in excess of the part is not supported by the court.

IV. On whether Jincheng Factoring has the right to claim the period consulting fee in the factoring service fee, the factoring service fee beyond the term of contract, and the calculation of liquidated damages for factoring service fee

(I) On whether Jincheng Factoring has the right to claim the period

consulting fee in the factoring service fee.

LETV Mobile, LETV Holdings and Jia Yueting said in the defense opinion that, according to the *Factoring Service Fee Agreement*, the period consulting fee in the factoring service fee is subject to the *Financial Consulting Agreement* separately signed by and collected by Xinjiang Knight and LETV Mobile. Therefore, according to the relativity principle of contract, the factoring service fee shall be claimed by Xinjiang Knight, and Jincheng Factoring shall not have the right to require LETV Mobile to perform the obligations under the *Financial Consulting Agreement*. Jincheng Factoring acknowledged that the period consulting fee during previous normal performance shall be collected by Xinjiang Knight, but believed that LETV Mobile did not submit the *Financial Consulting Agreement*, so according to the *Financial Consulting Agreement*, Jincheng Factoring shall claim the fee from it. The court believes that, first, Jincheng Factoring is the subject providing the factoring service and the right subject collecting the factoring service fee. In accordance with the agreement, the factoring service shall be provided by Jincheng Factoring by paying the factoring financing fund, and there are no other subjects providing the service. The *Factoring Service Fee Agreement* is also signed by LETV Mobile and Jincheng Factoring, so for the obligation of LETV Mobile to pay the factoring service fee including the period consulting fee, the corresponding right subject is only Jincheng Factoring. Second, according to the *Factoring Service Fee Agreement*, the payment of the period

consulting fee to Xinjiang Knight is one of the ways to pay the factoring service fee, which is the way for LETV Mobile to perform the *Factoring Service Fee Agreement*. The right of Xinjiang Knight to collect the fee is from Jincheng Factoring, and it does not have the right to directly claim the fee from LETV Mobile. Third, as a party to the agreement, LETV Mobile did not submit the *Financial Consulting Agreement* signed with Xinjiang Knight, so it is not possible to ascertain whether there are other agreements between the parties. In such case, the claim of Jincheng Factoring to claim the period consulting fee from LETV Mobile is in accordance with the contract and supported by the court. The opinion of LETV Mobile, LETV Holdings and Jia Yueting that Jincheng Factoring shall not have the right to require the period consulting fee is not approved by the court.

(II) On whether Jincheng Factoring has the right to claim the factoring service fee beyond the term of contract.

LETV Mobile, LETV Holdings and Jia Yueting said in the defense opinion that, the *Factoring Service Fee Agreement* shall be valid for 2 years and become invalid upon expiration of the term, so the part in excess of the term of the contract in the claim of Jincheng Factoring that LETV Mobile' shall pay the factoring service fee until the principal of the goods price is paid off shall be rejected. Jincheng Factoring thought that, according to the provisions of the *Factoring Service Fee Agreement* on calculation method of factoring service fee, the factoring service fee shall be calculated based on the days of actual occupation of the factoring financing fund by LETV

Mobile, so LETV Mobile actually occupies the factoring financing fund before it pays off the goods price and shall pay the factoring service fee. For this, the court believes that the basis for Jincheng Factoring to claim the factoring service fee from LETV Mobile is the *Factoring Service Fee Agreement*, the precondition of which shall be that the agreement is valid. Paragraph 2, Article 10 of the *Factoring Service Fee Agreement* clearly specifies the term of the agreement, i.e., "This Agreement is signed by the representatives of both parties on December 10, 2016, valid within 2 years from the date of signing, and may be renewed with the consent of both parties upon expiration of the term". If both parties do not renew the agreement after the term, the *Factoring Service Fee Agreement* shall become invalid, and Jincheng Factoring shall not have the right to claim corresponding factoring service fee from LETV Mobile according to the agreement. Therefore, the claim of Jincheng Factoring that LETV Mobile shall pay the factoring service fee until the principal of the goods price is paid off is supported by the court if the date on which the principal of the goods price is paid off is before December 30, 2018; if the date on which the principal of the goods price is paid off is after December 30, 2018, for subsequent factoring service fee, the claim is not supported by the court.

(III) On the calculation standard of liquidated damages for the factoring service fee.

Jincheng Factoring claimed that, according to Paragraph 5.2, Article 5 of the *Factoring Service Fee Agreement*, the liquidated damages for

overdue payment of the factoring service fee shall be paid as per seven ten-thousandths per day of the amount of factoring service fee in arrears. LETV Mobile, LETV Holdings and Jia Yueting all thought that the interest is excessively high, violates the provisions of the *Contract Law of the People's Republic of China* and relevant laws and regulations and shall be calculated by limiting to the actual loss of Jincheng Factoring, and requested the court to adjust. The court believes that, in view of that the liquidated damages for the factoring service fee are the remedy for default damage, the delay in payment of the factoring service fee by LETV Mobile caused capital occupation loss to Jincheng Factoring, and the annual interest rate after conversion according to the calculation standard of the liquidated damages claimed by Jincheng Factoring is 25.55%, which is excessively high, the basis for LETV Mobile to request the court to adjust is sufficient, and after weighing on the basis of the principles of fairness and good faith, the court reduced the annual interest rate according to the calculation standard of liquidated damages for the factoring service fee appropriately to 24%. The claim of Jincheng Factoring in excess of the part is not supported by the court.

V. On whether the joint and several guarantee liability of Jia Yueting is effective, and the conditions for LETV Holdings and Jia Yueting to bear the joint and several guarantee liability are satisfied

For whether the joint and several liability guarantee of Jia Yueting is valid, Jia Yueting said in the defense opinion that Jincheng Factoring

required Jia Yueting to provide joint and several liability guarantee for the debt of LETV Mobile, which belongs to excessive and repeated guarantee. This move makes limited liability unlimited and deviates from the original intention of the establishment of the limited liability company system. The liability guarantee of Jia Yueting, even if established, shall be null and void. The court believes that the signing of the *Repurchase Guarantee Agreement* is the true expression of Jia Yueting, and the contents of the *Repurchase Guarantee Agreement* do not violate the mandatory provisions of laws and regulations and are lawful and valid. Therefore, the claim of Jincheng Factoring of Jia Yueting shall provide joint and several liability guarantee for the debt of LETV Mobile according to the *Repurchase Guarantee Agreement* is in accordance with the contract and the law and shall be supported. The opinion of Jia Yueting does not have factual and legal basis and is not approved by the court.

For whether the conditions for LETV Holdings and Jia Yueting to bear the joint and several guarantee liability are satisfied, LETV Holdings and Jia Yueting claimed that, when Jincheng Factoring filed the lawsuit, the Purchase Framework Agreement was being performed normally, and the principal creditor's right was not due or overdue; Jincheng Factoring did not send the written *Repurchase Notice* to LETV Holdings and Jia Yueting according to the *Repurchase Guarantee Agreement*, so the conditions for liability guarantee of LETV Holdings and Jia Yueting are not satisfied, and the claim of Jincheng Factoring shall not be supported. Jincheng Factoring

thought that the *Repurchase Guarantee Agreement* stipulates two legal relationships of repurchase and guarantee. If LETV Mobile fails to pay the goods price and the factoring service fee on schedule, Jincheng Factoring shall have the right to require LETV Holdings and Jia Yueting to provide joint and several liability guarantee. The legal effect of notice can be achieved by filing a lawsuit. Therefore, the conditions for joint and several liability guarantee of LETV Holdings and Jia Yueting are satisfied. The court believes that, from the perspective of the *Repurchase Guarantee Agreement*, it contains two legal relationships of guarantee and repurchase. Article 2 of the agreement is about provisions on guarantee method, period and scope. Paragraph 1 states that "The guarantee provided by Party B (LETV Holdings and Jia Yueting) is joint and several liability guarantee. If Party C (LETV Mobile) fails to pay or fully pay the goods price and factoring service fee payable, Party A (Jincheng Factoring) shall have the right to directly require Party B to be liable for guarantee".    Article 3 is about provisions on repurchase method. Paragraph 1 states that "When the repurchase conditions are satisfied, Party A shall send the *Repurchase Notice* to Party B. Party B shall fully pay the repurchase price to Party A within ten days from the date on which the *Repurchase Notice* is sent". It can be seen that the sending of the *Repurchase Notice* is the precondition to require LETV Holdings and Jia Yueting to be liable for repurchase, but it is not necessary to issue the *Repurchase Notice* to require them to be liable for repurchase.  Since it is not agreed in the agreement that other forms of

-34-

requirements shall be provided, LETV Holdings and Jia Yueting shall be liable for guarantee as long as Jincheng Factoring claims rights to LETV Holdings and Jia Yueting if the agreed conditions for liability guarantee arise. Based on the facts found out, LETV Mobile failed to pay the factoring service fee of the period on June 15, 2017 and failed to pay the goods price due on June 29, 2017, which is in accordance with Paragraph 1, Article 2 of the *Repurchase Guarantee Agreement* on liability guarantee. Therefore, Jincheng Factoring shall have the right to directly require LETV Holdings and Jia Yueting to be liable for guarantee after June 29, 2017. In this case, Jincheng Factoring did not provide any evidence that it claimed to LETV Holdings and Jia Yueting to be liable for guarantee before filing the lawsuit, but it filed the lawsuit in its sole discretion, so it shall be deemed that Jincheng Factoring clearly claimed rights to LETV Holdings and Jia Yueting on July 7, 2017, the date on which LETV Holdings and Jia Yueting received the pleadings of this case. Therefore, the conditions for liability guarantee of LETV Holdings and Jia Yueting were satisfied on July 7, 2017. The court does not approve the opinion of LETV Holdings and Jia Yueting that the conditions for liability guarantee are not satisfied. In accordance with the *Repurchase Guarantee Agreement* on guarantee scope, the claim of Jincheng Factoring that LETV Holdings and Jia Yueting shall be jointly and severally liable for settlement of the debt of LETV Mobile has the factual and legal basis and is supported by the court.

VI. On the calculation of liquidated damages of LETV Holdings and

Jia Yueting for delayed performance of guarantee liability

For the calculation of liquidated damages for failure of LETV Holdings and Jia Yueting to provide liability guarantee within the time limit, there are disputes over the time to calculate, calculation base and calculation standard.

First, for the time to calculate, Jincheng Factoring thought that LETV Mobile breached the contract on June 15, 2017 and LETV Holdings and Jia Yueting shall be liable for guarantee, and claimed that LETV Holdings and Jia Yueting shall pay the liquidated damages for failure to provide liability guarantee within the time limit from June 16, 2017. However, as previously mentioned, according to the determination of the court, the conditions for liability guarantee of LETV Holdings and Jia Yueting actually were satisfied on July 7, 2017, so the liquidated damages for failure of the two to provide liability guarantee within the time limit shall be calculated from July 8, 2017.

Second, for the calculation base, Jincheng Factoring claimed to calculate the liquidated damages for failure of LETV Holdings and Jia Yueting to provide liability guarantee within the time limit with RMB 106,509,490.52 as the base, which was actually the remaining goods price payable. LETV Holdings and Jia Yueting did not raise any objection. However, as previously mentioned, they thought that the deposit already paid and the default interest shall be deducted from the amount of payment due. The court believes that, according to Article 7 of the *Repurchase*

*Guarantee Agreement*, "If Party B (LETV Holdings and Jia Yueting) fails to be liable for repurchase and guarantee as agreed or violates other obligations as agreed herein, it shall pay liquidated damages equivalent to 0.1% of the repurchase price to Party A per day". Paragraph 3 of Article 1 states that "The repurchase price means the amount after deducting the balance (principal) already repaid by Party C (LETV Mobile) at the time of repurchase and corresponding overdue interest on the principal from the factoring financing fund actually paid by Party A (Jincheng Factoring) according to the *Factoring Contract*". The court has no objection against the claim of Jincheng Factoring that the liquidated damages for failure to provide liability guarantee within the time limit shall be calculated with the remaining goods price payable as the base. However, according to the determination of the court, the deposit already paid by LETV Mobile shall be deducted from the amount of payment due, so corresponding deduction shall be made to the calculation base of liquidated damages for failure to provide liability guarantee within the time limit. The goods price payable shall be due in two installments, so the liability guarantee to be provided by LETV Holdings and Jia Yueting shall also be calculated separately based on the due date of the goods price. Accordingly, the calculation base of the liquidated damages for failure of LETV Holdings and Jia Yueting to provide liability guarantee within the time limit shall also be calculated separately based on the due date of the goods price. That is, from July 8, 2017 to July 29, 2017, the amount after deducting the deposit from the

goods price due on June 29, 2017 shall be the calculation base; from July 30, 2017 to the date on which the debt of LETV Mobile is fully paid off, the amount after deducting the deposit from the goods price due on June 29, 2017 and the goods price due on July 28, 2017 shall be the calculation base.

Third, for the calculation standard, Jincheng Factoring claimed that, according to Article 7 of the *Repurchase Guarantee Agreement*, the liquidated damages for failure to provide liability guarantee within the time limit shall be paid as per one thousandths per day. LETV Mobile, LETV Holdings and Jia Yueting all thought that the interest is excessively high, violates the provisions of the *Contract Law of the People's Republic of China* and relevant laws and regulations and shall be calculated by limiting to the actual loss of Jincheng Factoring, and requested the court to adjust. The court believes that, in view of that the liquidated damages for failure to provide liability guarantee within the time limit are the remedy for default damage, the failure of LETV Holdings and Jia Yueting to provide liability guarantee within the time limit caused capital occupation loss to Jincheng Factoring, and the annual interest rate after conversion according to the calculation standard of the liquidated damages claimed by Jincheng Factoring is 36.5%, which is excessively high, the basis for LETV Holdings and Jia Yueting to request the court to reduce is sufficient, and after weighing on the basis of the principles of fairness and good faith, the court reduced the annual interest rate according to the calculation standard of liquidated damages for failure of LETV Holdings and Jia Yueting to

provide liability guarantee within the time limit appropriately to 24%. The claim of Jincheng Factoring in excess of the part is not supported by the court.

In conclusion, the part of the claim of Jincheng Factoring that LETV Holdings and Jia Yueting shall pay the liquidated damages for failure to provide liability guarantee from June 16, 2017 to the date on which the debt of LETV Mobile is paid off that meets the above conditions is supported by the court; the part in excess is not supported by the court.

In addition, the claim of Jincheng Factoring that LETV Mobile shall bear the cost incurred to realize the creditor's right and LETV Holdings and Jia Yueting shall be jointly and severally liable for settlement does not have the factual basis since Jincheng Factoring did not provide any evidence to prove the cost paid by it to realize the creditor's right, and thus is not supported by the court.

To sum up, the court believes that the claims of the Plaintiff Jincheng Factoring are partially established and supported by the court. In accordance with Article 8, Article 60, Article 107 and Article 114 of the *Contract Law of the People's Republic of China*, the judgment is as follows:

I. The Defendant LETV Mobile shall pay the goods price of RMB 90,844,786.58 and corresponding delayed performance interest (the delayed performance interest on goods price due on June 29, 2017 shall be calculated at the annual interest rate of 24% with RMB 34,869,269.2 as the

-39-

base from June 30, 2017 to the date of full payment; the delayed performance interest on goods price due on July 28, 2017 shall be calculated at the annual interest rate of 24% with RMB 55,975,517.38 as the base from July 29, 2017 to the date of full payment) to the Plaintiff Jincheng Commercial within seven days after this judgment takes effect;

II. The Defendant LETV Mobile shall pay the factoring service fee (to be calculated at the daily interest rate of 13%/365 based on the actual days of occupation with RMB 106,509,490.52 as the base from May 16, 2017 to June 28, 2017; to be calculated at the daily interest rate of 13%/365 based on the actual days of occupation with RMB 90,844,786.58 as the base from June 29, 2017 to the date on which the principal of the goods price in item 1 of this judgment is fully paid off, as of November 30, 2018) to the Plaintiff Jincheng Commercial within seven days after this judgment takes effect.

III. The Defendant LETV Mobile shall pay the liquidated damages for overdue payment of the factoring service fee [to be calculated at the annual interest rate of 24% from June 2017 with the factoring service fee of the period (the factoring service fee payable from the 16th day of the previous month to the 15th day of the current month) as the base every month from the 16th day of the current month to the date on which the factoring service fee of the period is paid off] to the Plaintiff Jincheng Commercial within seven days after this judgment takes effect.

IV. The Defendant LETV Holdings and the Defendant Jia Yueting

-40-

shall be jointly and severally liable for settlement of the debt of LETV Mobile determined in items 1, 2 and 3 above; after assuming the joint and severally liability of settlement, the Defendant LETV Holdings and the Defendant Jia Yueting shall have the right to recover from the Defendant LETV Mobile

V. The Defendant LETV Holdings and the Defendant Jia Yueting shall pay the liquidated damages for failure to provide liability guarantee within the time limit (to be calculated at the annual interest rate of 24% with RMB 34,869,269.2 as the base from July 8, 2017 to July 29, 2017; to be calculated at the annual interest rate of 24% with RMB 90,844,786.58 as the base from July 30, 2017 to the date on which the debt of the Defendant LETV Mobile determined in items 1, 2 and 3 above is paid off) to the Plaintiff Jincheng Commercial within seven days after this judgment takes effect.

VI. Other claims of the Plaintiff Jincheng Commercial are hereby rejected.

If the obligation of payment is not performed within the period specified in this judgment, the debt interest for the delayed period shall be doubled in accordance with Article 253 of the *Civil Procedure Law of the People's Republic of China.*

The court acceptance fee RMB 589,473 and the property preservation fee RMB 5,000 shall be jointly borne by the Defendant LETV Mobile, the Defendant LETV Holdings. and the Defendant Jia Yueting (the payment

-41-

shall be made within seven days after this judgment takes effect).

Any party dissatified with this judgment may, within fifteen days from the date of service of this judgment, file an appeal petition to the court and submit copies and file an appeal to Beijing Higher People's Court based on the number of the counterparties or its representatives.

|  |  |
|---|---|
| Presiding Judge | Song Yi |
| Judge | Lu Nan |
| Judge | Zhang Yu'na |

August 15, 2018

Identified consistent with the original

Document No.: 170704-105056-78-75-083231

|  |  |
|---|---|
| Judge Assistant | Dong Pei |
| Clerk | Diao Yuxin |

 专业的法律翻译综合服务商
蓝海    *Website:www.lanhaifanyi.com*    *Tel:010-5654 2019*

# 翻译证明

# CERTIFICATE

敬启者:

To Whom It May Concern,

　　兹证明我公司北京蓝海译通翻译服务有限公司，以下简称"我公司"，为下列文件的翻译提供者，并以此函证明中文原文与英文翻译件内容表达一致。

　　This is to certify that we, Beijing Lan Hai Translation Service Co., Ltd., is the provider of the documents listed below, and certify with this CERTIFICATE that the Chinese original is truly and accurately expressed by its corresponding English translation.

文件列表:

List of documents:

1.　　《借款及优先认购权之框架协议-5.2 亿-2016.7.16.》

　　　《framework Agreement for Loan and Preemptive Right-520 million-2016.7.16》

2.　　《还款通知书》

　　　《Notice of Repayment》

3.　　《乐视移动借款合同-2 亿-2015.6》

　　　《Loan Contract of LETV Mobile-200 million-2015.6》

4.　　《三中院判决（2017）京 03 民初 248 号》

　　　《Civil Judgment of the Third Intermediate People's Court of Beijing(2017) Jing 03 Min Chu No. 248》

5.　　《回购担保协议 》

　　　《Repurchase Guarantee Agreement》

6.　　《商业保理业务合同》

　　　《Commercial Factoring Business Contract》



专业助法律翻译综合服务商
Website: www.lanhaifanyi.com
Tel:010-5654 2019

7.    《商业保理业务合同服务费协议》

     《Agreement on Service Fee under the Commercial Factoring Business Contract》

8.    《补充协议》

     《Supplementary Agreement》

北京蓝海译通翻译服务有限公司
Beijing Lan Hai Translation Service Co., Ltd.
2020 年 1 月 23 日
January 23, 2020





After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled: **NOTICE OF OBJECTION TO CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 3, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **April 3, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA U.S. MAIL**
United States Bankruptcy Court
Central District of California
Attn: Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA  90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 3, 2020 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ**
<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>

- Jerrold L Bregman    ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Richard H Golubow    rgolubow@wghlawyers.com, pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan    blogan@omm.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- David W. Meadows    david@davidwmeadowslaw.com
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Felix T Woo    fwoo@ftwlawgroup.com, admin@ftwlawgroup.com
- Claire K Wu    ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- David B Zolkin    dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*    Page 2    **F 3007-1.1.NOTICE.OBJ.CLAIM**
DOCS_LA:328813.1 46353/002