| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Richard M. Pachulski (CA Bar No. 90073)<br>Jeffrey W. Dulberg (CA Bar No. 181200)<br>Malhar S. Pagay (CA Bar No. 189289)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Boulevard, 13th Floor<br>Los Angeles, CA  90067<br>Telephone:  310/277-6910<br>Facsimile:  310/201-0760<br>Email: rpachulski@pszjlaw.com<br>        jdulberg@pszjlaw.com<br>        mpagay@pszjlaw.com<br><br>☒ *Attorney for:* Debtor | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| In re:<br><br>YUETING JIA,<br><br>                                 Debtor(s). | CASE NO.: 2:19-bk-24804-VZ<br><br>CHAPTER: 11 |
|---|---|
| | ### NOTICE OF OBJECTION TO CLAIM |
| | DATE:  May 7, 2020<br>TIME:   1:30 p.m.<br>COURTROOM: 1368<br>PLACE: 255 East Temple Street<br>          Los Angeles, CA  90012 |

1.  TO *(specify claimant and claimant's counsel, if any)*:  Tianjin Jiarui Huixin Corporate Management Co., Ltd. and Mengde Wang

2.  NOTICE IS HEREBY GIVEN that the undersigned has filed an objection to your Proofs of Claim (Claim Nos. 43, 44 and 45) filed in the above referenced case. The Objection to Claim seeks to alter your rights by disallowing, reducing or modifying the claim based upon the grounds set forth in the objection, a copy of which is attached hereto and served herewith.

3.  **Deadline for Opposition Papers**: You must file and serve a response to the Objection to Claim not later than 14 days prior to the hearing date set forth above.

    **IF YOU FAIL TO TIMELY RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**

Date:   April 3, 2020

PACHULSKI STANG ZIEHL & JONES LLP
Printed name of law firm

*/s/ Malhar S. Pagay*
Signature

Date Notice Mailed: April 3, 2020

Malhar S. Pagay
Printed name of attorney for objector

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1                    **F 3007-1.1.NOTICE.OBJ.CLAIM**
DOCS_LA:328822.1 46353/002

Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email:    rpachulski@pszjlaw.com
          jdulberg@pszjlaw.com
          mpagay@pszjlaw.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>YUETING JIA,[1]<br><br>                    Debtor. | Case No.: 2:19-bk-24804-VZ<br>Chapter 11<br><br>**DEBTOR'S NOTICE OF OMNIBUS OBJECTION AND OMNIBUS OBJECTION TO CLAIMS FILED BY TIANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD.; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF YUETING JIA AND SHAN HE IN SUPPORT THEREOF**<br><br>**This Objection Affects The Following Claims:**<br>Tianjin Jiarui Huixin Corporate Management Co., Ltd., Claim No. 43<br>Tianjin Jiarui Huixin Corporate Management Co., Ltd., Claim No. 44<br>Tianjin Jiarui Huixin Corporate Management Co., Ltd., Claim No. 45<br><br>Date:        May 7, 2020<br>Time:        1:30 p.m.<br>Place:       Courtroom 1368<br>             Roybal Federal Building<br>             255 E. Temple Street<br>             Los Angeles, California 90012<br>Judge:       Hon. Vincent P. Zurzolo |

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE NOTICE** that, on May 7, 2020, beginning at 1:30 p.m. (Pacific Time), or as soon thereafter as counsel may be heard before the Hon. Vincent P. Zurzolo, in Courtroom 1368 of the Edward R. Roybal Federal Building and Courthouse, located at 255 E. Temple Street, Los Angeles, California 90012, pursuant to the *Order (I) Approving the Fourth Amended Disclosure Statement; (II) Approving the Voting Procedures and Tabulation Procedures; (III) Setting the Date and Time for the Confirmation Hearing and Related Deadlines; (IV) Waiving Certain Local Rules and Procedures Related to the Timing and Approval of the Fourth Amended Disclosure Statement and Confirmation of the Third Amended Plan; and (V) Granting Related Relief* [Docket No. 485] (the "Disclosure Statement Order"), which provides, in pertinent part, that if the Debtor has served an objection or request for estimation as to a claim by April 2, 2020, such claim shall be temporarily disallowed for voting purposes only (and not for purposes of allowance or distribution), except to the extent and in the manner as may be set forth in such objection or request, or as ordered by the Court before the voting deadline, i.e., April 30, 2020 at 4:00 p.m. (Beijing Time),[2] Yueting Jia, the debtor and debtor in possession herein (the "Debtor" or "YT"), will object (the "Objection") to claim numbers 43, 44, and 45, filed by Tianjin Jiarui Huixin Corporate Management Co., Ltd. (the "Claims"), on the grounds that the Debtor is not liable for these debts.

True and correct copies of the Claims are attached to the Notices of Objection to Claims, which have been served on Claimant. The Objection seeks to disallow the Claims only in connection with voting on the *Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 464] (the "Plan") and does not impact the ultimate allowance of the Claims or distributions the Claimant may be entitled to receive on account of the Claims.

**PLEASE TAKE FURTHER NOTICE** that the Objection has been served upon Claimant and all parties entitled thereto and is based upon the supporting Memorandum of Points and Authorities and Declarations of Yueting Jia and Shan He, the statements, arguments and representations of counsel who appear at the hearing regarding the Objection, the files and records in the above-captioned case, any evidence properly before the court prior to or at the hearing regarding the Objection and all matters of which the court may properly take judicial notice.

---

[2] Disclosure Statement Order, 6 at ¶ 17(e).

2

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), responses to the Objection must be filed with the Court and served upon the Debtor's counsel at the address in the upper left-hand corner of this Objection no later than fourteen (14) days prior to the hearing date.  Responses must contain a written statement of all reasons the Objection is opposed and must include declarations and copies of all documentary evidence on which the responding party intends to rely.  Responses must be filed either electronically or at the following location:

United States Bankruptcy Court
Attention:  Clerk's Office
255 E. Temple Street
Los Angeles, CA 90012

**IF YOU DO NOT OPPOSE THE OBJECTION YOU DO NOT NEED TO FILE ANY PAPERS, SIGN ANY FURTHER AGREEMENTS OR TAKE ANY FURTHER ACTION.**

**PLEASE TAKE FURTHER NOTICE** that if a response is not timely filed and served, the Debtor will request that the court grant the relief requested in the Objection without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that if a response is timely filed and served upon the Debtor's counsel, the Court, in its discretion, may treat the initial hearing as a status conference if it determines that the Objection involves disputed factual issues or will require presentation of substantial evidence or argument.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order (i) sustaining the Objection; (ii) disallowing the Claims for voting purposes; and (iii) granting such other and further relief as may appropriate under the circumstances.

Dated:    April 2, 2020

PACHULSKI STANG ZIEHL & JONES LLP

By    */s/ Malhar S. Pagay*
Richard M. Pachulski
Jeffrey W. Dulberg
Malhar S. Pagay

Counsel for Debtor and Debtor in
Possession

DOCS_LA:328769.2 46353/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 102, 105 and 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 3007 and 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.

## BACKGROUND

### A.    Commencement of the Chapter 11 Case

On October 14, 2019 (the "Petition Date"), the Debtor commenced this case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). The Debtor continues in possession of his property and manages his affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On October 25, 2019, the U.S. Trustee appointed the Official Committee of Unsecured Creditors  pursuant to section 1102(a)(1) of the Bankruptcy Code (the "Committee") [Docket No. 45]. The Committee consists of the following members: (i) Ping An Bank., Ltd. Beijing Branch; (ii) China Minsheng Trust Co., Ltd; (iii) Shanghai Leyu Chuangye Investment Management Center LP; (iv) Jiangyin Hailan Investment Holding Co., Ltd; and (v) Shanghai Qichengyueming Investment Partnership Enterprise.

On November 13, 2019, the Court entered an order setting January 24, 2020, as the general deadline (the "Bar Date") for the filing of proofs of claim or proofs of interest against the Debtor's estate.  In accordance with the Court's Order establishing the Bar Date, notice of the Bar Date was given by mail to the Debtors' creditors and interest holders.

On December 18, 2019, Judge Karen B. Owens of the Delaware Bankruptcy Court transferred the Chapter 11 Case to this Court.

4

**B.    Approval of the Debtor's Disclosure Statement**

On March 20, 2020, the Court entered the Disclosure Statement Order, pursuant to which the Court approved the Debtor's *Fourth Amended Disclosure Statement with Respect to Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 465] in respect of the *Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 464] (the "Plan"), and granted other relief.

The Disclosure Statement Order provides, in pertinent part, that if the Debtor has served an objection or request for estimation as to a claim by April 2, 2020, such claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the voting deadline, i.e., April 30, 2020 at 4:00 p.m. (Beijing Time).  Disclosure Statement Order, 6 at ¶ 17(e).

**C.    The Claims**

The Claimant asserts approximately $224,808,065 in Claims, based on the Debtor's alleged breach of (i) that certain equity transfer agreement on 15.7102% equity of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. dated January 13, 2017; (ii) that certain equity transfer agreement on 10.3964% equity of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. dated January 13, 2017; and (iii) that certain capital increase agreement of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. dated January 13, 2017 (the "Agreements") attached to proofs of claim numbered 43, 44, and 45, respectively.

The Agreements provided for the transfer of equity in Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. ("Target Company"). Under the provisions giving rise to the Debtor's alleged liability in the Agreements, the Debtor was to undertake to complete a declaration to the China Securities Regulatory Commission for incorporating the equity not held by a listed company in the Target Company into the listed company before December 31, 2019, and complete the incorporation of the equity not held by the listed company in the Target Company into the listed company before September 30, 2020.  As a result of the share transfers, the Claimant became the controlling shareholder of the Target Company.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

As evidenced by that certain announcement on the change of the scope of the consolidated

Statements of LETV Information Technology (Beijing) Co., Ltd (the "<u>Announcement</u>"), dated

December 19, 2018, which is available publicly at:

<u>http://www.szse.cn/disclosure/listed/bulletinDetail/index.html?dd38eb0a-0570-4f77-a7ff-</u>

<u>5f4782f1a91a</u>,  the Debtor no longer had control over the Target Company after the shares of the

Target Company were transferred pursuant to the Agreements.  Attached hereto as **Exhibit "A"** is a

true and correct copy of the Announcement. Attached hereto as **Exhibit "B"** is an English

translation of the Announcement.

### III.

### <u>ARGUMENT</u>

**A.**     <u>**Procedural Requirements for Objections to Claims**</u>

Bankruptcy Rule 3007 governs the procedure for objections to claims.  It provides as

follows: "An objection to an allowance of a claim shall be in writing and filed.  A copy of the

objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant

. . . at least thirty days prior to the hearing." Fed. R. Bankr. P. 3007.

Pursuant to Bankruptcy Rule 3007, a copy of the Objection will be mailed to Claimants at the

addresses provided by Claimants in the Claims, and, where available and if different from the

address provided on the proof of claim, on each Claimant's address registered with the National

Enterprise Credit Information Publicity System (http://www.gsxt.gov.cn/index.html), a government-

run, national, enterprise credit inquiry system in the People's Republic of China, at least thirty days

prior to the hearing date for consideration of the Objection.  Accordingly, by the time of the hearing

hereon, the Trustee will have complied with Bankruptcy Rule 3007.

**B.**     <u>**The Court Must Determine the Allowance of a Claim Subject to Objection**</u>

With certain exceptions, section 502(b) of the Bankruptcy Code requires, in relevant part,

that if a party in interest objects to a claim, "the Court, after notice and a hearing, shall determine the

amount of such claim in lawful currency of the United States as of the date of the filing of the

petition, and shall allow such claim in such amount, except to the extent that -- (1) such claim is

unenforceable against the debtor and property of the debtor, under any agreement or applicable law

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

for a reason other than because such claim is contingent or unmatured ….”

## C.    <u>Burden of Proof</u>

All allegations set forth in a properly filed proof of claim are taken as true and, if the allegations set forth all facts necessary to establish a claim and are not self-contradictory, the proof of claim constitutes *prima facie* evidence of the validity and amount of the claim.  11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f).  However, a claimant must attach copies of writings upon which claims are based in order to carry its burden of establishing a *prima facie* case against the debtor.  *Hardin v. Gianni (In re King Investments Inc.)*, 219 B.R. 848, 858 (B.A.P. 9th Cir. 1998).  Further, a claim should not be allowed if that claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law.  11 U.S.C. § 502(b)(1).

Once the objector raises “facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves,” *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), then “the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.”  *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), aff’d, 91 F.3d 151 (9th Cir. 1996).  “[T]he ultimate burden of persuasion is always on the claimant.”  *Holm*, 931 F.2d at 623.  In considering an objection to a claim, a bankruptcy court may take judicial notice of the underlying records in a bankruptcy case.  *O’Rourke v. Seaboard Surety Co., (In re ER Fergert, Inc.)*, 887 F.2d 955, 957-958 (9th Cir. 1998).

## D.    <u>The Claim Should Be Disallowed for Plan Voting Purposes</u>

Courts recognize that Bankruptcy Rule 3018(a) permits a party in interest to seek to disallow a claim for voting purposes. Ultimately, the determination of whether to temporarily allow a claim for voting purposes lies within the discretion of the bankruptcy court.  See *Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003) (“There is no guidance in the Bankruptcy Code to courts as to determine whether to permit the temporary allowance of a claim; it is left to the court’s discretion.”).  Indeed, courts have broad authority to determine whether to allow or disallow a claim for purposes of voting under Bankruptcy Rule 3018(a). *See, e.g., In re Mangia Pizza Invs., L.P.,* 480 B.R. 669, 679 (Banker. W.D. Tex. 2012); *In re Zolner*, 174 B.R. 629, 633 (Bankr. N.D. Ill.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

1994) (noting that a court must exercise its discretion to allow or disallow a claim under Bankruptcy Rule 3018(a) based on reasoned analysis); *In re Goldstein,* 114 B.R. 430, 433 (Bankr. E.D. Pa. 1990); Collier on Bankr. ¶ 9-3018[5] (16th ed. rev. 2012) ("The court, however, regardless of the circumstances, has the discretion to allow or disallow all or part of the claim for voting purposes.").

With respect to the Claims, the Debtor's loss of control over the Target Company made it impossible for the Debtor to complete the declaration or procure the incorporation of the equity of the Target Company into the listed company, as contemplated under the Agreements.  As such, the Debtor does not have liability for the Claims. Therefore, the Claims should be disallowed for purposes of voting on the Debtor's Plan.

## IV.
## **GENERAL RESERVATION OF RIGHTS**

The Debtor expressly reserves the right to amend, modify or supplement this Objection, and to file additional, other, or further objections to any proofs of claim filed in this Chapter 11 Case, including, without limitation, objections as to the amounts asserted therein, or any other claims (filed or not) against the Debtor, regardless of whether such claims are subject to this Objection.  Should one or more of the grounds of objection stated in this Objection be denied, the Debtor reserves his rights to object on other stated grounds or on any other grounds he discovers during the pendency of this Chapter 11 Case.  In addition, the Debtor reserves the right to file counterclaims against the holders of any such claims.

## V.
## **NOTICE**

The Debtor will serve copies of this Objection on:  (a) the Claimant, (b) the Office of the United States Trustee, (c) counsel to the Committee, and (d) all parties who have requested notices in this Chapter 11 Case pursuant to Bankruptcy Rule 2002.

8

DOCS_LA:328769.2 46353/002

# VI.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested herein and granting the Debtor such other and further relief as is just and proper.

Dated:        April 2, 2020                    PACHULSKI STANG ZIEHL & JONES LLP


                                               */s/ Malhar S. Pagay*
                                               Richard M. Pachulski
                                               Jeffrey W. Dulberg
                                               Malhar S. Pagay
                                               Attorneys for Debtor and Debtor in Possession

DOCS_LA:328769.2 46353/002

# DECLARATION OF YUETING JIA

I, Yueting Jia, debtor herein, hereby declare that the following is true to the best of my knowledge, information and belief:

1.      I submit this declaration (the "Declaration") in support of the *Objection to Claims Filed by Tianjin Jiarui Huixin Corporate Management Co., Ltd.* (the "Objection")[3]. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein.

2.      Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of books and records, relevant documents and other information prepared or collected by my employees, advisors and representatives, or my opinion based on my experience. In making my statements based on my review of books and records, relevant documents and other information prepared or collected by my professionals, advisors and employees, I have relied upon these professionals, advisors and employees accurately recoding, preparing or collecting such documentation and other information.

3.      I am not fluent in English. Accordingly, in the ordinary course of my business and personal affairs that require me to communicate in English either orally or in writing, I employ interpreters/translators who are fluent in both English and Chinese. I am utilizing such interpreters/translators in connection with matters that arise in connection with my Chapter 11 Case and intend to continue to do so. I have reviewed the Objection and Declaration, as necessary, with the assistance of such interpreters/translators.

4.      Tianjin Jiarui Huixin Corp Mgt Co Ltd. (the "Claimant") asserts approximately $224,808,065 in claims based on liquidated damages (Claim numbers 43, 44, and 45, collectively the "Claims") arising from my alleged breach of (a) that certain equity transfer agreement on 15.7102%

---

[3] Capitalized terms not defined in this declaration shall have the same meaning ascribed to them as set forth in the Objection.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

equity of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. dated January 13, 2017; (b) that certain equity transfer agreement on 10.3964% equity of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. dated January 13, 2017; and (c) that certain capital increase agreement of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. dated January 13, 2017 (the "Agreements") attached to proofs of claim numbered 43, 44, and 45, respectively.

5.    The Agreements provided for the transfer of equity in Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. (the "Target Company"). Under the provisions giving rise to my alleged liability in those Agreements, I was to undertake to complete a declaration to the China Securities Regulatory Commission for incorporating the equity not held by a listed company in the Target Company into the listed company before December 31, 2019, and complete the incorporation of the equity not held by the listed company in the Target Company into the listed company before September 30, 2020.

6.    As a result of the share transfers, the Claimant became the controlling shareholder of the Target Company. Thus, the loss of control over the Target Company made it impossible for me to complete the declaration or procure the incorporation of the equity of the Target Company into the listed company. I believe that the impossibility of performance excuses my breach, if any, of the Agreements. As evidenced by that certain announcement on the change of the scope of the consolidated Statements of LETV Information Technology (Beijing) Co., Ltd (the "Announcement"), I no longer had control over the Target Company after the shares of the Target Company were transferred pursuant to the Agreements.

7.    Attached hereto as **Exhibit "A"** is a true and correct copy of the Announcement, , dated December 19, 2018, which is available publicly at:

http://www.szse.cn/disclosure/listed/bulletinDetail/index.html?dd38eb0a-0570-4f77-a7ff-5f4782f1a91a.  Attached hereto as **Exhibit "B"** is an English translation of the Announcement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

1

2

3

      I declare under penalty of perjury under the laws of the United States of America that the

4

foregoing is true and correct.

5

      Executed this 2nd day of April, 2020, at Los Angeles, California.

6

7

8
                                             Yueting Jia

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**DECLARATION OF SHAN HE**

I, Shan He, declare as follows:

1.      I am a Chinese translator, simultaneous interpreter and localization project manager employed since April 2017 by (a) Yueting Jia, the debtor and debtor in possession (the "<u>Debtor</u>"), that has filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") commencing the above-captioned bankruptcy case (the "<u>Chapter 11 Case</u>"), and (b) Faraday Future ("<u>FF</u>"), an entity in which the Debtor holds an indirect interest.

2.      I am a native speaker of Chinese (Mandarin) and maintain full professional fluency in English.  I hold a Bachelor of Science degree in English from Beijing Language and Culture University and a Master of Arts in Translation and Interpretation (Chinese – English) degree from the Monterey Institute of International Studies ("<u>MIIS</u>").  I am certified in Simultaneous and Consecutive Interpretation between English and Chinese by MIIS.  I currently provide translation services for the Debtor and his General Counsel.  Prior to my work with the Debtor and FF, I have provided interpretation and translation services for a variety of organizations, including the United Nations Institute for Training & Research (UNITAR), Syntes Language Group, and the Austrian Embassy.

3.      The Debtor is not fluent in English.  Accordingly, in the ordinary course of his business and personal affairs that require him to communicate in English either orally or in writing, he employs interpreters/translators like me who are fluent in both English and Chinese.

4.      I am in regular communication with the Debtor's professionals, including legal counsel.

5.      At the direction of the Debtor, I have reviewed that certain announcement on the change of the scope of the consolidated Statements of LETV Information Technology (Beijing) Co., Ltd (the "<u>Announcement</u>"), attached hereto as **Exhibit "A"** and **Exhibit "B,"** an English translation of the Announcement.

6.      To the best of my knowledge, the English translation accurately reflects the contents and meaning of the original Announcement.

1    I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3    Executed on this  2nd  day of April, 2020, at  Long Beach_____, California.

4

5                                                        *Shan He*

6                                                _____

                                                          Shan He

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:328769.2 46353/002

# EXHIBIT A



---

证券代码：300104　　　　　　证券简称：乐视网　　　　　　公告编号：2018-204

## 乐视网信息技术（北京）股份有限公司

## 关于公司合并报表范围变更的公告

> 本公司及其董事会全体成员保证信息披露内容真实、准确和完整，没有虚假记载、误导性陈述或重大遗漏。

乐视网信息技术（北京）股份有限公司（以下简称"乐视网"、"公司"）于公告披露日，不再将原控股子公司乐融致新电子科技（天津）有限公司（"乐融致新"）纳入公司财务报表合并范围。现将相关事项公告如下：

### 一、乐融致新不再纳入合并范围的原因

2018 年 12 月 6 日，公司公告了《关于控股子公司司法拍卖成交进展暨工商变更完成的公告》（公告编号：2018-197），天津嘉睿汇鑫企业管理有限公司（以下简称"天津嘉睿"）就其拍卖所得乐融致新的股权工商变更，持有乐融致新注册资本比例提升为 46.0504%，乐融致新第一大股东为天津嘉睿。

2018 年 12 月 19 日，乐融致新召开临时股东会，此次股东会由天津嘉睿提议召开并提交议案，议案主要内容为修改公司章程及董事会改组。根据乐融致新股东会决议，乐融致新选举产生了 4 名董事，其中天津嘉睿提名 2 名，乐视网提名 2 名。

截止公告披露日，公司持有乐融致新股权比例为 36.4046%，乐视网提名当选乐融致新董事会成员总数的二分之一，故乐视网对乐融致新的经营方针和决策、投资计划、公司内部管理和规章建立不再具有主导作用，不再构成对乐融致新的实际控制。

### 二、对上市公司的影响

公司存在无法偿还天津嘉睿 2017 年 11 月借款乐视网本金 12.9 亿元及剩余利息 0.55 亿元、融创房地产代乐视网垫付的中泰创盈贷款本金及利息共 191,432.5 万元的风险。目前乐视网持有乐融致新注册资本中 80.05%已质押给天津嘉睿和融创房地产，如若公司因无法按时偿还债务导致质押股权被质权人依法处置，公司持有乐融致新股权比例存在下降的风险。

1



根据公司披露的《2017 年年度报告》、《2018 年半年度报告》,公司营业收入、营业成本构成情况如下:

| 营业收入(单位:元) | 2017 年度 | | 2018 年 1-6 月 | |
|---|---|---|---|---|
| | 金额 | 占营业收入比重 | 金额 | 占营业收入比重 |
| 广告业务收入 | 501,737,415.90 | 7.14% | 108,335,937.12 | 11.01% |
| 终端业务收入 | 2,520,405,892.37 | 35.88% | 245,087,870.95 | 24.91% |
| **会员及发行业务收入** | 3,346,520,830.95 | 47.64% | 619,074,441.07 | 62.93% |
| 付费业务收入 | 2,128,348,491.41 | 30.30% | 382,859,951.46 | 38.92% |
| 版权业务收入 | 912,045,209.67 | 12.98% | 122,455,527.35 | 12.45% |
| 电视剧发行收入 | 306,127,129.87 | 4.36% | 113,758,962.26 | 11.56% |
| 技术服务收入 | 641,484,684.43 | 9.13% | 1,486,501.73 | 0.15% |
| 其他业务收入 | 15,066,978.57 | 0.21% | 9,790,262.79 | 1.00% |
| **合计** | **7,025,215,802.22** | **100.00%** | **983,775,013.66** | **100.00%** |

| 营业成本(单位:元) | 2017 年度 | | 2018 年 1-6 月 | |
|---|---|---|---|---|
| | 金额 | 占营业成本比重 | 金额 | 占营业成本比重 |
| cdn 及带宽费 | 1,473,594,971.49 | 15.18% | 122,472,196.61 | 8.32% |
| 工资及福利 | 524,286,306.22 | 5.40% | 116,426,809.35 | 7.91% |
| 交通及通讯费 | 7,846,239.17 | 0.08% | 2,542,015.77 | 0.17% |
| 摊提费用 | 3,100,237,387.97 | 31.94% | 859,254,276.57 | 58.35% |
| 业务招待费 | 5,658,026.47 | 0.06% | 1,789,376.39 | 0.12% |
| 办公费 | 9,697,689.42 | 0.10% | 229,854.58 | 0.02% |
| 其他 | 41,071,080.82 | 0.42% | 29,794,326.27 | 2.02% |
| 广告费用 | 424,307,302.72 | 4.37% | 9,416,571.65 | 0.64% |
| 终端成本 | 4,016,250,371.80 | 41.38% | 330,535,761.41 | 22.45% |
| 电视剧及衍生 | 103,760,649.53 | 1.07% | - | - |
| **合计** | **9,706,710,025.61** | **100.00%** | **1,472,461,188.60** | **100.00%** |

乐融致新出表后,上市公司原硬件相关业务收入将不再纳入合并报表范围。对于业务方面,结合目前双方经营状况及发展计划,不存在因出表而直接导致公司业务经营及公司与乐融致新的合作模式发生根本变化,但存在因乐视网持有乐融致新股权比例变更后,双方合作模式进一步调整的可能。丧失控制权日之后乐融致新产生的净利润及现金流量将不再纳入合并范围,上市公司仍存在经审计后2018 年全年净资产为负的风险。

根据 2018 年前三季度上市公司合并范围与乐融致新各项财务数据指标显示:

| 项目 | 2018 年前三季度 | 2018 年前三季度 |
|---|---|---|
| | 上市公司合并报表范围 | 乐融致新 |
| 总资产(万元) | 1,637,194.72 | 686,037.73 |



| 总负债（万元） | 1,730,792.82 | 737,467.51 |
|---|---|---|
| 归属于母公司所有者权益（万元） | -36,479.10 | -51,349.00 |
| 营业总收入（万元） | 137,068.20 | 55,504.35 |
| 归属于母公司股东的净利润（万元） | -148,948.37 | -59,078.53 |

三、备案文件

《乐融致新股东会决议》

特此公告

乐视网信息技术（北京）股份有限公司

董事会

二〇一八年十二月十九日

3

# EXHIBIT B

证券代码：300104            证券简称：乐视网            公告编号：2018-204

Security Code: 300104        Security Name: Le Shi Wang        Announcement No. 2018-204

乐视网信息技术（北京）股份有限公司

关于公司合并报表范围变更的公告

**Announcement on the Change of the Scope of the Consolidated Statements of**

**LETV Information Technology (Beijing) Co., Ltd**

---

**本公司及其董事会全体成员保证信息披露内容真实、准确和完整，没有虚假记载、误导性陈述或重大遗漏。**

**The Company and all members of the Board of Directors guarantee that the information disclosed is true, accurate, complete and free from false records, misleading statements or major omissions.**

---

乐视网信息技术（北京）股份有限公司（以下简称"乐视网"、"公司"）于公告披露日，不再将原控股子公司乐融致新电子科技（天津）有限公司（"乐融致新"）纳入公司财务报表合并范围。现将相关事项公告如下：

LETV Information Technology (Beijing) Co., Ltd ("LETV" or the "Company") will no longer consolidate the financial statements of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. ("Lerong Zhixin"), its previous holding subsidiary, as of the date of this announcement. Relevant matters are hereby announced as follows:

一、乐融致新不再纳入合并范围的原因

**1. The reason why the financial statements of Lerong Zhixin will no longer be consolidated**

2018 年 12 月 6 日，公司公告了《关于控股子公司司法拍卖成交进展暨工商变更完成的公告》（公告编号：2018-197），天津嘉睿汇鑫企业管理有限公司（以下简称"天津嘉睿"）就其拍卖所得乐融致新的股权工商变更，持有乐融致新注册资本比例提升至 46.0504%，乐融致新第一大股东为天津嘉睿。

On December 6, 2018, the Company released the *Announcement on the Progress of Judicial Auction of Holding Subsidiary and the Completion of the Industrial and*



*Commercial Registration of Change* (Announcement No.: 2018-197). It is stated therein that, after it acquires the shares of the Lerong Zhixin through auction and complete the industrial and commercial registration of change, Tianjin Jiarui Huixin Enterprise Management Co., Ltd ("Tianjin Jiarui") will hold 46.0504% of the registered capital of Lerong Zhixin and become the largest shareholder of Lerong Zhixing.

2018 年 12 月 19 日，乐融致新召开临时股东会，此次股东会由天津嘉睿提议召开并提交议案，议案主要内容为修改公司章程及董事会改组。根据乐融致新股东会决议，乐融致新选举产生了 4 名董事，其中天津嘉睿提名 2 名，乐视网提名 2 名。

On December 19, 2018, Lerong Zhixin held an interim shareholders' meeting, which was proposed by Tianjin Jiarui with a proposal submitted. The main content of the proposal is to modify the articles of association of the company and the reorganization of the board of directors. According to the resolution of the shareholders' meeting of Lerong Zhixin, four directors were elected, two of whom was nominated by Tianjin Jiarui and the other two nominated by LETV.

截止公告披露日，公司持有乐融致新股权比例为 36.4046%，乐视网提名当选乐融致新董事会成员总数的二分之一，故乐视网对乐融致新的经营方针和决策、投资计划、公司内部管理和规章建立不再具有主导作用，不再构成对乐融致新的实际控制。

As of the date of this announcement, the Company holds 36.4046% of the shares of Lerong Zhixin, and the number of directors nominated by LETV accounts for one-half of the total number of members of the board of directors of Lerong Zhixin. Therefore, LETV no longer direct the operation policy, decision-making, investment plan, internal management and rules establishment of Lerong Zhixin, and no longer exercise an actual control over Lerong Zhixin.



二、对上市公司的影响

公司存在无法偿还天津嘉睿 2017 年 11 月借款乐视网本金 12.9 亿元及剩余利息 0.55 亿元、融创房地产代乐视网垫付的中泰创盈贷款本金及利息共191,432.5 万元的风险。目前乐视网持有乐融致新注册资本中 80.05%已质押给天津嘉睿和融创房地产，如若公司因无法按时偿还债务导致质押股权被质权人依法处置，公司持有乐融致新股权比例存在下降的风险。


cninf
巨潮资讯
www.cninfo.com.cn

根据公司披露的《2017 年年度报告》、《2018 年半年度报告》，公司营业收入、营业成本构成情况如下：

| 营业收入（单位：元） | 2017 年度 | | 2018 年 1-6 月 | |
|---|---|---|---|---|
| | 金额 | 占营业收入比重 | 金额 | 占营业收入比重 |
| 广告业务收入 | 501,737,415.90 | 7.14% | 108,335,937.12 | 11.01% |
| 终端业务收入 | 2,520,405,892.37 | 35.88% | 245,087,870.95 | 24.91% |
| 会员及发行业务收入 | 3,346,520,830.95 | 47.64% | 619,074,441.07 | 62.93% |
| 付费业务收入 | 2,128,348,491.41 | 30.30% | 382,859,951.46 | 38.92% |
| 版权业务收入 | 912,045,209.67 | 12.98% | 122,455,527.35 | 12.45% |
| 电视剧发行收入 | 306,127,129.87 | 4.36% | 113,758,962.26 | 11.56% |
| 技术服务收入 | 641,484,684.43 | 9.13% | 1,486,501.73 | 0.15% |
| 其他业务收入 | 15,066,978.57 | 0.21% | 9,790,262.79 | 1.00% |
| 合计 | 7,025,215,802.22 | 100.00% | 983,775,013.66 | 100.00% |

| 营业成本（单位：元） | 2017 年度 | | 2018 年 1-6 月 | |
|---|---|---|---|---|
| | 金额 | 占营业成本比重 | 金额 | 占营业成本比重 |
| cdn 及带宽费 | 1,473,594,971.49 | 15.18% | 122,472,196.61 | 8.32% |
| 工资及福利 | 524,286,306.22 | 5.40% | 116,426,809.35 | 7.91% |
| 交通及通讯费 | 7,846,239.17 | 0.08% | 2,542,015.77 | 0.17% |
| 摊提费用 | 3,100,237,387.97 | 31.94% | 859,254,276.57 | 58.35% |
| 业务招待费 | 5,658,026.47 | 0.06% | 1,789,376.39 | 0.12% |
| 办公费 | 9,697,689.42 | 0.10% | 229,854.58 | 0.02% |
| 其他 | 41,071,080.82 | 0.42% | 29,794,326.27 | 2.02% |
| 广告费用 | 424,307,302.72 | 4.37% | 9,416,571.65 | 0.64% |
| 终端成本 | 4,016,250,371.80 | 41.38% | 330,535,761.41 | 22.45% |
| 电视剧及衍生 | 103,760,649.53 | 1.07% | - | - |
| 合计 | 9,706,710,025.61 | 100.00% | 1,472,461,188.60 | 100.00% |

乐融致新出表后，上市公司原硬件相关业务收入将不再纳入合并报表范围。对于业务方面，结合目前双方经营状况及发展计划，不存在因出表而直接导致公司业务经营及公司与乐融致新的合作模式发生根本变化，但存在因乐视网持有乐融致新股权比例变更后，双方合作模式进一步调整的可能。丧失控制权日之后乐融致新产生的净利润及现金流量将不再纳入合并范围，上市公司仍存在经审计后2018 年全年净资产为负的风险。

根据 2018 年前三季度上市公司合并范围与乐融致新各项财务数据指标显示：

| 项目 | 2018 年前三季度 | 2018 年前三季度 |
|---|---|---|
| | 上市公司合并报表范围 | 乐融致新 |
| 总资产（万元） | 1,637,194.72 | 686,037.73 |



| 总负债（万元） | 1,730,792.82 | 737,467.51 |
| 归属于母公司所有者权益（万元） | -36,479.10 | -51,349.00 |
| 营业总收入（万元） | 137,068.20 | 55,504.35 |
| 归属于母公司股东的净利润（万元） | -148,948.37 | -59,078.53 |

## 三、备案文件

《乐融致新股东会决议》


特此公告


乐视网信息技术（北京）股份有限公司

董事会

二〇一八年十二月十九日



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S NOTICE OF OMNIBUS OBJECTION AND OMNIBUS OBJECTION TO CLAIMS FILED BY TIANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD.; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF YUETING JIA AND SHAN HE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 2, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **April 2, 2020,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

United States Bankruptcy Court
Central District of California
Attn:  Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA  90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 2, 2020 | Nancy H. Brown | /s/ *Nancy H. Brown* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                  **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:328782.1 46353/002

# SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ

## 1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jerrold L Bregman    ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Richard H Golubow    rgolubow@wghlawyers.com, pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Alexandra N Krasovec    krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan    blogan@omm.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- David W. Meadows    david@davidwmeadowslaw.com
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Felix T Woo    fwoo@ftwlawgroup.com, admin@ftwlawgroup.com
- Claire K Wu    ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- David B Zolkin    dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:328782.1 46353/002

**F 9013-3.1.PROOF.SERVICE**

RECEIVED

JAN 2 3 2020

LEGAL SERVICES

**Fill in this information to identify the case:**

Debtor 1    YUETING JIA

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number    2:19-bk-24804-VZ

Filed: USBC - Central District of California
Yueting Jia    (B10)
19-24804 (VPZ)

YT1



0000000043

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Tianjin Jiarui Huixin Corporate Management Co., Ltd.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No

☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

See attached Addendum.
Name

Number    Street

City    State    ZIP Code

Contact phone _____

Contact email _____

Where should payments to the creditor be sent? (if different)

See attached Addendum.
Name

Number    Street

City    State    ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No

☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
| --- | --- |

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ __No less than $74,886,253__   **Does this amount include interest or other charges?**

See attached Addendum.

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

__Liquidated damages; see also attached Addendum.__

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

   **Nature of property:**

   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

   ☐ Motor vehicle

   ☐ Other. Describe: _____

   **Basis for perfection:** _____
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:** $ _____

   **Amount of the claim that is secured:** $ _____

   **Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:** $ _____

   **Annual Interest Rate** (when case was filed) _____%
   ☐ Fixed
   ☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410                      Proof of Claim                      page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  1 / 13 / 2020
MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Mengde | | WANG |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Executive Director | | |
| Company | Tianjin Jiarui Huixin Corporate Management Co., Ltd. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | bldg 4, No.1 Embassy, No.8, Dongzhimen North St. | | |
| | Number     Street | | |
| | Beijing, China | | 100007 |
| | City | State | ZIP Code |
| Contact phone | 0086-13752770634 | Email | xiaochenhua@sunac.com.cn |

## ADDENDUM TO PROOF OF CLAIM OF TIANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD. ("CREDITOR")

### EXHIBIT A

Creditor hereby asserts, reserves, and preserves, any and all claims, causes of action, other rights or remedies or the like under contract, applicable law, and equity that Creditor has against the Debtor, his affiliates, successors, representatives, agents, assigns or any other related individual or entity, including, without limitation, an amount not less than $74,886,253 (¥ 529,648,000 converted as of October 14, 2019), as detailed on the attached "Summary Information about the Claim" which is incorporated herein and made a part hereof. Creditor hereby asserts, reserves, and preserves all rights of setoff and recoupment available to it. Creditor hereby asserts, reserves, and preserves all claims for additional interest, liquidated damages, attorneys' fees, and other amounts.

Creditor's claims are general unsecured claims, except as provided herein or under applicable law or equity, or as determined by a court or another adjudicative body of competent jurisdiction to constitute administrative, secured, trust, or priority claims. To the extent that this proof of claim is or includes secured, administrative, trust, or priority claims, including claims based on Creditor's right to setoff or recoupment, or similar rights, it shall be and is a secured, administrative, trust, or priority claim.

In addition to the Summary Information about the Claim, the documents upon which these claims are based, include, without limitation, those attached to this addendum to proof of claim (along with English translations which are attached).

This proof of claim is filed with (a) full reservation of rights, remedies, privileges and the like, including, without limitation, (i) the right to amend, modify or supplement the proof of claim, (ii) the right to assert additional, modified, supplementary and/or amended proofs of claim and (iii) the right to make requests for administrative expenses based on, *inter alia*, events, information and/or documents obtained from the Debtor or others through discovery or otherwise and with (b) full reservation of (i) Creditor's rights, remedies, privileges, claims and/or the like against any party other than the Debtor, and (ii) Creditor's interests in any property, including, without limitation, property of the estate. This proof of claim is filed without prejudice to any cause of action against the Debtor not constituting a "claim" under 11 U.S.C. § 101(5) or otherwise applicable law.

This proof of claim is not intended to be, and shall not be construed as: (i) an election of remedies; (ii) a waiver of any past, present or future defaults or events of default; (iii) a waiver, release or limitation of any rights, remedies, privileges, claims, interests or the like of Creditor, including, without limitation, the right to assert any claims against the Debtor or against any other party or property other than the Debtor and his estate, inclusive of the right to recover interest and attorneys' fees and costs; (iv) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of this claim, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this case or involving Creditor; (v) a waiver of the right to mediation or arbitration; (vi) a consent to

jurisdiction in the United States, whether in the bankruptcy court or otherwise; (vii) a consent to the jurisdiction or Constitutional power of the bankruptcy court with respect to the subject matter of this proof of claim, any objection or other proceeding commenced with respect thereto, or any other proceeding commenced in this case against or otherwise involving Creditor; (viii) a waiver of the right to trial by jury in any proceedings so triable in this case, or any controversy or proceedings related to this case; (ix) a waiver or release of any right against any affiliate of the Debtor or other entity or person liable for all or part of any claim described herein; (x) a waiver of any right of subordination of indebtedness or liens held by other creditors of the Debtor; (xi) a waiver of any rights pursuant to section 506(b) of the Bankruptcy Code; or (xii) a waiver or release of any liens or security interests that Creditor may have with respect to the property of the Debtor or any affiliate of the Debtor.

Payments to Creditor should be sent to the following:

TIANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD.
Attn: Chen hua XIAO
bldg 4, No.1 Embassy, No.8, Dongzhimen North St.
Beijing 100007
China
Telephone:    0086-13752770634
Email:    xiaochenhua@sunac.com.cn

All notices concerning this proof of claim should be sent to each of the following:

TIANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD.
Attn: Chen hua XIAO
bldg 4, No.1 Embassy, No.8, Dongzhimen North St., Dongcheng District
Beijing 100007
China
Telephone:    0086-13752770634
Email:    xiaochenhua@sunac.com.cn

And

Jincheng Tongda & Neal Law Firm
Attn: Stephan Peng & Yue Wang
10th Floor, China World Tower
No. 1 Jianguo Menwai Avenue
Beijing, 100004, China
Email:    pengjun@jtnfa.com
          wangyue@jtnfa.com

And

Morris, Nichols, Arsht & Tunnell LLP
Attn: Eric D. Schwartz & Matthew B. Harvey

2

1201 North Market Street, 16th Floor
Wilmington, DE 19801
Telephone:       (302) 658-9200
Email:           eschwartz@mnat.com
                 mharvey@mnat.com

## Summary Information about the Claim

1. The *Equity Transfer Agreement on 15.7102% Equity of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd.* (Contract No.: JRHX-XL-ZA-17001, hereinafter referred to as the "Agreement") was duly signed and came into force by and between YUETING JIA, Xinle Asset Management (Tianjin) Partnership (Limited Partnership) (hereinafter referred to as "Xinle Asset") and Tianjin Jiarui Huixin Corporate Management Co., Ltd. (hereinafter referred to as "Jiarui Huixin") on January 13, 2017, under which YUETING JIA and Xinle Asset transferred 15.7102% Equity of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. (乐融致新电子科技（天津）有限公司, former name: LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd., hereinafter referred to as the "Target Company") to Jiarui Huixin on March 9, 2017, and accordingly <u>Jiarui Huixin has paid the price of ¥2,648,240,000</u> as consideration (hereinafter referred to as the "Transaction Consideration").

2. The Agreement stipulates as follows:

    a) According to Article 6.2 hereof, YUETING JIA undertakes (and procures the Target Company and relevant parties) to complete the declaration to China Securities Regulatory Commission for incorporating the equity not held by LeTV Information Technology (Beijing) Co., Ltd. (hereinafter referred to as the "Listed Company") in the Target Company into the Listed Company (hereinafter collectively referred to as the "Commitment A") before December 31, 2019, and complete the incorporation of the equity not held by the Listed Company in the Target Company into the Listed Company (hereinafter collectively referred to as the "Commitment B") before September 30, 2020; and

    b) According to Article 9.2.1(2) hereof, should YUETING JIA violate his post-closing commitments under Article 6.2 (including the Commitment A and Commitment B) hereof, YUETING JIA shall be considered as material defaulter under the Agreement and shall pay <u>20% of the total amount of the Transaction Consideration (¥2,648,240,000) paid by Jiarui Huixin</u> as liquidated damages, which is equal to ¥ 529,648,000.

3. YUETING JIA failed to fulfill the Commitment A by December 31, 2019, and basing on the objective fact and sound and reasonable judgement, YUETING JIA shall be impossible to fulfill the Commitment B under Article 6.2 by September 30, 2020. Therefore, YUETING JIA shall pay Jiarui Huixin liquidated damages of ¥ 529,648,000.

4. Above all, the claim of the creditor (Tianjin Jiarui Huixin Corporate Management Co., Ltd.) against YUETING JIA is ¥529,648,000 as liquidated damages, which

is equal to **$74,886,253** converted based on the foreign exchange rate effective on October 14, 2019 published by People's Bank of China.

合同编号：JRHX-XL-ZX-17001

鑫乐资产管理（天津）合伙企业（有限合伙）

及

贾跃亭

与

天津嘉睿汇鑫企业管理有限公司

关于

乐视致新电子科技（天津）有限公司

**15.7102%股权**

之

# 股权转让协议

**2017 年 1 月 13 日**

<strong>目录</strong>

第一条　释义 .................................................................. 2
　1.1　定义 .................................................................. 2
　1.2　解释规则 .............................................................. 4

第二条　本次交易标的及条件 .................................................. 5
　2.1　收购标的股权 .......................................................... 5
　2.2　交易的先决条件 ........................................................ 5

第三条　交易对价及支付安排 .................................................. 5
　3.1　交易对价 .............................................................. 5
　3.2　付款条件 .............................................................. 5
　3.3　支付进度及方式 ........................................................ 6

第四条　交割安排 ............................................................ 6
　4.1　交割 .................................................................. 6
　4.2　交割受阻及调整 ........................................................ 7
　4.3　权利转移及责任划分 .................................................... 7

第五条　改组完善公司治理结构 ................................................ 8

第六条　交割后承诺事项 ...................................................... 8
　6.1　优先投资权 ............................................................ 8
　6.2　目标公司整体注入上市公司 .............................................. 8
　6.3　返还拆借资金 .......................................................... 9
　6.4　优先购买权豁免 ........................................................ 9
　6.5　战略合作条款 .......................................................... 9

第七条　陈述与保证 .......................................................... 9
　7.1　甲方及目标公司的陈述与保证 ............................................ 9
　7.2　乙方的陈述与保证 ...................................................... 10

第八条　保密及例外 .......................................................... 10
　8.1　一般义务 .............................................................. 10
　8.2　例外 .................................................................. 10
　8.3　公开资料 .............................................................. 11

第九条　违约责任 ............................................................ 11
　9.1　一般约定 .............................................................. 11
　9.2　甲方违约责任 .......................................................... 11
　9.3　乙方违约责任 .......................................................... 12

第十条　附则 ................................................................ 12
　10.1　税、费 ............................................................... 12

10.2　生效 ......................................................................................................12
10.3　继续有效 ..............................................................................................12
10.4　通知 ......................................................................................................13
10.5　修改 ......................................................................................................13
10.6　弃权 ......................................................................................................13
10.7　完整协议 ..............................................................................................14
10.8　可分割性 ..............................................................................................14
10.9　适用法律与仲裁 ..................................................................................14

附录 1.　交易标的基本信息 ........................................................................1

附录 2.　目标公司董事会议事规则重要条款 ............................................1

附录 3.　财务经理职权 ................................................................................3

附录 4.　乐视竞争者名单 ............................................................................1

附录 5.　甲方及目标公司的陈述与保证 ....................................................1

附录 6.　乙方陈述与保证 ............................................................................1

附件 1.　乐视致新股权转让协议（工商版本）........................................1

股权转让协议

本《股权转让协议》由以下各方于 2017 年 1 月 13 日在中国北京签订：

甲方 1：鑫乐资产管理（天津）合伙企业（有限合伙）（"鑫乐资产"）

住所：天津生态城动漫中路 482 号创智大厦 203 室-257

执行事务合伙人委托代表：赵凯

甲方 2：贾跃亭（作为创始人及实际控制人）

联系地址：北京市朝阳区姚家园路 105 号乐视大厦 16 层

身份证号码：14262319731215081X

乙方：天津嘉睿汇鑫企业管理有限公司

注册地址：天津市滨海新区大港经济开发区万象路 168 号科技孵化器 B 区房
           屋 510 间

法定代表人：汪孟德

目标公司：乐视致新电子科技（天津）有限公司（"乐视致新"）

注册地址：天津生态城动漫中路 126 号动漫大厦 B1 区二层 201-427

法定代表人：贾跃亭

鉴于：

(1) 鑫乐资产管理（天津）合伙企业（有限合伙）为一家依据中国法律成立
    并有效存续的有限合伙企业，其实际控制人为贾跃亭先生；

(2) 乙方是一家依据中国法律成立并有效存续的有限责任公司；

(3) 目标公司为一家依据中国法律成立并有效存续的有限责任公司，主营业
    务为乐视 TV 终端业务，独立开展与其相关的 TV 产品研发、设计、运
    营和销售等互联网电视业务；据甲方及目标公司披露，目标公司的注册
    资本总额为 28,120.7441 万元，其中：乐视网信息技术（北京）股份有限
    公司（"上市公司"）持有乐视致新注册资本 15,519.0794 万元（占公司注
    册资本总额的 55.1873%），乐视控股（北京）有限公司持有乐视致新注
    册资本 5743.0383 万元（占公司注册资本总额股权的 20.4228%），鑫乐
    资产管理（天津）合伙企业（有限合伙）持有乐视致新注册资本 5035.76
    万元（占公司注册资本总额股权的 17.9076%），北京贝眉鸿科技有限公
    司持有乐视致新注册资本 206.1224 万元（占公司注册资本总额股权的
    0.7330%）；目标公司的基本信息可参见本协议附录 1；

1

(4) 按照本协议约定的条款和条件，乙方及/或其指定方拟收购鑫乐资产在目标公司所持有的 15.7102%股权；甲方同意向乙方及/或其指定方出售前述标的股权（前述收购及出售标的股权之交易，以下统称为"本次交易"）；

因此，各方经友好协商，就本次交易的交易方式、条件及核心条款及原则，达成本协议如下，以资各方共同遵照执行：

第一条 释义

1.1 定义

在本协议中，除非上下文另有规定，以下术语在本协议中具有下列含义：

| | |
|---|---|
| 本协议 | 指各方签署的本《股权转让协议》及其附录、附件、修订和补充。 |
| 各方/一方 | 各方指本协议的签订方，以及他们各自的继任者、受让人和授权代表。一方指各方其中的任何一方。 |
| 甲方 | 指对甲方 1（鑫乐资产）及甲方 2（贾跃亭先生）的统称，根据上下文具体情况也可指称其中的任何一个。 |
| 甲方 1/鑫乐资产 | 指鑫乐资产管理（天津）合伙企业（有限合伙）。 |
| 甲方 2/创始人 | 指贾跃亭先生，其为目标公司及其他乐视系公司的创始人及实际控制人。 |
| 乙方 | 指天津嘉睿汇鑫企业管理有限公司或其指定方。 |
| 上市公司 | 指乐视网信息技术（北京）股份有限公司，为一家依据中国法律成立并有效存续的上市公司（股票名称：乐视网，股票代码：300104）；贾跃亭为上市公司的创始人及实际控制人。 |
| 乐视致新/目标公司 | 指乐视致新电子科技（天津）有限公司。 |
| 标的股权 | 具有本协议第 2.1.1 款所约定的含义。 |
| 附带权益 | 指标的股权所附带及/或对应的全部股东权利和权益。 |
| 乐视系公司 | 指创始人直接控制或者间接控制的乐视生态体系内公司的统称，根据上下文具体情况也可指称其中的任何一个。 |
| 本次交易 | 具有本协议鉴于条款第(4)项所约定的含义。 |
| 交易对价 | 指乙方或其指定方根据本协议第 3.1 款需向鑫乐资产支付的交易对价。 |

2

| 完成交割 | 指甲方及其他相关方向乙方完成本次交易所涉标的股权过户等事项的交割。 |
| 交割日 | 指按照本协议第 4.1.1 款约定的办理完毕标的股权过户的日期和时间，以工商行政主管机关登记的股权过户登记日为准。 |
| 中国 | 指中华人民共和国，就本协议目的而言，不包括香港特别行政区和澳门特别行政区以及台湾省。 |
| 香港 | 指中华人民共和国香港特别行政区。 |
| 香港联交所 | 指香港联合交易所有限公司。 |
| 权益负担 | 指任何性质的权利主张、任何担保权益、第三方权利，包括但不限于任何抵押、按揭、质押、留置、保证、担保转让、所有权保留、优先购买权、优先拒绝权或其它任何性质的担保权益。 |
| 工作日 | 指香港和中国大陆的商业银行通常均营业且办理常规业务的营业日（不包括星期六、星期日和全体公民放假的节日）。 |
| 政府机构 | 指有管辖权的任何政府或政府机构，任何政府或政府机构的任何部门、事务处或机构，任何法院或仲裁庭，任何证券交易所的监管机构。 |
| 关联方 | 指一方控制、共同控制另一方或对另一方施加重大影响，以及两方或两方以上同受一方控制、共同控制或重大影响的，构成关联方。为本定义之目的，重大影响，是指对一个企业的财务和经营政策有参与决策的权力，但并不能够控制或者与其他方一起共同控制这些政策的制定。 |
| 控制（包括控制、被控制和受共同控制） | 指直接或间接地拥有领导决定一个实体的管理、财务和经营政策的权力或实现这种领导的权力，无论通过拥有具有投票权的证券、合同还是其他方式。 |
| 人 | 指任何自然人、组织、公司、政府部门、合资公司、合伙组织、联合体或其它主体（无论是否具有独立法人地位）。 |
| 人民币 | 指中国的法定货币。本次交易以人民币作为计价单位。 |
| 重大不利（影响或变化） | 指任何可能或被合理的认为将会阻碍任何方实质性实现完成本次交易或履行其在本协议下义务的变化或影响。 |

3

| | |
|---|---|
| 知识产权 | 指 (a) 专利、商标、服务标志、标识、式样、商号、设计及发明权、版权、著作权（包括对象和源代码的计算机软件著作权）和精神权利、数据权、数据库权利、半导体图形权利、实用新型、专有技术权、商业机密权利、专属性信息和其他专属性资料和专有知识产权权利，无论是已注册或未注册的，无论是注册的申请还是提出申请注册的权利，(b) 所有在本协议签署之日或在将来在世界任何地方可能存在的，与前述(a)项约定的内容具有相当或类似效果或性质的权利或保护形式，以及 (c) 对上述任何权利在过去、现在或将来的侵权进行起诉的权利。 |
| 适用法律 | 指任何具有约束力的适用法律、法规、规则、规定、通知、解释、任何政府机关或立法机关的命令或决定，或任何司法机关的判定、决定或解释。本协议及本协议所有补充文件均适用中华人民共和国现行有效的法律法规。 |
| 生效日 | 指本协议签署日。 |

### 1.2 解释规则

在本协议中，除非上下文另有规定：

1.2.1　标题：标题仅为方便阅读而设，不应影响本协议任何条款的解释。

1.2.2　包括但不限于："包括"一词和类似的用语不是限制性用语，解释"包括"时应视"但不限于"一词好像紧接在"包括"后面。

1.2.3　提及文件之处：提及本协议时，应包含本协议的鉴于条款；提及条款、条、款、项、附录时，应被理解为其提及的是本协议的条款、条、款、项、附录；除非文意另有规定，"本协议的"和"本协议项下"等词语和类似含义的字是指整份协议，而不是指本协议的某一条款或附录/附件。提及任何文件（包括本协议）之处指该份被不时修订、合并、补充、更新或取代的文件。

1.2.4　时间：如果注明一段时间并自某一日或某一行为或事件发生之日算起，计算该段时间时不应包括该日。

1.2.5　书面形式：凡指书面形式之处包括电子邮件、信函、纸质文件等形式。

1.2.6　语言：本协议以中文书写。

## 第二条 本次交易标的及条件

### 2.1 收购标的股权

2.1.1 基于甲方未来拟将乐视致新整体注入上市公司的规划及承诺，按照本协议约定的条款和条件，乙方同意收购鑫乐资产在乐视致新所持有的已经足额实缴的注册资本出资额人民币 44,178,251 元（占目标公司注册资本总额的 15.7102%）及该等出资所对应的股权以及附属于及该等股权所对应的全部附带权益（"**标的股权**"）。甲方同意向乙方或其指定方出售前述标的股权。

2.1.2 为完成上述标的股权转让，鑫乐资产（作为转让方）应与乙方或其指定方（作为受让方），于本协议签署当日，按照本协议附件 1 所列格式和内容签署《乐视致新股权转让协议》（工商版本），并按照目标公司注册地相关法律规定及相关政府机构的要求签署为完成标的股权过户至受让方名下所需签署的全部相关文件和决议，并将该等文件签署本原件经各方共同封存后交付给乙方保管。前述《乐视致新股权转让协议》（工商版本）及股权过户文件的任何条款及内容与本协议如有冲突的，应以本协议的约定为准。

### 2.2 交易的先决条件

乙方进行本协议项下之本次交易应以如下先决条件均已满足且持续有效为前提（乙方有权单独豁免前述全部或部分先决条件）：乙方的实际控制人已经就本次交易按照香港联交所《上市规则》获得了必要的批准（如适用）。

## 第三条 交易对价及支付安排

### 3.1 交易对价

各方一致同意并确认，乙方收购标的股权对价总额为 26.4824 亿元人民币（统称"**交易对价**"）。

### 3.2 付款条件

3.2.1 交易对价支付条件。乙方在本协议第 3.1 款项下的支付义务应以如下付款条件均已满足且持续有效为前提（乙方有权豁免前述全部或部分支付条件）：

    (1) 本次交易所需全套交易文件（包括本协议及附录、附件所列各执行文件）已经各方及相关方或其授权代表依法签署且有效；

    (2) 目标公司已完成本次交易所必须的所有内部审批程序，包括但不限于获得批准本次交易并同意签署和履行全部交易文件的股东会决议和董事会决议(或执行董事决定)，目标公司的其他有权

5

股东就标的股权转让事宜书面明确放弃优先购买权(如果股东
会决议已明确包含前述同意放弃优先购买权内容，在该股东会
决议上签字同意的股东不需要单独书面确认)；

(3) 鑫乐资产已按照本协议第 4.1 款约定就标的股权转让交易完成
交割，使得标的股权已经过户登记在乙方名下；

(4) 截至付款日，乙方已经完成对目标公司及相关方的法律、财务
及业务方面的尽职调查，且调查结果与甲方及目标公司披露的
信息没有重大差异；

(5) 陈述与保证。截至付款日，甲方在本协议及附件项下的陈述与
保证均在实质方面保持真实、准确和完整；

(6) 无重大不利变化。截至付款日，不存在、未发生可能对本次交
易所涉标的或者本协议履行造成任何重大不利影响的事件、情
况、变化等；

(7) 无重大裁决。截至付款日，没有任何法院判决、政府部门裁决
或者法律规定(a)阻止或限制任何本协议项下的交易；(b) 阻止或
限制任何本协议项下的交易的完成；(c)根据法律规定，任何本
协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责
任；或(d)限制乙方的经营从而构成重大不利变化；

(8) 无重大诉讼。不存在任何诉讼、仲裁、行政程序，且没有任何
法院判决、政府部门裁决或者法律规定(a)阻止或限制任何本协
议项下的交易，或影响交易的完成，或对交易产生重大不利影
响；(b)根据法律规定，任何本协议项下的交易的完成会使乙方
遭受重大惩罚或承担法律责任；或(c)限制乙方或目标公司的经
营从而构成重大不利变化。

## 3.3 支付进度及方式

乙方应在 2017 年 3 月 10 日或者本协议第 3.2.1 款所列付款条件均已满足
之日（以二者较晚到期者为准），向鑫乐资产支付交易对价，即 26.4824 亿元
人民币。

## 第四条 交割安排

甲方及目标公司应（且应促成相关方）按照下述步骤就本次交易完成交割。

## 4.1 交割

4.1.1 甲方应（且促成目标公司）在 2017 年 1 月 26 日前（但因工商等政
府主管部门原因导致耽搁并经双方协商书面确认的延期不构成违

约）就标的股权转让事宜及相关变更事项（包括但不限于章程修正案及董事变更）在工商行政管理机关办理完毕股权过户登记及相关事项的变更登记工作，将所有标的股权过户登记到乙方或其指定方名下。

4.1.2 为顺利办理标的股权过户登记之目的，如果需要甲方或目标公司或相关负责人提供任何补充资料或签署相关文件，甲方承诺（并应促成相关方）必须在乙方或其指定受让方或相关政府机构提出要求之日起 3 天内准备并提交有效的补充资料和签署相关文件。如果由于客观特殊原因确有困难而导致无法按照前述期限提交的，可以给予合理的宽限。

**4.2 交割受阻及调整**

(1) 各方特此确认并同意，如果在办理交割手续过程中遇到任何问题或障碍，或者由于适用法律规定、政策变更、相关政府主管部门或其他非本协议当事方及目标公司所能控制的原因导致本次交易的交割及乙方在本协议项下的权利不能直接实现（统称"**交割受阻**"），甲方及目标公司不能以此为理由否认乙方依据本协议应享有的经济利益，各方应积极协商和沟通，并应采纳乙方提出的合理建议，在适用法律允许的范围内以其他拥有实质性相同的效果（就其法律和商业内容而言，采取适用法律允许的其他替代方案，赋予乙方相同或等同的经济利益和法律权利，尽最大努力实现乙方进行本次交易之商业目的。各方进一步确认并同意，(1)乙方有权要求甲方将标的股权质押给乙方，并要求甲方通过包括但不限于股权托管、可交换债券等方式将标的股权所对应的管理权及经济收益权全部让渡给乙方行使和享有；(2) 一旦前述交割受阻情形消除，乙方有权要求甲方继续履行并完成交割，将标的股权过户至乙方或其指定方名下。

(2) 如果本次交易发生上述交割受阻情形而导致最终未能交割，且无法找到切实可行的替代方案，乙方有权终止本次交易及本协议，甲方（并应促成目标公司或其他相关方）应在乙方决定终止之日起 15 个工作日内全额返还乙方及其关联方已经支付的全部款项。

**4.3 权利转移及责任划分**

4.3.1 标的股权及其全部附带权益，自该等交易标的所对应的交割日起，全部转由乙方享有，相应的责任和义务亦由相对应的乙方承担。

4.3.2 在本次交易交割日前已存在的、发生的责任及义务，或者因在交割日之前所存在的或发生的事实或情况在交割日后所引起的责任及义务，以及甲方（或目标公司）在交割日前未向乙方如实披露的目标

公司及其分公司、子公司的对外债务和/或对外担保责任和义务，均
应由甲方承担相关责任和义务，并应确保乙方免因前述责任和义务
遭受损失。

## 第五条 改组完善公司治理结构

甲方及目标公司承诺（且应促成其他相关方），在办理标的股权交割过程
中同步完成以下治理结构的完善，包括但不限于修改目标公司章程、董事会
议事规则等内部规章制度。

### 5.1.1 乐视致新董事会

(1) 董事会成员。目前乐视致新仅设 1 名执行董事。乐视致新董事
会成员增加到 3 名董事。乙方有权委派 1 名董事。在董事会调
整之前，乐视致新应由执行董事决策的事项，由上市公司董事
会比照修订后的上市公司董事会议事规则讨论决定，执行董事
负责执行。

(2) 议事规则。乐视致新应当修改章程和董事会议事规则，其中应
包括附录 2（乐视致新董事会议事规则重要条款）的内容。

### 5.1.2 财务经理委派权

乙方有权向乐视致新委派一名财务经理。财务经理的职责请见本协议
附录 3。

## 第六条 交割后承诺事项

### 6.1 优先投资权

对于任何一家乐视系公司（上市公司及其合并范围内的子公司除外），甲
方同意（并促成相关方同意）给予乙方以下的优先投资权：（1）如果甲方出
售、减持、债转股等形式处置其直接或间接持有的某乐视系公司（上市公司
及其合并范围内的子公司除外）的股权，在同等条件下乙方有优先受让前述
股权的权利；（2）如果某乐视系公司（上市公司及其合并范围内的子公司除
外）拟增加注册资本或发行新股，在同等条件下乙方有优先认购的权利。

### 6.2 目标公司整体注入上市公司

甲方承诺（并促成目标公司及相关方）在 2019 年 12 月 31 日前，完成将
乐视致新中非上市公司持有的股权重组进入上市公司并向中国证监会的申
报，并于 2020 年 9 月 30 日或双方另行协商书面确定的其他日前完成将乐
视致新中非上市公司持有的股权重组进入上市公司（但如因中国证监会或相

关监管机构原因导致的延迟除外)。

### 6.3 返还拆借资金

甲方承诺，在本次交易完成后三个月内，甲方或其他乐视系公司从目标公司拆借的资金（如有）应当全部返还目标公司。

### 6.4 优先购买权豁免

甲方承诺（且应促成目标公司及其他相关方同意），如果乙方或其实际控制人未来为进行内部重组或关联方架构调整之目的拟将所持标的股权转让给乙方或其实际控制人指定的其他方（但乐视竞争者及其关联方除外）（"乐视竞争者"名单见附录 4)，目标公司的其他股东同意放弃优先购买权，并对前述转让给予积极配合。

### 6.5 战略合作条款

6.5.1 甲乙双方承诺将充分利用各自的资源，在包括但不限于智能硬件、互联网、房地产、智能家居、智能社区等领域开展全方位合作，以进一步巩固双方在各自行业内的领先地位。双方将开展深度合作，整合双方及下属机构的优质资源，从而促进双方共同、稳定的业务增长，实现双方共赢。

6.5.2 甲乙双方特别确认，除双方协商一致外，乙方将作为甲方及/或其所控制的乐视系公司在房地产业务领域的唯一合作方。由甲方及其关联方发挥其产业优势，双方在产业地产（包括但不限于影视产业、汽车产业、体育产业、互联网生态等方面）深度合作，发挥各自优势、实现共赢。

### 第七条 陈述与保证

### 7.1 甲方及目标公司的陈述与保证

7.1.1 甲方及目标公司向乙方做出附录 5 中的所有陈述与保证。该等陈述与保证在本协议签署之日及交割日（除非某项陈述与保证明确表明仅与某个特定日相关）均在实质方面保持真实、准确和完整。甲方理解，乙方是依赖甲方和目标公司的陈述与保证而进行本次交易的。

7.1.2 若甲方及/或目标公司在本协议项下所作的任何陈述与保证在实质方面不真实、不准确或不完整且未能在乙方发出书面催告通知后 30 天内予以纠正或有效补救，并因此导致乙方遭受任何损害、损失、支出或其他不利情况，则乙方有权要求违约方承担赔偿责任。在目标公司违约的情况下，甲方应就目标公司的违约向乙方承担连带赔偿责任。并且，本款所约定的赔偿不影响乙方依据本协议其他条款而应享有的任何其他权利和救济。

9

### 7.2 乙方的陈述与保证

7.2.1  乙方向甲方做出附录 6 中的所有陈述与保证。该等陈述与保证在本协议签署之日及交割日（除非某项陈述与保证明确表明仅与某个特定日相关）均在实质方面保持真实、准确和完整。乙方理解，甲方是依赖乙方的陈述与保证而进行本次交易的。

7.2.2  若乙方在本协议项下所作的任何陈述与保证在实质方面不真实、不准确或不完整且未能在甲方发出书面催告通知后 30 天内予以纠正或有效补救，并因此导致甲方遭受任何损害、损失、支出或其他不利情况，则甲方有权要求乙方和受让方承担连带赔偿责任。并且，本款所约定的赔偿不影响甲方依据本协议其他条款而应享有的任何其他权利和救济。

### 第八条 保密及例外

### 8.1 一般义务

各方承诺其在未经各方或有关一方（视情况而定）的事先书面同意之前不能向第三方披露任何保密信息，并应尽合理努力以确保其董事、股权持有人、目前或可能的合伙人、成员、顾问、银行和金融机构及主要人员（统称"代表"）在未经公司或有关方（视情况而定）的事先书面同意之前不能向第三方披露任何保密信息。上述"保密信息"在本第八条中的含义是（a）关于任何一方、任何集团成员或前述各方各自的董事、高级职员或雇员的组织、业务、技术、财务、交易、事务等事项的信息（无论该信息是以书面、口头或以任何其它形式并且无论该信息是否在本协议生效之前、之时或之后提供过），（b）本协议条款和任何其它基本文件的条款，以及各方及其各自的关联方的身份，和（c）任何由一方、任何集团成员或其代表准备的含有或来自保密信息的信息或材料。本第八条规定的保密义务在本协议终止后持续有效。各方应促使各集团成员分别遵守本第八条规定的义务，如同其为本协议的一方。

### 8.2 例外

上述第 8.1 条将不适用于下列情形：

(1)  对已是或成为公众所知的保密信息作出的披露，但一方或任何代表违反本协议的情况下披露的或在其指示下披露的已使公众得知保密信息的除外；

(2)  本协议一方向某一代表作出的披露；但是该代表受到具约束力的专业保密义务的约束；

(3)  根据任何证券交易所的规则、有关法律、政府法规、司法或监管程

序等有必要作出的披露，或在与源于或关于本协议的任何法律行
动、诉讼或程序的任何司法程序有关的情况下作出的披露，而且在
披露前已根据情况并按照任何可行的保密安排在可行范围内事先
通知其他方；或

(4) 各方在其或其关联方在正常经营活动、交易或拟进行的交易中，因
其合理必要性而需对保密信息作出的披露。

## 8.3 公开资料

除非法律或任何政府机构有规定，任何一方不得在未经另一方事先批准
之前，公开各方关系或参与项目的情况的资料或作出公布。

## 第九条 违约责任

### 9.1 一般约定

无论是由于作为或是不作为，任何一方没有履行或没有完全履行或没
有适当履行本协议及/或相关交易文件项下的任何义务、陈述与保证或承
诺，均构成违约事件。违约方应当承担守约方因此而遭受的经济损失。

### 9.2 甲方违约责任

9.2.1 除本协议另有约定外，如果出现以下任一种或任几种情形，视为甲
方的重大违约，乙方及/或其关联方有权要求甲方及/或其关联方支付
相当于届时乙方已支付款项总额 20%的款项作为违约金。在目标公
司违约的情况下，甲方应就目标公司的违约向乙方承担连带赔偿责
任。

(1) 甲方及/或其关联方拒绝按照本协议第 4.1 款约定向乙方完成交
割；

(2) 甲方及/或其关联方严重违反其在本协议第六条款项下交割后承
诺事项，且经乙方书面催告后 30 日内仍未纠正；

(3) 由于甲方及/或其关联方的拒绝或故意拖延履行其在本协议项下
的义务并且导致本次交易未能在本协议签署之日起 30 天内完成
交割，但乙方同意延长的情形除外；

(4) 除本协议已披露事项外，因本次交易交割日之前所存在的事实、
情况、问题所引发的责任或后果而导致目标公司无法继续经营，
导致乙方无法实现其进行本次交易的商业目的。

9.2.2 如甲方及/或其关联方发生上述第 9.2.1 款项下任何一项所列重大违
约，乙方有权选择单方解除本协议。在乙方选择解除本协议的情况
下，甲方应当在解除通知发出之日起 5 个工作日内，将乙方及/或其
关联方依据本协议及/或其他相关交易文件已经支付的全部交易对价

11

及其他任何款项退还给乙方及/或其指定方，并有权要求甲方及/或关联方按照上述第 9.2.1 款约定支付相当于乙方已支付全部款项 20%的款项作为违约金。

9.2.3 甲方及/或关联方延迟履行本协议所约定的违约金支付义务以及退款义务的，每逾期一日，甲方应按应支付或应退还款项的每日万分之二向乙方支付逾期利息。

9.2.4 如果乙方没有选择按照本第 9.2.2 条约定解除本协议的，且乙方愿意继续履行本协议，则甲方应继续完成其在本协议项下的义务，并且，该等继续履行并不豁免甲方应向乙方及/或其指定方承担的违约和赔偿责任。

### 9.3 乙方违约责任

9.3.1 本协议签署后，在支付条件全部满足的前提下，如乙方逾期支付转让对价，则须按照每日万分之二标准，向甲方计付迟延支付的违约金。如果逾期超过 30 日仍未支付，从第 31 日起，按照每日万分之五标准，向甲方计付迟延支付的违约金。

9.3.2 乙方延迟履行本协议所约定的违约金支付义务的，每逾期一日，乙方应按应支付违约金的每日万分之二向甲方支付逾期利息。

### 第十条 附则

#### 10.1 税、费

10.1.1 税赋

因签署和履行本次交易而产生的相关税赋，按相关法律、法规之规定由各方依照相关法律规定各自承担。

10.1.2 其他费用

在不影响任何以其它方式得到补救的情况下，各方应分别承担其就本协议或其作为一方当事人签订的交易文件的谈判、制备和执行以及在本协议和其作为一方当事人签订的交易文件项下就与本次交易事宜有关的或附带的所有交易产生的所有费用，这些费用包括甲方和乙方的代理、代表、法律顾问和会计师的所有开支和费用。

#### 10.2 生效

本协议经各方签署后生效。

#### 10.3 继续有效

如果本协议终止，本协议应无效并不再具有法律效力，但第八条至第十条的规定除外；除非各方另行同意，该终止不妨碍任何一方其在该终止之前

对违反本协议享有的权利。

### 10.4 通知

10.4.1 本协议项下的任何通知或其它正式通讯件应以书面作出，并由给予方或其代表签字。该等通知应由专人递交或特快专递送至第 10.4.2 款所列的地址。在每种情况下均应标明第 10.4.2 款中所列的（或根据本协议不时另行通知的）有关收件人。以专人递交或邮寄等方式发出的通知应视为已于下列有效送达：

（a） 若为专人递交，于递送时；

（b） 若为特快专递递交，在付邮日的第三（3）个工作日上午 10 时；

除非比上述时间更早收到，并且若（如为专人递交）交付或发送发生在某工作日的下午 6 时后或者在非工作日，则应视为于下一个工作日上午 9 时送达。在本条中提及的时间，均指收件人所在国家或地区的当地时间。

10.4.2 为第 10.4.1 条款目的各方的地址是：

（1） 如甲方，则送至：

地址：北京市朝阳区姚家园路 105 号乐视大厦 16 层

收件人：赵凯

（2） 如乙方，则送至：

地　址：天津市南开区奥城商业广场 C7 写字楼十层

收件人：薛雯

10.4.3 为本 10.4.1 条之目的，一方可通知其他方变更其名称、收件人、地址，且在通知中明确变更的日期。

### 10.5 修改

10.5.1 对本协议（或本协议中提及的任何文件）的修改必须是书面的，且须经每一方或其代表签署后方为有效。"修改"一词应包括以任何方式发生的任何修改、补充、删除或取代。

10.5.2 除非经明确同意，否则任何修改均不应构成对本协议任何条款的普遍放弃，也不应影响截至修改日已经在本协议项下产生的或基于本协议的任何权利、义务或责任，且各方在本协议项下或基于本协议的权利和义务应保持充分有效，除非对这些权利和义务进行了修改，并仅在被修改的范围内受到影响。

### 10.6 弃权

除非本协议一方以书面方式放弃本协议任何条款，否则放弃该等条款

不应视为有效行为。本协议任何一方没有或没有及时行使其在本协议项下的权利、权力和采取补救措施不能视为弃权，任何单独或部分的行使均不能排除其它的进一步行使，也不能排除其它任何权利、权力或补救措施的行使。在不限制上述规定的情况下，本协议任何一方对违约方某一违约行为放弃违约的追究权利不能被视为该方放弃对违约方今后发生的违约行为的追究权利。

**10.7    完整协议**

本协议和交易文件共同列出了各方之间（并仅限于各方之间）有关收本次交易的完整协议和理解，并替代此前各方之间（并仅限于各方之间）就此的所有的书面和口头陈述、理解和协议。本协议代替此前甲方与乙方或其关联方签订的任何文件。各方理解，为办理工商变更手续签署的《乐视致新股权转让协议》及股权变更登记文件的任何条款及内容与本协议如有冲突的，应以本协议的约定为准。

**10.8    可分割性**

如果由于法律或司法解释的变更而使本协议的任何条款无效或被认为无效或不可执行，则所涉及条款将在其无效或不可执行的范围内被视为无任何效力并且不包括在本协议内。上述情形不应影响本协议其它条款的效力。各方应于其后尽所有合理努力，用尽可能达到该无效或不可执行的条款之预期效果的有效条款取代该无效或不可执行的条款。

**10.9    适用法律与仲裁**

10.9.1    适用法律

本协议已按照中国的法律（不包括其冲突法条文）签署和交付。本协议应受中国的法律（不包括其冲突法条文）管辖，并按中国的法律（不包括其冲突法条文）解释。

10.9.2    仲裁

因本协议产生或与之有关的所有争议、争论或分异，如不能由各方在争议最初发生时起三十（30）天内通过友好协商达成协议解决，则只应提交中国国际经济贸易仲裁委员会北京分会仲裁，由根据中国国际经济贸易仲裁委员会北京分会的仲裁规则作终局解决。仲裁应在北京进行。仲裁庭由三（3）名仲裁员组成。甲乙双方各指定一名仲裁员，第三名仲裁员由仲裁委指定并为首席仲裁员。仲裁做出的裁定和裁决应是终局的。

10.9.3    文本

本协议以一式伍份签订，每方各持一（1）份，各份具有同等法律效力。

（以下无正文）

14

（本页无正文，为《股权转让协议》（合同编号：**JRHX-XL-ZX-17001**）的签署页）

各方正式授权代表已于本协议首页书明日期签署本协议，以资证明。

鑫乐资产管理（天津）合伙企业（有限合伙）

签署：＿＿＿＿＿＿＿＿＿＿＿＿＿＿

授权代表：

日期：

贾跃亭：

签字：＿＿＿＿＿＿＿＿＿＿＿＿＿＿

天津嘉睿汇鑫企业管理有限公司

签署：＿＿＿＿＿＿＿＿＿＿＿＿＿＿

法定代表人：

日期：

乐视致新电子科技（天津）有限公司

签署：＿＿＿＿＿＿＿＿＿＿＿＿＿＿

法定代表人：

日期：

附录1. 交易标的基本信息

下表系基于截止 2017 年 1 月 5 日公司营业执照登记信息

| 项目 | 基本信息 |
|---|---|
| 公司名称 | 乐视致新电子科技（天津）有限公司 |
| 注册号/统一社会信用代码 | 91120116589764942R |
| 住所 | 天津生态城动漫中路 126 号动漫大厦 B1 区二层 201-427 |
| 法定代表人 | 贾跃亭 |
| 注册资本 | 26504.0001 万元 |
| 公司类型 | 有限责任公司 |
| 经营范围 | 信息技术服务；从事广告业务；硬盘播放器的生产和销售；电子产品、机电设备（小轿车除外）的技术开发和销售；货物及技术进出口业务；通讯器材、移动电话、手机设备、手机的研发、生产、销售及售后服务；从事互联网文化活动；网络游戏研发生产；网络游戏上网运营；利用互联网经营游戏产品（含网络游戏虚拟货币发行、虚拟货币交易）；机械设备、五金交电、建筑材料、电子产品、文化用品、照相器材、计算机软硬件及外围设备、化妆品及卫生用品、体育用品、纺织品、服装、日用品、家具、金银珠宝首饰、饲料、新鲜水果、蔬菜、工艺礼品、钟表眼镜、玩具、汽车摩托车配件、仪器仪表、陶瓷制品、橡胶及塑料制品、花卉、装饰材料、通讯设备的批发、零售、进口及佣金代理（拍卖除外）业务；零售（互联网上销售）预包装食品、散装食品（含水产品）、乳制品（含幼儿配方乳粉）；软件开发、软件设计；委托生产电子产品、照相器材、计算机软硬件及辅助设备；设备安装、维修（需行政许可项目除外）；提供劳务服务（不含中介）；组装计算机。（依法须经批准的项目，经相关部门批准后方可开展经营活动） |
| 营业期限 | 长期 |

附录2. 目标公司董事会议事规则重要条款

1  董事会成员

   1.1 董事会成员为3名，乙方有权委派的1名董事

2  表决机制

   2.1 董事会审批重大事项时，必须取得超过董事会全体成员2/3（不含本数）的同意；董事会审议批准前述重大事项以外的其他事项必须取得超过董事会全体成员1/2（不含本数）的同意方为有效。

   2.2 尽管有前述规定，董事会审批对外担保事项和关联交易时，必须取得超过董事会全体成员2/3（不含本数）的同意。

3  董事会重大事项

   3.1 董事会和下属委员会成员构成、人数的规定及其修改；

   3.2 董事会和下属委员会议事规则的制定和修改；

   3.3 公司的经营计划和投资方案；

   3.4 公司的年度财务预算方案、决算方案；

   3.5 公司的利润分配方案和弥补亏损方案；

   3.6 公司增加或者减少注册资本、发行债券或其他证券及上市方案；

   3.7 公司重大收购、收购本公司股票或者合并、分立、解散及变更公司 形式的方案；

   3.8 在股东会授权范围内，决定公司对外投资、收购出售资产、资产抵押、对外担保事项、委托理财、关联交易等事项；

   3.9 《公司章程》的修改方案；

   3.10 向股东会提请聘请或更换为公司审计的会计师事务所的建议；

   3.11 改变公司适用的会计政策和标准；提高高管的薪酬待遇；对员工实施股权激励计划等；

   3.12 聘任或者解聘公司总经理、董事会秘书；根据总经理的提名，聘任或者解聘公司副总经理、财务负责人等高级管理人员，并决定其报酬事项和奖惩事项；

   3.13 就子公司的章程修改或议案进行讨论决策；但名称、住所等非实质性修改或者事先取得乙方书面同意的除外（乙方收到董事会关于子公司章程修改议案的通知后3个工作日未书面提出异议的，视为乙方同意）；

3.14 董事会认为对公司经营存在重大影响的其他重大事项。

4 回避机制

4.1 出现下述情形的，董事应当对有关提案回避表决：(1)法律法规规定董事应当回避的情形；(2)中国证监会和交易所规定董事应当回避的情形；(3)董事本人认为应当回避的情形；(4)《公司章程》规定的因董事与提案所涉及的企业或事项有关联关系而需回避的其他情形。

4.2 在董事回避表决的情况下，有关董事会会议由过半数的非回避董事出席方可举行。出席会议的非回避董事人数少于2人的，不得对有关提案进行表决，而应当将该事项提交股东会审议。

4.3 在董事回避表决的情况下，表决事项必须取得超过全体非回避董事2/3（不含本数）的同意方为有效。

5 关联交易

5.1 （1）公司与关联自然人发生的交易金额在30万元以上的关联交易，或（2）公司与关联法人发生的交易金额在100万元以上且公司最近一期经审计净资产绝对值0.5%以上的关联交易，由董事会决定。

5.2 公司与关联人发生的交易(公司获赠现金资产和提供担保除外)单笔金额在1,000万元以上且占公司最近一期经审计净资产绝对值5%以上的关联交易应当聘请具有从事证券、期货相关业务资格的中介机构对交易标的进行评估或者审计，并将该交易提交股东会审议。

5.3 如属于在上述授权范围内，但法律、法规规定或董事会认为有必要须报股东会批准的事项，则应提交股东会审议。

6 甲方应促成公司按照上述全部安排及原则修改公司章程。

附录3. 财务经理职权

财务经理协助财务负责人负责公司财务活动和会计活动的管理,从财务风险防范
与控制角度,协助财务负责人分析、建议和监督公司的业务经营管理行为,行使
如下职权:

(1) 参与拟定公司资金使用调度、贷款担保、对外投资、产权转让、资产重组等
重大经营决策活动;
(2) 协助财务负责人落实董事会批准的重大经营计划的执行情况;
(3) 参与编制公司财务计划、财务报表以及日常财务会计审计活动,协助财务负
责人监控日常的财务、会计和审计活动;
(4) 参与编制公司成本控制计划、监督实施成本控制方案、努力降低成本,提高
效益;
(5) 其他建议权。

甲方应促成乐视致新按照上述全部安排及原则修改乐视致新章程。

附录4. 乐视竞争者名单

| | |
|---|---|
| 三星 | 百度 |
| LG | 爱奇艺 |
| 索尼 | 阿里巴巴 |
| 松下 | 优酷土豆 |
| 清华同方 | 搜狐 |
| 创维 | 网易 |
| 海信 | 中影集团 |
| 长虹 | 上影集团 |
| 康佳 | 华谊兄弟传媒集团 |
| 小米 | POLYBONA |
| 暴风 | 光线传媒 |
| 微鲸电视 | BONA |
| PPTV | 华夏电影 |
| 苹果 | 万达 |
| 腾讯 | |

附录5. 甲方及目标公司的陈述与保证

甲方及目标公司共同并分别向乙方作出如下陈述与保证：

1 标的股权

(1) 甲方 1 是标的股权之合法的和实际的所有权人，已经合法缴足对目标公司的全部出资，不存在任何虚假出资或抽逃出资的行为，不存在任何的股权代持、托管情形，且不存在任何出售股权、与股权有关的其他权益或要求增资的协议、安排或承诺。甲方及目标公司没有回购、回赎或以其他方式购买任何股权的义务且并无向任何其他实体提供资本性投资的义务(无论是以贷款、出资或其他方式)。

(2) 除甲方及目标公司另有披露外，甲方 1 持有的标的股权上没有设置任何质押或其他担保责任、第三人权利等权利限制，或截至交割日，上述权利已经完全解除，标的股权过户至乙方名下没有任何限制或障碍。乙方受让标的股权后不会因此受到任何第三人的追索。

(3) 甲方及目标公司签署和履行本协议不违反适用于甲方及目标公司的任何法律规定，不违反或不会导致甲方及目标公司违反其作为一方或对其或其财产有约束力的任何有效协议或合同的约定。甲方及目标公司就签署、递交和执行本协议和其它交易文件已取得相应融资方的书面同意（无论其作为借款人还是担保人），无须取得政府部门或任何其它主管部门的同意、批准、命令、授权。

(4) 甲方及目标公司对本协议和其他交易文件的签署和履行在目前和将来均不会违反任何目标公司的章程规定，不会与适用于目标公司的任何法律法规或其他规范性文件相冲突，也不会与目标公司已经签署的任何协议、安排相抵触或造成任何违约。

(5) 本协议及其它交易文件一旦签署后，将对甲方及目标公司具有合法的、有拘束力的效力。

2 主体资格、注册资本及股权结构

(1) 主体资格。甲方 1 系一家依据中国法律成立并有效存续的有限合伙企业，甲方 2 系中华人民共和国公民，具备完全民事行为能力，甲方 1 和甲方 2 均拥有充分的权力和权利签署本协议和履行本协议项下义务。

(2) 合法组织、良好存续及资质。目标公司是依据管辖地法律合法设立、组建、有效存续和资格完备的法人，具有充分的权利和权限拥有、经营其

资产，以及经营其营业执照中所载营业范围相关业务，且拥有充分的权力和权利签署本协议和履行本协议项下义务。

(3) 股权结构及注册资本。除甲方及目标公司另有披露外，在本协议签署日及交割日，本协议及甲方、目标公司作为一方当事人的其他相关交易文件（以下称为"其它交易文件"）所述的目标公司的股权结构、注册资本及其所有权事项是对其各自股权结构及其所有权状况的真实、完整和准确的描述。

3  遵守法律

(1) 遵守法律。目标公司开展的业务活动在各实质性方面均一直遵守所有可适用的法律规定。目标公司或其董事、管理人员或高级管理层人员在开展业务活动中，未实施任何可能违反法律规定或重大侵权的行为。甲方及目标公司其他股东从未实施可能对目标公司产生重大不利影响的任何违法行为。以甲方和目标公司作为一方当事人的合同义务，或对甲方和目标公司有约束力的合同义务均为合法，且没有违反任何可适用的法律规定。目标公司目前所开展的各项业务均合法开展，其各项业务的合作方均为合法有效并具备履行合作业务相关资质的合法主体。各项合作业务均未出现任何纠纷、争议或事故。

(2) 许可。甲方及目标公司保证向乙方提供目标公司已经取得的正在开展及计划开展的业务活动相关的所有许可、批准、授权、特许和执照，并保证前述许可、批准、授权、特许和执照的真实、合法，持续有效，不受任何交易文件所拟议的交易的影响。

(3) 政府部门。任何政府部门或其他人未启动任何诉讼或调查，以限制、禁止或以其它方式阻碍本协议项下交易，或直接或通过任何法律、法规禁止、实质性限制目标公司开展现有业务活动，或目标公司未作出或授权支付任何违反法律规定的赠与、支付、付款。

4  资产

目标公司合法拥有其所有的资产，除甲方及目标公司另有披露外，该等资产均不存在任何抵押、质押等权利负担、其他先取特权或与其他任何主体的权益分成。

5  重大合同及交易

(1) 截至交割日，已经签署但尚未履行完毕的合同均不会给本次交易及乙方以及目标公司未来的运营造成任何违约、赔偿或不利影响。截至本协议

签署日，目标公司未收到任何来自合同相对方以行动或通知表明，在交割日之后的任何时候将违约或终止合同。

(2) 合同履行。据合理预测，对于目标公司作为一方当事人或其受约束的任一重大合同，均不存在由于目标公司原因导致无法履行的情形。

(3) 控制权改变。与目标公司有关的所有合同均未约定若目标公司控制权或者目标公司董事会（或类似机构）的成员变更，或甲方及目标公司签署本协议，则合同将被终止，或使目标公司在该等合同项下的权利义务受到重大不利影响，或导致目标公司失去任何主要客户或供应商。

(4) 关联方交易。除甲方及目标公司另有披露外，甲方及目标公司同任何关联方之间不存在任何合同义务或交易，任何关联方未对甲方及目标公司负有债务，甲方及目标公司也不对任何关联方负有债务（或承诺提供贷款）；不存在任何因关联方原因而产生的对目标公司的资产和/或业务产生重大不利影响的情形。目标公司与关联方间的任何合同均是按照有利于目标公司的条件签署的。

(5) 资金拆借。除甲方及目标公司另有披露外，甲方及目标公司同任何关联方之间不存在任何形式的资金拆借行为。甲方及目标公司向乙方做出保证，目标公司的现有股东及现有股东关联方向目标公司通过拆借等任何方式提供资金所形成的债权，在根据本协议和其他交易文件约定应由甲方向乙方支付的罚息、资金闲置损失、违约金及赔偿金全额获得清偿前，均劣后于乙方的上述债权。

(6) 签订合同的授权。目标公司未向任何人提供代表其签订合同或承诺代表其从事某项行为的授权委托书、其它明示、默示或名义上的授权（无论该授权是否已经生效），但向其员工提供的该员工在正常履行职责时签署日常合同的授权除外。

(7) 排他性约定。截至本协议签署日及交割日，甲方及目标公司没有与任何第三方签署过任何针对目标公司的排他性合作承诺或约定。

6    财务事项

(1) 财务报表。在交割日之前，目标公司应当已经向乙方提交 2014 年、2015年、2016 年度的财务报表。财务报表应当根据中国企业会计准则在所有重大方面公正地反映出目标公司在相应日期和期间的财务状况、经营成果及资金周转情况。甲方及目标公司保证在交割日之后向乙方提交年度财务报表，该等财务报表符合中国企业会计准则并且在规定的期间内持续适用上述会计准则。财务报表在所有重大方面公正地反映出目标公司

在相应日期和期间的财务状况、经营成果及资金周转情况。财务报表包括经乙方认可的会计师事务所按中国企业会计准则编制的审计报告。

(2) 税款准备和计提。所有应当计提的税费已按照中国企业会计准则在财务报表中对予以全部准备或计提，包括会计结算日截止时或之前的会计期间内的递延税费或临时性税费，包括但不限于任何目标公司当时已经承担、或之后随时可能或已经有义务承担的税款。

(3) 特殊财务安排。除了财务报表的注解中另有规定外，目标公司不存在任何"资产负债表外"的安排。甲方及目标公司保证，甲方及目标公司与任何关联方之间所有的财务及收益安排、资金往来情况已经全部披露给乙方。

(4) 财务责任。除甲方及目标公司另有披露外，甲方、目标公司及乐视系公司不存在其他债务和/或或有负债（包括但不限于甲方及目标公司对外担保情况），也不存在加速到期的借款（银行贷款及融资合同，或第三方违约行为除外）。

7   税费

(1) 目标公司已支付所有的到期税费或要求予以支付的税费、所有与这些税费相关的重大差额或其它附加税、利息和罚款，但不包括目标公司善意提出异议且已经按照中国企业会计准则提供充足准备金的税费；

(2) 目标公司已经及时提交或促使提交所有要求的用于纳税的重要收益（包括所有可适用的延期收益），且所有此类纳税收益内容准确、完整；

(3) 对于目标公司的所有此类纳税收益，(i)不存在任何针对目标公司提出的，或者据目标公司所知潜在的未经评估的税费差额，以及 (ii)任何纳税收益方面不存在进行中的审计，记录或将记录纳税收益的日期时不存在任何有效的延期期，不存在关于税费评估或支付时间延期方面的有效权利放弃或协议；

(4) 目标公司财务报表中所有关于税款负债项目的所有重要方面始终按照中国企业会计准则进行了记载，目标公司在交割日时或之前期间内所有与税费相关负债已经充分记载于财务报表。

8   运营

(1) 自本协议签署日起至本次交易交割日期间（"过渡期间"）未发生下列情形：

    a) 目标公司合法、正常、通常开展的业务性质、范围或方式发生中断或改变，不能处于持续经营状态；

    b) 与财务报表中披露的状况相比，目标公司的客户关系、资产或负债发生任何重大变化；

    c) 除了正常业务活动或本协议中拟议的交易外，目标公司进行任何性质的资产收购、出售、转让或处置；

    d) 为了提高目标公司的董事或高级管理人员的总年薪额，通过工资、奖金、奖励或其它方式，向他们支付超过会计结算日时目标公司向其支付或分配的年收入额的资金或利益；

    e) 发生任何交易或事件（无论单独发生、或与一项或多项交易、事件一起发生）使得目标公司的缴税责任增加或可能增加，但不包括目标公司在正常业务活动中从事交易时的实际收入、利润或销售额而产生的所得税、销售税或营业税；

    f) 发生对目标公司使用的资产、目标公司状况或目标公司目前从事或拟从事的业务产生重大不利影响的、且未经保险承保的任何损害、毁坏或损失；

    g) 目标公司放弃有价值的权利，或放弃全部或部分的重大债权；

    h) 对约束目标公司的任何重大合同进行重大变更或修改；在正常业务经营之外订立任何重大合同，修订或调整任何重大合同的任何重要条款；

    i) 目标公司公布或支付任何红利或进行其它分配；或者

    j) 目标公司签订与本协议第 8 条（1）项中规定事项相关的任何协议或承诺。

(2) 过渡期间内如发生下列情形，应及时通报乙方，乙方有权就该等事项的合理性进行问询，甲方及目标公司应给出合理解释：

    a) 除甲方及目标公司另有披露外，目标公司发生逾期应付款项超过 1000 万元；

    b) 超过 1000 万元人民币的资本项目支出或资金承诺；

c) 目标公司订立或签署年费用超过1000万元人民币的任何新的服务协
议，并且目标公司在没有合同义务的情况下，在交割日之前对任何
管理人员或高级管理人员的服务条款进行变更；

d) 目标公司的核心管理层人员或高级管理层人员辞职、可能辞职或终
止雇佣关系，或者在非乐视系公司任职、或者从事或与其他方合作
从事与目标公司相同或类似的业务。

9   索赔和诉讼程序

(1) 不存在诉讼或潜在诉讼。甲方、目标公司或其任何高级管理人员或董事
（以其职权地位作为高级管理人员或董事）未涉及、等待任何可能影响
其履行目标公司职务的诉讼、案件、程序、投诉、调查、询问、索赔、
起诉、仲裁、行政诉讼或刑事诉讼的裁决（以下统称为"诉讼"），或者收
到已经成为上述诉讼对象的通知，无论其在诉讼中作为原告、被告或其
他当事人。据甲方及目标公司所知，不存在任何事实或情况，可能针对
目标公司或其任何高级管理人员或董事（以其职权地位作为高级管理人
员或董事）提起将产生重大不利影响（据合理预测）的诉讼或潜在诉讼。

(2) 具有偿付能力。不存在任何要求目标公司解散或清算的命令或决议。目
标公司的任何资产上均不存在任何冻结、扣押或其他限制权力行使的行
政措施或司法措施。目标公司未失去任何偿付能力或产生任何到期但不
能清偿的债务。

10  劳动关系

(1) 员工福利方案。目标公司已经根据法律规定，为所有员工缴纳了全部的
社会保险费。除了上述社会保险费外，目标公司未维持、支付任何员工
福利方案，或就任何员工福利方案承担义务。

(2) 劳动关系。目标公司没有参与任何不符合现行法律要求的劳动关系，不
存在针对目标公司的未决的，或据目标公司所知，潜在的劳动争议或仲
裁，不存在任何拖欠员工强制性社会保险和福利的情形。据甲方及目标
公司所知，不存在目标公司的高级管理人员或核心员工打算与目标公司
终止劳动合同。目标公司未讨论或采取措施终止与高级管理人员、核心
员工的劳动合同。

11  客户

截至交割日，目标公司未收到任何来自客户的通知，表明在交割日之后的任
何时候将停止使用目标公司的服务，或实质性减少对该服务的使用；目标公司亦
无任何理由认为上述情况有可能发生或本协议及其他交易文件所拟议的交易会

导致上述情况的发生。

12  披露

甲方及目标公司在本协议下所作的陈述或保证，根据其所做出的情形而言，不含有任何对重要事实的不真实陈述或对任何必需的重要事实陈述的遗漏，从而使其在本协议中所作的陈述不具有误导性，并且上述所有说明已准确、完整且正确地表述本协议中所要求或准备阐述的信息。截至本协议签署日及交割日，不存在与本协议项下交易相关的没有向乙方书面披露但可能导致重大不利影响的任何事实或情况。

附录6. 乙方陈述与保证

### 1  主体资格

乙方是根据注册地法律注册、合法成立并有效存续的公司，具有充分的权力和权限拥有、经营其资产，以及运营其营业执照中所载营业范围相关业务。

### 2  交易授权及其合法性

(a) 授权。乙方有权签署、递交和执行本协议和其作为一方当事人的其他相关交易文件（以下称为"**其它交易文件**"），且在签署、递交及履行本协议及其它交易文件时，或者根据本协议和其它交易文件的规定完成交易时，除本协议已经约定的批准、审批事项外，无须取得政府部门或任何其他主管部门的同意、批准、命令、授权，或被要求注册、资格审查、指派、申报。

(b) 有约束力。本协议及其它交易文件一旦签署后，将对乙方具有合法的、有拘束力的效力。

### 3  协议履行

乙方拥有合法和足够的资金按照本协议的规定履行其付款义务且有能力履行其在本协议项下的其他义务。





附件1. 乐视致新股权转让协议（工商版本）

乐视致新电子科技（天津）　有限公司

# 股 权 转 让 协 议

转让方：**鑫乐资产管理（天津）合伙企业（有限合伙）**

（以下简称甲方）

受让方：**天津嘉睿汇鑫企业管理有限公司**

（以下简称乙方）

甲乙双方依据《公司法》、《合同法》等法律和公司《章程》的有关规定，在平等、自愿的基础上，经协商一致就甲方持有的乐视致新电子科技（天津）有限公司的股权转让事宜订立如下协议：

一、甲方作为该公司的合法股东，投资 <u>5035.76</u> 万元持有该公司 <u>17.91</u> %股权，现将其在公司中占有的 <u>15.7102</u> % 股权依法转让给乙方，乙方自愿接受以上股权，并据此成为该公司的合法股东；

二、股权转让后，甲方放弃其转让的股权所代表的股东权利，相应的股东义务也随之免除；乙方则在其受让的股权范围内享有并承担法律和公司章程规定的股东权利和股东义务；

三、本协议须提交公司股东会议审议通过，并连同《股东会决议》一并提交工商登记机关。

转 让 方：  受 让 方：

年　　　月　　　日　　　　　　　年　　　月　　　日

合同编号: **JRHX-XL-ZX-17001**
Contract No.: **JRHX-XL-ZX-17001**

鑫乐资产管理（天津）合伙企业（有限合伙）

及

贾跃亭

与

天津嘉睿汇鑫企业管理有限公司

关于

乐视致新电子科技（天津）有限公司

15.7102% 股权

之

股权转让协议

Equity Transfer Agreement

on

15.7102% Equity of

LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd.

between

Xinle Asset Management (Tianjin) Partnership (Limited Partnership)

Jia Yueting

and

Tianjin Jiarui Huixin Enterprise Management Co., Ltd.

2017 年 1 月 13 日

January 13, 2017

## 股权转让协议

## Equity Transfer Agreement

本《股权转让协议》由以下各方于 2017 年 1 月 13 日在中国北京签订:

The *Equity Transfer Agreement* was signed by and between the following Parties on January 13, 2017 in Beijing, China:

甲方 1: 鑫乐资产管理(天津)合伙企业(有限合伙)("鑫乐资产")

住所:天津生态城动漫中路 482 号创智大厦 203 室-257

执行事务合伙人委托代表:赵凯

**Party A 1: Xinle Asset Management (Tianjin) Partnership (Limited Partnership) ("Xinle Asset")**

Domicile: Room 203-257, Chuangzhi Building, No.482 Dongman Middle Road, Tianjin Eco-City

Authorized Representative of Executive Partner: Zhao Kai

甲方 2:贾跃亭(作为创始人及实际控制人)

联系地址:北京市朝阳区姚家园路 105 号乐视大厦 16 层

身份证号码:14262319731215081X

**Party A 2: Jia Yueting (the Founder and Actual Controller)**

Contact Address: F16, LeTV Building, No.105 Yaojiayuan Road, Chaoyang District, Beijing

ID Card No.: 14262319731215081X

乙方:天津嘉睿汇鑫企业管理有限公司

注册地址:天津市滨海新区大港经济开发区万象路 168 号科技孵化器 B 区房屋 510 间

法定代表人:汪孟德

**Party B: Tianjin Jiarui Huixin Enterprise Management Co., Ltd.**

Registered Address: Room 510, Zone B, Technology Incubator, No.168 Wanxiang Road, Dagang Economic Development Zone, Binhai New Area, Tianjin

Legal Representative: Wang Mengde

目标公司:乐视致新电子科技(天津)有限公司("乐视致新")

注册地址:天津生态城动漫中路 126 号动漫大厦 B1 区二层 201-427

法定代表人:贾跃亭

Target Company: LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd. ("LeTV Zhixin")

Registered Address: Room 201-427, F2, Zone B1, Animation Building, No.126 Dongman Middle Road, Tianjin Eco-City

Legal Representative: Jia Yueting

1.1 定义

**1.1 Definition**

在本协议中，除非上下文另有规定，以下术语在本协议中具有下列含义：

In this Agreement, unless the context otherwise requires, the following terms shall have the following meanings:

| | |
|---|---|
| 本协议 | 指各方签署的本《股权转让协议》及其附录、附件、修订和补充。 |
| This Agreement | refers to the Equity Transfer Agreement signed by parties and its appendices, annexes, amendments and supplements. |
| 各方/一方 | 各方指本协议的签订方，以及他们各自的继任者、受让人和授权代表。一方指各方其中的任何一方。 |
| Parties/One Party | Parties refer to the signatories of this Agreement and their respective successors, assignees and authorized representatives. One Party refers to either party of them. |
| 甲方 | 指对甲方 1 （鑫乐资产）及甲方 2 （贾跃亭先生）的统称，根据上下文具体情况也可指称其中的任何一个。 |
| Party A | refers to the collective name of Party A1 (Xinle Asset) and Party A2 (Mr. Jia Yueting), or either of them depending on the context and specific circumstances. |
| 甲方 1/鑫乐资产 | 指鑫乐资产管理（天津）合伙企业（有限合伙）。 |
| Party A1/Xinle Asset | refers to Xinle Asset Management (Tianjin) Partnership (Limited Partnership). |
| 甲方 2/创始人 | 指贾跃亭先生，其为目标公司及其他乐视系公司的创始人及实际控制人。 |
| Party A2/Founder | refers to Mr. Jia Yueting, the founder and actual controller of the Target Company and other LeTV Companies. |
| 乙方 | 指天津嘉睿汇鑫企业管理有限公司或其指定方。 |
| Party B | refers to Tianjin Jiarui Huixin Enterprise Management Co., Ltd. or its designated party. |
| 上市公司 | 指乐视网信息技术（北京）股份有限公司，为一家依据中国法律成立并有效存续的上市公司（股票名称：乐视网，股票代码：300104）；贾跃亭为上市公司的创始人及实际控制人。 |
| Listed Company | refers to LeTV Network Information Technology (Beijing) Co., Ltd., a Listed Company established and validly existing under the laws of China (Stock Name: LeTV Network, Stock Code: 300104); Jia Yueting is the founder and actual controller of the Listed Company. |
| 乐视致新/目标公司 | 指乐视致新电子科技（天津）有限公司。 |
| LeTV Zhixin/Target Company | refers to LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd. |
| 标的股权 | 具有本协议第 2.1.1 款所约定的含义。 |
| Target Equity | has the meaning given in Article 2.1.1 of this Agreement. |
| 附带权益 | 指标的股权所附带及/或对应的全部股东权利和权益。 |
| Attached Interests | refer to all the shareholder's rights and interests attached to and/or corresponding to the Target Equity. |
| 乐视系公司 | 指创始人直接控制或者间接控制的乐视生态体系内公司的统称，根据 |

|  | 上下文具体情况也可指称其中的任何一个。 |
|---|---|
| LeTV Companies | refer to the collective name of companies within the LeTV ecosystem that are directly or indirectly controlled by the founder, or any one of such companies depending on the context and specific circumstances. |
| 本次交易 | 具有本协议鉴于条款第（4）项所约定的含义。 |
| This Transaction | has the meaning given in clause (4) under the Whereas section. |
| 交易对价 | 指乙方或其指定方根据本协议第 3.1 款需向鑫乐资产支付的交易对价。 |
| Transaction Consideration | refers to the transaction consideration that Party B or its designated party is required to pay to Xinle Asset according to Article 3.1 of this Agreement. |
| 完成交割 | 指甲方及其他相关方向乙方完成本次交易所涉标的股权过户等事项的交割。 |
| Completion of Closing | refers that Party A and other related parties have completed the transfer of Target Equity in this transaction to Party B as well as other matters. |
| 交割日 | 指按照本协议第 4.1.1 款约定的办理完毕标的股权过户的日期和时间，以工商行政主管机关登记的股权过户登记日为准。 |
| Closing Date | refers to the date and time when the transfer registration of the Target Equity as agreed in Article 4.1.1 of this Agreement is completed, which shall be subject to the registration date of equity transfer registered by relevant Administration for Industry and Commerce. |
| 中国 | 指中华人民共和国，就本协议目的而言，不包括香港特别行政区和澳门特别行政区以及台湾省。 |
| China | refers to the People's Republic of China, excluding Hong Kong Special Administrative Region, Macao Special Administrative Region and Taiwan Province for the purposes of this Agreement. |
| 香港 | 指中华人民共和国香港特别行政区。 |
| Hong Kong | refers to the Hong Kong Special Administrative Region of the People's Republic of China. |
| 香港联交所 | 香港联合交易所有限公司。 |
| Hong Kong Stock Exchange | refers to the Stock Exchange of Hong Kong Limited. |
| 权益负担 | 指任何性质的权利主张、任何担保权益、第三方权利，包括但不限于任何抵押、按揭、质押、留置、保证、担保转让、所有权保留、优先购买权、优先拒绝权或其它任何性质的担保权益。 |
| Encumbrance of Interest | refers to claims, security interests and third party rights of any nature, including but not limited to any charge, mortgage, pledge, lien, guarantee, guaranteed transfer, retention of title, preemptive right, right of first refusal or other security interests of any nature. |
| 工作日 | 指香港和中国大陆的商业银行通常均营业且办理正常规业务的营业日（不包括星期六、星期日和全体公民放假的节日）。 |
| Working Day | refers to the business days on which commercial banks in mainland China and Hong Kong normally operate and conduct regular business (excluding Saturdays, Sundays and public holidays). |
| 政府机构 | 指有管辖权的任何政府或政府机构，任何政府或政府机构的任何部门、 |

事务处或机构，任何法院或仲裁庭，任何证券交易所的监管机构。

Government Authority refers to any government or political subdivision thereof; any department, agency or instrumentality of any government or political subdivision thereof; any court or arbitral tribunal; and the governing body of any securities exchange, in each case, having competent jurisdiction.

关联方 指一方控制、共同控制另一方或对另一方施加重大影响，以及两方或两方以上同受一方控制、共同控制或重大影响的，构成关联方。为本定义之目的，重大影响，是指对一个企业的财务和经营政策有参与决策的权力，但并不能够控制或者与其他方一起共同控制这些政策的制定。

Related Parties If a party has the power to, directly or indirectly, control, jointly control or exercise significant influence over another party, or if two or more parties are subject to control, joint control or significant influence from a same party, the related party relationships are constituted. For the purpose of this definition, significant influence refers to the power to participate in the formulation of financial and operating policies of an enterprise, but not the power to control or jointly control the formulation of these policies with other parties.

控制（包括控制、被控制和受共同控制）    指直接或间接地拥有领导决定一个实体的管理、财务和经营政策的权力或实现这种领导的权力，无论通过拥有具有投票权的证券、合同还是其他方式。

Control (including control, controlled and jointly controlled)    refers to having the direct or indirect power to lead or decide the administrative, financial and operating policies of an entity or the power to realize such leadership, whether by owning securities having voting rights, contracts or any other means.

人 指任何自然人、组织、公司、政府部门、合资公司、合伙组织、联合体或其它主体（无论是否具有独立法人地位）。

Person refers to any natural person, organization, company, government authority, joint venture, partnership, association or other entity (whether or not incorporated).

人民币 指中国的法定货币。本次交易以人民币作为计价单位。

RMB refers to the official currency of China. This transaction uses RMB as the settlement currency.

重大不利（影响或变化）    指任何可能或被合理的认为将会阻碍任何方实质性实现完成本次交易或履行其在本协议下义务的变化或影响。

Significant Adverse (Impact or Change)    refers to any change or impact that may prevent or is reasonably believed to prevent any party from substantially completing this transaction or fulfilling its obligations under this Agreement.

知识产权 指（a）专利、商标、服务标志、标识、式样、商号、设计及发明权、版权、著作权(包括对象和源代码的计算机软件著作权)和精神权利、数据权、数据库权利、半导体图形权利、实用新型、专有技术权、商业机密权利、专属性信息和其他专属性资料和专有知识产权权利，无论是已注册或未注册的，无论是注册的申请还是提出申请注册的权利，（b）所有在本协议签署之日或在将来在世界任何地方可能存在的，

与前述（a）项约定的内容具有相当或类似效果或性质的权利或保护
形式，以及（c）对上述任何权利在过去、现在或将来的侵权进行起
诉的权利。

Intellectual Property refers to (a) patents, trademarks, service marks, logos, patterns, trade
names, design and invention rights, copyright (including computer
software copyright of objects and source codes) and moral rights, data
rights, database rights, semiconductor mask rights, utility models,
proprietary technology rights, trade secrets rights, proprietary information
and other proprietary data and proprietary intellectual property rights,
whether it is registered or unregistered, or whether it is an application for
registration or the right to apply for registration, (b) all rights or forms of
protection that may exist at the date of signing this Agreement or in future
anywhere in the world and have equivalent or similar effects or properties
to those listed in (a) above, and (c) the right to sue for past, present or
future infringement of any of the above rights.

适用法律 指任何具有约束力的适用法律、法规、规则、规定、通知、解释、任
何政府机关或立法机关的命令或决定，或任何司法机关的判定、决定
或解释。本协议及本协议所有补充文件均适用中华人民共和国现行有
效的法律法规。

Applicable Law refers to any binding applicable laws, statutes, rules, regulations, circulars,
interpretations, any orders or decisions of government authority or
legislature, or any rulings, decisions or explanations of judicial authority.
This Agreement and all of its supplementary documents shall be governed
by the then current laws and regulations of the People's Republic of China.

生效日 指本协议签署日。

Effective Date refers to the signing date of this Agreement.

## 第三条 交易对价及支付安排
## Article 3 Transaction Consideration and Payment Arrangements

### 3.1 交易对价
### 3.1 Transaction Consideration

各方一致同意并确认，乙方收购标的股权对价总额为 26.4824 亿元人民币（统称"交易对价"）。

Parties agree and acknowledge that the purchase price offered by Party B for the Target Equity is
RMB 2,648,240,000 (collectively referred to as the "Transaction Consideration").

### 3.2 付款条件
### 3.2 Conditions of Payment

3.2.1 交易对价支付条件。乙方在本协议第 3.1 款项下的支付义务应以如下付款条件均已满
足且持续有效为前提（乙方有权豁免前述全部或部分支付条件）：

3.2.1 Conditions of Payment of Transaction Consideration. Party B's payment obligation under the
paragraph 3.1 hereof shall be based on the premise that the following conditions of payment have
been met and remain valid (Party B has the right to exempt from all or part of the following
conditions of payment):

（1）　　本次交易所需全套交易文件（包括本协议及附录、附件所列各执行文件）已经各方

及相关方或其授权代表依法签署且有效；

(1) The complete set of transaction documents required for this transaction (including this Agreement, appendices, annexes and relevant implementation documents listed therein) have been duly signed and executed by parties and related parties or their authorized representatives;

（2）　目标公司已完成本次交易所必须的所有内部审批程序，包括但不限于获得批准本次交易并同意签署和履行全部交易文件的股东会决议和董事会决议（或执行董事决定），目标公司的其他有权股东就标的股权转让事宜书面明确放弃优先购买权(如果股东会决议已明确包含前述同意放弃优先购买权内容，在该股东会决议上签字同意的股东不需要单独书面确认)；

(2) The Target Company has completed all internal approval procedures necessary for this transaction, including but not limited to resolution of shareholders and resolution of directors (or decision from executive directors) that approve this transaction and agree to sign and execute all transaction documents, and consents from other shareholders of the Target Company that expressly waives their preemptive rights in writing regarding the transfer of Target Equity (in case that the resolution of shareholders has explicitly included the aforementioned consent to waive the preemptive rights, shareholders who sign and agree to such resolution do not need to provide their separate written consent);

(3) 鑫乐资产已按照本协议第 4.1 款约定就标的股权转让交易完成交割，使得标的股权已经过户登记在乙方名下；

(3) Xinle Asset has completed the transfer of Target Equity in accordance with Article 4.1 of this Agreement, so that the Target Equity has been transferred to and registered under the name of Party B;

(4) 截至付款日，乙方已经完成对目标公司及相关方的法律、财务及业务方面的尽职调查，且调查结果与甲方及目标公司披露的信息没有重大差异；

(4) As of the payment date, Party B has completed due diligence on the legal, financial and business risks of the Target Company and related parties, and the due diligence findings are not significantly different from the information disclosed by Party A and the Target Company;

(5) 陈述与保证。截至付款日，甲方在本协议及附件项下的陈述与保证均在实质方面保持真实、准确和完整；

(5) Representations and Warranties. As of the date of payment, Party A's representations and warranties under this Agreement and its appendices are true, accurate and complete in all material aspects;

(6) 无重大不利变化。截至付款日，不存在、未发生可能对本次交易所涉标的或者本协议履行造成任何重大不利影响的事件、情况、变化等；

(6) No Material Adverse Changes. As of the date of payment, there were or are no events, circumstances or changes that may have any significant adverse impact on the Target Equity of this transaction or the performance of this Agreement;

(7) 无重大裁决。截至付款日，没有任何法院判决、政府部门裁决或者法律规定(a)阻止或限制任何本协议项下的交易；(b)阻止或限制任何本协议项下的交易的完成；(c)根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责任；或(d)限制乙方的经营从而构成重大不利变化；

(7) No Significant Ruling. As of the date of payment, there are no court ruling, government decisions or legal provisions that may (a) prevent or restrict any transaction under this Agreement; (b) prevent or restrict the completion of any transaction under this Agreement; (c) impose severe

punishment or legal liability on Party B due to its completion of any transaction under this Agreement; or (d) restrict the operation of Party B, thus constituting a significant adverse change;

(8) 无重大诉讼。不存在任何诉讼、仲裁、行政程序，且没有任何法院判决、政府部门裁决或者法律规定(a)阻止或限制任何本协议项下的交易，或影响交易的完成，或对交易产生重大不利影 响；(b)根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责任；或(c)限制乙方或目标公司的经营从而构成重大不利变化。

(8) No Significant Litigation. There are no litigation, arbitration or administrative procedures, court ruling, government decisions or legal provisions that may (a) prevent or restrict any transaction under this Agreement, affect the completion of such transaction, or have a significant adverse impact on such transaction; (b) impose severe punishment or legal liability on Party B due to its completion of any transaction under this Agreement; or (c) restrict the operation of Party B or the Target Company, thus constituting a significant adverse change.

### 3.3 支付进度及方式
### 3.3 Payment Schedule and Method

乙方应在 2017 年 3 月 10 日或者本协议第 3.2.1 款所列付款条件均已满足之日(以二者较晚到期者为准)，向鑫乐资产支付交易对价，即 26.4824 亿元人民币。

Party B shall pay the transaction consideration, i.e. RMB 2,648,240,000, to Xinle Asset on March 10, 2017 or the date when the conditions of payment listed in Article 3.2.1 of this Agreement have been met (whichever comes later).

## 第六条交割后承诺事项
## Article 6 Post-closing Commitments

### 6.1 优先投资权
### Preemptive Right

对于任何一家乐视系公司（上市公司及其合并范围内的子公司除外），甲方同意（并促成相关方同意）给予乙方以下的优先投资权：（1）如果甲方出售、减持、债转股等形式处置其直接或间接持有的某乐视系公司（上市公司及其合并范围内的子公司除外）的股权，在同等条件下乙方有优先受让前述股权的权利；（2）如果某乐视系公司（上市公司及其合并范围内的子公司除外）拟增加注册资本或发行新股，在同等条件下乙方有优先认购的权利。

For any member company of LeTV (excluding the Listed Company and the subsidiaries included in its consolidated statement), Party A shall agree (and procure relevant parties to agree) to provide Party B with the following pre-emptive rights: (1) if Party A disposes of its equity directly or indirectly held in a member company of LeTV (excluding the Listed Company and the subsidiaries included in its consolidated statement) in the form of sales, reduction of equity, debt-to-equity swap, etc., Party B shall have pre-emptive rights to acquire the aforesaid equity under the same condition; and (2) if a member company of LeTV (excluding the Listed Company and the subsidiaries included in its consolidated statement) intends to increase its registered capital or issue new shares, Party B shall have pre-emptive rights to subscribe under the same condition.

### 6.2 目标公司整体注入上市公司
### Injection of the Target Company into the Listed Company

甲方承诺（并促成目标公司及相关方）在 2019 年 12 月 31 日前，完成将乐视致新中非上市公司持有的股权重组进入上市公司而向中国证监会的申报，并于 2020 年 9 月 30 日或双方另行协商书面确定的其他日期前完成将乐视致新中非上市公司持有的股权重组进入上市公

司（但如因中国证监会或相关监管机构原因导致的延迟除外）。

Party A undertakes (and procures the Target Company and relevant parties) to complete the declaration to China Securities Regulatory Commission for injecting the equity not held by the Listed Company in LeTV Zhixin into the Listed Company before December 31, 2019, and complete the injection of the equity not held by the Listed Company in LeTV Zhixin into the Listed Company before September 30, 2020 or other date agreed by the parties in writing (except for the delay caused by China Securities Regulatory Commission or relevant regulatory authorities).

### 6.3 返还拆借资金
**Repayment of Borrowed Funds**

甲方承诺，在本次交易完成后三个月内，甲方或其他乐视系公司从目标公司拆借的资金（如有）应当全部返还目标公司。

Party A undertakes to, within three (3) months after the completion of this Transaction, fully repay the funds (if any) borrowed from the Target Company by Party A or other LeTV companies to the Target Company.

### 6.4 优先购买权豁免
**Waive of Right of First Refusal**

甲方承诺（且应促成目标公司及其他相关方同意），如果乙方或其实际控制人未来为进行内部重组或关联方架构调整之目的拟将所持标的股权转让给乙方或其实际控制人指定的其他方（但乐视竞争者及其关联方除外）（"乐视竞争者"名单见附录 4），目标公司的其他股东同意放弃优先购买权，并对前述转让给予积极配合。

Party A undertakes (and shall procure the Target Company and other relevant parties to agree) that, if for purpose of internal restructuring or reorganization in the future, Party B or its actual controller intends to transfer the target equity held by them to another party specified by Party B or its actual controller (except for LeTV's competitors and their related parties) (refer to Appendix 4 for the list of "LeTV's Competitors"), the other shareholders of the Target Company will agree to waive their rights of first refusal and actively cooperate with the aforesaid transfer.

### 6.5 战略合作条款
**Strategic Cooperation Clause**

6.5.1 甲乙双方承诺将充分利用各自的资源，在包括但不限于智能硬件、 互联网、房地产、智能家居、智能社区等领域开展全方位合作，以进一步巩固双方在各自行业内的领先地位。双方将开展深度合作，整合双方及下属机构的优质资源，从而促进双方共同、稳定的业务增长，实现双方共赢。

Party A and Party B hereby undertake to make full use of their respective resources to conduct all-round cooperation in areas including, but not limited to, smart hardware, Internet, real estate, smart home, and smart community, etc., to further strengthen their leading position in their respective industries. Both parties shall carry out in-depth cooperation and integrate high-quality resources of both parties and their subsidiaries to promote mutual and stable business growth and achieve mutual benefits.

6.5.2 甲乙双方特别确认，除双方协商一致外，乙方将作为甲方及/或其所控制的乐视系公司在房地产业务领域的唯一合作方。由甲方及其关联方发挥其产业优势，双方在产业地产（包括但不限于影视产业、 汽车产业、体育产业、互联网生态等方面）深度合作，发挥各自优

势、实现共赢。

Party A and Party B hereby specifically acknowledge that, unless otherwise agreed by both parties, Party B will be the exclusive and sole partner of Party A and/or member companies of LeTV controlled by Party A in terms of real estate businesses. By utilizing industrial advantages of Party A and its subsidiaries, both parties shall cooperate deeply in industrial real estate (including, but not limited to, film and television industry, automobile industry, sports industry, Internet ecology, etc.) to give full play to their respective advantages and achieve mutual benefits.

## 第九条违约责任
### Article 9 Liability for Breach of Contract

#### 9.1  一般约定
#### General Provision

无论是由于作为或是不作为，任何一方没有履行或没有完全履行或没有适当履行本协议及/或相关交易文件项下的任何义务、陈述与保证或承诺，均构成违约事件。违约方应当承担守约方因此而遭受的经济损失。

No matter whether as a result of act or omission, either party's failure to perform, fully perform or properly perform any of its obligations, representations, warranties or undertakings under this Agreement and/or related transaction documents shall constitute an event of default. The breaching party shall assume the economic losses suffered by the non-breaching party as a result of such default.

#### 9.2 甲方违约责任
#### Party A's Liability for Breach of Contract

9.2.1 除本协议另有约定外，如果出现以下任一种或任几种情形，视为甲方的重大违约，乙方及/或其关联方有权要求甲方及/或其关联方支付相当于届时乙方已支付款项总额20%的款项作为违约金。在目标公司违约的情况下，甲方应就目标公司的违约向乙方承担连带赔偿责任。

Unless otherwise specified herein, Party B and/or its related parties shall have the right to require Party A and/or its related parties to pay 20% of the total amount already paid by Party B as liquidated damages under any one or several of the following circumstances, which shall be deemed as material breach of contract by Party A. In the event that the Target Company breaches the contract, Party A shall bear joint and several liability for compensation to Party B for the breach of contract by the Target Company.

(1)  甲方及/或其关联方拒绝按照本协议第 4.1 款约定向乙方完成交割；

Party A and/or its related parties refuse to complete the closing with Party B in accordance with the provisions of Article 4.1 hereof;

(2)  甲方及/或其关联方严重违反其在本协议第六条款项下交割后承诺事项，且经乙方书面催告后 30 日内仍未纠正；

Party A and/or its related parties materially violate their post-closing commitments under Article 6 hereof, and refuse to make corrections within thirty (30) days after Party B's written notice;

(3)  由于甲方及/或其关联方的拒绝或故意拖延履行其在本协议项下的义务并且导致本次交易未能在本协议签署之日起 30 天内完成交割，但乙方同意延长的情形除外；

Party A and/or its related parties refuse to perform or deliberately delay the performance of their

obligations hereunder, and as a result, this Transaction is not closed within thirty (30) days after the signing of this Agreement, except for the circumstances where Party B agrees to extend the closing period;

(4) 除本协议已披露事项外，因本次交易交割日之前所存在的事实、情况、问题所引发的责任或后果而导致目标公司无法继续经营，导致乙方无法实现其进行本次交易的商业目的。

Except for the matters disclosed herein, any responsibilities or consequences arising from facts, situations or problems existing before the closing date of this Transaction lead to the inability of the Target Company to continue its operation, thus causing Party B to fail to realize its commercial purposes in this Transaction.

9.2.2 如甲方及/或其关联方发生上述第 9.2.1 款项下任何一项所列重大违约，乙方有权选择单方解除本协议。在乙方选择解除本协议的情况下，甲方应当在解除通知发出之日起 5 个工作日内，将乙方及/或其关联方依据本协议及/或其他相关交易文件已经支付的全部交易对价及其他任何款项退还给乙方及/或其指定方，并有权要求甲方及/或关联方按照上述第 9.2.1 款约定支付相当于乙方已支付全部款项 20%的款项作为违约金。

In the event of any material breach of contract under the aforesaid Article 9.2.1 by Party A and/or its related parties, Party B shall have the right to unilaterally terminate this Agreement. If Party B chooses to terminate this Agreement, Party A shall return all transaction consideration and any other amounts already paid by Party B and/or its related parties in accordance with this Agreement and/or other relevant transaction documents to Party B and/or its related parties within five (5) working days from the date of the Termination Notice, and Party B shall have the right to require Party A and/or its related parties to pay 20% of the total amount already paid by Party B as liquidated damages in accordance with the aforesaid provisions of Article 9.2.1.

9.2.3 甲方及/或关联方延迟履行本协议所约定的违约金支付义务以及退款义务的，每逾期一日，甲方应按应支付或应退还款项的每日万分之二向乙方支付逾期利息。

If Party A and/or its related parties delay the performance of the liquidated damages payment obligation and refund obligation stipulated herein, Party A shall pay Party B the overdue interest with a daily interest rate of 0.02% on the basis of amount payable or refundable for each overdue day.

9.2.4 如果乙方没有选择按照本第 9.2.2 条约定解除本协议的，且乙方愿意继续履行本协议，则甲方应继续完成其在本协议项下的义务，并且，该等继续履行并不豁免甲方应向乙方及/或其指定方承担的违约和赔偿责任。

If Party B does not choose to terminate the Agreement in accordance with the provisions of Article 9.2.2, and Party B is willing to continue to perform the Agreement, Party A shall continue to fulfill its obligations hereunder, and such continuation of performance shall not exempt Party A from the liability for breach of contract and the compensation to Party B and/or its designated party.

### 9.3 乙方违约责任

**Party B's Liability for Breach of Contract**

9.3.1 本协议签署后，在支付条件全部满足的前提下，如乙方逾期支付转让对价，则须按照每日万分之二标准，向甲方计付迟延支付的违约金。如果逾期超过 30 日仍未支付，从第 31 日起，按照每日万分之五标准，向甲方计付迟延支付的违约金。

Provided that the Agreement is signed and the conditions for payment of the transaction consideration are fully met, if Party B delays the payment of the transaction consideration, Party B shall pay Party A the liquidated damages for late payment with a daily interest rate of 0.02% for

each overdue day. If the payment is overdue for more than 30 days, from the 31st day, Party B shall pay Party A the liquidated damages for late payment with a daily interest rate of 0.05% for each overdue day.

9.3.2 乙方延迟履行本协议所约定的违约金支付义务的，每逾期一日，乙方应按应支付违约金的每日万分之二向甲方支付逾期利息。

If Party B delays the performance of the liquidated damages payment obligation stipulated herein, Party B shall pay Party A the overdue interest with a daily interest rate of 0.02% for each overdue day.

E

M

A

I

L

E

D

_____C Murray_____          _____1/23/2020_____

CASE MANAGER                              DATE

**RECEIVED**

JAN 2 3 2020

**LEGAL SERVICES**

Filed: USBC - Central District of California
Yueting Jia   (B10)
19-24804 (VPZ)

**YT1**



0000000044

Fill in this information to identify the case:

Debtor 1   YUETING JIA

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number  2:19-bk-24804-VZ

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

Tianjin Jiarui Huixin Corporate Management Co., Ltd.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

See attached Addendum.
Name

Number    Street

City        State        ZIP Code

Contact phone

Contact email

Where should payments to the creditor be sent? (if different)

See attached Addendum.
Name

Number    Street

City        State        ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____   Filed on ___/___/____  MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing?

**Part 2:**    Give Information About the Claim as of the Date the Case Was Filed

6. **Do you have any number you use to identify the debtor?**

   ☑ No

   ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?**    $ ___No less than $65,088,580___    **Does this amount include interest or other charges?**

   See attached Addendum.

   ☑ No

   ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   ___Liquidated damages; see also attached Addendum.___

9. **Is all or part of the claim secured?**

   ☑ No

   ☐ Yes. The claim is secured by a lien on property.

   **Nature of property:**

   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

   ☐ Motor vehicle

   ☐ Other. Describe: _____

   **Basis for perfection:** _____

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or document that shows the lien has been filed or recorded.)

   Value of property:    $_____

   Amount of the claim that is secured:    $_____

   Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition:    $_____

   **Annual Interest Rate** (when case was filed) _____ %

   ☐ Fixed

   ☐ Variable

10. **Is this claim based on a lease?**

    ☑ No

    ☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. **Is this claim subject to a right of setoff?**

    ☑ No

    ☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. Check one: | Amount entitled to priority |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    1 / 13 / 2020
                    MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Mengde | | WANG |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Executive Director | | |
| Company | Tianjin Jiarui Huixin Corporate Management Co., Ltd. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | bldg 4, No.1 Embassy, No.8, Dongzhimen North St. | | |
| | Number    Street | | |
| | Beijing, China | | 100007 |
| | City | State | ZIP Code |
| Contact phone | 0086-13752770634 | Email | xiaochenhua@sunac.com.cn |

## ADDENDUM TO PROOF OF CLAIM OF TIANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD. ("CREDITOR")

### EXHIBIT A

Creditor hereby asserts, reserves, and preserves, any and all claims, causes of action, other rights or remedies or the like under contract, applicable law, and equity that Creditor has against the Debtor, his affiliates, successors, representatives, agents, assigns or any other related individual or entity, including, without limitation, an amount not less than $65,088,580 (¥ 460,352,000 converted as of October 14, 2019), as detailed on the attached "Summary Information about the Claim" which is incorporated herein and made a part hereof. Creditor hereby asserts, reserves, and preserves all rights of setoff and recoupment available to it. Creditor hereby asserts, reserves, and preserves all claims for additional interest, liquidated damages, attorneys' fees, and other amounts.

Creditor's claims are general unsecured claims, except as provided herein or under applicable law or equity, or as determined by a court or another adjudicative body of competent jurisdiction to constitute administrative, secured, trust, or priority claims. To the extent that this proof of claim is or includes secured, administrative, trust, or priority claims, including claims based on Creditor's right to setoff or recoupment, or similar rights, it shall be and is a secured, administrative, trust, or priority claim.

In addition to the Summary Information about the Claim, the documents upon which these claims are based, include, without limitation, those attached to this addendum to proof of claim (along with English translations which are attached).

This proof of claim is filed with (a) full reservation of rights, remedies, privileges and the like, including, without limitation, (i) the right to amend, modify or supplement the proof of claim, (ii) the right to assert additional, modified, supplementary and/or amended proofs of claim and (iii) the right to make requests for administrative expenses based on, *inter alia*, events, information and/or documents obtained from the Debtor or others through discovery or otherwise and with (b) full reservation of (i) Creditor's rights, remedies, privileges, claims and/or the like against any party other than the Debtor, and (ii) Creditor's interests in any property, including, without limitation, property of the estate. This proof of claim is filed without prejudice to any cause of action against the Debtor not constituting a "claim" under 11 U.S.C. § 101(5) or otherwise applicable law.

This proof of claim is not intended to be, and shall not be construed as: (i) an election of remedies; (ii) a waiver of any past, present or future defaults or events of default; (iii) a waiver, release or limitation of any rights, remedies, privileges, claims, interests or the like of Creditor, including, without limitation, the right to assert any claims against the Debtor or against any other party or property other than the Debtor and his estate, inclusive of the right to recover interest and attorneys' fees and costs; (iv) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of this claim, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this case or involving Creditor; (v) a waiver of the right to mediation or arbitration; (vi) a consent to

jurisdiction in the United States, whether in the bankruptcy court or otherwise; (vii) a consent to the jurisdiction or Constitutional power of the bankruptcy court with respect to the subject matter of this proof of claim, any objection or other proceeding commenced with respect thereto, or any other proceeding commenced in this case against or otherwise involving Creditor; (viii) a waiver of the right to trial by jury in any proceedings so triable in this case, or any controversy or proceedings related to this case; (ix) a waiver or release of any right against any affiliate of the Debtor or other entity or person liable for all or part of any claim described herein; (x) a waiver of any right of subordination of indebtedness or liens held by other creditors of the Debtor; (xi) a waiver of any rights pursuant to section 506(b) of the Bankruptcy Code; or (xii) a waiver or release of any liens or security interests that Creditor may have with respect to the property of the Debtor or any affiliate of the Debtor.

Payments to Creditor should be sent to the following:

TIANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD.
Attn: Chen hua XIAO
bldg 4, No.1 Embassy, No.8, Dongzhimen North St.
Beijing 100007
China
Telephone:     0086-13752770634
Email:         xiaochenhua@sunac.com.cn

All notices concerning this proof of claim should be sent to each of the following:

TIANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD.
Attn: Chen hua XIAO
bldg 4, No.1 Embassy, No.8, Dongzhimen North St., Dongcheng District
Beijing 100007
China
Telephone:     0086-13752770634
Email:         xiaochenhua@sunac.com.cn

And

Jincheng Tongda & Neal Law Firm
Attn: Stephan Peng & Yue Wang
10th Floor, China World Tower
No. 1 Jianguo Menwai Avenue
Beijing, 100004, China
Email:         pengjun@jtnfa.com
               wangyue@jtnfa.com

And

Morris, Nichols, Arsht & Tunnell LLP
Attn: Eric D. Schwartz & Matthew B. Harvey

2

1201 North Market Street, 16th Floor
Wilmington, DE 19801
Telephone:      (302) 658-9200
Email:          eschwartz@mnat.com
                mharvey@mnat.com

### Summary Information about the Claim

1. The *Equity Transfer Agreement on 10.3964% Equity of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd.* (Contract No.: JRHX-LSW-ZX-17001, hereinafter referred to as the "Agreement") was duly signed and came into force by and between YUETING JIA, LeTV Information Technology (Beijing) Co., Ltd. (hereinafter referred to as "LeTV/Listed Company") and Tianjin Jiarui Huixin Corporate Management Co., Ltd. (hereinafter referred to as "Jiarui Huixin") on January 13, 2017, under which YUETING JIA and LeTV transferred 10.3964% Equity of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. (乐融致新电子科技（天津）有限公司, former name: LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd., hereinafter referred to as the "Target Company") to Jiarui Huixin on March 9, 2017, and accordingly <u>Jiarui Huixin has paid the price of ¥2,301,760,000</u> as consideration (hereinafter referred to as the "Transaction Consideration").

2. The Agreement stipulates as follows:

   a) According to Article 5.2 hereof, YUETING JIA undertakes (and procures the Target Company and relevant parties) to complete the declaration to China Securities Regulatory Commission for incorporating the equity not held by the Listed Company in the Target Company into the Listed Company (hereinafter collectively referred to as the "Commitment A") before December 31, 2019, and complete the incorporation of the equity not held by the Listed Company in the Target Company into the Listed Company (hereinafter collectively referred to as the "Commitment B") before September 30, 2020; and

   b) According to Article 8.2.1(2) hereof, should YUETING JIA violate his post-closing commitments under Article 5.2 (including the Commitment A and Commitment B) hereof, YUETING JIA shall be considered as material defaulter under the Agreement and shall pay <u>20% of the total amount of the Transaction Consideration (¥2,301,760,000) paid by Jiarui Huixin</u> as liquidated damages, which is equal to ¥ 460,352,000.

3. YUETING JIA failed to fulfill the Commitment A by December 31, 2019, and basing on the objective fact and sound and reasonable judgement, YUETING JIA shall be impossible to fulfill the Commitment B under Article 5.2 by September 30, 2020. Therefore, YUETING JIA shall pay Jiarui Huixin liquidated damages of <u>¥460,352,000</u>.

4. Above all, the claim of the creditor (Tianjin Jiarui Huixin Corporate Management Co., Ltd.) against YUETING JIA is <u>¥460,352,000</u> as liquidated damages, which

is equal to **$65,088,580** converted based on the foreign exchange rate effective on October 14, 2019 published by People's Bank of China.

合同编号：JRHX-LSW-ZX-17001

乐视网信息技术（北京）股份有限公司

及

贾跃亭

与

天津嘉睿汇鑫企业管理有限公司

关于

乐视致新电子科技（天津）有限公司

**10.3964%股权**

之

# 股权转让协议



**2017 年 1 月 13 日**

目录

第一条　释义 .................................................................. 2

　　1.1　定义 ................................................................. 2
　　1.2　解释规则 ............................................................. 4

第二条　本次交易标的及条件 ...................................................... 4

　　2.1　收购标的股权 ......................................................... 4
　　2.2　交易的先决条件 ....................................................... 5

第三条　交易对价及支付安排 ...................................................... 5

　　3.1　交易对价 ............................................................. 5
　　3.2　付款条件 ............................................................. 5
　　3.3　支付进度及方式 ....................................................... 6

第四条　交割安排 .............................................................. 6

　　4.1　交割 ................................................................. 6
　　4.2　交割受阻及调整 ....................................................... 7
　　4.3　权利转移及责任划分 ................................................... 7

第五条　交割后承诺事项 ........................................................ 8

　　5.1　优先投资权 ........................................................... 8
　　5.2　目标公司整体注入上市公司 ............................................. 8
　　5.3　返还拆借资金 ......................................................... 8
　　5.4　优先购买权豁免 ....................................................... 8
　　5.5　战略合作条款 ......................................................... 8

第六条　陈述与保证 ............................................................ 9

　　6.1　甲方及目标公司的陈述与保证 ........................................... 9
　　6.2　乙方的陈述与保证 ..................................................... 9

第七条　保密及例外 ............................................................ 9

　　7.1　一般义务 ............................................................. 9
　　7.2　例外 ................................................................. 10
　　7.3　公开资料 ............................................................. 10

第八条　违约责任 .............................................................. 10

　　8.1　一般约定 ............................................................. 10
　　8.2　甲方违约责任 ......................................................... 10
　　8.3　乙方违约责任 ......................................................... 11

第九条　附则 .................................................................. 12

　　9.1　税、费 ............................................................... 12
　　9.2　生效 ................................................................. 12

9.3  继续有效 ............................................. 12
9.4  通知 .................................................. 12
9.5  修改 .................................................. 13
9.6  弃权 .................................................. 13
9.7  完整协议 ............................................ 13
9.8  可分割性 ............................................ 13
9.9  适用法律与仲裁 ..................................... 14

附录 1.  交易标的基本信息 ............................. 1

附录 2.  甲方及目标公司的陈述与保证 ................ 1

附录 3.  乙方陈述与保证 ............................... 1

附录 4.  乐视竞争者名单 ............................... 2

附件 1.  乐视致新股权转让协议（工商版本） ......... 1

股权转让协议

本《股权转让协议》由以下各方于 2017 年 1 月 13 日在中国北京签订：

甲方 1：乐视网信息技术（北京）股份有限公司（"乐视网"）
住所：北京市海淀区学院南路 68 号 19 号楼六层 6184 号房间
法定代表人：贾跃亭

甲方 2：贾跃亭（作为创始人及实际控制人）
联系地址：北京市朝阳区姚家园路 105 号乐视大厦 16 层
身份证号码：1426231973121508lX

乙方：天津嘉睿汇鑫企业管理有限公司
注册地址：天津市滨海新区大港经济开发区万象路 168 号科技孵化器 B 区房
　　　　屋 510 间
法定代表人：汪孟德

目标公司：乐视致新电子科技（天津）有限公司（"乐视致新"）
注册地址：天津生态城动漫中路 126 号动漫大厦 B1 区二层 201-427
法定代表人：贾跃亭


鉴于：

(1) 乐视网信息技术（北京）股份有限公司，为一家依据中国法律成立并有
　　效存续的上市公司（股票名称：乐视网，股票代码：300104），其实际控
　　制人为贾跃亭；

(2) 乙方是一家依据中国法律成立并有效存续的有限责任公司；

(3) 目标公司为一家依据中国法律成立并有效存续的有限公司，主营业务为
　　乐视 TV 终端业务，独立开展与其相关的 TV 产品研发、设计、运营和
　　销售等互联网电视业务；据甲方及目标公司披露，目标公司的注册资本
　　总额为 28,120.7441 万元，其中：乐视网信息技术（北京）股份有限公司
　　（"上市公司"）持有乐视致新注册资本 15,519.0794 万元（占公司注册资
　　本总额的 55.1873%）；目标公司的基本信息可参见本协议附录 1；

(4) 按照本协议约定的条款和条件，乙方及/或其指定方拟收购乐视网在目标
　　公司所持有的 10.3964%股权；甲方同意向乙方及/或其指定方出售前述
　　标的股权（前述收购及出售标的之股权之交易，以下统称为"本次交易"）；

因此，各方经友好协商，就本次交易的交易方式、条件及核心条款和原则，
达成本协议如下，以资各方共同遵照执行：

1

第一条 释义

1.1 定义

在本协议中，除非上下文另有规定，以下术语在本协议中具有下列含义：

| 术语 | 含义 |
|---|---|
| 本协议 | 指各方签署的本《股权转让协议》及其附录、附件、修订和补充。 |
| 各方/一方 | 各方指本协议的签订方，以及他们各自的继任者、受让人和授权代表。一方指各方其中的任何一方。 |
| 甲方 | 指对甲方1（乐视网）及甲方2（贾跃亭先生）的统称，根据上下文具体情况也可指称其中的任何一个。 |
| 甲方1/乐视网/上市公司 | 指乐视网信息技术（北京）股份有限公司，为一家依据中国法律成立并有效存续的上市公司（股票名称：乐视网，股票代码：300104）；贾跃亭为乐视网的创始人及实际控制人。 |
| 甲方2/创始人 | 指贾跃亭先生，其为目标公司及其他乐视系公司的创始人及实际控制人。 |
| 乙方 | 指天津嘉睿汇鑫企业管理有限公司或其指定方。 |
| 乐视致新/目标公司 | 指乐视致新电子科技（天津）有限公司。 |
| 标的股权 | 具有本协议第2.1.1款所约定的含义。 |
| 附带权益 | 指标的股权所附带及/或对应的全部股东权利和权益。 |
| 乐视系公司 | 指创始人直接控制或者间接控制的乐视生态体系内公司的统称，根据上下文具体情况也可指称其中的任何一个。 |
| 本次交易 | 具有本协议鉴于条款第(4)项所约定的含义。 |
| 交易对价 | 指乙方或其指定方根据本协议第3.1款需向乐视网支付的交易对价。 |
| 完成交割 | 指甲方及其他相关方向乙方完成本次交易所涉标的的股权过户等事项的交割。 |
| 交割日 | 指按照本协议第4.1.1款约定的办理完毕标的股权过户的日期和时间，以工商行政主管机关登记的股权过户登记日为准。 |
| 中国 | 指中华人民共和国，就本协议目的而言，不包括香港特别行政区和澳门特别行政区以及台湾省。 |

| | |
|---|---|
| 香港 | 指中华人民共和国香港特别行政区。 |
| 香港联交所 | 指香港联合交易所有限公司。 |
| 权益负担 | 指任何性质的权利主张、任何担保权益、第三方权利，包括但不限于任何抵押、按揭、质押、留置、保证、担保转让、所有权保留、优先购买权、优先拒绝权或其它任何性质的担保权益。 |
| 工作日 | 指香港和中国大陆的商业银行通常均营业且办理常规业务的营业日（不包括星期六、星期日和全体公民放假的节日）。 |
| 政府机构 | 指有管辖权的任何政府或政府机构，任何政府或政府机构的任何部门、事务处或机构，任何法院或仲裁庭，任何证券交易所的监管机构。 |
| 关联方 | 指一方控制、共同控制另一方或对另一方施加重大影响，以及两方或两方以上同受一方控制、共同控制或重大影响的，构成关联方。为本定义之目的，重大影响，是指对一个企业的财务和经营政策有参与决策的权力，但并不能够控制或者与其他方一起共同控制这些政策的制定。 |
| 控制（包括控制、被控制和受共同控制） | 指直接或间接地拥有领导决定一个实体的管理、财务和经营政策的权力或实现这种领导的权力，无论通过拥有具有投票权的证券、合同还是其他方式。 |
| 人 | 指任何自然人、组织、公司、政府部门、合资公司、合伙组织、联合体或其它主体（无论是否具有独立法人地位）。 |
| 人民币 | 指中国的法定货币。本次交易以人民币作为计价单位。 |
| 重大不利（影响或变化） | 指任何可能或被合理的认为将会阻碍任何方实质性实现完成本次交易或履行其在本协议下义务的变化或影响。 |
| 知识产权 | 指 (a) 专利、商标、服务标志、标识、式样、商号、设计及发明权、版权、著作权（包括对象和源代码的计算机软件著作权）和精神权利、数据权、数据库权利、半导体图形权利、实用新型、专有技术权、商业机密权利、专属性信息和其他专属性资料和专有知识产权权利，无论是已注册或未注册的，无论是注册的申请还是提出申请注册的权利，(b) 所有在本协议签署之日或在将来在世界任何地方可能存在的，与前述(a)项约定的内容具有 |

3

相当或类似效果或性质的权利或保护形式，以及 (c) 对
上述任何权利在过去、现在或将来的侵权进行起诉的权
利。

适用法律　　　指任何具有约束力的适用法律、法规、规则、规定、通
知、解释、任何政府机关或立法机关的命令或决定，或
任何司法机关的判定、决定或解释。本协议及本协议所
有补充文件均适用中华人民共和国现行有效的法律法
规。

生效日　　　　指本协议签署日。

## 1.2 解释规则

在本协议中，除非上下文另有规定：

1.2.1 标题：标题仅为方便阅读而设，不应影响本协议任何条款的解释。

1.2.2 包括但不限于："包括"一词和类似的用语不是限制性用语，解释"包
括"时应视"但不限于"一词好像紧接在"包括"后面。

1.2.3 提及文件之处：提及本协议时，应包含本协议的鉴于条款；提及条
款、条、款、项、附录时，应被理解为其提及的是本协议的条款、
条、款、项、附录；除非文意另有规定，"本协议的"和"本协议项
下"等词语和类似含义的字是指整份协议，而不是指本协议的某一
条款或附录/附件。提及任何文件（包括本协议）之处指该份被不时
修订、合并、补充、更新或取代的文件。

1.2.4 时间：如果注明一段时间并自某一日或某一行为或事件发生之日算
起，计算该段时间时不应包括该日。

1.2.5 书面形式：凡指书面形式之处包括电子邮件、信函、纸质文件等形
式。

1.2.6 语言：本协议以中文书写。

## 第二条 本次交易标的及条件

### 2.1 收购标的股权

2.1.1 基于甲方未来拟将乐视致新整体注入乐视网上市公司的规划及承
诺，按照本协议约定的条款和条件，乙方同意收购乐视网在乐视致
新所持有的已经足额实缴的注册资本出资额人民币 29,235,435 元（占
目标公司注册资本总额的 10.3964%）及该等出资所对应的股权以及
附属于及该等股权所对应的全部附带权益（"标的股权"）。甲方同意

4

向乙方或其指定方出售前述标的股权。

2.1.2 为完成上述标的股权转让，乐视网（作为转让方）应与乙方或其指定方（作为受让方），于本协议签署当日，按照本协议附件1所列格式和内容签署《乐视致新股权转让协议》（工商版本），并按照目标公司注册地相关法律规定及相关政府机构的要求签署为完成标的股权过户至受让方名下所需签署的全部相关文件和决议，并将该等文件签署本原件经各方共同封存后交付给乙方保管。前述《乐视致新股权转让协议》（工商版本）及股权过户文件的任何条款及内容与本协议如有冲突的，应以本协议的约定为准。

## 2.2 交易的先决条件

乙方进行本协议项下之本次交易应以如下先决条件均已满足且持续有效为前提（乙方有权单独豁免前述全部或部分先决条件）：乙方的实际控制人已经就本次交易按照香港联交所《上市规则》获得了必要的批准（如适用）。

### 第三条 交易对价及支付安排

**3.1 交易对价**

各方一致同意并确认，乙方收购标的股权对价总额为 23.0176 亿元人民币（统称"交易对价"）。

**3.2 付款条件**

3.2.1 交易对价支付条件。乙方在本协议第 3.1 款项下的支付义务应以如下付款条件均已满足且持续有效为前提（乙方有权豁免前述全部或部分支付条件）：

(1) 本次交易所需全套交易文件（包括本协议及附录、附件所列各执行文件）已经各方及相关方或其授权代表依法签署且有效；

(2) 乐视网就目标公司标的股权转让事宜已完成所必须的所有内部审批程序，包括但不限于获得批准本次交易并同意签署和履行全部交易文件的股东大会决议和董事会决议；

(3) 目标公司已完成本次交易所必须的所有内部审批程序，包括但不限于获得批准本次交易并同意签署和履行全部交易文件的股东会决议和董事会决议(或执行董事决定)，目标公司的其他有权股东就标的股权转让事宜书面明确放弃优先购买权(如果股东会决议已明确包含前述同意放弃优先购买权内容，在该股东会决议上签字同意的股东不需要单独书面确认)；

(4)　乐视网已按照本协议第 4.1 款约定就标的股权转让交易完成交割，使得标的股权已经过户登记在乙方名下；

(5)　截至付款日，乙方已经完成对目标公司及相关方的法律、财务及业务方面的尽职调查，且调查结果与甲方及目标公司披露的信息没有重大差异；

(6)　陈述与保证。截至付款日，甲方在本协议及附件项下的陈述与保证均在实质方面保持真实、准确和完整；

(7)　无重大不利变化。截至付款日，不存在、未发生可能对本次交易所涉标的或者本协议履行造成任何重大不利影响的事件、情况、变化等；

(8)　无重大裁决。截至付款日，没有任何法院判决、政府部门裁决或者法律规定(a)阻止或限制任何本协议项下的交易；(b) 阻止或限制任何本协议项下的交易的完成；(c)根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责任；或(d)限制乙方或目标公司的经营从而构成重大不利变化；

(9)　无重大诉讼。不存在任何诉讼、仲裁、行政程序，且没有任何法院判决、政府部门裁决或者法律规定(a)阻止或限制任何本协议项下的交易，或影响交易的完成，或对交易产生重大不利影响；(b)根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责任；或(c)限制乙方或目标公司的经营从而构成重大不利变化。

### 3.3 支付进度及方式

乙方应在 2017 年 4 月 30 日或者本协议第 3.2.1 款所列付款条件均已满足之日（以二者较晚到期者为准），向乐视网支付交易对价，即 23.0176 亿元人民币。

### 第四条 交割安排

甲方及目标公司应（且应促成相关方）按照下述步骤就本次交易完成交割。

### 4.1 交割

4.1.1　甲方应（且促成目标公司）在 2017 年 3 月 15 日前（但因工商等政府主管部门原因导致耽搁并经双方协商书面确认的延期不构成违约）就标的股权转让事宜及相关变更事项（包括但不限于章程修正案及董事变更）在工商行政管理机关办理完毕股权过户登记及相关事项的变更登记工作，将所有标的股权过户登记到乙方或其指定方名下。

4.1.2　为顺利办理标的股权过户登记之目的，如果需要甲方或目标公司或

6

相关负责人提供任何补充资料或签署相关文件，甲方承诺（并应促成相关方）必须在乙方或其指定受让方或相关政府机构提出要求之日起 3 天内准备并提交有效的补充资料和签署相关文件。如果由于客观特殊原因确有困难而导致无法按照前述期限提交的，可以给予合理的宽限。

**4.2    交割受阻及调整**

4.2.1    各方特此确认并同意，如果在办理交割手续过程中遇到任何问题或障碍，或者由于适用法律规定、政策变更、相关政府主管部门或其他非本协议当事方及目标公司所能控制的原因导致本次交易的交割及乙方在本协议项下的权利不能直接实现（统称"交割受阻"），甲方及目标公司不能以此为理由否认乙方依据本协议应享有的经济利益，各方应积极协商和沟通，并应采纳乙方提出的合理建议，在适用法律允许的范围内以其他拥有实质性相同的效果（就其法律和商业内容而言），采取适用法律允许的其他替代方案，赋予乙方相同或等同的经济利益和法律权利，尽最大努力实现乙方进行本次交易之商业目的。各方进一步确认并同意，(1)乙方有权要求甲方将标的股权质押给乙方，并要求甲方通过包括但不限于股权托管、可交换债券等方式将标的股权所对应的管理权及经济收益权全部让渡给乙方行使和享有；(2) 一旦前述交割受阻情形消除，乙方有权要求甲方继续履行并完成交割，将标的股权过户至乙方或其指定方名下。

(1)    如果本次交易发生上述交割受阻情形并导致最终未能交割，且无法找到切实可行的替代方案，乙方有权终止本次交易及本协议，甲方（并应促成目标公司或其他相关方）应在乙方决定终止之日起 15 个工作日内全额返还乙方及其关联方已经支付的全部款项。

**4.3    权利转移及责任划分**

4.3.1    标的股权及其全部附带权益，自该等交易标的所对应的交割日起，全部转由乙方享有，相应的责任和义务亦由相对应的乙方承担。

4.3.2    在本次交易交割日前已存在的、发生的责任及义务，或者因在交割日之前所存在的或发生的事实或情况在交割日后所引起的责任及义务，以及甲方（或目标公司）在交割日前未向乙方如实披露的目标公司及其分公司、子公司的对外债务和/或对外权益负担，均应由甲方承担相关责任和义务，并应确保乙方免因前述责任和义务遭受损失。

## 第五条 交割后承诺事项

**5.1 优先投资权**

对于任何一家乐视系公司（上市公司及合并报表范围内的子公司除外），甲方同意（并促成相关方同意）给予乙方以下的优先投资权：（1）如果甲方出售、减持、债转股等形式处置其直接或间接持有的某乐视系公司（上市公司及合并报表范围内的子公司除外）的股权，在同等条件下乙方有优先受让前述股权的权利；（2）如果某乐视系公司（上市公司及合并报表范围内的子公司除外）拟增加注册资本或发行新股，在同等条件下乙方有优先认购的权利。

**5.2 目标公司整体注入上市公司**

甲方承诺（并促成目标公司及相关方）在 2019 年 12 月 31 日前，完成将乐视致新中非上市公司持有的股权重组进入上市公司而向中国证监会的申报，并于 2020 年 9 月 30 日或双方另行协商书面确定的其他日期前完成将乐视致新中非上市公司持有的股权重组进入上市公司（但如因中国证监会或相关监管机构原因导致的延迟除外）。

**5.3 返还拆借资金**

甲方承诺，在本次交易完成后三个月内，甲方或其他乐视系公司从目标公司拆借的资金（如有）应当全部返还目标公司。

**5.4 优先购买权豁免**

甲方承诺（且应促成目标公司及其他相关方同意），如果乙方或其实际控制人未来为进行内部重组或关联方架构调整之目的拟将所持标的股权转让给乙方或其实际控制人指定的其他方（但乐视竞争者及其关联方除外）（"乐视竞争者"名单见附录 4），目标公司的其他股东同意放弃优先购买权，并对前述转让给予积极配合。

**5.5 战略合作条款**

5.5.1 甲乙双方承诺将充分利用各自的资源，在包括但不限于智能硬件、互联网、房地产、智能家居、智能社区等领域开展全方位合作，以进一步巩固双方在各自行业内的领先地位。双方将开展深度合作，整合双方及下属机构的优质资源，从而促进双方共同、稳定的业务增长，实现双方共赢。

5.5.2 甲乙双方特别确认，除双方协商一致外，乙方将作为甲方及/或其所控制的乐视系公司在房地产业务领域的唯一合作方。由甲方及其关联方发挥其产业优势，双方在产业地产（包括但不限于影视产业、汽车产业、体育产业、互联网生态等方面）深度合作，发挥各自优势、实现共赢。

## 第六条 陈述与保证

**6.1 甲方及目标公司的陈述与保证**

6.1.1 甲方及目标公司向乙方做出附录 2 中的所有陈述与保证。该等陈述与保证在本协议签署之日及交割日（除非某项陈述与保证明确表明仅与某个特定日相关）均在实质方面保持真实、准确和完整。甲方理解，乙方是依赖甲方和目标公司的陈述与保证而进行本次交易的。

6.1.2 若甲方及/或目标公司在本协议项下所作的任何陈述与保证在实质方面不真实、不准确或不完整且未能在乙方发出书面催告通知后 30 天内予以纠正或有效补救，并因此导致乙方遭受任何损害、损失、支出或其他不利情况，则乙方有权要求违约方承担赔偿责任。在目标公司违约的情况下，甲方应就目标公司的违约向乙方承担连带赔偿责任。并且，本款所约定的赔偿不影响乙方依据本协议其他条款而应享有的任何其他权利和救济。

**6.2 乙方的陈述与保证**

6.2.1 乙方向甲方做出附录 3 中的所有陈述与保证。该等陈述与保证在本协议签署之日及交割日（除非某项陈述与保证明确表明仅与某个特定日相关）均在实质方面保持真实、准确和完整。乙方理解，甲方是依赖乙方的陈述与保证而进行本次交易的。

6.2.2 若乙方在本协议项下所作的任何陈述与保证在实质方面不真实、不准确或不完整且未能在甲方发出书面催告通知后 30 天内予以纠正或有效补救，并因此导致甲方遭受任何损害、损失、支出或其他不利情况，则甲方有权要求乙方和受让方承担连带赔偿责任。并且，本款所约定的赔偿不影响甲方依据本协议其他条款而应享有的任何其他权利和救济。

## 第七条 保密及例外

**7.1 一般义务**

各方承诺其在未经各方或有关一方（视情况而定）的事先书面同意之前不能向第三方披露任何保密信息，并应尽合理努力以确保其董事、股权持有人、目前或可能的合伙人、成员、顾问、银行和金融机构及主要人员（统称"代表"）在未经公司或有关方（视情况而定）的事先书面同意之前不能向第三方披露任何保密信息。上述"保密信息"在本第七条中的含义是（a）关于任何一方、任何乐视系公司或前述各方各自的董事、高级职员或雇员的组织、业务、技术、财务、交易、事务等事项的信息（无论该信息是以书面、口头或以任何其它形式并且无论该种信息是否在本协议生效之前、之时或之后提

供过），（b）本协议条款和任何其它基本文件的条款，以及各方及其各自的关联方的身份，和（c）任何由一方、任何乐视系公司或其代表准备的含有或来自保密信息的信息或材料。本第七条规定的保密义务在本协议终止后持续有效。各方应促使各集团成员分别遵守本第七条规定的义务，如同其为本协议的一方。

**7.2 例外**

上述第 7.1 条将不适用于下列情形：

(1) 对已是或成为公众所知的保密信息作出的披露，但一方或任何代表违反本协议的情况下披露的或在其指示下披露的已使公众得知保密信息的除外；

(2) 本协议一方向某一代表作出的披露；但是该代表受到具约束力的专业保密义务的约束；

(3) 根据任何证券交易所的规则、有关法律、政府法规、司法或监管程序等有必要作出的披露，或在与源于或关于本协议的任何法律行动、诉讼或程序的任何司法程序有关的情况下作出的披露，而且在披露前已根据情况并按照任何可行的保密安排在可行范围内事先通知其他方；或

(4) 各方在其或其关联方在正常经营活动、交易或拟进行的交易中，因其合理必要性而需对保密信息作出的披露。

**7.3 公开资料**

除非法律或任何政府机构有规定，任何一方不得在未经另一方事先批准之前，公开各方关系或参与项目的情况的资料或作出公布。

### 第八条 违约责任

**8.1 一般约定**

无论是由于作为或是不作为，任何一方没有履行或没有完全履行或没有适当履行本协议及/或相关交易文件项下的任何义务、陈述与保证或承诺，均构成违约事件。违约方应当承担守约方因此而遭受的经济损失。

**8.2 甲方违约责任**

8.2.1 除本协议另有约定外，如果出现以下任一种或任几种情形，视为甲方的重大违约，乙方及/或其关联方有权要求甲方及/或其关联方支付相当于届时乙方已支付款项总额 20%的款项作为违约金。在目标公司违约的情况下，甲方应就目标公司的违约向乙方承担连带赔偿责任。

(1) 甲方及/或其关联方拒绝按照本协议第 4.1 款约定向乙方完成交割；

(2) 甲方及/或其关联方严重违反其在本协议第五条款项下交割后承诺事项，且经乙方书面催告后 30 日内仍未纠正；

(3) 由于甲方及/或其关联方的拒绝或故意拖延履行其在本协议项下的义务并且导致本次交易未能在本协议签署之日起 30 日内完成交割，但乙方同意延长的情形除外；

(4) 除本协议已披露事项外，因本次交易交割日之前所存在的事实、情况、问题所引发的责任或后果而导致目标公司无法继续经营，导致乙方无法实现其进行本次交易的商业目的。

8.2.2  如甲方及/或其关联方发生上述第 8.2.1 款项下第任何一项项所列重大违约，乙方有权选择单方解除本协议。在乙方选择解除本协议的情况下，甲方应当在解除通知发出之日起 5 个工作日内，将乙方及/或其关联方依据本协议及/或其他相关交易文件已经支付的全部交易对价及其他任何款项退还给乙方及/或其指定方，并有权要求甲方及/或关联方按照上述第 8.2.1 款约定支付相当于乙方已支付全部款项 20%的款项作为违约金。

8.2.3  甲方及/或关联方延迟履行本协议所约定的违约金支付义务以及退款义务的，每逾期一日，甲方应按应支付或应退还款项的每日万分之二向乙方支付逾期利息。

8.2.4  如果乙方没有选择按照本第 8.2.2 款约定解除本协议的，且乙方愿意继续履行本协议，则甲方应继续完成其在本协议项下的义务，并且，该等继续履行并不豁免甲方应向乙方及/或其指定方承担的违约和赔偿责任。

**8.3  乙方违约责任**

8.3.1  本协议签署后，在支付条件全部满足的前提下，如乙方逾期支付转让对价，则须按照每日万分之二标准，向甲方计付迟延支付的违约金。如果逾期超过 30 日仍未支付，从第 31 日起，按照每日万分之五标准，向甲方计付迟延支付的违约金。

8.3.2  乙方延迟履行本协议所约定的违约金支付义务的，每逾期一日，乙方应按应支付违约金的每日万分之二向甲方支付逾期利息。

## 第九条 附则

### 9.1 税、费

#### 9.1.1 税赋

因签署和履行本次交易而产生的相关税赋，按相关法律、法规之规定由各方依照相关法律规定各自承担。

#### 9.1.2 其他费用

在不影响任何以其它方式得到补救的情况下，各方应分别承担其就本协议或其作为一方当事人签订的交易文件的谈判、制备和执行以及在本协议和其作为一方当事人签订的交易文件项下就与本次交易事宜有关的或附带的所有交易产生的所有费用，这些费用包括甲方和乙方的代理、代表、法律顾问和会计师的所有开支和费用。

### 9.2 生效

本协议经各方签署后生效。

### 9.3 继续有效

如果本协议终止，本协议应无效并不再具有法律效力，但第七条至第九条的规定除外；除非各方另行同意，该终止不妨碍任何一方其在该终止之前对违反本协议享有的权利。

### 9.4 通知

9.4.1 本协议项下的任何通知或其它正式通讯件应以书面作出，并由给予方或其代表签字。该等通知应由专人递交或特快专递送至第 9.4.2 款所列的地址。在每种情况下均应标明第 9.4.2 款中所列的（或根据本协议不时另行通知的）有关收件人。以专人递交或邮寄等方式发出的通知应视为已于下列有效送达：

（a） 若为专人递交，于递送时；

（b） 若为特快专递递交，在付邮日的第三（3）个工作日上午 10 时；

除非比上述时间更早收到，并且若（如为专人递交）交付或发送发生在某工作日的下午 6 时后或者在非工作日，则应视为于下一个工作日上午 9 时送达。在本条中提及的时间，均指收件人所在国家或地区的当地时间。

9.4.2 为第 9.4.1 条款目的各方的地址是：

（1） 如甲方，则送至：

地址：北京市朝阳区姚家园路 105 号乐视大厦 16 层

收件人：赵凯

(2) 如乙方，则送至：

地　址：天津市南开区奥城商业广场 C7 写字楼十层

收件人：薛雯

9.4.3 为本 10.4.1 条之目的，一方可通知其他方变更其名称、收件人、地址，且在通知中明确变更的日期。

**9.5 修改**

9.5.1 对本协议（或本协议中提及的任何文件）的修改必须是书面的，且须经每一方或其代表签署后方为有效。"修改"一词应包括以任何方式发生的任何修改、补充、删除或取代。

9.5.2 除非经明确同意，否则任何修改均不应构成对本协议任何条款的普遍放弃，也不应影响截至修改日已经在本协议项下产生的或基于本协议的任何权利、义务或责任，且各方在本协议项下或基于本协议的权利和义务应保持充分有效，除非对这些权利和义务进行了修改，并仅在被修改的范围内受到影响。

**9.6 弃权**

除非本协议一方以书面方式放弃本协议任何条款，否则放弃该等条款不应视为有效行为。本协议任何一方没有或没有及时行使其在本协议项下的权利、权力和采取补救措施不能视为弃权，任何单独或部分的行使均不能排除其它的进一步行使，也不能排除其它任何权利、权力或补救措施的行使。在不限制上述规定的情况下，本协议任何一方对违约方某一违约行为放弃违约的追究权利不能被视为该方放弃对违约方今后发生的违约行为的追究权利。

**9.7 完整协议**

本协议和交易文件共同列出了各方之间（并仅限于各方之间）有关收本次交易的完整协议和理解，并替代此前各方之间（并仅限于各方之间）就此的所有的书面和口头陈述、理解和协议。本协议代替此前甲方与乙方或其关联方签订的任何文件。各方理解，为办理工商变更手续签署的《乐视致新股权转让协议》及股权变更登记文件的任何条款及内容与本协议如有冲突的，应以本协议的约定为准。

**9.8 可分割性**

如果由于法律或司法解释的变更而使本协议的任何条款无效或被认为无效或不可执行，则所涉及条款将在其无效或不可执行的范围内被视为无任何效力并且不包括在本协议内。上述情形不应影响本协议其它条款的效力。各方应为其后尽所有合理努力，用尽可能达到该无效或不可执行的条款之预期效果的有效条款取代该无效或不可执行的条款。

13

### 9.9　适用法律与仲裁

#### 9.9.1　适用法律

本协议已按照中国的法律（不包括其冲突法条文）签署和交付。本协议应受中国的法律（不包括其冲突法条文）管辖，并按中国的法律（不包括其冲突法条文）解释。

#### 9.9.2　仲裁

因本协议产生或与之有关的所有争议、争论或分异，如不能由各方在争议最初发生时起三十（30）天内通过友好协商达成协议解决，则只应提交中国国际经济贸易仲裁委员会北京分会仲裁，由根据中国国际经济贸易仲裁委员会北京分会的仲裁规则作终局解决。仲裁应在北京进行。仲裁庭由三（3）名仲裁员组成。甲乙双方各指定一名仲裁员，第三名仲裁员由仲裁委指定并为首席仲裁员。仲裁做出的裁定和裁决应是终局的。

#### 9.9.3　文本

本协议以一式伍份签订，每方各持一（1）份，各份具有同等法律效力。

（以下无正文）

（本页无正文，为《股权转让协议》(合同编号：JRHX-LSW -ZX-17001)的签署
页）

各方正式授权代表已于本协议首页书明日期签署本协议，以资证明。

贾跃亭：

签字： _____

乐视网信息技术（北京）股份有限公司

签署： _____

授权代表：

日期：

天津嘉睿汇鑫企业管理有限公司

签署： _____

法定代表人：

日期：

乐视致新电子科技（天津）有限公司

签署： _____

法定代表人：

日期：

附录1. 交易标的基本信息

下表系基于截止 2017 年 1 月 5 日公司营业执照登记信息

| 项目 | 基本信息 |
|---|---|
| 公司名称 | 乐视致新电子科技（天津）有限公司 |
| 注册号/统一社会信用代码 | 91120116589764942R |
| 住所 | 天津生态城动漫中路 126 号动漫大厦 B1 区二层 201-427 |
| 法定代表人 | 贾跃亭 |
| 注册资本 | 26504.0001 万元 |
| 公司类型 | 有限责任公司 |
| 经营范围 | 信息技术服务；从事广告业务；硬盘播放器的生产和销售；电子产品、机电设备（小轿车除外）的技术开发和销售；货物及技术进出口业务；通讯器材、移动电话、手机设备、手机的研发、生产、销售及售后服务；从事互联网文化活动；网络游戏研发生产；网络游戏上网运营；利用互联网经营游戏产品（含网络游戏虚拟货币发行、虚拟货币交易）；机械设备、五金交电、建筑材料、电子产品、文化用品、照相器材、计算机软硬件及外围设备、化妆品及卫生用品、体育用品、纺织品、服装、日用品、家具、金银珠宝首饰、饲料、新鲜水果、蔬菜、工艺礼品、钟表眼镜、玩具、汽车摩托车配件、仪器仪表、陶瓷制品、橡胶及塑料制品、花卉、装饰材料、通讯设备的批发、零售、进口及佣金代理（拍卖除外）业务；零售（互联网上销售）预包装食品、散装食品（含水产品）、乳制品（含幼儿配方乳粉）；软件开发、软件设计；委托生产电子产品、照相器材、计算机软硬件及辅助设备；设备安装、维修（需行政许可项目除外）；提供劳务服务（不含中介）；组装计算机。（依法须经批准的项目，经相关部门批准后方可开展经营活动） |
| 营业期限 | 长期 |

附录**2.** 甲方及目标公司的陈述与保证

甲方及目标公司共同并分别向乙方作出如下陈述与保证:

1　标的股权

(1) 甲方 1 是标的股权之合法的和实际的所有权人,已经合法缴足对目标公司的全部出资,不存在任何虚假出资或抽逃出资的行为,不存在任何的股权代持、托管情形,且不存在任何出售股权、与股权有关的其他权益或要求增资的协议、安排或承诺。甲方及目标公司没有回购、回赎或以其他方式购买任何股权的义务且并无向任何其他实体提供资本性投资的义务(无论是以贷款、出资或其他方式)。

(2) 甲方 1 持有的标的股权上没有设置任何质押或其他权益负担、第三人权利等权利限制,或截至交割日,上述权利已经完全解除,标的股权过户至乙方名下没有任何限制或障碍。乙方受让标的股权后不会因此受到任何第三人的追索。

(3) 甲方及目标公司签署和履行本协议不违反适用于甲方及目标公司的任何法律规定,不违反或不会导致甲方及目标公司违反其作为一方或对其或其财产有约束力的任何有效协议或合同的约定。甲方及目标公司就签署、递交和执行本协议和其它交易文件已取得相应融资方的书面同意(无论其作为借款人还是担保人),无须取得政府部门或任何其它主管部门的同意、批准、命令、授权。

(4) 甲方及目标公司对本协议和其他交易文件的签署和履行在目前和将来均不会违反任何目标公司的章程规定,不会与适用于目标公司的任何法律法规或其他规范性文件相冲突,也不会与目标公司已经签署的任何协议、安排相抵触或造成任何违约。

(5) 本协议及其它交易文件一旦签署后,将对甲方及目标公司具有合法的、有拘束力的效力。

2　主体资格、注册资本及股权结构

(1) 主体资格。甲方 1 系依据管辖地法律合法设立、组建、有效存续和资格完备的法人,拥有充分的权力和权利签署本协议和履行本协议项下义务;甲方 2 系中华人民共和国公民,具备完全民事行为能力,且拥有充分的权力和权利签署本协议和履行本协议项下义务。

(2) 合法组织、良好存续及资质。目标公司是依据管辖地法律合法设立、组建、有效存续和资格完备的法人，具有充分的权利和权限拥有、经营其资产，以及经营其营业执照中所载营业范围相关业务。

(3) 股权结构及注册资本。除另有披露外，在本协议签署日及交割日，本协议及甲方作为一方当事人的其他相关交易文件（以下称为"其它交易文件"）所述的目标公司的股权结构、注册资本及其所有权事项是对其各自股权结构及其所有权状况的真实、完整和准确的描述。

3　遵守法律

(1) 遵守法律。目标公司开展的业务活动在各实质性方面均一直遵守所有可适用的法律规定。目标公司或其董事、管理人员或高级管理层人员在开展业务活动中，未实施任何可能违反法律规定或重大侵权的行为。甲方及目标公司其他股东从未实施可能对目标公司产生实质性不利影响的任何违法行为。以甲方和目标公司作为一方当事人的合同义务，或对甲方和目标公司有约束力的合同义务均为合法，且没有违反任何可适用的法律规定。目标公司目前所开展的各项业务均合法开展，其各项业务的合作方均为合法有效并具备履行合作业务相关资质的合法主体。各项合作业务均未出现任何纠纷、争议或事故。

(2) 许可。甲方及目标公司保证向乙方提供目标公司已经取得的正在开展及计划开展的业务活动相关的所有许可、批准、授权、特许和执照，并保证前述许可、批准、授权、特许和执照的真实、合法，持续有效，不受任何交易文件所拟议的交易的影响。

(3) 政府部门。任何政府部门或其他人未启动任何诉讼或调查，以限制、禁止或以其它方式阻碍本协议项下交易，或直接或通过任何法律、法规禁止、实质性限制目标公司开展现有业务活动，或目标公司未作出或授权支付任何违反法律规定的赠与、支付、付款。

4　资产

目标公司合法拥有其所有的资产，除另有披露外，该等资产均不存在任何抵押、质押等权利负担、其他先取特权或与其他任何主体的权益分成。

5　重大合同及交易

(1) 截至交割日，已经签署但尚未履行完毕的合同均不会给本次交易及乙方以及目标公司未来的运营造成任何违约、赔偿或不利影响。截至本协议签署日，目标公司未收到任何来自合同相对方以行动或通知表明，在交割日之后的任何时候将违约或终止合同。

(2) 合同履行。据合理预测，对于目标公司作为一方当事人或其受约束的任一重大合同，均不存在由于目标公司原因导致无法履行的情形。

(3) 控制权改变。与目标公司有关的所有合同均未约定若目标公司控制权或者目标公司董事会（或类似机构）的成员变更，或甲方及目标公司签署本协议，则合同将被终止，或使目标公司在该等合同项下的权利义务受到重大不利影响，或导致目标公司失去任何主要客户或供应商。

(4) 关联方交易。除另有披露外，甲方及目标公司同任何关联方之间不存在任何合同义务或交易，任何关联方未对甲方及目标公司负有债务，甲方及目标公司也不对任何关联方负有债务（或承诺提供贷款）；不存在任何因关联方原因而产生的对目标公司的资产和/或业务产生重大不利影响的情形。目标公司与关联方间的任何合同均是按照有利于目标公司的条件签署的。

(5) 资金拆借。除另有披露外，甲方及目标公司同任何关联方之间不存在任何形式的资金拆借行为。甲方及目标公司向乙方做出保证，目标公司的现有股东及现有股东关联方向目标公司通过拆借等任何方式提供资金所形成的债权，在根据本协议和其他交易文件约定应由甲方向乙方支付的罚息、资金闲置损失、违约金及赔偿金全额获得清偿前，均劣后于乙方的上述债权。

(6) 签订合同的授权。目标公司未向任何人提供代表其签订合同或承诺代表其从事某项行为的授权委托书、其它明示、默示或名义上的授权（无论该授权是否已经生效），但向其员工提供的该员工在正常履行职责时签署日常合同的授权除外。

(7) 排他性约定。截至本协议签署日及交割日，甲方及目标公司没有与任何第三方签署过任何针对目标公司的排他性合作承诺或约定。

6　财务事项

(1) 财务报表。在交割日之前，目标公司应当已经向乙方提交 2014 年、2015 年、2016 年度的财务报表。财务报表应当根据中国企业会计准则在所有重大方面公正地反映出目标公司在相应日期和期间的财务状况、经营成果及资金周转情况。甲方及目标公司保证在交割日之后向乙方提交年度财务报表，该等财务报表符合中国企业会计准则并且在规定的期间内持续适用上述会计准则。财务报表在所有重大方面公正地反映出目标公司在相应日期和期间的财务状况、经营成果及资金周转情况。财务报表包括经乙方认可的会计师事务所按中国企业会计准则编制的审计报告。

(2) 税款准备和计提。所有应当计提的税费已按照中国企业会计准则在财务报表中对予以全部准备或计提，包括会计结算日截止时或之前的会计期间内的递延税费或临时性税费，包括但不限于任何目标公司当时已经承担、或之后随时可能或已经有义务承担的税款。

(3) 特殊财务安排。除了财务报表的注解中另有规定外，目标公司不存在任何"资产负债表外"的安排。甲方及目标公司保证，甲方及目标公司与任何关联方之间所有的财务及收益安排、资金往来情况已经全部披露给乙方。

(4) 财务责任。除另有披露外，甲方及目标公司不存在其他债务和/或或有负债（包括但不限于甲方及目标公司对外担保情况），也不存在加速到期的借款（银行贷款及融资合同，或第三方违约行为除外）。

7　税费

(1) 目标公司已支付所有的到期税费或要求予以支付的税费、所有与这些税费相关的重大差额或其它附加税、利息和罚款，但不包括目标公司善意提出异议且已经按照中国企业会计准则提供充足准备金的税费；

(2) 目标公司已经及时提交或促使提交所有要求的用于纳税的重要收益（包括所有可适用的延期收益），且所有此类纳税收益内容准确、完整；

(3) 对于目标公司的所有此类纳税收益，(i)不存在任何针对目标公司提出的，或者据目标公司所知潜在的未经评估的税费差额，以及 (ii)任何纳税收益方面不存在进行中的审计，记录或将记录纳税收益的日期时不存在任何有效的延展期，不存在关于税费评估或支付时间延期方面的有效权利放弃或协议；

(4) 目标公司财务报表中所有关于税款负债项目的所有重要方面始终按照中国企业会计准则进行了记载，目标公司在交割日时或之前期间内所有与税费相关负债已经充分记载于财务报表。

8　运营

(1) 自本协议签署日起至本次交易交割日期间（"过渡期间"）未发生下列情形：

　　　a) 目标公司合法、正常、通常开展的业务性质、范围或方式发生中断或改变，不能处于持续经营状态；

b) 与财务报表中披露的状况相比，目标公司的客户关系、资产或负债发生任何重大变化；

c) 除了正常业务活动或本协议中拟议的交易外，目标公司进行任何性质的资产收购、出售、转让或处置；

d) 为了提高目标公司的董事或高级管理人员的总年薪额，通过工资、奖金、奖励或其它方式，向其支付超过会计结算日时目标公司向其支付或分配的年收入额的资金或利益；

e) 发生任何交易或事件（无论单独发生、或与一项或多项交易、事件一起发生）使得目标公司的缴税责任增加或可能增加，但不包括目标公司在正常业务活动中从事交易时的实际收入、利润或销售额而产生的所得税、销售税或营业税；

f) 发生对目标公司使用的资产、目标公司状况或目标公司目前从事或拟从事的业务产生重大不利影响的、且未经保险承保的任何损害、毁坏或损失；

g) 目标公司放弃有价值的权利，或放弃全部或部分的重大债权；

h) 对约束目标公司的任何重大合同进行重大变更或修改；在正常业务经营之外订立任何重大合同，修订或调整任何重大合同的任何重要条款；

i) 目标公司公布或支付任何红利或进行其它分配；或者

j) 目标公司签订与本第 8 条(1)项中规定事项相关的任何协议或承诺。

(2) 过渡期间内如发生下列情形，应及时通报乙方，乙方有权就该等事项的合理性进行问询，甲方及目标公司应给出合理解释：

a) 除甲方及目标公司另有披露外，目标公司发生逾期应付款项超过 1000 万元；

b) 超过 1000 万元人民币的资本项目支出或资金承诺；

c) 目标公司订立或签署年费用超过 1000 万元人民币的任何新的服务协议，并且目标公司在没有合同义务的情况下，在交割日之前对任何管理人员或高级管理人员的服务条款进行变更；

d) 目标公司的核心管理层人员或高级管理层人员辞职、可能辞职或终止雇佣关系，或者在非乐视系公司任职、或者从事或与其他方合作从事与目标公司相同或类似的业务。

9    索赔和诉讼程序

(1) 不存在诉讼或潜在诉讼。甲方、目标公司或其任何高级管理人员或董事（以其职权地位作为高级管理人员或董事）未涉及、等待任何可能影响其履行目标公司职务的诉讼、案件、程序、投诉、调查、询问、索赔、起诉、仲裁、行政诉讼或刑事诉讼的裁决（以下统称为"诉讼"），或者收到已经成为上述诉讼对象的通知，无论其在诉讼中作为原告、被告或其他当事人。据甲方及目标公司所知，不存在任何事实或情况，可能针对目标公司或其任何高级管理人员或董事（以其职权地位作为高级管理人员或董事）提起将产生重大不利影响（据合理预测）的诉讼或潜在诉讼。

(2) 具有偿付能力。不存在任何要求目标公司解散或清算的命令或决议。目标公司的任何资产上均不存在任何冻结、扣押或其他限制权力行使的行政措施或司法措施。目标公司未失去任何偿付能力或产生任何到期但不能清偿的债务。

10    劳动关系

(1) 员工福利方案。目标公司已经根据法律规定，为所有员工缴纳了全部的社会保险费。除了上述社会保险费外，目标公司未维持、支付任何员工福利方案，或就任何员工福利方案承担义务。

(2) 劳动关系。目标公司没有参与任何不符合现行法律要求的劳动关系，不存在针对目标公司的未决的，或据目标公司所知，潜在的劳动争议或仲裁，不存在任何拖欠员工强制性社会保险和福利的情形。据甲方及目标公司所知，不存在目标公司的高级管理人员或核心员工打算与目标公司终止劳动合同。目标公司未讨论或采取措施终止与高级管理人员、核心员工的劳动合同。

11    客户

截至交割日，目标公司未收到任何来自客户的通知，表明在交割日之后的任何时候将停止使用目标公司的服务，或实质性减少对该服务的使用；目标公司亦无任何理由认为上述情况有可能发生或本协议及其他交易文件所拟议的交易会导致上述情况的发生。

12    披露

　　甲方及目标公司在本协议下所作的陈述或保证，根据其所做出的情形而言，不含有任何对重要事实的不真实陈述或对任何必需的重要事实陈述的遗漏，从而使其在本协议中所作的陈述不具有误导性，并且上述所有说明已准确、完整且正确地表述本协议中所要求或准备阐述的信息。截至本协议签署日及交割日，不存在与本协议项下交易相关的没有向乙方书面披露但可能导致重大不利影响的任何事实或情况。

附录3. 乙方陈述与保证

1  主体资格

乙方是根据注册地法律注册、合法成立并有效存续的公司，具有充分的权力和权限拥有、经营其资产，以及运营其营业执照中所载营业范围相关业务。

2  交易授权及其合法性

(a) 授权。乙方有权签署、递交和执行本协议和其作为一方当事人的其他相关交易文件（以下称为"其它交易文件"），且在签署、递交及履行本协议及其它交易文件时，或者根据本协议和其它交易文件的规定完成交易时，除本协议已经约定的批准、审批事项外，无须取得政府部门或任何其他主管部门的同意、批准、命令、授权，或被要求注册、资格审查、指派、申报。

(b) 有约束力。本协议及其它交易文件一旦签署后，将对乙方具有合法的、有拘束力的效力。

3  协议履行

乙方拥有合法和足够的资金按照本协议的规定履行其付款义务且有能力履行其在本协议项下的其他义务。

附录4. 乐视竞争者名单

## 乐视竞争者名单

| | |
|---|---|
| 三星 | 百度 |
| LG | 爱奇艺 |
| 索尼 | 阿里巴巴 |
| 松下 | 优酷土豆 |
| 清华同方 | 搜狐 |
| 创维 | 网易 |
| 海信 | 中影集团 |
| 长虹 | 上影集团 |
| 康佳 | 华谊兄弟传媒集团 |
| 小米 | POLYBONA |
| 暴风 | 光线传媒 |
| 微鲸电视 | BONA |
| PPTV | 华夏电影 |
| 苹果 | 万达 |
| 腾讯 | |

附件1. 乐视致新股权转让协议（工商版本）



《股权转让协议》签字页

合同编号：**JRHX-LSW -ZX-17001**
Contract No.: **JRHX-LSW -ZX-17001**

乐视网信息技术（北京）股份有限公司

及

贾跃亭

与

天津嘉睿汇鑫企业管理有限公司

关于

乐视致新电子科技（天津）有限公司

10.3964% 股权

之

股权转让协议

Equity Transfer Agreement

on

10.3964% Equity of

LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd.

between

LeTV Network Information Technology (Beijing) Co., Ltd.

Jia Yueting

and

Tianjin Jiarui Huixin Enterprise Management Co., Ltd.

2017 年 1 月 13 日

January 13, 2017

## 股权转让协议

## Equity Transfer Agreement

本《股权转让协议》由以下各方于 2017 年 1 月 13 日在中国北京签订：

The *Equity Transfer Agreement* was signed by and between the following Parties on January 13, 2017 in Beijing, China:

甲方1:乐视网信息技术（北京）股份有限公司（"乐视网"）

住所：北京市海淀区学院南路 68 号 19 号楼六层 6184 号房间

法定代表人：贾跃亭

**Party A 1: LeTV Network Information Technology (Beijing) Co., Ltd. ("LeTV Network")**

Domicile: Room 6184, F6, Building No.19, No.68 Xueyuan South Road, Haidian District, Beijing

Legal Representative: Jia Yueting

甲方2:贾跃亭（作为创始人及实际控制人）

联系地址：北京市朝阳区姚家园路 105 号乐视大厦 16 层

身份证号码：14262319731215081X

**Party A 2: Jia Yueting (the Founder and Actual Controller)**

Contact Address: F16, LeTV Building, No.105 Yaojiayuan Road, Chaoyang District, Beijing

ID Card No.: 14262319731215081X

乙方：天津嘉睿汇鑫企业管理有限公司

注册地址：天津市滨海新区大港经济开发区万象路 168 号科技孵化器 B 区房屋 510 间

法定代表人：汪孟德

**Party B: Tianjin Jiarui Huixin Enterprise Management Co., Ltd.**

Registered Address: Room 510, Zone B, Technology Incubator, No.168 Wanxiang Road, Dagang Economic Development Zone, Binhai New Area, Tianjin

Legal Representative: Wang Mengde

目标公司：乐视致新电子科技（天津）有限公司（"乐视致新"）

注册地址：天津生态城动漫中路 126 号动漫大厦 B1 区二层 201-427

法定代表人：贾跃亭

Target Company: LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd. ("LeTV Zhixin")

Registered Address: Room 201-427, F2, Zone B1, Animation Building, No.126 Dongman Middle Road, Tianjin Eco-City

Legal Representative: Jia Yueting

## 1.1 定义

### 1.1 Definition

在本协议中，除非上下文另有规定，以下术语在本协议中具有下列含义：

In this Agreement, unless the context otherwise requires, the following terms shall have the following meanings:

| | |
|---|---|
| 本协议 | 指各方签署的本《股权转让协议》及其附录、附件、修订和补充。 |
| This Agreement | refers to the Equity Transfer Agreement signed by parties and its appendices, annexes, amendments and supplements. |
| 各方/一方 | 各方指本协议的签订方，以及他们各自的继任者、受让人和授权代表。一方指各方其中的任何一方。 |
| Parties/One Party | Parties refer to the signatories of this Agreement and their respective successors, assignees and authorized representatives. One Party refers to either party of them. |
| 甲方 | 指对甲方 1 （乐视网）及甲方 2 （贾跃亭先生）的统称，根据上下文具体情况也可指称其中的任何一个。 |
| Party A | refers to the collective name of Party A1 (LeTV Network) and Party A2 (Mr. Jia Yueting), or either of them depending on the context and specific circumstances. |
| 甲方 1/乐视网/上市公司 | 指乐视网信息技术（北京）股份有限公司，为一家依据中国法律成立并有效存续的上市公司（股票名称：乐视网，股票代码：300104）；贾跃亭为乐视网的创始人及实际控制人。 |
| Party A1/LeTV Network/Listed Company | refers to LeTV Network Information Technology (Beijing) Co., Ltd., a Listed Company established and validly existing under the laws of China (Stock Name: LeTV Network, Stock Code: 300104); Jia Yueting is the founder and actual controller of LeTV Network. |
| 甲方 2/创始人 | 指贾跃亭先生，其为目标公司及其他乐视系公司的创始人及实际控制人。 |
| Party A2/Founder | refers to Mr. Jia Yueting, the founder and actual controller of the Target Company and other LeTV Companies. |
| 乙方 | 指天津嘉睿汇鑫企业管理有限公司或其指定方。 |
| Party B | refers to Tianjin Jiarui Huixin Enterprise Management Co., Ltd. or its designated party. |
| 乐视致新/目标公司 | 指乐视致新电子科技（天津）有限公司。 |
| LeTV Zhixin/Target Company | refers to LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd. |
| 标的股权 | 具有本协议第 2.1.1 款所约定的含义。 |
| Target Equity | has the meaning given in Article 2.1.1 of this Agreement. |
| 附带权益 | 指标的股权所附带及/或对应的全部股东权利和权益。 |
| Attached Interests | refer to all the shareholder's rights and interests attached to and/or corresponding to the Target Equity. |
| 乐视系公司 | 指创始人直接控制或者间接控制的乐视生态体系内公司的统称，根据上下文具体情况也可指称其中的任何一个。 |
| LeTV Companies | refer to the collective name of companies within the LeTV ecosystem that are directly or indirectly controlled by the founder, or any one of such companies depending on the context and specific circumstances. |
| 本次交易 | 具有本协议鉴于条款第（4）项所约定的含义。 |

| This Transaction | has the meaning given in clause (4) under the Whereas section. |
| 交易对价 | 指乙方或其指定方根据本协议第 3.1 款需向乐视网支付的交易对价。 |
| Transaction Consideration | refers to the transaction consideration that Party B or its designated party is required to pay to LeTV Network according to Article 3.1 of this Agreement. |
| 完成交割 | 指甲方及其他相关方向乙方完成本次交易所涉标的股权过户等事项的交割。 |
| Completion of Closing | refers that Party A and other related parties have completed the transfer of Target Equity in this transaction to Party B as well as other matters. |
| 交割日 | 指按照本协议第 4.1.1 款约定的办理完毕标的股权过户的日期和时间，以工商行政主管机关登记的股权过户登记日为准。 |
| Closing Date | refers to the date and time when the transfer registration of the Target Equity as agreed in Article 4.1.1 of this Agreement is completed, which shall be subject to the registration date of equity transfer registered by relevant Administration for Industry and Commerce. |
| 中国 | 指中华人民共和国，就本协议目的而言，不包括香港特别行政区和澳门特别行政区以及台湾省。 |
| China | refers to the People's Republic of China, excluding Hong Kong Special Administrative Region, Macao Special Administrative Region and Taiwan Province for the purposes of this Agreement. |
| 香港 | 指中华人民共和国香港特别行政区。 |
| Hong Kong | refers to the Hong Kong Special Administrative Region of the People's Republic of China. |
| 香港联交所 | 指香港联合交易所有限公司。 |
| Hong Kong Stock Exchange | refers to the Stock Exchange of Hong Kong Limited. |
| 权益负担 | 指任何性质的权利主张、任何担保权益、第三方权利，包括但不限于任何抵押、按揭、质押、留置、保证、担保转让、所有权保留、优先购买权、优先拒绝权或其它任何性质的担保权益。 |
| Encumbrance of Interest | refers to claims, security interests and third party rights of any nature, including but not limited to any charge, mortgage, pledge, lien, guarantee, guaranteed transfer, retention of title, preemptive right, right of first refusal or other security interests of any nature. |
| 工作日 | 指香港和中国大陆的商业银行通常均营业且办理常规业务的营业日（不包括星期六、星期日和全体公民放假的节日）。 |
| Working Day | refers to the business days on which commercial banks in mainland China and Hong Kong normally operate and conduct regular business (excluding Saturdays, Sundays and public holidays). |
| 政府机构 | 指有管辖权的任何政府或政府机构，任何政府或政府机构的任何部门、事务处或机构，任何法院或仲裁庭，任何证券交易所的监管机构。 |
| Government Authority | refers to any government or political subdivision thereof; any department, agency or instrumentality of any government or political subdivision thereof; any court or arbitral tribunal; and the governing body of any securities exchange, in each case, having competent jurisdiction. |
| 关联方 | 指一方控制、共同控制另一方或对另一方施加重大影响，以及两方或两方 |

以上同受一方控制、共同控制或重大影响的，构成关联方。为本定义之目的，重大影响，是指对一个企业的财务和经营政策有参与决策的权力，但并不能够控制或者与其他方一起共同控制这些政策的制定。

**Related Parties**    If a party has the power to, directly or indirectly, control, jointly control or exercise significant influence over another party, or if two or more parties are subject to control, joint control or significant influence from a same party, the related party relationships are constituted. For the purpose of this definition, significant influence refers to the power to participate in the formulation of financial and operating policies of an enterprise, but not the power to control or jointly control the formulation of these policies with other parties.

控制（包括控制、被控制和受共同控制）指直接或间接地拥有领导决定一个实体的管理、财务和经营政策的权力或实现这种领导的权力，无论通过拥有具有投票权的证券、合同还是其他方式。

**Control (including control, controlled and jointly controlled)**    refers to having the direct or indirect power to lead or decide the administrative, financial and operating policies of an entity or the power to realize such leadership, whether by owning securities having voting rights, contracts or any other means.

人    指任何自然人、组织、公司、政府部门、合资公司、合伙组织、联合体或其它主体（无论是否具有独立法人地位）。

**Person**    refers to any natural person, organization, company, government authority, joint venture, partnership, association or other entity (whether or not incorporated).

人民币    指中国的法定货币。本次交易以人民币作为计价单位。

**RMB**    refers to the official currency of China. This transaction uses RMB as the settlement currency.

重大不利（影响或变化）    指任何可能或被合理的认为将会阻碍任何方实质性实现完成本次交易或履行其在本协议下义务的变化或影响。

**Significant Adverse (Impact or Change)**    refers to any change or impact that may prevent or is reasonably believed to prevent any party from substantially completing this transaction or fulfilling its obligations under this Agreement.

知识产权    指（a）专利、商标、服务标志、标识、式样、商号、设计及发明权、版权、著作权（包括对象和源代码的计算机软件著作权）和精神权利、数据权、数据库权利、半导体图形权利、实用新型、专有技术权、商业机密权利、专属性信息和其他专属性资料和专有知识产权权利，无论是已注册或未注册的，无论是注册的申请还是提出申请注册的权利，（b）所有在本协议签署之日或在将来在世界任何地方可能存在的，与前述（a）项约定的内容具有相当或类似效果或性质的权利或保护形式，以及（c）对上述任何权利在过去、现在或将来的侵权进行起诉的权利。

**Intellectual Property**    refers to (a) patents, trademarks, service marks, logos, patterns, trade names, design and invention rights, copyright (including computer software copyright of objects and source codes) and moral rights, data rights, database rights, semiconductor mask rights, utility models, proprietary technology rights, trade secrets rights, proprietary information and other proprietary data and proprietary intellectual property rights, whether it is registered or unregistered, or whether it is an application for registration or the right to apply for

registration, (b) all rights or forms of protection that may exist at the date of signing this Agreement or in future anywhere in the world and have equivalent or similar effects or properties to those listed in (a) above, and (c) the right to sue for past, present or future infringement of any of the above rights.

适用法律     指任何具有约束力的适用法律、法规、规则、规定、通知、解释、任何政府机关或立法机关的命令或决定，或任何司法机关的判定、决定或解释。本协议及本协议所有补充文件均适用中华人民共和国现行有效的法律法规。

Applicable Law     refers to any binding applicable laws, statutes, rules, regulations, circulars, interpretations, any orders or decisions of government authority or legislature, or any rulings, decisions or explanations of judicial authority. This Agreement and all of its supplementary documents shall be governed by the then current laws and regulations of the People's Republic of China.

生效日     指本协议签署日。

Effective Date     refers to the signing date of this Agreement.

## 第三条 交易对价及支付安排
## Article 3 Transaction Consideration and Payment Arrangements

### 3.1 交易对价
### 3.1 Transaction Consideration

各方一致同意并确认,乙方收购标的股权对价总额为 23.0176 亿元人民币(统称"交易对价")。

Parties agree and acknowledge that the purchase price offered by Party B for the Target Equity is RMB 2,301,760,000 (collectively referred to as the "Transaction Consideration").

### 3.2 付款条件
### 3.2 Conditions of Payment

3.2.1 交易对价支付条件。乙方在本协议第 3.1 款项下的支付义务应以如下付款条件均已满足且持续有效为前提(乙方有权豁免前述全部或部分支付条件):

3.2.1 Conditions of Payment of Transaction Consideration. Party B's payment obligation under the paragraph 3.1 hereof shall be based on the premise that the following conditions of payment have been met and remain valid (Party B has the right to exempt from all or part of the following conditions of payment):

（1）    本次交易所需全套交易文件(包括本协议及附录、附件所列各执行文件)已经各方及相关方或其授权代表依法签署且有效;

(1)  The complete set of transaction documents required for this transaction (including this Agreement, appendices, annexes and relevant implementation documents listed therein) have been duly signed and executed by parties and related parties or their authorized representatives;

（2）    乐视网就目标公司标的股权转让事宜已完成所必须的所有内部审批程序,包括但不限于获得批准本次交易并同意签署和履行全部交易文件的股东大会决议和董事会决议;

(2) LeTV Network has completed all internal approval procedures necessary for the transfer of Target Equity, including but not limited to resolution of shareholders and resolution of directors that approve this transaction and agree to sign and execute all transaction documents;

（3）    目标公司已完成本次交易所必须的所有内部审批程序,包括但不限于获得批准本次

交易并同意签署和履行全部交易文件的股东会决议和董事会决议（或执行董事决定），目标公司的其他有权股东就标的股权转让事宜书面明确放弃优先购买权（如果股东会决议已明确包含前述同意放弃优先购买权内容，在该股东会决议上签字同意的股东不需要单独书面确认）；

(3)  The Target Company has completed all internal approval procedures necessary for this transaction, including but not limited to resolution of shareholders and resolution of directors (or decision from executive directors) that approve this transaction and agree to sign and execute all transaction documents, and consents from other shareholders of the Target Company that expressly waives their preemptive rights in writing regarding the transfer of Target Equity (in case that the resolution of shareholders has explicitly included the aforementioned consent to waive the preemptive rights, shareholders who sign and agree to such resolution do not need to provide their separate written consent);

(4)  乐视网已按照本协议第 4.1 款约定就标的股权转让交易完成交割，使得标的股权已经过户登记在乙方名下；

(4)  LeTV Network has completed the transfer of Target Equity in accordance with Article 4.1 of this Agreement, so that the Target Equity has been transferred to and registered under the name of Party B;

(5)  截至付款日，乙方已经完成对目标公司及相关方的法律、财务 及业务方面的尽职调查，且调查结果与甲方及目标公司披露的信息没有重大差异；

(5)  As of the payment date, Party B has completed due diligence on the legal, financial and business risks of the Target Company and related parties, and the due diligence findings are not significantly different from the information disclosed by Party A and the Target Company;

(6)  陈述与保证。截至付款日，甲方在本协议及附件项下的陈述与保证均在实质方面保持真实、准确和完整；

(6)  Representations and Warranties. As of the date of payment, Party A's representations and warranties under this Agreement and its appendices are true, accurate and complete in all material aspects;

(7)  无重大不利变化。截至付款日，不存在、未发生可能对本次交易所涉标的或者本协议履行造成任何重大不利影响的事件、情况、变化等；

(7)  No Material Adverse Changes. As of the date of payment, there were or are no events, circumstances or changes that may have any significant adverse impact on the Target Equity of this transaction or the performance of this Agreement;

(8)  无重大裁决。截至付款日，没有任何法院判决、政府部门裁决或者法律规定(a)阻止或限制任何本协议项下的交易；(b)阻止或限制任何本协议项下的交易的完成；(c)根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责任；或(d)限制乙方或目标公司的经营从而构成重大不利变化；

(8)  No Significant Ruling. As of the date of payment, there are no court ruling, government decisions or legal provisions that may (a) prevent or restrict any transaction under this Agreement; (b) prevent or restrict the completion of any transaction under this Agreement; (c) impose severe punishment or legal liability on Party B due to its completion of any transaction under this Agreement; or (d) restrict the operation of Party B or Target Company, thus constituting a significant adverse change;

(9)  无重大诉讼。不存在任何诉讼、仲裁、行政程序，且没有任何法院判决、政府部门裁决或者法律规定(a)阻止或限制任何本协议项下的交易，或影响交易的完成，或对交易产生重大

不利影响；(b)根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法
律责任；或(c)限制乙方或目标公司的经营从而构成重大不利变化。

(9)  No Significant Litigation. There are no litigation, arbitration or administrative procedures,
court ruling, government decisions or legal provisions that may (a) prevent or restrict any transaction
under this Agreement, affect the completion of such transaction, or have a significant adverse impact
on such transaction; (b) impose severe punishment or legal liability on Party B due to its completion
of any transaction under this Agreement; or (c) restrict the operation of Party B or the Target
Company, thus constituting a significant adverse change.

### 3.3 支付进度及方式
### 3.3 Payment Schedule and Method

乙方应在 2017 年 4 月 30 日或者本协议第 3.2.1 款所列付款条件均已满足之日(以二者较晚到
期者为准)，向乐视网支付交易对价，即 23.0176 亿元人民币。

Party B shall pay the transaction consideration, i.e. RMB 2,301,760,000, to LeTV Network on April
30, 2017 or the date when the conditions of payment listed in Article 3.2.1 of this Agreement have
been met (whichever comes later).

## 第五条  交割后承诺事项
## Article 5 Post-closing Commitments

### 5.1 优先投资权
### 5.1 Preemptive Right

对于任何一家乐视系公司(上市公司及合并报表范围内的子公司除外)，  甲方同意 (并促成
相关方同意) 给予乙方下的优先投资权：(1)如果甲方出售、减持、债转股等形式处置其
直接或间接持有的某乐视系公司（上市公  司及合并报表范围内的子公司除外）的股权，在
同等条件下乙方有优先受让 前述股权的权利；(2) 如果某乐视系公司（上市公司及合并报
表范围内的子公司除外）拟增加注册资本或发行新股，在同等条件下乙方有优先认购的权
利。

For any member of LeTV Companies (excluding the Listed Company and its consolidated
subsidiaries), Party A shall agree (and procure its related parties to agree) to provide Party B with
the following preemptive rights: (1) if Party A disposes of its equity directly or indirectly held in a
member of LeTV Companies (excluding the Listed Company and its consolidated subsidiaries) in
the form of sales, reduction of equity, debt-to-equity swap, etc., Party B shall have preemptive rights
to acquire the aforesaid equity under the same condition; and (2) if a member of LeTV Companies
(excluding the Listed Company and its consolidated subsidiaries) intends to increase its registered
capital or issue new shares, Party B shall have preemptive rights to subscribe under the same
condition.

### 5.2 目标公司整体注入上市公司
### 5.2 Injection of the Target Company into the Listed Company as a Whole

甲方承诺 (并促成目标公司及相关方) 在 2019 年 12 月 31 日前，完成将乐视致新中非上市
公司持有的股权重组进入上市公司而向中国证监会的申报，并于 2020 年 9 月 30 日或双方
另行协商书面确定的其他日期前完成将乐视致新中非上市公司持有的股权重组进入上市公
司（但如因中国证监会或相关监管机构原因导致的延迟除外）。

Party A undertakes (and procures the Target Company and its related parties) to complete the
submission to China Securities Regulatory Commission on injection of equity of LeTV Zhixin not

held by the Listed Company into the Listed Company before December 31, 2019, and to complete such injection by or on September 30, 2020 or other date as determined by the parties through separate written negotiation (except for the delay caused by China Securities Regulatory Commission or relevant regulatory authorities).

**5.3 返还拆借资金**

**5.3 Repayment of Borrowed Funds**

甲方承诺，在本次交易完成后三个月内，甲方或其他乐视系公司从目标公司拆借的资金（如有）应当全部返还目标公司。

Party A undertakes to, within three (3) months after the completion of this transaction, fully repay the funds (if any) borrowed from the Target Company by Party A or other LeTV Companies to the Target Company.

**5.4 优先购买权豁免**

**5.4 Waive of Right of First Refusal**

甲方承诺（且应促成目标公司及其他相关方同意），如果乙方或其实际控制人未来为进行内部重组或关联方架构调整之目的拟将所持标的股权转让 给乙方或其实际控制人指定的其他方（但乐视竞争者及其关联方除外）（"乐视竞争者"名单见附录 4），目标公司的其他股东同意放弃优先购买权，并对前述转让给予积极配合。

Party A undertakes (and shall procure the Target Company and other related parties to agree) that, if for the purpose of internal restructuring or reorganization of related parties in the future, Party B or its actual controller intends to transfer the Target Equity held by them to another party specified by Party B or its actual controller (except for LeTV's competitors and their related parties) (refer to Appendix 4 for the list of "LeTV's Competitors"), the other shareholders of the Target Company will agree to waive their rights of first refusal and actively cooperate with the aforesaid transfer.

**5.5 战略合作条款**

**5.5 Strategic Cooperation Clause**

5.5.1 甲乙双方承诺将充分利用各自的资源，在包括但不限于智能硬件、 互联网、房地产、智能家居、智能社区等领域开展全方位合作，以进一步巩固双方在各自行业内的领先地位。双方将开展深度合作，整合双方及下属机构的优质资源，从而促进双方共同、稳定的业务增长，实现双方共赢。

5.5.1 Party A and Party B hereby undertake to make full use of their respective resources to conduct all-round cooperation in areas including, but not limited to, smart hardware, Internet, real estate, smart home, and smart community, etc., to further strengthen their leading position in their respective industries. Both parties shall carry out in-depth cooperation and integrate high-quality resources of both parties and their subsidiaries to promote mutual and stable business growth and achieve mutual benefits.

5.5.2 甲乙双方特别确认，除双方协商一致外，乙方将作为甲方及/或其所控制的乐视系公司在房地产业务领域的唯一合作方。由甲方及其关联方发挥其产业优势，双方在产业地产（包括但不限于影视产业、 汽车产业、体育产业、互联网生态等方面）深度合作，发挥各自优势、实现共赢。

5.5.2 Party A and Party B hereby specifically acknowledge that, unless otherwise agreed by both parties, Party B will be the exclusive and sole partner of Party A and/or any member of LeTV Companies controlled by Party A in terms of real estate businesses. By utilizing industrial advantages of Party A and its related parties, both parties shall cooperate deeply in industrial real estate (including, but not limited to, film and television industry, automobile industry, sports industry,

Internet ecology, etc.) to give full play to their respective advantages and achieve mutual benefits.

## 第六条陈述与保证
## Article 6 Representations and Warranties

### 6.1 甲方及目标公司的陈述与保证

### Representations and Warranties of Party A and the Target Company

6.1.1 甲方及目标公司向乙方做出附录 2 中的所有陈述与保证。该等陈述与保证在本协议签署之日及交割日（除非某项陈述与保证明确表明仅与某个特定日相关）均在实质方面保持真实、准确和完整。甲方理解，乙方是依赖甲方和目标公司的陈述与保证而进行本次交易的。

Party A and the Target Company shall make all the representations and warranties in Appendix 2 to Party B. Such representations and warranties shall be maintained true, accurate and complete in any material respect on the date of this Agreement and the closing date (unless some representations and warranties are clearly expressed to be only related to a specific date). Party A understands that, Party B conducts this Transaction by relying on the representations and warranties of Party A and the Target Company.

6.1.2 若甲方及/或目标公司在本协议项下所作的任何陈述与保证在实质方面不真实、不准确或不完整且未能在乙方发出书面催告通知后 30 天内予以纠正或有效补救，并因此导致乙方遭受任何损害、损失、支出或其他不利情况，则乙方有权要求违约方承担赔偿责任。在目标公司违约的情况下，甲方应就目标公司的违约向乙方承担连带赔偿责任。并且，本款所约定的赔偿不影响乙方依据本协议其他条款而应享有的任何其他权利和救济。

If any representations and warranties made by Party A and/or the Target Company hereunder are untrue, inaccurate or incomplete in any material respect, and are not corrected or effectively remedied within thirty (30) days after Party B has given a written notice, and as a result, Party B suffers from any damages, losses, expenditures or other adverse circumstances, Party B shall have the right to require the breaching party to assume the compensation liability. In the event of the breach of contract by the Target Company, Party A shall assume the several and joint compensation liability to Party B for the breach of contract by the Target Company. In addition, the compensation stipulated in this clause shall not affect any other rights and remedies that Party B shall have in accordance with the other clauses hereof.

### 6.2 乙方的陈述与保证

### Representations and Warranties of Party B

6.2.1 乙方向甲方做出附录 3 中的所有陈述与保证。该等陈述与保证在本协议签署之日及交割日（除非某项陈述与保证明确表明仅与某个特定日相关）均在实质方面保持真实、准确和完整。乙方理解，甲方是依赖乙方的陈述与保证而进行本次交易的。

Party B shall make all the representations and warranties in Appendix 3 to Party A. Such representations and warranties shall be maintained true, accurate and complete in any material respect on the date of this Agreement and the closing date (unless some representations and warranties are clearly expressed to be only related to a specific date). Party B understands that, Party A conducts this Transaction by relying on the representations and warranties of Party B.

6.2.2 若乙方在本协议项下所作的任何陈述与保证在实质方面不真实、不准确或不完整且未能在甲方发出书面催告通知后 30 天内予以纠正或有效补救，并因此导致甲方遭受任何损害、损失、支出或其他不利情况，则甲方有权要求乙方和受让方承担连带赔偿责任。并且，本款所约定的赔偿不影响甲方依据本协议其他条款而应享有的任何其他权利和救济。

If any representations and warranties made by Party B hereunder are untrue, inaccurate or

incomplete in any material respect, and are not corrected or effectively remedied within thirty (30) days after Party A has given a written notice, and as a result, Party A suffers from any damages, losses, expenditures or other adverse circumstances, Party A shall have the right to require Party B and the transferee to assume joint and several liability. In addition, the compensation stipulated in this clause shall not affect any other rights and remedies that Party A shall have in accordance with the other clauses hereof.

## 第八条违约责任
## Article 8 Liability for Breach of Contract

### 8.1 一般约定
### General Provision

无论是由于作为或是不作为，任何一方没有履行或没有完全履行或没有适当履行本协议及/或相关交易文件项下的任何义务、陈述与保证或承诺，均构成违约事件。违约方应当承担守约方因此而遭受的经济损失。

No matter whether as a result of act or omission, either party's failure to perform, fully perform or properly perform any of its obligations, representations, warranties or undertakings under this Agreement and/or related transaction documents shall constitute an event of default. The breaching party shall assume the economic losses suffered by the non-breaching party as a result of such default.

### 8.2 甲方违约责任
### Party A's Liability for Breach of Contract

8.2.1 除本协议另有约定外，如果出现以下任一种或任几种情形，视为甲方的重大违约，乙方及/或其关联方有权要求甲方及/或其关联方支付相当于届时乙方己支付款项总额20%的款项作为违约金。在目标公司违约的情况下，甲方应就目标公司的违约向乙方承担连带赔偿责任。

Unless otherwise specified herein, Party B and/or its related parties shall have the right to require Party A and/or its related parties to pay 20% of the total amount already paid by Party B as liquidated damages under any one or several of the following circumstances, which shall be deemed as material breach of contract by Party A. In the event that the Target Company breaches the contract, Party A shall bear joint and several liability for compensation to Party B for the breach of contract by the Target Company.

(1) 甲方及/或其关联方拒绝按照本协议第 4.1 款约定向乙方完成交割；

Party A and/or its related parties refuse to complete the closing with Party B in accordance with the provisions of Article 4.1 hereof;

(2) 甲方及/或其关联方严重违反其在本协议第五条款项下交割后承诺事项，且经乙方书面催告后 30 日内仍未纠正；

Party A and/or its related parties materially violate their post-closing commitments under Article 5 hereof, and refuse to make corrections within thirty (30) days after Party B's written notice;

(3) 由于甲方及/或其关联方的拒绝或故意拖延履行其在本协议项下的义务并且导致本次交易未能在本协议签署之日起 30 日内完成交割，但乙方同意延长的情形除外；

Party A and/or its related parties refuse to perform or deliberately delay the performance of their obligations hereunder, and as a result, this Transaction is not closed within thirty (30) days after the signing of this Agreement, except for the circumstances where Party B agrees to extend the closing period;

(4) 除本协议已披露事项外，因本次交易交割日之前所存在的事实、情况、问题所引发的责

任或后果而导致目标公司无法继续经营，导致乙方无法实现其进行本次交易的商业目的。

Except for the matters disclosed herein, any responsibilities or consequences arising from facts, situations or problems existing before the closing date of this Transaction lead to the inability of the Target Company to continue its operation, thus causing Party B to fail to realize its commercial purposes in this Transaction.

8.2.2 如甲方及/或其关联方发生上述第 8.2.1 款项下第任何一项所列重大违约，乙方有权选择单方解除本协议。在乙方选择解除本协议的情况下，甲方应当在解除通知发出之日起 5 个工作日内，将乙方及/或其关联方依据本协议及/或其他相关交易文件已经支付的全部交易对价及其他任何款项退还给乙方及/或其指定方，并有权要求甲方及/或关联方按照上述第 8.2.1 款约定支付相当于乙方已支付全部款项 20%的款项作为违约金。

In the event of any material breach of contract under the aforesaid Article 8.2.1 by Party A and/or its related parties, Party B shall have the right to unilaterally terminate this Agreement. If Party B chooses to terminate this Agreement, Party A shall return all transaction consideration and any other amounts already paid by Party B and/or its related parties in accordance with this Agreement and/or other relevant transaction documents to Party B and/or its related parties within five (5) working days from the date of the Termination Notice, and Party B shall have the right to require Party A and/or its related parties to pay 20% of the total amount already paid by Party B as liquidated damages in accordance with the aforesaid provisions of Article 8.2.1.

8.2.3 甲方及/或关联方延迟履行本协议所约定的违约金支付义务以及退款义务的，每逾期一日，甲方应按应支付或应退还款项的每日万分之二向乙方支付逾期利息。

If Party A and/or its related parties delay the performance of the liquidated damages payment obligation and refund obligation stipulated herein, Party A shall pay Party B the overdue interest with a daily interest rate of 0.02% on the basis of amount payable or refundable for each overdue day.

8.2.4 如果乙方没有选择按照本第 8.2.2 款约定解除本协议的，且乙方愿意继续履行本协议，则甲方应继续完成其在本协议项下的义务，并且，该等继续履行并不豁免甲方应向乙方及/或其指定方承担的违约和赔偿责任。

If Party B does not choose to terminate the Agreement in accordance with the provisions of Article 8.2.2, and Party B is willing to continue to perform the Agreement, Party A shall continue to fulfill its obligations hereunder, and such continuation of performance shall not exempt Party A from the liability for breach of contract and the compensation to Party B and/or its designated party.

### 8.3 乙方违约责任

**Party B's Liability for Breach of Contract**

8.3.1 本协议签署后，在支付条件全部满足的前提下，如乙方逾期支付转让对价，则须按照每日万分之二标准，向甲方计付迟延支付的违约金。如果逾期超过 30 日仍未支付，从第 31 日起，按照每日万分之五标准，向甲方计付迟延支付的违约金。

Provided that the Agreement is signed and the conditions for payment of the transaction consideration are fully met, if Party B delays the payment of the transaction consideration, Party B shall pay Party A the liquidated damages for late payment with a daily interest rate of 0.02% for each overdue day. If the payment is overdue for more than 30 days, from the 31st day, Party B shall pay Party A the liquidated damages for late payment with a daily interest rate of 0.05% for each overdue day.

8.3.2 乙方延迟履行本协议所约定的违约金支付义务的，每逾期一日，乙方应按应支付违约金的每日万分之二向甲方支付逾期利息。

If Party B delays the performance of the liquidated damages payment obligation stipulated herein, Party B shall pay Party A the overdue interest with a daily interest rate of 0.02% for each overdue day.

E

M

A

I

L

E

D

_____C Murray_____          _____1/23/2020_____

CASE MANAGER                            DATE

RECEIVED

JAN 2 3 2020

LEGAL SERVICES

**Fill in this information to identify the case:**

Debtor 1        YUETING JIA

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   2:19-bk-24804-VZ

Filed: USBC - Central District of California
Yueting Jia   (B10)
19-24804 (VPZ)

YT1

0000000045

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. **This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. Who is the current creditor? | Tianjin Jiarui Huixin Corporate Management Co., Ltd. | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |

| | | |
| --- | --- | --- |
| 2. Has this claim been acquired from someone else? | ☑ No | |
| | ☐ Yes. From whom? | |

| | | |
| --- | --- | --- |
| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | See attached Addendum. | See attached Addendum. |
| | Name | Name |
| | Number     Street | Number     Street |
| | City              State         ZIP Code | City              State         ZIP Code |
| | Contact phone | Contact phone |
| | Contact email | Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| | | |
| --- | --- | --- |
| 4. Does this claim amend one already filed? | ☑ No | |
| | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on ____ / ____ / ____ |
| | | MM  / DD  / YYYY |

| | | |
| --- | --- | --- |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No | |
| | ☐ Yes. Who made the earlier filing? _____ | |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
| --- | --- |

**6.** Do you have any number you use to identify the debtor?

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7.** How much is the claim?    $ ___No less than $84,833,232___    Does this amount include interest or other charges?

See attached Addendum.

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

___Liquidated damages; see also attached Addendum.___

**9.** Is all or part of the claim secured?

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ _____

Amount of the claim that is secured:    $ _____

Amount of the claim that is unsecured: $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ _____

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

**10.** Is this claim based on a lease?

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

**11.** Is this claim subject to a right of setoff?

☑ No

☐ Yes. Identify the property: _____

Official Form 410    Proof of Claim    page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  1 / 13 / 2020
          MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Mengde | | WANG |
|---|---|---|---|
| | First name | Middle name | Last name |

Title    Executive Director

Company    Tianjin Jiarui Huixin Corporate Management Co., Ltd.
          Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    bldg 4, No.1 Embassy, No.8, Dongzhimen North St.
          Number        Street
          Beijing, China                                    100007
          City                              State    ZIP Code

Contact phone    0086-13752770634          Email    xiaochenhua@sunac.com.cn

## ADDENDUM TO PROOF OF CLAIM OF IANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD. ("CREDITOR")

### EXHIBIT A

Creditor hereby asserts, reserves, and preserves, any and all claims, causes of action, other rights or remedies or the like under contract, applicable law, and equity that Creditor has against the Debtor, his affiliates, successors, representatives, agents, assigns or any other related individual or entity, including, without limitation, an amount not less than $84,833,232 (¥ 600,000,000 converted as of October 14, 2019), as detailed on the attached "Summary Information about the Claim" which is incorporated herein and made a part hereof. Creditor hereby asserts, reserves, and preserves all rights of setoff and recoupment available to it. Creditor hereby asserts, reserves, and preserves all claims for additional interest, liquidated damages, attorneys' fees, and other amounts.

Creditor's claims are general unsecured claims, except as provided herein or under applicable law or equity, or as determined by a court or another adjudicative body of competent jurisdiction to constitute administrative, secured, trust, or priority claims.  To the extent that this proof of claim is or includes secured, administrative, trust, or priority claims, including claims based on Creditor's right to setoff or recoupment, or similar rights, it shall be and is a secured, administrative, trust, or priority claim.

In addition to the Summary Information about the Claim, the documents upon which these claims are based, include, without limitation, those attached to this addendum to proof of claim (along with English translations which are attached).

This proof of claim is filed with (a) full reservation of rights, remedies, privileges and the like, including, without limitation, (i) the right to amend, modify or supplement the proof of claim, (ii) the right to assert additional, modified, supplementary and/or amended proofs of claim and (iii) the right to make requests for administrative expenses based on, *inter alia*, events, information and/or documents obtained from the Debtor or others through discovery or otherwise and with (b) full reservation of (i) Creditor's rights, remedies, privileges, claims and/or the like against any party other than the Debtor, and (ii) Creditor's interests in any property, including, without limitation, property of the estate.  This proof of claim is filed without prejudice to any cause of action against the Debtor not constituting a "claim" under 11 U.S.C. § 101(5) or otherwise applicable law.

This proof of claim is not intended to be, and shall not be construed as: (i) an election of remedies; (ii) a waiver of any past, present or future defaults or events of default; (iii) a waiver, release or limitation of any rights, remedies, privileges, claims, interests or the like of Creditor, including, without limitation, the right to assert any claims against the Debtor or against any other party or property other than the Debtor and his estate, inclusive of the right to recover interest and attorneys' fees and costs; (iv) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of this claim, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this case or involving Creditor; (v) a waiver of the right to mediation or arbitration; (vi) a consent to

jurisdiction in the United States, whether in the bankruptcy court or otherwise; (vii) a consent to the jurisdiction or Constitutional power of the bankruptcy court with respect to the subject matter of this proof of claim, any objection or other proceeding commenced with respect thereto, or any other proceeding commenced in this case against or otherwise involving Creditor; (viii) a waiver of the right to trial by jury in any proceedings so triable in this case, or any controversy or proceedings related to this case; (ix) a waiver or release of any right against any affiliate of the Debtor or other entity or person liable for all or part of any claim described herein; (x) a waiver of any right of subordination of indebtedness or liens held by other creditors of the Debtor; (xi) a waiver of any rights pursuant to section 506(b) of the Bankruptcy Code; or (xii) a waiver or release of any liens or security interests that Creditor may have with respect to the property of the Debtor or any affiliate of the Debtor.

Payments to Creditor should be sent to the following:

IANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD.
Attn: Chen hua XIAO
bldg 4, No.1 Embassy, No.8, Dongzhimen North St.
Beijing 100007
China
Telephone:    0086-13752770634
Email:    xiaochenhua@sunac.com.cn

All notices concerning this proof of claim should be sent to each of the following:

IANJIN JIARUI HUIXIN CORPORATE MANAGEMENT CO., LTD.
Attn: Chen hua XIAO
bldg 4, No.1 Embassy, No.8, Dongzhimen North St., Dongcheng District
Beijing 100007
China
Telephone:    0086-13752770634
Email:    xiaochenhua@sunac.com.cn

And

Jincheng Tongda & Neal Law Firm
Attn: Stephan Peng & Yue Wang
10th Floor, China World Tower
No. 1 Jianguo Menwai Avenue
Beijing, 100004, China
Email:    pengjun@jtnfa.com
            wangyue@jtnfa.com

And

Morris, Nichols, Arsht & Tunnell LLP
Attn: Eric D. Schwartz & Matthew B. Harvey

2

1201 North Market Street, 16th Floor
Wilmington, DE 19801
Telephone:      (302) 658-9200
Email:          eschwartz@mnat.com
                mharvey@mnat.com

### Summary Information about the Claim

1.  *The Capital Increase Agreement of Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd.* (Contract No.: JRHX-YT-ZX-17003, hereinafter referred to as the "Agreement") was duly signed and came into force by and between YUETING JIA, Lerong Zhixin Electronic Technology (Tianjin) Co., Ltd. (乐融致新电子科技（天津）有限公司, former name: LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd., hereinafter referred to as the "Target Company") and Tianjin Jiarui Huixin Corporate Management Co., Ltd. (hereinafter referred to as "Jiarui Huixin") on January 13, 2017, under which <u>Jiarui Huixin has invested 3 billion RMB Yuan (¥3,000,000,000, hereinafter referred to as the "Transaction Consideration") into the Target Company</u> on March 9, 2017.

2.  The Agreement stipulates as follows:

    a)  According to Article 5.1 hereof, the Target Company undertakes (and procures relevant parties) to complete the declaration to China Securities Regulatory Commission for incorporating the equity not held by LeTV Information Technology (Beijing) Co., Ltd. (hereinafter referred to as the "Listed Company") in the Target Company into the Listed Company (hereinafter collectively referred to as the "Commitment A") before December 31, 2019, and complete the incorporation of the equity not held by the Listed Company in the Target Company into the Listed Company (hereinafter collectively referred to as the "Commitment B") before September 30, 2020; and

    b)  According to Article 8.2.1(2) hereof, should YUETING JIA and/or the Target Company violate their post-closing commitments under Article 5.1 (including the Commitment A and Commitment B) hereof, YUETING JIA shall be considered as material defaulter under the Agreement and shall pay <u>20% of the total amount of the Transaction Consideration (¥3,000,000,000) paid by Jiarui Huixin</u> as liquidated damages, which is equal to <u>¥600,000,000</u>.

3.  YUETING JIA and the Target Company failed to fulfill the Commitment A by December 31, 2019 and basing on the objective fact and sound and reasonable judgement, YUETING JIA and the Target Company shall be impossible to fulfill the Commitment B under Article 5.2 by September 30, 2020. Therefore, YUETING JIA shall pay Jiarui Huixin liquidated damages of ¥600,000,000.

4.  Above all, the claim of the creditor (Tianjin Jiarui Huixin Corporate Management Co., Ltd.) against YUETING JIA is ¥600,000,000 as liquidated damages, which is equal to **$84,833,232** converted based on the foreign exchange rate effective on October 14, 2019 published by People's Bank of China.

合同编号：JRHX-YT-ZX-17003

乐视致新电子科技（天津）有限公司

及

贾跃亭

与

天津嘉睿汇鑫企业管理有限公司

关于

乐视致新电子科技（天津）有限公司

之

# 增资协议



2017 年 1 月 13 日

# 目录

第一条   释义 ...................................................................................... 1
　　1.1    定义 .................................................................................... 1
　　1.2    解释规则 ............................................................................ 4
第二条   本次增资及先决条件 ........................................................... 4
　　2.1    认缴出资 ............................................................................ 4
　　2.2    本次增资的先决条件 ........................................................ 5
第三条   实缴出资安排 ....................................................................... 5
　　3.1    付款条件 ............................................................................ 5
　　3.2    实缴出资 ............................................................................ 6
第四条   交割安排 ............................................................................... 6
　　4.1    交割 .................................................................................... 6
　　4.2    交割受阻及调整 ................................................................ 7
第五条   交割后承诺事项 ................................................................... 7
　　5.1    目标公司整体注入上市公司 ............................................ 7
　　5.2    返还拆借资金 .................................................................... 7
　　5.3    优先购买权豁免 ................................................................ 7
　　5.4    战略合作条款 .................................................................... 7
第六条   陈述与保证 ........................................................................... 8
　　6.1    甲方及目标公司的陈述与保证 ........................................ 8
　　6.2    乙方的陈述与保证 ............................................................ 8
第七条   保密及例外 ........................................................................... 8
　　7.1    一般义务 ............................................................................ 8
　　7.2    例外 .................................................................................... 9
　　7.3    公开资料 ............................................................................ 9
第八条   违约责任 ............................................................................... 9
　　8.1    一般约定 ............................................................................ 9
　　8.2    甲方及目标公司违约责任 .............................................. 10
　　8.3    乙方违约责任 .................................................................. 10
第九条   附则 ..................................................................................... 11
　　9.1    税、费 .............................................................................. 11
　　9.2    生效 .................................................................................. 11
　　9.3    继续有效 .......................................................................... 11
　　9.4    通知 .................................................................................. 11
　　9.5    修改 .................................................................................. 12

9.6    弃权 ...................................................................................12
9.7    完整协议 ...........................................................................12
9.8    可分割性 ...........................................................................12
9.9    适用法律与仲裁 ...............................................................13

附录 1.  交易标的基本信息 .................................................1

附录 2.  甲方及目标公司的陈述与保证 ............................1

附录 3.  乙方陈述与保证 .....................................................1

附录 4.  乐视竞争者名单 .....................................................1

乐视致新电子科技（天津）有限公司

增资协议

本《乐视致新电子科技（天津）有限公司增资协议》由以下各方于 2017 年 1
月 13 日在中国北京签订：

**甲方：贾跃亭**（作为创始人及实际控制人）
联系地址：北京市朝阳区姚家园路 105 号乐视大厦 16 层
身份证号码：14262319731215081X

**乙方：天津嘉睿汇鑫企业管理有限公司**
注册地址：天津市滨海新区大港经济开发区万象路 168 号科技孵化器 B 区房
屋 510 间
法定代表人：汪孟德

**目标公司：乐视致新电子科技（天津）有限公司（"乐视致新"）**
注册地址：天津生态城动漫中路 126 号动漫大厦 B1 区二层 201-427
法定代表人：贾跃亭

**鉴于：**

(1) 目标公司为一家依据中国法律成立并有效存续的有限公司，主营业务为
乐视 TV 终端业务，独立开展与其相关的 TV 产品研发、设计、运营和
销售等互联网电视业务；据甲方及目标公司披露，目标公司的注册资本
总额为 28,120.7441 万元；

(2) 乙方是一家依据中国法律成立并有效存续的有限责任公司；

(3) 乙方拟按照本协议的条款和条件对目标公司进行投资，认购目标公司新
增注册资本，目标公司拟按照本协议的条款和条件接受乙方对目标公司
的增资（"**本次增资**"或"**本次交易**"）；

**因此，**各方经友好协商，就本次增资的交易方式、条件和原则，达成本协议
如下，以资各方共同遵照执行：

## 第一条 释义

### 1.1 定义

在本协议中，除非上下文另有规定，以下术语在本协议中具有下列含义：

| 本协议 | 指各方签署的本《乐视致新电子科技（天津）有限公司增资协议》及其附录、附件、修订和补充。 |
| 各方/一方 | 各方指本协议的签订方，以及他们各自的继任者、受让人和授权代表。一方指各方其中的任何一方。 |
| 甲方/创始人 | 指贾跃亭先生，其为目标公司及其他乐视系公司的创始人及实际控制人。 |
| 乙方 | 指天津嘉睿汇鑫企业管理有限公司或其指定方。 |
| 乐视致新/目标公司 | 指乐视致新电子科技（天津）有限公司。 |
| 上市公司 | 指乐视网信息技术（北京）股份有限公司，为一家依据中国法律成立并有效存续的上市公司（股票名称：乐视网，股票代码：300104）；贾跃亭为上市公司的创始人及实际控制人。 |
| 新增股权 | 具有本协议第 2.1 款所约定的含义。 |
| 公司章程 | 指本次增资完成时修订的《乐视致新电子科技（天津）有限公司章程》。 |
| 附带权益 | 指新增注册资本对应的目标公司股权所附带及/或对应的全部股东权利和权益。 |
| 乐视系公司 | 指创始人直接控制或者间接控制的乐视生态体系内公司的统称，根据上下文具体情况也可指称其中的任何一个。为免疑义，乐视系公司不包含上市公司及其合并范围内的子公司。 |
| 本次增资 | 具有本协议鉴于条款第(3)项所约定的含义。 |
| 投资款 | 指乙方或其指定方根据本协议第 2.1 款需向目标公司支付的交易对价。 |
| 交割日 | 指按照本协议第 4.1.1 款约定的办理完毕本次增资工商变更登记手续的日期和时间，以工商行政主管机关登记的股权过户登记日为准。 |
| 中国 | 指中华人民共和国，就本协议目的而言，不包括香港特别行政区和澳门特别行政区以及台湾省。 |
| 香港 | 指中华人民共和国香港特别行政区。 |
| 香港联交所 | 指香港联合交易所有限公司。 |
| 权益负担 | 指任何性质的权利主张、任何担保权益、第三方权利， |

| | |
|---|---|
| | 包括但不限于任何抵押、按揭、质押、留置、保证、担保转让、所有权保留、优先购买权、优先拒绝权或其它任何性质的担保权益。 |
| 工作日 | 指商业银行通常均营业且办理常规业务的营业日（不包括星期六、星期日和全体公民放假的节日）。 |
| 政府机构 | 指有管辖权的任何政府或政府机构，任何政府或政府机构的任何部门、事务处或机构，任何法院或仲裁庭，任何证券交易所的监管机构。 |
| 关联方 | 指一方控制、共同控制另一方或对另一方施加重大影响，以及两方或两方以上同受一方控制、共同控制或重大影响的，构成关联方。为本定义之目的，重大影响，是指对一个企业的财务和经营政策有参与决策的权力，但并不能够控制或者与其他方一起共同控制这些政策的制定。 |
| 控制（包括控制、被控制和受共同控制） | 指直接或间接地拥有领导决定一个实体的管理、财务和经营政策的权力或实现这种领导的权力，无论通过拥有具有投票权的证券、合同还是其他方式。 |
| 人 | 指任何自然人、组织、公司、政府部门、合资公司、合伙组织、联合体或其它主体（无论是否具有独立法人地位）。 |
| 人民币 | 指中国的法定货币。本次交易以人民币作为计价单位。 |
| 重大不利（影响或变化） | 指任何可能或被合理的认为会阻碍任何方实质性实现完成本次交易或履行其在本协议下义务的变化或影响。 |
| 知识产权 | 指 (a) 专利、商标、服务标志、标识、式样、商号、设计及发明权、版权、著作权（包括对象和源代码的计算机软件著作权）和精神权利、数据权、数据库权利、半导体图形权利、实用新型、专有技术权、商业机密权利、专属性信息和其他专属性资料和专有知识产权权利，无论是已注册或未注册的，无论是注册的申请还是提出申请注册的权利，(b) 所有在本协议签署之日或在将来在世界任何地方可能存在的，与前述(a)项约定的内容具有相当或类似效果或性质的权利或保护形式，以及 (c) 对上述任何权利在过去、现在或将来的侵权进行起诉的权利。 |
| 适用法律 | 指任何具有约束力的适用法律、法规、规则、规定、通 |

3

知、解释、任何政府机关或立法机关的命令或决定，或
任何司法机关的判定、决定或解释。本协议及本协议所
有补充文件均适用中华人民共和国现行有效的法律法
规。

生效日            指本协议签署日。

## 1.2 解释规则

在本协议中，除非上下文另有规定：

1.2.1 标题：标题仅为方便阅读而设，不应影响本协议任何条款的解释。

1.2.2 包括但不限于："包括"一词和类似的用语不是限制性用语，解释"包
括"时应视"但不限于"一词好像紧接在"包括"后面。

1.2.3 提及文件之处：提及本协议时，应包含本协议的鉴于条款；提及条
款、条、款、项、附录时，应被理解为其提及的是本协议的条款、
条、款、项、附录；除非文意另有规定，"本协议的"和"本协议项
下"等词语和类似含义的字是指整份协议，而不是指本协议的某一
条款或附录/附件。提及任何文件（包括本协议）之处指该份被不时
修订、合并、补充、更新或取代的文件。

1.2.4 时间：如果注明一段时间并自某一日或某一行为或事件发生之日算
起，计算该段时间时不应包括该日。

1.2.5 书面形式：凡指书面形式之处包括电子邮件、信函、纸质文件等形
式。

1.2.6 语言：本协议以中文书写。

## 第二条 本次增资及先决条件

### 2.1 认缴出资

2.1.1 乙方同意按照本协议约定的条款和条件，以现金方式合计出资人民
币叁拾亿元（3,000,000,000）（"投资款"）认缴目标公司本次增资中
的全部新增注册资本（31,245,271 元，占本次增资完成后全部注册资
本出资额的 10%）及该等出资所对应的股权及附属于该等股权所对
应的全部附带权益（"新增股权"），其中 31,245,271 元人民币计入目
标公司的注册资本，剩余溢价款计 2,968,754,729 人民币计入目标公
司的资本公积金；本次增资完成后，目标公司的注册资本总额为
312,452,712 元人民币，其中，乐视网持有目标公司 40.3118%的股权，
乙方及/或其关联方合计持有目标公司 33.4959%的股权，其他股东合
计持有目标公司 26.1923%的股权。

4

2.1.2  为完成上述增资，如有必要，目标公司及其他相关方应与乙方或其指定方，按照本协议附件 1 所列格式和内容签署《乐视致新增资协议》（工商版本），并按照目标公司注册地相关法律规定及相关政府机构的要求签署为完成本次增资所需签署的全部相关文件和决议，并将该等文件签署本原件经各方共同封存后交付给乙方保管。前述《乐视致新增资协议》（工商版本）及相关文件的任何条款及内容与本协议如有冲突的，应以本协议的约定为准。

## 2.2 本次增资的先决条件

乙方或其指定方进行本次增资应以如下先决条件均已满足且持续有效为前提（乙方有权单独豁免前述全部或部分先决条件）：乙方的实际控制人已经就本次增资按照香港联交所《上市规则》获得了必要的批准（如适用）。

### 第三条 实缴出资安排

## 3.1 付款条件

乙方或其指定方履行本协议第 2.1 款项下的投资款支付义务应以如下付款条件均已满足且持续有效为前提（乙方或其指定方有权豁免前述全部或部分支付条件）：

3.1.1  本次增资所需全套交易文件（包括本协议及附录、附件所列各执行文件）已经各方及相关方或其授权代表依法签署且有效；

3.1.2  目标公司已完成本次增资所必须的所有内部审批程序，包括但不限于全体股东已适当签署的批准本次增资并同意签署和履行全部交易文件的股东会决议和董事会决议，目标公司的其他有权股东就本次增资书面明确放弃优先认缴出资权(如果股东会决议已明确包含前述同意放弃优先认缴出资内容，在该股东会决议上签字同意的股东不需要单独书面确认)；

3.1.3  目标公司已完成与本次增资相关的所有工商变更登记手续，包括但不限于将新增股权登记在乙方名下，并完成公司章程修改；

3.1.4  截至付款日，乙方已经完成对目标公司及相关方的法律、财务及业务方面的尽职调查，且调查结果与目标公司披露的信息没有重大差异；

3.1.5  陈述与保证。截至付款日，甲方及目标公司在本协议及附件项下的陈述与保证均在实质方面保持真实、准确和完整；

3.1.6  无重大不利变化。截至付款日，不存在、未发生可能对本次增资所涉标的或者本协议履行造成任何重大不利影响的事件、情况、变化等；

5

3.1.7 无重大裁决。截至付款日，没有任何法院判决、政府部门裁决或者法律规定(a)阻止或限制任何本协议项下的交易；(b)阻止或限制任何本协议项下的交易的完成；(c)根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责任；或(d)限制乙方的经营从而构成重大不利变化；

3.1.8 无重大诉讼。不存在任何诉讼、仲裁、行政程序，且没有任何法院判决、政府部门裁决或者法律规定(a)阻止或限制任何本协议项下的交易，或影响交易的完成，或对交易产生重大不利影响；(b)根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责任；或(c)限制乙方或目标公司的经营从而构成重大不利变化。

## 3.2 实缴出资

3.2.1 在本协议第 3.1 款项下的付款条件全部得到满足并持续有效的前提下，乙方应在 2017 年 6 月 15 日前分期足额缴付本次交易全部投资款。

3.2.2 乙方缴付出资后，目标公司应向乙方签发出资证明书，载明乙方当期及累计实缴出资金额、出资比例，并将前述信息记载于目标公司的股东名册。目标司的股东名册应记载股东的名称、认缴出资额、实缴出资额、出资比例、所持股权是否设置质押等担保权益。该股东名册经各股东签字并加盖公司印章后由目标公司保存，并向乙方或其指定方提供一份副本。

## 第四条 交割安排

### 4.1 交割

4.1.1 目标公司应于 2017 年 3 月 15 日或双方另行协商确定的其他合理日期前（但因工商等政府主管部门原因导致耽搁并经双方协商书面确认的延期不构成违约）就本次增资及相关变更事项（包括但不限于修改目标公司章程）在工商行政管理机关办理完毕增资登记及相关事项的变更登记工作，将新增注册资本对应的股权登记到乙方或其指定方名下。

4.1.2 为顺利办理本次增资登记之目的，如果需要目标公司或相关负责人提供任何补充资料或签署相关文件，目标公司承诺（并促成相关方）必须在乙方或其指定受让方或相关政府机构提出要求之日起 3 天内准备并提交有效的补充资料和签署相关文件。如果由于客观特殊原因确有困难而导致无法按照前述期限提交的，可以给予合理的宽限。

### 4.2 交割受阻及调整

(1) 各方特此确认并同意，如果在办理交割手续过程中遇到任何问题或障碍，或者由于适用法律规定、政策变更、相关政府主管部门或其他非本协议当事方及目标公司所能控制的原因导致本次增资的交割及乙方在本协议项下的权利不能直接实现（统称"**交割受阻**"），目标公司不能以此为理由否认乙方依据本协议应享有的经济利益，各方应积极协商和沟通，并应采纳乙方提出的合理建议，在适用法律允许的范围内以其他拥有实质性相同的效果（就其法律和商业内容而言），采取适用法律允许的其他替代方案，赋予乙方相同或等同的经济利益和法律权利，尽最大努力实现乙方进行本次增资之商业目的。

(2) 如果本次增资发生上述交割受阻情形而导致最终未能交割，且无法找到切实可行的替代方案，乙方有权终止本次增资及本协议，目标公司（并应促成其他相关方）应在乙方决定终止之日起 15 个工作日内全额返还乙方及其关联方已经支付的全部款项。

## 第五条 交割后承诺事项

### 5.1 目标公司整体注入上市公司

目标公司承诺（并促成目标相关方）在 2019 年 12 月 31 日前，完成将乐视致新中非上市公司持有的股权重组进入上市公司而向中国证监会的申报，并于 2020 年 9 月 30 日或各方另行协商书面确定的其他日期前完成将乐视致新中非上市公司持有的股权重组进入上市公司（但如因中国证监会或相关监管机构原因导致的延迟除外）。

### 5.2 返还拆借资金

目标公司承诺，在本次增资完成后三个月内，其他乐视系公司从目标公司拆借的资金（如有）应当全部返还目标公司。

### 5.3 优先购买权豁免

目标公司承诺（且应促成其他相关方同意），如果乙方或其实际控制人未来为进行内部重组或关联方架构调整之目的拟将所持目标公司股权部分或全部转让给乙方或其实际控制人指定的其他方（但乐视竞争者及其关联方除外）（"乐视竞争者"名单见附录 5），目标公司的其他股东同意放弃优先购买权，并对前述转让给予积极配合。

### 5.4 战略合作条款

5.4.1 甲乙各方承诺将充分利用各自的资源，在包括不限于智能硬件、互联网、房地产、智能家居、智能社区等领域开展全方位合作，以进一步巩固各方在各自行业内的领先地位。各方将开展深度合作，整

合各方及下属机构的优质资源，从而促进各方共同、稳定的业务增
长，实现各方共赢。

5.4.2 甲乙各方特别确认，除各方协商一致外，乙方将作为甲方及/或其所
控制的乐视系公司在房地产业务领域的唯一合作方。由甲方及其关
联方发挥其产业优势，各方在产业地产（包括但不限于影视产业、
汽车产业、体育产业、互联网生态等方面）深度合作，发挥各自优
势、实现共赢。

## 第六条 陈述与保证

### 6.1 甲方及目标公司的陈述与保证

6.1.1 甲方及目标公司向乙方做出附录 2 中的所有陈述与保证。该等陈述
与保证在本协议签署之日及交割日（除非某项陈述与保证明确表明
仅与某个特定日相关）均在实质方面保持真实、准确和完整。甲方
理解，乙方是依赖甲方和目标公司的陈述与保证而进行本次增资的。

6.1.2 若甲方和目标公司在本协议项下所作的任何陈述与保证在实质方面
不真实、不准确或不完整且未能在乙方发出书面催告通知后 30 天内
予以纠正或有效补救，并因此导致乙方遭受任何损害、损失、支出
或其他不利情况，则乙方有权要求甲方或目标公司承担连带赔偿责
任。并且，本款所约定的赔偿不影响乙方依据本协议其他条款而应
享有的任何其他权利和救济。

### 6.2 乙方的陈述与保证

6.2.1 乙方向甲方做出附录 3 中的所有陈述与保证。该等陈述与保证在本
协议签署之日及交割日（除非某项陈述与保证明确表明仅与某个特
定日相关）均在实质方面保持真实、准确和完整。乙方理解，甲方
是依赖乙方的陈述与保证而进行本次增资的。

6.2.2 若乙方在本协议项下所作的任何陈述与保证在实质方面不真实、不
准确或不完整且未能在甲方发出书面催告通知后 30 天内予以纠正或
有效补救，并因此导致甲方遭受任何损害、损失、支出或其他不利
情况，则甲方有权要求乙方和受让方承担连带赔偿责任。并且，本
款所约定的赔偿不影响甲方依据本协议其他条款而应享有的任何其
他权利和救济。

## 第七条 保密及例外

### 7.1 一般义务

各方承诺其在未经各方或有关一方（视情况而定）的事先书面同意之前

不能向第三方披露任何保密信息，并应尽合理努力以确保其董事、股权持有人、目前或可能的合伙人、成员、顾问、银行和金融机构及主要人员（统称**"代表"**）在未经公司或有关方（视情况而定）的事先书面同意之前不能向第三方披露任何保密信息。上述"保密信息"在本第七条中的含义是（a）关于任何一方、任何乐视系公司或前述各方各自的董事、高级职员或雇员的组织、业务、技术、财务、交易、事务等事项的信息（无论该信息是以书面、口头或以任何其它形式并且无论该种信息是否在本协议生效之前、之时或之后提供过），（b）本协议条款和任何其它基本文件的条款，以及各方及其各自的关联方的身份，和（c）任何由一方、任何乐视系公司或其代表准备的含有或来自保密信息的信息或材料。本第七条规定的保密义务在本协议终止后持续有效。各方应促使各方集团公司分别遵守本第七条规定的义务，如同其为本协议的一方。

### 7.2 例外

上述第 7.1 条将不适用于下列情形：

(1) 对已是或成为公众所知的保密信息作出的披露，但一方或任何代表违反本协议的情况下披露的或在其指示下披露的已使公众得知保密信息的除外；

(2) 本协议一方向某一代表作出的披露；但是该代表受到具约束力的专业保密义务的约束；

(3) 根据任何证券交易所的规则、有关法律、政府法规、司法或监管程序等有必要作出的披露，或在与源于或关于本协议的任何法律行动、诉讼或程序的任何司法程序有关的情况下作出的披露，而且在披露前已根据情况并按照任何可行的保密安排在可行范围内事先通知其他方；或

(4) 各方在其或其关联方在正常经营活动、交易或拟进行的交易中，因其合理必要性而需对保密信息作出的披露。

### 7.3 公开资料

除非法律或任何政府机构有规定，任何一方不得在未经另一方事先批准之前，公开各方关系或参与项目的情况的资料或作出公布。

### 第八条 违约责任

### 8.1 一般约定

无论是由于作为或是不作为，任何一方没有履行或没有完全履行或没有适当履行本协议及/或相关交易文件项下的任何义务、陈述与保证或承诺，均构成违约事件。违约方应当承担守约方因此而遭受的经济损失。

9

## 8.2 甲方及目标公司违约责任

8.2.1 除本协议另有约定外，如果出现以下任一种或任几种情形，视为甲方和目标公司的重大违约，乙方及/或其关联方有权要求甲方及/或目标公司支付相当于届时乙方已支付款项总额 20%的款项作为违约金。

   (1) 甲方及/或目标公司拒绝按照本协议第 4.1 款约定向乙方完成交割；

   (2) 甲方及/或目标公司严重违反其在本协议第五条款项下交割后承诺事项，且经在乙方书面催告后 30 日内仍未纠正；

   (3) 由于甲方及/或目标公司的拒绝或故意拖延履行其在本协议项下的义务并且导致本次增资未能在本协议签署之日起 60 天内完成交割，但乙方同意延长的情形除外；

   (4) 除本协议已披露事项外，因本次增资交割日之前所存在的事实、情况、问题所引发的责任或后果而导致目标公司无法继续经营，导致乙方无法实现其进行本次增资的商业目的。

8.2.2 如甲方及/或目标公司发生上述第 8.2.1 款项下第(3)和/或(4)项所列重大违约，乙方有权选择单方解除本协议。在乙方选择解除本协议的情况下，甲方和目标公司应当在解除通知发出之日起 5 个工作日内，将乙方及/或其关联方依据本协议及/或其他相关交易文件已经支付的全部投资款及其他任何款项退还给乙方及/或其关联方，并有权要求甲方及/或关联方按照上述第 8.2.1 款约定支付相当于乙方已支付全部款项 20%的款项为违约金。

8.2.3 甲方和目标公司延迟履行本协议所约定的违约金支付义务以及退款义务的，每逾期一日，甲方和目标公司应按应支付或应退还款项的每日万分之二向乙方支付逾期利息。

8.2.4 如果乙方没有选择按照本第 8.2.2 条约定解除本协议的，且乙方愿意继续履行本协议，则甲方和目标公司应继续完成其在本协议项下的义务，并且，该等继续履行并不豁免甲方和目标公司应向乙方及/或其指定方承担的违约和赔偿责任。

## 8.3 乙方违约责任

本协议签署后，在支付条件全部满足的前提下，如乙方逾期支付投资款，则须按照每日万分之二标准，向甲方计付迟延支付的违约金。如果逾期超过 30 日仍未支付，从第 31 日起，按照每日万分之五标准，向甲方计付迟延支付的违约金。

## 第九条 附则

### 9.1 税、费

#### 9.1.1 税赋

因签署和履行本次增资而产生的相关税赋，按相关法律、法规之规定由各方依照相关法律规定各自承担。

#### 9.1.2 其他费用

在不影响任何以其它方式得到补救的情况下，各方应分别承担其就本协议或其作为一方当事人签订的交易文件的谈判、制备和执行以及在本协议和其作为一方当事人签订的交易文件项下就与本次增资事宜有关的或附带的所有交易产生的所有费用，这些费用包括甲方和乙方的代理、代表、法律顾问和会计师的所有开支和费用。

### 9.2 生效

本协议经各方签署后生效。

### 9.3 继续有效

如果本协议终止，本协议应无效并不再具有法律效力，但第七条至第九条的规定除外；除非各方另行同意，该终止不妨碍任何一方其在该终止之前对违反本协议享有的权利。

### 9.4 通知

9.4.1 本协议项下的任何通知或其它正式通讯件应以书面作出，并由给予方或其代表签字。该等通知应由专人递交或特快专递送至第 9.4.2 款所列的地址。在每种情况下均应标明第 9.4.2 款中所列的（或根据本协议不时另行通知的）有关收件人。以专人递交或邮寄等方式发出的通知应视为已于下列有效送达：

(a) 若为专人递交，于递送时；

(b) 若为特快专递递交，在付邮日的第三（3）个工作日上午 10 时；

除非比上述时间更早收到，并且若（如为专人递交）交付或发送发生在某工作日的下午 6 时后或者在非工作日，则应视为于下一个工作日上午 9 时送达。在本条中提及的时间，均指收件人所在国家或地区的当地时间。

9.4.2 为第 9.4.1 条款目的各方的地址是：

(1) 如甲方，则送至：

地址：北京市朝阳区姚家园路 105 号乐视大厦 16 层

收件人：赵凯

11

(2)  如乙方，则送至：

地  址：天津市南开区奥城商业广场 C7 写字楼十层

收件人：薛雯

9.4.3  为本 10.4.1 条之目的，一方可通知其他方变更其名称、收件人、地址，且在通知中明确变更的日期。

## 9.5 修改

9.5.1  对本协议（或本协议中提及的任何文件）的修改必须是书面的，且须经每一方或其代表签署后方为有效。"修改"一词应包括以任何方式发生的任何修改、补充、删除或取代。

9.5.2  除非经明确同意，否则任何修改均不应构成对本协议任何条款的普遍放弃，也不应影响截至修改日已经在本协议项下产生的或基于本协议的任何权利、义务或责任，且各方在本协议项下或基于本协议的权利和义务应保持充分有效，除非对这些权利和义务进行了修改，并仅在被修改的范围内受到影响。

## 9.6 弃权

除非本协议一方以书面方式放弃本协议任何条款，否则放弃该等条款不应视为有效行为。本协议任何一方没有或没有及时行使其在本协议项下的权利、权力和采取补救措施不能视为弃权，任何单独或部分的行使均不能排除其它的进一步行使，也不能排除其它任何权利、权力或补救措施的行使。在不限制上述规定的情况下，本协议任何一方对违约某一违约行为放弃违约的追究权利不能被视为该方放弃对违约方今后发生的违约行为的追究权利。

## 9.7 完整协议

本协议和交易文件共同列出了各方之间（并仅限于各方之间）有关收本次增资的完整协议和理解，并替代此前各方之间（并仅限于各方之间）就此的所有的书面和口头陈述、理解和协议。本协议代替此前甲方与乙方或其关联方签订的任何文件。各方理解，为办理工商变更手续签署的《乐视致新增资协议》及股权变更登记文件的任何条款及内容与本协议如有冲突的，应以本协议的约定为准。

## 9.8 可分割性

如果由于法律或司法解释的变更而使本协议的任何条款无效或被认为无效或不可执行，则所涉及条款将在其无效或不可执行的范围内被视为无任何效力并且不包括在本协议内。上述情形不应影响本协议其它条款的效力。各方应为其后尽所有合理努力，用尽可能达到该无效或不可执行的条款之预期效果的有效条款取代该无效或不可执行的条款。

### 9.9　适用法律与仲裁

#### 9.9.1 适用法律

本协议已按照中国的法律（不包括其冲突法条文）签署和交付。本协议应受中国的法律（不包括其冲突法条文）管辖，并按中国的法律（不包括其冲突法条文）解释。

#### 9.9.2 仲裁

因本协议产生或与之有关的所有争议、争论或分异，如不能由各方在争议最初发生时起三十（30）天内通过友好协商达成协议解决，则只应提交中国国际经济贸易仲裁委员会北京分会仲裁，由根据中国国际经济贸易仲裁委员会北京分会的仲裁规则作终局解决。仲裁应在北京进行。仲裁庭由三（3）名仲裁员组成。甲乙各方各指定一名仲裁员，第三名仲裁员由仲裁委指定并为首席仲裁员。仲裁做出的裁定和裁决应是终局的。

#### 9.9.3 文本

本协议以一式陆份签订，每方各持贰（2）份，各份具有同等法律效力。

（以下无正文）

（本页无正文，为《乐视致新电子科技（天津）有限公司增资协议》（合同编号：
JRHX-YT-ZX-17003）的签署页）

各方正式授权代表已于本协议首页书明日期签署本协议，以资证明。

甲方：贾跃亭：

签字：＿＿＿＿＿＿＿

乙方：天津嘉睿汇鑫企业管理有限公司

签署：＿＿＿＿＿＿＿

法定代表人：

日期：

目标公司：乐视致新电子科技（天津）有限公司

签署：＿＿＿＿＿＿＿

法定代表人：

日期：

## 附录1. 交易标的的基本信息

下表系基于截止 2017 年 1 月 5 日公司营业执照登记信息

| 项目 | 基本信息 |
|---|---|
| 公司名称 | 乐视致新电子科技（天津）有限公司 |
| 注册号/统一社会信用代码 | 91120116589764942R |
| 住所 | 天津生态城动漫中路 126 号动漫大厦 B1 区二层 201-427 |
| 法定代表人 | 贾跃亭 |
| 注册资本 | 26504.0001 万元 |
| 公司类型 | 有限责任公司 |
| 经营范围 | 信息技术服务；从事广告业务；硬盘播放器的生产和销售；电子产品、机电设备（小轿车除外）的技术开发和销售；货物及技术进出口业务；通讯器材、移动电话、手机设备、手机的研发、生产、销售及售后服务；从事互联网文化活动；网络游戏研发生产；网络游戏上网运营；利用互联网经营游戏产品（含网络游戏虚拟货币发行、虚拟货币交易）；机械设备、五金交电、建筑材料、电子产品、文化用品、照相器材、计算机软硬件及外围设备、化妆品及卫生用品、体育用品、纺织品、服装、日用品、家具、金银珠宝首饰、饲料、新鲜水果、蔬菜、工艺礼品、钟表眼镜、玩具、汽车摩托车配件、仪器仪表、陶瓷制品、橡胶及塑料制品、花卉、装饰材料、通讯设备的批发、零售、进口及佣金代理（拍卖除外）业务；零售（互联网上销售）预包装食品、散装食品（含水产品）、乳制品（含幼儿配方乳粉）；软件开发、软件设计；委托生产电子产品、照相器材、计算机软硬件及辅助设备；设备安装、维修（需行政许可项目除外）；提供劳务服务（不含中介）；组装计算机。（依法须经批准的项目，经相关部门批准后方可开展经营活动） |
| 营业期限 | 长期 |

附录2. 甲方及目标公司的陈述与保证

甲方及目标公司共同并分别向乙方作出如下陈述与保证：

## 1　主体资格、注册资本及股权结构

(1) 合法组织、良好存续及资质。目标公司是依据管辖地法律合法设立、组建、有效存续和资格完备的法人，具有充分的权利和权限拥有、经营其资产，以及经营其营业执照中所载营业范围相关业务。

(2) 股权结构及注册资本。**除另有披露外**，在本协议签署日及交割日，本协议及甲方作为一方当事人的其他相关交易文件（以下称为"**其它交易文件**"）所述的目标公司的股权结构、注册资本及其所有权事项是对其各自股权结构及其所有权状况的真实、完整和准确的描述。

## 2　交易授权及其合法性

(1) 甲方及目标公司签署和履行本协议不违反适用于甲方及目标公司的任何法律规定，不违反或不会导致甲方及目标公司违反其作为一方或对其或其财产有约束力的任何有效协议或合同的约定。甲方及目标公司就签署、递交和执行本协议和其它交易文件已取得相应融资方的书面同意（无论其作为借款人还是担保人），无须取得政府部门或任何其它主管部门的同意、批准、命令、授权。

(2) 甲方及目标公司对本协议和其他交易文件的签署和履行在目前和将来均不会违反任何目标公司的章程规定，不会与适用于目标公司的任何法律法规或其他规范性文件相冲突，也不会与目标公司已经签署的任何协议、安排相抵触或造成任何违约。

(3) 本协议及其它交易文件一旦签署后，将对甲方及目标公司具有合法的、有拘束力的效力。

## 3　遵守法律

(1) 遵守法律。目标公司开展的业务活动在各实质性方面均一直遵守所有可适用的法律规定。目标公司或其董事、管理人员或高级管理层人员在开展业务活动中，未实施任何可能违反法律规定或重大侵权的行为。目标公司其他股东从未实施可能对目标公司产生实质性不利影响的任何违法行为。以甲方和目标公司作为一方当事人的合同义务，或对甲方和目标公司有约束力的合同义务均为合法，且没有违反任何可适用的法律规定。目标公司目前所开展的各项业务均合法开展，其各项业务的合作方均为

合法有效并具备履行合作业务相关资质的合法主体。各项合作业务均未出现任何纠纷、争议或事故。

(2) 许可。目标公司保证向乙方提供目标公司已经取得的正在开展及计划开展的业务活动相关的所有许可、批准、授权、特许和执照，并保证前述许可、批准、授权、特许和执照的真实、合法，持续有效，不受任何交易文件所拟议的交易的影响。

(3) 政府部门。任何政府部门或其他人未启动任何诉讼或调查，以限制、禁止或以其它方式阻碍本协议项下交易，或直接或通过任何法律、法规禁止、实质性限制目标公司开展现有业务活动，或目标公司未作出或授权支付任何违反法律规定的赠与、支付、付款。

4    资产

目标公司合法拥有其所有的资产，**除另有披露外**，该等资产均不存在任何抵押、质押等权利负担、其他先取特权或与其任何主体的权益分成。

5    重大合同及交易

(1) 截至交割日，已经签署但尚未履行完毕的合同均不会给本次增资及乙方以及目标公司未来的运营造成任何违约、赔偿或不利影响。截至本协议签署日，目标公司未收到任何来自合同相对方以行动或通知表明，在交割日之后的任何时候将违约或终止合同。

(2) 合同履行。据合理预测，对于目标公司作为一方当事人或其受约束的任一重大合同，均不存在由于目标公司原因导致无法履行的情形。

(3) 控制权改变。与目标公司有关的所有合同均未约定若目标公司控制权或者目标公司董事会（或类似机构）的成员变更，或目标公司签署本协议，则合同将被终止，或使目标公司在该等合同项下的权利义务受到重大不利影响，或导致目标公司失去任何主要客户或供应商。

(4) 关联方交易。**除另有披露外**，目标公司同任何关联方之间不存在任何合同义务或交易，任何关联方未对目标公司负有债务，目标公司也不对任何关联方负有债务（或承诺提供贷款）；不存在任何因关联方原因而产生的对目标公司的资产和/或业务产生重大不利影响的情形。目标公司与关联方间的任何合同均是按照有利于目标公司的条件签署的。

(5) 资金拆借。**除已另有披露外**，目标公司同任何关联方之间不存在任何形式的资金拆借行为。目标公司向乙方做出保证，目标公司的现有股东及现有股东关联方向目标公司通过拆借等任何方式提供资金所形成的债

权，在根据本协议和其他交易文件约定应由甲方向乙方支付的罚息、资金闲置损失、违约金及赔偿金全额获得清偿前，均劣后于乙方的上述债权。

(6) 签订合同的授权。目标公司未向任何人提供代表其签订合同或承诺代表其从事某项行为的授权委托书、其它明示、默示或名义上的授权（无论该授权是否已经生效），但向其员工提供的该员工在正常履行职责时签署日常合同的授权除外。

(7) 排他性约定。截至本协议签署日及交割日，目标公司没有与任何第三方签署过任何针对目标公司的排他性合作承诺或约定。

## 6   财务事项

(1) 财务报表。在交割日之前，目标公司应当已经向乙方提交 2014 年、2015 年、2016 年度的财务报表。财务报表应当根据中国企业会计准则在所有重大方面公正地反映出目标公司在相应日期和期间的财务状况、经营成果及资金周转情况。目标公司保证在交割日之后向乙方提交年度财务报表，该等财务报表符合中国企业会计准则并且在规定的期间内持续适用上述会计准则。财务报表在所有重大方面公正地反映出目标公司在相应日期和期间的财务状况、经营成果及资金周转情况。财务报表包括经乙方认可的会计师事务所按中国企业会计准则编制的审计报告。

(2) 税款准备和计提。所有应当计提的税费已按照中国企业会计准则在财务报表中对予以全部准备或计提，包括会计结算日截止时或之前的会计期间内的递延税费或临时性税费，包括但不限于任何目标公司当时已经承担、或之后随时可能或已经有义务承担的税款。

(3) 特殊财务安排。除了财务报表的注解中另有规定外，目标公司不存在任何"资产负债表外"的安排。目标公司保证，目标公司与任何关联方之间所有的财务及收益安排、资金往来情况已经全部披露给乙方。

(4) 财务责任。**除另有披露外**，目标公司不存在其他债务和/或或有负债（包括但不限于目标公司对外担保情况），也不存在加速到期的借款（银行贷款及融资合同，或第三方违约行为除外）。

## 7   税费

(1) 目标公司已支付所有的到期税款或要求予以支付的税费、所有与这些税费相关的重大差额或其它附加税、利息和罚款，但不包括目标公司善意提出异议且已经按照中国企业会计准则提供充足准备金的税费；

(2) 目标公司已经及时提交或促使提交所有要求的用于纳税的重要收益（包括所有可适用的延期收益），且所有此类纳税收益内容准确、完整；

(3) 对于目标公司的所有此类纳税收益，(i)不存在任何针对目标公司提出的，或者据目标公司所知潜在的未经评估的税费差额，以及 (ii)任何纳税收益方面不存在进行中的审计，记录或将记录纳税收益的日期时不存在任何有效的延展期，不存在关于税费评估或支付时间延期方面的有效权利放弃或协议；

(4) 目标公司财务报表中所有关于税款负债项目的所有重要方面始终按照中国企业会计准则进行了记载，目标公司在交割日时或之前期间内所有与税费相关负债已经充分记载于财务报表。

## 8    运营

(1) 自本协议签署日起至本次交易交割日期间（"过渡期间"）未发生下列情形：

a) 目标公司合法、正常、通常开展的业务性质、范围或方式发生中断或改变，不能处于持续经营状态；

b) 与财务报表中披露的状况相比，目标公司的客户关系、资产或负债发生任何重大变化；

c) 除了正常业务活动或本协议中拟议的交易外，目标公司进行任何性质的资产收购、出售、转让或处置；

d) 为了提高目标公司的董事或高级管理人员的总年薪额，通过工资、奖金、奖励或其它方式，向其支付超过会计结算日时目标公司向其支付或分配的年收入额的资金或利益；

e) 发生任何交易或事件（无论单独发生、或与一项或多项交易、事件一起发生）使得目标公司的缴税责任增加或可能增加，但不包括目标公司在正常业务活动中从事交易时的实际收入、利润或销售额而产生的所得税、销售税或营业税；

f) 发生对目标公司使用的资产、目标公司状况或目标公司目前从事或拟从事的业务产生重大不利影响的、且未经保险承保的任何损害、毁坏或损失；

g) 目标公司放弃有价值的权利，或放弃全部或部分的重大债权；

h)   对约束目标公司的任何重大合同进行重大变更或修改；在正常业务
     经营之外订立任何重大合同，修订或调整任何重大合同的任何重要
     条款；

i)   目标公司公布或支付任何红利或进行其它分配；或者

j)   目标公司签订与本第 8 条(1)项中规定事项相关的任何协议或承诺。

(2)  过渡期间内如发生下列情形，应及时通报乙方，乙方有权就该等事项的
     合理性进行询问，甲方及目标公司应给出合理解释：

a)   除甲方及目标公司另有披露外，目标公司发生逾期应付款项超过
     1000 万元；

b)   超过 1000 万元人民币的资本项目支出或资金承诺；

c)   目标公司订立或签署年费用超过 1000 万元人民币的任何新的服务协
     议，并且目标公司在没有合同义务的情况下，在交割日之前对任何
     管理人员或高级管理人员的服务条款进行变更；

d)   目标公司的核心管理层人员或高级管理层人员辞职、可能辞职或终
     止雇佣关系，或者在非乐视系公司任职、或者从事或与其他方合作
     从事与目标公司相同或类似的业务。

## 9   索赔和诉讼程序

(1)  不存在诉讼或潜在诉讼。甲方、目标公司或其任何高级管理人员或董事
     （以其职权地位作为高级管理人员或董事）未涉及、等待任何可能影响
     其履行目标公司职务的诉讼、案件、程序、投诉、调查、询问、索赔、
     起诉、仲裁、行政诉讼或刑事诉讼的裁决（以下统称为"诉讼"），或者收
     到已经成为上述诉讼对象的通知，无论其在诉讼中作为原告、被告或其
     他当事人。据目标公司所知，不存在任何事实或情况，可能针对目标公
     司或其任何高级管理人员或董事（以其职权地位作为高级管理人员或董
     事）提起将产生重大不利影响（据合理预测）的诉讼或潜在诉讼。

(2)  具有偿付能力。不存在任何要求目标公司解散或清算的命令或决议。目
     标公司的任何资产上均不存在任何冻结、扣押或其他限制权力行使的行
     政措施或司法措施。目标公司未失去任何偿付能力或产生任何到期但不
     能清偿的债务。

10  劳动关系

(1) 员工福利方案。目标公司已经根据法律规定，为所有员工缴纳了全部的社会保险费。除了上述社会保险费外，目标公司未维持、支付任何员工福利方案，或就任何员工福利方案承担义务。

(2) 劳动关系。目标公司没有参与任何不符合现行法律要求的劳动关系，不存在针对目标公司的未决的，或据目标公司所知，潜在的劳动争议或仲裁，不存在任何拖欠员工强制性社会保险和福利的情形。据目标公司所知，不存在目标公司的高级管理人员或员工打算与目标公司终止劳动合同。目标公司未讨论或采取措施终止与高级管理人员、核心员工的劳动合同。

11  客户

截至交割日，目标公司未收到任何来自客户的通知，表明在交割日之后的任何时候将停止使用目标公司的服务，或实质性减少对该服务的使用；目标公司亦无任何理由认为上述情况有可能发生或本协议及其他交易文件所拟议的交易会导致上述情况的发生。

12  披露

目标公司在本协议下所作的陈述或保证，根据其所做出的情形而言，不含有任何对重要事实的不真实陈述或对任何必需的重要事实陈述的遗漏，从而使其在本协议中所作的陈述不具有误导性，并且上述所有说明已准确、完整且正确地表述本协议中所要求或准备阐述的信息。截至本协议签署日及交割日，不存在与本协议项下交易相关的没有向乙方书面披露但可能导致重大不利影响的任何事实或情况。

附录3. 乙方陈述与保证

### 1 主体资格

乙方是根据注册地法律注册、合法成立并有效存续的公司，具有充分的权力和权限拥有、经营其资产，以及运营其营业执照中所载营业范围相关业务。

### 2 交易授权及其合法性

(a) 授权。乙方有权签署、递交和执行本协议和其作为一方当事人的其他相关交易文件（以下称为"**其它交易文件**"），且在签署、递交及履行本协议及其它交易文件时，或者根据本协议和其它交易文件的规定完成交易时，除本协议已经约定的批准、审批事项外，无须取得政府部门或任何其他主管部门的同意、批准、命令、授权，或被要求注册、资格审查、指派、申报。

(b) 有约束力。本协议及其它交易文件一旦签署后，将对乙方具有合法的、有拘束力的效力。

### 3 协议履行

乙方拥有合法和足够的资金按照本协议的规定履行其付款义务且有能力履行其在本协议项下的其他义务。





附录4. 乐视竞争者名单

## 乐视竞争者名单

| | |
|---|---|
| 三星 | 百度 |
| LG | 爱奇艺 |
| 索尼 | 阿里巴巴 |
| 松下 | 优酷土豆 |
| 清华同方 | 搜狐 |
| 创维 | 网易 |
| 海信 | 中影集团 |
| 长虹 | 上影集团 |
| 康佳 | 华谊兄弟传媒集团 |
| 小米 | POLYBONA |
| 暴风 | 光线传媒 |
| 微鲸电视 | BONA |
| PPTV | 华夏电影 |
| 苹果 | 万达 |
| 腾讯 | |

合同编号： **JRHX-YT-ZX-17003**
Contract No.: **JRHX-YT-ZX-17003**

乐视致新电子科技（天津）有限公司

及

贾跃亭

与

天津嘉睿汇鑫企业管理有限公司

关于

乐视致新电子科技（天津）有限公司

之

# 增资协议

Capital Increase Agreement

of

LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd.

between

LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd.

Jia Yueting

and

Tianjin Jiarui Huixin Enterprise Management Co., Ltd.

2017 年 1 月 13 日
January 13, 2017

乐视致新电子科技（天津）有限公司
增资协议
**Capital Increase Agreement**
**of LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd.**

本《乐视致新电子科技（天津）有限公司增资协议》由以下各方于 2017 年 1 月
13 日在中国北京签订：

The *Capital Increase Agreement of LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd.* was signed by and between the following parties on January 13, 2017 in Beijing, China:

甲方：贾跃亭（作为创始人及实际控制人）
联系地址：北京市朝阳区姚家园路 105 号乐视大厦 16 层
身份证号码：14262319731215081X
**Party A: Jia Yueting (the Founder and Actual Controller)**
Contact Address: F16, LeTV Building, No.105 Yaojiayuan Road, Chaoyang District, Beijing
ID Card No.: 14262319731215081X

乙方：天津嘉睿汇鑫企业管理有限公司
注册地址：天津市滨海新区大港经济开发区万象路 168 号科技孵化器 B 区房屋
510 间
法定代表人：汪孟德
**Party B: Tianjin Jiarui Huixin Enterprise Management Co., Ltd.**
Registered Address: Room 510, Zone B, Technology Incubator, No.168 Wanxiang Road, Dagang Economic Development Zone, Binhai New Area, Tianjin
Legal Representative: Wang Mengde

目标公司：乐视致新电子科技（天津）有限公司（"乐视致新"）
注册地址：天津生态城动漫中路 126 号动漫大厦 B1 区二层 201-427
法定代表人：贾跃亭
**Target Company: LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd. ("LeTV Zhixin")**
Registered Address: Room 201-427, F2, Zone B1, Animation Building, No.126 Dongman Middle Road, Tianjin Eco-City
Legal Representative: Jia Yueting

**1.1 定义**

**1.1 Definition**

上市公司在本协议中，除非上下文另有规定，以下术语在本协议中具有下列含义：

In this Agreement, unless the context otherwise requires, the following terms shall have the following meanings:

| | |
|---|---|
| 本协议 | 指各方签署的本《乐视致新电子科技（天津）有限公司增资协议》及其附录、附件、修订和补充。 |
| This Agreement | refers to the Capital Increase Agreement of LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd. signed by parties and its appendices, annexes, amendments and supplements. |
| 各方/一方 | 各方指本协议的签订方，以及他们各自的继任者、受让人和授权代表。一方指各方其中的任何一方。 |
| Parties/One Party | Parties refer to the signatories of this Agreement and their respective successors, assignees and authorized representatives. One Party refers to either party of them. |
| 甲方/创始人 | 指贾跃亭先生，其为目标公司及其他乐视系公司的创始人及实际控制人。 |
| Party A/Founder | refers to Mr. Jia Yueting, the founder and actual controller of the Target Company and other LeTV Companies. |
| 乙方 | 指天津嘉睿汇鑫企业管理有限公司或其指定方。 |
| Party B | refers to Tianjin Jiarui Huixin Enterprise Management Co., Ltd. or its designated party. |
| 乐视致新/目标公司 | 指乐视致新电子科技（天津）有限公司。 |
| LeTV Zhixin/Target Company | refers to LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd. |
| 上市公司 | 指乐视网信息技术（北京）股份有限公司，为一家依据中国法律成立并有效存续的上市公司（股票名称：乐视 网，股票代码：300104）；贾跃亭为上市公司的创始人及实际控制人。 |
| Listed Company | refers to LeTV Network Information Technology (Beijing) Co., Ltd., a Listed Company established and validly existing under the laws of China (Stock Name: LeTV Network, Stock Code: 300104); Jia Yueting is the founder and actual controller of the Listed Company. |
| 新增股权 | 具有本协议第 2.1 款所约定的含义。 |
| New Equity | has the meaning given in Article 2.1 of this Agreement. |
| 公司章程 | 指本次增资完成时修订的《乐视致新电子科技（天津） 有限公司章程》。 |
| Articles of Association | refers to the Articles of Association of LeTV Zhixin Electronic Technology (Tianjin) Co., Ltd., which will be revised upon completion of the capital increase. |
| 附带权益 | 指新增注册资本对应的目标公司股权所附带及/或对应的全部股东权利和权益。 |
| Attached Interests | refer to all the shareholder's rights and interests attached to and/or corresponding to the equity of the Target Company corresponding to the new registered capital. |
| 乐视系公司 | 指创始人直接控制或者间接控制的乐视生态体系内公司的统称，根据 |

|  | 上下文具体情况也可指称其中的任何一个, 为免疑义, 乐视系公司不包含上市公司及其合并范围内的子公司。 |
| LeTV Companies | refer to the collective name of companies within the LeTV ecosystem that are directly or indirectly controlled by the founder, or any one of such companies depending on the context and specific circumstances. For the avoidance of doubt, LeTV Companies do not include the Listed Company and its consolidated subsidiaries. |
| 本次增资 | 具有本协议鉴于条款第 (3) 项所约定的含义。 |
| This Capital Increase | has the meaning given in clause (3) under the Whereas section. |
| 投资款 | 指乙方或其指定方根据本协议第 2.1 款需向目标公司支付的交易对价。 |
| Investment | refers to the transaction consideration that Party B or its designated party is required to pay to the Target Company according to Article 2.1 of this Agreement. |
| 交割日 | 指按照本协议第 4.1.1 款约定的办理完毕本次增资工商 变更登记手续的日期和时间, 以工商行政主管机关登记的股权过户登记日为准。 |
| Closing Date | refers to the date and time when the changes of registration of capital increase with relevant Administration for Industry and Commerce as agreed in Article 4.1.1 of this Agreement is completed, which shall be subject to the registration date of equity transfer registered by relevant Administration for Industry and Commerce. |
| 中国 | 指中华人民共和国, 就本协议目的而言, 不包括香港特别行政区和澳门特别行政区以及台湾省。 |
| China | refers to the People's Republic of China, excluding Hong Kong Special Administrative Region, Macao Special Administrative Region and Taiwan Province for the purposes of this Agreement. |
| 香港 | 指中华人民共和国香港特别行政区。 |
| Hong Kong | refers to the Hong Kong Special Administrative Region of the People's Republic of China. |
| 香港联交所 | 指香港联合交易所有限公司。 |
| Hong Kong Stock Exchange | refers to the Stock Exchange of Hong Kong Limited. |
| 权益负担 | 指任何性质的权利主张、任何担保权益、第三方权利, 包括但不限于任何抵押、按揭、质押、留置、保证、担保转让、所有权保留、优先购买权、优先拒绝权或其它任何性质的担保权益。 |
| Encumbrance of Interest | refers to claims, security interests and third party rights of any nature, including but not limited to any charge, mortgage, pledge, lien, guarantee, guaranteed transfer, retention of title, preemptive right, right of first refusal or other security interests of any nature. |
| 工作日 | 指商业银行通常均营业且办理常规业务的营业日(不包括星期六、星期日和全体公民放假的节日)。 |
| Working Day | refers to the business days on which commercial banks normally operate and conduct regular business (excluding Saturdays, Sundays and public holidays). |
| 政府机构 | 指有管辖权的任何政府或政府机构,任何政府或政府机构的任何部门、 |

事务处或机构，任何法院或仲裁庭，任何证券交易所的监管机构。

Government Authority    refers to any government or political subdivision thereof; any department, agency or instrumentality of any government or political subdivision thereof; any court or arbitral tribunal; and the governing body of any securities exchange, in each case, having competent jurisdiction.

关联方    指一方控制、共同控制另一方或对另一方施加重大影响，以及两方或两方以上同受一方控制、共同控制或重大影响的，构成关联方。为本定义之目的，重大影响，是指对一个企业的财务和经营政策有参与决策的权力，但并不能够控制或者与其他方一起共同控制这些政策的制定。

Related Parties    If a party has the power to, directly or indirectly, control, jointly control or exercise significant influence over another party, or if two or more parties are subject to control, joint control or significant influence from a same party, the related party relationships are constituted. For the purpose of this definition, significant influence refers to the power to participate in the formulation of financial and operating policies of an enterprise, but not the power to control or jointly control the formulation of these policies with other parties.

控制（包括控制、被控制和受共同控制）    指直接或间接地拥有领导决定一个实体的管理、财务和经营政策的权力或实现这种领导的权力，无论通过拥有具有投票权的证券、合同还是其他方式。

Control (including control, controlled and jointly controlled)    refers to having the direct or indirect power to lead or decide the administrative, financial and operating policies of an entity or the power to realize such leadership, whether by owning securities having voting rights, contracts or any other means.

人    指任何自然人、组织、公司、政府部门、合资公司、合伙组织、联合体或其它主体（无论是否具有独立法人地位）。

Person    refers to any natural person, organization, company, government authority, joint venture, partnership, association or other entity (whether or not incorporated).

人民币    指中国的法定货币。本次交易以人民币作为计价单位。

RMB    refers to the official currency of China. This transaction uses RMB as the settlement currency.

重大不利（影响或变化）    指任何可能或被合理的认为将会阻碍任何方实质性实现完成本次交易或履行其在本协议下义务的变化或影响。

Significant Adverse (Impact or Change)    refers to any change or impact that may prevent or is reasonably believed to prevent any party from substantially completing this transaction or fulfilling its obligations under this Agreement.

知识产权    指（a）专利、商标、服务标志、标识、式样、商号、设计及发明权、版权、著作权(包括对象和源代码的计算机软件著作权)和精神权利、数据权、数据库权利、半导体图形权利、实用新型、专有技术权、商业机密权利、专属性信息和其他专属性资料和专有知识产权权利，无论是已注册或未注册的，无论是注册的申请还是提出申请注册的权利，（b）所有在本协议签署之日或在将来在世界任何地方可能存在的，

与前述（a）项约定的内容具有相当或类似效果或性质的权利或保护
形式，以及（c）对上述任何权利在过去、现在或将来的侵权进行起
诉的权利。

| | |
|---|---|
| Intellectual Property | refers to (a) patents, trademarks, service marks, logos, patterns, trade names, design and invention rights, copyright (including computer software copyright of objects and source codes) and moral rights, data rights, database rights, semiconductor mask rights, utility models, proprietary technology rights, trade secrets rights, proprietary information and other proprietary data and proprietary intellectual property rights, whether it is registered or unregistered, or whether it is an application for registration or the right to apply for registration, (b) all rights or forms of protection that may exist at the date of signing this Agreement or in future anywhere in the world and have equivalent or similar effects or properties to those listed in (a) above, and (c) the right to sue for past, present or future infringement of any of the above rights. |
| 适用法律 | 指任何具有约束力的适用法律、法规、规则、规定、通知、解释、任何政府机关或立法机关的命令或决定，或任何司法机关的判定、决定或解释。本协议及本协议所有补充文件均适用中华人民共和国现行有效的法律法规。 |
| Applicable Law | refers to any binding applicable laws, statutes, rules, regulations, circulars, interpretations, any orders or decisions of government authority or legislature, or any rulings, decisions or explanations of judicial authority. This Agreement and all of its supplementary documents shall be governed by the then current laws and regulations of the People's Republic of China. |
| 生效日 | 指本协议签署日。 |
| Effective Date | refers to the signing date of this Agreement. |

## 第二条 本次增资及先决条件
## Article 2 Capital Increase and Prerequisites

### 2.1 认缴出资
### 2.1 Subscribed Capital Contribution

2.1.1 乙方同意按照本协议约定的条款和条件，以现金方式合计出资人民币叁拾亿元（3,000,000,000）("投资款")认缴目标公司本次增资中的全部新增注册资本(31,245,271 元，占本次增资完成后全部注册资本出资额的 10%) 及该等出资所对应的股权及附属于该等股权所对应的全部附带权益（"新增股权"），其中 31,245,271 元人民币计入目标公司的注册资本，剩余溢价款计 2,968,754,729 人民币计入目标公司的资本公积金；本次增资完成后，目标公司的注册资本总额为 312,452,712 元人民币，其中，乐视网持有目标公司 40.3118%的股权，乙方及/或其关联方合计持有目标公司 33.4959%的股权，其他股东合计持有目标公司 26.1923%的股权。

2.1.1 Party B agrees to contribute a total of three billion yuan (RMB 3,000,000,000) (the Investment) in cash to subscribe for all the new registered capital (RMB 31,245,271, accounting for 10% of the total registered capital contribution after the completion of this capital increase) of the Target

Company as well as the equity corresponding to these capital contributions and all interests attached to such equity (the New Equity) according to the terms and conditions agreed herein, of which RMB 31,245,271 is included in the registered capital of the Target Company and the remaining premium amounting to RMB 2,968,754,729 is included in the capital reserve of the Target Company; After the completion of this capital increase, the total registered capital of the Target Company is RMB 312,452,712, of which LeTV Network holds 40.3118% of equity of the Target Company, Party B and/or its related parties hold 33.4959%, and other shareholders hold 26.1923%.

2.1.2 为完成上述增资，如有必要，目标公司及其他相关方应与乙方或其指定方，按照本协议附件 1 所列格式和内容签署《乐视致新增资协议》(工商版本)，并按照目标公司注册地相关法律规定及相关政府机构的要求签署为完成本次增资所需签署的全部相关文件和决议，并将该等文件签署本原件经各方共同封存后交付给乙方保管。前述《乐视致新增资协议》(工商版本)及相关文件的任何条款及内容与本协议如有冲突的，应以本协议的约定为准。

2.1.2 In order to complete the above-mentioned capital increase, if necessary, the Target Company and other related parties shall sign the LeTV Zhixin Capital Increase Agreement (for submission to relevant Administration for Industry and Commerce) with Party B or its designated party in accordance with the format and contents listed in Annex 1 to this Agreement, and sign all relevant documents and resolutions which are required to complete this capital increase in accordance with relevant laws and regulations of the place where the Target Company is registered and the requirements of relevant government authorities, and deliver the original signed documents to Party B for safekeeping after being sealed by all parties. In case of any conflict between the aforesaid LeTV Zhixin Capital Increase Agreement (for submission to relevant Administration for Industry and Commerce) and this Agreement, the provisions of this Agreement shall prevail.

**2.2 本次增资的先决条件**

**2.2 Prerequisites for Capital Increase**

乙方或其指定方进行本次增资应以如下先决条件均已满足且持续有效为前提(乙方有权单独豁免前述全部或部分先决条件)：乙方的实际控制人已经就本次增资按照香港联交所《上市规则》获得了必要的批准（如适用）。

Party B or its designated party shall carry out this capital increase on the premise that the following prerequisites have been met and remain valid (Party B has the right to exempt from all or part of such prerequisites): Party B's actual controller has obtained necessary approval (if applicable) for this capital increase in accordance with the Listing Rules of the Hong Kong Stock Exchange.

<h3 style="text-align:center">第三条 实缴出资安排</h3>

<h3 style="text-align:center">Article 3 Paid-up Capital Contribution</h3>

**3.1 付款条件**

**3.1 Conditions of Payment**

乙方或其指定方履行本协议第 2.1 款项下的投资款支付义务应以如下付款条件均已满足且持续有效为前提（乙方或其指定方有权豁免前述全部或部分支付条件）：

Party B or its designated party's performance of payment obligation for investment under the paragraph 2.1 shall be based on the premise that the following conditions of payment have been met and remain valid (Party B or its designated party has the right to exempt from all or part of the following conditions of payment):

3.1.1 本次增资所需全套交易文件（包括本协议及附录、附件所列各执行文件）已经各方及

相关方或其授权代表依法签署且有效；

3.1.1 The complete set of transaction documents required for this capital increase (including this Agreement, appendices, annexes and relevant implementation documents listed therein) have been duly signed and executed by parties and related parties or their authorized representatives;

3.1.2 目标公司已完成本次增资所必须的所有内部审批程序，包括但不限于全体股东已适当签署的批准本次增资并同意签署和履行全部交易文件的股东会决议和董事会决议，目标公司的其他有权股东就本次增资书面明确放弃优先认缴出资权（如果股东会决议已明确包含前述同意放弃优先认缴出资内容，在该股东会决议上签字同意的股东不需要单独书面确认）；

3.1.2 The Target Company has completed all internal approval procedures necessary for this capital increase, including but not limited to resolution of shareholders and resolution of directors that are duly signed by all shareholders, approve this capital increase and agree to sign and execute all transaction documents, and consents from other shareholders of the Target Company that expressly waives their preemptive rights in writing regarding this capital increase (in case that the resolution of shareholders has explicitly included the aforementioned consent to waive the preemptive rights, shareholders who sign and agree to such resolution do not need to provide their separate written constent);

3.1.3 目标公司已完成与本次增资相关的所有工商变更登记手续，包括但不限于将新增股权登记在乙方名下，并完成公司章程修改；

3.1.3 The Target Company has completed all changes of registration with relevant Administration for Industry and Commerce related to this capital increase, including but not limited to registering the new equity under the name of Party B and completing the amendment of the company's articles of association;

3.1.4 截至付款日，乙方已经完成对目标公司及相关方的法律、财务及业务方面的尽职调查，且调查结果与目标公司披露的信息没有重大差异；

3.1.4 As of the payment date, Party B has completed due diligence on the legal, financial and business risks of the Target Company and related parties, and the due diligence findings are not significantly different from the information disclosed by the Target Company;

3.1.5 陈述与保证。截至付款日，甲方及目标公司在本协议及附件项下的陈述与保证均在实质方面保持真实、准确和完整；

3.1.5 Representations and Warranties. As of the date of payment, Party A and Target Company's representations and warranties under this Agreement and its appendices are true, accurate and complete in all material aspects;

3.1.6 无重大不利变化。截至付款日，不存在、未发生可能对本次增资所涉标的或者本协议履行造成任何重大不利影响的事件、情况、变化等；

3.1.6 No Material Adverse Changes. As of the date of payment, there were or are no events, circumstances or changes that may have any significant adverse impact on the capital increase or the performance of this Agreement.

3.1.7 无重大裁决。截至付款日，没有任何法院判决、政府部门裁决或者法律规定（a）阻止或限制任何本协议项下的交易；（b）阻止或限制任何本协议项下的交易的完成；（c）根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责任；或（d）限制乙方的经营从而构成重大不利变化；

3.1.7 No Significant Ruling. As of the date of payment, there are no court ruling, government decisions or legal provisions that may (a) prevent or restrict any transaction under this Agreement; (b) prevent or restrict the completion of any transaction under this Agreement; (c) impose severe

punishment or legal liability on Party B due to its completion of any transaction under this Agreement; or (d) restrict the operation of Party B, thus constituting a significant adverse change;

3.1.8 无重大诉讼。不存在任何诉讼、仲裁、行政程序，且没有任何法院判决、政府部门裁决或者法律规定（a）阻止或限制任何本协议项下的交易，或影响交易的完成，或对交易产生重大不利影响；（b）根据法律规定，任何本协议项下的交易的完成会使乙方遭受重大惩罚或承担法律责任；或（c）限制乙方或目标公司的经营从而构成重大不利变化。

3.1.8 No Significant Litigation. There are no litigation, arbitration or administrative procedures, court ruling, government decisions or legal provisions that may (a) prevent or restrict any transaction under this Agreement, affect the completion of such transaction, or have a significant adverse impact on such transaction; (b) impose severe punishment or legal liability on Party B due to its completion of any transaction under this Agreement; or (c) restrict the operation of Party B or the Target Company, thus constituting a significant adverse change.

### 3.2 实缴出资

### 3.2 Paid-up Capital Contribution

3.2.1 在本协议第 3.1 款项下的付款条件全部得到满足并持续有效的前提下，乙方应在 2017 年 6 月 15 日前分期足额缴付本次交易全部投资款。

3.2.1 On the premise that all conditions of payment under Article 3.1 of this Agreement have been met and remain valid, Party B shall fully pay all investment of this transaction in installments before June 15, 2017.

3.2.2 乙方缴付出资后，目标公司应向乙方签发出资证明书，载明乙方当期及累计实缴出资金额、出资比例，并将前述信息记载于目标公司的股东名册。目标司的股东名册应记载股东的名称、认缴出资额、 实缴出资额、出资比例、所持股权是否设置质押等担保权益。该股东名册经各股东签字并加盖公司印章后由目标公司保存，并向乙方或其指定方提供一份副本。

3.2.2 After Party B pays its capital contribution, the Target Company shall issue a capital contribution certificate to Party B, stating the amount and proportion of the current and accumulated capital contribution paid by Party B, and recording the aforesaid information in the shareholder register of the Target Company. The shareholder register of the Target Company shall record the shareholder name, subscribed capital contribution, paid-up capital contribution, proportion of capital contribution, whether the equity held is pledged, etc. The shareholder register shall be kept by the Target Company after being signed and sealed by all shareholders, and a copy shall be provided to Party B or its designated party.

## 第五条 交割后承诺事项

## Article 5 Post-closing Commitments

### 5.1 目标公司整体注入上市公司

### 5.1 Injection of the Target Company into the Listed Company as a Whole

目标公司承诺（并促成目相关方）在 2019 年 12 月 31 日前，完成将乐视致新中非上市公司持有的股权重组进入上市公司而向中国证监会的申报，并于 2020 年 9 月 30 日或各方另行协商书面确定的其他日期前完成将乐视致新中非上市公司持有的股权重组进入上市公司（但如向中国证监会或相关监管 机构原因导致的延迟除外）。

The Target Company undertakes (and procures its related parties) to complete the submission to China Securities Regulatory Commission on injection of equity of LeTV Zhixin not held by the Listed Company into the Listed Company before December 31, 2019, and to complete such

injection by or on September 30, 2020 or other date as determined by the parties through separate written negotiation (except for the delay caused by China Securities Regulatory Commission or relevant regulatory authorities).

### 5.2 返还拆借资金

### 5.2 Repayment of Borrowed Funds

目标公司承诺,在本次增资完成后三个月内,其他乐视系公司从目标公司拆借的资金(如有)应当全部返还目标公司。

The Target Company undertakes to, within three (3) months after the completion of the capital increase, fully collect the funds (if any) borrowed by other LeTV Companies from the Target Company.

### 5.3 优先购买权豁免

### 5.3 Waive of Right of First Refusal

目标公司承诺(且应促成其他相关方同意),如果乙方或其实际控制人未来为进行内部重组或关联方架构调整之目的拟将所持目标公司股权部分或全部转让给乙方或其实际控制人指定的其他方(但乐视竞争者及其关联方除 外)("乐视竞争者"名单见附录 5),目标公司的其他股东同意放弃优先购买权,并对前述转让给予积极配合。

The Target Company undertakes (and shall procure other related parties to agree) that, if for the purpose of internal restructuring or reorganization of related parties in the future, Party B or its actual controller intends to transfer in full or in part the equity of the Target Company held by them to another party specified by Party B or its actual controller (except for LeTV's competitors and their related parties) (refer to Appendix 5 for the list of "LeTV's Competitors"), the other shareholders of the Target Company will agree to waive their rights of first refusal and actively cooperate with the aforesaid transfer.

### 5.4 战略合作条款

### 5.4 Strategic Cooperation Clause

5.4.1 甲乙方各方承诺将充分利用各自的资源,在包括不限于智能硬件、互联网、房地产、智能家居、智能社区等领域开展全方位合作,以进一步巩固各方在各自行业内的领先地位。各方将开展深度合作,整合各方及下属机构的优质资源,从而促进各方共同、稳定的业务增长,实现各方共赢。

5.4.1 Party A and Party B hereby undertake to make full use of their respective resources to conduct all-round cooperation in areas including, but not limited to, smart hardware, Internet, real estate, smart home, and smart community, etc., to further strengthen their leading position in their respective industries. Both parties shall carry out in-depth cooperation and integrate high-quality resources of both parties and their subsidiaries to promote mutual and stable business growth and achieve mutual benefits.

5.4.2 甲乙方各方特别确认,除各方协商一致外,乙方将作为甲方及/或其所控制的乐视系公司在房地产业务领域的唯一合作方。由甲方及其关联方发挥其产业优势,各方在产业地产(包括但不限于影视产业、 汽车产业、体育产业、互联网生态等方面)深度合作,发挥各自优势、实现共赢。

5.4.2 Party A and Party B hereby specifically acknowledge that, unless otherwise agreed by both parties, Party B will be the exclusive and sole partner of Party A and/or any member of LeTV Companies controlled by Party A in terms of real estate businesses. By utilizing industrial advantages of Party A and its related parties, both parties shall cooperate deeply in industrial real estate (including, but not limited to, film and television industry, automobile industry, sports industry,

Internet ecology, etc.) to give full play to their respective advantages and achieve mutual benefits.

第六条 陈述与保证

**Article 6 Representations and Warranties**

**6.1 甲方及目标公司的陈述与保证**

**6.1 Representations and Warranties of Party A and the Target Company**

6.1.1 甲方及目标公司向乙方做出附录 2 中的所有陈述与保证。该等陈述与保证在本协议签署之日及交割日（除非某项陈述与保证明确表明仅与某个特定日相关）均在实质方面保持真实、准确和完整。甲方理解，乙方是依赖甲方和目标公司的陈述与保证而进行本次增资的。

6.1.1 Party A and the Target Company shall make all the representations and warranties in Appendix 2 to Party B. Such representations and warranties shall be maintained true, accurate and complete in any material respect on the date of this Agreement and the closing date (unless some representations and warranties are clearly expressed to be only related to a specific date). Party A understands that, Party B conducts this Capital Increase by relying on the representations and warranties of Party A and the Target Company.

6.1.2 若甲方和目标公司在本协议项下所作的任何陈述与保证在实质方面不真实、不准确或不完整且未能在乙方发出书面催告通知后 30 天内予以纠正或有效补救，并因此导致乙方遭受任何损害、损失、支出或其他不利情况，则乙方有权要求甲方或目标公司承担连带赔偿责任。并且，本款所约定的赔偿不影响乙方依据本协议其他条款而应享有的任何其他权利和救济。

6.1.2 If any representations and warranties made by Party A and/or the Target Company hereunder are untrue, inaccurate or incomplete in any material respect, and are not corrected or effectively remedied within thirty (30) days after Party B has given a written notice, and as a result, Party B suffers from any damages, losses, expenditures or other adverse circumstances, Party B shall have the right to require Party A or the Target Company to bear joint and several liability. In addition, the compensation stipulated in this clause shall not affect any other rights and remedies that Party B shall have in accordance with the other clauses hereof.

**6.2 乙方的陈述与保证**

**6.2 Representations and Warranties of Party B**

6.2.1 乙方向甲方做出附录 3 中的所有陈述与保证。该等陈述与保证在本协议签署之日及交割日（除非某项陈述与保证明确表明仅与某个特定日相关）均在实质方面保持真实、准确和完整。乙方理解，甲方是依赖乙方的陈述与保证而进行本次增资的。

6.2.1 Party B shall make all the representations and warranties in Appendix 3 to Party A. Such representations and warranties shall be maintained true, accurate and complete in any material respect on the date of this Agreement and the closing date (unless some representations and warranties are clearly expressed to be only related to a specific date). Party B understands that Party A conducts this Capital Increase by relying on the representations and warranties of Party B.

6.2.2 若乙方在本协议项下所作的任何陈述与保证在实质方面不真实、不准确或不完整且未能在甲方发出书面催告通知后 30 天内予以纠正或有效补救，并因此导致甲方遭受任何损害、损失、支出或其他不利情况，则甲方有权要求乙方和受让方承担连带赔偿责任。并且，本款所约定的赔偿不影响甲方依据本协议其他条款而应享有的任何其他权利和救济。

6.2.2 If any representations and warranties made by Party B hereunder are untrue, inaccurate or

incomplete in any material respect, and are not corrected or effectively remedied within thirty (30) days after Party A has given a written notice, and as a result, Party A suffers from any damages, losses, expenditures or other adverse circumstances, Party A shall have the right to require Party B and the transferee to assume joint and several liability. In addition, the compensation stipulated in this clause shall not affect any other rights and remedies that Party A shall have in accordance with the other clauses hereof.

## 第八条 违约责任
## Article 8 Liability for Breach of Contract

### 8.1 一般约定
### 8.1 General Provision

无论是由于作为或是不作为，任何一方没有履行或没有完全履行或没有适当履行本协议及/或相关交易文件项下的任何义务、陈述与保证或承诺，均构成违约事件。违约方应当承担守约方因此而遭受的经济损失。

No matter whether as a result of act or omission, either party's failure to perform, fully perform or properly perform any of its obligations, representations, warranties or undertakings under this Agreement and/or related transaction documents shall constitute an event of default. The breaching party shall assume the economic losses suffered by the non-breaching party as a result of such default.

### 8.2 甲方及目标公司违约责任
### 8.2 Party A and the Target Company's Liability for Breach of Contract

8.2.1 除本协议另有约定外，如果出现以下任一种或任几种情形，视为甲方和目标公司的重大违约，乙方及/或其关联方有权要求甲方及/或目标公司支付相当于届时乙方已支付款项总额 20% 的款项作为违约金。

8.2.1 Unless otherwise specified herein, Party B and/or its related parties shall have the right to require Party A and/or the Target Company to pay 20% of the total amount already paid by Party B as liquidated damages under any one or several of the following circumstances, which shall be deemed as material breach of contract by Party A and the Target Company.

(1) 甲方及/或目标公司拒绝按照本协议第 4.1 款约定向乙方完成交割；

(1) Party A and/or the Target Company refuse to complete the closing with Party B in accordance with the provisions of Article 4.1 hereof;

(2) 甲方及/或目标公司严重违反其在本协议第五条款项下交割后承诺事项，且经在乙方书面催告后 30 日内仍未纠正；

(2) Party A and/or the Target Company materially violate their post-closing commitments under Article 5 hereof, and refuse to make corrections within thirty (30) days after Party B's written notice;

(3) 由于甲方及/或目标公司的拒绝或故意拖延履行其在本协议项下的义务并且导致本次增资未能在本协议签署之日起 60 天内完成交割，但乙方同意延长的情形除外；

(3) Party A and/or the Target Company refuse to perform or deliberately delay the performance of their obligations hereunder, and as a result, this Capital Increase is not closed within sixty (60) days after the signing of this Agreement, except for the circumstances where Party B agrees to extend the closing period;

(4) 除本协议已披露事项外，因本次增资交割日之前所存在的事实、情况、问题所引发的责任或后果而导致目标公司无法继续经营，导致乙方无法实现其进行本次增资的商业目的。

(4) Except for the matters disclosed herein, any responsibilities or consequences arising from facts,

situations or problems existing before the closing date of this Capital Increase lead to the inability
of the Target Company to continue its operation, thus causing Party B to fail to realize its commercial
purposes in this Capital Increase.

8.2.2 如甲方及/或目标公司发生上述第 8.2.1 款项下第(3)和/或(4)项所列重大违约，乙方有权
选择单方解除本协议。在乙方选择解除本协议的情况下，甲方和目标公司应当在解除通知发
出之日起 5 个工作日内，将乙方及/或其关联方依据本协议及/或其他相关交易文件已经支付
的全部投资款及其他任何款项退还给乙方及/或其关联方，并有权要求甲方及/或关联方按照
上述第 8.2.1 款约定支付相当于乙方已支付全部款项 20%的款项作为违约金。

8.2.2 In the event of any material breach of contract specified in item (3) and/or (4) under the
aforesaid Article 8.2.1 by Party A and/or the Target Company, Party B shall have the right to
unilaterally terminate this Agreement. If Party B chooses to terminate this Agreement, Party A and
the Target Company shall return all the investment funds and any other amounts already paid by
Party B and/or its related parties in accordance with this Agreement and/or other relevant transaction
documents to Party B and/or its related parties within five (5) working days from the date of the
Termination Notice, and Party B shall have the right to require Party A and/or its related parties to
pay 20% of the total amount already paid by Party B as liquidated damages in accordance with the
aforesaid provisions of Article 8.2.1.

8.2.3 甲方和目标公司延迟履行本协议所约定的违约金支付义务以及退款义务的，每逾期一
日，甲方和目标公司应按应支付或应退还款项的每日万分之二向乙方支付逾期利息。

8.2.3 If Party A and/or its related parties delay the performance of the liquidated damages payment
obligation and refund obligation stipulated herein, Party A shall pay Party B the overdue interest
with a daily interest rate of 0.02% on the basis of amount payable or refundable for each overdue
day.

8.2.4 如果乙方没有选择按照本第 8.2.2 条约定解除本协议的，且乙方愿意继续履行本协议，
则甲方和目标公司应继续完成其在本协议项下的义务，并且，该等继续履行并不豁免甲方和
目标公司应向乙方及/或其指定方承担的违约和赔偿责任。

8.2.4 If Party B does not choose to terminate the Agreement in accordance with the provisions of
Article 8.2.2, and Party B is willing to continue to perform the Agreement, Party A shall continue
to fulfill its obligations hereunder, and such continuation of performance shall not exempt Party A
from the liability for breach of contract and the compensation to Party B and/or its designated party.

## 8．3 乙方违约责任

### 8.3 Party B's Liability for Breach of Contract

本协议签署后，在支付条件全部满足的前提下，如乙方逾期支付投资款，则须按照每日万分
之二标准，向甲方计付迟延支付的违约金。如果逾期超过 30 日仍未支付，从第 31 日起，按
照每日万分之五标准，向甲方计付迟延支付的违约金。

Provided that the Agreement is signed and the conditions for payment of the transaction
consideration are fully met, if Party B delays the payment of the transaction consideration, Party B
shall pay Party A the liquidated damages for late payment with a daily interest rate of 0.02% for
each overdue day. If the payment is overdue for more than 30 days, from the 31st day, Party B shall
pay Party A the liquidated damages for late payment with a daily interest rate of 0.05% for each
overdue day.

E

M

A

I

L

E

D

_____C Murray_____          _____1/23/2020_____

CASE MANAGER                              DATE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **NOTICE OF OBJECTION TO CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 3, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **April 3, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA U.S. MAIL**
United States Bankruptcy Court
Central District of California
Attn: Hon. Vincent Zurzolo
Edward R. Roybal Federal Bldg./Courthouse
255 East Temple Street, Suite 1360
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 3, 2020 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 2                    **F 3007-1.1.NOTICE.OBJ.CLAIM**
DOCS_LA:328822.1 46353/002

**SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ**
**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Jerrold L Bregman     ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg     jdulberg@pszjlaw.com
- Lei Lei Wang Ekvall     lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Stephen D Finestone     sfinestone@fhlawllp.com
- Richard H Golubow     rgolubow@wghlawyers.com,
  pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Alexandra N Krasovec     krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan     blogan@omm.com
- Robert S Marticello     Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- David W. Meadows     david@davidwmeadowslaw.com
- John A Moe     john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison     kelly.l.morrison@usdoj.gov
- Malhar S Pagay     mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince     cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Victor A Sahn     vsahn@sulmeyerlaw.com,
  pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- Randye B Soref     rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor     btaylor@taylorlawfirmpc.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Felix T Woo     fwoo@ftwlawgroup.com, admin@ftwlawgroup.com
- Claire K Wu     ckwu@sulmeyerlaw.com,
  mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- Emily Young     pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- David B Zolkin     dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.