# EXHIBIT 2

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                   FOR THE COUNTY OF SANTA CLARA

3

4    HAN'S SAN JOSE HOSPITALITY,
     LLC,

5
              Plaintiff,

6                                      No. 17 CV317221

     vs.

7

     LE HOLDINGS (BEIJING) CO.,

8    LTD; LE TECHNOLOGY, INC.;

     FARADAY & FUTURE; AND DOES 1

9    TO 10,

10            Defendants.

11

12   _____

13

14

15

16         VIDEOTAPED DEPOSITION OF QING YE

17              Los Angeles, California

18               Tuesday, May 1, 2018

19

20

21

22   Reported by:
     MARIA ELLERSICK

23   CSR No. 10531

24   Job No. 2881529

25   PAGES 1 - 148

                                              Page 1

1  are the only documents that have been provided to my

2  office in response to the request for production of

3  documents.

4         So I'd ask for you to review Exhibit 2, and

5  let me know if there's any other documents in your        09:52:40

6  possession that would be responsive to either

7  categories 1 or 2 of the deposition notice besides

8  the lease itself in Exhibit 2.

9         MR. BUHA:  I'll assert the same objection.

10        MR. DANIELS:  Join.                                 09:53:27

11        THE WITNESS:  Can I take some time to

12 review?

13 BY MR. GOODELL:

14    Q   Yes.  Take all the time.  We've got all

15 day.                                                       09:53:40

16    A   Yes.

17    Q   Okay.  What other documents do you have

18 that you gave to your attorney that are not in

19 Exhibit 2 besides the lease itself?

20        MR. BUHA:  Objection.  Calls for a legal            09:54:33

21 conclusion.

22        MR. DANIELS:  Join.

23        THE WITNESS:  Oh, I meant to say yes, this

24 is the complete document.

25 BY MR. GOODELL:                                            09:54:48

Page 21

1      Q   Okay.  I want to direct your attention on

2   this document -- if you look at the bottom, there

3   are Bates numbers 141.

4        Okay.  Can you read into the record, and

5   then you can interpret, sir, this E-mail.        09:55:10

6       MR. BUHA:  Just to clarify, Counsel, do you

7   want him to start -- because it looks like the top

8   E-mail may be responding to the bottom E-mail.

9       MR. GOODELL:  The top E-mail.  It says from

10  Bob Ye to Peter Luo.        09:55:33

11     Q   And can we start with the subject line of

12  the E-mail with the Chinese characters.

13     A   Everything's written here.  The interpreter

14  can interpret.

15     Q   That's fine.  If you can interpret it, but    09:55:59

16  then he needs to confirm that it's accurate.

17        You know what, I don't want to do it this

18  way.  I mean, he can read it.  I mean, when it's in

19  English, it would always be the way someone would

20  read it in English.  He can read it, and then he can  09:56:16

21  interpret it.  That makes way more sense for the

22  record.  So, sir, would you please --

23     A   "Reply, modification of the lease."

24     Q   Okay.  Go ahead.

25     A   "Hello Peter, as we communicated the other  09:56:51

Page 22

1    day, with respect to return of the rent and the

2    settlement, we feel very sorry.  That is something

3    we do not have a choice.  The solution we provided

4    earlier was our best offer.  With respect to this

5    modified plan or with respect to this modified          09:57:49

6    proposal, we really cannot come up with this amount

7    of money.  In the end, we can only resort to

8    bankruptcy protection.  Here I would plead to your

9    company to reconsider the proposal.  We really want

10   to resolve this in the most amicable way.  That it's    09:58:46

11   also the best way to protect your company.  Here is

12   the detailed situation of our North American

13   company.

14        "One, the total debt, 115 million USD.

15   Debt to China, 108 million USD, and the U.S. portion    09:59:40

16   of the debt is 7 million USD.

17        "Two, total asset plus cash, 2 million to

18   2.5 million USD.

19        "Three, if we cannot settle with respect to

20   refund of the rent and we go through the bankruptcy      10:00:44

21   procedure for our North American company, then your

22   company's interest in the debt is 2.4 million USD.

23   In parentheses, the bankruptcy laws provides

24   12 months rent.  Our North American company after

25   paying the compensation to the employees, we project    10:01:35

Page 23

1    we would have 1 to 1.5 million USD left.   Your

2    company, for the most -- for the most, can get 1

3    percent to 2 percent of the assets, which means a

4    compensation of 20- to 30,000 U.S. dollars.

5         "Four, our current proposal is to pay rent      10:02:30

6    until October, and in parentheses, including the

7    previous months, so August, September, and October.

8    And the deposit portion would pay for November and

9    December, a total of 1,170,000 compensation to your

10   interest.                                            10:03:13

11        "PS, we have found a law firm specializing

12   in bankruptcy law to help us reorganize our

13   North American company's debt.   We sincerely hope

14   that both parties can amicably settle and dissolve

15   the lease.   I would plead your company to seriously  10:03:57

16   reconsider and re-evaluate our proposal.   I'm very

17   grateful."

18        Q   So Mr. Ye, did you type out that E-mail and

19   send it to Peter Luo of Han's Laser on August 24th,

20   2017?                                                10:04:38

21        A   So you're asking if I sent this E-mail to

22   Pete Luo; right?

23        Q   Yes.

24        A   Yes.

25        Q   And so in the E-mail, you acknowledge --    10:04:59

Page 24

1    well, first of all, what company were you sending

2    this E-mail on behalf of?

3            MR. BUHA:  Object.  Legal conclusion.

4            MR. DANIELS:  Join.

5            THE WITNESS:  I don't know on behalf of          10:05:19

6    what company.

7    BY MR. GOODELL:

8        Q    Okay.  Well, you're referring to a lease

9    here.  What company was involved in this lease you

10   were referring to in this E-mail?                        10:05:31

11           MR. BUHA:  Same objection.

12           MR. DANIELS:  Join.

13           THE WITNESS:  Le Technology signed the

14   lease.

15   BY MR. GOODELL:                                          10:05:58

16       Q    Okay.  And were you sending this E-mail on

17   behalf of Le Technology?

18           MR. BUHA:  Same objection.

19           MR. DANIELS:  Join.

20           THE WITNESS:  I believe I explained with        10:06:15

21   respect to this issue earlier.  I was with

22   Le Holdings, and I was responsible for overseas

23   sales and operations.  Le Technology was part of my

24   responsibility.  With respect to this E-mail, I

25   wrote this E-mail on behalf of Le Technology.  I        10:07:09

                                                             Page 25

1    apologize.

2         Q    Okay.  So you acknowledge in this E-mail

3    that Le Technology had a debt of approximately

4    2.4 million to Han's Laser; correct?

5         A    No.                                    10:07:47

6         Q    No, you didn't just read into the record

7    where you -- go back to it.  You reference -- I

8    thought what you just said in the record -- we can

9    have the court reporter read it back if we need

10   to -- that there was a debt of over $2 million.  Are   10:08:17

11   you saying that that's not correct?

12        A    I stated very clearly here that if we

13   cannot settle with respect to refund of the rent and

14   if the Le Technology North America go through the

15   bankruptcy protection procedure, then the debt       10:09:22

16   interest would be 2.4 million U.S. dollars according

17   to the bankruptcy law.

18        Q    The debt interest of 2.4 million to who?

19        A    First, I didn't say this is debt interest.

20   I said according to the bankruptcy law, whatever the   10:10:16

21   bankruptcy law says, the debt will be that amount.

22        Q    Okay.  LE Technology's total debt or their

23   debt to Han's Laser?

24        A    Which paragraph are we talking about?

25        Q    Well, forget about the paragraph.  I'm just   10:10:47

Page 26

1    asking what your understand was at the time you sent

2    this E-mail.  When you -- so you mentioned a

3    $2.4 million debt you were just testifying to.  I'm

4    saying is that -- was that your assertion that was

5    LE Technology's total debt to all creditors or is        10:11:02

6    that their debt to Han's Laser?

7        A    First, this said that under certain

8    circumstances, if Le Technology North American went

9    through the bankruptcy process, then the debt to

10   Han's Laser was possibly 2.4 million USD, but that's     10:12:20

11   not an actual number.  We have to go by the

12   bankruptcy law, and there's an assumption.  And you

13   cannot assume that happened and that's the actual

14   number.  That's assumed number.  It's a possible

15   number.                                                  10:12:44

16          MR. GOODELL:  Let's mark this as Exhibit 3.

17          (Exhibit 3 was marked for

18      identification by the court reporter.)

19   BY MR. GOODELL:

20       Q    You ever seen Exhibit 3 before, Mr. Ye?         10:13:09

21       A    Let me take a look first.

22       Q    Sure.

23       A    I have not seen it before.

24       Q    Are you aware that this is the lease that

25   Le Technology signed to occupy the property that's      10:13:52

Page 27

1    First Street, San Jose, California?

2        MR. BUHA:  You're talking about 3553?

3        MR. GOODELL:  3553, Counsel's correct.

4        THE WITNESS:  I've been to that office

5    before.  I've also worked there or I would say, you        10:16:35

6    know, had meetings there, something like that.

7    BY MR. GOODELL:

8        Q    Did you -- did you work there on a

9    day-to-day basis, Mr. Ye?

10       MR. BUHA:  Vague as to time.                           10:17:00

11       THE WITNESS:  Can you specify with the

12   timeframe?

13   BY MR. GOODELL:

14       Q    Ever.  Did you ever work there on a daily

15   basis?                                                     10:17:14

16       A    When I travelled to the United States for

17   business and if I was in San Jose, I would go to

18   that office.

19       Q    Okay.  So do you know what the monthly rent

20   for that office was in the summer and the fall of          10:17:45

21   2017?

22       A    I don't know the specific amount, but it

23   was around 200,000.

24       Q    Per month?

25       A    I think so, but our financial department          10:18:22

Page 29

1    was responsible for that.

2        Q    Do you know the last month that

3    Le Technology paid rent on -- for this property?

4        A    I don't recall.

5        Q    Is it your understanding that Le Technology    10:18:59

6    ever paid rent in October 2017?

7        A    I don't recall.

8        MR. GOODELL:  We're on 4, I believe.  You

9    guys can share this.

10        (Exhibit 4 was marked for    10:20:06

11        identification by the court reporter.)

12   BY MR. GOODELL:

13        Q    All right.  Let me direct your attention,

14   Mr. Ye -- first of all, have you ever seen this

15   document before?    10:20:26

16        A    I don't recall.

17        Q    Well, I want to direct your attention to

18   the second to last page of this document.  The page

19   past that.  Is that your signature?

20        A    Yes.    10:20:51

21        MR. BUHA:  I just want to interject for a

22   moment, Counsel.  I think you handed me a different

23   document than what you handed Mr. Ye.

24        MR. GOODELL:  Okay.  Well, let me see.  My

25   apologies.    10:21:00

                                        Page 30

1          MR. BUHA:  No worries.

2          MR. GOODELL:  No.  This should be the same

3     one.

4          MR. BUHA:  I mean, if you look at the

5     second to last page, it's not the same as what you      10:21:09

6     handed Mr. Ye.

7          MR. GOODELL:  Oh, I think -- okay.  My

8     apologies.  All right.  Give me one second.  Okay.

9          MR. BUHA:  Exhibit 4?

10         MR. GOODELL:  Yes, Exhibit 4.                       10:21:40

11    Q    So is that your signature on the second to

12    last page, Mr. Ye?

13    A    Yes.

14    Q    Okay.  So I want to direct your attention

15    to Special Interrogatory -- it's page 10, Special        10:21:52

16    Interrogatory No. 15.  It says "If you contend that

17    you tried to pay the September rent, please state

18    any and all facts in support of your contention."

19         And for the record, this interrogatory is

20    directed to Le Technology, Inc.                          10:22:28

21         The response that is provided below says

22    "Without waiving the above-referenced objections and

23    entirely subject thereto, Responding Party amends

24    its response as follows:  Responding Party does not

25    contend that it tried to pay the September rent."        10:22:41

                                                  Page 31

1          So does this refresh your recollection that

2     Le Technology did not pay the September 2017 rent?

3          THE INTERPRETER:  May I have that question

4     read back again -- the response.

5          (Record read.)                                10:22:47

6          MR. GOODELL:  I didn't read into the record

7     the objections.  I said the amended response to

8     Special Interrogatory 15.

9          THE INTERPRETER:  Amended response.  Got

10    it.  Okay.                                         10:23:59

11         THE WITNESS:  So you're asking if

12    Le Technology North America -- if Le Technology

13    North America paid rent for September; right?

14    BY MR. GOODELL:

15         Q    Yeah.  I'm asking does this refresh your   10:24:56

16    recollection that Le Technology North America did

17    not pay rent for September?

18         A    I still don't recall.

19         Q    Okay.  So you realize the second to last

20    page of this document, you signed under oath and     10:25:22

21    it's the same oath you took today?

22         A    I understand.

23         Q    Okay.  So you're not -- so do you stand by

24    your response to Special Interrogatory No. 15 then?

25         A    I'm a little confused with this question.   10:26:18

                                                   Page 32

1    Are you asking if we paid the September rent or did

2    we try to pay the September rent?

3        Q   Well, did you -- let's start with the first

4    question.  Did you pay the September rent?

5        A   I don't recall, and I'm not sure because I     10:26:30

6    was not responsible for making payments.

7        Q   Okay.  Do you -- did you -- are you

8    contending you tried to pay the September rent?

9        A   In our communication with the landlord, we

10   proposed a settlement, and in that settlement          10:27:24

11   proposal, September rent was included.

12       Q   Right.  And that was the proposal in which

13   you proposed to pay three months rent and be excused

14   for the remaining terms of the lease; correct?

15       A   No.                                            10:27:41

16       Q   Okay.  So then what is this proposal you

17   speak of?  What was the exact proposal?

18       A   I already read my settlement proposal.

19       Q   Right.  And that proposal included a few

20   months rent, and you threatened to file -- your        10:28:17

21   company would file bankruptcy, and my client would

22   get $20,000 if they didn't accept it.  That's the

23   proposal you read into the record.  So you're

24   talking about another proposal where you agreed to

25   pay more than a couple months rent?  Because I'm not    10:28:30

Page 33

1        MR. GOODELL:  Ever.

2        THE WITNESS:  Faraday Future.

3  BY MR. GOODELL:

4    Q   Okay.  Any other companies?

5    A   Don't think so, although we tried to find   11:04:56

6  other companies.

7    Q   Okay.  So getting back to Jia Yueting,

8  isn't it true that he works for Le Technology as

9  well?

10       MR. DANIELS:  Foundation.  Relevance.   11:05:35

11       MR. BUHA:  Join.

12       THE WITNESS:  Not to my knowledge.

13  BY MR. GOODELL:

14    Q   No.  Isn't it true that he founded LeEco?

15       MR. DANIELS:  Foundation.  Relevance.   11:06:05

16       MR. BUHA:  Join.

17       THE WITNESS:  Which company again?

18  BY MR. GOODELL:

19    Q   LeEco.

20    A   How to spell it?   11:06:16

21    Q   L-e-E-c-o.

22       MR. DANIELS:  Same objection.

23       MR. BUHA:  Join.

24       THE WITNESS:  L-e-E-c-o; right?

25  BY MR. GOODELL:   11:06:38

Page 43

1

2

3

4       I, the undersigned, a Certified Shorthand

5  Reporter of the State of California, do hereby

6  certify:

7       That the foregoing proceedings were taken

8  before me at the time and place herein set forth;

9  that any witnesses in the foregoing proceedings,

10 prior to testifying, were placed under oath; that a

11 verbatim record of the proceedings was made by me

12 using machine shorthand which was thereafter

13 transcribed under my direction; further, that the

14 foregoing is an accurate transcription thereof.

15      I further certify that I am neither

16 financially interested in the action nor a relative

17 or employee of any attorney of any of the parties.

18      IN WITNESS WHEREOF, I have this date

19 subscribed my name.

20

21 Dated: 05/15/2018

22

23

24    *Maria Ellersick*

      MARIA ELLERSICK

25    CSR No. 10531

                                        Page 148

1

2

3

4      I, QING YE, do hereby declare under penalty

5  of perjury that I have read the foregoing

6  transcript; that I have made any corrections as

7  appear noted, in ink, initialed by me, or attached

8  hereto; that my testimony as contained herein, as

9  corrected, is true and correct.

10      EXECUTED this _____ day of _____,

11  2018, at _____, _____.
                    (City)                      (State)

12

13

14

15      _____

        QING YE

16

17

18

19

20

21

22

23

24

25

Page 147



December, 2016

**VIA EMAIL AND FEDEX**

BSREP Rio Robles LLC
250 Vesey Street, 15111 Floor
New York, NY 10281-1023
Attn: Mr. Thomas Diamond
Thomas.Diamond@brookfield.com

*with copies to:*

BSREP Rio Robles LLC
181 Bay Street, Suite 300
Toronto, ON MSJ 2T3
Attn: Mr. Thomas Diamond
Thomas.Diamond@brookfield.com

Berliner Cohen, LLP
Ten Almaden Boulevard, Eleventh Floor
San Jose, CA 95113-2233
Attn: Harry A. Lopez

RE:     3553 N. First Street, San Jose, CA
        Request for Tenant Improvement Allowance

Per Exhibit B "Work Letter" to the Lease dated December 17, 2015 between BSREP Rio Robles LLC, a Delaware limited liability company ("Landlord") and LE TECHNOLOGY, INC., a California Corporation ("Tenant"), Landlord is to contribute an Allowance of $1,722,900 ($20/rsf) for the premises noted above. Tenant is requesting a total reimbursement in the amount of $1,722,900. Attached, as Exhibit A, are the following:

1. Certification letter confirming the TI work has been substantially completed;
2. The schedule of values, by trade, detailing the completion of the TI work; and
3. Invoices from all of the tenant's agents
4. The GC's final unconditional lien waiver, confirming payment in full
5. The fully signed off permit records.

If you have any questions, please contact me at (650) 853-4191

Very truly yours,
Le Technology Inc.

Daniel McGill
Director, Real Estate

Attachments
cc:     Dan Poritzky – LeEco
        Legal File - LeEco

EXHIBIT 3-1-18

PENGAD 800-631-6989

LE TECH 00105

| | |
|---|---|
| **From:** | Bob Ye(叶青) |
| **Sent:** | Thursday, August 24, 2017 3:42 AM |
| **To:** | Peter Luo |
| **Subject:** | 答复: 租赁合约修改 |

Peter，你好，

如那天所沟通，对于退租和解的事宜我们也是实在非常抱歉，实属无奈之举，之前我们给的解决方案已经是能给出最好的 offer 了。对于这个更新的方案，我们这边实在拿不出来这些钱，最后我们也只能通过破产保护的方法来走了。在这里我恳请贵公司再重新考虑方案，我们是真的想以最平和的方式来解决，这也是对贵公司最好的保障。我们北美公司具体情况如下：

1. 总体负债：115M USD，对中国部分负债108M USD，对美国部分负债7M USD
2. 总体资产+现金：2M – 2.5M USD
3. 如果我们不能在退租问题上和解，北美公司走破产保护流程，贵公司的债权权益是 2.4M USD（破产法规定的是 12 个月房租），北美公司在处理完员工部分的赔偿后预计剩余 1-1.5M USD，贵公司最多只能拿到 1%-2%的资产，也就意味着 2-3 万美元左右的赔偿。
4. 我们现在的方案是支付租金到 10 月份（8/9/10 月），Deposit 部分支撑到 11,12 月份，一共约 117 万美元的补偿权益。

另，我们已经找了一家专门做破产的律所来为北美做债务重组。我们真心希望双方能平和的和谈解约，恳请贵公司再认真评估和考虑我们的方案。

感激不尽！

**发件人:** Peter Luo [mailto:peter@hanslaser.com]
**发送时间:** 2017 年 8 月 22 日 18:24
**收件人:** Bob Ye(叶青)
**主题:** 租赁合约修改

叶总

你好！这是我们总部给的修改意见。主要是在赔偿上，我们老板觉得重新招租我们单单中介费就需要额外支付 250 万美金另外我们找了湾区最大的 3 家地产中介来咨询，基本回复都是重新招租需要 1 年左右的时间。所以他希望乐视赔偿 1 年的租金来减少大族的损失。具体的情况，请参见附件。

有什么问题，我们保持进一步的沟通。谢谢

Kind Regards
**Peter Luo**
*CFO for Hans us*

1

LE TECH 00141

# HAN*S LASER

U.S. Office:
2220 O' Toole Ave. San Jose, CA 95131
Phone: +1 (408) 774-9428 ext.1006
Fax: +1 (669) 900-4570
Email: peter@hanslaser.com
Website: us.hanslaser.net

声明:
本邮件及其附件为机密信息，仅供指定收件人使用。若收件有误，请立即回复本邮件知会发件人并将此邮件从你的计算机系统删除。本邮件发件人及大族业已采取了适当的预防措施，但本邮件及其附件内容仍可能存在错误、遗漏或者隐含病毒。我们不对因此而导致的任何损失承担责任。It is intended for the recipient only  If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the e-mail from your computer. Although the sender and Hanslaser have taken every reasonable precaution, the e-mail and attachments may have some errors or omissions and may contain viruses We cannot accept liability for any damage that you sustain as a result of that.

LE TECH 00142

**RECORDATION REQUESTED BY:**
Industrial and Commercial Bank of China (USA) National
Association
Northern California Regional Office
345 California Street, Suite 1700
San Francisco, CA  94104

**WHEN RECORDED MAIL TO:**
Industrial and Commercial Bank of China (USA) National
Association
Northern California Regional Office
345 California Street, Suite 1700
San Francisco, CA  94104

**SEND TAX NOTICES TO:**
Han's San Jose Hospitality LLC
2220 O'Toole Avenue
San Jose, CA  95131

**FOR RECORDER'S USE ONLY**

**NOTICE:  THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT RESULTS IN YOUR
SECURITY INTEREST IN THE COLLATERAL BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE
LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT AND ESTOPPEL CERTIFICATE

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT dated June  29, 2017
("Agreement"), is made and executed among Han's San Jose Hospitality LLC, whose address is 2220 O'Toole
Avenue, San Jose, CA  95131 ("Landlord"); LE Technology, Inc.; and LE Holdings (Beijing) Co., Ltd., whose
address is 3553 North First Street, San Jose, CA  95134 ("Tenant"); and Industrial and Commercial Bank of
China (USA) National Association, Northern California Regional Office, 345 California Street, Suite 1700, San
Francisco, CA  94104 ("Lender").

**SUBORDINATED LEASE.**  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXX  The following information is the summary of the basic terms and conditions of the Subordinated Lease:  Landlord's
predecessor-in-interest and Tenant entered into a written lease dated December ____, 2015 (the "Original Lease"), and together with all
modifications, extensions, replacements, renewals, assignments and amendments thereof shall be collectively referred to as the "Lease".

**REAL PROPERTY DESCRIPTION.**  The Lease covers a portion of the following described real property (the "Real Property") located in Santa
Clara County, State of California:

See Exhibit "A", which is attached to this Agreement and made a part of this Agreement as if fully set forth herein.

The Real Property or its address is commonly known as  3553 North First Street, San Jose, CA  95134.  The Assessor's Parcel Number
for the Real Property is 097-55-012.

**SUPERIOR INDEBTEDNESS.**  Lender has extended or has agreed to extend the following described financial accommodations to Landlord,
secured by the Real Property (the "Superior Indebtedness"):

An indebtedness as evidenced by a promissory note dated June 29, 2017, in the original principal amount of $21,600,000.00, to be
executed by Borrower and payable to Lender or its order (herein referred to as the "Note"), and any and all amendments,
modifications, extensions or renewals of the Note (whether evidenced by the Note or otherwise); together with the payment of
interest on such indebtedness and the payment of all other sums (with interest as therein provided) according to the terms of the Note
(and any and all amendments, modifications, extensions, or renewals thereof).

**LENDER'S LIEN.**  The Superior Indebtedness is or will be secured by the Real Property and evidenced by a mortgage, deed of trust, or other
lien instrument, dated June 29, 2017, from Landlord to Lender (the "Lender's Lien").  As a condition to the granting of the requested
financial accommodations, Lender has required that the Lender's Lien be and remain superior to the Subordinated Lease and all of Tenant's
rights in the Real Property ("Lease Rights").

**REQUESTED FINANCIAL ACCOMMODATIONS.**  Landlord and Tenant each want Lender to provide financial accommodations to Landlord in
the form of the Superior Indebtedness. Landlord and Tenant each represent and acknowledge to Lender that Landlord and Tenant will




**EXHIBIT**

10

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

Loan No: 601490000114437                    **(Continued)**                    Page 2

benefit as a result of these financial accommodations from Lender to Landlord, and Landlord and Tenant acknowledge receipt of valuable consideration for entering into this Agreement.

**IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE SUFFICIENCY AND RECEIPT OF WHICH ARE HEREBY ACKNOWLEDGED, LENDER, LANDLORD, AND TENANT HEREBY AGREE AS FOLLOWS:**

**ESTOPPEL CERTIFICATE.** Tenant hereby certifies to and agrees with Lender that as of the date of this Agreement, Lender is relying on all of the following certifications and agreements of Tenant as consideration for Lender executing this Agreement:

(A)  The Lease is in full force and effect and is the valid and binding obligation of Tenant, enforceable in accordance with its terms.

(B)  All requirements for the commencement and validity of the Lease have been satisfied.

(C)  Neither Tenant nor Landlord is in default under the Lease and no event has occurred and no condition exists, which with the giving of notice, the passage of time, or both, would constitute a default by Tenant or Landlord under the Lease.

(D)  There are no defenses, counterclaims or setoffs against rents or charges due or which may become due under the Lease and no claim by Tenant of any nature exists against Landlord under the Lease. All obligations of Landlord have been fully performed.

(E)  None of the rent, which Tenant is required to pay under the Lease, has been prepaid, or will in the future be prepaid, more than one month in advance.

(F)  The Lease shall not after the date of this Agreement be modified, terminated, or amended, without the prior written consent of Lender for any termination and each such amendment or modification. Any attempted modification, termination, or amendment without the prior written consent of Lender shall be void.

(G)  Tenant has not assigned, mortgaged, sublet, encumbered or otherwise transferred any or all of its interest under the Lease and, during the term of the Loan, agrees to not assign, mortgage, sublet, encumber, or otherwise transfer any or all of its interest under the Lease without the prior written consent of Lender.

**SUBORDINATION.** Notwithstanding anything in the Lease to the contrary, the parties acknowledge and agree that the Lease and Lease Rights are and shall be subject and subordinate in right, interest and lien, and for all purposes, to Lender's Lien, and to all renewals, modifications, consolidations, replacements, and extensions thereof, and to any subsequent lien of the Lender with which Lender's Lien may be spread or consolidated, to the full extent of the principal sum and all other amounts secured thereby and interest thereon. Tenant will not cause the Lease to be subordinated to any interests other than those held by or made for the benefit of Lender, and its successors and assigns, without the prior written consent of Lender.

**NON-DISTURBANCE.** So long as the Lease is in full force and effect and Tenant is not in default under the Lease beyond any applicable cure period, Lender shall not name or join Tenant as a defendant in any exercise of Lender's rights and remedies arising upon a default of the Loan under the Note and/or under Lender's Lien unless applicable law requires Tenant to be made a party thereto as a condition to proceeding against Landlord or pursuing such rights and remedies. In the latter case, Lender may join Tenant as a defendant in such action only for such purpose and not to terminate the Lease or otherwise adversely affect Tenant's rights under the Lease or this Agreement in such action. If the Lease has not been terminated, then, when Lender succeeds to the interest of Landlord, the Lender shall not terminate or disturb Tenant's possession of Tenant's premises under the Lease, except in accordance with the terms of the Lease and this Agreement.

**ATTORNMENT.** If Lender shall succeed to the interest of the Landlord under the Lease, and the Lease shall not have expired or been terminated in accordance with the terms of the Lease or this Agreement, Tenant shall, from and after such event, attorn to Lender, all rights and obligations under the Lease to continue as though the interest of Landlord had not terminated. Such attornment shall be effective and self-operative without the execution of any further instrument on the part of the parties hereto. Tenant agrees, however, to execute and deliver at any time and from time to time, upon the request of Lender, any instrument or certificate which, in the sole judgment of Lender, may be necessary or appropriate in any such foreclosure proceeding or otherwise to evidence such attornment.

**NO LIABILITY FOR LENDER.** Lender in the event of attornment shall have the same remedies in the event of any default by Tenant (beyond any period given Tenant to cure such default) in the payment of annual base rent or additional rent or in the performance of any of the terms, covenants, and conditions of the Lease on Tenant's part to be performed that are available to Landlord under the Lease. Tenant shall have the same remedies against Lender for the breach of an agreement contained in the Lease that Tenant might have had against Landlord if Lender had not succeeded to the interest of Landlord; provided, however, that Lender shall not be:

(A)  Liable for any act or omission of or any claims against any prior landlord, including Landlord; or



## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

Loan No: 601490000114437                       **(Continued)**                       Page 3

(B)  Subject to any offsets or defenses which Tenant might have against any prior landlord, including Landlord; or

(C)  Bound by any rent or additional rent which Tenant might have paid for more than the current month to any prior landlord, including Landlord; or

(D)  Bound by any amendment or modification of the Lease, or waiver of any of its terms, made without its consent; or

(E)  Liable for any sum that any prior landlord, including Landlord, owed to Tenant, including without limitation any security deposit, unless the amount owed was actually delivered to Lender; or

(F)  Bound by any surrender, cancellation, or termination of the Lease, in whole or in part, agreed upon between Landlord and Tenant; or

(G)  Liable for any construction obligation of any prior landlord, including Landlord; or

(H)  Liable for any breach of representation or warranty of any prior landlord, including Landlord.

**NEW LEASE.**  If Lender shall succeed to the interest of the Landlord under the Lease, upon the written request of Lender to Tenant, Tenant shall execute and deliver to Lender a lease of the Real Property upon the same terms and conditions as the Lease between Landlord and Tenant, which lease shall cover any unexpired term of the Lease existing prior to such transfer.

**ACKNOWLEDGMENT AND AGREEMENT BY LANDLORD.**  Landlord, as landlord under the Lease, acknowledges and agrees for itself and its heirs, successors and assigns to each of the following:

(A)  This Agreement does not in any way release Landlord from its obligations to comply with the terms, provisions, conditions, covenants, agreements and clauses of the Note, Lender's Lien or any other documents executed in connection with the Loan.

(B)  In the event of a default under the Note, or any of the other documents executed in connection with the Loan, Landlord hereby consents to Tenant's attornment to Lender and, upon such event, Tenant shall pay all rent and all other sums due under the Lease to Lender as provided in the Lease.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  If Lender institutes any suit or action to enforce any of the terms of this Agreement, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.  Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.  Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law.  Landlord also will pay any court costs, in addition to all other sums provided by law.

**Authority.**  Any person who signs this Agreement on behalf of Landlord and Tenant represents and warrants that he or she has authority to execute this Agreement.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Counterparts.**  This Agreement may be executed in multiple counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts, taken together, shall constitute one and the same Agreement.

**Governing Law.**  This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of California.

**Notices.**  Any notice required to be given under this Agreement shall be given in writing, and, shall be effective when actually



## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT
Loan No: 601490000114437 (Continued) Page 4

delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing among Lender, Landlord, and Tenant shall constitute a waiver of any of Lender's rights or of any of Landlord's and/or Tenant's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors.** This Agreement shall extend to and bind the respective heirs, personal representatives, successors and assigns of the parties to this Agreement.

**NOTICE: THIS AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO OBTAIN A LOAN, A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND.**

**EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT, AND EACH PARTY AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JUNE 29, 2017.**

LANDLORD:

HAN'S SAN JOSE HOSPITALITY LLC

By:_____
　　Xiaokai Zeng, Chief Executive Officer of Han's San Jose Hospitality LLC

LENDER:

INDUSTRIAL AND COMMERCIAL BANK OF CHINA (USA) NATIONAL ASSOCIATION

X_____
Tung Min Ho　　　　　JianLong Wen
Vice President &　　　Senior Vice President &
Business Manager　　　Trade Finance Manager

# SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT
Loan No: 601490000114437                  **(Continued)**                                    Page 5

---

**TENANT:**

**LE TECHNOLOGY, INC.**

By: _____
      Authorized Signer for LE Technology, Inc.

By: _____
      Authorized Signer for LE Technology, Inc.

**LE HOLDINGS (BEIJING) CO., LTD.**

By: _____
      Authorized Signer for LE Holdings (Beijing) Co., Ltd.

By: _____
      Authorized Signer for LE Holdings (Beijing) Co., Ltd.

---

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF _California_                                  )
                                                        ) SS
COUNTY OF _Los Angeles_                                 )

On _July 14, 2017_ ___, 20 2017 before me, _Sandy Gilliam, Notary_____
                                                        (here insert name and title of the officer)
personally appeared _Chao'ling Deng_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

SANDY GILLIAM
COMM. # 2118103
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES JULY 17, 2019

(Seal)

 LeEco

Le Technology, Inc.
3553 North First Street
San Jose, California 95134
Tel/Fax: +1-669-253-2222

*Via Overnight Delivery*

November 30, 2017

Nelson W. Goodell, Esq.
The Goodell Law Firm
5 Third Street, Suite 1100
San Francisco, California 94103

      Re:     3553 North First Street, San Jose, California 95134 (the "Premises")

Dear Mr. Goodell:

This letter is to advise that, as of today, Le Technology, Inc. ("Le Technology") has vacated and is no longer in possession of the Premises. Please also note Le Holdings (Beijing) Co., Ltd. ("Le Holdings"), which was also identified as a tenant on the subject lease, is not and was never in possession of the Premises. On behalf of both Le Technology and Le Holdings, this serves to advise of their surrender of the subject lease and of the Premises, and delivery of possession of the Premises to your client, Han's San Jose Hospitality, LLC, pursuant to Civil Code section 1952.3.

I am enclosing here the keys that Le Technology had previously used to access the Premises. Le Technology has deactivated its card key access.  Accordingly, Le Technology no longer has any means to access the Premises, nor does Le Technology need to access the Premises for any reason. Consistent therewith, Le Technology did not and has not retained any keys to the Premises (or any other items to access the Premises).

Accordingly, given that possession of the Premises is no longer in issue, we trust you will dismiss the pending Unlawful Detainer Complaint, *HAN'S SAN JOSE HOSPITALITY, LLC v. Le Holdings (Beijing) Co., LTD; Le Technology, Inc., and DOES 1 to 10,* Santa Clara County Superior Court Case No. 17CV317221.

Nothing herein is a waiver of Tenant's rights, remedies or defenses, all of which are hereby reserved.

Yours Truly,

Daniel J. Gallagher
VP, General Counsel

EXHIBIT
PENGAD 800-631-6989