Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel. (415) 421-2624
Fax (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Nelson W. Goodell (264734)
The Goodell Law Firm
5 Third Street, Suite 1100
San Francisco, CA 94103
(415) 495-3950 (office)
(415) 495-3970 (fax)

Attorneys for Han's San Jose
Hospitality LLC

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>YUETING JIA,<br><br>        Debtor. | Case No. 2:19-bk-24804-VZ<br><br>Chapter 11<br><br>**DECLARATION OF PETER LUO IN SUPPORT OF OPPOSITION TO DEBTOR'S NOTICE OF OMNIBUS OBJECTION AND OMNIBUS OBJECTION FOR AN ORDER DISALLOWING DUPLICATE CLAIMS**<br><br><u>Hearing</u><br>Date:  May 7, 2020<br>Time:  1:30 p.m.<br>Place:  Courtroom 1368<br>          255 East Temple Street<br>          Los Angeles, CA 90012 |

I, Peter Luo, declare as follows:

      1.      I am the manager of Han's San Jose Hospitality LLC ("Han's") and make this declaration in support of Han's opposition to Debtor's Objection to Claim and Motion to Estimation of Claim (the "Motion"). Each and all the statements made herein are based upon my

personal knowledge except to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true. If called as a witness in this matter, I could and would testify competently to each and all of the statements made herein.

**Background – The Lease Transaction:**

2.   On or about March 15, 2016 Han's predecessor-in-interest and Mr. Jia's companies Le Technology and Le Holdings entered into a lease (the "Lease") for the premises located at 3553 North First Street, San Jose, California 95134 ("Subject Property"). The Subject Property is an office building consisting of approximately 86,000 square feet of rentable space. The Lease was for 10 years, beginning on March 15, 2016 until February 28, 2026. The "Monthly Installment of Base Rent" for the Subject Property began at $193,826.25 and increased each year. From March 1, 2017 to February 28, 2018, the time period for which the present controversy began, the monthly rent was $199,856.40, approximately $6,661.88 per day. *(See Lease, attached as Exhibit 1, pg. 2)*. From March 1, 2018 – February 28, 2019, the monthly rent was $205,886.55.

3.   Mr. Jia never told Hans that his alter egos Le Technology and Le Holding had allowed another company he controlled, Faraday Future ("Faraday") to become an unauthorized occupant/subtenant of the premises following Le Technology and Le Holdings taking possession of the Subject Property. Han's never granted permission for any such arrangement. Faraday and Le Technology employees referred to the other company as a "sister" company or a "parent" company.

4.   This sublease agreement was memorialized and evidenced in invoices submitted by Le Technology/Le Holdings to Faraday in September and October 2017 that demanded payment of $110,000 for each month.

5.   Despite this agreement, Faraday never paid a penny in rent to either Le entity, nor has it, Mr. Jia, or any of his businesses paid any rent to Han's since the fall of 2017.

6.   Han's never informed Le Technology, Le Holdings, Faraday that it consented to Faraday being a subtenant or occupying the property in any fashion.

7.   Han's also believes that the parties breached paragraph 14.8.1, as it requires that a

"transfer [be] made for a good faith operating purpose and not in order to evade the requirements of this **Section 14**." Section 14, paragraph 14.2. states that a landlord cannot withhold consent for a proposed transfer unless "[t]he proposed transferee has a character or reputation or is engaged in a business that is not reasonable consistent with the quality of the Building or the Project" (Exh. 1, pg. 20 ¶ 14.2.2) among other reasons. In these recent times, the character and reputation of Mr. Jia's companies involved in the lease has been abysmal, as noted above, and Han's would never have consented to any affiliates of Le Technology or Le Holdings, including LeEco or Faraday, to take possession of the Subject Property as the direct result of their international attempts to avoid their obligations as reported by numerous international news organizations. Filed herewith as **Exhibit 1** is a true and correct copy of the Lease.

**Lease Defaults:**

8. Shortly prior to defaulting on the Lease, in August 2017, Qing Ye, on behalf of Le Holdings and Le Technology and Jia Yueting, wrote Han's Chief Executive Officer, Peter Luo, an e-mail in which he threatened to file bankruptcy unless Han's would agree to accept two months' rent in full satisfaction of their rental obligations, which extended another nine years. Mr. Ye did not mention Faraday or its occupancy of the Subject Property in this e-mail. Han's believes that Mr. Ye acted at the direction of Defendant Jia Yueting.  Filed herewith as **Exhibit 2** is a true and correct copy of that email.

9. In this e-mail, Mr. Ye stated that Le Technology, the domestic subsidiary of Le Holdings, had only $2 to $2.5 million in cash, but had $7 million in debt. Thus, by Mr. Ye's own admissions, Le Technology was heavily undercapitalized. In the e-mail, Mr. Ye stated that they would file for bankruptcy unless Han's agreed to accept the two additional months in rent mentioned above, plus the forfeiture of their security deposit (which effectively was approximately another month in rent).

10. Despite its best efforts, Han's has been unable to re-lease the Subject Property.

11. Mr. Jia, through his agent Ms. Deng, in an action he would later ratify, signed a Subordination, Non-Disturbance and Attornment Agreement ("SNDA") on July 14, 2017. In the SDNA, Jia, Deng, and Le Technology represented to Han's and its lender that, "[The] tenant has

not assigned, mortgaged, sublet, encumbered, or otherwise transferred any or all of its interest under the Lease and, during the term of the Loan, agrees to not… sublet any or all of its interest… without the prior written consent of Lender." Filed herewith as **Exhibit 3** is a true and correct copy of the SNDA.

12. The statement in the SNDA was demonstrably false, as Le Technology had already subleased and allowed Faraday to occupy the majority of the Subject Property.

13. This was a material misrepresentation made to Han's. The SNDA was executed so that Han's obtain could a loan secured against the Subject Property. The gravity of this misrepresentation is difficult to understate. Han's put the Subject Property on the line based on the representation that Le Technology was the sole company occupying the Subject Property.

14. Han's reliance on the SNDA caused it great damage. The reliance has harmed Han's reputation with its primary lending institution and has forced Han's to scramble and rearrange its finances in order to meet the debt obligation.

15. Han's additionally relied on the truthfulness of this statement which delayed its discovery of a fiscally unsound sublessee. Had Le Technology been truthful when signing the SNDA, or simply refused to sign it, Han's would have had notice of the sublet arrangement. Han's then would have been able to exercise its rights under the Lease to force Le Technology to find a financially sound subtenant. As noted above and in its claim in this case, Han's has been damaged by over $6 million in unpaid base rent and other costs it is contractually entitled to under the lease.

I declare under penalty of perjury under the laws of the United State that the foregoing is true and correct. Executed this 23rd day of April 2020 in San Jose, California.


PETER LUO