JERROLD L. BREGMAN – Bar No. 149896
MICHAEL W. DAVIS – Bar No. 274126
BRUTKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA  91367
Tel:       (818) 827-9000
Fax:      (818) 827-9099
Email:   jbregman@bg.law
             mdavis@bg.law

LYNN P. HARRISON III
   (Admitted *pro hac vice*)
PETER J. BUENGER
   (Admitted *pro hac vice*)
CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP
101 Park Avenue
New York, NY  10178-0061
   Tel.:    (212) 696-6000
   Fax:    (212) 697-1559
   Email:   lharrison@curtis.com
               pbuenger@curtis.com

*Attorneys for Creditor Liuhuan Shan*

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>YUETING JIA,<br><br><br><br><br><br>Debtor. | Case No.: 2:19-bk-24804-VZ<br><br>Chapter 11<br><br>**OBJECTION OF LIUHUAN SHAN TO DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**<br><br>**Hearing**:<br>Date:   Thursday, May 21, 2020<br>Time:   9:30 a.m.<br>Place:   Courtroom 1368<br>            Roybal Federal Building<br>            255 E. Temple Street<br>            Los Angeles, CA  90012 |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND OF MS. SHAN'S $111.5 MILLION IN CLAIMS...........................................4

ARGUMENT ..................................................................................................................................6

    A.    The Plan Fails to Satisfy the Feasibility and Good Faith Requirements ..............................................................................................................6

        (1)    The Plan Fails to Satisfy 11 U.S.C. § 1129(a)(11) ..................................6

        (2)    The Plan Fails to Satisfy 11 U.S.C. § 1129(a)(3) ....................................9

    B.    The Debtor is Not Entitled to the Extraordinary Remedy of an Early Discharge Pursuant to 11 U.S.C. § 1141(d)(5) .........................................10

    C.    The Plan Fails to Satisfy 11 U.S.C. § 1129(a)(15) ...............................................12

    D.    Reservation of Rights In Connection with Potential KCBI Settlements..............................................................................................................14

GENERAL RESERVATION OF RIGHTS...................................................................................15

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

Page

**CASES**

*Comput. Task Grp., Inc. v. Brotby (In re Brotby)*,
   303 B.R. 177 (Bankr. 9th Cir. 2003) ................................................................................ 9

*Hamilton v. Elite of L.A., Inc. (In re Hamilton)*,
   2020 U.S. App. LEXIS 8246, at *3 (9th Cir. Mar. 16, 2020) ....................................... 7

*In re Anderson*,
   2012 Bankr. LEXIS 3539, at *13 (Bankr. D. Mont. Aug. 1, 2012) ............................. 6

*In re Art & Architecture Books of the 21st Century*,
   2016 Bankr. LEXIS 859, at *22 (Bankr. C.D. Cal. Mar. 18, 2016) ............................ 6

*In re Ball*,
   2008 Bankr. LEXIS 1532, at *10 (Bankr. N.D.W. Va. May 23, 2008) .................... 11

*In re Beyer*,
   433 B.R. 884 (Bankr. M.D. Fla. 2009) ............................................................................ 11

*In re Commercial W. Fin. Corp.*,
   761 F.2d 1329 (9th Cir. 1985) ........................................................................................... 6

*In re Grogan*,
   2013 Bankr. LEXIS 3796, at *22 (Bankr. D. Or. Sep. 10, 2013) (citing *In re Detweiler*, 2012
   Bankr. LEXIS 5501, at *10 (Bankr. N.D. Ohio Nov. 27, 2012)) ............................. 10

*In re Jorgensen*,
   66 B.R. 104 108-09 (Bankr. 9th Cir. 1986) .................................................................... 9

*In re Pizza of Haw., Inc.*,
   761 F.2d 1374 (9th Cir. 1985) ........................................................................................... 7

*In re Shat*,
   424 B.R. 854 (Bankr. D. Nev. 2010) .............................................................................. 13

In re Sheridan,
   391 B.R. 287 (Bankr. E.D.N.C. 2008) ........................................................................... 13

*In re Yukos Oil Co.*,
   321 B.R. 396 (Bankr. S.D. Tex. 2005) ............................................................................ 9

- ii -

2294240

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp. (In re Ambanc La Mesa Ltd. Pshp.)*,
   115 F.3d 650 (9th Cir. 1997), *cert denied*, 522 U.S. 1110 (1998) ............................................ 6

*Marshall v. Marshall (In re Marshall)*,
   721 F.3d 1032 (9th Cir. 2013) .................................................................................................. 9

*Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*,
   314 F.3d 1070 (9th Cir. 2002) .................................................................................................. 9

*Wiersma v. O.H. Kruse Grain & Milling (In re Wiersma)*,
   324 B.R. 92 (Bankr. 9th Cir. 2005) .......................................................................................... 7

**STATUTES**

11 U.S.C. § 1115 ............................................................................................................................ 13

11 U.S.C. § 1123(a)(8) ............................................................................................................. 1, 13

11 U.S.C. § 1129 ....................................................................................................................... 6, 13

11 U.S.C. § 1129(a) ........................................................................................................................ 6

11 U.S.C. § 1129(a)(3) ................................................................................................................... 9

11 U.S.C. § 1129(a)(11) ............................................................................................................. 6, 7

11 U.S.C. § 1129(a)(15) ................................................................................................... 1, 12, 13, 14

11 U.S.C. § 1141(d) ...................................................................................................................... 10

11 U.S.C. § 1141(d)(5) ...................................................................................................... 1, 10, 11

11 U.S.C. § 1141(d)(5)(A) ........................................................................................................... 10

**OTHER AUTHORITIES**

H.R. Rep. No. 5-595, 95th Cong., 1st Sess. 412 (1977) ................................................................. 6

S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978) .................................................................... 6

**RULES**

Bankruptcy Rule 9019 .................................................................................................................. 14

Liuhuan Shan ("Ms. Shan"), by and through her undersigned counsel, hereby submits this objection (the "Objection") to the *Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 464] (the "Plan"),[1] and in support hereof respectfully represents as follows:

## PRELIMINARY STATEMENT

The Plan should not be confirmed because, from Ms. Shan's perspective as the holder of mostly unsecured claims, it depends for its success on variables which have not been quantified or demonstrated, through admissible evidence, to be more likely than not to be achieved.

The Plan provides for extraordinary relief for the Debtor's personal benefit to the detriment of creditors, which is highly inappropriate under the circumstances in two important ways. First, the Plan violates the Bankruptcy Code by not requiring the Debtor, who is an individual, to contribute his post-petition earnings to pay claims which are not otherwise paid in full or where such earnings apparently exceed the value of the distribution the creditors are to receive as of the Effective Date. *See* 11 U.S.C. §§ 1123(a)(8) (requiring individual debtors to contribute disposable income as necessary to fund the plan) and 1129(a)(15) (the five years of disposable income threshold requirement). As this Court well knows, Congress in its wisdom revised the Bankruptcy Code in 2005 to impose this "disposable income" requirement on individual debtors as a condition to receiving plan confirmation. This Debtor has by fiat and hubris ignored this requirement. Second, and perhaps even more egregious under the circumstances, the Plan provides for the Debtor to receive an early discharge upon the Plan's Effective Date under section 1141(d)(5), rather than only after the payments provided for under the Plan have been made. The Debtor provides no cogent rationale to justify this extraordinary relief, and there is no basis for this Court to grant such relief absent a strong showing of "cause," which the Debtor has not made. In the sole reported decision upon which the Debtor relies,

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

1

where a bankruptcy court was convinced to grant an early discharge for an individual debtor, the court did so only after the debtor demonstrated that the creditors would in fact be paid.  That result was consistent with the requirement of holding back the discharge until after the payments have been made or otherwise assured.  Without the incentive to assure that the payments for which the Plan calls are actually made, it is true *a priori* that it is less likely those payments will be made.

Here, not only has the Debtor failed to demonstrate extraordinary circumstances that qualify as cause from a business perspective, or otherwise demonstrated how an early discharge would be beneficial to any parties in interest other than the Debtor himself, the Plan militates against a showing that any distribution will actually be received by unsecured creditors.  The Plan does so both by linking the possibility of any distributions to an initial public offering (the "IPO") for Faraday Future and by requiring creditors themselves to take affirmative actions prior to the Debtor being able to do business on behalf of Faraday Future in the Peoples' Republic of China (the "PRC"), a jurisdiction described by the Debtor as "an essential market for [Faraday Future]'s development and future growth."  Disclosure Statement, at p. 39:8.  The Debtor's failure to allocate any of his post-confirmation disposable income to the payment of creditor claims further evidences the lack of good faith with which the Debtor has proposed his Plan.  Thus, the posture and substance of the Plan strongly support the conclusion that if ever there was a circumstance when the individual debtor should <u>not</u> be granted an early discharge, this is that case.

The proposed recovery for holders of general unsecured claims is highly speculative because it depends upon critical variables which are neither explained nor adequately provided for in the Plan.  Specifically, the distribution from the proposed Trust to holders of Allowed Debt Claims depends on a successful IPO by Faraday Future, a business which has never generated any revenue or sales, and whose business will depend in large measure (according to the Debtor) on business activity in the PRC, a precondition of which appears to be the removal of the Debtor

- 2 -

2294240

from the "China Debtor List," known as the "List of Dishonest Judgement Debtors" in the PRC. The Plan does not provide for the means for the IPO to be successfully achieved, it fails to identify any willing underwriter(s) or prospective and able investors, nor does it define a date certain by which the IPO must be achieved.

The Plan also contains the novel requirement – which does not appear to be supported by any precedent in this Circuit or otherwise – that creditors must expend their own personal and financial resources, in an unknown amount, to take affirmative actions in the PRC in order to receive the distribution under the Plan; namely, they are required to request the Debtor's removal from the "China Debtor List," in order for the Debtor and Faraday Future to be permitted to do business in the PRC.  In this sense, the Plan is fundamentally unfair because it does not provide for the creditors to be compensated for the actions they are required to take as a condition to receiving any distribution from the Trust, nor does the Plan quantify the time and expense creditors would be required to expend in this regard.  Moreover, it is unclear whether the relevant authorities in the PRC will even extend comity to the commitments made by the supporters of the Plan, given the Debtor's reputation in the PRC.

Not only does the Plan fail to ensure that the Debtor will in fact ever be removed from the China Debtor List, it does not indicate how many creditors are required to take the affirmative action to remove the Debtor from the China Debtor List.  Nor does the Plan indicate the consequences in the event the actions are not taken by the requisite number of creditors to successfully cause the Debtor's removal from the China Debtor List.

Specifically, the Plan does not address what happens in the event fewer than 100% of the unsecured creditors take the affirmative action to remove the Debtor from the China Debtor List. If 100% creditor participation is required, it would be useful to know whether the affected creditors have been 100% active in this case.  The Confirmation Motion does not state whether 100% of these creditors who would be required to take action in the PRC returned ballots voting

- 3 -

2294240

on the Plan.  This failure of evidence further demonstrates the Debtor's failure to make an appropriate feasibility showing.

For the foregoing reasons, confirmation of the Plan must be denied.

### **BACKGROUND OF MS. SHAN'S $111.5 MILLION IN CLAIMS**

On January 24, 2020, Ms. Shan timely filed three separate proofs of claim against the Debtor, designated as claim numbers 57, 58, and 59 (collectively, the "Claims"), stating claims in the aggregate amount of $111,541,210, which does not include applicable interest, fees, and costs.[2]

**Claim No. 57**

Ms. Shan's proof of claim number 57 was filed in the amount of $6,860,810 ("Claim No. 57").  This claim is deemed allowed; indeed, the Debtor scheduled this claim without qualification (neither contingent, nor unliquidated, nor disputed) in the amount of $6,993,006.99. *See Schedules of Assets and Liabilities and Statement of Financial Affairs* [Dkt. No. 28] (the "Schedules"), Schedule D at p. 13 (PDF at p. 32), § 2.2.

The Debtor's liability with respect to Claim No. 57 arises from a loan agreement, dated March 27, 2017, entered into between Yuanxin Xu and LeTV Holdings (Beijing) Co., Ltd. ("LeTV") for the amount of CNY50,000,000 (together with six supplemental agreements, the "Loan Agreement").  Contemporaneously, the Debtor guaranteed the loan amount and executed a separate share pledge agreement, dated March 27, 2017, pursuant to which he pledged 2,910,000 executive shares in LeTV Information and Technology (Beijing) Co., Ltd.  LeTV ultimately borrowed CNY48,500,000, or $6,860,810, under the Loan Agreement.  On November 5, 2019, Yuanxin Xu assigned his claims against the Debtor to Ms. Shan.

---

[2] All U.S. dollar amounts set forth herein were, as relevant, calculated as of the Petition Date using the exchange rate of 1 Chinese Yuan Renminibi (CNY) = 0.14146 USD. *See* Exchange Rates, WORLD CURRENCY EXCH. RATES & CURRENCY EXCH. RATE HISTORY, https://www.exchange-rates.org/Rate/CNY/USD/10-14-2019 (last visited May 5, 2020).

- 4 -

2294240

**Claim No. 58**

Ms. Shan's proof of claim number 58 was filed in the amount of $42,438,000 ("Claim No. 58"). The Debtor's liability with respect to Claim No. 58 arises from the Debtor's guaranty of certain obligations arising from a loan agreement between LeTV and Beijing Haidian Technology Finance Capital Holding Group Co., Ltd. ("BHT"), dated March 12, 2017 (the "Entrusted Loan Agreement"). Pursuant to the "Entrusted Loan Agreement," BHT loaned LeTV CNY300,000,000, or $42,438,000, guaranteed by (i) the Debtor; (ii) Peng Shi; and (iii) Hong Liu (Ms. Shan's spouse) on a personal unlimited joint and several liability basis. The Debtor provided a counter-guarantee to Hong Liu to be personally liable for any amounts incurred by Hong Liu in connection with Hong Liu's guarantee of the BHT liability. On November 5, 2019, Hong Liu assigned his claims against the Debtor to his spouse, Ms. Shan.[3]

**Claim No. 59**

Ms. Shan's proof of claim number 59 was filed in the amount of $62,242,400 ("Claim No. 59"). The Debtor's liability with respect to Claim No. 59 arises from three separate transactions, each structured and documented in the same fashion. Specifically, Hong Liu entered into a series of share pledge repurchase agreements with three separate parties pursuant to which he pledged certain shares in exchange for loans to fund LeTV. In connection with each of these transactions, the Debtor solicited Ms. Shan to execute certain spousal guarantees. The three counterparties and the respective loan amounts are as follows: (i) Changjiang Securities (Shanghai) Asset Management Co., Ltd. in the amount of CNY100,000,000; (ii) Founder

---

[3] It appears that two unauthorized claims were filed in this case and may have been used to vote on the Plan. The first is a claim purporting to have been filed by Hong Liu, Ms. Shan's spouse, who had assigned the claim to Ms. Shan and was timely filed as Claim No. 58. The second was purported to have been filed by Peng Shi, who was also a co-guarantor with the Debtor in connection with the BHT liability. Both Hong Liu and Peng Shi confirmed to Ms. Shan that neither authorized the filing of any claims in the Debtor's Chapter 11 Case. This information was provided to Debtor's counsel prior to the voting deadline, and counsel has inquired of Debtor's counsel, who has provided no substantive response. If confirmed, the balloting with respect to the Plan may have been compromised.

- 5 -

2294240

Securities Co., Ltd. in the amount of CNY100,000,000; and (iii) Western Securities Co., Ltd. in the amount of CNY240,000,000.  The filed amount of Claim 59 reflects the aggregate outstanding balance of each of the loan amounts.

### 1. ARGUMENT

The Debtor must satisfy all of the requirements under section 1129(a) of the Bankruptcy Code in order to obtain confirmation of the Plan.  *See* 11 U.S.C. § 1129.[4]  The Debtor bears the burden of proof by the preponderance of evidence "on all essential elements for confirmation." *In re Anderson*, 2012 Bankr. LEXIS 3539, at *13 (Bankr. D. Mont. Aug. 1, 2012).  "The bankruptcy court ha[s] an affirmative duty to ensure that the Plan satisfie[s] all 11 U.S.C. [section] 1129 requirements for confirmation." *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp. (In re Ambanc La Mesa Ltd. Pshp.)*, 115 F.3d 650, 653 (9th Cir. 1997), *cert denied,* 522 U.S. 1110 (1998).  Under section 1129(a) of the Bankruptcy Code, a "bankruptcy court shall confirm a plan only if the plan complies with the applicable provisions of chapter 11." *In re Commercial W. Fin. Corp.*, 761 F.2d 1329, 1338 (9th Cir. 1985) (citing 11 U.S.C. § 1129(a)(1)).

The Debtor has failed to meet his burden under section 1129 of the Bankruptcy Code.

#### A. The Plan Fails to Satisfy the Feasibility and Good Faith Requirements

The requirement that creditors take affirmative actions in the PRC to have the Debtor removed from the "China Debtor List" (*see* Plan, at pp. 55-56) raises both feasibility and bad faith concerns.

(1) The Plan Fails to Satisfy 11 U.S.C. § 1129(a)(11)

Section 1129(a)(11) allows a bankruptcy court to confirm a plan of reorganization only if it is more likely than not that "[c]onfirmation of the plan is not likely to be followed by the

---

[4] *See In re Art & Architecture Books of the 21st Century*, 2016 Bankr. LEXIS 859, at *22 (Bankr. C.D. Cal. Mar. 18, 2016) ("The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of Sections 1122 and 1123 of the Bankruptcy Code, which are the substantive provisions most relevant in satisfying section 1129(a)(1)") (citing H.R. Rep. No. 5-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978)).

- 6 -

2294240

liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan." 11 U.S.C. § 1129(a)(11). To satisfy this feasibility requirement, the Debtor must demonstrate that the plan "has a reasonable probability of success." *Hamilton v. Elite of L.A., Inc. (In re Hamilton)*, 2020 U.S. App. LEXIS 8246, at *3 (9th Cir. Mar. 16, 2020) (quotation omitted).

Courts consider several factors in evaluating the feasibility of a plan: "(1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan." *Wiersma v. O.H. Kruse Grain & Milling (In re Wiersma)*, 324 B.R. 92, 113 (Bankr. 9th Cir. 2005). Thus, the "purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985).

Since the Debtor's first version of the Plan, viability of the Plan has depended on the future success of an over-leveraged company that has not sold one car to date. The Plan is contingent entirely on the uncertain success of Faraday Future, both here and in the PRC where it predicts its largest market is located. However, to date, the Plan appears to be nothing more than a sales pitch for a presently defunct company with not a single dollar of profit or revenue.

Before it is even possible for Faraday Future to do business in the PRC, it appears that the Debtor must be removed from the China Debtor List, which is akin to a "blacklist" in part restricting an individual's ability to engage in business in the PRC. To effect his removal, the distribution rights of holders of allowed claims are partially conditioned on the satisfaction of the China Debtor List Covenant. The China Debtor List Covenant requires holders of allowed claims (rather than the Debtor) to submit an affidavit, *within 90 days from the Effective Date*, certifying that it notified the applicable PRC court of the settlement reflected in the Plan by and

2294240

between each such holder and the Debtor, and request the Debtor's removal from the China Debtor List and the release of certain China Restrictions. Further, details of exactly what actions are required by creditors in the PRC are nowhere to be found in the Plan. Nor does the Plan (i) describe exactly what will be required for the release of the certain China Restrictions; (ii) provide for any compensation to the creditors for undertaking the action required to remove the Debtor from the China Debtor List; (iii) provide any detail about the number of creditors required to take action to achieve the Debtor's removal from the China Debtor's List; (iv) address what happens if the Debtor is not removed from the China Debtor's List; or (v) address whether the relevant authorities in the PRC will even extend comity to the commitments and obligations created under the Plan.

Instead of addressing these issues, the Plan requires the holders of Debt Claims themselves, prior to receiving any distribution under the Plan, to take certain actions in the PRC which are meant to have the Debtor removed from the China Debtor List. As of the filing of this Objection, it is unclear how many of the creditors in the PRC are needed to have the Debtor removed from the China Creditor List, and how many of these creditors have participated in this Chapter 11 Case and/or voted on the Plan.

The mere failure to provide adequate assurances that creditors will actually take these steps post-confirmation not only indicates the Plan is suspect but goes to the heart of whether the Plan even has a reasonable prospect to succeed, particularly when coupled with the lack of future financing and the requirement of a successful IPO prior to any distributions where neither underwriter(s) nor willing and able investors have been identified.

Because feasibility is closely tied to the success of Faraday Future, and such success is closely tied to the PRC, the Debtor has failed to demonstrate a reasonable probability of the Plan's success and thus failed to satisfy the Debtor's required showing of feasibility which is a condition to confirmation of the Plan.

2294240

   (2) <u>The Plan Fails to Satisfy 11 U.S.C. § 1129(a)(3)</u>

Under section 1129(a)(3) of the Bankruptcy Code, a plan must be proposed "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). "A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002) (rejecting use of *per se* rules in determining whether good faith exists). A plan "also requires a fundamental fairness in dealing with one's creditors." *In re Jorgensen*, 66 B.R. 104, 108-09 (Bankr. 9th Cir. 1986). "The courts may consider any factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions." *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1048 (9th Cir. 2013) (quotation omitted). Thus, bankruptcy courts "must consider the totality of the circumstances of a particular case in assessing the debtor's good faith." *Comput. Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 197 (Bankr. 9th Cir. 2003); *and In re Yukos Oil Co.*, 321 B.R. 396, 410 (Bankr. S.D. Tex. 2005).

Here, the Plan is not consistent with the objectives and purposes of the Bankruptcy Code, nor is the Plan fundamentally fair when it comes to the Debtor's creditors. The Plan does not require the Debtor to contribute his disposable income which may be greater than the distribution to be received by unsecured creditors who hold Debt Claims in the event the visionary scheme of the IPO and/or the Debtor's removal from the China Debtor List is not achieved. Moreover, the Plan provides for the early discharge before the payments under the Plan have been received despite that the Debtor is an individual.

In exchange for being entitled to receive an unknown distribution in future years, the creditors will be required under the Plan to expend time, effort, and money – in amounts unknown and not quantified by the Plan or Disclosure Statement – for the immediate benefit of only the Debtor himself. Thus, the Plan is constructed to provide a benefit to the Debtor personally, at the cost of each creditor, even in the event Faraday Future is unable to obtain

- 9 -

2294240

financing and conduct a successful IPO.  In obligating each of the holders of Debt Claims to commit to such a course of action in hopes of receiving even an unquantified chance of an unquantified distribution, the Plan smacks of "fundamental unfairness" for claimants owed billions and lack of good faith as well as abuse of judicial process.

Thus, the Debtor has proposed a Plan that violates section 1129(a)(3).

**B.    The Debtor is Not Entitled to the Extraordinary Remedy of an Early Discharge Pursuant to 11 U.S.C. § 1141(d)(5)**

The Debtor's Plan fails to satisfy the high burden in this Circuit required to earn an early discharge <u>prior</u> to completing all payments due thereunder.

Preliminarily, the discharge of debt in chapter 11 is governed by section 1141(d) of the Bankruptcy Code, which states "the confirmation of a plan—discharges the debtor from any debt that arose before the date of such confirmation . . . ."  11 U.S.C. § 1141(d).

Section 1141(d)(5) of the Bankruptcy Code qualifies and conditions this discharge in the case of individuals as follows:

> [i]n a case in which the debtor is an *individual*—(A) unless after notice and a hearing the court orders otherwise *for cause*, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan.

11 U.S.C. § 1141(d)(5)(A) (emphasis added).

Generally, "'cause' must be determined based on the totality of facts and circumstances of each case," but at minimum, "<u>*a debtor must show the ability to make plan payments with 'a high degree of certainty*</u>.'"  *In re Grogan*, 2013 Bankr. LEXIS 3796, at *22 (Bankr. D. Or. Sep. 10, 2013) (emphasis added) (citing *In re Detweiler*, 2012 Bankr. LEXIS 5501, at *10 (Bankr. N.D. Ohio Nov. 27, 2012)).  This requirement that payments under a plan are assured of being received before an individual debtor receives a discharge reflects a Congressionally-imposed incentive for the debtor to cause the plan payments to be made.  This is why in ascertaining "cause" for purposes of section 1141(d)(5)(A), courts are called upon to determine the "likelihood that the debtors will make all of their plan payments and the assurance, in the form of

- 10 -

2294240

1  collateral, that creditors will receive the amount they have been promised even if the payments
2  are not made." *In re Beyer*, 433 B.R. 884, 888 (Bankr. M.D. Fla. 2009) (holding "unknown,
3  potential federal tax liability," which might be incurred upon surrender of real estate collateral to
4  secured creditors in full satisfaction of obligations, insufficient to support early discharge); *In re*
5  *Ball*, 2008 Bankr. LEXIS 1532, at *10 (Bankr. N.D.W. Va. May 23, 2008) (holding cost of
6  quarterly fees to U.S. Trustee and administrative burden of filing post-confirmation reports did
7  not constitute "cause").

8  Here, the Debtor's own brief in support of confirmation readily demonstrates why an
9  early discharge should not be granted in the Debtor's case. In *In re Sheridan*, cited by the
10 Debtor, an individual chapter 11 debtor established cause for an early discharge under section
11 1141(d)(5) by providing means to insure that the plan payments would be made to creditors,
12 namely, the debtor there granted all unpaid creditors security interests in property sufficient to
13 cover the remaining debt outstanding. 391 B.R. 287, 291 (Bankr. E.D.N.C. 2008).

14 No collateral is offered under the Plan. Far from it; there is no income on the horizon to
15 fund the Plan. *See also In re Beyer*, 433 B.R. at 888 (citing *In re Sheridan*, 391 B.R. at 291
16 (noting that "[o]nly one court, to date, has granted an individual Chapter 11 debtor's request for
17 an early discharge")).

18 The Confirmation Motion does not recite any other reported decision(s) where a
19 bankruptcy court found cause to grant an individual debtor an early discharge. The Debtor
20 recites <u>no case</u> whatsoever where a bankruptcy court granted an early discharge for an individual
21 despite the absence of *any* assurance that creditors would be paid under the plan. There are no
22 circumstances presented here that justify providing this individual Debtor with the highly novel,
23 unique, and almost unprecedented relief of a discharge before plan payments have been made
24 especially where, as here, the Debtor has also failed to demonstrate that his Plan is even feasible,
25 much less likely to be fulfilled.

- 11 -

2294240

As noted, the Debtor's argument that "creditor recoveries are dependent on the success of [Faraday Future], the fate of which depends on the Debtor receiving such releases and discharge" (Confirmation Motion 10:22–25), is unavailing. The Debtor's argument fails to explain why an immediate discharge is outcome-determinative of the success of Faraday Future where anyone who cares about the treatment of the Debtor's claims could simply refer to the Plan which, upon confirmation, would demonstrate that such claims have been provided for consistent with applicable U.S. law.

Although undoubtedly beneficial for this individual Debtor, the Plan does not make any compelling case as to how creditors would be benefited by granting the Debtor an early discharge especially in light of the fact that such extraordinary relief undermines the incentive the Debtor would otherwise have to cause the payments under the Plan to be made.

Thus, the Debtor is not entitled to an early discharge pursuant to section 1141(d)(5).

### C. The Plan Fails to Satisfy 11 U.S.C. § 1129(a)(15)

The Plan does not satisfy section 1129(a)(15) of the Bankruptcy Code because the Debtor has failed to demonstrate that the property to be distributed under the Plan to the Debt Claims exceeds the Claims <u>or</u> the Debtor's disposable income over the next five years.

Pursuant to section 1129(a)(15), in a case in which the debtor is an individual and the holder of an allowed unsecured claim objects to confirmation of the plan, the disposable income threshold distribution requirement is triggered. Thus, the Debtor is required to demonstrate that:

> (A) the value, *as of the effective date of the plan*, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

- 12 -

2294240

11 U.S.C. § 1129(a)(15) (emphasis added).[5]

Under section 1129 of the Bankruptcy Code, "a plan proponent faces the possibility that it can have an accepting class of unsecured creditors, but still have to meet the disposable income test of [section 1129(a)] paragraph 15 due to the objection of *just one of those creditors*." *In re Shat*, 424 B.R. 854, 866 (Bankr. D. Nev. 2010) (emphasis in original).

The Debtor has failed to demonstrate that the Plan satisfies either subsection of section 1129(a)(15).

First, as set forth above, the Trust Assets that are ostensibly to be distributed to the creditors consist primarily of shares of and rights to Faraday Future. Arguably, until numerous hurdles are overcome to reach a successful IPO, such interests have zero recognizable value *as of the Effective Date of the Plan* from the perspective of the holders of Allowed Debt Claims.

As of the Effective Date, it appears that the only tangible non-contingent value in the Trust will consist of the Exit Financing and the first Wei Gan contribution in the amount of $1,000,000, to be included in the "Trust Assets." However, pursuant to section 6.2(h) of the Plan, "[t]he professional fees, costs, and other expenses incurred by the Trustee in connection with the administration of the Trust shall be paid from the proceeds of the Exit Financing and the relevant Trust Assets." As of the Effective Date, it does appear that there are any assets earmarked for distribution to the creditors which have any tangible value, let alone value exceeding the amount of Ms. Shan's unsecured Claims.

Second, the Debtor has failed to demonstrate that the value of the property in the Trust to be distributed to creditors is more than his disposable income over the five-year period after the

---

[5] Congressional intent to require individual debtors to make a reasonable personal sacrifice in the nature of "best efforts" to pay claims is also manifested in section 1123(a)(8), which demands individual debtors pay all "earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan." 11 U.S.C. § 1123(a)(8); *see also* 11 U.S.C. § 1115 (classifying postposition earnings as property of the estate).

Effective Date. As reflected in Exhibit G of the Disclosure Statement, the Debtor states he will earn over $6 million dollars over the next five years (consisting of salary and rental income).

The Debtor's argument that "in light of the Wei Gan Domestic Support Obligations and the Debtor's ongoing legal expenses, the Debtor does not project significant disposable income" is unresponsive for its failure to provide the substantive information necessary to calculate the relevant amounts. Nowhere in the Confirmation Motion or the Plan has the Debtor provided an analysis of his "disposal income" over the next five years or attempted to prove that section 1129(a)(15) has been satisfied.

Because the Debtor has not satisfied his burden of proving that section 1129(a)(15) has been met, the Plan is unconfirmable.

**D.    Reservation of Rights In Connection with Potential KCBI Settlements**

As set forth above, Claim No. 58 arises from a personal guarantee provided by Hong Liu in connection with a loan to LeTV from BHT. As a co-guarantor with the Debtor, Hong Liu is considered under the Plan as a "Key China Business Individual" ("KCBI"), while BHT is categorized as a "KCBI Claimant."

Pursuant to the Plan, a KCBI Settlement may be voluntarily entered into prior to the Confirmation Date under Bankruptcy Rule 9019 that, if entered, entitles BHT to an additional 5% of its Allowed Debt Claim. In exchange for such consideration, each KCBI Claimant will request the removal of the applicable KCBI from the China Debtor List and lift any China Restrictions against such applicable KCBI.

Prior to the Confirmation Hearing, a KCBI Settlement may be entered into with BHT which may adversely affect Claim No. 58 and/or Ms. Shan's rights and claims against the Debtor or third parties, such as BHT or the third co-guarantor, Peng Shi.

Thus, Ms. Shan hereby reserves all of her rights to object to any KCBI Settlement entered into by the Debtor.

- 14 -

2294240

**GENERAL RESERVATION OF RIGHTS**

Ms. Shan reserves all of her rights to object to the Plan on any grounds whatsoever, including her right to join in any other objection to confirmation of the Plan that has been, or may be, filed by any party in interest, to the same extent as if any such objection had been set forth herein in full, regardless of whether those ground are addressed herein. Ms. Shan further reserves her right to address the Plan and any other ancillary issues either by further submission to this Court, at oral argument, or by testimony, to be presented at the Confirmation Hearing or any other hearing.

**CONCLUSION**

For the foregoing reasons, Ms. Shan respectfully requests that the Court deny confirmation of the Plan, and grant such additional relief as the Court determines is just and proper.

DATED:  May 7, 2020

        **CURTIS, MALLET-PREVOST,**
          **COLT & MOSLE LLP**
        Lynn P. Harrison III
        Peter J. Buenger


        **BRUTZKUS GUBNER**

By:_____
        Jerrold L. Bregman
        Michael W. Davis

*Attorneys for Creditor Liuhuan Shan*

- 15 -

2294240

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled**: OBJECTION OF LIUHUAN SHAN TO DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **May 7, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Tanya Behnam     tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jeffrey W Dulberg     jdulberg@pszjlaw.com
- Stephen D Finestone     sfinestone@fhlawllp.com
- Alexandra N Krasovec     krasovec.alexandra@dorsey.com, claridge.vanessa@dorsey.com
- Ben H Logan     blogan@omm.com
- David W. Meadows     david@davidwmeadowslaw.com
- Kelly L Morrison     kelly.l.morrison@usdoj.gov
- Malhar S Pagay     mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Christopher E Prince     cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Randye B Soref     rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor     btaylor@taylorlawfirmpc.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Emily Young     pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On ___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**[Delivery to Judge is temporarily suspended, per Amended General Order 20-02]**

Honorable Vincent P. Zurzolo
United States Bankruptcy Court
Los Angeles Division - Roybal Federal Bldg.
255 East Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA  90012-3332

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 8, 2020 | JESSICA STUDLEY | /s/ Jessica Studley |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*            **F 9013-3.1.PROOF.SERVICE**