1  CHRISTOPHER E. PRINCE (SBN 183553)
       cprince@lesnickprince.com
2  LESNICK PRINCE & PAPPAS LLP
   315 West Ninth Street, Suite 705
3  Los Angeles, California 90015
   Telephone:  (213) 291-8984
4  Facsimile:  (213) 493-6596

5  DANIEL J. SAVAL (*pro hac vice*)
       daniel.saval@kobrekim.com
6  DONG NI (DONNA) XU (*pro hac vice*)
       donna.xu@kobrekim.com
7  KOBRE & KIM LLP
   800 Third Ave
8  New York, NY 10022
   Telephone:  (212) 488-1200
9  Facsimile:  (212) 488-1220

10 Attorneys for Creditor
   Shanghai Lan Cai Asset Management Co, Ltd.
11

12              **UNITED STATES BANKRUPTCY COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14                 **LOS ANGELES DIVISION**

15

16 In re:                          |  Case No. 2:19-BK-24804-VZ

17 YUETING JIA,                     |  **SHANGHAI LAN CAI ASSET
                                    |  MANAGEMENT CO, LTD.'S
18                                  |  OBJECTION TO DEBTOR'S MOTION
                        Debtor.     |  FOR CONFIRMATION OF THE
19                                  |  THIRD AMENDED PLAN OF
                                    |  REORGANIZATION UNDER
20                                  |  CHAPTER 11 OF THE BANKRUPTCY
                                    |  CODE
21
                                    |  Hearing:
22                                  |  Date:  May 21, 2020
                                    |  Time: 9:30 a.m.
23                                  |  Place: Courtroom 1368
                                    |       Edward R. Roybal Federal Building
24                                  |       255 East Temple Street
                                    |       Los Angeles, California 90012
25                                  |  Judge: Honorable Vincent P. Zurzolo

26

27

28

KOBRE & KIM LLP
ATTORNEYS AT LAW

1

## TABLE OF CONTENTS

2    PRELIMINARY STATEMENT.................................................................................. 1

3    ARGUMENT ......................................................................................................... 3

4    I.    The Debtor Fails to Meet Section 1125(a)(15)'s Requirement That He Provide Five
         Years' Worth of Disposable Income Toward His Plan and Distributions to Creditors ...... 3

5    II.   The Wei Gan Settlement Should Not Be Approved Because It Contains an Impermissibly
6         Broad Release for Jia's Wife and is Impermissible Under Section 524(e)..................... 5

7    III.  The Plan Does Not Serve The Best Interests of Creditors Under Section 1129(a)(7)........ 7

8         A.    The Plan Cannot Serve Creditors' Best Interests Given The Remote Possibility
               That Creditors Will See Any Recovery ................................................... 8

9         B.    The Debtor Fails to Show That The Plan Provides Each Impaired Creditor Value
               Not Less Than That Creditor Would Receive Under Chapter 7 ............................ 8
10

11   IV.   The Debtor's Chapter 11 Plan is Not Feasible Under Section 1129(a)(11)..................... 13

12        A.    The BVI Freezing Orders Against Non-Debtors FF Top and FF Peak Impair the
               Debtor's Ability to Effect the Transactions Contemplated Under the Plan.......... 14

13        B.    The Plan Does Not Provide For the Full Payment of Debts Asserted to be Non-
               Dischargeable ............................................................................... 17

14   V.    The Plan Violates the Bankruptcy Axiom That Similarly Situated Creditors Must be
15        Treated Similarly......................................................................................... 17

16        A.    The Debtor's Choice to Leave the Freezing Orders of Hundreds of Millions of
               Dollars' Worth of Assets Discriminates Between Judgment Creditors Based on
17             Geography .................................................................................... 18

18        B.    The Debtor Has Not Demonstrated That Creditors Within a Class are Treated the
               Same ......................................................................................... 19

19   VI.   The Plan Fails To Satisfy Section 1129(a)(10)'s Requirement That an Impaired Class
20        Must Accept the Plan Without Regard to Insider Votes .................................... 20

     VII.  The Chapter 11 Plan Was Not Proposed in Good Faith Nor By Lawful Means .............. 21
21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),*

   885 F.2d 621 (9th Cir.1989) ........................................................................................... 6

*Beiger v. IRS,*

   496 U.S. 53 (1990) ........................................................................................................ 19

*Commercial Wholesalers, Inc. v. Investors Commercial Corp.,*

   172 F.2d 800 (9th Cir.1949) ........................................................................................... 6

*First Southern Nat'l Bank v. Sunnyslope Hous. Ltd. P'ship (In re Sunnyslope Hous. Ltd. P'ship),*

   859 F.3d 637 (9th Cir. 2017) ....................................................................................... 13

*Garvin v. Cook Invs. NW, SPNYW, LLC,*

   922 F.3d 1031 (9th Cir. 2019) ..................................................................................... 23

*In re Acequia, Inc.,*

   787 F.2d 1352 (9th Cir. 1986) ..................................................................................... 13

*In re Art & Architecture Books of the 21st Century,* No. 2:13-BK-14135-RK,

   2016 WL 1118743 (Bankr. C.D. Cal. Mar. 18, 2016) ................................................... 4

*In re Brown,*

   498 B.R. 486 (Bankr. E.D. Pa. 2013), *aff'd,* 505 B.R. 638 (E.D. Pa. 2014) ................ 4

*In re Hamilton,*

   No. 18-60043, 2020 WL 1244256 (9th Cir. Mar. 16, 2020) ....................................... 17

*In re Jorgensen,*

   66 B.R. 104 (9th Cir. B.A.P. 1986) ............................................................................. 22

*In re JWJ Contracting Co., Inc.,*

   371 F.3d 1079 (9th Cir. 2004) ..................................................................................... 18

*In re Kamell,*

    451 B.R. 505 (Bankr. C.D. Cal. 2011) ..................................................................... 4

*In re Keller,*

    157 B.R. 680 (Bankr.E.D.Wash.1993) .................................................................. 6

*In re Kemp,*

    134 B.R. 413 (Bankr. E.D. Cal. 1991) .......................................................... 13, 22

*In re Lowenschuss,*

    67 F.3d 1394 (9th Cir. 1995) .................................................................................. 6

*In re Rexford Properties, LLC,*

    557 B.R. 788 (Bankr. C.D. Cal. 2016) ................................................................. 20

*In re Rinard,*

    451 B.R. 12 (Bankr. C.D. Cal. 2011) ................................................................... 19

*In re Shat,*

    424 B.R. 854 (Bankr. D. Nev. 2010) ..................................................................... 4

*In re Silberkraus,*

    253 B.R. 890 (Bankr. C.D. Cal. 2000), *subsequently aff'd,* 336 F.3d 864 (9th Cir. 2003) .......... 3

*In re Sylmar Plaza, L.P.,*

    314 F.3d 1070 (9th Cir. 2002) .............................................................................. 22

*In re The Vill. at Lakeridge, LLC,*

    814 F.3d 993, 999 (9th Cir. 2016) ........................................................................ 20

*In re Way to Grow, Inc.,*

    610 B.R. 338 (D. Colo. 2019) .............................................................................. 23

*Leavitt v. Soto (In re Leavitt),*

    209 B.R. 935 (9th Cir. B.A.P. 1997), *aff'd,* 171 F.3d 1219 (9th Cir.1999) ................................. 3

*Martin v. Kane (In re A & C Properties)*,

    784 F.2d 1377 (9th Cir. 1986) .................................................................................................. 7

*Mujica v. AirScan Inc.*,

    771 F.3d 580 (9th Cir. 2014) .................................................................................................. 14

*Newbery Corp. v. Fireman's Fund Ins. Co.*,

    95 F.3d 1392 (9th Cir. 1996) .................................................................................................. 19

*Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto*

    *Parts, Inc.)*,

    113 B.R. 610 (9th Cir. B.A.P. 1990) ...................................................................................... 6

*Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.)*,

    171 B.R. 71 (9th Cir. B.A.P. 1994) ........................................................................................ 6

*Underhill v. Royal*,

    769 F.2d 1426 (9th Cir.1985) .................................................................................................. 6

**Statutes**

11 U.S.C. § 101(31) ....................................................................................................... 20, 21

11 U.S.C. § 524 .................................................................................................................. 6, 7

11 U.S.C. § 1123(a)(4) ................................................................................................... 18, 20

11 U.S.C. § 1123(a)(5) ......................................................................................................... 17

11 U.S.C. § 1123(b)(3)(A) ..................................................................................................... 7

11 U.S.C. § 1129 .................................................................................................................... 3

11 U.S.C. § 1129(a)(1) ............................................................................................... 17, 18, 20

11 U.S.C. § 1129(a)(10) ................................................................................................... 20, 21

11 U.S.C. § 1129(a)(3) ..................................................................................................... 22, 23

11 U.S.C. § 1129(a)(7) ......................................................................................................... 13

KOBRE & KIM LLP
ATTORNEYS AT LAW

11 U.S.C. § 1129(a)(7)(A) .......................................................................................................... 7

11 U.S.C. § 1129(a)(15) ......................................................................................................... 4, 5

**Other Authorities**

7 Collier on Bankruptcy ¶ 1129.02 (16th Ed. 2020) ................................................................. 9

9 Collier on Bankruptcy ...................................................................................................... 13

KOBRE & KIM LLP
ATTORNEYS AT LAW

**TO THE HONORABLE VINCENT P. ZURZOLO; THE DEBTOR; THE**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS; THE OFFICE OF THE**

**UNITED STATES TRUSTEE; AND PARTIES REQUESTING SPECIAL NOTICE**

Shanghai Lan Cai Asset Management Co, Ltd. ("Shanghai Lan Cai" or "SLC") respectfully submits this objection to Debtor's Motion for Order (I) Confirming Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and (II) Approving Settlement Pursuant to Section 9019; Request for Discharge on the Effective Date [Dkt. No. 657] (the "Motion") and to the Debtor's Third Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Dkt. No. 464], and respectfully submits the following:

## PRELIMINARY STATEMENT

The Debtor's Plan[1] cannot and should not be confirmed because it fails to satisfy several requirements of Bankruptcy Code Section 1129 and because it is fundamentally inequitable.  The Plan gives creditors worthless frozen shares in Faraday & Future Inc. ("Faraday") in exchange for broad releases for the Debtor's ex-wife, a four-year prohibition on creditors bringing *any* new actions against the Debtor, and a discharge of the billions of dollars in claims.

To start, the Plan on its face does not comply with Section 1129(a)(15), because the Plan does not require that the Debtor put the next five years' worth of his disposable income towards funding the Plan—as he must.  In fact, the Plan seeks the very opposite: to insulate payments of approximately $2.3 million over the five-year period to his allegedly estranged wife, Wei Gan, through an impermissibly broad release and under the guise of a divorce settlement.  That release is in direct contravention of controlling authority in this Circuit holding that such a third-party release—*even if* agreed to by creditors—is improper under Section 524(e).

---

[1]    All terms not defined herein shall have the terms ascribed to them in the Motion or in the Debtor's Third Amended Plan (the "Plan") filed at docket number 464.

1    Just as the Debtor has failed to satisfy Section 1129(a)(15), the Debtor has also failed to

2  demonstrate that the Plan satisfies the "best interests" test in Section 1129(a)(7).  While Jia claims

3  that a Chapter 7 liquidation would not result in any recovery to creditors, the liquidation analysis

4  on which he bases his conclusion is inherently flawed: it does not account for any estate assets

5  other than interests in Faraday, nor does it attribute any value to Chapter 5 claims that are waived

6  under the Plan—including those against Wei Gan.  Moreover, his Plan calls for the creditors' trust

7  to *assume* any portion of the debtor-in-possession financing that remains unpaid as of the

8  effective date.  *See* Third Amended Plan [Dkt. No. 464] at 18–19.  Tellingly, the Motion does not

9  even attempt to suggest that the Debtor expects to receive sufficient exit financing to pay down

10  the DIP Facility.

11    In addition to these shortcomings, the Debtor has not even shown that the Plan is feasible

12  under Section 1129(a)(11).  The Plan is subject to certain pre-petition injunction orders (the "BVI

13  Injunctions") in the British Virgin Islands (the "BVI").  The effect of the BVI injunctions is to

14  prevent the Debtor from transferring the economic interests of Faraday to his proposed creditors'

15  trust.  In short, the Debtor has not shown that the Plan can deliver even the meager distributions it

16  proposes to give.

17    Similarly, the Plan likewise contravenes the well-settled bankruptcy principle that

18  similarly situated creditors should be treated similarly—that is, that there is no unfair

19  discrimination between creditors within the same class and that creditors that should receive equal

20  treatment do receive such treatment.  Here, judgment creditors are treated differently depending

21  on whether the judgments were obtained here in the U.S. (in which case the Debtor sought to

22  *undo* any resulting security interest) or in China (in which case the Debtor is permitting them to

23  *enforce* those security interests).  Indeed, the Debtor cannot even demonstrate whether similarly-

24  situated judgment creditors in China—the so-called "China Secured Claims"—will receive

comparable treatment, as he has made no disclosures to this Court concerning the status, outcome and implications of those litigations.  The Debtor has cited to no authority suggesting that such treatment is proper under the Bankruptcy Code—for the simple reason that he cannot.

Finally, even setting aside these critical failures, the Debtor has not established that creditors have accepted his Plan.  To show that an impaired class has consented to the Plan, under Section 1129(a)(10), the Debtor cannot count insider votes.  Thus, unless and until he can demonstrate that he has excluded all insiders from his vote count, the Plan cannot be approved.

For the reasons above and those set forth below, the Plan should be rejected.

## <u>ARGUMENT</u>

The Debtor's Plan is patently unconfirmable.  Not only is the Plan not feasible because the very pathway to creditor recovery—the receipt of indirect interests in Faraday—is barred by foreign court orders, but it likewise fails to provide for the fair and equitable treatment of creditors and to serve their best interests, among other failures.  The Debtor has not sustained his burden to demonstrate that the Plan satisfies each of the confirmation requirements set forth in Section 1129 of the Bankruptcy Code, as he must, and the Plan therefore cannot be approved. *See Leavitt v. Soto (In re Leavitt)*, 209 B.R. 935, 940 (9th Cir. B.A.P. 1997), *aff'd*, 171 F.3d 1219 (9th Cir. 1999) (Chapter 11 debtor bears burden of proving all elements governing plan confirmation are met); *In re Silberkraus*, 253 B.R. 890, 902 (Bankr. C.D. Cal. 2000), *subsequently aff'd,* 336 F.3d 864 (9th Cir. 2003) (same); *see also* March 19, 2020 Hr'g Tr. at 49:11–15 (court noting that Debtor "definitely" bears the burden of persuasion on plan confirmation).

## I.    The Debtor Fails to Meet Section 1125(a)(15)'s Requirement That He Provide Five Years' Worth of Disposable Income Toward His Plan and Distributions to Creditors

In direct contravention of the Bankruptcy Code, the Debtor proposes that *none* of his

future disposable income be included in the Plan.  Section 1123(a)(8) was added to the

Bankruptcy Code to prevent precisely this.  "Section 1123(a)(8) . . . provide[s] that, to be

confirmable, an individual debtor's plan must provide for the payment to creditors of all or such

portion of earnings from personal services or other future income of the debtor."  *In re Art &*

*Architecture Books of the 21st Century,* No. 2:13-BK-14135-RK, 2016 WL 1118743, at *12

(Bankr. C.D. Cal. Mar. 18, 2016); *In re Kamell*, 451 B.R. 505, 508 (Bankr. C.D. Cal. 2011)

("[U]nder § 1123(a)(8) debtors are now called upon to contribute all or a portion of post-petition

earnings to repay creditors[.]").

Section 1129(a)(15), in turn, provides that in individual debtor cases where an unsecured

creditor has objected to the plan, the value of the property to be distributed under the plan cannot

be less than the projected disposable income of the debtor during the 5-year period beginning on

the date the first payment is due under the plan, or during the period for which the plan provides

payments.  "Section 1123(a)(8) requires an individual chapter 11 debtor to include in the plan all

postpetition earnings from services as is necessary to fund the plan.  Section 1129(a)(15) then

requires, as a condition of confirmation, the provision of value equal to at least five years' worth

of projected disposable earnings to the plan if the holder of an allowed unsecured claim objects to

the plan."  *In re Shat*, 424 B.R. 854, 867 n. 43 (Bankr. D. Nev. 2010), *abrogated on other*

*grounds by Zachary v. California Bank. & Tr.*, 811 F.3d 1191 (9th Cir. 2016).

Similarly, the Debtor's own authority notes that in "an individual chapter 11 case, if the

debtor's proposed plan does not provide for payment in full of an allowed unsecured claim then,

upon the objection of that creditor to confirmation, the debtor's plan *must* provide for his or her

projected disposable income to be a component of plan funding for at least five years."  *In re*

*Brown*, 498 B.R. 486, 501–02 (Bankr. E.D. Pa. 2013), *aff'd*, 505 B.R. 638 (E.D. Pa. 2014) (cited

at Motion, at 26) (emphasis added).

Here, the Debtor argues that Section 1129(a)(15) is inapplicable because he does not

"project significant [ ] income," in part due to his ongoing legal expenses. *See* Motion at 25–26.

However, he concedes that he expects to be significantly *under* budget for professional fees in

this case by approximately $1 million. *See* Motion at 22. And, under the Wei Gan Settlement for

which he seeks approval in the Motion, he is seeking to divert away from his creditors another

$2.3 million in cash over the five-year period (the total amount of domestic support payments he

would make during that period under the settlement) that would otherwise be available to those

creditors. *See* Fourth Amended Disclosure Statement [Dkt. No. 465], at Exhibit G. Accordingly,

absent his commitment to put his true disposable income towards funding the plan process, the

Plan cannot be confirmed.

## II.    The Wei Gan Settlement Should Not Be Approved Because It Contains an Impermissibly Broad Release for Jia's Wife and is Impermissible Under Section 524(e)

The payments to Wei Gan that are excluded from his purported disposable income under

Sections 1123(a)(8) and 1129(a)(15) are further shielded through an improper release contained

in the Plan. Specifically, Article 6.6 of the Plan contains a release of Wei Gan (the Debtor's wife)

which is impermissibly broad under the Bankruptcy Code.

Under the Plan, Wei Gan is to contribute $1,250,000 to the creditor trust. *See* Third

Amended Plan [Dkt. No. 464] at 33:14–26. In exchange, Wei Gan will be deemed to have an

allowed debt claim of $250 million. *Id.* at 33:14–34:3. She will also receive approximately half a

million dollars a year from the Debtor. *See* Fourth Amended Disclosure Statement [Dkt. No.

465], at Exhibit G. On top of all that, each debt claim holder will be deemed to have released

"*any* Causes of Action against Wei Gan for personal liability or derivatively in its capacity as a

creditor of a claim owed solely or jointly by Wei Gan (including unwinding or alter ego type

claims) *in any jurisdiction* . . . on account of such Debt Claim or Late Filed Debt Claim" and

"agrees that it shall not assert any new, or continue to prosecute any existing, Wei Gan Claims related to such Debt Claim or Late Filed Debt Claim *in every jurisdiction.*"  Third Amended Plan [Dkt. No. 464] Article 6.6 at 34:4–13 (emphasis added).  Therefore, the Plan's proposed release of Wei Gan would be *binding on all creditors, whether or not they consent to the release and whether or not they voted in favor of the Plan.*

The Bankruptcy Court cannot confirm this Plan—or approve the Debtor's motion to approve the Wei Gan Settlement—because the Wei Gan Release is impermissibly broad and violates Section 524(e).  The Ninth Circuit has "repeatedly held, without exception, that 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors."  *In re Lowenschuss*, 67 F.3d 1394, 1401–02 (9th Cir. 1995) (citing *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.),* 885 F.2d 621, 626 (9th Cir.1989); *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985); *Commercial Wholesalers, Inc. v. Investors Commercial Corp.,* 172 F.2d 800, 801 (9th Cir.1949)) (applying 11 U.S.C. § 1129(a)(1) to deny release of claims against the debtor's children); *see, e.g.*, *Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.)*, 171 B.R. 71, 77 (9th Cir. B.A.P. 1994) (holding plans with releases for non-debtor guarantors violated § 524(e) and were therefore unconfirmable); *Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto Parts, Inc.)*, 113 B.R. 610, 614–17 (9th Cir. B.A.P. 1990) (reversing and remanding plan confirmation order because plan provision which enjoined creditors from proceeding against co-debtors violated § 524(e)); *In re Keller*, 157 B.R. 680, 686–87 (Bankr.E.D. Wash. 1993) (refusing to confirm plan containing non-debtor release).

Under Section 524(a), a Chapter 11 discharge releases the debtor from personal liability for any debts.  *See Lowenschuss*, 67 F.3d at 1401–02.  Section 524 "does not, however, provide for the release of *third parties* from liability; to the contrary, 524(e) specifically states that

'discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.'" *Id.* (citing 11 U.S.C. § 524(e)).  Here, significantly, the Plan purports to make the proposed release effective *even before* the Plan itself becomes effective.  *See* Third Amended Plan [Dkt. No. 464], at 50:11–17.

The Debtor makes no attempt to explain why the Wei Gan release does not fall plainly within the scope of impermissible releases pursuant to Section 524.  The Debtor also does not address the settled case law in the Ninth Circuit prohibiting precisely this type of release, because he cannot.  In his cursory motion to approve the Wei Gan Settlement, the Debtor merely runs through the factors set forth for approval of a settlement for claims belonging to the debtor or to the estate pursuant to Section 1123(b)(3)(A) set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986).  *See* Motion at 7.  But simple math dispels the Debtor's assertion that this settlement meets the touchstone test of whether it is "fair and equitable to the estate."  *See id.*  The Debtor's five-year budget shows that his annual domestic support obligations will total approximately $462,000 per year and approximately $6 million in total, while at the same time unsecured creditors will receive *no* cash under the Plan.  *See* Fourth Amended Disclosure Statement [Dkt. No. 465], at Exhibit G, 55–56.  And the release of Wei Gan would also insulate her from creditors recovering any pre-petition transfers made to her that would otherwise be an avoidable fraudulent or preferential transfer.

The Motion offers no legal justification for the release of a non-debtor third party, and there is none.  Because the release as to Wei Gan contemplated in Article 6.6 is impermissible, the Plan cannot be approved.

### III.    The Plan Does Not Serve The Best Interests of Creditors Under Section 1129(a)(7)

The Plan similarly cannot be confirmed because it does not serve the best interests of the creditors in this case, in contravention of Section 1129(a)(7).  *See* 11 U.S.C. § 1129(a)(7)(A).  To

the contrary, the success of the Plan in providing creditor distributions hinges, as described above, on a series of contingencies unlikely to come to fruition.  At best, creditors are likely to receive valueless, frozen assets in exchange for their discharge of the Debtor from his debts.  At worst, creditors could end up liable for millions of debtor-in-possession financing that will remain unpaid through exit financing—that is, the creditors could very well be worse off than if they had received nothing at all.  Thus, the Plan does not serve the best interests of creditors.

### A.  The Plan Cannot Serve Creditors' Best Interests Given The Remote Possibility That Creditors Will See Any Recovery

As the Debtor concedes, the possibility that creditors will receive any recovery at all is remote.  *See* Fourth Amended Disclosure Statement [Dkt. No. 465] at 94–143 (outlining significant risk factors impairing the likelihood of creditor recoveries).  And, as described above, the Debtor's proposal to issue to the creditors' trust its existing and new shares of Pacific Technology at best would result in the creditors receiving valueless, frozen assets.  *See supra* I.A.; *see also* de Swardt Decl. at ¶¶ 49–51.  Meanwhile, the Debtor's theory for why the Plan would provide additional value to creditors hinges on circumstances that are entirely self-manufactured (that the pendency of the Chapter 11 case deters Faraday investments) and in any event are belied by his own disclosures.  Specifically, the Debtor's own Disclosure Statement notes that only months before the petition date, he was able to obtain approximately $200 million in loans for Faraday.  *See* Fourth Amended Disclosure Statement [Dkt. No. 465], at 32.  The Debtor's claims that the holders of Debt Claims could receive recoveries of 12% and 62%, *see* Motion at 17–18, Disclosure Statement Exhibit F, therefore cannot be credited.

### B.  The Debtor Fails to Show That The Plan Provides Each Impaired Creditor Value Not Less Than That Creditor Would Receive Under Chapter 7

A Chapter 11 plan cannot be confirmed unless every impaired creditor receives or retains an amount "that is not less than the amount [the creditor] would so receive or retain if the debtor

1    were liquidated under chapter 7." 11 U.S.C. § 1129(a)(7)(A).  This requirement, known as the

2    "best interests of creditors" test, is "one of the cornerstones of chapter 11 practice."  7 Collier on

3    Bankruptcy ¶ 1129.02 (16th Ed. 2020).   As with the other requirements of Section 1129, the

4    Debtor has the burden of showing that the best interests test of creditors is satisfied.  *In re*

5    *Zaruba*, 384 B.R. 254, 257 (Bankr. D. Alaska 2008) ("The debtor bears the burdens of both

6    introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied

7    ... the plan proponent bears the burden of proof by a preponderance of the evidence."); *In re*

8    *Adelphia Commun. Corp.*, 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007) ("The plan proponent has

9    the burden of proof to establish by a preponderance of the evidence that its plan meets the Best

10   Interests test.")

11

12          Here, the Debtor has fallen far short of meeting his burden.  The Debtor states that he

13   "believes there would be no creditor recoveries in a chapter 7 scenario," but he offers no credible

14   evidentiary support for his belief.  Fourth Amended Disclosure Statement [Dkt. No. 465] at

15   146:10.  The "liquidation analysis" attached to the Disclosure Statement as Exhibit F is woefully

16   inadequate and includes wildly speculative assumptions that this Court should reject.  *See*

17   Recovery Scenarios and Liquidation Analysis, Fourth Amended Disclosure Statement [Dkt. No.

18   465] (Exh. F.).  The Declaration of Robert Moon offered in support of the analysis does nothing

19   to salvage these deficiencies.  *See generally* Declaration of Robert Moon [Dkt. No. 662]

20   (hereinafter, the "Moon Decl.").

21

22          As a threshold matter, the so-called Recovery Scenarios and Liquidation Analysis in

23   Exhibit F is not actually a liquidation analysis at all because it does not contain an itemization of

24   estate assets with comparative values under the Plan and Chapter 7.  The so-called liquidation

25   analysis makes no attempt whatsoever to describe or value the assets that would be available to a

26   Chapter 7 trustee.  To the contrary, it merely assumes that the assets available to a Chapter 7

trustee are identical to the assets that the Debtor has chosen to include in the creditor trust.  That assumption is patently false, because all the assets that are to be transferred to the Debtor's wife would, of course, remain in the Debtor's chapter 7 estate for the trustee to administer.

To the extent that Exhibit F implies some form of a liquidation analysis, the entire exercise is premised on a series of hypothetical and highly speculative assumptions.  First, Exhibit F presents enormous potential equity values for FF Intelligent Mobility Global Holdings Ltd. (f/k/a Smart King, Ltd.) ("FF Intelligent") (the parent company of Faraday) based on the implied valuation from a December 31, 2018 equity investment by Season Smart.  Nothing in the Disclosure Statement, Exhibit F or the Moon Declaration explain how or why an imputed valuation for arbitration purposes done nearly 18 months ago is the appropriate way to value the Plan's proposed equity distribution.

Equally problematic, however, is Exhibit F's (and Mr. Moon's) assumption that a Chapter 7 trustee could not liquidate the FF Intelligent interests despite their supposedly massive potential values.  Mr. Moon opines that a Chapter 7 trustee would liquidate the FF Intelligent equity in a "forced sale atmosphere."  Moon Decl. [Dkt. No. 662] at ¶7.  Nothing in the record supports this assumption.  To the contrary, a Chapter 7 trustee is duty-bound to maximize the value of estate for creditors.  *See, e.g.*, *In re Mondie Forge, Inc.*, 148 B.R. 499, 502 (Bankr. N.D. Ohio 1992) ("[T]he trustee has a duty to realize the maximum return for the estate for further distribution to the Debtor's creditors."); *see also* 11 U.S.C. § 704(1) (among other responsibilities, the Trustee has the duty to "collect and reduce to money the property of the estate ... and close such estate as expeditiously as compatible with the best interests of parties in interest").  Particularly given that equity in FF Intelligent has no significant carrying costs or operating expenses, a hypothetical Chapter 7 trustee would have no reason to sell the FF Intelligent equity for anything less than the maximum he or she could recover within a reasonable time.

This, of course, assumes that the FF Intelligent equity is worth anything to anyone under any circumstances.  On this score, Exhibit F and the Moon declaration are equally questionable. The potential valuations in Exhibit F are not tied to any particular scenario or transaction except after some hypothetical investments by hypothetical investors sometime in the future.  Mr. Moon assumes that these hypothetical investments are less likely if the Plan is not confirmed, but he offers no actual evidence to support his assumption.  Moon Decl. [Dkt. No. 662], at ¶7.

The Debtor has similarly failed to offer evidence about the value of assets that are excluded from the creditor trust which would be available to a Chapter 7 trustee. In a Chapter 7 case, creditors would retain all the claims that are released under the Plan—such as those available against estate professionals and the Debtor's wife.  In a Chapter 7, Chapter 5 claims would not be waived as they are under the Plan.  *See* Third Amended Plan [Dkt. No. 464], at 62:6–63:11; Fourth Amended Disclosure Statement [Dkt. No. 465] at 60:14–61:19.[2]

With all such claims, a Chapter 7 trustee would not be bound by the "Plan Arbitration Procedures," which are described as "confidential," and must be brought within 180 days of the Effective Date.  *See id.* at 10:16  ("Plan Arbitration Procedures means the confidential arbitration procedures for the resolution of all Plan-related disputes[.]").  Similarly, a Chapter 7 trustee would not be required to obtain the affirmative vote of four of the five members of the Trust Committee before pursuing Chapter 5 claims.  *See* Notice of Filing of Plan Supplement to Debtor's Third Amended Plan of Organization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 678] Exhibit A at 19.

Under the Plan, creditors' rights to preference claims under Section 547, claims under Section 548(a)(1)(B) for constructively fraudulent transfers, and all Section 542 claims

---

[2]    The only claims that are preserved are Section 548(a)(1)(A) claims under the Bankruptcy Code, but *only* if the transfers "did not arise out of any transaction or occurrence disclosed in" the Debtor's Chapter 11 disclosures, *or* claims for turnover of assets pursuant to Section 542, but *only* if such assets have not been referenced in any of the Debtor's bankruptcy filings. *See* Third Amended Plan [Dkt. No. 464], at 62:12–28.

concerning assets claimed in the Debtor's bankruptcy filings to be non-estate assets are eradicated under the Plan, and Section 548(a)(1)(A) claims have been substantially more difficult to pursue than they would be under chapter 7.  And, of course, as discussed in connection with Section 1129(a)(15), significant estate assets would be transferred to the Debtor's wife under the Plan, and she would be given the equivalent of a Chapter 11 discharge without having to comply with any of the requirements imposed on a Chapter 11 debtor.

The Debtor makes no effort to quantify or value any of these assets which would be available to a Chapter 7 trustee.  The Debtor's failure to even attempt a valuation means that his liquidation analysis is insufficient on its face and the Plan cannot be confirmed

Meanwhile, Article 2.5 of the Plan provides that, in the event the exit financing is insufficient to repay the DIP Facility, the *creditor trust* assumes the Debtor's obligations under the DIP Facility on the effective date of the Plan at an increased interest rate of 12%.  *See* Third Amended Plan [Dkt. No. 464], Art. 2.5 at 18–19 ("In the event that there are not sufficient proceeds remaining from the Exit Financing to pay all amounts outstanding under the DIP Facility, in satisfaction of the Debtor's obligations under the DIP Facility, on the Effective Date . . . all obligations of the Debtor under the DIP Facility shall be assumed by the Trust . . . .").

Thus, creditors may be left *worse off* under the Plan than they would in a Chapter 7 scenario, because they could functionally face a negative recovery of as much as $6.4 million by assuming obligations under the DIP Facility, instead of receiving nothing.  Indeed, the Motion itself provides no additional clarity concerning the assumption of that facility, nor does it, more importantly, provide any comfort to creditors that the trust will not operating in the red.  Even assuming the Debtor obtains the $2.75 million of exit financing from Pacific Technology he claims to anticipate, *see* Motion at 23:1–7, the creditors' trust would still assume approximately

1  $4 million in debt.[3]

2  These factors, taken together, demonstrate that creditors are worse off under the Plan than

3  in a Chapter 7 scenario and the Plan therefore fails to satisfy Section 1129(a)(7).

4

5  **IV.    The Debtor's Chapter 11 Plan is Not Feasible Under Section 1129(a)(11)**

6  Section 1129(a)(11) requires that the debtor demonstrate that the "[c]onfirmation of the

7  plan is not likely to be followed by the liquidation, or the need for further financial

8  reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation

9  or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).  To comply with this

10  requirement, the debtor must demonstrate that the plan "has a reasonable probability of success."

11  *First Southern Nat'l Bank v. Sunnyslope Hous. Ltd. P'ship (In re Sunnyslope Hous. Ltd. P'ship)*,

12  859 F.3d 637, 646–47 (9th Cir. 2017) (en banc) (quoting *In re Acequia, Inc.*, 787 F.2d 1352, 1364

13  (9th Cir. 1986)).

14

15  "Under the test of feasibility, the court 'views the probability of *actual* performance of the

16  provisions of the plan."  *In re Kemp*, 134 B.R. 413, 415 (Bankr. E.D. Cal. 1991) (emphasis

17  added). "[V]isionary promises" do not satisfy the requirement.  *Id.*  Instead, "[t]he test is whether

18  the things which are to be done after confirmation can be done as a practical matter under the

19  facts."  *Id.* (citing 9 Collier on Bankruptcy, at 1139) (other citations omitted).

20

21  The Debtor plainly fails to meet this requirement.  Tellingly, the *only* feasibility issue the

22  Motion identifies is whether the Debtor has financing sufficient to cover the professional and

23  administrative fees in this case.  *See* Motion at 20:10–24:9.  However, several circumstances

24  demonstrate that the Plan fails to meet the requirements of Section 1129(a)(11) and instead reflect

25

26  ---
[3]    In the recently-filed Plan Supplement, an Exit Financing Term Sheet provided for up to $5 million in exit

27  financing, with $2.75 million prefunded.  *See* Notice of Filing of Plan Supplement to the Debtor's Third Amended
Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 678], at 37.  There is no indication in the

28  Plan Supplement, however, if the Debtor has any obligation to draw more than the $2.75 million disclosed in the
Motion.

KOBRE & KIM LLP
ATTORNEYS AT LAW                                    - 13 -

1    legally insufficient "visionary promises."  Existing foreign injunctions prohibit what the Debtor

2    seeks to do in his plan of reorganization, and he cannot provide for the payment of debts that

3    creditors have asserted as being non-dischargeable.  Therefore, the Plan is, as the Delaware

4    Bankruptcy Court put it, "like a hope and a prayer."  *See* Dec. 18, 2020 Hr'g Tr. at 146:23.

5

6    **A. The BVI Freezing Orders Against Non-Debtors FF Top and FF Peak
       Impair the Debtor's Ability to Effect the Transactions Contemplated
7      Under the Plan.**

8           The Plan is premised on the transfer of interests in Faraday's parent company to a creditor

9    trust.  But freezing orders obtained pre-petition in the BVI prevent the Debtor doing this.

10   Accordingly, the Plan cannot be implemented under its own terms.

11          The Plan proposes to transfer the Debtor's interests in the parent company of Faraday, FF

12   Intelligent, to his proposed creditor trust.  *See* Fourth Amended Disclosure Statement [Dkt. No.

13   465], at 1:7–16; Third Amended Plan [Dkt. 464], at 22:21–27.  Prepetition, SLC obtained

14   freezing orders against the subsidiaries of Pacific Technology (FF Top and FF Peak) that own FF

15   Intelligent (the "BVI Injunctions").  Among other things, the BVI Injunctions bar transfers of the

16   interests (beneficial, legal or otherwise) in FF Peak and FF Top, bars FF Top and FF Peak from

17   altering any "arrangement" by which their shares are held and otherwise enjoins FF Top and FF

18   Peak from "dealing with" either their interests in FF Intelligent.  *See* Declaration of Timothy de

19
20   Swardt at ¶¶ 29–34 (hereinafter, "de Swardt Declaration").  The BVI Injunctions are entitled to

21   deference under principles of comity.  *See Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir.

22   2014) (recognizing comity principles require deference "a legitimate claim to jurisdiction under

23   principles of international law").

24

25          Tellingly, although this Court approved the appointment of Mr. Robert Moon to act as the

26   Debtor's foreign representative in the BVI more than two months ago, to date no action has been

27   taken in the BVI High Court to seek to undo the BVI Injunctions.  Order Granting Debtor's

28

KOBRE & KIM LLP
ATTORNEYS AT LAW

- 14 -

Motion Authorizing Robert Moon to Act as Foreign Representative [Dkt. No. 376]; *see* de Swardt

Decl. ¶ 18.  Thus, for all the Debtor's talk about pursuing a plan for the benefit of his creditors,

the Debtor has failed to take the necessary steps in the BVI to actually make his plan feasible.

Instead, in tacit recognition that the terms of the original Plan violated the BVI Injunction,

the Debtor merely amended the structure of the creditor trust in an attempt attempts to circumvent

these orders.  *See* Objection to Debtor's Disclosure Statement [Dkt. No. 445] at 4:5–18; *compare*

Amended Disclosure Statement [Dkt. No. 94], at 35 (direct transfer of FF Intelligent interests into

creditor trust) *with* Fourth Amended Disclosure Statement [Dkt. No. 465], at 31–32 (issuance of

Pacific Technology equity shares to the creditor trust).  Through this gambit, the Debtor purports

to effect the economic equivalent of transferring his indirect interests in Faraday to the proposed

creditor trust.  *See* Fourth Amended Disclosure Statement [Dkt. No. 465], at 31–32.

Specifically, Article 6.2(a) of the Plan sets forth that "[o]n the Effective Date, the

managing member of Pacific Technology shall amend the PT LLCA to:

> (i) provide that the Trust is a member of Pacific Technology and the holder of 100% of the preferred membership units of Pacific Technology [ ];
> (ii) issue new units of Pacific Technology to the Trust [ ], entitling the Trust to 100% of the economic value of 147,058,823 Class B shares of FF Intelligent [ ]; and
> (iii) grant the Trust a fully paid-up warrant to receive the Trust FF Intelligent Shares consistent with the FF Intelligent Transfer Right with no further action necessary by the Debtor or  Reorganized Debtor, exercisable upon the dissolution of the Injunctions (the 'Warrant').

Third Amended Plan [Dkt. No. 464], at 22–23.

This structural modification to the plan is nothing more, however, than a transparent

maneuver to sidestep the terms of the BVI Injunctions.  As set forth in the Declaration of Timothy

de Swardt filed contemporaneously with this Objection, however, the BVI Injunctions'

prophylactic provisions were designed to bar FF Top and FF Peak from effecting changes to the

legal or *beneficial* ownership of their shares, thus preventing them from doing indirectly what

they are prohibited from doing directly. *See* de Swardt Decl. at ¶ 29; *see also* Ex. 2, de Swardt

Decl., ¶ 4(a)(i) (barring effectuation of changes in beneficial ownership).  The BVI Injunctions

similarly prohibit FF Peak and FF Top, and their registered agent in the BVI, from altering the

"arrangements" relating to the ownership of their shares.  *Id.* at ¶ 4(a)(vii).  What the Plan

proposes to do in sub-provisions (i) and (ii) of Article 6.2(a), therefore, would likely violate the

terms of the BVI Injunctions.  *See* de Swardt Decl. at ¶¶ 44–45.

Similarly, sub-provision (iii) of Article 6.2(a) independently violates yet other restrictions

contained in the BVI Injunctions because the so-called "FF Intelligent Right" giving rise to the

Warrant stems from an agreement between, among others, Pacific Technology, *FF Peak*, *and FF

Top*, in which FF Top proposes to transfer shares of FF Intelligent shares into a creditor trust for

the benefit of the Debtor.  *See id.* at ¶¶39–42.  Because FF Top—pursuant to the FF Intelligent

Right—has "dealt with" the shares of FF Intelligent and pledged them to the Debtor's creditor

trust or a third party of his choice without consideration, the FF Intelligent Right inherently

violates Paragraphs 4(a)(i) and 4(b) of the BVI Injunctions.  *See id.* ¶ 42-43.  This violation also

gives rise to separate and distinct tort liabilities under BVI law from FF Peak and FF Top (and

others) to SLC. *See id.* ¶¶ 71–72.

Moreover, even if the transfer could be effected in a manner that complies with the BVI

Injunctions, any such transfer would still fail to provide any value to creditors.  At best, creditors

would receive indirect interests in frozen assets that cannot be sold or liquidated, and therefore

the "value" the Debtor claims he is providing creditors under the Plan is illusory.  *See id.* ¶¶ 49–

52 (explaining that BVI Injunctions bar FF Peak and FF Top from making any distributions to

Pacific Technology and therefore the creditor trust cannot receive payments originating from

Faraday).  And even if the Debtor were to seek to discharge the BVI Injunctions following this

Court's approval of the Plan, he would be unlikely to succeed.  *See id.* ¶¶ 54–61 (outlining

procedural and substantive hurdles to the ability of Mr. Moon to persuade the BVI High Court to set aside the BVI Injunctions).  Accordingly, the Plan is not feasible because the BVI Injunctions prevent a necessary step of the Plan that permits creditors to receive any distributions: the transfer of indirect interests of Faraday into the creditor trust.  For the same reasons, the Debtor has failed to provide "adequate means" for implementing the Plan, as he must under Bankruptcy Code Section 1123(a)(5).  *See* 11 U.S.C. § 1129(a)(1) (requiring that plan complies with applicable provisions of Title 11); 11 U.S.C. § 1123(a)(5) (plan must "provide adequate means for the plan's implementations").

**B.  The Plan Does Not Provide For the Full Payment of Debts Asserted to be Non-Dischargeable**

A Chapter 11 plan likewise cannot be deemed feasible if it does not provide for the full payment of non-dischargeable debt.  *In re Hamilton*, No. 18-60043, 2020 WL 1244256, at *2 (9th Cir. Mar. 16, 2020) (plan unconfirmable on Section 1129(a)(10) grounds because no provision for a non-dischargeable debt risked further bankruptcy filing).  Here, the Debtor faces a pending non-dischargeability complaint from the creditor Hong Liu, seeking a declaration that tens of millions of anticipated damages are owed by the Debtor and are not dischargeable through the Chapter 11 process.  *See* Complaint to Determine Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(2)(B)  [Dkt. No. 288].  Nowhere does the Plan mention—let alone provide for—funding for the amounts Mr. Liu seeks from the Debtor.  Unless and until the Court resolves whether the claims asserted by Mr. Liu have merit, the Plan cannot be confirmed.

**V.    The Plan Violates the Bankruptcy Axiom That Similarly Situated Creditors Must be Treated Similarly**

In addition, the Debtor has chosen to exclude frozen assets that will be distributed through the Chinese court system from his estate.  Because these assets have not been brought into this proceeding and his decision that the pending pre-petition enforcement proceedings will be left

untouched by the automatic stay, *see* Fourth Amended Disclosure Statement [Dkt. No. 465] at

1:7–12, the Plan unfairly discriminates against judgment creditors based on where they brought

their proceedings.  Thus, the Plan does not meet the requirement under the Bankruptcy Code that

similarly situated creditors be treated similarly and cannot be confirmed.  *See* 11 U.S.C. §

1129(a)(1) (confirming a plan requires that the "[t]he plan complies with the applicable

provisions of this title"); 11 U.S.C. § 1123(a)(4) (requiring that a plan "provide the same

treatment for each claim or interest of a particular class"); *see also In re JWJ Contracting Co.,

Inc.*, 371 F.3d 1079, 1081 (9th Cir. 2004) (characterizing "equal distribution among similarly

situated creditors" as "*the* prime bankruptcy policy" (emphasis added)).

### A.  The Debtor's Choice to Leave the Freezing Orders of Hundreds of Millions of Dollars' Worth of Assets Discriminates Between Judgment Creditors Based on Geography

As the Debtor's schedules notes, there were dozens of significant litigation claims pending

against the Debtor and his various affiliates in various courts across China at the time he filed for

bankruptcy in the United States.  *See* Schedule of Assets and Liabilities and Statement of

Financial Affairs of the Debtor [Dkt. No. 28] at 117–125.  These litigations resulted in the

freezing of hundreds of millions' worth of his assets and those of his affiliated companies.  *See*

Fourth Amended Disclosure Statement [Dkt. No. 465] at 41–42.

However, the Debtor has chosen not to bring the assets frozen in these litigations into his

estate.  *See* Fourth Amended Disclosure Statement [Dkt. No. 465], at 1:7–12 ("Under the Plan,

[the Debtor] is proposing to satisfy his debts by contributing his interests . . . all of his legally

recognized personal assets (*other than those assets that have been frozen or seized in the People's

Republic of China*) . . . to a liquidating trust . . . for the benefit of his creditors as "Trust Assets.'")

(emphasis added).

1    As a result, the level of recovery for a judgment creditor in this case depends on the

2    jurisdiction in which that creditor's enforcement action was brought.  Creditors who brought

3    enforcement actions in the United States—such as Shanghai Lan Cai—were subject to the

4    Debtor's avoidance efforts to reclassify secured claims as "unsecured" for purposes of this

5    bankruptcy case.  *See* Stipulation Resolving Status of Claim Held by Shanghai Lan Cai Asset

6    Management As General Unsecured Claim [Dkt. No. 368].  By contrast, creditors who brought

7    enforcement proceedings in the Chinese court system (the "China Secured Claims") have been

8    shielded from both lien avoidance and the automatic stay, and instead have had their "secured"

9    claims left intact.  The Debtor cites to no authority permitting him to treat creditors with identical

10   claims differently in this regard and to gerrymander claim classes.  That is because he cannot: it is

11   axiomatic under U.S. bankruptcy law that similarly situated creditors are treated similarly.  *See*

12

13   *Beiger v. IRS*, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central

14   policy of the Bankruptcy Code."); *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399

15   (9th Cir. 1996) (one of the "fundamental bankruptcy policies" is "the equal treatment of

16   creditors"); *In re Rinard*, 451 B.R. 12, 19 (Bankr. C.D. Cal. 2011) (one of the two "overarching . .

17   . premises of federal bankruptcy law [is] . . . equal treatment among classes of creditors").

18

19

20   **B.  The Debtor Has Not Demonstrated That Creditors Within a Class are Treated the Same**

21   Even among claims classified under the Plan as "China Secured Claims," the Debtor has

22   not established that the claims are treated equally under the Plan.  Indeed, he has not disclosed the

23   status, process, outcome or particular implications of these litigations, and accordingly has not

24   met his burden to demonstrate that creditors within a class will be treated the same.  *See* 11

25   U.S.C. § 1129(a)(1) (confirming a plan requires that the "[t]he plan complies with the applicable

26   provisions of this title"); 11 U.S.C. § 1123(a)(4) (requiring that a plan "provide the same

27   treatment for each claim or interest of a particular class").

28

1   Because the Plan both treats similarly situated creditors differently both between classes

2   of claims and within a class, the Plan cannot be confirmed.

3
    **VI.    The Plan Fails To Satisfy Section 1129(a)(10)'s Requirement That an**
4   **Impaired Class Must Accept the Plan Without Regard to Insider Votes**

5       Section 1129(a)(10) requires that a Chapter 11 plan cannot be deemed to be accepted by

6   an impaired class of creditors by counting the votes of "insider" creditors.  *See* 11 U.S.C. §

7   1129(a)(10).   Insiders are those who have a "sufficiently close relationship with a debtor to

8   warrant special treatment." *In re The Vill. at Lakeridge, LLC*, 814 F.3d 993, 999 (9th Cir. 2016).

9   Courts in this Circuit recognize both statutory insiders that satisfy the enumerated categories in

10  Section 101(31) of the Bankruptcy Code, as well as "non-statutory insiders" who have close ties

11  with a debtor.  *In re Rexford Properties, LLC*, 557 B.R. 788, 798 (Bankr. C.D. Cal. 2016).  That

12
    is for good reason: "[t]he purpose of requiring the acceptance of one impaired class of creditors,
13
    *not counting insiders*, is to ensure some measure of support for the chapter 11 plan from creditors
14
    whose only motivation is to maximize their interests as creditors of the estate" as opposed to
15
    "those creditors who may be motivated to vote by their affinity to the debtor." *Id.*
16

17      Here, several creditors with significant claims are "insiders" within the meaning of

18  Section 101(31) of the Bankruptcy Code, *see* 11 U.S.C. § 101(31), or are otherwise sufficiently

19  closely connected to the Debtor that they should be deemed "insiders."  Accordingly, the votes of

20  such creditors must be excluded for purposes of assessing votes on the Plan.

21      In particular, the Debtor's brother, Jia Yueming, has filed a claim totaling approximately

22  USD $820 million.  *See* Claim No. 137/20040.  His sister, Jia Yuefang, also filed a proof of claim

23  of approximately $51 million.  *See* Claim No. 139/20043.   They are therefore statutory insiders

24  under 11 U.S.C. § 101(31)(A)(i) (relative of a debtor included within the definition of "insider"),

25  whose votes must be excluded for plan confirmation purposes.

26

27

28

Similarly, entities that appear to be controlled by Jia filed over one billion dollars' worth in claims. *See* Scheduled Claim No. 220000600 (claim of Ningbo Hangzhou Bay New Area Leran Investment Management Partnership (Limited Partnership) of approximately $299 million); Claims No. 21/24/0000020015 (claim of Chongqing LeTV Commercial Factoring Co, Ltd. of approximately $23 million); Claim No. 14 (claim of Shenzhen LeTV Xingen M&A Fund Investment Management (LP) of approximately $746 million).

To the extent that the Debtor has included such votes within his tallies, *see* Motion at 19:17–22, such inclusion is improper and the Debtor must disclose his relationships with such creditors before the Court can be satisfied that he has met the requirements under Section 1129(a)(10). While counsel for SLC was advised by Debtor's counsel shortly following the April 30, 2020 voting deadline for the Plan that the requisite votes exist to satisfy Section 1129(a)(10) setting aside any insiders, SLC remains skeptical that all insiders have been excluded. See Declaration of Daniel J. Saval (filed contemporaneously with this Objection), at ¶ 3. For example, in a letter dated April 28, 2020 in response from SLC to clarify the status of certain creditors, the Debtor's counsel refused to even acknowledge that the Debtor's siblings are, in fact, his siblings. Id. ¶ 4 (Exhibit 2). SLC has, accordingly, sought further discovery of the Debtor and other creditors for information and evidence regarding creditors that it believes in good faith the Debtor controls. *Id.* at ¶ 6 (Exhibit 4). To date, SLC has not received any responses from the Debtor. *Id.* at ¶ 7.

Unless and until the Debtor can demonstrate that he has sufficient votes to satisfy Section 1129(a)(10) with *only* votes that do not belong to any statutory or non-statutory insider, the Plan cannot be approved.

### VII.    The Chapter 11 Plan Was Not Proposed in Good Faith Nor By Lawful Means

The Plan cannot be confirmed for the additional independent reason that it was not

KOBRE & KIM LLP
ATTORNEYS AT LAW

- 21 -

1  proposed in good faith, nor by lawful means, as required by the Bankruptcy Code.  In order for a

2  plan to be confirmed, the court *must* find that the plan "has been proposed in good faith and not

3  by any means prohibited by law."  11 U.S.C. § 1129(a)(3).  Here, the Plan meets neither

4  requirement.

5

6          A plan is proposed in good faith if it will "achieve a result consistent with the objectives

7  and purposes of the Bankruptcy Code."  *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir.

8  2002).  For the reasons set forth above, this Plan was not proposed in good faith.  While not

9  explicitly defined by the Bankruptcy Code, "the determination of good faith must be based on the

10  totality of the circumstances." *Sylmar Plaza, L.P.*, 314 F.3d at 1075.  A court must inquire into

11  the totality of circumstances surrounding the plan, the application of the principles of

12  fundamental fairness in dealing with creditors, and then decide whether the plan will fairly

13  achieve a result consistent with the objectives and purposes of the Code. *Sylmar Plaza*, 314 F.3d

14  at 1074.  Good faith also requires "a fundamental fairness in dealing with one's creditors." *In re*

15

16  *Jorgensen*, 66 B.R. 104, 109 (9th Cir. B.A.P. 1986).

17          Importantly, a Court's finding that a debtor's Chapter 11 *petition* was filed in good faith

18  does not automatically mean that the *plan* satisfies the Section 1129(a)(3) good faith

19  requirement.  *See In re Kemp*, 134 B.R. 413, 415 (Bankr. E.D. Cal. 1991) ("The Court does not

20  question good faith at the time of filing of Debtor's Petition, only that the Plan is not filed in good

21

22  faith.").

23          Here, the Plan was not proposed in good faith for the reasons set forth above.  The Debtor

24  has proposed an unfeasible Plan that leaves creditors with worthless shares in frozen assets, *see*

25  *supra* I.A; *see supra* V.A., and that unfairly discriminates between creditors, *see supra* V.A.

26  Moreover, the Debtor—despite having sought and obtained the Court's approval of the retention

27  of a foreign representative under Bankruptcy Code Section 1505 to represent him in the BVI—

28

has yet to take action to seek to discharge the BVI Injunctions and provide a clear path to

ensuring the creditors can receive the distributions contemplated under the Plan.  *See supra* I.A.

The Plan should be rejected for these reasons alone.

      In addition, the Plan was also proposed by unlawful means.  While Section 1129(a)(3)

calls for the Court to assess the means of the Plan proposal and not its substantive provisions in

determining illegality, *Garvin v. Cook Invs. NW, SPNYW, LLC*, 922 F.3d 1031, 1033 (9th Cir.

2019), here, it is not only the transfer of the economic interests in Faraday that violate the BVI

Injunctions, but, as matter of BVI Law, the very fact of the proposal to do so itself.  *See* de

Swardt Decl. ¶ 70.   Unlike in *Garvin* where the unlawful conduct at issue involved a lease on a

single piece of real estate owned by one of several affiliated debtors that jointly filed for Chapter

11, *Garvin*, 922 F.3d at 1033, the unlawful conduct here goes to the very heart of the Plan itself.

Moreover, even if these BVI law violations do not amount to a violation of the second (a)(3)

requirement, the fact that the exclusive means to recovery for creditors under the Plan hinges on a

likely violation of BVI law is the textbook example of bad faith.   *See In re Way to Grow, Inc.*,

610 B.R. 338, 347 (D. Colo. 2019) (debtor cannot propose a plan that hinges on violation of

federal law).  Thus, the Plan violates 11 U.S.C. § 1129(a)(3), and the Court should deny

confirmation.

      For the reasons set forth above, Shanghai Lan Cai respectfully requests the Court to deny

the Motion.

Dated: May 7, 2020          LESNICK PRINCE & PAPPAS LLP

                 – AND –

                 KOBRE & KIM LLP

                 By: /s/Christopher E. Prince
                   Christopher E. Prince
                   *Attorneys for Creditor Shanghai Lan Cai*
                   *Asset Management Co, Ltd.*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Lesnick Prince & Pappas LLP, 315 W. Ninth St., Suite 705, Los Angeles, CA 90015.

A true and correct copy of the foregoing document entitled (*specify*): **SHANGHAI LAN CAI ASSET MANAGEMENT CO, LTD.'S OBJECTION TO DEBTOR'S MOTION FOR CONFIRMATION OF THE THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 05/07/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Tanya Behnam**    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- **Jerrold L Bregman**    ecf@bg.law, jbregman@bg.law
- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Lei Lei Wang Ekvall**    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Stephen D Finestone**    sfinestone@fhlawllp.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- **Jared T. Green**    , spappa@svglaw.com
- **Robbin L. Itkin**    robbin.itkin@dlapiper.com, cheryleigh.bullock@dlapiper.com;robbin-itkin-6765@ecf.pacerpro.com
- **Mette H Kurth**    mkurth@foxrothschild.com, mette-kurth-7580@ecf.pacerpro.com
- **Ben H Logan**    blogan@omm.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Kevin Meek**    kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- **John A Moe**    john.moe@dentons.com, glenda.spratt@dentons.com
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Matthew J Olson**    olson.matthew@dorsey.com, stell.laura@dorsey.com
- **Malhar S Pagay**    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- **Diana M Perez**    , diana-perez-7352@ecf.pacerpro.com
- **Christopher E Prince**    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- **Victor A Sahn**    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- **Randye B Soref**    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- **Benjamin Taylor**    btaylor@taylorlawfirmpc.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Ryan A Witthans**    rwitthans@fhlawllp.com
- **Felix T Woo**    fwoo@ftwlawgroup.com, admin@ftwlawgroup.com
- **Claire K Wu**    ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- **Emily Young**    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- **David B Zolkin**    dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                                                                        **F 9013-3.1.PROOF.SERVICE**

**2. <u>SERVED BY UNITED STATES MAIL</u>:**

On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>**
<u>(state method for each person or entity served)</u>:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/07/2020 | Christopher E. Prince | /s/Christopher E. Prince |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                                                                                  **F 9013-3.1.PROOF.SERVICE**