1  Richard M. Pachulski (CA Bar No. 90073)
   Jeffrey W. Dulberg (CA Bar No. 181200)
2  Malhar S. Pagay (CA Bar No. 189289)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California  90067
4  Telephone: 310/277-6910
   Facsimile:  310/201-0760
5  E-mail:  rpachulski@pszjlaw.com
             jdulberg@pszjlaw.com
6             mpagay@pszjlaw.com

7  Attorneys for Debtor and Debtor in Possession

8                 **UNITED STATES BANKRUPTCY COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10                      **LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No.: 2:19-bk-24804-VZ |
| YUETING JIA,[1] | Chapter 11 |
| Debtor. | **NOTICE OF FILING OF NON-ADVERSE MODIFICATIONS TO DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 3019(a)** |
| | [Relates to Docket No. 464] |
| | <u>**Confirmation Hearing**</u> |
| | Date:    May 21, 2020<br>Time:    9:30 a.m. (Pacific Time)<br>Place:   Courtroom 1368<br>         Roybal Federal Building<br>         255 E. Temple Street<br>         Los Angeles, California 90012<br>Judge:   Hon. Vincent P. Zurzolo |

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Bankruptcy Procedure 3019(a), and in partial response to issues raised by the Court in its tentative ruling (the "<u>Tentative Ruling</u>") on, and in the objections of parties in interest to, *the Motion for Order (I) Confirming Third*

---

[1] The last four digits of the Debtor's federal tax identification number are 8972.  The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA  90275.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    *Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code; and (II) Approving*

2    *Settlement Pursuant to Bankruptcy Rule 9019; Request for Discharge on the Effective Date* [Docket

3    No. 657] (the "Confirmation Motion"), Yueting Jia, the debtor and debtor in possession herein (the

4    "Debtor" or "YT"), hereby files non-adverse modifications (the "Modifications") to the *Debtor's*

5    *Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 464]

6    (the "Plan"),[2] for presentation at the hearing regarding the Confirmation Motion.  The Modifications

7    previously have been provided to counsel for the Official Committee of Unsecured Creditors and the

8    Office of the United States Trustee (the "OUST").

9        In summary, the proposed Modifications address the following:

10    1.   Wei Gan Release.  The concept of a "Compliance Certificate" has been added to section

11        6.6 of the Plan, as it appears in the Trust Agreement, to make clear that any voluntary

12        release of Wei Gan beyond community claims discharged pursuant to sections 524 and

13        1141 of the Bankruptcy Code is only through agreement of a particular creditor.  This

14        Modification was made in response to the Tentative Ruling and certain objections to the

15        Confirmation Motion, including the objection filed by the OUST.

16    2.   Disputed Claim Reserve Mechanism.  In response to an objection, the definition of a

17        "Disputed Claim Holding Beneficiary" has been added to section 6/2(j) (Distribution

18        Waterfall) from the Trust Agreement.  Section 6.2(j) of the Plan has been revised to

19        clarify the mechanism for recoveries on account of Disputed Claims that become

20        Allowed after distributions have commenced.

21    3.   Key China Business Individuals.  The definitions of "Key China Business Individuals,"

22        "KCBI Settlement," and section 6.2(j) of the Plan have been amended to (a) permit

23        additional time for parties to reach KCBI Settlements, provided that any such agreements

24        reached must be approved by this Court and in accordance with Bankruptcy Rule 9019,

25        and (b) clarify the Distribution Waterfall to adjust distributions so creditors are

26        unaffected by any KCBI Settlement.

---

[2] Capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Plan.

2

4. <u>Proceeds of Retained Actions</u>.  Section 8.3 of the Plan is revised to clarify that proceeds of Retained Actions will be received by the Reorganized Debtor only after creditors have received the full amount of their Debt Claim Distribution Amounts.

5. <u>Allowed</u>.  The definition of "Allowed" has been updated to deem as Allowed the amount of a Claim with respect to which the Reorganized Debtor has indicated he has no objection.

6. <u>Statutes of Limitation</u>.  A section regarding statutes of limitation has been added at section 13.25 providing that nothing in the Plan shall alter statutes of limitations under the Bankruptcy Code or applicable law.  This Modification to the Plan was made in response to the Tentative Ruling.

**PLEASE TAKE FURTHER NOTICE** that blacklined pages highlighting such Modifications are attached hereto as **Exhibit "A"**.[3]

Dated:    May 20, 2020

PACHULSKI STANG ZIEHL & JONES LLP

By     */s/ Malhar S. Pagay*
          Richard M. Pachulski
          Jeffrey W. Dulberg
          Malhar S. Pagay

          Attorneys for Debtor and Debtor in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[3] Exhibit "A" excludes pages on which the only Modifications are changes to section numbers as the result of added or deleted sections.

DOCS_LA:329632.2 46353/002

# EXHIBIT A

503(b)(9)), 507(a)(2), or 507(b) of the Bankruptcy Code, including (a) any actual and necessary cost and expense of preserving the Estate incurred after the Petition Date and through the Effective Date; (b) any indebtedness or obligations incurred or assumed by the Debtor after the Petition Date and through the Effective Date; (c) any Allowed compensation for professional services rendered, and Allowed reimbursement of expenses incurred, by a Professional retained by order of the Bankruptcy Court or otherwise Allowed pursuant to section 503(b) of the Bankruptcy Code; and (d) all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code.

2.    ***Administrative Expense Claim Bar Date*** means the first Business Day that is thirty (30) days after the Effective Date.

3.    ***Allowed*** means, with respect to any Claim, such Claim or portion thereof against or in the Debtor: (a) that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (b) as to which the deadline for objecting or seeking estimation has passed, and no objection or request for estimation has been filed; (c) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn, or denied by a Final Order; ~~or~~ (d) **the amount of such Claim with respect to which the Reorganized Debtor has indicated he has no objection to a particular amount of such Claim on a schedule filed with the Court notwithstanding that the deadline for objecting to the remaining amount of such Claim has not expired; or (e**) that is allowed pursuant to the terms of (i) a Final Order, (ii) an agreement by and among the holder of such Claim and the Debtor or the Reorganized Debtor, as applicable, or (iii) the Plan.

4.    ***Ballot*** means the form distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan, on which such holder shall indicate acceptance or rejection of the Plan.

5.    ***Bankruptcy Actions*** has the meaning set forth in Article 11.9 of the Plan.

6.    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101–1532 *et seq.*

14.     *Chapter 11 Disclosures* has the meaning set forth in Article 11.9 of the Plan.

15.     *China Debtor List* has the meaning set forth in Article 11.4(c) of the Plan.

16.     *China Debtor List Covenant* has the meaning set forth in Article 11.4(c) of the Plan.

17.     *China Restrictions* has the meaning set forth in Article 11.4(c) of the Plan.

18.     *China Secured Claim* means a Claim against the Debtor that is secured by a valid, unavoidable, perfected, and enforceable Lien on, or security interest in, Collateral located in the PRC. For the avoidance of doubt, the Allowed amount of a China Secured Claim shall equal the value of such Collateral in accordance with section 506(a) of the Bankruptcy Code.

19.     *Chinese Courts* has the meaning set forth in Article 11.4(c) of the Plan.

20.     *Claim* means a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

21.     *Class* means a category of Claims established under Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

22.     *Collateral* means any property of the Debtor subject to a valid, unavoidable, perfected, and enforceable Lien on, or security interest in, such property.

23.     *Committee* means the official committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

24.     *Compliance Certificate* means the certificate that each holder (not including the Reorganized Debtor) must complete within ninety (90) days of all or any portion of such holder's Claim becoming Allowed in order to receive Trust Distributions, which certifies (a) the holder has complied with the China Debtor List Covenant, (b) that the holder has not initiated, and will not initiate, any YT Claims during the Standstill Period, (c) that the holder acknowledges and agrees that it will comply with Article 11.4(c) of the Plan and Section 4.9 of the Trust Agreement and will take all steps and execute any documents requested by the Reorganized Debtor to evidence releases in Article 11.4(c) of the Plan, and (d) the holder acknowledges and agrees that it will comply with Article 6.6 of the Plan and

**the release of Wei Gan's personal liability pursuant to the Wei Gan Settlement.  A form of the Compliance Certificate is attached as Exhibit A to the Trust Agreement.**

**25.** ~~24.~~ *Confirmation Date* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**26.** ~~25.~~ *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

**27.** ~~26.~~ *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, and granting other related relief.

**28.** ~~27.~~ *Creditor Trust* means the 2020 Creditor Liquidating Trust for the benefit of holders of Allowed Debt Claims.

**29.** ~~28.~~ *Creditor Trust Committee* has the meaning set forth in Article 6.2(f) of the Plan.

**30.** ~~29.~~ *Cure Amount* has the meaning set forth in Article 9.3(a) of the Plan.

**31.** ~~30.~~ *Cure Dispute* has the meaning set forth in Article 9.3(c) of the Plan.

**32.** ~~31.~~ *Cure Schedule* has the meaning set forth in Article 9.3(b) of the Plan.

**33.** ~~32.~~ *Debt Claim* means any Claim against the Debtor that is (a) not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, U.S. Secured Claim, or China Secured Claim, (b) otherwise determined by the Bankruptcy Court to be a Debt Claim, or (c) a Deficiency Claim.

**34.** ~~33.~~ *Debt Claim Allocation Amount* means, for the purpose of determining the pro rata share of Trusts Interests, (a) that portion of an Allowed Debt Claim that constitutes outstanding principal together with any unpaid interest on outstanding principal at the rate of four percent (4%) per annum from the time the underlying debt arose through the Petition Date, and (b) with respect to any holder of an Allowed Debt Claim who is a KCBI Claimant, subject to the approval of the applicable KCBI Settlement, up to an additional five percent (5%) of the Allowed amount of their Debt Claim Allocation Amount determined in accordance with clause (a).

**35.** ~~34.~~ *Debt Claim Distribution Amount* means on any Trust Distribution Date, the Debt Claim Allocation Amount *minus* any Other Distributions and Trust Distributions received by the holder of an Allowed Debt Claim before such Trust Distribution Date.

**36.** ~~35.~~ *Debtor* has the meaning set forth in the Introduction.

**37.** ~~36.~~ *Declarations* has the meaning set forth in Article 6.7 of the Plan.

**38.** ~~37.~~ *Deficiency Claim* means that portion of a China Secured Claim that is determined pursuant to section 506(a) of the Bankruptcy Code or through agreement, to exceed the value of the claimant's interest in the Collateral securing such China Secured Claim. For the avoidance of doubt, all Deficiency Claims shall be treated as Debt Claims.

**39.** ~~38.~~ *DIP Facility* means that certain debtor in possession facility from Pacific Technology consisting of the DIP Note.

**40.** ~~39.~~ *DIP Note* means that certain Secured Debtor in Possession Promissory Note dated as of February 27, 2020, by and among Pacific Technology, as Lender, and the Debtor, as Borrower, in the maximum principal amount of $6,400,000.

**41.** ~~40.~~ *Disallowed* means, with respect to any Claim, a Claim or any portion thereof that is not Allowed and (a) has been disallowed by a Final Order, (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no proof of claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not listed in the Schedules and as to which no proof of claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (d) has been withdrawn by agreement of the Debtor and the holder thereof, or (e) has been withdrawn by the holder thereof.

**42.** ~~41.~~ *Discharge Date* means the date ~~upon which the Court grants the Debtor a discharge upon the earlier of: (a) distribution of the Trust Interests to the holders of Allowed Debt Claims and (b) all Allowed Claims shall have been paid under the Plan.~~ **determined pursuant to the Confirmation Order.**

**43.** ~~42.~~ *Disclosure Statement* means that written disclosure statement, dated March

20, 2020, relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, modified, or supplemented from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.

**44.** ~~43.~~ *Disputed Claim* means a Claim that is not yet Allowed.

**45.** *Disputed Claim Holding Beneficiary* **means the trust established by the Trust Agreement to serve as beneficiary for Claims or such amounts thereof that are Allowed after the Effective Date.**

**46.** ~~44.~~ *Distributable Proceeds* has the meaning set forth in Article 6.2(i) of the Plan.

**47.** ~~45.~~ *Distribution Event* has the meaning set forth in Article 6.2(i) of the Plan.

**48.** ~~46.~~ *Distribution Record Date* means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the date of the commencement of the Confirmation Hearing.

**49.** ~~47.~~ *Distribution Waterfall* means the distribution waterfall set forth in Article 6.2(j) of the Plan.

**50.** ~~48.~~ *Domestic Support Obligations* means a domestic support obligation, as defined in section 101(14A) of the Bankruptcy Code, as such obligations may be modified from time to time by a court of competent jurisdiction.

**51.** ~~49.~~ *Effective Date* means, with respect to the Plan, the Business Day selected by the Debtor on which (a) no stay of the Confirmation Order is in effect, (b) the conditions to the effectiveness of the Plan specified in Article 10.2 have been satisfied or waived (in accordance with Article 10.3), and (c) the Debtor declares the Plan effective.

**52.** ~~50.~~ *Effective Date Wei Gan Payment* has the meaning set forth in Article 6.6 of the Plan.

**53.** ~~51.~~ *Entity* has the meaning set forth in section 101(15) of the Bankruptcy Code.

**54.** ~~52.~~ *Estate* means the estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**55.** ~~53.~~ *Exit Financing* means financing, on terms and conditions acceptable to the

Individual. The list of potential KCBI Claimants is included on **Schedule C** attached hereto.

**72.** ~~70.~~ *KCBI Settlement* means a voluntary settlement agreement under Bankruptcy Rule 9019 between a Key China Business Individual ~~and a~~, an Allowed KCBI Claimant, ~~if such agreements are reached. Any KCBI Settlements will be included in the Plan Supplement~~and the Reorganized Debtor; the Reorganized Debtor's contribution toward such settlement is reflected in the Distribution Waterfall.

**73.** ~~71.~~ *Key China Business Individuals* are those certain Chinese individuals who voluntarily enter into a KCBI Settlement with a KCBI Claimant prior to the ~~Confirmation~~date that is 180 days after the Effective Date. The list of potential Key China Business Individuals is included on **Schedule C** attached hereto.

**74.** ~~72.~~ *Late Filed Debt Claim* means a Debt Claim filed after the applicable deadline set by the Bankruptcy Court to file proofs of claim in the Chapter 11 Case but before the occurrence of a Distribution Event.

**75.** ~~73.~~ *Late Filed Debt Claims Reserve* means the trust established for the benefit of holders of Allowed Late Filed Debt Claims.

**76.** ~~74.~~ *Lien* means a lien as defined in section 101(37) of the Bankruptcy Code.

**77.** ~~75.~~ *Liquidation Event* means, with respect to Pacific Technology, FF Intelligent, any of their respective material, direct or indirect, subsidiaries, or any future public listing vehicle for the subsidiaries of FF Intelligent or Pacific Technology, each of the following events to the extent that the event materially reduces the direct or indirect percentage ownership in FF Intelligent or such other future public listing vehicle by the Trust other than by virtue of an equity investment by a bona fide third party: (a) the commencement of an assignment for the benefit of creditors, a receivership, a case under chapter 7 of the Bankruptcy Code, or a similar insolvency proceeding; (b) the effective date of a liquidating plan under chapter 11 of the Bankruptcy Code; or (c) the effective date of a reorganization plan under chapter 11 of the Bankruptcy Code, *provided* that internal reorganizations (including mergers or dissolutions for tax or other purposes) that do not adversely impact the value of the Trust's direct or indirect interests in FF

the extent Allowed by Final Order or as such Claim is settled, compromised, or otherwise resolved pursuant to Article 8.3.

(c)    Payment of Allowed Administrative Expense Claims. Except to the extent that an Administrative Expense Claim has already been paid during the Chapter 11 Case, the holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, or the ~~Holder~~holder of an Allowed Administrative Expense Claim makes a Trust Election, and except as provided in Article 2.2, each holder of an Allowed Administrative Expense Claim against the Debtor shall receive, in full and complete settlement, release, and discharge of such Administrative Expense Claim, Cash equal to the unpaid amount of such Administrative Expense Claim on the latest of (i) the Effective Date or as soon thereafter as reasonably practicable; (ii) thirty (30) days after the date on which such Administrative Expense Claim becomes Allowed; (iii) the date on which such Administrative Expense Claim becomes due and payable in the ordinary course of the Debtor's business in accordance with the terms and subject to the conditions of any agreements or understandings governing, or other documents relating to, such Administrative Expense Claim; and (iv) such other date as may be agreed to by such holder and the Debtor or Reorganized Debtor.

**2.2**    ***Professional Fees.***

(a)    Final Fee Applications. Each Professional requesting compensation pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case before the Effective Date shall (i) file with the Bankruptcy Court, and serve on the Reorganized Debtor, an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case on or before the thirtieth (30th) day following the Effective Date, and (ii) after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules and any prior orders of the Bankruptcy Court in the Chapter 11 Case, be paid in full, in Cash, in such amounts as are Allowed.

(iii)  Third, to each holder of an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or U.S. Secured Claim that has made a Trust Election, equal to the Allowed amount of such Claim plus the applicable interest rate provided in the Trust Agreement;

(iv)  Fourth, to pay Trust Distributions allocated (x) 95% to holders of Allowed Debt Claims (including holders of Allowed China Secured Claims treated as Allowed Debt Claims pursuant to Article 4.3 of the Plan) and (y) 5% to the Reorganized Debtor (or the economic equivalent of such Trust Distributions as set forth in the Trust Agreement), until each holder of an Allowed Debt Claim has received aggregate Trust Distributions (in cash or in kind) pursuant to this clause (iv) equal to the full amount of such holder's Debt Claim Distribution Amount; ~~and~~*provided* **that to the extent of any KCBI Settlements, such 5% shall be reduced so that the Pro Rata Share of distributions pursuant to clause (x) in the previous sentence are the same as such distributions would be in the absence of such settlements; *provided further*, that prior to any distribution pursuant to clause (x) in the previous sentence, Trustee shall reserve to the Disputed Claim Holding Beneficiary the amount that would otherwise be distributed on account of any Disputed Claim not yet Allowed or Disallowed, as if it were an Allowed Claim, with its Debt Claim Allocation Amount to be determined in the lower of (a) the amount set forth in the proof of Claim Filed by the holder of such Claim; and (b) the estimated amount of such Claim for Distribution purposes, as determined by the Bankruptcy Court pursuant to § 8.1 of the Plan.  Notwithstanding anything to the contrary, no**

**payments or distributions shall be made hereunder with respect to all or any portion of any Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, or determined by Final Order, and such Disputed Claim has become an Allowed Claim.  In the event that all Disputed Claims have been either Allowed or Disallowed by the Plan, the Confirmation Order, or Final Order of the Bankruptcy Court, any remaining balance allocated to the Disputed Claim Holding Beneficiary pursuant to this Clause (iv) shall be distributed by the Trustee to the holders of Allowed Debt Claims (to be further allocated based on their respective Pro Rata Share) pursuant to Clauses (iv) or (v) of the Distribution Waterfall, as applicable, as soon as reasonably practicable thereafter; and**

(v)     Fifth, after all holders of Allowed Debt Claims (including holders of Allowed China Secured Claims treated as Allowed Debt Claims pursuant to Article 4.3 of the Plan) have received Trust Distributions equal to their respective Debt Claim Distribution Amounts, any remaining Trust Distributions shall be allocated between the holders of Allowed Debt Claims, including holders of Allowed China Secured Claims treated as Allowed Debt Claims pursuant to Article 4.3 of the Plan, (to be further allocated pro rata based on their respective Debt Claim Allocation Amounts) and the Reorganized Debtor, as follows:

|  | The Reorganized Debtor | Holders of Allowed Debt Claims |
|---|---|---|
| Amounts less than $1B | 50% | 50% |

of the Call Option by the Trust; and (ii) the Trustee, upon request by FF GP, to directly transfer or transfer the underlying economic rights of the Call Option (including by exercising the Call Option and thereafter conveying the related shares in FF Intelligent to the applicable counterparty) as requested by FF GP in connection with a bona fide unrelated third-party financing, as follows: (x) 50% of the Call Option to the counterparty to a bona fide unrelated third-party financing providing FF Intelligent and its subsidiaries with not less than $100 million of net proceeds, (y) 100% of the Call Option to the counterparty to a bona fide unrelated third-party financing providing FF Intelligent and its subsidiaries with not less than $250 million of net proceeds, or (z) a ratable percentage of the Call Option to the counterparty to a bona fide unrelated third-party financing providing FF Intelligent and its subsidiaries with net proceeds greater than $100 million and less than $250 million (*i.e.*, an additional 1% of the Call Option for each additional $3 million of net proceeds beyond $100 million) ((x), (y), or (z), a "Qualifying Financing"), provided that FF GP may request the Trustee to transfer the Call Option for a financing of FF Intelligent and its subsidiaries other than a Qualifying Financing subject to the consent of Trustee and approval by a majority of the Creditor Trust Committee in their respective business judgment. Any consideration paid, if any, in exchange for the transfer of the Call Option either as part of a separate transaction providing for such transfer or attributable to the transfer of the Call Option in a financing transaction, whether in conjunction with a Qualifying Financing or otherwise, shall be paid directly to the Trust and shall constitute Trust Assets.

(m)    FF Information.

The Trustee shall be provided certain information set forth in the Plan Term Sheet on a confidential, professional eyes only basis, which information the Trustee may share on a confidential and aggregated basis with the Creditor Trust Committee.

**(n)    Powers of the Trustee.**

**The powers of the Trustee shall be those set forth in the Trust Agreement and subject to the approval of the Creditor Trust Committee, as applicable.**

- 36 -

Debtor's three minor children may be awarded child support (the "Wei Gan Domestic Support Obligations"), which obligations shall be satisfied in accordance with Article 2.4 of the Plan. In exchange for, and subject to (a) a Cash contribution from Wei Gan in the amount of $1,000,000 to the Trust on the Effective Date, which shall constitute Trust Assets (the "Effective Date Wei Gan Payment"), (b) a Cash payment of $250,000 to the Trust no later than ninety (90) days after the Effective Date (the "Second Wei Gan Payment"), (c) Wei Gan's agreement not to assert any other prepetition or postpetition Claims against the Debtor (excluding the Wei Gan Domestic Support Obligations) or the Trust, and (d) execution of the Wei Gan Declaration, the following shall occur:

(a)  Upon the Effective Date Wei Gan Payment, (i) the China Debtor Covenant shall apply to Wei Gan; and (ii) Wei Gan's alleged Debt Claim against the Debtor [Claim No. 20004] shall be treated as an Allowed Debt Claim in the amount of $250,000,000.

(b)  Upon the Second Wei Gan Payment, (the date upon which the foregoing condition occurs is the "Wei Gan Liability Release Date"), each holder of an (i) Allowed Late Filed Debt Claim, on the date of allowance of such Late Filed Debt Claim or (ii) Allowed Debt Claim (x) shall~~, in addition to the discharge of community claims under section 524(a) of the Bankruptcy Code, be deemed to have released~~ *(as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust)* **release** any Causes of Action against Wei Gan for personal liability or derivatively in its capacity as a creditor of a claim owed solely or jointly by Wei Gan (including unwinding or alter ego type claims) in any jurisdiction (the "Wei Gan Claims") on account of such Debt Claim or Late Filed Debt Claim to the maximum extent permitted by applicable law ~~and,~~ (y) agrees that it shall not assert any new, or continue to prosecute any existing, Wei Gan Claims related to such Debt Claim or Late Filed Debt Claim in every jurisdiction~~,~~**, and (z) submits a timely Compliance Certificate.  For the avoidance of doubt, the holders of Allowed Claims who do not submit a Compliance Certificate will be subject to the discharge of all Claims against the Debtor that constitute holders of Community Claims that such may seek to assert against Wei Gan**

**pursuant to sections 1141 and 524 of the Bankruptcy Code.  Holders of Allowed Claims who submit a Compliance Certificate will be entitled to Trust Distributions and will release all Wei Gan Claims, in addition to those claims discharged pursuant to sections 1141 and 524 of the Bankruptcy Code.**

Within ninety (90) days after the Wei Gan Liability Release Date with respect to an Allowed Debt Claim or the date of allowance of an Allowed Late Filed Debt Claim, each holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim shall (*as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust*) (a) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against Wei Gan from the courts and judicial authorities in all jurisdictions, including, but not limited to, the Chinese Courts, or confirm with the judicial authorities that Wei Gan has settled all of her debt obligations or legal responsibilities to such holder and (b) file and execute any documents requested by Wei Gan to evidence the above release. Wei Gan reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein.

**In connection with the releases described in this Article 6.6, each holder of an Allowed Debt Claim and/or Allowed Late Filed Debt Claim shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article 6.6, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 6.6 is: (a) in exchange for the good and valuable consideration provided by Wei Gan, a good faith**

506(b) of the Bankruptcy Code permits interest to accrue and be Allowed on such Claim.

### 8.3    *Preservation of Claims and Rights to Settle Claims.*

Except as otherwise provided in the Plan (including with respect to the Yidao Claims and as set forth in Article 11.4 of the Plan), or in any contract, instrument, or other agreement or document entered into in connection with the Plan, including the Plan Supplement, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss any and all claims, counterclaims, defenses, and rights (including setoff rights) that may be asserted in the Causes of Action, suits, and proceedings listed on **Schedule A** attached hereto (including any supplement to Schedule A included in the Plan Supplement) (collectively, the "Retained Actions"), whether at law or in equity, whether known or unknown, that the Debtor or his Estate may hold against any Entity (other than Claims, rights, Causes of Action, suits, and proceedings released pursuant to Articles 6.6, 11.4, or 11.9 of the Plan), without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.

The Reorganized Debtor expressly reserves all rights to prosecute any and all Retained Actions against any Entity. Unless any Retained Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Retained Actions for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Action upon, after, or as consequence of, confirmation or consummation of the Plan. For the avoidance of doubt, all claims, Causes of Action, suits, and proceedings of the Debtor that are not Retained Actions are waived as of the Effective Date. Any proceeds received on account of any Retained Action shall be transferred to the Trust and be considered Trust Assets **until each holder of an Allowed Debt Claim has received aggregate Trust Distributions equal to the full amount of such holder's Debt Claim Distribution Amount**

**and thereafter shall be retained by the Reorganized Debtor**.

      **The Debtor expressly reserves all Causes of Action based on facts and circumstances arising after the Effective Date against all entities unless otherwise expressly released by the Plan. The Debtor further expressly reserves all rights to assert all defenses and rights of setoff against all entities based on Causes of Action based on facts and circumstances arising before or after the Effective Date, regardless of whether such entity is included in Schedule A attached hereto.**

    **8.4**     *Expenses Incurred On or After the Effective Date.*

      Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Reorganized Debtor, the amount of reasonable expenses incurred by any Professional or the Voting Agent on or after the Effective Date in connection with implementation of the Plan, including, without limitation, reconciliation of, objection to, and settlement of Claims, shall be paid in Cash by the Reorganized Debtor.

**ARTICLE IX**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

    **9.1**     *Assumption of Contracts and Leases.*

      As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases of the Debtor listed on **Schedule B** attached hereto (including any supplement to Schedule B included in the Plan Supplement) shall be deemed assumed except that: (a) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; (b) any executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases, shall be deemed rejected as of the Effective Date; and (c) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion.

      Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions and rejections described in this

Bankruptcy Code, the Trustee may pursue an action to avoid and recover such transfer pursuant to sections 548(a)(1)(A) and 550 of the Bankruptcy Code, as applicable, through the Plan Arbitration Procedures, *provided* that such transfer did not arise out of any transaction or occurrence disclosed in the Chapter 11 Disclosures, *provided further* that the Declarations shall supersede the Chapter 11 Disclosures (collectively, (a) and (b) are the "Bankruptcy Actions").

~~Any Bankruptcy Actions must be commenced within one hundred eighty (180) days after the Effective Date (the "Bankruptcy Actions Limitations Period"), *provided* that the Trustee shall meet and confer with the Debtor prior to commencing any Bankruptcy Action, and the Bankruptcy Actions Limitations Period with respect to such Bankruptcy Action shall be automatically tolled for a period of thirty (30) days while the parties meet and confer, subject to extension by mutual agreement.~~

~~Upon the expiration of the Bankruptcy Actions Limitations Period, any Bankruptcy Actions that have not been timely asserted pursuant to the foregoing procedures shall be deemed satisfied and released, effective as of the Effective Date. For the avoidance of doubt, none of the claims or Causes of Action referenced in this Article 11.9, except as excluded herein, shall constitute Retained Actions.~~

**11.10** *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Effective Date. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor or any other party, including the Released Parties, with respect to any Claims or any other matter.

**ARTICLE XII**
**RETENTION OF JURISDICTION**

Except as provided herein with respect to matters subject to the Plan Arbitration Procedures, pursuant to sections 105(c) and 1142 of the Bankruptcy Code, to the fullest extent permitted by law, and notwithstanding the entry of the Confirmation Order or the occurrence of

**13.23**  *Deemed Acts.*

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

**13.24**  *Waiver or Estoppel.*

Each holder of a Claim shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor or its counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

**13.25**  *Statutes of Limitation.*

**Nothing in this Plan shall alter the statutes of limitation under the Bankruptcy Code or applicable law.**

# SCHEDULE A

## Schedule of Retained Actions

Except as otherwise provided in the Plan (including with respect to the Yidao Claims and as set forth in Article 11.4 of the Plan), or in any contract, instrument, or other agreement or document entered into in connection with the Plan, including the Plan Supplement, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss any and all claims, counterclaims, defenses, and rights (including setoff rights) that may be asserted in the Causes of Action, suits, and proceedings listed on this Schedule A (collectively, the "Retained Actions"), whether at law or in equity, whether known or unknown, that the Debtor or his Estate may hold against any Entity (other than Claims, rights, Causes of Action, suits, and proceedings released pursuant to Articles 6.6, 11.4, or 11.9 of the Plan), without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.

The Reorganized Debtor expressly reserves all rights to prosecute any and all Retained Actions against any Entity. Unless any Retained Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Retained Actions for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Action upon, after, or as consequence of, confirmation or consummation of the Plan.

Notwithstanding and without limiting the generality of Article 8.3 of the Plan, the specific types of Causes of Action detailed below are expressly preserved by the Debtor and/or the Reorganized Debtor.

The below includes entities that are party to or that the Debtor believes may become party to litigation, arbitration or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial. Unless otherwise released by the Plan, the Reorganized Debtor expressly reserves all Causes of Action against or related to and all rights to assert all defenses, counterclaims and rights of setoff against all entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, including, without limitation, dealers, creditors, customers, employees, utilities, suppliers, vendors, insurers, sureties, factors, lenders, bondholders, lessors or any other parties, regardless of whether such entity is included below.

1. **Case Title**: Han's San Jose Hospitality LLC v. Jia Yueting, et al.

   **Case Number**: Case No. 19 CV342187 (Consolidated with Han's San Jose Hospitality LLC v. Le Holdings (Beijing) Co., LTD, et al. Case No. 17CV317221)

   **Nature of the case**: Unlawful detainer/ alter ego

   **Court or agency**: Santa Clara Superior Court, 191 North 1st Street, San Jose, California, 95113

   **Status of the case**: Pending

4. **Case Title**: Shanghai Lan Cai Asset Management Co, Ltd v. Jia Yueting, FF Peak Holding

**Status**: Pending

9.    **Case Title**: Yizhuang International Holdings (Hong Kong) Co., Ltd. v. Yueting jia & Leshi Holdings (Beijing) Co., Ltd.

      **Case Number**: Case No. 2018 Jing Min Chu #72

      **Court Name**: Beijing High People's Court, No. 10, Jianguomen South Street, Chaoyang District, Beijing, China 100022

      **Nature**: Guarantee contract dispute

      **Status**: Pending

10.    **Case Title**: Beijing Century Ruike System Technology Co., Ltd. v. Yueting Jia & Leshi Sports Culture Industry Development (Beijing) Co., Ltd. & Leshi Holdings (Beijing) Co., Ltd.

      **Case Number**: Case No. 2018 Jing 0108 Min Chu #51312

      **Court Name**: Beijing Haidian District People's Court, 12 Danling Street, Haidian District, Beijing, China 100080

      **Nature**: Sale contract dispute

      **Status**: Pending

11.    **Case Title**: Jiangsu Red Earth Venture Capital Management Co., Ltd. v. Yueting Jia

      **Case Number**: Unknown

      **Court Name**: Ningbo Intermediate People's Court, Zhejiang Province, No. 746 Zhongxing Road, Jiangdong District, Ningbo, Zhejiang, China 315040

      **Nature**: Contract dispute

      **Status**: Pending

12.    **Case Title**: Gan Wei v. Yueting Jia

      **Case Number**: Unknown

      **Court Name**: Chengdu Jinjiang District People's Court, No. 90, Longzhou Road, Gongnongyuan Street, Jinjian District, Chengdu, Sichuan, China

      **Nature**: Divorce proceeding

      **Status**: Pending

      **In addition to the Retained Actions that currently appear on this Schedule A to the Plan the Debtor (i) supplements this Schedule A with the divorce action pending before Judge Wang Yang (Case Number 2019-89234) filed on November, 15, 2019 by the Debtor's estranged wife Wei Gan in the People's Court of Chaoyang District, Beijing, China under Article 12(1) of the Civil Procedure Law of the People's Republic of China, (ii) reserves and retains and may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss any and all claims, rights, and Causes of Action for contribution, reimbursement, or other legal and equitable rights relating to obligations for which another party may be co-liable for any debt of the Debtor, including, without limitation, the parties and debts identified on Schedule H of the Debtor's *Schedules of Assets and Liabilities* [Docket No. 28] (as amended, modified, or supplemented by *Amended Schedules of Assets***

*and Liabilities and Statement of Financial Affairs* [Docket No. 427]) (collectively, the "Contribution Actions"), and (iii) identifies the specified actions listed below.  For the avoidance of doubt, all Contribution Actions shall be treated as Retained Actions under the Plan, and the Debtor and/or the Reorganized Debtor hereby retains rights to contribution and subrogation with respect to any of the Contribution Actions.

Without limiting the foregoing, the Debtor and/or Reorganized Debtor reserves claims of subrogation against the creditor and claims of contribution against the co-Debtor identified below:

| Creditor | Co-Debtor |
|---|---|
| SHENZHEN LETV XINGEN #1 INVESTMENT MGT | 乐视控股（北京）有限公司/LE HOLDINGS (BEIJING) CO., LTD. |
| SHENZHEN LETV XINGEN #1 INVESTMENT MGT | 乐安影云（天津）文化传播合伙企业（有限合伙）/LEAN YINGYUN (TIANJIN) CULTURE COMMUNICATION LIMITED PARTNERSHIP |
| SHENZHEN LETV XINGEN #1 INVESTMENT MGT | 乐正荣通（天津）文化传播合伙企业（有限合伙）/LEZHENG RONGTONG (TIANJIN) CULTURE COMMUNICATION LIMITED PARTNERSHIP |
| SHENZHEN LETV XINGEN #1 INVESTMENT MGT | 乐普影天（天津）文化传播合伙企业（有限合伙）/LEPU YINGTIAN (TIANJIN) CULTURE COMMUNICATION LIMITED PARTNERSHIP |
| SHENZHEN LETV XINGEN M&A FUND INVEST MGT | 乐视控股（北京）有限公司/LE HOLDINGS (BEIJING) CO., LTD. |
| SHENZHEN LETV XINGEN M&A FUND INVEST MGT | 乐视网信息技术(北京)股份有限公司/Leshi Internet Information and Technology Corp.,Bei Jing |
| China Evergrande Group | Smart King Ltd |

| | |
|---|---|
| **CHONGQING LETV COMMERCIAL FACTORING CO** | **乐视控股（北京）有限公司 /LE HOLDINGS (BEIJING) CO., LTD.** |
| **TIANJIN JIARUI HUIXIN CORP MGT CO LTD** | **Xinle Asset Management (Tianjin) Partnership (Limited Partnership)** |
| **TIANJIN JIARUI HUIXIN CORP MGT CO LTD** | **乐视网信息技术(北京)股份有限公司/Leshi Internet Information and Technology Corp.,Bei Jing** |
| **TIANJIN YINGXIN XINHENG INV CONSULTING** | **乐视控股（北京）有限公司 /LE HOLDINGS (BEIJING) CO., LTD.** |
| **Liu Hong （Letv）** | **Liu Hong** |
| **SHI, PENG** | **SHI, PENG** |
| **CENTURY SAGE SCIENTIFIC HK LIMITED** | **LETV SPORTS CULTURE INDUSTRY DEVELOPMENT (BEIJING) CO., LTD.** |

**Additionally, the Debtor reserves all causes of action against those parties listed below:**

| **Name** |
|---|
| **LIU, HONG （FF Henry Liu）** |
| **SHAN, LIUHUAN** |
| **SHAN, LIUHUAN** |
| **BEIJING LAN CAPITAL INVESTMENT FUND MGMT** |
| **SHANGHAI LAN CAI ASSET MANAGEMENT CO LTD** |
| **SHENZHEN JINCHENG COMM FACTORING CO LTD** |
| **TAO YUN CAPITAL CO LTD AKA TWC GROUP CO** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*) **NOTICE OF FILING OF NON-ADVERSE MODIFICATIONS TO DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 3019(A)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) **May 20, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **May 20, 2020,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> **VIA U.S. MAIL**
> United States Bankruptcy Court
> Central District of California
> Attn:  Hon. Vincent Zurzolo
> Edward R. Roybal Federal Bldg./Courthouse
> 255 East Temple Street, Suite 1360
> Los Angeles, CA  90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **May 20, 2020,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 20, 2020 | Rolanda Mori | /s/ *Rolanda Mori* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:329690.1

## SERVICE INFORMATION FOR CASE NO. 2:19-bk-24804-VZ

### 1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>

- Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com
- Jerrold L Bregman    ecf@bg.law, jbregman@bg.law
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Stephen D Finestone    sfinestone@fhlawllp.com
- Richard H Golubow    rgolubow@wghlawyers.com, pj@wcghlaw.com;jmartinez@wghlawyers.com;Meir@virtualparalegalservices.com
- Jared T. Green    , spappa@svglaw.com
- Robbin L. Itkin    robbin.itkin@dlapiper.com, cheryleigh.bullock@dlapiper.com;robbin-itkin-6765@ecf.pacerpro.com
- Mette H Kurth    mkurth@foxrothschild.com, mette-kurth-7580@ecf.pacerpro.com
- Dare Law    dare.law@usdoj.gov
- Ben H Logan    blogan@omm.com
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- David W. Meadows    david@davidwmeadowslaw.com
- Kevin Meek    kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Matthew J Olson    olson.matthew@dorsey.com, stell.laura@dorsey.com
- Malhar S Pagay    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- Diana M Perez    , diana-perez-7352@ecf.pacerpro.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Victor A Sahn    vsahn@sulmeyerlaw.com,
  pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com
- Benjamin Taylor    btaylor@taylorlawfirmpc.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Ryan A Witthans    rwitthans@fhlawllp.com
- Felix T Woo    fwoo@ftwlawgroup.com, admin@ftwlawgroup.com
- Claire K Wu    ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- David B Zolkin    dzolkin@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:329690.1

**F 9013-3.1.PROOF.SERVICE**