1  Richard M. Pachulski (CA Bar No. 90073)
   Jeffrey W. Dulberg (CA Bar No. 181200)
2  Mahar S. Pagay (CA Bar No. 189289)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California 90067
4  Telephone: 310-277-6910
   Facsimile: 310-201-0760
5  Email: rpachulski@pszjlaw.com
          jdulberg@pszjlaw.com
6          mpagay@pszjlaw.com

7  Counsel for Debtor and Debtor in Possession

8  Suzzanne Uhland (CA Bar No. 136852)
   Madeleine C. Parish (*pro hac vice*)
9  LATHAM & WATKINS LLP
   885 Third Avenue
10 New York, New York 10022
   Telephone: 212-906-1200
11 Facsimile: 212-751-4864
   Email: suzzanne.uhland@lw.com
12        madeleine.parish@lw.com

13 [Proposed] Special Corporate, Litigation, and International
   Counsel for Debtor and Debtor in Possession
14

15            **UNITED STATES BANKRUPTCY COURT**
         **CENTRAL DISTRICT OF CALIFORNIA -- LOS ANGELES DIVISION**
16

17 In re:                                    Case No.: 2:19-bk-24804-VZ

   YUETING JIA[1],                           Chapter 11
18
                                             **ORDER GRANTING MOTION TO**
19           Debtor.                         **CONFIRM THIRD AMENDED**
                                             **CHAPTER 11 PLAN OF**
20                                           **REORGANIZATION FOR YUETING**
                                             **JIA (**DATED MARCH 17, 2020,
21                                           DOCKET ENTRY #464**) AS**
                                             **MODIFIED**
22
                                             Confirmation Hearing
23                                           Date:  May 21, 2020
                                             Time:  9:30 a.m. (Pacific Time)
24                                           Place: Courtroom 1368
                                                    Roybal Federal Building
25                                                  255 E. Temple Street
                                                    Los Angeles, California 90012
26                                           Judge:  Hon. Vincent P. Zurzolo

27

28 [1] The last four digits of the Debtor's federal tax identification number are 8972.  The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

DOCS_LA:329881.4 46353/002

FILED & ENTERED

JUN 05 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY johnson   DEPUTY CLERK

Debtor and debtor in possession, Yueting Jia (the "Debtor"), having filed and proposed the *Third Amended Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 464] on March 17, 2020 (the "Third Amended Plan") and having filed the *Notice of Filing of Non-Adverse Modifications to Debtor's Third Amended Plan of Reorganization* [Docket No. 780] on May 20, 2020 (the "Plan Modifications") (the Third Amended Plan, as modified by the Plan Modifications and by the Post-Confirmation Hearing Order, the "Plan");[2]

The Court, having entered on March 20, 2020 its *Order (I) Granting Motion to Approve Adequacy of Fourth Amended Disclosure Statement, (II) Approving Voting and Tabulation Procedures, (III) Setting Confirmation Hearing and Related Deadlines, (IV) Waiving Certain Local Rules and Procedures, (V) Vacating Order to Show Cause and (VI) Granting Related Relief* [Docket No. 485] (the "Disclosure Statement Order"), pursuant to which the Court (a) approved the *Fourth Amended Disclosure Statement with Respect to Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 465] (the "Disclosure Statement") filed in support of the Plan; (b) established notice, balloting, and voting procedures in connection with soliciting votes on the Plan; (c) fixed objection deadlines to Confirmation of the Plan; and (d) scheduled a hearing to consider Confirmation of the Plan;

Upon the submission of the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC, Re: Voting and Tabulation of Ballots Cast on the Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, including the tabulation of the ballots cast in favor of and in opposition to the Plan [Docket No. 711]; *Declaration of Malhar S. Pagay Regarding Voting and Tabulation of Ballots Cast on the Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (Dated May 7, 2020) [Docket No. 712]; Debtor's Omnibus Reply to: (1) Han's San Jose Hospitality LLC's Objection to Confirmation of Chapter 11 Plan [Docket No. 714]; (2) Objection of Zhejiang Zhongtai Chuangzhan Enterprise Management Co., Ltd. to Confirmation of Debtor's Third Amended Plan of Reorganization [Docket No. 716]; (3) Objection of Liuhuan Shan to Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 719]; (4) Shanghai Lan Cai Asset Management Co.,*

---

[2] Capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Plan.

*Ltd.'s Objection to Debtor's Motion for Confirmation of the Third Amended Plan of Reorganization Under Chapter 11 Of The Bankruptcy Code [Docket No. 723]; and (5) United States Trustee's Objection To Debtor's Motion For Confirmation [Docket No. 735]* [Docket No. 756] (the "Reply"); and the declarations of Yueting Jia [Docket No. 757], Richard M. Pachulski [Docket No. 758], Adrian Francis [Docket No. 759], and Terry Treemarcki [Docket No. 760], filed concurrently with the Reply;

The Debtor having filed on April 25, 2020 the *Notice of Filing of Plan Supplement to the Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* appending certain documents (or forms thereof), schedules, and exhibits [Docket No. 678] (the "Plan Supplement");

The Debtor having filed on May 11, 2020 the *Notice of Filing of Cure Schedule* appending a cure schedule setting forth the Cure Amount, if any, for each executory contract and unexpired lease to be assumed [Docket No. 736] (the "Cure Schedule");

A hearing to consider confirmation of the Plan and matters related thereto having been held before this Court on May 21, 2020 (the "Confirmation Hearing"); Richard M. Pachulski of Pachulski Stang Ziehl & Jones LLP, appearing on behalf of the Debtor; other appearances having been noted on the record;

The Court, having entered on May 21, 2020, its *Findings of Fact and Conclusions of Law Regarding Motion to Confirm Debtor's 3rd Amended Plan of Reorganization* [Docket No. 784] and *Order after Plan Confirmation Hearing* [Docket No. 785] (the "Post-Confirmation Hearing Order");

And the Court having considered the following:

(a)     the Plan;

(b)     the Disclosure Statement and the Disclosure Statement Order;

(c)     the Voting Summary;

(d)     the *Debtor's Memorandum of Points and Authorities in Support of Debtor's Confirmation of Third Amended Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (Dated April 23, 2020)* [Docket No. 657] (the "Confirmation Motion");

(e)     the *Declaration of Yueting Jia in Support of Motion for Order (I) Confirming Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code; and (II) Approving*

3

*Settlement Pursuant to Bankruptcy Rule 9019; Request for Discharge on the Effective Date (Dated April 23, 2020)* [Docket No. 658];

(f)     the *Declaration of Matthias Aydt in Support of Motion for Order (I) Confirming Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code; and (II) Approving Settlement Pursuant to Bankruptcy Rule 9019; Request for Discharge on the Effective Date (Dated April 23, 2020)* [Docket No. 659];

(g)     the *Declaration of Charles Hsieh in Support of Motion for Order (I) Confirming Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code; and (II) Approving Settlement Pursuant to Bankruptcy Rule 9019; Request for Discharge on the Effective Date (Dated April 23, 2020)* [Docket No. 661];

(h)     the *Declaration of Robert Moon in Support of Motion for Order (I) Confirming Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code; and (II) Approving Settlement Pursuant to Bankruptcy Rule 9019; Request for Discharge on the Effective Date (Dated April 23, 2020)* [Docket No. 662];

(i)     *The Official Committee of Unsecured Creditors' Omnibus Reply to Objections to Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 763];

(j)     *Declaration of William B. Waldie in Support of the Official Committee of Unsecured Creditors' Omnibus Reply to Objections to Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 764];

(k)     *Han's San Jose Hospitality LLC's Objection to Confirmation of Chapter 11 Plan* [Docket No. 714] (the "Han's Objection");

(l)     *Objection of Zhejiang Zhongtai Chuangzhan Enterprise Management Co., Ltd. to Confirmation of Debtor's Third Amended Plan of Reorganization* [Docket No. 716] (the "ZZC Management Objection");

(m)     *Objection of Liuhuan Shan to Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 719] (the "Shan Objection");

(n)     *Shanghai Lan Cai Asset Management Co., Ltd.'s Objection to Debtor's Motion for*

4

*Confirmation of the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 723] (the "<u>SLC Objection</u>");

      (o)    *United States Trustee's Objection to Debtor's Motion for Confirmation* [Docket No. 735] (the "<u>UST Objection</u>" and, collectively, with the Han's Objection, ZZC Management Objection, Shan Objection and SLC Objection, the "<u>Confirmation Motion Objections</u>");

      (p)    *Notice of Withdrawal and Withdrawal of Objection of Liuhuan Shan to Debtor's Third Amended Plan of Reorganization* [Docket No. 778];

      (q)    The record compiled in the Chapter 11 Case and all pleadings filed with respect thereto; and

      (r)    The offers of proof, evidence admitted, and the arguments and representations of counsel at the Confirmation Hearing;

And based upon any additional findings made at the Confirmation Hearing and after due deliberation and good cause appearing,

**IT IS HEREBY ORDERED** that:

A.    <u>**Grant of Relief Sought in Confirmation Motion**</u>

The relief sought in the Confirmation Motion is granted.

B.    <u>**Confirmation of the Plan and Approval of Plan Modifications**</u>

The Plan, along with each of its provisions (whether or not specifically approved herein) and all operative exhibits and schedules thereto, is confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code.

The Plan Modifications [Docket No. 780] constitute technical changes or do not materially and adversely affect or change the treatment of any Claims against the Debtor and comply in all respects with section 1127 of the Bankruptcy Code and, consequently, pursuant to Bankruptcy Rule 3019, (i) no other or further disclosure with respect to the Plan Modifications is required under section 1125 of the Bankruptcy Code and (ii) neither resolicitation of votes on the Plan nor affording holders of Claims in the voting classes the opportunity to change a previously cast ballot is required under section 1126 of the Bankruptcy Code. Therefore, the Plan Modifications are approved pursuant to Bankruptcy Code section 1127(a) and Bankruptcy Rule 3019(a).

DOCS_LA:329881.4 46353/002

All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits and schedules thereto are incorporated by reference into this Confirmation Order, and the provisions of the Plan and this Confirmation Order are non-severable and mutually dependent.  Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  All Confirmation Motion Objections and other responses to, and statements and comments regarding, the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing are either (i) resolved or sustained on the terms set forth herein or (ii) overruled.

The failure specifically to identify or refer to any particular provision of the Plan or any other agreement in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan and all other agreements approved by this Confirmation Order are approved in their entirety.

**C.**    **Binding Nature of Plan Terms**

Notwithstanding any otherwise applicable law, from and after the entry of this Confirmation Order, the terms of the Plan and this Confirmation Order, including the compromises, releases, waivers, discharges and injunctions described in Articles 6.2, 6.6, 11.3, 11.4, 11.5, 11.6, and 11.9 of the Plan, shall be deemed binding upon (i) the Debtor and, from and after the Effective Date, the Reorganized Debtor, (ii) the Creditor Trust and its Trustee, (iii) any and all holders of Claims (irrespective of whether such Claims are Impaired under the Plan or whether the holders of such Claims accepted, rejected or are presumed to have accepted or deemed to have rejected the Plan), (iv) any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor, and (v) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing, in each case subject to those limitations as set forth in the Plan.

**D.**    **General Settlement of Claims**

In consideration for the Plan distributions, releases, and other benefits provided under the Plan, upon the Effective Date (or such later date as specified in the Plan), the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies relating to any

Allowed Claim or any Plan distribution to be made on account thereof or otherwise resolved under the Plan. The entry of this Confirmation Order constitutes the Court's approval of the compromise and settlement of all such Claims and controversies, including the Wei Gan Settlement, as well as a finding by the Court that such compromise and settlement is fair, equitable, and reasonable and in the best interests of the Debtor and his Estate.

### E.    Vesting of Assets in the Reorganized Debtor, Impact of Conversion to Chapter 7

On the Effective Date, except as otherwise provided in the Plan, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Estate shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests. On and after the Effective Date, (i) the Reorganized Debtor shall be authorized to engage in his existing business or new business and to invest in or acquire assets, and (ii) the Creditor Trust shall be authorized to operate, make Trust distributions, and dispose of Trust Assets, in each case without supervision or approval by the Bankruptcy Court and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

Pursuant to LBR 3020-1(b), if the Chapter 11 Case is converted to one under chapter 7 of the Bankruptcy Code, the property of the Reorganized Debtor or of any successor to the Estate under the Plan, that has not been distributed under the Plan shall be vested in the chapter 7 estate, except for property that would have been excluded from the estate if the Chapter 11 Case had always been one under chapter 7, provided, however, that the Trust and the vesting of the Trust Assets in the Trust shall survive any such conversion.

### F.    DIP Facility Claims

On the Effective Date, in exchange for the full and complete settlement, release, and discharge of the Debtor's obligations under the DIP Facility: (i) the maturity date of the DIP Facility shall be automatically extended for one year from the Effective Date, (ii) all obligations of the Debtor under the DIP Facility shall be assumed by the Trust, payable solely from Trust Assets, (iii) all Liens and security interests on any Collateral transferred to the Trust in accordance with the Trust Agreement shall remain in place as perfected first priority Liens and survive against the Trust, subject only to the Liens securing the Exit Financing, (iv) the interest rate per annum shall be increased to twelve percent

(12% per annum), and (v) all other Liens and security interests shall be satisfied, discharged, and terminated in full and of no further force and effect.

### G.    Approval of the Exit Financing

This Confirmation Order shall constitute authorization for the Reorganized Debtor and the Trustee on behalf of the Creditor Trust to finalize, execute, deliver, and perform under the Exit Financing, and those documents necessary or appropriate to consummate the transactions contemplated by the Exit Financing and obtain the financing contemplated thereby, including all transactions contemplated thereby, including any and all actions to be taken, undertakings to be made, and obligations to be incurred, fees and expenses paid, and indemnities to be provided, without further notice to or order of the Court, act, or action under applicable law, regulation, order, or rule, or vote, consent, authorization, or approval of any Person.  Subject to the occurrence of the Effective Date, the Exit Financing shall constitute the legal, valid, and binding obligations of the Trustee on behalf of the Creditor Trust and shall be enforceable in accordance with its respective terms.

The liens contemplated by and related to the Exit Financing and related documents approved and are valid, binding, and enforceable liens on the collateral specified, and with the priorities set forth, in the relevant agreements executed by the Trustee on behalf of the Creditor Trust in connection with the incurrence of the Exit Financing.  The pledges, liens, and other security interests granted pursuant to or in connection with the incurrence of the Exit Financing are granted in good faith as an inducement to the lenders and other secured parties thereunder to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, recharacterization, or subordination, and the priorities of such guarantees, mortgages, pledges, liens, and other security interests shall be as set forth in the applicable intercreditor agreement(s) and other definitive documentation executed in connection with the incurrence of the Exit Financing.

The Trustee on behalf of the Creditor Trust and the secured parties (and their designees and agents) under the Exit Financing are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to evidence, establish, and perfect such liens and security interests in connection with the Exit Financing under the provisions of the applicable state,

8

provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties, provided, however, that no secured party shall be authorized or permitted to, and all such secured parties shall not, make any such filing or recording against the Trustee, individually, or against any entity other than the Creditor Trust, as debtor thereunder.

On the Effective Date, the Trust Assets shall vest in the Trust free and clear of any and all Liens, claims, encumbrances, contractual restrictions, and other interests.  Such Trust Assets shall vest in the Trust without further execution of documents or other action by any nominee or other party with respect to such assets.

### H.    Appointment of Trustee and Creditor Trust Committee

Jeffrey Prol shall be appointed Trustee of the Creditor Trust, and the following shall be appointed to the Creditor Trust Committee:

1.    Ping An Bank, Ltd. Beijing Branch;

2.    China Minsheng Trust Co., Ltd.;

3.    Shanghai Leyu Chuangye Investment Management Center LP; and

4.    Jiangyin Hailan Investment Holding Co., Ltd.

The Trustee and Creditor Trust Committee shall serve in accordance with the Trust Agreement. The Trustee shall have those powers provided in the Trust Agreement, subject to the approval of the Creditor Trust Committee, as applicable.

### I.    Approval of the Creditor Trust Agreement

This Confirmation Order shall constitute (i) approval of the Creditor Trust Agreement substantially in the form of the creditor trust agreement filed with the Plan Supplement, and all transactions contemplated thereby, including any and all actions to be taken, undertakings to be made, and obligations to be incurred, fees and expenses paid, and indemnities to be provided by the Reorganized Debtor or the Creditor Trust, as applicable, in connection therewith, and (ii) authorization for the Reorganized Debtor and Trustee to finalize, execute, deliver, and perform under those documents necessary or appropriate to consummate the transactions contemplated by the Creditor

Trust Agreement, without further notice to or order of the Court, act, or action under applicable law, regulation, order, or rule, or vote, consent, authorization, or approval of any Person.  Subject to the occurrence of the Effective Date, the Creditor Trust Agreement shall constitute the legal, valid, and binding obligations of the parties thereto and shall be enforceable in accordance with its terms.

### J.    Cancellation of Liens

Except as provided otherwise in the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens on assets located in the United States that secure any U.S. Secured Claim shall be fully released, settled, discharged, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Reorganized Debtor and his successors and assigns, and the holder of such U.S. Secured Claim shall be authorized and directed, at the sole cost and expense of the Reorganized Debtor, to release any Collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such holder, and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The filing of the Confirmation Order with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### K.    Discharge of Claims and Compromise and Settlement of Claims

Subject to the occurrence of the Discharge Date as provided below, pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date.  Except as expressly provided in the Plan, on the Discharge Date (and subject to its occurrence), and pursuant to section 1141(d)(5)(A) of the Bankruptcy Code, entry of the Confirmation Order shall be deemed to act as a discharge and release under section 1141(d)(1)(A) of the Bankruptcy Code of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the holder of the

10

Claim votes to accept the Plan or is entitled to receive a distribution under the Plan; *provided*, *however*, that in no event shall occurrence of the Discharge Date discharge the Debtor from any obligations remaining under the Plan as of the Discharge Date. Any default by the Debtor with respect to any Claim that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Discharge Date.

Except as expressly provided in the Plan, any holder of a discharged Claim will be precluded from asserting against the Debtor or any of his assets any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

The Discharge Date shall occur upon the entry of an order upon the Debtor establishing that: (i) the preconditions to reaching an Effective Date have been satisfied as set forth in Plan Articles 10.1 and 10.2 (other than section 10.2(b)); (ii) all Trust Assets have been transferred to the Trust per the Creditor Trust Agreement; and (iii) paragraphs (a), (b), and (c) of the Distribution Waterfall of the Creditor Trust Agreement have been satisfied. The Reorganized Debtor shall file a motion for such discharge with supporting declarations and provide notice thereof per LBR 9013-1. Notwithstanding the foregoing, nothing contained in the Plan or the Confirmation Order shall discharge the Debtor from any debt excepted from discharge under section 523 of the Bankruptcy Code by a Final Order.

**L.    Releases by the Debtor**

Article 11.4(a) of the Plan is approved, which provides: Upon the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, in his individual capacity and as debtor in possession, shall be deemed forever to release, waive, and discharge (i) the Estate; (ii) all Persons engaged or retained by the Debtor in connection with the Chapter 11 Case (including in connection with the preparation of and analyses relating to the Disclosure Statement and the Plan); and (iii) any and all advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, consultants and representatives of each of the foregoing Persons and Entities (whether current or former, in each case in his, her, or its capacity as such), from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities, whether for tort, fraud, contract, recharacterization, subordination,

11

violations of federal or state securities laws (other than the rights of the Debtor or Reorganized Debtor to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (a) the Debtor or the Chapter 11 Case; (b) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor; (c) any Released Party in any such Released Party's capacity as an employee, or agent of, or advisor to, or consultant to, the Debtor; (d) the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan; (e) the business or contractual arrangements between the Debtor and any Released Party; (f) the restructuring of Claims before or during the Chapter 11 Case; and (g) the negotiation, formulation, preparation, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, or related agreements, instruments, or other documents, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence.  The Reorganized Debtor shall be bound, to the same extent the Debtor is bound, by the releases and discharges set forth above.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article 11.4(a) of the Plan by the Debtor, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 11.4(a) of the Plan is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such claims; (ii) in the best interests of the Debtor and all holders of Claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

DOCS_LA:329881.4 46353/002

**M.    Releases by Holders of Claims**

  **1.    Releases by Holders of Non-Debt Claims**

   Article 11.4(b) of the Plan is approved, which provides:  On the Effective Date, to the maximum extent permitted by applicable law, each Releasing Party, in consideration for the obligations of the Debtor and the Reorganized Debtor under the Plan, and the Trust Interests and Cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed forever to release, waive, and discharge the Released Parties from personal liability in every jurisdiction from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtor, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws or laws of any other jurisdiction or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event, or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (a) the Debtor or the Chapter 11 Case; (b) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor; (c) any Released Party in any such Released Party's capacity as an employee, agent of, or advisor to, or consultant to, the Debtor; (d) the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan; (e) the business or contractual arrangements between the Debtor and any Released Party; (f) the restructuring of Claims before or during the Chapter 11 Case and the solicitation of votes with respect to the Plan; and (g) the negotiation, formulation, preparation, entry into, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement and all documents contained or referred to therein), the Disclosure Statement, or related agreements, instruments, or other documents. Notwithstanding anything contained herein to the contrary, the foregoing release (x) does not release any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (y) shall only apply to

DOCS_LA:329881.4 46353/002

holders of Non-Debt Claims in their capacity as a holder of a Non-Debt Claim and shall not apply to any other Claims such holder may have.

In connection with the releases described in Article 11.4(b) of the Plan, each Releasing Party shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law.  Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article 11.4(b) of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 11.4(b) of the Plan is: (a) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such claims; (b) in the best interests of the Debtor and all holders of Claims; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

## 2. Standstill and Releases by Holders of Allowed Debt Claims, Allowed China Secured Claims, and Allowed Late Filed Debt Claims

Article 11.4(c) of the Plan is approved, which provides:  To the maximum extent permitted by applicable law, each holder of an Allowed Debt Claim or Allowed China Secured Claim shall agree for a period of four years after the Effective Date (the "Standstill Period") to not assert any new Causes of Action (x) against the Debtor for personal liability directly or (y) derivatively in its capacity as a creditor of a claim owed solely or jointly by the Debtor (including unwinding or alter ego type claims), in any non-U.S. jurisdiction (collectively, the "YT Claims"); *provided*, *however*, that such holder may continue to prosecute any actions commenced prepetition against the Debtor up to judgment and pursue Other Distributions through judicial authorities in the PRC to satisfy such holder's Debt Claim

or China Secured Claim through a mechanism that will be mutually agreed to by the parties, including claims against primary obligors solely based on such holder's contractual agreements with such primary obligors (for the avoidance of doubt, such holder may not bring unwinding or alter ego type claims against such primary obligors); *provided further*, *however*, that the Standstill Period shall terminate in the event a Liquidation Event occurs during the Standstill Period.  All limitations periods applicable to all YT Claims in any non-U.S. jurisdictions, to the extent not previously expired, shall be tolled for the duration of the Standstill Period.

Each holder of an Allowed Debt Claim, Allowed China Secured Claim, or Allowed Late Filed Debt Claim shall, within ninety (90) days after the later to occur of (a) the Effective Date and (b) the date such Debt Claim, China Secured Claim, or Late Filed Debt Claim becomes Allowed, (i) take the steps and provide the documents described in the Trust Agreement to notify the applicable court or courts in the PRC (the "Chinese Courts") that (A) the Debtor and such holder and (B) if applicable, the KCBI Claimant and the applicable Key China Business Individual have reached a settlement agreement that is embodied in and has been implemented through the Plan and request that the Chinese Courts remove the Debtor from the List of Dishonest Judgment Debtors (the "China Debtor List") and lift any consumption or travel restrictions (the "China Restrictions"), as applicable, and (ii) refrain from taking any action during the Standstill Period to cause (A) the Debtor or (B) if applicable, the Key China Business Individual to be reinstated on the China Debtor List or be subject to the China Restrictions (the "China Debtor List Covenant").

As a condition to receiving Plan Distributions (including Trust Distributions), each holder of an Allowed Debt Claim (including the holder of an Allowed China Secured Claim treated as an Allowed Debt Claim pursuant to Article 4.3 of the Plan), Allowed China Secured Claim, or Allowed Late Filed Debt Claim shall provide the Compliance Certificate to the Trustee within ninety (90) days after the date all or any portion of such Debt Claim, China Secured Claim, or Late Filed Debt Claim becomes Allowed that certifies (a) such holder's compliance with the China Debtor List Covenant, (b) such holder's compliance with the Standstill Period and that such holder has not initiated, and will not initiate, any YT Claims during the Standstill Period, (c) if the Liability Release Date has occurred, the release of the YT Claims, and (d) if applicable, such holder's compliance with Article 6.6 of the Plan

15

and the release of Wei Gan's personal liability pursuant to the Wei Gan Settlement and withdrawal or dismissal of action as necessary to effect that release in accordance with Article 6.6 of the Plan.  If the holder of an Allowed Debt Claim, Allowed China Secured Claim, or Allowed Late Filed Debt Claim fails to submit the Compliance Certificate, submits a Compliance Certificate containing falsified information, or breaches the Compliance Certificate, such holder shall forfeit its Plan Distributions (including any Trust Interests) and such Plan Distributions shall revert to the Trust for the ratable benefit of holders of Allowed Debt Claims and the Reorganized Debtor pursuant to the Distribution Trust Waterfall.

Subject to approval of the applicable KCBI Settlement, before any Trust Distributions are made to an applicable KCBI Claimant, such claimant shall provide a Compliance Certificate that certifies such claimant's compliance with the China Debtor List Covenant with respect to the applicable Key China Business Individual.

Upon the earlier of a holder of an Allowed Debt Claim (including the holder of an Allowed China Secured Claim treated as an Allowed Debt Claim pursuant to Article 4.3 of the Plan) receiving (a) Trust Distributions that, in the aggregate, are equal to 40% of its Debt Claim Allocation Amount and (b) Trust Distributions and Other Distributions (from enforcement or other actions) that, in the aggregate, are equal to 100% of its Debt Claim Allocation Amount (the date upon which the foregoing condition occurs is the "Liability Release Date"), such holder (i) shall be deemed to have released the YT Claims on account of such Debt Claim in every jurisdiction and (ii) agrees that it shall not assert any new, or continue to prosecute any existing, YT Claims related to such Debt Claim in every jurisdiction; *provided*, *however*, that the foregoing release shall not release, waive, or otherwise impact the rights of such holder to receive further Trust Distributions or to pursue and receive Other Distributions through a mechanism that will be mutually agreed to by the parties; *provided further*, *however*, that if an Allowed China Secured Claim is satisfied in full prior to the initial Trust Distribution Date, on the date thereof, the holder of such China Secured Claim (A) shall be deemed to have released the YT Claims on account of such China Secured Claim in every jurisdiction and (B) agrees that it shall not assert any new, or continue to prosecute any existing, YT Claims related to such China Secured Claim in every jurisdiction.

16

Each holder of an Allowed Late Filed Debt Claim, on the date of allowance of such Late Filed Debt Claim (a) shall be deemed to have released the YT Claims on account of such Late Filed Debt Claim in every jurisdiction and (b) agrees that it shall not assert any new, or continue to prosecute any existing, YT Claims related to such Late Filed Debt Claim in every jurisdiction.

Within ninety (90) days after the (a) applicable Liability Release Date with respect to Allowed Debt Claims (including Allowed China Secured Claims treated as Allowed Debt Claims pursuant to Article 4.3 of the Plan), (b) the date of satisfaction in full of an Allowed China Secured Claim and, if applicable, the occurrence of the Liability Release Date with respect to any Deficiency Claim on account of such Allowed China Secured Claim, or (c) the date of allowance of a Late Filed Debt Claim, each holder of an Allowed Debt Claim, Allowed China Secured Claim, or Allowed Late Filed Debt Claim shall (as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust) (i) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against the Debtor from the courts and judicial authorities in all jurisdictions, including, but not limited to, the Chinese Courts, or confirm with the judicial authorities that the Debtor has settled all of his debt obligations or legal responsibilities to such holder and (ii) file and execute any documents requested by the Debtor to evidence the above release.  The Debtor reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein.

Subject to approval of the applicable KCBI Settlement, upon the Liability Release Date, each applicable KCBI Claimant shall release the applicable Key China Business Individual of his or her guaranty obligations on behalf of the Debtor.

In connection with the releases described in Article 11.4(c) of the Plan, each holder of an Allowed Debt Claim, Allowed China Secured Claim, or Allowed Late Filed Debt Claim shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,

17

1  WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER

2  SETTLEMENT WITH THE DEBTOR."

3  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to

4  Bankruptcy Rule 9019, of the releases described in Article 11.4(c) of the Plan, which includes by

5  reference each of the related provisions and definitions contained in the Plan, and further, shall

6  constitute its finding that each release described in Article 11.4(c) of the Plan is: (a) in exchange for

7  the good and valuable consideration provided by the Debtor and Reorganized Debtor, a good faith

8  settlement and compromise of such claims; (b) in the best interests of the Debtor and all holders of

9  Claims; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for

10  hearing; and (e) except as otherwise provided in the Plan, a bar to any holder of an Allowed Debt

11  Claim or Allowed Late Filed Debt Claim asserting any Claim, Cause of Action, or liability related

12  thereto, of any kind whatsoever, against the Debtor or Reorganized Debtor.

13  **N.    Exculpation and Limitation of Liability**

14  Article 11.5 of the Plan is approved, which provides:  None of the Debtor or Reorganized

15  Debtor, or the direct or indirect affiliates, employees, advisors, attorneys, financial advisors,

16  accountants, investment bankers, agents, consultants, or other professionals (whether current or

17  former, in each case, in his, her, or its capacity as such) of the Debtor or the Reorganized Debtor, or

18  the Released Parties shall have or incur any liability to, or be subject to any right of action by, any

19  holder of a Claim, or any other party in interest in the Chapter 11 Case, or any of their respective

20  agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or

21  direct or indirect affiliates, or any of their successors or assigns, for any act or omission in connection

22  with, relating to, or arising out of, the Chapter 11 Case, formulation, negotiation, preparation,

23  dissemination, confirmation, solicitation, implementation, or administration of the Plan, the Plan

24  Supplement and all documents contained or referred to therein, the Disclosure Statement, any contract,

25  instrument, release or other agreement or document created or entered into in connection with the Plan,

26  or any other pre- or postpetition act taken or omitted to be taken in connection with or in contemplation

27  of the restructuring of the Debtor or confirming or consummating the Plan (including the distribution

28  of any property under the Plan); *provided*, *however*, that the foregoing provisions of Article 11.5 of

18

the Plan shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence and shall not impact the right of any holder of a Claim, or any other party to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan.  Without limiting the generality of the foregoing, the Debtor and the Debtor's direct or indirect affiliates, employees, advisors, attorneys, financial advisors, accountants, investment bankers, agents, consultants, and other professionals (whether current or former, in each case, in his, her, or its capacity as such) shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  The exculpated parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such exculpating parties from liability.

**O.**    **Waiver of Actions Arising Under Chapter 5 of the Bankruptcy Code**

Article 11.9 of the Plan is approved, which provides:  Without limiting any other applicable provisions of, or releases contained in, the Plan, each of the Debtor, the Reorganized Debtor, their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, hereby irrevocably and unconditionally release, waive, and discharge any and all claims or Causes of Action that they have, had, or may have that are based on section 544, 547, 548, 549, and 550 of the Bankruptcy Code and analogous non-bankruptcy law for all purposes; *provided*, *however*, that notwithstanding this or any other provision of the Plan, in the event the Trustee (with the approval of the Creditor Trust Committee as set forth in the Trust Agreement) determines that it has reasonable and good-faith evidence that (i) an asset, other than any of the Seized China Assets or assets subject to seizure in China, was property of the Debtor as of the Petition Date but was not

19

disclosed by a document or testimony in his capacity as a chapter 11 debtor during the Chapter 11 Case, including, without limitation, in any disclosure statement, schedules, statements of financial affairs, section 341 meeting of creditors, confidential depositions, and materials posted in the creditor data room (the "Chapter 11 Disclosures"), *provided* that the Declarations shall supersede the Chapter 11 Disclosures, the Trustee may pursue an action for turnover of such asset under section 542 of the Bankruptcy Code through the Plan Arbitration Procedures; or (ii) the Debtor was the transferor of a transfer avoidable pursuant to section 548(a)(1)(A) of the Bankruptcy Code, the Trustee may pursue an action to avoid and recover such transfer pursuant to sections 548(a)(1)(A) and 550 of the Bankruptcy Code, as applicable, through the Plan Arbitration Procedures, *provided* that such transfer did not arise out of any transaction or occurrence disclosed in the Chapter 11 Disclosures, *provided further* that the Declarations shall supersede the Chapter 11 Disclosures (collectively, (i) and (ii) are the "Bankruptcy Actions").

### P.    Injunction Against Interference with the Plan

Article 11.6(b) of the Plan is approved, which provides:  Upon entry of the Confirmation Order, all holders of Claims and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.  Each holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article 11.6 of the Plan.

### Q.    Approval of Wei Gan Settlement

Article 6.6 of the Plan is approved, which provides:  Pursuant to Bankruptcy Rule 9019, the Debtor, Wei Gan, and the Committee have settled all Claims of the Debtor's wife, Wei Gan, against the Debtor and all of the Debtor's claims against Wei Gan (the "Wei Gan Settlement"); *provided*, *however*, that pursuant to the divorce proceeding pending in the People's Court of Chaoyang District, Beijing, China Wei Gan and the Debtor's three minor children may be awarded child support (the "Wei Gan Domestic Support Obligations"), which obligations shall be satisfied in accordance with Article 2.4 of the Plan.  In exchange for, and subject to (i) a Cash contribution from Wei Gan in the

20

amount of $1,000,000 to the Trust on the Effective Date, which shall constitute Trust Assets (the "Effective Date Wei Gan Payment"), (ii) a Cash payment of $250,000 to the Trust no later than ninety (90) days after the Effective Date (the "Second Wei Gan Payment"), (iii) Wei Gan's agreement not to assert any other prepetition or postpetition Claims against the Debtor (excluding the Wei Gan Domestic Support Obligations) or the Trust, and (iv) execution of the Wei Gan Declaration, the following shall occur:

(i)    Upon the Effective Date Wei Gan Payment, (a) the China Debtor Covenant shall apply to Wei Gan; and (b) Wei Gan's alleged Debt Claim against the Debtor [Claim No. 20004] shall be treated as an Allowed Debt Claim in the amount of $250,000,000.

(ii)    Upon the Second Wei Gan Payment, (the date upon which the foregoing condition occurs is the "Wei Gan Liability Release Date"), each holder of an (a) Allowed Late Filed Debt Claim, on the date of allowance of such Late Filed Debt Claim or (b) Allowed Debt Claim (i) shall (as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust) release any Causes of Action against Wei Gan for personal liability or derivatively in its capacity as a creditor of a claim owed solely or jointly by Wei Gan (including unwinding or alter ego type claims) in any jurisdiction (the "Wei Gan Claims") on account of such Debt Claim or Late Filed Debt Claim to the maximum extent permitted by applicable law, (ii) agrees that it shall not assert any new, or continue to prosecute any existing, Wei Gan Claims related to such Debt Claim or Late Filed Debt Claim in every jurisdiction, and (iii) submit a Compliance Certificate within ninety (90) days of any holder having an Allowed Claim certifying her release according to the Plan. For the avoidance of doubt, the holder of an Allowed Claim who submits a Compliance Certificate will release the Wei Gan Claims and will be subject to the discharge of all Claims against the Debtor that holders of Claims may seek to assert against Wei Gan, pursuant to sections 1141 and 524 of the Bankruptcy Code. Holders of Allowed Claims who do not submit a Compliance Certificate will not be entitled to Trust Distributions and will only be subject to discharge pursuant to sections 1141 and 524 of the Bankruptcy Code.

Within ninety (90) days after the Wei Gan Liability Release Date with respect to an Allowed Debt Claim or the date of allowance of an Allowed Late Filed Debt Claim, each holder of an Allowed

Debt Claim or Allowed Late Filed Debt Claim shall (as a condition to receiving further Trust Distributions, including any Trust Distributions upon the termination or dissolution of the Trust) (i) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against Wei Gan from the courts and judicial authorities in all jurisdictions, including, but not limited to, the Chinese Courts, or confirm with the judicial authorities that Wei Gan has settled all of her debt obligations or legal responsibilities to such holder and (ii) file and execute any documents requested by Wei Gan to evidence the above release.  Wei Gan reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein.

**In connection with the releases described in Article 6.6 of the Plan, each holder of an Allowed Debt Claim and/or Allowed Late Filed Debt Claim shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article 6.6, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in Article 6.6 is: (i) in exchange for the good and valuable consideration provided by Wei Gan, a good faith settlement and compromise of such claims; (ii) in the best interests of the Debtor and all holders of Claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) except as otherwise provided in the Plan, a bar to any holder of an Allowed Debt Claim or Allowed Late Filed Debt Claim asserting any Claim, Cause of Action, or liability related thereto, of any kind whatsoever, against Wei Gan.**

**R.**   **Assumption of Contracts and Leases**

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases of the Debtor listed on **Schedule B** to the Plan (including any supplement to Schedule B included in the Plan Supplement) shall be deemed assumed except that: (i) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; (ii) any executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases, shall be deemed rejected as of the Effective Date; and (iii) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion.  Unless otherwise agreed by the Debtor, any party to an Assumed Contract that did not timely file an objection to the cure amount set forth in the Cure Schedule is deemed to have consented to such cure amount (the "Accepted Cure Amount") and waived any and all rights to challenge the Accepted Cure Amount and the assumption of the Assumed Contract.  For the avoidance of doubt, no cure amounts on account of any Assumed Contracts shall constitute claims against the Creditor Trust or be payable from Trust Assets.

Unless otherwise provided in the Plan, each executory contract and unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously terminated or is otherwise not in effect. Modifications, amendments, supplements, and restatements to prepetition executory contracts or unexpired leases that have been executed by the Reorganized Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease.

**S.**   **Authorization to Consummate**

The Debtor is authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (with the consent of the applicable parties and

in accordance with Article 10.3 of the Plan) of the conditions precedent to the Effective Date set forth

in Article 10.2 of the Plan, other than as set forth in section 10.2(b).

**T.    No Special Charges Due, Notice of Effective Date and Post-Confirmation Requirements**

**1.    No Special Charges Due**

Pursuant to LBR 3020-1(a), as set forth in the *Notice to Pay Court Costs Due* [Docket No.

782], no special charges are due to the Clerk's Office.

**2.    Notice of Effective Date**

As required by the Post-Confirmation Hearing Order, the Debtor shall file and cause to be

served on all creditors a Notice of Effective Date upon the occurrence of the Effective Date.  The

Notice of Effective Date shall provide notice of the Administrative Claims Bar Date, the date for

Professionals to file final fee applications, and the bar date for Claims arising from the rejection of

Executory Contracts.

**3.    Post-Confirmation Requirements**

No later than October 1, 2020, the Reorganized Debtor shall file a status report in accordance

with LBR 3020-1(b) explaining what progress has been made toward consummation of the confirmed

plan of reorganization.  The status report shall be served on the United States Trustee, the 20 largest

unsecured creditors, and those parties who have requested special notice, and contain the information

required by the Court's "Instructions for Filing First Status Report Regarding Consummation of

Confirmed Plan."[3]  Further reports shall be filed as ordered by the court.  A post-confirmation status

conference will be held on October 29, 2020, at 9:30 a.m.

**U.    Retention of Jurisdiction**

Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date,

except to the extent set forth in Articles 6.2 and 11.9 of the Plan with respect to matters subject to the

Plan Arbitration Procedures, the Bankruptcy Court shall retain exclusive jurisdiction over all matters

arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of

the Bankruptcy Code, including those matters set forth in Article XII of the Plan.

---

[3]  https://www.cacb.uscourts.gov/sites/cacb/files/documents/judges/instructions/VZ_STATUSREPORTPLAN.pdf

24

1   **V.    Dissolution of Committee**

2       Article 13.5 of the Plan is approved, which provides:  On the Effective Date, any statutory

3   committee(s) appointed in the Chapter 11 Case, including the Committee, shall dissolve, and the

4   members thereof shall be released and discharged from all rights and duties arising from, or related to,

5   the Chapter 11 Case.  The Reorganized Debtor shall not be responsible for paying any fees and

6   expenses incurred after the Effective Date, if any, by the Professionals retained by any such committee,

7   other than for the reasonable fees and expenses for the services authorized to be provided pursuant to

8   Article 13.5 of the Plan.

9   **W.    Shan Objection Resolution**

10      As set forth in the record of the Confirmation Hearing, the Shan Objection was withdrawn in

11  exchange for the Debtor's agreement to include the following resolution in this Order:  Consistent

12  with the Debtor's fiduciary responsibilities to his creditors, the Debtor agrees that, prior to the

13  Effective Date, Ms. Liuhuan Shan's Claims shall be subject to review and objection by any party in

14  interest (as contemplated by the Bankruptcy Code), but not including the Debtor, and, after the

15  Effective Date, notwithstanding section 8.1 of the Plan, the right to object to Ms. Shan's Claims shall

16  vest exclusively with the Trust, and not the Debtor or Reorganized Debtor, for a period of 180 days

17  after the Effective Date, as set forth in section 8.1 of the Plan, as may be extended from time to time

18  by further order of the Bankruptcy Court.

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

25

## X.    <u>Final Order</u>

This Confirmation Order is a Final Order and the period in which an appeal or any motion seeking to stay or alter the effectiveness hereof must be filed shall commence upon entry hereof.

# # #

Date: June 5, 2020

Vincent P. Zurzolo
United States Bankruptcy Judge

DOCS_LA:329881.4 46353/002